Douglas A. Winthrop (Bar No. 183532)
Douglas.Winthrop@arnoldporter.com
Joseph Farris (Bar No. 263405)
Joseph.Farris@arnoldporter.com
Jessica L. Gillotte (Bar No. 333517)
Jessica.Gillotte@arnoldporter.com
Estayvaine Bragg (Bar No. 341400)
Estayvaine.Bragg@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:    (415) 471-3100
Facsimile:    (415) 471-3400

Angel T. Nakamura (Bar No. 205396)
Angel.Nakamura@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone:    (213) 243-4000
Facsimile:    (213) 243-4199

Joseph R. Wetzel (Bar No. 238008)
joe.wetzel@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone:    (415) 391-0600

*Attorneys for Defendant* Anthropic PBC

Rachel Geman (*pro hac vice*)
Anna Freymann (*pro hac vice*)
Jacob S. Miller (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
afreymann@lchb.com
jmiller@lchb.com

Reilly T. Stoler (Bar No. 310761)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
rstoler@lchb.com

Rohit D. Nath (Bar No. 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-2906
Telephone: (310) 789-3100
rnath@susmangodfrey.com

Additional counsel listed on signature page

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>    Defendant. | Case No.  3:24-cv-05417<br><br>**STIPULATION AND [PROPOSED] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI") AND HARD COPY DOCUMENTS** |

**PROTOCOL FOR PRODUCING DOCUMENTS**

**AND ELECTRONICALLY STORED INFORMATION**

Plaintiffs Andrea Bartz, Charles Graeber, and Kirk Wallace Johnson, individually and on behalf of others similarly situated (collectively, "Plaintiffs") and Defendant Anthropic PBC ("Anthropic") (together, "the Parties") hereby acknowledge, agree, and stipulate as follows:

## I.    PURPOSE

This Stipulation and Order ("Order") regarding the production of Electronically Stored Information ("ESI") and Hard Copy Documents (collectively, "Document" or "Documents") shall govern discovery of Documents in this case as a supplement to the Federal Rules of Civil Procedure, and any other applicable orders and rules. Nothing in this Order is intended to expand or limit the Parties' obligations under the Federal Rules of Civil Procedure. Any disputes arising out of the production of Documents subject to this Order shall be resolved according to Federal Rules of Civil Procedure, Local Rule 26, and the Court's Standing Orders. The parties each reserve the right to seek exceptions, amendments, or modifications to this Order by agreement, or from the Court for good cause shown.

## II.    COOPERATION AND GOOD FAITH RESOLUTION OF DISPUTES

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI. The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Protocol.  If a Producing Party, notwithstanding their good faith efforts, cannot comply with any material aspect of this Protocol or if compliance with such material aspect would be unreasonable, such Party shall inform the requesting party in writing a reasonable time before the date of production as to why compliance with the Protocol is impossible or unreasonable.  No Party may seek relief from the Court concerning compliance with the Protocol unless it has conferred in good faith with the affected Parties.

**III.   LIAISON**

The Parties each have identified or will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**IV.   PRESERVATION AND IDENTIFICATION OF ESI**

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially-relevant ESI will be reasonable and proportionate.  The Parties will discuss in good faith the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians.  The Parties shall add or remove custodians as reasonably necessary. The Parties will agree on the number of custodians per Party for whom ESI will be preserved.

To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

1.   At the time of the production, the responding party should provide a written list to the requesting party setting forth in detail each specific source and location searched. The list must also identify, by name and position, all persons conducting the search and their areas of search responsibility.  The producing party shall also provide a list describing the specific source for each produced item as well as for each item withheld on a ground of privilege, using the unique identifying numbers to specify documents or ranges.  Materials produced in discovery should bear unique identifying control numbers on each page.

2.   The Parties shall have a continuing obligation to take reasonable and proportional steps to identify and preserve custodial and non-custodial data sources that may

1  contain information that is relevant to the claims and defenses in this litigation.

2          3.      If a Producing Party is aware of inaccessible data that is likely to contain

3  unique, discoverable ESI, it will identify the source from which it claims the data is not reasonably

4  accessible to the Receiving Party.

5          4.      Examples of data the Parties agree not to preserve are:

6                  a.      Deleted, "slack," fragmented, or unallocated data only accessible by

7                          forensics;

8                  b.      Random access memory (RAM), temporary files, operating system

9                          files, or other ephemeral data that are difficult to preserve without

10                         disabling the operating system;

11                 c.      Online access data such as temporary internet files, history, cache,

12                         cookies, and the like;

13                 d.      Data remaining from systems no longer in use that is unintelligible

14                         on systems in use;

15                 e.      Ephemeral data automatically deleted by its nature or design by the

16                         application, settings, or operating systems; and

17                 f.      Structural files not material to individual file contents (e.g., .CSS,

18                         .XSL, .XML, .DTD, etc.).

19  **II.    SEARCH & REVIEW**

20          1.      The Parties will meet and confer to discuss the use of search terms, filters, and date

21  ranges, or any use of advanced search and retrieval technologies (e.g., analytics, predictive coding,

22  technology-assisted review).  A Producing Party shall specify the technique or techniques it will

23  use to search for material it reasonably anticipates will be responsive to Requests for Production.

24  If the Requesting Party objects to the particular technique or techniques, the Parties will timely

25

26

27

28
                                              - 4 -

meet and confer regarding the matter and submit any unresolved disputes to the Court for resolution.

2.    A Party who intends to use search terms will describe a Search Protocol that will include: (a) the criteria to be used to identify the universe of Documents to which search terms will be applied (e.g., repositories, custodians, date range), and (b) proposed search terms to be applied to that universe of Documents, subject to revision based on, for example, meet and confer of the Parties and the number of hits returned by each term. Any Search Protocol will include a requirement for the Producing Party to provide hit reports for proposed search terms prior to utilizing the search terms to narrow the universe of Documents to be searched.

3.    The parties agree to meet and confer in good faith regarding the selection of appropriate custodians and keyword searches. The producing party is responsible, in the first instance, for investigating and proposing search terms and custodians that are calculated to accomplish a reasonable search for responsive material. The parties should meet and confer regarding the Producing Party's search terms and custodians in an effort to reach an agreement. To aid this process, the producing party shall promptly provide any updated hit reports of proposed terms run over proposed custodians. The parties' meet and confer efforts on search term and custodians are not a basis for a party to otherwise delay its search for or its production of documents in this action.

4.    The fact that a document is captured by a search pursuant to an agreed-upon protocol does not mean that such document is responsive to a discovery request, relevant to this litigation, or will be produced.

5.    A Party who intends to use TAR will describe a TAR Protocol that will include: (a) the TAR system to be used; (b) the criteria to be used to identify the universe of Documents to which TAR is to be applied (the "TAR Universe"); (c) its methodology for training the TAR model and identifying responsive Documents; (d) the methodology for validation testing to be used; (e) the subject-matter expert who will oversee the implementation of the TAR Protocol; and (f) the

process by which Documents excluded as not conducive to categorization (e.g., multimedia files, primarily numerical spreadsheets, database files) will be reviewed for production.

6.    The parties will disclose at the outset any use of enterprise messaging tools, such as Slack or MS Teams, including the type of subscription and retention settings in place. The parties will meet and confer regarding issues relating to the parameters for collection of such data, the format of the production, and other unique issues to this type of data.

7.    If a Party is using culling technology, criteria or methods, the Producing Party agrees to disclose details in advance to the Receiving Party along with the sources across which it plans to apply the culling techniques.  The Parties must also provide written information regarding the use of any other advanced culling techniques they employ in connection with their culling of the Documents if they are using such technology to exclude Documents from manual review.

8.    Documents which are reasonably believed to be responsive to discovery requests and not subject to objections and for which text-based search technologies are fundamentally ineffective must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text.

## III.    PRODUCTION FORMATS

The Parties agree to produce Documents in the formats set forth in Appendix 1 and 2 hereto.

## IV.    MODIFICATION

This Order may be modified by a stipulation of the Parties or by the Court for good cause shown.

## V.    MISCELLANEOUS PROVISIONS

### A.    Objections Preserved.

Nothing in this Order shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the Parties do not waive any objections

1    as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents

2    and ESI.

3    **B.    Technical Variances.**

4    Recognizing that each Producing Party may experience production issues due to data

5    systems or files that may not be fully compatible with the technical specifications set forth herein,

6    any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in

7    writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate

8    the timely and economical production of Documents or ESI. No Party shall unreasonably object to

9    any such variance.

10    **C.    Privileged Documents and Privilege Log.**

11    To the extent that a Party reasonably determines that one or more responsive Documents

12    are not discoverable or a portion of a Document needs to be redacted because it is subject to the

13    attorney-client communication privilege or work product doctrine, or otherwise not discoverable

14    on the basis of a recognized protection or privilege (collectively, the "Privileges" and each a

15    "Privilege"), the Party shall, within 30 days of the production from which Documents are withheld

16    or redacted for privilege, produce a log treating each Document withheld or redacted for privilege

17    from that production separately that sets forth: (a) the nature of the privilege(s) or other protection

18    claimed; (b) the date of the Document; (c) the name of the author(s)/addresser, addressee(s) and all

19    recipients of the Document (with respect to e-mail threads, the author/addresser, addressee(s) and

20    recipients of only the top e-mail in the chain will be set forth in the author/addressee, addressee(s)

21    and recipient fields of the log) and whether any person identified is an attorney or an employee of

22    any Defendants' legal department; (d) a description of the general subject matter contained in the

23    Document and the type of Document (e.g., letter, memorandum, handwritten notes) sufficient to

24    allow the Receiving Party to assess the claimed Privilege and/or to allow the Court to rule upon the

25    applicability of the claimed protection; and (e) the custodian and/or location of the Document. For

26    redacted Documents with multiple redactions, one log entry can be used to describe the multiple

27

28

redactions, so long as a single entry is sufficient to adequately identify the basis for all redactions, as described in this paragraph. Names of counsel shall be designated with an asterisk.

Documents that are privileged and that post-date the filing of the original complaint need not be placed on a privilege log.

### D.     Hard Copy Document Storage.

During the pendency of this litigation, the Parties shall make reasonable efforts to preserve the originals of all hard copy Documents as to which there may be issues of legibility of all or any part of the production copy. Each Party reserves the right to request to inspect such original Documents of the opposing Party or Parties, which request shall not be unreasonably denied. If such request to inspect is denied, the Party may seek relief from the Court.

### E.     Short Message Data.

Electronic messages exchanged between users on communication software such as Microsoft Teams and Slack shall be produced in a searchable format that preserves the conversational relationship and presentational features of the original messages, such as emojis, images, video files, and animations. Electronic messages must not be converted to unitized files that contain less than a 24-hour period of conversation. Redactions may be applied to privileged or non-responsive portions of a conversation. To the extent electronic messages cannot be produced in a reasonably usable format, the Parties will meet and confer to address the identification, production, and production format of short message data.

### F.     Pointer Hyperlinks.

The Parties agree that documents containing internal hyperlinks pointing to Documents on a system within a Producing Party's custody, possession, or control (e.g., such as an internal document management system, Google Drive, Google Docs, SharePoint, Office365, or similar document hosting and collaboration service) do not need to be produced in the first instance as part of the same family group as the Document residing at the location at which that Hyperlink points. If there are particular Documents containing hyperlinks where the Document to which that

- 8 -

hyperlink points cannot be located in the production, the Receiving Party may submit a list of such Documents by Bates number to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the Document at that pointed located and either identify it by Bates number or provide it if not already produced and not privileged.

G.    **Collaboration Tools.**

The parties agree to produce the latest in time version of documents stored on a collaboration or document management tool.  To the extent the Receiving Party desires to receive previous versions of documents, if any, the Receiving Party will identify the document(s) with specificity and the parties will engage in a meet and confer process relating to the same.

H.    **Reproduction as Natives.**

The Parties agree that to the extent any Party seeks production in native format of specifically identified ESI produced originally in TIFF form, the Producing Party shall respond reasonably and in good faith to any such request.

**APPENDIX 1**

**PRODUCTION DELIVERY REQUIREMENTS**

**I.    GENERAL PRODUCTION PROVISIONS**

The Parties have agreed that ESI should be produced as TIFF images and in Native Format where applicable with accompanying data and image load files.

**A.    TIFF Image Files.**

The Parties agree that all Documents, with the exception of Documents produced in Native Format, will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the Producing Party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape).

**B.    Text Files.**

Each Document produced under this Order shall be accompanied by a Document level text file containing all of the text for that Document, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding Document. The text files shall be generated by extracted text from native files and OCR text files from hard copy scanned Documents as applicable. To ensure optimal accuracy and quality, OCR software used for extracting text from native files and for processing hard copy scanned Documents shall be set to the highest quality setting. The .DAT load file shall include a link to the corresponding text file.

**C.    OCR Text File.**

The Parties will provide searchable OCR text of any paper or imaged Documents.

**D.    Extracted Text Files from ESI.**

The Parties shall extract the text of each ESI item directly from the ESI native file, where extracted text is reasonably available. For contacts and calendars collected and/or processed after the execution date of this Order, fields should be extracted and produced as text.

**E.**    **OCR Text for Redacted Documents.**

The Parties will provide searchable OCR text for any redacted files.

**F.**    **Bates Numbering.**

1.    Each TIFF image produced under this Order should be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given Document. The Producing Party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a Producing Party skips a Bates number or set of Bates numbers in a production, the Producing Party will identify and note the gap in the cover letter or production log accompanying the production.

2.    The Producing Party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. If the Receiving Party believes that a Bates number obscures the content of a Document, then the Receiving Party may request that the Document be produced with the Bates number in a different position.

**B.**    **Re-Production of Prior or Other Litigation Documents.**

Where a Requesting Party seeks re-production of a set of Documents produced in a prior litigation or any other proceeding, or where a prior production of Documents or ESI by a Party in a prior litigation or any other proceeding is the only reasonably accessible source of those Documents or ESI to be produced by a Party in this litigation, the Producing Party may re-produce such Documents in the manner in which they were produced in the prior case, including all objective coding or metadata fields required by this protocol to the extent reasonably available to the Producing Party as part of the productions set. For any such re-production in accordance with this Paragraph, the Producing Party is not obligated to re-format the prior production in

accordance with the production specifications in ESI stipulation, but must provide Bates numbering and confidentiality designations specific to this litigation.

### C. **Parent-Child Relationships.**

Parent-child relationships for all embedded ESI Documents (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing Document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2.  For example, if a Party is producing an email with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email. Embedded images that are included in-line within the parent document need not be extracted and produced separately. If a parent document includes a hyperlink to external material, the Producing Party agrees to produce the linked material upon reasonable request of the Requesting Party, to the extent the document is still available and reasonably accessible.

### D. **Color Documents.**

In instances where an original ESI Document incorporates color text, markings, or graphics, the Producing Party shall produce such documents in color when color contributes to the comprehension or visual representation of the document. This includes, but is not limited to, instances involving charts, graphics, tracked changes, or highlighted sections. Color documents shall be rendered as single-page JPEG files, maintaining a resolution of at least 300 dpi. The JPEG compression setting should be optimized to ensure high quality, preserving the integrity and clarity of the original document without undue degradation. This provision applies to all color documents irrespective of their initial production format, including those initially produced as TIFF images. Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

**E.    Confidentiality Designations.**

If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document, in the lower left-hand corner of the Document, or as close thereto as possible while preserving the underlying image.  If the Receiving Party believes that a confidentiality designation obscures the content of a Document, then the Receiving Party may request that the Document be produced with the confidentiality designation in a different position. No Party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third Party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format Document produced by any Party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the Document. For each Document that is marked confidential, a Confidentiality field will be populated with the word "Confidential" in the .dat file. Also, any Documents marked Confidential must be handled in accordance with the Protective Order entered in this case.

**II.    PRODUCTION OF HARD COPY DOCUMENTS**

All hard copy Documents that are scanned will be produced in electronic form. Where necessary and practicable, hard copy Documents in color will be scanned in color to ensure full information is communicated in the scanned copy. Scanned color Documents will be provided in JPG file format.

**A.    Unitization of Paper Document.**

To the extent practicable, hard copy Documents shall be unitized using logical document determinations or "LDD."

**B.    Identification.**

Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable.

**C.    Custodian Identification.**

The Parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department level custodian, which are included in a single production, are produced in consecutive Bates stamp order.

**D.    Metadata.**

The metadata associated with each hard copy Document need only identify the Bates number, the custodian associated with that hard copy Document, and any Confidential Designation or Redaction applied to that Document.

**III.    PRODUCTION OF "ESI"**

**A.    De-NISTING and System Files:**

ESI productions shall be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. De-NISTED files need not be produced. The Parties may mutually agree upon any additional file types that can be excluded from review and production. A Producing Party shall identify any additional standard, readable, and reviewable file types which have been excluded from its document review population for any production made following the date of this Order, and will utilize reasonable best efforts to do the same with respect to any productions made prior to the date of this Order.

If a Party excludes from review a standard, readable, and reviewable file type not within the industry standard, that Party must disclose such exclusion to the other Parties.

- 5 -

**B.**     **Native Files.**

Certain files types, such as presentation-application files (e.g., MS PowerPoint), spreadsheet-application files (e.g., MS Excel, .csv), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), shall be produced in Native Format. For files produced in Native Format, the Producing Party shall provide a single-page TIFF slip-sheet with the applicable Bates stamp indicating that a native item was produced. The corresponding load (.DAT) file shall include a NativeFileLink which provides the relative path linking information for each native file that is produced.  In addition, the confidentiality designation will be indicated in the name of the native file where reasonably feasible.

**C.**     **Metadata Fields and Processing.**

1.     ESI shall be processed in a manner that preserves the source native file and relevant metadata without modification, including their existing time, date, and time-zone metadata consistent with the requirements provided in this Order. The Producing Party will provide information on the time zone the data was processed in to the Receiving Party.

2.     **Hidden text.** ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines and comments. Upon request, a Producing Party will produce files with any such information in Native Format.

3.     **Compressed Files and Encrypted Files.** Compressed file types (i.e., .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.

4.     **Metadata and Coded Fields.**  ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2.

This Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the Producing Party must populate, where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextPath, (h) Redaction status, and (i) Confidentiality designation. These fields should be populated for all produced ESI, as well as paper Documents converted to electronic form, regardless of whether the fields can be populated pursuant to an automated process.

## IV.  DATABASES, STRUCTURED, AGGREGATED OR APPLICATION DATA

1.  The Parties will produce Documents collected from databases or other structured databases in a reasonably usable format. If the data cannot be produced in a reasonably usable format, the Parties will meet and confer to address the production format. Prior to or during any such meet and confer, the Producing Party will provide sufficient information to enable the Receiving Party to evaluate the best method and format of production. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

## V.  RESPONSIVENESS, PRIVILEGE & REDACTIONS

### A.  Responsiveness:

The Parties agree that if an attachment to an e-mail is wholly nonresponsive to the discovery requests, it will be produced along with any other Documents in the family.

### B.  Privilege:

To the extent that a Defendant reasonably determines that e-mail or related attachments that are responsive to Plaintiff's document request are not discoverable because they are subject to a Privilege, Defendant shall produce a log treating each e-mail and attachment withheld separately.

**C.    <u>Redactions:</u>**

The parties agree that Excel files may be redacted in their native form. For non-Excel ESI items requiring redaction, they shall be produced in TIFF format with each redaction clearly indicated. In cases where TIFF format is not practicable, such items should be produced in redacted native format, as outlined below. Any unaffected data fields shall be provided. The redaction of any material for privilege or other reason shall be governed by the applicable rules and case law regarding privilege and the provisions contained in the Protective Order entered in this action. Documents that are to be produced in native format, but that require redactions may be produced as TIFF images with the relevant portions redacted, or if a TIFF image production is not practicable (e.g., the file is a video or very large spreadsheet), the Producing Party may produce a copy of the native file with the relevant portions replaced with "REDACTED" or a similar mark. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged, unless it also requires redaction. For each document that is redacted, a Redaction field will be populated with the word "REDACTED" in the .DAT file.  Also, the Producing Party will keep a pristine original copy of the native document.

**D.    <u>Printing Specifications for Excel and PowerPoint files:</u>**

For Excel and PowerPoint type files that are printed to TIFF for redaction and redacted, the following printing options shall be enabled:

<table>
<tr><td align="center">Excel Print to TIFF Options</td></tr>
<tr><td>● Unhide columns and rows</td></tr>
<tr><td>● Unhide worksheets</td></tr>
<tr><td>● Autofit columns and rows, settings to be over by columns first and, then down by rows</td></tr>
<tr><td>● Print gridlines</td></tr>
<tr><td>● Do not apply Autofilter</td></tr>
<tr><td>● Display headings</td></tr>
</table>

| |
|---|
| ● Display comments |
| ● Header and Footer filename field handling: Show field code |
| PowerPoint Print to TIFF Options |
| ● Print notes pages |
| ● Print hidden slides |
| ● Print comments |

The Producing Party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible. For redacted items which were originally ESI, all metadata fields noted in this protocol that do not contain privileged or protected information will be provided and will include all non- redacted data. A Document's status as redacted does not relieve the Producing Party from providing all of the metadata required herein.

**E.      De-duplication and Document Families:**

ESI may be de-duplicated globally at the parent level using MD5 hash or SHA-1 hash.  For emails, de-duplication may be performed using a hash calculated using a combination of metadata fields.  Such hash shall, at a minimum, account for all sender and recipient metadata including BCC recipients, the email subject, date sent, and attachment names.

The Parties are permitted to produce the longest unique email chain and do not need to separately produce the lesser-included emails unless those lesser-included emails have BCC recipients or unique attachments not included in the longest chain.  If a lesser-included email has a BCC recipient or unique attachment, then the lesser-included email must be separately produced with the attachments

If a Party produces only inclusive email, the Parties agree to redact any privileged content or message component and produce in full the rest of the conversation in the inclusives.

"Near duplicate" Documents shall be produced rather than removed. The Producing Party need only produce a single copy of a particular ESI.

The hash value for each item shall be reflected in the .DAT load file in the HashValue field specified in Appendix 2. If a Producing Party elects to de-duplicate globally, the Producing Party shall identify custodians who were in possession of a de-duplicated Document in the AllCustodian metadata field specified in Appendix 2. This means that the field "AllCustodian" will be populated showing all custodians who had a copy of the same Document which is not being produced because of de-duplication.

De-duplication shall not break apart families and shall be performed at a family level. A Document and all other Documents in its attachment range, emails with attachments and files with extracted embedded OLE Documents all constitute family groups.  If any member of a family group is produced, all members of that group must be also be produced or else logged and no such member shall be withheld from production as a duplicate. The Producing Party agrees that the presence of a custodian's name contained in the "AllCustodian" field in the metadata for a particular Document is evidence that the custodian possessed that Document in his/her custodial file.

**F.     Load Files:**

The data load file should be in standard Concordance format (.DAT). The .DAT file shall contain a relative path to the corresponding native file.

Concordance Data Load Files:

The data load file should use standard Concordance delimiters:

● Column - ¶ (ASCII 182);

● Quote - þ (ASCII 254);

● Newline - ® (ASCII 174).

● The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.

● All date fields should be produced in mm/dd/yyyy format, if possible.  Date fields may be combined date/time fields

● All produced attachments should sequentially follow the parent Document/email.

Sample Concordance .DAT Load File:

þBegBatesþ¶þBegattatchþ¶þCustodianþ¶þNative Pathþ¶þExtracted Textþ

þABC000001þ¶þABC000001þ¶þSampleþ¶þ\VOL001\NATIVES\001\ABC000001.xlsþ¶þTEXT\

001\ABC000001.t

tþþABC000002þ¶þABC000001þ¶þSampleþ¶þNATIVES\001\ABC000002.gifþ¶þTEXT\001\AB

C000002.txtþ

The image load file must be in standard Option (.OPT) format and must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of Documents referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production. In any deliverable volume, Documents should be organized in such a way that each folder in the volume contains 1000 files (each TIFF page or native file is a single file) as one file per folder.

● Every image in the delivery volume should be cross-referenced in the image load file.

● The imageID key should be named the same as the Bates number of the page.

● Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.

Sample Concordance/Opticon Image (.OPT) Load File:

MSC000001,MSC001, \VOL001\IMAGES\001\MSC000001.TIF,Y,,,2

MSC000002,MSC001, \VOL001\IMAGES\001\MSC000002.TIF,,,,

MSC000004,MSC001, \VOL001\IMAGES\001\MSC000004.TIF,Y,,,2

MSC000005,MSC001, \VOL001\IMAGES\001\MSC000005.TIF,,,,

OCR/Extracted Text Files:

● OCR or Extracted Text files shall be provided in a separate directory containing Document-level text files. The .DAT file shall contain a relative path to the

corresponding text file. OCR or Extracted text itself should not be included in the

.DAT file:

PROD001\TEXT\001\ABC00015.txt

## VI.    <u>MISCELLANEOUS</u>

Nothing herein shall preclude the Parties from agreeing in writing to amend or waive the terms of this ESI Protocol or to agree in writing to proceed differently for any given instance. Nor shall anything herein preclude any party from moving the Court to amend the terms of this ESI Protocol for good cause shown, provided, however, that no party may seek relief from the Court concerning compliance with the Order until it (i) has met and conferred in good faith with any parties involved in the dispute to resolve or narrow the area of disagreement, and (ii) has given any such parties a reasonable opportunity to cure (if cure is possible) any claimed deficiency in compliance with this ESI Protocol.

Nothing herein shall be construed to affect the admissibility of documents and ESI. All objections to the discoverability or admissibility of any documents and ESI are preserved and may be asserted at any time.

Nothing herein shall affect, in any way, the Producing Party's right to seek reimbursement for costs associated with collection, review, and/or production of documents in response to disproportionate ESI production requests, pursuant to Federal Rule of Civil Procedure 26.

Further, nothing herein is intended to prevent either party from complying with the requirements of any applicable country or state's data privacy laws.

## APPENDIX 2: ESI METADATA AND CODING FIELDS

The chart below describes the metadata fields to be produced, where reasonably available, in generic, commonly used terms which the Producing Party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic Documents and are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field should be discussed with the Receiving Party prior to processing the subject ESI for production.

| Field Name | Field Description |
| --- | --- |
| BegBates | First Bates number (production number) of an item |
| EndBates | Last Bates number (production number) of an item<br><br>**The EndBates field should be populated for single-page items. |
| AttachName | File name of the attachment, with any attachments separated by semi-colon. |
| BegAttach/Group ID | First Bates number of family group |
| EndAttach | Last Bates number of attachment range (*i.e.*, Bates number of the last page of the last attachment) |
| PgCount | Number of pages in the item |
| Custodian | Name of person or source from whose/which files the item is produced |
| AllCustodian | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not |

| Field Name | Field Description |
|---|---|
|  | been de- duplicated |
| FileSize | Size (in kilobytes) of the source native file |
| SourceFilePath[1] | The directory structure or path where the original file was stored on the Party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. |
| SourceParty | Name of entity or Party producing the item |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachment) |
| FileType | (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) |
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx |
| Parent Date/Sort Date | The date associated with a family's parent record, which is assigned as follows:<br><br>Emails populated with 1st occurrence: **Date Sent** or **Date Received** or **Date Last Modified**. Email attachments populated from the date above.<br><br>Outlook Appointments populated with 1st occurrence of **Start** |

---

[1] This field may be excluded if the Producing Party determines it includes information protected by any applicable privilege or immunity.

| Field Name | Field Description |
|---|---|
|  | **Date** or **Date Last Modified**. Loose Edocs populated with 1st occurrence of **Date Last Modified** or **Date Created**. |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent (Date and time fields may be combined) |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received (Date and time fields may be combined) |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| Number of Attachments | Number of attached, embedded or grouped items |

| Field Name | Field Description |
|---|---|
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created (Date and time fields may be combined) |
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| LastModDate (mm/dd/yyyy) | Date the item was last modified |
| LastModTime (hh:mm AM/PM) | Time the item was last modified |
| Date Last Printed | Date the Document was last printed. |
| FileName[2] | The filename of the source native file for an ESI item |
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Subject/E-Mail Subject | Any value populated in the Subject field of the source file metadata or document properties (*e.g.*, subject line of email or calendar item) |
| Author | Creator of the Document; any value populated in the Author |

---

[2] This field may be excluded if the Producing Party determines it includes information protected by any applicable privilege or immunity.

- 4 -

| Field Name | Field Description |
|---|---|
| | field of the source file metadata or document properties |
| Redacted | User-generated field that will indicate redactions. With the word "REDACTED". Otherwise, blank. |
| Redaction Reason | The reason for the redaction. If more than one reason, separate by semi-colons. |
| Confidentiality | User-generated field that will indicate confidentiality. With the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or "ATTORNEYS EYES ONLY" applicable. Otherwise, blank. |
| TextPath[3] | Full relative path to the location of the Document-level text file. |
| NativeFileLink[4] | Relative path for Documents provided in Native Format only. **The linked file must be named per the BegBates value. |

---

[3] This field may be excluded if the Producing Party determines it includes information protected by any applicable privilege or immunity.

[4] This field may be excluded if the Producing Party determines it includes information protected by any applicable privilege or immunity.

STIPULATION AND [PROPOSED] ORDER REGARDING THE PRODUCTION OF ESI AND HARD COPY DOCUMENTS                Case No. 3:24-cv-05417-WHA

Dated: January 10, 2025                    Respectfully submitted,


By: /s/ Rachel Geman                       By: /s/ Douglas Winthrop (w/consent)

Rachel Geman (*pro hac vice*)              Douglas A. Winthrop (Bar No. 183532)
Anna Freymann (*pro hac vice*)             Douglas.Winthrop@arnoldporter.com
Jacob S. Miller (*pro hac vice*)           Joseph Farris (Bar No. 263405)
**LIEFF CABRASER HEIMANN &**               Joseph.Farris@arnoldporter.com
**BERNSTEIN, LLP**                         Jessica Gillotte (Bar No. 333517)
250 Hudson Street, 8th Floor               jessica.gillotte@arnoldporter.com
New York, New York 10013-1413              Estayvaine Bragg (Bar No. 341400)
Telephone: (212) 355-9500                  Estayvaine.Bragg@arnoldporter.com
rgeman@lchb.com                            **ARNOLD & PORTER KAYE SCHOLER LLP**
afreymann@lchb.com                         Three Embarcadero Center, 10th Floor
jmiller@lchb.com                           San Francisco, CA 94111-4024
                                           Telephone:    (415) 471-3100
Reilly T. Stoler (Bar No. 310761)          Facsimile:    (415) 471-3400
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**                         Angel T. Nakamura (Bar No. 205396)
275 Battery Street, 29th Floor             angel.nakamura@arnoldporter.com
San Francisco, California 94111-3339       **ARNOLD & PORTER KAYE SCHOLER LLP**
Telephone: (415) 956-1000                  777 South Figueroa Street, 44th Floor
rstoler@lchb.com                           Los Angeles, CA 90017-5844
                                           Telephone:    (213) 243-4000
Rohit D. Nath (Bar No. 316062)             Facsimile:    (213) 243-4199
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400       Joseph R. Wetzel (Bar No. 238008)
Los Angeles, California 90067-2906         joe.wetzel@lw.com
Telephone: (310) 789-3100                  **LATHAM & WATKINS LLP**
rnath@susmangodfrey.com                    505 Montgomery Street, Suite 2000
                                           San Francisco, California 94111
Justin A. Nelson (*pro hac vice*)          Telephone:    (415) 391-0600
Alejandra C. Salinas (*pro hac vice*)
**SUSMAN GODFREY L.L.P**                   *Attorneys for Defendant*
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Jordan W. Connors (*pro hac vice forthcoming*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com

J. Craig Smyser (*pro hac vice*)
**SUSMAN GODFREY L.L.P**

One Manhattan West, 51st Floor
New York, New York 10019
Telephone: (212) 336-8330
csmyser@susmangodfrey.com

Scott J. Shoulder (*pro hac vice*)
CeCe M. Cole (*pro hac vice*)
**COWAN DEBAETS ABRAHAMS &**
**SHEPPARD LLP**
60 Broad Street, 30th Floor
New York, New York 10010
Telephone: (212) 974-7474
sshoulder@cdas.com
ccole@cdas.com

*Attorneys for Plaintiffs and Proposed Class*

STIPULATION AND [PROPOSED] ORDER REGARDING THE
PRODUCTION OF ESI AND HARD COPY DOCUMENTS

Case No. 3:24-cv-05417-WHA