# Arnold & Porter

February 24, 2025

**VIA ECF**

Judge William H. Alsup
Phillip Burton Federal Building & U.S. Courthouse
450 Golden Gate Avenue, 16th Floor Clerk's Office
San Francisco, CA 94102

      Re:    Anthropic's Response to Plaintiffs' Letter Motion to Compel Discovery Responses in *Bartz et al. v. Anthropic PBC*, Case No. 3:24-CV-05417 (N.D. Cal.)

Dear Judge Alsup:

      We write on behalf of Defendant Anthropic PBC ("Anthropic"). In the present motion, Plaintiffs seek the extreme sanction of an order preventing Anthropic from offering complete evidence in opposition to Plaintiffs' class certification motion and restricting it to using documents produced by an arbitrary and prejudicial deadline just three days after the hearing. Plaintiffs' request is not based on any claim that Anthropic has refused to provide specific discovery relevant to class certification. Rather, the motion is based on the catch-all contention that document discovery generally has not moved as fast as Plaintiffs would like. As detailed below, that claim is based on material mischaracterizations of the discovery record—including the complete omission of the great efforts Anthropic has made to make the most important information in this case available to Plaintiffs—*the data on which the LLMs were trained*. The motion should be denied.

      **Relevant Background**

      **LLM Training Data Productions + Onsite Inspection.** Plaintiffs mischaracterize the discovery record by suggesting that all Anthropic has produced is "only 393 documents, and 42 percent of that is just printouts from Anthropic's website." Ltr. at 1. This completely omits the massive volume of LLM training data that Anthropic has made available to Plaintiffs and is an unfair bait-and-switch in light of how Plaintiffs characterized their "priorities" in discovery until recently. For the first few months of this case, Plaintiffs made clear that their highest discovery priority was getting access to LLM training data. Moreover, Plaintiffs' counsel knew that data was an incredibly burdensome undertaking based on their own experience in the other AI copyright cases. Ex. A (Tr. of Case Management Conference of 10/10/2024) at 17:6-14 (Plaintiffs' counsel citing "prior experience" in other "book author" cases about how "looking into the training databases" was "factual[ly] intensive" in support of his argument for a longer fact discovery period).

Judge William H. Alsup
February 24, 2025
Page 2

  Anthropic prioritized providing that discovery—preparing a 30(b)(6) witness on that topic, producing several voluminous "Books Datasets,"[1] and spending many hundreds of hours between the client and outside counsel to pull together a massive volume of training data for an on-site training data inspection. The Books Datasets alone are over many hundreds of gigabytes, and each one of those Books Datasets consists of *many thousands* of discrete records that were produced as a single "document" with a single Bates number. For this reason alone, the suggestion that Plaintiffs have somehow had access to only a few hundred relevant documents consisting mainly of website "printouts" is highly misleading. Further, for the onsite inspection, Plaintiffs demanded access to *all pretraining data* for every generally accessible and commercially released Claude model, which required extensive effort to provide by establishing a secure environment for review, provisioning specialized review accounts and tools for Plaintiffs' expert, and populating an environment with hundreds of terabytes of data from numerous sources.

  **ESI Search Terms Discovery.** In contrast to their singular focus on Books Datasets, Plaintiffs did not make an initial proposal for search terms for traditional ESI discovery until December 26, 2024, just two months ago and over the holiday period when Anthropic was closed. After Plaintiffs' broad, initial list of 185 search terms resulted in large numbers of search hits based on initial testing, the parties have been meeting and conferring to narrow the list. Anthropic nevertheless began reviewing and producing documents. On February 4, 2025, Plaintiffs finally recognized the significant challenge created by their numerous and overbroad search terms and purported to provide Anthropic with a list of 27 "priority" terms allegedly geared towards class certification. However, even those terms still resulted in over 59,000 search term hits in the data collections to date (representing approximately 30,000 unique documents, before accounting for Slack data).[2] Anthropic has already reviewed approximately 23% of documents that hit on those search terms. Of these, only a few hundred documents were responsive—which is a direct result of how overbroad the "priority" search terms are.

  The number of responsive documents also underrepresents the importance of these documents and the efforts it took to review them, as many are dense, collaborative documents generated through cloud-based software like Google Docs that may be equivalent to dozens (or even hundreds) of traditional, non-collaborative documents.[3]

---

[1] For purposes of this letter, Anthropic uses the term "Books Datasets" to refer to certain datasets identified confidentially in discovery as priority datasets because they allegedly contain books.

[2] Plaintiffs' letter refers to both "59,295 hits" and "60,000" documents. For clarity, there are 59,295 priority search terms hits. There is a smaller number of unique "priority" documents to review (approximately 30,000 documents) after factoring in documents with multiple hits for particular terms and de-duplication across search terms. However, as Plaintiffs know, additional documents, such as Slack communications are still in the process of being collected and were not included in these searches. Therefore, the total number of "priority" documents to review is not yet known. In any event, Anthropic reasonably anticipates that it will complete review of all priority documents before March 21, 2025 (the date requested by Plaintiffs).

[3] To illustrate, a single Google Doc may reflect dozens of conversations via comments in the document. More traditionally, these kinds of comments would be reflected in emails, rather than in the document itself.

Judge William H. Alsup
February 24, 2025
Page 3

Therefore, much like the training data production, Plaintiffs significantly understate the importance of what has already been produced in their focus on raw volume over substance.

Anthropic has 11 review attorneys working full-time on document review, who have collectively spent over 750 hours. Anthropic has not objected to focusing on priority terms and is willing to continue to do so, but a project of this scope takes time.[4]

### The Court Should Deny Plaintiffs' Extreme Sanctions Request

*First*, there is no legal basis for the request. Plaintiffs request what amounts to sanctions under Rule 37(b), but that rule does not apply because Anthropic did not violate any discovery order. *See* Rule 37(b)(2)(A)(ii) (authorizing evidentiary sanctions where a party "fails to obey an order to provide or permit discovery").[5]

*Second*, as detailed above, the factual record in no way supports this extreme request. Where Plaintiffs have identified discovery priorities, Anthropic has responded in good faith to get them that information—including via massive efforts to produce training data completely omitted from Plaintiffs' motion. Further, Plaintiffs have not articulated any reason why their efforts to obtain class certification will be prejudiced because of discovery they were unable to obtain. Indeed, their motion is devoid of discussion about *what discovery they need for the class certification motion* other than a single line in which they say their priority terms "target information that confirms that Anthropic treated all class works in the same way, for example, documents related to Anthropic's acquisition of large volumes of copyrighted books at one time or its use of large books datasets for LLM training." Ltr. at 2. But such training data is *exactly* what Anthropic prioritized providing.

This is an important case raising legal issues of great significance, and class certification should be decided on the merits, not an artificially constricted record. There is no basis for a discovery sanction here and Plaintiffs' request should be denied.

ARNOLD & PORTER KAYE SCHOLER LLP

/s/ Joseph R. Farris
Joseph R. Farris

*Counsel for Defendant*

---

[4] This is particularly so when, for all their accusations of delay, Plaintiffs have produced a total of just **68 documents to date**. These are composed mostly of: (i) copyright registration print-outs from the U.S. Copyright Office public website, (ii) publisher agreements and drafts of agreements, and (iv) the texts of the allegedly infringed books. But they have included not a single communication by Plaintiffs and Plaintiffs did not offer their first hit reports from ESI searches until February 22, two days after filing their discovery letter motion and weeks after their first discovery responses were due on January 28.

[5] The two cases Plaintiffs cite are inapt because, among many other reasons, they dealt with alleged violations of prior court orders. *See S.O. by & through O'Neal v. Rescue Union Sch. Dist.*, 2024 WL 402489, at *1 (E.D. Cal. Feb. 2, 2024) (seeking sanctions in connection with "prior court order"); *National Urban League v. Ross*, 2020 WL 7488068, at *2 (N.D. Cal. Dec. 13, 2020) (addressing alleged violation of prior discovery order in case with a compressed schedule of "eight weeks to engage in limited discovery").

# EXHIBIT A

Case 3:24-cv-05417-WHA   Document 90   Filed 02/24/25   Page 4 of 8

```
                    UNITED STATES DISTRICT COURT

              FOR THE NORTHERN DISTRICT OF CALIFORNIA

                      _____


   Bartz, et al.,                  )
                                   ) No. 3:24-CV-05417-WHA
                    Plaintiffs,    )
                                   )
              vs.                  )
                                   ) San Francisco, California
   Anthropic PBC,                  ) October 10, 2024
                                   ) 11:33 a.m.
                    Defendants.    )
   _____)



        BEFORE:   THE HONORABLE WILLIAM H. ALSUP, JUDGE


             REPORTER'S TRANSCRIPT OF PROCEEDINGS


             INITIAL CASE MANAGEMENT CONFERENCE
```

Official Court Reporter:
**Cathy J. Taylor, RMR, CRR, CRC (By Zoom Videoconference)**
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1              MR. WINTHROP:  November 8th.  There was a -- all --
 2   all parties -- you may have seen this from the report, Your
 3   Honor.  All parties were confused by the two scheduling orders,
 4   and so --
 5              THE COURT:  October 25.
 6              MR. WINTHROP:  -- we --
 7              THE COURT:  Leave to add any new parties or pleading
 8   amendments.  I'm going to give -- I don't think there will be
 9   any, so I'm going to give you until December 4.
10              All right.  ADR.  What's your plan for ADR?
11              MR. NELSON:  Well, Your Honor, given Your Honor's
12   order on class actions --
13              THE COURT:  That's right.  You -- you're not supposed
14   to.  All right.  No talking of settlement until we make sure
15   there's a class.  Then it's your duty to talk settlement --
16              MR. NELSON:  Correct, Your Honor.
17              THE COURT:  -- but not yet.
18              All right.  Fact discovery cutoff.
19              MR. NELSON:  I think we are actually in agreement on
20   fact discovery cutoff for December 4th, 2025, Your Honor.
21              THE COURT:  No way.  That's too far.
22              MR. NELSON:  Okay.  The -- the re- -- can I just say
23   with.
24              THE COURT:  I'll give you till August 29 next year.
25              MR. NELSON:  Okay.  Thank you, Your Honor.
```

17

1         THE COURT:  And that will also be the date your expert
2    report is due if you have the burden of proof on the issue.
3         MR. NELSON:  Thank you, Your Honor.
4         THE COURT:  I don't think the facts are going to be
5    that disputed.  I think it's --
6         MR. NELSON:  Your Honor, there -- from -- from prior
7    experience in others of these cases -- and -- and the
8    plaintiffs, for example, represent book authors -- other book
9    authors against OpenAI and Microsoft.  And I know the
10   defendants also have some familiarity with these cases as well.
11   There will be, I would say -- even assuming the sort of
12   macro-agreement on facts, there are a number of issues that
13   require looking into the training databases, going and -- and
14   so it -- it will be factual intensive.
15        THE COURT:  I'm going to stick with my date.  All
16   right.  You're -- you're -- you raise a good point, but my date
17   for now.
18        Final pretrial conference -- sorry -- summary judgment
19   deadline, October 1.
20        Final pretrial conference will be November 19th.
21        MR. NELSON:  And I'm sorry to interrupt, Your Honor.
22   Class certification --
23        THE COURT:  I'm going to come to that.
24        MR. NELSON:  Okay.  Thank you, Your Honor.
25        THE COURT:  And then the trial will be December 1.

# **C E R T I F I C A T E**

I, CATHY J. TAYLOR, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED this 10th day of October, 2024.

/s/ Cathy J. Taylor
Cathy J. Taylor, RMR, CRR, CRC