Pages 1 - 21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

```
ANDREA BARTZ, individually and )
on behalf of others similarly  )
situated,                      )
                               )
          Plaintiffs,          )
                               )
  VS.                          )     NO. C 24-05417 WHA
                               )
ANTHROPIC PBC,                 )
                               )
          Defendant.           )
_____)
```

San Francisco, California
Tuesday, February 25, 2025

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

    LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
    250 Hudson Street - 8th Floor
    New York, New York 10013
    BY:  **RACHEL GEMAN, ATTORNEY AT LAW**

    SUSMAN GODFREY LLP
    1000 Louisiana Street - Suite 5100
    Houston, Texas  77002
    BY:  **COLLIN FREDRICKS, ATTORNEY AT LAW**

For Defendant:

    ARNOLD & PORTER KAYE SCHOLER LLP
    Three Embarcadero Center - 10th Floor
    San Francisco, California  94111
    BY:  **DOUGLAS A. WINTHROP, ATTORNEY AT LAW**
         **ESTAYVAINE BRAGG, ATTORNEY AT LAW**
         **JESSICA L. GILLOTTE, ATTORNEY AT LAW**
         **JOSEPH R. FARRIS, ATTORNEY AT LAW**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
         U.S. District Court - Official Reporter

1    **Tuesday - February 25, 2025**                    **10:34 a.m.**

2                        **P R O C E E D I N G S**

3                            **---oOo---**

4        **THE CLERK:**  Calling civil action 24-5417, Bartz, et

5    al. versus Anthropic PBC.

6        Counsel, please approach the podium and state your

7    appearances for the record beginning with Counsel for the

8    Plaintiffs.

9        **MS. GEMAN:**  Good morning, Rachel Geman, Lieff Cabraser

10   Heimann & Bernstein.

11       **MR. WINTHROP:**  Hi, Douglas Winthrop from Arnold &

12   Porter for the Defendant Anthropic, and I have counsel with me.

13       **THE COURT:**  Welcome to everybody.  Okay.  We have a

14   couple of things to go over.  There is a motion to adjust the

15   case management schedule and there is a discovery dispute.

16       **MS. GEMAN:**  Your Honor, we have --

17       **MR. WINTHROP:**  Your Honor, we think we have resolved

18   the discovery dispute in the hallway this morning.  The

19   calendar issue is still open, very much an issue, but I

20   think -- if the Judge is agreeable, I think we have agreed to

21   work out some deadline extensions for the class certification

22   motion to resolve that.

23       **THE COURT:**  What if I don't want to extend the --

24       **MR. WINTHROP:**  That's why I said it's up to the Judge.

25       **MS. GEMAN:**  If I may, Your Honor, Mr. Collin

1    Fredricks, who is a first year associate at Susman Godrey, is

2    prepared to address the new discovery deadlines and answer

3    questions about that.

4         **THE COURT:**  Let me hear it.  Let me see the proposal,

5    but March 6th is still three or four weeks away -- no, two

6    weeks away.  All right.  Go ahead.

7         **MR. FREDRICKS:**  Good morning, Your Honor, Collin

8    Fredricks, Susman Godfrey Counsel for Plaintiffs.

9         Yes, Your Honor, we are prepared to move forward with

10   March 6th.  We have been preparing our brief.  We believe we

11   have more than enough to certify this class; however, to

12   resolve the discovery dispute and to make sure the record is

13   fully developed, we did reach an agreement with Anthropic, was

14   to push the deadline from March 6th to March 27th for us to

15   file our opening brief.  And in exchange for that, Anthropic

16   would make certain commitments to produce documents related

17   to --

18        **THE COURT:**  Yes, Your Honor, related to what?

19        **MR. FREDRICKS:**  The first category are the priority

20   terms.  So, those are the ones discussed.  They agreed to

21   produce documents from Slack and from the ESI productions.

22   They have already -- database they have already set up by

23   March 20th, and then the second category of documents, which is

24   documents that they intend to rely on in their opposition, we

25   agreed that they would make their best efforts to produce those

1    documents by that same March 20th deadline for documents that

2    they intend to rely on.

3                    (Pause in proceedings.)

4        **MR. FREDRICKS:**  So, Your Honor, as I said, we believe

5    we can move forward with the March 6th deadline if that's what

6    Your Honor would prefer; however, to make sure that this

7    discovery dispute is resolved and to make sure that we have all

8    of the documents that we would like to have ideally before

9    moving for this, we think that a three-week extension --

10       **THE COURT:**  Okay.  Let me -- okay.  Before I accept or

11   reject that, let me hear about this other motion.  Go ahead.

12       **MR. WINTHROP:**  Your Honor, we just think that the

13   proper way to proceed, as set out by the Second Circuit in the

14   *Google* books case, is to go forward in this kind of dispute,

15   this kind of case, to go forward with the summary judgment

16   briefing first.  That's what the Second Circuit said when --

17       **THE COURT:**  We are not in the Second Circuit.  We are

18   in the Ninth Circuit.

19       **MR. WINTHROP:**  I understand.

20       **THE COURT:**  What does the Ninth Circuit say?

21       **MR. WINTHROP:**  The Ninth Circuit, there is no specific

22   case on point on this.  The reason we raise the Second Circuit

23   is because it is so directly analogous, which is, this is a

24   case involving -- in the *Google* books case -- where the

25   Plaintiffs were claiming that Google was copying very large

1    sections of books using them to -- basically publishing those

2    and using them to create an index; direct exact copying of the

3    Plaintiffs' books.  And the district court certified the class,

4    and the Second Circuit vacated that and said, I think you

5    should go back and you should look at the fair use issues

6    first.  One, that could moot the entire case.  Two, even if it

7    is denied -- even if summary judgment is denied, that -- the

8    briefing, the analysis, all of that, that will help the

9    judge -- that will help the Court in deciding the class issues.

10        And that's our -- that's our view, but I think there will

11   be things that will be elucidated for you that will help even

12   if you decide that this case is not a summary judgment case.

13            THE COURT:  What's your view?

14            MS. GEMAN:  Your Honor, we think there is a very

15   analogous case which is this case.  Your Honor heard all of

16   these issues on October 10th including the invocation of a case

17   in the Second Circuit, that is distinguishable factually and

18   procedurally; and Your Honor was clear that class certification

19   will start first.

20        If anything, the record since that October 10th hearing

21   underscores the intelligence of that decision.  This case

22   involves quintessentially common issues.  It wouldn't be

23   efficient to stage summary judgment before class cert even with

24   the waiver of the one-way intervention.  It's -- I mean, it

25   wouldn't be fair to how we have been busily preparing and are

1    prepared to offer a full class cert record to Your Honor.

2        We submit this is a very important case to the author

3    community.  People are watching this case, and we think it's

4    time to decide if these abundantly common issues should move

5    forward to trial collectively.

6        We also note, Your Honor, that there's -- you know, they

7    have cited cases that go one way.  We have cited cases that go

8    the other, but in this case class certification warrants --

9            **THE COURT:**  Is the class limited to those authors

10   whose works were in the -- I forgot the correct term, not

11   counterfeit but dark web -- what was it called?

12           **MS. GEMAN:**  Shadow libraries or pirated data sets.

13           **THE COURT:**  Yeah, that, the pirated -- yes.  Is your

14   class limited to those authors?

15       **MS. GEMAN:**  So our class is -- our class will be

16   focused on writers whose books were in these shadow libraries

17   that Anthropic took without consent -- very clean class

18   issue -- and that they pirated.  So, certainly the class is

19   limited to books that Anthropic has taken.

20           **MR. WINTHROP:**  Can I, Your Honor?

21       **MS. GEMAN:**  I don't know if that answers, Your Honor's

22   question.

23           **MR. WINTHROP:**  It does not.

24           **THE COURT:**  Give me your view, Mr. Winthrop.

25           **MR. WINTHROP:**  That doesn't answer the question,

1    Your Honor.  The class is not limited to what you just

2    described.  There is an entirely different way that I cannot

3    say on the public record in which books have been used for

4    training.  There has been a lot of discovery about that.  They

5    know about that, and that is also part of it -- definitely part

6    of the class because their class is all book authors whose

7    books have been used for training, full stop.

8            **MS. GEMAN:**  But, Your Honor --

9            **THE COURT:**  What do you say to that?

10           **MS. GEMAN:**  What I say to that is I know what opposing

11   Counsel is referring to, and this will be addressed in our

12   class cert motion.

13       Our Plaintiffs, like the rest of the class, were subject

14   to Anthropic's common practices for obtaining their books.

15   Your Honor is aware that part of this case is about the

16   uncompensated acquisition of books from pirated websites, and

17   part of this case is about the reproduction of works for use in

18   training.  These are not individualized issues.

19           **THE COURT:**  But the analysis might be different.  For

20   example -- I'm not making any rulings right now -- but isn't

21   good faith and bad faith, and so if somebody uses pirated

22   works, that's worse for the user than if they did not use

23   pirated works, I guess.  I could see the argument.

24       So, is your client -- so, what I'm trying to get at is if

25   your class is so straightforward and easy and classic, then to

1    my mind it might all be just the pirated works from the dark

2    web.  What did you call that thing again?

3           MS. GEMAN:  I think we said "shadow libraries."

4           THE COURT:  Shadow libraries.

5           MS. GEMAN:  I don't know.  My Counsel may have used

6    "pirated."  The point is we all know it is sources where books

7    were taken from our Plaintiffs and the Plaintiffs were not

8    paid.

9           THE COURT:  Well, all right.  Look --

10          MS. GEMAN:  I would address the bad faith question

11   this way.

12          THE COURT:  How do you distinguish the Second Circuit

13   case?

14          MS. GEMAN:  So, the *Google* books case was about output

15   and a substantial similarity inquiry.  There, there was

16   really -- I have to take off my glasses, Your Honor, I

17   apologize -- in that case Google engaged in copying to create a

18   searchable database to allow users to ID location and frequency

19   of words using snippets.

20       They completely avoided the exploitation of the content

21   for its sort of expressive value, which is a big issue in this

22   case.  And the Court, the Second Circuit, was very clear that

23   there was not a harm to potential markets.

24       This case is very different.  We have two common issues of

25   harm.  One is the fact that we allege Anthropic took books and

1    did not pay for them.  There is a market for the authors'

2    books.  They are all on sale.  And, second, this injures the

3    existing or growing market for AI training, which has been

4    recently acknowledged or sort of, you know, denominated as a

5    potential market by Judge Bibas.

6        So, between the differences that that was a snippet case

7    about substantial similarity where there was -- where the very

8    important fourth fair use factor went in favor of Google to the

9    very different procedural posture in that case -- it was filed

10    in, I think, 2005.  There were classes certified.  It went up

11    maybe seven years or six years later.  There was a settlement

12    that was considered to be problematic.  The settlement was

13    rejected.  In that context and expressly noting that there

14    might be some --

15        **THE COURT:**  Rejected by the district judge?

16        **MS. GEMAN:**  Yes, Your Honor, by then Judge Chen.  And

17    then the Second Circuit in a short per curium opinion said,

18    Well, given the issues in this case, let's see if we can save

19    ourselves some time with looking at fair use.

20        That opinion in no way held that there is some special

21    rule in copyright cases -- let alone copyright cases in another

22    circuit with totally different facts -- that the efficient

23    ordering of class cert before summary judgment should be

24    disturbed.

25        *Google* has -- was even itself was considered the outer

1    parameters of fair use.  And I just respectfully don't think

2    that it's so, you know, persuasive here.  We can look

3    Your Honor and talk about the relevance of *Napster* as we have

4    in the past.  We can look at some other recent cases.

5        But certainly to say that *Google* books is relevant in this

6    case really for anything, let alone to disturb what your

7    Court -- what Your Honor has already decided, which is we can

8    do class cert now and then we can do summary judgment -- just

9    does not in our view make sense for the case.

10        **THE COURT:**  They are asking me to think it through

11    again.  So, that's what I --

12        **MR. WINTHROP:**  Your Honor, can I --

13        **THE COURT:**  Yeah, go ahead and respond.

14        **MR. WINTHROP:**  I would suggest if you haven't had a

15    chance yet, the Second Circuit decision is not long, and case

16    is pretty close to this case in this respect -- this is the

17    *Google* books case, Second Circuit.

18        Google -- it says here in the decision in the Second

19    Circuit.  The claim was (as read:) "Google committed copyright

20    infringement through the library project of its Google Books

21    search tool by scanning and indexing more than 20 million books

22    and making available for public display snippets of most books

23    upon a user's search."

24        So, when Counsel says "output," right, the output was the

25    exact copy of the book, right, of a passage of the book.  That

 1  was the output.  There was no dispute about comparing the

 2  output that was there to the output that was in the book.  They

 3  were the same.  That was the whole point.  They wanted a copy

 4  and for a different use.  And the circuit -- the Second Circuit

 5  said that you ought to -- this was -- you ought to first

 6  consider the fair use arguments because that is going to inform

 7  you -- even if you reject them, that will inform your class

 8  certification at a minimum.

 9      And the one example that you gave right there in the

10  earlier questions about good faith is exactly an example of

11  that.

12         THE COURT:  How would you even know who to move for

13  summary judgment for since there are two different scenarios

14  and play for the --

15         MR. WINTHROP:  We will move for summary judgment on

16  the Plaintiffs before the Court, the Plaintiffs who sued us,

17  and whatever their particular facts are and however their book

18  was used.

19         THE COURT:  How many Plaintiffs do we have?

20         MR. WINTHROP:  There are three Plaintiffs essentially.

21  And can I just comment on one thing on your -- the example you

22  gave is perfect because this good faith/bad faith issue; okay.

23      So, I would like to read from your decision in the *Google

24  versus Oracle* case, the end of the case, the JMOL motions.  You

25  said there was a respectable view that good or bad faith should

no longer be a consideration after the Supreme Court's decision

in *Campbell versus Acuff-Rose* -- citations.  Put differently,

either a use is objectively fair or it is not; and subjective

worry over the issue arguably should not penalize the user.

In that very case the Supreme Court -- in your case, the

*Google versus Oracle*, the Supreme Court said (as read:) "As for

bad faith, our decision in *Campbell* expressed some skepticism

about whether bad faith has any role in a fair use analysis" --

citation.  "We find this skepticism justifiable as, quote,

copyright is a not a privileged reserved for the well-behaved,"

quote, quoting Judge Leval.

We believe we acted in good faith.  Please, let me make

that clear; that we disagree fundamentally everything they have

said about pirated and all that.  "Pirated" is just a jury

phrase.  In the *Google versus Oracle*, Google and Oracle had

license negotiations and they fell apart and Google decided to

proceed and use what they were discussing in their license

negotiations.  Was that pirated?  It was just unauthorized, and

it is unauthorized because every fair use case is, quote,

"unauthorized."  If it was authorized, it wouldn't be copyright

infringement.  You wouldn't get to fair use.

My point is our view is good faith, bad faith, none of

that is going to matter.  Their view is different.  You are

going to have to decide that, and how you decide will implicate

the class issues.  That's my point.

1          **MS. GEMAN:**  Your Honor, may I respond on a couple of

2     points?

3          **THE COURT:**  Go ahead.

4          **MS. GEMAN:**  So, first of all, to clarify, *Google* books

5     in no way was about entire output copying.  The Court was very

6     clear to say that the very limited snippet view in that case,

7     quote, "at best and after a large commitment of manpower

8     produces discontinous, tiny fragments amounting in the

9     aggregate to no more than 16 percent of a book."

10         This output -- it says (as read:) "This does not threaten

11    the rights holders with any significant harm to the value of

12    their copyrights or diminish their harvest of copyright

13    revenue."

14         This case is much more like -- is much more like *Napster*.

15    And with respect to the good faith/bad faith, putting aside

16    questions of that simply raises other common issues, we are not

17    hinging everything on the -- on the role of good faith.

18         The law is clear that -- in our view that the full taking

19    of, we are going to say the word "pirated works" for commercial

20    purposes is not fair use.  We -- the parties will argue, I

21    suspect, for a very long time about the relevance and

22    applicability of all of these cases; but it seems to me that

23    the question before the Court is whether there is any basis to

24    disturb the schedule Your Honor entered on October 10th.

25         I don't think we've heard -- at least I feel like I

1    haven't heard anything from Defendant that suggests that there

2    will be any efficiencies gained whatsoever in the wake of the

3    abundant and easily predominating commonalities here about how

4    Defendants obtained the books, how they used the books, how

5    they processed the books.

6        And the idea that that should be a seriatim decision as

7    opposed to one efficient decision seems very inconsistent with

8    the schedule Your Honor issued.  And so, our view is that

9    the -- it seems like the good faith/bad faith discussion, as

10   Mr. Winthrop is stating it, is somewhat orthogonal to the

11   question of what makes sense for this case.

12       **MR. WINTHROP:**  Can I say one last --

13       **THE COURT:**  Wait, let me ask -- all right.  Go ahead

14   and make your point.

15       **MR. WINTHROP:**  It is just that the fundamental premise

16   is wrong; that there is not some uniform way in which the books

17   were used.  That's where we started with this.  That is just

18   fundamentally not true that they all came -- that their class

19   is limited to, quote-unquote, Books 3.  There is an entirely

20   different process that we could talk in a closed session or in

21   writing under seal, but that is just not the same and it raised

22   a bunch of different issues.

23       **MS. GEMAN:**  It raises common issues.

24       **THE COURT:**  If you were to lose on your motion --

25   let's say I agreed with you.  I let you bring it.  Would you

```
 1   agree that collateral estoppel would apply and the class would
 2   win?
 3            MR. WINTHROP:  If we lose our motion or win our
 4   motion?
 5            THE COURT:  If you were to lose on your motion -- let
 6   me be -- if you were to lose on the issue of whether or not
 7   these three Plaintiffs --
 8            MR. WINTHROP:  Oh, oh.
 9            THE COURT:  It was fair use.
10            MR. WINTHROP:  Yeah.
11            THE COURT:  And let's say that I were to hold --
12   theoretically, as a matter of law -- that it's not fair use,
13   then would you accept that that would apply across the class,
14   assuming the class was later certified?
15            MR. WINTHROP:  I don't -- I want to make sure I answer
16   clearly.  We certainly would waive the one-way intervention
17   rule so others could use that -- you know, use it to their
18   advantage.
19        If you are asking me would --
20            THE COURT:  Use or would you be bound by?
21            MR. WINTHROP:  Yeah.
22            THE COURT:  Use is one thing.
23            MR. WINTHROP:  Well, we would not -- we would not
24   object to people, right, joining the class; and they would get
25   the benefit of that ruling.  The question I have, though, is
```

```
1   whether if you are asking me if on class certification this
2   somehow would take off all aspects of issues regarding fair
3   use, I don't know if I can agree on that.
4        That's -- I'm struggling with that; whether that means
5   that somehow the whole -- all -- all aspects of fair use get
6   removed from a decision about class certification; that, I
7   don't know I can agree to.  Maybe you are right.  That's -- I'm
8   not sure about that.
9             THE COURT:  All right.  Let me -- what was that date
10  that you wanted for your motion?
11            MS. GEMAN:  Thank you, Your Honor.  We respectfully
12  propose March 27th on the 49-day calendar that Your Honor
13  previously ordered.
14            THE COURT:  That would be to file?
15            MS. GEMAN:  Yes, Your Honor, that the opening brief
16  would be filed on Thursday, March 27th, rather than filed
17  Thursday, March 6th.  We have been working very hard towards
18  class cert.  So, if Your Honor opts to keep the current date,
19  of course, we will comply and are prepared.  The named
20  Plaintiffs are being deposed next week.  All of these issues
21  can be raised.  All of these arguments against class
22  certification, of course, can and will be raised in the
23  briefing.
24            THE COURT:  And when would you propose to file your
25  summary judgment motion?
```

1           **MR. WINTHROP:**  In our schedule we would -- I think we

2    said May if I'm not mistaken if it was coming first, and --

3    yeah, I think May 22nd.

4           **THE COURT:**  Listen, that's -- all the lawyers you have

5    here, you can file it tomorrow.  That's called delay city,

6    delay.

7           **MR. WINTHROP:**  Oh, there is nothing --

8           **THE COURT:**  You have been in this case for how long, a

9    year?

10          **MR. WINTHROP:**  No, no, Your Honor.  We have been in

11   the case since the summer.  This is the last -- this is the

12   last of these cases filed, and we are moving the fastest of any

13   of these cases.

14          **THE COURT:**  No, no -- well, look, I don't let grass

15   grow under my feet.  We -- you don't come in and ask for

16   permission to file a motion in May or in February.  No way.

17          **MR. WINTHROP:**  Well, Your Honor, fair enough.  If you

18   are agreeable to our proposal to reverse the order, tell me

19   when you would like us to file the summary judgment motion.

20          **THE COURT:**  I have a plan since both sides are

21   represented by mega funds, M-E-G-A --

22          **MR. WINTHROP:**  Not MAGA.  Mega you said.

23          **THE COURT:**  That's what I said.  Mega.

24          **MR. WINTHROP:**  Not MAGA, okay.

25          **THE COURT:**  Correct.  Are both -- we are going to have

```
 1   both motion briefs simultaneously.  You get to bring your

 2   motion on -- what was the date again?

 3           MS. GEMAN:  March 27th.

 4           THE COURT:  And you get to bring yours -- no more than

 5   25 pages -- and you get to bring yours on the same day, and you

 6   can brief them both on this 49-day track; and I will have them

 7   both -- I'm not going to say I will have them heard together.

 8       By the time we get through this -- see that guy over here?

 9   By the time he gets through it -- if he is still alive since he

10   is not a mega firm -- then I may decide, okay, it is clear to

11   me, we go with class cert first or it is clear to me, we go

12   with the summary judgment first.  I don't know the answer.  But

13   this will help inform the decision.  So, since you are not

14   small time operators, you are big time operators and can do

15   this.  You can do this.  You can wreck your holidays.  No

16   spring vacations.

17           MS. GEMAN:  Your Honor, I love that smile.  Thank you,

18   Your Honor.  Could I -- at the risk of being downgraded from

19   mega, could I just make one respectful suggestion?  In light of

20   that simultaneity, might we have more than three weeks to

21   oppose?  Perhaps a month or --

22           THE COURT:  No.  You already have got a 49-day thing.

23   No.  Mega.  Mega.  And you get two mega firms.

24           MS. GEMAN:  All right.  Thank you, Your Honor.

25           THE COURT:  All right.  So, anything more?  Now,
```

```
1    please don't do the following to me:  You come in here later

2    and I hear that you are not complying with what you told them

3    on discovery.  If that happens, summary judgment is off.

4              MR. WINTHROP:  I understand, Your Honor, absolutely.

5              THE COURT:  So, let's keep your word on this, your

6    discovery deal.  All right.  I'm not changing any other dates

7    right now.  I'm just changing the summary judgment, and I'm

8    changing the class cert dates.  So, you will have to figure out

9    when that 49 days runs.  I haven't done the math myself.  Has

10   anyone done the math?

11           MS. GEMAN:  We had done the math with March 6th; but

12   with March 27th, I think that will get us to the first week in

13   May.  So, maybe --

14             THE COURT:  It will be more than that.

15             MS. GEMAN:  Maybe the second week in May.

16             THE COURT:  I think it is more than that.

17             MS. GEMAN:  I think we had April 24th for March 6th.

18             THE COURT:  Look, what was the date you were going to

19   file, March 27th?

20             MS. GEMAN:  Yes, Your Honor.

21             THE COURT:  One, two, three, four --

22                    (Pause in the proceedings.)

23             THE COURT:  -- five, six, seven.  That's 49; right.  I

24   think that gets us to May 15th; is that right?

25             MR. WINTHROP:  That's the hearing.
```

```
 1              MS. GEMAN:  Yeah.

 2              THE COURT:  That would be the hearing date.  Now, am I

 3    back yet from my big trip?  I think I am, yes.

 4                        (Pause in the proceedings.)

 5              THE COURT:  A mega trip.

 6              MR. WINTHROP:  We can have the briefs delivered to

 7    wherever you are in the world, Your Honor, if you would like.

 8              THE COURT:  Thank you but no.  All right.  I don't

 9    have anything more to raise with you.  Did you come all the way

10    from Texas?  Where did you come from?

11                        (Inaudible response.)

12              THE COURT:  You are here.

13              MS. GEMAN:  I'm actually in New York, Your Honor,

14    although SF is our mother-ship, I'm in --

15              THE COURT:  See, if I had known that, I would have

16    stuck you with the Second Circuit rule; but, no, I didn't know

17    that.  How about him, where is he from?

18                        (Inaudible response.)

19              THE COURT:  So the local office is out of this case?

20              MS. GEMAN:  The local office is not out of this case,

21    but one of my partners is off in a deposition in the -- not the

22    MAGA, not the mega -- but the Meta case today and some other

23    folks are doing other things.

24              THE COURT:  So, where are all of your folks from?

25              MR. WINTHROP:  I will introduce you.  I have from
```

1    Anthropic Devon Henley Cook, in-house Counsel at Anthropic.  My

2    colleagues, attorneys at my firm, Estayvaine Bragg.

3            **THE COURT:**  His name again?

4            **MR. WINTHROP:**  Estayvaine Bragg.

5            **THE COURT:**  Okay.  And where does he practice?

6                         (No response.)

7            **MR. WINTHROP:**  San Francisco.  My colleague, Jessica

8    Gillotte, a lawyer at our firm, also here in San Francisco.

9    And my partner, Joe Farris in San Francisco.

10           **THE COURT:**  All four of you are from here?

11           **MR. WINTHROP:**  We are local, local, local.

12           **THE COURT:**  Okay.  So, you should have been

13   hometowned.

14           **MS. GEMAN:**  Your Honor, I'm just very happy to present

15   class cert to you soon.

16           **THE COURT:**  All right.  Well, good luck to both sides.

17   Please remember that this poor guy over here is going to have a

18   lot of reading to do.  So, make it clear-cut briefing, please.

19   Thank you.

20           **MR. WINTHROP:**  Thank you.

21           **THE CLERK:**  Court is adjourned.

22                    (Proceedings adjourned at 11:02 a.m.)

23                         ---oOo---

24

25

1

2

3                    **CERTIFICATE OF REPORTER**

4         I certify that the foregoing is a correct transcript

5 from the record of proceedings in the above-entitled matter.

6

7 DATE:   February 25, 2025

8

9

10

11    _____

12        Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
          United States District Court - Official Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25