

March 17, 2025

<u>VIA ECF</u>

Judge William H. Alsup
Phillip Burton Federal Building & U.S. Courthouse
450 Golden Gate Avenue, 16th Floor Clerk's Office
San Francisco, CA 94102

      RE: *Bartz, et. al. v. Anthropic PBC*, Case Number 3:24-CV-05417 (N.D. Cal.)
         Letter Motion to Compel Production of Documents

Dear Judge Alsup:

  Plaintiffs respectfully request an order directing Anthropic to: (1) complete its ESI productions by April 4; and (2) accept Plaintiffs' revised search term proposal sent on February 4. With pivotal briefing deadlines around the corner and highly relevant documents unproduced, the Court's intervention to set firm deadlines for ESI productions is necessary. Plaintiffs have made every effort to resolve this issue informally—including 8 meet-and-confers over the last 15 weeks—but these efforts have been met with only more delay. Among other things, Anthropic has breached the parties' agreement for production of priority ESI, an agreement memorialized in open court on February 25, and has taken months to respond to search term proposals.

**I. <u>Background</u>**

  *a. Anthropic Breaches the Parties' February 25 Discovery Agreement*

  On February 25, minutes before a scheduled hearing on Plaintiffs' February 20 discovery letter brief, Ex. A, the parties reached an agreement to moot the dispute. To resolve Plaintiffs' motion, Anthropic promised that, by March 20, it would produce documents hitting on Plaintiffs' priority terms for thirteen custodians from two sources, Vault and Slack (the "Agreement").[1] At the subsequent hearing, the Court accepted the parties' Agreement, but cautioned the parties:

> Now, please don't do the following to me: You come in here later and I hear that
> you [Anthropic] are not complying with what you told them on discovery. If that
> happens, summary judgment is off.

Ex. B at 18:25–19:3. The Court reiterated this in its minute order. *See* Dkt. 95.

  Anthropic, in fact, did not "comply[] with what [it] told" Plaintiffs. On March 9, Anthropic said it would not be able to produce any documents from Slack for eight of the thirteen agreed-upon custodians by March 20—seven days before Plaintiffs' motion for class certification is due. *See* Ex. C. This includes highly relevant direct messages to and from those eight custodians which hit on Plaintiffs' priority search terms, such as the names of the pirated datasets at issue in this case.

---

[1] Vault is a repository of Anthropic's e-mails and documents. Slack is an internal messaging system used frequently by Anthropic employees for individual and group messages.

Judge William H. Alsup
March 17, 2025
Page 2

### b. *Anthropic Takes Months to Respond to Plaintiffs' Proposed Search Terms*

Plaintiffs have tried to negotiate search terms with Anthropic for over three months, but Anthropic has dragged its feet:

- December 26, 2024: Plaintiffs sent Anthropic their initial search term proposal, which contained 185 proposed search terms.

- January 27, 2025: Anthropic responded to Plaintiffs' search term proposal with hit counts and objections. Anthropic accepted, without objection or modification, 123 of Plaintiffs' 185 proposed terms.

- February 4, 2025: Plaintiffs responded with revised terms for the terms to which Anthropic objected. To facilitate compromise and prioritize production of the most relevant documents, Plaintiffs designated 27 of the 185 search terms as "priority terms," for first-priority review.

- February 7, 2025: The parties met-and-conferred, and Anthropic agreed to send a search terms counterproposal. *See* Ex. D.

- February 25, 2025: Anthropic agreed to produce all responsive documents hitting on the priority terms by March 20. The parties began negotiating a substantial completion deadline after March 20 for the non-priority terms.

On March 14, over a month after promising to provide a search term counterproposal, Anthropic *walked back* its agreement on search terms and custodians. Despite initially agreeing to 123 of Plaintiffs' terms and 13 custodians on January 27, Anthropic's March 14 proposal included only 47 terms and 5 custodians. Anthropic's proposal even narrowed the priority terms it told Plaintiffs and the Court it would produce by March 20—apparently attempting to renegotiate the priority-terms Agreement six days before the deadline.

### II. **Plaintiffs' Letter Motion Should Be Granted**

Plaintiffs have met-and-conferred with Anthropic eight times (including twice since the February 25 hearing) and tried to reach agreements to keep this case on schedule. But Anthropic has consistently delayed. The parties' first Agreement regarding the priority terms—designed to ensure expedited production of a subset of documents before class certification briefing—has already been breached, despite the parties' agreement made in open court. And Anthropic has refused to meaningfully negotiate the remaining terms, which will govern what documents it reviews after March 20. Plaintiffs request an order that will ensure Anthropic produces relevant documents in a manner consistent with this Court's schedule, Anthropic's own demand for early summary judgment briefing, and the Court's direction at the most recent discovery hearing.

*First*, the Court should order that Anthropic complete its ESI productions by April 4. Plaintiffs' deadline to respond to Anthropic's summary judgment motion is April 17, and Plaintiffs will be deposing key Anthropic witnesses in early April. Anthropic's delayed productions and breach of the Agreement merit a court-ordered production deadline. *See Nat'l Urb. League v. Ross*, 2020 WL 7488068, at *3 (N.D. Cal. Dec. 13, 2020) (finding that Defendants' delayed document production "prejudices Plaintiffs and flouts the Court's case schedule" and requiring Defendants to produce documents by a specific date); *S.O. by & through*

Judge William H. Alsup
March 17, 2025
Page 3

*O'Neal v. Rescue Union Sch. Dist.*, 2024 WL 402489, at *2 (E.D. Cal. Feb. 2, 2024) ("plaintiff's point as to the promptness of production is well taken and the court finds that it is necessary and appropriate to impose a timeline for production").

      To the extent Anthropic claims it cannot meet the April 4 deadline, the Court should direct Anthropic to produce all documents that hit on the search terms without a responsiveness review. Courts have found such privilege-only reviews warranted, particularly where the party may designate the material AEO. *See In re Telescopes Antitrust Litigation*, No. 20-cv-03639-EJD, ECF No. 209, slip op. at 3 (N.D. Cal. Oct. 7, 2021) ("[T]he Court encourages Defendants to consider whether categories of documents may be produced without manual review after application of a privilege screen and an option to designate documents [as AEO]."); *In re Actavis Holdco U.S., Inc.*, 2019 WL 8437021, at *1 (3d Cir. Dec. 6, 2019) (citing cases where courts have "ordered the production of documents without a manual relevance review"). As part of the meet-and-confer process, Plaintiffs have suggested a privilege-only review as a solution and already agreed to permit Anthropic to batch-designate its productions AEO, subject to Plaintiffs' right to challenge the designations. Plaintiffs have also offered to conduct a privilege-only review themselves to facilitate Anthropic's broad search term proposal. As in *Telescopes*, the Court should direct Anthropic to avail itself of this option as helpful to expedite its productions.

      *Second*, the Court should order that Anthropic accept Plaintiffs' revised search term proposal sent on February 4. Anthropic has already agreed to the priority terms, so all that is left are the non-priority terms—the majority of which Anthropic already agreed to back on January 27. For the terms Anthropic did not agree to, Plaintiffs narrowed them in their February 4 proposal. According to Anthropic, the non-priority terms in Plaintiffs' revised search term proposal hit on approximately 69,000 documents.[2] *See* Ex. C.

\* \* \*

      Anthropic made the strategic choice to seek early summary judgment briefing. After getting what it asked for, Anthropic is now trying to have its cake and eat it too by postponing document production until *after* Plaintiffs' opposition to summary judgment is due. If the parties are going to stick to the current briefing schedules, the Court's intervention is necessary to set firm deadlines for the production of documents in response to Plaintiffs' requests served over five months ago.

Respectfully Submitted,

| LIEFF CABRASER HEIMANN & BERNSTEIN, LLP | SUSMAN GODFREY LLP | COWAN DEBAETS, ABRAHAMS & SHEPPARD LLP |
|---|---|---|
| /s/ Rachel Geman | /s/ Rohit Nath | /s/ Scott J. Sholder |
| Rachel Geman | Rohit Nath | Scott J. Sholder |

---

[2] This does not include family members, and it does not include the eight Slack custodians Anthropic is still processing.

# DECLARATION OF COLLIN FREDRICKS

I, Collin Fredricks, declare as follows:

1. I am an associate in the Houston, Texas office of the law firm Susman Godfrey L.L.P., counsel of record for Plaintiffs. I have personal knowledge of the facts set forth in this declaration, which is in support of Plaintiffs' Letter Motion to Compel Production of Documents.

2. On October 10, 2024, Plaintiffs served their first set of Requests for Production of Documents ("RFPs"). Plaintiffs served their second and third sets of RFPs on November 21 and November 27, respectively. On December 26, 2024, I emailed Anthropic Plaintiffs' initial search term proposal, which included 185 proposed search terms.

3. Plaintiffs met-and-conferred with Anthropic over Zoom videoconference eight times to discuss these discovery requests and Anthropic's pace of production: on December 4, 2024; January 7, 2025; January 8, 2025; January 27, 2025; February 7, 2025; February 10, 2025; February 26, 2025; and March 11, 2025.

4. On January 23, 2025, Anthropic had still made no productions and had not responded to Plaintiffs' search terms proposal. I emailed Anthropic that Plaintiffs intended to raise the pace of document production with the Court ahead of the January 30 Technology Tutorial Hearing. At a meet-and-confer on January 27, Anthropic committed to produce substantial ESI "early" in the week of February 3. Plaintiffs thus decided not to seek judicial assistance at that time. However, Anthropic did not produce any documents the week of February 3.

5. On January 27, in an email from Jessica Gillotte, Anthropic responded to Plaintiffs' search term proposal and accepted 123 of Plaintiffs' 185 proposed terms without objection.

6. On February 4, I sent an email to Anthropic's counsel with Plaintiffs' responses and revised search terms for the terms to which Anthropic objected. Plaintiffs also identified 27 of the 185 search terms as "priority terms," to assist Anthropic in prioritizing its review and producing the most relevant documents first. On February 7, the parties met to discuss search terms. At that meet-and-confer, Anthropic agreed to provide a search terms counterproposal. A true and correct copy of Jacob Miller's February 11 email to Anthropic recapping this meet-and-confer and memorializing Anthropic's commitment to provide a counterproposal is attached as **Exhibit D**.

7. On February 20, Plaintiffs filed a discovery letter brief motion to compel, due to Anthropic's repeated failure to produce documents in a timely manner consistent with its representations. A true and correct copy of this letter brief, filed on the public docket as ECF No. 86, is attached as **Exhibit A**.

8. On February 25, before the hearing on Plaintiffs' discovery letter, the parties reached an agreement to moot the dispute. Anthropic promised that, by March 20, it would produce all responsive documents hitting on Plaintiffs' 27 priority terms for thirteen custodians from two sources, Vault and Slack. (Jessica Gillotte has explained to me that Vault is a repository of Anthropic's emails and documents, and Slack is an internal messaging system used frequently by Anthropic employees for individual and group messages.) At the hearing, the Court accepted the parties' agreement but cautioned Anthropic to comply with it or "summary judgment is off." A true and correct copy of an excerpt from the February 25 Hearing Transcript is attached as **Exhibit B**.

9. On March 10, Jessica Gillotte, counsel for Anthropic, emailed Plaintiffs' counsel that Anthropic would not be able to adhere to the terms of the parties' agreement. Specifically, Anthropic would not produce documents by March 20 from 8 of the promised 13 Slack custodians. A true and correct copy of that email is attached as **Exhibit C**.

10. On March 11, the parties met and conferred to discuss the above discovery issues. Plaintiffs asked Anthropic to send the search term counterproposal it had agreed to provide on February 7. On March 14, Anthropic provided a "hit count and document report" with narrowed search terms. Despite agreeing to 123 of Plaintiffs' terms and 13 custodians on January 27, Anthropic's March 14 report included only 47 terms and 5 custodians. 27 of the 47 terms were the priority terms which Anthropic had already agreed to produce by March 20.

I declare under penalty of perjury pursuant to the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on March 17, 2025.

/s/ Collin Fredricks
Collin Fredricks

2
DECLARATION OF COLLIN FREDRICKS

# EXHIBIT A

Lieff Cabraser Heimann & Bernstein
Attorneys at Law

SUSMAN GODFREY

CDAS

February 20, 2025

**VIA ECF**

Judge William H. Alsup
Phillip Burton Federal Building & U.S. Courthouse
450 Golden Gate Avenue, 16th Floor Clerk's Office
San Francisco, CA 94102

        RE:    *Bartz, et. al. v. Anthropic PBC*, Case Number 3:24-CV-05417 (N.D. Cal.) Letter Motion to Compel Discovery Responses

Dear Judge Alsup:

      Pursuant to paragraph 35 of this Court's Supplemental Order to Order Setting Initial Case Management Conference, Plaintiffs submit this letter to compel timely production of material responsive to Plaintiffs' requests for production. Plaintiffs served their first set of requests more than four months ago. To date, Anthropic has produced only 393 documents, and 42 percent of that is just printouts from Anthropic's website.[1] While Anthropic is moving at a glacial pace, the case schedule is not: Plaintiffs' deadline to file a motion for class certification is in *two weeks*, fact discovery closes on August 29, and trial is set to begin in December of this year.

      Anthropic's delay is prejudicial to Plaintiffs. Plaintiffs have conferred with Anthropic three times over the last several weeks to ensure timely production of certain high-priority documents in advance of the class certification deadline to no avail. Plaintiffs thus request the following relief: (a) Anthropic must produce any documents it intends to rely on in opposition to class certification by February 28, 2025, and (b) Anthropic must finish producing responsive documents that hit on Plaintiffs' 27 priority search terms by March 21, 2025. This remedy balances the burdens of discovery with fairness and the need for a developed record, and will help ensure that the parties stay on track with the Court's schedule.

**Relevant Background**

      On October 10, 2024, the Court set a trial date of December 1, 2025, and set class certification briefing to commence on March 6, 2025. Plaintiffs served their first set of Requests for Production ("RFPs") on Anthropic that same day—October 10, 2024. Plaintiffs served a second set of RFPs on November 21, 2024. In Anthropic's responses, served on November 18 and December 23, it agreed to produce documents responsive to 43 of the 81 RFPs.

---

[1] Anthropic also "produced" slipsheets for more than 100 documents that are purportedly privileged. Plaintiffs, for their part, produced ample discovery on a timely basis and are sitting for depositions in a couple of weeks.

Judge William H. Alsup
February 20, 2025
Page 2

      In the wake of Plaintiffs' repeated follow-up (and good faith conferrals), Anthropic repeatedly assured Plaintiffs that it would promptly produce documents responsive to the Requests. *See* Ex. A (Plaintiffs' January 23 email re lack of production); Ex. B (Plaintiffs' January 27 email memorializing Anthropic's commitment to produce documents the following week); Ex. C (Plaintiffs' February 5 email again requesting Anthropic's first production); Ex. D (Plaintiffs' February 11 email requesting production); Ex. E. (Plaintiffs' February 13 email notifying Anthropic that Plaintiffs plan to raise these issues with the Court).

      Search terms negotiation followed a similar pattern. On December 26, Plaintiffs sent a proposal for search terms and custodians. On January 23, 2025, three-and-a-half months after receiving the Requests, Anthropic still made no productions and had not responded to the search terms proposal. Plaintiffs informed Anthropic that they intended to raise the pace of document production with the Court ahead of the January 30 Technology Tutorial Hearing. Anthropic represented that this was unnecessary and committed to produce substantial ESI "early" in the week of February 3. On the basis of that representation, Plaintiffs agreed not to seek judicial assistance at that time. On January 27, with time growing short, Plaintiffs identified 27 search terms that were a priority for class certification.

      Anthropic did not produce documents the week of February 3, but assured Plaintiffs it would make a substantial production the following week.

      On the night of Friday, February 14, Anthropic produced[2] 226 documents. Anthropic claimed to have reviewed 16,500 documents. Anthropic stated that it could review 10,000 documents per week going forward. Anthropic also stated that Plaintiffs' priority search terms resulted in 59,295 hits. Anthropic never objected to 22 of the 27 priority search terms.

**Plaintiffs' Letter Motion Should Be Granted**

      Plaintiffs requested documents related to Anthropic's use of copyrighted material to train its LLMs. These Requests asked Anthropic to produce responsive documents within 30 days, pursuant to Rule 34. By November 18, Anthropic agreed to produce responsive documents, including documents about books databases used to train their LLMs and the use of copyrighted books in their LLMs (RFPs 1, 3, 5, 14), documents about Plaintiffs (RFPs 6-8), documents about the value of books in LLM training (RFP 19), and any documents Anthropic will rely on to support its affirmative defenses (RFP 34), including its defense of fair use.

      The priority search terms that Plaintiffs proposed are designed to prioritize production of particular ESI likely to be highly relevant. Specifically, they target information that confirms that Anthropic treated all class works in the same way, for example, documents related to Anthropic's acquisition of large volumes of copyrighted books at one time or its use of large books datasets for LLM training. The terms are also sufficiently narrow: Anthropic agreed to 22

---

[2] Anthropic had made one previous production of 167 documents on January 24, but it consisted entirely of publicly available pages and documents from its website.

Judge William H. Alsup
February 20, 2025
Page 3

of the 27 priority terms without objection. And in all, the priority terms hit on 60,000 documents, a reasonable number for Anthropic to review in the next month, particularly given the delay to this point.[3] Anthropic has already agreed to prioritize these terms in its review; Plaintiffs merely ask for a deadline.

Anthropic's failure to produce documents responsive to the October 10 Requests breaches its obligations under Rule 34. Because Anthropic has now represented that it will review 10,000 documents a week, Ex. F (February 11 email stating that Anthropic expects to be able review "at least approximately 10,000 documents per week going forward"), there should be no issue completing production by March 21.

Plaintiffs are nonetheless concerned about further delays because very few documents have been produced to date—four months after the requests were served and now two weeks before Plaintiffs' deadline to file a motion for class certification. Anthropic must be required to produce documents by a date certain, and should not be permitted to benefit from its substantial delay. To the extent Anthropic intends to rely on certain documents in opposition to class certification, those documents should have been produced months ago. Anthropic should not be allowed to sandbag Plaintiffs, by refusing to produce documents in advance of Plaintiffs' opening class certification brief, only to selectively produce documents later—of which Plaintiffs would have had no prior notice—to support its opposition. *See Nat'l Urb. League v. Ross*, 2020 WL 7488068, at *3 (N.D. Cal. Dec. 13, 2020) (finding that Defendants' delayed document production "prejudices Plaintiffs and flouts the Court's case schedule" and requiring Defendants to produce documents by a specific date); *S.O. by & through O'Neal v. Rescue Union Sch. Dist.*, 2024 WL 402489, at *2 (E.D. Cal. Feb. 2, 2024) ("plaintiff's point as to the promptness of production is well taken and the court finds that it is necessary and appropriate to impose a timeline for production"). Plaintiffs therefore request an order that: (a) Anthropic cannot rely on any documents produced after February 28, 2025 in its opposition to class certification, and (b) Anthropic will finish producing responsive documents that hit on priority search terms by March 21, 2025.

| LIEFF CABRASER HEIMANN & BERNSTEIN, LLP | SUSMAN GODFREY LLP | COWAN DEBAETS, ABRAHAMS & SHEPPARD LLP |
|---|---|---|
| /s/ Rachel Geman<br>Rachel Geman | /s/ Rohit Nath<br>Rohit Nath | /s/ Scott J. Sholder<br>Scott J. Sholder |

*Counsel for Plaintiffs*

---

[3] Anthropic's representation that the priority terms hit on 59,295 documents is likely an overestimate, because it does not de-duplicate documents that hit on multiple terms. Anthropic appears to have arrived at that number by simply adding up the hit counts from each priority term, even though the same documents are likely hitting on multiple terms (and are thus being counted multiple times).

# EXHIBIT B

```
 1   please don't do the following to me:  You come in here later
 2   and I hear that you are not complying with what you told them
 3   on discovery.  If that happens, summary judgment is off.
 4            MR. WINTHROP:  I understand, Your Honor, absolutely.
 5            THE COURT:  So, let's keep your word on this, your
 6   discovery deal.  All right.  I'm not changing any other dates
 7   right now.  I'm just changing the summary judgment, and I'm
 8   changing the class cert dates.  So, you will have to figure out
 9   when that 49 days runs.  I haven't done the math myself.  Has
10   anyone done the math?
11            MS. GEMAN:  We had done the math with March 6th; but
12   with March 27th, I think that will get us to the first week in
13   May.  So, maybe --
14            THE COURT:  It will be more than that.
15            MS. GEMAN:  Maybe the second week in May.
16            THE COURT:  I think it is more than that.
17            MS. GEMAN:  I think we had April 24th for March 6th.
18            THE COURT:  Look, what was the date you were going to
19   file, March 27th?
20            MS. GEMAN:  Yes, Your Honor.
21            THE COURT:  One, two, three, four --
22                  (Pause in the proceedings.)
23            THE COURT:  -- five, six, seven.  That's 49; right.  I
24   think that gets us to May 15th; is that right?
25            MR. WINTHROP:  That's the hearing.
```

# EXHIBIT C

| | |
|---|---|
| **From:** | Bartz-AI-TT@simplelists.susmangodfrey.com on behalf of Gillotte, Jessica |
| **To:** | Collin Fredricks; Stoler, Reilly T.; "Bartz-AI-TT@simplelists.susmangodfrey.com" |
| **Cc:** | Winthrop, Douglas A.; Farris, Joseph; Nakamura, Angel Tang; Ramallo, Oscar; Bragg, Estayvaine; Joe.Wetzel@lw.com; Ivana.Dukanovic@lw.com |
| **Subject:** | [EXT] RE: Bartz v. Anthropic - Print Request |
| **Date:** | Monday, March 10, 2025 12:35:54 AM |
| **Attachments:** | image001.png |

Counsel,

We write concerning document review and production issues.

First, we wanted to let you know that we have run into a technical limitation that will make us unable to produce a subset of the "priority" Slack messages for certain custodians by March 20. As we've discussed before, we collected in two phases. In Phase 1, we collected for the five highest priority custodians, Dario Amodei, Jared Kaplan, Ben Mann, Pranay Sangani, and Vinay Rao. Phase 1 was completed on February 17 (prior to the discovery hearing on February 25). That same day, we initiated Phase 2: collection for the remaining eight custodians. Initially, our vendor estimated that the collection for the eight remaining custodians would be available for review by March 11. We apprised you of this in our March 3 email. This week, our vendor provided a revised estimate indicating that their collection is moving slower than expected due to the throttling by Slack, despite the fact that our vendor is pointing every available compute resource at the job. We have inquired and there is no way to increase the pace of collection (such as by paying Slack to accelerate it). We now believe those Slack messages will not be available for our review until March 24 (after the March 20 "priority" document deadline).

The result is that there will be a subset of "priority" Slack messages for the eight Phase 2 custodians that cannot be reviewed until after March 20. However, this will be limited to any public Slack channels and direct messages involving those eight custodians that do not overlap with the five Phase 1 custodians. Therefore, we anticipate that a majority of responsive Slack messages were already collected in Phase 1 (despite the smaller number of total custodians).

Second, we are generally amenable to negotiating a date for substantial completion of document production but the end of March is not realistic. However, if Plaintiffs work with us in good faith to substantially narrow their search terms, a date in early April may be feasible. This will require substantial narrowing. Setting aside the documents that hit on the 27 Priority Terms, we estimate that Plaintiffs' other "non-priority" requests encompass at least approximately 69,000 unique documents to review (not including family members), or 223,000 documents including family members. This is also underinclusive because it excludes Slack collections for the remaining eight custodians that are still being processed. We are willing to meet and confer this week to discuss narrowing terms to a reasonable scope, which will need to be much narrower than this (regardless of when the substantial completion deadline is).

Finally, we would like to meet and confer about the source code inspection requests.

# EXHIBIT D

| | |
|---|---|
| **From:** | Miller, Jacob S. |
| **To:** | "Collin Fredricks"; "Gillotte, Jessica"; Stoler, Reilly T.; "Rohit Nath"; "Alejandra Salinas"; "Jordan Connors"; Geman, Rachel; "Justin A. Nelson"; "ssholder@cdas.com"; "ccole@cdas.com"; "Craig Smyser"; Dozier, Wesley; Freymann, Anna J. |
| **Cc:** | "Winthrop, Douglas A."; "Farris, Joseph"; "Nakamura, Angel Tang"; "Bragg, Estayvaine"; "Joe.Wetzel@lw.com"; "Ivana.Dukanovic@lw.com" |
| **Subject:** | RE: [EXT] RE: Bartz v. Anthropic - Proposed search term hit results |
| **Date:** | Tuesday, February 11, 2025 2:35:09 PM |
| **Attachments:** | image001.png |

Counsel,

Please find below a summary of our meet and confer on February 7, 2025.

**Search terms** — Plaintiffs raised concerns about Your indexing of "noise words," leading to overinclusive hits on search terms. The parties agreed to evaluate whether re-indexing would be the best solution going forward. Anthropic agreed to send a counterproposal which includes proposed narrower terms for terms with high hit counts.

Row 29: Plaintiffs proposed running a search for "approximat*" w/20 ("dataset*" OR "data set*"). You asked which RFP this search corresponds to, and Plaintiffs clarified that it corresponds to RFP 70 ("Documents Concerning or Relating to whether Your Large Language Models comprise a compression of training data."). Plaintiffs proposed changing the search from w/20 to w/10.

Row 35: The parties agreed that You will locate and produce Ablation studies.

Row 75: Plaintiffs proposed running a search for "general knowledge w/20 "book*"" You raised a potential relevance objection. Plaintiffs explained that this is relevant because books provide LLMs with general knowledge across many different areas. Plaintiffs proposed changing w/20 to w/10.



**Custodians** — You agree that Jared Kaplan, Ben Mann, Dario Amodei, Mike Krieger, Pranay Sangani, Cam McKinnon, Vinay Rao, Tom Turvey, Mycal Tucker, Cecilia Latapie, Kevin Kelley, Gyula Lakatos, and Yuntao Bai are acceptable custodians. We also discussed other proposed custodians who likely have relevant and non-duplicative information, including co-founders Jack Clark, Tom Brown, and Sam McCandlish. You indicated that You are open to potentially swapping custodians, but did not want to expand the number of custodians. Please either agree to add the additional individuals