# EXHIBIT 8

```
 1              UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                      ---oOo---
 4    ANDREA BARTZ, ANDREA BARTZ,  )
      INC., CHARLES GRAEBER, KIRK  )
 5    WALLACE JOHNSON, MJ + KJ,    )
      INC., individually and on    )
 6    behalf of others similarly   )
      situated,                    )
 7                                 )
                 Plaintiffs,       )
 8                                 )
      vs.                          )   No. 3:24-cv-05417
 9                                 )
      ANTHROPIC PBC,               )
10                                 )
                 Defendant.        )
11    _____)
12
13         TRANSCRIPT DESIGNATED           "
14
15          VIDEO-RECORDED DEPOSITION OF
16               ANDREA MARIE BARTZ,
17        Taken in her individual capacity and as
18        a 30(b)(6) WITNESS FOR ANDREA BARTZ, INC.
19             Volume I - Pages 1 through 258
20    _____
21             Friday, March 7, 2025
22           San Francisco, California
23
24    Reported By:  JANE GROSSMAN, CSR No. 5225
25    Job No. SF 7222289
```

                                              Page 1

```
1                    I N D E X

2    VIDEO-RECORDED DEPOSITION OF ANDREA BARTZ, INDIVIDUALLY,

3    AND AS A 30(b)(6) WITNESS FOR ANDREA BARTZ, INC.

4    FRIDAY, MARCH 7, 2025

5    VOLUME I

6                                                    PAGE

7    MORNING SESSION                                  10

8    AFTERNOON SESSION                                111

9    EXAMINATION OF ANDREA BARTZ AS AN INDIVIDUAL

10          BY MR. FARRIS                             13

11          (Pages 1 through 231)

12   EXAMINATION OF ANDREA BARTZ AS A 30(b)(6)

13   WITNESS FOR ANDREA BARTZ, INC.

14          BY MR. FARRIS                             232

15          (Pages 232 through 252)

16                    ---oOo---

17                  E X H I B I T S

18       DEPOSITION EXHIBITS MARKED FOR IDENTIFICATION

19      [* Document designated "HIGHLY CONFIDENTIAL."]

20        [** Document designated "CONFIDENTIAL"]

21                    ---oOo---

22   EXHIBIT NO.   DESCRIPTION                       PAGE

23   Exhibit 47    Multipage excerpt from the         68

                   LinkedIn page for Andrea

24                 Bartz (No Bates numbers)

25   / / / / /
```

Page 2

| | | |
|---|---|---|
| 1 | Anne Shaver, Lieff Cabraser, Heimann & | 09:10:01 |
| 2 | Bernstein, representing Plaintiff and the proposed | 09:10:04 |
| 3 | class. | 09:10:06 |
| 4 | THE VIDEOGRAPHER:  Thank you. | 09:10:08 |
| 5 | Counsel on the Zoom have been noted for | 09:10:08 |
| 6 | the record. | 09:10:11 |
| 7 | Will the court reporter please introduce | 09:10:11 |
| 8 | herself and administer the oath to the witness? | 09:10:12 |
| 9 | And then counsel may proceed. | 09:10:17 |
| 10 | THE REPORTER:  Pursuant to the | 09:10:18 |
| 11 | requirements of AB 3252, I am stating on the record | 09:10:18 |
| 12 | that my name is Jane Grossman, and I am a California | 09:10:18 |
| 13 | Licensed Stenographic Reporter.  My CSR number is | 09:10:18 |
| 14 | 5225. | 09:10:18 |
| 15 | I will now swear the witness in. | 09:10:18 |
| 16 | ---oOo--- | 09:10:18 |
| 17 | ANDREA MARIE BARTZ, | 09:10:18 |
| 18 | called as a witness herein, | 09:10:18 |
| 19 | having been first duly sworn by the Certified | 09:10:18 |
| 20 | Shorthand Reporter, was thereupon examined and | 09:10:18 |
| 21 | testified as hereinafter set forth. | 09:10:18 |
| 22 | ---oOo--- | 09:10:18 |
| 23 | THE REPORTER:  Please begin. | 09:10:18 |
| 24 | ---oOo--- | 09:10:18 |
| 25 | / / / / / | 09:10:18 |

Page 12

| | | |
|---|---|---|
| 1 | [Note:  The following is the deposition of | 09:10:18 |
| 2 | Andrea Marie Bartz as an individual.] | 09:10:18 |
| 3 | ---oOo--- | 09:10:18 |
| 4 | EXAMINATION BY MR. FARRIS | 09:10:19 |
| 5 | BY MR. FARRIS: | 09:10:42 |
| 6 | Q.   Good morning, Ms. Bartz. | 09:10:44 |
| 7 | A.   Good morning. | 09:10:45 |
| 8 | Q.   Could you start by stating and spelling | 09:10:46 |
| 9 | your full name, including any middle name? | 09:10:48 |
| 10 | A.   Yes. | 09:10:50 |
| 11 | My name is Andrea Marie Bartz.  That's | 09:10:51 |
| 12 | A-n-d-r-e-a M-a-r-i-e B-a-r-t-z. | 09:10:54 |
| 13 | Q.   Thank you. | 09:10:59 |
| 14 | Have you been deposed before, Ms. Bartz? | 09:11:00 |
| 15 | A.   No.  This is the first time. | 09:11:02 |
| 16 | Q.   Okay.  Do you understand that a few | 09:11:04 |
| 17 | moments ago you took an oath to tell the truth from | 09:11:05 |
| 18 | the court reporter? | 09:11:08 |
| 19 | A.   Yes. | 09:11:09 |
| 20 | Q.   And do you understand that's the same sort | 09:11:09 |
| 21 | of oath you would take if you were testifying in | 09:11:11 |
| 22 | front of a jury in a courtroom today? | 09:11:14 |
| 23 | A.   Yes. | 09:11:16 |
| 24 | Q.   Okay.  I'm just going to go over a few | 09:11:17 |
| 25 | basic ground rules you probably already heard from | 09:11:19 |

Page 13

| | | |
|---|---|---|
| 1 | was originally copyrighted. | 01:06:44 |
| 2 | BY MR. FARRIS: | 01:06:47 |
| 3 | Q.   Okay.  Do you specifically remember how | 01:06:47 |
| 4 | The Lost Night was originally copyrighted? | 01:06:49 |
| 5 | A.   Yes. | 01:06:52 |
| 6 | Q.   And you specifically remember that was in | 01:06:53 |
| 7 | the name Andrea Bartz? | 01:06:54 |
| 8 | A.   Yes. | 01:06:57 |
| 9 | (Deposition Exhibit 55 was marked for | 01:06:58 |
| 10 | identification.) | 01:07:14 |
| 11 | THE WITNESS:  Thank you. | 01:07:14 |
| 12 | MR. FARRIS:  Okay.  Marking Exhibit 54 -- | 01:07:16 |
| 13 | MS. GEMAN:  I think this is 55. | 01:07:19 |
| 14 | MR. FARRIS:  Sorry.  Is it? | 01:07:22 |
| 15 | THE WITNESS:  Yes. | 01:07:23 |
| 16 | MS. GEMAN:  No. | 01:07:25 |
| 17 | MR. FARRIS:  Am I out of order? | 01:07:26 |
| 18 | I am out of order.  My fault.  I put | 01:07:28 |
| 19 | those backwards. | 01:07:32 |
| 20 | Exhibit 55.  Exhibit 55 is a document | 01:07:33 |
| 21 | with the Bates-stamp BARTZ-3412 to BARTZ-3415. | 01:07:41 |
| 22 | Q.   It's an e-mail chain from the | 01:07:47 |
| 23 | andreambartz@gmail.com address.  And the top e-mail | 01:07:51 |
| 24 | in the chain is dated September 28th, 2020. | 01:07:56 |
| 25 | Do you see that? | 01:08:00 |

Page 148

```
 1        A.    Yes.                                        01:08:01

 2        Q.    Okay.  I want to go back in the chain.      01:08:02

 3        A.    Sure.                                       01:08:09

 4              MS. GEMAN:  Just take the time you need      01:08:10

 5    to --                                                 01:08:10

 6    BY MR. FARRIS:                                        01:08:11

 7        Q.    Yeah, take as long as you need to -- to     01:08:11

 8    review it.                                            01:08:13

 9        A.    Yeah.                                       01:08:14

10        Q.    I'm going to -- I'm going to ask you about  01:08:14

11    a couple of the e-mails in the chain.  So feel free   01:08:16

12    to take a minute.                                     01:08:20

13        A.    Yeah, I'll take a minute to read them.      01:08:22

14    Thank you.                                            01:08:24

15              Okay.                                       01:09:23

16        Q.    Okay.  So this is an exchange from around   01:09:24

17    September 2020 -- well, from September 2020 about      01:09:29

18    your copyright registrations; correct?               01:09:34

19        A.    Yes.                                        01:09:37

20        Q.    Can you describe the nature of these        01:09:39

21    exchanges and what the -- what the communications     01:09:43

22    were about?                                           01:09:47

23              MS. GEMAN:  Objection.                      01:09:48

24              THE WITNESS:  I was reviewing page proofs   01:09:49

25    for a version of The Herd, I guess the paperback      01:09:53
```

Page 149

| | | |
|---|---|---|
| 1 | one.  And I said that the copyright page should be | 01:09:59 |
| 2 | for Andrea Bartz, not Andrea Bartz, Inc. | 01:10:03 |
| 3 | And my editor's assistant kind of pushed | 01:10:07 |
| 4 | back, indicating that she had been told it should be | 01:10:13 |
| 5 | for the corporation. | 01:10:18 |
| 6 | BY MR. FARRIS: | 01:10:21 |
| 7 | Q.   Okay.  And do you recall how this | 01:10:22 |
| 8 | resolved? | 01:10:32 |
| 9 | A.   Yes. | 01:10:34 |
| 10 | Q.   How did it resolve? | 01:10:34 |
| 11 | A.   I was wrong.  And the copyright already | 01:10:36 |
| 12 | correctly was Andrea Bartz, Inc. for The Herd. | 01:10:42 |
| 13 | Q.   Okay.  In the e-mail of September 17th, | 01:10:48 |
| 14 | 2020 at 12:03 p.m. -- it's the first page of the | 01:11:09 |
| 15 | exhibit -- | 01:11:12 |
| 16 | A.   Yes. | 01:11:18 |
| 17 | Q.   -- you say in the second sentence (as | 01:11:19 |
| 18 | read): | 01:11:21 |
| 19 | "Hmm, it's news to me...it was changed -- | 01:11:22 |
| 20 | way back in 2017, Alexandra asked me" -- | 01:11:25 |
| 21 | "asked about copyright and my lawyer | 01:11:29 |
| 22 | suggested I get paid by Andrea Bartz Inc | 01:11:31 |
| 23 | but keep the copyright in my name, not the | 01:11:33 |
| 24 | S-Corp's." | 01:11:35 |
| 25 | Do you see that? | 01:11:37 |

Page 150

```
1      A.    Yes.                                        01:11:38

2      Q.    Did you have a lawyer at that time?         01:11:39

3      A.    I believe I spoke to the lawyer for my      01:11:40

4   accountant at my accountant's office.               01:11:43

5      Q.    Uh-huh.                                     01:11:46

6      A.    And so I sort of was saying "my lawyer" --  01:11:46

7      Q.    Okay.                                       01:11:50

8      A.    -- without being specific.                  01:11:51

9      Q.    Okay.  And there's a reference after that   01:11:52

10  to a 9/21/17 e-mail with Alexandra and              01:12:01

11  Christina Lin.                                       01:12:06

12           Is "Alexandra" Alexandra Machinist?         01:12:07

13     A.    Yes.                                        01:12:12

14     Q.    Who is Christina Lin?                       01:12:12

15     A.    Her then assistant.                         01:12:14

16     Q.    Okay.  Do you recall if you still have      01:12:16

17  this e-mail, the 9/21/17 e-mail?                    01:12:24

18     A.    I don't have any reason to think I don't    01:12:31

19  have it anymore.                                     01:12:33

20     Q.    Okay.  There's a person on this thread      01:12:34

21  named Lindsey Sanderson.                             01:12:47

22           Do you know who that is?                    01:12:50

23     A.    She was Alexandra's assistant at the        01:12:51

24  time.                                                01:12:56

25     Q.    Okay.  And, then, on the very top e-mail,   01:13:00
```

Page 151

| | | |
|---|---|---|
| 1 | the fourth paragraph down, you say (as read): | 01:13:05 |
| 2 | "Re:  The copyright, thanks again for | 01:13:10 |
| 3 | digging!  I'm...not sure how this | 01:13:12 |
| 4 | happened, but I can confirm that | 01:13:16 |
| 5 | everything should be copyrighted under"-- | 01:13:17 |
| 6 | "copyrighted under Andrea Bartz" -- | 01:13:20 |
| 7 | (Clarification requested by the reporter.) | 01:13:21 |
| 8 | MR. FARRIS:  I'll slow down.  I'm sorry. | 01:13:22 |
| 9 | Q.    "-- and this needs to be amended for | 01:13:22 |
| 10 | past books." | 01:13:24 |
| 11 | Do you see that? | 01:13:26 |
| 12 | A.    Yes. | 01:13:27 |
| 13 | Q.    Okay.  So -- | 01:13:28 |
| 14 | MS. GEMAN:  I'll just note you left out a | 01:13:29 |
| 15 | word, but it doesn't matter. | 01:13:31 |
| 16 | MR. FARRIS:  Okay.  Sorry.  I need to read | 01:13:32 |
| 17 | slower for everybody's sake. | 01:13:34 |
| 18 | Q.   Was there an amendment for past books that | 01:13:38 |
| 19 | came after this? | 01:13:41 |
| 20 | A.   I don't believe any amendments came after | 01:13:44 |
| 21 | this, because I was incorrect in asking them to | 01:13:46 |
| 22 | change it at that time. | 01:13:51 |
| 23 | MR. FARRIS:  Okay.  I'm going to mark | 01:14:16 |
| 24 | Exhibit 56. | 01:14:17 |
| 25 | / / / / / | |

Page 152

```
 1              (Deposition Exhibit 56 was marked for       01:14:18

 2                   identification.)                       09:35:29

 3              MR. FARRIS:  Exhibit 56 is marked           01:14:26

 4     BARTZ-3382 to -3385.                                 01:14:28

 5              It's a October 22nd, 2020 Random House      01:14:32

 6     agreement.                                           01:14:42

 7        Q.   Do you see that?                             01:14:43

 8        A.   Yes.                                         01:14:44

 9        Q.   And if you turn to the second page, there   01:14:47

10     is a signature for "ANDREA BARTZ INC."              01:14:52

11              Do you see that?                            01:14:55

12        A.   Yes.                                         01:14:56

13        Q.   Do you have any reason to doubt that that   01:14:57

14     is your signature?                                  01:14:59

15        A.   No.                                          01:15:00

16        Q.   Okay.  And if you go back to the first      01:15:05

17     page, there's a -- there's a reference to three     01:15:07

18     agreements, one dated October 23rd, 2017, one dated 01:15:12

19     November 26th, 2018, and one dated November 12th,   01:15:17

20     2019.                                               01:15:22

21              Do you see those references?                01:15:23

22        A.   Yes.                                         01:15:25

23        Q.   Are those your publishing agreements with   01:15:26

24     Random House?                                        01:15:28

25        A.   Yes, I believe so.                           01:15:29
```

Page 153

| | | |
|---|---|---|
| 1 | Q.   Okay.  Do you recall why you entered an | 01:15:30 |
| 2 | amendment at this time concerning your publishing | 01:15:35 |
| 3 | agreements? | 01:15:38 |
| 4 | A.   I genuinely don't recall it being after | 01:15:42 |
| 5 | this e-mail exchange. | 01:15:45 |
| 6 | But I do recall that, after thinking | 01:15:47 |
| 7 | everything through and having my memory refreshed | 01:15:51 |
| 8 | and clarity, we concluded that the copyright owner | 01:15:54 |
| 9 | for all of my books I had already written and the | 01:15:59 |
| 10 | ones that were newly under contract, but hadn't come | 01:16:02 |
| 11 | out, should be Andrea Bartz, Inc. | 01:16:06 |
| 12 | Q.   Okay.  So was the purpose of this | 01:16:09 |
| 13 | agreement to -- to shift copyrights from | 01:16:16 |
| 14 | Andrea Bartz to Andrea Bartz, Inc.? | 01:16:21 |
| 15 | A.   I believe so. | 01:16:26 |
| 16 | MR. FARRIS:  Let's see.  We've been | 01:16:47 |
| 17 | going -- have we been going for another hour at | 01:16:48 |
| 18 | least? | 01:16:50 |
| 19 | MS. GEMAN:  Uh-huh. | 01:16:51 |
| 20 | MR. FARRIS:  Should we take another break? | 01:16:52 |
| 21 | MS. GEMAN:  Sure. | 01:16:55 |
| 22 | THE WITNESS:  So can we -- before we do, | 01:16:55 |
| 23 | there was one thing I thought of during lunch, which | 01:16:56 |
| 24 | I thought I should add -- | 01:16:59 |
| 25 | / / / / / | |

Page 154

```
 1              (Discussion off the record.)          01:38:16

 2    BY MR. FARRIS:                                  01:38:21

 3        Q.   Okay.  Exhibit 59 is a one-page document   01:38:21

 4    that is BARTZ-2334.  It's called "ASSIGNMENT," and  01:38:25

 5    it reads in full (as read):                     01:38:33

 6              "Effective as of April 15th, 2021,    01:38:37

 7              ANDREA BARTZ, for good and sufficient 01:38:41

 8              consideration, hereby assigns to      01:38:43

 9              ANDREA BARTZ INC., all of her right,  01:38:45

10              title, and interest in and to the     01:38:48

11              literary work entitled WE WERE NEVER  01:38:50

12              HERE (the 'Work'), which was authored by  01:38:52

13              ANDREA BARTZ, including all rights she 01:38:55

14              may have in the nature of copyright in 01:38:57

15              the Work for the remaining term of     01:39:00

16              copyright," end quote.                 01:39:03

17              Did I read that approximately correctly?  01:39:04

18        A.   Yes.                                    01:39:07

19        Q.   Okay.  Are those your signatures on the 01:39:07

20    lines for "ANDREA BARTZ" and "ANDREA BARTZ INC."?  01:39:11

21        A.   Yes.                                    01:39:13

22        Q.   Okay.  Do you have any understanding of 01:39:14

23    whether this document assigned copyrights from    01:39:19

24    yourself to -- to your corporation?               01:39:22

25        A.   Somewhat, yes.                          01:39:27
```

                                              Page 159

```
 1         Q.   What do you understand about the              01:39:28

 2    assignment here?                                        01:39:29

 3         A.   My understanding is that this assigns, as     01:39:33

 4    it says, all the right, title, and interest for         01:39:37

 5    We Were Never here to Andrea Bartz, Inc., the           01:39:40

 6    book -- the book, We Were Never Here, the book that     01:39:44

 7    was authored by myself, the individual,                 01:39:47

 8    Andrea Bartz.                                           01:39:49

 9         Q.   Do you believe yourself, the individual,      01:39:50

10    Andrea Bartz, retained any right to her copyright       01:39:53

11    upon this assignment?                                   01:39:59

12              MS. GEMAN:  Objection.                        01:40:01

13              THE WITNESS:  I believe those rights were     01:40:01

14    transferred to Andrea Bartz, Inc., an organization      01:40:04

15    of which I am the sole owner, CEO, president,           01:40:06

16    et cetera.                                              01:40:11

17    BY MR. FARRIS:                                          01:40:11

18         Q.   Okay.  Understanding that you may have        01:40:12

19    rights through your corporate interests, do you         01:40:14

20    believe that the rights were completely assigned to     01:40:17

21    the corporate interests here?                           01:40:19

22              MS. GEMAN:  Objection.                        01:40:21

23              THE WITNESS:  I'm not a lawyer, so I'm not    01:40:24

24    positive.                                               01:40:26

25    / / / / /
```

Page 160

```
 1    BY MR. FARRIS:                                    01:40:27
 2        Q.   Well, are you aware of any -- any        01:40:28
 3    reservation of rights reflected anywhere else?    01:40:31
 4             MS. GEMAN:  Objection.                    01:40:34
 5             THE WITNESS:  Can you say that another    01:40:39
 6    way, please?                                       01:40:40
 7    BY MR. FARRIS:                                     01:40:41
 8        Q.   Are you aware of any other document in    01:40:41
 9    which you reserved rights to your copyright after  01:40:43
10    this date?                                         01:40:47
11             MS. GEMAN:  Objection.                    01:40:49
12             THE WITNESS:  In which I, the individual, 01:40:50
13    reserved rights --                                 01:40:52
14    BY MR. FARRIS:                                     01:40:53
15        Q.   To the copyright for We Were Never Here   01:40:54
16    after April 15th, 2021.                            01:40:55
17        A.   Again, I'm -- I'm not a lawyer, but my    01:41:01
18    understanding is this assigned all rights for      01:41:03
19    We Were Never Here to the S Corporation.           01:41:08
20        Q.   Okay.  Why did you execute this assignment 01:41:12
21    on April 15th, 2021?                               01:41:16
22        A.   My recollection is that we were ready to  01:41:20
23    sign an option with Netflix to option the work.    01:41:24
24             And Netflix, for their purposes, needed   01:41:30
25    in a way that my publisher was not as concerned --  01:41:35
```

Page 161

| | | |
|---|---|---|
| 1 | needed all the rights to belong to the organization | 01:41:39 |
| 2 | that they were going to pay, which was Andrea Bartz, | 01:41:41 |
| 3 | Inc. | 01:41:43 |
| 4 | So to clear out any possibility of | 01:41:44 |
| 5 | confusion, I signed -- I signed an assignment. | 01:41:47 |
| 6 | Q.   So -- so Netflix had -- do you know if | 01:41:52 |
| 7 | Netflix had requested this assignment? | 01:41:55 |
| 8 | A.   I don't know. | 01:41:58 |
| 9 | Q.   Did you communicate with Netflix directly | 01:41:59 |
| 10 | in that respect? | 01:42:03 |
| 11 | A.   No. | 01:42:04 |
| 12 | Q.   Who communicated with Netflix about that | 01:42:04 |
| 13 | assignment -- | 01:42:06 |
| 14 | A.   My -- | 01:42:08 |
| 15 | Q.   -- on your behalf? | 01:42:09 |
| 16 | A.   My film agent. | 01:42:10 |
| 17 | Q.   Who is your film agent? | 01:42:12 |
| 18 | A.   Her name is Josie Freeman. | 01:42:14 |
| 19 | Q.   Is she at the same agency as your literary | 01:42:17 |
| 20 | agent? | 01:42:21 |
| 21 | A.   Yes. | 01:42:21 |
| 22 | Q.   How many of your films -- how many of your | 01:42:22 |
| 23 | books have been optioned? | 01:42:24 |
| 24 | A.   All of them. | 01:42:25 |
| 25 | Q.   Has Ms. Friedman -- | 01:42:26 |

Page 162

| | | |
|---|---|---|
| 1 | option agreement you signed? | 01:43:26 |
| 2 | A.    For any of my novels? | 01:43:28 |
| 3 | Q.    Yes. | 01:43:30 |
| 4 | A.    No. | 01:43:30 |
| 5 | Q.    What was the first film option? | 01:43:31 |
| 6 | A.    It was for The Lost Night. | 01:43:35 |
| 7 | Q.    Was The Lost Night -- was the counter- | 01:43:37 |
| 8 | party Netflix? | 01:43:39 |
| 9 | A.    No. | 01:43:41 |
| 10 | Q.    So in that case, the counter-party did not | 01:43:47 |
| 11 | ask you to execute a similar assignment? | 01:43:52 |
| 12 | A.    Correct. | 01:43:55 |
| 13 | (Deposition Exhibit 60 was marked for | 01:43:56 |
| 14 | identification.) | 01:43:56 |
| 15 | THE WITNESS:  Thank you. | 01:44:07 |
| 16 | MR. FARRIS:  Exhibit 60? | 01:44:11 |
| 17 | THE REPORTER:  Yes. | 01:44:12 |
| 18 | BY MR. FARRIS: | 01:44:18 |
| 19 | Q.    Exhibit 60 is marked BARTZ-4686. | 01:44:19 |
| 20 | It's a one-page document.  And it's | 01:44:24 |
| 21 | assignment -- it's an assignment that is generally | 01:44:26 |
| 22 | similar-looking to the last one we looked at, but | 01:44:32 |
| 23 | it's dated February 28th, 2025. | 01:44:35 |
| 24 | Do you see that, Ms. Bartz? | 01:44:39 |
| 25 | A.    Yes. | 01:44:40 |

Page 164

| | | |
|---|---|---|
| 1 | Q. Do you understand that you are assigning | 01:44:43 |
| 2 | rights in The Lost Night, The Herd, and The Spare | 01:44:45 |
| 3 | Room via this assignment? | 01:44:48 |
| 4 | A. Yes. | 01:44:50 |
| 5 | Q. And are you similarly assigning all your | 01:44:51 |
| 6 | rights from Andrea Bartz to Andrea Bartz, Inc. in | 01:44:53 |
| 7 | those works? | 01:44:55 |
| 8 | MS. GEMAN: Objection. | 01:44:56 |
| 9 | THE WITNESS: That is my understanding, | 01:45:00 |
| 10 | but I'm not a lawyer. | 01:45:01 |
| 11 | BY MR. FARRIS: | 01:45:02 |
| 12 | Q. Okay. Are you aware of any rights that | 01:45:03 |
| 13 | you have retained personally in these three works | 01:45:07 |
| 14 | after this assignment? | 01:45:11 |
| 15 | MS. GEMAN: Objection. | 01:45:13 |
| 16 | A. I am not aware of other rights. | 01:45:18 |
| 17 | Q. And there's a signature line for | 01:45:20 |
| 18 | "ANDREA BARTZ" and "ANDREA BARTZ INC." | 01:45:22 |
| 19 | Any reason to doubt that those are your | 01:45:24 |
| 20 | signatures? | 01:45:27 |
| 21 | A. No. | 01:45:27 |
| 22 | Q. This was executed, like, effectively last | 01:45:29 |
| 23 | week or less than -- around a week ago; right? | 01:45:33 |
| 24 | A. Uh-huh. Yes. | 01:45:37 |
| 25 | Q. What was the reason for the timing of | 01:45:40 |

Page 165

| | | |
|---|---|---|
| 1 | executing this last week or so? | 01:45:41 |
| 2 | A.   Because of counsel from -- advice from my | 01:45:47 |
| 3 | counsel. | 01:45:49 |
| 4 | Q.   Okay.  I won't ask you to reveal the | 01:45:50 |
| 5 | advice from your lawyer. | 01:45:52 |
| 6 | Was -- but I will ask, is this -- are you | 01:45:54 |
| 7 | negotiating a film option that this is related to? | 01:45:57 |
| 8 | MS. GEMAN:  Objection. | 01:46:01 |
| 9 | THE WITNESS:  No. | 01:46:02 |
| 10 | BY MR. FARRIS: | 01:46:15 |
| 11 | Q.   Okay.  So is there anything you can tell | 01:46:15 |
| 12 | me about the reason for the assignment other than | 01:46:16 |
| 13 | what your lawyer has advised you about it? | 01:46:19 |
| 14 | MS. GEMAN:  And I'm just going to say that | 01:46:21 |
| 15 | if -- if you can answer the question without | 01:46:22 |
| 16 | describing what a lawyer told you that -- one of | 01:46:24 |
| 17 | your lawyers told you, but if you can't, then you | 01:46:27 |
| 18 | shouldn't reveal privileged communication from any | 01:46:30 |
| 19 | lawyer. | 01:46:33 |
| 20 | THE WITNESS:  And can you repeat the | 01:46:36 |
| 21 | question? | 01:46:37 |
| 22 | BY MR. FARRIS: | 01:46:38 |
| 23 | Q.   Yeah. | 01:46:38 |
| 24 | Is there anything you can tell me about | 01:46:38 |
| 25 | the reason for this assignment other than what your | 01:46:40 |

Page 166

| | | |
|---|---|---|
| 1 | A.    But to walk you through it, I earned | 02:23:44 |
| 2 | out on the advance for We Were Never Here, meaning | 02:23:46 |
| 3 | my royalties against the advance exceeded $125,000. | 02:23:51 |
| 4 | So then I began getting royalties for We Were Never | 02:23:56 |
| 5 | Here. | 02:23:59 |
| 6 | Q.    Okay.  And were those -- are those | 02:23:59 |
| 7 | royalties -- have they always been paid to | 02:24:03 |
| 8 | Andrea Bartz, Inc.? | 02:24:06 |
| 9 | A.    Yes, I believe so. | 02:24:07 |
| 10 | Q.    Okay.  Were the advances for these books | 02:24:08 |
| 11 | paid to Andrea Bartz, Inc.? | 02:24:12 |
| 12 | A.    Yes, I believe so. | 02:24:14 |
| 13 | Q.    Were -- was the advance for The Herd paid | 02:24:17 |
| 14 | out to Andrea Bartz, Inc.? | 02:24:21 |
| 15 | A.    Yes, I believe so. | 02:24:23 |
| 16 | Q.    Has The Herd earned out? | 02:24:24 |
| 17 | A.    No. | 02:24:27 |
| 18 | Q.    Okay.  I don't have to go through all the | 02:24:31 |
| 19 | questions again. | 02:24:33 |
| 20 | (Deposition Exhibit 64 was marked for | 02:24:34 |
| 21 | identification.) | 02:24:34 |
| 22 | THE WITNESS:  Thank you. | 02:25:14 |
| 23 | MR. FARRIS:  Marking Exhibit 64, it's | 02:25:17 |
| 24 | BARTZ-4687 to BARTZ-4689. | 02:25:19 |
| 25 | Q.    Do you recognize what is depicted on | 02:25:29 |

Page 195

```
 1    BY MR. FARRIS:                                    02:58:25

 2         Q.   Okay.  And for any of your four books, has  02:58:26

 3    there -- do you know if Penguin Random House has   02:58:29

 4    ever issued a Royalty Report to Andrea Bartz, the  02:58:31

 5    individual?                                        02:58:36

 6         A.   I don't believe they have, but I'm not   02:58:36

 7    positive.                                          02:58:38

 8         Q.   Okay.                                    02:58:39

 9              (Deposition Exhibit 67 was marked for    02:58:39

10              identification.)                         02:59:04

11              THE WITNESS:  Thank you.                 02:59:06

12              MR. FARRIS:  Exhibit 67, which I just    02:59:13

13    marked, is a one-page document, BARTZ-278.         02:59:16

14         Q.   Do you recognize what this is, ma'am?    02:59:25

15         A.   Yes.                                     02:59:28

16         Q.   What is it?                              02:59:28

17         A.   This is a payment confirmation from ICM  02:59:29

18    for, I believe, the publication of The Lost Night  02:59:34

19    or -- excuse me -- payment on paperback publication 02:59:38

20    of The Lost Night.  Is that right?  Yeah.          02:59:43

21         Q.   Do these -- so this reflects a transfer  02:59:46

22    of funds from your literary agent to your company, 02:59:51

23    Andrea Bing (phonetic) -- Andrea Bartz Inc.?       02:59:57

24         A.   Yes.                                     03:00:01

25         Q.   So is this a payment of royalties?       03:00:01
```

Page 213

```
1        A.   No.                                      03:00:05

2             This is one-fourth of the advance at --  03:00:06

3    on the payment schedule that was in the publishing  03:00:11

4    agreement we looked at.                            03:00:15

5        Q.   Okay.  Got it.                            03:00:16

6             So the payments that are -- that have been  03:00:19

7    made via advances on your publishing agreements, do  03:00:21

8    those always go to ICM first?                      03:00:24

9        A.   Yes.                                      03:00:26

10       Q.   Okay.  These are really exciting          03:00:28

11   questions, I know.                                 03:00:39

12             (Deposition Exhibit 68 was marked for    03:00:40

13              identification.)                        03:00:40

14            THE WITNESS:  Thank you.                  03:00:50

15            MR. FARRIS:  Okay.  Very quickly,         03:00:52

16   Exhibit 68 is marked BARTZ-957.  It's one page.    03:00:56

17       Q.   It says:                                  03:01:01

18            "Penguin Random House Author Portal       03:01:01

19            "Units Shipped to Retailers."             03:01:04

20            Do you see that?                          03:01:07

21       A.   Yes.                                      03:01:07

22       Q.   This is a type of report you can generate  03:01:08

23   at the Author Portal?                              03:01:11

24       A.   Yes.                                      03:01:13

25       Q.   Okay.  So did you generate this yourself?  03:01:15
```

Page 214

```
1                    CERTIFICATE OF REPORTER
2              I, the undersigned, a Certified Shorthand
3    Reporter of the State of California, do hereby
4    certify:
5              That the foregoing proceedings were taken
6    before me at the time and place herein set forth;
7    that any witnesses in the foregoing proceedings,
8    prior to testifying, were administered an oath; that
9    a record of the proceedings was made by me using
10   machine shorthand which was thereafter transcribed
11   under my direction; and that the foregoing
12   transcript is a true record of the testimony given.
13             Further, that if the foregoing pertains to
14   the original transcript of a deposition in a Federal
15   Case, before completion of the proceedings, review
16   of the transcript [X] was [ ] was not requested.
17             I further certify I am neither financially
18   interested in the action nor a relative or employee
19   of any attorney or any party to this action.
20             IN WITNESS WHEREOF, I have this date
21   subscribed my name.
22                       Dated:  March 12, 2025
23
24
                         JANE GROSSMAN
25                       CSR No. 5225

                                              Page 255
```