Justin A. Nelson*
Alejandra C. Salinas*
Collin Fredricks*
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com
cfredricks@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Jordan W. Connors*
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com

J. Craig Smyser*
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor,
New York, NY 10019
Telephone: (212) 336-8330
csmyser@susmangodfrey.com

*Proposed Co-Lead Counsel*

*(Pro Hac Vice)*

Rachel Geman*
Jacob S. Miller*
Danna Z. Elmasry*
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
jmiller@lchb.com
delmasry@lchb.com

Daniel M. Hutchinson (SBN 239458)
Reilly T. Stoler (SBN 310761)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
dhutchinson@lchb.com
rstoler@lchb.com

*Proposed Co-Lead Counsel*

Scott J. Sholder*
CeCe M. Cole*
**COWAN DEBAETS ABRAHAMS
& SHEPPARD LLP**
60 Broad Street, 30th Floor
New York, New York 10010
Telephone: (212) 974-7474
ssholder@cdas.com
ccole@cdas.com

*Additional Counsel for the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No.  3:24-cv-05417-WHA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF CLASS CERTIFICATION** |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    ARGUMENT ...................................................................................................... 2

    A.    Rule 23(a): Anthropic's Adequacy Argument is Meritless.................................... 2

    B.    Rule 23(b)(3) Is Satisfied: Anthropic Relies Only on Speculation and Misstatements of Law. ........................................................................................ 2

        1.    The core questions present common questions of fact and law. ................. 3

        2.    Anthropic's Class membership arguments are foreclosed by Ninth Circuit law. ............................................................................................... 4

        3.    Anthropic fails to identify any non-speculative individualized issues related to ownership or validity. ...................................................... 7

        4.    There is no copyright exception to Rule 23. ............................................. 12

        5.    Damages will be determined by class-wide proof. .................................. 14

        6.    Superiority. ............................................................................................ 15

III.   CONCLUSION .................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Amchem Prods., Inc. v. Windsor,*
5
    521 U.S. 591 (1997) ............................................................................................................ 2

6
*Anders v. California State Univ., Fresno,*
    2024 WL 177332 (9th Cir. Jan. 17, 2024) ...................................................................... 2

7

8
*Antonick v. Elec. Arts, Inc.,*
    841 F.3d 1062 (9th Cir. 2016) ...................................................................................... 12

9
*Aquarian Found., Inc. v. Lowndes,*
10
    127 F.4th 814 (9th Cir. 2025) ................................................................................ 7, 10

11
*Baleja v. Northrop Grumman Space & Missions Sys. Corp.,*
    2020 WL 3213708 (C.D. Cal. Mar. 26, 2020) ........................................................ 7, 9

12

13
*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ................................................................................... 7, 9

14
*Boyle v. Progressive Specialty Ins. Co.,*
    326 F.R.D. 69 (E.D. Pa. 2018) ..................................................................................... 6

15

16
*Bozzio v. EMI Grp. Ltd.,*
    811 F.3d 1144 (9th Cir. 2016) ....................................................................................... 7

17
*Briseno v. ConAgra Foods, Inc.,*
18
    844 F.3d 1121 (9th Cir. 2017) ........................................................................... *passim*

19
*Carnegie v. Household Int'l, Inc.,*
    376 F.3d 656 (7th Cir. 2004) ...................................................................................... 15

20

21
*Century of Progress Prods. v. Vivendi S.A.,*
    2017 WL 5635013 (C.D. Cal. Sept. 28, 2017) ............................................................ 7

22

23
*Chess v. Volkswagen Grp. of Am., Inc.,*
    No. 17-cv-07287, 2021 WL 5507177 (N.D. Cal. Nov. 24, 2021) ............................. 5

24
*Disney Enters., Inc. v. VidAngel, Inc.,*
    2020 WL 2738233 (C.D. Cal. Mar. 31, 2020) ........................................................ 14

25

26
*Doe v. Mindgeek USA Inc.,*
    702 F. Supp. 3d 937 (C.D. Cal. 2023) .............................................................. 5, 6, 9

27
*Dream Games of Ariz., Inc. v. PC Onsite,*
28
    561 F.3d 983 (9th Cir. 2009) ............................................................................ 5, 7, 9

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ........................................................................................................ 10

4

5

*Flo & Eddie*,
    2015 WL 4776932 ..................................................................................................... 12, 13

6

*Football Ass'n Premier League Ltd. v. YouTube, Inc.*,
    297 F.R.D. 64 (S.D.N.Y. 2013) ..................................................................................... 12

7

8

*Ge Dandong v. Pinnacle Performance, Ltd.*,
    2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) .................................................................. 9

9

10

*Hanagami v. Epic Games, Inc.*,
    85 F.4th 931 (9th Cir. 2023) .......................................................................................... 12

11

*Hargis v. Pacifica Senior Living Mgmt., LLC*,
    2024 WL 2967536 (C.D. Cal. May 7, 2024) ............................................................. 14, 15

12

13

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) (*en banc*) ..................................................................... 1, 4

14

15

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
    617 F.3d 1146 (9th Cir. 2010) ................................................................................... 7, 8, 9

16

*Kadrey v. Meta*,
    2024 WL 5008065 (N.D. Cal. Dec. 6, 2024) ................................................................. 12

17

18

*Krakauer v. Dish Network, LLC*,
    2017 WL 4417957 (M.D.N.C. Oct. 3, 2017) ................................................................. 14

19

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) .......................................................................................... 15

20

21

*Lytle v. Nutramax Lab'ys, Inc.*,
    114 F.4th 1011 (9th Cir. 2024) ....................................................................................... 15

22

23

*Matamoros v. Starbucks Corp.*,
    699 F.3d 129 (1st Cir. 2012) ............................................................................................ 2

24

25

*McGucken v. Pub Ocean Ltd.*,
    42 F.4th 1149 (9th Cir. 2022) ........................................................................................... 3

26

*Mueller v. Puritan's Pride, Inc.*,
    2021 WL 5494254 (N.D. Cal. Nov. 23, 2021) ................................................................. 2

27

28

*In re Napster, Inc. Copyright Litig.*,
    2005 WL 1287611 (N.D. Cal. June 1, 2005) ........................................................... *passim*

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
 2023 WL 1813530 (C.D. Cal. Feb. 7, 2023) .................................................................. 2

*Nevarez v. Forty Niners Football Co.*,
 LLC, 326 F.R.D. 562 (N.D. Cal. 2018) ................................................................. 5, 9

*New York Times Co. v. Microsoft Corp.*,
 757 F. Supp. 3d 594 (S.D.N.Y. 2024) .................................................................... 2

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
 31 F.4th 651 (9th Cir. 2022) ................................................................................... 9

*Pirian v. In-N-Out Burgers*,
 2007 WL 1040864 (C.D. Cal. Apr. 5, 2007) ......................................................... 15

*Range Rd. Music, Inc. v. East Coast Foods, Inc.*,
 668 F.3d 1148 (9th Cir. 2012) ............................................................................... 13

*Schneider v. YouTube, LLC*,
 674 F. Supp. 3d 704 (N.D. Cal. 2023) ............................................................. 12, 13

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
 2021 WL 1254683 (E.D. Va. Jan. 12, 2021) ........................................................ 14

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
 93 F.4th 222 (4th Cir. 2024) ................................................................................... 3

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act
(FACTA) Litig.*,
 300 F.R.D. 347 (C.D. Cal. 2013) .......................................................................... 15

*UMG Recordings, Inc. et al v. Uncharted Labs, Inc. et al*,
 1:24-cv-04777-AKH (S.D.N.Y. May 1, 2025), ECF No. 95 (Miller Ex. 54) ........................ 11

*Utopia Ent., Inc. v. Claiborne Par.*,
 2006 WL 8435006 (W.D. La. Jan. 10, 2006) ........................................................ 12

*Van v. LLR, Inc.*,
 61 F.4th 1053 (9th Cir. 2023) ............................................................................. 3, 12

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
 No. 2672, 2016 WL 4010049 (N.D. Cal. July 26, 2016) ......................................... 5

*Vulcan Golf, LLC v. Google Inc.*,
 254 F.R.D. 521 (N.D. Ill. 2008) ............................................................................ 12

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Waite v. UMG Recordings, Inc.*,
  450 F Supp. 3d 430 (S.D.N.Y. 2020) ................................................................. 8, 11

*WB Music Corp. v. Rykodisc, Inc.*,
  1995 WL 631690 (E.D. Pa. Oct. 26, 1995) ............................................................ 12

*Williams v. Apple, Inc.*,
  338 F.R.D. 629 (N.D. Cal. 2021) ........................................................................ 5, 9

*Wolf v. Hewlett Packard Co.*,
  2016 WL 7743692 (C.D. Cal. Sept. 1, 2016) ......................................................... 14

*Zakinov v. Ripple Labs, Inc.*,
  2023 WL 4303644 (N.D. Cal. June 30, 2023) .......................................................... 2

*Zubia v. Shamrock Foods Co.*,
  2017 WL 10541431 (C.D. Cal. Dec. 21, 2017) ....................................................... 14

**Statutes**

17 U.S.C. § 101 ......................................................................................................... 8

**Court Rules**

Rule 23(b)(2) ............................................................................................................. 2

Rule 23(b)(3) ......................................................................................................... 1, 3

**Treatises**

2 Newberg on Class Actions § 4:51 (5th ed.). ............................................................ 4

1

## I.    **INTRODUCTION**

2          Anthropic treated books—and copyright holders—in a uniform way. Common evidence

3     shows that Anthropic █████████████████████████████████████████████████

4     █████████████████████████████████████████████████████████████████████

5     ███████████████████████████████████████████████████████████████████████████

6     ████████████████████████████████████████

7          Anthropic has made clear everywhere *but* in its opposition to class certification—where fair

8     use gets nary a mention until page 20—that this case rises and falls on its fair use defense. Anthropic

9     concedes that core fair use factors—factors one and four—are common issues. Factor four will turn

10    on several common questions with common answers, including: has Anthropic harmed the existing

11    book market, and if its conduct were widespread, would Anthropic's unlicensed copying harm a

12    likely-to-develop licensing market for LLM training. Factor one, likewise, turns on common evidence

13    of Anthropic's largescale piracy and competing expert testimony about how Anthropic uses books to

14    train its LLMs.

15         Anthropic, for its part, does not seriously dispute that fair use will be resolved class wide: it

16    admits that its summary judgment motion on fair use raises solely common questions of fact and law.

17    Because all class members' claims will rise or fall on this central common issue (among others), this

18    is the quintessential case for class certification under Rule 23(b)(3). *In re Hyundai & Kia Fuel Econ.*

19    *Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (*en banc*) (certification under Rule 23(b)(3) may be proper

20    "even if just one common question predominates").

21         Anthropic's opposition says little about the fair use defense at the center of this case, focusing

22    instead on the feasibility of identifying which books are in Anthropic's own training datasets and the

23    owners of those copyrighted works. Yet under Ninth Circuit law, there is no "freestanding

24    administrative feasibility prerequisite to class certification." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d

25    1121, 1126 (9th Cir. 2017). In any event, Anthropic's manageability arguments make no sense, and

26    would not be an obstacle to class certification even if considered.

27         The alternative to class-wide adjudication may well be exculpation of Anthropic's common

28    conduct. Few authors have the resources needed to retain experts, manage discovery, and litigate

against a multi-billion dollar technology company. With a class action, fair use will be decided once and for all class-wide, and a well-structured claims administration process will enable efficient resolution of any issues of ownership or class member identification consistent with due process. Plaintiffs' motion should be granted.

## II.    ARGUMENT

Plaintiffs have satisfied Rule 23(a), Rule 23(b)(3), and Rule 23(g).[1]

### A.    Rule 23(a): Anthropic's Adequacy Argument is Meritless.

Anthropic asserts that some Class members use LLMs and may not object to the use of their works in training data, and from there unsuccessfully tries to make the jump to a legal conflict. However, to defeat adequacy, a conflict must be actual (not speculative) and go to the heart of the litigation. *Anders v. California State Univ., Fresno*, 2024 WL 177332, at *2 (9th Cir. Jan. 17, 2024). There are no conflicts. Courts consistently have held that absent class members' desire to let an illegal practice persist does *not* defeat adequacy. *See, e.g.*, *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) ("[A]n interest by certain putative class members in maintaining the allegedly unlawful policy is not a reason to deny class certification."); *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2023 WL 1813530, at *15-16 (C.D. Cal. Feb. 7, 2023). That some writers may use AI is irrelevant,[2] and any class member who disagrees with Plaintiffs' legal theory can exercise their right to opt out. *See Zakinov v. Ripple Labs, Inc.*, 2023 WL 4303644, at *4 (N.D. Cal. June 30, 2023).

### B.    Rule 23(b)(3) Is Satisfied: Anthropic Relies Only on Speculation and Misstatements of Law.[3]

Class certification requirements are "readily met" where, as here, common factual questions for each element of the underlying cause of action necessarily center upon *the defendant's* course of conduct. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Napster, Inc.*

---

[1] Anthropic does not contest numerosity, typicality, or adequacy of counsel, and makes no stand-alone commonality challenge. Plaintiffs also satisfy the requirements of Rule 23(b)(2) and, if the Court were to deny (b)(3) certification, (b)(2) relief would be the only relief remaining. *See Mueller v. Puritan's Pride, Inc.*, 2021 WL 5494254, at *8-9 (N.D. Cal. Nov. 23, 2021). Plaintiffs do seek injunctive relief, and a (b)(2) class is warranted.

[2] *New York Times Co. v. Microsoft Corp.*, 757 F. Supp. 3d 594, 596 (S.D.N.Y. 2024) (denying motion to compel discovery into plaintiff's use of generative AI).

*Copyright Litig.*, 2005 WL 1287611, at *7 (N.D. Cal. June 1, 2005) ("claims of every member of the class are uniformly premised upon the uploading or downloading of a copyrighted work"). "[A] plaintiff need not rebut every individualized issue that could possibly be raised." *Van v. LLR, Inc.*, 61 F.4th 1053, 1066 (9th Cir. 2023). Anthropic raises a hodgepodge of speculative "complications that *could* arise" and seeks to impose ascertainability and administrative-feasibility requirements that do not exist under Rule 23. Cert. Opp. at 17 (emphasis added). Yet Anthropic effectively concedes that its fair use defense will turn on common proof, and that alone suffices for Rule 23(b)(3).

### 1.    The core questions present common questions of fact and law.

Against the backdrop of Anthropic's undisputed common treatment of Class members, fair use is a common issue that will drive resolution of all Class members' claims. This will turn on evidence of Anthropic's common course of conduct, including how Anthropic's (and other LLM companies') use of pirated websites props up and legitimizes shadow libraries, the impact of LLM training on the market for books and the writing profession, and whether there is a likely-to-develop licensing market for LLM training.[4] Indeed, there is a wealth of common evidence of factor four market harm to the potential licensing market for Plaintiffs' books assuming Anthropic's infringing conduct were widespread. *See McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1163 (9th Cir. 2022) (noting that such a showing will "negate fair use"). Common evidence also confirms that Anthropic's

---

[4] *See, e.g.,* █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████; Miller Ex. 51 (Anthropic Economic Index, an "initiative aimed at understanding AI's effects on labor markets and the economy over time"); ████████████

████████████████████████████████████████████ Miller Ex. 53 ("Not too long ago, 'shadow-libraries' were dying . . . Then came AI. Virtually all major companies building LLMs contacted us to train on our data. Most (but not all!) US-based companies reconsidered once they realized the illegal nature of our work."); Miller Ex. 52 (stating that Anthropic expects "powerful AI systems" by "early 2027" which would match or exceed "Nobel Prize Winners" and noting the resulting "potential large-scale changes to the economy"); Miller. Ex. 59, Bartz Dep. 35:3-40:4; Miller Ex. 60, Graeber Dep. 28:21-29:13; Miller Ex. 61, Johnson Dep. 172:23-174:19; Decl. of J. Malackowski, ECF No. 156, ¶¶ 31-52; *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 227 (4th Cir. 2024) (downloading music over the internet without permission constitutes copyright infringement).

exploitation of Class members' protected expression enables its LLMs to flood the market with

cheaply-made longform works that depress demand for books in the long run.[5] Anthropic does not

meaningfully dispute that fair use is a common issue, only speculating that factors two and three "may

require individual analyses." Cert. Opp. at 20. Even that is wrong: Plaintiffs' works are all books, and

███████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████[6] See MSJ Opp. at 11-12. Nor would it matter. The

principal factors—the factors nearly always dispositive of any fair use analysis—are the first and

fourth factors, both of which Anthropic concedes are common questions that will turn on common

evidence. Cert Opp. at 20. The fundamental issue on which all Class Members' claims will rise or

fall—fair use—will turn on common proof and common questions with common answers.

Anthropic also does not contest that other key questions are common, including whether

█████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████ The

great weight of common merits issues in this case easily overcomes the administrative-feasibility

Anthropic raises on opposition. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 557; 2

Newberg on Class Actions § 4:51 (5th ed.).

## 2. Anthropic's Class membership arguments are foreclosed by Ninth Circuit law.

Anthropic argues that identifying Class members—identifying the legal and beneficial owners

of Class Works and ████████████████████████████████████████████—will be

so administratively infeasible as to overwhelm the central common questions. Cert. Opp. at 10-20.

This argument fails. The Ninth Circuit expressly rejected any administrative feasibility requirement

under Rule 23. *Briseno*, 844 F.3d at 1124-25 n.4, 1128 (in the context of identifying purchasers of

cooking oil, holding that "administrative feasibility cannot be considered in a vacuum; instead, a court

---

[5] *See, e.g.*, Malackowski, ¶¶ 35-37 (citing sources); Plaintiffs' Opposition to Anthropic's Motion for
Summary Judgment, ECF No. 158 ("MSJ Opp."), Ex. 4; Zhao MSJ Opp. Decl. at ¶ 81.

[6] ████████████████████████████████████████████████████████████████████████

1    must consider the overall costs and benefits of class adjudication given the particular nature of the

2    case"). Here, both Classes are comprised of owners of registered copyrights that were either

3    downloaded as part of ███████████████████████████ (Pirated Books Class) or

4    ████████████████████████████████████████████. Cert. at 1. Because

5    registrations provide a rebuttable presumption of ownership *and* validity, *see Dream Games of Ariz.,*

6    *Inc. v. PC Onsite*, 561 F.3d 983, 987 n. 2 (9th Cir. 2009), the Court may determine the merits issue of

7    ownership of a valid copyright on the present record based on common evidence.

8         The question of which person or entity owns the copyright is, by contrast, a classic

9    administrative issue of class member identification. This relates to identifying the person or entity

10   entitled to collect any recovery, not to whether there was copyright infringement in the first instance.

11   Allocation among copyright owners is, at most, a manageability issue that does not implicate

12   Anthropic's due process interest, that pales in comparison to the unquestionably common issues, and

13   that is not a basis to fail to certify a class. *See Briseno*, 844 F.3d at 1124-25 n.4, 1128, 1131

14   (allocation issues "do[] not implicate . . . due process interest at all because the addition or subtraction

15   of individual class members affects neither defendant's liability nor the total amount of damages it

16   owes the class"; there is a "well-settled presumption that courts should not refuse to certify a class

17   merely on the basis of manageability"). Courts in this circuit routinely reject defendants'

18   administrative feasibility arguments especially where there is predominance—even where a

19   defendant's records alone do not show the class and third party information is needed. *See, e.g., Doe*

20   *v. Mindgeek USA Inc.*, 702 F. Supp. 3d 937, 950 (C.D. Cal. 2023) (certifying class of underage sex

21   trafficking victims despite individualized inquiries required to determine whether victim was

22   underage at time of offence); *Nevarez v. Forty Niners Football Co.*, LLC, 326 F.R.D. 562, 577 (N.D.

23   Cal. 2018) (identification with records of stadium attendance and self-identifications); *In re:*

24   *Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672, 2016 WL 4010049,

25   at *18 (N.D. Cal. July 26, 2016) (involving notice to tens of thousands of non-Volkswagen dealers

26   and asking them to share it with their members); *Chess v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-

27   07287, 2021 WL 5507177, at *9 (N.D. Cal. Nov. 24, 2021) (class member identification with

28   reference to external databases); *Williams v. Apple, Inc.*, 338 F.R.D. 629, 645-46 (N.D. Cal. 2021)

1   (need to determine who paid for family plan not impediment to certification).[7]

2       All of the administrative issues that Anthropic raises can be addressed after a class trial on

3   common issues and during the claims administration process. During claims administration, copyright

4   owners can be directly identified through a combination of public records (e.g., the copyright

5   registration, Anthropic's class-wide books datasets (including an ISBN list that it maintains)), Ex. 49,

6   Tucker Dep. 70:21-71:24, and self-identification that includes the submission of affidavits, copyright

7   registrations, and copies of the claimed works. Anthropic would have the opportunity to challenge

8   whether any purported claimant met the criteria for class membership, such as the opportunity to

9   challenge affidavits and other proof submitted and even, if necessary, limited discovery. *Briseno*, 844

10  F.3d at 1131 ("At the claims administration stage, parties have long relied on claim administrators,

11  various auditing processes, sampling for fraud detection, follow-up notices to explain the claims

12  process, and other techniques tailored by the parties and the court to validate claims." (quotations

13  omitted)); *Mindgeek*, 702 F. Supp. 3d at 950 ("class members may self-identify, and defendants may

14  challenge the claims of absent class members during the claims administration process").

15      Anthropic suggests that addressing class member ownership via claims administration would

16  violate its due process rights. Cert. Opp. at 15. Not so. As *Briseno* recognized, "the due process

17  question is not whether the identity of class members can be ascertained with perfect accuracy at the

18  certification stage but whether the defendant will receive a fair opportunity to present its defenses

19  when putative class members actually come forward." 844 F.3d at 1132. Anthropic's speculation[8]

20  about "potentially millions of mini-trials on copyright ownership and validity," of all the works they

21  infringed, Cert. Opp. at 10, only confirms why class-wide resolution is necessary here. *See Napster,*

22  2005 WL 1287611, at *1 (rejecting similar arguments about potential work-by-work mini-trials and

23  certifying a class of "over 2.5 million copyrighted musical works").

24

25

26  _____
    [7] *Boyle v. Progressive Specialty Ins. Co.*, 326 F.R.D. 69, 76, 81-82 (E.D. Pa. 2018) (identification
    from comparison of defendant's records with other sources including "owner's manuals,
27  manufacturers' spreadsheets, manufacturers' specifications, product brochures and NHTSA notices").

    [8] ████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████

3. **Anthropic fails to identify any non-speculative individualized issues related to ownership or validity.**

Anthropic's administrative-feasibility arguments are unsupported, for the reasons below.

**Ownership:** Anthropic does not dispute that copyright registrations are *prima facie* evidence of ownership that—if unrebutted—constitute definitive evidence of same, but invokes the possibility of potential future challenges to Class members' ownership. *See Aquarian Found., Inc. v. Lowndes*, 127 F.4th 814, 819 (9th Cir. 2025); Cert. Opp. at 11. Those registrations—combined with analysis of Anthropic's own metadata regarding and datasets containing the works—provide objective, centralized evidence of copyright ownership. *Dream Games*, 561 F.3d at 987 n. 2. The mere fact that a defendant may exercise its "right of rebuttal"—or contest a would-be claimant's membership in the Class(es)—"does not preclude the predominance of common questions." *Blackie v. Barrack*, 524 F.2d 891, 906 n.22 (9th Cir. 1975); *Baleja v. Northrop Grumman Space & Missions Sys. Corp.*, 2020 WL 3213708, at *5 (C.D. Cal. Mar. 26, 2020). Indeed, as set forth below, there is every reason to believe that class-wide records will "be conclusive as to most of the class," *Blackie*, 524 F.2d at 906 n.22, as Anthropic has failed to identify a single question of ownership that would present a material individualized issue.  Instead it makes two flawed arguments.

*First,* Anthropic misstates facts about the Named Plaintiffs. Each of the Named Plaintiffs owns their work(s). Anthropic tries to make hay of the "common practice" among artists and authors (including Plaintiffs here) of using loan-out companies to hold ownership of their works for tax and estate planning reasons. *Century of Progress Prods. v. Vivendi S.A.*, 2017 WL 5635013, at *1, n.2 (C.D. Cal. Sept. 28, 2017).[9] But because all three authors and any relevant loan-out companies are named plaintiffs, Anthropic cannot claim that any claims fail due to lack-of-ownership. *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1157 (9th Cir. 2010) (work-for-hire issues no bar to recovery "when there is no dispute between the two potential owners, and both are plaintiffs to the lawsuit."). Specifically:

**Andrea Bartz** is the author of all of her works and the owner of the copyrights in her works

---

[9] Loan-out companies are legally fictitious entities "employed for the financial benefit of successful artists and entertainers . . . [that are] typically wholly owned by an artist." *Bozzio v. EMI Grp. Ltd.*, 811 F.3d 1144, 1147 (9th Cir. 2016).

1   through her loan-out, Bartz, Inc., to which Ms. Bartz has expressly assigned her copyrights. ECF Nos.

2   147-9; 147-10. Citing no evidence, Anthropic argues that "[i]t now seems all of Bartz's books were

3   written as works-for-hire in the scope of her employment for Bartz Inc." Cert. Opp. 13. This is both

4   wrong and irrelevant. It is wrong because, as a matter of fact, Ms. Bartz did not author her works as

5   works-for-hire, and thus retains beneficial ownership of her copyrights.[10] It is irrelevant because, even

6   if Ms. Bartz lacked either beneficial or legal ownership of her copyrights, Anthropic does not dispute

7   that her loan-out, Bartz, Inc., owns those rights.[11]

8       ***Charles Graeber*** authored *The Good Nurse* and owns the rights in that book. Anthropic

9   claims Mr. Graeber's LLC (Having & Selling LLC) may actually own the rights to *The Good Nurse*,

10   but again it cites no evidence for this. Mr. Graeber has searched his records and confirmed that he

11   never assigned his ownership rights in *The Good Nurse* to Having & Selling LLC, and he therefore

12   remains the legal and beneficial owner of the relevant rights in the work. *See* Declaration of Charles

13   Graeber ¶ 3. Anthropic also points to a deal Mr. Graeber entered with Lionsgate where he assigned

14   the "Motion Picture, Television Production, Sequel, and Remake rights" in the works for a film

15   adaptation. Anthropic says that, in this agreement, Mr. Graeber assigned "any rights of every kind" to

16   Lionsgate, and thus may have (perhaps accidentally) assigned the right of reproduction as it pertains

17   to LLM training to Lionsgate. That's incorrect and based on Anthropic's selective quotation of the

18   agreement. The agreement "except[s]" from the assignment all "Reserved Rights and Frozen Rights

19   specifically enumerated in Schedule 2," and Schedule 2, in turn, confirms: "For the avoidance of

20   doubt, ***the copyright in the Book is reserved to Author***." Dkt. 147-16 at 4627 (emphasis added). Mr.

21   Graeber's film-adaptation agreement is entirely irrelevant.

22

23   [10] The "work for hire" doctrine applies only to a narrow category of works, as defined in Section 101
24   of the U.S. Copyright Act, where the employer or commissioning party is considered the author of a
     work, even if created by an employee or independent contractor. 17 U.S.C. § 101. Anthropic cites
     *Waite v. UMG Recordings, Inc.*, 450 F Supp. 3d 430 (S.D.N.Y. 2020), to suggest that works owned
25   by loan outs are "works for hire," but this is misleading: the cited pages do not mention work for hire
     and the case says nothing of the sort. *Cf. Jules Jordan Video*, 617 F.3d at 1157 (9th Cir. 2010)
26   (rejecting notion that work was work-for-hire where performer in fact had a loan-out company).
     [11] Anthropic also points to statements from Ms. Bartz to her publisher sorting out whether Bartz Inc.
27   should be listed on a contract. Class Cert. Opp. at 4. Ms. Bartz is not a lawyer, *id.*, and this question
     was resolved in the email exchange. Anthropic also references that two film option agreements that
28   were not yet produced. *Id.* Plaintiffs subsequently located and produced these options. But film
     options have nothing to do with this case, or Ms. Bartz's copyrights in her books.

1      *Kirk Wallace Johnson* authored his asserted books, and owns those books through his loan-

2      out MJ + KJ Inc. Mr. Johnson owns MJ + KJ Inc. jointly with his wife. Because Anthropic does not

3      dispute that MJ + KJ Inc. owns the rights to the asserted works, it has no basis to challenge

4      ownership. *Jules Jordan Video*, 617 F.3d at 1157.

5          There are no "thorny factual" or "legal questions" to resolve about the Plaintiffs' ownership of

6      their asserted works. Cert. Opp. at 15. Between the Plaintiffs and their loan-out companies, each

7      Plaintiff group owns both the legal or beneficial rights in the asserted works.

8          *Second*, Anthropic's claims about public domain works, orphan works, foreign rightsholders,

9      and works for hire are equally misleading. In each case and for each category, the purported issues

10     Anthropic raises can and—as *Briseno* instructs—should be resolved as part of a claims administration

11     process following a liability determination. 844 F.3d at 1124-33. In any event, these issues ignore the

12     Class definitions. The proposed Classes are limited to works which were registered with the United

13     States Copyright Office, which addresses purported foreign works or public domain arguments. And,

14     the registrations—whether the authors were foreign or domestic—are presumptive evidence of

15     ownership and validity. *See Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 987 n. 2 (9th Cir.

16     2009). Any author- or owner-specific issues which Anthropic wishes to contest may be done via

17     claims administration. *See, e.g.*, *Briseno*, 844 F.3d at 1124-33; *Williams*, 338 F.R.D. at 645-46;

18     *Mindgeek*, 702 F. Supp. 3d at 950, *Nevarez*, 326 F.R.D. at 577. Finally, as to work for hire, this

19     likewise is simply a question of determining the owner of the work for hire. *See, e.g.*, *id.* There are no

20     issues with the proposed Class definitions, but if there were concerns, they could be remedied by

21     modification. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669

22     n.14 (9th Cir. 2022).

23         **Validity:**  Copyright registrations provide a rebuttable presumption of validity. *See Dream*

24     *Games of Ariz., Inc.*, 561 F.3d at 987 n. 2; *see also Baleja*, 2020 WL 3213708, at *5 ("'right of

25     rebuttal [] does not preclude the predominance of common questions.'") (quoting *Blackie v. Barrack*,

26     524 F.2d 891, 906 n.22 (9th Cir. 1975)); *Ge Dandong v. Pinnacle Performance, Ltd.*, 2013 WL

27     5658790, at *9 (S.D.N.Y. Oct. 17, 2013) ("where each plaintiff can prove reliance through common

28     evidence . . . certification may well be appropriate.") (quotation marks and alterations omitted).

1   Anthropic never actually argues that any of the named Plaintiffs' works have any validity issues,

2   much less any issues sufficient to rebut the presumption. *Cf. Aquarian Found.*, 127 F.4th at 819

3   ("infringer can rebut the presumption of validity created by a certificate of copyright registration

4   [only] by offering some evidence or proof to dispute or deny the plaintiff's prima facie case"). That is

5   hardly surprising, given the low bar for copyrightability. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,

6   499 U.S. 340, 361 (1991).

7       **Class Works Identification in Common Books Datasets:** Plaintiffs' expert Dr. Ben Zhao,

8   Neubauer Professor of Computer Science at the University of Chicago, confirms that determining

9   ███████████████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████████████

11  ███████████████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████████

16  ███████████████████████████████████████████████████████

17  ██████████████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████[13]

22  _____

23  ███████████████████████████████████████████████████████████████

24  ███████████████████████████████████████████████████████████████

25  ███████████████████████████████████████████████████████████████

26  ███████████████████████████████████████████████████████████████

27  ███████████████████████████████████████████████████████████████

28  ███████████████████████████████████████████████████

1    Dr. Iyyer's criticisms are smoke and mirrors. ████████████████

2    ████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████

8    █████████████████  █████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████

12   ████████████████

13   **Infringement:** Anthropic also argues that implementing Dr. Zhao's method would require

14   "acquiring accurate digitized copies of essentially all books registered for U.S. copyrights to lay

15   foundation for admissible infringement analysis." Cert Opp. at 19. This is not true and makes no sense.

16   For starters, ████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ████  Any remaining works can be identified during the claims administration process, where potential

20   claimants can submit an affidavit and copy of their work(s). *Infra* 6.

21   Anthropic cites *UMG Recordings, Inc. v. Unchartered Labs, Inc.*, to argue that only

22   deposit copies are sufficient to establish copyright infringement. But the *UMG Recordings*

23   decision is merely an order on a motion to compel discovery, and in any event was rescinded after

24   UMG filed a motion requesting clarification. *See UMG Recordings, Inc. et al v. Uncharted Labs,*

25   _____

26   ████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████

28   ████████████████████████████████████████████

1  *Inc. et al*, 1:24-cv-04777-AKH (S.D.N.Y. May 1, 2025), ECF No. 95 (Miller Ex. 54) (clarifying

2  that plaintiffs need only "produce the truest copy in their possession"). Courts in the Ninth Circuit

3  have squarely held that deposit copies are unnecessary as a valid copy of the work. *Kadrey v.*

4  *Meta*, 2024 WL 5008065, at *2 (N.D. Cal. Dec. 6, 2024) (rejecting argument that "deposit copies

5  define the boundaries of what is copyrighted").

6                    **4.    There is no copyright exception to Rule 23.**

7          Anthropic tries to distinguish the most on-point copyright class certifications—*Flo & Eddie*

8  and *Napster*—and suggest this case is more akin to *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704,

9  718 (N.D. Cal. 2023) and *Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 297 F.R.D. 64, 65

10  (S.D.N.Y. 2013), the two cases on which it primarily relies. This is wrong.

11         *First, Schneider*[16] and *Football Association* are inapposite. Class certification was denied in

12  both these cases because there were individualized questions of whether the video uploaded to

13  YouTube was substantially similar enough to the asserted work to infringe. This hopelessly

14  complicated individualized issue of video-by-video analysis of uploads from all over the world made

15  certification unviable.[17] There is no case that stands for the proposition that ownership issues defeat

16  class certification in copyright cases, and Anthropic's attempt to cite *Schneider* and *Football*

17  *Association* for that proposition is misleading. As *Flo & Eddie* noted, "these cases do not rely on

18  similar ownership issues to defeat certification and it is only when ownership is coupled with a

19  significant amount of other individualized issues that courts raise objections." *Flo & Eddie*, 2015 WL

20

21  [16] Notably, the courts rejected the use of DMCA takedown notices to determine copyright ownership
   because YouTube processed millions of takedown notices automatically without determining validity,
22  and the DMCA did not indicate that such notices are proof of copyright ownership. The courts did *not*
   hold, as Anthropic suggests, that registrations are not prima facie evidence of ownership.

23  [17] Anthropic's other cases likewise involve the need for similarity analysis, or issues even more afield.
   *See Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 523 (N.D. Ill. 2008) (addressing inapposite
24  Anti-Cybersquatting Protection Act claim using records from the U.S. PTO's Trademark Electronic
   Search System); *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1066 (9th Cir. 2016) (requiring work by
25  work comparison in substantial similarity analysis); *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 946
   (9th Cir. 2023) (same); *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023) (UTPCA case where
26  many class members had already been refunded, requiring "an inquiry into the circumstances and
   motivations behind each of the 13,680 discounts"); *WB Music Corp. v. Rykodisc, Inc.*, 1995 WL
27  631690, at *6 (E.D. Pa. Oct. 26, 1995) ("each alleged act of infringement" turned on whether the
   "individual copyright owner ha[d] licensed" the work to the defendant); *Utopia Ent., Inc. v. Claiborne*
28  *Par.*, 2006 WL 8435006, at *8 (W.D. La. Jan. 10, 2006) (only some class members were eligible for
   statutory damages, and fair use analysis differed case-by-case).

1  4776932, at *12 (distinguishing *Football Association* and *Schneider*). Anthropic's opposition simply

2  ignores that courts certify copyright infringement class actions even where individual questions of

3  "proof of ownership, registration, and actual damages ultimately require[] a work-by-work inquiry."

4  *In re Napster*, 2005 WL 1287611, at *7.

5      *Second*, it is important to emphasize *why* there is no need for individualized infringement

6  analysis. Anthropic implicitly concedes there is no analog here to comparing a YouTube clip to a

7  copyrighted work (because it is not LLM outputs that are being compared to books), but asserts that

8  Plaintiffs must submit individualized evidence showing that the copyrighted book "is substantially

9  similar" to Anthropic's infringing copies. Not so. ████████████████████████████████

10 ██████████████████████████████████████████████████ Where, as here,

11 plaintiff presents direct evidence of copying, "[a] showing of substantial similarity" between the

12 copyrighted work and the allegedly infringing work "is irrelevant." *Range Rd. Music, Inc. v. East*

13 *Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012). ███████████████████

14 ████████████████████████████████████████████████████████████

15 ███████████████████████████████████ As discussed above, that is a question of

16 ascertainability—not predominance. And in any event, it can be streamlined by Dr. Zhao's hash

17 algorithm as part of the claims administration process.

18      *Third,* Anthropic's attempt to paint *Napster* and *Flo & Eddie* as smaller or simpler than this

19 case misses the mark (though Napster was not necessarily smaller: *Napster* certified a class of

20 "27,000 music publishers who collectively own and control more than 2.5 million copyrighted

21 musical works." *Napster*, 2005 WL 1287611, at *1). That the proposed Classes here may be larger

22 only supports certification, because the same identical conduct will apply to even more people and the

23 alternative to certification (hundreds of thousands or millions of cases) is even more manageable in

24 context. Further, the class member identification issues are easier per Class member than in *Flo &*

25 *Eddie*, where unlike here there was no federal registration scheme for the state-law copyright interests

26 in the works at issue. *Id*. at *7.

27      As in *Napster* and *Flo & Eddie*, the Court should certify the Proposed Classes because the suit

28 is premised on Anthropic's common course of conduct, and common issues related to that conduct

1    will predominate over any individualized issues related to ownership or identifying class members.

2    As in *Napster*, a "shared factual predicate . . . gives rise to a host of common legal issues" because

3    "the claims of every member of the class are uniformly premised upon the uploading or downloading

4    of a copyrighted work." *In re Napster*, 2005 WL 1287611, at *7; *see also Zubia v. Shamrock Foods

5    Co.*, 2017 WL 10541431, at *10 (C.D. Cal. Dec. 21, 2017) (finding predominance where "these

6    central legal and factual central predominate over other minor factual variations of Class Members'

7    potential claims"); *Wolf v. Hewlett Packard Co.*, 2016 WL 7743692, at *13 (C.D. Cal. Sept. 1, 2016)

8    (certifying consumer class where status of personal use of purchase was individualized issue). Thus,

9    even looking at the specific issue of copyright class action cases cited by the parties, certification is

10    compelled.

11    **5.    Damages will be determined by class-wide proof.**

12    If Plaintiffs elect statutory damages, the factors informing the jury's per-work determination

13    will focus nearly exclusively on Anthropic, such as willfulness and knowledge. *See* Ninth Circuit

14    Man. Model Civ. Jury Instrs. § 17.35 (2017). With respect to the revenue lost by rightsholders and

15    profits earned by Anthropic, Plaintiffs will present expert testimony and documentary evidence

16    related to the lost book purchase revenue from ████████████ (Dkt. 127, Turvey Decl. ¶ 22),

17    Anthropic's role in propping up shadow libraries (Miller Ex. 53), evidence of lost licensing revenue

18    that Anthropic would otherwise have paid, and the profitability of Anthropic's models. *See* Miller Ex.

19    48; Malackowski Decl. ¶ 34. The "circumstances of infringement" will turn on common proof of

20    ████████████████████████████████████████████████. In cases

21    where a plaintiff alleges mass infringement, the jury is instructed on factors to consider and the

22    verdict form asks the jury to provide a single "per work" amount that is later multiplied by the total

23    number of works to tabulate aggregate damages. *See, e.g., Hargis v. Pacifica Senior Living Mgmt.,*

24    *LLC*, 2024 WL 2967536, at *4 (C.D. Cal. May 7, 2024); Ex. 55, at 4 (verdict form asking jury to

25    provide a single statutory damages award which would be multiplied by the number of copyrighted

26    works "for each copyrighted work"); *Disney Enters., Inc. v. VidAngel, Inc.*, 2020 WL 2738233, at *2

27    (C.D. Cal. Mar. 31, 2020); Ex. 56, at 2-3 (same); *Sony Music Ent. v. Cox Commc'ns, Inc.*, 2021 WL

28    1254683, at *1 (E.D. Va. Jan. 12, 2021); Ex. 57, at 2 (same); *see also Krakauer v. Dish Network,*

PLAINTIFFS' REPLY IN SUPPORT OF
CLASS CERTIFICATION
Case No. 3:24-cv-05417-WHA

1    *LLC*, 2017 WL 4417957, at \*9 (M.D.N.C. Oct. 3, 2017); Ex. 58 at 2 (asking jury to provide a single

2    statutory damages award for "each call made in violation of the TCPA" across the class).

3        Though individualized damages calculations are not necessary here, even if they were, that

4    would not defeat predominance. *See, e.g., Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir.

5    2013) (reversing district court for denying class certification due to individualized calculation of

6    damages).[18] *See supra* Section II.B.2.[19]

7            **6.    Superiority.**

8        There are only two alternatives to litigating this case as a class action: (1) huge numbers of

9    individual suits, which serial litigation of identical issues, or (2) viable claims are never brought

10   because of the cost of litigation. Unfortunately, the second situation is far more likely. *See Carnegie v.*

11   *Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is

12   not 17 million individual suits, but *zero* individual suits" (emphasis in original)). The claims

13   administration issues Anthropic points out pale in comparison to the massive efficiencies gained by

14   litigating this case as a class action rather than individual suits. Anthropic also raises the specter of

15   "ruinous statutory damages" due to its own ███████████████████████████

16   ████. Cert. Opp. at 23. However, "[c]ourts routinely reject substantive due process challenges to

17   statutory damage awards." *Hargis*, 2024 WL 2967536, at \*5. And in any event, this carries no weight

18   at the class certification stage.[20]

19   **III.    CONCLUSION**

20       The Court should certify the Proposed Classes.

21

22

23

----

24   [18] Anthropic's sole case *rejected* the defendant's arguments that individualized damages questions
     undermined predominance. *See Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1024 (9th Cir. 2024).

25   [19] ████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████

27   [20] *See In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 300
     F.R.D. 347, 363 (C.D. Cal. 2013) ("More importantly, even if a possible award . . . will ultimately be

28   unconstitutionally excessive, the certification stage is not the correct point in the proceedings to draw
     such a conclusion."); *Pirian v. In-N-Out Burgers*, 2007 WL 1040864, \*5 (C.D. Cal. Apr. 5, 2007).

1    Dated: May 1, 2025                      Respectfully submitted,

2

3                                            By:  /s/ Rachel Geman

4                                            Rachel Geman*
                                             Jacob S. Miller*
5                                            Danna Z. Elmasry*
                                             **LIEFF CABRASER HEIMANN**
6                                            **& BERNSTEIN, LLP**
                                             250 Hudson Street, 8th Floor
7                                            New York, New York 10013-1413
                                             Telephone: (212) 355-9500
8                                            rgeman@lchb.com
                                             jmiller@lchb.com
9                                            delmasry@lchb.com

10                                           Daniel M. Hutchinson (SBN 239458)
                                             Reilly T. Stoler (SBN 310761)
11                                           **LIEFF CABRASER HEIMANN**
                                             **& BERNSTEIN, LLP**
12                                           275 Battery Street, 29th Floor
                                             San Francisco, CA 94111-3339
13                                           Telephone: (415) 956-1000
                                             dhutchinson@lchb.com
14                                           rstoler@lchb.com

15                                           By:  /s/ Justin Nelson

16                                           Justin A. Nelson*
                                             Alejandra C. Salinas*
17                                           Collin Fredricks*
                                             **SUSMAN GODFREY L.L.P**
18                                           1000 Louisiana Street, Suite 5100
                                             Houston, TX 77002-5096
19                                           Telephone: (713) 651-9366
                                             jnelson@susmangodfrey.com
20                                           asalinas@susmangodfrey.com
                                             cfredricks@susmangodfrey.com
21
                                             Rohit D. Nath (SBN 316062)
22                                           **SUSMAN GODFREY L.L.P**
                                             1900 Avenue of the Stars, Suite 1400
23                                           Los Angeles, CA 90067-2906
                                             Telephone: (310) 789-3100
24                                           RNath@susmangodfrey.com

25                                           Jordan W. Connors*
                                             **SUSMAN GODFREY L.L.P**
26                                           401 Union Street, Suite 3000
                                             Seattle, WA 98101
27                                           Telephone: (206) 516-3880
                                             jconnors@susmangodfrey.com

28

PLAINTIFFS' REPLY IN SUPPORT OF
                                                                CLASS CERTIFICATION
                                                                Case No. 3:24-cv-05417-WHA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

J. Craig Smyser*
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor,
New York, NY 10019
Telephone: (212) 336-8330
csmyser@susmangodfrey.com

By:  */s/Scott Sholder*

Scott J. Sholder*
CeCe M. Cole*
**COWAN DEBAETS ABRAHAMS
& SHEPPARD LLP**
60 Broad Street, 30th Floor
New York, New York 10010
Telephone: (212) 974-7474
ssholder@cdas.com
ccole@cdas.com

*Attorneys for Plaintiffs and the Proposed Classes*
*(Pro Hac Vice)*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on May 1, 2025, a true and correct copy of the foregoing was electronically filed and served electronically via the Court's CM/ECF system, which will automatically serve notice to all registered counsel of record.

<u>*/s/ Rachel Geman*</u>
Rachel Geman