DOUGLAS A. WINTHROP (Bar No. 183532)
Douglas.Winthrop@arnoldporter.com
JOSEPH FARRIS (Bar No. 263405)
Joseph.Farris@arnoldporter.com
JESSICA L. GILLOTTE (Bar No. 333517)
Jessica.Gillotte@arnoldporter.com
ESTAYVAINE BRAGG (Bar No. 341400)
Estayvaine.Bragg@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:    (415) 471-3100
Facsimile:    (415) 471-3400

MARK LEMLEY (Bar No. 155830)
mlemley@lex-lumina.com
**LEX LUMINA LLP**
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone:    (213) 600-6063

ANGEL T. NAKAMURA (Bar No. 205396)
Angel.Nakamura@arnoldporter.com
OSCAR RAMALLO (Bar No. 241487)
Oscar.Ramallo@arnoldporter.com
ALLYSON MYERS (Bar No. 342038)
Ally.Myers@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone:    (213) 243-4000
Facsimile:    (213) 243-4199

JOSEPH R. WETZEL (Bar No. 238008)
joe.wetzel@lw.com
ANDREW M. GASS (Bar No. 259694)
andrew.gass@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:    (415) 391-0600
Facsimile:    (415) 395-8095

*Attorneys for Defendant* ANTHROPIC PBC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 3:24-CV-05417-WHA<br><br>Action Filed: August 19, 2024<br><br>**ANTHROPIC PBC'S RESPONSE TO THE COURT'S REQUEST FOR SUPPLEMENTAL BRIEFING REGARDING CLASS CERTIFICATION**<br><br>Judge: Honorable William H. Alsup |

The Court has asked the parties to evaluate changing the classes from "natural persons" and their loan-out companies (Counsel for Plaintiffs, 5/15/2025 Hearing Transcript at 14) to "[a]ll registered owners" of the right to "copy and reproduce or to prepare derivative works or a generic copyright not excluding the foregoing" in any at-issue book. ECF No. 199. "Registered owner" is not a term of art, but Anthropic understands the Court to be referring to any legal or natural person who has registered, or recorded ownership of a relevant right, whether by assignment or other transfer, with the U.S. Copyright Office.

These modified class definitions do not solve Plaintiffs' predominance problems because "registered owners" is both over- and underinclusive. It is overinclusive because it includes individuals or entities who registered or recorded their rights but who, in fact, are not the actual owner of those rights today (and thereby denies Anthropic the right to individualized discovery and adjudication on ownership issues). It is underinclusive because it excludes rightsholders who have not registered or recorded their rights with the Copyright Office, which, in turn, leaves Anthropic exposed to multiple lawsuits and duplicative recovery from non-class members. The Court's proposed solution to that problem–extinguishing the rights of owners of copyright interests who do not update Copyright Office records–does not solve the issue: The Court has no authority to extinguish the rights of non-class members, and, per the Court's modified class definitions, those who do not timely register are not class members. Finally, the modified classes perpetuate critical predominance issues identified in Anthropic's opposition brief and create additional predominance, adequacy, and superiority issues, including creating conflicts between the Plaintiff authors and the publishers, movie studios, and other entities that join the classes.

**I. Registration Does Not Solve the Predominance Issues**

Establishing legal or beneficial ownership of the rights to copy and use works for LLM training is an "essential predicate" for each plaintiff's claim, requiring a legal and factual inquiry into the underlying validity of the asserted copyright as well as the chain of title from the original owner to the assignees of the relevant rights. *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 718 (N.D. Cal. 2023). Copyright registrations are no substitute for this analysis.

***Registration is not reliable evidence of ownership.*** Registration is prima facie evidence of ownership only if made within five years of the first publication of the work (17 U.S.C. § 410(c)), and the modified classes are not limited to those who registered within that timeframe. Moreover, recording an assignment of rights is not prima facie evidence of anything. *Broadcast Music, Inc. v. Moor-Law, Inc.*, 484 F. Supp. 357, 363 (D. Del. 1980). Thus, most people who register or record ownership interests with the Copyright Office in response to the Court's notice may not be able to rely on those records even as prima facie evidence of ownership. And in any event, any prima facie evidence is rebuttable, requiring discovery and adjudication of the validity of the asserted copyright and its chain of title, particularly when the registration is only prima facie evidence of ownership *at the time of registration*. The class action vehicle cannot be used to replace Anthopic's right to discovery and a judicial determination of these individual, threshold legal issues with a claims administration process involving the Copyright Office or otherwise. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011); *Van v. LLR, Inc.*, 61 F.4th 1053, 1067-69 (9th Cir. 2023) (the court must address valid defenses to individual claims in the predominance analysis).

***Copyright registrations do not demonstrate legal or beneficial ownership.*** The Copyright Office does not thoroughly vet applications or assignments for accuracy or truthfulness. Compendium of U.S. Copyright Office Practices, § 602.4(C) (3d ed. Jan. 2021), https://www.copyright.gov/comp3/docs/compendium.pdf. The registrations also do not address who owns any specific, subdivided rights because owners often transfer these rights via assignment or exclusive license to different persons after registration. 17 U.S.C. § 201(d); *see also* 3 D. Nimmer, *Nimmer on Copyright,* § 10.02 (rev. ed. 2018). And, because recording transfers of rights is optional, they are often not reflected in the records. *See* 17 U.S.C. §§ 204, 205(a) (transfer of ownership in any right "*may* be recorded") (emphasis added). Moreover, the Copyright Office records usually only identify the *legal* owner, not any *beneficial* owner who retains a right to collect royalties for use of that specific right. *See Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 834 (9th Cir. 1996).

For these and the other reasons noted in Anthropic's Opposition, modifying the class definitions to include all *registered* owners does not change the fundamental predominance problem here: The Court must decide who is the *actual* "legal or beneficial" owner of the rights at issue in this case. That cannot

be determined simply by relying on Copyright Office records alone. Take Plaintiff Graeber as an example. He is the registered owner of the copyright to *The Good Nurse* (Anthropic Opposition (ECF No. 146-7) ("Opp.") at 5 & Exs. 15-18)) and, thus, a class member under the Court's proposed definition. But Graeber assigned all his rights in *The Good Nurse*, except for a few rights unrelated to this case, to non-party 22nd Street Entertainment LLC. Opp. Exs. 20-22. It is not clear from the Copyright Office website whether 22nd Street Entertainment is a registered owner of any right for *The Good Nurse*. By contrast, Summit Entertainment, LLC appears to be a registered owner of *The Good Nurse* (*see* Copyright Public Records System, Doc. No. V9922D168, https://publicrecords.copyright.gov/detailed-record/voyager_28739582) and therefore would be a member of the modified class. But in fact, Summit's interest in *The Good Nurse* expired in 2019. *See* Opp. Ex. 21. Modifying the class definitions to include registered owners simply does not tell us whether Summit, Graeber or 22nd Street Entertainment is the actual owner of the rights at issue. That is a legal determination that must be addressed by the Court. *See In re SFPP Right-of-Way Claims*, 2017 WL 2378363, at *15 (C.D. Cal. May 23, 2017).

**The Five Plaintiffs Demonstrate the Inadequacy of Copyright Registrations to Serve as a Proxy for Standing to Assert Copyright Infringement.** The below chart shows the difference between who is a registered owner (and therefore a class member under the Court's proposed class definitions) and who are possible claimants under the Copyright Act (based on evidence produced to date):

| Plaintiff | Member of Modified Classes as Registered Owner | Possible Claimant |
|---|---|---|
| Andrea Bartz | No | **Yes**, *only if* she had legal ownership at creation |
| Andrea Bartz, Inc. | **Yes** | **Yes** |
| Charles Graeber | **Yes** | **No** for *The Good Nurse*, because he has assigned those rights |
| Kirk Wallace Johnson | No | Ordinarily **yes** for *To Be a Friend is Fatal* if he had legal ownership before assigning the copyright to MJ+KJ, Inc. But Johnson appears to have assigned rights to sue for past infringement, in which case he would not be a possible claimant. |
| MJ + KJ, Inc. | **Yes** | **Yes** |

## II. The Proposed Notice Plan Cannot Be Used to Bar Non-Class Member Claims

The modified classes fail to protect Anthropic from subsequent claims from non-class members asserting interests in the same copyrights. The proposed solution–barring owners who "fail to correct the registration" from later suing–exceeds judicial authority.

While the Court certainly can encourage owners to register their interests and thereby become class members, the Court has no power to terminate the rights of those who do not do so because they are not class members. It is not permitted under the Rules: The "Rules Enabling Act forbids interpreting Rule 23 to abridge, enlarge or modify any substantive right." *See Dukes*, 564 U.S. at 370 (internal quotation marks omitted). It is also not permitted under the Copyright Act: The Copyright Act permits interested parties to join infringement actions, but it does not authorize courts to terminate the rights of third parties who choose not to do so. 17 U.S.C. § 501(b). And the Court has no inherent authority to do this: "A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Martin v. Wilks*, 490 U.S. 755, 761-62 (1989). Therefore, the modified classes present the same problem as Plaintiffs' proposed classes: Anthropic may receive a judgment (favorable or not) in this case based on a class member's copyright registration, but may face additional litigation from a non-class member claiming ownership of the same copyright.

The scope of the proposed notice is also misaligned with the scope of potential claimants. It does not address rightsholders in connection with the Internet Books Datasets (presumably because they are not ascertainable). Further, it requires Plaintiffs to provide notice to publishers, but ignores many other entities that can and do have rights, including movie and television studios, theatrical producers, and even podcast producers. There also are many other rightsholders–*e.g.,* any exclusive licensee or assignee of a relevant copyright interest over the last century–who could not be readily identified to receive notice.

## III. The Modified Classes Do Not Solve Other Problems Identified in Anthropic's Opposition, And They Create New Ones

The modified classes do not address the ascertainability problem of the inability to identify the books in the Internet Books Datasets and, therefore, the rightsholders in those books. Opp. at 17-19.

They also do not address the myriad other issues regarding common proof, including the need for individualized proof of infringement connecting the works protected by copyright registrations to text

included in the training data, individual issues that go to fair use if the Court finds that Anthropic's use for training is not categorically fair, and individualized proof of statutory or actual damages.

The modified classes also present new predominance, adequacy, and superiority issues. Because the modified classes are no longer limited to those who registered before the alleged infringement or within three months of publication, some members of the classes may be eligible for statutory damages and attorneys' fees, while others would not. 17 U.S.C. § 412. With the addition of new, non-author class members, Anthropic might have defenses applicable to only some class members. Bartz and Johnson would not be adequate class representatives because they would no longer be members. Moreover, because the modified classes would now include not just authors and their loan-out companies, but also many other entities that will claim that they, *not the authors*, control the relevant rights, all of the named Plaintiffs would have a conflict with those entities and, therefore, be inadequate class representatives. *Kim v. Allison*, 87 F.4th 994, 1000-02 (9th Cir. 2023). The Court would have to manage these competing claims to the rights at issue, rendering a class action not the superior method for fairly and efficiently adjudicating the controversy. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001).

Dated: May 20, 2025

Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

By: /s/ *Douglas A. Winthrop*
      DOUGLAS A. WINTHROP

*Attorneys for Defendant*
ANTHROPIC PBC

## CERTIFICATE OF SERVICE

I, Douglas A. Winthrop, am the ECF user whose identification and password are being used to file the foregoing **DEFENDANT ANTHROPIC PBC'S RESPONSE TO THE COURT'S REQUEST FOR SUPPLEMENTAL BRIEFING REGARDING CLASS CERTIFICATION.**

Dated: May 20, 2025

                                                  /s/ *Douglas A. Winthrop*