DOUGLAS A. WINTHROP (Bar No. 183532)
Douglas.Winthrop@arnoldporter.com
JOSEPH FARRIS (Bar No. 263405)
Joseph.Farris@arnoldporter.com
JESSICA L. GILLOTTE (Bar No. 333517)
Jessica.Gillotte@arnoldporter.com
ESTAYVAINE BRAGG (Bar No. 341400)
Estayvaine.Bragg@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:    (415) 471-3100
Facsimile:    (415) 471-3400

MARK LEMLEY (Bar No. 155830)
mlemley@lex-lumina.com
**LEX LUMINA LLP**
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone:    (213) 600-6063

ANGEL T. NAKAMURA (Bar No. 205396)
Angel.Nakamura@arnoldporter.com
OSCAR RAMALLO (Bar No. 241487)
Oscar.Ramallo@arnoldporter.com
ALLYSON MYERS (Bar No. 342038)
Ally.Myers@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone:    (213) 243-4000
Facsimile:    (213) 243-4199

JOSEPH R. WETZEL (Bar No. 238008)
joe.wetzel@lw.com
ANDREW M. GASS (Bar No. 259694)
andrew.gass@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:    (415) 391-0600
Facsimile:    (415) 395-8095

*Attorneys for Defendant* ANTHROPIC PBC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 3:24-CV-05417-WHA<br><br>Action Filed: August 19, 2024<br><br>**DEFENDANT ANTHROPIC PBC'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Honorable William H. Alsup |

**The Court's Questions:**

At yesterday's hearing, Anthropic cited two related cases which held that a mass book digitization project by university libraries and Google was fair use: *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) (Leval, J.) ("*Google Books*") and *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87 (2d Cir. 2014) (Parker, J.) ("*HathiTrust*"). The Court then asked: (1) "In the *Google Books* decision did the decision expressly and explicitly say that the original copying by the universities or by Google at the universities was protected by fair use?" and (2) "Was it briefed?" May 23, 2025 Hrg. Tr. at 72:9-12, 16-17.

**Short Answer:**

Yes, the court in *Google Books* expressly held that the original copying of books was protected by fair use and rejected emphatic argument from the plaintiffs that the initial copying by Google should have been analyzed in isolation from the later creation of the search tools.

**Detailed Answer:**

**Background.** "Beginning in 2004, several research universities . . . agreed to allow Google to electronically scan the books in their collections. In October 2008, thirteen universities announced plans to create a repository for the digital copies and founded an organization called HathiTrust to . . . operate the HathiTrust Digital Library (or 'HDL')." *HathiTrust*, 755 F.3d at 90. After Google created the digital copies—*i.e.*, the libraries did *not* create the initial copies—multiple copies were given to HathiTrust, and Google kept one copy. *Id.* at 92 n.3. Then, the trade association Authors Guild and individual authors (referred to in this brief as "AG") sued HathiTrust and Google on the grounds that neither HathiTrust nor Google had permission to copy the books.

***HathiTrust***. The Second Circuit decided *HathiTrust* first, after the district court granted summary judgment to HathiTrust. It considered—and rejected—the very arguments Plaintiffs advance here. AG argued on appeal, just as Plaintiffs do, that HathiTrust should have paid for digital copies of the works in their searchable database, instead of taking unauthorized copies. Declaration of Joseph Farris ("Farris Decl."), Ex. 1 at 38-39 ("Each digital copy of a book that the Libraries created—for preservation, archiving or any other purpose—***rather than purchasing it through lawful channels***, represents a lost sale to the book's rights-holders.") (emphasis added). Further

echoing Plaintiffs' argument yesterday, AG cited *Napster* to support its theory: "the Libraries received their own 'free' digital copies, **avoiding the need to buy digital copies of the books from the Authors and millions of other copyright holders**." *Id.* at 26 (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) (emphasis added); *see also id.* at 31 (arguing that the "mechanical conversion of printed books into digital form" was itself not transformative). The Second Circuit rejected these arguments. It declined to view the initial act of copying in isolation and found fair use, noting that the initial copies enabled the transformative purpose because, "in order to perform a full-text search of books, the Libraries must first create digital copies of the entire books." 755 F.3d at 97.

**Google Books**. *Google Books* was decided one year later and, once again, considered but rejected an "initial acquisition" theory. In opposing Google's motion for summary judgment, AG had articulated three distinct theories of infringement, *i.e.*, that Google had: (i) "digitally reproduced millions of copyrighted books" in violation of 17 U.S.C. § 106(1); (ii) "made digital copies available for its Library Project partners to download" in violation of 17 U.S.C. § 106(3); and (iii) "displayed snippets from the books to the public" in violation of 17 U.S.C. § 106(5). *Authors Guild, Inc. v. Google Inc.*, 954 F. Supp. 2d 282, 289 (S.D.N.Y. 2013). The district court analyzed these theories as part of a related course of conduct and found fair use. *Id.*

On appeal, AG *expressly* and *repeatedly* argued that the district court erred in not *separately* analyzing Google's first, unauthorized act of copying independently from the search and display functions: "[T]he District Court failed to separately evaluate whether each of Google's uses, including its reproduction, archival storage and distribution of the books in full, passes the transformative use test." Farris Decl., Ex. 2 at 4; *id.* at 6 (breaking out three separate "issues presented" including a first issue of "unauthorized copying"); *id.* at 23 (arguing "each and every part of Google's Library Project" was not fair use); *id.* at 31, n.9 ("These uses must be analyzed separately."); *id.* at 33 ("The District Court sidestepped Google's reproduction and creation of millions of e-books, instead improperly focusing its analysis of transformativeness on the Library Project's independent search index and text mining functions."). AG further specifically argued that the "mechanical conversion" via "[d]igitization" was akin to mere "photocopying" and could not

be transformative when analyzed in isolation (*id.* at 32), and that this "shortcut" let Google avoid "the 'painstaking' and 'costly' process of obtaining permission before scanning copyrighted books" (*id.* at 27) (citation omitted).

In its Answering Brief, Google refuted this, arguing, "as *HathiTrust* recognizes, such scanning cannot be assessed in a vacuum and *is* permissible if the scans are for a fair-use purpose." Farris Decl., Ex. 3 at 28 (emphasis in original). In its Reply Brief, AG again took issue with "Google's narrow framing of the issue (*see* Opp. Br. at 53-57)," and emphasized that it had "long contended that Google's copying and dissemination of digital books to the libraries implicates *both* the reproduction and distribution rights under the Copyright Act." Farris Decl., Ex. 4 at 20; *id.* at 20 n.12 (emphasis in original).

In light of the extensive briefing of this issue, Judge Leval undoubtedly considered AG's theory that the court should divorce Google's initial copying from its ultimate purpose of building search tools. But the court rejected that false separation, writing: "We have no difficulty concluding that Google's ***making of a digital copy*** of Plaintiffs' books for the purpose of enabling a search for identification of books containing a term of interest to the searcher involves a highly transformative purpose, in the sense intended by *Campbell*." 804 F.3d at 216-17 (emphasis added). The court also expressly recognized that in *HathiTrust* it had also "concluded that ***both*** the making of the digital copies ***and*** the use of those copies to offer the search tool were fair uses." *Id.* at 217 (emphasis added). The Supreme Court has since cited *Google Books* with approval. *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 531, 545, 548 (2023).

Dated: May 23, 2025                                       Respectfully submitted,

                                                              **ARNOLD & PORTER KAYE SCHOLER LLP**

                                                              By:  */s/ Joseph Faris*
                                                                    JOSEPH FARRIS

                                                                    *Attorneys for Defendant*
                                                                    ANTHROPIC PBC

**CERTIFICATE OF SERVICE**

I, Joseph Farris, am the ECF user whose identification and password are being used to file the foregoing **DEFENDANT ANTHROPIC PBC'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**.

Dated: May 23, 2025

/s/ Joseph Farris

JOSEPH FARRIS