| | |
|---|---|
| Justin A. Nelson* | Rachel Geman* |
| Alejandra C. Salinas* | Jacob S. Miller* |
| Collin Fredricks* | Danna Z. Elmasry* |
| **SUSMAN GODFREY L.L.P** | **LIEFF CABRASER HEIMANN** |
| 1000 Louisiana Street, Suite 5100 | **& BERNSTEIN, LLP** |
| Houston, TX 77002-5096 | 250 Hudson Street, 8th Floor |
| Telephone: (713) 651-9366 | New York, New York 10013-1413 |
| jnelson@susmangodfrey.com | Telephone: (212) 355-9500 |
| asalinas@susmangodfrey.com | rgeman@lchb.com |
| cfredricks@susmangodfrey.com | jmiller@lchb.com |
| | delmasry@lchb.com |
| Rohit D. Nath (SBN 316062) | |
| **SUSMAN GODFREY L.L.P** | Daniel M. Hutchinson (SBN 239458) |
| 1900 Avenue of the Stars, Suite 1400 | Reilly T. Stoler (SBN 310761) |
| Los Angeles, CA 90067-2906 | **LIEFF CABRASER HEIMANN** |
| Telephone: (310) 789-3100 | **& BERNSTEIN, LLP** |
| RNath@susmangodfrey.com | 275 Battery Street, 29th Floor |
| | San Francisco, CA 94111-3339 |
| Jordan W. Connors* | Telephone: (415) 956-1000 |
| **SUSMAN GODFREY L.L.P** | dhutchinson@lchb.com |
| 401 Union Street, Suite 3000 | rstoler@lchb.com |
| Seattle, WA 98101 | |
| Telephone: (206) 516-3880 | Scott J. Sholder* |
| jconnors@susmangodfrey.com | CeCe M. Cole* |
| | **COWAN DEBAETS ABRAHAMS** |
| J. Craig Smyser* | **& SHEPPARD LLP** |
| **SUSMAN GODFREY L.L.P** | 60 Broad Street, 30th Floor |
| One Manhattan West, 51st Floor, | New York, New York 10010 |
| New York, NY 10019 | Telephone: (212) 974-7474 |
| Telephone: (212) 336-8330 | ssholder@cdas.com |
| csmyser@susmangodfrey.com | ccole@cdas.com |

*Attorneys for Plaintiffs and the Proposed Classes*

*(Pro Hac Vice)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ET AL., | Case No. 3:24-cv-05417-WHA |
| Plaintiffs, | **PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING *GOOGLE BOOKS*** |
| v. | |
| ANTHROPIC PBC, | |
| Defendant. | |

Plaintiffs submit the following brief in answer to the Court's questions at the summary judgment hearing regarding whether the initial acquisition of books was at issue in *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) ("*Google Books*").

***First***, in *Google Books*, Google's *initial acquisition* of books was not at issue, because the Google Books Project acquired paid-for physical books. "***Each year***" Google's library partners "spen[t] tens millions of dollars" "acquiring new works," *i.e.,* physical copies of books. *See* Libraries' Statement of Material Facts ¶ 8, *Authors Guild v. Hathi Trust*, 1:11-cv-6531, Dkt. 113 (Jun. 29, 2012 S.D.N.Y.) ("Libraries' SUF") (emphasis added). The Google Books Project was a common venture between Google and a consortium of "major research libraries." *Authors Guild v. Hathi Trust*, 775 F.3d 87 (2d Cir. 2014) ("*Hathi Trust*"). After the libraries purchased the books, Google then lawfully borrowed those physical copies and had them shipped to its scanning centers. *See* Authors Guild Op. Br., *Google Books,* Dkt. 55, No. 13-4829 (2d Cir. Apr. 11, 2014) ("Once a Library Partner's books were selected, they were shipped to Google's scanning centers to be digitized and indexed[.]"). Because Google initially acquired the works at issue via loans of physical books from libraries, its initial acquisition was not a reproduction under 17 U.S.C. § 106(1) that would give rise to a *prima facie* case of infringement. This stands in stark contrast to Anthropic's initial acquisition of books. Anthropic downloaded them directly from illegal libraries like Pirate Library Mirror, thus making a digital copy for which Anthropic paid not one cent.

***Second***, in *Google Books*, the plaintiffs did challenge—and the Court did address—Google's subsequent scanning of these physical books into digital copies for use in its search engine. *See* 804 F.3d at 228-29; *Google Books*, Dkt. 55 at p. 22-23, 32-35. But, to be clear, the *Google Books* plaintiffs never raised the argument that the *Bartz* Plaintiffs raise here with respect to Anthropic's piracy: that Google (or here Anthropic), at a minimum, should have lawfully acquired and paid a purchase price for its initial acquisition of the works at issue. That is perhaps because Google's partners—the libraries—had paid tens of millions to lawfully acquire the books at issue in *Google Books*. *See* Libraries' SUF ¶ 8. Anthropic's piracy, by contrast, threatens the most well-established market for Plaintiffs' works: the market for books. *See* Pls. MSJ Op. at 12-13 & n.7. A decision finding fair use for such piracy, unlike *Google Books*, would result in

widespread devastation for the market for copyrighted creative content. *See id.*

*Google Books* repeatedly emphasized the importance of the fact that libraries "already owned"—i.e., had lawful possession of—the books ultimately used in the Google Books Project. "In these circumstances, Google's creation for each library of a digital copy of that ***library's already-owned book*** in order to permit that library to make fair use through provision of digital searches is not an infringement." *Id.* at 229 (emphasis added). Because the libraries were using "already-owned books" for their co-venture with Google—books on which they had spent tens of millions of dollars annually—there could be no serious allegation that the Google Books Project had circumvented the traditional book sale market to get books needed for scanning.

Four other critical features of the Google Books project bear emphasis. ***First***, Google ***did not copy*** any books where "Google had received a specific request from a copyright owner not to scan the book." *See* Authors Guild Op. Br. at p. 9, *Google Books* Dkt. 55. Furthermore, the "contract between Google and each of the participating libraries commit[ted] the library to use its digital copy ***only in a manner consistent with the copyright law, and to take precautions to prevent dissemination of their digital copies*** to the public at large." *Google Books,* 804 F.3d at 228–29 (emphasis added). The arrangement set forth in *Google Books* is thus worlds apart from Anthropic's unrestricted, ungoverned, and unlawful acquisition of millions of pirated books from pirate libraries. There is, for example, no dispute that the pirate libraries Anthropic patronized were illegal criminal enterprises that lacked authorized copies. Likewise, Anthropic had no agreements to honor the requests of rightsholders. Moreover, record evidence confirms that Anthropic places *no use restrictions* on its datasets within the company, MSJ Op. Ex. 22 at 196:15-18, that its patronage of pirated websites may keep these criminal enterprises alive, *see* Pls. Cert Reply Ex. 53 (Pirate Library successor stating, that prior to LLMs, "shadow libraries were dying"), and that Anthropic retained and continues to use pirated datasets to this day, *see* Pls. MSJ Op. at 4 (citing Ex. 17, at 93:23-94:14, 249:2-13).

***Second***, the *Google Books* Court noted that, if any libraries violated their agreements, were negligent in their storage, or employed the copies in an infringing manner, copyright holders could bring suit against those libraries. 804 F.3d at 229. By contrast, Plaintiffs here have no recourse

1  against shadow libraries, as they have been repeatedly enjoined by U.S. courts, yet continue to
2  operate. *See, e.g., Elsevier Inc. v. Sci-Hub*, 2015 WL 6657363, at *3, *5 (S.D.N.Y. Oct. 30, 2015);
3  *Cengage Learning, Inc. v. Library Genesis,* 23-cv-8136, Dkt. 36 (S.D.N.Y. Sept. 24, 2024).

4      ***Third***, as the Second Circuit "cautioned" in *Fox News Network, LLC v. Tveyes, Inc.*, *Google
5  Books* "test[ed] the boundaries of fair use." 883 F.3d 169, 174 (2d Cir. 2018) (quoting *Google
6  Books*, 804 F.3d at 206); *see id.* (finding use transformative but nevertheless rejecting fair use
7  defense). And nothing in *Google Books* sanctions Anthropic's piracy.

8      ***Fourth***, the only analog in this case to book scanning in *Google Books* is not Anthropic's
9  piracy but, obviously, Anthropic's books scanning project. But even Anthropic's books scanning
10 project exceeds the "boundaries" of *Google Books*, 804 F.3d at 206. After Anthropic stopped using
11 the pirated datasets "for legal reasons," Pls. MSJ Opp. Ex. 19, Anthropic began its books scanning
12 project. While in *Google Books*, the scanned books were subject to protections for copyright holders
13 and were scanned to provide search functionality, Anthropic repeatedly and systematically
14 exploited authors' expressive content. Anthropic scanned books for precisely their expressive
15 (rather than functional) qualities. *See* Pls. MSJ Opp. at 8-9, 16-19; MSJ. Opp. Ex. 3 (internal memo
16 calling for training material with "good writing," the "kind of content an editor would approve of,"
17 because it "teaches" the LLM to "write well, rather than low quality internet speak"); Dkt. 119-5
18 (Kaplan Decl. ISO MSJ) ¶¶ 36, 47 (noting training process "teaches" relationship between words
19 in training data, that Anthropic seeks "vast amounts" of "diverse" books to optimize model
20 performance, and that books are useful for "long context training"). But, regardless of this Court's
21 resolution of the training issue, Anthropic's piracy finds no predecessor in the cabined, lawful, and
22 contractually-governed digitization of lawfully-acquired physical books at issue in *Google Books*.

23                                            *   *   *

24     *Google Books* only underscores how far afield Anthropic's piracy is from fair use. The
25 libraries participating in the Google Books Project spent tens of millions of dollars purchasing
26 lawful copies of books, which were then lent to Google. Anthropic, by contrast, downloaded
27 millions of books from known criminal enterprises. Decades of case law—*e.g. A&M Records v.*
28 *Napster*, 239 F.3d 1004 (9th Cir. 2001)—confirms this is an infringing and manifestly unfair use.

Dated: May 23, 2025

Respectfully submitted,

By: /s/Rachel Geman

Rachel Geman*
Jacob S. Miller*
Danna Z. Elmasry*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
jmiller@lchb.com
delmasry@lchb.com

Daniel M. Hutchinson (SBN 239458)
Reilly T. Stoler (SBN 310761)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
dhutchinson@lchb.com
rstoler@lchb.com

By: /s/Justin Nelson

Justin A. Nelson*
Alejandra C. Salinas*
Collin Fredricks *
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com
cfredericks@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Jordan W. Connors*
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com

J. Craig Smyser*
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor,
New York, NY 10019
Telephone: (212) 336-8330
csmyser@susmangodfrey.com

By: /s/Scott Sholder

Scott J. Sholder*
CeCe M. Cole*
**COWAN DEBAETS ABRAHAMS
& SHEPPARD LLP**
60 Broad Street, 30th Floor
New York, New York 10010
Telephone: (212) 974-7474
ssholder@cdas.com
ccole@cdas.com

*Attorneys for Plaintiffs and the Proposed Classes*
*(Pro Hac Vice)*