**Lieff Cabraser Heimann & Bernstein**
Attorneys at Law

**SUSMAN GODFREY**

**VIA ECF**
Judge William H. Alsup
Phillip Burton Federal Building & U.S. Courthouse
450 Golden Gate Avenue, 16th Floor Clerk's Office
San Francisco, CA 94102

      RE:    *Bartz et al. v. Anthropic PBC*, Case Number 3:24-CV-05417-WHA (N.D. Cal.) Plaintiffs' Letter Motion to Compel Anthropic to Add Custodians and Provide Compensation Information

3248040.1

Judge William H. Alsup
June 13, 2025
Page 1

Dear Judge Alsup:

    Plaintiffs respectfully request an order directing Anthropic to (i) produce documents from the files of co-founders Chris Olah, Sam McCandlish, Daniela Amodei, and Jack Clark, and early employee Daniel Hernandez; and (ii) provide information concerning the compensation, including equity, that Anthropic's document custodians receive. The parties have met and conferred about these issues several times but remain at an impasse. Fact discovery closes in two and a half months.

### **Custodians**

    The five custodians Anthropic refuses to add are each highly relevant to this case and likely to possess information not yet produced. In particular, each is likely to have documents about a key period in this case: immediately after Anthropic's founding in 2021, when Anthropic pirated Books3, Libgen, and Pirate Library Mirror data. Because Anthropic has produced fewer than 500 documents from this critical period of time, and because reviewing those custodians' files will not impose any serious burden, the Court should require Anthropic to add these five custodians.

    <u>First</u>, each custodian has information pertinent to the first and fourth fair use factors, which is Anthropic's central defense in this case. Moreover, by virtue of their status as co-founders or early employees, each custodian is likely to possess information relevant to one of Plaintiffs' core contentions: whether Anthropic acted willfully when pirating millions of books during its infancy to catch up its competitors.

- Chris Olah, co-founder and research lead, ███████████████████████████████
  ███████████████████████████████ *See* Dkt. 122-42 (MSJ Ex. 41). Olah
  ███████████████████████████████████████████████████████ *See* Dkt. 122-4 (MSJ Ex. 3).

- Sam McCandlish, co-founder and Chief Technology Officer at Anthropic, is a key author and researcher on the development of AI technology, including seminal contributions to the empirics and theory of how AI model performance increases predictably as the amount and quality of data and compute-time used in training increases (*i.e.*, "scaling"). These insights are part of what drove Anthropic to seek out and acquire the millions of books it pirated from shadow libraries. McCandlish's work also extends to attempts at understanding the internal logic of LLMs ("interpretability"), as well as their security and safety vulnerabilities ("red teaming"). And it would be anomalous to not review of the files of the Chief Technology Officer in a case about the defendant's technology.

- Daniela Amodei is co-founder and the current President of Anthropic. Amodei is likely to possess information pertinent to Anthropic's early piracy; the effect of Anthropic's LLMs on the marketplace; Anthropic's evaluation of the risks its products pose to users, authors, and the public at large; and Anthropic's growth and competitive standing.

- Jack Clark, co-founder and Head of Policy, is a driving force behind the Anthropic Economic Index, which tracks and evaluates the "labor market and broader econom[ic]"

Judge William H. Alsup
June 13, 2025
Page 2

    impacts of Anthropic's Claude models.[1] According to one account, "[f]ew understand both the promise and limitations of artificial general intelligence" better than Jack Clark," including "which parts of the economy AGI will affect last, where AI will encounter the strongest legal obstacles, . . . [and] what AI means for the economics of journalism."[2]

- Daniel Hernandez, one of Anthropic's earliest employees, ██████████ ██████████████████████████████████. The justification for compiling these datasets is pertinent to the first fair use factor, the harm to the book market, and willfulness.

    The inclusion of these five custodians—all of whom are co-founders and/or early employees, and many of whom are core, senior executives—will comport with the long line of cases that permit discovery in such circumstances. *See, e.g.*, *Shenwick v. Twitter*, 2018 WL 833085, at * 1 (N.D. Cal. Feb. 7, 2018) (ordering Twitter CEO Jack Dorsey be added as a document custodian); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282213 at *2–3 (N.D. Cal. Nov. 14, 2021) (adding Mark Zuckerberg and Sheryl Sandberg as document custodians because "it is possible" they were "likely to possess" relevant information); *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (TSH), ECF No. 212 (N.D. Cal. Oct. 4, 2024) (granting motion to add five custodians, including Zuckerberg, in infringement action similar to this one).[3]

    Second, the custodians Plaintiffs seek will fill pronounced time gaps in Anthropic's productions to date. Thus far, Anthropic has agreed to produce relevant files from only five custodians prior to 2023. Those files have yielded ***fewer than 500 documents***, which represents less than 2% of the total production set. Yet this early time period, when Anthropic was ████████████████████████████████████████ raising hundreds of millions of dollars in initial financing, acquiring pirated books from shadow libraries, ████████████████ ██████████████████████████████████, and setting up its infrastructure, is of paramount importance. Moreover, these co-founders and early employees have remained relevant throughout Anthropic's existence, as shown by their retention of crucial roles at the company.

    Third, Anthropic's arguments as to burden should not be credited. Anthropic first suggested that the paucity of documents from the earlier time period was simply an artifact of the company's smaller size. However, Anthropic then reversed course, and is now refusing to add these custodians because there apparently are *too many* documents to review. Anthropic cannot have it both ways. Either there are only a handful of documents from the earlier period, in which case adding custodians from that period is not burdensome, or there are a multitude of highly relevant documents that Anthropic has not produced.

---

[1] *See* https://www.anthropic.com/economic-index; https://x.com/jackclarkSF/status/1920168529506025705 (post from Jack Clark recruiting researchers for the Anthropic Economic Index by stating they will join a team he is "building").
[2] *See* https://conversationswithtyler.com/episodes/jack-clark (May 7, 2025).
[3] Similar executives—CEOs, CTOs, Presidents, and founders—are custodians in other AI cases to which counsel here are a party.

No more persuasive is Anthropic's next argument—that additional discovery is unwarranted because, in its view, so few facts apparently remain in dispute. That argument not only pretermits the summary judgment proceedings that remain undecided, but ignores that the whole point of discovery is to determine what facts are in dispute. And here, unless Anthropic is conceding fair use factors one and four; acknowledging that it copied protected works to gain competitive advantage; admitting willfulness; and confessing that it's exploiting the market for books as training data (and books generally), the critical facts could hardly be disputed more.

## Compensation

Anthropic has also refused to provide documents showing the equity stakes of its custodians on the ground that such information is irrelevant and protected by "financial privacy." That objection is misguided.

Courts in this circuit routinely hold that the amount of "income flowing directly from" a company to its witnesses "is relevant to their possible bias as witnesses." *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 WL 11505684, at *23–24 (C.D. Cal. Jan. 25, 2010). And courts thus routinely permit plaintiffs "to examine any testimonial bias during trial" that stems from a witness's "direct financial stake in the outcome of th[e] case." *Oracle USA, Inc. v. Rimini St., Inc.*, 2015 WL 5089779, at *3 (D. Nev. Aug. 27, 2015) (denying motion to exclude CEO's "net worth in [defendant] stock"); *see also Pacira Pharms., Inc. v. Rsch. Dev. Found.*, 2024 WL 4244305, at *3 (D. Nev. Sept. 19, 2024) (denying motion to exclude testimony about compensation because "how much the witness is being paid . . . by a party can further fill in the picture of how much the witness stands to gain should their side prevail at trial").[4] The same should result here.

Respectfully Submitted,

| LIEFF CABRASER HEIMANN & BERNSTEIN, LLP | SUSMAN GODFREY LLP |
|---|---|
| */s/ Rachel Geman*<br>Rachel Geman | */s/ Samir Doshi*<br>Samir Doshi |

---

[4] In one case, Magistrate Judge Zimmerman precluded inquiry into the amount of compensation a defendant's employee received because the employee's "employment with [the defendant] already implies bias." *Johnson v. Hewlett-Packard Co.*, 2010 WL 4510345, at *2 (N.D. Cal. Nov. 1, 2010). But this Court has not yet made any such finding of bias here, nor has Anthropic admitted as much. And in any event, the *degree* of bias remains pertinent even if the *presence* of bias is undisputed, as *Wyatt*, *Oracle*, and *Pacira* all make clear.