# Arnold & Porter

Joseph Farris
+1 415.471.3454 Direct
Joseph.Farris@arnoldporter.com

July 23, 2025

Hon. William H. Alsup
Phillip Burton Federal Building & U.S. Courthouse
450 Golden Gate Avenue, 16th Floor Clerk's Office
San Francisco, CA 94102

> Re: **Anthropic's Response to Plaintiffs' Letter Motion to Compel in *Bartz, et al. v. Anthropic PBC*, No. 3:24-cv-05417-WHA (Dkt. 260)**

Dear Judge Alsup:

Plaintiffs' motion to compel should be denied.

**Issue One: RFP Nos. 39, 43, and 100**

**RFP No. 39:** "All minutes of meetings of Your board of directors, and Documents provided to Your board of directors, that Concern or Relate to Your training data; Your intention to commercialize, monetize, or productize Your LLMs; or projections regarding revenues or profits for particular products or for You as a whole."

Plaintiffs characterize this RFP as a request that is limited to "board minutes." It is not. The request seeks board minutes **and** all "***Documents provided to Your board of directors***, that Concern or Relate to" three sweeping topics. It is unreasonable on its face in violation of the Court's instruction that requests must be "reasonably narrow" at "the outset" or will be "stricken." Supplemental Case Management Order ("Supp. Order") ¶ 18 (Dkt. No. 9). Nor did Plaintiffs offer to narrow this RFP in the meet and confer process. They attach none of that correspondence. Anthropic does, attaching an email that substantiates the state of negotiations. *See* Exhibit 1. If Plaintiffs had limited this request to "board minutes" concerning these topics, Anthropic would not have objected. But Plaintiffs did not do so, then failed to narrow the request during the meet and confer process. They should not be allowed to "salvage" this request by moving to compel on a compromise position that they failed to offer during the meet and confer process. Supp. Order ¶ 18.

**RFP No. 43:** "Your balance sheet, income statement, and cash flow statement, on a monthly basis."

**Arnold & Porter**

Hon. William Alsup
July 23, 2025
Page 2

      Plaintiffs acknowledge that Anthropic has agreed to produce income statements that will show its revenues, costs, and profits.[1] That is the information that Plaintiffs need to evaluate the extent to which Anthropic has (or has not) profited from the alleged infringement at issue here. Plaintiffs fail to articulate any reason why they also need "balance sheets" or "cash flow statements," which would show irrelevant information such as how much cash Anthropic has had on hand at various times. Moreover, even though this information is not relevant to damages, it is ***highly*** competitively sensitive information that is tightly restricted within the company. The cases Plaintiffs cite are of no help to them, as they deal with the production of revenue and cost information, which can be found on the income statements that Anthropic has already agreed to provide. *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 926, 928 (N.D. Cal. 2009) (discussing "expenses" and "profits"); *Warm v. Innermost*, 2024 WL 3467803, at *4 (C.D. Cal. June 25, 2024) ("sales, revenue, and profits of the products at issue").

      <u>**RFP No. 100:**</u> "Documents Concerning or Relating to Anthropic's founding, Including the decision to incorporate Anthropic in Delaware."

      RFP 100 is overbroad and improper on its face. Here too, Plaintiffs do not try to defend the scope of their original request. Instead, they argue that all they seek are "communications between and among Anthropic's cofounders regarding the decision to incorporate as a Public Benefit Corporation ('PBC') in Delaware, including financial motivations for Anthropic's founding." Not so. The term "Public Benefit Corporation" is not in the request. Again, Plaintiffs' tack of serving a facially overbroad request and then seeking to compel production of some subset of documents theoretically encompassed within it is precisely what this Court forbids. Supp. Order ¶18.

      Nor is there merit to Plaintiffs' "narrowed" request. The fact that Anthropic is a Public Benefit Corporation does ***not*** mean that Anthropic is something other than a "for profit" entity. Were Anthropic to make such an assertion at trial, Plaintiffs would need only reference the Delaware Corporations Code. *See* 8 Del. Code § 362 ("A 'public benefit corporation' is a ***for-profit*** corporation organized under and subject to the requirements of this chapter that is intended to produce a public benefit or public benefits and to operate in a responsible and sustainable manner.")(emphasis added). It is simply a corporate form which need not be managed solely to favor the pecuniary interests of shareholders. *Id*. Plaintiffs' assertion of relevance on the grounds that the "PBC form relates to the valuation of the company and the motivations behind its founders' actions" is completely

---

[1] Plaintiffs also assert that Anthropic agreed to produce "revenue projections," but it did not. Nor does this request call for that kind of information.

**Arnold & Porter**

Hon. William Alsup
July 23, 2025
Page 3

unexplained. And, the fact that Anthropic will not commit now, over four months before trial, that no witness will utter the words "Public Benefit Corporation" at trial is not a basis for requiring Anthropic to respond to an overbroad and improper document request.

**Issue Two: Search Terms**

Anthropic has agreed to run **over 180 search terms** in the course of reviewing hundreds of thousands of documents and producing over 50,000 documents (excluding the massive amount of training data it has made available for inspection). Anthropic is still reviewing documents, having agreed to add 96 terms in late June, nine additional terms in July, and three more document custodians in July. This scope is sufficient. Plaintiffs' most recent ESI terms are irrelevant, overbroad, and/or are duplicative of other ESI terms to which the parties have already agreed.

*First*, Plaintiffs assert that two ESI searches — (a) "("destr*" OR "eliminat*" OR "los*") W/3 "job*" and (b) "replac*" W/5 ("writ*" OR "author*") — relate to "negative impacts" on the market for authors or their works. But there is no allegation in this case that Claude outputs infringing content, and the Plaintiffs have conceded that training LLMs did not result in any exact copies or infringing knockoffs being provided to the public. There is no legally cognizable theory in this case about the overall "impact" of AI technology on authors and such requests are irrelevant.

*Second*, Plaintiffs propose multiple ESI searches related to "Anthropic's knowledge and use of copyrighted material" but Anthropic has already agreed to *17 searches* that relate to the same subject matter: (1) *copyright* W/10 panama, (2) "*copyright*" W/15 "the pile", (3) "copyright W/15 Datamation; (4) "*copyright*" W/10 "boilerplate"; (5) "*copyright*" W/3 "delete"; (6) "*copyright*" W/3 "remove"; (6) "*copyright*" W/15 "prompt shield"; (7) "*copyright**" W/3 "book*"; (8) *copyright** W/3 "text*"; (9) *copyright** W/25 "scan*"; (10) "*copyright**" W/5 deal; (11) "*copyright**" W/10 ("guardrail" OR "guardrails" OR "guard rail" OR "guard rails"); (12) "*copyright**" W/15 "regurg*"; (13) "*copyright**" W/15 "memoriz*"; (14) "*copyright**" W/10 "mitigat*"; (15) "*copyright**" W/10 "constrain*"; (16) "*copyright**" W/15 contract*; and (17) "*infring**" w/10 "book*". Plaintiffs are not entitled to continually request endless variations of dragnet searches for any reference to "copyright" that they can invent.

Plaintiffs' insistence on new ESI searches late in discovery should be denied.

Arnold & Porter

Hon. William Alsup
July 23, 2025
Page 4

Sincerely,

*/s/ Joseph Farris*

Joseph Farris