1   Justin A. Nelson*
    Alejandra C. Salinas*
2   **SUSMAN GODFREY L.L.P.**
    1000 Louisiana Street, Suite 5100
3   Houston, TX 77002-5096
    Telephone: (713) 651-9366
4   jnelson@susmangodfrey.com
    asalinas@susmangodfrey.com
5
    Rohit D. Nath (SBN 316062)
6   Michael Gervais (SBN 330731)
    **SUSMAN GODFREY L.L.P.**
7   1900 Avenue of the Stars, Suite 1400
    Los Angeles, CA 90067-2906
8   Telephone: (310) 789-3100
    rnath@susmangodfrey.com
9   mgervais@susmangodfrey.com

10  Jordan W. Connors*
    **SUSMAN GODFREY L.L.P.**
11  401 Union Street, Suite 3000
    Seattle, WA 98101
12  Telephone: (206) 516-3880
    jconnors@susmangodfrey.com
13
    J. Craig Smyser*
14  Samir Doshi*
    **SUSMAN GODFREY L.L.P.**
15  One Manhattan West, 51st Floor,
    New York, NY 10019
16  Telephone: (212) 336-8330
    csmyser@susmangodfrey.com
17  sdoshi@susmangodfrey.com
    *Co-Lead Class Counsel*
18  *(Pro Hac Vice)*

    Rachel Geman*
    Jacob S. Miller*
    Danna Z. Elmasry*
    **LIEFF CABRASER HEIMANN &**
    **BERNSTEIN, LLP**
    250 Hudson Street, 8th Floor
    New York, NY 10013-1413
    Telephone: (212) 355-9500
    rgeman@lchb.com
    jmiller@lchb.com
    delmasry@lchb.com

    Daniel M. Hutchinson (SBN 239458)
    Jallé Dafa (SBN 290637)
    Reilly T. Stoler (SBN 310761)
    **LIEFF CABRASER HEIMANN &**
    **BERNSTEIN, LLP**
    275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
    Telephone: (415) 956-1000
    rstoler@lchb.com
    jdafa@lchb.com
    dhutchinson@lchb.com

    Betsy A. Sugar*
    **LIEFF CABRASER HEIMANN &**
    **BERNSTEIN, LLP**
    222 Second Ave., #1640
    Nashville, TN 37201
    Telephone: (615) 313-9000
    bsugar@lchb.com
    *Co-Lead Class Counsel*

19              **UNITED STATES DISTRICT COURT**
20             **NORTHERN DISTRICT OF CALIFORNIA**
                 **SAN FRANCISCO DIVISION**

21

22  ANDREA BARTZ, ANDREA BARTZ,
    INC., CHARLES GRAEBER, KIRK
23  WALLACE JOHNSON, and MJ + KJ, INC.,
    individually and on behalf of others similarly
    situated,
24
              Plaintiffs,
25
      v.
26
    ANTHROPIC PBC,
27
              Defendant.
28

Case No. 3:24-cv-05417-WHA

**PLAINTIFFS' OPPOSITION TO
ANTHROPIC'S MOTION FOR
CERTIFICATION OF
INTERLOCUTORY APPEAL OR, IN
THE ALTERNATIVE, FOR
RECONSIDERATION**

Hearing Date: August 28, 2025
Hearing Time: 8:00 a.m.
Judge: Honorable William H. Alsup

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

Introduction ................................................................................................................ 1

Background ................................................................................................................. 3

Questions Presented For Certification ....................................................................... 5

Legal Standard Under Section 1292(b) ...................................................................... 6

Argument .................................................................................................................... 7

      I.      Anthropic's Attempt to Rehabilitate Its Piracy Does Not Warrant an Interlocutory Appeal ............................................................................... 8

           a.      The question of what constitutes a "use" in this case is inextricably fact-bound. ................................................... 8

           b.      Resolving Anthropic's first question in its favor would not be controlling and would not materially advance this case. ......................... 11

           c.      Anthropic overstates any difference of opinion about whether its piracy constitutes a use, and an ordinary split between two district courts is not the type of significant conflict that warrants immediate, interlocutory review ............................................. 12

      II.      Anthropic's Second Question Misrepresents the Court's Opinion and is Deeply Fact-Bound In Any Event. ......................................................... 16

      III.      Reconsideration is unwarranted. .......................................................... 19

      CONCLUSION ..................................................................................................... 24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*A&M Recs., Inc. v. Napster, Inc.*,
5      284 F.3d 1091 (9th Cir. 2002)...........................................................................14

6    *A&M Recs., Inc. v. Napster, Inc.*,
      239 F.3d 1004 (9th Cir. 2001)......................................................................14, 15
7

*Am. Geophysical Union v. Texaco Inc.*,
8      802 F. Supp. 1 (S.D.N.Y. 1992), *amended* (Oct. 26, 1992),................................11

9    *American Geophysical Union v. Texaco*,
      60 F.3d 913 (2d Cir. 1994)...........................................................................2, 10
10

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
11      598 U.S. 508 (2023).............................................................................3, 8, 14, 15

12   *Bartz v. Anthropic PBC*,
13      2025 WL 1741691 (N.D. Cal. June 23, 2025) ............................................................2

14   *Bayer v. Neiman Marcus Grp., Inc.*,
      2018 WL 10425912 (N.D. Cal. July 30, 2018)........................................................21
15

*Blair v. Rent-A-Ctr., Inc.*,
16      2019 WL 529292, at *3 (N.D. Cal. Feb. 11, 2019)................................................22

17   *BMG Music v. Gonzalez*,
18      430 F.3d 888 (7th Cir. 2005)............................................................................15

19   *Bot M8 LLC v. Sony Corp. of Am.*,
      2020 WL 1904102 (N.D. Cal. Apr. 16, 2020) .........................................................23
20

*Campbell v. Acuff-Rose Music, Inc.*,
21      510 U.S. 569 (1994)...................................................................................15, 17

22   *Carroll v. Nakatani*,
23      342 F.3d 934 (9th Cir. 2003)..............................................................................19

24   *Coopers & Lybrand v. Livesay*,
      437 U.S. 463 (1978).........................................................................................6
25

*Cooter & Gell v. Hartmarx Corp.*,
26      496 U.S. 384 (1990).......................................................................................17

27   *Couch v. Telescope Inc.*,
28      611 F.3d 629 (9th Cir. 2010)..............................................................................15

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417

*Delbridge v. Kmart Corp.*,
    2013 WL 3475465 (N.D. Cal. July 10, 2013) ........................................................ 21

*Doe By & Through Doe v. Petaluma City Sch. Dist.*,
    949 F. Supp. 1415 (N.D. Cal. 1996). .................................................................... 23

*Drevaleva v. VA*,
    2019 WL 3037549 (N.D. Cal. July 11, 2019) ........................................................ 22

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...................................................................................... 1, 6

*Erickson Prods. Inc. v. Kast*,
    2023 WL 5600095 (N.D. Cal. Aug. 29, 2023) ...................................................... 19

*Etter v. Allstate Ins. Co.*,
    No. 3:17-cv-00184 WHA (N.D. Cal. Jan. 23, 2018), Dkt. 79 ................................... 20

*Firestone Tire & Rubber Co. v. Risjord*,
    449 U.S. 368 (1981) ................................................................................. 1, 5, 6

*Flanigan v. Holder*,
    2021 WL 5359429 (N.D. Cal. Oct. 26, 2021) ...................................................... 19

*Georgia v. Public.Resource.Org, Inc.*,
    590 U.S. 255 (2020) ......................................................................................... 8

*Guity Hamzeh, v. Pharmavite LLC, et al.*,
    2025 WL 1810082 (N.D. Cal. July 1, 2025) ........................................................ 23

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985) ......................................................................................... 8

*Henley v. Jacobs*,
    2019 WL 8333448 (N.D. Cal. Oct. 25, 2019) ....................................................... 6

*Herrera v. Fargo*,
    2020 WL 7051097 (C.D. Cal. Oct. 8, 2020) ....................................................... 16

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
    2017 WL 4772567 (C.D. Cal. Aug. 11, 2017) ...................................................... 20

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1981) ........................................................................... 6

*J.B. v. G6 Hosp., LLC*
    WL 4079207 (N.D. Cal. Sept. 8, 2021). ............................................................. 23

*James v. Price Stern Sloan, Inc.*,
    283 F.3d 1064 (9th Cir. 2002) ........................................................................... 6

iii

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417

*Kadrey v. Meta Platforms, Inc.*,
No. 23-CV-03417-VC, 2025 WL 1752484 (N.D. Cal. June 25, 2025) ...........................*passim*

*Kadrey, et al. v. Meta Platforms Inc.*,
Dkt. 610, July 11, 2025 Hearing Tr. .................................................................... 2, 5

*Kelly v. Arriba Soft Corp.*,
336 F.3d 811 (9th Cir. 2003).......................................................................... 15

*Kona Enters., Inc. v. Estate of Bishop*,
229 F.3d 877 (9th Cir. 2000).......................................................................... 19

*Lawson v. Grubhub*,
2023 WL 3726490 (N.D. Cal. May 30, 2023) ...................................................... 20

*Lenz v. Universal Music Corp.*,
815 F.3d 1145 (9th Cir. 2016)........................................................................ 10

*Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l, LLC*,
2009 WL 10681000 (N.D. Cal. Sept. 23, 2009) ................................................... 23

*McLaughlin v. Wells Fargo Bank, N.A.*,
2015 WL 10889994 (N.D. Cal. Nov. 24, 2015)..................................................... 22

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)........................................................................ 15

*Schoenborn v. Stryker Corp.*,
2011 WL 5881647 (D. Or. Nov. 21, 2011) .......................................................... 16

*Sega Enterprises Ltd. v. Accolade*,
977 F.2d 1510 (9th Cir. 1992).......................................................................... 9

*Shurance v. Plan. Control Int'l, Inc.*,
839 F.2d 1347 (9th Cir. 1988).......................................................................... 11

*Sinatro v. Barilla Am., Inc.*,
2024 WL 4008715 (N.D. Cal. Aug. 29, 2024)...................................................... 21

*Sony Computer Entertainment, Inc. v. Connectix Corp.*,
203 F.3d 596 (9th Cir. 2000)........................................................................... 9

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984)....................................................................................... 8

*Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*,
765 F. Supp. 3d 382 (D. Del. 2025) .................................................................. 11

*U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*,
583 U.S. 387 (2018)....................................................................................... 9

iv

*U.S. Rubber Co. v. Wright*,
   359 F.2d 784 (9th Cir. 1966) .................................................................................. 6

*UMG Recordings, Inc. v. MP3.Com, Inc.*,
   92 F. Supp. 2d 349 (S.D.N.Y. 2000) ..................................................................... 15

*United States v. Slater*,
   348 F.3d 666 (7th Cir. 2003) ................................................................................. 15

*Van Cauwenberghe v. Biard*,
   486 U.S. 517 (1988) ........................................................................................... 1, 6

*Van Slyke v. Capital One Bank*,
   No. C 07-00671 WHA, 2007 BL 192475 (N.D. Cal. Dec. 3, 2007) ....................... 22

*Vasquez v. USM Inc.*,
   2014 WL 492039 (N.D. Cal. Feb. 5, 2014) ........................................................... 23

*Wang v. Zymergen Inc.*,
   759 F. Supp. 3d 1002 (N.D. Cal. 2024) ................................................................ 16

**Statutes**

28 U.S.C. §1292(b) .................................................................................... *passim*

Copyright Act, 17 U.S.C. 101 *et. seq.* ......................................................................... 3

**Rules**

Civ. L.R. 7-9 ................................................................................................. 23, 24

**Other Authorities**

S. Rep. 85-2434 (1958) ............................................................................................. 6

v

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417

**INTRODUCTION**

Lagging years behind its competitors, Anthropic stole millions of books from notorious pirate libraries to avoid the "slog" of competing fairly. After it was sued for its infringement, Anthropic sought an expedited decision on its fair use defense before either fact or expert discovery was complete. Now, faced with an emphatic rejection of its core position—that it could steal books with impunity—Anthropic urges this Court to get out of the way so it can jump straight to the Ninth Circuit. That is not how litigation works.

The final judgment rule has remained a central feature of our federal court system for more than 200 years. The rule deters "the harassment and cost of a succession of separate appeals," *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981); spurs efficient "judicial administration," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974); and safeguards "the independence of the district judge, as well as the special role that individual plays," *Van Cauwenberghe v. Biard*, 486 U.S. 517, 522 (1988). Interlocutory appeals under Section 1292(b) are a narrow exception to this rule, granted in only in the rarest of cases where resolving a controlling, pure question of law that has actually divided the federal courts would materially advance the termination of the litigation. But they are not granted in cases like this one. The questions Anthropic seeks to certify are steeped in fact, they have divided few jurists (if any), and Anthropic will face a trial on its copyright infringement regardless of how these questions are resolved.

The linchpin of Anthropic's argument is the decision in *Kadrey v. Meta Platforms, Inc.*, No. 23-CV-03417-VC, 2025 WL 1752484, at *1 (N.D. Cal. June 25, 2025), which Anthropic claims reflects an "opposite approach" on piracy allegations "in a very similar case." Dkt 241 at 2. But Anthropic's arguments about *Kadrey*—a single district court decision decided on a different record, where the District Judge also rejected a similar request for interlocutory review—fall far short of

satisfying 28 U.S.C. §1292(b). For starters, both this Court's Order on Fair Use and the *Kadrey* decision rise and fall on the particular facts of each case—critically, here, evidence of Anthropic's creation of a permanent, private library of pirated works akin to the shelved copies of journal articles maintained in *American Geophysical Union v. Texaco*, 60 F.3d 913 (2d Cir. 1994); Dkt. 231 at 20–21. Nor would an appeal at this juncture materially advance termination of the litigation. Even under Anthropic's apparently preferred legal framework (the *Kadrey* decision), Anthropic's would still face a trial. Judge Chhabria recognized that the same type of evidence Plaintiffs presented here—that AI has "the potential to flood the market with endless amounts of . . . . books" or that downloading unauthorized content supports pirate websites—is in "most cases" dispositive of a fair use defense. *Kadrey*, 2025 WL 1752484, at *1; *Bartz v. Anthropic PBC*, 2025 WL 1741691, at *17 (N.D. Cal. June 23, 2025) (citing record evidence that "training LLMs will result in an explosion of works competing with their works"). Because Anthropic's fair use defense is the type of fact-bound issue inappropriate for interlocutory review, and because Anthropic fair use defense fails under either court's decision, an interlocutory appeal is far more likely to prolong—rather than efficiently advance—this litigation.

What is more, any purported conflict between this Court's decision and the *Kadrey* case is at best inchoate. Just last week, the *Kadrey* Court ordered supplemental summary judgment briefing on whether Meta's torrenting from pirate websites qualifies as fair use and rejected Meta's request for an interlocutory appeal. *See* Ex. A (*Kadrey, et al. v. Meta Platforms Inc.*, Dkt. 610, July 11, 2025 Hearing Tr.) at 25:24-21. This Court too should not pause the progress of this case for interlocutory review.

This Court should deny Anthropic's motion for interlocutory appeal under Section 1292(b), along with Anthropic's attempt to relitigate this case in a motion for reconsideration.

2

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and Anthropic's Motion for Reconsideration
3:24-cv-05417

**BACKGROUND**

From the moment it began, Anthropic knew there were "many places from which" it could lawfully obtain the books it wanted. Dkt. 231 at 2 (Court's Order on Fair Use). But the "legal/practice/business slog" of obtaining them, CEO Dario Amodei explained, was simply too great. *Id.* So Anthropic cheated. It stole ~200,000 books in January 2021; ~5,000,0000 books in June 2021; and ~2,000,000 books in July 2022, using a variety of online pirate libraries.[1] Anthropic recognized that doing so was wrong "for legal reasons," *id.*, but it did not care. It had amassed a collection of books rivaling California's biggest libraries—all without paying a cent.

Plaintiffs represent a certified class of copyright owners whose books are found in two of the pirated libraries that Anthropic used. *See* Dkt. 244 at 31. They bring suit under the Copyright Act, 17 U.S.C. 101 *et. seq.*, seeking to hold Anthropic accountable for reproducing their works without permission. *See, e.g.*, Dkt. 70 (Am. Compl. ¶¶ 45–47). Earlier this year, Anthropic urged the Court to resolve summary judgment in its favor before fact discovery could conclude. *See* Dkt. 92. In Anthropic's view, the entirety of its mass theft was excused by the fact that it trained LLMs. Dkt. 231 at 8.

This Court did not agree. While finding that Anthropic's copying of books in the course of LLM training was fair use, Dkt. 231 at 30–31, the Court concluded that Anthropic's downloads from pirated libraries and copies made for its internal pirate library had a different use and a different purpose. *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 533 (2023). Anthropic planned to store those books "forever," even if they would not be "used for training LLMs." Dkt. 231 at 5. That "'general purpose' library" retained the stolen "work[s] as a 'hard resource' for other uses" beyond "training at all." *Id.* at 7. And while Anthropic claimed no

---

[1] These are *total* numbers of books, not the smaller subset of books in the certified class. *See* Dkt. 244. Plaintiffs expect the total number of class works to be substantially lower, after de-duplication of the data sets and reduction for other class criteria such as registered United States copyrights and ISBN or ASIN numbers.

such library existed—a claim it reprises now—it failed to "offer up what [evidence] possessed in support of" it. *Id.* Short-circuiting discovery did not permit Anthropic, as it had hoped, from "resist[ing] putting into the record" evidence relating to its acquisition and storage of books from pirated sites. *Id.* at 8.

The Court next emphatically rejected Anthropic's attempt to justify its piracy. Anthropic was not free to pocket "all the works in the world and keep them forever with no further accounting." *Id.* at 14. The Court "doubt[ed]," indeed, whether "any accused infringer could ever meet its burden of explaining why downloading source copies from pirate sites *that it could have purchased or otherwise accessed lawfully* was itself reasonably necessary to any subsequent fair use." *Id.* at 18. Still, the Court concluded that it "need not decide" Anthropic's summary judgment motion on that basis. Anthropic's training defense, instead, simply could not apply to pirated works that were not used for training. And here, "not every book Anthropic pirated was used to train LLMs." *Id.* at 19. "They were acquired and retained," instead, "as a central library of all the books in the world"—"a central library that one could have paid for." *Id.* at 21. In that way, Anthropic's "piracy was the point." *Id.*

In reaching its decision, the Court plainly considered the facts and issues Anthropic now argues the Court overlooked. Most importantly, the Court acknowledged Anthropic's argument that the collection and storage of books data is a step in LLM training process, but concluded that "[p]irating copies to build a research library without paying for it, and to retain copies should they prove useful for one thing or another, was its own use—and not a transformative one." Dkt. 231 at 19.

Two days after this Court's decision, Judge Chhabria ruled on a summary judgment motion in *Kadrey v. Meta Platforms, Inc.*, 2025 WL 1752484, at *2 (N.D. Cal. June 25, 2025). In granting partial summary judgment for Meta, the *Kadrey* court concluded that—unlike here—*all* the works

4
Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417

that Meta pirated "had the ultimate purpose of LLM training." *Kadrey*, 2025 WL 1752484, at *12. In addition, the *Kadrey* Court ordered additional briefing regarding whether Meta made pirated books available to the public when it downloaded them from shadow libraries and whether that was fair use, confirming that the issue of piracy remains live in *Kadrey* itself. *See* Ex. A at 25:24-21 (Court requesting schedule for summary judgment briefing schedule on torrenting distribution). The *Kadrey* Court also held that interlocutory appeal was inappropriate. *See id.* at 14:18-20 ("I think that the best way to manage this case is to get it all adjudicated, and then, once judgment is entered, whoever loses on what issue can appeal."); *id.* at 14:6-18 (Meta's suggestion that the Court take appeal *sua sponte*).

Notwithstanding these facts and the different posture, the *Kadrey* case lies at the heart of Anthropic's Motion and, in Anthropic's words, "cannot be reconciled" with this Court's decision in two ways. Motion at 16. As explained below, however, Anthropic's framing is both incorrect and immaterial. These two decisions rest on their own facts. And regardless, interlocutory appeal remains inappropriate even incorrectly assuming a conflict exists.

## QUESTIONS PRESENTED FOR CERTIFICATION

Anthropic requests this Court certify its summary judgment order for interlocutory review under 28 U.S.C. §1292(b) so that "[t]wo specific questions of law" receive "immediate appellate review." Motion at 12.

The first question is: "Whether fair use is analyzed by reference to the defendant's ultimate use of a copyrighted work or by parsing the defendant's use into subsidiary steps."

The second question is: "Whether a defendant's acquisition of a copyrighted work from an unauthorized source counsels strongly against fair use, even if the defendant's ultimate use of that work is transformative."

5
Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417

## LEGAL STANDARD UNDER SECTION 1292(B)

Incorporated first into the Judiciary Act of 1789 and now codified at 28 U.S.C. §1291, the final judgment rule has long promoted "a number of important purposes" in the judicial system. *Firestone Tire*, 449 U.S 368 at 374. The rule deters "the harassment and cost of a succession of separate appeals," *id.*; spurs efficient "judicial administration," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974); and safeguards "the independence of the district judge, as well as the special role that individual plays," *Van Cauwenberghe v. Biard*, 486 U.S. 517, 522 (1988).

Congress recognized the importance of the final judgment rule when enacting Section 1292(b). The Senate Report provides that appeals under the Section would "be used only in exceptional cases," S. Rep. No. 85-2434, 1958 WL 3723, at 5259 (1958), a principle which the Ninth Circuit has frequently reaffirmed since, *see U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) ("only in extraordinary cases"); *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002) ("rare circumstances"); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981) ("exceptional circumstances").

To ensure its limited use, Section 1292(b) is circumscribed in three ways. An interlocutory order may be appealed only if it "involves a controlling question of law;" only if there is a "substantial ground for difference of opinion" on that question; and only if resolving the question "materially[s] advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). These requirements are "construed narrowly," *James*, 283 F.3d at 1068, and Anthropic accordingly bears "a heavy burden" to demonstrate they are met, *Henley v. Jacobs*, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019). Section 1292(b) seldom allows "a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).

1

**ARGUMENT**

2

Anthropic has not carried its heavy burden to demonstrate that this is the rare case in which

3

an interlocutory appeal is warranted. That is because it is not.

4

The first question Anthropic seeks to certify—whether training was its only use of pirated

5

works—is inextricably fact-bound. This Court made express factual findings, relying on ample

6

record evidence that Anthropic's piracy went beyond training. Anthropic fails to recast those

7

extensive factual determinations as legal ones in the sole paragraph of its brief (at 8) where it tries

8

to do so. No more persuasive is Anthropic's attempt to suggest that a focus on "ultimate use" would

9

even matter here—as this Court found, that argument lacked any basis "in[] the record," Dkt. 231

10

at 8. That fact-bound conclusion led the Court to likewise correctly hold—as have a legion of other

11

courts—that piracy is not shielded by fair use simply because a defendant might also do something

12

transformative with the works at issue.

13

The second question Anthropic seeks certified—whether piracy "counsels strongly" against

14

fair use—is no more appropriate for interlocutory review, as it too is fact-bound and an issue on

15

which there is no meaningful difference of opinion. The Court found that Anthropic pirated books

16

and kept them for purposes beyond LLM training, and that these "actual uses" of the books were

17

unprotected. Dkt. 231 at 20. And while the Court correctly observed that "[t]here is no decision

18

holding" that pirating books which could have been "accessed lawfully was itself reasonably

19

necessary to any subsequent fair use," the Court stated it was not "decid[ing] this case" on that

20

basis. *Id.* at 18–19. In that regard, the Court's decision accords with *Kadrey*, which similarly noted

21

that the pirated nature of works could diminish their claim to fair use while ultimately declining—

22

again like this Court—to resolve fair use on those grounds. 2025 WL 1752484, at *11.

23

Certifying an interlocutory appeal under these circumstances will thus have no benefit. But

24

the costs will be steep. By the time this Court decides the Motion, trial will likely be fewer than

25

26

27

28

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417

1   three months away, fact discovery will have concluded, expert reports will have been served, and

2   the notice process for class members will be around the corner. Thrusting this case into an appellate

3   posture at the eleventh hour—leaving this Court, Plaintiffs, and scores of class members in the

4   lurch—cannot be the right decision, least of all to address a series of fact-bound questions on which

5   there is little meaningful dispute.

6

7   **I.    Anthropic's Attempt to Rehabilitate Its Piracy Does Not Warrant an Interlocutory Appeal.**

8

9         **a.    The question of what constitutes a "use" in this case is inextricably fact-bound.**

10        Anthropic first takes aim at the Court's purported failure to "focus[] on Anthropic's ultimate

11   purpose of using the works to develop its LLMs," which Anthropic contends is a *legal* error. Motion

12   at 14. That is wrong. This Court's decision about the uses to which Anthropic put pirated books

13   turned on the specific facts of this case. It had to.

14        "[A]s the Supreme Court has emphasized, the fair use inquiry is highly fact dependent, and

15   there are few bright-line rules." *Kadrey*, 2025 WL 1752484, at *2. Fair use "requires a case-by-

16   case determination" of the "particular use," *Harper & Row Publishers, Inc. v. Nation Enters.*, 471

17   U.S. 539, 549, 560 (1985), which is a "notoriously fact sensitive" inquiry that "often cannot be

18   resolved without a trial," *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 275 (2020). Every

19   fair use case must thus "be decided on its own facts." *Sony Corp. of Am. v. Universal City Studios,

20   Inc.*, 464 U.S. 417, 448 n.31 (1984) (quotation marks omitted); *see also Warhol*, 598 U.S. at 533

21   (fair use "requires an analysis of the *specific 'use'* of a copyrighted work," and even the very "same

22   copying may be fair when used for one purpose but not another.")

23        The Court adopted precisely this fact-specific approach here, grounding its conclusion that

24   Anthropic's downloaded pirated works and maintained them in a private library long after it

25   determined not to use them to train an LLM. For instance, the Court identified evidence that

26   "Anthropic planned to 'store everything forever'" and that Anthropic would not "'delete a book'—

27

28

8

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417

even if not used for training LLMs." Dkt. 231 at 5; *see also id.* at 19. The Court also accurately recounted Anthropic's efforts to "build[] more tools for searching its 'general purpose' library and for accessing books." *Id.* As the Court noted, "[n]o initial copy was ever deleted, even if never used or no longer used." *Id.*

The Court covered the training process from beginning to end. What it did *not* do, however, was expand Anthropic's training-is-fair-use defense to inoculate Anthropic's decision to download free copies of books from pirate websites to avoid a "legal/practice/business slog." MSJ Opp. Ex. 27. Though acknowledging correctly that pirating works for free when they are otherwise available on the open market is "inherently, irredeemably infringing," the Court, in a careful examination of the record, also recognized that training was "not the only use at issue." Dkt. 231 at 14.

The Court's treatment of the precedent on which Anthropic relied confirms that its fair use conclusion turned on factual, rather than legal determinations. In distinguishing the intermediate copying cases, for instance, the Court observed that *Sega Enterprises* "reached only one result *because on those facts* there was only one 'overall purpose' for the unauthorized copies." Dkt. 231 at 22 (quoting *Sega Enterprises Ltd. v. Accolade,* 977 F.2d 1510 (9th Cir. 1992) (emphasis added). And in *Sony Computer*, fair use was found only after the court concluded that the specific "conduct" at issue was "necessarily" and "solely" relevant to the defendant's ultimate purpose. Dkt. 231 at 23 (citing *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000)).

Anthropic can thus do little to defend the purported legal character of the question it presents. Motion at 13. It spends just one paragraph—shorn of any explanation, let alone any relevant authority—declaring that the question it poses "requires the court 'to expound on the law' and 'elaborat[e] on [the] broad' fair use 'legal standard." *Id.* (quoting *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018)).

But Anthropic's question does no such thing, and even Anthropic ultimately concedes as

much. Anthropic grants that if it "were to subsequently use retained works for purposes other than LLM development activities . . . then those separate uses would be subjected to their own fair use analysis." Dkt. 241 at 15 n.1. But whether Anthropic "retained works for purposes other than LLM development" is precisely one of the fact questions that this Court already resolved against Anthropic:

> But not every book Anthropic pirated was used to train LLMs. *And, every pirated library copy was retained even if it was determined it would not be so used.* Pirating copies to build a research library without paying for it, *and to retain copies should they prove useful for one thing or another, was its own use*—and not a transformative one.

Dkt. 231 at 19 (emphases added). As Anthropic admitted at oral argument: "[I]f a purported fair user had retained pirated copies for uses beyond the fair use, then her piracy would not be excused by the fair use." Dkt. 231 at 8. Exactly.

Anthropic's other justifications for certifying its first question likewise confirm its fact-bound nature. Anthropic contends that, had the Court "adopted Anthropic's argument that it should look only at the ultimate use of the downloaded works," "the outcome would likely have been different" because "Anthropic's actions were all interconnected, necessary elements in pursuit of the single purpose of LLM development." Motion at 14 (cleaned up). But whether Anthropic's piracy was "interconnected" and "necessary" to LLM development is a question of fact—one that the Court decided against Anthropic based on the record in this case. *Id.* The same is true of whether Anthropic "acquired, stored, and organized books" only "so that they could be used for . . . developing LLMs, *id.* at 15; whether Anthropic "put the works to some other use"; *id.*; or whether Anthropic's "only" "objective [was] developing LLMs," *id.*

For that reason, Anthropic's identification of only three cases in the past 31 years that have granted interlocutory review on issues of fair use, *see* Motion at 13, is beside the point. *Lenz* did not consider any aspect of the fair use doctrine itself; only whether copyright holders were required

10

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and Anthropic's Motion for Reconsideration
3:24-cv-05417

to consider fair use before sending takedown notifications and, if so, whether the copyright holder there had done so. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016). In *Texaco*, *both* parties agreed there was "a strong public interest in having prompt appellate review of the fair use issue"—an issue that the district court had already held a full-blown bench trial to consider. *Am. Geophysical Union v. Texaco Inc.*, 802 F. Supp. 1, 30 (S.D.N.Y. 1992), *amended* (Oct. 26, 1992), *aff'd*, 60 F.3d 913 (2d Cir. 1994). And in *Thomson*, Judge Bibas, sitting by designation, certified an interlocutory appeal to the circuit court on which he presides only *after* fact discovery closed, *after* the facts were "undisputed," and *after* the issues were "squarely in[] the legal realm." *Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 765 F. Supp. 3d 382, 397 (D. Del. 2025).

Here, by contrast, the first question that Anthropic poses, and the many subsidiary questions it entails, inescapably turn on the facts. Resolving those fact-bound questions is not what interlocutory review is for. That is most of all true in a case like this one, where trial is just months away and ongoing fact discovery will address the very issues that Anthropic's Motion concerns. *See, e.g.*, *Shurance v. Plan. Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988) (denying leave to appeal under Section 1292(b) where the appeal "could not be completed before . . . when trial is currently scheduled" and thus threatened "delaying the resolution of this litigation").

### b. Resolving Anthropic's first question in its favor would not be controlling and would not materially advance this case.

Even if the Ninth Circuit were to conclude that "fair use is analyzed by reference to the defendant's ultimate use of a copyrighted work" as Anthropic urges, that resolution would not control the outcome of this case.

That is for a simple reason: this Court's conclusion that the "ultimate use" of Anthropic's pirated copies *was not solely to train LLMs* would remain intact. As the Court explained, "[b]uilding a central library of works *to be available for any number of further uses was itself the use* for which Anthropic acquired these copies." Dkt. 231 at 19 (emphasis added). "Pirating copies

11

to build a research library without paying for it, and to retain copies should they prove useful for one thing or another, was its own use." *Id.* Anthropic's concession that "separate uses" beyond training "would be subjected to their own fair use analysis," Motion at 15 n.1, is thus dispositive. This Court concluded that Anthropic engaged in those separate uses. Dkt. 231 at 19. And Anthropic admits that conclusion would not be altered by an appellate decision in its favor. Motion at 15 n.1.

Anthropic's reliance on *Kadrey* confirms why even its success on appeal would only prolong—not advance—this litigation. As the *Kadrey* Court held, evidence that a generative AI product "will likely flood the market with similar works, causing market dilution" will be sufficient in most cases to defeat a fair use defense. 2025 WL 1752484, at *2. This is precisely the type of evidence present in this case. Dkt. 231 at 17. *Kadrey*, moreover, also confirmed that downloading from shadow libraries can weigh against fair use. *Id.* at *12. In short, even if the Ninth Circuit were to adopt Anthropic's preferred fair-use framework in the *Kadrey* decision wholesale, Anthropic's fair use defense on this record and in this lawsuit would still fail.

### c. Anthropic overstates any difference of opinion about whether its piracy constitutes a use, and an ordinary split between two district courts is not the type of significant conflict that warrants immediate, interlocutory review

Anthropic aims to disrupt this case months before trial because, less than a month ago, a district court judge in a different matter issued a ruling that Anthropic apparently likes. That recent decision—Judge Chhabria's in *Kadrey*—"cannot be reconciled" or "squared" with this Court's summary judgment order, Anthropic says. Motion 16. So instead of allowing a nascent conflict between two district courts to resolve in the ordinary course, Anthropic demands a rush to judgment. But Anthropic misapprehends the *Kadrey* case, and once more ignores the critical role that facts play in the fair use analysis.

***There is no meaningful difference of opinion.*** *Kadrey* and this Court began by sharing common ground on the issue most important to Anthropic's Motion—what constitutes a use.

*Kadrey* held that the defendant's initial downloading of pirated works was "a *different use* from any copying done in the course of LLM training." 2025 WL 1752484, at *12 (emphasis added). This Court held the same. *See* Dkt. 231 at 23.

*Kadrey* then observed that such "downloading must still be considered in light of its ultimate . . . purpose." 2025 WL 1752484, at *12. The purpose in *Kadrey*, the Court held, was the defendant's LLM training. *Id.* The Court reached that conclusion, however, based on its review of the record before it. *Kadrey* found that "*all of the downloads* the plaintiffs identify had the ultimate purpose of LLM training." *Id.* (emphasis added). Some of those downloads were used to validate "good training data." *Id.* Other downloads were "used as training data" themselves. *Id.* But together, *every* download served the ultimate purpose of LLM training. The *Kadrey* plaintiffs, according to the court, had simply "provide[d] no evidence" at all "that [it] was actually the case" that "only *some* [pirated works] ever made it into an LLM for training." *Id.* (emphasis added). And, notably, the *Kadrey* Court both reserved for later proceedings whether pirated works that Meta made widely available during its downloading were entitled to fair use, and concluded that an interlocutory appeal was unwarranted. *See Kadrey*, July 11, 2025 Hearing Tr. at 25:24-2. Training is not the cover-all that Anthropic claims, even in the *Kadrey* case on which Anthropic heavily relies.

Here, by contrast, the Court found evidence that "not every book Anthropic pirated was used to train LLMs"; that "every pirated library copy was retained even if it was determined it would not be so used"; that Anthropic had compiled a "general-purpose library of works for various uses" outside LLM training; and that Anthropic "kept these pirated copies in its library even after deciding it would not use them to train its AI (at all or ever again)." Dkt. 231 at 18–19, 30.

To be sure, this Court recognized correctly that Anthropic's decision to turn to criminal organizations to obtain massive tranches of copyrighted books that "it could have purchased or otherwise accessed lawfully" was "inherently, irredeemably infringing even if the pirated copies

are immediately used for the transformative use and immediately discarded." Dkt. 231 at 18–19. This accords with an unbroken line of *Napster*-era decisions holding that downloading copies of otherwise-available copyrighted works for free to avoid paying for them is a manifestly unfair, substitutive use, as the infringer "get[s] for free something they would ordinarily have to buy." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001), as amended (Apr. 3, 2001), *aff'd sub nom*, 284 F.3d 1091 (9th Cir. 2002), *and aff'd sub nom. A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002); Dkt. 158 (MSJ Opp.) at 6–8. But the Court also recognized that it "need not decide this case on that rule," given the extensive evidence that Anthropic "retained pirated copies even after deciding it would not use them . . . for training its LLMs ever again." Dkt. 231 at 19.

Anthropic thus resigns itself to repeatedly citing *Kadrey*'s stray comment, offered in the alternative at the end of its factual analysis, that "even if Meta did download some copies that weren't ultimately used for training, fair use doesn't require that the secondary user make the lowest number of copies possible." 2025 WL 1752484, at *13. But that passing statement, offered in the alternative after paragraphs of factual analysis, cannot possibly be the basis to upend this case and thrust it into an interlocutory posture.

That is especially so because *Kadrey*'s "lowest copies" remark fails to reflect the scope of the fair use analysis conducted here. *See* Dkt. 231 at 8–9. As the Court observed, Anthropic in fact conceded at oral argument "that if a purported fair user had retained pirated copies for uses beyond the fair use, then her piracy would not be excused by the fair use." Dkt. 231 at 8. And it concluded that, based on the record evidence, Anthropic had indeed "acquired and retained [] a central library of all the books in the world" that would "be available for any number of further uses" besides LLM training. *Id.* at 19.

No more apt is Anthropic's attempt (at 17) to posit a conflict between this Court's decision

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and Anthropic's Motion for Reconsideration
3:24-cv-05417

and precedent from the Supreme Court or Ninth Circuit. *Warhol*, for example, did not yield to the artist's claim that fair use turned on whatever end purpose the artist ascribed to it. The Court explained, instead, that fair use "must be evaluated in the context of the specific use at issue," 598 U.S. at 545, even if that risked "indifference to purposes beyond the" use itself, *id.* at 577 (Kagan, J., dissenting). Anthropic's reliance on *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), and *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003), are even further afield. Neither case concerns piracy at all. *See* Dkt. 153 at 15 (MSJ Opp.).

By contrast, the case law that does consider piracy uniformly holds that piracy is unprotected by fair use.[2] And here, the Court concluded—as a matter of fact, and in view of the all-purpose "central library" Anthropic created—that "piracy was the point." Dkt. 231 at 21.

***Differing opinions amongst district courts is generally insufficient to warrant interlocutory review.*** Anthropic at last suggests that interlocutory review is warranted because the "legal issue here will recur in the many pending copyright challenges to generative AI tools." Motion 17. Anthropic does not identify a single pending motion in any case in which this issue is live, let alone any decision besides *Kadrey* in which a purported conflict has emerged. It is "well settled," however, "that the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010) (quotation marks and citation omitted).

As a result, the most Anthropic is willing to say is that plaintiffs in other cases "*could* seek

---

[2] *See, e.g., A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001), as amended (Apr. 3, 2001) (affirming that users' downloading music files using the Napster directory is not fair use); *United States v. Slater*, 348 F.3d 666, 668 (7th Cir. 2003) (rejecting "Pirates With Attitudes" defendants' argument that district court erred by declining to give a fair use jury instruction); *UMG Recordings, Inc. v. MP3.Com, Inc.*, 92 F. Supp. 2d 349, 352 (S.D.N.Y. 2000) (rejecting fair use defense even when the downloader already owned one purchased copy); *BMG Music v. Gonzalez*, 430 F.3d 888, 890 (7th Cir. 2005) ("the only appellate decision on point has held that downloading copyrighted songs cannot be defended as fair use"); *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 n.10 (1994) ("most infringements are simple piracy," but "such cases are worlds apart from many of those raising reasonable contentions of fair use" (quotation omitted)).

15

to" prevail on piracy, which "*could* well shape the outcome" of those cases. Motion at 18 (emphasis added). But even if that speculation were correct, it would not matter. Certification is regularly denied even where district courts *are* in open conflict, because a "substantial ground for difference of opinion generally exists *only* where the *circuits* are in dispute on the question and the court of appeals of the circuit has not spoken on the point." *Wang v. Zymergen Inc.*, 759 F. Supp. 3d 1002, 1011 (N.D. Cal. 2024) (first emphasis added, quotation marks and citation omitted); *see also Herrera v. Fargo*, 2020 WL 7051097, at *4 (C.D. Cal. Oct. 8, 2020) ("[T]he fact that district courts have applied the [law] differently is insufficient to find a substantial grounds for a difference in opinion[.]"); *Schoenborn v. Stryker Corp.*, 2011 WL 5881647, at *2 (D. Or. Nov. 21, 2011) ("[T]he court's recognition of and disagreement with other district court opinions does not constitute a basis for interlocutory certification.").

If, as Anthropic says, many district courts are soon to consider these issues, that is a feature, not a bug. Percolation enhances review. Shortcutting the normal appellate process does not.

## II.     Anthropic's Second Question Misrepresents the Court's Opinion and is Deeply Fact-Bound in Any Event.

The second question Anthropic presents—whether piracy categorically defeats fair use—is also inapt for interlocutory review.

***The question is fact-bound and not controlling.*** Anthropic initially frames this Court's analysis as turning on whether piracy "inherently" defeats fair use. Motion 19. But while the Court concluded (correctly) that it "doubt[ed] that any accused infringer could ever meet its burden of explaining why" piracy "was itself reasonably necessary to any subsequent fair use," Dkt. 231 at 18, the Court stated that "this order need not decide this case on that rule," *id.* at 19. The Court noted, furthermore, that its "doubts" of the availability of fair use in the context of piracy stemmed from representations made by Anthropic's own counsel at oral argument: "You can't just bless yourself by saying I have a research purpose and, therefore, go and take any textbook you want."

16

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and Anthropic's Motion for Reconsideration
3:24-cv-05417

1     *Id.* at 18 (citing May 22, 2025 Hearing Tr. at 53).

2        Recognizing as much, Anthropic alternatively claims that the disputed question is whether

3 piracy "counsels strongly" against fair use. Motion at 19. But here, the Court found that fair use

4 was unavailable because Anthropic "retained pirated copies even after deciding it would not use

5 them or copies from them for training its LLMs ever again." Dkt. 231 at 19. And when Anthropic

6 argued that the bad faith of "pirating copies cannot somehow short-circuit the fair use analysis,"

7 the Court responded by stating—again—that the bad faith of piracy was "not the basis for this

8 decision." *Id.* (cleaned up).

9

10        Anthropic's "[f]act-bound" disputes with the Court's conclusions do not present the type of

11 issue likely to be "made uniform through appellate review." *Cooter & Gell v. Hartmarx Corp.*, 496

12 U.S. 384, 405 (1990). Piracy may be inimical to fair use in many ways. Sometimes, piracy may

13 benefit pirate "libraries or their other users," which risks greater piracy by others—amongst the

14 types of evidence that Plaintiffs anticipate adducing here. *Kadrey*, 2025 WL 1752484, at *21. So

15 too might piracy's impact be so significant in a given case—"destroy[ing] the academic publishing

16 market," as Anthropic's counsel offered—that the applicability of fair use wanes. Dkt. 231 at 18.

17 Likewise, piracy might be entirely unjustified based on the knowledge or motivations of the

18 defendant, which Plaintiffs expect to be part of their case as well. *Cf. id.* at 3–6, 18–19. The

19 pertinent *legal* question, however, remains the same: whether "the particular copying done" is

20 entitled to protection. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 573 (1994). That is the

21 question that this Court sought to answer, and one that is entirely fact dependent.

22

23        ***There is no meaningful difference of opinion.*** Anthropic's motion once again resorts to

24 exaggerating the differences between this case and *Kadrey*, claiming that piracy made all the

25 difference here but no difference there. But that divergence is one of Anthropic's own making.

26 *Kadrey* and this Court both *agreed* that piracy could be a relevant consideration in fair use analysis.

27

28

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417

*Kadrey* made that clear right out of the gate. Meta was "wrong to suggest," *Kadrey* held in addressing factor one, "that its use of shadow libraries is irrelevant to whether [Meta's] copying was fair use." *Kadrey*, 2025 WL 1752484, at *11. That was because piracy could indeed matter in at least "a few different ways." *Id.* It might inform whether a defendant acted in bad faith. *Id.* It might "help[] others acquire copyrighted works . . . without paying for them." *Id.* And it might "be relevant if it benefitted those who created the libraries and thus supported and perpetuated their unauthorized" activities. *Id.* at *12. *Kadrey* thus did not suggest that piracy could not weigh against fair use. It did the exact opposite: "In the *vast majority of cases*, *Kadrey* stated "this sort of peer-to-peer file-sharing will constitute copyright infringement." *Id.* And indeed, further proceedings about pirated books remain live in *Kadrey* itself.

Anthropic's one-paragraph effort (at 20–21) to recast the fact-bound nature of piracy into a legal question about the role of bad faith does not pass muster. For one, Anthropic's second question does not inquire about bad faith at all. *See id.* And for another, neither this Court nor *Kadrey* relied on bad faith in issuing their decisions. *See* Dkt. 231 at 19 ("[Anthropic's] bad faith is not the basis for this decision."); *Kadrey*, 2025 WL 1752484, at *11 ("[B]ad faith . . . doesn't move the needle here, given the rest of the summary judgment record."). Crucially, as Anthropic itself acknowledges, *Kadrey* and this Court agreed (yet again) about the only *legal* issue at stake. The status of bad faith in fair use analysis, both courts observed, remains "in flux" and "not yet reappraised" by the Ninth Circuit. Motion at 20–21 (first quoting *Kadrey*, 2025 WL 1752484, at *11; second quoting Dkt. 231 at 20–22 n.5).

Left with nothing else, Anthropic declares that a difference of opinion *must* exist because the issue of piracy "carries significant implications for the many pending copyright cases involving generative AI technology." Motion at 21. Anthropic cites no case at all in this portion of its brief; the only "difference of opinion" it posits is the one between itself and this Court. "If a contrary

18

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and Anthropic's Motion for Reconsideration
3:24-cv-05417

position" to Anthropic's "were widely adopted," Anthropic urges, "then LLM training by any company that downloaded works from third-party websites like LibGen or Books3 could constitute copyright infringement." Motion at 21. But *whether* "a contrary position" to Anthropic's has in fact been "widely adopted" is the whole point of the "meaningful difference" analysis. And on that score, Anthropic has simply nothing to say.

*Anthropic's question is incapable of advancing this case.* In four sentences on the last page of its argument for interlocutory review, Anthropic predicts it will prevail here if the pirated nature of its works "should play little if any role in the [fair use] analysis." Motion at 21. But, as explained, the impact of piracy on this case is a fact-bound question unsuitable for interlocutory review. Certifying an interlocutory appeal on that basis will not advance this litigation; it will only do the opposite.

### III.    Reconsideration is unwarranted.

Anthropic's alternative request for reconsideration of this Court's carefully considered summary judgment decision also fails.

To safeguard "the interests of finality" and preserve the "conservation of judicial resources," *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quotation marks and citation omitted), reconsideration of a prior ruling is permitted only "sparingly," *Erickson Prods. Inc. v. Kast*, 2023 WL 5600095, at *1 (N.D. Cal. Aug. 29, 2023) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). Reconsideration thus demands "highly unusual circumstances"—for instance, a court's manifest failure to consider critical facts or the emergence of an intervening change in controlling law on a dispositive issue. *Flanigan v. Holder*, 2021 WL 5359429, at *1 (N.D. Cal. Oct. 26, 2021) (Alsup, J.) (quoting *Marylyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) ). Reconsideration is not available, by contrast, merely where a Court draws different conclusions from the factual record than the moving

1   party would have wished. Nor is reconsideration warranted simply because another district court

2   drew purportedly different conclusions from the distinct factual record before it.

3       Anthropic cannot meet its heavy burden to demonstrate reconsideration is proper here. Once

4   again, it raises only fact-bound disputes with this Court's summary judgment decision. But "a do-

5   over" is not what motions for reconsideration are for. *In re 5-Hour Energy Mktg. & Sales Pracs.*

6   *Litig.*, 2017 WL 4772567, at *4 (C.D. Cal. Aug. 11, 2017). Indeed, Anthropic's request for fact-

7   bound reconsideration itself belies Anthropic's 1292(b) motion, which claims that the real issue is

8   one of law that requires no examination of the factual record. *Lawson v. Grubhub*, 2023 WL

9   3726490, at *4 (N.D. Cal. May 30, 2023) ("[A]n application of a settled legal standard to particular

10  facts" is not "any true question of law" (quotation marks and citations omitted)).

### A.   The Court Properly Considered the Record Evidence Regarding Anthropic's Use of Pirated Books.

14      Anthropic first argues that the Court manifestly failed to consider material facts because it

15  is supposedly "undisputed" that every book Anthropic pirated was used for developing its LLMs.

16  Wrong: "What defendants repeatedly characterize[] as 'no evidence' . . . [is] actually just evidence

17  that defendants disagreed with". *Etter v. Allstate Ins. Co.*, No. 3:17-cv-00184 WHA, at 2 (N.D. Cal.

18  Jan. 23, 2018), Dkt. 79 (Alsup, J.) (denying motion for reconsideration).

20      ***The Court did not ignore the record.*** Anthropic suggests that the Court failed to consider

21  that Anthropic's collection and storage of pirated books data was only for the purpose of LLM

22  training. Motion at 17–19. Not so. The Court expressly considered the argument that the collection

23  and storage of books data is a step in LLM training process, but nevertheless concluded that

24  "[p]irating copies to build a research library without paying for it, and to retain copies should they

25  prove useful for one thing or another, was its own use—and not a transformative one." Dkt. 231 at

26  19; *see also* Class Cert. Order, Dkt. 244 at 24–25 ("The summary judgment order makes clear that

27  Anthropic is liable for all pirated copies regardless of whether they were used for training[.]").

28

20

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417

A motion for reconsideration is not an appropriate vehicle to quibble with the factual inferences that the Court drew from the record. *See, e.g., Sinatro v. Barilla Am., Inc.,* 2024 WL 4008715, at *2 (N.D. Cal. Aug. 29, 2024) (denying reconsideration where movant "largely rehashes previous arguments regarding the sufficiency of Plaintiffs' evidence"); *Bayer v. Neiman Marcus Grp., Inc.*, 2018 WL 10425912, at *1 (N.D. Cal. July 30, 2018) (denying reconsideration where movant "presents no new facts that were unavailable to the Court at the time it made its decision, and the Court considered the record as a whole in making its ruling"); *Delbridge v. Kmart Corp.*, 2013 WL 3475465, at *1–2 (N.D. Cal. July 10, 2013) (Alsup, J.) (denying motion for leave to file motion for reconsideration where court considered evidence in multi-factor analysis).

**Plaintiffs presented sufficient facts about Anthropic's usages of pirated books.** Anthropic also argues that because Plaintiffs did not advance a "general library theory," Anthropic did not have a chance to respond to it. Motion at 19. But both the record and Plaintiffs' opposition to Anthropic's summary judgment motion provided ample evidence that Anthropic pirated books and created a central, all-purpose library of them. For instance, as the Court recognized, Anthropic admitted that it retained the LibGen dataset even after it stopped using that dataset to train LLMs. *See* Dkt. 231 at 4 (citing Opp. Ex. 17 at 93–94). Anthropic also committed itself to "building a research library" that would be "voluminous." *See id.* (citing Opp. Ex. 22 at 145). And when Anthropic employees stated that they would "open . . . the books" contained in the pirated datasets that in part comprised that library, they did not mention LLM training at all. *See* Opp. Ex. 12 at -0391318. Unsurprisingly, Anthropic concluded that it planned to "store everything forever" because there was simply "no compelling reason to delete a book." CC Br. Ex. 12 at -0144509.

Anthropic's real objections to this extensive record evidence are not that it is novel, but instead that the Court should have drawn different inferences from it. But as the Court made clear, that gets the pertinent summary judgment standard exactly backward, especially in light of

21

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and Anthropic's Motion for Reconsideration
3:24-cv-05417

Anthropic's repeated efforts to resist discovery on disputed factual questions. As the Court explained, "Anthropic has resisted putting into the record what copies or even sets of copies were in fact used for training LLMs," even though "[w]e know that Anthropic has more information about what it in fact copied for training LLMs (or not)." Dkt. 231 at 8. For that reason, "[a]ll deficiencies must be held against Anthropic and not the other way around." *Id.*

Anthropic contends at last contends that the "*complete record* will not support a conclusion that there was a separate "general-purpose library." Motion at 23. But developing the "complete record" is precisely what Anthropic is trying to prevent now, just as it did prior to summary judgment. Anthropic had ample opportunity to respond to the facts it now contests. Reconsideration is not the proper means for doing so. *See McLaughlin v. Wells Fargo Bank, N.A.*, 2015 WL 10889994, at *2 (N.D. Cal. Nov. 24, 2015) (Alsup, J.) (denying motion for reconsideration where the court had already considered the arguments and facts movant raised in motion); *Van Slyke v. Capital One Bank*, 2007 WL 4259405, at *2–3 (N.D. Cal. Dec. 3, 2007) (Alsup, J.) (similar); *Drevaleva v. VA*, 2019 WL 3037549, at *6 (N.D. Cal. July 11, 2019) (Alsup, J.) ("Each of plaintiff's briefs, motions, and other filings are read and carefully considered before a determination is made.").

The sole case Anthropic relies upon to support its argument is inapposite. In *Blair v. Rent-A-Ctr., Inc*., the plaintiff sought reconsideration of this Court's finding that individualized issues would predominate for establishing a particular shipping cost. 2019 WL 529292, at *3 (N.D. Cal. Feb. 11, 2019) (Alsup, J.). The Court had "erred in assuming," based on plaintiff's "overreaching" initial motion, that the defendant's records could establish individualized issues, when in fact, the record was silent on the cost. *Id.* at *4. By contrast, the question of how Anthropic uses pirated books was put squarely before the Court based on the record. Plaintiffs addressed Anthropic's piracy separate from its LLM training in its opposition brief, to which Anthropic responded in its

22

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and Anthropic's Motion for Reconsideration
3:24-cv-05417

1    reply. *See* Dkt. 158 at 7–8, 11–12; Dkt. 181 at 14.

2        **B. The *Kadrey* Order Is Not a Change in Controlling Law.**

3        Anthropic next argues that the *Kadrey* Order should be treated as an "intervening change of

4    law" warranting reconsideration. Motion at 20. Yet "[o]nly changes of *controlling* law warrant

5    leave under Rule 7-9(b)(2)." *Guity Hamzeh, v. Pharmavite LLC, et al.*, 2025 WL 1810082, at *2

6    (N.D. Cal. July 1, 2025) (emphasis added). And *Kadrey* is not controlling: Anthropic acknowledges

7    as much itself. Motion at 20. That should be the end of the matter. *See Mason & Dixon Intermodal,

8    Inc. v. Lapmaster Int'l, LLC*, 2009 WL 10681000, at *1 (N.D. Cal. Sept. 23, 2009) (noting that the

9    intervening decision, "which emanated from a federal district court in Michigan, does not control"

10    and "such a development should not be viewed as a material difference or change in law"); *Bot M8

11    LLC v. Sony Corp. of Am.*, 2020 WL 1904102, at *1 (N.D. Cal. Apr. 16, 2020), *aff'd*, 4 F.4th 1342

12    (Fed. Cir. 2021) (Alsup, J.) (denying leave to move for reconsideration in part because party offered

13    "no [intervening] *binding* decision") (emphasis added); *Vasquez v. USM Inc.*, 2014 WL 492039, at

14    *1 (N.D. Cal. Feb. 5, 2014) (Alsup, J.) (denying leave to move for reconsideration on basis of single

15    decision from the California Court of Appeal).

16        Anthropic cannot create a new exception to Local Rule 7-9, demanding that cases involving

17    a "rapidly changing area of the law" tolerate reconsideration in the face of only "merely persuasive"

18    authority. Anthropic's lead case— *J.B. v. G6 Hosp., LLC*—did not even address the standard for

19    reconsideration under Local Rule 7-9 and turned on a pure question of law under Section 230 of

20    the Communications Decency Act. 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021). In that case,

21    moreover, the context was a motion to dismiss, not a fact-bound motion for summary judgment.

22    Anthropic's other case, *Doe By & Through Doe v. Petaluma City Sch. Dist.*, granted reconsideration

23    only after considering several intervening decisions from the courts of appeal interpreting Supreme

24    Court precedent. 949 F. Supp. 1415 (N.D. Cal. 1996).

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417

In any event, nothing in the *Kadrey* decision warrants reconsideration of the Court's order in this case. *Kadrey* repeatedly emphasized that "the fair use inquiry is highly fact dependent, and there are few bright-line rules." *Kadrey,* 2025 WL 1752484 at *2. In addition, in the time since Anthropic filed this motion, the *Kadrey* Court has set future briefing on how certain of the pirated books in that case were used, further demonstrating that the fair use analysis in *Kadrey* is not complete. *See* Ex. A at 25:24-21 (Court requesting schedule for summary judgment briefing schedule on torrenting distribution).

Without intervening controlling law—or any (let alone a significant number of) intervening persuasive rulings—Anthropic fails to satisfy Civil Local Rule 7-9(b)(2).

## CONCLUSION

Anthropic's motion for certification of interlocutory review under 28 U.S.C. §1292(b), and Anthropic's motion for reconsideration, should both be denied.

24

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417

Dated: July 28, 2025                    By: /s/ Samir Doshi

Justin A. Nelson *
Alejandra C. Salinas *
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
Michael Gervais (SBN 330731)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
rnath@susmangodfrey.com
mgervais@susmangodfrey.com

Jordan W. Connors *
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com

J. Craig Smyser *
Samir Doshi*
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor,
New York, NY 10019
Telephone: (212) 336-8330
csmyser@susmangodfrey.com
sdoshi@susmangodfrey.com
*Co-Lead Class Counsel*

Rachel Geman *
Jacob S. Miller*
Danna Z. Elmasry*
**LIEFF CABRASER HEIMANN**
**& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
wdozier@lchb.com
afreymann@lchb.com
jmiller@lchb.com

Daniel M. Hutchinson (SBN 239458)
Jallé Dafa (SBN 290637)
Reilly T. Stoler (SBN 310761)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**

25

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
rstoler@lchb.com
jdafa@lchb.com
dhutchinson@lchb.com

Betsy A. Sugar*
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
222 Second Ave., #1640
Nashville, TN 37201
Telephone: (615) 313-9000
bsugar@lchb.com

*Co-Lead Class Counsel*

Plaintiffs' Opposition to Anthropic's Motion for Interlocutory Appeal, 28 U.S.C. §1292(b), and
Anthropic's Motion for Reconsideration
3:24-cv-05417