| | |
|---|---|
| DOUGLAS A. WINTHROP (Bar No. 183532)<br>Douglas.Winthrop@arnoldporter.com<br>JOSEPH FARRIS (Bar No. 263405)<br>Joseph.Farris@arnoldporter.com<br>PIETER de GANON (Bar No. 320385)<br>Pieter.deGanon@arnoldpoter.com<br>JESSICA L. GILLOTTE (Bar No. 333517)<br>Jessica.Gillotte@arnoldporter.com<br>ESTAYVAINE BRAGG (Bar No. 341400)<br>Estayvaine.Bragg@arnoldporter.com<br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br>Three Embarcadero Center, 10th Floor<br>San Francisco, CA 94111-4024<br>Telephone: (415) 471-3100<br>Facsimile: (415) 471-3400<br><br>ASSAD H. RAJANI (Bar No. 251143)<br>Assad.Rajani@arnoldporter.com<br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br>3000 El Camino Real, Suite 500<br>Palo Alto, CA 94306-3807<br>Telephone: (650) 319-4500<br><br>OSCAR RAMALLO (Bar No. 241487)<br>Oscar.Ramallo@arnoldporter.com<br>ALLYSON MYERS (Bar No. 342038)<br>Ally.Myers@arnoldporter.com<br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br>777 South Figueroa Street, 44th Floor<br>Los Angeles, CA 90017-5844<br>Telephone:    (213) 243-4000<br><br>*Attorneys for Defendant* ANTHROPIC PBC | DARALYN J. DURIE (Bar No. 169825)<br>ddurie@mofo.com<br>RAMSEY FISHER (Bar No.334228)<br>ramseyfisher@mofo.com<br>JACKSON LANE (Bar No. 351633)<br>jlane@mofo.com<br>**MORRISON FOERSTER**<br>425 Market Street<br>San Francisco, CA 94105-2482<br>Telephone: (415) 268-7000<br><br>WHITNEY R. O'BYRNE (Bar No. 325698)<br>wobyrne@mofo.com<br>**MORRISON FOERSTER**<br>707 Wilshire Boulevard<br>Los Angeles, CA 90017-3543<br>Telephone: (213) 892-5200<br>Facsimile: (213) 892-5454<br><br>MARY PRENDERGAST (Bar No. 272737)<br>mprendergast@mofo.com<br>ADITYA KAMDAR (Bar No. 324567)<br>akamdar@mofo.com<br>**MORRISON FOERSTER**<br>2100 L Street, NW, Suite 900<br>Washington, D.C. 20037<br>Telephone: (202) 887-1500<br><br>MARK LEMLEY (Bar No. 155830)<br>mlemley@lex-lumina.com<br>**LEX LUMINA LLP**<br>700 S. Flower Street, Suite 1000<br>Los Angeles, CA 90017<br>Telephone: (213) 600-6063 |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC. CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>　　　　　　　Plaintiffs,<br>　v.<br>ANTHROPIC PBC,<br>　　　　　　　Defendant. | Case No. 3:24-cv-05417-WHA<br><br>Action Filed: August 19, 2024<br><br>**ANTHROPIC PBC'S RESPONSE TO ORDER TO SHOW CAUSE RE DEFENSES BASED ON ADVICE OF COUNSEL**<br><br>Judge: Honorable William H. Alsup |

ANTHROPIC'S REPLY ISO MOTION FOR ORDER TO SHOW CAUSE　　　　　　　　　　　No. 3:24-CV-05417-WHA

# TABLE OF CONTENTS
Page

# TABLE OF CONTENTS

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.    Under Ninth Circuit Law, Offering an Affirmative Defense Based on State of Mind Does Not Impliedly Waive Privilege ........................................................................... 2

    II.   Anthropic Has Not Invoked Advice of Counsel, Has Not Relied on Privileged Communications, and Will Not Do So in Establishing Its Innocent Infringer Defense .......... 9

CONCLUSION ........................................................................................................................ 11

ANTHROPIC'S REPLY ISO MOTION FOR ORDER TO SHOW CAUSE     No. 3:24-CV-05417-WHA

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aboudara v. City of Santa Rosa*,
   No. 17-cv-01661-HSG (JSC), 2018 WL 748968 (N.D. Cal. Jan. 22, 2018) .............................. 6

*Arista Records LLC v. Lime Group LLC*,
   2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) ....................................................................... 8, 9

*Bittaker v. Woodford*,
   331 F.3d 715 (9th Cir. 2003) ..................................................................................................... 7

*Chevron Corp. v. Pennzoil Co.*,
   974 F.2d 1156 (9th Cir. 1992) ......................................................................................... 4, 9, 10

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
   259 F.3d 1186 (9th Cir. 2001) ................................................................................................... 4

*DMF, Inc. v. AMP Plus, Inc.*,
   2024 WL 1796396 (C.D. Cal. Apr. 25, 2024) ........................................................................... 5

*Fed. Trade Comm'n v. Qualcomm Inc.*,
   No. 17-CV-00220-LHK, 2018 WL 6460529 (N.D. Cal. Dec. 10, 2018) ............................... 3, 6

*GLD3, LLC v. Albra*,
   2024 WL 4471672 (S.D.N.Y. Oct. 11, 2024) ............................................................................ 9

*Goro v. Flowers Foods, Inc.*,
   2019 WL 6252499 (S.D. Cal. Nov. 22, 2019) ........................................................................... 6

*Home Indemnity Co. v. Lane Powell Moss & Miller*,
   43 F.3d 1322 (9th Cir. 1995) ........................................................................................... 3, 4, 10

*In re Geothermal Resources Int'l, Inc.*,
   93 F.3d 648 (9th Cir. 1996) ................................................................................................. 3, 10

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
   No. 20-md-02966-RS, 2025 WL 860505 (N.D. Cal. Mar. 19, 2025) ............................. 7, 9, 10

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
   552 F.3d 1033 (9th Cir. 2009) ................................................................................................... 3

*McKeen-Chaplin v. Provident Sav. Bank, FSB*,
   2015 WL 502697 (E.D. Cal. Feb. 5, 2015) ............................................................................... 6

*Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*,
   No. 17-cv-03695-MMC (JSG), 2018 WL 6079617 (N.D. Cal. Nov. 21, 2018) ....................... 6

*Rockwell Int'l Corp. v. Superior Ct.*,
    26 Cal. App. 4th 1255 (1994) ........................................................................................... 3

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
    32 F.3d 851 (3d Cir. 1994) ........................................................................................... 7, 8

*Sorensen v. Black & Decker Corp.*,
    2007 WL 1976652 (S.D. Cal. Apr. 9, 2007) ..................................................................... 6

*Spin Master, Ltd. v. Zobmondo Ent., LLC*,
    2012 WL 8134011 (C.D. Cal. Mar. 9, 2012) ..................................................................... 5

*Stone Brewing Co., LLC v. MillerCoors LLC*,
    2023 WL 6450199 (S.D. Cal. Sept. 28, 2023), *aff'd* 2024 WL 5244556 (9th Cir.
    Dec. 30, 2024) ................................................................................................................ 5, 9

*United States ex rel. Patzer v. Sikorsky Aircraft Corp.*,
    730 F. Supp. 3d 856 (E.D. Wis. 2024) .......................................................................... 8, 9

*United States v. Amlani*,
    169 F.3d 1189 (9th Cir. 1999) ................................................................................. passim

*United States v. Anthony*,
    No. 16-cr-00150-BLF-4 (VKD), 2023 WL 2716581 (N.D. Cal. Mar. 29, 2023) ............... 6

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ........................................................................................... 11

**Statutes**

17 U.S.C. § 504(c)(2) ................................................................................................................ 8

**INTRODUCTION**

Anthropic has not invoked an advice of counsel defense in this case and does not intend to do so. Its assertion of affirmative defenses of "Innocent Infringement" and "Volitional Conduct" does not put any attorney-client communications at issue, and so Anthropic has not impliedly waived its attorney-client privilege. Plaintiffs' contrary assertion is legally and factually baseless.

As to innocent infringement, Anthropic's witnesses will testify that, based on their general experience, including in their prior employment, they believed that downloading books from the internet was fair because they were not reading or distributing the books and were using them for a different purpose. They will not testify that they relied on advice of counsel. Plaintiffs do not contend otherwise. Instead, the premise of their July 24 letter seems to be that *any* assertion of an innocent infringement defense *automatically* waives attorney-client privilege over any "relevant" attorney-client communication, ECF 271 at 1, by which they apparently mean any attorney-client communication related to the alleged infringement. That wildly overbroad theory ignores Ninth Circuit precedent and would render the innocent infringement defense an automatic waiver of the attorney-client privilege.

Because Plaintiffs have waived any theory of copyright infringement based on the "output" of Anthropic's generative AI models generated by its users, Anthropic does not anticipate that volitional conduct will be an issue at trial. Regardless, that defense would not put attorney-client communications at issue either.

**BACKGROUND**

On October 21, 2024, Anthropic answered Plaintiffs' complaint and asserted defenses of Innocent Infringement and Volitional Conduct. ECF 57 at 11, 12. Anthropic's answer to the amended complaint continued to assert those defenses. ECF 72 at 10, 12. Plaintiffs have accordingly been free to explore the bases for these defenses in discovery over the past nine months, through document requests, interrogatories, or depositions. Plaintiffs served a general discovery request for "documents concerning or relating to any affirmative defense" on October 10, 2024, and Anthropic responded in November 2024 that it would produce all non-privileged documents on which it intended to rely in support of any affirmative defense. (Anthropic does not intend to rely on

-1-

any privileged documents.)  Plaintiffs raised no objection to that response. Two days ago, on July 29, 2025, Plaintiffs served additional document requests specifically seeking any documents not already produced that relate to the innocent infringement or volitional conduct defenses. (Anthropic will, of course, produce any such documents.)

Beyond these document requests, Plaintiffs have made no effort to explore the basis for Anthropic's innocent infringement or volitional conduct defenses. Plaintiffs did not ask about the basis for either defense over the course of sending six sets of interrogatories encompassing 25 questions between October 2024 and July 2025, including in their final set of interrogatories served on July 29, 2025. Plaintiffs have taken 4 fact witness depositions to date, including of Anthropic's chief science officer Jared Kaplan. Plaintiffs have not asked any witness whether the witness believed that downloading from LibGen or PiLiMi for training purposes was a fair use or did not infringe copyright, or the basis for those beliefs. Nor have Plaintiffs sought to explore the volitional conduct defense.

Nonetheless, without any effort at meeting and conferring or understanding the basis for either defense, Plaintiffs sent their July 24 letter to this Court taking the position that, by "asserting privilege over materials relevant to these affirmative defenses," Anthropic had "selectively used privilege as both a sword and a shield," ECF 271 at 1.  In that letter, Plaintiffs use misleading language to falsely imply that they were unaware until "Anthropic's most recent privilege log served on July 20, 2025" that Anthropic was asserting privilege over specific communications "from the time period immediately before Anthropic" downloaded books.  ECF 271 at 2.  While those documents (from June 2021) appeared on the July 20 privilege log because it is cumulative, they were first *added* to the privilege log on March 31, 2025, and Plaintiffs should have known about them since then.

## ARGUMENT

I. **Under Ninth Circuit Law, Offering an Affirmative Defense Based on State of Mind Does Not Impliedly Waive Privilege**

Anthropic has not invoked, and does not intend to invoke, an advice of counsel defense in this case. Although the Ninth Circuit has recognized that parties may impliedly waive privilege

without explicitly invoking an advice-of-counsel defense, the circumstances when such waiver is permitted are quite limited. The Ninth Circuit has adopted a three-part test, each element of which must be satisfied: (1) the party must be "asserting the 'privilege as the result of some affirmative act, such as filing suit;'" (2) "through this affirmative act, the asserting party puts the privileged information at issue;" and (3) "allowing the privilege would deny the opposing party access to information vital to its defense." *United States v. Amlani*, 169 F.3d 1189, 1195-96 & n.5 (9th Cir. 1999) (citations omitted). That is, under the first two factors, a party only puts privileged communications "at issue"—and only impliedly waives privilege—if that party affirmatively relies on the privileged communications, such as by invoking or describing them.

For example, in *Kaiser Found.ation Health Plan, Inc. v. Abbott Laboratories, Inc.*, 552 F.3d 1033 (9th Cir. 2009), *Home Indemnity Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1325 (9th Cir. 1995), and *In re Geothermal Resources International, Inc.*, 93 F.3d 648 (9th Cir. 1996), the Ninth Circuit concluded that parties had not put privileged communications at issue even though they offered claims or defenses that implicated state of mind.  In *Geothermal Resources*, the Ninth Circuit held that a company did not impliedly waive privilege by asserting a counterclaim that turned on whether employment agreements were entered in good faith, even though contemporaneous legal advice bore on that issue. 93 F.3d at 652-53. A client waives privilege, the Court held, "only when the client tenders an issue touching directly upon the substance or content of an attorney-client communication—not when the testimony sought would be only 'one of several forms of indirect evidence' about an issue." *Id*. (quoting *Rockwell Int'l Corp. v. Superior Ct.*, 26 Cal. App. 4th 1255, 1268 (1994)).[1]

In *Kaiser*, a generic drug manufacturer argued that it accepted a settlement payment in return for not marketing its drug because it was genuinely concerned about patent infringement liability, not for anti-competitive purposes. 552 F.3d at 1042-43. The generic's attorneys had advised about whether patent infringement liability was a true risk—evidence that plainly bore on

---

[1] Although *Home Indemnity* and *Geothermal Resources* applied state law, the Ninth Circuit and courts in this district have subsequently relied upon them in cases involving federal law.  *E.g.*, *Amlani*, 169 F.3d at 1195; *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 WL 6460529, at *1 (N.D. Cal. Dec. 10, 2018).

the legitimacy of the generic's claim that it was genuinely concerned about liability. *Id.* But the Ninth Circuit held that there was no implied waiver because the generic manufacturer's "defense at trial was not that it acted based on advice of counsel" but instead that its concern was based on views of its "Board of Directors" about "business risk." *Id.* Because the company's "defense was that it acted without regard to, or even contrary to, what counsel advised," it did not put privileged communications at issue. *Id.*

Likewise, in *Home Indemnity*, a company sought to prove the "reasonableness of [a] settlement amount" to support a contribution claim. 43 F.3d at 1327. The Ninth Circuit rejected an argument that the claim necessarily implicated counsel's settlement recommendations because it implicated the company's reasons for settling. *Id.* There was no implied waiver, the Court held, because the claimant did not "resort to its attorneys' communications" as part of its evidence to the jury. *Id.*

In the cases in which the Ninth Circuit has *found* implied waiver, by contrast, it has emphasized that the party has relied on, invoked, or described its communications with attorneys. That is true of both cases Plaintiffs cite. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992) ("[T]o the extent that [defendant] claims that its tax position is reasonable *because* it was based on advice of counsel, [defendant] puts at issue the tax advice it received." (emphasis added)); *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (affirming district court's decision to preclude advice-of-counsel defense when party "sought to argue that he continued his infringing activities based on the advice of his attorney, while at the same time refusing to answer questions regarding relevant communications with counsel until the 'eleventh hour'"). Similarly, in *Amlani*, a criminal defendant alleged that the government had violated his right to counsel by disparaging his attorney, causing him to discharge the attorney. 169 F.3d at 1195. The Ninth Circuit emphasized that "[p]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation." *Id.* (internal quotation marks omitted). The defendant only waived privilege because he was expressly relying on and describing his communications firing counsel by asserting that he

1    fired counsel for a particular reason—indeed, he called his counsel as a fact witness. *Id.* at 1195-96
2    & n.5.
3        Plaintiffs do not cite any Ninth Circuit cases finding implied waiver simply because the
4    defendant has invoked an affirmative defense related to "state of mind" or because privileged
5    communications might "bear on [a party's] state of mind." ECF 271 at 2. It is beyond dispute that
6    someone can have a belief on a topic, even a legal topic, independent of conversations with counsel.
7        District courts within the Ninth Circuit have overwhelmingly rejected plaintiffs' expansive
8    waiver theory and held, instead, that parties are free to offer evidence and argument about state-of-
9    mind without waiving privilege so long as that evidence and argument does not rely on advice of
10   counsel. If the party has an independent source for its good faith belief, it does not waive privilege
11   just because advice of counsel might "bear on" or be "relevant" to good faith.
12       The recent decision in *Stone Brewing* is exactly on point. *See Stone Brewing Co., LLC v.*
13   *MillerCoors LLC*, 2023 WL 6450199, at *3 (S.D. Cal. Sept. 28, 2023), *aff'd* 2024 WL 5244556 (9th
14   Cir. Dec. 30, 2024). There, the defendant's witnesses testified that they were not engaged in willful
15   trademark infringement because they "believe[d]" they had "common law rights" and a "right of
16   usage" based on past practice. *Id.* at *3-4. But they asserted privilege over "specific attorney-client
17   communications" about that topic. *Id.* at *3. The court examined the same cases on which Plaintiffs
18   rely here and concluded that there was no implied waiver because "there was nothing in [the
19   witness's] testimony that indicated he reached his opinions or conclusions based on the advice of
20   counsel." *Id.* at *3-4. So long as witnesses point to "an independent source for their good faith
21   belief" that a use was non-infringing, the court explained, they have not put legal advice at issue and
22   there is no waiver. *Id.* at 4.
23       Numerous other courts in this Circuit have concluded that defendants in intellectual property
24   cases may offer evidence and testimony about their innocent state of mind without putting in issue
25   attorney-client communications that could have informed that state of mind. *E.g.*, *DMF, Inc. v.*
26   *AMP Plus, Inc.*, 2024 WL 1796396, at *11 (C.D. Cal. Apr. 25, 2024) ("It would stretch the implied-
27   waiver doctrine too far to preclude [defendant] from offering evidence of its state of mind just
28   because its employees consulted attorneys at the relevant time."); *Spin Master, Ltd. v. Zobmondo*

*Ent., LLC*, 2012 WL 8134011, at *4 (C.D. Cal. Mar. 9, 2012) (finding privilege waived for period when only source for assertion of good faith infringement was advice of counsel, but not for period when the defendant offered a separate basis for good faith); *Sorensen v. Black & Decker Corp.*, 2007 WL 1976652, at *2 (S.D. Cal. Apr. 9, 2007) (defendant's assertion of equitable estoppel in patent infringement case did not impliedly waive attorney-client privilege even though the communications might show that defendant acted in reliance on advice of counsel rather than based on the plaintiff-patentee's conduct, because "[t]he privilege is waived only when a party chooses to utilize the information to advance a claim or defense," and not merely because it is "relevant").

Courts have reached the same conclusion outside the intellectual property context. One court recently canvassed three Ninth Circuit cases finding implied waiver and concluded that, in "all three," "the privilege holder invoked a privileged communication or privileged legal advice as part of a claim or defense, thereby putting the communication or advice at issue." *United States v. Anthony*, No. 16-cr-00150-BLF-4 (VKD), 2023 WL 2716581, at *3 (N.D. Cal. Mar. 29, 2023). By contrast, under Ninth Circuit law, "[p]rivileged communications that have not been put at issue do not become discoverable merely because they may be relevant," even if they bear on "state of mind" and the defendant has raised a state of mind-based defense. *Id.* Numerous cases so hold.[2]

---

[2] *See also, e.g.*, *Goro v. Flowers Foods, Inc.*, 2019 WL 6252499, at *16 (S.D. Cal. Nov. 22, 2019) ("district courts in the Ninth Circuit have declined to find implied waiver of the attorney-client privilege simply because a defendant asserted a good faith affirmative defense to a plaintiff's claims … courts have found that implied waiver applies only if the defendant affirmatively relies on and asserts the advice of counsel or communications with counsel in support of its defense"); *Aboudara v. City of Santa Rosa*, No. 17-cv-01661-HSG (JSC), 2018 WL 748968, at *1 (N.D. Cal. Jan. 22, 2018) (no implied waiver where defendant "offered to stipulate that it will not in any way rely on advice of counsel in support of its good faith defense"); *id.* ("The Ninth Circuit has never held that merely asserting good faith waives the attorney-client privilege as to communications with counsel regarding the topic at issue. This Court, too, declines to do so."); *Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, No. 17-cv-03695-MMC (JSG), 2018 WL 6079617, at *2 (N.D. Cal. Nov. 21, 2018) (no implied waiver because defendants "nowhere try to prove their claim by disclosing or describing an attorney client communication" (internal quotation marks omitted)); *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 2015 WL 502697, at *9 (E.D. Cal. Feb. 5, 2015) (no waiver because "[defendant] does not allege that it relied upon the advice of counsel in making its good faith determination. []Defendant must support its good faith defense by citing the advice of counsel in order to put it in issue."); *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-cv-00220-LHK, 2018 WL 6460529, at *2 (N.D. Cal. Dec. 10, 2018) (adopting a relevance standard would "enlarge the scope of the doctrine of implied waiver to a degree that would vitiate the purpose behind attorney-client privilege").

1   And to the extent a few cases have suggested that a party need not expressly "utilize" the privileged information, *see In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-md-02966-RS, 2025 WL 860505, at *3 (N.D. Cal. Mar. 19, 2025), they still do not support Plaintiffs' theory that asserting a state-of-mind defense automatically puts in issue any attorney-client communications bearing on that state of mind. *Xyrem*, for instance, found at-issue waiver when "attorneys appear to have played a major role" in a disputed settlement agreement and when, based on deposition testimony, the "evidence *establishe[d]* that the subjective belief [about the reasonableness of the settlement] was also informed by attorney advice." *Id.* at *3-4 (emphasis original; internal quotation marks omitted). Notably, the Ninth Circuit case that *Xyrem* purports to quote for the proposition that a party need not expressly "utilize" the privileged communication does not actually contain the language that *Xyrem* attributes to it. *Bittaker v. Woodford*, 331 F.3d 715, 720-21 (9th Cir. 2003). And *Bittaker* itself rejected a "broad waiver rule" in favor of a "narrow" one, reasoning that "[a] broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote." *Id.* at 722.

Leading out-of-circuit cases have likewise confined at-issue waiver to circumstances in which a party actually relies on the privileged information. As the Third Circuit has explained, "finding that confidentiality may be waived depending on the relevance of the communication completely undermines the interest to be served" by the attorney-client privilege, which is to encourage confidential consultations on important matters, including those that are likely to be relevant to future litigation. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994). Accordingly, the Third Circuit held, even when an infringer argues that it did not act willfully, "the advice of the infringer's counsel is not placed in issue, and the privilege is not waived, unless the infringer seeks to limit its liability by describing that advice and by asserting that he relied on that advice." *Id.* at 863. In other words, "[a]dvice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Id.* Similarly, in a thoughtful recent decision, a court in the Eastern District of Wisconsin traced the development of the at-issue waiver doctrine

and concluded that witnesses may testify "that they derived their subjective beliefs about the legality of their conduct though their experience in the government-contracting industry" without waiving privilege over "any advice these witnesses may have received from counsel on this topic," even though such advice "would undoubtedly be relevant to the veracity of their testimony." *United States ex rel. Patzer v. Sikorsky Aircraft Corp.*, 730 F. Supp. 3d 856, 877 (E.D. Wis. 2024).

It makes good sense to limit implied privilege waivers to circumstances in which a party actually relies on or invokes the privileged communication. *First*, state-of-mind defenses are common in the law, especially in intellectual property cases, and it would gut the attorney-client privilege if parties were precluded from offering arguments and evidence about their state of mind unless they were willing to waive privilege. *Second*, the innocent infringer defense—which Congress expressly created via statute, 17 U.S.C. § 504(c)(2)—would be a dead letter if merely invoking it, as Anthropic has done, always results in the waiver of attorney client privilege. Plaintiffs' theory has no limiting principle. *Third*, the rule Plaintiffs propose would deter people from seeking legal advice as to fair use or the legality of their actions more generally, particularly when they already held a belief that their use was fair or legal—because they could lose that defense by learning more about it from counsel. That deterrence risk is particularly acute because "the client will have no sense of whether the communication may be relevant to some future issue, and will have no sense of certainty or assurance that the communication will remain confidential." *Rhone-Poulenc*, 32 F.3d at 864.

In their July 24 letter, Plaintiffs invoked *Arista Records LLC v. Lime Group LLC*, 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011), to suggest that any time a defendant puts its state of mind at issue, the other side is entitled to privileged communications that might be relevant to state of mind. That is not the law in the Ninth Circuit. *Amlani*, 169 F.3d at 1195. It is frequently the case that access to an adversary's privileged communications might assist a litigant in proving its case or disproving the adversary's contentions. But the whole point of the attorney-client privilege is to protect relevant documents. When communications are not relevant (or responsive), they need not be produced in the first place.

1  And as courts have noted, the Second Circuit itself has moved away from the relevance
2  approach followed in *Arista Records*. *See, e.g.*, *GLD3, LLC v. Albra*, 2024 WL 4471672, at *7
3  (S.D.N.Y. Oct. 11, 2024) ("at-issue waiver occurs when the party asserts a claim or defense that he
4  intends to prove by use of the privileged materials or when the privileged materials are
5  indispensable to that party's claims or defenses"); *Sikorsky Aircraft*, 730 F. Supp. 3d at 876 (noting
6  that the Second Circuit has recently suggested that reliance on the communication is required).

## II. Anthropic Has Not Invoked Advice of Counsel, Has Not Relied on Privileged Communications, and Will Not Do So in Establishing Its Innocent Infringer Defense

As the case law establishes, Anthropic's decision to advance an innocent infringer defense does not impliedly waive privilege. Anthropic does not intend to rely on advice of counsel as part of this defense and has not done so to date. Plaintiffs do not argue that it has. *Cf.* ECF 271 at 1-2. Nor do Plaintiffs make any factual showing that Anthropic has injected or will inject advice of counsel into this case to support its innocent infringement defense, or that advice of counsel is the underlying basis for that defense. Normally, parties offering a sword/shield argument refer to some *actual* evidence or testimony that supports their suggestion that legal advice is being used as a sword. But here, without making any effort to understand the basis for the innocent infringement defense, Plaintiffs take the position that the mere invocation of such a defense automatically waives attorney-client privilege for any communications that may "bear" on the legality of an alleged infringement. ECF 271 at 2. That is not the law. *E.g.*, *Stone Brewing*, 2023 WL 6450199, at *3-4; *Chevron*, 974 F.2d at 1162-63; *Amlani*, 169 F.3d at 1195. Again, "[p]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation." *Id.* (internal quotation marks omitted).

In support of the innocent infringer defense, Anthropic's witnesses will testify that, based on their general experience, including in their prior employment, they believed that downloading books from the internet was not infringement and was fair because they were not reading or distributing the books and were using them for a different purpose. The evidence will accordingly show an "independent source" for the innocent infringement defense. *Stone Brewing*, 2023 WL 6450199, at *3-4. Nor is this anything like *Xyrem*, in which witnesses "confirm[ed] in depositions that attorney

1  advice informed their beliefs about the litigations and developments therein" and in which the party
2  sought to withhold "as privileged nearly 17,000 documents about the settlement," which "confirms
3  that attorney advice informed" the basis for the settlement. 2025 WL 860505, at *4. Here, the
4  entries on the privilege log Plaintiffs identify "from the time period immediately before Anthropic
5  torrented Libgen," ECF 271 at 2, involve one email thread.

6        In short, nothing Anthropic has done to date (and nothing Anthropic will do) has "put[]
7  [any] privileged information at issue," *Amlani*, 169 F.3d at 1195, and so the second prong of the
8  Ninth Circuit's test is not satisfied. Put simply, there is no sword, express or implied. Plaintiffs have
9  no evidentiary basis to contend otherwise.

10        Even if Anthropic had put privileged information at issue (it hasn't), Plaintiffs' waiver
11  argument would still fail because they make zero effort to explain how they satisfy the third prong
12  of the Ninth Circuit test: whether "allowing the privilege would deny the opposing party access to
13  information *vital* to its defense." *Home Indemnity*, 43 F.3d at 1326; *see Amlani*, 169 F.3d at 1195
14  (emphasis added). Plaintiffs instead gesture toward vague concepts of "fairness." ECF 271 at 1
15  (citing *Chevron*, 974 F.2d at 1162). To be sure, fairness informs application of the third prong,
16  *Amlani*, 169 F.3d at 1195 (quoting *Chevron*, 974 F.2d at 1162), but unfairness results only when the
17  privileged information is *"vital"* to the other side. There is no unfairness, and no waiver, if the
18  privileged communications "would be only one form of indirect evidence regarding [the client's]
19  good faith." *Geothermal Resources*, 93 F.3d at 653.

20        Any privileged communications bearing on this topic would at best be "one form of indirect
21  evidence." Plaintiffs will be free to cross-examine Anthropic's witnesses about the basis for their
22  belief that Anthropic's downloading of LibGen and PiLiMi were not infringing, and to offer their
23  own witnesses to contend that such a belief was unreasonable. Plaintiffs do not offer any argument
24  that privileged communications in this time period are "vital" to their defense. The mere possibility
25  that access to privileged information would be *helpful*—a possibility present in every case—does
26  not establish that access is "vital."

27        Plaintiffs also refer in their letter to privileged communications around the time that
28  Anthropic *stopped* using downloaded books to train models, and to a comment in a document

-10-
ANTHROPIC'S REPLY ISO MOTION FOR ORDER TO SHOW CAUSE      No. 3:24-CV-05417-WHA

stating that Anthropic stopped for "legal reasons." ECF 271 at 2. Anthropic does not intend to argue to the jury that it stopped training models based on advice of counsel. That is, it will not be asserting reliance on counsel for *either* the decision to download books from LibGen or PiLiMi *or* the decision to stop using such material. In any event, Plaintiffs are not suing Anthropic for its decision to *stop* using books from LibGen or PiLiMi for training. And they offer no explanation at all, legal or factual, for the suggestion that attorney-client communications relating to that decision must be disclosed if Anthropic wishes to argue that its earlier decision to acquire these datasets was conducted in good faith. Accepting their suggestion would have the perverse effect of disincentivizing people who are engaged in ongoing activity to consult their attorneys about it.

Anthropic also pleaded a volitional conduct defense. To the extent Plaintiffs argued that Anthropic had committed copyright violations based on a model's output based on user input, Anthropic had intended to rely on that defense: If third-party users prompt a model to generate copyrighted content, Anthropic would not be responsible for any copyright violations because such a violation would not be volitional on Anthropic's part. *See generally VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731-32 (9th Cir. 2019). Because Plaintiffs have expressly conceded that they are *not* making any argument about output, Anthropic does not anticipate that the volitional conduct defense will be an issue at trial. In any event, that defense does not even relate to attorney-client privileged communications, has nothing to do with advice of counsel, and certainly does not put attorney-client communications in issue.

## CONCLUSION

Anthropic has not impliedly waived attorney-client privilege by offering an innocent infringement or volitional conduct defense, and it may not be forced to choose between offering those defenses and producing privileged documents.

| | | |
|---|---|---|
| 1 | Dated: July 31, 2025 | Respectfully submitted, |
| 2 | | **ARNOLD & PORTER KAYE SCHOLER LLP** |
| 3 | | |
| 4 | | By: /s/ *Douglas A. Winthrop*<br>DOUGLAS A. WINTHROP |
| 5 | | *Attorneys for Defendant* ANTHROPIC PBC |

**CERTIFICATE OF SERVICE**

I, Douglas A. Winthrop, am the ECF user whose identification and password are being used to file the foregoing **ANTHROPIC PBC'S RESPONSE TO ORDER TO SHOW CAUSE**.

Dated: July 31, 2025

                 /s/ *Douglas A. Winthrop*