1  COOLEY LLP
   KATHLEEN R. HARTNETT (314267)
2  (khartnett@cooley.com)
   3 Embarcadero Center, 20th Floor
3  San Francisco, CA 94111-4004
   Telephone: (415) 693-2000
4  Facsimile: (415) 693 2222

5  ARNOLD & PORTER KAYE SCHOLER LLP
   DOUGLAS A. WINTHROP (183532)
6  (Douglas.Winthrop@arnoldporter.com)
   JOSEPH FARRIS (263405)
7  (Joseph.Farris@arnoldporter.com)
   Three Embarcadero Center, 10th Floor
8  San Francisco, CA 94111-4024
   Telephone: (415) 471-3100
9  Facsimile: (415) 471-3400

10 Attorneys for Defendant
   ANTHROPIC PBC

11
   (Additional Counsel on Next Page)
12

MORRISON & FOERSTER LLP
DARALYN J. DURIE (169825)
(Ddurie@mofo.com)
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

MORRISON & FOERSTER LLP
WHITNEY R. O'BYRNE (325698)
(WOByrne@mofo.com)
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

Attorneys for Defendant
ANTHROPIC PBC

13          UNITED STATES DISTRICT COURT

14          NORTHERN DISTRICT OF CALIFORNIA

15          SAN FRANCISCO DIVISION

16

17 ANDREA BARTZ, CHARLES GRAEBER,
   and KIRK WALLACE JOHNSON,
18
              Plaintiffs,
19
        v.
20
   ANTHROPIC PBC,
21
              Defendant.
22

23

24

Case No. 3:24-cv-05417-WHA

Action Filed: August 19, 2024

**DEFENDANT ANTHROPIC PBC'S REPLY IN
SUPPORT OF MOTION FOR AN ORDER
PERMITTING INTERLOCUTORY APPEAL
PURSUANT TO 28 U.S.C. § 1292(B) OR, IN
THE ALTERNATIVE, MOTION FOR LEAVE
TO FILE MOTION FOR RECONSIDERATION**

Hearing Date: August 28, 2025
Hearing Time: 8:00 a.m.
Judge: Honorable William H. Alsup

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   COOLEY LLP                                      MORRISON & FOERSTER LLP
    EPHRAIM MCDOWELL (*pro hac vice*)               RAMSEY W. FISHER (334228)
2   (emcdowell@cooley.com)                          (RamseyFisher@mofo.com)
    ALEXANDER J. KASNER (310637)                    JACKSON LANE (351633)
3   (akasner@cooley.com)                            (jlane@mofo.com)
    1299 Pennsylvania Avenue NW, Suite 700          425 Market Street
4   Washington, DC  20004-2400                      San Francisco, CA  94105-2482
    Telephone: (202) 842-7800                       Telephone: (415) 268-7000
5   Facsimile: (202) 842-7899                       Facsimile: (415) 268-7522

6   ARNOLD PORTER & KAYE SCHOLER LLP                MORRISON & FOERSTER LLP
    JESSICA L. GILLOTTE (333517)                    FITZ BECKWITH COLLINGS (*pro hac vice*)
7   (Jessica.Gillotte@arnoldporter.com)             (fcollings@mofo.com)
    ESTAYVAINE BRAGG (341400)                       MARY PRENDERGAST (272737)
8   (Estayvaine.Bragg@arnoldporter.com)             (MPrendergast@mofo.com)
    Three Embarcadero Center, 10th Floor            ADITYA VIJAY KAMDAR (324567)
9   San Francisco, CA 94111-4024                    (AKamdar@mofo.com)
    Telephone: (415) 471-3100                       2100 L Street, N.W.
10  Facsimile: (415) 471-3400                       Washington, DC 20037
                                                    Telephone: (202) 887-1500
11  LEX LUMINA LLP                                  Facsimile: (202) 887-0763
    MARK LEMLEY (155830)
12  (mlemley@lex-lumina.com)
    700 S. Flower Street, Suite 1000
13  Los Angeles, CA 90017
    Telephone: (213) 600-6063
14
    Attorneys for Defendant
15  ANTHROPIC PBC

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY ISO MOTION PERMITTING
INTERLOCUTORY APPEAL
CASE NO. 3:24-CV-05417-WHA

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................... 1

II.   THE ORDER MEETS THE REQUIREMENTS FOR § 1292(B) REVIEW
      BECAUSE IT RAISES CRITICAL AND UNSETTLED ISSUES REGARDING
      FAIR USE THAT HAVE DIVIDED COURTS IN THIS DISTRICT............................ 2

      A.   Interlocutory Review Is Warranted to Determine Whether Fair Use Is
           Analyzed By Reference to the Defendant's Ultimate Purpose in Using a
           Work.................................................................................................................... 2

           1.   The Ultimate Purpose Inquiry Is a Controlling Legal Issue,
                Resolution of Which May Materially Advance the Litigation.................... 2

           2.   There Is Substantial Ground for Difference of Opinion on the
                Ultimate Purpose Inquiry ......................................................................... 6

      B.   Interlocutory Review Is Warranted to Determine Whether a Defendant's
           Acquisition of a Copyrighted Work from an Unauthorized Source Counsels
           Strongly Against Fair Use.................................................................................. 8

           1.   The Significance of a Work's Origin Is a Controlling Legal Issue,
                Resolution of Which Will Materially Advance the Litigation.................... 8

           2.   There Is Substantial Ground for Difference of Opinion on the
                Relevance of a Work's Origin................................................................. 10

III.  ALTERNATIVELY, RECONSIDERATION OF THE ORDER IS
      WARRANTED ...................................................................................................... 11

      A.   In Finding the Existence and Use of a General-Purpose Library by
           Anthropic, this Court Manifestly Failed to Consider Material Facts................. 11

      B.   Reconsideration Is Warranted in Light of *Kadrey* ............................................ 14

Cooley LLP
Attorneys at Law
San Francisco

- i -

Reply iso Motion Permitting
Interlocutory Appeal
Case No. 3:24-cv-05417-WHA

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Geophysical Union v. Texaco Inc.*,
  60 F.3d 913 (2d Cir. 1994)...........................................................................................8

*Blair v. Rent-A-Center, Inc.*,
  No. C 17-02335, 2019 WL 529292 (N.D. Cal. Feb. 11, 2019)............................................12

*In re Cement Antitrust Litig.*,
  673 F.2d 1020 (9th Cir. 1981).......................................................................................10

*Couch v. Telescope Inc.*,
  611 F.3d 629 (9th Cir. 2010).........................................................................................8

*Google v. Oracle*,
  593 U.S. 1 (2021)...............................................................................................3, 5, 6

*Hamzeh v. Pharmavite LLC*,
  No. 24-cv-00472, 2025 WL 1810082 (N.D. Cal. July 1, 2025)..........................................14

*J.B. v. G6 Hosp., LLC*,
  No. 19-cv-07848, 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021) ......................................14

*Kadrey v. Meta Platforms, Inc.*,
  No. 23-cv-03417, 2025 WL 1752484 (N.D. Cal. June 25, 2025)..................................*passim*

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811 (9th Cir. 2003)........................................................................................3, 6

*In re Kirkland*,
  75 F.4th 1030 (9th Cir. 2023).......................................................................................8

*Reese v. BP Exploration (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011)....................................................................................2, 6, 8

*Roberts v. AT&T Mobility LLC*,
  No. 15-cv-03418, 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018).......................................14

*Sony Computer Ent., Inc. v. Connectix Corp.*,
  203 F.3d 596 (9th Cir. 2000)........................................................................................6

*Thomson Reuters Enter. Centre GmbH v. ROSS Intel. Inc.*,
  No. 20-cv-00613 (D. Del. May 23, 2025)........................................................................8

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ii -

REPLY ISO MOTION PERMITTING
INTERLOCUTORY APPEAL
CASE NO. 3:24-CV-05417-WHA

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

4

**Statutes**

5

17 U.S.C. § 107 ................................................................................................. 2, 3, 8, 9

6

28 U.S.C. § 1292(b) ............................................................................................. *passim*

7

**Other Authorities**

8

7A Charles Alan Wright et al., Federal Practice and Procedure § 3929 (4th ed.) ......................... 2

9

Federal Rule of Civil Procedure 54(b) ................................................................. 8

10

Local Rule 7-9 ................................................................................................ 11, 14

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

**REPLY ISO MOTION PERMITTING
INTERLOCUTORY APPEAL
CASE NO. 3:24-CV-05417-WHA**

## I.    INTRODUCTION

The Court's summary judgment order (Order) should be certified for interlocutory appeal under 28 U.S.C. § 1292(b) because the Order involves controlling and broadly impactful legal issues about the fair use standard that have divided courts in this District, and resolution of those issues would materially advance this (and other) litigation.  Given the enormous stakes of this case—and the many similar cases raising copyright challenges to generative AI (GenAI) technology—the Ninth Circuit should clarify the governing legal rules before this Court conducts a class trial where Anthropic could face hundreds of billions of dollars in potential liability.

Plaintiffs offer no sound argument against interlocutory appeal.  Plaintiffs incorrectly characterize this Court's Order as presenting only "fact-bound" questions.  That characterization ignores the importance of this Court's legal framework, which is what led it to parse Anthropic's conduct into constituent steps and analyze a supposed preliminary step of creating a central library as a separate "use," rather than in the context of Anthropic's ultimate purpose of developing LLMs.  And while Plaintiffs allege various distinctions between this case and *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-3417 (N.D. Cal.), they cannot plausibly deny that Judge Chhabria reached a conflicting fair use holding on materially identical facts.  If Anthropic's case were before Judge Chhabria, it—like Meta—would have prevailed on summary judgment.  The Ninth Circuit should resolve that stark conflict now.

Alternatively, the Court should allow Anthropic to move for reconsideration of the Order, which is premised on a fundamental oversight:  There is no evidence that Anthropic downloaded books "to create a central, general-purpose library" separate from LLM development.  Order at 19.  Anthropic's Motion explains why each piece of the record the Court relied on in concluding there was a library either pertained only to books *purchased* for scanning or was directly tied to LLM development, and Plaintiffs do not meaningfully grapple with this detailed showing by Anthropic.  Nor do they identify anything in the summary judgment briefing or argument addressing a "general-purpose library theory."  Indeed, the phrase "general-purpose library" appears nowhere in the summary-judgment briefing and was never discussed at oral argument when describing Anthropic's use of books.  Because Plaintiffs never raised such a theory, Anthropic had no opportunity to

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY ISO MOTION PERMITTING
INTERLOCUTORY APPEAL
CASE NO. 3:24-CV-05417-WHA

1    respond to it.  The Court should give Anthropic that opportunity now.

2    **II.    THE ORDER MEETS THE REQUIREMENTS FOR § 1292(B) REVIEW BECAUSE**
3    **IT RAISES CRITICAL AND UNSETTLED ISSUES REGARDING FAIR USE THAT**
     **HAVE DIVIDED COURTS IN THIS DISTRICT**

4       Interlocutory appeal is warranted because the Order "involves a controlling question of law

5    as to which there is substantial ground for difference of opinion" and the appeal "may materially

6    advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The Ninth Circuit

7    employs a "flexible approach" to application of this standard, designed to avoid the "unnecessary,

8    protracted litigation" and "considerable waste of judicial resources" that would result from a "rigid

9    approach" to the final-judgment rule.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688

10   n.5 (9th Cir. 2011).  As one leading treatise explains, this "flexible approach to § 1292(b) is far

11   superior to blind adherence to a supposed need to construe strictly any permission to depart from

12   the final-judgment rule."  7A Charles Alan Wright et al., Federal Practice and Procedure § 3929

13   (4th ed.).  Thus, Plaintiffs' belabored emphasis on the "importance of the final judgment rule" (Opp.

14   6) misses the point:  Congress enacted Section 1292(b) specifically to deviate from the final

15   judgment rule when the relevant statutory standard is met.

16      Here, two legal questions meet the statutory standard for immediate appeal, especially

17   because they have divided courts in this District.  The first is whether courts should analyze fair

18   use by reference to the defendant's ultimate purpose in using a copyrighted work.  The second is

19   whether a defendant's acquisition of a copyrighted work from an unauthorized source counsels

20   strongly against fair use.  The resolution of these questions could materially affect the outcome of

21   this litigation, and reasonable jurists have disagreed on the answers.  Plaintiffs' contrary arguments

22   lack merit.

23     **A.    Interlocutory Review Is Warranted to Determine Whether Fair Use Is**
24       **Analyzed By Reference to the Defendant's Ultimate Purpose in Using a Work**

25       **1.    The Ultimate Purpose Inquiry Is a Controlling Legal Issue, Resolution**
          **of Which May Materially Advance the Litigation**

26      a.  To determine whether a defendant's use of copyrighted materials is fair, a court must

27   assess the ultimate purpose of that use.  That requirement flows from the text of the Copyright Act,

28   which makes "the purpose and character of the use" the first factor in the fair-use inquiry.  17 U.S.C.

Cooley LLP
Attorneys at Law
San Francisco

2

Reply iso Motion Permitting
Interlocutory Appeal
Case No. 3:24-cv-05417-WHA

§ 107(1). Thus, a court cannot view a defendant's original copying of protected materials in isolation—it must evaluate *why* the defendant copied those materials. In *Google v. Oracle*, 593 U.S. 1 (2021), for instance, the Supreme Court explained that Google "copied portions of the Sun Java API" because it was "seek[ing] to expand the use and usefulness of Android-based smartphones." *Id.* at 30. And in *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003), the Ninth Circuit explained that Arriba downloaded images and stored lower-resolution thumbnails on its server in order to create a "search engine [that] functions as a tool to help index and improve access to images on the internet." *Id.* at 815, 818.

Plaintiffs contend (at Opp. 8-11) that the Order's conclusions about fair use are fact bound. But whether a particular "use" of copyrighted materials is fair based on its ultimate purpose is a "question of law." 28 U.S.C. § 1292(b). In *Google*, "Google argue[d] that 'fair use' is a question for a jury to decide" and that the Supreme Court's review was "limit[ed] to determining whether 'substantial evidence' justified the jury's decision" in Google's favor. 593 U.S. at 23. The Supreme Court rejected that argument, explaining that while "reviewing courts should appropriately defer to the jury's findings of underlying fact," the "ultimate question whether those facts showed a 'fair use' is a legal question for judges to decide *de novo*." *Id.* at 23-24. The Court then evaluated each of the fair-use factors *de novo*, including Google's "purpose" when it "copied portions of the Sun Java API." *Id.* at 30. Here too, the "purpose and character" analysis, 17 U.S.C. § 107(1), presents a legal issue that the Ninth Circuit would review *de novo*.

b. As Anthropic's Motion explained, it was legal error for the Order to parse Anthropic's use of the downloaded data into subsidiary steps. Mot. at 8-11. The Order compounded that legal error by then failing to conduct the required ultimate-purpose analysis with respect to each step— including what the Court viewed as the separate "use" of downloading and storing the books. *Id.* Had the Court evaluated every aspect of Anthropic's conduct in light of its ultimate goals, it would have been bound to conclude that the ultimate purpose of the supposed subsidiary steps, such as downloading and storing book data, was developing LLMs. The Order acknowledged that one reason Anthropic downloaded and stored the books was to develop LLMs. Order at 5. It also concluded that developing LLMs was "among the most transformative [uses] many of us will see

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

REPLY ISO MOTION PERMITTING
INTERLOCUTORY APPEAL
CASE NO. 3:24-CV-05417-WHA

1    in our lifetimes." *Id.* at 30.  That ultimate, transformative purpose should have guided this Court's

2    evaluation of every aspect of Anthropic's conduct.

3        As Anthropic has explained in its alternative motion for reconsideration of the Order, a

4    proper reading of the record does not support the notion of a "central library" use for downloaded

5    books.  But even assuming there *was* record evidence that Anthropic intended to build a central

6    library of works, there is no record evidence that any such library served a purpose other than

7    developing LLMs.  Anthropic is an AI company that develops LLMs.  It has no other purpose, and

8    nothing in the record suggests that Anthropic took any action—including downloading books—for

9    any purpose *other* than developing LLMs.  It is undisputed that when Anthropic began developing

10   LLMs, it downloaded books that could generate the tokens necessary to train LLMs and stored

11   those works so they could be easily accessed during the training process.  *See* Mot. 3-4.  And

12   because developing LLMs involves an iterative process to train increasingly capable models,

13   Anthropic did not delete the books immediately.  Indeed, deleting training data would simply

14   require Anthropic to download and process it again to further refine the next version of its LLM.

15   Thus, every activity that this Court relied on as evidence of a "library use"—downloading, storage,

16   and retention—was aimed at the development of LLMs.  Yet, because the Court did not conduct

17   the "ultimate-purpose" inquiry, it failed to recognize that any "library use" was inextricable from

18   training LLMs and thus fair.[1]

19       c. Plaintiffs ignore the legal error identified by Anthropic in claiming that "what constitutes

20   a 'use' in this case is inextricably fact bound."  Opp. 8; *see id.* at 10 (emphasizing the Court's view

21   of a separate library use).  Although Anthropic alternatively seeks reconsideration of the "library

22   use" finding, *see* pp. 11-15, *infra*, Anthropic's Section 1292(b) argument *assumes such a use.*  And,

23   assuming such a use, the relevant question is a legal one: whether this Court erred by failing to

24   recognize that the perceived "library use" served Anthropic's ultimate purpose of developing

---

[1]Plaintiffs did not raise the "library use" theory in their summary judgment briefing.  Had they done so, Anthropic would have presented specific evidence to show that the sole purpose of any purported "library" was to support the development of LLMs.  For instance, Anthropic would have demonstrated that the books downloaded from the LibGen dataset are used to run a copyright-protective output filter, also called a recitation checker, that helps ensure Claude does not produce copyrighted language in its outputs.  Anthropic would welcome the opportunity to provide supplemental briefing and evidence on this issue.

Cooley LLP
Attorneys at Law
San Francisco

4

Reply iso Motion Permitting
Interlocutory Appeal
Case No. 3:24-cv-05417-WHA

1    reliable, safe LLMs.  Because this Court did not consider whether the so-called "library use" served

2    this ultimate purpose and because that is an important, controlling question of law, Section 1292(b)

3    review is warranted.

4           Plaintiffs also incorrectly suggest that it was sufficient for the Order to conclude that the

5    supposed library was designed to make books "available for any number of further uses."  Opp. at

6    11-12 (quoting Order at 19).  The Supreme Court has made clear, however, that a court must

7    thoroughly analyze a defendant's ultimate purpose in using a copyrighted work.  In *Google*, the

8    Supreme Court noted that Google had copied portions of Oracle's computer code "in part for the

9    same reason that [Oracle] created those portions, namely, to enable programmers to . . . accomplish

10   particular tasks."  593 U.S. at 30.  But the Court went further, explaining that because "virtually

11   any unauthorized use of a copyrighted program . . . would do the same"—i.e., "accomplish

12   particular tasks"—"to stop [the analysis] here would severely limit the scope of fair use in the

13   functional context of computer programs."  *Id.*  So the Court examined Google's ultimate purpose

14   in copying and storing the code, which was "creat[ing] new products" that would "expand the use

15   and usefulness of Android-based smartphones."  *Id.*  Here, viewing Anthropic's purpose as making

16   books "available for any number of further uses," Order at 19, cuts the inquiry short in the same

17   way as merely saying Google copied computer code to help programmers "accomplish particular

18   tasks."  *Google*, 593 U.S. at 30.  That truncated analysis was insufficient in *Google*, and it is

19   insufficient here.  Instead, the Court should have asked what further uses the record supports.  And

20   the record reflects that to the extent storing book data can be described as building a library, it

21   served no purpose other than Anthropic's ultimate purpose of LLM development, i.e., the *only*

22   purpose identified by *both* sides in the summary judgment briefing.  *See generally* ECF No. 122

23   ("MSJ"); ECF No. 158 ("MSJ Opp.").

24          Plaintiffs also fail to explain why this Court's observation that Anthropic did not

25   "immediately" use the books to train Claude or "immediately" delete them thereafter justifies its

26   failure to analyze Anthropic's ultimate purpose.  Opp. at 8-9 (citing Order at 19, 21).  Plaintiffs cite

27   no authority, and Anthropic is aware of none, to support the notion that a defendant, after putting

28   copyrighted works to an undeniably fair use, can be held liable for copyright infringement simply

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

REPLY ISO MOTION PERMITTING
INTERLOCUTORY APPEAL
CASE NO. 3:24-CV-05417-WHA

because it did not then destroy the original copies.  Indeed, if that were the case, every fair use case would require a separate inquiry into whether the defendant destroyed the original copies and how long that process took.  Anthropic knows of no other court to have engaged in that kind of analysis.  *See, e.g.*, *Google*, 593 U.S. at 30; *Kelly*, 336 F.3d at 815; *Sony Computer Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 598 (9th Cir. 2000).

Finally, Plaintiffs have no credible argument that resolving the "ultimate-purpose" question on appeal will not materially advance the litigation.  They argue that if Anthropic were to prevail on appeal, "this Court's conclusion that the 'ultimate use' of Anthropic's pirated copies *was not solely to train LLMs* would remain intact."  Opp. 11 (emphasis in original).  Anthropic disagrees: If it prevails on whether the ultimate-purpose inquiry is required, then the record in this case shows only one ultimate purpose—LLM development.  But, at a minimum, the Ninth Circuit would need to vacate the Court's order so that the Court could reevaluate Anthropic's conduct based on the correct legal framework, thereby materially advancing resolution of this case.

### 2.    There Is Substantial Ground for Difference of Opinion on the Ultimate Purpose Inquiry

a.  While 28 U.S.C. § 1292(b) and Ninth Circuit precedent allow for interlocutory review where "fair-minded jurists *might* reach contradictory conclusions," *Reese*, 643 F.3d at 688 (emphasis added), fair-minded jurists in this district have *already* diverged on this issue.  As a result, review is plainly warranted.

In *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, 2025 WL 1752484 (N.D. Cal. June 25, 2025), Judge Chhabria had to determine whether Meta could be held liable for the same basic conduct at issue in this case.  Like this Court, Judge Chhabria found that using books to develop an LLM "is a use with a different purpose and character than the books themselves." *Id.* at *9.  And like this Court, he then considered whether "Meta's downloading of the plaintiffs' books"—from some of the same so-called "pirated" books datasets at issue here—created a basis for copyright liability. *Id.* at *12.  This is where the two courts diverged.  Although Judge Chhabria agreed with this Court that downloading and storing the books was a "different *use* from any copying done in the course of LLM training," he explained that this use had to "be considered in light of its *ultimate,*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

REPLY ISO MOTION PERMITTING
INTERLOCUTORY APPEAL
CASE NO. 3:24-CV-05417-WHA

*highly transformative purpose*: training [the LLM]." *Id.* (emphasis added). He reached that conclusion even though there was no suggestion that Meta deleted those books after using them for training. In contrast, this Court determined that a separate purported library use was enough to partially deny summary judgment, even though the ultimate purpose of any so-called library was to develop LLMs.

b. Plaintiffs' attempt to distinguish *Kadrey* as not involving a separate "central library" use and as viewing Meta's only purpose as "LLM training" fails. Opp. 13-15. Instead, this characterization merely underscores the critical difference between this Court's legal analysis and *Kadrey*'s. Both cases involve the same basic factual scenario—an LLM company downloading, storing, and retaining books from "pirate" sites such as LibGen and Books3 to develop an LLM. ECF No. 119-5 ("Kaplan Decl.") ¶ 6; *Kadrey*, 2025 WL 1752484, at *6-*7. And yet this Court parsed out a supposed "central library" precursor use and did not inquire as to the ultimate purpose of any so-called library. In contrast, *Kadrey* did not parse out such a precursor and assessed Meta's course of conduct in light of its "ultimate, highly transformative purpose" in downloading the works. *Kadrey*, 2025 WL 1752484, at *12. Indeed, *Kadrey* specifically explained that the result there would have been the same "even if Meta did download some copies that weren't ultimately used for training," because these "downloads . . . had the ultimate purpose of LLM training." *Id.* at *12-*13. Contrary to Plaintiffs' contention (at Opp. 14), this was not a "stray comment" or a "passing statement." It was core to *Kadrey*'s reasoning and directly counter to this Court's conclusion that Anthropic's downloading was not fair use because "[n]ot every copy [Anthropic made] was even necessary nor used for training LLMs." Order at 21. Thus, had the *Kadrey* framework applied here, Anthropic would have won summary judgment in full.

Plaintiffs also mischaracterize the proceedings in *Kadrey*. Plaintiffs would have this Court believe that Judge Chhabria "rejected a similar request for interlocutory review." Opp. 1. In fact, no party moved for an interlocutory appeal in *Kadrey*. Instead, after Judge Chhabria granted partial summary judgment for Meta, the parties discussed next steps in the litigation, and the plaintiffs suggested they might pursue an interlocutory appeal. Joint Case Mgmt. Stmt. at 5, *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417 (N.D. Cal. July 8, 2025), ECF No. 605 (Meta, noting that

Cooley LLP
Attorneys at Law
San Francisco

7

Reply iso Motion Permitting
Interlocutory Appeal
Case No. 3:24-cv-05417-WHA

initially "Plaintiffs had taken the position in meet and confer that they wished to seek prompt appellate review of the summary judgment order").  The plaintiffs then decided against doing so, and Judge Chhabria declined to *sua sponte* enter partial final judgment in favor of Meta under Federal Rule of Civil Procedure 54(b).  *See* ECF No. 276-1 at 13-15 (*Kadrey* transcript).  But Judge Chhabria never considered the issue here: whether to certify his summary-judgment ruling for interlocutory appeal under Section 1292(b).

Finally, Plaintiffs incorrectly assert that interlocutory review is not appropriate unless there is a circuit conflict.  Opp. 16.  In fact, the Ninth Circuit has made clear that interlocutory review is warranted if "the circuits are in dispute . . . *or* if novel and difficult questions of first impression are presented."  *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (emphasis added).  Indeed, the Ninth Circuit has previously granted interlocutory review of legal issues to address "diverging views in the district courts."  *In re Kirkland*, 75 F.4th 1030, 1047 (9th Cir. 2023).  There is no need for "adverse authority [to] develop around an issue before [the Ninth Circuit] review[s] it on interlocutory appeal."  *Reese*, 643 F.3d at 688 n.5.  And courts have specifically permitted Section 1292(b) interlocutory appeals following the resolution of an important fair use issue even absent any conflict between circuit or district courts.  *See Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 915 (2d Cir. 1994); *Thomson Reuters Enter. Centre GmbH v. ROSS Intel. Inc.*, No. 20-cv-00613 (D. Del. May 23, 2025), ECF No. 804.

**B.     Interlocutory Review Is Warranted to Determine Whether a Defendant's Acquisition of a Copyrighted Work from an Unauthorized Source Counsels Strongly Against Fair Use**

**1.     The Significance of a Work's Origin Is a Controlling Legal Issue, Resolution of Which Will Materially Advance the Litigation**

Nothing in the Copyright Act suggests that the fair-use defense applies with any less force when the defendant obtained the relevant works from an unauthorized third party.  The Act simply provides that the "fair use of a copyrighted work . . . is not an infringement of copyright" and lists four factors courts should consider.  17 U.S.C. § 107.  None of these factors address the work's origin.  Indeed, the entire premise of fair-use doctrine is that the defendant lacked permission to use the works—whether a third party initially distributed the works without permission has no

Cooley LLP
Attorneys at Law
San Francisco

8

Reply iso Motion Permitting
Interlocutory Appeal
Case No. 3:24-cv-05417-WHA

1  bearing on the analysis.

2     Nonetheless, the Order treats the origin of the books in this case—so-called "pirate

3  libraries"—as highly relevant to Anthropic's fair use defense. For instance, it expresses "doubt

4  that any accused infringer could ever meet its burden of explaining why downloading source copies

5  from pirate sites *that it could have purchased or otherwise accessed lawfully* was itself reasonably

6  necessary to any subsequent fair use." Order at 18 (emphasis in original). Whether that doubt is

7  well-founded raises a purely legal question about interpreting Section 107.

8     Plaintiffs claim that the Order is "fact dependent" because a work's origin can sometimes

9  matter to the fourth fair-use factor—i.e., "the effect of the use upon the potential market for or value

10  of the copyrighted work." Opp. 17 (citing 17 U.S.C. § 107). For instance, they note that "piracy

11  may benefit pirate 'libraries or their other users,' which risks greater piracy by others," and that

12  "piracy" could be "so significant in a given case" that it "'destroy[s] the academic publishing

13  market.'" *Id.* (citations omitted). But even assuming those observations are true, they do not negate

14  the purely legal nature of the issue presented by the Court's Order—whether merely obtaining a

15  work from an unauthorized third party counsels strongly (or even dispositively) against fair use

16  even if the conditions relevant to the fourth factor are not met.

17     Plaintiffs' own arguments also belie their claim that the Order's references to "piracy" are

18  fact dependent. For example, they assert that the "case law that does consider piracy uniformly

19  holds that piracy is unprotected by fair use," and they seek to distinguish Anthropic's authorities

20  by arguing that they do not "concern[] piracy at all." Opp. 14-15. But Plaintiffs cannot have it

21  both ways—they cannot insulate the Order from review by characterizing it as fact-bound, while

22  also embracing the Order's legal conclusion that "piracy . . . is inherently, irredeemably infringing."

23  *Id.* at 13-14 (citing Order at 19). Moreover, Anthropic's point is not that piracy is protected by fair

24  use *per se*, but that nothing in fair use law makes piracy relevant to the analysis, absent the fourth

25  factor analysis discussed above. As discussed, the unauthorized nature of the copying is an inherent

26  feature of fair use.

27     Plaintiffs further insist that the significance of a work's origin is "not controlling" under

28  Section 1292(b) because the Order does not rely solely on that point. Opp. 16-17. But a legal issue

is "controlling" for purposes of Section 1292(b) if it "*could* materially affect the outcome of the litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1981) (emphasis added). By distinguishing between "purchased library copies" and "pirated library copies" to assess whether the purported "library use" was fair, the Order makes clear the perceived import of the origin of the books. Order at 14, 18. And this Court's class-certification ruling reinforces the significance of Anthropic's alleged "piracy" by declaring (incorrectly) "that Anthropic *is liable* for all pirated copies regardless of whether they were used for training." ECF No. 244 at 24-25 (emphasis added). Moreover, this Court's purported "rule"—i.e., that "piracy of otherwise available copies is inherently, irredeemably infringing even if the pirated copies are immediately used for the transformative use and immediately discarded," *id.* at 19—means that Anthropic may lose even if it can show that the ultimate purpose of downloading the books was training LLMs and the other factors counsel in favor of fair use.

### 2. There Is Substantial Ground for Difference of Opinion on the Relevance of a Work's Origin

As with the ultimate purpose issue, fair-minded jurists have already reached contradictory conclusions about how the origin of a work pertains to the fair-use analysis. In *Kadrey*, Judge Chhabria rejected the argument that "the fact that Meta downloaded the books from shadow libraries and did not start with an 'authorized copy' of each book gives [plaintiffs] an automatic win." 2025 WL 1752484, at *11. "To say that Meta's downloading was 'piracy' and thus cannot be fair use begs the question," he explained, "because the whole point of fair use analysis is to determine whether a given act of copying was unlawful." *Id.* He thus expressly disagreed with this Court that "piracy of otherwise available copies is inherently, irredeemably infringing." Order at 19.

Plaintiffs emphasize *Kadrey*'s statement that "piracy could indeed matter in at least 'a few different ways,'" Opp. 18 (citing *Kadrey*, 2025 WL 1752484, at *11), but they make no effort to show how any are relevant here. Moreover, Judge Chhabria's bottom line was that the type of "piracy" alleged in *Kadrey* and here—downloading books from websites not authorized to host them—did not preclude or even strongly weigh against fair use in the context of training

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

REPLY ISO MOTION PERMITTING
INTERLOCUTORY APPEAL
CASE NO. 3:24-CV-05417-WHA

transformative LLMs. *See Kadrey*, 2025 WL 1752484, at *11. In contrast, this Court viewed downloading from unauthorized sources as weighing heavily against, if not dispositive of, any claim of fair use based on the ultimate purpose in using the downloaded works. *See* Order at 19.

Finally, Plaintiffs mischaracterize (at Opp. 2) the supplemental briefing required in *Kadrey*. That supplemental briefing addresses the *Kadrey* plaintiffs' remaining claim of unlawful *distribution* via torrenting under the Copyright Act, *see* ECF No. 276-1 at 25 (*Kadrey* transcript)— a claim not present and therefore irrelevant in this case.

## III.    ALTERNATIVELY, RECONSIDERATION OF THE ORDER IS WARRANTED

If this Court does not certify its summary judgment order for interlocutory appeal, it should grant Anthropic leave to move for reconsideration. Anthropic is not seeking a "do-over." *Contra* Opp. 20. It is seeking to demonstrate, for the first time now since the Court raised the issue *sua sponte*, that it did not create a "general-purpose library" separate from LLM development. Because Plaintiffs never raised that theory, Anthropic never had the chance to rebut it. Granting reconsideration would give Anthropic that opportunity now.

### A.    In Finding the Existence and Use of a General-Purpose Library by Anthropic, this Court Manifestly Failed to Consider Material Facts

Reconsideration is warranted because the Court "manifest[ly] fail[ed]" to "consider material facts." L.R.7-9(b)(3); *see* Mot. 17-19. Anthropic's argument is not a "quibble" over factual inferences. Opp. 21. Rather, the Court's notion of Anthropic downloading "pirated" books to create a "permanent, general-purpose library"—the core basis for the Court rejecting summary judgment—has no support in the summary judgment record. Order at 9.

1. The record on summary judgment, including the exhibits on which this Court relied, does not support the "central library" theory. Indeed, Plaintiffs fail to address *any* of the specific evidence Anthropic identified in its Motion (Mot. at 18-19) that belies the "central library" theory. As the Motion explains, Mr. Turvey's testimony cited by the Court addressed only the books that Anthropic was purchasing and scanning, *not* the books Anthropic downloaded from the Internet.

Cooley LLP
Attorneys at Law
San Francisco

11

Reply iso Motion Permitting
Interlocutory Appeal
Case No. 3:24-cv-05417-WHA

MSJ Opp. Ex. 22 (ECF No. 152-22), at 145-146.[2]  Internal documents likewise linked any "library" discussion to books "purchas[ed]" and "scann[ed]" in 2024, not those downloaded in 2021-2022. ECF No. 121-8, Ex. 12, at 144507-09; *see* ECF No. 123-2 ¶ 13 (Mr. Turvey joined Anthropic in 2024, years after the downloading).  Even then, Anthropic's "building a research library" with the scanned books was "one and the same" as "train[ing] LLMs."  MSJ Opp. Ex. 22, at 145; *id.* at 145-146 (purchased-book library would be "for the purpose of data acquisition that would help inform our . . . products").

Reconsideration exists for precisely this type of factual oversight.  In *Blair v. Rent-A-Center, Inc.*, No. C 17-02335, 2019 WL 529292, at *3 (N.D. Cal. Feb. 11, 2019), for instance, the Court acknowledged on second look that underlying "documents d[id] not demonstrate" the conclusions "as set forth in the . . . summary judgment order."  The same is true here.

Plaintiffs instead try to counter with their own record evidence of a "central library," yet they rely on the same flawed citations to the record as those cited in the Court's Order—none of which supports a general-purpose library.  Opp. 21.  For example, Plaintiffs' citation (at Opp. 21) to MSJ Opp. Ex. 17 shows Anthropic's retention of the Libgen dataset after pretraining its LLM was to *further develop Claude* and ensure the model did not produce infringing outputs.  ECF No. 152-18, at 93:23-95:13 (data used in Anthropic's internal system to ensure Claude will not "omit strings of texts that may be …in other data sources.").  And the "voluminous" library that Plaintiffs now cite was, as Anthropic has explained, "use[d] for research . . . , [r]esearch that [Anthropic] would conduct *when we were building our LLM*."  MSJ Opp. Ex. 22 at 145 (emphasis added).  Plaintiffs also are wrong that Anthropic "did not mention LLM training at all" when discussing "'open[ing] . . . the books'" downloaded from PiLiMi, Opp. 21, as an employee discussion on the very next page of the pertinent document makes clear that the books were "data" for adding to the "token count" available for LLM training.  MSJ Opp. Ex. 12 (ECF No. 152-13) at -0391319.  In short, the record material cited in the Order and now repeated by Plaintiffs all shows that Anthropic had no "central library" disconnected from LLM development.

---

[2]Plaintiffs' assertion that the Court "considered" the argument that storage of "pirated books data" was "a step in LLM training," Opp. 20, thus cannot be right, as the Court and now Plaintiffs are conflating two different sets of books—the earlier downloaded books and the later scanned ones.

2. Plaintiffs also fail to refute Anthropic's showing that Plaintiffs neither briefed nor argued a "central library" theory, and thus that Anthropic never had a chance to respond to such a theory until now. While Plaintiffs assert (at Opp. 21) that they provided "evidence" supporting a "general library theory" at summary judgment, they identify no portion of their summary-judgment opposition making a "central library" argument. They also have no response to Anthropic's argument that the only "use" Plaintiffs raised in their summary judgment briefing was Anthropic "us[ing] books to train LLMs." Mot. 19 (quoting MSJ Opp. at 15). The "central library" argument was not part of the summary judgment briefing, and so the cases Plaintiffs cite in which this Court assured the parties it had already considered the "arguments and facts" raised in "briefs, motions, and other filings" are inapposite. Opp. 22 (quoting *McLaughlin v. Wells Fargo Bank, N.A.*, No. C 15-02904, 2015 WL 10889994, at *2 (N.D. Cal. Nov. 24, 2015), and *Drevaleva v. VA*, No. C 18-03748, 2019 WL 3037549, at *6 (N.D. Cal. July 11, 2019)).

Plaintiffs' misinterpretations of the record here underscore why the absence of full briefing and argument on the "central library" theory was so prejudicial to Anthropic. If Plaintiffs had raised the theory, Anthropic could have shown the Court why the theory and Plaintiffs' citations were incorrect. Anthropic also could have provided additional evidence in response, confirming that the company had no other purpose for downloading datasets separate from developing LLMs. That is how litigation is supposed to proceed. Reconsideration is now warranted so that Anthropic may respond to and rebut—for the first time—the erroneous "general purpose" library theory. *Contra* Opp. 22 (asserting that Anthropic had "ample opportunity to respond to the facts it now contests").

3. Finally, Plaintiffs incorrectly seek to blame Anthropic for failing to introduce "what copies or even sets of copies were in fact used for training LLMs," and assert that such "deficiencies must be held against Anthropic." Opp. 22. This argument has two flaws: First, Anthropic did not need to introduce such individualized training evidence to show fair use. Even books that were not used for training were still downloaded for the ultimate purpose of LLM development—which this Court found to be transformative. Mot. 17-18 (citing summary judgment evidence). Second, if Plaintiffs are to be believed, "[t]he summary judgment order makes clear that Anthropic is liable

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

REPLY ISO MOTION PERMITTING
INTERLOCUTORY APPEAL
CASE NO. 3:24-CV-05417-WHA

for all pirated copies *regardless of whether they were used for training*." Opp. 20 (emphasis added).[3] If that were true, then such individualized evidence would be irrelevant. Plaintiffs cannot trap Anthropic in a Catch-22 by arguing, on the one hand, that Anthropic should have introduced individualized training evidence, but on the other hand, that such evidence would make no difference. In the end, reconsideration is warranted so that the parties may, for the first time, submit briefs based on the record evidence relevant to the "central library" theory asserted in the Order.

## B.    Reconsideration Is Warranted in Light of *Kadrey*

As Anthropic's Motion explains, district courts have discretion to reconsider their orders in light of other district courts' decisions—particularly in developing areas of law. Mot. 20. Contrary to Plaintiffs' assertion (Opp. 23), Rule 7-9(b)(2) contains no requirement that reconsideration turns only on binding precedent: "Civil Local Rule 7-9(b)(2) simply requires . . . 'a change of law occurring after the time of [the] order'"; "[t]he Local Rule does not refer to a change in *controlling* law." *Roberts v. AT&T Mobility LLC*, No. 15-cv-03418, 2018 WL 1317346, at *3 n.1 (N.D. Cal. Mar. 14, 2018) (emphasis in original).[4] Nor does it matter that *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848, 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021), "turned on a pure question of law." Opp. 23. As detailed above, *Kadrey* and this Court's Order conflict on legal questions. *See* pp. 6-9, 11, *supra*; *see also* Mot. 7-16. At minimum, *Kadrey*'s analysis is persuasive authority that this Court may wish to consider.

---

[3] Anthropic disagrees with this interpretation of the Court's Order and should be permitted to show at any trial that its downloading of works for LLM training was fair use.

[4] Plaintiffs' cited cases (at Opp. 23) in which courts in this District have read Rule 7-9(b)(2) differently to require "controlling" law for reconsideration are inapposite. *Hamzeh v. Pharmavite LLC*, No. 24-cv-00472, 2025 WL 1810082, at *2 (N.D. Cal. July 1, 2025). Unlike here, those cases did not involve a rapidly evolving area of the law—so the courts had no occasion to consider whether reconsideration would be warranted in light of new persuasive authority in that context.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

REPLY ISO MOTION PERMITTING
INTERLOCUTORY APPEAL
CASE NO. 3:24-CV-05417-WHA

1  Dated:  August 4, 2025                          COOLEY LLP

2

3                                                  By: */s/ Kathleen R. Hartnett*
                                                       Kathleen R. Hartnett
4
                                                   *Attorneys for Defendant*
5                                                  *Anthropic PBC*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cooley LLP
Attorneys at Law
San Francisco

15

Reply iso Motion Permitting
Interlocutory Appeal
Case No. 3:24-cv-05417-WHA

1

## <u>CERTIFICATE OF SERVICE</u>

2

I, Kathleen Hartnett, am the ECF user whose identification and password are being used

3

to file the foregoing Defendant Anthropic PBC's Reply in Support of Motion for an Order

4

Permitting Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(B) or, in the Alternative, Motion

5

for Leave to File Motion for Reconsideration.

6

7

8

Dated:  August 4, 2025

9

By:  */s/ Kathleen R. Hartnett*

10

Kathleen R. Hartnett

11

12

13

14

15

16

17

18

19

322383976

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO