Justin A. Nelson*
Alejandra C. Salinas*
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
Michael Gervais (SBN 330731)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Jordan W. Connors*
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com

J. Craig Smyser*
Samir Doshi*
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor,
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
csmyser@susmangodfrey.com
sdoshi@susmangodfrey.com
*Co-Lead Class Counsel*

Rachel Geman*
Jacob S. Miller*
Danna Z. Elmasry*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
jmiller@lchb.com
delmasry@lchb.com

Daniel M. Hutchinson (SBN 239458)
Jallé Dafa (SBN 290637)
Reilly T. Stoler (SBN 310761)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
rstoler@lchb.com
jdafa@lchb.com
dhutchinson@lchb.com

Betsy A. Sugar*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 Second Ave., #1640
Nashville, TN 37201
Telephone: (615) 313-9000
bsugar@lchb.com
*Co-Lead Class Counsel*
*(Pro Hac Vice)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,

Plaintiffs,

v.

ANTHROPIC PBC,

Defendant.

Case No. 3:24-cv-05417-WHA

**PLAINTIFFS' RESPONSE TO ANTHROPIC'S RESPONSE TO ORDER TO SHOW CAUSE RE DEFENSES BASED ON ADVICE OF COUNSEL**

## TABLE OF CONTENTS

Introduction ........ 1

I. Legal Standard ........ 2

II. Argument ........ 3

A. Anthropic's Witnesses Have Already Testified That Purportedly Privileged Material Formed the Basis—and Often the Sole Basis—for Their Beliefs. ........ 4

i. Witness Testimony and Anthropic's Privilege Log in This Case Demonstrates Reliance on Privileged Materials in Informing Anthropic's State of Mind. ........ 5

B. Anthropic's Arguments to the Contrary Fail ........ 10

i. The Ninth Circuit's Test for Implied Waiver Has No "Reliance" Requirement ........ 10

ii. Finding Implied Waiver Would Not Implicate Any Broader Issue Regarding Affirmative Defenses in Copyright Cases ........ 10

iii. Anthropic's Cases are Inapposite ........ 12

III. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arista Recs. LLC v. Lime Grp. LLC*,
No. 06 CV 5936 KMW, 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) ....................... 1, 11, 12

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) (*en banc*) ....................................................................... 2

*Bowne, Inc. v. AmBase Corp.*,
150 F.R.d. 465 (S.D.N.Y. 1993) .................................................................... 3, 9, 10

*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992)....................................................................................... 2

*DMF, Inc. v. AMP Plus, Inc.*,
No. 2:18-CV-07090-CAS, 2024 WL 1796396 (C.D. Cal. Apr. 25, 2024), *appeal dismissed,* No. 2024-1877, 2024 WL 4001947 (Fed. Cir. Aug. 30, 2024) ..................................................................................................... 12

*Home Indem. Co. v. Lane Powell Moss & Miller*,
43 F.3d 1322 (9th Cir. 1995)........................................................................... 2, 6, 11

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
552 F.3d 1033 (9th Cir. 2009)...................................................................................... 2

*In re Lidoderm Antitrust Litig.*,
No. 14-MD-02521-WHO, 2016 WL 4191612 (N.D. Cal. Aug. 9, 2016)........................ *passim*

*Rambus Inc. v. Samsung Elecs. Co.*,
No. C-05-00334 RMW, 2007 WL 3444376 (N.D. Cal. Nov. 13, 2007) ........................ 3, 9, 10

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
32 F.3d 851 (3d Cir. 1994)........................................................................................ 10

*Sorensen v. Black & Decker Corp.*,
2007 WL 1976652 (S.D. Cal. Apr. 9, 2007) ................................................................ 12

*Spin Master, Ltd. v. Zobmondo Ent.*,
LLC, No. CV 06-3459 ABC PLAX, 2012 WL 8134011 (C.D. Cal. Mar. 9, 2012) ..................................................................................................... 12

*Stone Brewing Co., LLC v. MillerCoors LLC*,
No. 3:18-CV-00331-BEN-MDD, 2023 WL 6450199 (S.D. Cal. Sept. 28, 2023), *aff'd*, No. 23-3142, 2024 WL 5244556 (9th Cir. Dec. 30, 2024)................................ 12

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
No. 20-MD-02966-RS, 2025 WL 860505 (N.D. Cal. Mar. 19, 2025)............................ *passim*



*In re Zetia Antitrust Litig.*,
2022 WL 4354620 (E.D. Va. Aug. 15, 2022) ........................................................................ 10

## INTRODUCTION

Anthropic's attempt to salvage its claims of innocent and "non-willful" conduct gets the basic test for implied waiver right but the rest—including the facts and the rest of the law—wrong.

Anthropic is correct that, under Ninth Circuit law, implied waiver occurs when "(1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-MD-02966-RS, 2025 WL 860505, at *2 (N.D. Cal. Mar. 19, 2025).

But Anthropic is wrong on everything else, including the extent to which the Ninth Circuit requires the defendant itself to rely on privileged materials before implied waiver is found.

Under the Ninth Circuit's test, Anthropic put the privileged information in question at issue by taking the "affirmative act" of raising its "affirmative defense" of innocent infringement and asserting that its infringement was not willful. *Id*. Contrary to Anthropic's assertions, its witnesses have *repeatedly* and *explicitly* invoked privilege to shield materials and conversations which played "a significant role in formulating [their] subjective beliefs on central issues in the case," *id.*, including their subjective beliefs regarding the legality of their conduct and Anthropic's acquisition, storage, and use of pirated books. *See infra* § II.A.i. That is more than enough to justify a finding of implied waiver.

Plaintiffs are thus either "entitled to disclosure of the otherwise privileged material and to test the credibility of those subjective beliefs," *In re Xyrem*, 2025 WL 860505, at *3; or Anthropic's affirmative defense of innocent infringement must be struck and Anthropic must be barred from "offering evidence or argument at trial regarding their purported belief in the lawfulness of their conduct," *see Arista Recs. LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011 WL 1642434, at *3 (S.D.N.Y. Apr. 20, 2011).[1]

---

[1] Based on Anthropic's statements in its brief ("Brief") responding to the Court's Order to Show Cause, ECF No. 280 at 1–2, 11, Plaintiffs understand Anthropic is withdrawing its affirmative defense of non-volitional conduct. To the extent Anthropic attempts to raise this defense at a later time, Plaintiffs reserve the right to challenge it on all grounds.

## I. LEGAL STANDARD

It is fundamental that attorney-client privilege "may not be used both as a sword and a shield" and "may be implicitly waived" if "a party raises a claim which in fairness requires disclosure of the protected communication." *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1042 (9th Cir. 2009) (citing *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)). Accordingly, "parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (*en banc*) (citation omitted). In such circumstances, "[t]he party asserting the claim is said to have implicitly waived the privilege." *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2016 WL 4191612, at *3 (N.D. Cal. Aug. 9, 2016) (quoting *Bittaker*, 331 F.3d at 719). Upon such waiver, the party must "produce the privileged materials *if* it wishes to go forward with its claims implicating them." *Bittaker*, 331 F.3d at 720 (emphasis in original). In other words, the party has a choice: "[i]f you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it." *Id.*

Implied waiver occurs when "(1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). The "overarching consideration is whether allowing the privilege to protect against disclosure of the information would be 'manifestly unfair' to the opposing party." *Id.* (citation omitted).

Applying this test, a defendant "cannot avoid waiver by offering to rely at summary judgment or trial solely on non-legal justifications for certain subjective beliefs." *In re Lidoderm*, 2016 WL 4191612, at *5. Even where there is "no doubt . . . that business advice and non-legal facts were considered," if a defendant "inject[s] their subjective beliefs on specific topics as part of their defense . . . . where evidence establishes that the subjective belief was also informed by attorney advice, it would be unfair to not allow plaintiffs access to defendants' contemporaneous

attorney-client information to test the veracity of the defendants' justifications in this litigation even though that belief is based in part on business judgment and executive experience." *Id.*

Nor does the "affirmative act" portion of the implied waiver test restrict the issue to affirmative defenses. Instead, Courts in the Northern District are clear: "when the record shows that attorney-client advice played a significant role in formulating a party's subjective beliefs on central issues in the case, the adversaries are entitled to disclosure of the otherwise privileged material and to test the credibility of those subjective beliefs." *In re Xyrem*, 2025 WL 860505, at *3.

Moreover—and contrary to Anthropic's suggestions, *see, e.g.,* Br. at 3—there is no requirement that a party make use of a specific privileged material for implied waiver of that material to occur. "[A] party need not utilize . . . privileged information to advance a claim or defense," *In re Xyrem*, 2025 WL 860505, at *3, or disclose the content of attorney-client communications for an implied waiver to occur, *see Rambus Inc. v. Samsung Elecs. Co.*, No. C-05-00334 RMW, 2007 WL 3444376, at *3 (N.D. Cal. Nov. 13, 2007) ("This is not an element of the [Ninth Circuit's] test."). A contrary rule would, in effect, require express waiver as a precondition of implied waiver. For that reason, "even if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication." *In re Xyrem*, 2025 WL 860505, at *3 (quoting *Bowne, Inc. v. AmBase Corp.*, 150 F.R.d. 465, 488 (S.D.N.Y. 1993)). That is the case here.

## II. ARGUMENT

Anthropic's affirmative defense of innocent infringement and its assertions that it believed its use of pirated content from shadow libraries was lawful impliedly waive privilege over materials and communications bearing on these issues.

Plaintiffs intend to vigorously contest Anthropic's innocent infringement and non-willful conduct claims—including via future motion practice—but Plaintiffs should not be forced to do so without access to materials that Anthropic's own witnesses claim informed their beliefs. Anthropic's witnesses have already testified that privileged material informed their beliefs as to the legality of their conduct while simultaneously invoking privilege to cut off Plaintiffs' attempts to uncover the substance of that material. The record thus "shows that attorney-client advice played a

significant role in formulating a party's subjective beliefs on central issues in the case," and Plaintiffs are thus "entitled to disclosure of the otherwise privileged material and to test the credibility of those subjective beliefs." *In re Xyrem*, 2025 WL 860505, at *3.

Nor can Anthropic escape waiver "by offering to rely at summary judgment or trial solely on non-legal justifications for certain subjective beliefs." *In re Lidoderm*, 2016 WL 4191612, at *5. Anthropic has "inject[ed] [its] subjective beliefs on specific topics as part of [its] defense" and those "subjective belief[s] [were] also informed by attorney advice," as Anthropic's witnesses have admitted. *Id.* It would be fundamentally "unfair not to allow plaintiffs access to [Anthropic's] contemporaneous attorney-client information to test the veracity of [Anthropic's] justifications in this litigation even though that belief is based *in part* on business judgment and executive experience." *Id.*

### A. Anthropic's Witnesses Have Already Testified That Purportedly Privileged Material Formed the Basis—and Often the Sole Basis—for Their Beliefs.

On the first page of its brief, Anthropic claims that its witnesses "will testify that, based on their general experience, including in their prior employment, they believed that downloading books from the internet was fair because they were not reading or distributing the books and were using them for a different purpose" and that its witnesses "will not testify that they relied on advice of counsel." Br. at 1.

That is not what the record shows, but, even if this were true, it would not prevent a finding of implied waiver. As the *Lidoderm* Court noted, Anthropic's "position is essentially this: 'Trust us. The justifications we are putting forward here are why we [took certain actions].'" *In re Lidoderm Antitrust Litig.*, 2016 WL 4191612, at *6. "But in order to test or rebut [Anthropic's] assertions, in fairness, plaintiffs should be given access to contemporaneous information regarding those topics that necessarily implicate attorney-client advice." *Id.* Thus, even if Anthropic were correct that its witnesses will testify that they believed their conduct was lawful, Plaintiffs would be entitled to test that testimony via "contemporaneous information regarding those topics that necessarily implicate attorney-client advice." *Id.*

More to the point, Anthropic's witnesses have already repeatedly invoked advice of counsel

as the basis for their understanding of the legality of their conduct—including in acquiring and using pirated books.

**i. Witness Testimony and Anthropic's Privilege Log in This Case Demonstrates Reliance on Privileged Materials in Informing Anthropic's State of Mind.**

Consider Anthropic's privilege log and the depositions of Dr. Jared Kaplan, Mr. Mycal Tucker, Mr. Tom Turvey, and Mr. Benjamin Mann. During the course of these depositions all four repeatedly invoked privilege to preclude questioning into their states of mind, their beliefs about the legality of their conduct, and the reasons for Anthropic's actions. And Anthropic's privilege log similarly shows conversations between counsel and Anthropic's witnesses surrounding key events in the case, including the acquisition of LibGen and the decision to cease using LibGen and Pilimi in model training. Privileged materials thus formed the basis—and in some cases the sole basis—for their subjective beliefs. That is more than enough to find implied waiver. *See, e.g.*, *In re Lidoderm Antitrust Litig.*, 2016 WL 4191612, at *6; *In re Xyrem*, 2025 WL 860505, at *3.

**Anthropic's Privilege Log**

Even a cursory review of Anthropic's 905-page privilege log suggests numerous conversations with counsel that go to Anthropic's and its witnesses' states of mind regarding Anthropic's claims of innocent/non-willful conduct. For example, [redacted] *See* Ex. E (ANTPRIV_0000055-60). These entries, which are the oldest entries on Anthropic's privilege log, occur immediately before Anthropic torrented LibGen and are the only entries with any litigation counsel (as opposed to NDA counsel) in 2021 listed on Anthropic's log. [redacted] Those dates match up to when Anthropic [redacted] and purported to cease using LibGen and Pilimi in LLM training "for legal reasons." Dkt 231 at 3. Similar entries from Brian Israel from that time period [redacted]

nderscore that these communications concerned Anthropic's large scale piracy. *See* Ex. E (ANTPRIV_0000067, ANTPRIV_0001217-37).

**Depositions of Jared Kaplan and Tom Turvey**

Dr. Jared Kaplan, Anthropic's Chief Science Officer, was asked why Anthropic

Dr. Kaplan was asked point blank

Yet, at trial, Anthropic concedes that its witnesses will also testify that they believed—*independent of any advice of counsel*—that their reproduction and use of these pirated datasets was entirely lawful. Fairness dictates that Plaintiffs are entitled to test this assertion. *See Lane*, 43 F.3d at 1326.

The same pattern of privilege invocation repeated when Dr. Kaplan was asked why

1  ███████████████████████████████████

2      Next, Mr. Tom Turvey—the head of Anthropic's book scanning efforts—repeatedly

3  testified

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████

14 **Deposition of Mycal Tucker**

15     Even Mr. Tucker, the research scientist witness who offered a declaration on discrete topics

16 relating to Anthropic's attempt to oppose class certification, offered similar testimony. When asked

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 **Deposition of Benjamin Mann**

21     Finally, consider Ben Mann's testimony in the OpenAI case

22 ████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████

25

26 [2] These repeated privilege invocations by Dr. Kaplan and Mr. Turvey are even more striking as the

27 depositions in question focused on their declarations submitted in conjunction with *Anthropic's motion for summary judgment*. The topic of these depositions was *not* Anthropic's non-fair-use

28 affirmative defenses or its state of mind—and yet Anthropic's witnesses repeatedly invoked privilege whenever those topics were touched upon.

Each of the facts which Anthropic and its witnesses claimed privilege over bears on Anthropic's state of mind and its purported "innocent" belief in the legality of its conduct. That Anthropic decided to cease using (or change its uses of) pirated datasets because they violated copyright law—*i.e.*, the "legal reasons" and "advice of counsel" used to choke off Plaintiffs' questions—would bear directly on Anthropic's understanding of the legality of its retention and continued use of the pirated datasets, a key focus of the Court's summary judgment order and the forthcoming trial. These facts would also bear directly on whether Anthropic's proffered testimony regarding the pirated datasets—i.e., that all the actions taken with regard to them were based on the "industry experience" of its witnesses and undergirded by a subjective belief in the legality of their conduct—was false.

Anthropic's claim that it will not "assert[] reliance on counsel for *either* the decision to

download books from LibGen or PiLiMi *or* the decision to stop using such material," Br. at 11, reflects a fundamental misunderstanding of the implied waiver doctrine. That is because "even if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication." *In re Xyrem*, 2025 WL 860505, at *3 (quoting *Bowne*, 150 F.R.d. at 488); *accord id.* (noting a party need not "utilize . . . privileged information to advance a claim or defense," in order to affect implied waiver) (internal citation omitted); *Rambus Inc.*, 2007 WL 3444376, at *3 (noting that reliance is "not an element of the [Ninth Circuit's] test.").

This case is textbook implied waiver. By Anthropic's own admission, its witnesses will testify at trial that they *subjectively believed* that their acquisition, retention, and use of pirated books was lawful and fair use. Regardless of the lack of support thus far, this is "a factual claim the truth of which can only be assessed by examination of a privileged communication," *In re Xyrem*, 2025 WL 860505, at *3, for there can be no doubt—from litany of invocations of attorney-client privilege by Anthropic's witnesses at depositions—that Anthropic's state of mind was informed by the advice of counsel. In these circumstances, fairness requires that plaintiffs "be given access to contemporaneous information regarding those topics that necessarily implicate attorney-client advice." *In re Lidoderm Antitrust Litig.*, 2016 WL 4191612, at *6.

While witnesses deposed after Anthropic's filings will likely seek to parrot the language in Anthropic's brief—that "based on their general experience, including in their prior employment, they believed that downloading books from the internet was fair because they were not reading or distributing the books and were using them for a different purpose" Br. at 1—the horse has already left the barn.[3] As shown above, key Anthropic witnesses have already invoked privilege as to these issues and stated that their beliefs as to the legality of their conduct derived from the advice of

[3] As one further example of the degree to which privileged material is involved in the conduct in question, Nova DasSarma—another Anthropic witness involved in acquiring Pirate Library Mirror—could not even provide basic information [redacted] Ex. G (DasSarma Dep. Tr.) at 265:7–22, 267:7–268:25.

counsel. Anthropic's own filing thus admits that it intends to "rely on [] subjective belief[s]" which the "the record shows directly implicate[] attorney-client advice." *In re Xyrem*, 2025 WL 860505, at *4. Anthropic thus has "effectuated an at-issue waiver for [those] belief[s]" and should be "required to produce withheld privileged documents" about them. *In re Xyrem*, 2025 WL 860505, at *4 (internal quotation marks and citations omitted).

**B. Anthropic's Arguments to the Contrary Fail**

**i. The Ninth Circuit's Test for Implied Waiver Has No "Reliance" Requirement**

Anthropic points to the Third Circuit's approach in *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) as a correct application of the Ninth Circuit's implied waiver doctrine, Br. at 7, but that case represents an express *departure* from the Ninth Circuit's standard. *See In re Zetia Antitrust Litig.*, 2022 WL 4354620, at *5–7 (E.D. Va. Aug. 15, 2022) (comparing the tests and noting that the primary difference concerns whether the party must "rely on the privileged material in asserting its position"). Whatever the Third Circuit requires for implied waiver, it is not the law in the Ninth Circuit. Instead, under the Ninth Circuit's approach, "even if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication." *In re Xyrem*, 2025 WL 860505, at *3 (quoting *Bowne*, 150 F.R.d. at 488); *accord id.* (noting a party need not "utilize . . . privileged information to advance a claim or defense," in order to affect implied waiver) (internal citation omitted); *Rambus Inc.*, 2007 WL 3444376, at *3 (noting that reliance is "not an element of the [Ninth Circuit's] test.").

Moreover, even if reliance were required, the testimony recounted above from Anthropic's witnesses would show that Anthropic's witnesses relied upon advice of counsel in arriving at their subjective beliefs.

**ii. Finding Implied Waiver Would Not Implicate Any Broader Issue Regarding Affirmative Defenses in Copyright Cases**

Anthropic argues that finding implied waiver would "gut the attorney-client privilege," render the "innocent infringer defense" a "dead letter," and discourage individuals from seeking advice from their attorneys. *See* Br. at 8. But courts repeatedly reject such "sky-is-falling"

arguments in implied waiver cases because they fail to account for the fact that "defendant['s] position would put plaintiffs in a truly untenable posture—requiring them to challenge the subjective beliefs defendants assert . . . without access to the contemporaneous information and documents defendants actually relied upon." *In re Lidoderm Antitrust Litig.*, 2016 WL 4191612, at *6. Instead, courts look to the "unique circumstances of [the] case," to assess these arguments. *Id.* As always, the "overarching consideration is whether allowing the privilege to protect against disclosure of the information would be 'mainfestly unfair' to the opposing party." *Lane*, 43 F.3d at 1326.

Here, the "unique circumstances of this case," are that Anthropic engaged in piracy. Having committed piracy, Anthropic now seeks to have its witnesses testify at trial that they actually believed that getting free books from sites with names like Pirate Library Mirror was totally legal. And at the same time, Anthropic will prevent Plaintiffs from accessing "the contemporaneous information and documents" which deposition testimony elicited so far shows "defendants actually relied upon" in forming their subjective beliefs. *In re Lidoderm Antitrust Litig.*, 2016 WL 4191612, at *6. That is not a common occurrence—and it shouldn't be.

Finding implied waiver in these circumstances would thus do little to render the innocent infringer defense "dead letter" as Anthropic contends Br. at 8. Anthropic's innocent infringer defense *in this particular case* turns on a large number of privileged communications that Anthropic's own witnesses have acknowledged bear on their state of mind. Anthropic identifies no other similar case in which that has occurred and a court rejected implied waiver.

Anthropic also argues that *Arista Records LLC v. Lime Group LLC*, 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011) is inapposite because implied waiver does not occur every time a "defendant puts its state of mind at issue." Br. at 8. But that is not what *Arista* held or what Plaintiffs are arguing. *Arista* stands for the proposition—equally supported in decisions from the Ninth Circuit and the Northern District—that a party cannot claim good faith and use privilege to shield investigation into contemporaneous communications from counsel which may contradict that claim. *Id.* at *2; *accord In re Lidoderm Antitrust Litig.*, 2016 WL 4191612, at *6; *In re Xyrem*, 2025 WL 860505, at *3.

**iii. Anthropic's Cases are Inapposite**

Anthropic describes *Stone Brewing Co., LLC v. MillerCoors LLC*, No. 3:18-CV-00331-BEN-MDD, 2023 WL 6450199, at *3 (S.D. Cal. Sept. 28, 2023), *aff'd sub nom. Stone Brewing Co., LLC v. Molson Coors Beverage Co. USA LLC*, No. 23-3142, 2024 WL 5244556 (9th Cir. Dec. 30, 2024), as "exactly on point," Br. at 5. But in *Stone* the witness denied relying on counsel for his subjective belief and the testimony at issue exactly mirrored the contents of a non-privileged letter which the witness had read. *Stone Brewing,* 2023 WL 6450199, at *3. In those circumstances—and where the testimony was not relied upon by the defendant in closing—the Court found that no waiver had occurred. *Id.* at *3 & n.6. To the extent the *Stone* court was correct on the law, *but see supra* § II.B.i, there is no comparable document here and the testimony from Anthropic's own witnesses demonstrates that counsel played a role in forming subjective beliefs regarding the legality of the conduct in question.

The other cases Anthropic principally relies on are distinguishable. For example, *DMF, Inc. v. AMP Plus, Inc.*, No. 2:18-CV-07090-CAS (GJSX), 2024 WL 1796396, at *11 (C.D. Cal. Apr. 25, 2024), *appeal dismissed,* No. 2024-1877, 2024 WL 4001947 (Fed. Cir. Aug. 30, 2024), applied Federal Circuit law regarding implied waiver. Unlike the Ninth Circuit, the Federal Circuit finds implied waiver only where "a party defends its actions by disclosing an attorney-client communication." *Id.* Meanwhile, *Spin Master, Ltd. v. Zobmondo Ent.*, LLC, No. CV 06-3459 ABC PLAX, 2012 WL 8134011, at *3-4 (C.D. Cal. Mar. 9, 2012), confirms that implied waiver is proper where, like here, a party asserts a belief that "was based at least in part on advice from its attorneys." Finally, *Sorensen v. Black & Decker Corp.*, 2007 WL 1976652, at *2 (S.D. Cal. Apr. 9, 2007) incorrectly relied upon the Third Circuit's standard for implied waiver which, as noted above, is not the law in the Ninth Circuit. *See supra* § II.B.i.

The remainder of the laundry list of cases which Anthropic cites can be dealt with summarily: the most recent and most comprehensive statement of the law out of the courts in the Northern District of California—Chief Judge Seeborg's decision in *In Re Xyrem*, 2025 WL 860505—supports Plaintiffs' position.

**III. CONCLUSION**

Plaintiffs respectfully request that the Court order that Anthropic is precluded from asserting an innocent infringement defense or asserting that its conduct was not willful at trial, or else produce the relevant materials withheld as privileged and also order its witnesses to testify regarding the same.

Dated: August 7, 2025

By: */s/ Justin Nelson*

Justin A. Nelson *
Alejandra C. Salinas *
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
Michael Gervais (SBN 330731)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com
mgervais@susmangodfrey.com

Jordan W. Connors *
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com

J. Craig Smyser *
Samir Doshi*
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor,
New York, NY 10019
Telephone: (212) 336-8330
csmyser@susmangodfrey.com
*Co-Lead Class Counsel*

Rachel Geman *
Jacob S. Miller*
Danna Z. Elmasry*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com

wdozier@lchb.com
afreymann@lchb.com
jmiller@lchb.com

Daniel M. Hutchinson (SBN 239458)
Jallé Dafa (SBN 290637)
Reilly T. Stoler (SBN 310761)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
rstoler@lchb.com
jdafa@lchb.com
dhutchinson@lchb.com

Betsy A. Sugar*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 Second Ave., #1640
Nashville, TN 37201
Telephone: (615) 313-9000
bsugar@lchb.com

*Co-Lead Class Counsel*

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: August 7, 2025

*/s/ Rachel J. Geman*