| | |
|---|---|
| DOUGLAS A. WINTHROP (No. 183532) | DARALYN J. DURIE (No. 169825) |
| Douglas.Winthrop@arnoldporter.com | Ddurie@mofo.com |
| JOSEPH FARRIS (No. 263405) | RAMSEY W. FISHER (No. 334228) |
| Joseph.Farris@arnoldporter.com | RamseyFisher@mofo.com |
| PIETER de GANON (No. 320385) | JACKSON LANE (No. 351633) |
| Pieter.deGanon@arnoldpoter.com | JLane@mofo.com |
| JESSICA L. GILLOTTE (No. 333517) | **MORRISON & FOERSTER LLP** |
| Jessica.Gillotte@arnoldporter.com | 425 Market Street |
| ESTAYVAINE BRAGG (No. 341400) | San Francisco, CA 94105-2482 |
| Estayvaine.Bragg@arnoldporter.com | Telephone: (415) 268-7000 |
| **ARNOLD & PORTER KAYE SCHOLER LLP** | Facsimile: (415) 268-7522 |
| Three Embarcadero Center, 10th Floor | |
| San Francisco, CA 94111-4024 | MARK LEMLEY (No. 155830) |
| Telephone: (415) 471-3100 | mlemley@lex-lumina.com |
| Facsimile: (415) 471-3400 | **LEX LUMINA LLP** |
| | 700 S. Flower Street, Suite 1000 |
| KATHLEEN R. HARTNETT (No. 314267) | Los Angeles, CA 90017 |
| khartnett@cooley.com | Telephone: (213) 600-6063 |
| **COOLEY LLP** | |
| Three Embarcadero Center, 20th Floor | |
| San Francisco, CA 94111-4004 | |
| Telephone: (415) 693-2000 | |
| Facsimile: (415) 693-2222 | |

*Attorneys for Defendant* ANTHROPIC PBC
(Additional Counsel on Next Page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC. CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br>v.<br>ANTHROPIC PBC,<br>Defendant. | Case No. 3:24-cv-05417-WHA<br><br>**ANTHROPIC PBC'S REPLY IN SUPPORT OF RESPONSE TO ORDER TO SHOW CAUSE RE AFFIRMATIVE DEFENSES** |

| | |
|---|---|
| ASSAD H. RAJANI (No. 251143) | WHITNEY R. O'BYRNE (No. 325698) |
| Assad.Rajani@arnoldporter.com | WOByrne@mofo.com |
| **ARNOLD & PORTER KAYE SCHOLER LLP** | **MORRISON & FOERSTER LLP** |
| 3000 El Camino Real, Suite 500 | 707 Wilshire Boulevard |
| Palo Alto, CA 94306-3807 | Los Angeles, CA 90017-3543 |
| Telephone: (650) 319-4500 | Telephone: (213) 892-5200 |
| Facsimile: (650) 319-4700 | Facsimile: (213) 892-5454 |
| | |
| RYAN NISHIMOTO (No. 235208) | FITZ BECKWITH COLLINGS (*pro hac vice*) |
| Ryan.Nishimoto@arnoldporter.com | FCollings@mofo.com |
| OSCAR RAMALLO (No. 241487) | MARY PRENDERGAST (No. 272737) |
| Oscar.Ramallo@arnoldporter.com | MPrendergast@mofo.com |
| ALLYSON MYERS (No. 342038) | ADITYA KAMDAR (No. 324567) |
| Ally.Myers@arnoldporter.com | AKamdar@mofo.com |
| **ARNOLD & PORTER KAYE SCHOLER LLP** | **MORRISON & FOERSTER LLP** |
| 777 South Figueroa Street, 44th Floor | 2100 L Street, NW, Suite 900 |
| Los Angeles, CA 90017-5844 | Washington, D.C. 20037 |
| Telephone: (213) 243-4000 | Telephone: (202) 887-1500 |
| Facsimile: (213) 243-4199 | Facsimile: (202) 887-0763 |

EPHRAIM MCDOWELL (*pro hac vice*)
emcdowell@cooley.com
ALEXANDER J. KASNER (No. 310637)
akasner@cooley.com
**COOLEY LLP**
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

*Attorneys for Defendant*
ANTHROPIC PBC

## REPLY

Plaintiffs do not dispute that every Ninth Circuit case finding implied waiver of privilege involved explicit reliance on privileged communications, and that the Ninth Circuit has repeatedly rejected implied waiver claims absent such reliance. *See* Anthropic's Response to Order to Show Case, ECF 280, at 3-7.[1] They make no effort to reconcile their contrary view with *In re Geothermal Resources International, Inc.*, 93 F.3d 648 (9th Cir. 1996), which held that implied waiver occurs "only when the client tenders an issue touching directly upon the substance or content of an attorney-client communication—not when the testimony sought would be only 'one of several forms of indirect evidence' about an issue." *Id.* at 653 (quoting *Rockwell Int'l Corp. v. Super. Ct.*, 32 Cal. Rptr. 2d 153, 161 (Cal. App. 4th 1994)). Indeed, they ignore the decision entirely. They do not contend that Anthropic has directly tendered the substance or content of an attorney-communication. Instead, Plaintiffs contend that Anthropic's witnesses have indicated that their beliefs about fair use or the legality of downloading for LLM training were informed by advice of counsel. But this is wholly incorrect, and Plaintiffs are conflating testimony about two different decisions. Plaintiffs do not identify a single witness who has testified that his or her beliefs in 2021 and 2022 about the legality of Anthropic's original decision to download and train on those books was informed by advice of counsel. In the testimony Plaintiffs cite, witnesses invoked privilege when asked why Anthropic *stopped* training on internet books. But *stopping* training is not the subject of Plaintiffs' claims or Anthropic's innocent infringement defense. There is no basis for striking Anthropic's innocent infringement defense or requiring Anthropic to waive privilege in order to maintain it.[2]

1. Plaintiffs rely principally on two Northern District of California cases for the proposition that a party can impliedly waive privilege without using or putting the substance of

---

[1] Citations are to the internal document pagination.

[2] Anthropic is not "withdrawing its affirmative defense of non-volitional conduct." Opp. 1 n.1. Anthropic observed that (1) because Plaintiffs were not offering an output-based infringement theory, volitional conduct was unlikely to come up at trial and (2) in any event that defense had nothing to do with advice of counsel. ECF 280 at 11. Plaintiffs mischaracterize the first point and do not dispute the second.

privileged communications at issue. *See In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2025 WL 860505 (N.D. Cal. Mar. 19, 2025); *In re Lidoderm Antitrust Litig.*, 2016 WL 4191612 (N.D. Cal. Aug. 9, 2016). Those cases are out of step with the overwhelming majority of district court decisions within the Ninth Circuit, which confirm that reliance in the litigation is required. ECF 280 at 5-6 & n.2 (citing 10 cases holding that parties do not waive privilege unless they invoke or describe privileged information); *see, e.g.*, *United States v. Anthony,* 2023 WL 2716581, at *3 (N.D. Cal. Mar. 29, 2023) (cataloging Ninth Circuit implied waiver cases and explaining that they require parties to "invoke[] a privileged communication or privileged legal advice as part of a claim or defense"). In holding otherwise, *Lidoderm* relied on a case from the Southern District of New York. 2016 WL 4191612, at *4. And Plaintiffs do not dispute that *Xyrem* misquoted *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003), the Ninth Circuit case it cited for the proposition that a party can impliedly waive privilege without "utilizing" the privileged information. ECF 280 at 7.

 In any event, the Court need not resolve the issue because neither *Lidoderm* nor *Xyrem* support implied waiver here. Under those cases, the "evidence" must "*establish*[] that [a party's] subjective belief was also informed by attorney advice." *Xyrem*, 2025 WL 860505, at *3 (quoting *Lidoderm*, 2016 WL 4191612, at *5). Both courts conducted a careful, topic-by-topic and witness-by-witness analysis of each issue on which the defendant intended to offer subjective testimony about good faith or business judgment, and found waiver only where testimony "establishe[d]" that advice of counsel informed a specific witness's subjective belief on that specific topic. *Xyrem*, 2025 WL 860505, at *4-7 (emphasis omitted); *Lidoderm*, 2016 WL 4191612, at *5-*19. None of the testimony Plaintiffs cite "establishes" that proposition. Anthropic will rely in significant part on objective evidence, like testimony about what other GenAI companies were doing, to support its innocent infringer and good faith arguments. It will also rely on subjective testimony, but none of the evidence Plaintiffs cite reflects that Anthropic's witnesses invoked privilege with regard to the basis for a subjective belief that Anthropic's downloading and use of books for LLM purposes was lawful. Nor did they testify that advice of counsel informed those beliefs. Indeed, Plaintiffs do not identify any instance in which they even asked Anthropic's witnesses about their subjective beliefs

at the time of downloading and training.

Citing Anthropic's privilege log, Plaintiffs first contend that the fact that Anthropic *had* privileged communications with outside counsel and in-house counsel at relevant times supports waiver. Opp. 5-6. That is not remotely sufficient under *Xyrem* or *Lidoderm*, much less under Ninth Circuit case law described in Anthropic's initial brief. *See also, e.g.*, *Schuman v. Microchip Tech. Inc.*, 2019 WL 8333737, at *4 (N.D. Cal. Jan. 8, 2019) ("[E]ven if [plaintiffs] had discussed the issue with their attorneys, that does not automatically mean that they have waived privilege . . . there is no showing that Plaintiffs intend to rely on advice of counsel in supporting their claims"). Plaintiffs' invocation of the privilege log is just an argument that relevance waives privilege. If accepted, their argument would effectively mean that a company that obtained legal advice can never assert an innocent infringer defense without disclosing that advice.

Plaintiffs then point to invocations of privilege from various Anthropic witnesses, but they conflate two separate decisions: Anthropic's initial decision to download internet books data in 2021 and 2022, and its subsequent decision, in fall 2022, to *stop* training LLMs on downloaded books when it began working to launch a commercial model. They do not identify a single Anthropic witness who has invoked privilege to refuse to answer questions regarding his or her subjective beliefs at the time about the legality of Anthropic's decision to download and train. And it is that decision that is the subject of the innocent infringement and good faith defense. *Stopping* training, by contrast, is not infringement, is not the subject of this lawsuit, and is not the subject of Anthropic's innocent infringer defense. Plaintiffs themselves say Anthropic's innocent infringement defense concerns its decision to "*get*[] free books from sites with names like Pirate Library Mirror." Opp. 11 (emphasis added).

For example, Plaintiffs note that Jared Kaplan invoked privilege to decline to answer questions about why Anthropic *stopped* training on downloaded books in 2022. Opp. 6. Dr. Kaplan did not testify that he relied on advice of counsel in deciding to download and train on the books, and he did not invoke privilege to avoid answering questions about his view as to whether that was fair use or otherwise lawful. Indeed, he wasn't even asked about his views on whether training on

3

downloaded books was fair use or lawful. Anthropic's invocation of privilege about the decision to *stop* training LLMs on downloaded books—a topic Anthropic has not put in issue—does not imply that Dr. Kaplan relied on a lawyer's advice to form his beliefs at the time Anthropic decided to ***download*** and ***begin*** training LLMs with that data. Accepting Plaintiffs' view would also deter companies from seeking legal advice—a point that Plaintiffs notably ignore. And this is an especially significant risk in the novel legal context presented here, where the law is unsettled and companies may have particularly significant concerns that consulting lawyers could result in equivocal advice that will retroactively foreclose a fair use argument.

Plaintiffs also confuse the timeline when they claim Dr. Kaplan was "asked why Anthropic did not use 'Sci-Hub.'" Opp. 6. He was actually asked why "*doesn't* Anthropic use Sci-Hub," and he invoked privilege to decline to answer that question. Pls.' Ex. A (Kaplan Dep. Tr.) at 227:8-11. In fact, all the testimony to which Plaintiffs point similarly concerns Anthropic's *current* practice of not training on internet books data, not what it did when downloading in 2021 or 2022 or Dr. Kaplan's beliefs at that relevant time.

The testimony from Tom Turvey is even further afield. Mr. Turvey joined Anthropic in 2024 to work on the scanned books project. He testified that he didn't have an opinion about the legality of that project and invoked privilege. Opp. 7. But the Court has already granted summary judgment to Anthropic on the scanned books project. Mr. Turvey had nothing to do with the downloaded books and testified that he didn't have an opinion about the legality of using downloaded books. Pls' Ex. C (Turvey Dep.) at 327:1-9. His testimony obviously does not "establish[]" that such an opinion was "informed by attorney advice." *Xyrem*, 2025 WL 860505, at *3 (emphasis omitted).

Mycal Tucker's testimony is irrelevant for the same reason as Jared Kaplan's. Mr. Tucker joined Anthropic in 2024, long after the company downloaded books data from the internet in 2021 or 2022. Plaintiffs do not suggest that they asked Mr. Tucker about fair use or the innocent infringement defense or that he expressed a view on that subject. Opp. 7. His invocation of privilege about why Anthropic *stopped* using Libgen, *id.*, does not establish that privileged communications formed the basis for his or Anthropic's beliefs about fair use or legality in connection with initially

4

downloading and using LibGen.

Finally, Plaintiffs point to Ben Mann's testimony about torrenting files in a separate case involving his former employer, OpenAI. But Mr. Mann's actions at Anthropic, by agreement, were entirely off limits in that deposition. Ex. A (Feb. 21, 2025 email from OpenAI Plaintiffs' attorney Craig Smyser). Mr. Mann has not been deposed in this case, has not been asked any questions about the basis for his belief in 2021 or 2022 that Anthropic's downloading of books for use training LLMs was fair use or innocent, and thus he has not invoked privileged communications as the basis for his belief. Plaintiffs accordingly cannot "establish" that Mr. Mann's belief at the time relevant to this case was based on advice of counsel. Nor do Plaintiffs offer any precedent or other support for the notion that an invocation of privilege at a deposition in a *different case* about Mr. Mann's practices *at a different time* and advice he received *at another company* could constitute an implied waiver of privilege by Anthropic.

In short, none of the evidence Plaintiffs cite shows that advice of counsel played a role in the formulation of any witness's subjective beliefs about the legality of downloading books for use in building LLMs, the issue on which Anthropic's witnesses intend to testify with respect to innocent infringement. Far from establishing that "advice of counsel played 'a significant role'" in "central issues in the case," Opp. 8 (quoting *Xyrem*, 2025 WL 860505, at *3), Plaintiffs simply show that advice of counsel may have played a role on different topics that are not the basis for Anthropic's innocent infringer defense.

The upshot of Plaintiffs' theory seems to be that if a company ever invokes privilege over legal advice about *anything* related to a particular act of alleged copyright infringement, including ceasing a practice, it cannot invoke the innocent infringer defense. That is not what *Lidoderm* or *Xyrem* held. *See Staley v. Gilead Scis., Inc.,* 2022 WL 1836820, at *4 (N.D. Cal. June 3, 2022) ("The *Lidoderm* decision does not stand for the proposition that whenever a party puts forward privileged justifications (*e.g.*, views on the strength of the underlying patents) for a purportedly anticompetitive settlement, the party has necessarily waived privilege for all reasons for the settlement. If that were the case, then the court's individualized evaluation of each subjective belief or reason for entering

5

ANTHROPIC'S REPLY RE OSC	No. 3:24-cv-05417-WHA

the settlement in *Lidoderm* would have been unnecessary.").[3]

2. Even if Plaintiffs had satisfied the second prong of the Ninth Circuit's test and shown that Anthropic's innocent infringer defense would put privileged information at issue, they still make no effort to explain how they satisfy the *third* prong, which requires proof that the privileged information is "vital" to Plaintiffs' ability to respond to Anthropic's affirmative defense. *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999). Anthropic pointed this out in its original show cause response (at 10) but Plaintiffs ignore the point. Plaintiffs do not dispute that Anthropic will not and has not affirmatively invoked any privileged communications, and its witnesses will instead offer subjective and objective evidence about the legality of downloading for the particular purpose at issue here, including whether use of downloaded books to train LLMs was consistent with industry practice. Plaintiffs implicitly contend that, if they establish under the second prong that Anthropic put privileged information at issue because privileged information played a role in informing views on fair use (which they have not established), then privileged information is automatically "vital."

But that would merge the second and third prongs of the Ninth Circuit's test: on Plaintiffs' theory, if privileged information is in issue, they are automatically entitled to it. The Ninth Circuit rejected that approach in *Geothermal Resources*, holding that privileged information is not vital if it is "only one form of indirect evidence regarding [the client's] good faith." 93 F.3d at 653. So did *Lidoderm*, where Judge Orrick required the party seeking privileged information to establish that it is "*directly* relevant and *necessary* to allow a party to fully challenge the claims or defenses of the party asserting the privilege, and the information cannot be secured through other sources." 2016 WL 4191612, at *4. Plaintiffs do not even attempt to satisfy that standard. Nor is this case anything

---

[3] Plaintiffs also point to the deposition of Nova DasSarma. Opp. 9 n.3. Plaintiffs asked her how many communications she had over the course of four years, about *any topic*, with Anthropic's in-house counsel, and she found it difficult to estimate. Pls.' Ex. G (DasSarma Dep. Tr.) at 267:20-268:19. Nothing about her answer remotely puts in issue advice of counsel relating to fair use or the legality of downloading books. *Id.* The question would have covered conversations with in-house counsel about good lunch spots.

6

ANTHROPIC'S REPLY RE OSC  No. 3:24-cv-05417-WHA

like *Xyrem*, where there were over 17,000 privileged documents and witnesses "confirm[ed] in depositions that attorney advice informed their beliefs" about the strength of patents and related settlement negotiations. 2025 WL 860505, at *4. The deposition excerpts Plaintiffs cite do not reflect an effort to take discovery into Anthropic's witnesses' subjective opinions at the relevant times about the legality of downloading for purposes of training LLMs, the basis for those opinions, and the industry practices on which Anthropic will rely. Plaintiffs accordingly cannot establish that privileged information is "vital" and that any witness should be precluded from testifying about innocent infringement, much less that an entire affirmative defense should be stricken.

   3. Finally, although the Court's show cause order only asked Anthropic to address the issue of whether its affirmative defenses should be stricken if it does not turn over privileged material, Plaintiffs repeatedly contend that Anthropic also must choose between disclosing privileged material and disputing willfulness *at all*. Opp. 3, 11, 13. That is entirely wrong. Under the first prong of the Ninth Circuit's implied waiver test, the party must be "asserting the privilege as the result of some affirmative act, such as filing suit." *Amlani*, 169 F.3d at 1195 (internal quotation marks omitted). That prong would be meaningless and duplicative of the second prong if it were sufficient to merely *deny* some factual point or offer evidence to rebut a plaintiff's case in chief, in a context where advice of counsel might be relevant. On Plaintiffs' theory, everything is an "affirmative act." Plaintiffs bear the burden of proving willfulness; they have injected it into the case to increase their damages award. Merely *denying* that Plaintiffs have proved the elements of their claim and offering testimony to rebut that claim does not waive privilege.

   Courts overwhelmingly agree. "The mere denial of intent is insufficient to establish waiver of the privilege." *Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 469 (N.D. Cal. 2006) (citing *Laser Indus. v. Reliant Techs.,* 167 F.R.D. 417, 446 (N.D. Cal. 1996)). An "affirmative act" in this context requires the party to "use the[] contents [of privileged communications] as a basis for any claims or defenses." *Rich v. Bank of Am., N.A.*, 666 F. App'x 635, 642 (9th Cir. 2016). "To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case."

7

*Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987); *see also, e.g.*, *Holman v. Experian Info. Sols., Inc.*, 2012 WL 2501085, at *5 (N.D. Cal. June 27, 2012) (holding that "Experian's mere denial of willfulness does not effect an implied waiver of its attorney-client privilege," even though Experian intended to offer evidence of industry practice and other evidence that its belief was reasonable); *In re Veeco Instruments, Inc. Sec. Litig.*, 2007 WL 7630569, at *8 (S.D.N.Y. June 28, 2007) (even under the Second Circuit's broader approach to implied waiver, a plaintiff cannot "preclude a defendant from simply denying the allegations set forth in the plaintiffs complaint, or explaining why it believed its factual certifications were made in good faith"), *abrogated on other grounds by Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34 (2d Cir. 2012); *Garcia v. Serv. Emps. Int'l Union*, 2018 WL 6566563, at *4 (D. Nev. Sept. 6, 2018) ("A defendant privilege-holder has not waived privilege through its adversary's affirmative conduct in initiating litigation that questions the good faith of the defendant."). Plaintiffs point to *Xyrem*, but the court there indicated that the defendant was injecting a number of new factual issues into the case. *See* 2025 WL 860505, at *3. *Xyrem* was not a case where willful infringement was in dispute, and the court did not address whether merely defending against a willfulness charge could impliedly waive privilege.

Plaintiffs' contrary argument relies on a stunningly broad conception of at-issue waiver that lacks any limiting principle. They argue that "a party cannot claim good faith and use privilege to shield investigation into contemporaneous communications from counsel which *may contradict* that claim." Opp. 11 (emphasis added). In other words, on their theory, any time a party denies willfulness and has a privilege log that reflects some communications with counsel, privilege is waived. That would "render the privilege a nullity." *Garcia*, 2018 WL 6566563, at *4. And, again, the risks of adopting their proposal are especially concerning in the context of an emerging area of the law that is subject to judicial disagreement. Under Plaintiffs' theory, anytime a plaintiff raises copyright infringement claims with tricky fair use questions that counsel might have opined on, the plaintiff could unilaterally force defendants to either (1) pay enhanced statutory damages for willfulness or else (2) divulge privileged communications.

Dated: August 13, 2025

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Douglas A. Winthrop*
   Douglas A. Winthrop

*Attorneys for Defendant,*
ANTHROPIC PBC

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years and not a party to the within-entitled action; my business address is 3000 El Camino Real, Five Palo Alto Square, Suite 500, Palo Alto, California 94306-3807. On August 13, 2025, the foregoing ANTHROPIC PBC'S REPLY IN SUPPORT OF RESPONSE TO ORDER TO SHOW CAUSE RE AFFIRMATIVE DEFENSES was electronically served on the following:

Justin A. Nelson (*pro hac vice*)
Alejandra C. Salinas (*pro hac vice*)
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Jordan W. Connors (*pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com

J. Craig Smyser (*pro hac vice*)
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor,
New York, NY 10019
Telephone: (212) 336-8330
csmyser@susmangodfrey.com

Rachel Geman (*pro hac vice*)
Wesley Dozier (*pro hac vice*)
Anna Freymann (*pro hac vice*)
Jacob Miller (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
wdozier@lchb.com
afreymann@lchb.com

| | |
|---|---|
| 1 | jmiller@lchb.com |
| 2 | Reilly T. Stoler (SBN 310761) |
| | **LIEFF CABRASER HEIMANN** |
| 3 | **& BERNSTEIN, LLP** |
| | 275 Battery Street, 29th Floor |
| 4 | San Francisco, CA 94111-3339 |
| | Telephone: (415) 956-1000 |
| 5 | rstoler@lchb.com |
| 6 | Scott J. Sholder (*pro hac vice*) |
| | CeCe M. Cole (*pro hac vice*) |
| 7 | **COWAN DEBAETS ABRAHAMS** |
| | **& SHEPPARD LLP** |
| 8 | 60 Broad Street, 30th Floor |
| | New York, New York 10010 |
| 9 | Telephone: (212) 974-7474 |
| | ssholder@cdas.com |
| 10 | ccole@cdas.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.     Executed August 13, 2025 at San Francisco.

*[signature]*
Jerome E. Ferrer