# EXHIBIT A

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3               SAN FRANCISCO DIVISION

4

5    ANDREA BARTZ, ANDREA BARTZ,
     INC., CHARLES GRAEBER, KIRK
6    WALLACE JOHNSON, and MJ +
     KJ, INC., individually and
7    on behalf of others
     similarly situated,
8
             Plaintiffs,
9
         vs.                          Case No.
10                                    3:24-cv-05417-WHA
     ANTHROPIC PBC,
11
             Defendant.
12   _____/

13

14

15           Rule 30(b)(6) Deposition of

16             BENJAMIN JACOB MANN

17           Friday, August 15, 2025

18

19

20      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

21

22

23   REPORTED BY:  JOHN WISSENBACH, RDR, CRR, CRC,

24             CSR 6862

25   JOB NO. 10169792

Benjamin Jacob Mann                                              Andrea Bartz, et al. vs.
                                                                 Anthropic PBC

```
 1            BE IT REMEMBERED that, pursuant to the laws

 2   governing the taking and use of depositions, on

 3   Friday, August 15, 2025, commencing at 9:19 a.m.

 4   thereof, at the law offices of Lieff Cabraser

 5   Heimann & Bernstein, LLP, 275 Battery Street, 29th

 6   Floor, San Francisco, California, before me, JOHN

 7   WISSENBACH, CSR 6862, of San Francisco, California,

 8   personally appeared BENJAMIN JACOB MANN, called as a

 9   witness by the Plaintiffs, who, being by me first

10   duly sworn, was thereupon examined as a witness in

11   said action.

12                  APPEARANCES OF COUNSEL

13   For the Plaintiffs:

14            SUSMAN GODFREY L.L.P.
              BY:  ROHIT NATH, Attorney at Law
15            1900 Avenue of the Stars, Suite 1400
              Los Angeles, California 90067
16            (310) 789-3100  rnath@susmangodfrey.com

17            SUSMAN GODFREY L.L.P.
              BY:  REETU SINHA, Attorney at Law
18                 JUSTIN A. NELSON (via video), Attorney
                   at Law
19                 ALEJANDRA C. SALINAS (via video),
                   Attorney at law
20            1000 Louisiana, Suite 5100
              Houston, Texas 77002-5096
21            (713) 651-9366  rsinha@susmangodfrey.com
              (713) 651-9366  jnelson@susmangodfrey.com
22            (713) 651-9366  asalinas@susmangodfrey.com

23            SUSMAN GODFREY L.L.P. (via video)
              BY:  SAMIR DOSHI, Attorney at Law
24            One Manhattan West
              New York, New York 10001-8602
25            (212) 336-8330  sdoshi@susmangodfrey.com
```

Page 5

```
 1   For the Plaintiffs (continued):

 2            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
              (via video)
 3            BY:  RACHEL GEMAN, Attorney at Law
                   DANNA ELMASRY, Attorney at Law
 4                 JACOB S. MILLER, Attorney at Law
              250 Hudson Street, 8th Floor
 5            New York, New York 10013-1413
              (212) 355-9500  rgeman@lchb.com
 6            (212) 355-9500  delmasry@lchb.com
              (212) 355-9500  jmiller@lchb.com
 7
              OPPENHEIM + ZEBRAK, LLP (via video)
 8            BY:  AUDREY L. ADU-APPIAH, Attorney at Law
              4530 Wisconsin Avenue, NW, 5th Floor
 9            Washington, D.C. 20016
              (202) 851-4080 AAdu-Appiah@OandZLaw.com
10
              OPPENHEIM + ZEBRAK, LLP (via video)
11            BY:  MICHELLE GOMEZ-REICHMAN, Atty. at Law
              461 5th Avenue, 19th Floor
12            New York, New York 10017
              (212) 470-5813 Mgomez-reichman@OandZLaw.com
13
     For the Defendant:
14
              ARNOLD & PORTER KAYE SCHOLER LLP
15            BY:  JOSEPH FARRIS, Attorney at Law
                   ALEXANDER S. WHISNANT
16            Three Embarcadero Center, 10th Floor
              San Francisco, California 94111-4024
17            (415) 471-3454
              joseph.farris@arnoldporter.com
18            (415) 471-3139
              alex.whisnant@arnoldporter.com
19
              DEVON HANLEY COOK, Attorney at Law
20            Anthropic
              548 Market Street
21            San Francisco, California 94104-5401
              (415) 326-6303
22
     ALSO PRESENT:  ANDREW DAVIDSON, Videographer
23
                         ---o0o---
24


25
```

Highly Confidential - Attorneys' Eyes Only

Benjamin Jacob Mann

Andrea Bartz, et al. vs.
Anthropic PBC

```
 1              THE WITNESS:  I'm not a lawyer.  I did have
 2   conversations with lawyers.  I -- when -- your
 3   question was, when I downloaded Library Genesis.
 4   Are you referring to in June of 2021?
 5   BY MR. NATH:
 6        Q.  Let's just talk about June 2021.  In June
 7   of 2021 you downloaded Library Genesis, right?
 8        A.  That's right.
 9        Q.  Okay.  And you're here as a 30(b)(6)
10   witness to talk on Anthropic's behalf about that
11   download, right?
12        A.  Among other things, yes.
13        Q.  Okay.  That's one of the topics you're here
14   and prepared to testify about, right?
15        A.  That's correct.
16        Q.  As Anthropic's corporate representative?
17        A.  Yes, that's correct.
18        Q.  Okay.  And I want to specifically ask you
19   about -- before you downloaded Library Genesis, did
20   you believe that downloading Library Genesis was
21   lawful?
22              MR. FARRIS:  And I will object.  To the
23   extent the question asks for you to reveal the
24   communications you've had with counsel about that
25   subject, do not reveal them.
```

Benjamin Jacob Mann

1           THE WITNESS:   I believed that downloading

2    this data set for the purposes of building large

3    language models and doing science was the right

4    thing to do.   Whether it was exactly lawful or not,

5    I can't comment.

6    BY MR. NATH:

7       Q.   At the time you were downloading Library

8    Genesis in June of 2021, you believed it was the

9    right thing to do, right?

10      A.   Yes.

11      Q.   Okay.  Did you believe -- when you

12   downloaded that data set in June of 2021, was it

13   your belief that what you were doing was legal?

14           MR. FARRIS:  Same instruction as before.

15           THE WITNESS:  Again, I'm not a lawyer, so I

16   don't know if I can comment on something's legality.

17   That -- that sounds like a very specialized thing,

18   that I wouldn't be an expert on.

19   BY MR. NATH:

20      Q.   Well, I'm asking about specifically -- let

21   me ask you about you, Ben Mann.

22      A.   Okay.

23      Q.   Right?  You personally downloaded Library

24   Genesis in June of 2021 --

25      A.   Uh-huh.

**Page 90**

**Highly Confidential - Attorneys' Eyes Only**

1     Q.  -- right?

2     A.  Yes.

3     Q.  When you did it at that time, did you think

4  what you were doing was legal?

5        MR. FARRIS:  Same obstruction.  Same

6  "instruction."

7        THE WITNESS:  I don't think I can answer

8  that question without revealing privilege.

9  BY MR. NATH:

10     Q.  And you can't answer that question, right,

11  without divulging attorney -- your communication

12  with your attorneys?

13     A.  Well, my beliefs at the time would have

14  been informed by attorneys.

15     Q.  Okay.  And your only beliefs about whether

16  what you were doing was legal was -- were informed

17  by your attorneys?

18     A.  I had other beliefs than informed by

19  attorneys.

20     Q.  About the legality of your conduct?

21     A.  Yes.

22     Q.  Okay.  What were your other beliefs?

23     A.  In my personal capacity, I believed that

24  this usage would be covered by fair use.

25     Q.  Okay.  And how did you come to that

Page 91

Benjamin Jacob Mann

1  conclusion before June of 2021?

2      A.   Well, I researched what fair use was and

3  tried to come to my own understanding of whether

4  what we were doing would be covered by that.  And

5  my -- my personal feeling was that it would be.

6      Q.   And where did you conduct that research?

7  How did you conduct it, and when did you conduct it?

8           Do you mind if I ask that question again?

9      A.   Go ahead.

10     Q.   Okay.  You said you researched fair use,

11 right?  Was that before you -- I don't think you

12 answered the question before I moved on.

13          You said you researched fair use, correct?

14     A.   Yes, I did.

15     Q.   Okay.  You conducted your own independent

16 research into fair use before June of 2021?

17     A.   Yes, I did.

18     Q.   When did you conduct that research?

19     A.   So my recollection is that the first time I

20 learned about fair use was in high school.

21     Q.   And you -- so you did research into fair

22 use in high school?

23     A.   Yes, I did.

24     Q.   Okay.  And -- and you said you did your own

25 independent research into fair use, and that

Benjamin Jacob Mann                                    Andrea Bartz, et al. vs.
                                                            Anthropic PBC

```
 1    informed your belief in June of 2021 when you were
 2    downloading LibGen, right?
 3         A.   There was -- there were multiple instances
 4    of the research.   The first time I did the research
 5    was in high school, in probably 2006 or '7 or so.
 6    And then subsequently, sometime when I was doing AI
 7    research, I looked into it again.
 8         Q.   Okay.   And when was that?
 9         A.   Before the time period that we're
10    discussing.   But more specifically than that, I
11    don't have a specific recollection.
12         Q.   Was it before you founded Anthropic?
13         A.   Possibly.
14         Q.   Okay.   And how did you conduct that
15    research?
16         A.   I would have done a Google search to
17    understand what the sources were available.   I would
18    have read the Wikipedia article on fair use.
19    Probably I read some blog posts, but -- yeah, that's
20    the kind of thing I would have done.
21         Q.   Did you discuss fair use with Mr. Amodei
22    and Mr. Kaplan before you downloaded LibGen in June
23    2021?
24              MR. FARRIS:   So object.
25              To the extent you can answer without
```

1    revealing communications that involved counsel and

2    those gentlemen, you can answer.

3             THE WITNESS:  Probably.

4    BY MR. NATH:

5        **Q.  Okay.  And -- well, tell me about those**

6    **discussions.**

7             MR. FARRIS:  I should clarify to you as

8    well that if the -- if the discussion is about

9    seeking legal advice or about legal advice that any

10   of you had received, then I would instruct you not

11   to reveal that as well.

12            THE WITNESS:  I don't recall the details of

13   those conversations.  I'm fairly confident that they

14   occurred.  But it's been a long time.

15   BY MR. NATH:

16       **Q.  Did Mr. Amodei ever express doubt about the**

17   **legality of downloading and using LibGen?**

18       A.  I don't recall.

19       **Q.  You don't know one way or another?**

20       A.  It's possible, yeah.

21       **Q.  Did he express doubt about the legality of**

22   **using -- of using LibGen before June of 2021?**

23       A.  Just to make sure I'm understanding the

24   question, your previous question was did he express

25   doubt ever, and then this question is did he express

Benjamin Jacob Mann                                         Andrea Bartz, et al. vs.
                                                                    Anthropic PBC

1    doubt before that time period?

2         Q.   Yes.

3         A.   It seems unlikely to me.   I think he and

4    the rest of us have been fairly confident that it

5    was -- it was covered -- it would have been covered

6    under fair use.   But lots of time has passed.

7         Q.   So you had a discussion with him in -- let

8    me ask you this, actually.

9              Mr. Amodei before June of 2021 never told

10   you that he thought LibGen was a sketchy source?

11        A.   It's possible that he used that word.   But

12   I don't know that that would preclude my previous

13   statement.

14        Q.   Did -- after you downloaded LibGen, did

15   Mr. Amodei express doubts about Anthropic's use of

16   LibGen?

17        A.   When you say --

18             MR. FARRIS:   Again, same instruction

19   continues.

20             THE WITNESS:   When you say "doubts," any --

21   any -- anything you want to make that more specific

22   about?   That's --

23   BY MR. NATH:

24        Q.   Doubts about the --

25        A.   That's --

Benjamin Jacob Mann

1    Q.  -- legality.

2    A.  Ah.

3        I don't think I can answer that question.

4    Q.  Because it divulges attorney-client

5  communications?

6    A.  It could.

7    Q.  Okay.  And so I just want to make it clear.

8  So you had conversations with your attorneys before

9  you downloaded LibGen, right?

10   A.  Yes.

11   Q.  Anthropic retained counsel.  And you had a

12  conversation that could have covered copyright

13  before you started downloading June 7th --

14  downloading LibGen on June 7th, 2021, right?

15       MR. FARRIS:  Object to the form.

16       THE WITNESS:  It could have covered

17  copyright.  Yes.

18  BY MR. NATH:

19   Q.  Okay.  And you're not testifying about the

20  substance of those conversations, right?

21   A.  That's correct.

22   Q.  Okay.

23   A.  Just the fact of their existence.

24   Q.  But your testimony today is that you, Ben

25  Mann, believed that everything you were doing was

1    legal on June 7th -- in June of 2021 when you

2    downloaded LibGen, right?

3            MR. FARRIS:  And same instruction about

4    revealing the advice of counsel.

5            THE WITNESS:  My personal belief --

6    actually, yeah, I don't think I can separate out my

7    personal beliefs from discussions I may have had.

8    So I think it would be hard for me to answer that.

9    But there were certainly times in general when I

10   believed that specifically the research that we were

11   doing would have been covered by fair use.

12   BY MR. NATH:

13       Q.  Okay.  But this is what I'm -- this is my

14   opportunity to ask you questions before trial.  You

15   understand that?

16       A.  Yes.

17       Q.  Okay.  And this is my opportunity to get a

18   sense of what your trial testimony is going to be.

19   Does that make sense?

20       A.  Yes.

21       Q.  Okay.  So I want to know whether you're

22   answering the question or you're not answering the

23   question.  Does that make sense?

24       A.  Yes.

25       Q.  Okay.  So the question is, did you

Highly Confidential - Attorneys' Eyes Only    Andrea Bartz, et al. vs.
Anthropic PBC

```
1   believe -- when you downloaded LibGen in June of
2   '21 -- '21, did you believe that what you were doing
3   was lawful?
4           MR. FARRIS:   Same instruction.
5           THE WITNESS:   Yes.   So my previous
6   answer -- I'm trying my best to be helpful here.
7   And I don't think I can answer the question as
8   you've asked it.
9   BY MR. NATH:
10       Q.  Okay.  And so you're not answering that
11  question, right?
12       A.  That's correct.
13       Q.  Because part of your belief is informed by
14  the advice of counsel?
15       A.  The way that you asked the question
16  specifically, it's hard for me to separate out which
17  parts are my beliefs and which parts are from
18  counsel.
19       Q.  Okay.  And so you can't answer the
20  question, as a result?
21       A.  That's correct.
22       Q.  Okay.  Now, I said "you" in the last
23  question, so I'm going to ask it again to make it
24  clear that it's in your capacity as a 30(b)(6)
25  witness.  Does that make sense?
```

Page 98

Benjamin Jacob Mann

```
 1        A.   Yes.
 2        Q.   Okay.  When you downloaded LibGen in June
 3   of 2021, did Anthropic believe what you were doing
 4   was legal?
 5             MR. FARRIS:  Same instruction.
 6             THE WITNESS:  Well, I guess a corporate
 7   entity is made up of its people.  So -- and the --
 8   the people we're describing are -- the relevant
 9   people here I think are me, Dario, and Jared.  So
10   would it be fair to say did Ben, Dario, and Jared
11   believe that it was lawful?  Is that the question?
12   BY MR. NATH:
13        Q.   Did Anthropic's executives believe what you
14   were doing when you downloaded LibGen in June
15   2021 -- did Anthropic's executives believe that that
16   was legal?
17             MR. FARRIS:  Same instruction.
18             THE WITNESS:  Yeah, I think I can't answer.
19   BY MR. NATH:
20        Q.   You can't answer because --
21        A.   Because --
22        Q.   -- it's impossible to parcel out what's
23   informed by your privileged communications with your
24   attorneys?
25        A.   Correct.
```

Highly Confidential - Attorneys' Eyes Only

1  blah, blah, blah.

2      Q.  Understood.  Yeah.

3      A.  Yeah.

4      Q.  So -- but you read this, and you understood

5  that at least the Archive Team described Library

6  Genesis as being in blatant violation of copyright?

7          MR. FARRIS:  Object to the form.

8          THE WITNESS:  I did read that.

9  BY MR. NATH:

10     Q.  Okay.  And you did read that in June of

11  2021, around the time you downloaded Library

12  Genesis, right?

13     A.  Probably.

14     Q.  And your testimony here today is that you

15  believe that what you were doing in June of 2021 by

16  downloading Library Genesis -- you believe that was

17  lawful?

18     A.  As I mentioned before, I believe that it

19  was covered by fair use.  Legality, I'll -- I'll say

20  I can't answer it specifically.

21     Q.  Okay.  And is your testimony at trial going

22  to be that you believed that your download of LibGen

23  was covered by fair use?

24          MR. FARRIS:  Again, I'll instruct you as

25  before.  If you can separate any legal advice you

Benjamin Jacob Mann

Highly Confidential - Attorneys' Eyes Only

Andrea Bartz, et al. vs.
Anthropic PBC

1    received from some other personal basis for that

2    belief, you can answer.

3            THE WITNESS:  I can comment on my personal

4    beliefs at the time that I did the download.  But

5    for me to comment on what I believe today, I don't

6    think I could separate that from discussions with

7    counsel.

8    BY MR. NATH:

9        Q.  Well, I'm asking you, at the time you

10   downloaded LibGen --

11       A.  Uh-huh.

12       Q.  -- is your testimony going to -- at trial

13   going to be that you believed that your activity was

14   considered fair use?

15       A.  I believe that our activity was aboveboard,

16   that we were doing the right thing.

17       Q.  That's not my question.  My question is,

18   did you believe that your activity was considered

19   fair use when you downloaded LibGen in 2021?

20       A.  Yeah, I did believe that.

21       Q.  Okay.  And that was your personal belief,

22   and that's the belief that you're going to testify

23   about at trial, right?

24       A.  Yes.

25       Q.  Okay.  And do you believe that it was --

Highly Confidential - Attorneys' Eyes Only

Benjamin Jacob Mann

Andrea Bartz, et al. vs.
Anthropic PBC

1   were you a hundred percent sure that what you were

2   doing was legal in June of 2021 when you downloaded

3   LibGen?

4          MR. FARRIS:  Object to the form.

5          THE WITNESS:  I can't answer that without

6   divulging privilege, I would say.

7   BY MR. NATH:

8       Q.  Okay.  But you're going to testify at trial

9   that you believe that downloading LibGen was fair

10  use, right?

11         MR. FARRIS:  Object to the form.

12         THE WITNESS:  If I'm asked and it comes up,

13  then in my personal capacity I will say that I

14  believed that it was covered by fair use.

15  BY MR. NATH:

16      Q.  And your testimony is that you did not know

17  in June of 2021 that LibGen had previously been shut

18  down for copyright infringement?

19         MR. FARRIS:  Object to the form.

20         THE WITNESS:  I believe I previously said

21  that I'm not sure, that I don't recall having read

22  that.

23  BY MR. NATH:

24      Q.  Okay.  Let's go back to the Slack thread,

25  Exhibit 256.

Benjamin Jacob Mann                                                    Andrea Bartz, et al. vs.
                                                                            Anthropic PBC

```
1              CERTIFICATE OF REPORTER

2         I, JOHN WISSENBACH, a Certified Shorthand

3  Reporter, hereby certify that the witness in the

4  foregoing deposition was by me duly sworn to tell

5  the truth, the whole truth, and nothing but the

6  truth in the within-entitled cause;

7         That said deposition was taken down in

8  shorthand by me, a disinterested person, at the time

9  and place therein stated, and that the testimony was

10 thereafter reduced to typewriting by computer under

11 my direction and supervision and is a true record of

12 the testimony given by the witness;

13        That before completion of the deposition,

14 review of the transcript [ ] was [X] was not

15 requested.  If requested, any changes made by the

16 deponent (and provided to the reporter) during the

17 period allowed are appended hereto.

18        I further certify that I am not of counsel

19 or attorney for either or any of the parties to the

20 said deposition, nor in any way interested in the

21 event of this cause, and that I am not related to

22 any of the parties thereto.

23        DATED: 08/18/2025

24        _____

25        JOHN WISSENBACH, CSR No. 6862
```

**Page 323**

```
1              DECLARATION UNDER PENALTY OF PERJURY

2    Case Name: Andrea Bartz, et al.
              vs. Anthropic PBC
3    Date of Deposition: 08/15/2025

4    Job No.: 10169792

5

6              I, BENJAMIN JACOB MANN, hereby certify

7    under penalty of perjury under the laws of the State of

8    _____ that the foregoing is true and correct.

9              Executed this _____ day of

10   _____, 2025, at _____.

11

12

13                        _____

14                        BENJAMIN JACOB MANN

15

16   NOTARIZATION (If Required)

17   State of _____

18   County of _____

19   Subscribed and sworn to (or affirmed) before me on

20   this _____ day of _____, 20__,

21   by_____,    proved to me on the

22   basis of satisfactory evidence to be the person

23   who appeared before me.

24   Signature: _____ (Seal)

25
```

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3            SAN FRANCISCO DIVISION

4    _____

5    ANDREA BARTZ, ANDREA BARTZ, INC.;   )
     CHARLES GRAEBER; KIRK WALLACE       )
6    JOHNSON; and MJ + KJ, INC.;         )
     individually and on behalf of       )
7    others similarly situated,          )
                                         )
8              Plaintiffs,               )
                                         ) Case No.
9        v.                              ) 3:24-cv-05417-WHA
                                         )
10   ANTHROPIC PBC,                      )
                                         )
11                                       )
                                         )
12                                       )
               Defendant.                )
13   _____)

14       HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY

15        VIDEOCONFERENCED and VIDEO-RECORDED

16       30(b)(6) and 30 (b)(1) DEPOSITION OF

17      ANTHROPIC, by and through its Designated

18                  Representative,

19        BENJAMIN JACOB MANN, VOLUME II

20         San Francisco, California 94111

21           Monday, August 18, 2025

22   Reported Stenographically by:
     MARY J. GOFF
23   CSR No. 13427
     WA CSR No. 21030779
24   Job No. 10170652
     PAGES 327-478

25

**Page 327**

1

2

3

4        VIDEOCONFERENCED and VIDEO-RECORDED 30(b)(6)

5   and 30(b)(1) DEPOSITION of BENJAMIN JACOB MANN, Volume II,

6   taken on behalf of Plaintiffs, Lieff Cabraser

7   Heimann & Bernstein, LLP, at Lieff Cabraser Heimann

8   & Bernstein, LLP 275 Battery Street, 29th Floor,

9   San Francisco, California 94111, beginning at

10  9:05 a.m. and ending at 12:57 p.m., on Monday,

11  August 18, 2025, before  MARY J. GOFF, California

12  Certified Shorthand Reporter No. 13427 and WA CSR

13  No. 21030779.

14

15

16

17

18

19

20

21

22

23

24

25

```
1    APPEARANCES:

2    For Plaintiffs ANDREA BARTZ; ANDREA BARTZ, INC.;

3    CHARLES GRAEBER; KIRK WALLACE; et al.

4         Susman Godfrey L.L.P.

5         BY:  ROHIT D. NATH

6              REETU SINHA

7         Attorneys at Law

8         1900 Avenue of the Stars

9         Suite 1400

10        Los Angeles, California 90067

11        rnath@susmangodfrey.com

12        310-789-3100

13

14   For Defendant Anthropic PBC

15        Arnold & Porter Kaye Scholer LLP

16        BY:  JOSEPH FARRIS

17             JESSICA LIM GILLOTTE

18        Attorneys at Law

19        Three Embarcadero Center

20        10th Floor

21        San Francisco, California 94111

22        joseph.farris@arnoldporter.com

23        415-471-3454

24

25
```

```
 1   APPEARANCES (continued):

 2   For Plaintiffs ANDREA BARTZ; ANDREA BARTZ, INC.;

 3   CHARLES GRAEBER; KIRK WALLACE; et al.

 4        Susman Godfrey LLP

 5        BY:  ALEJANDRA C. SALINAS (remote Houston)

 6        Attorneys at Law

 7        1000 Louisiana Street

 8        Suite 5100

 9        Houston, Texas 77002

10        asalinas@susmangodfrey.com

11        713-651-9366

12

13   For The Publishers

14        Oppenheim + Zebrak, LLP

15        BY:  AUDREY L. ADU-APPRIAH

16        Attorney at Law

17        4530 Wisconsin Ave NW

18        Fifth Floor

19        Washington, DC 20016

20        AAdu-Appiah@OandZLaw.com

21

22   ALSO PRESENT:  Karl Johnston, In-house Counsel for

23   Anthropic; Jacob Miller, Esquire, Lieff Cabraser

24

25   Videographer:  Neil George
```

**Page 330**

 1              San Francisco, California

 2              Monday, August 18, 2025

 3                    9:05 a.m.

 4         THE VIDEOGRAPHER:  We are now on the

 5   record.  Today's date is August 18, 2025, and the

 6   time is 9:05 a.

 7         M.  This is the video-recorded deposition

 8   of Ben Mann, in his 30(b)(6) capacity, taken in the

 9   matter of Andrea Bartz, et al., versus

10   Anthropic PBC, Case Number 3:24-cv-05417-WHA.

11         My name is Neil George.  I'm the

12   videographer.

13         Counsel will now introduce themselves for

14   the record.

15         ATTORNEY NATH:  Rohit Nath, from Susman

16   Godfrey, for the Plaintiffs.

17         And with me is Reetu Sinha, also from

18   Susman Godfrey, for the Plaintiffs.

19         ATTORNEY FARRIS:  Good morning.  Joe

20   Farris, with Arnold & Porter, for Anthropic.

21         With me is my associate, Jessica Gillotte;

22   and Anthropic's in-house counsel, Karl Johnson.

23         ATTORNEY ADU-APPRIAH:  On the phone we

24   have Audrey Adu-Appriah from Oppenheim + Zebrak, for

25   the Publishers.

```
 1              THE COURT STENOGRAPHER:  My name is Mary
 2    Goff.  I am a California Certified Shorthand
 3    Reporter, CSR Number 13427.  Today's proceedings are
 4    being captured by stenographic means.
 5                   BEN MANN, VOLUME II,
 6    Being first duly sworn or affirmed to testify to the
 7    truth, the whole truth, and nothing but the truth,
 8    was examined and testified as follows:
 9                        EXAMINATION
10    BY ATTORNEY NATH:
11         Q    Good morning, Mr. Mann.  We had your
12    first -- the first day of your deposition on Friday.
13              Do you remember that?
14         A    Yes, I do.
15         Q    You understand that you're still under
16    oath today?
17         A    Yes, I do.
18         Q    And that's the same oath that you would
19    take in court?
20         A    Yes.
21         Q    Did you speak to anyone about your
22    deposition over the weekend?
23         A    No.
24         Q    Did you speak with your lawyers about your
25    testimony at any time after we concluded the
```

**Page 334**

Highly Confidential - Attorneys' Eyes Only

1    deposition on Friday between then and now?

2        A    No.

3        Q    Did you do anything more to prepare for

4    your deposition over the weekend?

5        A    No, I didn't.

6        Q    Did you look at any documents related to

7    your deposition over the weekend?

8        A    No, I didn't.

9        Q    And you testified for several hours on

10    Friday.

11            Is there anything that you, sitting here

12    today, would like to correct about your testimony or

13    change?

14        A    Yeah, there's one thing that I wanted to

15    mention.

16        Q    Okay.  What is it?

17        A    So we -- you asked me a couple of times

18    about whether I believed it was legal to download

19    content from the various resources that I use, and I

20    wanted to make clear that -- well, I'm not a lawyer,

21    and I don't know the exact bounds of the law.

22            Everything we did, I believe, would have

23    been covered under fair use and I believe was legal,

24    to the extent that I'm capable of judging that.

25        Q    Your belief is that what you did when you

1   downloaded LibGen in June of 2021 was legal, right?

2        A    That's right.

3        Q    And you believe that when Anthropic

4   downloaded Pirate Library Mirror in 2022, you

5   believe that was legal, right?

6        A    To the extent that I'm able to judge as a

7   layperson, yes.

8        Q    And your understanding of what was legal

9   and not legal in June of 2021 was informed by

10  information provided to you by lawyers, right?

11       A    No, actually.  So my beliefs on the

12  subject are informed by my personal research on fair

13  use and other related topics.

14       Q    Okay.  And you never received any

15  information about fair use from lawyers prior to

16  June 2021?

17       A    I don't want to comment on the -- I don't

18  think I can comment on the substance of my

19  communications with lawyers.  But what I can say is

20  that my beliefs were substantially informed by my

21  own research on the topic.

22       Q    Did you receive any information from

23  counsel about whether downloading material from

24  Pirate Library is -- is or is not legal before

25  June of 2021?

**Page 336**

```
1         A    I don't think I can answer that.
2         Q    Why can't you answer that?
3         A    Because I -- it could reveal substance --
4    discussions with counsel.
5         Q    Okay.  But your testimony here today is
6    that your personal belief in June 2021 is that what
7    you were doing was legal?
8         A    That's my personal belief, yes.
9         Q    But you're not telling us whether your
10   attorneys had a different view or the same view,
11   right?
12        A    Yeah.  Independent of what my attorneys
13   may or may not have said, my personal belief was
14   that what we were doing was legal.
15        Q    Did you disagree with any of the
16   conclusions your attorneys reached in June -- you
17   know, by June of 2021?
18        A    I don't think I can answer that because I
19   think it would reveal the substance of our
20   discussions.
21        Q    Okay.  Did you agree with the advice that
22   you received from attorneys in June of 2021?
23        A    Again, I don't think I can answer that
24   without revealing the substance of the discussions.
25        Q    But you did have discussions with counsel
```

1        A    That's correct.

2        Q    You told me a little bit about your

3   personal beliefs and your own personal research into

4   fair use, right?

5        A    Yes.

6        Q    That included a project from high school?

7        A    Yes, it did.

8        Q    Tell me about that project.

9        A    At the time I was taking a class called

10  "Rhetoric and Persuasion," and the assignment was to

11  pick pretty much any topic, but preferably one that

12  could be thought of as controversial and to try to

13  convince the rest of the class with an oral

14  presentation of our side of whatever issue we

15  picked.

16           And so, yeah, that was the topic.

17       Q    Did you write any notes to prepare for

18  your presentation?

19       A    I wrote a speech.

20       Q    Do you still have that speech?

21       A    Somewhere, yeah.

22       Q    Has it been produced in the case?

23       A    I believe it has not.

24       Q    Have you turned it over to your lawyers?

25       A    I haven't looked at it since high school.

1        Q       Okay.

2                ATTORNEY NATH:    We're going to ask that

3    that presentation be produced.    I'm just putting

4    that on the record.

5                (Request for Production of Documents.)

6        Q       (BY ATTORNEY NATH) And who is your

7    teacher?

8        A       My teacher was Lalise Melilo.

9                Do you need a spelling?

10       Q       Yes, please.

11       A       L-A-L-I-S-E is the first name.    Last name

12   is M-E-L-I-L-O.

13       Q       And who were you -- were you paired to

14   debate with someone in the class?

15       A       No.    This was -- we just give the speech

16   and then -- I don't think there was any judging or

17   anything except by the teacher.

18       Q       And what did you -- what grade did you get

19   on the assignment?

20       A       I have no idea.

21       Q       Did you turn in a physical copy of the

22   assignment?

23       A       Yes, I did.

24       Q       And did you get a copy of it that was

25   signed and returned with a markup or a grade on it?

1       A      I'm sure I did, yes.

2       Q      Do you still have that copy?

3       A      Almost certainly not.

4       Q      Where did you go to high school?

5       A      In Massachusetts.

6       Q      What school?

7       A      It's called Falmouth Academy.

8       Q      Can you spell that?

9       A      F-A-L-M-O-U-T-H Academy.

10      Q      And when did you graduate?

11      A      In 2007.

12      Q      And who was -- what year did you take the
13  class?

14      A      It would have been my senior year.

15      Q      So it would have been either 2006 or 2007?

16      A      That's right.

17      Q      Do you remember whether it was fall or
18  spring or summer?

19      A      I don't remember.

20      Q      Was it in 2006 or 2007?

21      A      I don't remember.

22      Q      And how many people -- how big was the
23  class?

24      A      Between 10 and 15.

25      Q      10 and 15 students?   Okay.

1          A     Yes.

2          Q     And what was the conclusion in your paper?

3          A     I don't remember the exact conclusion.

4          Q     Was it about shadow libraries or

5    peer-to-peer networks?

6                ATTORNEY FARRIS:   Object to the form.

7          A     I don't remember if peer-to-peer networks

8    existed at that time, so I'm guessing the answer is

9    "No," but I'm not sure exactly.

10         Q     (BY ATTORNEY NATH) You don't think

11   peer-to-peer networks existed in 2006 and 2007?

12         A     Well, I know that there were networks

13   where people could share files, but I don't know if

14   they would be called peer-to-peer --

15         Q     Okay.

16         A     -- but it's possible.

17         Q     Napster existed then, right?

18         A     Yes.

19         Q     Kazaa existed then?

20         A     I don't know the exact dates.

21         Q     Did you ever use Napster?

22         A     My sister did.   I don't remember if I did.

23         Q     Were you too young for Napster?

24         A     It was on the shared computer that we had,

25   but I don't -- I don't -- I don't -- it's -- it

Highly Confidential - Attorneys' Eyes Only

1    would have been a long time ago.

2        Q    What about Limewire?

3        A    That, I remember.

4        Q    Did you use it?

5        A    Probably at some point.

6        Q    Your paper in Ms. -- was it -- Melilo's --

7    Melilo's class, was it about any of those file

8    sharing networks?

9        A    It would have covered file sharing.

10       Q    Okay.  And what was your conclusion about

11   file sharing?

12       A    I don't remember the exact conclusion.

13       Q    Was your conclusion the use of file

14   sharing networks was fair use?

15       A    I don't remember.

16       Q    And after that you said you did other

17   research about fair use.

18            Tell me everything that you did to

19   research fair use since high school to the time you

20   downloaded LibGen and Pirate Library Mirror.

21       A    So the parts that I remember -- there

22   could have been others -- are in 2019, I probably

23   would have done some research into fair use and

24   copyright law, as I could access it on the Internet.

25            I would have done some Google Searches and

1    probably read some blog posts and Wikipedia

2    articles.

3              And then I don't remember whether I did

4    that again in 2021, but it's possible that I did.

5    Similar -- similar idea.  My guess is that I

6    wouldn't have, but I would be speculating.

7        Q    And you did it in 2019.

8              Was that in connection with your

9    employment at OpenAI?

10       A    Yes.

11       Q    Were you researching whether

12   downloading -- do you mind if I ask the question

13   again?

14       A    Go ahead.

15       Q    When you were at OpenAI, you personally

16   were involving -- involved in downloading a portion

17   of Library Genesis, right?

18       A    Yes, I think that's fair to say.

19       Q    And that was around the 2019 time frame?

20       A    Yes.

21       Q    You said you did fair use research in

22   2019.  Personally, right?

23       A    Yes.  That's right.

24       Q    Why did you do fair use research in 2019?

25       A    At OpenAI, our plan was to use LibGen for

1    training, and I wanted to understand what the legal

2    implications of that might be.

3        Q    So you researched fair use, right?

4        A    I did.

5        Q    Did you research LibGen?

6        A    I guess.  There wasn't that much to know,

7    but I guess I looked at the metadata and stuff like

8    that, as -- as far as it -- I needed to to

9    understand the structure of the dataset, as we

10   discussed.

11       Q    Would you say that you did thorough

12   research into fair use in 2019?

13       A    I don't know what "thorough" means.  Some

14   people spend their whole careers on fair use, but I

15   felt like I understood enough to come to a confident

16   conclusion.

17       Q    Did you consult with someone who had spent

18   their whole career studying fair use before

19   downloading LibGen at OpenAI in 2019?

20           ATTORNEY FARRIS:  Object to the form.

21       A    I -- I don't think I can answer that

22   question without divulging the substance of

23   attorney-client privileged conversations.

24       Q    (BY ATTORNEY NATH) Did you consult with

25   attorneys while you were at OpenAI before

1    downloading LibGen in 2019?

2         A     Yes, I did.

3         Q     Who did you consult with?

4         A     That would have been David Lansky.

5         Q     Anyone else?

6         A     It's possible, but I don't remember.

7         Q     And what blogs did you read in 2019 when

8    you were researching fair use?

9         A     I definitely wouldn't remember any of the

10   names.  These are -- it's not a topic that I

11   frequent, so I wouldn't have remembered.

12        Q     What articles did you read about fair use

13   in 2019 when you were researching?

14        A     Whatever came up in a Google Search.

15        Q     And did you find any information about

16   cases finding that the use of peer-to-peer networks

17   to download and upload content was copyright

18   infringement?

19             ATTORNEY FARRIS:   Object to to form.

20        A     It's possible.  I -- I wouldn't remember

21   that far back.

22        Q     (BY ATTORNEY NATH) Did you come across any

23   of the cases -- or the case about -- where Napster

24   was held vicariously liable for its users actions

25   downloading movies and music free without paying for

1   it?

2            ATTORNEY FARRIS:   Object to the form.

3       A    That particular subject doesn't ring a

4   bell.

5       Q    (BY ATTORNEY NATH)  Okay.   And in the

6   course of your research, did you learn that Library

7   Genesis had been shut down twice by courts?

8            ATTORNEY FARRIS:   Object to the form.

9       A    I don't remember that, but it's possible.

10      Q    (BY ATTORNEY NATH)  But you were doing

11  Google Searches around that time, right?

12      A    I was doing Google Searches around that

13  time, yes.

14      Q    Specifically to come to ground on whether

15  you thought downloading material from LibGen would

16  be legal, right?

17      A    Specifically whether the use of this data

18  in training language models would be legal.

19      Q    Well, I'm -- but you were doing something

20  else as well.

21            You downloaded this content free from

22  LibGen genesis when you were at OpenAI, right?

23      A    I did download the content, yes.

24      Q    And then at Anthropic, in June of 2021,

25  you downloaded large quantities of books from

1    Library Genesis without paying for them, right?

2        A    That's correct.

3        Q    And then Anthropic also downloaded large

4    quantities of books from a website called Pirate

5    Library Mirror in 2022 without paying for them,

6    right?

7        A    That's correct.

8        Q    Okay.  And so what research did you do

9    before June of 2021 about whether downloading

10   content from pirated websites is legal or not?

11            ATTORNEY FARRIS:   Object to the form.

12       A    In my mind, as far as I remember, those

13   two subjects were intimately intertwined.  The use

14   and download were tied to purpose, and therefore, to

15   me, understanding fair use was tantamount to

16   understanding the downloading part.

17            Now again, I'm not a lawyer, so -- but

18   that was my judgment at the time.

19       Q    (BY ATTORNEY NATH) And what cases or

20   articles or sources were you relying on for that

21   judgment?

22       A    Again, whatever would have come up in the

23   Google Search around that time.

24       Q    But what did come up?  That's my question.

25       A    It's been many years.  I don't remember

1    any of the details.

2         Q     But you're going to testify at trial that

3    you believed -- you believed that downloading

4    material for free from pirated websites was legal

5    because you had a higher purpose, and I want to

6    understand:   What are the sources, what are the

7    authorities, what are the materials that you read

8    that led to that belief?

9              ATTORNEY FARRIS:   Object to the form.

10        A     I think there's at least two parts to what

11   you just said, so could you break it up for me?   I

12   want to make sure I answer exactly what you're

13   asking or I could try to, like, break it up myself?

14        Q     (BY ATTORNEY NATH) I would like you to

15   answer the question.

16        A     Okay.   So I think the first part of your

17   statement was "you believed you had a higher

18   purpose," and I would not frame it that way.

19              I would frame it as:   We had a very

20   different use from what these sources are usually

21   used for, and I believe that was distinguishing in

22   how we ended up using the data and my nonlegal

23   expert view of its legality.

24              And then the second part of your question

25   was -- I lost it.   Can you repeat?

1        Q      Yeah.

2               What are the sources you relied on for

3    conclusion?

4        A      And for that, I believe I have been clear

5    that I don't remember the details of the sources,

6    but they would have been whatever came up in a

7    Google Search.

8        Q      So whatever came up in a Google Search in

9    2019?

10       A      That's right.

11       Q      Okay.  And you don't know -- you can't

12   name any of those sources?

13       A      Well, Wikipedia would have definitely been

14   one of them.

15       Q      Okay.  So you read Wikipedia, and that led

16   you to believe your belief that -- anything else

17   other than Wikipedia that you can name?

18       A      Nothing I can name specifically.

19       Q      So you read the Wikipedia article on fair

20   use?

21       A      That would have been one of the things I

22   would have read, yes.

23       Q      As it existed in 2019?

24       A      That's my recollection.

25       Q      Okay.  And you can use the Wayback Machine

1   to figure out what Wikipedia -- the Wikipedia

2   article on fair use looked like in 2019, right?

3              ATTORNEY FARRIS:   Object to the form.

4       A    Anybody can use the Wayback Machine to

5   figure out what that page would have been at the

6   time, yes.

7       Q    (BY ATTORNEY NATH) Do you remember what

8   month in 2019 you looked at -- you performed this

9   research?

10      A    I don't remember.

11      Q    Would it have been before you downloaded

12  LibGen at OpenAI?

13      A    I would guess so, yes.

14      Q    Was it immediately before you downloaded

15  LibGen or several months before?

16      A    I don't remember.

17      Q    Was it before Alec Radford -- well, let me

18  take a step back.

19           Alec Radford downloaded a dataset called

20  LibGen1 at OpenAI, right?

21      A    That's my understanding, yes.

22      Q    He was an employee of OpenAI at the time?

23      A    Yes, he was.

24      Q    Did you do your fair use research before

25  Mr. Radford downloaded LibGen at OpenAI?

1          A     I wasn't at the company at the time.

2          Q     Okay.   And other than reading the

3    Wikipedia article on fair use, can you name any

4    other sources that you reviewed before arriving at

5    your conclusion that downloading material from

6    pirated websites was fair use?

7          A     Across the span of six years, no, I don't

8    recall any of the specific sources.

9          Q     And you're not a lawyer, right?

10         A     That's correct.

11         Q     You acknowledge that?

12         A     Yes, I believe I have been quite clear

13   about that.

14         Q     Are you an expert in fair use?

15         A     No, I'm not.

16         Q     Has the company retained experts in fair

17   use from time to time, lawyers?

18               ATTORNEY FARRIS:   Object to the form.

19         A     The company Anthropic?

20         Q     (BY ATTORNEY NATH)  Yes.

21         A     I believe we have, but I'm not sure.

22         Q     Okay.   And your subjective belief -- you,

23   Ben Mann, you had a belief as to whether downloading

24   material from -- Anthropic's downloading of material

25   from pirated websites was fair use, right?

1    A    That is my belief, yes.

2    Q    And you acknowledge that you're not a

3 lawyer, right?

4    A    Yes.

5    Q    You're not an expert in fair use, right?

6    A    Correct.

7    Q    But you did talk to an intellectual

8 property lawyer before you downloaded that material,

9 right?

10    A    I don't think I can -- oh, sure.  I don't

11 know whether I talked to an intellectual property

12 lawyer myself personally.

13    Q    You spoke to someone at Keker, Van Nest?

14    A    Yes.

15    Q    And you spoke to a lawyer at Keker,

16 Van Nest about copyright, right?

17    A    I don't think I can answer that without

18 divulging the substance of my conversation and

19 attorney-client privilege.

20    Q    I'm asking about the subject matter of

21 your conversation.

22         It was about copyright, right?

23         ATTORNEY FARRIS:  So we -- this is the

24 same line we drew at the last deposition.  So if the

25 general question is:  Did you talk somebody about

1    copyright issues, then we'll allow you to answer

2    that, but no further.

3         A    I believe I did, yes.

4         Q    (BY ATTORNEY NATH) You spoke to a lawyer

5    about copyright, Mr. -- Mr. Shacham, right?

6         A    I believe so, yes.

7         Q    Okay.  So you spoke to Mr. Shacham, a

8    lawyer, about copyright before you downloaded LibGen

9    in June of 2021, right?

10        A    I believe so.

11        Q    And you are not a lawyer, right?

12        A    I'm not a lawyer.

13        Q    Yet as I understand it -- is it your

14   testimony that your personal beliefs, even though

15   you're not a lawyer, are entirely informed by your

16   own research and not at all informed by your

17   conversations with lawyers about copyright?

18             Do I have that right?

19             ATTORNEY FARRIS:  Object to the form.

20        A    I think that would be a misrepresentation

21   of my testimony.

22        Q    (BY ATTORNEY NATH)  Okay.   And how is that?

23        A    Specifically I said that at the time my

24   belief was substantially informed by my own

25   research.   And that based on that, I felt confident

1    that what we were doing was legal.
2            But I didn't say that it wasn't also
3    informed by counsel or that my beliefs have never
4    been affected by anything counsel has ever said.
5        Q    Okay.  So that's what I kind of want to
6    clear up here.
7            Your belief -- your state of mind in
8    June of 2021 is inform -- would have been informed,
9    in part, by your conversations with lawyers, right?
10       A    In part.
11       Q    And perhaps in part by your own research,
12   right?
13       A    That's right.
14       Q    But you're only testifying today about the
15   part informed by your own research, not the part
16   informed by counsel, right?
17       A    Correct.
18       Q    Okay.  I'm going to hand you a document.
19   We'll go to 281.
20           ATTORNEY FARRIS:  And before you -- you're
21   switching topics?
22           ATTORNEY NATH:  Yes.
23           ATTORNEY FARRIS:  Okay.  Just for the
24   record, I just want to note -- I didn't get a chance
25   to say it at the beginning that we had considered

 1  sketchy source?

 2          ATTORNEY FARRIS:  Object to the form.

 3      A   Dario has written that LibGen is a sketchy

 4  source, but whether he said that in connection with

 5  publication, I don't know.  I don't remember.

 6      Q   (BY ATTORNEY NATH) When has Dario written

 7  that LibGen was a sketchy source?

 8      A   In Slack sometime.  I don't remember the

 9  details of the document.

10      Q   You're referring to a specific Slack

11  thread?

12      A   It could have been in a Google Doc, but it

13  was some written communication.

14      Q   And Mr. Amodei said that LibGen was a

15  sketchy source to you at OpenAI at some point in

16  time, right?

17      A   I don't know if he said it to me.

18      Q   Okay.  And at the time you released this

19  paper in 2022, you had already done the research and

20  convinced yourself that downloading LibGen and

21  getting books for free from LibGen was perfectly

22  legal, right?

23          ATTORNEY FARRIS:  Object to the form.

24      A   I had done my research, and I concluded

25  that using LibGen for model training would have been

1    covered by fair use.

2         Q    (BY ATTORNEY NATH) And so in your view, it

3    would have been legal, right?

4         A    In my personal view as a nonlawyer, yes.

5         Q    And so for getting ourselves in the head

6    of Ben Mann in July -- about July of 2022, your

7    view -- you had a firm -- you had reached a firm

8    conclusion that downloading books for free from

9    LibGen for -- at OpenAI was legal?

10             ATTORNEY FARRIS:   Object to the form.

11        A    I believed that downloading content from

12   LibGen for the purpose of training models would have

13   been legal, yes.

14        Q    (BY ATTORNEY NATH) Yeah.

15             And did everyone else you were working

16   with at OpenAI at the time share the same view?

17             ATTORNEY FARRIS:  Object to the form.

18        A    I don't know the answer to that because,

19   as you can see on the front page of this document,

20   there were a very large number of authors, so I

21   wouldn't have known many of their views.

22             But I can say that Dario and I and Tom

23   Brown shared that view.

24        Q    (BY ATTORNEY NATH) And you had discussions

25   about it, right?

```
 1      A    Yes, we did.

 2      Q    At OpenAI?

 3      A    Yes, at OpenAI.

 4      Q    And at OpenAI, you had discussions about

 5 it in Slack threads or just comm -- general

 6 communications?

 7      A    I don't remember the exact medium.

 8      Q    Okay.  But you had several -- multiple

 9 discussions with Tom Brown and Dario Amodei about

10 whether your downloads of LibGen was legal, right?

11      A    We had discussions of whether we thought

12 using LibGen for model training would have been fair

13 use.  And more specifically than that, I'm not sure.

14      Q    Did you think it was obvious that it was

15 fair use, from your perspective?

16      A    I think the word "obvious" would probably

17 be one step too far, but I think we felt confident

18 after discussions.

19      Q    You were confident that your downloads of

20 LibGen at OpenAI was fair use at that time, right?

21 You were confident at that time?

22           ATTORNEY FARRIS:  Object to the form.

23      A    I think we were confident that using

24 LibGen data for model training would have been fair

25 use.
```

1  legally sensitive in 2021?

2            ATTORNEY FARRIS:  Object to the form.

3      A    I don't know if I specifically would have

4  characterized it that way at the time, but it's

5  possible.

6      Q    (BY ATTORNEY NATH) You understand that it

7  was at least a gray area, right --

8            ATTORNEY FARRIS:  Object to the form.

9      Q    (BY ATTORNEY NATH) -- given the character

10 of the website?

11     A    Is "gray area" being used colloquially

12 here?

13     Q    Yes.

14     A    I don't know.  I think -- as we discussed,

15 at that time period, I felt confident that using

16 LibGen for the purposes of training large language

17 models was a legal thing to do.  But certainly in --

18 as far as copyright is concerned, it seems like

19 something that didn't have explicit precedent.

20     Q    (BY ATTORNEY NATH) And you agree that

21 Pirate Library Mirror, when it's called "Pirate

22 Library," certainly a legal -- a legally sensitive

23 issue in 2022, right?

24            ATTORNEY FARRIS:  Object to the form.

25     A    Well, I mean, people can call themselves

Page 450

```
 1        I, MARY J. GOFF, CSR No. 13427, Certified

 2   Shorthand Reporter of the State of California,

 3   certify;

 4        That the foregoing proceedings were taken

 5   before me at the time and place herein set forth, at

 6   which time the witness declared under penalty of

 7   perjury; that the testimony of the witness and all

 8   objections made at the time of the examination were

 9   recorded stenographically by me and were thereafter

10   transcribed under my direction and supervision; that

11   the foregoing is a full, true, and correct

12   transcript of my shorthand notes so taken and of the

13   testimony so given;

14        That before completion of the deposition,

15   review of the transcript (XX) was (  ) was not

16   requested:   (   ) that the witness has failed or

17   refused to approve the transcript.

18        I further certify that I am not financially

19   interested in the action, and I am not a relative or

20   employee of any attorney of the parties, nor of any

21   of the parties.

22        I declare under penalty of perjury under the

23   laws of California that the foregoing is true and

24   correct, dated this 19th day of August, 2025.

25   _____
             MARY J. GOFF
```

Page 475

```
 1              DECLARATION UNDER PENALTY OF PERJURY

 2    Case Name: Andrea Bartz, et al.
                 vs. Anthropic PBC
 3    Date of Deposition: 08/18/2025

 4    Job No.: 10170652

 5

 6              I, BENJAMIN JACOB MANN, hereby certify

 7    under penalty of perjury under the laws of the State of

 8    _____ that the foregoing is true and correct.

 9              Executed this _____ day of

10    _____, 2025, at _____.

11

12

13                       _____

14                            BENJAMIN JACOB MANN

15

16    NOTARIZATION (If Required)

17    State of _____

18    County of _____

19    Subscribed and sworn to (or affirmed) before me on

20    this _____ day of _____, 20__,

21    by_____,    proved to me on the

22    basis of satisfactory evidence to be the person

23    who appeared before me.

24    Signature: _____ (Seal)

25
```