UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA BARTZ and KIRK WALLACE JOHNSON, individually, and ANDREA BARTZ, INC., CHARLES GRAEBER, and MJ + KJ, INC., individually and as representatives of the class,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | No. C 24-05417 WHA<br><br>**REQUEST FOR INFORMATION RE PRIVILEGE LOG** |

Now pending is plaintiffs' motion to compel (Dkt. No. 223). The motion challenges assertions of attorney-client privilege and work-product protection over three categories of documents: (1) communications involving third-party consultants, (2) business communications involving counsel, and (3) business communications not involving counsel. Briefing and declarations supporting all three were filed, and a hearing was held before the district judge. The first category will be decided by the district judge, and the second and third by the special master. Recently, the judge requested more information about the first (Dkt. No. 304). Anthropic's response raises questions as to all — so this order seeks more information.

### A. *"BROAD[E]STAUDIENCE."*

At our initial hearing, Attorney Joseph Farris, from Arnold & Porter Kaye Scholer LLP, appearing for Anthropic, summed up that "it's true that there's only about seven unique

documents" in the first category concerning third-party consultants, while by contrast "I would submit the last two categories are very similar" — leading the Court to conclude "I'm going to say just the consultant category [for me] and leave the others to McElh[inn]y" (July 23, 2025 Tr. 43, 53).

As to the others left for Special Master McElhinny, recall that plaintiffs had flagged privilege-log entries lacking a lawyer in "Email From" or "Email To," for instance. Take ANTPRIV_0001197 (simplified):

| Log ID | Date | Email From | Email To | Recipients |
|---|---|---|---|---|
| ANTPRIV_0001197 | 4/9/24 | | | Jk[ ]@anthropic.com, je[ ]@anthropic.com, he[ ]@anthropic.com, ga[ ]@anthropic.com, . . . , /dasher/broadastaudience/1260855 |

Note the blanks for "Email From" and "Email To." Note also that among other recipients is "*/dasher/broadastaudience/1260855 [sic].*" To rehabilitate this document, Attorney Assad Rajani, from Arnold & Porter on behalf of Anthropic, said plaintiffs' conclusion from the metadata was "inaccurate." Instead, Attorney Rajani swore that document ANTPRIV_0001197 was "an eight-page document containing notes from various Anthropic business development meetings that ha[d] a single section redacted in which [Anthropic Attorney] Janel Thamkul provide[d] legal advice" (Dkt. No. 230-1 ¶¶ 3, 7(b)). A lawyer *was* giving legal advice, so attorney-client privilege applied.

Meanwhile, as to category one, recall plaintiffs had flagged entries where obvious third parties were present among "Recipients" — such as ones with email addresses ending in @150bond.com from the public relations firm 150Bond LLC. The district judge asked Anthropic to clarify, among other things, the people working at each public relations firm and with access to the documents (Dkt. No. 304 ¶¶ 4, 6). In its response, Anthropic provided a table showing which "Recipients" were "affiliated with" which of the six previously named public relations firms. "Recipients" were said to include "individuals or distribution lists." For the first time, Attorney Rajani identified "*/dasher/broadastaudience/1260855*" as "affiliated

with" 150Bond LLC (Dkt. No. 315-3 ¶ 11). In other words, so long as that "broadastaudience" received a document, so did "150Bond."

Significantly, while "*/dasher/broadastaudience/1260855*" appears in *nine* privilege-log entries for the "consultants"-involved documents to be decided by the judge, it also appears in *seven* privilege-log entries for "the others" left to Special Master McElhinny. And, only portions of the privilege log have been docketed, so it is possible that still other documents listed somewhere else were shared to "*/dasher/broadastaudience/1260855*." Moreover, we still do not know whether this "broadastaudience" included third parties beyond 150Bond.

This draws into serious question the integrity of Attorney Ranaji's and Attorney Farris's representations about the pedigree of the documents when producing the entire privilege log and defending documents against challenge. By **NOON ON WEDNESDAY, AUGUST 27**:

**1.** Attorney Rajani and Attorney Farris shall each explain under oath why Bond150's receipt of these documents was not revealed sooner — at the outset of the privilege log's construction, upon challenge by plaintiffs, and when making representations to the judge.

**2.** Anthropic shall attest to what "*/dasher/broadastaudience/1260855*" in fact *was* — was it a shared Google folder, was it a folder held by some other cloud service provider, was it something else? And, Anthropic shall attest to all parameters it had available for controlling who could view, comment, edit, own, or otherwise receive or access any document via it (and, among those parameters, Anthropic shall attest as to which ones were used and how and at what times).

**3.** For each document on the privilege log where "*/dasher/broadastaudience/1260855*" appears, Anthropic shall under oath list every individual, group, organization, or class of user (even globally) that by way of "*/dasher/broadastaudience/1260855*" (a) could have accessed or received the document at issue and, as a subset, (b) in fact did access or receive it, as well as (c) the specific permissions each of the individual(s), group(s), organization(s), or class(es) of user(s) (even globally) had (*e.g.*, owner, editor, commenter, viewer, or otherwise). For example, we now know that so long as "*/dasher/broadastaudience/1260855*" was a "Recipient" of a document, so was "150Bond." We do not know who else was. Was

3

"InterestGroup123" or "InvestorABC," directly? And, when "150Bond" received its copy, who specifically could have accessed or received the document (and who, as a subset, did)? If not known, that should be stated.

**4.** The prior question must be answered for each instance the challenged document was created or copied (or otherwise shared) to ensure its answer matches the state of affairs on that occasion. For example, if there are multiple privilege log entries with near-duplicates of a document, each entry must have its own accounting of "*/dasher/broadastaudience/1260855*" as of that occasion. If the list of those receiving or accessing "*/dasher/broadastaudience/1260855*" was not preserved, was subject to change, did change, or so on — even on occasions not yet corresponding to separate entries in the privilege log but that implicate the document's distribution or access — all of this must be specified.

### B. "GOOGLE DOCS."

All but one of the documents before the district judge were Google Docs. For a Google Doc, a creator can grant permissions to others to be owner(s), editor(s), commenter(s), or viewer(s), whether granting permissions to individuals, groups, organizations, or even globally. For instance, a document can be set to be viewed by anyone in the world. Likewise, a folder in which a document is placed can have permissions, which can override those of a document placed within it (or not), depending on the settings. The district court pointed out that all access permissions for the Google Docs at issue had not been specified (Dkt. No. 304 ¶ 6). Anthropic skirted the specifics. One declaration set out that by default Anthropic does not share documents externally (Dkt. No. 315-1 ¶ 7). The same declaration and a second then made obvious that the defaults described were not followed as to *any* of the challenged documents before the judge because these were shared externally and individuals had been granted "permission to *edit* the document or *add comments*" (Dkt. No. 315-3 ¶ 10). And, the second declaration, again Attorney Rajani's, told us nothing about which individuals if any were granted permission to *own* the documents or *view* them — let alone whether (*non-individual*) groups, organizations, classes of users, or all the world had been granted

4

permission to own, edit, comment, or view them. This again raises questions basic to the entire privilege log. By **NOON ON WEDNESDAY, AUGUST 27**:

    **5.** For each document on the privilege log, Anthropic shall identify whether the document at issue was at that time a Google Doc. Then, Anthropic shall under oath list every individual, group, organization, or class of user (even globally) that (a) could have accessed or received the document at issue and, as a subset, (b) in fact did access or receive the document, as well as (c) the permission(s) each person accessing or receiving the document had (*i.e.*, as owner (*e.g.*, to set permissions for others), as editor, as commenter, or as viewer). If all the world could access the document using a link, that should be specified.

    **6.** The prior question must be answered for each instance the challenged document was created or copied (or otherwise shared) to ensure its answer matches the state of affairs on that occasion. Again, for example, if there are a dozen privilege log entries with duplicates or near-duplicates of the document, each entry must have its own accounting as of that occasion. And, if the list of those able to receive or access the document was not recorded, was subject to change, did change, or so on — even on occasions not yet corresponding to separate entries in the privilege log — all of this must be specified. Anthropic also shall submit direct evidence of the access permission settings on each such occasion (such as by screenshot or screenshots).

    **7.** The access permissions for every folder in which the challenged document (or any copy of it) was placed must be disclosed also in the same way, repeating steps 6 and 7 but now as to the folder(s).

    **8.** Both Anthropic and plaintiffs shall bring this problem to the attention of Special Master McElhinny.

\*     \*     \*

The foregoing problems implicate entries across the entire privilege log. Plaintiffs shall have until **NOON ON THURSDAY, AUGUST 28** to decide whether to challenge privilege assertions as to any further document in light of the information produced in response to this order. Also, the foregoing is not meant to suggest that the judge believes Anthropic has given a complete answer to the other questions asked in the earlier order. As just one example, the

1  last request pointed out that a declaration swore six public relations firms received

2  communications, but did not swear that no one else did. That point has gone entirely

3  unanswered.

4  **IT IS SO ORDERED.**

6  Dated: August 22, 2025.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE