Lieff
Cabraser
Heimann &
Bernstein
Attorneys at Law

SUSMAN GODFREY

**VIA ECF**
Special Master Harold J. McElhinny
1664 Ninth Ave.
San Francisco, CA 94122

          RE:    *Bartz et al. v. Anthropic PBC*, Case Number 3:24-CV-05417-WHA
                 (N.D. Cal.) Plaintiffs' Letter Motion Regarding Anthropic's Missing
                 Slack Threads and Improper Document Clawbacks

Dear Special Master McElhinny:

      Anthropic has produced an enormous volume of documents at very tail end of the discovery period. Since the Court granted class certification on July 17, Anthropic overall produced 54,782 documents and 1,640,241 pages of material, which accounts for more than ***75% of the total pages*** it has produced in the case. To make matters worse, Anthropic has often timed its document productions on the eve of key depositions, making it difficult for Plaintiffs to review the documents in time to use them at depositions. And where Plaintiffs have been able to review documents in time, Anthropic has often ***clawed back*** documents on the record, invoking dubious privilege claims, ultimately depriving Plaintiffs of any opportunity to question a witness about the documents.[1]

      This one-two punch of late productions and aggressive claw-backs has severely undercut Plaintiffs ability to get full and fair discovery in a timely manner. The Special Master's intervention is necessary to ensure that Anthropic complies with its obligations before the discovery cutoff.

      Plaintiffs request the Special Master order the following relief:

1) Anthropic should submit for *in camera* review, by 5:00PM PST August 25, 2025, documents that Anthropic clawed back during depositions, as described in sections A and B below.
2) Production of responsive documents related to parts C and D below, whose existence Plaintiffs discovered from reviewing recent productions; and

---

[1] One example: Anthropic produced over 10,000 documents (and more than 150,000 pages) the afternoon before its principal Rule 30(b)(6) witness, Ben Mann, was deposed. Plaintiffs reviewed these documents as quickly as they could, and found several that were highly relevant to the topics on which Mr. Mann was designated. But when Plaintiffs introduced one of those late-produced documents at Mann's deposition, Anthropic's counsel clawed it back, cutting off all questioning of Mr. Mann on the document.

1

    3) An order granting at least 1 hour of Rule 30(b)(6) time with Ben Mann to relieve the prejudice caused by Anthropic's ill-timed production and clawbacks.

**A.** █████████████████████████████████████████████████

Anthropic produced this document the afternoon before the 30(b)(6) deposition of Ben Mann on August 14, then clawed it back when Plaintiffs asked Mr. Mann about it at his deposition. This document is not privileged, should be produced, and Plaintiffs should be given the opportunity to ask Anthropic's Rule 30(b)(6) witness—or its co-founder Jared Kaplan—about this document on the record.

Anthropic has not re-produced the document, or documented it in its privilege log. ██████████████████████████████████████████████████████████████████████████████████████████████████████████ laintiffs request in camera review under FRCP 26(b)(5)(B).

**B.** █████████████████████████████████████████████████

This is a document that Anthropic produced fifteen times with inconsistent redactions before the deposition of Nick Joseph, who is not a lawyer. ███████████████████████████████████████████████████████ It was not clear to Plaintiffs which version was correct because, e.g., Anthropic has produced new versions of thousands of documents, including downgraded privilege documents. During Mr. Joseph's deposition, Anthropic clawed back all versions and re-produced the document with significantly more redactions than any of its previous versions. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████laintiffs request *in camera* review to determine whether the primary purpose of these communications is to render legal advice.

**C.** ████████████████████████████

Anthropic initially produced five copies of a spreadsheet to Plaintiffs over the course of multiple productions in late July 2025 ███████████████████████████████████████████████████████████████████████████████████████████████████ laintiffs immediately undertook review of the tens of thousands of █████████████████████████

███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████



Plaintiffs reiterated that Anthropic has an obligation to search for and produce all responsive documents, regardless of whether or not such documents contain the agree-upon search terms and/or reside in the agreed-upon custodians' files. Rather than respond, Anthropic clawed back all five versions of the spreadsheet, claiming attorney-client privilege

his raises troubling concerns about deletion of key documents.  Plaintiffs request an order that Anthropic produce the responsive threads that were retained, including those listed in Exhibit A, and explain why and when the others were deleted.

**D.**

Plaintiffs request that Anthropic produce the messages from this channel, identify all participants in this channel; explain why this channel—which is obviously relevant given its title—has not been produced before, and produce all other channels that are plainly relevant based on their title

Respectfully Submitted,

| LIEFF CABRASER HEIMANN & BERNSTEIN, LLP | SUSMAN GODFREY LLP |
|---|---|
| */s/ Rachel Geman* <br> Rachel Geman | */s/ Samir Doshi* <br> Samir Doshi |