# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, AND MJ + KJ, INC., individually and on behalf of others similarly situated, | Case No. 3:24-cv-05417-WHA |
| Plaintiffs, | Hon. William Alsup |
| *v.* | **CLASS ACTION SETTLEMENT AGREEMENT** |
| ANTHROPIC PBC, | |
| Defendants. | |

This Class Action Settlement Agreement ("Settlement Agreement") is entered into by and among Plaintiffs Andrea Bartz, Inc., Charles Graeber, and MJ + KJ, Inc., ("Plaintiffs"), for themselves individually and on behalf of the Class, and Anthropic PBC ("Defendant"). (Plaintiffs and Defendant are referred to individually as "Party" and collectively referred to as the "Parties.") This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims upon and subject to the terms and conditions hereof, and is subject to the approval of the Court.

## 1. DEFINITIONS

As used herein, in addition to any definitions set forth elsewhere in this Settlement Agreement, the following terms shall have the meanings set forth below:

1.1 **"Action"** means the case captioned *Bartz et al. v. Anthropic PBC*, No. 3:24-cv-05417-WHA (N.D. Cal.).

1.2 **"Agreement"** or **"Settlement Agreement"** or **"Settlement"** means this Class Action Settlement Agreement.

1.3    "**Approved Claim**" means a Claim Form submitted by a Class Member that is (a) timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement, (b) fully completed and physically or electronically signed by the Class Member, and (c) satisfies the conditions of eligibility for a Settlement Payment as set forth in this Agreement.

1.4    "**Authors Coordination Counsel**" means the law firm of Cowan DeBaets Abrahams & Sheppard LLP and Fairmark Partners LLP.

1.5    **"Claim Form"** means the document substantially in the form as approved by the Court. To be eligible for a Settlement Payment, Class Members must submit a Claim Form which will be available electronically and in paper format. The Claim Form will require a claiming Class Member to provide the following information for each work: (i) full name or business name, (ii) current mailing address, (iii) the title(s) of copyrighted book(s), (iv) an International Standard Book Numbers (ISBN) or Amazon Standard Identification Numbers (ASIN) for the book(s) listed, and (v) the United States Copyright Office Registration number for the works. Subject to the provisions governing the Working Group (described below in Section 6.1(c), below), the Claim Form will be presented to the Court for approval on or before September 30, 2025. The Settlement Administrator may require additional information that is reasonably necessary to process claims and deter fraudulent submissions. A Class Member who purports to be the legal or beneficial owner of multiple works will be able to submit a single Claim Form listing all eligible works. The electronic Claim Form will provide Class Members with the option of having any cash portion of their Settlement Payment(s) transmitted to them electronically, through Automated Clearing House ("ACH") direct deposit, Zelle, or via check.

1.6    **"Claims Deadline"** means the date by which all Claim Forms must be postmarked or submitted electronically to be considered timely. The deadline shall be set as a date no later than one hundred twenty (120) days following the Notice Date, subject to Court approval. The Claims

1    Deadline shall be clearly set forth in the order preliminarily approving the Settlement, as well as in

2    the Notice and the Claim Form.

3        1.7    "**Class**" means the "LibGen & PiLiMi Pirated Books Class" certified by the Court of

4    legal and beneficial owners of works included on the "Works List": All beneficial or legal

5    copyright owners of the exclusive right to reproduce copies of any book in the versions of LibGen

6    or PiLiMi downloaded by Anthropic as contained on the Works List. "Book" refers to any work

7    possessing an ISBN or ASIN which was registered with the United States Copyright Office within

8    five years of the work's first publication and which was registered with the United States Copyright

9    Office before being downloaded by Anthropic (the Download Date as defined in Section 1.14), or

10   within three months of publication. Excluded are the directors, officers and employees of

11   Anthropic, personnel of federal agencies, and district court personnel. For avoidance of doubt, only

12   legal and beneficial owners of works included on the Works List are in the Class.

13       1.8    "**Class Counsel**" means the law firms Susman Godfrey LLP and Lieff Cabraser

14   Heimann & Bernstein, LLP who have been appointed as Co-Lead Class Counsel by the Court.

15       1.9    "**Class Member**" means a person who falls within the definition of the Class and

16   who (a) does not submit a valid request for exclusion from the Class or (b) has submitted a valid

17   request to be re-included in the Settlement.

18       1.10   "**Class Representatives**" means named plaintiffs Andrea Bartz, Inc., Charles

19   Graeber, and MJ + KJ, Inc. who have been appointed as Class representatives by the Court.

20       1.11   "**Court**" means the United States District Court for the Northern District of

21   California, San Francisco Division, the Honorable William Alsup presiding, or any judge who shall

22   succeed him as the Judge assigned to the Action.

23       1.12   "**Defendant**" or "**Anthropic**" means Anthropic PBC, a Delaware corporation.

24

25

1.13 "**Defendant's Counsel**" or "**Anthropic's Counsel**" means the law firms Arnold & Porter Kaye Scholer LLP, Cooley LLP, Latham & Watkins LLP, Morrison & Foerster LLP, and all other counsel who have entered an appearance for Anthropic in this Action.

1.14 "**Download Date**" means August 10, 2022 for purposes of this Agreement.

1.15 "**Effective Date**" means one business day following the later of: (a) the date upon which the time expires for filing or noticing any appeal of the Final Judgment; (b) if there is an appeal or appeals (other than ones solely with respect to the Fee Award and/or service awards), the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand); or (c) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari with respect to the Final Judgment.

1.16 "**Escrow Account**" means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms acceptable to Class Counsel and Defendant at a depository institution insured by the Federal Deposit Insurance Corporation that will constitute a court-approved Qualified Settlement Fund (QSF) for federal tax purposes pursuant to Treas. Reg. § 1.468B-1. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations and shall be responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements with respect to the QSF. All taxes on income or interest generated by the Settlement Fund shall be paid out of the Settlement Fund. All such funds in the Escrow Account shall be invested in the following types of accounts and/or instruments and no

other: (a) demand deposit accounts; (b) time deposit accounts and certificates of deposit; (c) United States Treasury bills; or (d) other instruments backed by the full faith and credit of the United States Government. The costs of establishing and maintaining the Escrow Account shall be paid from the Settlement Fund.

1.17    "**Fee Award**" means the amount of attorneys' fees and reimbursement of costs and expenses to Class Counsel approved by the Court to be paid out of the Settlement Fund.

1.18    "**Final Approval**" means the Court's order finally approving the Settlement Agreement and approving the form and manner of the Notice.

1.19    "**Final Approval Hearing**" means the hearing before the Court where the Plaintiffs will request that the Final Judgment be entered by the Court finally approving the Settlement as fair, reasonable, and adequate, and determining the Fee Award and any service award to the Class Representatives.

1.20    "**Final Judgment**" means the final judgment to be entered by the Court confirming approval of the Class for purposes of Settlement, approving the settlement of the Action in accordance with this Settlement Agreement after the Final Approval Hearing, and dismissing the Action with prejudice.

1.21    "**Liquidity Event**" means the consummation of (a) Liquidation Transaction (as defined in Anthropic's certificate of incorporation as amended from time to time) or (b) an initial public offering of Anthropic common stock pursuant to a registration statement under the Securities Act of 1933, as amended, that results in gross proceeds to Anthropic of at least ten billion dollars ($10,000,000,000).

1.22    "**Notice**" means the notice of this proposed Settlement and Final Approval Hearing, which, subject to Court approval, is to be disseminated to the Class substantially in the manner set forth in this Settlement Agreement and in the Motion for Preliminary Approval and any subsequent

modifications that may occur after the process described in Section 6.1(c) and which fulfills the requirements of Due Process and Federal Rule of Civil Procedure 23, and for which the exhibits attached to the Motion for Preliminary Approval will serve as models, subject to modification by the Working Group process as outlined in Section 6.1(c) and subject to Court approval.

1.23    "**Notice Date**" means the date by which the Notice is disseminated to the Class, which shall be a date no later than sixty (60) days after entry of Preliminary Approval or such other date as approved by the Court.

1.24    "**Objection/Exclusion Deadline**" means the date by which a written objection to the Settlement Agreement must be filed with the Court or a request for exclusion submitted by a person otherwise within the Class must be postmarked or received by the Settlement Administrator, which shall be designated as a date sixty (60) days after the Notice Date, or other date ordered by the Court. The Objection/Exclusion Deadline will be set forth in the Notice and on the Settlement Website. Prior to the Objection/Exclusion Deadline, Class Counsel will file their Motion for Fees, Costs, and Service Awards and post these documents on the Settlement website.

1.25    "**Preliminary Approval**" means the Court's Order preliminarily approving the Settlement Agreement and approving the form and manner of the Notice.

1.26    **"Publishers' Coordination Counsel"** means the law firms Edelson PC and Oppenheim + Zebrak, LLP.

1.27    **"Qualified Financing"** means the issuance and sale by Anthropic of preferred stock for bona fide capital raising purposes in a single transaction or series of related transactions yielding gross proceeds to Anthropic of at least five billion dollars ($5,000,000,000.00). For the avoidance of doubt, Anthropic's Series F financing shall not constitute a Qualified Financing for purposes of this Agreement.

1.28 **"Re-Inclusion Deadline"** means the date by which a written request by a person or entity that has previously submitted a request for exclusion must submit a new request to be re-included in the Settlement, which shall be designated as thirty (30) days after the Objection/Exclusion Deadline, or other date ordered by the Court.

1.29 "**Released Claims**" means any and all claims or causes of action for any relief of any kind including, but not limited to, actual damages, statutory damages, liquidated damages, penalties, injunctive relief, declaratory relief, attorneys' fees and costs, expenses and interest, liabilities, demands, or lawsuits against the Released Parties arising from Defendant's alleged past torrenting (including uploading and seeding), scanning, retention, and use of works, including training, research, development, and production of AI models and associated products and services of works on the "Works List" as of the date of preliminary approval of the Settlement. For purposes of clarity, no claims based on the output of AI models are released. For the avoidance of doubt, Released Claims extend only to past claims on the Works List. There will be no release of any claims for future reproduction, distribution and/or creation of derivative works of the works on the Works List. The release does not constitute, in any respect, a license to torrent, scan, or train AI models on any copyrighted works, or to create infringing outputs from AI models. Released Claims do not extend to any activity or conduct that occurs or occurred after August 25, 2025.

1.30 "**Released Parties**" means Anthropic PBC and its subsidiaries, and each of their principals, employees, and representatives. Nothing in this Settlement Agreement releases or has released any party for infringement directly committed by any party other than the Released Parties.

1.31 "**Releasing Parties**" means Plaintiffs, the Class Members, and their respective present or past heirs, executors, estates, administrators, assigns, and agents.

1.32 "**Settlement Administration Expenses**" means the expenses reasonably incurred by the Settlement Administrator in or relating to administering the Settlement including without

limitation expenses incurred in connection with providing Notice, creating and maintaining the Settlement Website, mailing checks or electronic processing of Settlement Payments, paying the fees of the escrow agent, paying the fees of any Special Masters incurred in connection with the resolution of any disputes over copyright ownership as provided for in Section 5.1(h) hereto, and tax obligations, with all such expenses to be paid from the Settlement Fund.

1.33    "**Settlement Administrator**" means JND Legal Administration, subject to approval of the Court, which will provide the Notice as set forth herein, create and maintain the Settlement Website, send Settlement Payments to Class Members, be responsible for any tax reporting, and perform such other settlement administration matters set forth herein, contemplated by the Settlement, and/or ordered by the Court.

1.34    "**Settlement Fund**" means the non-reversionary settlement fund that shall be established by the Defendant, subject to potential adjustments in Section 2.1, of one billion five hundred million U.S. Dollars ($1,500,000,000.00), plus all interest earned thereon, plus additional payments by Anthropic of $3,000/book (to be placed in the Escrow Account) for each Class work above 500,000 added to the Works List by Anthropic. The Settlement Fund shall be used to pay (1) all Settlement Payments to Class Members with Approved Claims, (2) Settlement Administration Expenses, (3) any service award to each Class Representative approved by the Court, (4) any Fee Award to be decided by the Court, (5) for the services of a Special Master as contemplated in Section 5.1(h), and (6) for the services of industry expert members of the working group, including the Hon. Layn Phillips, to the extent any are required. There will be no reversion of the Settlement Fund to Anthropic, any insurer, or Released Party. Any unclaimed funds will be distributed to Class Members on a pro rata basis consistent with prior distributions, except if the costs of distributing any additional payments exceed the amount to be distributed. If an additional distribution or distributions are not feasible, such funds shall be distributed to a *cy pres* recipient suggested by

Plaintiffs and agreed upon by Anthropic (whose consent shall not be unreasonably withheld) and approved by the Court on application from Class Counsel. To the fullest extent possible, the intent is to eliminate any *cy pres* award so that the entire amount is distributed to Class Members. If the costs of mail notice make a final distribution prohibitive, the Settlement Administrator may make the payments to those able to receive electronic transfers so that class members are able to receive any remainder.

1.35    "**Settlement Payment**" means payment from the Settlement Fund to each Class Member who timely submits a valid Claim Form. Such payments will be distributed on an equal-per-work basis, after deduction of any fees, expenses, or service awards approved by the Court.

1.36    "**Settlement Website**" means the website at www.AnthropicCopyrightSettlement.com to be created, launched, and maintained by the Settlement Administrator, and which allows for the electronic submission of Cash Claim Forms and provides access to relevant settlement administration documents, including the Notice, relevant case documents, and other relevant material.

1.37    "**Works List**" means the list of Books (as defined in Section 1.7) and includes for each work: the title, author(s), publisher, an ISBN and/or ASIN, and United States copyright registration number.

## 2.  SETTLEMENT RELIEF

2.1    **Settlement Payments to Class Members.**

a.    **Settlement Fund to Be Paid in Installments.** Subject to Section 2.2(b) below, Defendant shall fund the Settlement Fund in four (4) installments as follows:

            i.    within five (5) business days of Preliminary Approval, Defendant shall pay three hundred million dollars ($300,000,000.00);

           ii.    within five (5) business days of entry of Final Approval, Defendant shall pay

an additional three hundred million dollars ($300,000,000.00);

iii. Defendant shall pay an additional four hundred fifty million dollars ($450,000,000.00) ("Scheduled Payment 1") no later than twelve months after the entry of Preliminary Approval (the "Scheduled Payment 1 Date"), provided that, in the event a Qualified Financing or Liquidity Event occurs prior to the Scheduled Payment 1 Date, the Scheduled Payment 1 shall be payable within thirty (30) days of the later of (i) the final closing of such Qualified Financing or Liquidity Event-and (ii) the date of Final Approval; and

iv. Defendant shall pay an additional four hundred fifty million dollars ($450,000,000.00) ("Scheduled Payment 2") no later than twenty-four (24) months after the entry of Preliminary Approval (the "Schedule Payment 2 Date"), provided that, in the event a Qualified Financing or Liquidity Event occurs subsequent to the payment of Scheduled Payment 1 and prior to the Scheduled Payment 2 Date, Scheduled Payment 2 shall be payable within thirty (30) days of the final closing of such Qualified Financing or Liquidity Event.

v. Each of Scheduled Payment 1 and Scheduled Payment 2 shall accrue interest at the three-month Treasury bill rate, compounded monthly, starting from the date of Preliminary Approval through the date that the payment is made to the Settlement Fund. The applicable three-month Treasury bill rate for a month shall be based on the three-month Treasury bill rate (Daily Treasury Par Yield Curve Rate) on the last business day of the prior month (or, for the first month, such rate on the last business day prior to the Preliminary

Approval date).

vi. Other than the Settlement Fund and the payments listed above, Anthropic will have no financial obligation to Class Members, Class Counsel, any other attorney representing any Class Member or the Settlement Administrator with respect to the Released Claims. The Settlement Fund represents the total extent of Anthropic's monetary obligation under this Agreement.

vii. Anthropic shall make the payments to the Settlement Fund set forth in Section 2.1(a)(i)-(iv) on the schedule set forth above, regardless of the pendency of any appeal from the Final Approval order.

b. **Adjustments of the Settlement Fund.** If, as a result of additions to the Works List by Anthropic, the total number of unique works exceeds five hundred thousand (500,000), Defendant shall increase the total amount of the Settlement Fund by three thousand dollars ($3,000) for each additional work, with any additional payments to be made proportionally on the same schedule identified in Section 2.1(a) above.

c. **Method of Allocation.** To receive a Settlement Payment each Class Member entitled to such a payment must file a Claim Form by the Claims Deadline. Each Class Member with an Approved Claim shall be entitled to a Settlement Payment allocated in accordance with the forthcoming Plan of Allocation.

d. **Disbursement of Cash Payments from Settlement Fund.** Within twenty-eight (28) days of the Effective Date, or such other subsequent date or dates as the Court may set or Class Counsel shall determine, the Settlement Administrator shall send Settlement Payments from the Settlement Fund to Class Members.

e. **Method of Settlement Payments to Class Members.** Class Members will have the option of having their Settlement Payment transmitted to them through, Zelle, ACH direct deposit,

or check via mail. Class Members who do not choose a payment method on the Claim Form will be sent a check via First Class mail as updated through the National Change of Address database if necessary, by the Settlement Administrator.

f. **Delinquent or Missed Installment Payments**: If Defendant fails to timely make any installment or scheduled payment to the Settlement Fund, Defendant shall have thirty (30) days from the date that the installment payment was due to make the delinquent payment (the "Grace Period"). Defendant agrees that if any Grace Period expires without Defendant having paid the amount due, Defendant shall pay the amount due and payable with interest earned daily thereon at the three-month Treasury bill rate (as of the due date of the delinquent installment payment) plus an additional nine percent (9%) per annum, compounded weekly. If Defendant fails to pay any amount due and payable, plus interest earned thereon, within ninety (90) days of any due date, all of Defendant's payment obligations under this Settlement Agreement, to the extent not yet paid by Defendant, shall be due and payable to the Settlement Fund immediately.

g. **Unclaimed Settlement Payments.** Each cash payment issued to a Class Member by check will state on the face of the check that it will become null and void unless cashed within ninety (90) calendar days after the date of issuance. In the event that an electronic deposit to a Class Member is unable to be processed, the Settlement Administrator shall attempt to contact the Class Member within thirty (30) calendar days to correct the problem. To the extent that a check issued to a Class Member is not cashed within ninety (90) days after the date of issuance or an electronic deposit is unable to be processed within ninety (90) days of the first attempt, such funds will remain in the Settlement Fund to be re-distributed to Class Members who cashed their checks or successfully received their electronic payments. Any such distribution shall be apportioned on a pro rata basis consistent with prior distributions to participating Class Members in an additional distribution, if practicable. If an additional distribution or distributions is not feasible, such funds

shall be distributed to a *cy pres* recipient suggested by Plaintiffs and agreed upon by Anthropic (whose consent shall not be unreasonably withheld) and approved by the Court on application from Class Counsel. To the fullest extent possible, the intent is to eliminate any *cy pres* award so that the entire amount is distributed to class members. If the costs of mail notice make a final distribution prohibitive, the Settlement Administrator may make the payments to those able to receive electronic transfers so that Class Members are able to receive any remainder. No amount paid into the Settlement shall revert to Defendant or any other Released Party unless the Settlement is terminated in accordance with sections 7.1 or 7.2. All costs associated with the disposition of residual funds– whether through additional distributions to Class Members or to a *cy pres* recipient–shall be borne solely by the Settlement Fund.

h.       **Post Distribution Accounting.** Within twenty one (21) calendar days after the distributions referenced in this Section 2.1, the Parties will file with the Court a Post-Distribution Accounting as contemplated in the Northern District of California Procedural Guidance for Class Action Settlements.

2.2      **Dataset Destruction Obligations.** Anthropic will destroy all the original files of works torrented/downloaded from Library Genesis or Pirate Library Mirror, and any copies that originate from the torrented copies. For the avoidance of doubt, Anthropic will not delete any scanned copies of the works, or any copies that originate from the scanned copies. Anthropic will perform this destruction within thirty (30) days of final judgment and serve written certification of this deletion to Class Counsel.  Notwithstanding the foregoing destruction obligation, nothing in this Section shall require action inconsistent with Anthropic's existing legal preservation obligation or obligation pursuant to court order under either U.S. or international law.

## 3.  RELEASE

3.1      **The Release.** Upon the Effective Date, and in consideration of the settlement

relief described herein, the Releasing Parties, and each of them, shall be deemed to have released, and by operation of the Final Judgment shall have, fully, finally, and forever, released, relinquished and discharged all Released Claims against each and every one of the Released Parties, except as otherwise provided herein. Anthropic represents that neither the LibGen or PiLiMi datasets, nor any portions of those datasets, were in the training corpus of any of its commercially released large language models.

3.2.    **Waiver of Section 1542.** The foregoing Release is expressly intended to cover and include all claims, whether known or unknown, suspected or unsuspected, that can or may ever be asserted, or could have been asserted, with respect to the Released Claims. Although the Release is not intended to be a general release, to the extent it could be construed as narrowing the scope of the Release, Releasing Parties expressly waive any rights or benefits available to them under the provisions of Section 1542 of the California Civil Code or any similar law or principle under the laws of any other jurisdiction. Section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## 4. NOTICE TO THE CLASS

4.1    **Works List.** Class Counsel shared a draft Works List with Anthropic on September 1, 2025 with Anthropic. Anthropic will, by September 15, 2025, share any proposed revisions to the draft Works List. For the following two weeks, until September 30, 2025, the Parties will meet and confer in good faith to address any revisions (including additional revisions from Class Counsel and Anthropic) to the Works List. The Parties will submit to the Court a joint Works List on or before October 10, 2025. Any disputes over the composition of the Works List will be adjudicated by the

Court and raised on or before October 10, 2025. The final Works List shall promptly be provided to the Settlement Administrator. The Settlement Administrator will not publish the Works List, but shall maintain a searchable database on the Settlement Website that allows potential Class Members to search by author, title, publisher, ISBN number, U.S. Copyright Office Registration Number, or ASIN number to determine whether works in which they may have copyright interests are included in the Settlement. To the extent the Settlement is terminated for any reason, the Parties agree that all exchanged versions of the Works List shall be considered confidential settlement communications protected by FRE 408 and no Party may use those Works Lists for purposes other than in connection with the Settlement, including as any admission by any Party of any kind.

4.2    **Class List.** Based on the Works List, the Settlement Administrator with the assistance of the Parties, Class Counsel, and Publishers' Coordinating Counsel shall compile the following data for all persons in the Class (to the extent such information is available through reasonable efforts) (the "Class List") as soon as practicable, but by no later than twenty-eight (28) days after receipt of the Works List: (1) all available contact information (including name, last known e-mail address, and last known mailing addresses) of each person or entity identified on the Works List as having copyright interests in the Works List; (2) the specific works from the Works List in which each Class Member has a copyright interest; and (3) the nature of each Class Member's copyright interest (e.g., legal or beneficial owner). Anthropic's obligation shall be limited to providing any information in its possession, custody, or control. The Settlement Administrator shall keep the Class List and all personal information obtained therefrom, including but not limited to the identity, mailing addresses, and e-mail addresses of all persons, strictly confidential. The Class List may not be used by the Settlement Administrator for any purpose other than settlement administration, including advising specific individual Class Members of their rights under the Settlement, reviewing Claim Forms, calculating and processing Settlement Payments, and otherwise

effectuating the terms of the Settlement Agreement or the duties arising thereunder, including the provision of Notice of the Settlement. The Settlement Administrator may share such information from the Class List with Class Counsel as may be necessary for Class Counsel to respond to Class Member inquiries or monitor implementation of the Settlement.

4.3     **Update Addresses.** Prior to mailing any Notice or Settlement Payment, the Settlement Administrator will update the addresses of Class Members on the Class List using the National Change of Address database and other available resources deemed suitable by the Settlement Administrator. The Settlement Administrator shall take all reasonable steps to obtain the correct address of any Class Members for whom Notice is returned by the U.S. Postal Service as undeliverable and shall attempt re-mailings.

4.4     **Direct Notice.** No later than the Notice Date, the Settlement Administrator shall send Notice via e-mail, substantially in the form of that attached to the Motion for Preliminary Approval, to all potential Class Members for whom an email address is available, and shall send the Postcard Notice via First Class U.S. Mail, substantially in the form of that attached to the Motion for Preliminary Approval, to all potential Class Members for whom a physical mailing address is available. Notices sent pursuant to this Section to recipients located in Canada shall be sent in English and French. The Settlement Administrator shall also maintain a toll-free telephone line, a monitored email inbox, and a dedicated P.O. Box to answer Class Member inquiries and receive correspondence.

4.5     **Internet Notice.** Within seven (7) days after the entry of Preliminary Approval, the Settlement Administrator will create, develop, host, administer, and maintain the Settlement Website (www.AnthropicCopyrightSettlement.com), containing the Notice substantially in the form of that attached to the Motion for Preliminary Approval, other important case documents, the searchable Works List database allowing Class Members to search for works by author, title,

publisher, ISBN, ASIN, or U.S. Copyright Office Registration Number, and year of first publication, and the ability to file Claim Forms online. The Settlement Website will also provide case updates and further information about the Settlement and the Action. The Settlement Website, as well as the Settlement Agreement presented therein, shall be published in English and French.

4.6    **Trade Media Notice.** The Settlement Administrator shall place notice in appropriate publications on or before the Notice Date, including but not limited to: *Publishers Weekly*, and *The Atlantic, The Toronto Star, The Globe and Mail, and La Presse*. The trade media notice shall be substantially in the form of that attached to the Motion for Preliminary Approval, and the print advertisement to be placed in trade media shall be substantially in the form of that attached to the Motion for Preliminary Approval.

4.7    **GDN Notice.** The Settlement Administrator will arrange for an extensive online notice plan over a four-week period through the Google Display Network. All impressions will be targeted to likely authors and/or publishers. The GDN activity will target Adults twenty-five (25) years of age or older who (1) are in-market for Book Promotion Services and Information, Literary Agents, Book Publishing Services, Book Publishers, and Publishers Accepting Submissions; (2) have browsed websites such as selfpublishing.com, janefriedman.com, scribophile.com, thebookseller.com, publishersweekly.com, publishingperspectives.com, chronicle.com, writersdigest.com, thebookdesigner.com, insidehighered.com, edupub.org, and reedsy.com; and/or (3) have searched Google for relevant terms including AI training data, manuscript, amazon kdp, Claude AI, books used to train AI, Reedsy, critique circle, ASIN, copyright law, indie author, AI copyright, Scribophile, author royalties, book publishing, AI ethics, publishing rights, pirated books, copyright registration, copyright infringement, author lawsuit, LibGen, and how to publish a book. These display advertisements shall be substantially in the form of that attached to the Motion for Preliminary Approval.

4.8 **Facebook and Instagram Notice.** The Settlement Administrator will arrange for online notice activity on Facebook and Instagram targeting adults twenty-five (25) years of age or older with job titles including Journalist/Writer, Online Publisher, and Publisher, and/or who have additional interests in book publishing, bookselling, electronic publishing, Nobel prize in literature, publishing, and self-publishing. These display advertisements shall be substantially in the form of that attached to the Motion for Preliminary Approval.

4.9 **Reddit Notice.** The Settlement Administrator will arrange for online notice activity on Reddit targeting Adults eighteen (18) years of age or older who utilize keywords such as amazon kdp, ASIN, author lawsuit, author royalties, AI copyright, AI ethics, AI training data, book publishing, books used to train AI, Claude AI, copyright infringement, copyright law, copyright registration, critique circle, indie author, ISBN, how to publish a book, LibGen, manuscript, pirated books, publishing rights, Reedsy, and Scribophile; and/or who participate in communities including r/selfpublishing, r/publishing, r/selfpublish, r/writers, and r/writing. These display advertisements shall be substantially in the form of that attached to the Motion for Preliminary Approval.

4.10 **Press Release Notice.** The Settlement Administrator will distribute a press release at the start of the Notice campaign to major media outlets in the United States, England, and Canada, including those covering books, publishing, higher education, and technology. The press release to be distributed at the start of the Notice campaign shall be substantially in the form of that attached to the Motion for Preliminary Approval. Press releases sent to Canadian outlets will be sent in both English and French.

4.11 **CAFA Notice.** Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, the Settlement Administrator shall cause to be served upon the Attorneys General of each U.S. State in which Class Members reside, the Attorney General of the

1 United States, and other required government officials, notice of the proposed settlement as required

2 by law.

3      4.12    **Notice Contents.** The Notice shall advise the Class of their rights under the

4 Settlement Agreement, including the right to be excluded from or object to the Settlement

5 Agreement or its terms. The Notice shall inform Class Members that the Class includes all persons

6 or entities that are legal or beneficial copyright owners of the works identified in the Works List.

7 The Notice shall specify that any objection to this Settlement Agreement, and any papers submitted

8 in support of said objection, shall be considered by the Court at the Final Approval Hearing, only

9 if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice,

10 the person making an objection shall file notice of his, her, or their intention to do so and at the same

11 time (a) file copies of such papers they propose to submit at the Final Approval Hearing clearly

12 identifying the case name and number (*Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA (N.D.

13 Cal.)); (b) submit such papers to the Court either by filing them electronically or in person at any

14 location of the United States District Court for the Northern District of California or by mailing

15 them to the Class Action Clerk, United States District Court for the Northern District of California,

16 San Francisco Division; and (c) file such papers on or before the Objection/Exclusion Deadline.

17      4.13    **Right to Object or Comment.** Any Class Member can object or comment upon the

18 Settlement. Any Class Member who intends to object to this Settlement Agreement must present

19 the objection in writing, which must be personally signed by the objector and must include: (a) the

20 Class Member's full name and current address; (b) identification of the specific work(s) in the

21 Works List in which the objector claims a copyright interest, including title, author, U.S. Copyright

22 Office Registration Number, and ISBN/ASIN; (c) a statement describing the objector's copyright

23 interest in the identified work(s); (d) the specific grounds for the objection; (e) all documents or

24 writings that the Class Member desires the Court to consider; (f) the name and contact information

25

of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection; and (g) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel, who must file an appearance or seek pro hac vice admission in accordance with the Local Rules). All written objections must be filed with or delivered to the Court and be filed or delivered to the Court no later than the Objection/Exclusion Deadline. To the extent that the objection attaches confidential documents, such as author agreements, acquisition agreements or assignments, those documents may be filed under seal, as highly confidential pursuant to the Protective Order in the case. Any Class Member who fails to timely file a written objection with the Court and any notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this Section and as detailed in the Notice shall not be permitted to object to this Settlement Agreement at the Final Approval Hearing, and shall be foreclosed from seeking any review of this Settlement Agreement or Final Judgment by appeal or other means and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action or any other action or proceeding.

4.14    **Right to Request Exclusion.** Any person or entity in Class can exclude a work or multiple works from inclusion in the Settlement by submitting a request for exclusion from the Settlement on or before the Objection/Exclusion Deadline. To be valid, any request for exclusion must (a) be in writing; (b) identify the case name *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA (N.D. Cal.); (c) state the full name and current address of the person seeking exclusion; (d) identify the specific work(s) from the Works List from which they seek exclusion, including title, author, U.S. Copyright Office Registration Number, and ISBN/ASIN; (e) describe the person's copyright interest in the identified work(s); (f) be signed by the person(s) seeking exclusion or their authorized representative; and (g) be postmarked or received by the Settlement Administrator on or before the

Objection/Exclusion Deadline. Each request for exclusion must also contain a statement to the effect that "I hereby request to be excluded from the proposed Class in *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA (N.D. Cal.)." A request for exclusion that does not include all of the foregoing information, that is sent to an address or e-mail address other than that designated in the Notice, or that is not postmarked or delivered to the Settlement Administrator within the time specified, shall be invalid and the persons serving such a request shall be deemed to remain Class Members and shall be bound as Class Members by this Settlement Agreement, if approved. Any person who elects to request exclusion from the Class shall not (a) be bound by any orders or Final Judgment entered in the Action; (b) receive a Settlement Payment under this Settlement Agreement; (c) gain any rights by virtue of this Settlement Agreement; or (d) be entitled to object to or appeal from  any aspect of this Settlement Agreement or Final Judgment. No person may request to be excluded from the Class through "mass" or "class" opt-outs, meaning, *inter alia*, that each individual who seeks to opt out must mail an individual, separately signed request to the Settlement Administrator that complies with all requirements of this paragraph. Within seven (7) days after the Objection/Exclusion deadline has passed, for each valid request for exclusion that the Settlement Administrator has received, the Settlement Administrator shall take reasonable steps to contact all other parties who submitted a valid claim for the Work requested to be excluded, informing them that another class member has requested exclusion of the Work.

4.15    **Right to Request Re-Inclusion.** Any person or entity in the Class who submitted a valid request for exclusion, subject to the terms of this Agreement, will have 30 days from the Objection/Exclusion Deadline to submit a request for re-inclusion.  To be valid, any request for re-inclusion must: (a) be in writing; (b) identify the case name *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA (N.D. Cal.); (c) state the full name and current address of the person seeking re-inclusion; (d) identify the specific work(s) from the Works List from which they seek re-inclusion,

including title, author, and ISBN/ASIN; (e) describe the person's copyright interest in the identified work(s); (f) identify whether the person seeking re-inclusion is aware of any other copyright interests in the identified work(s); (g) be signed by the person(s) seeking re-inclusion or their authorized representative; and (h) be postmarked or received by the Settlement Administrator on or before the Re-Inclusion Deadline. Each request for re-inclusion must also contain a statement to the effect that "I hereby request to be included in the proposed Class in *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA (N.D. Cal.). This request supersedes my previous request for exclusion." The submission of a valid request for re-inclusion shall constitute the final, binding decision of the requesting Class Member as it pertains to the requested work(s). For each valid request for re-inclusion that the Settlement Administrator receives, the Settlement Administrator shall take reasonable steps within seven (7) days of receipt to contact other parties that submitted valid claims for the re-included work(s) and inform them that another class member has requested re-inclusion of the work(s). Any person or entity who elects to request re-inclusion shall be bound as Class Members by this Settlement Agreement, if approved.

5.  **SETTLEMENT ADMINISTRATION**

    5.1    **Settlement Administrator's Duties.**

        a.    *Dissemination of Notices.* The Settlement Administrator shall disseminate the CAFA Notices and Notice to the Class as provided in Section 4 of this Settlement Agreement.

        b.    *Undeliverable Notice via Mail.* If any Notice sent via mail is returned as undeliverable, the Settlement Administrator shall forward it to any forwarding addresses provided by the postal service. If no such forwarding address is provided, the Settlement Administrator shall perform skip traces to attempt to obtain the most recent addresses for such Class Members.

        c.    *Maintenance of Records.* The Settlement Administrator shall maintain reasonably detailed records of its activities under this Settlement Agreement. The Settlement

Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. The Settlement Administrator shall provide Class Counsel and Defendant's Counsel weekly reports concerning Notice, requests for exclusion, pro rata Settlement Payment calculations, and administration and implementation of the Settlement.

d. *Receipt of Requests for Exclusion.* The Settlement Administrator shall receive requests for exclusion from persons in the Class and provide to Class Counsel and Defendant's Counsel a copy thereof within five (5) days of the Objection/Exclusion Deadline. Within seven (7) days after the Objection/Exclusion deadline has passed, for each valid request for exclusion that the Settlement Administrator has received, the Settlement Administrator shall take reasonable steps to contact all other parties who submitted a valid claim for the work(s) requested to be excluded, informing them that another class member has requested exclusion of the work(s). If the Settlement Administrator receives any requests for exclusion or other requests from Class Members after the Objection/Exclusion Deadline, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel.

e. *Receipt of Requests for Re-Inclusion.* The Settlement Administrator shall receive requests for re-inclusion from persons in the Class and provide to Class Counsel and Defendant's Counsel a copy thereof within five (5) days of the Re-Inclusion Deadline. For each valid request for re-inclusion that the Settlement Administrator receives, the Settlement Administrator shall take reasonable steps within seven (7) days of receipt to contact other parties that submitted valid claims for the re-included work(s) and inform them that another Class Member has requested re-inclusion of the work(s). If the Settlement Administrator receives any requests for re-inclusion or other requests from Class Members after the Re-Inclusion Deadline, the Settlement

Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel.

f.    *Settlement Website.* The Settlement Administrator shall create, develop, host, administer, and maintain the Settlement Website.

g.    *Establishment of the Escrow Account.* The Settlement Administrator shall establish the Escrow Account and maintain the Escrow Account as a QSF throughout the implementation of the Settlement in accordance with the Court's Order granting Preliminary Approval and Final Judgment.

h.    *Processing Claims.* The Settlement Administrator shall be obliged to employ reasonable procedures to screen claims for abuse or fraud and deny Claim Forms where there is evidence of abuse or fraud, including by cross-referencing Approved Claims with the Works List. The Settlement Administrator shall determine whether a Claim Form submitted by a Class Member is an Approved Claim and shall reject Claim Forms that fail to (a) comply with the instructions on the Claim Form or the terms of this Agreement, or (b) provide full and complete information as requested on the Claim Form. In the event a person or entity submits a timely Claim Form by the Claims Deadline but the Claim Form is not otherwise complete, then the Settlement Administrator shall give such person or entity reasonable opportunity to provide any requested missing information, which information must be received by the Settlement Administrator no later than twenty-eight (28) calendar days after the Claims Deadline. In the event the Settlement Administrator receives such information more than twenty-eight (28) calendar days after the Claims Deadline, then any such claim shall be denied. The Settlement Administrator may contact any person or entity who has submitted a Claim Form to obtain additional information necessary to verify the Claim Form or the Class Member's allocation of the Settlement Payment. Class Counsel and Defendant's Counsel shall both have the right to challenge the acceptance or rejection by the Settlement Administrator of a Claim Form submitted by a Claimant. Unless the Court approves a different dispute resolution

mechanism based on the recommendation of the Working Group, in the event of disputes between Claimants, including as to which Claimant is a Class Member entitled to receive a Settlement Payment or otherwise, such disputes shall will be resolved confidentially by a Special Master appointed by the Court or a similar neutral, to be compensated out of the Settlement Fund.

i.      *Calculation of Settlement Payments.* The Settlement Administrator shall calculate the Settlement Payments contemplated in Section 2 of this Settlement Agreement to all Class Members within twenty-eight (28) days after the Effective Date, and, as described above, shall begin issuing Settlement Payments to Class Members within twenty-eight (28) days after the Effective Date.  Anthropic shall have no liability whatsoever with respect to the determination, administration, or calculation of claims to be paid to Class Members from the Settlement Fund.

j.      *Tax Reporting.* The Settlement Administrator shall be responsible for all tax filings related to the Escrow Account, including requesting Form W-9s from Class Members if necessary, processing any tax information from the Class List, transmitting Form 1099s to Class Members if legally required, performing back-up withholding if necessary, and making any required tax returns. All taxes arising from the income earned by or in connection with the Settlement Fund shall be paid out of the Settlement Fund. The Released Parties shall have no liability or responsibility for any taxes arising with respect to the Settlement Fund escrow account. The Released Parties shall not have any liability, obligation or responsibility whatsoever for tax obligations arising from payments to any Class Member based on the activities and income of the Settlement Fund escrow account.

k.      *Payments.* The Settlement Administrator will draw from Settlement Fund to cover all obligations with respect to costs related to this Agreement, including the expenses of the Settlement Administrator, Notice, any Service Awards, any Attorneys' Fee and Expense Payment, and any other administrative fees and expenses in connection with this Agreement; provided,

however, that the Parties must approve any payments to the Settlement Administrator prior to the Settlement Administrator incurring such expenses and prior to any withdrawals from the Settlement Fund.

l.    *No Liability for Released Parties.* The Released Parties shall have no liability, obligation, or responsibility with respect to the disbursement, or other administration of the Settlement Fund and shall have no liability, obligation, or responsibility of the Settlement Administrator.

6.    **PRELIMINARY APPROVAL AND FINAL APPROVAL**

6.1    **Preliminary Approval.** Promptly after execution of this Settlement Agreement, Class Counsel shall submit this Settlement Agreement to the Court and shall move the Court to enter an order granting Preliminary Approval, which shall include, among other provisions, a request that the Court:

a.    Appoint the Settlement Administrator and Escrow Agent;

b.    Preliminarily approve this Settlement Agreement for purposes of disseminating Notice to the Class;

c.    Approve the formation of a working group (the "Working Group") consisting of experts in the publishing industry, Authors Coordination Counsel, and Publishers Coordination Counsel, and the Hon. Layn Phillips, to advise Class Counsel on the claims process, the contents of a Claim Form, and adjustments to the relevant sections of the form of Class Notice for the purpose of fairly, equitably, and efficiently addressing situations where there are multiple Claimants submitting claims for a particular work on the Works List. Class Counsel will submit for the Court's approval by October 10, 2025 any Plan of Allocation, Claim Form, or adjustment resulting from the Working Group. Prior to making any such submission to the Court, Class Counsel shall provide Anthropic with at least seven (7) calendar days notice of the draft

1    recommendation and any rationale it intends to make to the Court so that Anthropic and the

2    Plaintiffs will meaningfully confer on the proposed submission and, after such conferral, Anthropic

3    may, if it elects to do so, advise the Court of any disagreement it has with such submission.

4            d.    Approve the form and contents of the Notice and the method of its

5    dissemination to members of the Class; and

6            e.    Schedule a Final Approval Hearing after the expiration of the CAFA notice

7    period, to review comments and/or objections regarding this Settlement Agreement, to consider its

8    fairness, reasonableness and adequacy, to consider the application for a Fee Award and service

9    award to the Class Representatives, and to consider whether the Court shall issue a Final Judgment

10    approving this Settlement Agreement and dismissing the Action with prejudice. Dismissal shall be

11    requested with respect to all parties named in the Complaint and First Amended Complaint in this

12    Action: Andrea Bartz, Andrea Bartz, Inc., Charles Graeber, Kirk Wallace Johnson, and MJ + KJ,

13    Inc.

14            6.2    **Final Approval.** After Notice to the Class is given, Class Counsel shall move the

15    Court for entry of final approval and entry of Final Judgment, which shall include the Works List

16    as the Class List, and among other provisions, a request that the Court:

17            a.    Find that it has personal jurisdiction over all Class Members and subject

18    matter jurisdiction to approve this Settlement Agreement, including all attached Exhibits;

19            b.    Approve the Settlement as fair, reasonable and adequate as to, and in the best

20    interests of, the Class Members;

21            c.    Direct the Parties and their counsel to implement and consummate the

22    Settlement according to its terms and conditions;

23            d.    Find that the Notice implemented pursuant to the Settlement Agreement

24    (1) constitutes the best practicable notice under the circumstances; (2) constitutes notice that is

25

reasonably calculated, under the circumstances, to apprise the Class of the pendency of the Action and their rights to object to or exclude themselves from this Settlement Agreement and to appear at the Final Approval Hearing; (3) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) fulfills the requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

        e.      Finally certify or confirm certification of the Class under Federal Rule of Civil Procedure 23, including finding that the Class Representatives and Class Counsel adequately represented the Class for purposes of entering into and implementing the Settlement Agreement;

        f.      Dismiss the Action on the merits and with prejudice with respect to all parties named in the Complaint and First Amended Complaint, without fees or costs to any party except as provided in this Settlement Agreement;

        g.      Incorporate the Release set forth above, make the Release effective as of the Effective Date, and forever discharge the Released Parties as set forth herein; and

        h.      Without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose.

    6.3    **Cooperation.** The Parties shall, in good faith, cooperate, assist and undertake all reasonable actions and steps in order to accomplish these required events on the schedule set by the Court, subject to the terms of this Settlement Agreement.

## 7. TERMINATION OF THE SETTLEMENT AGREEMENT

    7.1    **Termination By Any Party.**  Subject to Section 9 below, the Parties shall have the right to terminate this Agreement by providing written notice of the election to do so to all other Parties within ten (10) days of any of the following events:

7.1.1 the Court's refusal to grant Preliminary Approval of this Settlement Agreement in any material respect, after any time that the Court may allow to present a revised Preliminary Approval proposal;

7.1.2 the Court's refusal to enter the Final Judgment in this Action in any material respect, after any time that the Court may allow to present a revised Final Approval proposal; or

7.1.3 the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

7.2    **Termination By Anthropic.** Anthropic has the exclusive right to terminate this agreement if ███████████████████ works on the Works List are opted out from the Settlement. For the avoidance of doubt, if there is more than one claimant to the same work, any purported claimant who seeks to opt out their work from the class counts toward the opt-out threshold. Before exercising this exclusive right to terminate under this provision, Anthropic must first meet and confer with Class Counsel to explore any potential changes to the Agreement and participate in a mediation with the Hon. Layn Phillips (ret.) or other available neutral at Phillips ADR.

7.3    **Notwithstanding** Section 7.1, the Parties understand that the ultimate scope of the Release is for the Court, and that the Court may narrow or broaden the Release. Narrowing or broadening the Release as ordered by the Court is not grounds for termination of this Settlement Agreement.

## 8.    SERVICE AWARD AND CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

8.1    Defendant agrees that Class Counsel is entitled to reasonable attorneys' fees and unreimbursed expenses incurred in the Action as the Fee Award. The amount of the Fee Award shall

be determined by the Court based on petition from Class Counsel. Class Counsel has agreed, with no consideration from Defendant, to limit their request for attorneys' fees to no more than twenty-five percent (25%) of the Settlement Fund, plus unreimbursed costs and expenses. Defendant may challenge the amounts requested. Payment of the Fee Award shall be made from the Settlement Fund. Should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Section shall remain in the Settlement Fund and be distributed to Class Members as Settlement Payments. Class Counsel shall be paid the Fee Award in equal installments proportionate to Anthropic's payments to the Settlement Fund, as described above, provided that no Fee Award payment shall be paid to Class Counsel from the Settlement Fund until after the Final Approval. After the Final Approval, each such installment payment of the Fee Award shall be made by the Settlement Administrator from the Settlement Fund within ten (10) business days after each of Defendant's installment payments to the Escrow Account via wire transfer to an account designated by Class Counsel after providing necessary information for electronic transfer.

8.2     After the Final Approval, the Fee Award shall be payable from the Settlement Fund notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement. If or when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the Fee Award is reduced or reversed, Class Counsel, Publisher Coordination Counsel, and Author Coordination Counsel's shall make appropriate refunds or repayments to the Settlement Fund plus accrued interest at the same net rate as is earned by the Settlement Fund within ten (10) business days.

8.3     Defendant agrees that the Class Representatives shall be paid a service award in the amount of up to Fifty Thousand Dollars ($50,000.00) each from the Settlement Fund, in addition to any Settlement Payment pursuant to this Settlement Agreement and in recognition of their efforts

on behalf of the Class, subject to Court approval. Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded pursuant to this Section shall remain in the Settlement Fund and be distributed to Class Members as Settlement Payments. Any award shall be paid by the Settlement Administrator from funds made available by Defendant (in the form of a check to the Class Representative that is sent care of Class Counsel) within ten (10) business days after the Effective Date.

8.4     The Court's award of any attorneys' fees and service payments shall be separate from the determination of whether to approve the Settlement. Any order or proceeding relating to the attorneys' fees or service payments or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate this Settlement or affect or delay the finality of the Final Judgment approving the Settlement. In the event the Court approves the Settlement, but declines to award attorneys' fees or expenses in the amount requested by Class Counsel, or a service award in an amount different from that requested by Class Representatives, the Settlement will nevertheless be binding on the Parties to the extent permissible under applicable law.

9.  **CONDITIONS    OF    SETTLEMENT,    EFFECT    OF    DISAPPROVAL, CANCELLATION OR TERMINATION.**

9.1     In the event that this Agreement is not approved by the Court or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms and the Court does not allow for modification of the Agreement, then this Agreement shall be canceled and terminated subject to Section 9.2, unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with this Settlement Agreement. Before any such cancellation or termination of the Settlement Agreement, the parties will participate in mediation before Judge Layn Phillips or other available neutral at Phillips ADR. Notwithstanding anything herein, the Parties agree that the Court's decision as to the amount of the Fee Award or the service awards to the Class

Representatives, regardless of the amounts awarded, shall not prevent the Settlement Agreement from becoming effective and Settlement Payments being distributed, nor shall they be grounds for termination of the Settlement Agreement. Parties further understand that the Court may order other changes to the Agreement that are not material to the Agreement or to the decision to settle. If a dispute arises as to materiality, such dispute will be mediated with Judge Layn Phillips or other available neutral at Phillips ADR, and if the parties still dispute materiality, the District Court will determine the issue.

9.2     If this Settlement Agreement is terminated or fails to become effective for the reasons set forth above, including after any efforts under Section 9.1, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement, and Defendant's entry into the Settlement Agreement shall not be considered, in any way, as an admission concerning liability or the propriety of class certification.

9.3     In the event the Settlement is terminated or fails to become effective for any reason, the Settlement Fund, together with any earnings thereon at the same rate as earned, less any taxes paid or due, less Settlement Administration Expenses actually incurred and paid or payable from the Settlement Fund,  shall be returned to Defendant within twenty-eight (28) calendar days after written notification of such event. No disbursements from the Settlement Fund (except for the costs associated with notice, and as expressly provided herein) shall occur prior to the Effective Date.

9.4     In the event the Settlement Agreement is terminated or fails to become effective for any reason, the parties will meet and confer in good faith and, within five (5) days propose a schedule (or competing schedules, if there is disagreement) that would allow this case to proceed to trial as scheduled on December 1, 2025, if feasible, or else as soon as practicable subject to availability of the Court.

10.    **MISCELLANEOUS PROVISIONS.**

10.1    The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement. Class Counsel and Defendant's Counsel agree to cooperate with one another in seeking entry of an order granting Preliminary Approval and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement Agreement. Anthropic and Class Counsel, Authors Coordination Counsel, and Publishers Coordination Counsel further agree that they will not attempt to undermine the Settlement or attempt—directly or indirectly—to solicit or otherwise encourage opt-outs or objectors to the Agreement.

10.2    All signatories to this Agreement represent and warrant (a) that they have all requisite power and authority to execute, deliver and perform this Settlement Agreement and to consummate the transactions contemplated herein; (b) that the execution, delivery and performance of this Settlement Agreement and the consummation of it by the actions contemplated herein have been duly authorized by all necessary corporate action on the part of each signatory, and (c) that this Settlement Agreement has been duly and validly executed and delivered by each signatory and constitutes its legal, valid and binding obligation.

10.3    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiffs and the other Class Members, and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand. Accordingly, the Parties agree not to assert in any forum

1  that the Action was brought by Plaintiff or defended by Defendant, or each or any of them, in bad

2  faith or without a reasonable basis.

3      10.4    Class Counsel, Authors Coordinating Counsel, and Publishers Coordinating Counsel

4  represent and warrant that they are not aware of any other substantially similar or related claims in

5  any jurisdiction against Defendant other than as specifically disclosed in this Settlement Agreement.

6  Class Counsel represent and warrant that they have not solicited other counsel to bring substantially

7  similar or related claims against Defendant in any jurisdiction and have not shared work product or

8  confidential information for such purpose.  Defendant understands that Oppenheim + Zebrak LLP

9  may continue litigation against Defendant in *Concord Music Group, Inc. v. Anthropic PBC*, No.

10  5:24-cv-03811 (N.D. Cal.). Nothing herein shall be interpreted to be or is intended to be inconsistent

11  with any applicable Rules of Professional Conduct.

12      10.5    The Parties have relied upon the advice and representation of counsel, selected by

13  them, concerning the claims hereby released. The Parties have read and understand fully this

14  Settlement Agreement and have been fully advised as to the legal effect hereof by counsel of their

15  own selection and intend to be legally bound by the same.

16      10.6    Class Members are not agreeing Anthropic acted lawfully, including in torrenting,

17  scanning, or training the works on the Works List, and Anthropic is not agreeing that it acted

18  unlawfully including in torrenting, scanning, or training the works on the Works List.

19      10.7    To the extent permitted by law, neither this Agreement nor any of its terms or

20  provisions, nor any of the negotiations or proceedings connected with it, shall be offered as evidence

21  or received in evidence in any pending or future civil, criminal, or administrative action or

22  proceeding to establish any liability or admission by Anthropic or to establish the truth of any of the

23  claims or allegations alleged in the Action, other than in any action or proceeding related to the

24  enforcement of or compliance with the terms of this Settlement Agreement.

25

10.8    The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Settlement Agreement.

10.9    All the Exhibits regarding Notice, in the form attached to the Motion for Preliminary Approval, are material and integral parts hereof and will be fully incorporated herein by reference once submitted in the Motion for Preliminary Approval. The Parties understand that the form and substance of the Exhibits may change after review by the Court and completion of the Working Group process specified above.

10.10    This Settlement Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein. No representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.11    Except as otherwise provided herein, each Party shall bear its own attorneys' fees and costs incurred in any way related to the Action.

10.12    Plaintiffs represent and warrant that they have not assigned any claim or right or interest relating to any of the Released Claims against the Released Parties to any other person or party and that they are fully entitled to release the same.

10.13    Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto, hereby warrants and

represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

10.14   This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signature by digital, facsimile, or in PDF format will constitute sufficient execution of this Settlement Agreement. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

10.15   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.

10.16   This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of California without reference to the conflicts of laws provisions thereof.

10.17   This Settlement Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties. Whereas all Parties have contributed substantially and materially to the preparation of this Settlement Agreement, it shall not be construed more strictly against one Party than another.

10.18   Where this Settlement Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel:

[SIGNATURES APPEAR ON FOLLOWING PAGE]

Dated: September 5, 2025

**PLAINTIFF**

Dated: ___9/5/2025___

By (signature): _____

Name (printed): <u>Kirk Johnson</u>

**PLAINTIFF**

Dated: 9/5/2025

By (signature): _____

Name (printed): <u>Charles Graeber</u>

**PLAINTIFF**

Dated: 9/5/2025

By (signature): _____

Name (printed): <u>Andrea Bartz</u>

**SUSMAN GODFREY LLP**

Dated: 9/5/2025

By (signature): _____

Name (printed): <u>Justin Nelson</u>

Its (title): <u>Class counsel</u>

**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**

Dated: 9/5/2025

By (signature): _____

Name (printed): <u>Rachel Geman</u>

Its (title): <u>Class counsel</u>

**EDELSON PC**

Dated: 9/5/2025

By (signature): *Eli Wade-Scott*
1C1523521ADE488...

Name (printed): Eli Wade-Scott

Its (title): Publishers' Coordination Counsel

**OPPENHEIM + ZEBRAK LLP**

Dated: 9/5/2025

By (signature): *Matt Oppenheim*
96491B6F4EAF4CD...

Name (printed): Matthew J. Oppenheim

Its (title): Publishers' Coordination Counsel

**ANTHROPIC PBC**

Dated: 9/5/2025

By (signature): *Brian Israel*
5F2492D4D334484...

Name (printed): Brian Israel

Its (title): Secretary

**MORRISON FOERSTER LLP**

Dated: 9/5/2025

By (signature): *Daralyn Durie*
564ECB23A1EE4D3...

Name (printed): Daralyn Durie

Its (title): Counsel for Anthropic