UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendants. | Case No. 3:24-cv-05417-WHA |

**DECLARATION OF MARIA A. PALLANTE IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Pursuant to 28 U.S.C. § 1746, I, Maria A. Pallante, declare as follows:

1.   I am the President and Chief Executive Officer of the Association of American Publishers, Inc. ("AAP"), a role I have held since January 2017. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Settlement. I have personal knowledge of the facts set forth in this declaration.

**Background**

2.   AAP is the national trade association and principal public policy advocate for publishing houses in the United States. Our membership includes more than 120 large, small, nonprofit, and commercial houses in the education, scholarly, and consumer publishing sectors doing business across the country. Some of our members have served national and international markets since the 19th century, while others have entered the industry more recently to the particular benefit of local or regional communities.

3.   AAP's members invest in, publish, and distribute a wide span of subject areas and

genres, including acclaimed fiction, nonfiction, and children's books, as well as academic, educational, religious, scientific, and scholarly works. Their authors include Nobel Laureates, as well as winners of the Pulitzer Prize, National Book Award, Newbery Medal, Caldecott Medal, Man Booker Prize, and Grammy Awards for spoken works, among many other honors. Many of our members' works are implicated by piracy through LibGen and the Pirate Library Mirror.

4.   AAP's function is apolitical.  We do not seek to serve any political party or movement, but rather to advocate to all decision makers, regardless of ideology.

5.   As global innovators, publishers are constantly developing new literary works and new business models to meet the demands of both retail and library channels. They also distribute older titles—some of them among the most iconic literature ever authored—delivering them to retail, library, and education customers in a wide variety of formats, including hardcover, paperback, ebooks, audiobooks (both physical and downloaded), and interactive platforms. Most if not all of our members publish literary works in digital formats. At the same time, print formats (paper) remain far more popular among readers of books.

6.   AAP is deeply focused on issues that affect the Copyright Act, for it is the sum and detail of this statute that provide the economic incentives and legal confidence by which publishers of all sizes seek to acquire and disseminate original works of authorship to the public. In turn, our members promote democratic discourse, human empowerment, scientific progress, and political accountability.

7.   Today, more than two centuries after the Framers crafted and adopted the Constitution's Copyright Clause in 1787 and the first Congress enacted the first Copyright Act in 1790—for books, maps, and charts—American publishers are an essential part of a vast, vibrant, and valuable creative economy that facilitates rapid and, frequently, borderless transactions for

the enjoyment of books, music, film, television, and software.

8. As AAP's President and CEO, I lead the organization's public policy, education, and litigation efforts, including before regulatory agencies, legislatures, and the courts. My team and I work closely with AAP's membership to protect and advance a balanced legal framework that incentivizes the publication of creative expression and the dissemination of knowledge, including, especially, a viable twenty-first century Copyright Act that has meaningful exclusive rights, calibrated exceptions and limitations, and effective enforcement and remedies.

9. I have practiced copyright law for over three decades, including more than five years as United States Register of Copyrights from 2011 to 2016. In this role, as the Nation's public copyright attorney, I directed the Copyright Office and the public administration of the Copyright Act, including the federal registration of copyright interests and the documentation of copyright transactions, both of which provide evidentiary weight under federal law as to the validity and lawful chain of title for exclusive rights. My team and I were statutory advisors to both lawmakers and executive branch agencies during an unusually active period in which the House Judiciary Committee reviewed the entire Copyright Act through public hearings and stakeholder meetings. As Register, I delivered multi-year, public studies to both the House and Senate on gaps in the law and emerging legal issues; supported the Department of Justice on legal questions pertaining to copyright litigation; represented the United States on treaty and diplomatic delegations pertaining to intergovernmental copyright obligations; and promulgated regulations governing both legal and technical developments with input from authors, publishers, producers, libraries, technology companies, and other stakeholder groups.

10. I serve on various national legal committees, including for the American Bar Association, and teach copyright law as an adjunct law professor. I have delivered and published

numerous lectures in the field, including the 2022 Brace Memorial Lecture for the Copyright Society ("The Art and Innovation of Exclusive Rights"); the 2018 Robert W. Kastenmeier Lecture at the University of Wisconsin, ("I am the Captain Now: Resisting Piracy and Contortion in the Copyirght Marketplace"); and the 2013 Horace S. Manges Lecture at Columbia University ("The Next Great Copyright Act"), which Congress used to commence a multi-year review of copyright law. From 2007 to 2011, I served as Deputy General Counsel of the Copyright Office, and then as its principal for Policy and International Affairs. Before this, I was in private practice, including eight years as in-house counsel for the nonprofit Guggenheim art museums, archives, and foundation in New York.

## AAP's Involvement in the Settlement Process

11. In the Court's July 17, 2025 class certification order, the Court defined the class to include both legal and beneficial owners of certain copyrighted works. As a general matter, many publishers own or hold exclusive rights to copyrights under 17 U.S.C. § 106, and thus often qualify as legal copyright owners within the class definition.

12. Authors also commonly hold rights in copyrights, sometimes as legal owners and sometimes as beneficial owners. Given the shared rights in individual works, it is anticipated that, for a number of Class Works, there will be multiple claimants—typically an author (often the beneficial owner) and a publisher (often the legal owner).

13. With the prospect of many AAP members included in the class, AAP has actively engaged with its members and consulted with Class Counsel and Publishers' Coordination Counsel to ensure that any settlement addresses publishers' interests and concerns. To that end, AAP has assisted Publishers' Coordination Counsel in setting up informational town halls to facilitate publishers'—as key stakeholders—involvement in the process. I have personally

interacted with dozens of AAP members regarding procedural aspects of the class action; criteria for copyrighted works to be included on the Works List based on the Court's class definition; publishers' ability to provide input and feedback to Publishers' Coordination Counsel regarding the litigation and/or settlement; author-publisher relations; the nature of different publishing sectors most affected by the piracy at issue; public communications strategies relating to this action; publishers' ability and willingness to assist Class Counsel in ensuring a robust notice process, including as to their authors; and many related topics.

14. AAP was also consulted by counsel on key terms of the proposed settlement during negotiations and I have reviewed the key terms of the settlement. Given the framework of the case, I believe that settlement as presented is beneficial to all class members and I am hopeful that the settlement will receive wide support from copyright owners. Beyond the monetary terms, the proposed settlement provides enormous value in sending the message that Artificial Intelligence companies cannot unlawfully acquire content from shadow libraries or other pirate sources to use as the building blocks for their businesses.

15. I understand that to streamline the claims process, Class Counsel has assembled an Author-Publisher Working Group (APWG) to advise on proposals for how to efficiently address intra-work allocations that may arise during the claims administration process. In light of my background, experience, and involvement in and understanding of this case, I am ready, willing, and able to serve as the publishers' representative on the APWG.

16. I further understand that Authors Guild CEO Mary Rasenberger has been identified as the authors' representative for the APWG. I have worked with authors groups, including the Authors Guild, productively for decades, both in my government roles and on many important publishing industry issues. I am confident that I can work collaboratively and

productively with Ms. Rasenberger, Authors' Coordination Counsel, and Publishers' Coordination Counsel to develop a fair and reasonable plan for allocating recoveries between multiple claimants.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on September 4, 2025

Signed by:

Maria A. Pallante