UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>　　　　　Defendant. | Case No. 3:24-cv-05417-WHA<br><br>**DECLARATION OF MARY E. RASENBERGER** |

**DECLARATION OF MARY E. RASENBERGER**

Pursuant to 28 U.S.C. § 1746, I, Mary E. Rasenberger, declare as follows:

1. My name is Mary E. Rasenberger. I am over twenty-one (21) years of age and am fully competent to testify about the matters contained herein. The following statements are made within my personal knowledge and are true and correct.

2. I am the Chief Executive Officer ("CEO") of the Authors Guild, Inc. (the "Authors Guild" or "Guild") and our charitable and educational arm, the Authors Guild Foundation. I have held this position since 2014, when I joined the Guild (my title changed from Executive Director to CEO in 2020). I am also the Managing Director of the Authors Registry Inc., a not-for-profit clearinghouse for payments to U.S.-taxpaying authors and their beneficiaries, which annually distributes millions of dollars to many thousands of payees. To date, the Registry has distributed over $47 million to authors of academic, nonfiction, fiction, and every other category of literature.

3. Founded in 1912, the Authors Guild is a national non-profit association of over 16,000 professional writers of all genres and backgrounds. The Guild works to promote the rights

and professional interest of authors in various areas, including copyright, freedom of expression, antitrust, fair contracts, and evolving technologies. Many Guild members earn a substantial portion of their income through their writing. The ability to write freely and be paid for the use of their work is vital to Guild members' livelihoods, as well as to their future creation of new works. The Guild's members routinely advocate for their rights under copyright law to ensure that they can continue to reap financial benefits from their labor. The Guild is monitoring and participating closely in developments related to artificial intelligence and is also serving as a plaintiff in copyright litigation against OpenAI and Microsoft.

4. Among its members, the Guild counts historians, biographers, academicians, novelists, journalists, textbook writers, children's book writers, and other writers of non-fiction and fiction. Many Guild members are frequent contributors to the most influential and well-respected publications in every field. The members include thousands of textbook authors and academic authors, as well as over ten thousand authors who write books for the commercial marketplace, often referred to in the industry as "trade books." Our members include authors who publish through traditional publishers and who self-publish, from bestsellers to emerging writers.

5. Beyond directly representing its 16,000-plus members, the Guild has an extensive reach to many tens of thousands of other professional authors across all genres through partnerships with advocacy organizations, public programs, and the Guild's newsletter and social media subscriptions.

6. As CEO of the Authors Guild and the Authors Guild Foundation, I lead the organizations' operations, member services, litigation and lobbying initiatives, and education agenda. Working with our legal and communications teams, I represent the organizations' positions and interests before federal agencies, legislatures, the courts, and the general public.

7.	I have over 35 years of experience practicing copyright and media law in the private and public sectors and now in the not-for-profit sector. From 2002 to 2008, I worked for the U.S. Copyright Office and Library of Congress as a senior policy advisor and then as a program director for the Library of Congress' National Digital Preservation Program, where among other things I oversaw the Section 108 Study Group, a three-year initiative to study how the exceptions for libraries and archives in the Copyright Act should be updated for the digital age. Immediately prior to my employment with the Guild, I was a partner at the entertainment law firm Cowan, DeBaets, Abrahams & Sheppard, during which time I also served as a contractor to the Copyright Office and oversaw the drafting of the Compendium of U.S. Copyright Office Practices, Third Edition, a reconceived, updated, user-friendly version of the Copyright Office's governing manual. Before that, I was Counsel at Skadden Arps, where I counseled and litigated on behalf of publishing, media, entertainment, and internet companies, as well as authors, including trade, educational and academic authors, and other creators. In private practice, I represented many authors and publishers and had reviewed numerous publishing contracts in my career, even before coming to the Guild.

8.	One of the services the Guild provides to its members is free contract reviews. We have reviewed almost 2,500 publishing contracts in the last five years. This includes contracts with trade presses, both large and small, university presses, and educational publishers, as well as with hybrid publishers (which combine aspects of traditional publishing and self-publishing), and service agreements for self-published authors. As a result, at the Guild, we have a deep understanding of the contours and trends in publishing contracts, including industry-standard splits with publishers and rights reversions to authors. Our legal services team consists of lead experts

on publishing contracts, including what terms are standard across the industry and in different market sectors.

9. This experience and expertise—both mine personally and the experience of my team—equips me to serve the Class in this case and, in particular, the interests of all types of authors, as outlined below.

10. I am familiar with this case, and I have conferred with Class Counsel, including in connection with facilitating the dissemination of notice to Class Members. I was consulted in connection with the settlement terms during the Parties' negotiations, and I have reviewed the proposed Settlement Agreement. In my view and experience, the settlement is an excellent result for authors, publishers, and rightsholders generally, sending a strong message to the AI industry that there are serious consequences when they pirate authors' works to train their AI, robbing those least able to afford it.

11. I understand that Class Counsel have coordinated an Author-Publisher Working Group ("APWG") to advise on the equitable and efficient distribution of Settlement funds to Class Members, including in situations where multiple claimants (*e.g.*, a publisher and an author) submit claims for the same work. I believe my experience and insights will be valuable to those efforts.

12. I understand that Maria A. Pallante, President and CEO of the Association of American Publishers ("AAP") will also be participating in the APWG. I have worked productively with the AAP, and with publishers in general, for over a decade, including in efforts to combat book piracy. I believe I will work productively with Ms. Pallante, the AAP, Class Counsel, and other participants in the APWG to achieve the common goal of distributing Settlement Funds equitably and efficiently.

13.     For these reasons, I look forward to serving the Class as a representative on the APWG, and I am committed to supporting the important objective of developing an efficient and cost-effective plan for equitably distributing Settlement Funds to eligible Class Members who submit valid claims. I am confident the APWG is a suitable and fair vehicle to promote the interests of authors and the common interests of all Class members.

I hereby declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on September 5, 2025

*[signature]*

Mary E. Rasenberger