UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 3:24-cv-05417-WHA<br><br>**DECLARATION OF THE HON. LAYN R. PHILLIPS (RET.)** |

DECLARATION OF THE HON. LAYN R. PHILLIPS (RET.)
3:24-cv-05417-WHA

I am filing this declaration in my capacity as mediator in the above-captioned action (the "Action"). As set forth herein, I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement.

**I.  RELEVANT PROFESSIONAL BACKGROUND AND EXPERIENCE**

1. I currently serve as a mediator and arbitrator with my own alternative dispute resolution company, Phillips ADR Enterprises ("PADRE"), based in Corona Del Mar, California. I am a member of the bars of Oklahoma, Texas, California, and the District of Columbia, as well as the United States Courts of Appeals for the Ninth, Tenth, and Federal Circuits.

2. I served as the United States Attorney for the Northern District of Oklahoma from 1984 to 1987. I personally tried many cases and oversaw the trials of numerous other cases as a United States Attorney and, prior to my time as a United States Attorney, as both an Assistant United States Attorney in California and Florida, as well as a federal antitrust prosecutor with the FTC's Bureau of Competition in Washington D.C.

3. While serving as the United States Attorney for the Northern District of Oklahoma, I was nominated by President Reagan to serve as a United States District Judge for the Western District of Oklahoma, where I served from 1987 to 1991. While on the bench, I presided over more than 140 federal trials and sat by designation on the United States Court of Appeals for the Tenth Circuit. I also presided over cases in Texas, New Mexico, and Colorado.

4. I left the federal bench in 1991 and joined Irell & Manella, where for 23 years I specialized in alternative dispute resolution, complex civil litigation, and internal investigations. In 2014, I left Irell & Manella to found PADRE. In all, I have served as a as a mediator and arbitrator in connection with large, complex cases such as the Action for over 30 years.

5. I have successfully mediated numerous complex commercial cases involving Fortune 500 and other publicly traded companies. I have mediated hundreds of disputes referred by private parties and courts and have been appointed as Special Master by various federal courts in complex civil proceedings. I serve as a Fellow in the American College of Trial Lawyers, and I have been nationally recognized as a mediator by the Center for Public Resources Institute for Dispute Resolution ("CPR"), serving on CPR's National Panel of Distinguished Neutrals.

6. Among the significant complex matters I have mediated are the NFL concussion cases, the Michigan State and USC sexual abuse cases, the Purdue Opioid bankruptcy, the Boeing derivative litigation, the United Healthcare derivative litigation, the Norfolk Southern Ohio trainwreck litigation, multiple Wells Fargo derivative and class actions, the FirstEnergy derivative litigation, the Fox News and News Corp. derivative litigation, the Facebook Cambridge Analytica derivative litigation, and numerous other class action and derivative actions in the high-tech sector.

## II.     NEGOTIATIONS RESULTING IN THE INSTANT SETTLEMENT

7. The mediation process in connection with the Action was hard fought on all sides. The Settlement is the product of protracted arm's-length negotiations among Plaintiffs Andrea Bartz Inc., MJ+KJ, Inc., and Charles Graeber (together, "Plaintiffs") and Anthropic PBC ("Anthropic") (Plaintiffs and Anthropic collectively, the "Parties").

8. I understand that, before my involvement in the matter on August 7, the Parties had engaged in settlement discussions after the Court's May 23, 2025 order granting Plaintiffs' counsel permission to negotiate a settlement. Dkt. 210. Those discussions, as I was told, were unsuccessful.

9. After Phillips ADR became involved, we conducted one formal, in-person all-day mediation session, as well as numerous other mediation sessions held by way of videoconferences, teleconferences, virtual joint and separate working group caucus sessions, emails, and written submissions by the Parties.

10. On August 19, 2025, the Parties participated in a full-day mediation session at Susman Godfrey LLP's offices in New York, NY. That session included the Class Counsel firms, the Publishers Coordination Counsel firms, in-house counsel for Anthropic, and outside counsel for Anthropic. Prior to that mediation session, counsel for the Parties provided me with briefing on the then-current procedural history and factual status of the Action, as well as addressing liability, damages, and risk exposures supported by legal and factual analysis. Among other things, I reviewed the mediation statements and exhibits, including the complaint filed in the Action, the parties' respective summary judgment papers, and the Court's Order on Class Certification, its

Order on Fair Use, its Order Denying Motion To Stay, and its Notice and Order Re Putative Class Actions And Factors to Be Evaluated For Any Proposed Class Settlement. Members of my mediation support team attended the mediation session and assisted me in facilitating the negotiations and analyzing the legal and factual issues in the Action.

11. Final resolution was not reached during the initial full-day mediation session. However, I found the discussions engaged in by the Parties during the first mediation session to be extremely valuable in helping to understand the relative merits of each party's position and to identify the issues that were likely to serve as the primary drivers and obstacles to achieving a settlement.

12. While I am bound by confidentiality with regard to the content of the Parties' discussions and negotiations, I can say that the arguments and positions asserted by Plaintiffs and Anthropic during this first mediation session were the product of detailed analysis and hard work, that they were complex, and that, while professional, these discussions were highly adversarial.

13. Following the in-person mediation session, I believed that efforts to settle the Action would continue to be challenging as those involved continued to hold strong and vastly divergent views as to the relevant legal and factual arguments, and that a resolution without further litigation seemed a challenge to achieve.

14. Over the course of the next week, the Parties continued to vigorously negotiate a settlement. During this time, I or a member of my team presided over numerous informal mediation sessions involving the Parties' working groups, including Plaintiffs' counsel and Anthropic's outside counsel and key members of Anthropic's executive team. This included several sessions over the weekend of August 24-25, 2025.

15. The Parties spent a significant amount of time negotiating the form and timing of any settlement, as well as the scope of a potential release. The Parties also had vigorous, heavily disputed negotiations over the scope of any release, including whether the release should extend past the date of the execution of a term sheet. These discussions happened under my supervision or the supervision of a member of my team. These discussions were highly contested, with each side vigorously advocating for its respective position.

16. The Parties, as a culmination of these negotiations, were able to agree to a cash settlement of at least $1.5 billion, plus interest, paid into a settlement fund in tranches upon preliminary approval, final approval, and then, in full, by no later than 24 months after preliminary approval (and potentially earlier in the event Anthropic achieves particular liquidity events). Anthropic has further agreed to destroy the allegedly pirated copies of the works at issue in the case, subject to preservation requirements and court orders that may preclude destruction until such obligations are lifted.

17. I have mediated many high-profile copyright actions in the United States, including the groundbreaking *Ferrick v. Spotify USA* action. I am not aware of a larger copyright settlement than the one negotiated here.

18. Understanding that every aspect of the final approval of this Settlement is committed to the sound discretion of the trial court, after presiding over the mediation process concerning the matter, it is my professional opinion that the Settlement is fair and reasonable and is the product of vigorous and independent advocacy and of arm's-length negotiations conducted in good faith by the Parties.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 05, 2025, at New York, New York.

/s/ Hon. Layn R. Phillips

Hon Layn R. Phillips