1
2
3
4
5
6
7

8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

9

10   ANDREA BARTZ, ANDREA BARTZ, INC., )   Case No.: 3:24-cv-05417-WHA
     CHARLES GRAEBER, KIRK WALLACE )
11   JOHNSON, and MJ + KJ, INC., individually )   **DECLARATION       OF       JENNIFER**
     and on behalf of others similarly situated, )   **KEOUGH     REGARDING     PROPOSED**
12                                            )   **SETTLEMENT NOTICE PLAN**
                     Plaintiffs,             )
13                                            )
     v.                                       )
14                                            )
     ANTHROPIC PBC,                           )
15                                            )
                     Defendant.              )
16   _____

17   I, JENNIFER M. KEOUGH, declare and state as follows:

18         1.      I am Chief Executive Officer, President, and Co-Founder of JND Legal

19   Administration LLC ("JND"). I have more than 20 years of legal experience creating and

20   supervising notice and claims administration programs and have personally overseen well over

21   1,000 matters. I will oversee this matter personally as well. I am regularly called upon to submit

22   declarations in connection with JND's notice and administration work. A comprehensive description

23   of my experience is attached as **Exhibit A**.

24         2.      I submit this Declaration based on my personal knowledge, as well as upon

25   information provided to me by experienced JND employees and Counsel for the Parties, to describe

26   the proposed Settlement Notice Plan and address why it is consistent with other best practicable

court-approved notice plans and the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), the Due Process Clause of the United States Constitution, and any other applicable statute, law, or rule, as well as the Federal Judicial Center ("FJC") guidelines for best practicable due process notice.

3. Each JND staff member working on this matter has or will review the executed Settlement Agreement, Order on Class Certification (Dkt. 244), the Notice and Order re Putative Class Actions and Factors to Be Evaluated for Any Proposed Class Settlement (Dkt. 8), the N.D. Cal. Procedural Guidelines for Class Action Settlements, and N.D. Cal. Settlement Administration Data Protection Checklist.

**BACKGROUND AND EXPERIENCE**

4. ***Full-Service Provider.*** JND is a leading legal administration services provider with offices throughout the United States and its headquarters in Seattle, Washington. JND has extensive experience with all aspects of legal administration and has administered hundreds of class action matters. JND's class action division provides all services necessary for the effective implementation of class actions including: (1) all facets of legal notice, such as outbound mailing, email notification, and the design and implementation of media programs; (2) website design and deployment, including online claim filing capabilities; (3) call center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) calculation design and programming; (7) payment disbursements through check, wire, PayPal, merchandise credits, and other means; (8) qualified settlement fund tax reporting; (9) banking services and reporting; and (10) all other functions related to the secure and accurate administration of class actions.

5. ***Government Relationships.*** JND is an approved vendor for the United States Securities and Exchange Commission (SEC), the Federal Trade Commission (FTC), and the Consumer Financial Protection Bureau (CFPB). In addition, we have worked with several other

government agencies including the U.S. Equal Employment Opportunity Commission, the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Federal Communications Commission, the Department of Justice, and the Department of Labor. We also have Master Services Agreements with various corporations and banks, which were awarded after JND underwent rigorous reviews of our systems, privacy policies, and procedures. JND has also been certified as SOC 2 Type 2 compliant by noted accounting firm Baker Tilly.[1]

6. ***Industry Recognition.*** JND has been recognized by various publications, including the *National Law Journal*, the *Legal Times*, and the *New York Law Journal*, for excellence in class action administration. JND was named the #1 Class Action Claims Administrator in the U.S. by the national legal community for multiple consecutive years, and we were inducted into the *National Law Journal* Hall of Fame for having held this title for four years in a row. JND was also recognized as the Most Trusted Class Action Administration Specialists in the Americas by *New World Report* (formerly *U.S. Business News*) in the publication's 2022 Legal Elite Awards program.

7. ***Complex Matters.*** The principals of JND collectively have over 80 years of experience in class action legal and administrative fields. JND has overseen the administration of some of the most complex administration programs in recent years and regularly prepares and implements court-approved notice campaigns throughout the United States.

8. JND was appointed as the notice and claims administrator in the landmark $2.67 billion Blue Cross Blue Shield antitrust settlement in which we mailed over 100 million postcard notices; sent hundreds of millions of email notices and reminders; placed notice via print, television, radio, internet, and more; staffed a call center with 250 agents during the peak of the notice program; and received and processed more than eight million claims. I am the Court-

---

[1] As a SOC 2 Compliant organization, JND has passed an audit under AICPA criteria for providing data security.

appointed notice expert in that case. JND was also appointed the settlement administrator in the $1.3 billion Equifax Data Breach Settlement, where we received more than 18 million claims. I supervised all aspects of direct notice, including email notice that was sent twice to over 140 million class members. The interactive website received more than 130 million views, and the call center was staffed with 1,500 agents at the peak of call volume.

9.      Other large JND matters include a voluntary remediation program in Canada on behalf of over 30 million people; the $1.5 billion Mercedes-Benz Emissions Settlements; the $120 million GM Ignition Switch Settlement, where we mailed nearly 30 million notices and processed over 1.5 million claims; the $215 million USC Student Health Center Settlement on behalf of women who were sexually abused by a doctor at USC; the recent National Association of Realtors ("Realtors") settlements totaling over $1 billion thus far; as well as hundreds of other matters.

10.      ***Extensive Copyright Class Action Experience.*** I also have vast copyright class action experience, as outlined below.[2]

11.      The $14 million NMPA Limewire Settlement resulted from a lawsuit on behalf of NMPA/HFA alleging copyright infringement by Limewire and its owners. Claimants were able to submit supplementary documentation as part of their claim, which was reviewed in coordination with an independent auditor to ensure that all eligible income was considered when calculating settlement awards.

12.      The $130 million Napster, Inc. Copyright Settlement arose from a lawsuit brought by HFA alleging that Napster facilitated widespread copyright infringements. In addition to calculating the participating publishers' market share using HFA's mechanical income data, my team managed high call volume, communicated regularly with the class, and conducted post-distribution outreach to maximize check-cashing rates.

---

[2] The provided experience includes matters that I personally oversaw while employed at another legal administration company.

13.     The $5.4 million XM Satellite Radio Copyright Settlement was the result of a lawsuit alleging that XM Radio violated class rights in connection with radios capable of recording XM transmissions. The process required intake of claims containing extensive lists of both musical compositions and sound recordings, ascertaining which of those were eligible by coordinating with performing rights organizations, and carrying out separate distribution calculations for each class.

14.     The $2 million Sirius Satellite Radio Copyright Settlement involved a lawsuit alleging that Sirius Satellite Radio violated rights in connection with radios capable of recording transmissions. Administering this matter involved similar steps to those undertaken in the XM settlement.

15.     The $12 million *Music Force LLC v. Viacom Inc.* Settlement emerged from a lawsuit alleging that MTV Networks embodied certain musical compositions and sound recordings in transmissions without authorization. Settlement awards were calculated based on eligible songs.

16.     The $2.75 million *Music Force v. Black Entertainment Television* settlement arose from a lawsuit alleging that musical compositions and sound recordings were embodied in transmissions on Black Entertainment Television's networks without authorization. As part of this engagement, my team established an interactive website enabling potential class members to search song titles involved in the settlement.

17.     ***Engagements with Counsels' Law Firms.*** Over the past two years, JND has worked with Lieff Cabraser Heimann & Bernstein, LLP on the following class action matters: *Allagas v. BP Solar Int'l, Inc.*, Case No. 3:14-cv-00560 (N.D. Cal.); *Andrews v. Plains All Am. Pipeline, L.P.*, Case No. 2:15-cv-04113 (C.D. Cal.); *Corker v. Costco Wholesale Corp.*, Case No. 2:19-cv-00290 (W.D. Wash.); *Doe v. MasterCorp, Inc.*, Case No. 1:24-cv-00678 (E.D. Va.); *Ellis v. Google, LLC*, Case No. CGC-17-561299 (Cal. Super. Ct.); *Express Freight Int'l v. Hino Motors, Ltd.*, Case No. 1:22-cv-22483 (S.D. Fla.); *Graham v. Univ. of Michigan*, Case No. 2:21-cv-11168 (E.D. Mich.); *Grey Fox, LLC v. Plains All Am. Pipeline, L.P.*, Case No. 2:16-cv-03157 (C.D. Cal.); *Gutierrez, Jr. v. Amplify*

*Energy Corp.*, Case No. 8:21-cv-01628 (C.D. Cal.); *In re Arizona Theranos, Inc. Litig.*, Case No. 2:16-cv-02138 (D. Ariz.); *In re BofI Holding, Inc. Sec. Litig.*, Case No. 3:15-cv-02324 (S.D. Cal.); *In re Volkswagen "Clean Diesel" Mktg., Sales Practice and Prods. Liab. Litig.*, Case No. 3:15-md-02672 (N.D. Cal.); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, Case No. 2:19-ml-02905 (C.D. Cal.); *McAlear v nCino, Inc.*, Case No. 7:21-cv-00047 (E.D.N.C.); *Senne v. Office of the Comm'r of Baseball*, Case No. 3:14-cv-00608 (N.D. Cal.); and *USC Student Health Ctr. Litig.*, Case No. 2:18-cv-04258 (C.D. Cal.).

18.     Over the past two years, JND has worked with Susman Godfrey LLP on the following class action matters: *Advance Trust & Life Escrow Serv., LTA v. ReliaStar Life Ins. Co.*, Case No. 0:18-cv-02863 (D. Minn.); *Advance Trust & Life Escrow Serv., LTA v. Sec. Life of Denver Ins. Co.*, Case No. 1:18-cv-01897 (D. Colo.); *Advance Trust & Life Escrow Servs., LTA v. PHL Variable Ins. Co.*, Case No. 1:18-cv-03444 (S.D.N.Y.); *Bernstein v. Cengage Learning, Inc.*, Case No. 1:19-cv-07541 (S.D.N.Y); *Brighton Tr. LLC, as Tr. v. Genworth Life & Annuity Ins. Co.*, Case No. 3:20-cv-00240 (E.D. Va.); *Burnett v. Nat'l Assoc. of Realtors*, Case No. 4:19-cv-00332 (W.D. Mo.); *City of Philadelphia v. Bank of Am. Corp.*, Case No. 1:19-cv-01608 (S.D.N.Y.); *Doe v. Mindgeek USA Incorp.*, Case No. 8:21-cv-00338 (C.D. Cal.); *EEOC v. Walmart, Inc.*, Case No. 6:20-cv-00163 (E.D. Ky.); *Gibson v. Nat'l Assoc. of Realtors*, Case No. 4:23-cv-00788 (W.D. Mo.); *Hanks v. Lincoln Life & Annuity Co. of New York*, Case No. 1:16-cv-06399 (S.D.N.Y.); *In re AXA Equitable Life Ins. Co. COI Litig.*, Case No. 1:16-cv-00740 (S.D.N,Y.); *In re Lincoln Nat'l COI Litig.*, Case No. 2:16-cv-06605; 2:17-cv-04150 (E.D. Pa.); *In re Ripple Labs Inc. Litig.*, Case No. 4:18-cv-06753 (N.D. Cal.); *Keel v. Nat'l Assoc. of Realtors*, Case No. 4:25-cv-00055 (W.D. Mo.); *Langer v. CME Grp.*, Case No. 2014CH00829 (Ill. Cir. Ct.); *Leonard v. John Hancock Life Ins. Co. of NY*, Case No. 1:18-cv-04994 (S.D.N.Y.); *LSIMC, LLC v. Am. Gen. Life Ins. Co.*, Case No. 2:20-cv-11518 (C.D. Cal.); *Markson v. CRST Int'l, Inc.*, Case No. 5:17-cv-01261 (C.D. Cal.); *Moehrl v. Nat'l Assoc. of Realtors*, Case No. 1:19-cv-01610 (N.D. Ill.); *PHT Holding II LLC v. N. Am. Co. for Life and Health Ins.*, Case

No. 4:18-cv-00368 (S.D. Iowa); *Silverstein v. Genworth Life Ins. Co.*, Case No. 3:23-cv-00684 (E.D. Va.); and *Yearby v. Am. Nat'l Ins. Co.*, Case No. 3:20-cv-09222 (N.D. Cal.).

19.    Over the past two years, JND has worked with Edelson PC, LLP on the following class action matters: *Benson v. DoubleDown Interactive, LLC*, Case No. 2:18-cv-00525 (W.D. Wash.); *Ferrando v. Zynga Inc.*, Case No. 2:22-cv-00214 (W.D. Wash.); *James v. PacifiCorp.*, Case No. 20CV33885 (Or. Cir. Ct.); *Larsen v. PTT LLC*, Case No. 3:18-cv-05275 (W.D. Wash.); and *Reed v. Scientific Games Corp.*, Case No. 2:18-cv-00565 (W.D. Wash.).

20.    Over the past two years, JND has not worked with Oppenheim + Zebrak, LLP, Cowan DeBaets Abrahams & Sheppard LLP, or Fairmark Partners LLP.

21.    ***Legal Notice Expertise***. JND's Legal Notice Team operates under my direct supervision and researches, designs, develops, and implements a wide array of legal notice programs to meet the requirements of Rule 23, as well as relevant state court rules. In addition to providing notice directly to potential class members through direct mail and email, we use a variety of media channels, including newspapers, press releases, magazines, trade journals, radio, television, social media, and the internet. Our media campaigns, which are regularly approved by courts throughout the United States, are customized for each case based on the circumstances and allegations of the case, the demographics of the class, and the habits of its members, as reported by various research and analytics tools.

22.    During my career, I have submitted several hundred declarations to courts throughout the country attesting to our role in the creation and launch of various notice programs.

## CASE BACKGROUND

23.    In its July 17, 2025, Order on Class Certification (Dkt. 244), this Court certified the following Class:

> All beneficial or legal copyright owners of the exclusive right to reproduce copies of any book included in the versions of LibGen or PiLiMi downloaded by Anthropic. "Book" refers to any work possessing an ISBN or ASIN which was registered with

the United States Copyright Office within five years of the work's publication and which was registered with the United States Copyright Office before being downloaded by Anthropic, or within three months of publication. Excluded are the directors, officers and employees of Anthropic, personnel of federal agencies, and district court personnel.

24.     On September 5, 2025, Class Counsel and Defendant entered a Settlement Agreement releasing certain claims of the "'LibGen & PiLiMi Pirated Books Class' certified by the Court" in exchange for at least $1.5 billion and injunctive relief.

25.     The Settlement Agreement also set forth a rigorous notice process to be implemented by JND, including (i) direct notice by email and First Class U.S Mail; (ii) internet notice at a designated settlement website (www.AnthropicCopyrightSettlement.com); (iii) trade media notice; (iv) Google Display Network (GDN) notice; (v) social media notices via Facebook, Instagram, and Reddit, (vi) Press Release Notice; and (vii) notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.

26.     Our proposed Settlement Notice Plan is consistent with the notice process set forth in the Settlement Agreement and, in my opinion, satisfies all applicable requirements.

**SETTLEMENT NOTICE PLAN OVERVIEW**

27.     The objective of the proposed Settlement Notice Plan is to provide the best notice practicable, consistent with the methods and tools employed in other court-approved notice programs. The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers a Notice Plan with a 70%–95% reach effective.[3]

28.     The proposed Settlement Notice Plan consists of the following components, as further described in the sections below:

      a.     Direct notice by First Class mail to all potential Class Members for whom a mailing address can be located;

---

[3] Reach is the percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once over the course of a campaign. Reach factors out duplication, representing total different/net persons.

b.     Direct notice by email to all potential Class Members for whom an email address can be located;

c.     A QR code (a matrix barcode) that will allow quick and direct access to the Settlement Website through a mobile device;

d.     Internet notice via a designated, case-specific Settlement Website, www.AnthropicCopyrightSettlement.com, with a searchable Works List to help website visitors determine whether they are Class Members;

e.     Trade media notice published in, among other publications, *Publishers Weekly*, *The Atlantic*, *The Toronto Star*, *The Globe and Mail*, and *La Presse*;

f.     Extensive online notice over a four-week period through the GDN;

g.     Social media notice on Facebook, Instagram, and Reddit;

h.     Distribution of a national press release, including to journalists who specialize in the education and publishing industries;

i.     Notice via a toll-free number, email address, and post office box through which Class Members may obtain more information about the Settlement and request that the Long Form Notice, attached as **Exhibit B**, be sent to them;

j.     Notice pursuant to CAFA to appropriate state and federal officials; and

k.     Additional efforts as needed to optimize notice based on a real time analysis of engagement.

29.     Based on my experience in developing and implementing class notice programs, I believe the proposed Settlement Notice Plan will provide the best notice practicable given the circumstances.

**CAFA NOTICE**

30.    JND will provide notice of the proposed Class Action Settlement under CAFA no later than 10 days after the proposed Settlement is filed with the Court. JND will provide such notice to the appropriate state and federal government officials.

**DATA PRIVACY AND SECURITY**

31.    JND is well versed in the handling and management of sensitive information and has in place the technical, administrative, and physical controls necessary to ensure the ongoing confidentiality, integrity, and availability of data.

32.    JND's security and privacy controls have been vetted and approved for use by numerous large banks and federal agencies including the FTC, SEC, and CFTB.

33.    JND has adopted an information security program based on the risk management framework developed by the National Institute of Standards and Technology. JND has also adopted a series of controls consistent with NIST Special Publication 800 to ensure all safeguards are appropriately selected, implemented, and reviewed. Specific individuals have been assigned the responsibility for information security and data privacy throughout our organization. JND submits itself and its systems no less than annually to several independent assessments, such as the AICPA's SOC II certification and External Penetration Testing performed by a reputable cybersecurity consulting firm. JND also maintains Business Continuity and Incident Response programs and performs no less than monthly vulnerability scanning and system patching.

34.    JND performs background checks on all personnel at onboarding and requires each individual to enter into a non-disclosure and confidentiality agreement. Additionally, everyone must complete security, and privacy training during the onboarding process, which educates staff on the proper handling of sensitive data. Refresher training is required of employees each year and JND periodically disseminates security and privacy awareness messages to all staff. Personnel are also required to review and attest to applicable security and privacy policies.

35.     To help ensure the proper use of data, JND's systems have been designed with privacy in mind and utilize a role-based access control methodology to ensure access is granted in accordance with the principle of least privilege. Access to the data is provided via a separate dedicated application for each class action ensuring data that has been collected for different purposes can be processed separately. Additionally, JND only collects the minimum amount of data necessary to administer the class action at hand, stores data for each class action in a dedicated database to prevent comingling of data, utilizes that data only for purposes specified in the class action, and only retains data for the minimum amount of time required.

36.     Industry standard logical access controls are in place to prevent unauthorized access to JND's network and systems. Access is only provided after proper approval is acquired, tracked in the ticketing system and information system audit logs, and all access and access levels are reviewed no less than quarterly. JND provides unique identifiers to each employee and requires complex passwords, which expire at configured intervals. JND also requires multifactor authentications for all remote access. All sessions occur via encrypted channels to ensure the confidentiality and integrity of the data being transmitted.

37.     JND's defense-in-depth approach to security includes a myriad of tools and solutions to ensure its environment remains protected. Next Generation Firewalls are deployed at all perimeter points and provide intrusion detection and prevention protection (IDS/IPS) to proactively block suspicious and malicious traffic without the need for human intervention. Similarly, Web Application Firewalls (WAF) are positioned in front of public-facing web applications which are designed to adhere to industry standard architecture. Security event and audit log data is transmitted to JND's Security Information and Event Management (SIEM) solution which aggregates data from across the enterprise to deliver analytics and threat intelligence. This is coupled with an Endpoint Detection and Response (EDR) solution which is deployed on all endpoints to perform real-time and scheduled scanning along with behavioral analysis to ensure all systems are free from malicious

software and activity. Encryption is also in use throughout JND's systems and services. Access to JND's information processing system is provided via a web application configured to be accessible only via Transport Layer Security (TLS) web traffic. Transmission of data outside of JND's environment also occurs via TLS encrypted web traffic, via SFTP, or similarly protected secure and encrypted protocols. Data is housed in databases and protected with full and/or field/column level encryption to ensure the utmost security of data. Furthermore, the physical disks of all servers and workstations are protected with encryption.

38.     JND's Disaster Recovery solution performs backups of production systems by securely transmitting data at scheduled intervals to both a local and geographically separate offsite storage system. Not only is backup data encrypted in transit but also on the offsite storage itself. JND's backup system is highly configurable, scalable, and robust enough to accommodate any requirements.

39.     JND facilities used to process or store data have in place adequate physical controls to prevent unauthorized access to, or dissemination of, sensitive information. Access to, and within, facilities is controlled by key cards assigned only to authorized personnel and only at the level required to perform job duties. Access to highly sensitive areas, such as datacenters, server rooms, mailrooms, etc., are controlled by key cards and restricted levels of access, with access restrictions reviewed periodically. Facilities are also protected by alarm systems or onsite personnel, and employ CCTV monitoring and recording systems. JND educates its staff on maintaining a clean desk and securely storing and disposing of sensitive documentation. JND also prohibits by default access to removeable media devices on all staff computers. Disposal of media, whether physical or electronic, is done securely and in accordance with NIST 800-88 guidelines to ensure the data cannot be reconstituted.

40.     All data provided to JND in connection with this case will be handled according to JND's security protocols and applicable law.

- 12 -

41.     JND carries an assortment of insurance coverage including $10 million in Errors & Omissions coverage.

## **DIRECT NOTICE**

42.     An adequate notice plan needs to satisfy "due process" in reaching a class. The United States Supreme Court, in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), stated that direct notice (when possible) is the preferred method for reaching a class. In addition, Rule 23(c)(2) of the Federal Rules of Civil Procedure provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."

43.     JND has received a draft Works List from Class Counsel and is actively working, with help from the Parties, Class Counsel, and Publishers' Coordinating Counsel to compile a list of the following data for all persons in the Class (the "Class List"): (1) all available contact information (including name, last known e-mail address, and last known mailing addresses) of each person or entity identified on the Works List as having copyright interests in the Works List; (2) the specific works from the Works List in which each Class Member has a copyright interest; and (3) the nature of each Class Member's copyright interest (*e.g.*, legal or beneficial owner).

44.     JND will keep the Class List and all personal information obtained therefrom, including but not limited to the identity, mailing addresses, and e-mail addresses of all persons, strictly confidential. JND will not use the Class List for any purpose other than settlement administration, including advising specific individual Class Members of their rights under the Settlement, reviewing Claim Forms, calculating and processing Settlement Payments, and otherwise effectuating the terms of the Settlement Agreement or the duties arising thereunder, including the provision of Notice of the Settlement. The Settlement Administrator may share such

information from the Class List with Class Counsel as may be necessary for Class Counsel to respond to Class Member inquiries or monitor implementation of the Settlement.

45.    JND will then send the Postcard Notice, attached as **Exhibit C**, via First Class mail to everyone on the Class List for whom a mailing address was identified. JND will also send an Email Notice, attached as **Exhibit D**, to everyone on the Class List for whom an email address was identified.

46.    ***Collecting Data.*** I understand that Class Counsel have begun collecting contact information directly from potential Class Members, many of whom have already provided their contact information to Class Counsel voluntarily through the course of this case. Class Counsel have utilized a secure intake portal through which potential Class Members were able to submit their address, email address, book title(s) and ISBN/ASIN(s). The link to that intake portal was distributed to leading author organizations (*e.g.*, Authors Guild and the Authors Registry), large literary agencies (*e.g.*, William Morris Endeavor, CAA-ICM, and Writers House), and author, agent, and writing-industry organizations (*e.g.*, the Association of American Literary Agents, Dramatists Guild, Novelists Inc., Romance Writers, Sisters in Crime). These organizations and literary agencies agreed to share the link to the intake portal with their members.

47.    Potential Class Members are now able to continue submitting their address, email address, book title(s) and ISBN/ASIN(s) on the Settlement Website, www.AnthropicCopyrightSettlement.com, which was launched on September 4, 2025.

48.    In addition, the Author's Guild and the Author's Registry have provided Class Counsel with the author mailing and email addresses from their proprietary databases strictly for the limited purpose of providing the Court-ordered notice.

49.    Class Counsel is also working with Publisher's Coordination Counsel to collect author contact information from publishers. In addition, I understand that Class Counsel is collecting and compiling publisher data for the specific works at issue directly from the U.S.

Copyright Office. I also understand that Class Counsel has engaged Bowker ISBN Services ("Bowker") to supply publisher contact information, including mailing and email addresses.

50.     In addition, JND will supplement the Class data sources above with a purchased contact list that includes contact information for thousands of individuals identified as writers, publishers, and "commercial and literary individuals."

51.     ***Class Data.*** JND will store the Class List data for this matter in a secure case-specific database. As previously summarized, JND employs appropriate administrative, technical and physical controls designed to ensure the confidentiality and protection of Class Member data, as well as to reduce the risk of loss, misuse, or unauthorized access, disclosure, or modification of Class Member data.

52.     ***Postcard Notice.*** Prior to mailing notice, JND staff will update the collected addresses using the United States Postal Service ("USPS") National Change of Address ("NCOA") database.[4] JND will track all notices returned undeliverable by the USPS and will promptly re-mail notices that are returned with a forwarding address. We will also use advanced address search tools to identify a new mailing address for any notice returned without a forwarding address.

53.     ***Email Notice.*** JND uses industry-leading email solutions to achieve the most efficient email notification campaigns. Our Data Team is staffed with email experts and software solution teams to conform each notice program to the particulars of the case. JND provides individualized support during the program and manages our sender reputation with the Internet Service Providers ("ISPs"). For each of our programs, we analyze the program's data and monitor the ongoing effectiveness of the notification campaign, adjusting the campaign as needed. These actions ensure the highest possible deliverability of the email campaign so that more potential Class Members receive notice.

---

[4] The NCOA database is the official USPS technology product which makes changes of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream.

54. Prior to sending the email notice, JND will evaluate the email for potential spam language to improve deliverability. This process includes running the email through spam testing software, DKIM [5] for sender identification and authorization, and hostname evaluation. Additionally, we will check the send domain against the 25 most common IPv4 blacklists.[6]

55. For each email campaign, including this one, JND will utilize a verification program to eliminate invalid email and spam traps that would otherwise negatively impact deliverability. We will then clean the list of email addresses for formatting and incomplete addresses to further identify all invalid email addresses.

56. To ensure readability of the email notice, our team will review and format the body content into a structure that is applicable to all email platforms. Before launching the email campaign, we will send a test email to multiple ISPs and open and test the email on multiple devices (iPhones, Android phones, desktop computers, tablets, etc.) to ensure the email opens as expected.

57. Additionally, JND will include an "unsubscribe" link at the bottom of the email notice to allow Class Members to opt out of any additional email notices from JND. This step is essential to maintain JND's good reputation among the ISPs and reduce complaints relating to the email campaign.

58. Emails that are returned to JND are generally characterized as either "Hard Bounces" or "Soft Bounces." A Hard Bounce occurs when the ISP rejects the email due to a permanent reason such as the email account is no longer active. A Soft Bounce occurs when the email is rejected for temporary reasons, such as the recipient's email address inbox is full.

---

[5] DomainKeys Identified Mail, or DKIM, is a technical standard that helps protect email senders and recipients from spam, spoofing, and phishing.

[6] IPv4 address blacklisting is a common practice. To ensure that the addresses being used are not blacklisted, a verification is performed against well-known IP blacklist databases. A blacklisted address affects the reputation of a company and could cause an acquired IP addresses to be blocked.

59.     When an email is returned due to a Soft Bounce, JND will attempt to resend the email notice up to three additional times to secure higher deliverability. If the Soft Bounce email continues to be returned after three attempts, the email will be considered undeliverable. Emails that result in a Hard Bounce are also considered undeliverable.

## **SUPPLEMENTAL DIGITAL NOTICE**

60.     To supplement the direct notice effort, JND will serve **26.5 million digital impressions**[7] through the leading digital network (Google Display Network or "GDN") and three popular social media platforms (Facebook, Instagram, Reddit). All impressions will be targeted to individuals who are likely authors/publishers.

61.     ***Targeting Techniques***. Multiple targeting strategies will be used, including the following techniques:

62.     *Audience Targeting* optimizes efforts based on demographics, behavior, and interests of potential Class Members.

63.     *Contextual Targeting* is the practice of displaying a digital ad based on a website's content.

64.     *Geotargeting* optimizes efforts based on the location of potential Class Members.

65.     *Keyword Targeting* allows advertisers to target users based on their search queries, recent social media posts or engagement with websites or posts that feature specific keywords.

66.     *Machine Learning* is used across all digital media platforms to optimize campaigns in real time based on placements, times of day and sub-targets within the larger demo and geo target that are likely to drive traffic and claim form submissions.

---

[7] Impressions or Exposures are the total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. Impressions are a gross or cumulative number that may include the same person more than once. As a result, impressions can and often do exceed the population size.

67. *Predictive Targeting* (GDN only) uses multiple data points (search queries, sites visited, and digital behavior trends) to make inferences regarding future behavior/performance for a given campaign.

68. *Look-a-like Targeting* (LAL) to individuals whose characteristics match that of individuals who have visited the Settlement Website and/or submitted an online claim.

69. *Site Retargeting* (RTG) to individuals who have visited the Settlement Website but have yet to file a claim, reaching them while they browse other sites over the course of the campaign. This technique allows JND to provide additional notice exposure to individuals who have already shown an interest in the case.

70. ***GDN.*** The GDN activity will target adults 25 years of age or older ("Adults 25+") who (1) are *in-market* for Book Promotion Services and Information, Literary Agents, Book Publishing Services, Book Publishers, Publishers Accepting Submissions; (2) have *browsed* websites such as selfpublishing.com, janefriedman.com, scribophile.com, thebookseller.com, publishersweekly.com, publishingperspectives.com, chronicle.com, writersdigest.com, thebookdesigner.com, insidehighered.com, edupub.org, and reedsy.com; and/or (3) have *searched Google* for relevant terms such as AI training data, manuscript, amazon kdp, Claude AI, books used to train AI, Reedsy, critique circle, ASIN, copyright law, indie author, AI copyright, Scribophile, author royalties, book publishing, AI ethics, publishing rights, pirated books, copyright registration, copyright infringement, author lawsuit, LibGen, how to publish a book.

71. ***Facebook and Instagram***. Activity with Facebook and Instagram will target Adults 25+ with *job titles* including Journalist/Writer, Online Publisher, Publisher and/or who have *additional interests* in book publisher, bookselling, electronic publishing, Nobel prize in literature, publishing, self-publishing.

72. ***Reddit.*** Activity with Reddit will target adults 18 years of age or older ("Adults 18+") who utilize *keywords* such as amazon kdp, ASIN, author lawsuit, author royalties, AI

copyright, AI ethics, AI training data, book publishing, books used to train AI, Claude AI, copyright infringement, copyright law, copyright registration, critique circle, indie author, ISBN, how to publish a book, LibGen, manuscript, pirated books, publishing rights, Reedsy, Scribophile; and/or *communities* like r/selfpublishing, r/publishing, r/selfpublish, r/writers, r/writing.

73.    The digital activity will be served across all devices (desktop, laptop, tablet and mobile), with a heavy emphasis on mobile devices. The digital ads, attached as **Exhibit E**, will directly link to the Settlement Website, where Class Members may access more information about the action, including the Long Form Notice, as well as file a claim electronically.

## **SUPPLEMENTAL TRADE MEDIA[8]**

74.    To supplement the direct notice effort, JND also proposes print and digital notice placements with leading trade publications such as: *Publishers Weekly*, *The Atlantic*, *The Toronto Star*, *The Globe and Mail*, *La Presse*, *The Chronicle of Higher Education*, Goodreads, *Poets & Writers Magazine*, and *Writer's Digest*.

75.    *Publishers Weekly*, referred to as the "bible of the book business," is the leading weekly trade news platform focused on providing news, reviews, bestseller lists and industry analysis for publishers, booksellers, librarians, and literary agents.

76.    *The Atlantic* features articles on culture and the arts, in addition to politics, foreign affairs, business and the economy.

77.    *The Toronto Star* is one of Canada's largest online news sites, and the most read newspaper in the Greater Toronto Area.

78.    *The Globe and Mail* is Canada's most widely read national newspaper, with over 6 million readers across print and digital formats.

---

[8] Trade media have limited availability and publishers reserve the right of ad refusal. If placement of any of the proposed trade media is not feasible at the time of implementation, a comparable alternative will be sought.

79.     *La Presse* has nearly 4 million active monthly readers, with a strong focus on Quebec, Canada.

80.     *The Chronical of Higher Education* is a trusted source of information for university faculty and student affairs professionals, including staff members and administrators.

81.     Goodreads is the world's largest literary social media platform. It enables writers to showcase their books, track reader engagement, and connect with audiences.

82.     *Poets & Writers Magazine* is a leading literary publication for poets, fiction writers, and creative nonfiction authors.

83.     *Writer's Digest* is a respected magazine and website providing tips, tutorials, and market listings to help writers improve their craft and get published.

84.     Digital placements will be similar to those in **Exhibit E**. A sample print ad is attached as **Exhibit F**.

## **PRESS RELEASE**

85.     To further assist in getting "word of mouth" out about the Settlement, JND will distribute a press release at the start of the campaign to approximately 5,000 media outlets nationwide and in Canada, including to journalists who specialize in reporting on higher education, teaching, books, and publishing. Press releases sent to Canadian outlets will be sent in both English and French.

86.     An exemplary Press Release is attached as **Exhibit G**.

## **CLAIMS STIMULATION EFFORT**

87.     Prior to the Claims Deadline, JND will initiate additional efforts as needed to encourage Class Members to submit claims and to remind them of the impending deadline. This claims stimulation effort may include a variety of strategies, including reminder email notices, a reminder digital campaign, and a reminder press release. Digital "reminder" ads may be served to Class Members who visited the Settlement Website but did not complete a claim submission (re-

targeting). In addition, JND will monitor the Settlement Website traffic over the course of the campaign to determine which digital targeting techniques/platforms result in claims filed and then use that information to design the claims stimulation effort. The claims stimulation message will be a simple reminder of the approaching claims deadline.

<u>**SETTLEMENT WEBSITE**</u>

88.     JND will establish and maintain an informational and interactive, case-specific Settlement Website, which will have an easy-to-navigate design and will be formatted to emphasize important information and deadlines. The website will include a page with answers to frequently asked questions, contact information, key dates, and links to important case documents including the Long Form Notice and Settlement Agreement. The Settlement Website will also include information on how potential Class Members can opt out of or object to the proposed Settlement if they choose.

89.     The Settlement Website will feature a searchable database that will allow potential Class Members to search by author, title, publisher, ISBN number, U.S. Copyright Office Registration Number, or ASIN number. The Settlement Website will also have an online claim form. JND will work with the Class Counsel to design the online claim form and submission process to be easy to use and efficient for Class Members. Additionally, a downloadable claim form will be posted on the Settlement Website for Class Members who prefer to print and mail their claim form.

90.     The Settlement Website address will be prominently displayed in all printed notice documents, and will be accessible through email and digital notices, as well as through a QR code in the mailed and print notice.

91.     The Settlement Website will be ADA-compliant and optimized for mobile visitors so that information loads quickly on mobile devices and will also be designed to maximize search engine optimization through Google and other search engines.

**TOLL-FREE NUMBER, EMAIL, AND P.O. BOX**

92.     JND will establish and maintain a 24-hour, toll-free telephone line where callers may obtain information about the action; a dedicated email address to receive and respond to Class Member inquiries; and a post office box to receive Class Member correspondence, claim forms, and exclusion requests.

93.     Class Members will also have the option to speak with customer service representatives five days a week during business hours, who will provide case-related information and can fulfill requests for notice. JND has multiple call center sites, all in the United States, and can ensure enough staffing and redundancy to handle any volume of calls we receive on this matter.

**QR CODE**

94.     JND will create a QR code that will allow quick and direct access to the Settlement Website through mobile devices. The QR code is included, where practicable, in printed notice documents.

**TIMING**

95.     JND will begin sending direct notice as soon as practicable after entry of Preliminary Approval. The direct and supplemental notice initiatives described above will be implemented fully by no later than 60 days after entry of Preliminary Approval (or other period approved by the Court) (the "Notice Date"). Subject to the Court's approval, the exclusion and objection deadline will be 60 days after the Notice Date, and the claims deadline will be 120 days after the Notice Date.

**NOTICE DESIGN AND CONTENT**

96.     My staff and I have reviewed and provided input to the Parties on the form and content of the notice documents. We will promptly implement any Court-ordered revisions and any necessary formatting changes needed for publication. All notice documents are written in plain language and are consistent with documents other courts have determined comply with the

1

2    requirements of Rule 23 of the Federal Rules of Civil Procedure, the Due Process Clause of the

3    United States Constitution, the N.D. Cal. Procedural Guidance for Class Action Settlements, and

4    any other applicable statute, law, or rule. Based on my experience designing class notice programs,

5    in my opinion, the notice documents comply with these requirements, as well as the FJC's *Judges'*

6    *Class Action Notice and Claims Process Checklist and Plain Language Guide*.

7        97.    The notice forms contain plain and easy-to-read summaries of the Settlement. They

8    summarize the nature of the action; the Class definition; an overview of the claims, issues, and

9    positions involved; the right to appear through an attorney, if so desired; the right to request

10   exclusion and the process and deadline for opting out; the binding effect of the Settlement on Class

11   Members; the right to object, the process and deadline for filing an objection, and a statement that

12   the Court can only approve or deny the Settlement and cannot change the terms of the Settlement;

13   the process and deadline for filing a claim; the Settlement Website address and contact information

14   to receive more information; instructions on how to access the case docket via PACER or in person

15   at any of the Court's locations; the date and time of the final approval hearing and a note advising

16   Class Members to check the Settlement Website or the Court's PACER site to confirm that the date

17   has not been changed; and information about attorneys' fees and costs and service awards. The

18   notice informs Class Members that they will be bound by the Settlement unless they submit a timely

19   and valid opt out, and that only those who file a timely and valid Claim Form will be eligible for

20   recovery.

21                                  **REACH**

22       98.    Utilizing all the proposed Class Member contact sources and implementing the

23   supplemental digital effort, trade media placements, and press release maximizes the likelihood of

24   reaching *all* relevant publishers. As a result, the anticipated reach of the proposed Settlement Notice

25   Plan is expected to exceed that of other court-approved programs, as well as the standard set forth

26   by the FJC.

**CLAIM FORM AND FILING PROCESS**

99.     The email notice and digital ads include an embedded link, and the postcard notice and print ads include a QR code. The embedded link and QR code will allow immediate access to the Settlement Website where Class Members may receive more information about the Settlement, search the Works List, and file a claim electronically. Email notice will include a customized link for filing a claim that will pre-populate the Class Member's Unique ID, streamlining the process as much as possible for claimants. Online claim forms not only save substantial money in postage but are generally favored by claimants since the user-friendly wizard feature walks them through the claim form process and prevents them from submitting an electronic claim that is missing required information. Electronic claims also eliminate the need for JND to manually input data and generally make processing easier and less expensive.

100.     The interactive Claim Form will be accessed through a secure portal and will request the same information from claimants that is set forth in the printed Claim Form. The interactive Claim Form will also be designed to ensure that required information is provided before a claimant can move onto the next step of the Claim Form.

101.     Broadly stated—and subject to later revisions, in connection with a Working Group that will convene to discuss the Claim Form and submission process—the Claim Form will require claimants to provide their name and contact information as well as identify, to the extent possible, information for each book including title, author, publisher, ISBN, and/or ASIN. The interactive Claim Form will include a link to the searchable Works List to help claimants find such information.

102.     All claimants may submit Claim Forms electronically through the Settlement Website or physically by mail to the established Settlement P.O. Box. With the exception of the digital ads, all notice documents provide a toll-free telephone line that Class Members may call to request a paper Claim Form. The Claim Form will also be posted at the Settlement Website, allowing claimants to print and mail their claim.

1

2      103.    To ensure a fair and effective process that maximizes benefits to Class Members, JND

3   will make every effort to achieve the highest claims rate practicable. Drawing on its extensive

4   experience in class action administration, JND will implement a user-centered claims process that

5   emphasizes clarity, accessibility, and ease. JND's strategy will use plain language, streamlined web

6   forms optimized for mobile devices, intuitive instructions, and multiple filing options to

7   accommodate user preferences. JND will also work with Class Counsel and the Working Group to

8   minimize the amount of information required from claimants to reduce friction and encourage

9   participation. In addition, JND anticipates that certain aspects of this Settlement will positively

10  influence claim filing rates. For example, the lawsuit has already generated media coverage and social

11  media engagement, and the Notice Plan is designed to further leverage earned media in a way that

12  amplifies the reach of the direct notice and supplemental media campaigns.

13                          **OBJECTIONS AND OPT-OUTS**

14      104.    Members of the Class may object to the Settlement. Class Members may also

15  exclude themselves ("opt-out") entirely. The Long Form Notice explains these legal rights (and

16  others) to Class Members.

17      105.    Any Class Member who wishes to object to any aspect of the Settlement must file

18  with the Court, a written statement of its objection. The objection must include the case name and

19  number (*Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA), the Class Member's name, address,

20  telephone number, signature, and the reasons that they object to the Settlement.

21      106.    Any Class Member may also opt out of the Settlement. To do so, Class Members

22  must submit a written request to JND stating their intent to exclude themselves from the Settlement

23  or use the online opt out form. Exclusion requests that are mailed to JND must include the Class

24  Member's present name, address, and telephone number; a statement that they wish to be

25  excluded from the Settlement; and their handwritten signature. If the Class Member is deceased

26

or incapacitated, the signature of the legally authorized representative of the Class Member must be included.

## **CONCLUSION**

107.    In my opinion, the Notice Plan as described herein will provide the best notice practicable under the circumstances and meets or exceeds the measures undertaken in other similar court-approved best notice practicable notice programs. The Notice Plan is designed to reach as many Class Members as possible and provide them with the opportunity to review a plain language notice with the ability to easily exercise their rights and options or learn more about the Settlement.


I declare under the penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct. Executed on September 5, 2025 at Seattle, Washington.


JENNIFER M. KEOUGH