UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,

Plaintiffs,

v.

ANTHROPIC PBC,

Defendant.

Case No. 3:24-cv-05417-WHA

SUPPLEMENTAL DECLARATION OF COURT APPOINTED CLASS COUNSEL RACHEL GEMAN AND JUSTIN A. NELSON IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

Justin A. Nelson and Rachel Geman jointly declare and state as follows:

1. We are Co-Lead Class Counsel for Plaintiffs in the above-captioned case. We make this supplemental declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement.

2. I, Rachel Geman, am a partner at Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser"), and serve as an attorney of record for Plaintiffs in the above-captioned class action. I am also a court-appointed Class Counsel. I am an active member in good standing of the New York State Bar, and am admitted *pro hac vice* to practice before this Court. *See* Dkt. 29. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.

3. I, Justin A. Nelson, am a partner at Susman Godfrey L.L.P. ("Susman Godfrey"), and serve as an attorney of record for Plaintiffs in the above-captioned class action. I am also a court-appointed Class Counsel. I am an active member in good standing of the bar of Texas, and am admitted *pro hac vice* to practice before this Court. *See* Dkt. 34. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.

4. We provide this supplemental declaration in support of Plaintiffs' motion for preliminary approval of the settlement agreement to explain the significant efforts Class Counsel

have taken to ensure that the claims process is efficient, leads to widespread distribution of the award, and reflects (indeed, replicates) existing contractual arrangements between authors and publishers. The proposed claim process was developed after extensive consultation between Class Counsel and a wide variety of industry experts and stakeholders, including (in addition to the Class Representatives themselves), the Authors Guild, the American Association of Publishers ("AAP"), The Textbook and Academic Authors Association ("TAA"), as well as counsel for each of these groups. The Guild, the AAP, and the TAA are not claimants in this case. None of them have received or will receive any compensation for their work in assisting Class Counsel. Class Counsel have worked exhaustively to develop a claims process to ensure an efficient, broad, and fair distribution of the funds, and one that did not disturb pre-existing industry norms. In particular, Class Counsel's goals were to make a process that (1) will result in a high claims rate and is efficient for claimants; (2) comports with industry norms; and (3) is consistent with due process and with this Court's guidance. Class Counsel submit that the process as outlined accomplishes these objectives.

5. As a preliminary matter, Counsel have not received any objection or other responsive correspondence from any state or federal officials.

6. Class Counsel has retained the public affairs firm Shape Advocacy. Shape Advocacy is assisting with press communications and with ensuring that settlement materials are distributed to all relevant industry, media, and affiliated groups.

7. Class Counsel recognize that many works have only one owner. These instances include: an author whose rights in the work have reverted from the publisher; an author whose rights assigned to the publisher have terminated; a self-published author who did not work with a co-author and never assigned rights to a publisher; a publisher that commissioned a work-for-hire, as defined in the Copyright Act; and a publisher to which all rights in a work have been assigned, with no royalty obligations to an author or anyone else. Most works, however, will have at least one legal owner and at least one beneficial owner. Accordingly, Class Counsel's intent was to design a fair and efficient distribution plan with respect to those works.

8.      Class Counsel began, prior to the Court's hearing on September 8, by developing a proposed joint working group amongst authors and publishers, comprised of the Authors Guild (led by Mary Rasenberger), the AAP (led by Maria Pallante), and counsel for both authors and publishers. Neither the Authors Guild nor the AAP (both non-profits) sought or received any compensation for their participation in the working group. They offered their help because it is in their mission to do so, and because this case is of pronounced significance to their members *See* Dkt. 363-9 (Pallante Decl. ¶8) (explaining the AAP's purpose as "protect[ing] and advance[ing] a balanced legal framework that incentivizes the publication of creative expression and the dissemination of knowledge"); Dkt. 363-10 (Rasenberger Decl. ¶3) (explaining AG's purpose as "promot[ing] the rights and professional interest of authors in various areas, including copyright, freedom of expression, antitrust, fair contracts, and evolving technologies").

9.      The author-publisher working group had been tasked with soliciting input from their respective members, partners, and other relevant stakeholders (as well as the Class Representatives) and formulating ideas for the plan of distribution that was to be agreed or with any disagreements presented to the mediator.

10.     Over the last several weeks, Class Counsel has worked independently and through the mediator to achieve the goal of finalizing a plan of allocation and distribution, claim form, and longform notice, and in that process has solicited information and materials from different groups to develop the best possible plan. Among the goals of Class Counsel in this process was to understand the existing contractual arrangements between authors and publishers in as thorough and broad manner as possible, ensuring that any plan of distribution could honor those arrangements while also ensuring a high claims rate and an efficient claims process. Class counsel believe they have succeeded in doing so through the process below as applicable to works that are not sole owned, with its mix of (a) different defaults for different types of books and (b) the option for Class members not to use the default.

**Commercial, Trade, and University-Press Works**

11.     Class Counsel began by reviewing scores of contracts from different authors and different publishers, concerning different types of works, developed over different periods. That

extensive review, coupled with the experience provided by industry groups, revealed that contracts between authors and publishers: (i) almost always provide an equal, 50-50 split of litigation proceeds for trade or general commercial publications and (ii) provide an equal, 50-50 split of litigation proceeds in the majority of cases where university presses are concerned (except for textbooks, as discussed below). For these works, a 50-50 split is the "norm[]" and "baseline[] . . . in terms of how many contracts are structured"—precisely what counsel had informed the Court the distribution process would reflect. Transcript of September 8, 2025 Hearing (32:7–8) (Nelson).

12. A review of the Named Plaintiffs' contracts illustrates the typicality of equal splits for litigation proceeds in author-publisher contracts in the context of commercial or university-press publications. Those contracts generally provide that "If the copyright of any Work is infringed with respect to the rights granted to Publisher herein, and if the parties proceed jointly, the expenses and recoveries, if any, **shall be shared equally**." *See* Dkt. 147-2 at 11; Dkt. 147-3 at 11; Dkt. 147-4 at 8; Dkt. 147-11 at 11; Dkt. 147-12 at 13; Dkt. 147-21 at 8; Dkt. 147-22 at 7.

13. The proposed distribution process in this case flows directly from these contractual provisions, as well as the broad industry perspective referenced above. First, as a threshold issue, and other than the named plaintiffs who are parties, neither authors nor publisher absent class members are parties in a lawsuit. Second, an award for a given work will be distributed only if the work is *not* opted-out by any claimant. Third—as a non-mandatory default rule—any award for trade or university-press Works will be "shared equally" between the author and the publisher (and then split equally among any co-authors or co-publishers).

14. In addition to our own contractual review, our decision to set the default rate of 50-50 for most types of contracts was further confirmed by the consensus between authors and publishers on this issue. To be clear, our consultation did not simply include speaking with one Author representative. Rather, class counsel consulted extensively with author and publisher counsel and with the class representatives themselves, who were extensively involved in the process. Class Counsel also consulted directly or indirectly with other author and publisher groups. Based on the widespread consensus about these trade and university press contracts along with the

1  contracts that Class Counsel examined, Class Counsel concluded that a 50-50 default rate is appropriate.

15. Class Counsel, as well as authors' coordinating counsel and publishers' coordinating counsel, are mindful that it is not possible to have reviewed every contract, and that not every contract in the trade or university-press context imposes a 50-50 split of litigation proceeds. For that reason, the equal split contemplated by the Claims Form and distribution process is simply a non-mandatory default. Any claimant can choose to not to use the default and instead state that their contractual arrangements provide for a different split than 50-50.  While less easy than accepting the default, it achieves more precision and is by no means onerous:  the claimant would attest to the contractual split and provide the Settlement Administrator with the contractual arrangements in question. In such a case, absent agreement, an independent, neutral third party will determine what the split should be upon review of the contractual arrangements between the author and the publisher. Class Counsel expect that in the overwhelming majority of cases (if not all or almost all of them), the split will be clear from the contract and, even if not, that the author and publisher will reach agreement.

16. In addition to the 50-50 split, these clauses also state that if one party (either the author or the publisher) does *not* participate, the participating party takes the entire amount of the litigation proceeds (although after making every effort to ensure the non-claimant was able to recover).

17. Class Counsel anticipate devoting substantial ongoing time to speaking with Class members to assist in this process.

***Education Works***

18. Class Counsel also undertook a very similar process with respect to education works, which compromise approximately 25% of the Works on the Works List.

19. Class Counsel's determination once again was based on the review of scores of contracts from different publishers and time periods. Class Counsel determined that, unlike in other areas, there is significantly less consistency in textbook contracts and more of a need to review the contract holistically.

20.     Moreover, in our consultations with author and publisher groups,[1] there was not a consensus on a default rate for these educational works. This was, at least in retrospect, unsurprising given the variety of types of agreements for these works.

21.     For these reasons, Class Counsel have concluded that the principles of a fair, reasonable, and adequate distribution plan meant that no default rule could be appropriately applied. Accordingly, the Claims Form asks claimants who are owners of education Works to provide a good-faith representation of what percentage of the litigation proceeds they are owed, *if possible*. To the extent claimants to the work dispute the split of litigation proceeds, the Settlement Administrator will require details about the contractual arrangements themselves, which in most cases likely would include the underlying contract. The Administrator will then review those arrangements and make a determination as to the allocation of the award, subject to any claimant's right to appeal that decision to a special master.

22.     In this way, the distribution process for textbook works is likewise tailored to ensuring the efficient distribution of funds to the broadest possible audience, while honoring existing contractual relationships amongst class members. And overall, Class Counsel strongly believe that the proposed plan of distribution is effective, fair, and widely supported—all for good reason.

23.     We note, finally, that the named plaintiffs and class representatives have likewise expended significant effort to ensure an efficient and fair claims process. Plaintiffs Bartz, Graeber, and Johnson were thoroughly involved in informing Class Counsels' knowledge regarding industry baselines, including with respect to the plan of allocation and distribution, the claims form, and class notice. In addition, the named plaintiffs also brought their experience as published authors to ensure that the claims process and papers would be readily understandable by authors, would be perceived by stakeholders to be fair, and would ensure a high claims rate as well as the prompt submission of claims. The efforts of the named plaintiffs have been vital in developing a claims and distribution process that further the goals that Class Counsel pursued—namely, the quick,

---

[1] Consultations about education works in particular occurred with the Textbook and Academic Authors Association (TAA) and its counsel as well as with the AAP, AG, and authors' and publishers' counsel.

DECLARATION OF RACHEL GEMAN
AND JUSTIN NELSON
CASE NO. 3:24-CV-05417

broad, and accurate disbursement of the award, in a manner that honors the existing contractual relationships between and among class members.

***The Claims Form***

24. Class Counsel also expended significant effort to craft a Claims Form that would ensure the efficient and timely distribution of the award.

25. Class Counsel ensured that the Claims Form would be easy to complete. The Form contains as few sections requiring the Class Members themselves to fill out as practicable; forms will, to the extent practicable, be pre-populated with any relevant information already contained in the Works List, Class List, or other records received by the Settlement Administrator; will be available online; and will not generally require claimants to submit their publishing agreements or other documentation to submit a valid claim. And to the extent issues do arise with the Claims Form, both JND call-center staff will be on hand to help—as will Class Counsel, either receiving calls directly from Class Members or as escalated by JND's call centers.

26. Class Counsel also designed the Claims Form to permit claimants to submit more than one work using the form, assuming all other information (*e.g.*, contact information for competing claimants) is provided for each work. All relevant stakeholders agreed that requiring the coordination of signatures on a single form for each work would be particularly onerous, placing a significant administrative burden on claimants and would likely have the effect of depressing the claims rate. The proposed Settlement Administrator, JND, likewise shares that understanding. Thus, the Settlement Administrator will combine the information on forms submitted for the same work so all Class Members with a relationship to a particular work will have transparency into the other claimants, ensuring that each Work effectively will have one "form."

27. I, Justin A. Nelson, declare under penalty of perjury under the laws of the United States and the State of Texas that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in Austin, Texas on September 22, 2025.

28. I, Rachel Geman, declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in New York, New York on September 22, 2025.

Respectfully submitted,

| | |
|---|---|
| */s/ Rachel Geman* | */s/ Justin A. Nelson* |
| Rachel Geman (*Pro Hac Vice*) | Justin A. Nelson (*Pro Hac Vice*) |
| **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP** | **SUSMAN GODFREY L.L.P.** |
| *Co-Lead Class Counsel.* | *Co-Lead Class Counsel* |