Ivy Ngo (S.B.N. 249860)
**FREEDMAN NORMAND FRIEDLAND LLP**
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
T: (646) 494-2900
Email: ingo@fnf.law

Devin (Velvel) Freedman (*pro hac vice*)
Alex Potter (*pro hac vice*)
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th Street, Suite 915
New York, NY 10017
T: (646) 494-2900
Email: vel@fnf.law
         apotter@fnf.law

*Counsel for Third Party*
*ClaimsHero Holdings LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>          Defendant. | Case No. 3:24-cv-05417-WHA<br><br>**THIRD PARTY CLAIMSHERO HOLDINGS LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER LIMITING THIRD PARTY COMMUNICATIONS WITH CLASS MEMBERS AND OTHER RELIEF PURSUANT TO FED. R. CIV. P. 23(d)** |

# **TABLES OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................ii

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 5

I.      ClaimsHero's services and website .......................................................... 5

II.     The Court granted preliminary approval of the settlement but noted class members'
        reactions were not yet known ................................................................... 5

III.    ClaimsHero unambiguously sought to represent opt-outs from the proposed
        settlement ................................................................................................. 7

IV.     ClaimsHero's opt-out clients were not mislead and fully understood the risks and
        benefits of opting out ............................................................................... 9

V.      Class Counsel conveys concerns to ClaimsHero ..................................... 9

VI.     ClaimsHero addressed Class Counsel's concerns and offered to cooperate......................... 10

VII.    Class Counsel moved to silence ClaimsHero ......................................... 12

VIII.   ClaimsHero addressed the additional concerns identified in the motion............................ 12

LEGAL STANDARD.......................................................................................................... 14

ARGUMENT ...................................................................................................................... 15

I.      There is no evidence of confusion—ClaimsHero's clients all understood its
        communications and made an informed decision to opt out................................. 15

II.     ClaimsHero's website, intake, and advertising are truthful, accurate, and permitted .......... 16

III.    The remedies Class Counsel seek are either unlawful, moot, or improper.......................... 20

IV.     Anthropic's argument is implausible ...................................................... 23

CONCLUSION.................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Alfred v. Pepperidge Farm, Inc.*,
   No. LA CV14-07086, 2020 WL 13587900 (C.D. Cal. Apr. 14, 2020) .................................. 16, 20

*Allen v. Dairy Farmers of Am., Inc.*,
   No. 5:09-CV-230, 2015 WL 13979688 (D. Vt. Sept. 14, 2015) .................................................. 23

*Amaraut v. Sprint/United Mgmt. Co.*,
   No. 3:19-CV-411-WQH-AHG, 2020 WL 1820120 (S.D. Cal. Apr. 10, 2020)................ 14, 18, 21

*Burrell v. Crown Cent. Petroleum, Inc.*,
   176 F.R.D. 239 (E.D. Tex. 1997)................................................................................................ 15

*Camp v. Alexander*,
   300 F.R.D. 617 (N.D. Cal. 2014)................................................................................................ 20

*Chalian v. CVS Pharmacy, Inc.*,
   No. 2:16-CV-8979-AB-AGR, 2020 WL 7347866 (C.D. Cal. Oct. 30, 2020).............................. 20

*Cnty. of Santa Clara v. Astra USA, Inc.*,
   No. C 05-03740 WHA, 2010 WL 2724512 (N.D. Cal. July 8, 2010) ......................................... 19

*Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*,
   214 F.R.D. 696 (S.D. Ala. 2003) ......................................................................................... 14, 15

*Domingo v. New England Fish Co.*,
   727 F.2d 1429 (9th Cir. 1984), *modified*, 742 F.2d 520 (9th Cir. 1984) ..................................... 4

*Fla. Bar v. Went For It, Inc.*,
   515 U.S. 618 (1995)..................................................................................................................... 14

*Gambo v. Lucent Techs., Inc.*,
   No. 05 C 3701, 2005 WL 3542485 (N.D. Ill. Dec. 22, 2005) ...................................................... 21

*Georgine v. Amchem Prods., Inc.*,
   160 F.R.D. 478 (E.D. Pa. 1995)........................................................................................... 18, 20

*Gerlach v. Wells Fargo & Co.*,
   No. C 05-0585 CW, 2006 WL 824652 (N.D. Cal. Mar. 28, 2006) ....................................... 14, 23

*Griffin v. Aldi, Inc.*,
   No. 5:16-cv-0354 (LEK/ATB), 2017 WL 1957021 (N.D.N.Y. 2017) ......................................... 21

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981)............................................................................................................ 14, 21, 22

*In re Cmty. Bank of N. Virginia*,
   418 F.3d 277 (3d Cir. 2005)............................................................ 4, 15, 21

*In re M.L. Stern Overtime Litig.*,
   250 F.R.D. 492 (S.D. Cal. 2008) ........................................................ 14, 15

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1239 (N.D. Cal. 2000) ............................................. 16, 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   No. 05-MD-1720 JG, 2014 WL 4966072 (E.D.N.Y. Oct. 3, 2014) ............ 16

*Lester v. Percudani*,
   No. 3:01CV1182, 2002 WL 1460763 (M.D. Pa. Apr. 18, 2002) ................ 16

*Masonek v. Wells Fargo Bank*,
   No. SACV091048DOCRNBX, 2009 WL 10672345 (C.D. Cal. Dec. 21, 2009) ........ 21

*Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*,
   No. 12-CV-00944-JST, 2016 WL 4080294 (N.D. Cal. July 29, 2016) ........... 16, 20, 22

*Shaw v. Interthinx, Inc.*,
   No. 13-CV-01229-REB BNB, 2014 WL 12741157 (D. Colo. Feb. 7, 2014)......... 15, 21, 23

*Slavkov v. Fast Water Heater Partners, LP*,
   No. 14-cv-04324, 2015 WL 6674575 (N.D. Cal. 2015) ............................ 21

*Stanfield v. First NLC Fin. Servs.*,
   No. C 06-3892 SBA JL, 2006 WL 6582196 (N.D. Cal. Oct. 30, 2006) ......... 14

*Stark v. Patreon, Inc.*,
   No. 22-CV-03131-JCS, 2025 WL 1592736 (N.D. Cal. June 5, 2025) ......... 20

*Wayside Church v. Van Buren Cnty., Michigan*,
   103 F.4th 1215 (6th Cir. 2024) ...................................................... passim

*Wright v. Adventures Rolling Cross Country, Inc.*,
   No. C-12-0982 EMC, 2012 WL 2239797 (N.D. Cal. June 15, 2012) ......... 16, 19

**Other Authorities**

Advisory Committee's Note to 2018 Amendment of Fed. R. Civ. P. 23 .......... 5

CLAIM, Black's Law Dictionary (12th ed. 2024) ...................................... 3

FEDERAL TRADE COMMISSION, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FTC Staff Report (Sept. 2019) .................... 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

ClaimsHero Holdings LLC ("ClaimsHero") is a non-party Arizona law firm engaged in constitutionally protected commercial speech through its website and advertisements seeking to represent clients who want to opt out of the Anthropic settlement and pursue individual copyright "claims against Anthropic in court." Declaration of Matthew Freund ("Freund Decl.") ¶ 4.

As described below, ClaimsHero's website was never misleading, but on being contacted by Class Counsel with "concerns," ClaimsHero immediately edited its website and advertising to eliminate any doubt about its operations. Only six class members had signed retention agreements with ClaimsHero before it made those edits.[1] To efficiently address any concern over ClaimsHero's' representation of those six clients, ***every single one*** has submitted a declaration stating they (i) were not misled by ClaimsHero, (ii) want to opt out of the Settlement, (iii) want ClaimsHero to represent them, and (iv) understand that filing an individual claim against Anthropic entails risk. *See* Declarations of Lisa Barretta, Michael Kochin, Jane Adams, John Carreyrou, Philip Shishkin, and Matthew Sacks (together, "ClaimsHero Client Decls."). Thus, while ClaimsHero denies its version 1 ("V1") website was misleading (and addresses this below), any issues with it are moot.

As detailed below, ClaimsHero's version 2 ("V2") website goes above and beyond in disclosures, stating repeatedly that there is a settlement for "$3,000" totaling "$1.5 billion," but that clients can "opt out" of that settlement by "pursuing your claims against Anthropic in court." ClaimsHero explains that opting out means that clients "are giving up the right to get funds from the class action settlement and will need to file an individual suit, and win or settle it, to collect any funds. That takes more time, and isn't certain . . . ." ClaimsHero asks class members to "[l]et us opt you out,

---

[1] ClaimsHero received submissions from non-class members, but did not take them on as clients.

represent you, and fight for more!" It contains links to both the settlement administrator's and Class Counsel's website. In sum, no reasonable person could read ClaimsHero's website and be misled.

To be clear, this case does ***not*** involve mischaracterizing or misrepresenting the terms of the settlement or class definition, coercing anyone through a power imbalance, harassing or threatening class members, failing to advise potential clients of their rights, mislabeling communications as formal "notices," or even about disparaging Class Counsel.

Indeed, Class Counsel's motion (the "Motion" or "Mot.") is not about a "bait-and-switch" or a "refusal" to cooperate. It's a transparent attempt to both (i) silence ClaimsHero in violation of the First Amendment and (ii) to stymie the right of class members who want to sue Anthropic individually with counsel of their choice. The motive is obvious. The Court has already flagged the settlement might "blow up" and that class members' reactions to it were as-yet unknown. Dkt. No. 437 at 6. This blow up could have serious economic effects on Class Counsel who stand to obtain up to a $375,000,000 fee. Dkt. No. 363-3 at 30. Class Counsel's refusal to work with ClaimsHero to remedy any concerns betrays their motivation as an attempt to protect their own economic interests by monopolizing the communication lines with clients who are settling their claims for just ~$3,000.[2]

Professor Martin Redish has taught at Northwestern University School of Law for the past 52 years and is one of the nation's most influential scholars on class actions and the First Amendment. He has authored nineteen books, over 110 scholarly articles, has been cited in 22 Supreme Court opinions, and is regularly included on Hein Online's list of the 50 most-cited legal scholars of all time. In support of this Opposition, Professor Redish submits the attached declaration (the "Redish Decl."), explaining why firms like ClaimsHero serve an important policy function in ensuring class

---

[2] ClaimsHero recognizes the Court has granted preliminary approval of the settlement, and at this time, ClaimsHero is not saying the Settlement is not "reasonable." But what may be reasonable for some, or most, is not necessarily acceptable to all. Clients have the right to reject this offer (reasonable or not) and seek more. ClaimsHero seeks to represent those class members.

members are meaningfully informed of their rights, why economic incentives often diverge between class counsel and absent class members, and why the sweeping prior restraint sought here would undermine good class action policy and First Amendment principles.

The Court should deny Class Counsel's Motion for at least the following reasons.

*First*, none of ClaimsHero's clients were misled by its website or advertising and Plaintiffs have not established any evidence of actual or potential harm for this Court to remedy. Plaintiffs' theory rests on the *contention* that ClaimsHero failed to make clear it was assisting class members who wished to opt out rather than submit a claim to the Settlement. That *contention* is demonstrably false. Even a cursory review of ClaimsHero's V1 (**and certainly its V2**) website shows repeated and clear explanations that ClaimsHero is opting out its clients from the Settlement and pursuing claims against Anthropic in court. Plaintiffs' suggestion that the word "claim" would confuse anyone into believing ClaimsHero was filing a claim form with the administrator ignores four critical points: (i) the term, as complained about by Class Counsel, only appeared on the V1 website and ***not*** on the V2 website; (ii) where it appeared, it was used in the ordinary (and legally accurate) sense of pursuing claims in court, not filing paperwork with a settlement administrator; (iii) the ordinary meaning of "claim" includes lawsuits, *see* CLAIM, Black's Law Dictionary (12th ed. 2024)[3]; and (iv) every V1 client has sworn that they understood ClaimsHero was opting them out, that they were not misled, and that they wish to remain represented by ClaimsHero.

*Second*, Plaintiffs' concerns are moot. ClaimsHero already went above and beyond to address Class Counsel's disingenuous "concerns" the *same exact day* they reached out. ClaimsHero edited its website and immediately paused its social media advertisements until they could be revised. Indeed,

---

[3] ("The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional"; "A demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for.")

even after curing Class Counsel's "concerns," ClaimsHero offered to confer further if Class Counsel wanted. Rather than work with ClaimsHero in good faith, Class Counsel decided to immediately seek an unconstitutional and sweeping prior restraint against ClaimsHero's speech.

*Third*, **even if** ClaimsHero had misled class members (it did not), the remedies sought in the Motion are simply unlawful under the First Amendment. As an *initial* matter, ClaimsHero's speech is protected, and courts around the country repeatedly find that the proper remedy for misleading communications is correcting them, not barring all communications. *Furthermore,* Class Counsel must not "overburden the person's right to opt out," Dkt. No. 437 at 12, and class members also have a right to be represented by counsel of their choice. Dkt. No. 440-1 at 20**;** *see In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 312–13 (3d Cir. 2005) ("Indeed, the 'best notice' provision in Rule 23(c)(2)(B) affords class members the right to contact their own attorneys to determine whether joining a proposed class-wide settlement is in their best interests."). But the Motion seeks to stop all communication outside prior judicially approved communications.

The law protects ClaimsHero's communications for good reason: "lawyers other than class counsel are well-situated—by knowledge and incentives alike—to point out to potential class members why their recovery is too low" while class "counsel has every incentive to obtain judicial approval of th[e] [settlement] agreement." *Wayside Church v. Van Buren Cnty., Michigan*, 103 F.4th 1215, 1224 (6th Cir. 2024); *see also Domingo v. New England Fish Co.*, 727 F.2d 1429, 1441 (9th Cir. 1984), *modified*, 742 F.2d 520 (9th Cir. 1984) ("the class representative and his counsel may have interests that are in conflict with those of the class members . . . some class members might profit more from remaining inactive or opting out."). The sweeping prior restraint on ClaimsHero requested by Class Counsel here would "essentially eviscerate that right." *In re Cmty. Bank of N. Virginia*, 418 F.3d at 313. As Professor Redish explains, "stopping speech like ClaimsHero's here will be detrimental, not helpful, to the class." Redish Decl. ¶ 15(a).

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    ClaimsHero's services and website

ClaimsHero is an Arizona law firm that represents clients with respect to three primary types of legal claims: (1) asserting individual claims in mass tort cases and arbitrations,[4] (2) assisting class members in submitting claims in certain class action settlements,[5] and (3) representing class members in opting out of certain class actions to pursue their claims directly.[6]  As class action settlement "funds are frequently left unclaimed," Advisory Committee's Note to 2018 Amendment of Fed. R. Civ. P. 23, and the weighted average claims rate of direct notice recipients *is just 4%*,[7] ClaimsHero's website also notifies consumers about larger class action settlements *even when* it's not representing clients for those claims.[8]

### II.    The Court granted preliminary approval of the settlement but noted class members' reactions were not yet known

Anthropic's "inherently, irredeemably infringing" (Dkt. No. 231 at 19) piracy was carried out the highest levels: "Anthropic's co-founder downloaded the pirated books to avoid the trouble of paying for them . . . ." Dkt. No. 244 at 25. The Court's summary judgment order concluded that "[w]e will have a trial on the pirated copies used to create Anthropic's central library and the resulting damages, actual or statutory (*including for willfulness*)." Dkt. No. 231 at 31.[9]  Indeed, Anthropic

---

[4] *See, e.g.*, https://claimshero.io/tiktok_addiction.

[5] *See, e.g.*, https://claimshero.io/colleges.

[6] *See, e.g.*, https://claimshero.io/anthropic-copyright-infringement.

[7] *See* Federal Trade Commission, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FTC Staff Report (Sept. 2019) at 11, available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospectiveanalysis-settlement-campaigns/class_action_fairness_report_0.pdf.

[8] *See, e.g.*, https://claimshero.io/webtpa-employer-services-data-breach-settlement (stating that "[o]ur mission is to help people get the compensation they deserve. We are providing this information . . . to ensure you don't miss out on money . . . However . . . claims submitted for this settlement will not be reviewed, monitored, or have additional support from ClaimsHero.").

[9] Emphasis always added unless otherwise noted.

knows it faces the "prospect of ruinous statutory damages — $150,000 times [five] million books." Dkt. No. 244 at 28-29 (internal citation omitted).

So Anthropic settled. During the preliminary settlement approval process, the Court questioned both sides on why their proposed notice to the Class "does not describe any of the past orders. Nor does it state, for instance, the range of possible jury results from $0 to $150,000 per work — nor why named plaintiffs believe $3,000 is fair and reasonable." Dkt. No. 383 at 4. The Court required a much more substantial notice that included the possibility of a jury verdict. *Id*.

On October 17, 2025, the Court preliminarily approved the Settlement but warned that it was "**premature to assess class members' reactions**" and noted that it could "blow up." Dkt. No. 437 at 6. Some class members have already begun stating their reactions on the Court's docket—objecting to the Settlement's scope (Dkt. No. 438) and that it does "not fairly compensate[e]" for "the egregious nature and scope of the misuse," because the law imposes "strict penalties" for "willful copyright infringement such as taken place here" of "upwards of $150,000 in penalty per work, as a means of discouraging such blatant theft," and that an approximately $3,000 per work settlement is "insulting to the artist" and "invites further misuse in the future." Dkt. No. 439.

Of course, it is no secret that class "counsel has every incentive to obtain judicial approval of th[e] [settlement] agreement." *Wayside Church*, 103 F.4th at 1224. Here, **Class Counsel's incentive is $375 million**. Dkt. No. 363-3 at 30. To be sure, normal attorney client communications/push back don't exist in class actions, including because "even after certification, class counsel do not possess a traditional attorney-client relationship with absent class members." *Wayside Church*, 103 F.4th at 1223. Indeed, the courts have said that "some proposed settlements should be undermined . . . and every proposed settlement should be subject to scrutiny before the court finally approves it." *Id*. And so "for all these reasons, a lawyer's truthful, non-misleading criticisms of a proposed settlement are

1    not a valid reason to proscribe . . . communications with members of a proposed (or actual) class."

2    *Id.* at 1224

3    **III.    ClaimsHero unambiguously sought to represent opt-outs from the proposed settlement**

4            On October 27, 2025, ClaimsHero launched a website ("V1") seeking to represent class

5    members that wanted to "opt out" of the Settlement and file "claims against Anthropic in court."

6    Freund Decl. ¶¶ 4-5. From the time V1 launched through when Class Counsel contacted ClaimsHero

7    regarding their concerns, ClaimsHero's advertisements, website, client intake, and engagement

8    process unambiguously ensured that potential clients understood ClaimsHero was seeking to opt them

9    *out of* the Settlement—not seek payment *from the* Settlement.

10            **Website**: ClaimsHero's V1 website referenced opting out of the Settlement no less than five

11    times (*Id.* ¶ 6): (i) the **first sentence** specified that "authors and rightsholders **may be entitled to more**

12    **compensation by opting-out of the settlement.**" *Id.* ¶¶ 7-8 & Ex. 1; (ii) the "Overview" section

13    explained the Settlement provides "$3,000 per work" but "you may be eligible for more compensation

14    than provided by the Settlement by **opting out of it and pursuing your claims against Anthropic in**

15    **court.**" *Id.* ¶¶ 9-10 & Ex. 2; (iii), the FAQ section said: "Is ClaimsHero only representing opt-outs

16    from the Settlement?" "**Yes, ClaimsHero is only representing authors and rightsholders who intend**

17    **to opt-out from the Anthropic Settlement.**" *Id.* ¶¶ 11-12 & Ex. 3; (iv) the FAQs answered "**why would**

18    **an author or rightsholder op-out of the Settlement?**" with "[i]f Anthropic is determined to have

19    infringed the works, then the Copyright Act provides for statutory damages up to $150,000 for willful

20    infringement. Authors and rightsholders **may wish to seek these damages directly against Anthropic**

21    **rather than settling for $3,000 per work.**" *Id.* ¶¶ 13-14 & Ex. 4; (v) the FAQs answered "How do I

22    know if my work is part of the class settlement **so that I can opt-out?**" by providing a **link to the**

23    **settlement administrator's website** hosting the Works List. *Id.* ¶¶ 15-16 & Ex. 5.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Intake Process**: During the intake process, ClaimsHero made prospective class members click, **two separate times**, that they wanted to be excluded from the class. *Id.* ¶ 19. First, they had to click the radio button below requesting "to be excluded from the proposed Class":

> I hereby request to be excluded from the proposed Class in Bartz v. Anthropic PBC, No. 3:24-cv05417-WHA (N.D. Cal.).*
>
> ○ Yes  ○ No

*Id.* ¶¶ 20-21 & Ex. 7. Later on the page, they had to click a second radio button, authorizing ClaimsHero to take the steps "on my behalf to exclude me from the proposed Class":

> I authorize Claimshero to take the necessary steps on my behalf to exclude me from the proposed Class in Bartz v. Anthropic PBC, No. 3:24-cv05417-WHA (N.D. Cal.).*
>
> ○ Yes  ○ No

*Id.* ¶¶ 22-23 & Ex. 8.

**Engagement Letter**: If a potential client completed the intake process, ClaimsHero presented them with an engagement letter. *Id.* ¶ 24. The first sentence of ClaimsHero's engagement letter for its Anthropic opt-out clients states that they "*hereby retain ClaimsHero* Holdings LLC (the 'Firm') *to represent You* (the 'Client') *in opting out from the class action settlement* in *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA (N.D. Cal.) (the 'Settlement') *and asserting your copyright claims against Anthropic*." *Id.* ¶ 25. Thus, there is no reasonable prospect that a prospective client would be misled or confused about the scope of ClaimsHero's engagement—and no client who engaged ClaimsHero was confused. *See* ClaimsHero Client Decls.

**Social Media**: On October 27, 2025, ClaimsHero began social media advertising to truthfully inform class members that they may be entitled to more compensation than the Settlement provided and to direct them to ClaimsHero's website so that they could determine their eligibility to opt out and file a claim in court against Anthropic. *Id.* ¶ 26.

8

**IV.    ClaimsHero's opt-out clients were not mislead and fully understood the risks and benefits of opting out**

Six people that completed ClaimsHero's Anthropic-related intake forms while V1 of the website was up, were class members that signed engagement letters. None of them were misled by ClaimsHero. To the contrary, **each** has filed a declaration in support of ClaimsHero's Opposition that: (1) they were **not misled** by ClaimsHero, (2) they **fully understood** what it meant to opt out of the Settlement and **are aware of the risks and benefits** of opting out, and (3) they **continue** to want ClaimsHero to represent them as counsel in opting out of the Settlement and pursuing their individual claims against Anthropic. *See* ClaimsHero Client Decls.

**V.    Class Counsel conveys concerns to ClaimsHero**

On November 2, 2025, Class Counsel contacted ClaimsHero regarding unspecified "concerns." Freund Decl. ¶ 27. Counsel for ClaimsHero responded the same evening (a Sunday) setting up a call for the next day. *See* Declaration of Alex Potter ("Potter Decl.") ¶ 4. ClaimsHero immediately paused all advertising until it could hear Class Counsel's concerns. Freund Decl. ¶ 28.

On November 3, 2025, ClaimsHero's outside counsel, its CEO, and Class Counsel held a call. Potter Decl. ¶ 5. Class Counsel claimed ClaimsHero's website was misleading because they found it unclear whether ClaimsHero was submitting claims to the settlement administrator or opting clients out of the Settlement. *Id.* ¶ 6. Mr. Potter requested detail regarding what aspects of the website Class Counsel considered misleading. *Id.* ¶ 7.

Class Counsel pointed to (1) the existence of a button that stated "start a claim" to initiate ClaimsHero's intake process and (2) that the Anthropic-related website did not have an *express* statement that ClaimsHero is not affiliated with the settlement administrator or Class Counsel. *Id.* ¶ 8. Mr. Potter said he would address potential revisions to the website with ClaimsHero and asked how the website might be revised such that Class Counsel's concerns would be allayed. *Id.* ¶ 9. Class Counsel responded with three demands: that (1) ClaimsHero take down its website regardless of any

revisions it might make, (2) ClaimsHero disclose all Anthropic-related advertisements to them, and (3) ClaimsHero disclose the number of clients that had retained it. *Id.* ¶ 10. Mr. Potter informed Class Counsel he would discuss their requests with his client. *Id.* ¶ 11.

## VI.   ClaimsHero addressed Class Counsel's concerns and offered to cooperate

After the call, ***and that same day***, ClaimsHero addressed Class Counsel's concerns by creating a new version of the website that went above and beyond on disclosures: "V2." Freund Decl. ¶¶ 30-31. *First*, even though the "Start a Claim" button was truthful because its clients intend to bring *claims* against Anthropic in court, ClaimsHero revised the button to: "Opt Out Today." *Id.* ¶¶ 32, 34 & Ex. 9. On reviewing the site after the call, ClaimsHero realized that its V1 website had inadvertently re-used a graphic from the claims processing side of its operations that stated clients could "claim your share in minutes" and "complete our form" and "we handle the rest." Dkt. No. 442-2 at 4; Freund Decl. ¶ 37. ClaimsHero immediately deleted that graphic from V2. Freund Decl. ¶ 37.

ClaimsHero also revised its opening paragraph in V2 to make it absolutely clear that there is a settlement for $3,000 per work, that class members could be entitled to more, but that to do so, they must opt out of the settlement, and fight for it. *Id.* ¶¶ 33-34 & Ex. 9.  It also double checked the other representations in that opening paragraph were accurate too. The maximum potential opt out claim, the status, the total number of class members eligible, and the time it takes to sign up with ClaimsHero are all accurate and truthful:



*Id.* at Ex. 9.

CLAIMSHERO'S OPPOSITION TO MOTION FOR ORDER LIMITING THIRD PARTY
COMMUNICATIONS WITH CLASS MEMBER AND OTHER RELIEF

1   To further address Class Counsel's concerns, ClaimsHero revised the "Overview" section of

2   V2 to ensure it included (i) as the first sentence in **bold font** that it was **not** affiliated with class

3   counsel or settlement administrator and was **only seeking to represent** opt outs of the settlement; (ii)

4   that the current settlement provided for $1.5 billion or $3,000 per work; (iii) that you "may be eligible

5   for more compensation than provided by the Settlement by opting out of it and pursing claims against

6   Anthropic in court"; and concluded by asking class members to (iv) let ClaimsHero "represent you

7   in your case against Anthropic by opting out now!"

8

9   

10

11

12

13

14

15   *Id.* ¶¶ 35-36 & Ex. 10. ClaimsHero also revised the FAQ about why a class member would opt out.

16   The FAQ now asks why an author would "**opt out**" and "**file an individual lawsuit**," and responds

17   by telling class member they "**have a right to let the class action resolve their claims** . . . for just

18   $3,000" but "**also have the right to opt out** . . . and let us (or another law firm) seek damages directly

19   against Anthropic":

20

21   

22

23

24

25   *Id.* ¶¶ 38-39 & Ex. 11. Finally, in response to the FAQ "where can I find out more information about

26   this case," ClaimsHero added links to both Class Counsel's websites ***in addition to*** the pre-existing

27   link to the settlement administrator:

28

CLAIMSHERO'S OPPOSITION TO MOTION FOR ORDER LIMITING THIRD PARTY
COMMUNICATIONS WITH CLASS MEMBER AND OTHER RELIEF

**Where can I find out more information about this case?**

You can find more information on the claim administrator's website, by contacting class counsel at Susman Godfrey, or Lieff Cabraser, or by contacting ClaimsHero.

*Id.* ¶¶ 40-41 & Ex. 12. Mr. Potter notified Class Counsel that the revisions had been made, writing: "I trust this correspondence has resolved your concerns. To the extent it has not, I'd be happy to speak with you about what exactly you find problematic." Dkt. No. 442-3 at 2; Potter Decl. ¶¶ 12-13. This is the opposite of the "Refusal to Cooperate" Class Counsel asserts (at 13). Nor were the revisions merely "cosmetic." *Id.* They were substantive changes made specifically to address the precise concerns Class Counsel raised during the meet-and-confer.

## VII.    Class Counsel moved to silence ClaimsHero

Class Counsel did not further engage despite ClaimsHero's immediate and good faith response. Instead, the next day, Class Counsel filed its Motion seeking to impose a prior restraint on ClaimsHero's truthful and accurate speech by forcing it to "delete" its webpage and "any related solicitations." Mot. at 18-19. In sum, the Motion seeks ***not*** to ensure truthful communication with class members about the Settlement, something ClaimsHero was already doing, but rather to prevent anyone from communicating with and/or educating class members about their rights.

## VIII.    ClaimsHero addressed the additional concerns identified in the motion

Class Counsel's motion mostly regurgitated the issues ClaimsHero had already addressed in its V2 revamp. That said, it did object to some additional language. In further evidence of good faith, and out of an abundance of caution, ClaimsHero *again* revised its website and advertisements to eliminate even these "issues." For example, ClaimsHero revised the generic account creation page complained of (at 15) to remove all refences to "claims" and "taking care of the rest." Freund Decl. ¶¶ 43-44 & Ex. 13. And to further address Class Counsel's complaints that the ramifications of opting out weren't clear enough, ClaimsHero also added the following FAQ, which (i) explains the consequences of opting out in plain English, (ii) links to the settlement administrator's own FAQ

12

1    website about opting out, and (iii) reproduces the settlement administrator's own language about

2    opting out:



8    *Id.* ¶¶ 45-46 & Ex. 14 (highlights added). While ClaimsHero's prior advertising was accurate, it

10   also revised those to prominently display that its representation is limited to opt outs, for example:

19   *Id.* at ¶¶ 48-50 & Ex. 15. Of course, these ads link back to ClaimsHero's website—which includes all

20   the disclosures already discussed and still requires class members to go through the rigorous intake

21   procedures, radio buttons, and engagement letter disclosures discussed above.

22          In light of Class Counsel's concerns, and out of an abundance of caution, ClaimsHero even

23   removed its *single* ad reference saying clients may qualify for a "serious cash settlement," despite

24   that being true—clients are likely to obtain a better settlement from Anthropic by filing individually.

25   Mot. at 13; Freund Decl. ¶ 47.

## LEGAL STANDARD

It is "well established that lawyer advertising is commercial speech" accorded First Amendment protection. *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995); *accord Wayside Church*, 103 F.4th at 1221. As this Court has explained, under *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), the Constitution requires that a Rule 23(d) order be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gerlach v. Wells Fargo & Co.*, No. C 05-0585 CW, 2006 WL 824652, at *6 (N.D. Cal. Mar. 28, 2006) (quoting *Gulf Oil Co.*, 452 U.S. at 101). Any such order must also be "'carefully drawn . . . [to] limit[] speech as little as possible, consistent with the rights of the parties under the circumstances[,]' *i.e.,* 'giving explicit consideration to the narrowest possible relief which would protect the respective parties.'" *Amaraut v. Sprint/United Mgmt. Co.*, No. 3:19-CV-411-WQH-AHG, 2020 WL 1820120, at *2 (S.D. Cal. Apr. 10, 2020) (quoting *Gulf Oil*, 452 U.S. at 102); *accord Stanfield v. First NLC Fin. Servs.*, No. C 06-3892 SBA JL, 2006 WL 6582196, at *2 (N.D. Cal. Oct. 30, 2006).

The moving party bears the burden of proving both that (1) "a particular form of communication has occurred or is threatened to occur"; and (2) "the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation." *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 697 (S.D. Ala. 2003). A Rule 23(d) order restricting speech requires specific findings of a "likelihood of serious abuses." *Gulf Oil Co.*, 452 U.S. at 104. "It is not enough that a *potentially* coercive situation exists." *In re M.L. Stern Overtime Litig.*, 250 F.R.D. 492, 496 (S.D. Cal. 2008) (emphasis in original). The "court *cannot* issue an order without evidence that a potential for serious abuse exists." *Id.*; *see also Cox Nuclear Med.*, 214 F.R.D. at 697 ("[C]ourts have routinely recognized that the moving party must present an evidentiary showing of actual or threatened abuse by the party sought to be restrained."). District courts must therefore

14

"specif[y] which portions of the [communications are] objectionable" or "misleading" and "make[] specific findings of fact with respect" to each such objectionable or misleading communication. *In re Cmty. Bank of N. Virginia*, 418 F.3d at 311.

## ARGUMENT

### I.    There is no evidence of confusion—ClaimsHero's clients all understood its communications and made an informed decision to opt out

The Court should reject Class Counsel's requested relief because they "have failed to present any evidence that the consenting plaintiffs were, in fact, misled" and "the only evidence" is that they were "not misled." *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB BNB, 2014 WL 12741157, at *3 (D. Colo. Feb. 7, 2014) (holding that the remedy of "enjoining the plaintiff from all solicitation efforts . . . goes too far" and refusing to strike consents). Plaintiffs must show "some evidence that justifies an interference with [a non-party's] speech. The court cannot issue an order without evidence that a potential for serious abuse exists." *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 244 (E.D. Tex. 1997). As noted above, "[i]t is not enough that a *potentially* coercive situation exists." *In re M.L. Stern Overtime Litig.*, 250 F.R.D. at 496 (emphasis in original) ( "Plaintiffs do not, however, provide actual evidence that [class members] experienced coercion or felt misled"); *see Cox Nuclear Med.*, 214 F.R.D. at 697 ("moving party must present an evidentiary showing of actual or threatened abuse by the party sought to be restrained").

There is no evidence that ClaimsHero has, in fact, misled anyone, or created even a potentially coercive situation for the preliminary Settlement class. The opposite is true. ClaimsHero's Anthropic opt-out clients have **attested** that they were **not** misled, they **understand** the risks and benefits of opting out of the Settlement and pursuing their claims against Anthropic in court, and have engaged ClaimsHero to prosecute those claims. *See* ClaimsHero Client Decls.

To be sure, "this is not a case where an *adverse party* is attempting to harass or confuse absent class members." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal.

2000). To the contrary, ClaimsHero seeks to *represent* the interests of individual absent class members—albeit in a way that does not benefit the economic incentives of Class Counsel. *See Wayside Church*, 103 F. 4th at 1224. Plaintiffs have presented *no* evidence of actual confusion, prejudice, or coercion because none exists.

**II.    ClaimsHero's website, intake, and advertising are truthful, accurate, and permitted**

As an initial matter, Class Counsel suggests (at 12) that ClaimsHero has created a "realistic danger that the communications will chill participation in the class action." (quoting *Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 EMC, 2012 WL 2239797, at *5 (N.D. Cal. June 15, 2012)). But "criticisms of a proposed settlement are not a valid reason to proscribe [a lawyer's] communications with members of a proposed (or actual) class." *Wayside Church*, 103 F.4th at 1224. Nonparties like ClaimsHero "are free to encourage class members to opt out of or vote against a class action settlement." *Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*, No. 12-CV-00944-JST, 2016 WL 4080294, at *6 (N.D. Cal. July 29, 2016); *see also Alfred v. Pepperidge Farm, Inc.*, No. LA CV14-07086, 2020 WL 13587900, at *5 (C.D. Cal. Apr. 14, 2020) ("The parties (and non-parties) are free to encourage class members to opt out of or vote against a class action settlement, provided they do so in a fair manner that avoids material misrepresentations or omissions."); *Lester v. Percudani*, No. 3:01CV1182, 2002 WL 1460763, at *3 (M.D. Pa. Apr. 18, 2002) (finding that specific, truthful communications to class members were not misleading). Indeed, "[n]othing prohibits nonparties to a class action litigation from communicating with class members." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 JG, 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014).

Class Counsel next argues (at 12–13), that ClaimsHero misled class members by "engag[ing] in bait-and-switch tactics, directing Class Members to their webpage to supposedly file a claim," *i.e.*, "a claim in the Settlement," when, instead, ClaimsHero is seeking to opt class members out of the

settlement without "explain[ing] that after opting out, the only way to seek recovery from Anthropic is to file a separate lawsuit, with all the attendant litigation burdens and risks." This is clearly false. First, all class members that signed up for V1 have stated they were not mislead.[10] *See* ClaimsHero Client Decls. Second, no reasonable reader of ClaimsHero's V2 website could possibly leave with that implication. The *weak* criticisms of Class Counsel were addressed, *i.e.,* the "claim" button and other graphics have been replaced for language discussing "opt outs." And the website repeatedly tells class members that ClaimsHero wants them to "opt out" of the settlement, give up the $3,000, and fight for more, saying:

(i)      "let us opt you out, represent you, and fight for more!";

(ii)     "ClaimsHero is only representing . . . Opt Out[s] of the Anthropic Settlement";

(iii)    that $3,000 is available, but that "you may be eligible for more compensation . . . by opting out **and pursuing your claims against Anthropic in court**";

(iv)    "Let us represent you in your case against Anthropic by **opting out** now!";

(v)     in an FAQ on "why" a class member would "**opt out of the settlement and have ClaimsHero file an individual lawsuit**" and answering that they could stay in the settlement and get "$3,000. **But you also have the right to opt out of that settlement and let us . . . seek damages directly against Anthropic**";

(vi)    in another FAQ "what . . . opting out of the settlement mean[s]" in "plain English," *i.e.,* that you "**are giving up the right to get funds from the class actions settlement and will need to file an individual suit, and win or settle it, to collect any funds. That takes more time, and isn't certain** . . . ";

(vii)   in another FAQ that "ClaimsHero is **only representing authors . . . who intend to opt-out from the Anthropic Settlement**";

Freund Decl. ¶ 25 & Exs. 3, 7, 8, 9, 10, 11, 14.  Moreover, ClaimsHero's intake process *still* requires prospective clients to *twice click* that they (a) want to be opted out of the class, and (b) want ClaimsHero to take the actions necessary to opt them out; and ClaimsHero's engagement letter *still*

---

[10] As mentioned above, ClaimsHero V1 was not misleading either, but the declarations moot this point. To save space, we address V2 in this brief.

CLAIMSHERO'S OPPOSITION TO MOTION FOR ORDER LIMITING THIRD PARTY
COMMUNICATIONS WITH CLASS MEMBER AND OTHER RELIEF

*begins* with a statement that clients have retained ClaimsHero to represent them "in opting out from the class action settlement . . . and asserting your copyright claims against Anthropic."

Indeed, not only are ClaimsHero's communications truthful and accurate individually, Plaintiffs ignore that "[w]hether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication." *Amaraut*, 2020 WL 1820120, at *3. "A court therefore must examine the context in which the communications were made and the effect of the communications in determining whether, and how much, communication should be restricted." *Id.* (internal quotation marks omitted). When a nonparty communicates with absentee class members regarding rights to opt-out of a class action settlement, a communication is misleading if it makes "it unlikely that class members, who received these communications or were informed of their contents, made an informed choice to exclude themselves from the class." *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 490 (E.D. Pa. 1995). As described in detail above, no reasonable reading of ClaimsHero's communications would find them individually, let alone as a whole, misleading or untruthful. And far from being unlikely that class members made an informed choice, here the evidence shows the class members who hired ClaimsHero made an informed choice. *See* ClaimsHero Client Decls.

Class Counsel further complains (at 13–14) that ClaimsHero's webpage "is subverting the Court-approved notice and claims processes" because it "fails to adequately advise Class Members of their rights under the Settlement" or "the consequences of opting out to engage in private litigation." Class Counsel is, again, wrong. ClaimsHero repeatedly advises clients of their right to a "$3,000" payout from the class settlement, including in **(i) its opening paragraph** ("Anthropic has received preliminary court approval of a settlement . . . That settlement provides for just $3,000 per copyright claimant . . . Unless you take action [you] will be automatically included in that

settlement"); **(ii) its "overview" section** ("[o]ther lawyers . . . have reached a settlement in a class action lawsuit [against] Anthropic . . . The current settlement provides for $1.5 billion to make cash payments to members of the Class – approximately $3,000 per work"); and **(iii) in its FAQ section** ("[i]f you are a class member, you have the right to let the class action resolve your claims and settle them for just ~$3,000"). Freund Decl. at Exs. 9, 10, 11. Moreover, as detailed immediately above, ClaimsHero adequately advises clients about the consequences of opting out, including expressly quoting the settlement administrator's own language on these consequences and stating that filing a lawsuit "takes more time, and isn't certain." Freund Decl. Ex. 14.

Class Counsel also falsely claims (at 17) that ClaimsHero "direct[s] people away from the Settlement Website." In reality, ClaimsHero's Anthropic webpage *links* to the settlement administrator's website *three times*, and links to *both Class Counsel's websites* in a FAQ responding to "Where can I find out more information about this case?" *See supra* Factual and Procedural Background, §§ VI, VIII.

Class Counsel's cited authorities do not counsel a different result. *Wright v. Adventures Rolling Cross Country, Inc.*, involved "problematic" communications from Defendants to Plaintiffs, including "comments about how Plaintiffs' lives will be subject to public scrutiny as a result of the litigation—including future employers," and assertions that plaintiffs' counsel in that case "are interested solely in a payoff" and "have acted unethically." 2012 WL 2239797, at *5. None of those concerns are present here. Likewise, *Cnty. of Santa Clara v. Astra USA, Inc.*, is inapposite because that case involved a **defendant** communicating **settlement offers** to absentee class members in a manner that did not provide a "full, fair, and accurate explanation of putative class members' rights." No. C 05-03740 WHA, 2010 WL 2724512, at *1 (N.D. Cal. July 8, 2010). ClaimsHero is not a

defendant, is not seeking to settle claims against it, and provides full and fair explanations, including *three* links to the settlement administrators website and *two* links to class counsel's websites.[11]

Class Counsel's other cases are distinguishable for similar reasons. *See Chalian v. CVS Pharmacy, Inc.*, No. 2:16-CV-8979-AB-AGR, 2020 WL 7347866, at *4 (C.D. Cal. Oct. 30, 2020) (non-party website contained "misleading, inaccurate, and/or argumentative" communications like "disparaging remarks" about the class counsel and unsupported statements about the value of the claims like "the class could get $100 million for claims that [were being] settl[ed] for $25,000"); *Alfred*, 2020 WL 13587900, at *5 (objectionable communications "misstated or omitted material information regarding Settlement procedures and the terms of the Amended Consignment Agreements"); *Georgine*, 160 F.R.D. at 490 ("Various communications disseminated to class members by attorneys opposed to this settlement were, on their face, clearly materially false and misleading in several respects."); *Stark v. Patreon, Inc.*, No. 22-CV-03131-JCS, 2025 WL 1592736, at *15 (N.D. Cal. June 5, 2025) (involved both confusing language about attorney client relationships and "incomplete and misleading information about the settlement . . . and their rights under the Settlement Agreement.").

## III.     The remedies Class Counsel seek are either unlawful, moot, or improper

The Court must ensure that any Rule 23(d) order is "grounded in good cause and issued with a heightened sensitive for the First Amendment," *Camp v. Alexander*,  300 F.R.D. 617, 619 (N.D. Cal. 2014), by ensuring that the order "limits speech as little as possible, consistent with the right of

---

[11] For the same reason, other cases relied on by Class Counsel for this same point are unpersuasive. *See Retiree Support Grp. of Contra Costa Cnty.*, 2016 WL 4080294, at *6 (finding communications misleading where they contained "a number of significant misstatements and omissions"); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d at 1244-45 (despite finding communications misleading, including because they were labeled as "notices," which has "an official meaning" in the class-action context, the court declined to ban all communication because it would result in "putative class members [] forever walled off from any effort at solicitation, a proposition that seems unsupportable").

the parties under the circumstances, *i.e.,* giving explicit consideration to the narrowest possible relief which would protect the respective parties," *Amaraut*, 2020 WL 1820120, at *2 (internal quotations and brackets omitted). Plaintiffs' sweeping request for a gag order on ClaimsHero cannot meet that standard.

*First*, courts are "not free to bar wholesale solicitation" or advertisement "in light of the Supreme Court's decisions" regarding First Amendment protection of attorney advertisement. *In re Cmty. Bank of N. Virginia*, 418 F.3d at 313 n.30. Even if Plaintiffs' contention that ClaimsHero's communications are misleading were correct (it is not), their requested remedy ignores the Supreme Court's requirement that ClaimsHero's speech must be burdened "as little as possible." *Gulf Oil Co.*, 452 U.S. at 102. Plaintiffs' request for a complete gag order, requiring ClaimsHero to "cease any related solicitation" regardless of whether it is misleading and to "delete its misleading webpage(s)," is far from the "narrowest possible relief" the Supreme Court requires, *id.*, and is contrary to numerous cases where courts have rejected such a sweeping remedy, even when parties to the communications are misleading or coercive. *See, e.g. Shaw*, 2014 WL 12741157, at *3-4 ("the relief requested— enjoining the plaintiffs from all solicitation efforts—goes too far" even after finding the communications misleading); *Griffin v. Aldi, Inc.*, No. 5:16-cv-0354 (LEK/ATB), 2017 WL 1957021, at *8 (N.D.N.Y. 2017) (denying request to prohibit "all contact between putative class members and Defendants" concerning "any element of this action"); *Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, at *7 n.4 (N.D. Ill. Dec. 22, 2005) (denying request for "a gag order forbidding Defendant from communication with any prospective class member concerning the suit or settlement of claims" because "this request has an aura of prior restraint, a measure quite disfavored in the law"); *Slavkov v. Fast Water Heater Partners, LP*, No. 14-cv-04324, 2015 WL 6674575, at *6-7 (N.D. Cal. 2015) (declining "remedy of enjoinment of future communication" despite finding that "Defendants communications with absent class members were misleading"). In *Masonek v. Wells Fargo Bank*, the

1    court found "a clear record of . . . previous abuses in misleading class members," yet concluded that

2    a complete ban on communication "would not be sufficiently narrowly tailored under *Gulf Oil Co.*

3    [and a] more narrow injunction prohibiting misleading communications" was the proper course. No.

4    SACV091048DOCRNBX, 2009 WL 10672345, at *4 (C.D. Cal. Dec. 21, 2009). This Court should

5    reject Plaintiffs' attempt to prohibit communication from a third-party law firm.

6        Indeed, even many of the distinguishable authorities cited by Plaintiffs fail to enact a gag order

7    with prior restraint as requested by Class Counsel. For example, in *Camp v. Alexander*, the

8    plaintiffs—like Class Counsel here—sought to bar the defendant from communicating with class

9    members without prior court approval. *See* 300 F.R.D. at 619. The Court denied that request even

10   though the court was "troubled by Defendants' communication" that contained misrepresentations

11   and "coercive," "threatening," and "highly inflammatory" statements, including warnings that if the

12   lawsuit continued, the "employee[ plaintiffs] would lose their jobs." *Id.* at 621–27. As the Court

13   observed, "the standard for an order limiting communications between parties and potential class

14   members is quite high." *Id.* at 626–27. Misleading communications "may be limited by the court,"

15   but "even then there must be a heightened sensitivity for the First Amendment." *Id.* at 621. In *Retiree*

16   *Support Group of Contra Costa County v. Contra Costa County*, a non-party sent letters to putative

17   class members containing "misleading statements." 2016 WL 4080294, at *7. Even so, the court

18   denied the plaintiffs' request to restrict "all communications between [the non-party] and the class,"

19   reasoning that "less restrictive remedies" were available and that "[a]n order restricting speech should

20   'sweep[] no more broadly than necessary, especially when considering prior restraints.'" *Id.* at 9–10.

21       ClaimsHero does not believe any remedy is required, but if the Court disagrees, a narrow and

22   tailored remedy would be to require specific and reasoned amendments to ClaimsHero's website and

23   social media posts.

---

22

*Second*, Plaintiffs' other requested relief is moot or improper. Plaintiffs seek to prohibit ClaimsHero from making misleading statements. Dkt. No. 442 at 18. As explained above, ClaimsHero has not made, is not making, and will not make, any misleading statements. Moreover, it already modified its website and advertisements based on Class Counsel's alleged concerns. Consequently, that request is moot. Plaintiffs request (at 18) to disclose ClaimsHero's clients is also moot in light of the filed declarations. Nor is it necessary for any corrective statement to be sent to them given these same declarations. *Shaw*, 2014 WL 12741157, at *3 ("striking the consents" obtained due to potentially misleading email was "unwarranted" because "defendants have failed to present any evidence that the consenting plaintiffs were, in fact, misled" and "the only evidence . . . is that the recipient of the [] email was not misled."); *Gerlach v. Wells Fargo & Co.*, 2006 WL 824652 (N.D. Cal. March 28, 2006) (refusing to order a corrective notice in part because there was no evidence class members "were misled or coerced"). And "[a]n order that prohibits all allegedly 'false and misleading' communications from parties and non-parties provides little guidance and is impermissibly overbroad with regard to the non-parties' rights to engage in free expression and communications pertaining to the merits and settlement of pending litigation." *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2015 WL 13979688, at *2 (D. Vt. Sept. 14, 2015). For the same reasons, Plaintiffs' disclosure of ClaimsHero's "full ambit" of "marketing efforts" is also unwarranted.

## IV.    Anthropic's argument is implausible

Anthropic has (unsurprisingly) joined in Class Counsel's motion (*see* Dkt. No. 459) claiming that ClaimsHero's use of its logo would lead class members to think ClaimsHero has an official role in the settlement. Setting aside the irony of Anthropic complaining about trademark use in this case, it's unclear why use of an *Anthropic* trademark would mislead class members about roles in a *settlement*. As discussed above, ClaimsHero clearly seeks to opt class members out of the Settlement

1    to seek *more* against Anthropic in court. There can be no such confusion. Indeed, none of

2    ClaimsHero's clients were, or are, confused.

3    **CONCLUSION**

4    ClaimsHero has acted in good faith to truthfully and accurately offer to represent class

5    members who wish to opt out of the Settlement. Nothing misleading, coercive, or disparaging was

6    included in its website, ads, or intake forms. Class Counsel may be concerned about how many class

7    members will agree that $3,000 is sufficient consideration for Anthropic's piracy. But truthful speech

8    about that deal and alternatives to it is something the law protects, policy counsel for, and the Court

9    should want. Class Counsel's motion is improperly aimed not at ensuring truthful and accurate

10   communication about ClaimsHero's representation of its clients, but at silencing ClaimsHero's

11   protected speech. The Motion should be denied.

12

13

14   Dated:    November 12, 2025          Respectfully submitted,

15

16                                       */s/ Devin (Velvel) Freedman*

17                                       Devin (Velvel) Freedman (*pro hac vice*)
                                         Alex Potter (*pro hac vice*)

18                                       **FREEDMAN NORMAND FRIEDLAND LLP**
                                         155 E. 44th Street, Suite 915

19                                       New York, NY 10017
                                         T: (646) 494-2900

20                                       Email: vel@fnf.law
                                                apotter@fnf.law

21
                                         Ivy Ngo (S.B.N. 249860)

22                                       **FREEDMAN NORMAND FRIEDLAND LLP**
                                         2029 Century Park East, Suite 400N

23                                       Los Angeles, CA 90067
                                         T: (646) 494-2900

24                                       Email: ingo@fnf.law

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

     I, Devin (Velvel) Freedman, am the ECF user whose identification and password are being

3

used to file the foregoing Opposition to Motion for Order Limiting Third Party Communications

4

With Class Member and Other Relief.

5

6

Dated:    November 12, 2025             Respectfully submitted,

7

8

                                  */s/ Devin (Velvel) Freedman*
                                  Devin (Velvel) Freedman (*pro hac vice*)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLAIMSHERO'S OPPOSITION TO MOTION FOR ORDER LIMITING THIRD PARTY
COMMUNICATIONS WITH CLASS MEMBER AND OTHER RELIEF