# EXHIBIT 1

| | |
|---|---|
| Justin A. Nelson (*pro hac vice*) | Rachel Geman (*pro hac vice*) |
| Alejandra C. Salinas (*pro hac vice*) | Jacob S. Miller (*pro hac vice*) |
| **SUSMAN GODFREY L.L.P.** | Danna Z. Elmasry (*pro hac vice*) |
| 1000 Louisiana Street, Suite 5100 | **LIEFF CABRASER HEIMANN** |
| Houston, TX 77002-5096 | **& BERNSTEIN, LLP** |
| Telephone: (713) 651-9366 | 250 Hudson Street, 8th Floor |
| jnelson@susmangodfrey.com | New York, New York 10013-1413 |
| asalinas@susmangodfrey.com | Telephone: (212) 355-9500 |
| | rgeman@lchb.com |
| Rohit D. Nath (SBN 316062) | jmiller@lchb.com |
| Michael Adamson (SBN 321754) | delmasry@lchb.com |
| **SUSMAN GODFREY L.L.P.** | |
| 1900 Avenue of the Stars, Suite 1400 | Daniel M. Hutchinson (SBN 239458) |
| Los Angeles, CA 90067-2906 | Jallé H. Dafa (SBN 290637) |
| Telephone: (310) 789-3100 | Amelia Haselkorn (SBN 339633) |
| rnath@susmangodfrey.com | **LIEFF CABRASER HEIMANN** |
| madamson@susmangodfrey.com | **& BERNSTEIN, LLP** |
| | 275 Battery Street, 29th Floor |
| Jordan W. Connors* | San Francisco, CA 94111-3339 |
| **SUSMAN GODFREY L.L.P.** | Telephone: (415) 956-1000 |
| 401 Union Street, Suite 3000 | dhutchinson@lchb.com |
| Seattle, WA 98101-2683 | jdafa@lchb.com |
| Telephone: (206) 516-3880 | ahaselkorn@lchb.com |
| jconnors@susmangodfrey.com | |
| | Betsy A. Sugar* |
| J. Craig Smyser* | **LIEFF CABRASER HEIMANN** |
| Samir Doshi* | **& BERNSTEIN, LLP** |
| **SUSMAN GODFREY L.L.P.** | 222 Second Ave., #1640 |
| One Manhattan West, 51st Floor, | Nashville, TN 37201-2375 |
| New York, NY 10001-8602 | Telephone: (615) 313-9000 |
| Telephone: (212) 336-8330 | bsugar@lchb.com |
| csmyser@susmangodfrey.com | |
| sdoshi@susmangodfrey.com | *Co-Lead Class Counsel* |
| | *(Pro Hac Vice) |
| *Co-Lead Class Counsel* | |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No.: 3:24-cv-05417-WHA<br><br>**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER LIMITING THIRD PARTY'S COMMUNICATIONS WITH CLASS MEMBERS AND FOR OTHER RELIEF PURSUANT TO FED. R. CIV. P. 23(d)** |

I.  **INTRODUCTION**

Rule 23 gives the Court broad supervisory authority to protect Class Members and the integrity of the settlement process, including by restricting communications and authorizing curative notice where the record demonstrates misleading solicitations. The ClaimsHero screenshots and videos described below show inaccurate representations and omissions of required disclosures. ClaimsHero's "V2" edits do not cure the problem; they embed "opt-out" language alongside the same claims-centric prompts, leaving the overall impression unchanged. Nor do boilerplate objections from six Class Members somehow excuse ClaimsHero's deceptive conduct. Every day ClaimsHero continues such conduct puts Class Members at risk of accidental and misinformed forfeitures of Settlement rights.

The relief Plaintiffs seek is measured and tailored. Plaintiffs do not, as ClaimsHero suggests, ask to silence truthful speech or to bar all third-party communications. Instead, they ask the Court to (i) halt the specific false and misleading conduct identified below; (ii) order ClaimsHero to file all marketing materials and communications regarding the Settlement directed to Class Members, including but not limited to emails, letters, social media advertisements, and video advertisements; and (iii) permit Plaintiffs to file a proposed form of Corrective Notice to be sent to all known Class Members who received emails and/or letters from ClaimsHero, visited ClaimsHero's website, otherwise engaged with ClaimsHero, and/or signed up for the company's services regarding the Settlement. This relief tracks settled authority and reflects the narrowest intervention necessary to protect due process and the orderly administration of the Settlement. ClaimsHero's invocation of the First Amendment is nothing more than a red herring premised on a mischaracterization of the relief Plaintiffs seek. The deceptive conduct at issue is not protected by the First Amendment, and courts routinely grant the type of relief sought here.

II.  **BACKGROUND**

A.  **ClaimsHero's Website Is Still Misleading.**

ClaimsHero, incredibly, insists that its "website was *never* misleading" and that its V2 website "goes above and beyond." Dkt. 460 at 1 (emphasis added). Plaintiffs disagree with both assertions. The "V1" website was egregiously misleading, for reasons explained on Plaintiffs' opening brief. And ClaimsHero's website *still* includes numerous misleading elements and outright inaccuracies. For example, the following screenshot of the website, captured on November 12, 2025, refers to ClaimsHero's Anthropic services as one of

ClaimsHero's "Popular *Claims*":

Ex. B at 1 (red annotations added). This screenshot also shows that the website misleadingly states that



"[a]uthors and rightsholders may qualify for *more than Anthropic's $1.5B settlement*." *Id.* (emphasis added). It also indicates that a resolution will be reached in just "3 mins." *Id.* And it also identifies an incorrect deadline of January 1, 2026—the actual opt-out deadline is January 7, 2026, and the claim-submission deadline is March 23, 2026.

The misleading elements do not stop there. Another portion of ClaimsHero's website, as of November 12, 2025, still refers to "Anthropic Copyright Infringement" as a "Popular Claim[]":



Ex. B at 1 (red annotation added).

Another portion states that the "settlement provides for just $3,000 per copyright claimant. But *the law provides for up to $150,000*," and again suggests a resolution time of just "3 mins":

Ex. B at 2 (red annotations added). These statements convey the false impression that Class Members can quickly and easily invoke "the law" to obtain much more money than the Settlement provides.

Another portion of the website again refers to the "Anthropic Copyright Infringement" as a "Popular Claim," suggests a "3 mins" resolution time, and states that "[a]uthors and rightsholders may qualify for *more than Anthropic's $1.5B settlement*":



Ex. B at 3 (red annotations added).

Another portion of the website, which refers to the "Anthropic Copyright Infringement," states that website visitors can "[c]laim [their] share in minutes," that "ClaimsHero makes it easy," with just four steps,

including (1) "[f]ind your claim," (2) "[c]omplete our form"; (3) "[w]e handle the rest; and (4) "[r]eceive payment via your method of choice and submit as many claims as you think you qualify for!":



Ex. B at 4 (red annotations added).

ClaimsHero's website is also blatantly inaccurate, informing website visitors that they "should have received a claim notice or email with a unique ID number from the claim administrator":



Ex. B at 5 (red annotations added). In fact, the Settlement Administrator has not yet sent direct notice with a unique ID number. Class Counsel Decl. ¶ 8. Direct notice is instead due to be sent later this month. *See* Dkt. 417 at 14 (proposing November 24, 2025 as the date by which the "Settlement Administrator Finalizes Initial Distribution of Direct Notice"); Dkt. 437 at 8–11 (approving direct notice plan).

Even the language that ClaimsHero touts as supposedly accurate and informative is incorrect. For example, the website characterizes the Settlement Website as "the words of the Settlement Administrator"

when it, in fact, contains language carefully crafted by the parties and approved by the Court:



Again, the problems do not stop there. Another portion of the ClaimsHero website, as of November 12, 2025, refers to "Anthropic Copyright Infringement" and states, "Filing claims shouldn't be complicated—we've made it simple, reliable, and trustworthy":



Ex. B at 6 (red annotations added). The website further invites visitors to "[j]oin thousands of Americans who've filed with ClaimsHero," suggesting a filing of settlement claims, not the filing of entirely different lawsuits. *Id.*

The ClaimsHero website is also misleading due to its ***omissions***, not just its affirmative misstatements. For example, nothing on the ClaimsHero website explains that an opt-out can be ***reversed*** as part of the re-inclusion process. Class Counsel Decl. ¶ 9; *see also* Dkt. 432-1 (Long-Form Notice) at Q39 (explaining the re-inclusion process). It is misleading to not inform Class Members that they can be added back into the Class despite having submitted an opt-out request. Nor does the website inform Class Members that they have a

1  right to object *and* submit a claim as a way of obtaining Settlement relief while also voicing their objections.
2  Class Counsel Decl. ¶ 9; *see also* Dkt. 432-1 (Long-Form Notice) at Q42 and Q43 (explaining objections and
3  the difference between objecting and opting out). In addition, ClaimsHero's website excludes important
4  information about opting out, including (i) the re-inclusion process, (ii) contact information for questions
5  about opting out, and (iii) the fact that "[w]hen an owner submits a valid opt-out request for a particular work,
6  the Settlement Administrator will take reasonable steps to notify all other parties who may be legal or
7  beneficial owners of the right to reproduce that same work, informing them that another Class Member has
8  requested exclusion." Dkt. 432-1 (Long-Form Notice) at Q38.
9        On November 12, Class Counsel told counsel for ClaimsHero that "Class Counsel intend to create a
10 ClaimsHero account—or at least go through the initial steps of doing so—for the limited purpose of evaluating
11 the representations being made to class members of the Anthropic litigation." Class Counsel Decl. ¶ 10 Class
12 Counsel thereafter made several attempts do so but was never able to make it past the following screen, the
13 blue bar of which featured a circular load icon that never stopped spinning:



24 Ex. B at 7; Class Counsel Decl. ¶ 10. Thus, the ClaimsHero website may feature additional inaccuracies and
25 misleading statements beyond those detailed above.
26     **B.**    **ClaimsHero Also Sent at Least One Misleading Email to a Class Member.**
27       Class Counsel also became aware today (November 12, 2025) that ClaimsHero's CEO sent a
28 misleading email to a Class Member, as shown here:

> **Subject:** Standing Up For Authors: Jane's Audience and the Anthropic Settelement
> **Date:** Tue, 4 Nov 2025 08:10:42 -0500
> **From:** Matt Freund <matt@claimshero.io>
> **To:** advertising@janefriedman.com
>
> Hi Jane,
>
> My name is Matt Freund and I'm the CEO of ClaimsHero.
>
> I'm reaching out because an important settlement is happening and most affected authors haven't even heard about it.
>
> Anthropic, one of the biggest AI companies, pirated millions of copyrighted books to train its models without permission. Now, they're offering authors a token $3,000 settlement to make it all go away.
>
> ClaimsHero and our legal partners are leading an opt-out effort in response to the Anthropic copyright settlement. Authors deserve more than a $3,000 payout. Our mission is simple: help creators fight back and demand meaningful compensation.
>
> With a community of 500,000+ users, we're helping authors stand up for their work, their livelihood, and the future of creative ownership.
>
> Please let me know what opportunities are available to get this message out to your audience. Happy to hop on the phone as helpful to talk more about our opt-out campaign.
>
> Regards,
>
> Matt Freund
>
> --
> Matt Freund
> CEO
> E: matt@claimshero.io
> P: 517-256-4283

Ex. A at 1 (red annotations added). In the email, ClaimsHero's CEO, Matt Freund, baselessly states that "most affected authors haven't even heard about" the Settlement. *Id.* He also characterizes the Settlement as a "token $3,000 settlement" that does not provide "meaningful compensation," and he references a supposed "community of 500,000+ users." *Id.* Notably, Matt Freund sent this email on November 4, 2025, just one day after meeting with Class Counsel about Class Counsel's concerns about ClaimsHero's misleading practices. *See* Dkt. 461 (Freund Decl.) ¶ 29 (noting November 3, 2025 call with Class Counsel).

### C. ClaimsHero Did Not "Immediately Pause[] All Advertising" and Still Has Not Done So.

ClaimsHero adds to its layers of deception with inaccurate statements made the Court. Contrary to what Matthew Freund claims in his sworn declaration (Dkt. 461 ¶¶ 28, 50), ClaimsHero did not "immediately [] all social media advertising." Class Counsel accessed a video on November 12, 2025, screenshots of which are shown here[1]:

---

[1] As of November 12, 2025, the video was available at https://www.youtube.com/shorts/tpxrzV1nKL8?feature=share.



The full transcript of the video (as transcribed by Class Counsel) is as follows:

> Authors, this might surprise you, current lawsuits allege that AI companies train their models using copyrighted books from sites like LibGen or Books3 without permission. That means that if you're an author, your words could have been used to train AI without you ever agreeing to it. Now these cases are still in progress, but if you published before 2021, your book has an ISBN or ISIN [*sic*], and you registered with the U.S. Copyright Office within five years, ***you might be eligible to file a claim***. ***It only takes a few seconds, go to claimshero.io/anthropic to see if you qualify***.

Class Counsel Decl. ¶ 6. This ClaimsHero video is yet another egregious bait-and-switch, leading viewers to believe that the company will file a claim on their behalf, which will "only take[] a few seconds."

### III.  ARGUMENT

#### A.  Legal Standard

Communications by non-parties to class members may be restricted when there is "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the

rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). "[S]uch a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id*. at 102. An order under *Gulf Oil* "does not require a finding of actual misconduct"—rather, "[t]he key is whether there is 'potential interference' with the rights of the parties in a class action*." O'Connor v. Uber Technologies, Inc.*, 2013 WL 6407583, at *4–5 (N.D. Cal. Dec. 6, 2013) (citing *Gulf Oil*, 452 U.S. at 101–02).

Even if Class Counsel were seeking to bar communications—which we are not—district courts may bar non-parties from communicating with the class after a pattern of deceptive or coercive communications. *Fox v. Saginaw Cnty.*, 35 F.4th 1042 (6th Cir. 2022) (barring third-party claims-handling company from any further communications with the class due to a record of misleading and abusive communications). Here, however, Class Counsel seek the narrower relief of stopping misleading communication. "Rule 23(d) gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation." *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S. Ct. 74 (2011). Courts may limit communications that improperly encourage potential class members to not join the suit, especially if they fail to provide adequate information about the pending class action. *O'Connor v. Uber Technologies, Inc.*, 2014 WL 1760314, at *6–7 (N.D. Cal. May 2, 2014).

Courts in this district have limited communications, as well as invalidated agreements that resulted from those communications (a remedy not yet sought here), when they omitted critical information or were otherwise misleading or coercive. *See*, *e.g.*, *F.G. v. Coopersurgical, Inc.*, 2024 WL 2274448, at *5-6 (N.D. Cal. May 20, 2024) (ordering corrective notice, restricting further contact, and making releases voidable due to misleading statements regarding the class action); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2023 WL 6205473, at *9–10 (N.D. Cal. Sept. 19, 2023) (en masse submissions by a third-party claims aggregator could be rejected where the aggregator's communications about the settlement and claims process were incorrect or potentially misleading, and directing procedures to notify affected class members and permit resubmission of claims or rescission of opt-outs); *Camp v. Alexander*, 300 F.R.D. 617, 621, 624-25 (N.D. Cal. 2014) (invalidating opt-outs obtained by letter to employees of defendants stating the class action was "motivated by greed" and failed to include any explanation of plaintiffs' claims, a copy of the

complaint, or contact information for plaintiffs' counsel); *Cnty. of Santa Clara v. Astra USA, Inc.*, No. 05-3740 WHA, 2010 WL 2724512, at *4 (N.D. Cal. July 8, 2010) (J. Alsup) (invalidating releases obtained by letter to putative class that did not attach plaintiffs' complaint, explain plaintiffs' claims or the status of the case, or include contact information for plaintiffs' counsel); *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) (invalidating opt-out forms obtained through coercion and ordering corrective notice).

### B.     ClaimsHero Misstates the Relief Plaintiffs Seek.

ClaimsHero contends that Plaintiffs' motion "seeks ***not*** to ensure truthful communication with class members about the Settlement . . . but rather to prevent anyone from communicating with and/or educating class members about their rights." Dkt. 460 at 12 (emphasis in original). Nothing could be further from the truth. Class Counsel and the Settlement Administrator have been working tirelessly to ensure that truthful, Court-approved communications will be distributed to every single Class Member. Class Counsel Decl. ¶ 11. The public-facing Settlement Website, including the searchable Works List and FAQs, has been live and is being amplified through publication and social channels, and online webinars by Class Counsel and industry groups. Class Counsel Decl. ¶ 11. The case has also attracted extensive press coverage. Class Counsel Decl. ¶ 11. Further, direct notice is scheduled to begin imminently and will further increase awareness. Class Counsel Decl. ¶ 11. ClaimsHero's deceptive conduct undermines, rather than promotes, those important efforts. Such conduct is not protected speech, and it can and should be regulated by the Court in an appropriately targeted way.

ClaimsHero's cases are inapposite. Some involve prior bans on speech, as opposed to correcting extant misleading and confusing communications. *See, e.g.*, *Gulf Oil*, 452 U.S. 89. Other cases are inapposite because, unlike here, the communications at issue were found not to be misleading. *See, e.g.*, *Cox Nuclear Medicine v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696 (S.D. Ala. 2003). Some of ClaimsHero's cases in fact confirm the basic point: communications that are misleading or adversely affect decision-making in class actions, warrant remediation. *Cf. In re M.L. Stern Overtime Litig.*, 250 F.R.D. 492, 499-500 (S.D. Cal. 2008) (communication from defendant employer that settlement demand would make it hard for the company to stay out of bankruptcy required to be deleted and other statements required to be modified even if overall communicated would not be banned). None involve the circumstances here: a pervasively

1 and inherently misleading set of communications, and a party that is apparently not willing to disclose the full scope of its marketing.

### C. The Court Should Instruct ClaimsHero to Stop the Deceptive Conduct Described Above.

ClaimsHero's deceptive conduct is egregious and continues to this day. As explained above, ClaimsHero's website includes numerous misleading and inaccurate statements and omissions. And, as discussed above, ClaimsHero's misleading advertising videos *continue* to put Class Members at risk, directly contradicting the sworn declaration of the company's CEO. *See* Dkt. 461 ¶¶ 28, 50 (stating that "ClaimsHero immediately paused all social media advertising" and "continues to pause its social media video advertisements"). The fact that Class Counsel is continuing to find new video advertisements underscores that the universe of relevant marketing statements is broader than what ClaimsHero has disclosed. ClaimsHero should be required to disclose to the Court and Class Counsel *all* its advertisements regarding the Settlement.

As shown above, ClaimsHero's CEO also sent a misleading email to at least one Class Member, with no telling how many more received similar emails. In that email, Mr. Freund stated that the Settlement is "a token $3,000 settlement to make it all go away." That statement is highly misleading because it selectively disregards the governing legal standards and the practical constraints that shape class-action resolutions. Settlement fairness is assessed under a multifactor framework that weighs the risks of continued litigation, the strength of the claims and defenses, the complexity and expense of trial, the stage of proceedings and quality of discovery, and the reasonableness of relief relative to likely outcomes at trial. A negotiated compromise that reflects these considerations—particularly where recovery is immediate, non-reversionary, and tailored to the harm alleged—should not be characterized to Class Members as "token." This is especially true given the Court's informed assessment of the Settlement as "fair, adequate, and reasonable . . . because of the tailored release, injunctive relief, and per-work award." Dkt. 437 at 5. ClaimsHero's email obscures that Class Members who choose to opt out face substantial evidentiary hurdles, contested liability and damages models, and appellate risks that can delay or diminish recovery. Framing the Settlement as one that lacks "meaningful compensation" threatens to trick Class Members into prematurely rejecting tangible benefits now in exchange for speculative benefits that may never come.

Pursuant to its authority under Rule 23(d), the Court can and should require ClaimsHero to stop all

these misleading practices. ClaimsHero's own declarations support that outcome. For example, Professor Redish admits that he "make[s] no judgments about the accuracy of class counsel's assertions that ClaimsHero's website contains misleading statements." Dkt. 468 ¶ 13. He also concedes that the website may "require[] inclusion of disclaimers" or "further disclosures to be accurate." *Id.* ¶¶ 13, 15(h). He also states that if Class Counsel's assertions about the ClaimsHero website are accurate "this Court should consider whether ClaimsHero's website requires modifications to assure that class members receive complete and non-misleading information about the services which ClaimsHero can provide to them." *Id.* ¶ 15(f). Plaintiffs could not have said it better themselves. But, as detailed above, ClaimsHero's website and conduct fall dramatically short of that standard.

Likewise, the boilerplate declarations ClaimsHero submitted from purported Class Members do not somehow prove that the company's conduct is not misleading. Each of those declarations contains the exact same language, strongly suggesting that ClaimsHero's lawyers drafted those declarations as opposed to the declarants themselves. Dkts. 462–67. Further, none of those declarations indicate that the declarants read any materials ***other than*** ClaimsHero's communications. *Id.* Nor do the declarations reveal whether the declarants know what comes next. For example, if ClaimsHero receives only a small number of sign-ups, will the company still commit to represent those Class Members and advance expenses for their claims? Is ClaimsHero committing to assist Class Members with their re-inclusion requests if the company does not achieve a certain threshold? This all goes to show that even if the declarants honestly believe that they were not misled, that does not prove that they were not, in fact, misled. Nor does it prove that they had a full understanding of the various options available to them, along with the risks and consequences of those options.

### D. Class Counsel Are Acting in the Best Interests of the Class.

ClaimsHero impugns Class Counsel, speculating that the reason Class Counsel seek to protect the Class from ClaimsHero's deceptive conduct is "to protect their own economic interests." Dkt. 460 at 2. In fact, the Court ***ordered*** Class Counsel to "bird dog this at every stage and bring to my attention problems when they arise so that we can get together and see how to solve the problems." Dkt. 431 at 17. That is exactly why Class Counsel promptly brought ClaimsHero's deceptive conduct to the Court's decision. Class Counsel Decl. ¶ 12. In any event, preventing Class Members from being deceived benefits the Class and

does not somehow enhance Class Counsel's economic interests.

E. **The Class's Response to the Settlement Has Been Overwhelmingly Positive.**

ClaimsHero suggests that the Settlement is not being well-received by Class Members, based on just two objections. Dkt. 460 at 6 (citing Dkts. 438 and 439). In fact, the Class's response to the Settlement has been overwhelmingly positive. As of November 13, 2025, the Settlement Administrator has received 17,826 claims covering 65,427 works—*approximately 14% of all works on the Works List*. Class Counsel Decl. ¶ 13. In other words, the number of claims exceeds the number of opt-out requests and objections by many orders of magnitude. This high volume of claims is especially impressive given that it has occurred even before direct individualized notice has begun. Class Counsel Decl. ¶ 13.

## IV. CONCLUSION

For these reasons, Plaintiffs request the Court grant Plaintiffs' Motion for Order Limiting Third Party's Communications with Class Members and for Other Relief Pursuant to Federal Rule of Civil Procedure 23(d).

Dated: November 12, 2025

By: */s/ Justin A. Nelson*
Justin A. Nelson (*pro hac vice*)
Alejandra C. Salinas (*pro hac vice*)
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
Michael Adamson (SBN 321754)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com
MAdamson@susmangodfrey.com

J. Craig Smyser (*pro hac vice*)
Samir H. Doshi (*pro hac vice*
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor,
New York, NY 10019
Telephone: (212) 336-8330
csmyser@susmangodfrey.com
sdoshi@susmangodfrey.com

By: */s/ Rachel Geman*
Rachel Geman *(pro hac vice)*
Jacob S. Miller *(pro hac vice)*
Danna Z. Elmasry *(pro hac vice)*
**LIEFF CABRASER HEIMANN**
**& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
jmiller@lchb.com
delmasry@lchb.com

Daniel M. Hutchinson (SBN 239458)
Jallé H. Dafa (SBN 290637)
Amelia Haselkorn (SBN 339633)
**LIEFF CABRASER HEIMANN**
**& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
dhutchinson@lchb.com
rstoler@lchb.com
jdafa@lchb.com
ahaselkorn@lchb.com

*Co-Lead Counsel*

Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN**
**& BERNSTEIN, LLP**
222 2nd Avenue S., Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
bsugar@lchb.com

*Co-Lead Counsel*

Scott J. Shoulder (*pro hac vice*)
CeCe M. Cole (*pro hac vice*)
**COWAN DEBAETS ABRAHAMS**
**& SHEPPARD LLP**
60 Broad Street, 30th Floor
New York, New York 10010
Telephone: (212) 974-7474
sshoulder@cdas.com
ccole@cdas.com

*Additional Counsel for the Class and Authors' Coordinating Counsel*

Jay Edelson*
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, IL 60654
Telephone: (312) 589-6370
jedelson@edelson.com

Matthew J. Oppenheim*
**OPPENHEIM & ZEBRAK LLP**
4530 Wisconsin Ave, NW, 5th Floor
Washington, DC 20016
Telephone: 202.450.3958
matt@oandzlaw.com

*Publishers' Coordinating Counsel*

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 13, 2025

/s/ Rachel Geman