**Pages 1 - 59**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

ANDREA BARTZ, ANDREA BARTZ,     )
INC., CHARLES GRAEBER, KIRK     )
WALLACE JOHNSON, and MJ + KJ,   )
INC., individually and on       )
behalf of others similarly      )
situated,                       )
                                )
          Plaintiffs,           )
                                )
  VS.                           )   **NO. 3:24-CV-05417 WHA**
                                )
ANTHROPIC PBC,                  )
                                )
          Defendant.            )
_____)

San Francisco, California
Thursday, November 13, 2025

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

      LIEFF CABRASER HEIMANN & BERNSTEIN LLP
      250 Hudson Street, Eighth Floor
      New York, New York 10013-1413
   **BY:  RACHEL GEMAN, ATTORNEY AT LAW**

      LIEFF CABRASER HEIMANN & BERNSTEIN LLP
      Embarcadero Center West
      275 Battery Street, 29th Floor
      San Francisco, California 94111
   **BY:  JALLÉ H. DAFA, ATTORNEY AT LAW**
         **AMELIA A. HASELKORN, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
          CSR No. 7445, Official United States Reporter

**APPEARANCES**:   (CONTINUED)

For Plaintiffs:
                        SUSMAN GODFREY L.L.P.
                        1900 Avenue of the Stars, Suite 1400
                        Los Angeles, California 90067
                   BY:  **MICHAEL B. ADAMSON, ATTORNEY AT LAW**


For Defendant:
                        ARNOLD & PORTER KAYE SCHOLER LLP
                        Three Embarcadero Center, Tenth Floor
                        San Francisco, California 94111
                   BY:  **DOUGLAS A. WINTHROP, ATTORNEY AT LAW**
                        **JOSEPH R. FARRIS, ATTORNEY AT LAW**


For Third Party ClaimsHero Holdings LLC:
                        FREEDMAN NORMAND FRIEDLAND LLP
                        One SE Third Avenue, Suite 1240
                        Miami, Florida 33131
                   BY:  **DEVIN "VELVEL" FREEDMAN, ATTORNEY AT LAW**


                        FREEDMAN NORMAND FRIEDLAND LLP
                        155 East 44th Street, Suite 915
                        New York, New York 10017
                   BY:  **ALEX POTTER, ATTORNEY AT LAW**




Also Present:          **Karl Johnston, Anthropic**

**Thursday - November 13, 2025**                                    **8:15 a.m.**

**P R O C E E D I N G S**

---o0o---

THE COURTROOM DEPUTY:  Calling Civil Action 24-5417, Bartz, et al. versus Anthropic PBC.

Counsel, please approach the podium and state your appearances for the record, beginning with counsel for plaintiffs.

MS. GEMAN:  Shall I begin, Your Honor?

THE COURT:  Yes, you should.

MS. GEMAN:  Good morning, Your Honor.  Rachel Geman, Lieff Cabraser Heimann & Bernstein, representing the class. I'm joined today by my colleagues Jallé Dafa and Amelia Haselkorn from Lieff Cabraser and Michael Adamson from Susman Godfrey.

THE COURT:  Great.  Welcome.

MR. FARRIS:  Good morning, Your Honor.  Joe Farris with Arnold & Porter representing Anthropic.  I'm here with Doug Winthrop from Arnold & Porter and Karl Johnston from the company.

THE COURT:  Great.  Thank you.

MR. FREEDMAN:  Good morning, Your Honor.  Vel Freedman from Freedman Normand Friedland.  I'm here together with Alex Potter.  We represent the third party ClaimsHero Holdings LLC.

**THE COURT:**  Your last name is Freed?

**MR. FREEDMAN:**  Freedman, Your Honor.

**THE COURT:**  Freedman.  And his name?

**MR. FREEDMAN:**  Potter.

**THE COURT:**  Potter?

**MR. FREEDMAN:**  Yes, Your Honor.

**THE COURT:**  All right.  Good.  Thank you.

**MR. FREEDMAN:**  Your Honor, just sit here?  Do you have a preference of where we sit?

**THE COURT:**  Well, I think that's fine.  I don't have a preference.  There's more room there.  Thank you.

All right.  This is a motion by class counsel.  So I'm almost up to speed.  I would say I'd like to hear your main argument from both sides before I ask any questions.

Go ahead.

**MS. GEMAN:**  Thank you, Your Honor.

Our position is that ClaimsHero is interfering in the notice and settlement process that is entrusted to this Court for oversight and that must be truthful and non-misleading.

Even ClaimsHero's own expert, Professor Redish, in his declaration states, quote [as read]:

". . . I make no judgment about the accuracy of class counsel's allegations that ClaimsHero's website is misleading.  But even assuming the accuracy of these accusations, at most this Court should consider

whether ClaimsHero's website requires modifications to assure that class members receive complete and non-misleading information about the services which ClaimsHero can provide to them."

That's paragraph 15(f) of the declaration.

And truthful and non-misleading is what we want. Unfortunately, we don't have all the marketing materials, notwithstanding the suggestion that they've been provided.  And based on our filing last night or, rather, early this morning, unfortunately, it appears that certain types of marketing continues.

Notwithstanding ClaimHero's attempt to make this a neat package of a Version 1 and a Version 2 that's neat and discrete, we learned that there have been many versions of the website.  And perhaps more importantly, there have been misleading video ads and even direct solicitations to class members exhorting them to assist in an opt-out campaign by suggesting that authors are only being offered -- you know, authors are only offered a token 3,000 and -- you know, without describing any of the important information.

What we have presented to the Court, though -- and I direct the Court's attention to Exhibits A and B of our reply filing at Docket 475, which includes recent screenshots as well as the copy of the solicitation to a class member, as well as Exhibit A of our moving brief -- warrants the tailored relief

we are seeking.

This is not an attempt to limit speech.  That is a red herring.  This is an attempt to stop fraud.  We believe that the relief that we are seeking serves the objectives of Rule 23(d) and protecting the class and does not impinge on any right.  That is a red herring.  This is about fraud, not speech.

Specifically, Your Honor, our requested relief, submitted at Docket 475, seeks, one, a finding that ClaimsHero is prohibited from making or disseminating false or misleading statements; that the statements have been false and misleading.

And moving forward, at this point we really need to see all the marketing materials and communications, not selected ones, not snapshots out of context that deprive us of the holistic experience of signing up, but all the marketing materials:  videos, letters, ads, the full website.

We also request the names and contact information of all known class members, including those identified in the Dockets 462 to 467; namely, the six who have already signed up or the six who are among those who have already signed up and who have engaged with ClaimsHero.

We do want the misleading web pages, which, again, we've shown to be pervasively and inherently misleading as opposed to one awkward word, to be ceased.

We commit that within three business days of receipt of

these materials, we will submit to this Court a proposed form of corrective notice, subject, of course, to Anthropic's approval, and identify marketing materials that remain misleading.

We are not suggesting that people cannot seek -- that people cannot opt out of this case; but if they do that, they deserve to be properly informed of the risks and the costs. Your Honor has been so welcomely -- if that's a word -- so careful about the language about what has happened in this case and what the risks and costs are of the different options. People should not be told in a glib way, "Everything's basically decided.  Plaintiffs won everything.  We'll take care of the rest.  All you have to do is sign up and there's much more that's available to you."

I'm happy to go through each screenshot and highlight the places that we noted --

**THE COURT:**  I'd like to -- I'd like for you to do -- give me one good example of what is still up on the website or in some other place that is egregious to you, still a problem.

**MS. GEMAN:**  Certainly, Your Honor.

Well, one example -- we don't know how many class members received this letter.

**THE COURT:**  Show me the letter.  I --

**MS. GEMAN:**  Yes, Your Honor.

**THE COURT:**  Is that an email or --

**MS. GEMAN:**  Yes.

**THE COURT:**  -- a letter?

**MS. GEMAN:**  It was an email from matt@claimshero.io. He's the CEO.  And if I could just read it to Your Honor.

**THE COURT:**  Yeah, go ahead.

**MS. GEMAN:**  It's very short.

**THE COURT:**  Read it into the record.

**MS. GEMAN:**  Yes, Your Honor.

Quote [as read]:

"Hi Jane.  My name is Matt Freund and I'm the CEO of ClaimsHero.  I'm reaching out because an important settlement is happening and most affected authors haven't even heard about it.  Anthropic, one of the biggest AI companies, pirated millions of copyrighted books to train its models without permission.  Now they're offering authors a token 3,000 settlement to make it all go away.  ClaimsHero and our legal partners are leading an opt-out effort in response to the Anthropic copyright settlement. Authors deserve more than a $3,000 payout.  Our mission is simple:  help creators fight back and demand meaningful compensation.  With a community of 500,000-plus users, we're helping authors stand up for their work, their livelihood, and the future of creative ownership.  Please let me know what

opportunities are available to get this message out to your audience. Happy to hop on the phone as helpful to talk more about our opt-out campaign."

**THE COURT:** That letter went to who?

**MS. GEMAN:** That letter went to a class member named Jane Friedman, who may have been selected because she's written about the business of writing.

And, Your Honor, to state that "most affected authors haven't even heard about it" in a critical way before direct notice has even gone out is misleading. To not link to the settlement information is misleading.

To refer to the settlement as "token" without any discussion of what Your Honor has set forth: Maybe it would be zero if we went to trial, maybe it would be 200, or maybe it would be more, but we don't know.

The notion of "making it all go away" is misleading, given the limited nature of their release.

The assertion that "Authors deserve more than a $3,000 payout" certainly sounds, you know, pro author; but if, in fact, it leads people to opt out not knowing that they might get nothing or less or have substantial obligations, that's not fair to anybody.

The assertion of "a community of 500,000-plus users," maybe that is an accurate statement of the number of people who have clicked on their website, but it's certainly complicated

in context.

I would also suggest, Your Honor -- and Your Honor asked specifically about current materials.  We were able to -- I would point Your Honor to the -- to Exhibit B, the chamber's copy.  And once again, there continues to be this very misleading conflation of the notion of claims with an opt-out.

It states, for example, on the website captured on November 12th, yesterday, "Explore Popular Claims."

Under the "Anthropic" section, it says, quote [as read]:

"Authors and rightsholders may qualify for more than Anthropic's $1.5 billion settlement."

It states a deadline of January 1st, 2026.  That's not a correct deadline, of course.  And then it states the time is three minutes.  Anthropic is at the top of the "Popular Claims."

Now, we are not suggesting that somebody would read that and think that they personally would get more than 1.5 billion; but overall, the idea is, without any context, they can get more and it will be easy.

The website -- I'm sorry.  The exhibit goes on to, again, underscore this notion of claiming [as read]:

"Join thousands of Americans who've filed with ClaimsHero."

[As read]:

"Filing claims shouldn't be complicated -- we've

made it simple, reliable, and trustworthy."

Now, they haven't done anything to make the claims in this case.  Your Honor has approved the claim form.

THE COURT:  Well, the notice hasn't even gone out, has it?  Or I guess you've given some kind of indirect notice.

MS. GEMAN:  That's correct, Your Honor.  Notice -- the direct notice is required to go out on November 24th.

And that is a great point, Your Honor, because the very next page is confusing.  Your Honor put your finger on it.  In the overview of the "Anthropic" section, the website says [as read]:

"How do I know if my work is part of the class settlement so that I can opt out?"

The very first thing it says is [as read]:

"You should have received a claim notice or email with a unique ID number from the claim administrator."

That's not true.  A simple perusal of the website shows that that's not even coming until November 24th.

What's clear is that this is replete with misleading information.

Again, the next page, "Find your claim."  "Claim your share in minutes."

Now, I understand that ClaimsHero will say that once people claim through everything and once they're in the

Anthropic-specific site -- all of which, by the way, we cannot access, although we requested it -- there probably is some language saying this is an opt-out.

But even assuming that nobody was confused about the difference between a claim and an opt-out, and even assuming that nobody was alarmed by the wrong dates and the idea that they'd already missed something because the IDs wouldn't have gone out -- and speaking to this class every day, as I do, I think there's a lot of focus on this and I have no reason to think that wouldn't be alarming -- you can't just say "Opt out, it's simple" without providing information about the Court, the settlement, the pros and cons, the class counsel, the risks, and the costs.  It has to be truthful.

This -- especially in -- I mean, every -- there's -- you know, all cases must be truthful and some more than others. I'm not saying that.  But here, there has been a lot of effort by this Court and the parties to very carefully characterize the process.  It's manageable, but it's not just clicking one button.  And this entire process is -- I don't know if it was designed to mislead; but under any fair understanding, it is misleading in a number of respects.

The six clients who submitted cookie-cutter declarations -- and this is no disrespect, of course, to these class members -- they made a bit -- inadvertently perhaps, a bit of a recursive statement.  They said, "I'm not misled

because I've read all of ClaimsHero's materials and they're not misleading."  But I haven't seen any evidence that they were shown the relevant materials, which is the notice, which is the website, which is the language that Your Honor has approved. That was very alarming to me.  I understood that they said, "We understand we're opting out," but the rest of the language was alarming to me.

We do believe that this is way over the line and that the relief that we're seeking must be ordered.  Again, we are not saying people cannot solicit opt-outs, we are not saying that people aren't allowed to opt out, but the class is entitled to non-fraudulent information.

I can also, Your Honor -- the other example I might point Your Honor to is in our brief where we cite an advertisement. Excuse me.

(Pause in proceedings.)

**MS. GEMAN:**  Sorry, Your Honor.  I'm looking at the declaration.

Even yesterday, there was a video advertisement up -- thank you -- and I'm just going to quote, if I could, into the record the transcript.  It's not long, with Your Honor's indulgence.

And when Your Honor sees the page, it's, you know, a young person sort of talking in a conversational way.  Note that we see that there's been a number of people who have seen this

because there's 746 thumbs-up as of yesterday; and that, of course, is underbroad because not everybody comments.

The language is this, quote [as read]:

"Authors, this might surprise you, current lawsuits allege that AI companies train their models using copyrighted books from sites like LibGen or Books3 without permission.  That means that if you're an author, your words could have been used to train AI without you ever agreeing to it.  Now these cases are still in progress, but if you published before 2021, your book has an ISBN or ISIN" --

That's a typo -- I mean, that's a misstatement in their language.  Continuing now, quote [as read]:

-- "and you registered with the U.S. Copyright Office within five years, you might be eligible to file a claim.  It only takes a few seconds, go to claimshero.io/anthropic to see if you qualify."

Again, stating that someone is eligible to file a claim is not the same as giving up all your rights.  To be clear --

**THE COURT:**  Well, it's the exact opposite.

**MS. GEMAN:**  It is the exact opposite.

**THE COURT:**  So you're understating it.

**MS. GEMAN:**  Yes, I am understating it.

**THE COURT:**  Filing a claim is the exact opposite of opting out.

**MS. GEMAN:**  Exactly.

**THE COURT:**  That's a problem that you two are going to have to answer in a few minutes.

**MS. GEMAN:**  Right.

**THE COURT:**  Go ahead.

**MS. GEMAN:**  And if I could add that -- and Your Honor is exactly right.  Not only is it opposite, but as Your Honor knows, opting out -- not only is it the opposite of filing a claim, but it means you opt out the work and so you're opting out for other people.

Not only does this not say that a claim is opposite from an opt-out or what an opt-out means or what the risks are for opting out or how to get the information or that the opt-out means opting out the work, it also doesn't say that there is a whole reinclusion period.  There's just nothing here.

You know, these class members are smart; but when something is misleading and pervasively misleading, it confuses.  That's fairly straightforward.

So, Your Honor, we've given some examples with the caveat that we haven't even been told the full scope of the marketing.

**THE COURT:**  Say that last sentence again.

**MS. GEMAN:**  We don't know the full scope of the marketing.  We -- and indeed, Mr. Freund, the CEO, said in his declaration to Your Honor, in paragraph 50, that they've stopped marketing.  Notwithstanding that statement, we found

this ourselves yesterday, the video marketing.  Notwithstanding that statement, we have no idea what other letters have been sent out to class members.

So I just want to be clear that I am not representing to Your Honor that I have seen every piece of paper, but every piece of paper that I have seen is misleading, and that's why we moved so quickly and we're very troubled.

THE COURT:  Okay.  I'll give you a rebuttal in a moment.  Let's hear from the other side.

MR. FREEDMAN:  Sure.  Good morning, Your Honor.  Vel Freedman.

THE COURT:  Good morning.

MR. FREEDMAN:  Freedman Normand.

Your Honor, I have prepared a printout of the Anthropic website or ClaimsHero's Anthropic-related website.

Can you give --

THE COURT:  I can't hear you.

MR. FREEDMAN:  Sorry, Your Honor.

May I hand this up?  We have copies for --

THE COURT:  Sure.  Show counsel what you're handing me.

MR. FREEDMAN:  I'm sorry?

THE COURT:  She's entitled to know what you're handing me.

MR. FREEDMAN:  Oh, yes.  Sorry.

(Document handed up to the Court.)

**MR. FREEDMAN:**  And so, Your Honor, I want to start by explaining a little bit about what ClaimsHero does.

**THE COURT:**  You said -- this is your website.

**MR. FREEDMAN:**  Yes, Your Honor, this is the Claims- --

**THE COURT:**  You said it was the Anthropic website.

**MR. FREEDMAN:**  I should have spoke better, Your Honor.

**THE COURT:**  You misspoke.

**MR. FREEDMAN:**  This is the ClaimsHero-related website that deals with the Anthropic claims.

**THE COURT:**  This is not the whole thing, though.

**MR. FREEDMAN:**  This is --

**THE COURT:**  I saw it myself this morning.  You only get to this part by something that uses the word "claims."

**MR. FREEDMAN:**  I'm going to get there in a minute, Your Honor.  That's true.

**THE COURT:**  Am I right?

**MR. FREEDMAN:**  Yes, Your Honor.

**THE COURT:**  Well, isn't that misleading?  That's misleading.

**MR. FREEDMAN:**  I don't believe so, Your Honor, but I'd be happy to explain to you why.

**THE COURT:**  All right.  Explain why.

**MR. FREEDMAN:**  Well, Your Honor, a claim -- first of all, the law tells us that what is communicated to class

members must be looked at in its entirety, not a single sentence or word.

The word "claim" I use regularly, and I think many lawyers use regularly, to describe a lawsuit.

ClaimsHero --

**THE COURT:** To describe what?

**MR. FREEDMAN:** A lawsuit, Your Honor, an actual lawsuit, which is what opt-outs would have to do, file a claim.

But, Your Honor --

**THE COURT:** No.

**MR. FREEDMAN:** -- if that's all --

**THE COURT:** No. They think you are going to file it.

**MR. FREEDMAN:** And, Your Honor, we are going to file it for them.

**THE COURT:** Have you ever -- has ClaimsHero ever filed a lawsuit as counsel of record?

**MR. FREEDMAN:** Your Honor --

**THE COURT:** I don't think so.

**MR. FREEDMAN:** -- ClaimsHero represents over 50,000 people against TikTok in a mass arbitration.

**THE COURT:** No, no, no. That's not -- I asked in a lawsuit. Zero.

**MR. FREEDMAN:** Well --

**THE COURT:** Z-e-r-o.

**MR. FREEDMAN:** But, Your Honor, a new law firm, which

ClaimsHero is, by definition, has not many lawsuits.

I mean, but the question is:  Are you -- are you attacking the credibility of ClaimsHero, or are you --

THE COURT:  Yes, I am.

MR. FREEDMAN:  Okay.  But, Your Honor, that's a different question than we're here for today.  I'm happy to present on that.

THE COURT:  Let's make sure.  What do you think you're representing to these people?  Let's assume they get to this page.  Your six people who filed the identically worded thing -- my law clerk rearranged it.  Now I can't find it.

Where is the one from the six members?  Here it is.  No, that's not the right one.  It's back in the back.

Okay.  I got it now.

He thinks -- he thinks -- at the end [as read]:

"I have hired ClaimsHero to both opt me out and to handle that individual lawsuit for me."

MR. FREEDMAN:  That's correct, Your Honor.  That's exactly what ClaimsHero --

THE COURT:  Okay.

MR. FREEDMAN:  -- intends to do.

THE COURT:  And how much -- and elsewhere you say they don't have to pay a penny, not a penny.

MR. FREEDMAN:  That's correct.

THE COURT:  Not even expenses.  Nothing.

**MR. FREEDMAN:**  That's correct.

**THE COURT:**  Except a small -- you call it "a small percentage" at the end.

**MR. FREEDMAN:**  That's correct, Your Honor.

**THE COURT:**  That's an impossible model.  That's flawed on its face.  I don't believe it.  I believe it is just a come-on to get people to opt out.  There is no way that ClaimsHero, which has zero track record in any court, is going to be able to bring a lawsuit against Anthropic.

**MR. FREEDMAN:**  Your Honor, with respect --

**THE COURT:**  You cannot do it.  It's just a monumental undertaking.  And if you think it's going to be settled on a harassment basis, which is probably what you think, think again.

**MR. FREEDMAN:**  Your Honor --

**THE COURT:**  These people are going to fight you, and you will lose that case --

**MR. FREEDMAN:**  Your Honor, with respect --

**THE COURT:**  -- because you're not big enough to finance it.

**MR. FREEDMAN:**  Your Honor, with respect, you are making these conclusions without an evidentiary record in front of you, and I disagree with them strenuously.

I have run a law firm now for six years.  Not ClaimsHero.  We started off with no lawsuits either, and we are fighting

some of the largest claims in the country, including 16 of the universities -- of the country's top universities.

**THE COURT:**  You're not ClaimsHero.

**MR. FREEDMAN:**  I'm not, Your Honor, but my point remains, which is, new law firms can secure financing, can raise capital, and can take on large fights.  And ClaimsHero is.

**THE COURT:**  None of that has been disclosed to these people.

**MR. FREEDMAN:**  But, Your Honor, they didn't ask these --

**THE COURT:**  You've been --

**MR. FREEDMAN:**  -- questions.

**THE COURT:**  -- leading them to believe that they will be able to get ClaimsHero to go take depositions --

**MR. FREEDMAN:**  Yes, Your Honor.

**THE COURT:**  -- to hire experts, to litigate with these big law firms, Arnold & Porter, that will just whip you up and down because they are good.

**MR. FREEDMAN:**  Your Honor --

**THE COURT:**  ClaimsHero has a zero track record.  That should be disclosed to these people --

**MR. FREEDMAN:**  Your Honor --

**THE COURT:**  -- that "We have" -- "By the way, we have a zero track record in federal and state court."

**MR. FREEDMAN:** Your Honor, ClaimsHero regularly partners with much more established --

**THE COURT:** That's a different thing.

**MR. FREEDMAN:** -- law firms.

**THE COURT:** That wasn't disclosed either.

**MR. FREEDMAN:** Your Honor, it is disclosed.

**THE COURT:** And those partners --

**MR. FREEDMAN:** It is disclosed.

**THE COURT:** -- are going to do it for free? Those partners are going to do it for free?

**MR. FREEDMAN:** No. They do it on a contingency --

**THE COURT:** No, they're not.

**MR. FREEDMAN:** -- basis.

**THE COURT:** What?

**MR. FREEDMAN:** They do it on a contingency basis.

**THE COURT:** Most contingency firms require you to pay the out-of-pocket costs.

**MR. FREEDMAN:** Your Honor, with respect, that's not an accurate statement.

**THE COURT:** And is it going to be a, quote, small percentage?

**MR. FREEDMAN:** I don't remember the percentage off the top of my head.

**THE COURT:** You don't because it hasn't been done yet.

**MR. FREEDMAN:** But, Your Honor --

**THE COURT:** None of that --

**MR. FREEDMAN:** -- there are two separate --

**THE COURT:** -- was disclosed.

This is a fraud of immense proportions.

**MR. FREEDMAN:** Your Honor, I don't believe so. And if I can bring you through the --

**THE COURT:** All right. Go ahead.

**MR. FREEDMAN:** -- Anthropic website --

**THE COURT:** I'm going to listen. I'll shut up.

**MR. FREEDMAN:** Because, Your Honor, I think there are two separate things. We came here prepared to discuss Anthropic's motion, which was, we're deceiving class members by tricking them into thinking we're filing claims in a lawsuit and really opting them out.

**THE COURT:** Yeah, that's exactly what was going on.

**MR. FREEDMAN:** Okay. So, Your Honor, I'm prepared to show why that's not true.

Your Honor is raising a separate issue, which I'm happy to address but I need a little bit more time, which is: Can ClaimsHero make good on what it's saying to class members? And that is -- that is a different inquiry that we have been given no notice of and you're asking me questions now about.

**THE COURT:** You gave it to me yourself in the seven declarations you filed where these people all say, identically, "We hired you to opt me out and handle the individual lawsuit

for me."

I saw that, and I said what a joke.  ClaimsHero is going to take on these big people and handle the litigation when they have zero track record.

**MR. FREEDMAN:**  Your Honor --

**THE COURT:**  No way it'll happen.

**MR. FREEDMAN:**  -- these clients are sophisticated.

One of the clients that executed the declaration is John Carreyrou, a Pulitzer Prize-winning journalist.  He took down Theranos.  In his judgment --

**THE COURT:**  I know who he is.  I know who he is.  In fact, he's the one I'm reading from right now.

**MR. FREEDMAN:**  So, Your Honor, in his judgment, ClaimsHero is able to --

**THE COURT:**  Well, we're going to find out because I'm going to require him and all the others to appear for an evidentiary hearing, and your CEO.  It's going to be on November 25th.  So write that down.  We're coming back, and people are going to say things under oath.  The six can appear by Zoom.

All right.  Keep going.  I'm listening to what you have to say.

**MR. FREEDMAN:**  All right.  Do you have the --

**THE COURT:**  We're going to find out.  We're going to find out.

MR. FREEDMAN:  I understand.

THE COURT:  We're going to find out.  And why didn't he wait until he even got the class notice to find out what the -- you didn't bother to tell him that I had already ruled that it was fair use, it was fair use to train the model.

MR. FREEDMAN:  Your Honor, we did tell --

THE COURT:  That part was fair use.

MR. FREEDMAN:  We did tell the clients that it was fair use to use the model, that you ruled that it was fair use to use the books to train the model, and that the core issue is that there's a library being maintained.  ClaimsHero did --

THE COURT:  So you're going to take it all the way --

MR. FREEDMAN:  -- inform them about --

THE COURT:  -- to the Supreme Court, all the way to the Ninth Circuit, and how many millions is that going to take?

MR. FREEDMAN:  Your Honor, ClaimsHero is prepared to do it.  I don't understand why you've assumed that they won't before hearing any evidence about ClaimsHero.

THE COURT:  Because they've never brought a lawsuit in their life.  They've never been counsel of record.

MR. FREEDMAN:  But, Your Honor, that's true of all law firms, and many of them become huge and established law firms.

THE COURT:  Big -- small solo practitioners don't take on Anthropic, and these class members deserve to know.

Lieff Cabraser can do it.  Susman Godfrey can do it.

They've got a proven track record.  ClaimsHero is just -- is not a hero of anything.

**MR. FREEDMAN:**  Your Honor, I can tell you, for example -- again, I appreciate the opportunity to do it on a more fulsome record; but I can tell you that ClaimsHero has been fighting TikTok for two years in association with other, more established law firms.  We -- my law firm is involved in that.  Another law firm in California here.  I forgot the name.

**THE COURT:**  What's your contingency rate?

**MR. FREEDMAN:**  It depends on the case, Your Honor.

**THE COURT:**  Huh?

**MR. FREEDMAN:**  It depends on the case, Your Honor.  It usually ranges from somewhere between 30 to 40 percent.

**THE COURT:**  Well, that's not a small percentage.

**MR. FREEDMAN:**  It's not, Your Honor.

**THE COURT:**  Okay.  Well, then it's been represented it's going to be a small percentage.

**MR. FREEDMAN:**  Your Honor --

**THE COURT:**  There's no mention of --

**MR. FREEDMAN:**  -- I believe the ClaimsHero engagement letters lay out the percentages.

But, again, Your Honor, this is a different issue.  This is -- this is now the Court acting paternalistically to protect a client from engaging in a voluntary attorneys' fee agreement.

**THE COURT:**  I'm protecting the class members.  They

can opt out all they want.  That's a god-given right.  But they should not be tricked into opting out.

**MR. FREEDMAN:**  That, I agree with, Your Honor.

I'd like to take you through the Anthropic -- ClaimsHero's Anthropic-related website because I believe --

**THE COURT:**  All right.

**MR. FREEDMAN:**  -- Your Honor, if you look through it with me --

**THE COURT:**  I'm so upset by it, it's hard for me to think straight when I read this.

But, all right.  You've given me this Anthropic -- I have read this, by the way.  So -- and I know what your argument is. I don't trust it.

**MR. FREEDMAN:**  I understand that, Your Honor.  There's two separate things.  There's -- I'm hearing a lot of hesitancy that ClaimsHero is able to deliver on its promises.  That question is a separate question and one we will address.

**THE COURT:**  It's not.  It's not.

**MR. FREEDMAN:**  But, Your Honor --

**THE COURT:**  It's not.

**MR. FREEDMAN:**  -- it's a separate question than what was --

**THE COURT:**  It's not a separate question because if you're tricking them into thinking, "Oh, all I gotta do is click here and money will eventually roll in to me and I'll get

everything but a small percentage.  And they're going to win. They're good.  This is a bogus settlement that Anthropic is giving.  It's only $3,000," they read your propaganda and they say, "Oh, I'll go ahead and click."

I think if they read our class notice, most of them would say this is not that simple.  This is not that simple.  You are -- you're just tricking them.  I'm telling you, Counsel, your client is tricking the class, and my duty is to help protect the class.

**MR. FREEDMAN:**  Your Honor, I understand that's what you're saying.  I would object to you saying that without hearing any evidence.

I would also -- I'd like to address --

**THE COURT:**  I've read the evidence.

**MR. FREEDMAN:**  Well, but, Your Honor, I want to actually address the email that was shown this morning or read into the record this morning.

**THE COURT:**  All right.  I'm going to shut up.

**MR. FREEDMAN:**  Let me start there because --

**THE COURT:**  I apologize.  I owe you an apology.  I should be quiet and let you make your argument.

**MR. FREEDMAN:**  No, Your Honor, it's important I hear your concerns so I can address them.

But, you know, I want to start with that email, because it was sent to a class member, it's true, but it wasn't sent to a

class member in her capacity as a class member.  And if you bring up the email, you will see that it's addressed to advertising@janefriedman.com.  Jane Friedman runs -- she's a reporter on things in the publication industry.

This was sent to a potential partner of ClaimsHero for advertising purposes in order to partner with them to get ClaimsHero's message out.  It's not a solicitation to a direct class member.  And that's why, Your Honor, the email ends with [as read]:

"Please let me know what opportunities are available to get this message out to your audience."

It happens, inadvertently, to be that Jane Friedman is a class member, but that's not why this email was sent to her, and this is not a solicitation that goes to class members.  This went to her only because she runs a news agency about publications.  So I just wanted to clear that up.  So this does not -- this email has not gone to a single class member on purpose because they're a class member.  It went to her because she's a news agency.

Your Honor, with that, I'd like to bring you to the Anthropic -- ClaimsHero's Anthropic copyright infringement website, because I think if we look at it together and we put aside for a moment, Your Honor, for a moment -- I understand ClaimsHero has a hill to climb to prove to you they can do what they say they're going to do.  I understand that.  But I had no

notice that was coming today.

I want to show you that ClaimsHero hasn't lied to class members, and I want to show you that what it said to them is clear and is understandable.

And so if you look at the first page [as read]:

"Anthropic has received preliminary court approval of a settlement . . . ."

A few lines down [as read]:

"That settlement provides for just $3,000 . . . .  If you opt out of that settlement, you may be entitled to more . . . .  Let us opt you out, represent you, and fight for more!"

And then the call-to-action button, that blue button at the bottom, says [as read]:

"Opt Out Today."

That's not it.  In the "Overview" section, the very first language in bold, the second half after the dash [as read]:

"ClaimsHero is Only Representing Authors and Rightsholders Seeking to Opt Out of the Anthropic Settlement."

Then a little farther down [as read]:

"Other lawyers . . . have reached a settlement . . . ."

And in the third paragraph [as read]:

". . . you may be eligible for more compensation

than provided by the Settlement by opting out of it and pursuing your claims against Anthropic in court."

And then at the bottom [as read]:

"Let us represent you in your case against Anthropic by opting out now!"

And if you go to the next page, Your Honor, as you scroll down to the very first frequently asked question [as read]:

"Is ClaimsHero only representing opt-outs from the settlement?

"Yes . . . only . . . [those] who intend to opt out . . . ."

The next frequently asked question [as read]:

"Why would an author [holder] or rightsholder opt out of the Settlement and have ClaimsHero file an individual lawsuit?"

And the answer [as read]:

". . . you . . . have the right to opt out . . . and let us (or another . . . firm) seek damages directly against Anthropic."

Over and over again, Your Honor, the representations to class members are they're not filing a claim; they are opting out and bringing a lawsuit.  I understand we have to prove to you we can, but stay with me.

The next frequently asked question [as read]:

"What does opting out of the settlement mean?

"In plain English, it means that you are giving up the right to get funds from the class action settlement and will need to file an individual suit and win or settle it to collect any funds.  That takes more time and isn't certain, but the payout can be substantially higher.  In the words of the settlement administrator, whose website is available here" -- and there's a link directly to the settlement administrator's website -- "opting out means . . . ."

And then there's a quote from the exact language in the settlement administrator's website about what happens when you opt out.

And then if you keep going down, Your Honor [as read]:

"How do I know if my work is part of the . . . settlement so that I can opt out?"

The bottom of that next page.

And then, Your Honor, as you click through ClaimsHero's systems, you get brought to these two radio buttons [as read]:

"I request to be excluded from the proposed class.  Exclude me from the proposed class and I authorize ClaimsHero to do that."

Your Honor, any person who reads through this website is not thinking that we are filing -- ClaimsHero is filing a claim on behalf of them in the settlement.  It is very clear, very

clear that ClaimsHero is telling them:  Give up that right.
Let us fight for you.  Let us file a lawsuit for you.

Again, there's two separate questions before the Court, and one was raised this morning for the first time.

One is:  Is ClaimsHero misleading people?  The answer to that -- let me rephrase that.  Is ClaimsHero misleading people about what it intends to do?  And the answer to that, when reading this, is clearly no.  It's very clear what it's telling people it wants to do.

Now, ClaimsHero does -- and this is what class counsel is conflating, and it's unfair.  ClaimsHero is trying to address a problem that's well recognized within Rule 23, within class actions, and that's an extraordinarily low claim rate. The FTC tells us the median direct claims rate is just 4 percent.  And what ClaimsHero tries to do is to address that.

And it's a new firm, Your Honor, it is.  But what its concept is, is to address that in two ways:  one, by bringing direct claims when appropriate.  As I told you, ClaimsHero represents over 50,000 people in direct claims against TikTok for creating an unreasonably addictive algorithm.  It does so in conjunction with well-established law firms.

The other thing it does, Your Honor, is it encourages, appropriately and truthfully, for people to opt out when that makes sense.  And when that doesn't make sense, then ClaimsHero will advertise settlements and advocate and help clients file

claims in settlements.

It does those three things.  It has three different, call it, business silos.

Now, what class counsel is doing is taking the portions of ClaimsHero's website that deal with that third silo, with filing claims, and saying it's misleading.  But that's really not true, Your Honor.  When you go to the Anthropic-related section, it is overwhelmingly clear what ClaimsHero is asking these people to do.

And, Your Honor, these are not, you know, impoverished, uneducated people out in flyover country or, you know, in a Third World country.  These are some of the most sophisticated plaintiffs that this court system has known.  These are authors who've written books.  We have a Pulitzer Prize winner who has retained us.

So, Your Honor, my -- and, by the way, Your Honor, this is a good thing.  This is something that the courts advocate for. You are allowed to encourage opt-outs because it helps you, Your Honor, in your duty of vetting the claim and the propriety of the claim, because right now you have no adversity before you, Judge.  Plaintiffs and defendants are holding hands here, trying to get you to approve a settlement.

And the courts around the country say, including, for example, the Sixth Circuit -- I'm going to quote the *Wayside Church* case [as read]:

"By contrast, lawyers other than class counsel are well situated -- by knowledge and incentives alike -- to point out to potential class members why their recovery is too low or class counsel's fees are too high."

Or the Third Circuit, in the *In Re Community Bank* case, that acknowledged that both, and I quote [as read]:

"Outside counsel can play an important role in helping absent class members evaluate the decision of whether to opt out of the settlement class."

And then recognizing that this also comes from a pecuniary interest; it's not a selflessness issue from the law firms.

And so, Your Honor, class counsel brought us here today because they said ClaimsHero is misleading people; it's tricking them into thinking it's going to file a claim and, in actual fact, exclude them.

Your Honor, I've been through the website with you. ClaimsHero says over and over again that you have a right to get your $3,000, but you shouldn't. You should opt out. You should give it up. You should file a lawsuit. You should let us do it for you. You should let us fight for more.

It says that lawsuits are uncertain, that they take longer. ClaimsHero --

**THE COURT:** You said a while ago that -- you pointed out that me, the Judge, had ruled that it was fair use. I

don't see that in this overview.

**MR. FREEDMAN:**  That was an email directly to our clients, Your Honor.

**THE COURT:**  It's not in the -- so it's not --

**MR. FREEDMAN:**  It's not in the record, Your Honor. It's not in the record.

**THE COURT:**  Okay.  It's not --

**MR. FREEDMAN:**  But you asked me a direct question, if we had told them, and so I answered truthfully we had told them directly.

Your Honor, here's the other thing.

**THE COURT:**  Can I have a copy of that?  Is that somewhere in the record?

**MR. FREEDMAN:**  It's not in the record, Your Honor. It's technically an attorney-client privilege.  But I'm happy to submit it to you if -- if you will keep it from disclosure beyond to you, Your Honor.

**THE COURT:**  No, I'm not going to do that.  She represents the class too.

**MR. FREEDMAN:**  That's true.

**THE COURT:**  And I don't --

**MR. FREEDMAN:**  Well --

**THE COURT:**  -- trust these opts-outs.

**MR. FREEDMAN:**  Your Honor, it's true they represent --

**THE COURT:**  You misled me.

**MR. FREEDMAN:** How did I mislead you?

**THE COURT:** You misled me when you said -- you had led me to believe that your write-up here would tell them that I had held it was fair use, which is a big obstacle to telling -- this thing makes it sound like authors ought to -- that their works, their books were used to train the AI model and that the authors deserve to be paid for that.

Well, all right. That is a point of view. But after having a huge hearing where these lawyers invested millions of dollars of time, I ruled: No. It was fair use, fair use and zero liability. Now, maybe on appeal, that can be reversed if this settlement falls apart, but that is the ruling.

Now, you lead them to believe that it's an open question here. You say: Oh, you deserve to be paid for that.

And, by the way, the settlement, the settlement mainly is directed at those people whose works were downloaded from the pirate sites. That is a different -- because most of those were never even used to train a model. And you're leading them to believe: Oh, your book was used to train the model. Oh, your book was used to train the model.

We don't know that. You don't know that. But we do know that it was a small percentage was used to train the model.

**MR. FREEDMAN:** Your Honor, I never meant -- never my intention to mislead you. I didn't mean to tell you that we put it here. You said, "You never told those clients that it

was fair use," and my response was --

THE COURT:  In this write-up, you don't do that.

MR. FREEDMAN:  Okay.  Your Honor, I didn't understand that was your question, but I answered truthfully.  We told our clients --

THE COURT:  Based on some email that I have never seen and that is coming to light for the first time right now.

MR. FREEDMAN:  But, Your --

THE COURT:  It's not in the record.

MR. FREEDMAN:  I understand that, Your Honor, but --

THE COURT:  Oh, it's attorney-client.  Oh, jeez --

MR. FREEDMAN:  You know what?

THE COURT:  -- that's attorney-client.

MR. FREEDMAN:  Fine, Your Honor.  We will produce it. If that will make you happier and convince you we're not trying to mislead you --

THE COURT:  Yeah, I want to see it right now.

MR. FREEDMAN:  -- I will give --

THE COURT:  Show me.  And it's not going to be kept secret.  This lawyer here is going to get a copy of it.

MR. FREEDMAN:  I have a copy of it.  Can I read it into the record, Your Honor?

THE COURT:  Show it.  Counsel gets to read it over your shoulder.

MR. FREEDMAN:  No problem.

**THE COURT:**  Make sure you're reading the whole thing.

**MR. FREEDMAN:**  Yes, yes.

**THE COURT:**  By the way, was this sent last night?  When was it sent?

**MR. FREEDMAN:**  Sent yesterday at 7:37 a.m. --

**THE COURT:**  Oh, yeah.

**MR. FREEDMAN:**  -- Eastern Time, Your Honor.

**THE COURT:**  Very convenient.

**MR. FREEDMAN:**  Your Honor, it was sent to --

**THE COURT:**  Fixing up the record right before this hearing.

Okay.  Go ahead.  I want to hear what it says.  Go ahead.  I want counsel to look over your shoulder.  Read it out loud.

**MR. FREEDMAN:**  They're all identical, but here's one.

[As read]:

"John, thank you again for working with me to get your declaration signed in the Anthropic matter.  Papers are due by 3:00 p.m. today and are looking good.  While finalizing our papers, we noticed that the declaration stated that Anthropic agreed to pay 1.5 billion to settle claims that it trained its AI on copyrighted works.  But it is more accurate to say that Anthropic's agreed to settle claims that it printed copyrighted works to build a central library.  The Court held that training was a fair use.  The

fact that they illegally pirated and stole a copy of your book was not fair use.  To ensure no one tries to nitpick us on the papers, I'm attaching an updated declaration reflecting only that change, also sent to you in e-sign.  Can you please execute it and get it back to me as soon as possible.  We're filing by 3:00 p.m. Eastern today, so there is some urgency.  I've copied my partner, Vel Freedman, to ensure we get this executed because I'm going to play it right out for the argument."

Your Honor --

THE COURT:  Who was that to?

MR. FREEDMAN:  That was to every one of the six clients that signed the declarations.

THE COURT:  And --

MR. FREEDMAN:  Your Honor --

THE COURT:  -- do we have the new declarations yet?

MR. FREEDMAN:  Those are the ones you have, Your Honor.

THE COURT:  This doesn't say anything about fair use.

MR. FREEDMAN:  No, Your Honor, it doesn't say about fair use.  We were just informing our clients about what you had ruled and why we were using this wording in the declaration, which talks about downloading.

Your Honor, here's the other thing I'd like to make a

point to you, and I think it's important.  ClaimsHero put up its website.  May have been some problems with it.  ClaimsHero received a notification --

THE COURT:  May have been some problems.

MR. FREEDMAN:  Well, Your Honor, because I don't think it was misleading --

THE COURT:  Why don't you concede that at least the very first version was riddled with error?

MR. FREEDMAN:  There were errors in the first one, Your Honor, I agree.

And -- but here's the point that I think is important, Your Honor.  ClaimsHero has acted in good faith this entire time.  As soon as it received a reach-out from class counsel -- it was a Sunday -- ClaimsHero responded and scheduled a conversation for the next day, which was a Monday; met with class counsel that day and, that same day, revised its website to make it even clearer; and then told class counsel:  We've made these edits.  Is there anything else you'd like to discuss?

And instead of engaging in dialogue with ClaimsHero to fix whatever they thought was a problem -- ClaimsHero was more than ready to do it as demonstrated by what it's done already -- they filed the motion to pull down the website.

So, Your Honor, the other thing I want to point out is, ClaimsHero is acting in good faith here.  You may have your

doubts about its ability to deliver on its promises, and I hear you that it's on us to assure you that it can do what it says it's going to do, but that is a different question.  ClaimsHero has been acting in good faith.  It's responded to class counsel.  It's edited -- its website is very clear about what it's trying to do.

Now, Your Honor has pointed out, maybe it needs to be more clear about fair use, and we can include those things in here.  It's not a problem.  We are happy -- you wouldn't even have to enter an order to do it, Your Honor.  If class counsel told us they wanted us to do it, our client would have done it.

But I'm -- in fairness to me, Your Honor -- and, obviously, ClaimsHero is entitled to due process -- it's had no notice of any of these issues until I'm standing in front of you here today.

THE COURT:  All right.  Rebuttal.

MS. GEMAN:  Thank you, Your Honor.  A number of issues.

First, as was just conceded, this, what was sent up, is still misleading, and even this is the allegedly corrected version.  It said "claims."

Even the first sentence, "The settlement provides for 3,000 per copyright claimant," that's not correct.  It's per work.

"The law provides for up to 150,000."  No, the law

provides for -- that is, on its truth, correct, but it goes zero to 150,000.

"Unless you take action," there's the sense of urgency, compounded by something that Mr. Freedman did not read, again, this notion that people should have already gotten their unique ID.

It was just simply a change from the template "claims" to the template "opt-out," but the overall website is misleading.

But even more fundamentally, I reject the idea that Rule 7.1 and the importance of accurate and truthful statements about the lawyers is disconnected from the Rule 23(d) issues. The overriding point is for truthfulness and non-misleadingness.

We pointed out in the papers another misleading thing, that what was publicly represented was that after a series of something like big losses or losses, Anthropic settled.  There was nothing that was public facing that talked about the different rulings, not a link to the Court's -- not a link to the language this Court set forth in Question 32 and certainly not a discussion of fair use.

These clients we've just learned were not given a fulsome explanation of the background.  It's troubling that it seems like these are folks -- class members who already signed up. This was not -- Mr. Freedman said this was in the -- that there were things in the engagement letter.  These folks had already

signed up and the company was putting together cookie-cutter declarations for this filing; and it was in that context where they said, "We're changing your language because it's not correct.  Just re-sign it."

That is not the same thing as a discussion, a fulsome discussion that talks about the risks and benefits of the case. That is an explanation for a last-minute change to a cookie-cutter declaration purportedly because they were afraid of nitpicking.  That is -- that, itself, underscores the problem here -- many of the problems here, the misleading communications, even to this Court, and the concern that class members have been misled.

So, again, I think it is appropriate to think about Rule 7.1 in this context.  But, again, our goal, as class counsel --

THE COURT:  I've forgotten what Rule --

MS. GEMAN:  I apologize.  You know, lawyers are --

THE COURT:  Rule 7.1.

MS. GEMAN:  Yes.  Lawyers are supposed to accurately discuss their -- you know, their services and what they're doing.

Yes, of course everybody has their first case; right? Nobody starts with having cases.  But it would seem to me that it would be very appropriate -- more than appropriate, required -- for people to see all this litigation happened; it

was complicated; it was difficult; it was nuanced; there were rulings going one way, rulings going the other way.

Your Honor has required language like that, and I don't think the recipients of the misleading advertising got anything like that. They've gotten, "Hey, there were token" -- "Anthropic had losses. There's a token settlement. You can get more. We'll do the rest." That is not accurate.

So, again, the notion that the issues were presented fairly is wrong not only because (a) it was totally devoid of linkage to the actual relevant materials and (b) the suggestion was that there was a series of losses and a settlement that was too small.

I want to say something about -- about the -- and then again, I do just want to underscore again the language that was just read from the email, which was accurately read, but it was read at some point after people had signed up and only in the context of changing declarations.

With respect to the email to Ms. Friedman, we still haven't heard how many other emails went out. We still haven't heard -- we know that there were online direct messages on social media. We have no idea what they say.

But even assuming that Ms. Friedman was solicited in the hopes that she would amplify information to other class members, Mr. Freedman said this is -- this is the message they want to get out. And that message, on its face, was

misleading; right?  It just said the token 3,000 and you're giving up everything, essentially.  So in a way, it's even more alarming if the solicitation to Ms. Friedman was in the hopes that she would be, you know, complicit or involved in further amplifying misleading messages.

I think the fact that there remains this sort of confused conflation of claims and opt-outs is highlighted by the fact that Mr. Freedman was talking about this problem of low claims rate.  That has nothing to do with what we're talking about here, nothing at all.

The fact is that they have this template website that until about a minute ago, the business model was acting as essentially a claims aggregator.  And in quickly -- and I don't know with how much forethought -- you know, retrofitting it to be this misleading opt-out settlement, a lot of mistakes were made.  Today in court is the first time they've acknowledged that.

Part of the reason we filed so quickly is because when we had the phone call with these folks, they said, "No, the website is not misleading.  It's fine."  There was no willingness to meaningfully grapple with the well-established rules.  We were very alarmed.  We are very alarmed.

We are not seeking to enjoin the solicitation of opt-outs, but they have to be truthful.  And everything that was said further compounds our concerns and the need that I think

this Court should see all of the materials, the marketing materials, that have been sent to class members or to people who they hope will interact with class members.  And I think that, again, that what was presented here was misleading.

Also, I would note, Your Honor, I don't believe the website -- I don't believe that you see this and then you go right to this page, which, again, has misleading information: "You should have received a claim with a unique ID."  I think we'd like to see the entire website holistically, something that we sought to do yesterday but were not permitted to do.

We, class counsel, would commit to, as soon as the Court wanted, reverting immediately with what we consider the concerns to be.  And so far, Your Honor has, of course more eloquently than I have, put your finger on many of the issues and confusions, starting with the threshold misleading notion of claims.

Everything suggests this is easy, easy, easy, and it's far from it.  There's been nothing truthful here.  And you don't have to be a sophisticated or experienced lawyer to be truthful.  But here, they were not truthful, regardless of whether they've tackled TikTok or not tackled TikTok.  What's relevant is this is false and misleading, and it probably would have stayed false and misleading, egregiously so, had we not pointed it out to them.

There was no suggestion -- so I don't want to say too

much, Your Honor; but in any event, I believe these issues are connected. I think that there has been an attempt to set up a record of lack of evidence and lack of notice. Respectfully, I think that's hogwash. There is complete notice here that we believe that ClaimsHero's marketing to class members violates Rule 23(d). It is false. That's what they have notice of. It is false in many ways.

Among the reasons it's false is the implication that opting out is sort of, for lack of a better word, an easy road. Of course they had notice that this is what we're concerned about. It was in the briefs.

I don't believe there are new issues here. I believe that, instead, they are the same issues we've raised and your court -- Your Honor has put the finger on that suggests that rather than having more and more evidentiary hearings, separate from the one Your Honor has ordered, but in terms of the generic marketing materials, that ClaimsHero should submit them and we should review them immediately.

**THE COURT:** All right. Any further rebuttal?

**MR. FREEDMAN:** Your Honor, I just want to point out that the case law, which we've cited in our briefs, is very clear here that there is a First Amendment protection for commercial speech from ClaimsHero. It can't be misleading. It can't be false. I think -- and any false or misleading representations, the remedy fashioned by the Court has to be

narrowly tailored to address them.

And so, Your Honor, again, I think it is untrue, in my judgment, when reading through the -- ClaimsHero's Anthropic-related website, that anyone would think that ClaimsHero intends to file a claim on their behalf in the settlement.  It is very clear that's not what ClaimsHero is doing.

Now, Your Honor finds that there needs to be additional disclosures about your fair use rulings.

And, by the way, Your Honor, I want to point out, it also -- the Anthropic-related website links to the settlement administrator's website three times and to both Lieff Cabraser and Susman & Godfrey's websites.  So it gives more -- it's not like it's completely comprehensive.  It links out to additional materials, including materials this Court has approved.

If there's more that the Court wants -- and ClaimsHero is happy to put it in, but no one's told us that.  And we came here on a motion saying, "You're deceiving class members" -- "ClaimsHero, you're deceiving class members by tricking them into thinking you're filing a claim."  That is patently untrue for sure under the revised website.

Now, I'm not saying that the Court may want additional disclosures.  We were happy to work voluntarily with class counsel to do that.  But saying that ClaimsHero is out there misleading clients and lying to them and trying to trick them,

that's not true.  It's a good faith actor who is engaging in commercially protected constitutional speech that the courts throughout the country have recognized does a service to both Your Honor and class members by bringing in a third party.

Now, maybe there needs to be some adjustments and some additional inclusions, and that's fine.  ClaimsHero is willing to do it.  But it's not a bad actor, and I don't think class counsel has shown anything that show any kind of purposeful animus or purposeful misleading.

I mean, when you see this normally in the case law, it's people lying about what you have to do to get a settlement. It's defendants trying to get plaintiffs to settle out from underneath the class.  It's plaintiffs trying to get people to opt in to make a larger class and they're lying about things.

Now, it could be that in order for a class member to have a better or more fair assessment, more disclosure or more issues like your fair use opinion has to be included here. That's fine.  But that's -- this is not -- courts step in and stop people from speaking and create prior restraints on speech and force corrections.  People are bad actors.  That's not what ClaimsHero is doing here, and that's evidenced both through the revisions made and the speed of the revisions made and the offers to class counsel to work with them.

Class counsel brought us here.  ClaimsHero was willing to work with class counsel and did address the concerns class

counsel raised.

So, Your Honor, I understand you have additional concerns. ClaimsHero is happy to address them.  But the idea that ClaimsHero was purposely deceiving people into thinking that they were filing a claim form and then bating and switching them, as class counsel said, to then opt them out, it's not true.

Your Honor was able to read the website.  It says it over and over.  We're opting you out, filing a lawsuit for you. It's not certain.  It takes more time.

And so, Your Honor, I just would ask the Court to, you know, just be cognizant of the First Amendment jurisprudence in this area and the good faith ClaimsHero has shown, the changes that are there.  And to the extent additional disclosures have to be made, ClaimsHero is willing to work with class counsel to make sure it's correct.

**THE COURT:**  Okay.  All right.  I'm going to make an interim ruling.

But we will have at 8:00 a.m. on November 25 an evidentiary hearing.  Counsel for ClaimsHero is ordered to make sure that all six of the people who submitted declarations are available by Zoom starting at 8:00 a.m. California time.  They will be examined under oath, and I'm going to get to the bottom of what they thought they were getting into.

Number two, the CEO, what's his name?

**MR. FREEDMAN:**  Matthew Freund.

**THE COURT:**  Who?

**MR. FREEDMAN:**  Matthew Freund.

**THE COURT:**  Yes.  He's going to be here in person.  He will also be examined under oath.

On the day before, noon on November 24, ClaimsHero shall produce all marketing materials that are associated with this opt-out effort and the engagement letters and a list of all class members who have signed up or been opted out -- or not been opted out, but have asked to be opted out as of November 24.  And that should be produced to counsel, not to me, but it should be available to be brought to court at 8:00 a.m. at the time of the evidentiary hearing, which will be November 25.

All right.  Now, in the meantime, I am going to order certain changes to the -- well, first, before I do that, I have a few interim findings I want to make.

As a judge, 26 1/2 years on the bench and 24 1/2 years before that as a lawyer practicing in this Court, I am disturbed by this record.  And it comes -- it's either -- it looks to me like, on a preliminary basis, a blatant attempt by your client, ClaimsHero, to trick people into opting out for the following undisclosed purpose.  The undisclosed purpose is that you think there's a quick buck to be made -- yes, you do -- a quick buck to be made by accumulating a number of

opt-outs and then going to Anthropic or going to plaintiffs' counsel and trying to cut a sweeter deal.

Now, you don't know this because you haven't been around this courthouse in this case, but these lawyers on both sides know that if that were to happen, they immediately must tell me, and I will refer you or them -- not them, but ClaimsHero -- to the U.S. Attorney, because that would be extortion.  I promise you, these lawyers know.

And I'm going to order the existing lawyers of record -- look at me now -- if there is any attempt to get a sweeter deal, a premium of any type by any opt-out, even one person, whether they're associated with ClaimsHero or not, you must immediately tell the district judge.  And if I'm still on the Bench, I'm going to hold another evidentiary hearing and/or immediately refer them to the U.S. Attorney for prosecution. That will not happen.

That happens in other cases, and I've read about it.  I've been around for 50 years.  I know that's a gimmick.  I suspect that's what's going on here.

Oh, you're shaking your head "no."

All right.  I'll put on the record.  He says, he's indicating:  No, that's not what's going to happen here.

Well, what causes me to believe that?  Well, first of all, this notice -- this attempt went out before the class notice went out.  So these poor class members don't get the full

picture.  They only get your side of the story.  And your side of the story is:  This is a crappy deal, only $3,000.

Let me tell you something.  It's a good deal.  It's a good deal.  You don't get the maximum statutory damages in every case.  In fact, you might not even get statutory damages.

Some of the class members -- this is not -- this is not a blatant case, for example, where somebody comes in, makes counterfeit copies of a popular book or movie, and then goes out and sells that and reaps in the money and then cuts into the -- no, it's nothing like that.

First, it was using the words written by the authors to train the LLM.  That's fair use.  Nothing illegal about that.

What they did that was wrong was downloading it from the Internet.  They could have, I also said, gone out and bought copies -- and they did do this -- bought copies of the books off Amazon or at library sales for $1, $2, $5 and do exactly what they did for those, scan them.  That's all perfectly fair use.  Different type of fair use, but then it goes -- gets to use it for the LLM.

In my mind, there was only a narrow path to a home run in this case, and that home run is well represented by the $3,000. Even if they had won, they might have just gotten -- they might have gotten less than $3,000.  It is not a strong case on a big award for statutory damages.  So to tell them that "Oh, yeah, you're going to get more than $3,000," that's baloney.  That's

baloney.

Now, that's my opinion.  But I don't think you have a thing -- I don't think ClaimsHero has a thing to back up the idea that this is a poor settlement, not a thing.

And I don't believe for a second that ClaimsHero is actually going to go represent somebody.  They have zero track record.  Instead, the most you can say is they'll go hire your firm or some other firm who will want one-third, not a small percentage as represented, but one-third, maybe half to litigate the case all the way.

Well, I don't believe there are many firms out there that would even do that; but even if there were, that's not what's represented here.  It's represented that ClaimsHero will represent them.  I believe that is a complete lie and that ClaimsHero is not going to represent anybody.

All right.  So in the meantime, in the meantime, these are the things that need to be done.  You need to explain that Judge Alsup has ruled that it's perfectly legal as fair use to train the LLM by using the works, published works of the authors, whether they like it or not.  That should go in there.

Second, the lead-in that gets you to these pages that you pointed out uses the word "claims."  It's not -- this is not -- that's got to be fixed.  You only get to these pages by clicking on something that says "claims."  That's got to be fixed.

Counsel also pointed out a few other things.  That was the biggest one on the word "claims."  But any other place that she's complained of where the word "claims" is misleading, you've got to fix that.

Now, this is one that I want you to put in to deal with what I feel is the single biggest misleading part, and it ought to say -- it ought to say something like this:  If you let us opt you out, we will file a separate lawsuit against Anthropic.  But be aware that we have no experience in litigating in federal or state court, no experience.  So we may have to hire additional counsel -- or if you want to say partner with additional counsel -- and that firm will have a separate agreement with you which will take more than a small percentage of any recovery.

That's got to be in there.  Otherwise, it's fraud.

I think the website should also say that the class notice will be going out soon and that class members are urged to read the class notice to learn about the pros and cons of opting out or staying in the case and submitting a claim.

Okay.  Those things have got to go in there soon.  I'll give you 48 hours to get it fixed up.

All right.  Mr. Winthrop, you're over there showing agitation.  Do you have some heartburn with what I am saying?

**MR. WINTHROP:**  No, Your Honor.  We just think, as part of it, it would be advisable to, when they're making these

changes, to stop using the design marks of Anthropic.  We understand they want to use the word "Anthropic," fine; the word "Claude," fine; but we object to using the unique design elements.  That's the issue.

**THE COURT:**  Is that the thing that looks like a C with a hat?

**MR. WINTHROP:**  Yes, exactly, things like that.  Fonts.

**THE COURT:**  Yeah, that shouldn't be in there.  Use the word "Anthropic."  That's okay.  "Anthropic copyright infringement."  But using their trademark is misleading.  That should come out.

Okay.  Is that enough interim relief?

**MS. GEMAN:**  Yes, Your Honor.  Thank you.

**THE COURT:**  Now, I'm serious about the evidentiary hearing.

**MR. FREEDMAN:**  Can I ask some questions about that, Your Honor?

**THE COURT:**  Yes, you can.

**MR. FREEDMAN:**  I have not cleared with any of these clients where they are on the 25th.

**THE COURT:**  That's your job to get them here on Zoom. I am not going to accept that they're not available.

**MR. FREEDMAN:**  I will do my absolute best, Your Honor. I just haven't had --

**THE COURT:**  I'm ordering you to get them here.  So

your best may not be good enough.

**MR. FREEDMAN:** Understood.  We will come back to the Court as soon as possible if there's some conflict for some of them.

The evidentiary hearing, Your Honor, the scope is to determine what they knew --

**THE COURT:** This whole thing.  I'm not going to limit it in any way.  My main concern is that they have been led to believe that your firm is -- ClaimsHero itself is going to represent them and ride off into the sunset and fight for something bigger than $3,000 in a lawsuit, a new lawsuit.

I don't think ClaimsHero has any intention of doing that. I think ClaimsHero is going to spring on them at the last minute, "Oh, by the way, it'll be better, we'll go hire the Freedman firm to do this for us.  And by the way, they're going to charge" -- whatever percentage you charge, or some other firm.

And that's bait and switch.  Bait and switch.  Small fee, big fee.  Small fee, big fee.  That's bait and switch.  So the answer is that's -- that's what they think.  I believe -- I think that's what we're going to find out.

Now, if you want to fix it up, you can interview your own clients and have them ready to testify.  But -- actually, technically, they haven't opted out yet because the time to opt out hasn't even started, and so she's still the lawyer for

them.  But it's a complicated mess because you've interfered with that relationship.

All right.  Any more questions?

**MR. FREEDMAN:**  No, Your Honor.  Thank you very much.

**MS. GEMAN:**  Thank you, sir.

**THE COURT:**  All right.  See you on November 25.

**THE COURTROOM DEPUTY:**  Court is adjourned.

(Proceedings adjourned at 9:26 a.m.)

---o0o---


**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:  Sunday, November 16, 2025

_Ana Dub_

_____

Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG

CSR No. 7445, Official United States Reporter