Elizabeth J. Cabraser (SBN 83151)
Daniel M. Hutchinson (SBN 239458)
Jallé H. Dafa (SBN 290637)
Amelia Haselkorn (SBN 339633)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
jdafa@lchb.com
ahaselkorn@lchb.com

Rachel Geman *(pro hac vice)*
Jacob S. Miller *(pro hac vice)*
Danna Z. Elmasry *(pro hac vice)*
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
jmiller@lchb.com
delmasry@lchb.com

Betsy A. Sugar*
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
222 Second Ave., #1640
Nashville, TN 37201-2375
Telephone: (615) 313-9000
bsugar@lchb.com

*Co-Lead Class Counsel*
*\*(Pro Hac Vice)*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No.: 3:24-cv-05417-WHA<br><br>**DECLARATION OF COURT APPOINTED CLASS COUNSEL RACHEL GEMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF SERVICE AWARDS** |

I, Rachel Geman, declare:

1.      I am a partner at the law firm of Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"), counsel to Plaintiffs and Court-appointed Co-Lead Class Counsel ("Class Counsel"). Dkt. 244, at 14-15; Dkt. 437, at 14. I am a member in good standing of the State Bar of New York, and am admitted *pro hac vice* before this Court. I have personal knowledge of the facts stated in this Declaration. If called as a witness, I could and would testify competently to them.

2.      I respectfully submit this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Plaintiff Service Awards.

## I.      **INTRODUCTION**

3.      On behalf of the Plaintiffs and a Class of rightsholders in hundreds of thousands of books, Class Counsel has reached a settlement with Anthropic PBC ("Anthropic") that provides a $1,500,000,000 non-reversionary common fund (plus accrued interest) to be distributed evenly among the Class Works, as well as non-monetary relief requiring Anthropic to destroy the LibGen and PiLiMi datasets after the expiration of any litigation preservation or other court orders.  In exchange, the Class is entering into a narrow and tailored past-only release.

4.       Based on our work in this case, Class Counsel are seeking 20% of the Settlement Fund, reimbursement of expenses (those already incurred and a reserve for future expenses), and Service Awards for the Class Representatives.

5.      Class Counsel has set forth the contours and scope of the pre-trial efforts and  settlement-related works in other briefing.  *See* Declaration of Court Appointed Class Counsel Rachel Geman and Justin A. Nelson in Support of Motion for Preliminary Approval of Settlement Agreement. Dkt. 363-2, at ¶¶ 4-61; *see also* Declaration of Court Appointed Class Counsel Justin A. Nelson, filed concurrently herewith, at ¶¶ 8-10, 12-14 (addressing Class Counsel efforts).  Plaintiffs' counsel have spent over 22,300 hours so far, and the hard work continues, as we now enter the crucial phase where Class Members are making their choices, such as  whether to participate or opt-out, whether to claim, or whether to elect the default or not (where relevant).  Because the Settlement provides multiple opportunities for Class Members to recover— including the primary claims process with a March 30 deadline, an additional 70-day window for Class

Members who hold rights in works claimed by others, and several opportunities to cash checks even without submitting a claim—the work in overseeing the claims process will continue. In my decades of experience, this settlement will require an unusual amount of work from Class Counsel post-preliminary approval—and even post-final approval—to administer.

6.   Already Class Counsel have answered hundreds of Class Member inquiries and conducted targeted research to validate their contact information. Class Counsel have also conducted several town hall webinars to inform Class Members about the Court-approved notice materials and website, and participated in efforts to amplify awareness among the Class of the settlement and Class Members' options under the settlement. For claimants requiring additional assistance, Class Counsel have assisted with Settlement Website navigation and escalation paths for complex issues, including bulk filing for Class Members with multiple works on the Works List. In doing so, Class Counsel aim to reduce barriers to participation and foster confidence in the claims process.  Class Counsel also closely monitor third party communications about the Settlement, as ensuring that Class Members are adequately informed about their choices and deadlines is of paramount importance.

## II.   ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICES AWARDS

### A.   Lodestar

#### 1.   <u>General</u>

7.   LCHB has a current lodestar of roughly nine-and-a-half million, specifically, we have $9,651,053.50 through December 1, 2025 based on 2025 rates.

8.   LCHB prosecuted this case on a purely contingent basis where counsel are advancing all necessary expenses.  This by definition (and perhaps especially in this case given the schedule) is to the exclusion of other potential fee-generating work.   The risks of this undertaking—especially against a group of large, talented, and well-resourced defense firms including Arnold and Porter, Morrison & Foerster, and Latham & Watkins—are set forth in our memorandum of points and authorities and elsewhere. *See* Dkt. 363 at 22-23.

9.   LCHB nonetheless efficiently managed the case. This case was staffed principally by the two Class Counsel law firms—LCHB and Susman Godfrey—with all the discovery and depositions, including post-summary judgment trial depositions, conducted by the two Class Counsel firms. LCHB worked hand in

hand with Co-Lead Class Counsel Susman Godfrey, assembling a lean, qualified team that was up to the task of handling litigation of this magnitude and complexity. This promoted clear communication channels, eliminated the potential for duplication of work, and efficiently streamlined work flows such as legal research and drafting.  And, we worked efficiently with Cowan DeBaets and the Publishers' Coordination Counsel, as well as receiving discrete strategic guidance from others such as Samuel Issacharoff.

10.     Within LCHB, we had a small team of partners, with the vast majority of the partner-level work done by myself and Daniel Hutchinson.  At no time were there more than three partners actively working on the day-to-day of the litigation. Two of those partners were based in San Francisco and the third (myself) was based in New York. I brought extensive depth of experience in copyright law in the AI context.[1] Elizabeth Cabraser also provided invaluable strategic guidance, and another of our partners, Anne Shaver, had a discrete, small role leveraging her areas of knowledge.

11.     The case was initially staffed with one primary associate, Jacob Miller.  As the case headed towards motion practice and then again closer to trial, we added other associates, including an SF-based associate and others based on their experience in other similar cases (in particular with the legal issues and briefing).  And, other colleagues, including staff attorneys, assisted in document analysis, including deposition preparation across the board. Partners, associates, and staff attorneys have over the last several months dedicated a significant amount of time—and continue to dedicate a significant amount of time—to assisting with claims administration and class notice.

12.     Throughout this litigation, we implemented internal protocols and procedures to ensure that the litigation was run as efficiently as possible, and ensure the work involved in the litigation was value additive, cost-effective, and non-duplicative.  We made an effort to assign work to the lowest billing timekeepers where feasible.  Tasks were delegated appropriately among partners, associate attorneys, paralegals, and other staff according to their complexity.  Where necessary, projects were assigned to

---

[1] For example, I, with my firm Lieff Cabraser and co-counsel Cowan DeBaets, filed a class action against OpenAI in September 2023 in which we—uniquely at that time, and as relevant for our background in serving our clients in this case – asserted claims related specifically to the most high-quality LLM content (books) on behalf of a specific proposed class of registered copyright rightsholders, and where we emphasized the existence and dangers of the pirate libraries like LibGen given their particular threat to the publishing industry.  *Authors Guild, et al. v. OpenAI Inc., et al.,* No. 1:23-cv-08292-SHS-OTW (S.D.N.Y. Sept. 19, 2023) Dkt. 1.

experienced lawyers with depth in the field who could effectively and efficiently manage and run such projects.

13.     Specifically, we implemented eleven categories of mandatory task codes at the onset of the litigation:  (1) Administrative; (2) Expert Consultants (including expert depositions); (3) Pleading/briefing/legal analysis; (4) Case management; (5) Offensive discovery; (6) Client communication and defensive discovery; (7) Third-party discovery; (8) Court appearances/preparation; (9) Investigation and document analysis; (10) Depositions; and (11) Settlement.  LCHB's standard timekeeping practices and protocols require each timekeeper to enter time on a daily basis for all categories of work performed on behalf of Plaintiffs and Class Members.

14.     The distribution of significant amounts of time between and among these core tasks further illustrates the breadth and depth of time that Class Counsel devoted to this litigation.

15.     On the litigation side, large categories are discovery (offensive/defensive/third party), pleading/briefing/legal analysis, and document analysis (which included significant work for deposition prep and work related to the factual record).  Within the categories, we strove for efficiency.  For example, with respect to offensive discovery, to begin the process, Class Counsel first established a detailed document review protocol and coding panel with dozens of fields.  Class Counsel then spent significant time training all attorneys analyzing produced documents in the details of the case and the coding panel to ensure the categorization was as efficient and useful as possible.  Those attorneys then carefully reviewed, coded, and annotated, many of which were highly technical in nature.  The information discerned from this review and analysis was used extensively in the litigation for the purpose of: (1) crafting additional discovery requests; (2) amending the complaint; (3) supporting the class certification briefing and experts; (4) identifying deponents; (5) preparing deposition outlines; and (6) assisting settlement efforts and presentations.  And, across categories, we strove for other efficiencies as well, such as having "through lines" on topics. For example, the same associate who handled a meet and confer over an issue might write the brief and then argue it, though notably LCHB was able to resolve a number of discovery issues on or near the courthouse steps.  The settlement category has required an especially large investment of attorney time. That is due to the peculiar intensity and nature of the settlement, the extensive work necessary to

1 address high-level settlement strategy and achieve preliminary approval, and the need to devote significant

2 junior-level staffing to class member communications and assistance.[2]

3     16.    Finally, we used experienced personnel members, working under my and my partners'

4 direction, to collect, review, and audit Lieff Cabraser's contemporaneous time records to further ensure their

5 accuracy.  These personnel reviewed all submissions to confirm that the submitted time was specifically

6 authorized, appropriately categorized, timely submitted, and adequately detailed.

7     17.    **Exhibit A** includes all work performed by LCHB on behalf of Plaintiffs and Class Members,

8 as summarized by timekeeper.  As shown in **Exhibit A**, LCHB has devoted approximately 13,149 hours to

9 this litigation, accumulating a lodestar of approximately $9,651,053 from inception to December 1, 2025.[3]

10 This excludes time spent by attorneys and staff who billed fewer than 10 hours on the case and, to be clear,

11 time spent on the fee application is in a separate matter not accounted for here.

12     18.    The chart below provides information by the eleven categories:

| TASK CODE | DESCRIPTION | HOURS |
|---|---|---|
| 1 | Administrative | 442.90 |
| 2 | Experts/Consultants (Including Expert Depositions) | 204.20 |
| 3 | Pleading/Briefing/Legal Analysis | 1,619.70 |
| 4 | Case Management | 639.10 |
| 5 | Offensive Discovery | 748.80 |
| 6 | Client Communication and Defensive Discovery | 1,401.80 |
| 7 | Third-Party Discovery | 111.30 |
| 8 | Court Appearances and Preparation for Same | 582.90 |
| 9 | Investigation and Document Analysis | 3,261.50 |
| 10 | Depositions | 773.60 |
| 11 | Settlement | 3,363.30 |
| | **Total Hours** | **13,149.10** |

---

[2] This is most true for some of the more junior personnel.  My own time, for example, was mostly divided among case management, pleadings/briefing/legal analysis, depositions, court appearances, and settlement. Much of the more-recent time expended in the settlement category reflects this key work, which was performed by junior-level staff, not partners or associates.

[3] LCHB will submit their detailed time records to the Court for *ex parte in camera* review, if the Court so requests, to shield from public disclosure material protected by the work product privilege and redacted to remove material subject to the attorney-client privilege.  *See* Civ. L.R. 54-5(b)(2).

19.     LCHB's and Class Counsel's reasonable lodestar is certain to increase meaningfully due to a significant allocation of resources overseeing the Class Notice program and distribution of the Settlement Fund. Specifically, Class Counsel have devoted—and will continue to devote-significant resources to obtaining and verifying Class Member contact information; responding to Class Member inquiries; monitoring and directing the Settlement Administrator; and drafting and submitting final settlement approval papers and reports to the Court.     If the Court grants final approval, Class Counsel's commitments and responsibilities will extend, conservatively, until February 2027, and likely beyond.

20.     LCHB remains committed to working on behalf of Plaintiffs and Class Members through final resolution and beyond.  LCHB's attorneys and non-attorneys staff are currently overseeing settlement administration, responding to Class Member inquiries, and assisting Class Members who choose to exercise their options under the Settlement.  Those efforts will continue through the opt-out and objection deadlines, the reinclusion deadline, and the claims deadline.  LCHB anticipates devoting the same amount of attorney and non-attorney resources to these important tasks through Fairness Hearing date.  If the Settlement is finally approved, LCHB will continue working with Class Members, the Settlement Administrator, and the Special Master to ensure that claims are processed fairly and paid as expeditiously as possible.

21.     I estimate these tasks will require an additional 6,535 hours of time expenditure at a lodestar of $4,149,725.00 through February 2027.

22.     LCHB reached that estimate by making conservative projections based on the time that LCHB invested in this matter to date on similar or identical work. These projections do not include any time for appeals.  If there are objections and subsequent appeals, Class Counsel's commitments and responsibilities may extend for several more years beyond 2027.

23.     Class Counsel request an attorneys' fee award of 20% of the $1,500,000,000 non-reversionary common fund (plus accrued interest). The total lodestar for all law firms is $22,304,844. To the extent a lodestar cross-check is conducted, the requested attorneys' fee award represents a multiplier of approximately 9.32 when accounting for the substantial further work remaining.

2. **Specific Lawyers and Billing Rates**

24.     The hourly rates used to determine the lodestar represent LCHB's current, customary professional rates effective for the year 2025. The billing rates of the team members who contributed to this case range from $835–$1,740 for partners, $550–$690 for associates, $630-655 for non-partner-track attorneys, and $480–$565 for paralegals and other support staff.

25.     Our rates reflect each professional's title, years of relevant experience, and periodic reviews of internal costs and business needs. Timekeepers within the same employment category (for example, partners, associates, and paralegals) may have different rates based on factors such as experience level, demonstrated expertise, and matter-specific requirements..

26.     LCHB's hourly rates are consistent with market rates nationally and in the Bay Area. Our firm's current billing rates have been accepted by courts in other contingent complex litigation and class actions. *See, e.g.*, *Vela, et al. v. AMC Networks, Inc.*, No. 1:23-cv-02524-ALC, at *6 (S.D.N.Y. May 16, 2024), ECF No. 64 (approving Class Counsel's current, 2024 billing rates); *Czarnionka, et al. v. The Epoch Times Association, Inc.*, No. 1:22-cv-06348-AKH, at *6 (S.D.N.Y. July 10, 2024), ECF No. 106 (same); *In re Google Location Hist. Litig.*, No. 5:18-CV-05062-EJD, 2024 WL 1975462, at *15 (N.D. Cal. May 3, 2024) (finding Class Counsel's 2023 rates ranging from $550–$1,300 for partners, $420–$720 for associates, and $535 for paralegals and other support staff "fall within the range of those approved in other similar cases") (citations omitted); Final Order & Judgment at 9, *In re Arizona Theranos, Inc. Litig.*, No. 2:16-cv-2138-DGC (D. Ariz. Feb. 6, 2024), ECF No. 619 (approving Class Counsel's 2023 rates); *Corker v. Costco Wholesale Corp.*, No. 19-cv-00290-RSL, 2023 WL 6215108, at *1 (W.D. Wash. Sept. 25, 2023) ("Counsel's hourly rates, while steep, are not unreasonable given the nature of this litigation."); *Gutierrez v. Amplify Energy Corp.*, No. 21-CV_01628-DOC (JDEx), 2023 WL 6370233, at *7 (C.D. Cal. Sept. 14, 2023) (surveying Northern District orders awarding attorneys' fees, finding that Class Counsel's hourly "rates are consistent with market rates in their area"); *Ramirez v. Trans Union, LLC*, No. 12-cv-00632-JSC, 2022 WL 17722395, at *9 (N.D. Cal. Dec. 15, 2022) (finding that Class Counsel's rates, at the time, "from $1,325 to $560 for partners and associates, and $485-$455 for 'litigation support' and paralegals" were "generally in line with rates prevailing in this community for similar services") (citations omitted); *Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2022 WL 16823044, at *11 (N.D. Cal. Nov. 8, 2022) (finding

Class Counsel's "billing rates are normal and customary for timekeepers with similar qualifications and experience in the relevant market") (citations omitted); *see also Cottle v. Plaid Inc.*, No. 20-cv-03056-DMR, 2022 WL 2829882, at *11 (N.D. Cal. July 20, 2022) (approving rates); *Pulmonary Assocs. of Charleston PLLC, et al. v. Greenway Health, LLC, et al.*, No. 19-00167, at *5–8 (N.D. Ga., Dec. 2, 2021) (approving rates); *Roberts v. AT&T Mobility LLC*, No. 15-cv-03418-EMC, 2021 WL 9564449, at *4 (N.D. Cal. Aug. 20, 2021); *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 17-ml-2792-D, 2020 WL 9936692, at *7 (W.D. Okla. June 11, 2020) *aff'd,* 997 F.3d 1077 (10th Cir. 2021) ("Class Counsel's billing rates are reasonable for their respective geographic areas in comparable cases."); *Hosp. Auth. Of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, No. 15-cv-01100, 2020 WL 3053468, at *1 (M.D. Tenn. May 29, 2020) (approving Class Counsel's rates); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding that Class Counsel's rates were "more than reasonable given the complexities of this case and the extraordinary result achieved for the Class").

27.     In the class action (and other) contexts, my rates repeatedly have been approved by courts and/or used as a part of a cross-check; there are also examples where I have been co-lead counsel and my fee petitions have been approved without a cross-check. Recent examples include: *Guida v. Gaia,* 1:22-cv-02350-GPG-MEH, D. Colo. (2024 settlement), Dkt. No. 90 at *5 (accepted fees, no cross check); *Doe v. MasterCorp,* INDEX NO. 1:24-cv-678 (ED VA 2024), Dkt. Nos.24, 25, 33 (same); *Chen-Oster v. Goldman Sachs*, No. 10- cv-6950 (S.D.N.Y.) (2023 approval), Dkt. No. 1467 at *10  (finding that Class Counsel's award of one-third of the settlement was reasonable and supported by a lodestar cross-check); *United States v. Allergan,* No. 8:18-203-JVS, Dkt. No. 195 (C.D. Cal. July 24, 2023) (in context of a *qui tam* fee application, court approved LCHB's (and my) rates, and noted that Allergan did not dispute LCHB's 2023 rates); *Cottle v. Plaid Inc.*, No. 4:20-cv-03056-DMR, ECF No. 184 at *18-19 (N.D. Cal., July 20, 2022) ("The court finds that the attorney rates [for LCHB] are reasonable and in line with prevailing rates in this community for similar services performed by attorneys of comparable skill and experience."); *In re General Motors LLC Ignition Switch Litig.*, No. 14-md-2543, 2020 WL 7481292, at *3 n.3 (S.D.N.Y. Dec. 18, 2020) (court engaged in ongoing review of lodestar; "[t]he Court also finds that the hourly rates reported," which

included LCHB's – and my -  rates, "reflect prevailing rates in the Southern District of New York for 'for similar services by lawyers of reasonably comparable skill, expertise and reputation.'"),

28.     Below, I provide more information about the key LCHB team members.

29.     Elizabeth J. Cabraser is a founding partner of Lieff Cabraser Heimann & Bernstein, LLP. Since 1978, she has served as court-appointed lead and class counsel in scores of federal class actions, multi-district and state coordinated proceedings. Ms. Cabraser has been repeatedly recognized as one of the foremost litigators in the U.S., and was selected an unprecedented four times as one of the 100 Most Influential Lawyers in America by the National Law Journal, which has called her "a pillar of the plaintiffs' bar." Her cases include multi-state tobacco, the Exxon Valdez disaster, Breast Implants, Fen-Phen (Diet Drugs), Vioxx, Toyota sudden acceleration, numerous securities/investment fraud cases, and Holocaust litigation. She has recently served in court-appointed leadership positions in several of the nation's highest profile civil cases: the BP Gulf Oil Spill, In re National Prescription Opiate ("Opioids"), as well as serving as sole Lead Counsel and Chair of the Plaintiffs' Steering Committee in the Volkswagen "Clean Diesel" Emissions litigation and the Fiat Chrysler Ecodiesel Emissions litigation. Her work to advance the administration of justice includes service on the Council of the American Law Institute (now emeritus), the Federal Civil Rules Advisory Committee (2010-2017), as a fellow of the American Academy of Arts and Sciences, and as Editor in Chief of the ABA's annual "The Law of Class Action" publication. Her many law review articles include The Participatory Class Action, 92 N.Y.U. L. Rev. 846 (2017), co-authored with Samuel Issacharoff. In this case, Ms. Cabraser provided critical guidance on litigation and settlement strategy.

30.     I, Rachel Geman, am a partner in Lieff Cabraser's New York office with a practice dedicated to class actions and the False Claims Act.  I chair the firm's Whistleblower Practice Group, which includes both litigation and under-seal matters.  I have served as co-lead or class counsel in a variety of consumer, privacy, employment, and financial fraud matters, including those listed in paragraph 28. Virtually all of my clients are individuals, though I have also represented government entities in anti-discrimination matters and ERISA plans in financial fraud matters.  To avoid repetition, I refer to my recitation of my background in earlier briefing, including at Dkts. 125-1 at 7-8, 363-5 (describing my class action cases, my awards, and my history of service to the bar).

31.    To update my biography in relevant respects, in the time between my last declaration in September and the present, (a) I was appointed to a three-year term of the Joint Southern District of New York/Eastern District of New York Rules Committee and (b) I spoke as the plaintiffs-side representative about AI copyright cases at the ABA's Class Action Conference, in respectful dialogue with members of the defense-side bar and experts.

32.    LCHB partner Daniel M. Hutchinson is the chair of the firm's employment practice group. Mr. Hutchinson has served as lead or co-lead counsel on cases that recovered over $800 million for his clients in all variety of industries and across myriad discrimination, unpaid wages, ERISA, consumer protection, and financial fraud cases. Mr. Hutchinson has pursued dozens of federal statutory damages class action cases against major banks and financial services providers. His efforts helped result in the largest monetary settlements in the history of the Telephone Consumer Protection Act and ended harassing robocalls to millions of consumers. Mr. Hutchinson has been recognized as a nationwide leader in employment law. In 2014, Law360 acknowledged Mr. Hutchinson as one of six of the nation's top employment lawyers under 40. The Daily Journal named him as a "Top 40 Under 40" leading lawyer in California. The Recorder endorsed him as one of "50 Lawyers on the Fast Track." Mr. Hutchinson has spoken and presented papers at national employment and consumer law conferences, including events sponsored by the American Bar Association's Section of Labor and Employment Law, the Mason Judicial Education Program, the Practicing Law Institute, the Impact Fund, the UCLA School of Law, the National Employment Lawyers Association, and the Consumer Attorneys of California. Mr. Hutchinson has served as the Board Chair for the Lawyers Committee for Civil Rights.  Mr. Hutchinson graduated from the University of California, Berkeley, School of Law (Berkeley Law) and from Brown University.

33.    Jallé Dafa is a partner at LCHB. Ms. Dafa represents consumers and workers in high-stakes class action litigation spanning antitrust, consumer protection, and privacy and cybersecurity matters, and has helped secure significant monetary and injunctive relief in complex nationwide cases. Her work has been recognized by industry publications, including Lawdragon's 500 Leading Plaintiff Consumer Lawyers and 500 Leading Global Antitrust & Competition Lawyers for 2025, as well as Best Lawyers: Ones to Watch (2023–2025). Active in the Bay Area legal community, Ms. Dafa serves on the Board of the ACLU Foundation of Northern California and on the Executive Committee of the Bar Association of San

Francisco's Litigation Section. Ms. Dafa received her J.D. from the University of California, Berkeley School of Law in 2011. Prior to her work at Lieff Cabraser, Ms. Dafa clerked for Judge Mary M. Schroeder of the United States Court of Appeals for the Ninth Circuit and Judge Jacqueline S. Corley of the United States District Court for the Northern District of California. Ms. Dafa became involved in this Action in July 2025.

34.     Reilly T. Stoler is a former partner at LCHB, and an experienced trial lawyer who has represented individuals, classes and States as plaintiffs. He has worked on complex, aggregate litigations across a range of fields and jurisdictions, including the *In re Juul Labs Mktg. Sales Practices & Prods. Liab. Litig.* matter, for which the firm received the Consumer Attorney of the Year Award from the Consumer Attorneys of California and the California Attorney of the Year Award from The Daily Journal. Mr. Stoler left LCHB to work at the San Francisco City Attorney's Office.

35.     LCHB associate Danna Elmasry is a graduate of the University of Michigan Law School and the University of Chicago. Ms. Elmasry re-joined the firm after clerking for Judge Nusrat J. Choudhury in the United States District Court for the Eastern District of New York. Ms. Elmasry was involved in this action from January 2025 to present.

36.     Lieff Cabraser associate Amelia Haselkorn received her J.D., *magna cum laude*, from the University of California, Irvine, School of Law, in 2021. Ms. Haselkorn has been involved in this action from August 2025 to the present.

37.     Lieff Cabraser associate Jacob Miller is a graduate of Harvard Law School and Harvard College. Prior to joining Lieff Cabraser, Mr. Miller was a law clerk in the United States District Court for the Northern District of California and the Supreme Court of Hawaii. Mr. Miller also practiced as a litigation associate at Kaplan Hecker & Fink LLP. Mr. Miller has been involved in this action from September 2024 to present.

38.     Betsy Sugar is an associate at Lieff Cabraser. Ms. Sugar received her J.D. from the Vanderbilt University Law School in 2024. Ms. Sugar has been involved in this action from June 2025 to the present.

39.     In addition to the core litigation team, several staff attorneys have performed the roles described above:  Hannah Lazarz received her J.D. from University of California, Los Angeles, School of

Law in 2020; Peter Roos received his J.D. from Rijksuniversiteit Limburg Faculteit der Rechtsgeleerdheid, Maastricht, Netherlands in 1989 and his LLM from University of San Francisco, School of Law in 2001; Jae Park received her J.D. from University of Pennsylvania Law School in 2005; Katherine Post received her J.D. from University of San Francisco, School of Law in 1983; Jose Garcia received his J.D. from University of California, Los Angeles, School of Law in 1985; Jonathan Zaul received his J.D. from University of San Francisco, School of Law in 2009; Cameron Saunders received her J.D. from Golden Gate University, School of Law in 2006, and her LLM in taxation from Golden Gate University, School of Law in 2008.

40.     In addition, once the Settlement was preliminarily approved, staff attorney Tanya Ashur—who received her J.D. from Chicago-Kent College in 2000—helped field complex inquiries about the Settlement, along with some of the other staff attorneys listed above.

41.     Lieff Cabraser staff attorneys are full-time salaried employees of the firm receiving a full array of benefits. Their legal work concentrates on the factual analysis of a case, but they are not presumptively on partner track. Lieff Cabraser's staff attorneys focus their practice primarily on discovery activities, with an emphasis on technology-assisted efficiencies, deposition preparation, and other document analysis. Each of these staff attorneys performed these roles in connection with the analysis of discovery in this Action at various times throughout this period.

42.     The primary litigation staff at Lieff Cabraser in this Action have been senior paralegals Ariana Delucchi and Elizabeth Keenley, and case clerk Cahron Cross.  Their tasks in this case included: organizing case documents, assisting with filings and checking the factual and legal materials cited in pleadings and briefs, conducting research and investigation, speaking with Class members, assisting with the service of case documents, managing Lieff Cabraser's case file, preparing hearing preparation and other materials for court proceedings, and coordinating with the firm's Litigation Support Department, discussed below, concerning document discovery and review.

43.     Lieff Cabraser maintained and managed the substantial document database for this action in house, through its Litigation Support department. The primary team of litigation support staff (including Anthony Grant, Margie Calangian, Fawad Rahimi, Michael Mazzarella, and Muna Texier who have 25, 17, 8, 6, and 3 years of experience in litigation support, respectively) managed all aspects of Anthropic's

document productions and the collection, preservation, and production of our clients' files. They assisted

with a variety of other projects as well, including: technical aspects of the ESI protocol; preparing especially

complex saved searches to assist in the document review efforts; and various troubleshooting requests

inherent to any large case.

44.     Once the Settlement was announced, the core litigation team was assisted by a team of

approximately 15 paralegals and case clerks who conducted Class member communications, gathered

missing Class member contact information to aid with direct notice, and monitored media and internet

activity to help Class Counsel identify and address false or misleading information being spread about the

Settlement.

### 3.     **Other Counsel**

45.     Further, as we discussed in Dkt. No. 400 (Supplemental Class Counsel Declaration re Motion

for Settlement), "[t]he proposed claim process was developed after extensive consultation between Class

Counsel and a wide variety of industry experts and stakeholders, including (in addition to the Class

Representatives themselves), the Authors Guild, the American Association of Publishers ("AAP"), The

Textbook and Academic Authors Association ("TAA"), as well as counsel for each of these groups. The

Guild, the AAP, and the TAA are not claimants in this case. None of them have received or will receive any

compensation for their work in assisting Class Counsel." The TAA had retained Slarskey LLC and the

Archstone Law Group—two firms experienced in representing authors—to assist with its contributions to

the working group. In light of their contributions, Class Counsel intends to share $137,431.40 from any fee

awarded to Slarskey and Archstone for work completed in connection with the Author-Publisher Working

Group. Slarskey and Archstone's time has not, however, been included in Class Counsel's lodestar

calculation.

46.     Finally, the Class also benefited from the work of Professor Samuel Issacharoff. Plaintiffs

filed their notice of association of counsel identifying Professor Issacharoff on August 11, 2025. *See* Dkt.

298. Mr. Issacharoff provided critical assistance in this case based on his 40+ years of legal experience; that

assistance included commenting on and evaluating the settlement agreement; Counsel's extensive filings

regarding preliminary approval; the structure of the claims process; and the discussion of the default split

between rightsholders. Mr. Issacharoff's hourly rate is $1,600 and he spent 54.8 hours on the matter, for a

total contribution of $93,440 to the lodestar. That fee is amply reasonable given Mr. Issacharoff's legal experience in the fields of civil procedure and class action law. Professor Issacharoff has also submitted a declaration attesting to his contributions in this case, attached as Exhibit B. Professor Issacharoff's time has been included in Class Counsel's lodestar calculation.

### B.    Unreimbursed Costs and Litigation Expenses

47.    LCHB accumulated unreimbursed out-of-pocket costs and expenses from a joint litigation cost fund, separate litigation expenses borne solely by LCHB, and future outlays for in-progress expenses.

48.    As set forth below, these include costs advanced in connection with customary litigation expenses, such as testifying and consulting experts, mediation, legal research, filing fees, document hosting services, copying and mailing, and other customary litigation expenses.

49.    The Cost Fund:  Because of the substantial financial commitment required to prosecute a class action of this size and scope, Class Counsel established and maintained a cost fund to jointly pay significant litigation expenses. Both LCHB and Susman Godfrey regularly contributed identical amounts to the cost of fund, totaling approximately $952,500 each and for a total of $1,905,000 between the two firms.Class Counsel contributed these cost payments out of pocket on a contingent based and with no guarantee or reimbursement.  The Edelson firm later contributed an additional $250,000 after joining the case.

50.    LCHB's maintained detailed records of the cost fund and each payment from it.  LCHB's business records document the following payments from the cost fund for required litigation expenses.

51.    The below chart summarizes the costs that already have been made out of the case cost fund:

| COST TYPE | TOTAL |
|---|---|
| Court Reporters | $1,470.95 |
| Deposition Services | $113,111.39 |
| E-Discovery | $46,381.75 |
| Experts | $1,018,833.65 |
| Manual Filing Expenses | $113.16 |
| Mediation Services | $149,400.74 |
| Settlement Publication Services | $126,577.19 |
| Special Master | $3,660.00 |
| Trial Consultants | $34,614.92 |
| Class List | $82,526.25 |

| | |
|---|---|
| Outside Legal Fees | $199,936.08 |
| **TOTAL** | **$1,776,626.08** |

52.     The requested case costs are reasonable, necessary, and proportionate to the needs of a novel, complex copyright action and should be reimbursed.

53.     LCHB-Specific Costs:  In addition to the Cost Fund, LCHB expended a significant amount of out-of-pockets costs for litigation expenses.  As with the Cost Fund, expenses were calculated from the firm's books and records and therefore represent an accurate recordation of costs and expenses. Especially given the risk of the litigation, LCHB expended only that which was reasonably necessary for the continued prosecution and resolution of this litigation.  LCHB's business records document the following additional payments for required litigation expenses:

| COST TYPE | TOTAL |
|---|---|
| Electronic Database Charges | $24,576.97 |
| Travel (Air and Ground Transportation) | $21,758.19 |
| Research Charges | $7,312.45 |
| Process Service | $1,657.60 |
| Messenger Delivery Service | $1,530.35 |
| PHV Fees | $984.00 |
| Copies | $546.00 |
| Deposition Expenses Charges | $414.50 |
| Filing Fees | $328.00 |
| Postage | $57.54 |
| Outside Copy Service | $55.50 |
| **TOTAL** | **$59,221** |

54.     LCHB has excluded internal printing costs and certain travel related expenses, including hotels and food.

55.     Future Payments:  Class Counsel will continue to pay for additional costs and expenses to resolve this litigation.  These future costs include (1) deferred payments for costs and expenses that have already been incurred, but not yet paid for, and (2) payment for contacted costs and expenses that are in the process of being performed.

GEMAN DECLARATION ISO MOTION FOR ATTYS' FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS
CASE NO. 3:24-CV-05417-WHA

| COST TYPE | TOTAL |
|---|---|
| Settlement Administrator | $15,000,000.00 |
| Special Master | $1,000,000.00 |
| Deferred Expert Expenses | $500,000.00 |
| Deferred Works List Costs | $100,000.00 |
| Deferred Outside Legal Fees | $430,000.00 |
| **TOTAL** | **$17,030,000.00** |

Class Counsel request a costs reserve of $17,030,000.00 for payment of these future costs.

56.    *The Settlement Administrator*.  By far the largest pending expense is the estimated $15 million due to the Court-appointed Settlement Administrator, JND Legal.  *See* Supplemental Declaration of Jennifer M. Keough Regarding Proposed Class Notice Plan (Dkt. 399), at ¶ 117.  Class Counsel will be personally responsible for advancing settlement costs and expenses on behalf of Plaintiffs and Class Members.  Specifically, the Court has ordered that Class Counsel are personally responsible for payment of all costs and expenses for the Court-appointed Settlement Administrator, subject to reimbursement from the Settlement Fund.  *See* 9/25/2025 Hearing Tr., Dkt. 431, at 4:20-5:21.  If the Settlement is not finally approved, Class Counsel (not Anthropic or anyone else) must pay those costs and expenses.  *See id.*  Thus, Class Counsel will pay all such costs and expenses  *See* Dkt. 431, at 4:20-5:21.

57.    *Testifying and Consulting Experts*.  The cost of experts—approximately $1,018,833.65— reflects the indispensable role of technical and industry experts in cutting-edge IP cases, among other things, here related to the creation of the Works List and related data work.  The success of this litigation depended in part on the high-quality of work provided by the consulting and testifying experts that Class Counsel retained. In my professional opinion, the figures are unsurprising and reasonable.  The consulting experts conferred with Class Counsel on the case strategy and development of the claims and pleadings. Once Plaintiffs started receiving documents, Class Counsel relied on these experts to translate highly technical documents, including lines of source code that Anthropic produced. Experts spent many hours reviewing Anthropic's technical document and productions, drafting in-depth and comprehensive analyses of Anthropic's LLMs. These experts also performed substantial work in preparation for class certification, summary judgment, and trial, including the analyses set forth in the reports filed with the Court. Thus,

unsurprisingly, given the complex and highly technical nature of this case, the vast majority of expenses went to expert work.

58.    Trial Consultants.  The success of this litigation depended in part on the high-quality of work provided preparing for trial.  Trial consultants worked closely with Class Counsel to develop appropriate questions for potential jurors.  This analysis was essential to understanding the benefits and risks of continued litigation, and proved important to reaching a fair, reasonable, and adequate settlement.

59.    Mediators.  An additional substantial expense was hiring two experienced and well-regarded mediators to help facilitate discussions of a potential resolution. The skill and experience of these mediators (the Honorable Vaughn R. Walker (ret.) and the Honorable Layn Phillips (ret.)) were instrumental in assisting with the ultimate success of the mediation efforts.

60.    Other expenses.  Each of the remaining out-of-pocket expenditures were necessary to prosecute this matter efficiently and are of the type routinely approved as reasonable litigation expenses. Travel expenses of $21,758.19 for air and ground transportation were reasonably incurred to attend depositions, hearings, and meetings integral to case development and resolution. Research charges of $7,312.45 were necessary to analyze legal issues, prepare motions, and respond to the Court, while $1,657.60 in process service and $1,530.35 in messenger delivery services ensured timely and effective service and filing of critical documents. The $984.00 in *pro hac vice* fees was required to appear in this Court, and the modest copying costs ($546.00), outside copy services ($55.50), and postage ($57.54) reflect routine case administration. In total, these itemized expenses of $59,221 were actually incurred, reasonable in amount, directly tied to advancing the litigation, and proportionate to the complexity and results achieved. The Court should therefore grant LCHB's request for reimbursement.  Court reporters and deposition services ($1,470.95 and $113,111.39) were foundational to obtaining, preserving, and presenting testimony; e-discovery ($46,381.75) was essential to collect, process, and review electronically stored information at a scale appropriate to the case; mediation services ($149,400.74) and the Special Master ($3,660.00) contributed to efficient dispute resolution and ultimately resolving this complex matter; the class list ($82,526.25) enabled the gathering and clear presentation and organization of class member contact information; settlement publication services ($126,577.19) supported efficient communication of the settlement; modest manual filing expenses ($113.16) were incidental and unavoidable; and outside legal

fees ($199,936.08) reflect specialized counsel efforts necessary to prosecute the case efficiently. Each category bears a direct nexus to the litigation's demands, was reasonably incurred to meet court schedules and evidentiary standards, and falls within the range typically seen in high-stakes, expert-intensive IP matters. In total, the requested $1,776,626.08 is proportional to the amount in controversy and the complexity of the record, and the Court should approve these costs as reasonable case expenses.

61.    It is LCHB's policy and practice to prepare records from expense vouchers, check records, credit card records, and other source materials. Based on my oversight of Lieff Cabraser's and other firms' work in connection with this litigation and my review of these records, I believe them to constitute an accurate record of the expenses actually incurred by the firms. Itemized expense reports are available for review by the Court should the Court deem it appropriate.

62.    Especially given the risk of this litigation, Class Counsel made every effort to minimize expenses—expending only that which was reasonably necessary to prosecute and resolve this litigation.

**C.    Service Award Payments to Plaintiffs**

63.    The Court has appointed Plaintiffs Andrea Bartz Inc., Charles Graeber, and MJ+ KJ Inc.as Settlement Class Representatives for the Settlement Class. Dkt. 244; Dkt. 437.

64.    Class Counsel respectfully requests service awards of $50,000 for each of the three Plaintiffs to compensate their efforts and sacrifices in service to the Class. The three Class Representatives made exceptional contributions on behalf of the Settlement Class, absent personal benefit, and in fact, undertaking considerable risk.

65.    Andrea Bartz Inc., Charles Graeber, and MJ+ KJ Inc. should each be recognized for their active participation and contributions throughout this litigation, which are further described in their declarations. True and correct copies of their declarations are submitted alongside Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Plaintiff Service Awards.

I declare under penalty of perjury that the foregoing is true and correct.

Executed New York, New York, this 3rd day of December, 2025.

*/s/ Rachel Geman*
Rachel Geman

# EXHIBIT A

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

| Report created on | 12/02/2025 02:36:54 PM | From | Inception |
|---|---|---|---|
| | | To | Present |

**Matter Number: 4392-0001**   ANTHROPIC - General Mattter

**PARTNER**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| ELIZABETH CABRASER | 39.90 | 1,740.00 | 69,426.00 |
| JALLÉ DAFA | 516.00 | 905.00 | 466,980.00 |
| RACHEL GEMAN | 1,152.70 | 1,260.00 | 1,452,402.00 |
| DANIEL HUTCHINSON | 1,266.40 | 1,115.00 | 1,412,036.00 |
| ANNE SHAVER | 43.70 | 985.00 | 43,044.50 |
| REILLY STOLER | 336.80 | 835.00 | 281,228.00 |
| | **3,355.50** | | **3,725,116.50** |

**ASSOCIATE**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| DANNA ELMASRY | 482.80 | 630.00 | 304,164.00 |
| ANNA FREYMANN | 48.40 | 690.00 | 33,396.00 |
| AMELIA HASELKORN | 416.80 | 655.00 | 273,004.00 |
| JACOB MILLER | 1,661.90 | 690.00 | 1,146,711.00 |
| BETSY SUGAR | 353.40 | 550.00 | 194,370.00 |
| | **2,963.30** | | **1,951,645.00** |

**STAFF ATTORNEY**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| TANYA ASHUR | 174.90 | 655.00 | 114,559.50 |
| JOSE GARCIA | 325.00 | 630.00 | 204,750.00 |
| HANNAH LAZARZ | 451.30 | 655.00 | 295,601.50 |
| JAE PARK | 670.60 | 630.00 | 422,478.00 |
| KATHERINE POST | 475.70 | 630.00 | 299,691.00 |
| PETER ROOS | 920.30 | 655.00 | 602,796.50 |
| CAMERON SAUNDERS | 117.00 | 630.00 | 73,710.00 |
| JONATHAN ZAUL | 287.10 | 630.00 | 180,873.00 |
| | **3,421.90** | | **2,194,459.50** |

**CONTRACT ATTORNEY**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| AYODELE VASSALL | 209.50 | 630.00 | 131,985.00 |
| | **209.50** | | **131,985.00** |

**PARALEGAL/CLERK**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| SEGEV BERNER-KADISH | 128.00 | 480.00 | 61,440.00 |

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| DAJUNG CHUNG | 78.10 | 480.00 | 37,488.00 |
| CAHRON CROSS | 457.50 | 480.00 | 219,600.00 |
| ARIANA DELUCCHI | 338.70 | 540.00 | 182,898.00 |
| MADELEINE HARRISON | 231.70 | 480.00 | 111,216.00 |
| ELLA HUGHES | 111.70 | 480.00 | 53,616.00 |
| ELIZABETH KEENLEY | 205.60 | 540.00 | 111,024.00 |
| ERIK KRUGER | 146.60 | 540.00 | 79,164.00 |
| BENJAMIN LANG | 205.70 | 540.00 | 111,078.00 |
| JAMES MCCANN | 98.10 | 480.00 | 47,088.00 |
| GEMMA MEADOWS | 99.10 | 480.00 | 47,568.00 |
| THOMAS STORY | 153.70 | 480.00 | 73,776.00 |
| ARIK TALMON | 122.60 | 515.00 | 63,139.00 |
| MADELEINE TURNER | 140.20 | 480.00 | 67,296.00 |
| BRIANA VITO | 145.90 | 540.00 | 78,786.00 |
| | **2,663.20** | | **1,345,177.00** |

**LITIGATION SUPPORT / RESEARCH**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| MARGIE CALANGIAN | 86.60 | 565.00 | 48,929.00 |
| ANTHONY GRANT | 88.70 | 565.00 | 50,115.50 |
| MICHAEL MAZZARELLA | 35.80 | 565.00 | 20,227.00 |
| ELLY OXMAN | 10.80 | 565.00 | 6,102.00 |
| OZAN PAYDAK | 45.90 | 565.00 | 25,933.50 |
| FAWAD RAHIMI | 86.30 | 565.00 | 48,759.50 |
| JENNIFER SABBE | 11.70 | 565.00 | 6,610.50 |
| ELIZABETH SCHNEIDER | 48.30 | 565.00 | 27,289.50 |
| MUNA TEXIER | 105.20 | 565.00 | 59,438.00 |
| JENNIFER WILLIAMS | 16.40 | 565.00 | 9,266.00 |
| | **535.70** | | **302,670.50** |

| | | | |
|---|---|---|---|
| **MATTER TOTALS** | **13,149.10** | | **9,651,053.50** |

# EXHIBIT B

Samuel Issacharoff (*Pro Hac Vice*)
40 Washington Square South, Suite 411J
New York, NY 10012
(212) 998-6580
Fax: (212) 995-4590
Email: si13@nyu.edu

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>             Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>             Defendant. | Case No.: 3:24-cv-05417-WHA<br><br>**DECLARATION OF SAMUEL ISSACHAROFF IN SUPPORT OF PLAINTIFFS' MOTION FOR SETTLEMENT APROVAL, ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF SERVICE AWARDS** |

I, Samuel Issacharoff declare:

1.      I am a member in good standing of the State Bar of Texas, and I am admitted *pro hac vice* before this Court. Dkt. No. 321. I respectfully submit this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Plaintiff Service Awards.

2.      I am the Bonnie and Richard Reiss Professor of Constitutional Law at the New York University School of Law and the reporter for the American Law Institute's Principles of Aggregate Litigation. I have also been involved as counsel, as an expert and as a consultant in a large number of SEcomplex cases, including dozens of class actions, on behalf of both plaintiffs and defendants; in addition, I have served as special master in a mass tort class action in the Eastern District of Texas. I have testified before the Advisory Committee on the Rules of Practice and Procedure of The Judicial Conference of the United States and the Third Circuit Task Force on the Selection of Class Counsel regarding proposed

amendments to the federal class action rule and other matters pertaining to the selection and compensation of class counsel.

3.      From June 2025 through the present, I have provided Class Counsel with strategic guidance on Rule 23 and settlement issues arising out of and relating to the Settlement. In performing that role, I routinely conferred with Class Counsel and provided high-level legal research. I also traveled to San Francisco to meet with Class Counsel in person and attend the September 8, 2025 preliminary approval hearing in this matter.

4.      On August 11, Class Counsel filed a Notice of Association of Additional Counsel notifying the Court that I was advising Class Counsel on class and procedural issues. Dkt. No. 298.

5.      My lodestar in this matter is $90,240 for 58.4 hours of work spent advising Class Counsel on strategic Rule 23 and settlement issues.  I expended this time on a contingent basis, without any guarantee of receiving compensation if the litigation was not successful.  I also have out of pocket carried expenses of $3,037.93 which I have expended and which will be reimbursed only pursuant to court order..

6.      I currently charge $1,600 for non-contingent work. Courts routinely approve requests for my attorney's fees in complex class action litigation. *See, e.g.*, *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022 WL 17722395, at *9 (N.D. Cal. Dec. 15, 2022) (finding reasonable $1,200 rate and granting motion for attorney's fees for work performed starting at 2020 rates).

7.      I will remain devoted to this matter through its conclusion and stand ready to advise Class Counsel on any issues that arise.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York, this 3rd day of December, 2025.


*/s/ Samuel Issacharoff*
Samuel Issacharoff