UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendants. | Case No. 3:24-cv-05417-WHA<br><br>**DECLARATION OF NANCY E. WOLFF IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF SERVICE AWARDS** |

**DECLARATION OF NANCY E. WOLFF**

Pursuant to 28 U.S.C. § 1746, I, NANCY E. WOLFF, declare and state as follows:

1. My name is Nancy E. Wolff. I am over twenty-one (21) years of age and am fully competent to testify about the matters contained herein. The following statements are made within my personal knowledge and are true and correct.

2. I am a partner with the law firm Cowan, DeBaets, Abrahams & Sheppard LLP ("CDAS") and serve as additional counsel in the above-captioned class action. I am a member in good standing of the bar of the states of California, New Jersey, New York, and Pennsylvania. I make these statements based on personal knowledge and would so testify if called as a witness.

I. **Background and Experience**

3. CDAS is a boutique law firm with offices in New York, New York and Beverly Hills, California, with a wealth of expertise in entertainment, media, and IP law, as well as technology and publishing, having long represented authors, agents, and publishers, among other

clients. CDAS lawyers, who are recognized thought leaders on cutting-edge copyright issues, include former general counsel at major publishing houses, as well as established authors and their estates. In recent years, the firm has continued to handle some of the highest stakes and precedent-setting litigation in copyright relating to generative AI and the ingestion of copyrighted content into large language models. CDAS lawyers have held leadership roles as officers and trustees of the Copyright Society of the USA, have been asked to speak on copyright-related issues throughout the world and engage in advocacy work on behalf of bar associations and trade associations in furtherance of copyright reform. CDAS and its lawyers are regularly recognized for their contribution and wealth of experience in the arena of entertainment, media, and IP, including by Best Lawyers, The Hollywood Reporter, Super Lawyers, and Chambers, with Tier 1 National Rankings from Best Law Firms in copyright, entertainment, media, and trademark law.

4. Within CDAS, I serve as a partner and co-chair of the firm's Litigation Department, handling copyright, trademark, and rights of publicity matters. I represent a diverse variety of creative professionals and creative industries including photographers, authors, artists, collectors, museums, galleries, and publishers in all transactional issues. I am a past president of the Copyright Society of the USA and member of the ABA IP Section Task Force on Copyright Reform. I frequently speak and write on copyright issues and have been published by Allworth Press, ABA Landslide Journal, and am co-editor of the Companion to Copyright and Creativity in the 21st Century, by Focal Press as well as a frequent contributor to and ranked attorney in Chambers and Partners USA for Intellectual Property: Trademark & Copyright (New York).

5. Scott J. Sholder serves as a partner, as well as co-chair of the firm's Litigation Department, focusing his practice on litigation, counseling, and dispute resolution in connection with entertainment, media, art, and intellectual property matters. Mr. Sholder represents and

advises clients across various industries in copyright, trademark, trade secrets, right-of-publicity, unfair competition, domain name, and commercial and business disputes, as well as defamation defense. He has appeared in federal and state courts around the country as well as administrative and arbitral tribunals and has handled cases from pre-suit negotiations through trial, post-trial procedures, and appeals. Mr. Sholder frequently speaks and writes on issues relating to copyright and trademark in the entertainment and digital media space, with a focus on generative AI. Mr. Sholder has been actively involved in pending copyright class action litigation regarding generative AI copyright infringement, and further chairs the Copyright & Literary Property Committee's AI Subcommittee, addressing current developments pertaining to copyright law and generative AI.

6. CeCe M. Cole is a former senior associate with the firm's Litigation Department and Trademark Practice Group. Throughout her tenure with the firm, Ms. Cole represented clients in copyright, trademark, and commercial litigation matters in both federal and state courts and regularly counseled clients on copyright and trademark matters, including copyright enforcement and trademark review and clearance. Ms. Cole additionally focused her practice on issues of copyright at the intersection of generative AI, and was actively involved in pending copyright class action litigation regarding generative AI copyright infringement.

7. Austen A. Parker is an associate with the firm's Entertainment and Corporate Practice Groups. Mr. Parker represents clients on copyright and trademark matters, including copyright enforcement and trademark review and clearance. He is also experienced in a wide range of business matters, including entity formation, corporate governance, private financing, mergers and acquisitions, and joint ventures.

8. Elizabeth Safran is a staff attorney with the firm's Litigation Department and Trademark Practice Group. Ms. Safran represents clients in copyright, trademark, and commercial litigation matters in both federal and state courts and additionally oversees the Litigation Department's docketing and administration, including preparing filings, calendaring, and organizing the Litigation Department's case files.

II. **Overview of CDAS's Efforts in this Action**

9. CDAS has served as additional counsel in this case from the beginning (*see* Dkt. No. 1 at 20), advising the appointed Class Counsel firms on copyright law at all stages of the case, including reviewing certain pleadings, assisting with defensive discovery responses, addressing relevant copyright law issues, and gathering information and communication related to the Plan of Allocation & Distribution. CDAS assisted with the Class List, on the Plan of Distribution, Claim Form, and Class Notice, as well as with stakeholders on the Class List, including soliciting input from these stakeholders. Mr. Sholder and Ms. Cole specifically also participated in weekly calls focused on addressing and strategizing regarding the copyright issues raised by this case. CDAS submits this declaration in support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Plaintiff Service Awards.

10. In connection with the settlement Plan of Distribution, specifically, we were asked by Class Counsel to serve as Authors' Coordination Counsel ("ACC"). At the same time, Class Counsel requested that additional counsel join the case to serve as Publishers' Coordination Counsel ("PCC").

11. In our additional role as ACC, we advised and assisted Class Counsel with the compilation of the Works List, including by improving the methods by which works were assessed for satisfaction of the class criteria. For example, we assisted Class Counsel with developing a

method to ensure that works published immediately prior to the introduction of ISBNs and the full digitization of copyright records—*i.e.*, from the 1964-1977 period—were included on the Works List despite the significant challenges associated with their inclusion (*e.g.*, the fragmentary nature of the records regarding these works).

12. We additionally aided Class Counsel in determining which renewal registrations satisfied the class criteria.

13. Because much of this work involved manual review and because of the specialized nature of these reviews, we assigned CDAS attorneys and staff members to work under Class Counsel's supervision. As a result of our efforts, Class Counsel was able to verify tens of thousands of additional works for inclusion on the Works List.

14. Finally, with respect to notice, we facilitated the connection of Class Counsel to author groups and to the major literary agencies.

15. We have similarly aimed to ensure the highest possible understanding of the Settlement, so that Class Members could make informed decisions about the Settlement, and will continue to advise Class Members throughout the claims process, ensuring they are fully appraised of their rights.

16. We reviewed all versions the proposed Plan of Distribution, Claim Form, and Class Notice, as well as all other information, for compliance with relevant copyright laws.  We also focused on ensuring that each document described the Settlement—and the requirements to submit a claim, opt out, or object—in a way that would be familiar and understandable to both authors and publishers.  We aimed to ensure the highest possible understanding of the Settlement, so that class members could make informed decisions about the Settlement.

17.     Above all else, we endeavored to ensure that all terms of the Settlement including the Plan of Distribution, Claim Form, and Class Notice, are fair adequate and reasonable for authors in the Class.

18.     To this end, I worked to make claims forms understandable for authors and publishers, took calls with authors and publishers, and worked on Q&As to ensure authors understood the claims process. Along with Class Counsel and PCC, we continue to devote substantial resources and rigorous oversight to ensure the Settlement is administered fairly, efficiently, and in the best interests of the Class. Since preliminary approval, we have, along with Class Counsel and PCC, maintained active coordination with the Settlement Administrator to monitor claim processing. We anticipate fees for the period from now through February 2027 to be approximately $75,000, corresponding to 110 hours of billed time, as we will be actively assisting class counsel in responding to class member questions and other author/publishing issues that may come up during this period. We have agreed to divide any fees awarded by the Court with Class Counsel and PCC accordingly: Lieff Cabraser Heimann & Bernstein, LLP and Susman Godfrey L.L.P. with 37.5% each, CDAS with 5%, Oppenheim + Zebrak, LLP with 12.5%, and Edelson PC with 7.5%.

### III.     CDAS Lodestar and Hourly Rates

19.     CDAS attorneys have dedicated a total of 231.00 hours to this case from their first involvement, dating to August 20, 2024, through the present, and billed $156,784.00.[1]

20.     Each attorney assigned to the matter billed as follows between August 20, 2024 and November 22, 2025:

---

[1] We are amenable to providing an itemized list of time billed organized by entry per the Court's request.

| August 20, 2024 – November 22, 2025 | | | | |
|---|---|---|---|---|
| **Attorney** | **Hours Billed** | **Hourly Rate** | **Total Fees** | **Time Period** |
| Nancy E. Wolff (NEW) | 107.8 | $750.00 | $80,850.00 | 8/27/25 – 11/12/25 |
| Scott J. Sholder (SJS) | 52.7 | $830.00 | $43,741.00 | 10/10/24 – 11/22/25 |
| CeCe M. Cole (CMC) | 45.8 | $510.00 | $23,358.00 | 8/26/24 – 9/24/25 |
| Austen A. Parker (AAP) | 11.4 | $320.00 | $3,648.00 | 9/11/25 – 9/13/25 |
| Elizabeth Safran (née Altman) (EA) | 13.3 | $390.00 | $5,187.00 | 8/20/24 – 10/31/25 |
| **Total Hours** | **231** | | **$156,784.00** | |

21. I believe the 231 hours expended on this matter were appropriate given the numerous phases needed to arrive at settlement and complexity of the novel legal issues involved.

22. CDAS attorneys, moreover, remained cognizant of the risk of the novel, high-risk claims associated with the litigation, accordingly expending only the time and dedicated hours that were reasonably necessary for their role in the ongoing prosecution and resolution of this case.

23. CDAS attorneys dedicated time to various billing codes associated with their roles in this case, specifically, Code 00002 pertaining to "Settlement," Code 00003 pertaining to "Admin," Code 00004 pertaining to "Experts/Consultants," Code 00005 pertaining to "Case Management," Code 00006 pertaining to "Offensive discovery," Code 00007 pertaining to "Client comm/defensive discovery," Code 00009 pertaining to "Court Appearance," Code 00010 pertaining to "Investigation and doc analysis," and Code 0012 pertaining to "Pleadings/Briefings/Analysis."

24. Further expenses associated with my travel relating to my time dedicated to Code 00009 pertaining to "Court Appearance" totaled $2,285.90:

| Expense Type | Total |
|---|---|
| Air Travel | $2,119.90 |
| Ground Travel | $166.00 |
| Total | $2,285.90 |

25. The hourly rates used to represent the lodestar represent our firm's current, customary professional rates effective for the year 2025, during which our firm's attorneys billed time to this case. The billing rates of the team members who contributed to this case range from $750–$830 for partners, $320–$510 for associates, and $390 for staff attorneys.

26. CDAS attorneys' billing rates are based upon a combination of the title and the specific years of experience for each employee, as well as periodic analyses of internal costs, rates used by lawyers with similar experience in copyright and other IP matters. Different timekeepers within the same employment category (*e.g.*, partners, associates, staff attorneys) may have different rates based on a variety of factors, including years of practice and the rates of similarly experienced peers at CDAS and/or other plaintiff or defense firms.

27. Based on my forty years of experience in litigation, and predominantly copyright litigation, these rates are consistent with, if not lower than, prevailing market rates for copyright counsel.

28. In calculating attorneys' fees, Second Circuit courts determine a "presumptively reasonable fee" by multiplying a reasonable hourly rate by the reasonable number of hours expended on the case, often referred to as the "lodestar method." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. Of Elections*, 522 F.3d 182, 189-90 (2d Cir. 2008); *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir.

2001); see also *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To determine a reasonable rate, courts consider "the prevailing rates in the community 'for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *U.S. Media Corp. v. Edde Ent., Inc.*, 1999 WL 498216, at *2 (S.D.N.Y. July 14, 1999). However, "[t]he actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded." *Crescent Publ'g*, 246 F.3d at 151.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct to the best of my knowledge, belief, and recollection.

Executed in New York, New York on December 3, 2025

*/s/ Nancy E. Wolff*
Nancy E. Wolff