UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated, | Case No. 3:24-cv-05417-WHA |
| Plaintiffs, | **DECLARATION OF WILLIAM B. RUBENSTEIN** |
| v. | |
| ANTRHOPIC PBC, | |
| Defendant. | |

**DECLARATION OF PROFESSOR WILLIAM B. RUBENSTEIN**

1.      I am the Bruce Bromley Professor of Law at Harvard Law School and have been recognized as a leading national expert on class action law and practice. Class Counsel[1] seek a fee of $300 million (plus accrued interest), which constitutes 20% of the $1.5 billion settlement fund. Class Counsel have retained me to provide my expert opinion on the reasonableness of this request. After setting forth my qualifications to serve as an expert (Part I, *infra*), I state the following opinions:

- ***Class Counsel's lodestar reflects remarkable efficiency in the quantity of hours expended to bring about this $1.5 billion settlement*** (Part II, *infra*). The total number of hours Class Counsel expended in this case is about one-third of the norm for cases

---

[1] By order dated July 17, 2025, this Court granted a motion for class certification and appointed Lieff Cabraser Heimann & Bernstein, LLP and Susman Godfrey LLP as "LibGen & PiLiMi Pirated Books Class Counsel." Order, *Bartz v. Anthropic PBC,* No. 3:24-cv-05417-WHA (N.D. Cal.), Dkt. 244 at 31. I refer to the firms as "Class Counsel" throughout.

of this size. A qualitative assessment of the time spent provides strong support for the conclusion that Class Counsel accomplished significant work with admirable efficiency: Class Counsel report that they took or defended over 20 depositions, reviewed hundreds of thousands of pages of documents, litigated 17 motions to compel, generated a score of expert declarations across the critical issues in the case, engaged in extensive briefing here and in the Ninth Circuit on motions ranging from class certification through summary judgment, and were well along the road in preparing for a trial that was set to commence just months after the settlement was reached. Given that quantity of work, completed within the short arc of the case, there is little concern that Class Counsel have padded their lodestar (so as to lower their lodestar multiplier). Indeed, what sticks out as truly extraordinary here is the relationship between the number of hours expended and the recovery for the client: roughly speaking, Class Counsel secured (in gross) nearly $60,000 for every hour they have worked on the case; this recovery-per-hour worked is more than 3 times the mean and median for the largest class action cases.

- ***Class Counsel are entitled to a significant lodestar multiplier given the substantial risks they undertook and the unparalleled results they achieved for the class*** (Part III, *infra*). Class Counsel's $300 million fee request is 13.45 times higher than their current lodestar, and they project it will be 9.32 times higher following the extensive work still required in the litigation. Courts have assessed the meaning of lodestar multipliers in two key manners, each of which provides support for a significant multiplier in this case:

  ✓ ***Multifactor test***. Courts routinely approve common fund fee awards that embody a multiple of class counsel's lodestar in recognition of the risks that class counsel take in contingent fee matters and the results that they achieve for the class in a given case. Here, Class Counsel took significant risks, investing more than $20 million of their own time and money into an untested case against a well-funded Defendant represented by some of the largest law firms in the world; the case did not piggy-back on a government enforcement action (as many class actions do), nor was it one in a series of similar cases regularly pursued by class counsel (as many securities, antitrust, or consumer class actions are); it was an entirely novel endeavor, based on a completely new fact situation. Class Counsel's risks surely paid off when they secured for their clients what appears to be the largest recovery in a copyright class action in history and indeed one of the largest funds in class action history, with monetary damages available to 100% of the class, at very significant levels ($3,000/work recovery is four times the $750 statutory damage level and 15 times the $200 award for innocent infringement). Notably, working with the Court in this case, Class Counsel have helped develop a template for all future AI cases, of which there are many. This is the first AI case to tackle the key liability issues through summary judgment, the first AI case to certify a class, the first AI case to secure a significant settlement, the first AI case to provide notice to

2

a class (composed of both authors and publishers), the first to address questions of how to allocate "works" proceeds across these different owners. Put simply, this case invented a wheel, with the positive externalities of everything Class Counsel helped pioneer here likely to structure AI litigation in the United States for the next decade. There is no doubt that they are entitled to a significant multiple of their lodestar.

✓ **_Numerical comparison_**. Empirical evidence shows the average multiplier to be about 2 times counsel's lodestar in all cases, with that number rising to 3.2 in large fund cases; but in many cases (a list of which is attached as Exhibit C) courts have awarded higher multipliers, including some at or above the level sought here. Nonetheless, numerical comparisons are somewhat constrained by several limitations in the available data: (1) there is no empirical evidence of the multipliers lawyers make in the vast majority of contingent fee cases (basic tort matters), but it is likely the multipliers in those cases are often quite high; (2) there is empirical evidence of multipliers in only about half of all class action cases; and (3) it is likely that lawyers most often propose, and by implication courts most often undertake, a cross-check in those cases in which multipliers are low, creating a selection bias problem with the available data. Thus, while the multiplier implied by Class Counsel's lodestar is at the high end of available data, it is surely a more normal data point across the full range of contingent fee cases. Moreover, there are non-trivial policy reasons for not over-relying on the cross check alone, as doing so can, _inter alia_, incentivize lawyers to prolong litigation unnecessarily.

2. I have long been a proponent of the lodestar cross-check, explaining in my scholarship that simply comparing percentages across cases without reference to the lodestar multiplier, and other qualitative factors, provides courts little insight as to the reasonableness of a proposed fee in a particular case.[2] The same point, however, applies in reverse: simply comparing lodestar multipliers across cases without reference to qualitative factors (such as the _Vizcaino_ factors regularly employed by courts in this circuit),[3] also provides little insight into the

---

[2] _See_ William B. Rubenstein, 5 _Newberg and Rubenstein on Class Actions_ § 15:86 (6th ed. & Supp. 2023) [hereinafter "_Newberg and Rubenstein on Class Actions_"].

[3] _Vizcaino v. Microsoft Corp._, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (assessing the following factors when selecting a percentage fee award in a common fund case: (1) the results achieved for the class; (2) the risk of the litigation (including complexity of litigation); (3) benefits generated

reasonableness of a fee request.  Here, the multiplier is high, but at the same time, class members are receiving robust recoveries while paying a price below the Ninth Circuit's 25% benchmark, in a case of first impression that faced serious hurdles on the road to an outstanding recovery.  A 20% fee would provide Class Counsel with a significant profit, but the record contains substantial evidence by which the Court could find that Class Counsel's requested award is reasonable.

## I.
## BACKGROUND AND QUALIFICATIONS[4]

3.      I am the Bruce Bromley Professor of Law at Harvard Law School.  I graduated from Yale College, *magna cum laude*, in 1982 and from Harvard Law School, *magna cum laude*, in 1986.  I clerked for the Hon. Stanley Sporkin in the U.S. District Court for the District of Columbia following my graduation from law school.  Before joining the Harvard faculty as a tenured professor in 2007, I was a law professor at the UCLA School of Law for a decade, and an adjunct faculty member at Harvard, Stanford, and Yale Law Schools while a litigator in private practice during the preceding decade.  I am admitted to practice law in the Commonwealth of Massachusetts, the State of California, the Commonwealth of Pennsylvania (inactive), the District of Columbia (inactive), the U.S. Supreme Court, six U.S. Courts of Appeals, and four U.S. District Courts.

4.      My principal area of scholarship is complex civil litigation, with a special emphasis on class action law.  I am the author, co-author, or editor of five books and more than a dozen

---

by class counsel beyond the settlement fund; (4) the comparison between the proposed fee and market rate; and (5) the burdens of the litigation for class counsel (including contingency basis, length of litigation, expenses to counsel, and opportunity cost of foregone work)).

[4] My full c.v. is attached as Exhibit A.

scholarly articles, as well as many shorter publications (a fuller bibliography appears in my appended c.v.). Much of this work concerns various aspects of class action law. Since 2008, I have been the sole author of the leading national treatise on class action law, *Newberg on Class Actions*. Between 2008 and 2017, I rewrote the entire multi-volume treatise from scratch as its Fifth Edition and, subsequently, produced the treatise's Sixth Edition – now entitled, *Newberg and Rubenstein on Class Actions* – which was published in 2022. My work has been excerpted in casebooks on complex litigation, as noted on my c.v.

5.     My expertise in complex litigation has been recognized by judges, scholars, and lawyers in private practice throughout the country for whom I regularly provide consulting advice and educational training programs. Between 2010 and 2023, the Judicial Panel on Multidistrict Litigation (JPML) annually invited me to give a presentation on the current state of class action law at its MDL Transferee Judges Conference. The Federal Judicial Center invited me to participate as a panelist (on the topic of class action settlement approval) at its March 2018 judicial workshop celebrating the 50th anniversary of the JPML, *Managing Multidistrict and Other Complex Litigation Workshop*. The Ninth Circuit invited me to moderate a panel on class action law at the 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop. The American Law Institute selected me to serve as an Adviser on a Restatement-like project developing the *Principles of the Law of Aggregate Litigation*. In 2007, I was the co-chair of the Class Action Subcommittee of the Mass Torts Committee of the ABA's Litigation Section. I have often presented continuing legal education programs on class action law at law firms and conferences.

6.     My teaching focuses on procedure and complex litigation. I regularly teach the basic civil procedure course to first-year law students, and I have taught a variety of advanced

courses on complex litigation, professional responsibility concerns in aggregate litigation, remedies, and federal litigation. I have received honors for my teaching, including: the Albert M. Sacks-Paul A. Freund Award for Teaching Excellence, as the best teacher at Harvard Law School during the 2011–2012 school year; the Rutter Award for Excellence in Teaching, as the best teacher at UCLA School of Law during the 2001–2002 school year; and the John Bingham Hurlbut Award for Excellence in Teaching, as the best teacher at Stanford Law School during the 1996–1997 school year.

7.    My academic work on class action law follows a significant career as a litigator. For nearly eight years, I worked as a staff attorney and project director at the national office of the American Civil Liberties Union (ACLU) in New York City. In those capacities, I litigated dozens of cases on behalf of plaintiffs pursuing civil rights matters in state and federal courts throughout the United States. I also oversaw and coordinated hundreds of additional cases being litigated by ACLU affiliates and cooperating attorneys in courts around the country. I therefore have personally initiated and pursued complex litigation, including class actions.

8.    I have been retained as an expert witness in more than 120 cases and as an expert consultant in another 40 or so cases. These cases have been in state and federal courts throughout the United States, most have been complex class action cases, and many have been MDL proceedings. I have been retained to testify as an expert witness on issues ranging from the propriety of class certification to the reasonableness of settlements and fees, to the preclusive effect of class action judgments. I have been retained by counsel for plaintiffs, for defendants, and for objectors.

9.    Courts have also appointed me to serve as their expert witness in complex matters:

- In 2015, the United States Court of Appeals for the Second Circuit appointed me to argue for affirmance of a district court order that significantly reduced class counsel's fee request in a large, complex securities class action, a task I completed successfully when the Circuit summarily affirmed the decision on appeal.[5]

- In 2017, the United States District Court for the Eastern District of Pennsylvania appointed me to serve as an expert witness on certain attorney's fees issues in the National Football League (NFL) Players' Concussion Injury Litigation (MDL 2323). In my final report to the Court, I recommended, *inter alia*, that the Court should cap individual retainer agreements at 22%, a recommendation that the Court adopted.[6]

- In 2018, the United States District Court for the Northern District of Ohio appointed me to serve as an expert consultant to the Court on complex class certification and common benefit fees issues in the National Prescription Opiate Litigation (MDL 2804).

- The United States District Courts for the Southern District of New York and the Eastern District of Pennsylvania have both appointed me to serve as a mediator to resolve complex matters in class action cases.

10.     One of the functions I can provide as an expert witness is to present empirical evidence of class action practices from other cases. As part of my scholarly work on class action law, I have created and maintain a database containing data on over 1,000 class action lawsuits. Specifically, my research assistants coded the data from case reports appearing in the journal, *Class Action Attorney Fee Digest* (CAAFD). CAAFD was published monthly from January 2007 to September 2011 for a total of 57 issues and reported on 1,187 unique court-approved state and federal class actions. For each case, a CAAFD case abstract describes the awarding court and judge, the subject matter of the dispute, the settlement/judgment benefits, the attorney fee and

---

[5] *See In re IndyMac Mortg.-Backed Sec. Litig.*, 94 F. Supp. 3d 517 (S.D.N.Y. 2015), *aff'd sub nom. DeValerio v. Olinski*, 673 F. App'x 87 (2d Cir. 2016).

[6] *In re Nat'l Football League Players' Concussion Inj. Litig.*, No. 2:12-md-02323-AB, 2018 WL 1658808, at *1 (E.D. Pa. Apr. 5, 2018) ("I adopt the conclusions of Professor Rubenstein and order that IRPAs' fees be capped at 22% plus reasonable costs.").

expense awards (both as requested by plaintiff's counsel and as approved by the court), the case filing and attorney fee award dates, any named plaintiff awards, and miscellaneous data on case and settlement/judgment administration.  In creating the database from the CAAFD reports, my research team cross-checked the accuracy of a subset of federal reports against source documents from PACER; we found only one error – an understatement of the settlement benefit value by 2% – in 726 data fields, or fewer than 0.15% of fields.  I am therefore confident about the accuracy of the data in my database and use it regularly as a source for my scholarship and expert witness work.

11.     Courts have often relied on my expert witness testimony.[7]

---

[7] *See, e.g.*, *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2022 WL 18108387, at *7 (E.D. Va. Nov. 8, 2022); *Reed v. Light & Wonder, Inc.*, No. 18-CV-565-RSL, 2022 WL 3348217, at *1–2 (W.D. Wash. Aug. 12, 2022); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc*., No. 12-CV-0256 (LAK), 2021 WL 2453972, at *2–3 (S.D.N.Y. June 15, 2021); *In re Facebook Biometric Info. Priv. Litig*., No. 15-CV-03747-JD, 2021 WL 757025, at *10–12 (N.D. Cal. Feb. 26, 2021); *Kater v. Churchill Downs Inc*., No. 15-CV-00612-RSL, 2021 WL 511203, at *1–2 (W.D. Wash. Feb. 11, 2021); *Wilson v. Playtika Ltd*., No. 18-CV-5277-RSL, 2021 WL 512230, at *1–2 (W.D. Wash. Feb. 11, 2021); *Wilson v. Huuuge, Inc*., No. 18-CV-5276-RSL, 2021 WL 512229, at *1–2 (W.D. Wash. Feb. 11, 2021); *Amador v. Baca*, No. 2:10-CV-01649-SVW-JEM, 2020 WL 5628938, at *13 (C.D. Cal. Aug. 11, 2020); *Hale v. State Farm Mut. Auto. Ins. Co*., No. 12-0660-DRH, 2018 WL 6606079, at *10, 14 (S.D. Ill. Dec. 16, 2018); *Krakauer v. Dish Network, L.L.C*., No. 1:14-CV-333, 2018 WL 6305785, at *5 (M.D.N.C. Dec. 3, 2018); *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323-AB, 2018 WL 1658808, at *2–4 (E.D. Pa. Apr. 5, 2018); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 3175924, at *3 (N.D. Cal. July 21, 2017); *Aranda v. Caribbean Cruise Line, Inc.*, No. 1:12-cv-04069, 2017 WL 1369741, at *5 (N.D. Ill. Apr. 10, 2017), *aff'd sub nom. Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *9–10 (N.D. Cal. Sept. 2, 2015); *Asghari v. Volkswagen Grp. of Am., Inc.*, No. 13-CV-02529 MMM, 2015 WL 12732462, at *44 (C.D. Cal. May 29, 2015); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2015 WL 2165341, at *5 (D. Kan. May 8, 2015); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010); *Commonwealth Care All. v. Astrazeneca Pharm. L.P.*, No. CIV.A. 05-0269 BLS 2, 2013 WL 6268236, at *2 (Mass. Super. Aug. 5, 2013).

12.     I have been retained in this case to provide an opinion concerning the issues set forth in the first paragraph above.  I am being compensated for providing this expert opinion.  I was paid a flat fee in advance of rendering my opinion, so my compensation is in no way contingent upon the content of my opinion.

13.     In analyzing these issues, I have discussed the case with the counsel who retained me.  I have also reviewed documents from this litigation and the related cases, a list of which is attached as Exhibit B, and I have reviewed the case law and scholarship relevant to the issues herein.

14.     Counsel responsible for creating a common fund are entitled to a fee from the fund according to the common fund doctrine.  Rule 23 requires that the fee be "reasonable."[8]  Courts differ in the methods that they employ to hit that mark, with most circuits utilizing a percentage method with a lodestar cross-check.[9]  The Ninth Circuit gives its district courts discretion as to whether to use a percentage or lodestar method.[10]  The Ninth Circuit requires its district courts to assess the reasonableness of a given award according to a multifactor test.[11]  As discussed in ¶37,

---

[8] Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

[9] *See Newberg and Rubenstein on Class Actions*, *supra* note 2, at § 15:67 (discussing empirical evidence on choice of percentage or lodestar method)

[10] *In re Optical Disk Drive Products Antitrust Litigation*, 959 F.3d 922, 929–30 ("District courts have discretion to choose which method they use to calculate fees, but their discretion must be exercised to reach a reasonable result.  We have approved fee awards in class litigation using either the lodestar method or the percentage-of-recovery method.") (citation omitted).

[11] *See Vizcaino*, *supra* note 3.

*infra*, the Ninth Circuit encourages the use of a lodestar cross-check and of course this District requires submission of that information.[12]

15.    The following sections consider two primary components of Class Counsel's requested fee: their total hours (Part II, *infra*) and their lodestar multiplier (Part III, *infra*).

## II.
## CLASS COUNSEL'S HOURS DEMONSTRATE REMARKABLE EFFICIENCY

16.    Lest the cross-check require significant judicial resources to undertake, courts in nearly every circuit have held that, for the purposes of a cross-check, they need not scrutinize each individual billed hour but may instead focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys.[13]

17.    Counsel are entitled to be compensated for reasonable time spent at all points in the litigation. Courts are cautioned to avoid engaging in an "*ex post facto* determination of whether

---

[12] *Preliminary Approval*, Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements ("Although attorneys' fee requests will not be approved until the final approval hearing, class counsel should include information about the fees and costs (including expert fees) they intend to request, their lodestar calculation (including total hours), and resulting multiplier in the motion for preliminary approval."); *see also id.* at Final Approval ("All requests for approval of attorneys' fees must include detailed lodestar information, even if the requested amount is based on a percentage of the settlement fund.").

[13] *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 Fed. Appx. 651, 654 (9th Cir. 2019) ("[When conducting a lodestar cross-check,] the district court may rely on attorney fee summaries rather than actual billing records.") (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005), as amended, (Feb. 25, 2005) (noting that the "lodestar cross-check calculation need entail neither mathematical precision nor bean-counting," and that "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records"); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."); *see generally, Newberg and Rubenstein on Class Actions*, *supra* note 2, at § 15:86 n.13.

attorney hours were necessary to the relief obtained."[14]    The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."[15]

18.    I examine the hours that Class Counsel billed in two ways: *first*, by a quantitative comparison to the hours expended in similarly large cases (¶¶ 19-22, *infra*); and *second*, by a qualitative analysis of the tasks undertaken (¶¶ 23-24, *infra*).[16]

19.    *Quantitative Assessment.*  In my database of more than 1,000 cases (*see* ¶ 10, *supra*), there are 9 cases with common fund sizes similar to this case:  7 of the settlements are between $1-$2 billion, one is $2.4 billion, and the final one is $6.5 billion. (in 2025 dollars).  The hours class counsel expended to produce those common funds ranged from 37,466 to 677,000.  Class Counsel's 26,191 hours (as of December 2025) fall far below that range.

20.    Further, the cases in the comparison set of large fund settlements unfolded over different total time periods.  Thus, to normalize the comparison in another fashion, we divided the total hours in each case by the total number of days the case was pending, yielding the hours counsel billed each day the case was pending.  These normalized calculations show that the *median* amount of time spent on class actions of similar magnitude was 95 hours/day, well above Class

---

[14] *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

[15] *Id.*

[16] Class Counsel did not provide me – nor did I ask to see – a breakdown of each hour expended, given the "more relaxed specificity and documentation standards [that] apply to examination of the lodestar" in the cross-check context.  *Health Republic Ins. Co. v. United States*, 58 F.4th 1365, 1378 (Fed. Cir. 2023).  *See also* note 13, *supra; Manier v. Sims Metal Mgmt.-Nw.*, No. 19-CV-00718-JST, 2022 WL 20184566, at *4 (N.D. Cal. Jan. 14, 2022) ("When conducting a lodestar cross-check . . . the courts seek to do rough justice, not to achieve auditing perfection.") (cleaned up).

Counsel's 55.6 hours/day, and the *average* was 104 hours/day, nearly double Class Counsel. Class Counsel, in other words, billed a much lower number of hours per day than the cases in the comparison set while achieving the same or, as it did in 6 of the 9 comparison cases, better results.

21.    Counsel's low number of hours supports the conclusions that they managed the litigation efficiently and did not pad their lodestar with excess hours. But that conclusion minimizes Class Counsel's achievement because not only did they efficiently manage their hours, but the recovery they produced is also extraordinarily large. Putting those two data points together (time and results) shows that Class Counsel secured about $57,300 every hour they worked on the case – this is about 3.6 times the median for the 9 comparably-sized class actions in my data base, as reflected in Graph 1 below.

**GRAPH 1**
**CLASS COUNSEL'S DOLLARS OBTAINED PER HOURS SPENT**
**COMPARED TO THAT IN CLASS ACTIONS OF SIMILAR SIZE**



As remarkable, since the class here will pay, at most, 20% in fees, this means that the class members will receive about $45,817 for every hour class counsel expended, which is 3.2 times

higher than the median for class actions of this size, as reflected in Graph 2, and 3.1 times higher than the average.

**GRAPH 2**
**CLASS COUNSEL'S DOLLARS OBTAINED (POST-FEES) PER HOURS SPENT COMPARED TO THAT IN CLASS ACTIONS OF SIMILAR SIZE**



22.    The data presented in Graphs 1-2 provide strong quantitative support for the conclusions that Class Counsel were efficient, that they have not attempted to pad their lodestar, and that their efficiency was remarkably productive.  These conclusions are confirmed by a more qualitative assessment of the efforts that Class Counsel undertook.

23.    *Qualitative Assessment.*  Class Counsel filed the initial complaint in this case on August 19, 2024.  Up to the filing of the present fee petition, Class Counsel cumulatively logged about 26,191 hours of time.  If an average litigator in a busy big firm practice bills about 2,200 hours/year,[17] the total hours expended here equate to about 12 lawyer years.  Given that the case

---

[17] Roughly speaking, 2,200 hours/year may be considered as one lawyer working "full time."  The National Association for Law Placement (NALP)'s most recent data available online, published in May 2016, reflect the hours billed by firms in 2013 and 2014.  *Update on Associate Hours Worked*, NALP (May 2016), https://www.nalp.org/0516research. Those data show that, for lawyers at the

has been pending about one-and-a-third years at the time of the filing of the fee petition, the total hours here amount to the equivalent of roughly 9 lawyers working more or less full time on the case throughout that duration.  That number seems quite reasonable in that, during that period, Class Counsel's activities included:

- developing a thorough understanding of the new, developing, and ever-changing technology of AI – and, more specifically, of Anthropic's Claude AI program in particular – to determine the viability of a legal claim and the legal theory(s) that could support liability;

- researching the facts behind the AI program including how the defendant generated its large language model and how that model plausibly infringed protected copyrights;

- linking that factual investigation to the proper legal claims by researching relevant legal precedents under federal law;

- identifying potential class representatives and securing retention;

- identifying experts and working with them to develop core substantive arguments as well as responses to the defendant's likely experts;

- preparing for and participating in the Court-ordered "technology tutorial;"[18]

- developing the facts of the case through intensive discovery into, *inter alia*, the defendants use of "shadow libraries,"[19] encompassing "20 depositions, . . . hundreds of thousands [of] pages of documents, . . . inspections of at least 3 TB of training data, and [the litigation of] 17 discovery motions;"[20]

---

largest firms (700+ lawyers), about 2/3 worked more than 2,200 hours/year, and the average number of hours worked in 2014 was 2,199.

[18] Motion for Preliminary Approval of Settlement, *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA (N.D. Cal.), Dkt. 363 at 9 n.6.

[19] *Id.* at 2.

[20] *Id.  See also, id.* at 9-10 ("Plaintiffs served 186 requests for production, 29 interrogatories, and 65 requests for admission. In turn, Anthropic served 263 RFPs (approximately 87 directed to each named author), 75 interrogatories (25 per author), and 395 RFAs (47 for Graeber, 230 for Bartz, and 118 for Johnson). The Parties negotiated and the Court entered three stipulated discovery

- litigating a summary judgment motion on the cutting-edge issues at the core of this case, which generated the first legal ruling in the country on the substantive issues at the heart of the many AI litigations;[21]

- simultaneously researching, drafting, filing, and arguing a motion for class certification in this novel setting – involving "works" with both legal and beneficial owners[22] – and preparing to litigate the 23(f) petition after the Court's ruling;

- assembling the Works List "by matching millions of records of Anthropic's downloads to U.S. Copyright Office registration records;"[23]

- developing and obtaining approval for a plan to provide notice to potential class members regarding the certified class action and their options;

- engaging in multiple mediation sessions with Layn Phillips, including exchanging mediation briefs and engaging in a full day mediation session;

- developing a settlement agreement and all the associated documents and presenting these to the Court for preliminary approval;

- working with the Court and parties in refining the settlement and notice plans;

- undertaking regular communications with class members to update them on case proceedings;

- undertaking emergency efforts to stave off problematic third-party claims processors who sent problematic communications to absent class members.

24.     In sum, then, the range and depth of Class Counsel's efforts set forth in the prior

paragraph add important context to the number of hours they expended.  Viewed in isolation, the

---

protocols: a Protective Order, an ESI and Hard-Copy Document Protocol, and a Protocol for Inspection of Training Data and Source Code. These agreements governed production formats, metadata, claw-back procedures, and the mechanics of secure dataset inspections. Plaintiffs and Anthropic met and conferred dozens of times on search terms, custodians, privilege logging, and scheduling, and exchanged dozens of written proposals refining the discovery parameters.").

[21] *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007 (N.D. Cal. 2025)

[22] *Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038 (N.D. Cal. 2025).

[23] Motion for Preliminary Approval of Settlement, *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-WHA (N.D. Cal.), Dkt. 363 at 2.

number might leave the impression that this litigation followed some easy path to pre-ordained judgment; but this qualitative review demonstrates the opposite: this was carefully planned litigation pursued by dogged counsel who played a vital role in initially conceiving this litigation and then seeing it through a series of considerable hurdles to settlement in a remarkably short period of time. The outcome was never inevitable, and Class Counsel deserve commendation not just for achieving this landmark settlement, but also for doing so in such an efficient manner.

**III.**

**A SIGNIFICANT LODESTAR MULTIPLIER IS WARRANTED**

25.    Class Counsel's lodestar – the product of their rates and modest number of hours, given the $1.5 billion common fund – is $22,304,844 at present and they project it will be roughly $32,171,769 by the end of this matter.   That means that the 20% fee Class Counsel seek currently constitutes 13.45 times their lodestar but will likely fall to roughly 9.32 times their lodestar.

26.    In *Newberg and Rubenstein on Class Actions*,[24] I explain that there is more guidance from the circuit courts on whether a lodestar cross-check ought to be employed than there is on the question of how to assess the results of that cross-check and I note that the appellate courts' guidance on the latter question is not particularly illuminating. I explain that into that void, lower courts have adopted several methods to make sense of the cross-check outcome, and, in particular, to determine whether any positive multiplier that emerges from the cross-check is indeed warranted. Specifically, two primary approaches have emerged: (1) employing a multi-factor test, focusing especially on the risk of non-recovery, the quality of counsel's work, and the

---

[24] This paragraph is adapted from *Newberg and Rubenstein on Class Actions*, *supra* note 2, at § 15:87.

results achieved; and (2) comparing the proposed multipliers to empirical evidence about multipliers in other cases.  In the succeeding sections, I apply each of these methods.

### (A)
### *A Multi-Factor Analysis Supports a Significant Multiplier as Class Counsel Took Large Risks and Secured an Extraordinary Quantity of Money for the Class*

27.    The Ninth Circuit offers several reasonableness factors to consider in assessing a multiplier, including "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."[25]  In the following paragraphs, I sort those factors into two categories – risks and results – and consider each in turn.

28.    Nine independent factors demonstrate the riskiness of this case:[26]

- ***Non-piggyback case.***  Many class actions follow on the heels of government enforcement actions, such as securities class actions that follow SEC enforcement actions or antitrust cases that follow Department of Justice actions.  Class counsel have a lower risk in such cases as their investigative costs may be lower; as they may be able to employ non-mutual offensive issue preclusion to establish liability without litigation;[27] and/or as the defendant has a natural incentive to settle with the government, thereby easing the road to settlement with the class.  Not this case:  no government agency has pursued concerns about copyright infringement in the exploding market for AI tools.  Moreover, these Class Counsel have been deeply involved in the initial cases in this developing field, indicating that they independently detected, investigated, theorized, and executed the entire case largely from scratch.

- ***Uncertain liability.***  Many class actions pursue obvious instances of wrongdoing publicized in the media, such as the BP oil spill case or the Volkswagen emissions case.  These cases embody less risk because settlement is almost a given.  This case is the opposite:  there was no high-profile prior exposé of the Defendant's actions here and liability was anything but pre-ordained.  Indeed, Class Counsel report that it was their

---

[25] *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022).

[26]  The point is not to look at Counsel's risks *ex post*, but rather to demonstrate the strength of the achievement compared to the risks *ex ante*.

[27] *See, e.g.*, *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).

efforts during the discovery period that revealed, for the first time, the nature and extent of Anthropic's use of the LibGen and PiLiMi datasets.

- **Novelty.** In many class actions, application of the antitrust, securities, or consumer laws is based on well-established precedent and enables counsel, at the outset, to gauge – with some certainty – the chances of success in the new case. Not so here: this case turned on application of complex legal norms in a novel context, with hotly-contested facts, and enormous companies across the tech spectrum strongly opposing Class Counsel's approach to the legal claim. Indeed, prior to this case, no court had ever found an AI company liable for piracy; and no court had ever even certified a class in these circumstances. The case embodied significant risk because the outcome was so uniquely unpredictable.

- **High stakes.** There is fierce competition in the AI market and Defendant possessed significant incentives to defeat claims that they had cheated in their rush to the market. Given the magnitude of the issues in this case, Anthropic surely defended it with special interest and vigor.

- **High cost.** Class Counsel report a lodestar above $22 million to date, plus additional hard cost expenses (now including a $15 million notice program). This means that Class Counsel have loaned the class more than $30 million dollars – most when the odds were long – and risked losing every penny of it on the outcome of this case.

- **Unshared risk.** In many class action matters, particularly of this magnitude, the class is represented by a collection of plaintiffs' firms.[28] This means that the lawyers can spread the risk among the various firms. Here, two law firms shouldered nearly all of the risk.

- **Well-funded, yet volatile, Defendant**. Anthropic is a well-capitalized corporation boasting an enterprise valuation of $241 billion.[29] While Class Counsel were funding this case themselves, with more than twenty million dollars of their own money, they were up against a Defendant with almost unlimited – and apparently constantly expanding – resources. At the same time, Anthropic exists in a developing and highly competitive environment and reported no profits last year. Thus, the nature of the

---

[28] *See, e.g., Manual for Complex Litigation (Fourth)* § 10.22 (2004) (discussing presence of multiple counsel in complex litigation and advising judges on how to manage); Judith Resnick et al., *Individuals Within the Aggregate: Relationships, Representation, and Fees*, 71 N.Y.U. L. Rev. 296, 321 n.74 (1996) (describing a class action "in which some 60 firms are reportedly involved").

[29] *See* Yahoo! Finance, *Anthropic (ANTH.PVT) – Summary*, https://finance.yahoo.com/quote/ANTH.PVT/ (indicating enterprise valuation of $241 billion for Defendant Anthropic as of November 18, 2025).

Defendant's business meant that Class Counsel litigated against **_both_** a well-funded adversary **_and_** yet one plausibly unable to satisfy any large judgment against it – a uniquely double-sided risk.

- **_Powerful Defense firms._** Anthropic exerted its financial strength by retaining high-priced counsel from three enormous law firms: Arnold & Porter Kaye Scholer LLP is one of the largest, most expensive, and well-respected firms in the country;[30] the same is true of Cooley LLP[31] and Morrison & Foerster LLP.[32] Lead Counsel's risk was increased significantly by the skill, depth, resources, and tenacity of the defense firms they faced.

- **_Opportunity costs._** In a normal class action lawsuit, it is fair to conclude that class counsel's devotion of time and resources prevents them from pursuing simpler, bread-and-butter, actions, which might have a higher expectation of settlement and hence ease of recovery of a contingent fee. That statement applies with particular force here, as Lieff Cabraser and Susman Godfrey are two of the nation's leading class action firms, with significant opportunities elsewhere; indeed, Susman Godfrey regularly handles cases for paying clients without any contingent risk.

29. These nine points demonstrate what seems incontestable: Class Counsel took large risks in litigating this case from inception to judgment. Like any investor that takes large risks, these attorneys are entitled to a return on their investment, so long as the risks they took paid off. I will now turn to that analysis.

30. At least eight components of this case's outcome speak to the results Class Counsel obtained in this matter.

---

[30] _See_ Vault, _Arnold & Porter Kaye Scholer Company Profile_, https://vault.com/company-profiles/law/arnold-porter, (ranking Arnold & Porter as the 33rd most prestigious law firm in the United States and noting that Arnold & Porter employs over 1,000 attorneys).

[31] _See_ Vault, _2026 Vault Law 100_, https://legacy.vault.com/best-companies-to-work-for/law/top-100-law-firms-rankings (ranking Cooley as the 22nd most prestigious law firm in the United States).

[32] _See_ Vault, _Morrison & Foerster Company Profile_, https://vault.com/company-profiles/law/morrison-foerster-llp, (ranking Morrison & Foerster as the 24th most prestigious firm in the United States and noting that the firm employs over 1,000 attorneys).

- ***Significant legal victory***. The class certification and summary judgment rulings in this matter are landmark achievements in this novel area of law. As discussed below (*see infra* ¶31), given the proliferation of AI-related copyright cases, the Court's summary judgment ruling will have a significant impact on all such litigation throughout the United States. Class Counsel's success on a piece of that motion has accordingly generated important law in a manner many class actions do not and indeed is likely to serve as a template strategy for AI litigation elsewhere.

- ***Significant monetary relief***. Put simply, $1.5 billion is an extraordinary sum of money. This is likely the largest copyright class action in history and among the largest class action outcomes of any kind. And of course the common fund is entirely non-reversionary: the Defendant will be disgorged this full amount.

- ***Significant non-monetary relief***. The Settlement requires the Defendant to "destroy all the original files of works torrented/downloaded from Library Genesis or Pirate Library Mirror, and any copies that originate from the torrented copies," subject to certain legal preservation obligations.[33] The Settlement also requires the Defendant to certify that "neither the LibGen or PiLiMi datasets, nor any portions of those datasets, were in the training corpus of any of its commercially released large language models."[34]

- ***Relief for 100% of the class.*** All works in the Class are eligible for relief and each is treated similarly, receiving a *pro rata* amount of the Settlement Fund.

- ***Cash relief***. Class actions sometimes end in settlements that return class members little direct compensation, occasionally nothing more concrete than coupons or recoveries going exclusively to third party *cy pres* recipients.[35] The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements to be on the lookout for settlements "granting class members illusory nonmonetary benefits, such as discount coupons for more of defendants' product. . . ."[36] The settlement secured in this case will deliver cash compensation directly to class members, a form of recovery that speaks highly of the case's outcome.

- ***Meaningful per-Class Member relief***. Not only does this settlement provide cash payments to class members, but the payments are significant when compared to the

---

[33] Dkt. 363-3 ¶ 2.2.

[34] Dkt. 363-3 ¶ 3.1.

[35] *See Newberg and Rubenstein on Class Actions*, *supra* note 2, at §§ 12:7 to 12:13 (on nonpecuniary damages).

[36] *Manual for Complex Litigation (Fourth)* § 21.61 (2004).

estimated recoverable damages. The Copyright Act enables $750 damages per violation, reduced to $200 for innocent violations. Here, each work will receive at least $3,000, four times the former number and 15 times the latter.

- **_Straightforward claims process._** Class actions often end with settlements requiring class members to file claims. The claim-filing process may often dissuade class members from making the effort, particularly in small-claim situations. The _Manual for Complex Litigation_ therefore warns federal judges overseeing class action settlements to be on the lookout for settlements "imposing such strict eligibility conditions or cumbersome claims procedures that many members will be unlikely to claim benefits . . . ."[37] Here, the claims process is so straightforward that thousands of Class Members already have filed claims; moreover, the extensive efforts put into generating the works list will enable pre-populated claims forms. Indeed, some class members may even receive a check even without filing a Claim Form if they are listed as a claimant by another rightsholder.

- **_No hint of collusion._** A critical concern in class suits is that the class's agents might be tempted to sell out the class by agreeing to a low recovery in return for a high fee. The _Manual for Complex Litigation_ therefore warns federal judges overseeing class action settlements that "[a]ctive judicial oversight of the settlement process [is necessary to] prevent collusion between counsel for the class and defendant and [to] minimize the potential for unfair settlements."[38] Here, there is not a hint of collusion: the parties engaged in significant adversarial litigation, including summary judgment and class certification motions and the exchange of key discovery information, followed by a contested mediation before a well-respected former federal judge. There is no evidence whatsoever of Class Counsel selling out the Class's interest – indeed, Class Counsel's continued commitment to seeing through the complex claims resolution process in this case is strong and ongoing evidence to the contrary.

31. Finally, beyond these eight case-specific bullet points lies an extraordinary achievement of Class Counsel in this matter: they have developed the framework for AI cases in the United States that is likely to be applied in numerous billion-dollar cases for many years hereafter. This Court pushed the parties to efficiently tee up the key legal issues engendered by

---

[37] _Manual for Complex Litigation (Fourth)_ § 21.61 (2004).

[38] _Manual for Complex Litigation (Fourth)_ § 22.923 (2004) (cleaned up).

training large language models on copyrighted materials, the Court then undertook a rigorous analysis of those issues rendering a Solomonic decision that enabled a landmark settlement, the Plymouth Rock of AI litigation.  In the course of hitting that mark, the Court certified a works class in a particularly careful manner, sensitive to the dual legal and beneficial ownership of many copyrighted materials.  Now in implementing the settlement, the parties and the Court have wrestled to the ground how to effectuate matters like notice and claims administration in this complex but critically important setting.  There are roughly 50 AI-related class action lawsuits in the United States at present,[39] many against the largest tech companies in the country.  It would not be at all surprising if many of those cases now followed the model this Court has generated in this case, with the remarkable assistance of these Class Counsel.  Class Counsel are properly rewarded from a common fund for the services they provided to their present clients.  But it is not at all inappropriate to acknowledge the positive externalities of their actions,[40] given that they are serving as "private attorneys general"[41] – and I know few cases that have generated as significant positive externalities as the AI litigation template that has emerged from this matter.

32.    These nine risks and nine results show that Class Counsel took significant risks in investing substantial capital and labor in highly adversarial litigation without the promise of any

---

[39] *See* Chat GPT Is Eating the World, *Updated map of all 42 copyright suits v. AI companies (Jun. 12, 2025)*, https://chatgptiseatingtheworld.com/2025/06/12/updated-map-of-all-42-copyright-suits-v-ai-companies-jun-12-2025/.

[40] William B. Rubenstein, *Why Enable Litigation?: A Positive Externalities Theory of the Small Claims Class Action*, 74 UMKC L. Rev. 709 (2006).

[41] *See* William B. Rubenstein, *On What A "Private Attorney General" Is – and Why It Matters*, 57 Vand. L. Rev. 2129 (2004).

easy return on that investment, and Class Counsel shouldered that risk superbly, prevailing at each critical juncture and generating an enormously high return for the client class.

**(B)**
***The Proposed Multiplier is at the High End of Available Data,***
***But Those Data Reflect Certain Limitations***

33.    The available empirical evidence shows that the average percentage fee award generally embodies a positive lodestar multiplier.  In five studies with pertinent data, the average lodestar multiplier ranged from 1.42 to 3.89,[42] meaning that, in the average case, the percentage-of-the-fund method yielded an award to class counsel of about 2 times their normal hourly rates.

34.    All of the empirical studies with pertinent data also show that multipliers tend to rise as the size of the class's fund increases,[43] with the average multiplier in these larger-fund cases across the four studies with data being 3.20.   The "larger funds" in these studies started at modest

---

[42] *Newberg and Rubenstein on Class Actions*, *supra* note 2, at § 15:89 (citing William B. Rubenstein et al., *Class Action Fee Awards 2006–2011: An Empirical Study* tbl.14) (1.42 average multiplier in 790 cases from 2006-2011); Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 965 tbl.12 (2017) [hereinafter "Eisenberg & Miller III"] (1.48 average multiplier in 294 cases from 2009-2013); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 833-34 tbl.9 (2010) (1.65 average multiplier in 204 cases from 2006-2007); Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248, 272 tbl.14 (2010) [hereinafter "Eisenberg & Miller II"] (1.81 average multiplier in 368 cases from 1993-2008); Stuart J. Logan, Beverly C. Moore & Jack Moshman, *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep. 167, 167 (2003) [hereinafter "Logan, Moore & Moshman"] (3.89 average multiplier in 1,120 cases from 1973-2003).

[43] *See* Eisenberg & Miller III, *supra* note 42, at 967 tbl.13 (2.72 average multiplier in 35 cases over $67.5 million); Eisenberg & Miller II, *supra* note 42, at 274 tbl.15 (3.18 average multiplier in 40 cases over $175.5 million); *Newberg and Rubenstein on Class Actions*, *supra* note 2, at § 15:89 (2.39 average multiplier in 89 cases over $44.6 million); Logan, Moore & Moshman, *supra* note 42, at 167 (4.5 average multiplier in 64 cases over $100 million).

levels (two below $100 million, one at $100 million, and the fourth at $175.5 million), implying that isolation of multipliers in a set of larger funds alone might yield an average multiplier higher than 3.2.

35.     While the multiplier sought here is higher than the average multiplier in these studies' larger fund cases, it is not a complete outlier.  In appropriate circumstances, courts have approved percentage awards embodying lodestar multipliers at or above the range sought here.  In Exhibit C, I provide a list of 94 cases with multipliers of 4 or greater, 60 of which are cases with multipliers of 5 or greater.  The reported cases on this list include cases approving multipliers as high as 19 and encompass 3 cases at or above the current (13.45) level of Class Counsel's multiplier and 7 above the (9.32) level Class Counsel project based on estimated future hours.  This list is not meant to be either exhaustive or representative of all multipliers that courts have approved.  Rather, it demonstrates that courts have approved percentage awards that embody multipliers consistent with the multiplier sought here in appropriate circumstances.

36.     Moreover, while the multiplier sought here is at the higher end of what courts have approved, that conclusion is likely exaggerated given at least three limitations in the empirical data on multipliers:

- *First,* there is no publicly-available empirical data about multipliers in the vast majority of contingent fee matters – individual tort cases – as the fees in these cases arise out of private contracts between attorney and client and need no court approval.  However, many large-scale tort practices settle large volumes of cases with insurance companies, with the law firms undertaking little or no legal work prior to the settlement.[44]  As tort attorneys in these matters tend to take 30-40% of

---

[44] *See* Nora Freeman Engstrom, *Run-of-the-Mill Justice*, 22 Geo. J. Leg. Ethics 1485, 1526 (2009) (describing "settlement mills" and explaining that in one large settlement mill, "claims usually settled after only four-to-six hours of employee (not necessarily attorney) effort," while at another, "'regular run-of-the-mill cases' required only two-to-three hours of attorney time").

the recoveries, their lodestar multipliers are likely very high. So too, in many mass tort MDLs, lawyers have large inventories of contingent fee cases, but perform little actual legal work as most is undertaken by a central plaintiffs' steering committee; federal judges have expressed such concern about the resulting profits to the individual tort lawyers in some of these MDLs that they have often capped the amounts these lawyers are permitted to charge their clients in these cases.[45]

- *Second,* the empirical evidence of multipliers in class action cases is similarly limited as courts undertake a lodestar cross-check in only about half of all cases.[46]

- *Third*, it is likely that lawyers are more prone to propose, and therefore courts to undertake, a cross-check in those cases in which multipliers are low, creating a selection bias problem with the available data. For instance, many courts have held that "a lodestar cross check need not be performed where plaintiff's counsel achieves a significant result through an early settlement"[47] – in other words, in cases where a multiplier is likely to be significant.

Given these limitations in the available multiplier data, the multiplier sought here is likely a more normal data point across the full range of contingent fee cases than it may appear.

---

[45] *See In re Nat'l Football League Players' Concussion*, 2018 WL 1658808, at *4 (adopting report of court-appointed expert (Professor Rubenstein) recommending 22% fee cap and summarizing prior court approaches to fee caps).

[46] *Newberg and Rubenstein on Class Actions*, *supra* note 2, at § 15:89 (reporting that courts performed a cross-check that in 53% of the percentage cases in one six-year (2003–2008) study and in 42% of cases in another five-year (2009–2013) study).

[47] *See Rankin v. Am. Greetings, Inc*., No. 2:10-CV-01831-GGH, 2011 WL 13239039, at *2 (E.D. Cal. July 6, 2011) ("Furthermore, in accordance with Ninth Circuit precedents, district courts within the Ninth Circuit have recognized that a lodestar cross check need not be performed where plaintiff's counsel achieves a significant result through an early settlement."); *Glass v. UBS Fin. Servs., Inc*., No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) ("Under the circumstances presented here, where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check."); *see also Lopez v. Youngblood,* No. CV-F-07-0474 DLB, 2011 WL 10483569, at *14 (E.D. Cal. Sept. 2, 2011) ("A lodestar cross-check is not required in this circuit, and in a case such as this, is not a useful reference point.") (citing *Glass v. UBS Fin. Servs., Inc*., No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007)).

**(C)**

*Over-reliance On the Multiplier Alone May Be Unwarranted*

37.    The Ninth Circuit – which handles the greatest number of class actions – has long held that a lodestar cross-check "may provide a useful perspective on the reasonableness of a given percentage award,"[48] and "encouraged"[49] District Courts to undertake one, but the Circuit has "consistently refused to adopt a crosscheck requirement,"[50] and in 2020, the Circuit again refused to "do so once more."[51]

38.    The implication of that statement is that there are situations in which the lodestar approach – and thus a lodestar cross-check – may be unhelpful.  Indeed, courts have found the tool inapplicable or unnecessary in certain situations.  *First*, if class counsel's achievement encompassed significant non-litigation time, courts have held that a lodestar cross-check "would not be valuable tool to help assess"[52] the reasonableness of the fee request.  *Second*, as just noted, where class counsel quickly achieves a strong settlement, courts have sometimes eschewed a

---

[48] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

[49] *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011) ("[W]e have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method.").

[50] *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020).

[51] *Id.*

[52] *See, e.g., Kater v. Churchill Downs Inc.*, No. 15-CV-00612-RSL, 2021 WL 511203, at *2 (W.D. Wash. Feb. 11, 2021) ("Given the unique circumstances presented by this litigation, in particular the significant amount of non-legal work that had to be performed to turn back industry efforts to obtain protective legislation and to prevent participation in this lawsuit, the Court concludes that a lodestar cross-check would not be a valuable tool to help assess the reasonableness of Class Counsel's fee request."); *Wilson v. Playtika Ltd.*, No. 18-CV-5277-RSL, 2021 WL 512230, at *2 (W.D. Wash. Feb. 11, 2021) (same); *Wilson v. Huuuge, Inc.*, No. 18-CV-5276-RSL, 2021 WL 512229, at *2 (W.D. Wash. Feb. 11, 2021) (same).

lodestar cross-check, likely on the premise that applying one in those circumstances would incentivize counsel to continue the case (so as to run up their lodestar and lower their multiplier) despite their efficient success.[53]  *Third*, where analysis of qualitative factors provides strong support for the percentage award, some courts have held that a cross-check is unnecessary.[54]  *Fourth*, if a settlement does not stand alone but is one of a group of cases, it is often difficult to attribute lodestar to any one specific case rendering application of a lodestar cross-check problematic.[55]  *Fifth,* courts have noted that the more involved they are in overseeing a case – as

---

[53] *See supra* note 47.

[54] *See, e.g.*, *Ahlman v. Barnes*, No. SACV20835JGBSHKX, 2022 WL 16957837, at *5 (C.D. Cal. Sept. 12, 2022) (noting fees were far lower than anticipated and concluding that "[t]he court is satisfied that a lodestar 'cross-check' is not required"); *Lopez v. First Student, Inc.*, No. EDCV191669JGBSHKX, 2022 WL 618973, at *6 (C.D. Cal. Feb. 8, 2022) (approving award of 30% after reviewing qualitative factors and stating, "[t]he Court is satisfied that a lodestar 'cross-check' is not required"); *Odom v. ECA Mktg., Inc.*, No. EDCV20851JGBSHKX, 2021 WL 7185059, at *6 (C.D. Cal. Dec. 22, 2021) (similar); *Hirsh v. WW N. Am. Holdings, Inc.*, No. 219CV9782DSFAFMX, 2021 WL 4622394, at *1 (C.D. Cal. Feb. 12, 2021) (similar); *Ahmed v. HSBC BANK USA*, No. EDCV152057FMOSPX, 2019 WL 13027266, at *6 (C.D. Cal. Dec. 30, 2019) (*"*In short, consideration of the foregoing factors supports class counsel's request for attorney's fees in the amount of 25% of the settlement fund, or $600,000. The court, therefore, is satisfied that a lodestar 'cross-check' is not required."); *Galarza v. Kloeckner Metals Corp.*, No. CV174910FMOPJWX, 2019 WL 12872965, at *6 (C.D. Cal. Nov. 12, 2019) (same); *Moodie v. Maxim Healthcare Servs., Inc.*, No. CV 14-3471 FMO (ASX), 2019 WL 13108327, at *6 (C.D. Cal. Nov. 12, 2019) (same); *Bendon v. DTG Operations, Inc.*, No. EDCV160861FMOAGRX, 2018 WL 4976511, at *8 (C.D. Cal. Aug. 22, 2018), *judgment entered,* No. EDCV160861FMOAGRX, 2018 WL 4959047 (C.D. Cal. Aug. 22, 2018); *Wannemacher v. Carrington Mortg. Servs., LLC*, No. SACV122016FMOANX, 2014 WL 12586117, at *10 (C.D. Cal. Dec. 22, 2014) (similar); *Bautista v. Harvest Mgmt. Sub LLC*, No. CV121004FMOCWX, 2014 WL 12579822, at *13 (C.D. Cal. July 14, 2014) (similar); *Ladore v. Ecolab, Inc.*, No. CV 11-9386 FMO (JCX), 2013 WL 12246339, at *11 (C.D. Cal. Nov. 12, 2013) (similar).

[55] *See, e.g.*, *Bendixen v. Sprint Commc'ns Co. L.P.*, No. 3:11-CV-05274-RBL, 2013 WL 2949569, at *3 (W.D. Wash. June 14, 2013) (noting, in a multiple-case situation, although undertaking a cross-check on a global basis, that: "In terms of a lodestar crosscheck, the overlapping nature of fiber-optic-cable right-of-way discovery, motions practice, research, litigation, and settlement

this Court has been in this matter – the less importance attaches to a cross-check,[56] seemingly on the theory that the court's oversight is itself a cross-check.  Finally, courts are judicious in their application of a lodestar cross-check, as misapplication can lead to reversal and/or prolong fee litigation unnecessarily;[57] for example, the Ninth Circuit recently reversed a district court decision for relying (in large part) on the cross-check to limit a fee award below the benchmark in one case,[58] and in another, the Circuit noted that a district court had (harmlessly) erred in applying the cross-check.[59]

       39.    There are also good policy reasons for not over-relying on the lodestar cross-check alone:

---

efforts across the country for more than a decade . . . have prevented Settlement Class Counsel from segregating their fees and expenses into a 'Washington-only' category or similar categories for other states.").

[56] *See, e.g., Andrews v. Plains All Am. Pipeline L.P.*, No. CV154113PSGJEMX, 2022 WL 4453864, at *2 (C.D. Cal. Sept. 20, 2022) ("Due to the exceptional circumstances of this case and the Court's extensive involvement in supervising the last seven years of litigation, the Court diverts from its usual practice and finds it unnecessary to cross-check the reasonableness of the requested award using the lodestar method."); *see also Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608 JCS, 2023 WL 2699972, at *20 (N.D. Cal. Mar. 29, 2023), *aff'd sub nom. Senne v. Concepcion*, No. 23-15632, 2023 WL 4824938 (9th Cir. June 28, 2023) (noting that "[a]rguably, a lodestar cross-check is not required here because the Court has been extensively involved in supervising this litigation and has observed first-hand the monumental effort Class Counsel has put into this case" but performing a "rough calculation" nonetheless).

[57] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.").

[58] *Reyes v. Experian Info. Sols., Inc.*, 856 F. App'x 108, 111 (9th Cir. 2021).

[59] *In re Wells Fargo & Co. S'holder Derivative Litig.*, 845 F. App'x 563, 565 n.3 (9th Cir. 2021) (stating that "the district court erred when performing a cross-check for reasonableness using the lodestar method because it summarily dismissed objections to the rates of staff attorneys without analysis or reasoning" but finding that even if the objection had been accepted, and the multiplier adjusted, the amount awarded would not have been unreasonable).

- *First,* the high multiplier here reflects counsel's efficiency in prosecuting the case vigorously and competently, while settling the case for an extraordinary recovery.[60] A strong, but efficient, settlement poses a policy dilemma for courts awarding fees. If the Court lowers the requested fee because of the large multiplier, it thereby generates perverse incentives for future cases: counsel finding themselves with excellent class recoveries *too early in a case* will simply prolong the litigation unnecessarily until their lodestar reaches a level that disciplines the multiplier into a reasonable range. As just explained above,[61] for this reason, courts in this situation often eschew the cross-check as an unhelpful metric in measuring the fee award. This Court could reach a similar conclusion – to not *over-rely* on the cross-check in these circumstances – even after *undertaking* the cross-check analysis.

- *Second,* outside the single arena of class action fee awards, courts have studiously avoided looking at a lawyer's profit as a measuring stick of the reasonableness of the price of an attorney's services, finding that such an inquiry opens a Pandora's box.[62]

- Indeed, *third*, a lodestar cross-check may make the most sense when class members are paying a very high price for legal services – a third, or 40%, of their recovery to class counsel – but it recedes in importance as the costs of legal services decrease. When prices are high, they beg the question of whether that exorbitant cost reflects real work or excess profit. As prices come down to, or below, the norm, fears of overpayment recede and policy concerns about over-relying on profit as the decisive factor may outweigh them.

---

[60] *See supra* ¶ 32.

[61] *See supra* text accompanying note 53.

[62] *See Shaffer v. Superior Ct.*, 33 Cal. App. 4th 993, 1001, 1003 (1995) ("If a law firm's profit margin were relevant to the analysis of the conscionability of its fees, a veritable Pandora's Box of questions and problems would be opened. For example, how are we to define 'profit margin.' Is it gross revenues minus total costs? If so, are those numbers measured on an accrual basis, a cost basis, or some other basis? Are they to be evaluated in absolute dollar terms or in terms of a percentage of its costs? Is every single item of cost incurred by a firm (e.g., both capital expenditures and costs of operations) to be part of the calculation? . . . Examination of profits would penalize law firms which are able to produce at costs substantially less than their competitors. It would unfairly penalize the efficient and reward the inefficient. Additionally, it would place courts in the position of supervising attorney's fees on the basis of individual profit margins instead of the going market price for given services. This would be . . . bad public policy.").

40.     In my scholarship, I am a strong proponent of a lodestar cross-check,[63] and am generally skeptical about arguments against using it,[64] but in the preceding sections I have identified potential data and policy shortcomings of the cross-check.  I want to be clear that I am in no way disclaiming my belief that the cross-check remains the single most valuable tool for assessing whether a fee award would constitute a windfall – unlike comparing percentages across cases, the cross-check singularly identifies the profit (over hourly rates) that class counsel seek and hence speaks directly to the windfall issue.  However, the multiplier itself is just a number and assessing whether it is, in fact, a windfall is a nuanced undertaking requiring comparison to other multipliers (without complete data) and, more importantly, undertaking a true qualitative assessment of the achievements of the case.  Here, that inquiry reveals very successful litigation, against significant odds, of immense importance going forward.

41.     Thus, in my opinion, there is significant evidence in the record of this case to support the conclusion that Class Counsel have earned a significant multiplier.

* * *

---

[63] *See Newberg and Rubenstein on Class Actions*, *supra* note 2, at § 15:86.

[64] I have argued that these concerns are somewhat exaggerated and can be minimized, see *Newberg and Rubenstein on Class Actions*, *supra* note 2, at § 15:86, a position the California Supreme Court has endorsed.  *See Laffitte v. Robert Half Internat. Inc*., 376 P.3d 672, 687 (Cal. 2016) ("We tend to agree with the amicus curiae brief of Professor William B. Rubenstein that these concerns [about the lodestar cross-check] are likely overstated and the benefits of having the lodestar cross-check available as a tool outweigh the problems its use could cause in individual cases.").  Regardless, this core debate about the efficacy of a cross-check recedes in relevance in this case for the reasons outlined in this textual paragraph.

42.    I have testified that:

- Class Counsel's lodestar reflects a remarkably low number of hours for a matter of this magnitude, showing great efficiency; and,

- Class Counsel are entitled to a significant lodestar multiplier given the risks they undertook and the unparalleled results they achieved for the class.

December 3, 2025

_____
William B. Rubenstein

# EXHIBIT A

`

# PROFESSOR WILLIAM B. RUBENSTEIN

Harvard Law School - AR323                                    (617) 496-7320
1545 Massachusetts Avenue                          rubenstein@law.harvard.edu
Cambridge, MA 02138

### ACADEMIC EMPLOYMENT

HARVARD LAW SCHOOL, CAMBRIDGE MA
   Bruce Bromley Professor of Law                              2018-present
   Sidley Austin Professor of Law                              2011-2018
   Professor of Law                                            2007-2011
   Bruce Bromley Visiting Professor of Law                     2006-2007
   Visiting Professor of Law                         2003-2004, 2005-2006
   Lecturer in Law                                             1990-1996
        *Courses*:      Civil Procedure; Class Action Law; Remedies; Legal Profession
        *Awards*:       2012 Albert M. Sacks-Paul A. Freund Award for Teaching Excellence
        *Membership*:   American Law Institute; American Bar Foundation Fellow

UCLA SCHOOL OF LAW, LOS ANGELES CA
   Professor of Law                                            2002-2007
   Acting Professor of Law                                     1997-2002
        *Courses*:      Civil Procedure; Complex Litigation; Remedies
        *Awards*:       2002 Rutter Award for Excellence in Teaching
                        Top 20 California Lawyers Under 40, *Calif. Law Business* (2000)

STANFORD LAW SCHOOL, STANFORD CA
   Acting Associate Professor of Law                           1995-1997
        *Courses*:      Civil Procedure; Federal Litigation
        *Awards*:       1997 John Bingham Hurlbut Award for Excellence in Teaching

YALE LAW SCHOOL, NEW HAVEN CT
   Lecturer in Law                                             1994, 1995

BENJAMIN N. CARDOZO SCHOOL OF LAW, NEW YORK NY
   Visiting Professor                                          Summer 2005

### LITIGATION-RELATED EMPLOYMENT

AMERICAN CIVIL LIBERTIES UNION, NATIONAL OFFICE, NEW YORK NY
   Project Director and Staff Counsel                          1987-1995
   -Litigated impact cases in federal and state courts throughout the United States.
   -Supervised a staff of attorneys at the national office, oversaw work of ACLU attorneys
   around the country and coordinated work with private cooperating counsel nationwide.
   -Significant experience in complex litigation practice and procedural issues; appellate
   litigation; litigation coordination, planning and oversight.

HON. STANLEY SPORKIN, U.S. DISTRICT COURT, WASHINGTON DC
   Law Clerk                                                   1986-87

PUBLIC CITIZEN LITIGATION GROUP, WASHINGTON DC
   Intern                                                      Summer 1985

EDUCATION

HARVARD LAW SCHOOL, CAMBRIDGE MA
       J.D., 1986, *magna cum laude*

YALE COLLEGE, NEW HAVEN CT
       B.A., 1982, *magna cum laude*
              Editor-in-Chief, YALE DAILY NEWS

SELECTED COMPLEX LITIGATION EXPERIENCE

*Professional Service and Highlighted Activities*

◊   *Author,* NEWBERG AND RUBENSTEIN ON CLASS ACTIONS (6th ed. 2022); NEWBERG ON CLASS ACTIONS (sole author since 2008, sole author of entirely re-written Fifth Edition (2011-2019))

◊   *Speaker,* Judicial Panel on Multidistrict Litigation, Multidistrict Litigation (MDL) Transferee Judges Conference, Palm Beach, Florida (provided presentation to MDL judges on recent developments in class action law and related topics (2010, 2011, 2013-2019)

◊   *Panelist,* Federal Judicial Center, *Managing Multidistrict Litigation and Other Complex Litigation Workshop* (for federal judges) (March 15, 2018)

◊   *Amicus curiae,* authored *amicus* brief in United States Supreme Court on proper approach to standing in class action lawsuits (*Labcorp, v. Davis*, Case No. 24-304 (2025))

◊   *Amicus curiae,* authored *amicus* brief on proper approach to incentive awards in class action lawsuits in conjunction with motion for rehearing *en banc* in the United States Court of Appeals for the Eleventh Circuit (*Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020))

◊   *Amicus curiae,* authored *amicus* brief in United States Supreme Court on proper approach to *cy pres* award in class action lawsuits (*Frank v. Gaos*, 139 S. Ct. 1041 (2019))

◊   *Amicus curiae,* authored *amicus* brief in California Supreme Court on proper approach to attorney's fees in common fund cases (*Laffitte v. Robert Half Int'l Inc.*, 376 P.3d 672, 687 (Cal. 2016) (noting reliance on *amicus* brief))

◊   *Amicus curiae,* authored *amicus* brief in the United States Supreme Court filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011))

◊   *Adviser,* American Law Institute, *Project on the Principles of the Law of Aggregate Litigation*, Philadelphia, Pennsylvania

◊   *Co-Chair,* ABA Litigation Section, Mass Torts Committee, Class Action Sub-Committee, 2007

◊   *Planning Committee,* American Bar Association, Annual National Institute on Class Actions

Conference, 2006, 2007

◊    *"Expert's Corner"* (Monthly Column)*, Class Action Attorney Fee Digest,* 2007-2011

### *Judicial Appointments*

◊    *Co-Mediator.*    Appointed by the United States District Court for the Eastern District of Pennsylvania to help mediate a complex attorney's fees issue (*In re National Football League Players' Concussion Injury Litigation*, Civil Action No. 2:12-md-02323 (E.D. Pa. June-September 2022))

◊    *Meditator.*    Appointed by the United States District Court for the Southern District of New York to mediate a set of complex issues in civil rights class action (*Grottano v. City of New York*, Civil Action No. 15-cv-9242 (RMB) (May 2020-January 2021))

◊    *Expert consultant.*    Appointed by the United States District Court for the Northern District of Ohio, and Special Master, as an expert consultant on class certification and attorney's fees issues in complex multidistrict litigation (*National Prescription Opiate Litigation,* MDL 2804, Civil Action No. 1:17-md-2804 (N.D. Ohio Aug. 13, 2018; June 29, 2019; March 10, 2020))

◊    *Expert witness.*    Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation, with result that the Court adopted recommendations (*In re National Football League Players' Concussion Injury Litigation*, 2018 WL 1658808 (E.D. Pa. April 5, 2018))

◊    *Appellate counsel.*    Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *DeValerio v. Olinski*, 673 F. App'x 87, 90 (2d Cir. 2016))

### *Expert Witness*

◊    Submitted expert witness declaration on relevance of ethics allegations to class counsel's adequacy to represent class (*Corzo v. Brown*, Case No. 1:22-cv-00125 (N.D. Ill. 2025))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*In re Zoom Securities Litigation,* Case No. 3:20-cv-02353-JD (N.D. Cal. 2025))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Loop, LLC v. CDK Global, LLC,* Case No. 3:24-cv-00571-jdp (W.D. Wisc. 2025))

◊    Submitted expert witness declaration on ethics concerns arising out of Plaintiffs' Steering Committee member in one piece of MDL representing opt-out plaintiffs in another (*In re: Blue Cross Blue Shield Antitrust Litigation,* MDL 2406, Case No. 2:13-cv-20000-RDP (N.D. Ala. 2025))

◊    Submitted expert witness declaration and scheduled to testify at trial concerning valuation of class action settlement (*In the Matter of the Petition for the Allocation of Aggregate Settlement Amount Between the Individual Settlement and the Class Settlement of the Maui Fire Cases,* Case No. S.P. No.

2CSP-24-0000049 (Hawai'i Cir. Ct., Second Circuit, 2024-2025))

◊    Submitted two expert witness declarations concerning reasonableness of proposed settlement in nationwide insurance class action, in light of competing litigation (*Glover v. Connecticut General Life Insurance Co., et al.,* Civil Action No. 3:16-cv-00827-MPS (D. Conn. 2024))

◊    Submitted expert witness declaration concerning ethics of class counsel and other objections to proposed complex class action settlement (*In re National Prescription Opiate Litigation (Third Party Payor Actions),* Case No. 1:17-md-02804-DAP (N.D. Ohio 2024))

◊    Submitted expert witness declaration and deposed as to class certification requirements (*Gateway Royalty LLC v. EAP Ohio LLC,* Case No. 5:20-cv-02813 (N.D. Ohio 2024))

◊    Submitted expert witness declaration on history and equity of proposed allocation system in complex class action settlement (*In re National Prescription Opiate Litigation (Third Party Payor Actions),* Case No. 1:17-md-02804-DAP (N.D. Ohio 2024))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Drazen v. GoDaddy.com,* Civil Action No. 1:19-cv-00563-KD-B (S.D. Ala. 2024))

◊    Retained as an expert witness concerning reasonableness of attorney's fee request (*In re Apple Inc. Securities Litigation*, Case No. 4:19-cv-02033-YGR (N.D. Cal. 2024))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Brown v. Google LLC,* Civil Action No. 4:20-cv-03664 (N.D. Cal. 2024))

◊    Submitted expert witness declaration concerning proper approach to – and reasonableness of – attorney's fee request (*Parris v. Meta Platforms, Inc.,* Case No. 2023LA000672 (Illinois Circuit Court, DuPage Cty., 2024))

◊    Submitted expert witness declaration concerning proper approach to – and reasonableness of – attorney's fee request (*Barr v. SelectBlinds LLC,* Civil Action No. 2:22-cv-08326-SPG-PD (C.D. Cal. 2023))

◊    Submitted expert witness declaration on history and equity of proposed allocation system in complex class action settlement (*In re McKinsey & Co. Inc. National Prescription Opiate Consultant Litigation,* Case No. 3:21-md-02996-CRB (N.D. Cal. 2023))

◊    Submitted expert witness declaration concerning reasonableness of proposed hourly rates used in lodestar cross-check submission (*In re National Veterans Legal Services Program, et al. v. United States,* Case No. 1:16-CV-00745-PLF (D. D.C. 2023))

◊    Submitted expert witness declarations concerning reasonableness of – and proper approach to – attorney's fees in context of issue class action judgment (*James, et al., v. PacifiCorp, et al.,* Civil Action No. 20CV33885 (Oregon Circuit Court, Multnomah Cty. 2023))

◊    Retained as an expert witness concerning reasonableness of attorney's fee request (*In re Wells Fargo & Company Securities Litigation*, Case No. 1:20-cv-04494-GHW (S.D.N.Y. 2023))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*In re Facebook, Inc. Consumer Privacy User Profile Litigation,* Civil Action No. 3:18-cv-02843-VC (N.D. Cal. 2023))

◊    Submitted expert witness declaration concerning constitutionality of proposed procedures for resolving aggregate claims within a bankruptcy proceeding (*In re PG&E Corporation and Pacific Gas and Electric Company,* Bankruptcy Case No. 19-30088 (N.D. Cal. Bankrpt. 2023))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Health Republic Insurance Company v. United States,* Civil Action No. 1:16-cv-0259C (Ct. Fed. Cl. 2023))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Benson, et al. v. DoubleDown Interactive, LLC, et al.,* Civil Action No. 2:18-cv-00525 (W.D. Wash. 2023))

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fees request (*In re Twitter Inc. Securities Litigation,* Case No. 4:16-cv-05314 (N.D. Cal. October 13, 2022))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Ferrando v. Zynga Inc.,* Civil Action No. 2:22-cv-00214 (W.D. Wash. 2022))

◊    Retained as an expert witness concerning fee structures in complex mass/class litigation (*In re Upstream Addicks and Barker (Texas) Flood-Control Reservoirs,* Sub-Master Docket No. 17-9001L, (Ct. of Federal Claims, 2022-)

◊    Submitted an expert witness declaration concerning reasonableness of proposed settlement in nationwide securities class action, in light of competing litigation (*In re Lyft, Inc. Securities Litigation,* Case No. 4:19-cv-02690 (N.D. Cal. August 19, 2022))

◊    Submitted an expert witness declaration concerning reasonableness of common benefit attorney's fee request (*In re: Zetia (Ezetimibe) Antitrust Litigation,* MDL No. 2836, 2:18-md-2836 (E.D. Va. July 12, 2022))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Reed v. Scientific Games Corp.,* Civil Action No. 2:18-cv-00565 (W.D. Wash. 2022))

◊    Submitted an expert witness declaration concerning reasonableness of proposed settlement in nationwide securities class action, in light of competing litigation (*In re Micro Focus International PLC Securities Litigation,* Master File No. 1:18-cv-06763 (S.D.N.Y., May 4, 2022))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Americredit Financial Services, Inc., d/b/a/ GM Financial v. Bell,* No. 15SL-AC24506-01 (Twenty-First Judicial Circuit Court, St. Louis County, Missouri, March 13, 2022))

◊    Submitted an expert witness declaration concerning reasonableness of common benefit attorney's fee request (*In re: Marjory Stoneman Douglas High School Shooting FTCA Litigation,* Case No. 0:18-cv-62758 (S.D. Fla. February 7, 2022))

◊    Expert witness declaration concerning expected claiming rates in class action submitted to court (*In re: Tiktok, Inc., Consumer Privacy Litigation*, No. 1:20-cv-04699 (N.D. Ill. Jan. 24, 2022))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc*., No. 12-CV-0256 (LAK), 2021 WL 2453972 (S.D.N.Y. June 15, 2021))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Kater v. Churchill Downs,* Civil Action No. 2:15-cv-00612 (W.D. Wash. 2020))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Wilson v. Playtika, LTD,* Civil Action No. 3:18-cv-05277 (W.D. Wash. 2020))

◊    Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Wilson v. Huuuge,* Civil Action No. 3:18-cv-005276 (W.D. Wash. 2020))

◊    Submitted expert witness declarations and testified at fairness hearing concerning (1) reasonableness of attorney's fee request and (2) empirical data confirming robustness of class claims rate (*In re Facebook Biometric Information Privacy Litigation,* Civil Action No. 3:15-cv-03747-JD (N.D. Cal. (2020))

◊    Retained as an expert witness on issues regarding the Lead Plaintiff/Lead Counsel provisions of the Private Securities Litigation Reform Act of 1995 (PSLRA) (*In re Apple Inc. Securities Litigation.,* Civil Action No. 4:19-cv-02033-YGR (N.D. Cal. (2020))

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Amador v. Baca*, Civil Action No. 2:10-cv-01649 (C.D. Cal. February 9, 2020))

◊    Submitted an expert witness declaration concerning reasonableness of class action settlement (*In re: Columbia Gas Cases*, Civil Action No. 1877CV01343G (Mass. Super. Ct., Essex County, February 6, 2020))

◊    Submitted an expert witness declaration, and reply declaration, concerning reasonableness of attorney's fee request (*Hartman v. Pompeo*, Civil Action No. 1:77-cv-02019 (D.D.C. October 10, 2019; February 28, 2020))

◊    Submitted an expert witness declaration concerning reasonableness of common benefit attorney's fee request (*In re:  Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724, 16-MD-2724 (E.D. Pa. May 15, 2019))

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fee request, relied upon by court in awarding fees (*Hale v. State Farm Mut. Auto. Ins. Co*., 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018))

◊    Submitted expert witness affidavit and testified at fairness hearing concerning second phase fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294 (New Hampshire Superior Court, Merrimack County (2018))

◊   Submitted expert witness report – and rebutted opposing expert – concerning class certification issues for proposed class action within a bankruptcy proceeding (*In re Think Finance,* Case No. 17-33964 (N.D. Tex. Bankrpt. 2018))

◊   Submitted expert witness declaration concerning specific fee issues raised by Court at fairness hearing and second declaration in response to report of Special Master (*In re Anthem, Inc. Data Breach Litigation,* Case No. 15-MD-02617-LHK (N.D. Cal. 2018))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request following plaintiffs' verdict at trial in consumer class action (*Krakauer v. Dish Network, L.L.C.,* Civil Action No. 1:14-cv-00333 (M.D.N.C. 2018))

◊   Submitted three expert witness declarations and deposed by/testified in front of Special Master in investigation concerning attorney's fee issues (*Arkansas Teacher Ret. Sys. v. State St. Bank & Trust Co.*, Civ. Action No. 1:11-cv-10230 (D. Mass. 2017-18))

◊   Retained as an expert witness on issues regarding the preclusive effect of a class action judgment on later cases (*Sanchez v. Allianz Life Insurance Co. of N. Amer.,* Case No. BC594715 (California Superior Court, Los Angeles County (2018))

◊   Retained as an expert witness and submitted report explaining meaning of the denial of a motion to dismiss in American procedure to foreign tribunals (*In re Qualcomm Antitrust Matter,* declaration submitted to tribunals in Korea and Taiwan (2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 3.0-liter settlement, referenced by court in awarding fees (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 3175924 (N.D. Cal. July 21, 2017))

◊   Retained as an expert witness concerning impracticability of joinder in antitrust class action (*In re Celebrex (Celecoxib) Antitrust Litigation,* Civ. Action No. 2-14-cv-00361 (E.D. Va. (2017))

◊   Submitted an expert witness declaration and deposed concerning impracticability of joinder in antitrust class action (*In re Modafinil Antitrust Litigation,* Civ. Action No. 2-06-cv-01797 (E.D. Pa. (2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 2.0-liter settlement (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 1047834 (N.D. Cal., March 17, 2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*Aranda v. Caribbean Cruise Line, Inc.,* 2017 WL 1368741 (N.D. Ill., April 10, 2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*McKinney v. United States Postal Service*, Civil Action No. 1:11-cv-00631 (D.D.C. (2016))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Geancopoulos v. Philip Morris USA Inc.,* Civil Action No. 98-6002-BLS1 (Mass. Superior Court, Suffolk County))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Gates v. United Healthcare Insurance Company,* Case No. 11 Civ. 3487 (S.D.N.Y. 2015))

◊   Retained as an expert trial witness on class action procedures and deposed prior to trial in matter that settled before trial (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015))

◊   Retained as an expert witness concerning adequacy of putative class representatives in securities class action (*Medoff v. CVS Caremark Corp.,* Case No. 1:09-cv-00554 (D.R.I. (2015))

◊   Submitted an expert witness declaration concerning reasonableness of proposed class action settlement, settlement class certification, attorney's fees, and incentive awards (*Fitzgerald Farms, LLC v. Chespeake Operating, L.L.C.,* Case No. CJ-2010-38, Dist. Ct., Beaver County, Oklahoma (2015))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 WL 12732462 (C.D. Cal. May 29, 2015))

◊   Submitted an expert witness declaration concerning propriety of severing individual cases from class action and resulting statute of repose ramifications (*In re: American   International Group, Inc. 2008 Securities Litigation,* 08-CV-4772-LTS-DCF (S.D.N.Y. (2015))

◊   Retained by Fortune Global 100 Corporation as an expert witness on fee matter that settled before testimony (2015)

◊   Submitted an expert witness declaration and testified at Special Master proceeding concerning reasonableness of attorney's fee allocation in sealed fee mediation (2014-2015)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*In re: Hyundai and Kia Fuel Economy Litigation,* MDL 13-02424 (C.D. Cal. (2014))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Ammari Electronics v. Pacific Bell Directory*, Case No. RG0522096, California Superior Court, Alameda County (2014))

◊ Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc.,* Case No. CGC-10-497839, California Superior Court, San Francisco County (2014))

◊ Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Credit Suisse Securities (USA) LLC,* Case No. CGC-10-497840, California Superior Court, San Francisco County (2014))

◊ Retained as expert witness on proper level of common benefit fee in MDL (*In re Neurontin Marketing and Sales Practice Litigation,* Civil Action No. 04-10981, MDL 1629 (D. Mass. (2014))

◊ Submitted an expert witness declaration concerning Rule 23(g) selection of competing counsel, referenced by court in deciding issue (*White v. Experian Information Solutions, Inc.,* 993 F. Supp. 2d 1154 (C.D. Cal. (2014))

◊ Submitted an expert witness declaration concerning proper approach to attorney's fees under California law in a statutory fee-shifting case (*Perrin v. Nabors Well Services Co.,* Case No. 1220037974, Judicial Arbitration and Mediation Services (JAMS) (2013))

◊ Submitted an expert witness declaration concerning fairness and adequacy of proposed nationwide class action settlement (*Verdejo v. Vanguard Piping Systems,* Case No. BC448383, California Superior Court, Los Angeles County (2013))

◊ Retained as an expert witness regarding fairness, adequacy, and reasonableness of proposed nationwide consumer class action settlement (*Herke v. Merck,* No. 2:09-cv-07218, MDL Docket No. 1657 (*In re Vioxx Products Liability Litigation*) (E. D. La. (2013))

◊ Retained as an expert witness concerning ascertainability requirement for class certification and related issues (*Henderson v. Acxiom Risk Mitigation, Inc.,* Case No. 3:12-cv-00589-REP (E.D. Va. (2013))

◊ Submitted an expert witness declaration concerning reasonableness of class action settlement and performing analysis of Anet expected value@ of settlement benefits, relied on by court in approving settlement (*In re Navistar Diesel Engine Products Liab. Litig.*, 2013 WL 10545508 (N.D. Ill. July 3, 2013))

◊ Submitted an expert witness declaration concerning reasonableness of class action settlement and attorney's fee request (*Commonwealth Care All. v. Astrazeneca Pharm. L.P.*, 2013 WL 6268236 (Mass. Super. Aug. 5, 2013))

◊ Submitted an expert witness declaration concerning propriety of preliminary settlement approval in nationwide consumer class action settlement (*Anaya v. Quicktrim, LLC,* Case No. CIVVS 120177, California Superior Court, San Bernardino County (2012))

◊ Submitted expert witness affidavit concerning fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294, New

Hampshire Superior Court, Merrimack County (2012))

◊   Submitted expert witness declaration and deposed concerning class certification issues in nationwide fraud class action, relied upon by the court in affirming class certification order (*CVS Caremark Corp. v. Lauriello,* 175 So. 3d 596, 609-10 (Ala. 2014))

◊   Submitted expert witness declaration in securities class action concerning value of proxy disclosures achieved through settlement and appropriate level for fee award (*Rational Strategies Fund v. Jhung,* Case No. BC 460783, California Superior Court, Los Angeles County (2012))

◊   Submitted an expert witness report and deposed concerning legal malpractice in the defense of a class action lawsuit (*KB Home v. K&L Gates, LLP,* Case No. BC484090, California Superior Court, Los Angeles County (2011))

◊   Retained as expert witness on choice of law issues implicated by proposed nationwide class certification (*Simon v. Metropolitan Property and Cas. Co.,* Case No. CIV-2008-1008-W (W.D. Ok. (2011))

◊   Retained, deposed, and testified in court as expert witness in fee-related dispute (*Blue, et al. v. Hill,*Case No. 3:10-CV-02269-O-BK (N.D. Tex. (2011))

◊   Retained as an expert witness in fee-related dispute (*Furth v. Furth*, Case No. C11-00071-DMR (N.D. Cal. (2011))

◊   Submitted expert witness declaration concerning interim fee application in complex environmental class action (*DeLeo v. Bouchard Transportation,* Civil Action No. PLCV2004-01166-B, Massachusetts Superior Court (2010))

◊   Retained as an expert witness on common benefit fee issues in MDL proceeding in federal court (*In re Vioxx Products Liability Litigation*, MDL Docket No. 1657 (E.D. La. (2010))

◊   Submitted expert witness declaration concerning fee application in securities case, referenced by court in awarding fee (*In re AMICAS, Inc. Shareholder Litigation,* 27 Mass. L. Rptr. 568 (Mass. Sup. Ct. (2010))

◊   Submitted an expert witness declaration concerning fee entitlement and enhancement in non-common fund class action settlement, relied upon by the court in awarding fees (*Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1172-74 (C.D. Cal. 2010))

◊   Submitted an expert witness declaration concerning class action fee allocation among attorneys (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◊   Submitted an expert witness declaration concerning settlement approval and fee application in wage and hour class action settlement (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◊   Submitted an expert witness declaration concerning objectors' entitlement to attorney's fees (*Rodriguez v. West Publishing Corp.,* Case No. CV-05-3222 (C.D. Cal. (2010))

◊    Submitted an expert witness declaration concerning fairness of settlement provisions and processes, relied upon by the Ninth Circuit in reversing district court's approval of class action settlement (*Radcliffe v. Experian Inform. Solutions Inc.*, 715 F.3d 1157, 1166 (9th Cir. 2013))

◊    Submitted an expert witness declaration concerning attorney's fees in class action fee dispute, relied upon by the court in deciding fee issue (*Ellis v. Toshiba America Information Systems, Inc.*, 218 Cal. App. 4th 853, 871, 160 Cal. Rptr. 3d 557, 573 (2d Dist. 2013))

◊    Submitted an expert witness declaration concerning common benefit fee in MDL proceeding in federal court (*In re Genetically Modified Rice Litigation*, MDL Docket No. 1811 (E.D. Mo. (2009))

◊    Submitted an expert witness declaration concerning settlement approval and fee application in national MDL class action proceeding (*In re Wal-Mart Wage and Hour Employment Practices Litigation*, MDL Docket No.1735 (D. Nev. (2009))

◊    Submitted an expert witness declaration concerning fee application in national MDL class action proceeding, referenced by court in awarding fees (*In re Dept. of Veterans Affairs (VA) Data Theft Litigation*, 653 F. Supp.2d 58 (D.D.C. (2009))

◊    Submitted an expert witness declaration concerning common benefit fee in mass tort MDL proceeding in federal court (*In re Kugel Mesh Products Liability Litigation*, MDL Docket No. 1842 (D. R.I. (2009))

◊    Submitted an expert witness declaration and supplemental declaration concerning common benefit fee in consolidated mass tort proceedings in state court (*In re All Kugel Mesh Individual Cases*, Master Docket No. PC-2008-9999, Superior Court, State of Rhode Island (2009))

◊    Submitted an expert witness declaration concerning fee application in wage and hour class action (*Warner v. Experian Information Solutions, Inc.*, Case No.   BC362599, California Superior Court, Los Angeles County (2009))

◊    Submitted an expert witness declaration concerning process for selecting lead counsel in complex MDL antitrust class action (*In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL Docket No. 1869 (D. D.C. (2008))

◊    Retained, deposed, and testified in court as expert witness on procedural issues in complex class action (*Hoffman v. American Express*, Case No. 2001-022881, California Superior Court, Alameda County (2008))

◊    Submitted an expert witness declaration concerning fee application in wage and hour class action (*Salsgiver v. Yahoo! Inc.*, Case No. BC367430, California Superior Court, Los Angeles County (2008))

◊    Submitted an expert witness declaration concerning fee application in wage and hour class action (*Voight v. Cisco Systems, Inc.*, Case No. 106CV075705, California Superior Court, Santa Clara County (2008))

◊    Retained and deposed as expert witness on fee issues in attorney fee dispute (*Stock v. Hafif,* Case No. KC034700, California Superior Court, Los Angeles County (2008))

◊     Submitted an expert witness declaration concerning fee application in consumer class action (*Nicholas v. Progressive Direct*, Civil Action No. 06-141-DLB (E.D. Ky. (2008))

◊     Submitted expert witness declaration concerning procedural aspects of national class action arbitration (*Johnson v. Gruma Corp.,* JAMS Arbitration No. 1220026252 (2007))

◊     Submitted expert witness declaration concerning fee application in securities case (*Drulias v. ADE Corp.,* Civil Action No. 06-11033 PBS (D. Mass. (2007))

◊     Submitted expert witness declaration concerning use of expert witness on complex litigation matters in criminal trial (*U.S. v. Gallion, et al*., No. 07-39 (E. D. Ky. (2007))

◊     Retained as expert witness on fees matters (*Heger v. Attorneys' Title Guaranty Fund, Inc.,* No. 03-L-398, Illinois Circuit Court, Lake County, IL (2007))

◊     Retained as expert witness on certification in statewide insurance class action (*Wagner v. Travelers Property Casualty of America*, No. 06CV338, Colorado District Court, Boulder County, CO (2007))

◊     Testified as expert witness concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corporate Derivative Litigation*, Case No. 01098905, California Superior Court, Santa Barbara Cty, CA (2006))

◊     Submitted expert witness declaration concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corp. Corporate Derivative Litigation*, Case No. CV-03-11 RSWL (C.D. Cal. (2006))

◊     Retained as expert witness as to certification of class action (*Canova v. Imperial Irrigation District*, Case No. L-01273, California Superior Court, Imperial Cty, CA (2005))

◊     Retained as expert witness as to certification of nationwide class action (*Enriquez v. Edward D. Jones & Co.,* Missouri Circuit Court, St. Louis, MO (2005))

◊     Submitted expert witness declaration on procedural aspects of international contract litigation filed in court in Korea (*Estate of Wakefield v. Bishop Han & Jooan Methodist Church* (2002))

◊     Submitted expert witness declaration as to contested factual matters in case involving access to a public forum (*Cimarron Alliance Foundation v. The City of Oklahoma City,* Case No. Civ. 2001-1827-C (W.D. Ok. (2002))

◊     Submitted expert witness declaration concerning reasonableness of class certification, settlement, and fees (*Baird v. Thomson Elec. Co.*, Case No. 00-L-000761, Cir. Ct., Mad. Cty, IL (2001))

### Expert Consultant

◊   Retained as a consulting expert in Rule 23(f) appeal of class decertification (*In re: Apple iPhone Antitrust Litigation,* Case No. 25-7122 (Ninth Circuit, 2025))

◊   Provided expert consulting services to the ACLU's Immigrants' Rights Project on class action issues arising out of deportation of Venezuelan migrants to El Salvador (*A. A. R. P. v. Trump*, 145 S. Ct. 1364 (2025); *Trump v. J. G. G.*, 145 S. Ct. 1003 (2025))

◊   Retained as a consulting expert in series of direct and class action cases challenging artificial intelligence (AI) generators (2024)

◊   Retained as a consulting expert in class action (*In re: East Palestine Train Derailment,* Case No. 4:23-CV-00242-BYP (N.D. Ohio 2024))

◊   Retained as a consulting expert in complex MDL/class action (*In re: Aqueous Film-Forming Foams Products Liability Litigation,* Case No. 2:18-md-2873-RMG (D. S.C. 2023-2024))

◊   Retained as an expert in confidential matter pending in international arbitration forum concerning litigation financing issues in complex litigation (2022-2023)

◊   Retained as an expert in matter pending in several federal courts concerning attorney's fees in class action setting (2022-2023)

◊   Provided expert consulting services to Planned Parenthood Federation of America and the American Civil Liberties Union Foundation concerning complex class certification, notice, and other procedural issues arising out of Texas's law banning abortion (*Whole Woman's Health v. Austin Reeve Jackson,* Civil Action No. 1:21-cv-00616 (W.D. Tex. 2021))

◊   Retained as an expert witness on class action issues in complex mass tort MDL (*In re Roundup Products Liability Litigation,* Civil Action No. 3:16-md-02741-VC (N.D. Cal. (2020))

◊   Provided expert consulting services to Harvard Law School Predatory Lending and Consumer Protection Clinic concerning complex class action issues in bankruptcy (*In re: ITT Educational Services Inc.,* Case No. 16-07207-JMC-7A (Bank. S.D. Ind. 2020))

◊   Provided expert consulting services to law firm concerning complex federal procedural and bankruptcy issues (*Homaidan v. Navient Solutions, LLC*, Adv. Proc. No. 17-1085 (Bank. E.D.N.Y 2020))

◊   Provided expert consulting services to the ACLU on multi-district litigation issues arising out of various challenges to President Trump's travel ban and related policies (*In re American Civil Liberties Union Freedom of Information Act Requests Regarding Executive Order 13769*, Case Pending No. 28, Judicial Panel on Multidistrict Litigation (2017); *Darweesh v. Trump*, Case No. 1:17-cv-00480-CBA-LB (E.D.N.Y. (2017))

◊   Provided expert consulting services to law firm regarding billing practices and fee allocation issues in nationwide class action (2016)

◊   Provided expert consulting services to law firm regarding fee allocation issues in nationwide class action (2016)

◊   Provided expert consulting services to the ACLU of Southern California on class action and procedural issues arising out of challenges to municipality's treatment of homeless persons with disabilities (*Glover v. City of Laguna Beach*, Case No. 8:15-cv-01332-AG-DFM (C.D. Cal. (2016))

◊   Retained as an expert consultant on class certification issues (*In re: Facebook, Inc., IPO Securities and Derivative Litigation*, No. 1:12-md-2389 (S.D.N.Y. 2015))

◊   Provided expert consulting services to lead class counsel on class certification issues in nationwide class action (2015)

◊   Retained by a Fortune 100 Company as an expert consultant on class certification issues

◊   Retained as an expert consultant on class action and procedure related issues (*Lange et al v. WPX Energy Rocky Mountain LLC*, Case No. 2:13-cv-00074-ABJ (D. Wy. (2013))

◊   Retained as an expert consultant on class action and procedure related issues (*Flo & Eddie, Inc., v. Sirius XM Radio, Inc.*, Case No. CV 13-5693 (C.D. Cal. (2013))

◊   Served as an expert consultant on substantive and procedural issues in challenge to legality of credit card late and over-time fees (*In Re Late Fee and Over-Limit Fee Litigation*, 528 F.Supp.2d 953 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014))

◊   Retained as an expert on Class Action Fairness Act (CAFA) removal issues and successfully briefed and argued remand motion based on local controversy exception (*Trevino, et al. v. Cummins, et al.*, No. 2:13-cv-00192-JAK-MRW (C. D. Cal. (2013))

◊   Retained as an expert consultant on class action related issues by consortium of business groups (*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010*, MDL No. 2179 (E.D. La. (2012))

◊   Provided presentation on class certification issues in nationwide medical monitoring classes (*In re: National Football League Players' Concussion Injury Litigation,* MDL No. 2323, Case No. 2:12-md-02323-AB (E.D. Pa. (2012))

◊   Retained as an expert consultant on class action related issues in mutli-state MDL consumer class action (*In re Sony Corp. SXRD Rear Projection Television Marketing, Sales Practices & Prod. Liability Litig.*, MDL No. 2102 (S.D. N.Y. (2009))

◊   Retained as an expert consultant on class action certification, manageability, and related issues in mutli-state MDL consumer class action (*In re Teflon Prod. Liability Litig.*, MDL No. 1733 (S.D. Iowa (2008))

◊   Retained as an expert consultant/co-counsel on certification, manageability, and related issues in nationwide anti-trust class action (*Brantley v. NBC Universal*, No.- CV07-06101 (C.D. Cal. (2008))

◊   Retained as an expert consultant on class action issues in complex multi-jurisdictional construction dispute (*Antenucci, et al., v. Washington Assoc. Residential Partner, LLP, et al.,* Civil No. 8-04194 (E.D. Pa. (2008))

◊   Retained as an expert consultant on complex litigation issues in multi-jurisdictional class action litigation (*McGreevey v. Montana Power Company*, No. 08-35137, U.S. Court of Appeals for the Ninth Circuit (2008))

◊   Retained as an expert consultant on class action and attorney fee issues in nationwide consumer class action (*Figueroa v. Sharper Image*, 517 F.Supp.2d 1292 (S.D. Fla. 2007))

◊   Retained as an expert consultant on attorney's fees issue in complex class action case (*Natural Gas Anti-Trust Cases Coordinated Proceedings*, D049206, California Court of Appeals, Fourth District (2007))

◊   Retained as an expert consultant on remedies and procedural matters in complex class action (*Sunscreen Cases*, JCCP No. 4352, California Superior Court, Los Angeles County (2006))

◊   Retained as an expert consultant on complex preclusion questions in petition for review to California Supreme Court (*Mooney v. Caspari,* Supreme Court of California (2006))

◊   Retained as an expert consultant on attorney fee issues in complex common fund case (*In Re DietDrugs (Phen/Fen) Products Liability Litigation* (E. D. Pa. (2006))

◊   Retained as an expert consultant on procedural matters in series of complex construction lien cases (*In re Venetian Lien Litigation*, Supreme Court of the State of Nevada (2005-2006))

◊   Served as an expert consultant on class certification issues in countywide class action (*Beauchamp v. Los Angeles Cty. Metropolitan Transp. Authority*, (C.D. Cal. 2004))

◊   Served as an expert consultant on class certification issues in state-wide class action (*Williams v. State of California*, Case No. 312-236, Cal. Superior Court, San Francisco)

◊   Served as an exert consultant on procedural aspects of complex welfare litigation (*Allen v. Anderson*, 199 F.3d 1331 (9th Cir. 1999))

*Ethics Opinions*

◊   Retained to provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2017))

◊   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2013))

◊   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2011))

◊   Provided expert opinion on issues of professional ethics in implicated by nationwide class action practice (*In re Professional Responsibility Inquiries* (2010))

◊   Provided expert opinion on issues of professional ethics implicated by complex litigation matter (*In re Professional Responsibility Inquiries* (2010))

◊   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2007))

*Publications on Class Actions & Procedure*

◊   NEWBERG AND RUBENSTEIN ON CLASS ACTIONS (6th ed. 2022 and updates through 2024); NEWBERG ON CLASS ACTIONS (sole author since 2008, sole author of entirely re-written Fifth Edition (2011-2019)

◊   *Deconstitutionalizing Personal Jurisdiction: A Separation of Powers Approach,* Harvard Public Law Working Paper No. 20-34, https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3715068.

◊   *The Negotiation Class: A Cooperative Approach to Class Actions Involving Large Stakeholders,* 99 TEXAS L. REV.73 (2020) (with Francis E. McGovern)

◊   *Profit for Costs*, 63 DEPAUL L. REV. 587 (2014) (with Morris A. Ratner)

◊   *Procedure and Society: An Essay for Steve Yeazell,* 61 U.C.L.A. REV. DISC. 136 (2013)

◊   *Supreme Court Round-Up – Part II*, 5 CLASS ACTION ATTORNEY FEE DIGEST 331 (September 2011)

◊   *Supreme Court Round-Up – Part I*, 5 CLASS ACTION ATTORNEY FEE DIGEST 263 (July-August 2011)

◊   *Class Action Fee Award* Procedures, 5 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2011)

◊   *Benefits of Class Action Lawsuits*, 4 CLASS ACTION ATTORNEY FEE DIGEST 423 (November 2010)

◊   *Contingent Fees for Representing the Government: Developments in California Law*, 4 CLASS ACTION ATTORNEY FEE DIGEST 335 (September 2010)

◊   *Supreme Court Roundup*, 4 CLASS ACTION ATTORNEY FEE DIGEST 251 (July 2010)

◊   *SCOTUS Okays Performance Enhancements in Federal Fee Shifting Cases – At Least In Principle,* 4 CLASS ACTION ATTORNEY FEE DIGEST 135 (April 2010)

◊   *The Puzzling Persistence of the AMega-Fund@ Concept*, 4 CLASS ACTION ATTORNEY FEE DIGEST 39 (February 2010)

◊   *2009: Class Action Fee Awards Go Out With A Bang, Not A Whimper*, 3 CLASS ACTION ATTORNEY FEE DIGEST 483 (December 2009)

◊   *Privatizing Government Litigation: Do Campaign Contributors Have An Inside Track?*, 3 CLASS

**A-16**

ACTION ATTORNEY FEE DIGEST 407    (October 2009)

◊    *Supreme Court Preview*, 3 CLASS ACTION ATTORNEY FEE DIGEST 307 (August 2009)

◊    *Supreme Court Roundup*, 3 CLASS ACTION ATTORNEY FEE DIGEST 259 (July 2009)

◊    *What We Now Know About How Lead Plaintiffs Select Lead Counsel (And Hence Who Gets Attorney's Fees!) in Securities Cases*, 3 CLASS ACTION ATTORNEY FEE DIGEST 219 (June 2009)

◊    *Beware Of Ex Ante Incentive Award Agreements*, 3 CLASS ACTION ATTORNEY FEE DIGEST 175 (May 2009)

◊    *On What a "Common Benefit Fee" Is, Is Not, and Should Be*, 3 CLASS ACTION ATTORNEY FEE DIGEST 87 (March 2009)

◊    *2009: Emerging Issues in Class Action Fee Awards*, 3 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2009)

◊    *2008:   The Year in Class Action Fee Awards*, 2 CLASS ACTION ATTORNEY FEE DIGEST 465 (December 2008)

◊    *The Largest Fee Award – Ever!*, 2 CLASS ACTION ATTORNEY FEE DIGEST 337 (September 2008)

◊    *Why Are Fee Reductions Always 50%?: On The Imprecision of Sanctions for Imprecise Fee Submissions*, 2 CLASS ACTION ATTORNEY FEE DIGEST 295 (August 2008)

◊    *Supreme Court Round-Up,* 2 CLASS ACTION ATTORNEY FEE DIGEST 257 (July 2008)

◊    *Fee-Shifting For Wrongful Removals: A Developing Trend?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 177 (May 2008)

◊    *You Cut, I Choose:   (Two Recent Decisions About) Allocating Fees Among Class Counsel,* 2 CLASS ACTION ATTORNEY FEE DIGEST 137 (April 2008)

◊    *Why The Percentage Method?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 93 (March 2008)

◊    *Reasonable Rates: Time To Reload The (*Laffey*) Matrix,* 2 CLASS ACTION ATTORNEY FEE DIGEST 47 (February 2008)

◊    *The "Lodestar Percentage" A New Concept For Fee Decisions?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2008)

◊    *Class Action Practice Today: An Overview, in* ABA SECTION OF LITIGATION, CLASS ACTIONS TODAY 4 (2008)

◊    *Shedding Light on Outcomes in Class Actions*, *in* CONFIDENTIALITY, TRANSPARENCY, AND THE U.S. CIVIL JUSTICE SYSTEM 20-59 (Joseph W. Doherty, Robert T. Reville, and Laura Zakaras eds. 2008)

(with Nicholas M. Pace)

◊  *Finality in Class Action Litigation: Lessons From Habeas,* 82 N.Y.U. L. REV. 791 (2007)

◊  *The American Law Institute's New Approach to Class Action Objectors' Attorney's Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 347 (November 2007)

◊  *The American Law Institute's New Approach to Class Action Attorney's Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 307 (October 2007)

◊  *"The Lawyers Got More Than The Class Did!":  Is It Necessarily Problematic When Attorneys Fees Exceed Class Compensation?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 233 (August 2007)

◊  *Supreme Court Round-Up,* 1 CLASS ACTION ATTORNEY FEE DIGEST 201 (July 2007)

◊  *On The Difference Between Winning and Getting Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 163 (June 2007)

◊  *Divvying Up The Pot: Who Divides Aggregate Fee Awards, How, and How Publicly?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 127 (May 2007)

◊  *On Plaintiff Incentive Payments,* 1 CLASS ACTION ATTORNEY FEE DIGEST 95 (April 2007)

◊  *Percentage of What?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 63 (March 2007)

◊  *Lodestar v. Percentage: The Partial Success Wrinkle,* 1 CLASS ACTION ATTORNEY FEE DIGEST 31 (February 2007) (with Alan Hirsch)

◊  *The Fairness Hearing:  Adversarial and Regulatory Approaches*, 53 U.C.L.A. L. REV. 1435 (2006) (excerpted in THE LAW OF CLASS ACTIONS AND OTHER AGGREGATE LITIGATION 447-449 (Richard A. Nagareda ed., 2009))

◊  *Why Enable Litigation?  A Positive Externalities Theory of the Small Claims Class Action*, 74 U.M.K.C. L. REV. 709 (2006)

◊  *What a "Private Attorney General" Is – And Why It Matters*, 57 VAND. L. REV.  2129(2004) (excerpted in COMPLEX LITIGATION 63-72 (Kevin R. Johnson, Catherine A. Rogers & John Valery White eds., 2009)).

◊  *The Concept of Equality in Civil Procedure*, 23 CARDOZO L. REV. 1865 (2002) (selected for the Stanford/Yale Junior Faculty Forum, June 2001)

◊  *A Transactional Model of Adjudication*, 89 GEORGETOWN  L.J. 371 (2000)

◊  *The Myth of Superiority*, 16 CONSTITUTIONAL COMMENTARY 599 (1999)

◊  *Divided We Litigate:  Addressing Disputes Among Clients and Lawyers in Civil Rights Campaigns,*

106 YALE L. J. 1623 (1997) *(excerpted in* COMPLEX LITIGATION 120-123 (1998))

*Selected Presentations*

◊   *Opioid Litigation:   What's New and What Does it Mean for Future Litigation?,* RAND Institute for Civil Justice and RAND Kenneth R. Feinberg Center for Catastrophic Risk Management and Compensation, RAND Corporation, October 22, 2020

◊   *The Opioid Crisis:   Where Do We Go From Here?"* Clifford Symposium 2020, DePaul University College of Law, Chicago, Illinois, May 28-29, 2020)

◊   *Class Action Law Update,* MDL Transferee Judges Conference, Palm Beach, Florida, October 30, 2019

◊   *Class Action Law Update,* MDL Transferee Judges Conference, Palm Beach, Florida, October 31, 2018

◊   *Attorneys' Fees Issues,* MDL Transferee Judges Conference, Palm Beach, Florida, October 30, 2018

◊   *Panelist,* Federal Judicial Center, Managing Multidistrict Litigation and Other Complex Litigation Workshop (for federal judges) (March 15, 2018)

◊   *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 1, 2017

◊   *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2016

◊   *Judicial Power and its Limits in Multidistrict Litigation,* American Law Institute, Young Scholars Medal Conference, *The Future of Aggregate Litigation*, New York University School of Law, New York, New York, April 12, 2016

◊   *Class Action Update & Attorneys' Fees Issues Checklist,* MDL Transferee Judges Conference, Palm Beach, Florida, October 28, 2015

◊   *Class Action Law,* 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop, Tucson, Arizona, January 26, 2015

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2014

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2013

◊   *Class Action Remedies,* ABA 2013 National Institute on Class Actions, Boston, Massachusetts, October 23, 2013

◊   *The Public Life of the Private Law: The Logic and Experience of Mass Litigation – Conference in Honor of Richard Nagareda,* Vanderbilt Law School, Nashville, Tennessee, September 27-28, 2013

◊   *Brave New World: The Changing Face of Litigation and Law Firm Finance*, Clifford Symposium 2013,

DePaul University College of Law, Chicago, Illinois, April 18-19, 2013

◊   *Twenty-First Century Litigation: Pathologies and Possibilities: A Symposium in Honor of Stephen Yeazell,* UCLA Law Review, UCLA School of Law, Los Angeles, California, January 24-25, 2013

◊   *Litigation's Mirror: The Procedural Consequences of Social Relationships,* Sidley Austin Professor of Law Chair Talk, Harvard Law School, Cambridge, Massachusetts, October 17, 2012

◊   *Alternative Litigation Funding (ALF) in the Class Action Context – Some Initial Thoughts*, Alternative Litigation Funding: A Roundtable Discussion Among Experts, George Washington University Law School, Washington, D.C., May 2, 2012

◊   *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases*, Brooklyn Law School Faculty Workshop, Brooklyn, New York, April 2, 2012

◊   *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases*, Loyola Law School Faculty Workshop, Los Angeles, California, February 2, 2012

◊   *Recent Developments in Class Action Law and Impact on MDL Cases,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2011

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 26, 2010

◊   *A General Theory of the Class Suit*, University of Houston Law Center Colloquium, Houston, Texas, February 3, 2010

◊   *Unpacking The "Rigorous Analysis" Standard,* ALI-ABA 12th Annual National Institute on Class Actions, New York, New York, November 7, 2008

◊   *The Public Role in Private Law Enforcement: Visions from CAFA*, University of California (Boalt Hall) School of Law Civil Justice Workshop, Berkeley, California, February 28, 2008

◊   *The Public Role in Private Law Enforcement: Visions from CAFA*, University of Pennsylvania Law Review Symposium, Philadelphia, Pennsylvania, Dec. 1, 2007

◊   *Current CAFA Consequences: Has Class Action Practice Changed?,* ALI-ABA 11th Annual National Institute on Class Actions, Chicago, Illinois, October 17, 2007

◊   *Using Law Professors as Expert Witnesses in Class Action Lawsuits,* ALI-ABA 10th Annual National Institute on Class Actions, San Diego, California, October 6, 2006

◊   *Three Models for Transnational Class Actions*, Globalization of Class Action Panel, International Law Association 2006 Conference, Toronto, Canada, June 6, 2006

◊   *Why Create Litigation?:  A Positive Externalities Theory of the Small Claims Class Action*, UMKC Law Review Symposium, Kansas City, Missouri, April 7, 2006

◊   *Marks, Bonds, and Labels:  Three New Proposals for Private Oversight of Class Action Settlements*, UCLA Law Review Symposium, Los Angeles, California, January 26, 2006

◊   Class Action Fairness Act, Arnold & Porter, Los Angeles, California, December 6, 2005

◊   ALI-ABA 9th Annual National Institute on Class Actions, Chicago, Illinois, September 23, 2005

◊   Class Action Fairness Act, UCLA Alumni Assoc., Los Angeles, California, September 9, 2005

◊   Class Action Fairness Act, Thelen Reid & Priest, Los Angeles, California, May 12, 2005

◊   Class Action Fairness Act, Sidley Austin, Los Angeles, California, May 10, 2005

◊   Class Action Fairness Act, Munger, Tolles & Olson, Los Angeles, California, April 28, 2005

◊   Class Action Fairness Act, Akin Gump Strauss Hauer Feld, Century City, CA, April 20, 2005

SELECTED OTHER LITIGATION EXPERIENCE

*United States Supreme Court*

◊   Served as *amicus curiae* and co-authored *amicus* brief (with Professor Arthur Miller) on proper approach to standing in class action lawsuits (*Labcorp, v. Davis*, No. 24-304, October Term 2024)

◊   Served as *amicus curiae* and authored *amicus* brief on proper approach to *cy pres* award in class action lawsuits (*Frank v. Gaos*, No. 17-961, October Term 2018)

◊   Co-counsel on petition for writ of *certiorari* concerning application of the voluntary cessation doctrine to government defendants (*Rosebrock v. Hoffman*, 135 S. Ct.1893 (2015))

◊   Authored *amicus* brief filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011)

◊   Co-counsel in constitutional challenge to display of Christian cross on federal land in California's Mojave preserve (*Salazar v. Buono*, 130 S. Ct. 1803 (2010))

◊   Co-authored *amicus* brief filed on behalf of constitutional law professors arguing against constitutionality of Texas criminal law (*Lawrence v. Texas*, 539 U.S. 558 (2003))

◊   Co-authored *amicus* brief on scope of *Miranda* (*Illinois v. Perkins*, 496 U.S. 292 (1990))

*Attorney's Fees*

◊   Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation, with result that the Court adopted recommendations

(*In re National Football League Players' Concussion Injury Litigation*, 2018 WL 1658808 (E.D.Pa. April 5, 2018))

◊   Appointed by the United States District Court for the Northern District of Ohio as an expert consultant on common benefit attorney's fees issues in complex multidistrict litigation, with result that the Court adopted recommendations (*In re: Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2020 WL 8675733 (N.D. Ohio June 3, 2020))

◊   Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *DeValerio v. Olinski*, 673 F. App'x 87, 90 (2d Cir. 2016)).

◊   Co-counsel in appeal of common benefit fees decision arising out of mass tort MDL (*In re Roundup Prod. Liab. Litig.,* Civil Action No. 21-16228, 2022 WL 16646693 (9th Cir, 2022))

◊   Served as *amicus curiae* and co-authored *amicus* brief on proper approach to attorney's fees in common fund cases (*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504, 376 P.3d 672, 687 (2016))

*Consumer Class Action*

◊   Co-counsel in challenge to antenna-related design defect in Apple's iPhone4 (*Dydyk v. Apple Inc.,* 5:10-cv-02897-HRL, U.S. Dist. Court, N.D. Cal.) (complaint filed June 30, 2010)

◊   Co-class counsel in $8.5 million nationwide class action settlement challenging privacy concerns raised by Google's Buzz social networking program (*In re Google Buzz Privacy Litigation,* 5:10-cv-00672-JW, U.S. Dist. Court, N.D. Cal.) (amended final judgment June 2, 2011)

*Disability*

◊   Co-counsel in successful ADA challenge ($500,000 jury verdict) to the denial of health care in emergency room (*Howe v. Hull*, 874 F. Supp. 779, 873 F. Supp 72 (N.D. Ohio 1994))

*Employment*

◊   Co-counsel in challenges to scope of family benefit programs (*Ross v. Denver Dept. of Health*, 883 P.2d 516 (Colo. App. 1994)); *(Phillips v. Wisc. Personnel Com'n*, 482 N.W.2d 121 (Wisc. 1992))

*Equal Protection*

◊   Co-counsel in (state court phases of) successful challenge to constitutionality of a Colorado ballot initiative, Amendment 2 (*Evans v. Romer*, 882 P.2d 1335 (Colo. 1994))

◊   Co-counsel (and *amici*) in challenges to rules barring military service by gay people (*Able v. United States*, 44 F.3d 128 (2d Cir. 1995); *Steffan v. Perry*, 41 F.3d 677 (D.C. Cir. 1994) (*en banc*))

◊   Co-counsel in challenge to the constitutionality of the Attorney General of Georgia' firing of staff attorney (*Shahar v. Bowers*, 120 F.3d 211 (11th Cir. 1997))

### *Fair Housing*

◊   Co-counsel in successful Fair Housing Act case on behalf of group home (*Hogar Agua y Vida En el Desierto v. Suarez-Medina*, 36 F.3d 177 (1st Cir. 1994))

### *Family Law*

◊   Co-counsel in challenge to constitutionality of Florida law limiting adoption (*Cox v. Florida Dept. of Health and Rehab. Srvcs.*, 656 So.2d 902 (Fla. 1995))

◊   Co-authored *amicus* brief in successful challenge to Hawaii ban on same-sex marriages (*Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993))

### *First Amendment*

◊   Co-counsel in successful challenge to constitutionality of Alabama law barring state funding foruniversity student groups (*GLBA v. Sessions*, 930 F.Supp. 1492 (M.D. Ala. 1996))

◊   Co-counsel in successful challenge to content restrictions on grants for AIDS education materials (*Gay Men's Health Crisis v. Sullivan*, 792 F.Supp. 278 (S.D.N.Y. 1992))

### *Landlord / Tenant*

◊   Lead counsel in successful challenge to rent control regulation (*Braschi v. Stahl Associates Co.*, 544 N.E.2d 49 (N.Y. 1989))

### *Police*

◊   Co-counsel in case challenging DEA brutality (*Anderson v. Branen*, 27 F.3d 29 (2d Cir. 1994))

### *Prison Conditions*

◊   Co-counsel in appeal of class certification decision in damages class action arising out of conditions in St. Louis City Jail (*Cody v. City of St. Louis for & on behalf of Medium Sec. Inst.,* 103 F.4th 523, 526 (8th Cir. 2024))

### *Racial Equality*

◊   Co-authored *amicus* brief for constitutional law professors challenging constitutionality of Proposition 209 *(Coalition for Economic Equity v. Wilson*, 110 F.3d 1431 (9th Cir. 1997))

SELECTED OTHER PUBLICATIONS

*Editorials*

◊ *Follow the Leaders*, NEW YORK TIMES, March 15, 2005

◊ *Play It Straight*, NEW YORK TIMES, October 16, 2004

◊ *Hiding Behind the Constitution*, NEW YORK TIMES, March 20, 2004

◊ *Toward More Perfect Unions,* NEW YORK TIMES, November 20, 2003 (with Brad Sears)

◊ *Don't Ask, Don't Tell, Don't Believe It*, NEW YORK TIMES, July 20, 1993

◊ *AIDS: Illness and Injustice*, WASH. POST, July 26, 1992 (with Nan D. Hunter)

BAR ADMISSIONS

◊ Massachusetts (2008)

◊ California (2004)

◊ District of Columbia (1987) (inactive)

◊ Pennsylvania (1986) (inactive)

◊ U.S. Supreme Court (1993)

◊ U.S. Court of Appeals for the First Circuit (2010)

◊ U.S. Court of Appeals for the Second Circuit (2015)

◊ U.S. Court of Appeals for the Fifth Circuit (1989)

◊ U.S. Court of Appeals for the Ninth Circuit (2004)

◊ U.S. Court of Appeals for the Eleventh Circuit (1993)

◊ U.S. Court of Appeals for the D.C. Circuit (1993)

◊ U.S. District Courts for the Central District of California (2004)

◊ U.S. District Court for the District of the District of Columbia (1989)

◊ U.S. District Court for the District of Massachusetts (2010)

◊ U.S. District Court for the Northern District of California (2010)

# EXHIBIT B

*Bartz v. Anthropic PBC*
Case No. 3:24-cv-05417-WHA
United States District Court for the Northern District of California

## **EXPERT REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN**

EXHIBIT B
List of Documents Reviewed by Professor Rubenstein
(other than case law and scholarship on the relevant issues)

1.   Class Action Complaint, ECF No. 1
2.   Notice and Order Re Putative Class Actions and Factors to Be Evaluated for Any Proposed Class Settlement and Protocol for Interviewing Putative Class Members, ECF No. 8
3.   Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup, ECF No. 9
4.   Anthropic PBC's Answer to Complaint, ECF No. 57
5.   First Amended Class Action Complaint, ECF No. 70
6.   Anthropic PBC's Answer to First Amended Class Action Complaint, ECF No. 72
7.   Technology Tutorial, ECF No. 75-1
8.   Technology Tutorial, ECF No. 79-1
9.   Defendant Anthropic PBC's Notice of Motion and Motion for Summary Judgement; Memorandum of Points and Authorities in Support, ECF No. 122
10.  Plaintiffs' Notice of Motion and Motion for Class Certification, ECF No. 125
11.  Declaration of Rachel Geman and Justin A. Nelson in Support of Plaintiffs' Motion for Appointment as Co-Lead Class Counsel, ECF No. 125-1
12.  Exhibit A to Geman and Nelson Declaration, ECF No. 125-2
13.  Exhibit B to Geman and Nelson Declaration, ECF No. 125-3
14.  Exhibit C to Geman and Nelson Declaration, ECF No. 125-4
15.  Exhibit D to Geman and Nelson Declaration, ECF No. 125-5
16.  Expert Declaration of Ben Y. Zhao, PHD in Support of Plaintiffs Motion for Class Certification, ECF No. 125-6
17.  Exhibit A to Zhao Declaration, ECF No. 125-7
18.  Exhibit B to Zhao Declaration, ECF No. 125-8
19.  Slip Sheets to Exhibits C and D to Zhao Declaration, ECF No. 125-9
20.  Declaration of Jacob S. Miller in Support of Class Certification, ECF No. 125-10
21.  Slip Sheets for Exhibits 1-26 to Miller Declaration, ECF No. 125-11
22.  Exhibit 27-31 to Miller Declaration, ECF No. 125-12
23.  Slip Sheets to Exhibits 32-38 to Miller Declaration, ECF No. 125-13
24.  Exhibit 39 to Miller Declaration, ECF No. 125-14
25.  Proposed Order Granting Class Certification, ECF No. 125-15
26.  Questions for Briefing, ECF No. 135
27.  Anthropic PBC's Opposition to Plaintiffs' Motion for Class Certification, ECF No. 148
28.  Plaintiffs' Reply in Support of Class Certification, ECF No. 172
29.  Declaration of Jacob S. Miller in Support of Plaintiffs' Reply in Support of Class Certification, ECF No. 172-1
30.  Slip Sheets for Exhibits 40-50 to Miller Declaration, ECF No. 172-2

31.  Exhibit 51 to Miller Declaration, ECF No. 172-3
32.  Exhibit 52 to Miller Declaration, ECF No. 172-4
33.  Exhibit 53 to Miller Declaration, ECF No. 172-5
34.  Exhibit 54 to Miller Declaration, ECF No. 172-6
35.  Exhibit 55 to Miller Declaration, ECF No. 172-7
36.  Exhibit 56 to Miller Declaration, ECF No. 172-8
37.  Exhibit 57 to Miller Declaration, ECF No. 172-9
38.  Exhibit 58 to Miller Declaration, ECF No. 172-10
39.  Exhibit 59 to Miller Declaration, ECF No. 172-11
40.  Exhibit 60 to Miller Declaration, ECF No. 172-12
41.  Exhibit 61 to Miller Declaration, ECF No. 172-13
42.  Declaration of Charles Graeber in Support of Reply to Plaintiffs' Motion for Class Certification, ECF No. 172-14
43.  Anthropic PBC's Reply in Support of Motion for Summary Judgement, ECF No. 181
44.  Questions for Supplemental Briefing Re Class Certification, ECF No. 199
45.  Plaintiffs' Response to Court's Question at Class Certification Hearing, ECF No. 200
46.  Defendant Anthropic PBC's Supplemental Brief in Support of Opposition to Motion for Class Certification, ECF No. 201
47.  Anthropic PBC's Response to the Court's Request for Supplemental Briefing Regarding Class Certification, ECF No. 202
48.  Plaintiffs' Supplemental Briefing Regarding Class Definition and Notice, ECF No. 203
49.  Permission to Negotiate Class Settlement, ECF No. 210
50.  Plaintiffs' Supplemental Briefing Regarding *Google Books*, ECF No. 215
51.  Order on Fair Use, ECF No. 231
52.  Order on Class Certification, ECF No. 244
53.  Order Denying Motion to Stay, ECF No. 296
54.  Notice of Association of Additional Counsel, ECF No. 298
55.  Motion to Approve Class Notice, ECF No. 317
56.  Declaration of Jennifer Keough Regarding Proposed Class Notice Plan, ECF No. 319
57.  Exhibit A to Keough Declaration, ECF No. 319-1
58.  Exhibit B to Keough Declaration, ECF No. 319-2
59.  Exhibit C to Keough Declaration, ECF No. 319-3
60.  Exhibit D to Keough Declaration, ECF No. 319-4
61.  Exhibit E to Keough Declaration, ECF No. 319-5
62.  Exhibit F to Keough Declaration, ECF No. 319-6
63.  Exhibit G to Keough Declaration, ECF No. 319-7
64.  Anthropic PBC's Response to Plaintiffs' Motion to Approve Class Notice, ECF No. 329
65.  Order Re Notice Form and Distribution Plan, ECF No. 330
66.  Anthropic's Response to Plaintiffs' Motion to Approve Class Notice, ECF No. 334
67.  Reply in Support of Motion to Approve Class Notice, ECF No. 350
68.  Notice of Settlement, Joint Stipulation for Stay, and Proposed Order, ECF No. 354
69.  Unopposed Motion for Preliminary Approval of Class Settlement, ECF No. 362
70.  Exhibit A to Unopposed Motion for Preliminary Approval of Class Settlement, ECF No. 362-1
71.  Declaration of Court Appointed Class Counsel Rachel Geman and Justin A. Nelson in Support of Motion for Preliminary Approval of Settlement Agreement, ECF No. 362-2
72.  Class Action Settlement Agreement, ECF No. 362-3

73. Exhibit B to Unopposed Motion for Preliminary Approval of Class Settlement, ECF No. 362-4

74. Exhibit C to Unopposed Motion for Preliminary Approval of Class Settlement, ECF No. 362-5

75. Exhibit D to Unopposed Motion for Preliminary Approval of Class Settlement, ECF No. 362-6

76. Exhibit E to Unopposed Motion for Preliminary Approval of Class Settlement, ECF No. 362-7

77. Unopposed Motion for Preliminary Approval of Class Settlement, ECF No. 363

78. Exhibit A to Unopposed Motion for Preliminary Approval of Class Settlement, ECF No. 363-1

79. Declaration of Court Appointed Class Counsel Rachel Geman and Justin A. Nelson in Support of Motion for Preliminary Approval of Settlement Agreement, ECF No. 363-2

80. Class Action Settlement Agreement, ECF No. 363-3

81. Exhibit B to Unopposed Motion for Preliminary Approval of Class Settlement, ECF No. 363-4

82. Exhibit C to Unopposed Motion for Preliminary Approval of Class Settlement, ECF No. 363-5

83. Exhibit D to Unopposed Motion for Preliminary Approval of Class Settlement, ECF No. 363-6

84. Exhibit E to Unopposed Motion for Preliminary Approval of Class Settlement, ECF No. 363-7

85. Declaration of Robert Mills in Support of Plaintiffs' Motion for Preliminary Approval, ECF No. 363-8

86. Declaration of Maria A. Pallante in Support of Motion for Preliminary Approval of Class Settlement, ECF No. 363-9

87. Declaration of Mary E. Rasenberger, ECF No. 363-10

88. Declaration of the Hon. Layn R. Phillips (Ret.), ECF No. 363-11

89. Declaration of Jennifer Keough Regarding Proposed Settlement Notice Plan, ECF No. 363-12

90. Exhibits A-F to Keough Declaration, ECF No. 363-13

91. Proposed Order Granting Preliminary Approval of Class Action Settlement, ECF No. 363-14

92. Order Re Hearing on Motion for Preliminary Approval of Settlement, ECF No. 364

93. Letter to the Court, ECF No. 365

94. Questions for Preliminary Approval Hearing on September 25, ECF No. 375

95. Further Questions for Preliminary Approval Hearing on September 25, ECF No. 383

96. Declaration of Andrea Bartz, ECF No. 385

97. Declaration of Publishers' Coordination Counsel Jay Edelson and Matthew J. Oppenheim in Support of Supplemental Brief in Support of Motion for Preliminary Approval of Class Settlement, ECF No. 398

98. Supplemental Declaration of Court Appointed Class Counsel Rachel Geman and Justin A. Nelson in Support of Motion for Preliminary Approval of Settlement Agreement, ECF No. 400

99. Supplemental Brief in Support of Motion for Preliminary Approval of Class Settlement, ECF No. 401

100. Exhibit 1 to Supplemental Brief in Support of Motion for Preliminary Approval of Class

Settlement, ECF No. 401-1

101. Joint Response to Court's Questions for Preliminary Approval Hearing on September 25, 2025, ECF No. 418

102. Notice of Compliance with Directives at the Preliminary Approval Hearing and Request for April 23, 2026 Final Approval Hearing, ECF No. 432

103. Memorandum Opinion on Preliminary Approval of Class Action Settlement, ECF No. 437

104. Objection to Proposed Settlement, ECF No. 438

105. Notice of Compliance and First Report on Settlement Implementation, ECF No. 440

106. Plaintiffs' Notice of Motion and Motion for Order Limiting Third Party's Communications with Class Members and for Other Relief Pursuant to Fed. R. Civ. P.23(d), ECF No. 442

107. Plaintiffs' Ex Parte Application for an Order Shortening Time to Hear Plaintiffs' Motion for an Order Limiting Third Party's Communications with Class Members and for Other Relief Pursuant to Fed. R. Civ. P. 23(d), ECF No. 446

108. Plaintiffs' Response and Notice of Compliance Regarding Court's Order On Changes to Class Notice and the Appointment of a Special Master, ECF No. 455

109. Declaration of Rachel Geman in Support of Plaintiffs' Notice of Compliance, ECF No. 455-1

110. Exhibit A to Geman Declaration, ECF No. 455-2

111. Exhibit B to Geman Declaration, ECF No. 455-3

112. Exhibit C to Geman Declaration, ECF No. 455-4

113. Exhibit D to Geman Declaration, ECF No. 455-5

114. Exhibit E to Geman Declaration, ECF No. 455-6

115. Exhibit F to Geman Declaration, ECF No. 455-7

116. Exhibit G to Geman Declaration, ECF No. 455-8

117. Exhibit J to Geman Declaration, ECF No. 455-9

118. Revised Exhibit J to Geman Declaration, ECF No. 455-10

119. Exhibit K to Geman Declaration, ECF No. 455-11

120. Defendant Anthropic PBC's Statement Regarding Plaintiffs' Motion for An Order Limiting Communications with Class Members and for Other Relief Pursuant to Fed. R. Civ. P. 23(d), ECF No. 459

121. Third Party Claimshero Holdings LLC's Opposition to Plaintiffs' Motion for Order Limiting Third Party's Communications with Class Members and Other Relief Pursuant to Fed. R. Civ. P. 23(d), ECF No. 460

122. Declaration of Matthew Freund in Support of Claimshero's Opposition to Plaintiffs' Motion for Order Limiting Third Party's Communications with Class Members and Other Relief Pursuant to Fed. R. Civ. P. 23(d), ECF No. 461

123. Expert Declaration of Martin H. Redish in Support of Claimshero Holdings LLC's Opposition to Plaintiffs' Motion for Order Limiting Third Party Communications with Class Members and Other Relief, ECF No. 468

124. Exhibit 1 to Redish Declaration, ECF No. 468-1

125. Reply Brief in Support of Plaintiffs' Motion for Order Limiting Third Party's Communications with Class Members and Other Relief Pursuant to Fed. R. Civ. P. 23(d), ECF No. 477

126. Declaration of Rachel Geman in Support of Plaintiff's Reply Brief for Order Limiting Third Party's Communications with Class Members and Other Relief Pursuant to Fed.

**B-4**

R. Civ. P. 23(d), ECF No. 477-1
127. Exhibit A to Geman Declaration, ECF No. 477-2
128. Exhibit B to Geman Declaration, ECF No. 477-3
129. Amended Proposed Order Limiting Third Party's Communications with Class Members and Granting Other Relief, ECF No. 477-4
130. Request for Information, ECF No. 485
131. Plaintiffs' Response to Request for Information, ECF No. 486
132. Plaintiffs' Errata Regarding Plaintiffs' Response to Request for Information, ECF No. 487
133. Exhibit A to Plaintiffs' Errata Regarding Plaintiffs' Response to Request for Information, ECF No. 487-1
134. Further Order Re Request for Information, and Order to Preserve Communications, ECF No.488
135. Further Order on Status Report Re Changes to Class Notice, ECF No. 490
136. Order on Joint Motion to Extend the Notice Deadline, ECF No. 496
137. Joint Stipulation and Order Referring Claimant Disputes to Special Master Theodore K. Cheng, ECF No. 501

# EXHIBIT C

*Bartz v. Anthropic PBC*
Case No. 3:24-cv-05417-WHA
United States District Court for the Northern District of California

**EXPERT REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN**

EXHIBIT C
List of Cases with Multipliers of 4 or More

1.  *In re Merry-Go-Round Enters., Inc.*, 244 B.R. 327, 335–45 (Bankr. D. Md. 2000) ("Based on Fidelity's analysis which assumes a $300 blended hourly rate would be reasonable, the contingent fee requested by Snyder, Weiner, as modified, of $71.2 million would be 19.6 times the lodestar starting point . . . . Snyder, Weiner will be awarded its requested fee in the amount of $71.2 million for professional services as special litigation counsel for the Chapter 7 Trustee.") (bankruptcy).

2.  *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. CIV.A. 03-457, 2005 WL 1213926, at *18 (E.D. Pa. May 19, 2005) ("The Court further notes that the high lodestar multiplier (15.6) which results from the Court's award of attorneys' fees in this case is neutralized with respect to the reasonableness of a percentage fee award of 20% by the extraordinary support Plaintiffs have shown for counsel's request for fees.").

3.  *Vidrio v. United Airlines, Inc.*, No. CV 15-7985 PSG (MRWX), 2023 WL 11932248, at *11 (C.D. Cal. June 29, 2023) ("Comparing the lodestar with the requested fee, the resulting multiplier is approximately 15. . . . The Court finds that Class Counsel has achieved an extraordinary result, which justifies their attorneys' fees request and the exceptional lodestar multiplier.").

4.  *Glendora Cmty. Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 479 (Ct. App. 1984) ("The contention of [appellant] is that the fee sought is more than 12 times the fee for which services at an hourly rate would have been obtained from an attorney specializing in condemnation (including $8,000 for costs on appeal). Such calculations are based upon hindsight rather than reasonable expectation.") (condemnation proceeding).

5.  *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706, ECF No. 107 at 5 (S.D.N.Y. July 17, 2007) ("Lead Plaintiff's counsel's total lodestar is $1,917,094.50. A 15.25% fee represents a reasonable multiplier of 10.26. Given the public policy and judicial economy interests that support the expeditious settlement of cases . . . the requested fee is reasonable.").

6.  *Farrell v. Bank of Am. Corp., N.A.*, 827 Fed. Appx. 628, 636 (9th Cir. 2020) (J. Kleinfeld dissenting) ("A lodestar calculated using class counsel's own submitted numbers . . . amounted to $1,428,047.50. . . . [The] court awarded about ten times that much to class counsel").

7. *Health Republic Ins. Co. v. United States*, 173 Fed. Cl. 508, 527 (2024), *amended*, No. 16-259, 2025 WL 1565024 (Fed. Cl. June 3, 2025) ("[A] 2.5-percent fee award is reasonable, and the corresponding 9.56 multiplier based on a reduced lodestar is justified under the circumstances of these cases.").

8. *Weiss v. Mercedes-Benz*, 899 F. Supp. 1297 (D. N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995), as reported in *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 962 F. Supp. 572, 592 (D.N.J. 1997) (stating that *Weiss* court had "award[ed] fee that resulted in a multiple of 9.3 times the lodestar and an average hourly rate of $2,779.63"), *vacated on other grounds sub nom. In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998).

9. *Skochin v. Genworth Fin., Inc.*, No. 3:19-CV-49, 2020 WL 6536140, at *11 (E.D. Va. Nov. 5, 2020) (awarding fees of $2 million and 15% of the Settlement Class's net damage awards with a cap of $24.5 million, representing 9.05 multiplier).

10. *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. 1998) ("If a lodestar approach were used, the actual amount of attorney's fees of class counsel calculated by multiplying the number of hours worked by the hourly billing rate totals $826,665.00, such that the requested attorney's fees would constitute a lodestar multiplier of 8.9 percent. After hearing, and some hand-wringing, the Court concludes that the fee is not unreasonable under the common fund doctrine.") (class action within bankruptcy).

11. *Cosgrove v. Sullivan*, 759 F. Supp. 1667, 167 n.1 (S.D.N.Y. 1991) ("Under these circumstances, we set the prevailing counsel's fee at $1,000,000.00…[t]he total 'lodestar' in this case, which represents hours worked multiplied by a reasonable hourly rate, is $114,398.00.") (8.74 multiplier).

12. *Halcom v. Genworth Life Ins. Co.*, No. 3:21-CV-19, 2022 WL 2317435, at *13 (E.D. Va. June 28, 2022) ("Taking all of these considerations into account, the 8.4x multiplier is acceptable and the requested attorney fees are reasonable.").

13. *Muchnick v. First Fed. Sav. & Loan Ass'n of Phila.*, No. CIV.A. 86-1104, 1986 WL 10791, at *1 (E.D. Pa. Sept. 30, 1986) ("Although the lodestar in this case is approximately $30,000.00, counsel seeks an attorneys' fee of $250,000.00 . . . I conclude that the requested fee is eminently reasonable under the circumstances of this case and can be justified under the lodestar method of calculation") (8.33 multiplier).

14. *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, Civil Action No. 05-11148-PBS, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) ("Balancing all the factors under the crosscheck approach, I award the amount of $70,000,000, which represents a multiplier of about 8.3 times lodestar, and about 20 percent of the common fund.").

15. *Santos v. Camacho*, No. CIV. 04-00006, 2008 WL 8602098, at*39 (D. Guam Apr. 23, 2008) ("Based on the significant results achieved through the efforts of Class Counsel in

creating the funds for settlement and in light of case law, the court should find that this factor weighs strongly in favor of granting counsel a multiplier of 8."), *aff'd Simpao v. Gov't of Guam,* 369 F. App'x 837, 840 (9th Cir. 2010).

16. *Yuzary v. HSBC Bank USA, N.A.*, No. 12 CIV. 3693 PGG, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) ("Here, the lodestar sought by Class Counsel, approximately 7.6 times, falls within the range granted by courts and equals the 31.7% being sought. While this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial.").

17. *Hainey v. Parrott*, No. 1:02-CV-733, 2007 WL 3308027, at *1-2 (S.D. Ohio Nov. 6, 2007) ("[C]ounsel's lodestar fee calculation is approximately $241,000…[i]n consideration of the above factors, the Court finds that an award of attorney's fees of 30% of the common fund, or $1.8 million, is appropriate in this case.") (7.47 effective multiplier).

18. *In re Dell Techs. Inc. Class V S'holders Litig.*, 300 A.3d 679, 715 (Del. Ch. 2023), *as revised* (Aug. 21, 2023), *aff'd*, 326 A.3d 686 (Del. 2024) (observing that the "multiple to lodestar of 7x in this case would not raise a federal eyebrow").

19. *In re Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (awarding a "final fee of $232,310" contrasted with "hourly fees of $33,110," implying a ~7.0 multiplier) (bankruptcy).

20. *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) ("Based on the $31,660,328.75 proposed fee award and the $4,549,824.75 lodestar, we conclude that plaintiffs' counsel requests approval of a fee award with a 6.96 multiplier.").

21. *Steiner v. Amer. Broad. Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) ("Based on class counsel's total hours, the lodestar multiplier was approximately 6.85. Although this multiplier is higher than those in many common fund cases, it still falls well within the range of multipliers that courts have allowed.") (internal citations omitted).

22. *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 CIV. 0520 JLC, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) (granting fees equal to 6.8 times lodestar).

23. *Riveras v. Bilboa Rest. Corp.*, No. 17-CV-4430-LTS-BCM, 2018 WL 8967112, at *1 (S.D.N.Y. Dec. 14, 2018) (finding 6.7 multiplier reasonable in FLSA action).

24. *Elec. Welfare Tr. Fund v. United States*, 171 Fed. Cl. 362, 388–89 (2024) ("Class Counsel's proposed fee of 25% net expenses 'represents a multiplier of approximately 6.63 on Counsel's total lodestar.' Though a 6.63 multiplier is higher than the normal 'range of 1 to 4' acknowledged in *Health Republic Ins. Co.*, it is nonetheless reasonable and consistent with the principles established by the Federal Circuit.") (internal citations and footnote omitted).

25. *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 3d 1094, 1106 (D. Minn. 2009) ("Using the Court-calculated lodestar, this fee would represent a multiplier of nearly 6.5. The Court finds this multiplier appropriate.").

26. *Nieman v. Duke Energy Corp.*, No. 312CV00456MOCDSC, 2015 WL 13609363, at *2 (W.D.N.C. Nov. 2, 2015) ("The amount of the settlement and the efficiency of counsel in reaching such a resolution reinforce an upward variance from a 4.5 multiplier, but not an 8.0 multiplier. Considering all of the arguments presented, the court finds that the work accomplished in this case—which was substantial—is reasonably compensated by an 18% fee when the *Johnson* factors are considered and then crosschecked.") (6.43 multiplier).

27. *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Here, the lodestar sought by Class Counsel, approximately 6.3 times, falls within the range granted by courts and equals the one-third percentage being sought. While this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial.").

28. *Spartanburg Reg'l Health Servs. Dist., Inc. v. Hillenbrand Indus., Inc.*, No. 7:03-cv-02141, ECF Nos. 377 (D. S.C. Aug. 15, 2006) (approving fee request noting multiplier "slightly above six"); ECF No. 338-5 (providing data showing 6.22 multiplier).

29. *Stevens v. SEI Invs. Co.*, No. CV 18-4205, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) ("Class Counsel's request for $2,266,666.00 (one-third of the settlement amount) will result in Class Counsel receiving approximately 6.16 times the lodestar. Courts frequently approve attorneys' fees awards for amounts in excess of the calculated lodestar. Indeed, multiples ranging from 1 to 8 are often used in common fund cases.").

30. *Kane Cty., Utah v. United States*, 145 Fed. Cl. 15, 20 (2019) ("In order to equal one third of the total recovery, this lodestar amount must be subjected to a multiplier of approximately 6.13, which is within the range courts have approved in common fund cases.").

31. *Wenzel v. Colvin*, No. EDCV 11-0338 JEM, 2014 WL 3810247, at *4 (C.D. Cal. Aug. 1, 2014) ("The $1,000 per hour rate constitutes a multiplier of 6.06 over counsel's normal hourly rate, consistent with cases that reward excellent results.").

32. *In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) ("The loadstar calculation submitted by Class Counsel totals over $41 million as of April 1, reflecting over 93,000 hours of work by Class Counsel. This amount is equivalent to a loadstar multiple of just over 6.").

33. *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) ("From the Court's analysis of the previous factors, the Court has found that approximately 18%

is a reasonable award, which would yield a lodestar multiplier of six.").

34. *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*, No. 1:04-cv-00416, ECF No. 203 (M.D. N.C. Feb. 15, 2007) (approving fee request); ECF No. 193 at 17 (stating fee request embodied multiplier of "approximately 6").

35. *Ladewig v. Ariz. Dep't of Revenue*, 204 Ariz. 352, 359, 63 P.3d 1089, 1096 (Ariz. Tax Ct. 2003) ("In this case, the Court believes that in light of the lengthy delay in recovery, and the high risks assumed by counsel, that a lodestar multiplier of 6 is appropriate.").

36. *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905(MBM), 1992 WL 210138, at *5–6 (S.D. N.Y. Aug. 14, 1992) ("[T]he requested fees total six times the value of the time spent by plaintiffs' counsel, what is referred to as the lodestar amount, which amount he says equals the total fees of all defense counsel. . . .  [T]he award of a percentage fee in common fund cases such as this is consistent with the better and increasingly prevailing view in such cases, the requested percentage lies well within the limits awarded in similar cases, plaintiffs' counsel have not taken a free ride on the efforts of a government agency and the settlement was skillfully negotiated.").

37. *Perera v. Chiron Corp.*, No. 95-20725-SW, (N.D. Cal. 1999) (ECF. No. 108) ("[T]his Court believes that a multiplier of 5.96 is not unreasonable given the riskiness of this litigation . . . .").

38. *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 271 (S.D.N.Y. 2020) ("Class Counsel's requested fee represents a lodestar multiplier of 5.85, which is within the range of acceptable multipliers.").

39. *Williams v. Rohm & Haas Pension Plan*, No. 04-0078-SEB, 2010 WL 4723725 (S.D. Ind. Nov. 12, 2010), *aff'd*, 658 F.3d 629 (7th Cir. 2011) (awarding fees of $43.5 million, representing 5.85 multiplier).

40. *Rogowski v. State Farm Life Ins. Co.*, No. 4:22-CV-00203-RK, 2023 WL 5125113, at *5 n.8 (W.D. Mo. Apr. 18, 2023). ("Accepting Class Counsel's updated lodestar multiplier of 5.75 . . . while high, the lodestar multiplier is not unreasonably so.").

41. *In re Mercedes-Benz Emissions Litig.*, No. 216CV881KMESK, 2021 WL 7833193, at *16 (D.N.J. Aug. 2, 2021) ("The requested fee award results in applying a multiplier of 5.67, within the range of multipliers typically awarded in the Third Circuit."), *adopted in full*, *In re Mercedes-Benz Emissions Litig.*, No. 2:16-cv-00881 (D.N.J. Sept. 20, 2021), ECF No. 345.

42. *Athale v. Sinotech Energy Ltd.*, No. 11 CIV. 05831 (AJN), 2013 WL 11310686, at *9 (S.D.N.Y. Sept. 4, 2013) ("This amounts to a lodestar multiplier of 5.65, which although high, is not unreasonable under the particular facts of this case.").

43. *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741,

at *22 (E.D. Mo. June 30, 2005) ("Here fees of 20% of the settlement yield a 5.61 multiplier, which is within the range of multipliers awarded in comparable complex cases.").

44. *Roman v. Jan-Pro Franchising Int'l, Inc.*, No. 3:16-CV-05961-WHA, 2024 WL 2412387, at *5 (N.D. Cal. May 23, 2024) ("[I]n light of the strong result achieved for the class, this order finds that an upward deviation from the 25% benchmark is appropriate such that class counsel should be awarded 30% of the common fund settlement which would result in a lodestar multiplier of 5.59.").

45. *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) ("Under such circumstances, a 5.5 times lodestar based on the $3,482,571.75 time charges appears reasonable.").

46. *Kang v. Wells Fargo Bank, N.A.*, No. 17-CV-06220-BLF, 2021 WL 5826230, at *18 (N.D. Cal. Dec. 8, 2021) (awarding fees of $21,053,146.92, representing 5.49 multiplier).

47. *Geneva Rock Prod., Inc. v. United States*, 119 Fed. Cl. 581, 595 (2015), *rev'd on other grounds*, *Longnecker Prop. v. United States*, No. 2015-5045, 2016 WL 9445914 (Fed. Cir. Nov. 14, 2016) ("In this case, an award 5.39 times the lodestar is reasonable under RCFC 23(h), given the complexity of the litigation, the diligent and skillful work by class counsel, and the pendency of the case for over six years.").

48. *Arrington v. Optimum Healthcare IT, LLC.*, No. CV 17-3950, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018) ("When calculated against the requested fee of $1,633,333.33, the lodestar multiplier is 5.3. . . . However, in this case, class counsel undertook significant risk to achieve a substantial settlement amount, and should not be penalized for settling the case early in the litigation. We are satisfied with the reasonableness of the requested fee and we will approve class counsel's request for $1,633,333.33 in attorneys' fees.").

49. *Rawa v. Monsanto Co.*, No. 4:17CV01252 AGF, 2018 WL 2389040, at *9 (E.D. Mo. May 25, 2018), on appeal (noting that fee award had "corresponding lodestar multiplier of 5.3" that was "quite high compared to similar cases in this circuit" but finding it not "too high").

50. *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) ("In this case, dividing the $14 million fee request by the lodestar figure yields a multiplier of about 5.3. A review of the case law indicates that while that figure is toward the high end of acceptable multipliers, it is not atypical for similar fee-award cases.").

51. *Merkner v. AK Steel Corp.*, No. 1:09-CV-423-TSB, 2011 WL 13202629, at *5 (S.D. Ohio Jan. 10, 2011) ("Applying the rates requested with regard to the hours reflected in the Declarations of Mr. Coleman and Ms. Wallace yields a lodestar figure of $1,699,467. In light of the $9.1 million sought, the 'lodestar multiplier' would be 5.3. This multiplier

is acceptable under the facts and circumstances of this case.").

52. *Di Giacomo v. Plains All Am. Pipeline*, No. CIV.A.H-99-4137, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) ("This court finds that 5.3 is an acceptable multiplier in light of the particular facts of this case, discussed more fully below.").

53. *Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-CV-119, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020) ("The multiplier on Class Counsel's lodestar is approximately 5.29 before accounting for any additional work. This is within the acceptable range.").

54. *Pinzon v. Jony Food Corp.*, No. 18-CV-105 (RA), 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) ("Although it is a close question, the settlement here falls within a reasonable range. According to the documentation and calculations submitted by Plaintiff's counsel, their lodestar amounts to $5,053. Even accepting the hours and fees requested by Plaintiff's counsel as accurate and reasonable, the fee award requested here has a lodestar multiplier of 5.23. This multiplier is on the high end of those generally allowed in this Circuit, but it is not unheard of … The Court thus approves the proposed attorneys' fees under the percentage of the fund method.").

55. *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347 (S.D.N.Y. 2014) (noting that, "A fee award of 25% of the fund or $11,475,000 would represent a multiplier of 5.2 of the lodestar" and approving 25% award).

56. *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) ("The plaintiffs' request in this case for 25% of the class fund would result in a fee of $6,375,000, which is a multiplier of approximately 5.2 times the $1.2 Million lodestar in this case. The Court has concluded that it will award Class Counsel 25% of the class fund, and addresses the reasons for doing so below.").

57. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 791 (S.D. Tex. 2008) ("[T]he Court finds that the exceptional obstacles to recovery that were present here, and the remarkable success obtained by Lead Counsel's skill and experience make this a rare and exceptional case warranting the application of the requested 5.2 multiplier under a lodestar cross-check or enhancement under a lodestar analysis.") (internal quotation marks and citation omitted).

58. *Zeltser v. Merrill Lynch & Co.*, No. 13 CIV. 1531 FM, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (stating that "the lodestar sought by Class Counsel, approximately 5.1 times the fees sought, falls within the range granted by courts" and approving award).

59. *Ferrick v. Spotify USA Inc.*, No. 16-CV-8412 (AJN), 2018 WL 2324076, at *10 (S.D.N.Y. May 22, 2018) (finding that fee amounting to a 5.02 multiplier would "adequately compensate Class Counsel, and it recognizes the complexity of the case, the risks involved in the litigation, the efforts of Class Counsel and the quality of representation provided, and the benefits to the class from the settlement").

60.    *In re Fernald Litig.*, No. C-1-85-149, 1989 WL 267038, at *5 (S.D. Ohio Sept. 29, 1989) ("We conclude, therefore, that plaintiffs' class counsel are entitled to twenty (20%) percent of the common fund created or an equivalent multiplier of five.").

61.    *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) ("Based on the requested fee ($13,500,000), class counsel's aggregate lodestar yields a 'crosscheck' multiplier of 4.87. This is well within the range of crosscheck multipliers awarded in this circuit.").

62.    *Perez v. Rash Curtis & Assocs.*, No. 4:16-CV-03396-YGR, 2021 WL 4503314, at *5 (N.D. Cal. Oct. 1, 2021) ("That said, and given the recovery to the class, the Court will authorize distribution of thirty-seven percent of the Settlement Amount to account for the fact that one of the two cases did in fact go to trial and under the agreement with plaintiff Perez, class counsel could have sought authorization of forty percent for that matter. Thirty-seven percent totals $27,972,000 which increases class counsel's lodestar to 4.8 and will address, in part, class counsel's independent decision to enter into a litigation funding agreement.").

63.    *Meijer, Inc. v. 3M*, No. CIV.A. 04-5871, 2006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006) ("[T]he Court finds that, given the facts of this case, the requested lodestar multiplier of 4.77 is acceptable and does not call for a reduction in Plaintiffs' Counsel's requested attorneys' fees award.").

64.    *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021), *appeal dismissed*, No. 21-15555, 2021 WL 2660668 (9th Cir. June 22, 2021), and *aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) ("Reducing the fee here to $97,500,000, reduces the multiplier to 4.71. This is more in line with comparable settlements, still sufficiently and appropriately generous, and more reasonable in the circumstances here. The results obtained and the risks at trial warrant a higher-end multiplier of 4.71, but not more.").

65.    *Cornwell v. Credit Suisse Grp.*, No. 08-CV-03758(VM), 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) ("Lead Plaintiffs' counsel's total lodestar is $4,049,631.50. A 27.5% fee represents a multiplier of 4.7. Given the public policy and judicial economy interests that support the expeditious settlement of cases, the requested fee is reasonable.") (citation omitted).

66.    *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005) (approving lodestar multiplier of 4.7 for securities class action component, because "[u]nder these circumstances, the court concludes that the 25% attorney fee, when cross-checked against a lodestar multiplier of 4.7, is reasonable"; also approving lodestar multiplier of 2.16 for ERISA component).

67.    *Bodnar v. Bank of Am., N.A.*, No. CV 14-3224, 2016 WL 4582084, at *6 (E.D. Pa. Aug. 4, 2016) ("The collective lodestar for Class Counsel is $1,933,795.95. Accordingly,

an award of 33% of the Settlement Fund or $9,075,000 results in a multiplier here of 4.69. Given the nature, complexity, and potential duration of this Action, as detailed above, the risk of non-recovery, the value of the social benefit, and the extraordinary results in light of the obstacles, the court finds that the multiplier is appropriate and reasonable, including when compared to awards in other cases in this court and Circuit.").

68.  *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("Finally, in 'cross-checking' the percentage fee against the lodestar-multiple, it clearly appears that the modest multiplier of 4.65 is fair and reasonable.").

69.  *Flores v. Express Servs., Inc.*, No. CV 14-3298, 2017 WL 1177098, at *4 (E.D. Pa. Mar. 30, 2017) ("The counsel fee request of $1,895,362.33 results in a multiplier of 4.6 . . . . This multiplier is reasonable . . .").

70.  *In re Alphabet, Inc. Sec. Litig.*, No. 18-CV-06245-TLT, 2024 WL 4354988, at *7 (N.D. Cal. Sept. 30, 2024) ("Here, the lodestar multiplier is approximately 4.58, which the Court finds reasonable.").

71.  *Holleran v Rita Medical Sys., Inc.*, No. RG06302394, 2007 WL 7759253 (Cal. Super. Oct. 04, 2007) ("Counsel for Plaintiffs seek fees in the total amount of $290,000, which represents a multiplier of 4.57. The agreed fees sought are substantially higher than the lodestar, but presumably reflect the contingent risk of the case to class counsel, the benefits of certainty and of limiting its own attorneys' fees to Angiodynamics, and other factors.").

72.  *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *7 & 8 n.3 (N.D. Cal. May 21, 2015) (stating that, "[c]onsidering all of the facts and circumstances, the Court, in its discretion, concludes that [one firm] deserves a multiplier of 2 and [second firm] deserves a multiplier of 5.5" and noting that net result is a total multiplier of 4.53).

73.  *Mun. Auth. of Bloomsburg v. Pennsylvania*, 527 F. Supp. 982, 1000 (M.D. Pa. 1981) ("The multiplier of 4.5 requested by Petitioners will be applied to the lodestar fee despite the facts that such a multiplier is extremely high and appears to be probably without precedent. It is warranted only because of the peculiar facts of this case.").

74.  *Deloach v. Philip Morris Cos.*, No. 1:00CV01235, 2003 WL 23094907, at *11 (M.D.N.C. Dec. 19, 2003) ("A multiplier of 4.45, in conjunction with an adjusted lodestar of $15,914,905.50, results in a fee award of $70,821,329.48. This figure represents a reasonable fee for the services provided by Plaintiffs' Co–Lead Counsel in this case.").

75.  *Carrigan v. Xerox Corp.*, No. 3:21-CV-1085 (SVN), 2024 WL 1639535, at *7 (D. Conn. Apr. 16, 2024) ("While even the 4.423 multiplier is at the higher end of what courts have found to be reasonable, this Court finds that it is reasonable in this case . . . .").

76. *Rabin v. Concord Assets Grp., Inc.*, No. 89 Civ. 6130, 1991 WL 275757 (S.D. N.Y. Dec. 19, 1991) ("The requested attorneys' fees of $2,544,122.78 represents a multiplier of 4.4 to the lodestar figure based on time (which this Court finds to have been reasonably expended) and at various hourly rates (which this Court finds to be reasonable for the particular attorneys performing services).").

77. *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 WL 6305785, at *6 (M.D.N.C. Dec. 3, 2018) ("In sum, a 4.39 multiplier is reasonable for this case.").

78. *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *7 (N.D. Cal. May 11, 2018) ("This amount requires a risk multiplier of 4.375 to reach the $3.5 million Plaintiffs seek. Though on the high end, this multiplier falls within the range of reasonableness.").

79. *Monserrate v. Tequipment, Inc.*, No. 11 CV 6090 RML, 2012 WL 5830557, at *4 (E.D.N.Y. Nov. 16, 2012) ("In sum, I find that a fee award of $465,000 which provides a 4.34 multiplier of the reduced lodestar and constitutes fifteen percent of the $3,100,000.00 Settlement Fund, is a fair and reasonable fee under *Goldberger* and related cases and should adequately compensate class counsel for its time and effort, for the risk it faced in this case, and for the high quality of its representation. Moreover, that reduced fee award will allow additional monies to be distributed to class members.").

80. *Demaria v. Horizon Healthcare Servs., Inc.*, No. 2:11-CV-07298 (WJM), 2016 WL 6089713, at *5 (D.N.J. Oct. 18, 2016) ("Although a lodestar multiplier of 4.3 is large, it is not unreasonable.").

81. *In re VeriFone Holdings, Inc. Sec. Litig.*, No. C-07-6140 EMC, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) ("[A]lthough the lodestar cross-check though reveals a high multiplier—4.3 compared to the Ninth Circuit's observation that over 80% of multipliers fall between 1.0 and 4.0—other courts have awarded multipliers in excess of 4.0, and the Court finds that the multiplier here is acceptable in light of the very substantial risks involved and Lead Plaintiff's risk and extensive work on the case.").

82. *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) ("The resulting multiplier of 4.3 is reasonable in light of the time and labor required, the difficulty of the issues involved, the requisite legal skill and experience necessary, the excellent and quick results.").

83. *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) ("Even assuming a value of one dollar per share, the 4.3 lodestar multiplier would be proper in this case.").

84. *Patti's Pitas, LLC v. Wells Fargo Merch. Servs., LLC*, No. 1:17-CV-04583 (AKT), 2021 WL 5879167, at *5 (E.D.N.Y. July 22, 2021) ("Dividing the $12 million fee request by Class Counsel's lodestar yields an implied 'multiplier' of approximately 4.26. This is within the range of multipliers approved during lodestar cross checks of percentage-of-

fund awards.").

85. *Shannon v. Hidalgo Cnty. Bd. of Comm'rs*, No. 6:08-cv-00369, ECF No. 35 at 3 (D. N.M. June 4, 2009) ("Class Counsel are awarded reasonable attorneys' fees, costs and gross receipts tax in the total amount of $333,333, to be paid forthwith from the settlement fund.") (4.2 multiplier).

86. *In re Twitter Inc. Sec. Litig.*, No. 416CV05314JSTSK, 2022 WL 17248115, at *1–2 (N.D. Cal. Nov. 21, 2022) (awarding a 22.5% fee in a $809.5 million settlement, implying a 4.15 multiplier given the "lodestar value of $43,931,080.75").

87. *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-CV-01797-MSG, 2015 WL 12843830, at *6 (E.D. Pa. Oct. 15, 2015) ("A 27.5% fee award would equate to a lodestar multiplier of approximately 4.12. Such a multiplier is within the range of those frequently awarded in common fund cases.").

88. *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593, at *5 (S.D.N.Y. June 16, 2020) ("A fee award of 20% of the settlement fund, or $77.3 million, thus represents a multiplier of 4.09 of this lodestar. Although on the high end, a 4.09 multiplier is within the range of what has considered reasonable by courts.").

89. *Koch v. Desert States Emps. & UFCW Unions Pension Plan*, No. CV-20-02187-PHX-DJH, 2021 WL 6063534, at *7 (D. Ariz. Dec. 22, 2021) ("For the reasons stated in the Court's Order approving the Settlement Agreement and herein, a 4.0 multiplier of the Court's calculated lodestar is appropriate for Class Counsel in this particular case.").

90. *Uschold v. NSMG Shared Servs., LLC*, No. 18-CV-01039-JSC, 2020 WL 3035776, at *16 (N.D. Cal. June 5, 2020) ("A multiplier of 4 is warranted here based on the contingent nature of the fee agreement and Mr. Benjamin's explanation at the final approval hearing that this action required the majority of his firm's resources and attention since January 2018. The high end multiplier is warranted because it would result in a percentage of recovery of 12.9% of the Gross Settlement Amount, which is below "the usual range" awarded in common fund cases.").

91. *Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 3446596, at *6 (E.D. Mich. Aug. 11, 2017) ("Here, as discussed, the risk in this case was considerable but not extraordinary. A multiplier of 4 would seem to adequately account for that risk.").

92. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012) ("Here, the requested fee would represent a multiplier of approximately four times lodestar, which is well within the range of approved fees.").

93. *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359-60 (S.D.N.Y. 2003) ("When combined with the attorneys' fees awarded pursuant to the Citigroup Settlement, the amount sought is equivalent to a lodestar multiple of 4.0. . . . As no objection remains

to the amount of costs sought by Lead Counsel, and the expenses do not appear facially unreasonable, the application for reimbursement of expenses is approved.").

94. *In re Cenco Inc. Sec. Litig.*, 519 F. Supp. 322, 327 (N.D. Ill. 1981) ("Accordingly, the lodestar rate and expenses sought are reasonable. Further, the court finds that a multiple of 4 accurately takes into account the factors discussed above and awards Sachnoff attorneys' fees in the amount of $893,450.00 plus $41,300.00 for paralegals and $24,783.32 in expenses.").