DOUGLAS A. WINTHROP (No. 183532)
Douglas.Winthrop@arnoldporter.com
JOSEPH FARRIS (No. 263405)
Joseph.Farris@arnoldporter.com
JESSICA L. GILLOTTE (No. 333517)
Jessica.Gillotte@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400

KATHLEEN R. HARTNETT (No. 314267)
khartnett@cooley.com
**COOLEY LLP**
Three Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

DARALYN J. DURIE (No. 169825)
Ddurie@mofo.com
RAMSEY W. FISHER (No. 334228)
RamseyFisher@mofo.com
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Defendant* ANTHROPIC PBC
(Additional Counsel on Next Page)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC. CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 3:24-cv-05417-WHA<br><br>**ANTHROPIC PBC'S RESPONSE TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES** |

1  RYAN NISHIMOTO (No. 235208)
   Ryan.Nishimoto@arnoldporter.com
2  OSCAR RAMALLO (No. 241487)
   Oscar.Ramallo@arnoldporter.com
3  ALLYSON MYERS (No. 342038)
   Ally.Myers@arnoldporter.com
4  **ARNOLD & PORTER KAYE SCHOLER LLP**
   777 South Figueroa Street, 44th Floor
5  Los Angeles, CA 90017-5844
   Telephone: (213) 243-4000
6  Facsimile: (213) 243-4199

7  EPHRAIM MCDOWELL (*pro hac vice*)
   emcdowell@cooley.com
8  ALEXANDER J. KASNER (No. 310637)
   akasner@cooley.com
9  **COOLEY LLP**
   1299 Pennsylvania Avenue NW, Suite 700
10 Washington, DC 20004-2400
   Telephone: (202) 842-7800
11 Facsimile: (202) 842-7899

   WHITNEY R. O'BYRNE (No. 325698)
   WOByrne@mofo.com
   **MORRISON & FOERSTER LLP**
   707 Wilshire Boulevard
   Los Angeles, CA 90017-3543
   Telephone: (213) 892-5200
   Facsimile: (213) 892-5454

   FITZ BECKWITH COLLINGS
   (*pro hac vice*)
   FCollings@mofo.com
   ADITYA KAMDAR (No. 324567)
   AKamdar@mofo.com
   **MORRISON & FOERSTER LLP**
   2100 L Street, NW, Suite 900
   Washington, D.C. 20037
   Telephone: (202) 887-1500
   Facsimile: (202) 887-0763

12
13 *Attorneys for Defendant*
   ANTHROPIC PBC

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................................ 1

I.    The Requested Awards to Non-Class-Counsel Should Be Substantially Reduced or Eliminated Entirely .................................................................................................................. 1

    A.    Non-Class Counsel Have Not Adequately Justified Any Award .............................. 2

    B.    At Minimum, Any Award to the Additional Firms Should be Significantly Reduced, and the Court Should Require the Submission of All Timesheets ............ 5

II.    A Significant Body of Caselaw Supports Use of the Lodestar Method When There Is a Large Settlement Fund ................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Gutierrez v. Wells Fargo Bank, N.A.*,
    2015 WL 2438274 (N.D. Cal. May 21, 2015) ............................................................... *passim*

*In re Bluetooth Headset Products Liability Litigation*,
    654 F.3d 935 (9th Cir. 2011) ..................................................................................................10

*In re Glumetza Antitrust Litig.*,
    2022 WL 327707 (N.D. Cal. Feb. 3, 2022) ....................................................................6, 10, 11

*In re High-Tech Employee Antitrust Litigation*,
    2015 WL 5158730 (N.D. Cal. 2015) .....................................................................................11

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ...................................................................................................9

*In re Optical Disk Drive Prods. Antitrust Litig.*,
    959 F.3d 922 (9th Cir. 2020) .................................................................................................10

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    914 F.3d 623 (9th Cir. 2019) ...................................................................................................3

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 4212811 (N.D. Cal. July 22, 2020), aff'd, No. 20-16633, 2022 WL
    2304236 (9th Cir. June 27, 2022) ............................................................................................8

*In re Zoom Sec. Litig.*,
    2025 WL 3078702 (N.D. Cal. Nov. 4, 2025) .................................................................6, 10, 11

*Nitsch v. DreamWorks Animation SKG Inc.*,
    2017 WL 2423161 (N.D. Cal. June 5, 2017) ..........................................................................6

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
    281 F. Supp. 3d 833 (N.D. Cal. 2017) .....................................................................................7

*Ward v. United Airlines, Inc.*,
    2024 WL 269149 (N.D. Cal. Jan. 24, 2024) ............................................................................6

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs have filed a fee motion seeking 20 percent of the settlement fund—$300 million before interest—with $225 million going to Class Counsel and $75 million split between three additional law firms that do not serve as Class Counsel. Anthropic responds to emphasize two points. First, there is scant justification or substantiation for the extraordinary fees sought by non-Class Counsel—the Authors and Publishers "Coordination Counsel." These three firms request awards of 95 times, 23 times, and 15 times the fees they claim to have incurred, well in excess of the multipliers sought by Class Counsel. They took on none of the risk in this case and their claimed hours are excessive. For example, one firm that appeared in this case on August 11, two weeks before the parties signed the settlement term sheet, claims to have worked over 2400 hours between August and November. To the extent the Court awards these three additional firms anything at all, the awards should be reduced to a reasonable amount, which would allow for a larger recovery for the Class.

Second, while Anthropic takes no position on the precise fee award that would be appropriate for Class Counsel in this case, Anthropic notes that a significant body of caselaw calls into question counsel's proposal to use a benchmark percentage as the primary method to determine the fees in the context of a "megafund" settlement like this. Applying a lodestar method would allow the Court to review the hours incurred—as well as the significant number of hours that counsel predict they will work in the future—to ensure that the award is reasonable and fair to the Class.

**I.    The Requested Awards to Non-Class-Counsel Should Be Substantially Reduced or Eliminated Entirely**

Edelson PC and Oppenheim + Zebrak ("O+Z"), describing themselves as Publishers' Coordination Counsel,[1] seek a combined $60 million in fees; Cowan DeBaets, Abrahams & Sheppard LLP ("Cowan"), describing itself as Authors' Coordination Counsel, seeks $15 million.

---

[1] It is not clear which publishers, precisely, these firms represent.

ECF 505 at 17.[2] But there is no presumption that these three additional law firms deserve any compensation from the settlement fund at all.

To the contrary, the Court has already expressed its expectation that these firms would not be paid out of class funds. The Court stated at the September 8, 2025 settlement-approval hearing that "there will be not one penny paid to any lawyer except class counsel." 9-8-25 Tr. 14:18-25. The Court noted that Class Counsel Susman Godfrey L.L.P. ("Susman") and Lieff Cabraser ("Lieff") had "taken it upon [themselves] to draw in this army of allied people to help solve this problem. But . . . they get their money from somebody else, not from the 1.5 . . . billion." 9-8-25 Tr. 15:1-6. The Court went on to state that "every single one of these add-on lawyers and organizations is proceeding at their risk. And maybe they get paid by the author. Maybe they get paid by the publisher. But to ask that they're going to get paid through the 1.5 billion directly by a court approved -- no, not yet, and probably never. But I can't say 'never'; I'll just say 'probably never.'" 9-8-25 Tr. 18:6-14.

### A.     Non-Class Counsel Have Not Adequately Justified Any Award

The Publishers' and Authors' Coordination Counsel's descriptions of their work in this case do not justify reconsideration of the Court's initial conclusion that they should not be paid out of the class settlement fund. The two "PCC" firms, Edelson and O+Z, submit only summaries of their hours and high-level categorical descriptions of their work, but fail to submit any billing records detailing that work. The description in their joint declaration reflects that, after the Court partially denied Anthropic's summary judgment motion and certified the class, Edelson and O+Z sought to become involved in the litigation for the first time and began reaching out to publishers in an effort to find clients. ECF 505-4 at 10. Yet no major publisher or publisher association appears to have been willing to pay Edelson or O+Z to become involved, perhaps because the publishers were already represented by Class Counsel. *See* 9-8-25 Tr. 32:19-20 (this Court noting, to Susman and Lieff: "You're the class counsel and you represent both authors and publishers"). Nonetheless, Edelson and O+Z entered appearances as "Publishers' Coordination Counsel" on August 11, 2025— after the Layn Phillips mediation that led to the settlement had been scheduled, three days before

---

[2] All citations are to the page numbers reflected in ECF header stamps.

mediation statements were submitted, eight days before the mediation took place, and 14 days before the parties reached a settlement. *Cf.* 9-8-25 Tr. 38:22-25 (Court: "I have an uneasy feeling about all of these hangers-on that are in the shadows. When this kind of money gets on the table, people come out of the woodwork. And they want a piece of the action …").

Unlike Edelson and O+Z, Cowan was listed as counsel of record on the complaint from the beginning. But Cowan's declaration is vague as to the extent of its work representing the class before the settlement. It did not enter its appearance as "Authors' Coordination Counsel" until September 7, 2025, and the majority of its work occurred after the settlement was reached.[3]

It is not clear who the firms purport to be representing in this case. To the extent they are representing anyone at all, Anthropic presumes that it is large publishers, or trade groups of authors or publishers like the Association of American Publishers, who are perfectly capable of paying for their own counsel. At the very least, Edelson, O+Z, and Cowan should have to identify which class members (or trade groups) they have been retained by and which class members (or trade groups) they have been coordinating, so that the Court can understand which interests within the class they represent, and whether their clients represent a significant enough portion of the class such that compensation from the settlement fund is warranted.

But even if these firms had worked hard on the litigation at the request of Class Counsel on behalf of some portion of the class, that would not entitle them to recover from the settlement fund. "The mere fact that a non-designated counsel worked diligently and competently with the goal of benefiting the class is *not* sufficient to merit compensation." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 914 F.3d 623, 644-45 (9th Cir. 2019). Rather, counsel must establish that their efforts helped to "create, discover, increase, or preserve the class's ultimate recovery." *Id.* at 645. The declarations in this case do not show that the PCC or ACC firms did so. Edelson and O+Z offer the self-serving statement that the "$1.5 billion settlement . . . would not

---

[3] Although its billing records are not sufficiently detailed to allow for a precise calculation, two of Cowan's timekeepers accounting for more than half of the total hours expended began work on or after August 27, 2025. ECF 505-5 at 7. That date is after the Court issued both the summary judgment and the class certification orders, and after the parties filed their notice of a settlement in principle.

exist but for the contributions of **the publishers** and the PCC." ECF 505-4 at 12 (emphasis added). But the contribution of the publishers does not merit compensation to the PCC; the publishers are class members and are represented by Class Counsel. And the notion that the "Firms' own experience negotiating large settlements" was "critical," *id.*, is just not plausible. Lieff and Susman also have ample experience negotiating large settlements.

The PCC firms also assert that they "engaged in an all-out effort to assist Class Counsel in compiling the Works List" and that, "[w]ith that assistance from the PCC, Class Counsel was able to refine these matching processes and identify works which otherwise may not have been included. These efforts resulted in a Works List at least 20% larger than otherwise." ECF 505-4 at 11-12. But it was Class Counsel's role to improve the Works List. The PCC firms refer vaguely to "assistance," but make no effort to explain what if any portion of that 20% increase was actually attributable to efforts by the PCC, as opposed to efforts by Class Counsel or the publishers/authors themselves. Indeed, Cowan, which served as "Authors' Coordinating Counsel," likewise takes credit for the Works List, asserting that it too improved the process of matching works to class criteria and that its efforts enabled "Class Counsel … to verify tens of thousands of additional works for inclusion on the Works List." ECF 505-5 at 4-5. None of the additional firms explain how their involvement was non-duplicative and necessary to facilitate these improvements; nor do they submit billing records with descriptions that would allow the Court to identify how much time they spent on these tasks and how their work differed from work done by Class Counsel. The Class should not be required to pay five separate firms to perform duplicative work improving the Works List.

Similarly, O+Z and Edelson state that they have spent "hundreds of hours assisting publishers with the claims process," for which they now seek compensation. ECF 505-4 at 18; *see also id.* at 13 (describing similar efforts). Class Counsel has hired a Claims Administrator, at a cost of $15 million, whose job it is (among other things) to help *all* class members with the claims process, on an equal footing. It is not clear why the class should compensate Edelson and O+Z at law firm hourly rates for providing extra help to certain class members. And given the "incredibly claimant-friendly distribution process" O+Z and Edelson take credit for devising, which they

"believe to be the most claimant-friendly ever designed," ECF 505-4 at 12, it is especially hard to see why O+Z and Edelson deserve such extraordinary compensation for shepherding a group of unidentified claimants through that already claimant-friendly process. Indeed, Class Counsel has advised that they are engaged in the same communications with the class and the same town halls that the additional firms claim credit for. ECF 505-3 at 3.

Finally, the sheer number of hours that Edelson and O+Z have claimed in this case casts substantial doubt on the notion that most of their work, much less all of it, actually conveyed some concrete benefit to the class. O+Z entered the case on August 11, 2025, but claims that it billed 2,404 hours through the end of November. That is 600 hours per month, or four people each working full time for four months straight, on a *settled* case where two other firms serve as lead counsel. Edelson claims 1007 hours over the same period. There is no plausible justification for reducing the class's recovery for the purpose of paying these additional firms.

### B. At Minimum, Any Award to the Additional Firms Should be Significantly Reduced, and the Court Should Require the Submission of All Timesheets

If the Court does decide to compensate the additional firms, any award should be steeply discounted from the request, and the Court should scrutinize their billing records to confirm that their claimed hours are reasonable, non-duplicative, and benefited the class as a whole.

The fees counsel seek would provide an unreasonably large recovery to the Publishers' and Authors' Coordination firms:

- Cowan states that it billed 231 hours, or $156,784 at rack rates. ECF 505-5 at 7. It is seeking $15,000,000—a multiplier of **95.67**.
- O+Z states that it billed 2404.2 hours, or $1,603,999 at rack rates. ECF 505-4 at 20. It is seeking to recover $37.5 million in fees—a multiplier of **23.38**.
- Edelson states that it billed 1007 hours, or $1,486,957.50 at rack rates. ECF 505-4 at 20. It is seeking to recover $22.5 million in fees—a multiplier of **15.13.**

Notably, *all* of these multipliers are substantially in excess of the multiplier sought by Class Counsel, which is either **13.45** or **9.32**, depending on whether future anticipated work is included.

5

ANTHROPIC'S RESP. TO MOT. FOR FEES                                                   No. 3:24-cv-05417-WHA

The multipliers for the additional firms are extremely high even in comparison to the multipliers that courts in the Ninth Circuit apply to class counsel who actually are responsible for significant settlements. Most multipliers are in the low single digits, and double digit multipliers are nearly unheard of, especially in billion-dollar settlements like this one. ECF 505-7 at 13-15 (chart from Class Counsel's expert). A Ninth Circuit analysis of "class actions settlements nationwide … found that 54 percent of lodestar multipliers fell within the 1.5 to 3.0 range, and that 83 percent of multipliers fell within the 1.0 to 4.0 range." *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *8 (N.D. Cal. June 5, 2017). The "mean multiplier in common fund cases" in this Circuit is between 1.26 and 1.54. *Ward v. United Airlines, Inc.*, 2024 WL 269149, at *8 (N.D. Cal. Jan. 24, 2024) (Alsup, J.).

In *Gutierrez*, for example, the Court rejected a 10.38 multiplier as "extraordinary" and "not justified" even when sought by class counsel who took a case to trial and whose "trial performance ranks as one of the best this judge has seen in sixteen years on the bench." *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *4, *7 (N.D. Cal. May 21, 2015) (Alsup, J.). The Court instead applied a 5.5 multiplier for one firm and a 2.0 multiplier for another. Judge Donato recently described a 4.0 multiplier as "very generous." *In re Zoom Sec. Litig.*, 2025 WL 3078702, at *4 (N.D. Cal. Nov. 4, 2025). In *Glumetza*, where class counsel obtained a very large megafund settlement "despite vigorous opposition from large multi-national companies with high-quality representation from six national law firms," the Court rejected a 4.99 multiplier as "too high" and applied a 2.2 multiplier instead. *In re Glumetza Antitrust Litig.*, 2022 WL 327707, at *9 (N.D. Cal. Feb. 3, 2022) (Alsup, J.). Judge Koh has held that a 3.91 multiplier would result in "windfall profits" in a megafund case and instead applied a multiplier of 2.0. *Nitsch*, 2017 WL 2423161, at *9-10. And, again, those are the multipliers that courts find reasonable for class counsel who took on risk or performed unusually well in difficult circumstances, not for counsel who came on just before a settlement and whose principal contributions appear to have been unspecified "coordination" rather than litigation efforts.

It is not just the multipliers that are unreasonable here. These fee requests would result in an effective blended rate of $64,935/hour for Cowan, $22,344/hour for Edelson, and $15,598/hour for O+Z. Courts have held that it would be "ridiculous" to award fees that would "translate to more than $4,900 per hour." *Gutierrez*, 2015 WL 2438274, at *8; *see Glumetza*, 2022 WL 327707, at *8 (rejecting fee award that would translate into a blended rate of $3,269/hour). And again, those are cases addressing fees to the lawyers who actually litigated the cases. The multipliers (and blended hourly rates) that the additional firms seek here are significantly higher than the multipliers and blended hourly rates sought by Lieff and Susman, firms which indisputably did the vast, vast majority of legal work and took all the risk.

The lodestar multiplier calculations and blended rates just described also assume that the hours that "Coordinating Counsel" have billed are reasonable and fair to the class. But counsel's billing descriptions are so broad and vague that it is impossible to evaluate whether the time spent was reasonable. None of the firms provide any timesheets or detailed billing records. Cowan does not even break down its 231 hours by task. ECF 505-5 at 7. O+Z and Edelson break down their hours into broad categories, like "Case management" or "Client communication and defensive discovery," that do not permit the Court to review for duplication or inefficiency. ECF 505-4 at 22. Indeed, "trying to craft an appropriate percentage for this megafund case without first reviewing counsel's actual timesheets would likely result in picking a number out of the air." *Gutierrez*, 2015 WL 2438274, at *5 (internal quotation marks omitted); *see generally Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 853-57 (N.D. Cal. 2017) (reducing hours for inefficiency and other problems after providing defendants an opportunity to review timesheets).

Indeed, even a cursory review of the limited information provided reflects that inefficiency and duplication may be a significant concern. O+Z had ten different partners and associates working on this case—the same number as Susman. *Compare* ECF 505-4 at 20 with ECF 505-1 at 2. Edelson had an additional seven. ECF 505-4 at 20. O+Z assigned six different paralegals to the matter as well as a "program director" who alone billed 453.2 hours in the course of a few months. *Id.* A full

7

ANTHROPIC'S RESP. TO MOT. FOR FEES                                                                                      No. 3:24-cv-05417-WHA

third of O+Z's time—854.6 out of 2404.2 hours—was devoted to "case management," with no further explanation. ECF 505-4 at 22. Together, six lawyers at the two firms devoted 88.2 hours to prepare for and appear at two court hearings where no one from either firm said a ***single word***. ECF 505-4 at 22. The two firms claim to have incurred a combined 1045 hours for "Client communication and defensive discovery" even though discovery was stayed two weeks after they entered appearances. ECF 505-4 at 22; ECF 354; ECF 355. Overall, these two firms billed 3411 hours over four months (August through November) for an average of 853 hours a month on a settled case where multiple other law firms were leading the charge. ECF 505-4 at 22.

All three additional firms also seek fees for ***future*** work. Together they claim to have already worked 3,642 hours. *See supra* at 5. They claim they will work an additional 2,195 hours in the future—110 for Cowan, 1,663 for O+Z, and 422.5 for Edelson. ECF 505-5 at 6; ECF 505-4 at 15, 17-18. But none of the firms provide *any* detail to substantiate those predictions. It is hard to understand why it would be necessary or justified for these three firms to work more than 2,000 additional hours between now and final approval—on top of the additional 5,356 hours Susman claims it will work in the future and the additional 6,535 hours Lieff claims it will work, ECF 505-1 at 7, ECF 505-3 at 7. The Works List, some portion of which these additional firms claim credit for, is complete and will not change. No additional settlement negotiations are forthcoming. And the claims process (for which the Administrator anticipates its own separate costs of around $15,000,000) is well underway.

Plenty of cases have complicated class list issues but counsel, much less counsel who are not Class Counsel, do not suggest that fees incurred after preliminary approval will amount to more than 60% of the fees they incurred litigating a case.[4] By comparison, in a megafund case involving a class of 194 million people, class counsel sought compensation for 1,500 future hours of work

---

[4] The three additional firms state that they have worked a combined 3,642 hours through December 3, 2025, when they filed the fee motion. They predict that they will work 2,195 hours in the future—60% of 3,642. Accordingly, they predict that their post-preliminary-approval fees will be *at least* 60% of the fees they incurred before the September 25, 2025 preliminary approval. In reality, that percentage is likely substantially higher, since some of the 3,642 claimed past hours occurred between September 25, 2025 and December 3, 2025. Counsel do not provide billing records that allow the Court to determine the daily or even monthly breakdown of these claimed past hours.

after spending 40,047 hours—and the court still reduced their future hours lodestar by more than half because the "descriptions of future work are speculative and inappropriate." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *24, *27, *29-30 (N.D. Cal. July 22, 2020), aff'd, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022).[5]

Finally, to the extent the Court decides to award non-Class Counsel any compensation at all, it should not award a risk multiplier or should apply a downward multiplier. The normal reasons for applying an upward risk multiplier do not apply to the Authors' Coordination Counsel and Publishers' Coordination Counsel. A risk multiplier is generally justified "when (1) the attorneys reasonably take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rates do not reflect that risk, and (3) there is evidence that the case was indeed risky." *Gutierrez*, 2015 WL 2438274, at *7.

Here, however, non-Class Counsel could not reasonably have expected to receive a risk enhancement. There is very little evidence that, as to them, the case was significantly "risky." Edelson and O+Z came in after this Court's summary judgment ruling and class certification ruling, after the Layn Phillips mediation had been scheduled, and only a few days before the mediation took place. In other words, they entered at a time when they expected there to be substantial settlement pressure and a substantial opportunity for settlement. Nor would they have faced any significant risk if the case had not settled, given their limited role in the proceedings. They ultimately worked on the case only for a few months, most of which came *after* the settlement. And, while Cowan (Authors' Coordination Counsel) was listed on the original complaint, it appears to have done almost no work until the settlement, and accordingly did not take on any risk either.

The Ninth Circuit has held that it is appropriate to apply downward multipliers to lodestars for counsel who played a more minor role in the recovery, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 572 (9th Cir. 2019), and such a downward multiplier would be appropriate here. At

---

[5] As noted, counsel have requested a percentage-of-recovery fee rather than a lodestar fee award. Because their requested recovery includes anticipated future hours, the resulting multiplier described in their fees motion appears artificially low when performing the lodestar cross-check. Whether or not the Court awards fees based on the lodestar method, it should scrutinize the calculation of anticipated future hours to ensure they are reasonable and necessary.

minimum, these firms should not receive the same risk multiplier as Lieff and Susman. *See Gutierrez*, 2015 WL 2438274, at *9 (calculating different multipliers based on different level of contribution and risk from different law firms, and prohibiting the two firms "from sharing their awards with each other"); *Hyundai,* 926 F.3d at 572 (affirming district court's decision to calculate different multipliers for different law firms that assumed different levels of risk and engaged in different levels of work).[6]

## II.  A Significant Body of Caselaw Supports Use of the Lodestar Method When There Is a Large Settlement Fund

Although Anthropic takes no position on the ultimate award that would be appropriate for Susman and Lieff, Anthropic notes that a significant body of precedent in this Circuit supports application of the lodestar method, rather than the percentage-of-the-fund method that counsel advocates. Class Counsel points to precedent observing that a "majority" of courts start with a 25% benchmark in common fund cases. ECF 505 at 19. But that is not the case in settlements involving megafunds, like this one.

In "a megafund action (a fund larger than $100 million)," the Ninth Circuit has recognized, "the 25% benchmark is 'of little assistance.'" *Glumetza Antitrust Litig.*, 2022 WL 327707, at *8 (quoting *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 931 (9th Cir. 2020)). "Although frequently mentioned in cases, the '25% benchmark rate' is 'a starting point' that is not presumptively suitable in every case." *In re Zoom Sec. Litig.*, 2025 WL 3078702, at *3. In particular, "where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *Gutierrez*, 2015 WL 2438274, at *4 (quoting *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935, 941-42 (9th Cir. 2011)). In *Gutierrez*, for example, the Court

---

[6] According to the Declaration of Rachel Geman, the fees associated with Professor Samuel Issacharoff reflect an additional "contribution of $93,440 to the lodestar." ECF 505-3 at 14-15. However, the Motion does not appear to seek payments to Issacharoff from the fund. ECF 505 at 17 (explaining percentage payouts to each firm from the fund). Accordingly, Anthropic presumes that Class Counsel is seeking to recover Professor Issacharoff's fees as costs and not as a percentage of the fund. This should be clarified.

rejected a percentage approach because "blindly adopting the 25-percent benchmark in [a] $203 million megafund action would lead to an unreasonable result." *Id.* "Applying that percentage in a 'formulaic or mechanical fashion' would result in a windfall to class counsel utterly divorced from the realities of the case." *Id.* Rather, the award should be tied to the hours reasonably worked. *Glumetza*, 2022 WL 327707, at *8.

Courts in this district routinely reach similar conclusions. *See, e.g.*, *In re High-Tech Employee Antitrust Litigation*, 2015 WL 5158730 (N.D. Cal. 2015) (rejecting class counsel's request for 20.6% of a $415 million settlement, which would have resulted in a combined multiplier of 4.8, and applying the lodestar method instead); *In re Zoom Sec. Litig.*, 2025 WL 3078702, at *4 (rejecting class counsel's request for 18.75% of a $150 million settlement, which would have resulted in a multiplier of around 10, and applying the lodestar method instead). Class Counsel's own expert states that courts overwhelmingly award far less than 25% of the fund in megafund cases. ECF 505-7 at 12-15.

Applying the percentage-of-recovery approach here could be viewed as resulting in windfall profits for Class Counsel. Although the Court has recognized that Class Counsel took on substantial risk and obtained an excellent per-person settlement, the size of the common fund here is largely attributable to the size of the class and to a statutory damages figure. "When the large size of the recovery is due to the large size of the class rather than counsel's specialized skill and efforts, use of the lodestar method may be more appropriate." *Gutierrez*, 2015 WL 2438274, at *5 (rejecting $50.7 million fee request). The number of works on the Works List drove the total recovery here, but largely did not drive the costs (or risks) of litigating this matter. *See also Glumetza Antitrust Litig.*, 2022 WL 327707, at *10 ("[D]ue to economies of scale, it isn't ten times harder to try a $100 million case as it is a $10 million case.").

All together, Class Counsel assert that they and the various other firms seeking fees billed 26,191.1 hours, at a lodestar of $22,304,844. ECF 505 at 29. A $300 million award would result in a lodestar multiplier (for all the firms together) of 13.45 and a blended hourly rate of

11

ANTHROPIC'S RESP. TO MOT. FOR FEES                                              No. 3:24-cv-05417-WHA

$11,454.27/hour. *Cf. Gutierrez*, 2015 WL 2438274, at *8 (rejecting $4,900/hour blended rate); *Glumetz*a, 2022 WL 327707, at *8 (rejecting $3,269/hour blended rate).

If Class Counsel's requested award is considered separately from the additional firms' requested awards, Class Counsel is proposing a multiplier of 12.1 for Susman and 11.66 for Lieff, based on hours to date. Susman's lodestar is $9,312,610 and Lieff's is $9,651,053.50, and each firm seeks an award of $112,500,000, or 37.5% x 20% x $1.5 billion. ECF 505-1 at 5; ECF 505-3 at 3. As noted above, those multipliers are far higher than is typical. *Supra* at 6 (citing cases).

Anthropic takes no position on the proper multiplier to apply to Class Counsel's lodestar amount or on whether the hours claimed by Class Counsel are reasonable. But Anthropic notes that applying the lodestar method here would allow the Court to take account of various factors that should inform the determination of what fee is reasonable and fair to the class, including the length of the litigation, the relative contribution (or non-contribution) of each law firm seeking fees, as well as the fact that the total amount of the fund in this case—from which the percentage-of-recovery benchmark is measured—is largely attributable to the size of the class and statutory damages. Anthropic also respectfully suggests that requiring additional details about the hours billed and the work performed here, as well as additional detail supporting Class Counsel's prediction that Susman will need to work an additional 5,356 hours and Lieff will need to work an additional 6,535 on this matter post-approval, would assist the Court in calculating Class Counsel's correct lodestar and in evaluating what fee is reasonable and fair to the class.

Dated: December 17, 2025

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Douglas A. Winthrop*
     Douglas A. Winthrop

*Attorney for Defendant*
ANTHROPIC PBC

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years and not a party to the within-entitled action; my business address is Three Embarcadero Center, 10th Floor, San Francisco, California 94111. On December 17, 2025, the foregoing ANTHROPIC PBC'S RESPONSE TO PLAINTIFFS' MOTION FOR FEES was electronically served on the following:

Justin A. Nelson (*pro hac vice*)
Alejandra C. Salinas (*pro hac vice*)
**SUSMAN GODFREY L.L.P**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Jordan W. Connors (*pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com

J. Craig Smyser (*pro hac vice*)
**SUSMAN GODFREY L.L.P**
One Manhattan West, 51st Floor,
New York, NY 10019
Telephone: (212) 336-8330
csmyser@susmangodfrey.com

Rachel Geman (*pro hac vice*)
Wesley Dozier (*pro hac vice*)
Anna Freymann (*pro hac vice*)
Jacob Miller (*pro hac vice*)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
wdozier@lchb.com
afreymann@lchb.com
jmiller@lchb.com

Reilly T. Stoler (SBN 310761)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
rstoler@lchb.com

Scott J. Sholder (*pro hac vice*)
CeCe M. Cole (*pro hac vice*)
**COWAN DEBAETS ABRAHAMS & SHEPPARD LLP**
60 Broad Street, 30th Floor
New York, New York 10010
Telephone: (212) 974-7474
ssholder@cdas.com
ccole@cdas.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed December 17, 2025 at San Francisco.

*[signature]*

Jerome E. Ferrer