UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendants. | Case No. 3:24-cv-05417-WHA<br><br>**DECLARATION OF COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP IN RESPONSE TO THE COURT'S ORDER AT DOCKET NO. 515** |

I, SCOTT J. SHOLDER, declare and state as follows:

1. I am a partner with the law firm Cowan, DeBaets, Abrahams & Sheppard LLP ("CDAS"). I am a member in good standing of the bar of the states of New York and New Jersey and am admitted in this case *pro hac vice*. I make these statements based on personal knowledge and would so testify if called as a witness.

**CDAS's Involvement In This Case**

2. As a threshold matter, CDAS wishes to address the Court's concerns regarding the duration and scope of the firm's involvement in this case. [*See* Dkt. No. 515 at 2.]

3. CDAS has appeared as co-counsel for the named Plaintiffs and Proposed Class in this case from the beginning, with myself and my former colleague CeCe M. Cole being listed as Attorneys for Plaintiffs and the Proposed Class in the initial complaint (and civil cover sheet noting *pro hac vice* applications forthcoming), which was filed on August 19, 2024. [*See* Dkt. No. 1 at 20. *See also* Dkt. No. 70 at 21 (amended complaint).] The Court granted *pro hac vice* motions filed

by Ms. Cole and me on September 19, 2024 [*see* Dkt. Nos. 31 & 32]. CDAS attorneys have appeared in this case for more than a year, well before the first hearing on preliminary approval [*contra* Dkt. 515 at 2].

4. CDAS attorneys have advised the appointed Class Counsel firms on copyright law and strategy at all stages of the case at the request of Class Counsel given our firm's decades of experience with copyright law and copyright litigation. [*See generally*, Dkt. No. 505-5 at ¶¶ 3-8.] Our firm's litigators not only prosecute and defend complex and important copyright cases but are also thought leaders in this space. The CDAS attorneys who have appeared in this case write and speak extensively on cutting-edge copyright matters; file amicus briefs in the courts of appeals and before the Supreme Court in copyright cases; hold leadership roles, including, *inter alia*, serving as past president of the Copyright Society of the USA (Nancy E. Wolff), and as members of the ABA copyright reform task force and New York City Bar Association Copyright & Literary Property Committee; and have been ranked by organizations such as Chambers & Partners for their accomplishments in copyright law.

5. Ms. Cole and I were involved in, *inter alia*, researching, reviewing, and revising the complaints and motion papers in this case, including the opposition to Anthropic's summary judgment motion [*see* Dkt. No. 164 (listing CDAS as co-counsel of record)] and plaintiffs' motion for class certification brief [*see* Dkt. No. 125 (listing CDAS as co-counsel of record)]; assisting with defensive discovery responses; and providing substantive legal advice regarding relevant copyright law issues and overall case strategy, including during weekly trial team calls with co-counsel and weekly internal firm strategy meetings.

6. CDAS attorneys also worked with Class Counsel on the terms of the class settlement itself and in drafting responses to the Court's questions for the preliminary approval hearing [Dkt Nos. 375 and 383] and appeared on the responsive filing [Dkt. No. 418].

7. After the class was certified and in connection with the proposed class settlement, CDAS was asked by Class Counsel to further the interests of the class by working as part of the Author-Publisher Working Group ("APWG") and as Authors' Coordination Counsel ("ACC"). In connection with our role in the APWG, on September 7, 2025, an additional CDAS partner, Nancy E. Wolff, entered an appearance [*see* Dkt. No. 366] given her decades of experience working at the intersection of copyright law and the publishing industry. Ms. Wolff also filed a declaration with the Court in support of the motion for settlement [Dkt. No. 397], appeared at the September 8, 2025 settlement hearing, and filed a declaration in support of Plaintiffs' Motion for Attorney's Fees, Reimbursement of Expenses, and Plaintiff Service Awards [Dkt. No. 505-5].

8. As part of CDAS's role as ACC, Ms. Cole, Ms. Wolff, and I—along with other attorneys at the firm in supporting capacities—assisted in gathering information and engaging in communications related to the Plan of Allocation & Distribution; reviewing and revising the Class List, the Plan of Distribution, the Claim Form, and the Class Notice; and liaising with stakeholders on the Class List, including soliciting input from these stakeholders.

9. We also advised and assisted Class Counsel with the compilation of the Works List, including by improving the methods by which works were assessed for satisfaction of the class criteria and ensuring compliance with copyright law. For example, we assisted Class Counsel with developing a method to ensure that works published immediately prior to the introduction of ISBNs and the full digitization of copyright records—*i.e.*, from the 1964-1977 period—were included on the Works List despite the significant challenges associated with their inclusion (*e.g.*,

the fragmentary nature of the records regarding these works). We also aided Class Counsel in determining which renewal registrations satisfied the class criteria. As a result of our efforts, Class Counsel was able to verify tens of thousands of additional works for inclusion on the Works List. Finally, with respect to Class Notice, we worked with Class Counsel to coordinate with author groups and major literary agencies.

**The Court's Questions**

    10.    CDAS responds as follows to the Court's inquiries [Dkt. No. 505 at 10-11].

    11.    **No. 1.** "All law firms who have filed fee or cost petitions in this action (or on whose behalf one has been filed) shall file a declaration setting forth the full extent to which such firm has (or has not) made any agreement(s) to share any portion(s) of any fee award in this class action or in any other class action(s) (putative or certified) involving any party (or class member) herein, and stating as to each such agreement its date, terms, the extent to which it is verbal and the extent to which it is in writing (or in an email or text or other message), and the parties and the names of all persons who made the agreement."

    a. CDAS states that it has not made (nor has anyone made on its behalf) any agreement or other arrangement to share fees in this case or any other case with any party or class member in this case or any other case.

    b. CDAS states that any proposed fee-allocation arrangements in this action (and other putative class action cases discussed below) relate solely to the proposed allocation of fees among attorneys on the plaintiffs' side who have litigated or otherwise worked on the case.

        i. Specifically, in this case, CDAS entered into the following agreements:

1. At the very outset of the litigation, CDAS and Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") entered into a September 2024 Attorney Representation Agreement ("ARA") with named plaintiff Andrea Bartz which discloses the following proposed fee allocation: "subject to the principle that fees in a class action case are subject to Court approval, to divide the fees as such: after repayment of costs, LCHB and SG will each receive 45% of fees and CDAS will receive 10% of fees." Ms. Bartz signed this agreement for herself, I signed it for CDAS, and Rachel Geman signed it for LCHB. I understand that the ARA between Susman Godfrey LLP ("SG") and the other two named plaintiffs in this case disclose CDAS's and LCHB's involvement in the litigation as well as the proposed fee-allocation arrangement quoted above.

2. Consistent with the ARAs, a November 27, 2024 letter agreement entered among SG, LCHB, and CDAS addressed joint participation in investigating and pursuing claims in this case, as well as the proposed fee allocation as set forth above. This letter agreement was signed by me for CDAS, Rachel Geman for LCHB, and Rohit Nath for SG. Further details regarding the terms of the November 27, 2024 letter agreement are set forth in the Declaration of Rachel Geman of LCHB ("LCHB Declaration") and the declaration of Justin Nelson of SG ("SG Declaration").

3. On August 7, 2025, SG, LCHB, CDAS, Edelson PC ("Edelson"), and Oppenheim + Zebrak, LLP ("O+Z"), entered into a letter agreement amending the November 27, 2024 letter agreement to reflect Edelson's and O+Z's participation. This letter agreement was fully executed as of August 11, 2025, and was signed by Kenneth Swezey for CDAS; Justin Nelson for SG; Rachel Geman for LCHB; Jay Edelson for Edelson; and Matthew Oppenheim for O+Z. The above-referenced proposed allocation of fees was amended as follows: SG and LCHB (37.5% each); CDAS (5%); Edelson (7.5%); and O+Z (12.5%) (with Edelson/O+Z's share to be increased if recovery exceeded certain thresholds). Further details regarding the terms of the August 11, 2025 letter agreement are set forth in the LCHB Declaration and in the SG Declaration.

4. CDAS was also party to email communications concerning compensation for Slarskey LLC ("Slarskey") and Archstone Law Group, PC ("Archstone"). David Slarskey emailed Nancy Wolff and I on September 16, 2025, regarding fees for his firm and Archstone, and Ms. Wolff directed him to contact Class Counsel, which he did. Further details relating to Slarskey and Archstone are set forth in the LCHB Declaration and in the SG Declaration.

5. CDAS does not have any agreements with Edelson, O+Z, Slarskey, or Archstone in any other case.

      ii. CDAS is also co-counsel alongside LCHB and/or LCHB and SG in several other putative class action copyright cases, which may involve overlapping class members with this case.

          1. These cases are: (1) *In Re: OpenAI, Inc. Copyright Infringement Litigation*, No. 1:25-md-03143-SHS-OTW (S.D.N.Y.); (2) *Bird et al. v. Microsoft Corporation*, No. 1:25-cv-05282-SHS (S.D.N.Y.) (stayed); (3) *Kadrey et al v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (N.D. Cal.); (4) *Nazemian et al v. NVIDIA Corporation*, No. 4:24-cv-01454-JST (N.D. Cal.); and (5) *In Re Mosaic LLM Litigation*, No. 3:24-cv-01451-CRB (N.D. Cal.).

          2. In some of these cases, CDAS has written joint prosecution and proposed fee allocation arrangements with co-counsel, which are described in the LCHB Declaration and in the SG Declaration.

          3. CDAS has no agreement to share any fees awarded in the above-mentioned cases with any party or class member in those other putative class action cases, nor with any party or class member in this case. Each arrangement described above is completely separate and independent from any arrangement regarding fee allocation in this case.

12. **No. 2.** "Likewise, all law firms who have filed fee petitions herein (or on whose behalf one has been filed) shall file a declaration setting forth the full extent to which such firm has made any proposal(s) to anyone — and the full extent to which anyone has made any proposal(s) to such firm — to share any portion(s) of any fee award in this class action or in any

other class action(s) (putative or certified) involving any party (or class member) herein, and stating as to each such proposal its date, proposed terms (including as suggested or implied), the extent to which it was verbal and the extent to which it was in writing (or in an email or text or other message), and the parties and the names of all persons who made or received the proposal.

    a. CDAS states that it has not made (nor has anyone made on its behalf) any proposal to share fees in this case or any other case with any party or class member in this case or any other case.

    b. CDAS was party to email communications with a law firm called Fairmark Partners LLP ("Fairmark") regarding that firm's potential involvement in this case but is unaware of any fee allocation proposals. Further details relating to Fairmark are set forth in the LCHB Declaration and in the SG Declaration.

    c. CDAS otherwise refers the Court to ¶ 12(b) above regarding its fee-allocation arrangements with co-counsel in this and in other cases, and states that any other proposals (verbal or written) would be related to these arrangements.

13. **No. 3.** "All law firms who have filed fee petitions herein (or on whose behalf one has been filed) also shall file a declaration setting forth the full extent to which any arrangement has been made or proposed by which any class member would receive a sweeter recovery than other class members."

    a. CDAS states that it has not made (nor has anyone made on its behalf) any arrangements nor has it proposed (nor has anyone proposed on its behalf) any arrangements whereby any class member would receive a sweeter recovery than other class members.

14. **No. 4.** "All emails, messages, and written materials relating to any of the above shall be preserved for future potential discovery."

    a. CDAS states that it has no emails, messages, or other written materials regarding any agreement or proposal to share fees in this case or any other case with any party or class member in this case or any other case, or with respect to what the Court describes in Item No. 3, above.

    b. CDAS states that it will retain and preserve all emails, messages, and written materials pertaining to the fee-allocation arrangements, or any proposals regarding the same, between and among co-counsel as referenced in ¶¶ 12(b) and 13(b), above.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct to the best of my knowledge, belief, and recollection.

Executed in New York, New York on December 30, 2025

                                                    */s/ Scott J. Sholder*
                                                    Scott J. Sholder (*admitted pro hac vice*)