| | |
|---|---|
| 1  Justin A. Nelson (*pro hac vice*) | |
|    Alejandra C. Salinas (*pro hac vice*) | Douglas A. Winthrop (Bar No. 183532) |
| 2  **SUSMAN GODFREY L.L.P.** | Joseph Farris (Bar No. 263405) |
|    1000 Louisiana Street, Suite 5100 | Pieter de Ganon (Bar No. 320385) |
| 3  Houston, TX 77002-5096 | Jessica L. Gillotte (Bar No. 333517) |
|    Telephone: (713) 651-9366 | Estayvaine Bragg (Bar No. 341400) |
| 4  | **ARNOLD & PORTER KAYE SCHOLER LLP** |
|    Rohit D. Nath (SBN 316062) | Three Embarcadero Center 10th Floor |
| 5  Michael Adamson (SBN 321754) | San Francisco, CA 94111-4024 |
|    **SUSMAN GODFREY L.L.P.** | (415) 471-3100 |
| 6  1900 Avenue of the Stars, Suite 1400 | (415) 471-3400 (fax) |
|    Los Angeles, CA 90067-2906 | douglas.winthrop@aporter.com |
| 7  Telephone: (310) 789-3100 | joseph.farris@arnoldporter.com |
|    | pieter.deganon@arnoldporter.com |
| 8  Rachel Geman (*pro hac vice*) | estayvaine.bragg@arnoldporter.com |
|    Jacob S. Miller (*pro hac vice*) | jessica.gillotte@arnoldporter.com |
| 9  Danna Z. Elmasry (*pro hac vice*) | estayvaine.bragg@arnoldporter.com |
|    **LIEFF CABRASER HEIMANN &** | |
| 10 **BERNSTEIN, LLP** | Daralyn J. Durie (Bar No. 169825) |
|    250 Hudson Street, 8th Floor | Ramsey Fisher (Bar No. 334228) |
| 11 New York, NY 10013-1413 | Jackson Lane (Bar No. 351633) |
|    Telephone: (212) 355-9500 | **MORRISON & FOERSTER LLP** |
| 12 | 425 Market Street |
|    Elizabeth J. Cabraser (SBN 083151) | San Francisco, CA 94105 |
| 13 Daniel M. Hutchinson (SBN 239458) | (415) 268-7000 |
|    Jallé Dafa (SBN 290637) | (415) 268-7522 (fax) |
| 14 Amelia Haselkorn (SBN 339633) | DDurie@mofo.com |
|    **LIEFF CABRASER HEIMANN &** | RamseyFisher@mofo.com |
| 15 **BERNSTEIN, LLP** | jlane@mofo.com |
|    275 Battery Street, 29th Floor | |
| 16 San Francisco, CA 94111-3339 | *Attorneys for Defendant Anthropic PBC* |
|    Telephone: (415) 956-1000 | |

*Co-Lead Class Counsel*

[Additional counsel listed in the signature block.]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated, | Case No.: 3:24-cv-05417-AMO |
| | **JOINT CASE MANAGEMENT STATEMENT** |
| Plaintiffs, | |
| v. | |
| ANTHROPIC PBC, | |
| Defendant. | |

Pursuant to the Court's Order dated January 12, 2026 (Dkt. No. 537) and Civil Local Rule 16-9, the Parties in the above-captioned action submit this Joint Case Management Statement.

## I. PROCEDURAL HISTORY

In accordance with the "Northern District of California's Standing Order for All Judges - Contents of Joint Case Management Statement," the Parties set forth below a concise overview of the litigation. Plaintiffs are rightsholders—legal and beneficial owners of books with a registered copyright—who allege that Defendant Anthropic PBC ("Anthropic") infringed their copyrights by downloading datasets containing copyrighted books in violation of the federal Copyright Act. *See, e.g.*, 17 U.S.C. § 106. Anthropic is an artificial intelligence company that disputes infringement and asserts that any use of Plaintiffs' works was for the purpose of training Large Language Models (LLMs) and was lawful, including under the fair use doctrine. *See* 17 U.S.C. § 107.

After hard-fought litigation on an expedited schedule, the Parties announced a settlement on August 26, 2025, as fact discovery was about to close and roughly three months before the scheduled trial date of December 1, 2025. To Plaintiffs' understanding, the settlement fund of $1.5 billion—representing a little over $3,000 per work for the 482,460 Class Works[1]—would be the largest known copyright recovery in history. On September 25, 2005, Judge Alsup preliminarily approved a settlement of the case by oral order at the hearing on preliminary approval. Dkt. 431 at 17–18. He subsequently issued a written order explaining in more detail the reasons for preliminary approval. *See generally* Dkt. 437. The parties submitted a detailed plan of allocation and distribution. *See* Dkt. 401-1. Direct notice went out on December 1, 2025. The opt-out and objection deadline, originally set for January 15, 2026, has been extended to January 29, 2026. The claims deadline is March 30, 2026. Judge Alsup set a final approval hearing for April 23, 2026, which is now off calendar, but Plaintiffs have requested that the Court re-set the final approval hearing for the same date. *See* Dkt. 533. The Parties address the Settlement and its implementation in more detail in the following sections.

Plaintiffs initially filed this action on August 19, 2024, alleging that Anthropic downloaded

---

[1] The final per-work payment is not yet known. The settlement fund is accruing interest to the benefit of the Class, the total number of claimants is yet to be determined (although there is no reversion), and settlement administration and other court-authorized expenses, as well as attorneys' fees and service awards to the extent granted, will be paid from the fund.

Plaintiffs' copyrighted works from pirated datasets without authorization and used those works to train its Claude LLMs. Dkt. 1. Service was effected and Anthropic executed a waiver of service on September 4, 2024.[2] Dkt. 12. On December 4, 2024, Plaintiffs filed the Amended Class Action Complaint, to, among other things, add the Plaintiffs' loan-out companies as named Plaintiffs. Dkt. 70. Anthropic answered the Amended Complaint on December 18, 2024, denying liability and asserting affirmative defenses, including fair use and innocent infringement. Dkt. 72. On October 10, 2024, the Court entered a case management order pursuant to which class-certification briefing would begin on March 6, 2025, with fact discovery closing on August 29, 2025, and a jury trial set for December 1, 2025. Dkt. 49. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the action arises under the Copyright Act. Venue and personal jurisdiction are proper in this District because Anthropic resides or may be found here and a substantial part of the events giving rise to the claims occurred here.[3]

Discovery in the matter began immediately. The parties exchanged initial disclosures and conferred regarding the Northern District's ESI Guidelines and evidence preservation consistent with Rule 26(f). Counsel reviewed and adhered to the Northern District's Guidelines for Professional Conduct and the Court's standing and supplemental orders governing practice, discovery, and pretrial matters.

The Parties' efforts in discovery were extensive. Plaintiffs served 186 requests for production, 29 interrogatories, and 65 requests for admission. In turn, Anthropic served 263 RFPs (approximately 87 directed to each named author), 75 interrogatories (25 per author), and 395 RFAs (47 for Graeber, 230 for Bartz, and 118 for Johnson). The Parties negotiated and the Court entered three stipulated discovery protocols: a Protective Order, an ESI and Hard-Copy Document Protocol, and a Protocol for Inspection of Training Data and Source Code. *See* Dkts. 63, 74, 85. Anthropic produced more than 80,000 documents. Plaintiffs produced more than 20,000 pages of manuscript drafts, publishing contracts, registration certificates, and sales statements in response to Anthropic's RFPs. By the time of settlement, the Parties had

---

[2] Plaintiffs filed a Certificate of Interested Entities pursuant to Local Rule 3-15, on September 5, 2024. Dkt. 13. Anthropic filed a Certificate of Interested Entities on October 15, 2025 (Dkt. 51), as well as supplemental Certificates of Interested Entities on May 30, 2025 (Dkt. 218) and June 2, 2025 (Dkt. 219).

[3] Neither party has designated this case as related to any other pending action in this District. Plaintiffs note that Judge Eumi Lee previously declined Plaintiffs' motion to relate this case to another copyright action pending against Anthropic. *See Concord Music Group, Inc. v. Anthropic PBC*, 24-cv-03811, Dkt. 215 (Motion); Dkt. 239 (Order Denying Motion).

conducted 20 depositions.[4]

The principal legal issues included whether Anthropic's alleged reproduction of Plaintiffs' copyrighted works constituted fair use. The issues were actively litigated in class certification and at summary judgment. On June 23, 2025, the Court held that using books to train LLMs and converting purchased print books to digital format were fair uses and granted Anthropic summary judgment on those uses, but denied summary judgment regarding Anthropic's downloading of pirated books from two sources (Library Genesis ("LibGen") and Pirate Library Mirror ("PiLiMi")) for the alleged use of building a central library. On July 17, 2025, the Court certified a class of rightsholders in books allegedly downloaded by Anthropic from these sources. While Plaintiffs' original class definition included "natural persons, estates, literary trusts, and loan-out companies," *see* Dkt. 125 at 7, the Court's certification order added publishers to the certified class. The Class definition is:

> All beneficial or legal copyright owners of the exclusive right to reproduce copies of any book in the versions of LibGen or PiLiMi downloaded by Anthropic. "Book" refers to any work possessing an ISBN or ASIN which was registered with the United States Copyright Office within five years of the work's publication and which was registered with the United States Copyright Office before being downloaded by Anthropic, or within three months of publication. Excluded are the directors, officers and employees of Anthropic, personnel of federal agencies, and district court personnel.

Dkt. 244 at 31.

To represent the interests of publishers added to the class at certification, Class Counsel invited and associated with Publishers' Coordination Counsel ("PCC"), Edelson PC and Oppenheim + Zebrak, LLP. Dkt. 298.[5] Class Counsel filed a notice of association on the docket, noting the PCC's support by the Association of American Publishers ("AAP")—the largest trade association representing U.S. publishers—and its members. *Id*. The Court approved the PCC's motion for *pro hac vice* appearance, allowing them into the case. *See* Dkts. 306–09. Cowan, DeBaets, Abrahams & Sheppard LLP ("CDAS"), the firm that later acted as Authors' Coordination Counsel ("ACC"), had been Plaintiffs' counsel since the beginning of the

---

[4] The procedural history of the case is set out in greater detail in the initial brief that Plaintiffs submitted in support of preliminary approval. *See* Dkt. 363 at 9–16.

[5] Anthropic does not sign onto any portion of the CMC statement that characterizes the ACC or PCC firms. Anthropic lacks sufficient information to state exactly what the role of the PCC and ACC were in the matters described above, as, with the exception of limited interaction with them during settlement talks, it has had virtually no interaction with the PCC or ACC.

case. Dkt. 522 at ¶¶ 3, 8–9.

Following the summary judgment and class certification orders, the Parties engaged in extensive appellate briefing before the Ninth Circuit, as well as briefing in the District Court. *See, e.g.*, Dkt. 241 (motion for leave to appeal under 28 U.S.C. § 1292(b) or, in the alternative, for reconsideration of the Court's summary judgment order);[6] Dkt. 272 (Anthropic's motion to stay). At the same time, the Parties were completing fact and expert discovery and preparing for the December 1, 2025 trial. A key issue at this time was the identification of the books allegedly infringed. The PCC, at the request of Class Counsel, worked with publisher Class Members to assist in assembling the Works List, as well as identifying and preparing two third-party witnesses for trial. Dkt. 401 at 7–8. The ACC assisted as well, in particular in connection with older works. Dkt. 522 at ¶ 9.

## II. SETTLEMENT

### A. Terms and Preliminary Approval

Consistent with the order governing putative class actions in this case, Dkt. 8, the Parties did not address settlement until the Court authorized the parties to do so. Dkt. 210. Settlement negotiations were hard-fought and spanned several months, beginning in May 2025. *See* Dkt. 363 at 25–26 (overviewing negotiation history of settlement). In August, the parties changed mediators and held an in-person mediation on August 19, 2025.[7] On August 25, 2025, shortly before midnight, the Parties executed a binding term sheet. *See* Dkt. 363-3 (Settlement Agreement).

At the mediation, and afterward, the PCC engaged collaboratively with Class Counsel to help secure the Settlement given, *inter alia,* their experience in negotiating large settlements and the publishers' bargaining power. *See* Dkts. 398, 527, 528 (describing PCC role in the settlement); *see also* Dkt. 522 at 8 (describing role of Authors' Coordination Counsel in the Settlement).

The preliminarily certified class settlement establishes a non-reversionary fund of $1.5 billion plus interest. The Settlement is to be distributed on a uniform per-work basis to Class Members who submit approved claims. *See, e.g.*, Dkt. 401-1 (Plan of Allocation and Distribution). The Settlement Agreement also requires Anthropic to (a) destroy all the original files of works torrented/downloaded from LibGen or

---

[6] Anthropic argued in its motion for reconsideration that, *inter alia*, there was no "central library".

PiLiMi, and any copies that originate from the torrented copies, subject to any preservation obligations for litigation or other court orders; and (b) represent that neither the LibGen or PiLiMi datasets, nor any portions of those datasets, were in the training corpus of any of its commercially released large language models. *See* Dkt. 363-3 at 13 ("Dataset Destruction Obligations); *id*. at 13–14 (Anthropic's non-use-in-training certification). In exchange, Anthropic receives a release for past claims to August 25, 2025. No claim arising after August 25, 2025 is released. In addition, claims arising out of allegedly infringing outputs from Anthropic's AI models—whether past or future—are not released. *See* Dkt. 363-3 at 7 ("Released Claims").

The Settlement stages payments in four increments: $300 million shortly after preliminary approval; $300 million shortly after final approval; and two payments of $450 million, each to occur the earlier of (a) September 25, 2026 (for the first) and September 25, 2027 (for the second) or (b) on a faster timeline if Anthropic either conducts a qualifying private capital raise or has a qualifying initial public offering. *See* Dkt. 363-3 at 9-10; *see also id.* at Section 1.27 ("Qualified Financing") & Section 1.21 ("Liquidity Event"). Interest accrues on the two $450 million payments. The first $300 million payment has already occurred and is in trust.

Plaintiffs filed an Unopposed Motion for Preliminary Approval on September 5, 2025, accompanied by six declarations and several exhibits. Dkt. 363. The Parties appeared at a hearing on September 8, 2025. The Court thereafter issued an order stating that "[p]reliminary approval was postponed pending submission of further clarifying information," including Plaintiffs' submission of a plan of allocation and distribution. Dkt. 371. After the hearing, the Court posed 34 questions to the Parties regarding the settlement. *See* Dkts. 375, 383. Those questions were answered in a 50-page submission on September 23, 2025, Dkt. 418, which was preceded on September 22 by Plaintiffs' submission of a 34-page supplemental brief in support of preliminary approval, Dkt. 401, accompanied by a detailed Plan of Allocation, Dkt. 401-1, and 16 additional declarations, Dkts. 385–400. The Court held another hearing on September 25, 2025, at which it preliminarily approved the settlement, asked Plaintiffs' counsel to explain the reasons why the settlement was in the best interests of the class, and comprehensively detailed the reasons that the Settlement was in the best interests of the Class. Dkt. 431 at 16–17. The Court then issued a written order confirming preliminary approval of the Settlement. *See* Dkt. 437.

The Court also approved the proposed plan of allocation and distribution plan that undergirds the claims process. *Id*. The majority of works on the Works List will have both a legal and beneficial owner (often the publisher will be the "legal owner" while the author who has assigned title to the publisher but retained a right to receive royalties will be a "beneficial owner"). For such works, Class Counsel[8] proposed—after consultation with the ACC and PCC—a distribution plan and Claim Form that allow most claimants to choose a non-mandatory default split of 50-50 of settlement proceeds between the publisher(s) and author(s). Dkt. 401-1 § 4(a)(i)). Any claimant, however, can de-select that default by indicating that the claimant has a different contractual arrangement that it seeks to pursue. *Id*. § 4(e). For "education works"[9]—again after consultation with critical stakeholders—Class Counsel determined that contracts for educational works varied too much to suggest a default. Thus, the Claim Form requests that, for educational works, the claimant make a good-faith representation regarding the percentage of recovery that the claimant is entitled to receive for a given work relative to other potential claimants in the work. *Id*. § 4(b). Importantly, under the plan of allocation and distribution, any identified rightsholder to the work (even those who do not file claims) will receive a check for their share of the per-work award. *Id*. § 3(c)(ii)(3). If the rightsholder does not cash the check within 18 months, then the funds will be redistributed to the Filing Claimant for the work. *Id*.

The settlement website (https://www.anthropiccopyrightsettlement.com/) went live shortly after preliminary approval, commencing the robust notice program. *See* Dkt. 401 at 19–24 (overviewing notice program effecting notice through direct notice by U.S. mail and email, industry group notice, publication notice, social media and digital notice, and online notice); *see also* Dkt. 399 (Keough Decl.) at ¶ 117 (estimating the cost to complete the robust notice program at $15 million). Direct notice was sent by U.S. Mail and email on December 1, 2025. The opt-out and objection date is January 29, 2026, as recently extended by this Court. Dkt. 535. The Claims Deadline is March 30, 2026. *See* Dkt. 401-1 at 6 (overviewing settlement deadlines); Dkt. 496 at 2 (granting 7-day extension for claims deadline).

---

[8] By order entered on July 17, 2025 (Dkt. 244), the Court appointed Susman Godfrey L.L.P. and Lieff Cabraser Heimann & Bernstein, LLP as Class Counsel.

[9] For this purpose, Class Counsel have identified "Education Works" as "works published by education publishers. Education publishers specialize in creating and publishing works, including but not limited to textbooks, for the instruction of students and professionals, which are distributed for and through educational and professional markets." Dkt. 455-2 at 16 (FAQ No. 22).

B.     **Implementation by Plaintiffs**

Plaintiffs provide the following summary of their efforts to ensure the success of the claims process and the Settlement. While the claims process remains ongoing, Plaintiffs' tireless efforts to date have provided substantial dividends.

*Engagement with the Class*. Plaintiffs are deeply engaged in the day-to-day administration of this settlement, providing direct, hands-on support to Class Members. Dedicated teams of attorneys and paralegals are fielding hundreds of inquiries each week—by email, telephone, and live Zoom—answering questions, guiding Class Members through eligibility issues, and assisting with preparation and submission of claim forms. Class Counsel also maintains a dedicated phone line and email inboxes that the Settlement Administrator can use to escalate any inquiry that it receives directly; both the phone line and email systems are staffed by multiple attorneys and are available throughout the business day. Class Counsel is tracking the correspondence it receives, and its litigation teams are in constant contact to ensure Class Member inquiries are timely and accurately resolved. For example, Class Counsel have communicated with more than 20,000 Class Members.

Class Counsel is also being proactive in administering the settlement, regularly seeking to inform Class Members of their rights. For example, Class Counsel, together with industry organizations, has organized multiple webinars to walk Class Members through the requirements and timeline, clarify documentation needs, and address recurring questions. These webinars have been widely attended—some with more than 1,000 sign-ups—and have featured extensive question-and-answer sessions between Class Members and Class Counsel and follow-up. In addition, for real-time, individualized guidance, Class Counsel is also implementing virtual "office hours" during which Class Members can join a Zoom session, receive immediate assistance, and ask questions about completing and submitting their claim forms. Class Counsel is dedicated to ensuring that Class Members are fully apprised of their rights, and that Class Members receive appropriate assistance in effectively exercising those rights.

At the request of Class Counsel, the PCC has further assisted in the notice process and supported Class Members in the settlement implementation. The PCC has held six town halls with publisher trade organizations and their members, attended by approximately 800 publisher representatives from AAP, UK Publishers' Association, International Publishing Association, Association of University Presses,

Independent Publishers Guild, and Publishers' Licensing Services. The PCC further worked with numerous publishers to gather author contact information for the Settlement Administrator to effectuate notice. This effort resulted in publishers providing contact information for more than 750,000 authors or other potential rightsholders associated with nearly 320,000 works in the Settlement. The PCC continues to work with publisher Class Members on a daily basis to implement the settlement.

The ACC likewise works with Class Members in answering settlement related questions.

*Claims Submission*. Significant numbers of claims have been filed. While the claims filing process is ongoing, as of January 14, 2026, the Settlement Administrator has received a total of 56,798 claims for 161,691 works. The present claims rate—nearly 20%—already "vastly exceeds the rate of 4–9% that is typical for consumer class actions." *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 622 (N.D. Cal. 2021), *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022). The claims include claims by different kinds of rightsholders (*e.g.*, author and publisher alike), for both Non-Education and Education Books, and from within and outside of the U.S. Class Members have both elected the default and elected not to use the default; have uploaded materials or not. The Settlement is being implemented as planned. Further, the claims process has also helped ensure affected rightsholders are aware of their rights under the settlement, just as the claims process was designed to do. 28,554 claim form submissions have included the information of other rightsholders, helping to ensure that the Settlement Administrator can contact affected Class Members and alert them to their rights. There are presently 86 opt outs accounting for 208 works, and these and the objections will be addressed in final approval briefing. Class Counsel notes that on January 14, 2026, a number of earlier-filed letters to the Court were posted. Class Counsel were not aware of these letters prior to docketing, and are reviewing the submissions to respond to Class Members who have questions.

While the claims process remains ongoing, the large number of claims submitted so far demonstrates the effectiveness of the claims process that the Parties designed and the Court preliminarily approved.

### III. MOTIONS

In accordance with the Standing Order, this Section addresses prior and pending motions, motion status, and anticipated motions.

### A. Prior Major Motions

In addition to numerous discovery and case management rulings, Judge Alsup issued orders on summary judgment (Dkts. 122, 158, 164, 181, and 231), class certification (Dkts. 125, 172, 201, 202, 203, and 244), preliminary approval (Dkts. 363, 401, 437), and various aspects of the Class Notice process (Dkts. 441, 453, 485, 488, 490, 495).

Judge Alsup also issued orders both in writing and orally concerning Plaintiffs' motion seeking corrective notice under Federal Rule of Evidence 23(d) to address misleading communications soliciting opt-outs made by a third-party law firm called "ClaimsHero." *See* Dkt. 442 (Motion); Dkts. 448 (Order); *see also* Dkt. 484 (transcript of November 12, 2025, hearing on motion); Dkt. 503 (transcript of November 25, 2025, evidentiary hearing on motion). As described in the motion and recognized by the Court at both hearings, although ClaimsHero purported to be helping Class Members file a claim in the settlement, signing up for ClaimsHero would actually ***opt out*** the Class Member from the settlement. As a result of the motion and the Court's order on the issue, ClaimsHero ceased the challenged advertisements and issued corrective disclosures on its website.

### B. Future and Anticipated Motions

***Final Settlement Approval***: Plaintiffs will file their motion for final approval of the settlement by no later than March 19, 2026,[10] which is 35 days prior to the previously scheduled fairness hearing on April 23, 2026, Dkt. 437. Plaintiffs will supplement that filing with an updated claims report by April 16, 2026. If Anthropic files any response to the motion for final approval, it will do so by April 2.

***Attorneys' Fees, Expenses, and Service Awards***: On December 3, 2025, Plaintiffs' counsel filed their request for fees, costs, and service awards, seeking fees of 20% of the settlement fund, which, among other things, is below the 25% benchmark and reasonable given the results for the class and the lodestar. Dkt. 505. Anthropic objected in part to the fee portion of the request on December 17, 2025, asserting that (i) the request proposed payment of attorneys' fees to various law firms other than Class Counsel, and (ii) the attorneys' fees award should be based on a lodestar calculation as opposed to a percentage, due to the "megafund" nature of the settlement. Dkt. 511. On December 23, Judge Alsup issued a statement regarding

---

[10] Judge Alsup set the filing deadline for April 16, 2026, but Plaintiffs will file early, consistent with the 35-day motions deadline in Local Rule 7.

the fee request and directed the submission of declarations from Class Counsel and other law firms. Dkt. 515. Class Counsel and the other law firms filed their declarations on December 30, 2025. *See* Dkts. 521–528. Plaintiffs will file their reply brief with respect to their request for fees, costs, and service awards on March 19, 2026.

***Third-Party Class Communications***: Plaintiffs are in communication with counsel for ClaimsHero regarding its ongoing advertising and solicitations to Class Members. Plaintiffs will, as and if necessary, raise any issues about this with the Court by filing an Administrative Motion no later than February 13, 2026.[11]

***Other Issues***: Since preliminary settlement approval, a few unanticipated issues have arisen, which the Parties have proactively brought to the Court's attention for further guidance. If any further issues arise, the Parties commit to raising them with the Court via an Administrative Motion promptly.

## IV. SCHEDULING

As noted above, prior to the reassignment of this matter, the Court set a final approval hearing for April 23, 2026 at 12:00 PM, as well as a series of interim settlement-related deadlines. Plaintiffs have requested, with Anthropic's consent, that the Court reset the final approval hearing on the same day, April 23, 2026. *See* Dkt. 533. Because this Court ordered that only hearing and trial dates "are vacated," Dkt. 532, the Parties will continue to adhere to the prior ordered dates with respect to settlement administration. For the Court's convenience, those interim deadlines are set forth again below:

| Event | Date |
| --- | --- |
| Opt Out Deadline | January 29, 2026 |
| Objection Deadline | January 29, 2026 |
| Proposed Deadline for any Settlement-Related Administrative Motion | February 13, 2026 |
| Re-Inclusion Deadline | March 9, 2026 |
| Plaintiffs Will File Final Approval Motion and Reply Brief in Support of Attorneys' Fees, Reimbursement of Expenses, and Plaintiff Service Award | March 19, 2026 |
| Claims Deadline | March 30, 2026 |

---

[11] Plaintiffs note that, on December 22, 2025, six individuals solicited by ClaimsHero (*see* Dkts. 461–467) filed suit against Anthropic and other companies, alleging violations of the Copyright Act based on the downloading of copyrighted works from online repositories. *See* 25-cv-10897 (N.D. Cal.).

| Event | Date |
|---|---|
| Anthropic's Deadline to File Any Response In Connection with Plaintiffs' Motion for Final Approval | April 2, 2026 |
| Plaintiffs Will File Updated Claims Report | April 16, 2026 |
| Proposed Fairness Hearing | April 23, 2026 |

## V.  CONCLUSION

The Parties are prepared to answer any questions the Court may have about this matter, including the timing of the final approval hearing, the settlement process, any issues arising out of any past Court Orders, or any other issue the Court may raise.

Dated: January 15, 2026

By: /s/ Rachel Geman

Rachel Geman (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com

Elizabeth J. Cabraser (SBN 083151)
Daniel M. Hutchinson (SBN 239458)
Jallé H. Dafa (SBN 290637)
Amelia Haselkorn (SBN 339633)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
jdafa@lchb.com
ahaselkorn@lchb.com

Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Avenue S., Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
bsugar@lchb.com

*Co-Lead Counsel*

Respectfully submitted,

By: /s/ Douglas A. Winthrop

Douglas A. Winthrop (Bar No. 183532)
Joseph Farris (Bar No. 263405)
Pieter de Ganon (Bar No. 320385)
Jessica L. Gillotte (Bar No. 333517)
Estayvaine Bragg (Bar No. 341400)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center 10th Floor
San Francisco, CA 94111-4024
(415) 471-3100
(415) 471-3400 (fax)
douglas.winthrop@aporter.com
joseph.farris@arnoldporter.com
pieter.deganon@arnoldporter.com
estayvaine.bragg@arnoldporter.com
jessica.gillotte@arnoldporter.com
estayvaine.bragg@arnoldporter.com

Assad H. Rajani (Bar No. 251143)
**ARNOLD & PORTER KAYE SCHOLER LLP**
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306
(650) 319.4500
(650) 319-4700 (fax)
assad.rajani@arnoldporter.com

Oscar Ramallo (Bar No. 241487)
Angel Tang Nakamura (Bar No. 205396)
Ryan M. Nishimoto (Bar No. 235208)
Allyson C. Myers (Bar No. 342038)

| | | |
|---|---|---|
| 1 | | **ARNOLD & PORTER LLP** |
| 2 | Justin A. Nelson (*pro hac vice*)<br>**SUSMAN GODFREY L.L.P** | 777 South Figueroa Street, 44th Floor<br>Los Angeles, CA 90017-5844 |
| 3 | 1000 Louisiana Street, Suite 5100<br>Houston, TX 77002-5096 | (213) 243-4000<br>(213) 243-4199 (fax) |
| 4 | Telephone: (713) 651-9366<br>jnelson@susmangodfrey.com | oscar.ramallo@arnoldporter.com<br>angel.nakamura@arnoldporter.com |
| 5 | Rohit D. Nath (SBN 316062) | ryan.nishimoto@arnoldporter.com<br>ally.myers@arnoldporter.com |
| 6 | Michael Adamson (SBN 321754)<br>**SUSMAN GODFREY L.L.P** | Daralyn J. Durie (Bar No. 169825) |
| 7 | 1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067-2906 | Ramsey Fisher (Bar No. 334228)<br>Jackson Lane (Bar No. 351633) |
| 8 | Telephone: (310) 789-3100<br>RNath@susmangodfrey.com | **MORRISON & FOERSTER LLP**<br>425 Market Street |
| 9 | MAdamson@susmangodfrey.com | San Francisco, CA 94105<br>(415) 268-7000 |
| 10 | Alejandra C. Salinas (*pro hac vice*)<br>**SUSMAN GODFREY L.L.P** | (415) 268-7522 (fax)<br>DDurie@mofo.com |
| 11 | 1000 Louisiana Street, Suite 5100<br>Houston, TX 77002-5096 | RamseyFisher@mofo.com<br>jlane@mofo.com |
| 12 | Telephone: (713) 651-9366<br>jnelson@susmangodfrey.com | Whitney Rose O'Byrne (Bar No. 325698) |
| 13 | asalinas@susmangodfrey.com | **MORRISON & FOERSTER LLP**<br>707 Wilshire Boulevard, Suite 6000 |
| 14 | *Co-Lead Counsel* | Los Angeles, CA 90017<br>(213) 892-5200 |
| 15 | | (213) 892-5454 (fax)<br>WOByrne@mofo.com |
| 16 | Jordan W. Connors (*pro hac vice*) | Mary Prendergast (Bar No. 272737) |
| 17 | **SUSMAN GODFREY L.L.P**<br>401 Union Street, Suite 3000 | Fitz Beckwith Collings (*pro hac vice*)<br>Aditya Vijay Kamdar (Bar No. 324567) |
| 18 | Seattle, WA 98101<br>Telephone: (206) 516-3880 | **MORRISON & FOERSTER LLP**<br>2100 L Street, N.W. |
| 19 | jconnors@susmangodfrey.com | Washington, DC 20037<br>(202) 572-6757 |
| 20 | J. Craig Smyser (*pro hac vice*)<br>Samir H. Doshi (*pro hac vice*) | (202) 887-0763 (fax)<br>MPrendergast@mofo.com |
| 21 | **SUSMAN GODFREY L.L.P**<br>One Manhattan West, 51st Floor, | fcollings@mofo.com<br>AKamdar@mofo.com |
| 22 | New York, NY 10019<br>Telephone: (212) 336-8330 | Kathleen R. Hartnett |
| 23 | csmyser@susmangodfrey.com<br>sdoshi@susmangodfrey.com | **COOLEY LLP**<br>3 Embarcadero Center, 20th Floor |
| 24 | Jacob S. Miller (*pro hac vice*) | San Francisco, CA 94111-4004<br>(415) 693-2071 |
| 25 | Danna Z. Elmasry (*pro hac vice*)<br>**LIEFF CABRASER HEIMANN** | (415) 693-2222 (fax)<br>khartnett@cooley.com |
| 26 | **& BERNSTEIN, LLP**<br>250 Hudson Street, 8th Floor | Alexander J. Kasner (Bar No. 310637) |
| 27 | New York, New York 10013-1413<br>Telephone: (212) 355-9500 | Ephraim McDowell (*pro hac vice*)<br>**COOLEY LLP** |
| 28 | jmiller@lchb.com<br>delmasry@lchb.com | 1299 Pennsylvania Avenue, NW, Suite 700<br>Washington, DC 20004-2400 |

*Co-Lead Counsel*

Scott J. Sholder (*pro hac vice*)
CeCe M. Cole (*pro hac vice*)
**COWAN DEBAETS ABRAHAMS & SHEPPARD LLP**
60 Broad Street, 30th Floor
New York, New York 10010
Telephone: (212) 974-7474
ssholder@cdas.com
ccole@cdas.com

*Additional Counsel for the Class*

Jay Edelson*
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, IL 60654
Telephone: (312) 589-6370
jedelson@edelson.com

Matthew J. Oppenheim*
Jeffrey M. Gould*
**OPPENHEIM & ZEBRAK LLP**
4530 Wisconsin Ave, NW, 5th Floor
Washington, DC 20016
Telephone: 202.450.3958
matt@oandzlaw.com

*Publishers' Coordinating Counsel*

(202) 776-2266
(202) 842-7899 (fax)
akasner@cooley.com
emcdowell@cooley.com

Mark Alan Lemley (Bar No. 155830)
**LEX LUMINA LLP**
700 S. Flower St., Suite 1000
Los Angeles, CA 90017
(650) 723-4605
mlemley@lex-lumina.com

*Attorneys for Defendant Anthropic PBC*

## **ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: January 15, 20265

/s/ *Rachel J. Geman*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing and all documents attached hereto were served January 15, 2026 upon counsel of record via service by ECF.

By: */s/ Rachel Geman*