# EXHIBIT 29

```
 1                  UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF CALIFORNIA
 3
 4   _____
                                   )
 5   ANDREA BARTZ, ANDREA BARTZ,   )
     INC., CHARLES GRAEBER, KIRK   )
 6   WALLACE JOHNSON, MJ + KJ,     )
     INC., individually and on     )
 7   behalf of others similarly    )
     situated,                     )
 8                                 )
             Plaintiffs,           )
 9                                 )
        vs.                        ) No. 3:24-cv-05417
10                                 )
     ANTHROPIC PBC,                )
11                                 )
             Defendant.            )
12   _____)
13
14
15
16      VIDEOTAPED DEPOSITION OF KIRK WALLACE JOHNSON
17                  Los Angeles, California
18                  Thursday, March 6, 2025
19
20
21
22   Reported by:
     RENEE A. PACHECO, RPR, CLR
23   CSR No. 11564
24   Job No. 7222286
25   PAGES 1 - 227
```

Page 1

```
 1                  UNITED STATES DISTRICT COURT
 2                 NORTHERN DISTRICT OF CALIFORNIA
 3
 4   _____
                                     )
 5   ANDREA BARTZ, ANDREA BARTZ,     )
     INC., CHARLES GRAEBER, KIRK     )
 6   WALLACE JOHNSON, MJ + KJ,       )
     INC., individually and on       )
 7   behalf of others similarly      )
     situated,,                      )
 8                                   )
              Plaintiffs,            )
 9                                   )
         vs.                         ) No. 3:24-cv-05417
10                                   )
     ANTHROPIC PBC,                  )
11                                   )
              Defendant.             )
12   _____)
13
14
15         Videotaped deposition of KIRK WALLACE JOHNSON,
16   taken on behalf of Defendant, taken at 777 South
17   Figueroa Street, Los Angeles, California, beginning at
18   9:17 a.m. and ending at 5:21 p.m. on Thursday,
19   March 6, 2025, before RENEE A. PACHECO, Certified
20   Shorthand Reporter No. 11564, RPR, CLR.
21
22
23
24
25
```

```
 1    APPEARANCES:
 2
 3    For Plaintiffs:
 4         SUSMAN GODFREY LLP
 5         BY:  JORDAN W. CONNORS, ESQ.
 6         401 Union Street, Suite 3000
 7         Seattle, Washington 98101
 8         (206) 516-3880
 9         Jconnors@susmangodfrey.com
10
11         SUSMAN GODFREY L.L.P
12         By:  COLLIN FREDRICKS, ESQ.
13         1000 Louisiana Street, Suite 5100
14         Houston, Texas 77002-5096
15         (713) 651-9366
16         Cfredricks@susmangodfrey.com
17
18    For Defendant:
19         ARNOLD & PORTER KAYE SCHOLER LLP
20         BY:  OSCAR D. RAMALLO, ESQ.
21         777 South Figueroa Street, 44th Floor
22         Los Angeles, California 90017-5844
23         (213) 243-4290
24         oscar.ramallo@arnoldporter.com
25
```

Page 3

```
 1   APPEARANCES (Continued):
 2
 3   Also Present:   (Via Zoom)
 4        Ally Myers
 5        Cameron Klein
 6        Joe Farris
 7        Jessica Gillotte
 8        Reetu Sinha
 9
10   Videographer:
11        Tristen Knudsen
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1                        INDEX
 2   DEPONENT                                    EXAMINATION
 3   KIRK WALLACE JOHNSON
 4         BY MR. RAMALLO                             9
 5         BY MR. RAMALLO 30(B)6                    184
 6
 7
 8                       EXHIBITS
 9   DEFENDANT'S                                       PAGE
10   Exhibit 23   First Amended Complaint              68
11   Exhibit 24   Printout from                        75
                  kirkwjohnson.com/about
12
     Exhibit 25   Printout from website                80
13
     Exhibit 26   Printout from website                83
14
     Exhibit 27   Printout from website                84
15
     Exhibit 28   Plaintiff Kirk Wallace Johnson       92
16                and MJ + KJ, Inc.'sFirst
                  Supplement Responses to First
17                Set of Request For Production
                  of Documents
18
     Exhibit 29   "My Books Were Used to Train        103
19                Meta's Generative AI.  Good.
                  It Can Have My Next One Too."
20                By Ian Bogost
21   Exhibit 30   Article "It's Practically          104
                  Impossible to Run a Big AI
22                Company Ethically"
23   Exhibit 31   Copyright registration             111
                  information for "To Be a
24                Friend Is Fatal"
25


                                                 Page 5
```

```
 1                    INDEX (CONTINUED)
 2
 3                        EXHIBITS
 4    DEFENDANT'S                                          PAGE
 5    Exhibit 32   E-mail                                  118
 6    Exhibit 33   E-mail attachment                       118
 7    Exhibit 34   E-mail                                  130
 8    Exhibit 35   Attachment to E-mail                    131
 9    Exhibit 36   Assignment of the copyright of          133
                   books to MJ + KJ, Inc.
10
      Exhibit 37   Agreement dated 8-24-15                 143
11
      Exhibit 38   Option Agreement                        149
12
      Exhibit 39   TV Option for "The Feather              151
13                 Thief"
14    Exhibit 40   Assignment of the copyright of          156
                   "The Feather Thief"
15
      Exhibit 41   Book deal with Viking                   160
16
      Exhibit 42   Option for "The Fisherman and           164
17                 The Dragon"
18    Exhibit 43   Royalty Statement                       167
19    Exhibit 44   Royalty Statement                       168
20    Exhibit 45   Royalty Statement                       170
21    Exhibit 46   30(b)(6) Notice                         185
22
23
                   INSTRUCTION NOT TO ANSWER
24
                           (None)
25


                                                        Page 6
```

```
 1    be valued at over $60 billion.
 2         Q    Is there anything else you can recall
 3    reading about Anthropic?
 4         A    Not that I can recall right now.
 5         Q    You are a plaintiff in this case; correct?      09:40AM
 6         A    Yes.
 7         Q    And you are suing my client, Anthropic?
 8         A    Yes.
 9         Q    Can you tell me in your own words what this
10    case is about from your perspective?                      09:40AM
11         A    Yes.   This case is about Anthropic's
12    unlicensed use of pirated copies of my work and of
13    thousands of other authors' work in order to train
14    their LLMs.
15         Q    Do you know what the legal claims or causes     09:41AM
16    of action are in the case?
17         A    I'm not a lawyer, but my understanding is
18    that this is copyright infringement.
19         Q    What type of company do you understand
20    Anthropic to be?                                          09:42AM
21         A    Sorry.  What type of company?
22         Q    Yes.
23         A    Do you mean like the -- the legal structure
24    of it or what?  I guess I'm trying to understand
25    what you're asking.                                       09:42AM
```

Page 21

```
 1      that they didn't even try.
 2      BY MR. RAMALLO:
 3          Q   Do you understand that you brought this
 4      lawsuit on behalf of a class of individuals?
 5          A   I do.                                          11:15AM
 6          Q   And you're a class representative; is that
 7      correct?
 8          A   Yes.
 9          Q   Who would you say you represent as a
10      plaintiff in this lawsuit?                             11:15AM
11          A   You're asking me to describe or define the
12      class?
13          Q   I'm asking you who you view as -- as the
14      group that you are representing?
15          A   I'm representing myself, my own work, and     11:15AM
16      the work of thousands of other authors whose work
17      has been infringed upon.
18          Q   What do you understand to be your role as a
19      class representative?
20          A   In a very reductive sense, to not just look   11:16AM
21      out for my own interest, but to consider the best
22      interest of the class and to provide information
23      that was requested by you all in discovery and to
24      sit in a deposition like this.
25          Q   Did you review the original Complaint         11:16AM
```

```
 1      before it was filed?
 2           A    I did.
 3           Q    And without telling me the substance of any
 4      of your communications with your lawyers, did you
 5      provide input on what the allegations should be?         11:17AM
 6           A    I can't recall.
 7           Q    Did you meet with your lawyers before the
 8      case was filed?
 9           A    In person.
10           Q    We'll start with in person.                    11:17AM
11                Did you meet with them in person?
12           A    No.
13           Q    Did you meet with your lawyers before the
14      case was filed over Zoom or similar technology?
15           A    I had phone calls with them, and my wife       11:17AM
16      did as well, acting as my personal attorney.
17           Q    How many phone calls did you have with your
18      attorneys prior to filing the lawsuit?
19           A    I don't know the exact number, but if you
20      want an estimate, I would be guessing, but in the        11:18AM
21      five to ten range.  I could be wrong about that.
22           Q    Did your wife have calls separate with you,
23      or were you always on calls together when she was
24      involved?
25           A    If I recall, she was on the initial call,     11:18AM
```

Page 61

|    |   |                                                              |         |
|----|---|--------------------------------------------------------------|---------|
| 1  |   | with Jonathan Franzen?                                       |         |
| 2  | A | I didn't say I had a conversation with him                   |         |
| 3  |   | about -- I saw an article that he was suing.  In             |         |
| 4  |   | that article, I believe I read that it was Susman.           |         |
| 5  | Q | Oh.                                                          | 11:22AM |
| 6  | A | Yeah.                                                        |         |
| 7  | Q | Okay.  Thanks for the clarification.                         |         |
| 8  |   | So you didn't contact Jonathan Franzen; is                   |         |
| 9  |   | that correct, to talk about this case?                       |         |
| 10 | A | Before -- before suing?                                      | 11:22AM |
| 11 | Q | Before suing, yes.                                           |         |
| 12 | A | No, I don't believe so.                                      |         |
| 13 | Q | Have you talked to Jonathan Franzen about                    |         |
| 14 |   | this case after suing?                                       |         |
| 15 | A | I asked him a question about his experience                  | 11:22AM |
| 16 |   | in his case, which is a separate case, but it was            |         |
| 17 |   | only about the discovery process.                            |         |
| 18 | Q | Do you understand as named plaintiff, you                    |         |
| 19 |   | can be called as witness to testify at trial if the          |         |
| 20 |   | case goes to trial?                                          | 11:23AM |
| 21 | A | I do.                                                        |         |
| 22 | Q | Would you be willing to do that if it                        |         |
| 23 |   | requires you to travel to San Francisco?                     |         |
| 24 | A | Yes.                                                         |         |
| 25 | Q | Do you have any understanding about whether                  | 11:23AM |