# EXHIBIT 7

Penguin
Random
House

November 5, 2018

Andrea Bartz Inc.
c/o ICM Partners LLC
65 East 55th Street
New York, NY 10022
Attn: Alexandra Machinist

Dear Ms. Bartz:

Reference is made to the agreement dated October 23, 2017 (the "Agreement"), between Andrea Bartz Inc. (the "Author") and The Crown Publishing Group, a division of Penguin Random House LLC ("Publisher") for a work of fiction entitled THE LOST NIGHT (the "Work"). This letter, when fully executed, shall serve to amend the Agreement as follows:

Paragraph 4 shall be revised to include the following provision:
Additional Advance. If, within twelve (12) months following Publisher's initial publication of the Work, the Actual Earnings of the Work equal or exceed          Thousand Dollars ($     ,000), Publisher shall pay the Author the sum of          Thousand Dollars ($   ,000) as an additional advance against and on account of all monies accruing to the Author hereunder. Such additional advance payment shall be payable within thirty (30) days after the close of the royalty accounting period during which such Actual Earnings threshold is reached. As used herein, "Actual Earnings" shall mean (i) the Author's royalties from sales of the Work pursuant to Paragraph 11, less returns and a reasonable reserve for returns, and (ii) the Author's share of subsidiary rights income pursuant to Paragraph 12 actually received by Publisher. *If following the twelve (12) month anniversary of the publication of the initial edition of the Work, Publisher has determined that the Actual Earnings threshold specified above for the Work has not been met, the Author may request in writing that Publisher review the Actual Earnings for such twelve (12) month period again at the time of the next accounting in order to evaluate whether such threshold has been reached in light of actual returns for the Work, and if so, Publisher shall pay to the Author the additional advance for the Work specified above within thirty (30) days of Publisher's determination.*

Except as herein expressly modified, the Agreement is ratified and confirmed, and remains in full force and effect.

1745 Broadway, New York, NY, 10019
P 212 782 9000  F 212 940 7532
global.penguinrandomhouse.com

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005288

Please indicate your understanding of and agreement with the foregoing by signing all copies of this amendment letter and returning them directly to our Contracts Administrator, Stefanie Wray. One fully executed copy will then be returned to you.

Sincerely,

Molly Stern
Senior Vice President and Publisher
Crown Publishers, Hogarth, and Archetype

AGREED TO & ACCEPTED:
Andrea Bartz Inc.

By: Andrea Bartz, CEO

cc: Hilary Teeman

2

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005289

Penguin
Random
House

#54831

**AGREEMENT** made this 23rd day of October , 2017, between **Andrea Bartz Inc.** (the "Author"), whose address is **c/o ICM Partners of 65 East 55th Street, New York, New York 10022 (Attn: Alexandra Machinist)** and The Crown Publishing Group, a division of Penguin Random House LLC, with offices at 1745 Broadway, New York, New York 10019 ("Publisher").

The parties to this Agreement wish to publish and have published a certain work (the "Work") provisionally entitled:

THE LOST NIGHT
by Andrea Bartz ("Bartz")
(the final title of the Work to be mutually agreed between Publisher and the Author)

In consideration of the mutual promises set forth in this Agreement, the parties agree as follows:

**1.  The Work.** The Author shall deliver to Publisher a new and original manuscript of the Work, containing approximately **80,000 to 100,000 words.**

**2.  Description of the Work.** The Work of fiction shall be a novel about a woman who investigates the mysterious circumstances of her best friend's suicide from a decade before, when she and a handful of 20-something close friends had lived in a Brooklyn warehouse together.

**3.  Grant of Rights; Territories.** The Author grants to Publisher, during the full term of copyright (including renewals and extensions thereof) applicable to the Work in each country covered by this Agreement, the right to publish, distribute, sell and otherwise make available, any and all editions and/or formats of the Work, ~~in whole or in part~~, as are **expressly granted herein to Publisher and subject to the limitations and conditions set forth in Paragraphs 11 and 12 herein** and to license said rights on such terms as Publisher deems **reasonably** advisable, **subject to the limitations and conditions set forth in Paragraph 12 below,** as follows:

Exclusively throughout the world (the "Exclusive Territories") in all languages.

**4.  Advance Against Royalties.** **Subject to the provisions of this Agreement,** Publisher shall pay to the Author, as a **non-returnable** advance against and on account of all royalties and other sums accruing to the Author under this Agreement, the sum of ▮▮▮▮▮▮ **Thousand Dollars ($▮▮,000),** payable as follows:

  $▮▮,500 on the execution of this Agreement;
  $▮▮,500 on Publisher's acceptance of the complete manuscript of the Work in conformity with Paragraph 5 below;
  $▮▮,500 on publication of the Publisher's initial edition of the Work or twelve (12) months after Publisher's acceptance of the complete manuscript of the Work, whichever is sooner; and
  $▮▮,500 one (1) year after publication of the Publisher's initial edition of the Work or on the second major publication of the Work (not including audio, large print or Book-Based Digital Edition), or twenty-four (24) months after Publisher's acceptance of the complete manuscript of the Work, whichever is soonest.

**5.  Delivery and Acceptance of Manuscript.** (a) The Author shall deliver to Publisher on or before **December 1, 2017,** one (1) copy of the complete **manuscript of the Work** (in an electronic format acceptable to Publisher), satisfactory to Publisher in style, content, length and form. ~~Prior to the delivery of the complete manuscript of the Work, the Author shall deliver "Progress Materials" which are defined as ____~~

1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005290

(i) If the Author fails to deliver the complete **manuscript of the** Work by the delivery date specified above, after a ~~thirty (30)~~ **forty-five (45)** day grace period, **or by a later date as may be mutually agreed in writing by the parties,** Publisher may, **as sole remedy,** demand, in writing, that the Author return all sums theretofore paid to Author by Publisher in connection with the Work. Upon receipt of these sums by Publisher, this Agreement shall terminate, **and all rights granted in this Agreement to Publisher shall revert to the Author, subject to the provisions of this Subparagraph 5(a)(i).** The Author shall not, for a period of ~~three (3) years~~ **one (1) year** after termination hereunder, submit any partial or complete manuscript or proposal for the Work, or any **substantially** similar work, to any publisher before offering it to Publisher under the same terms as are contained in this Agreement. **If Publisher does not accept such offer within fifteen (15) business days, the Author shall have the absolute right to enter into an agreement with another publisher.**

(ii) If Publisher **and the Author mutually** determine that the published Work will require materials such as photographs, illustrations, an appendix, a bibliography, or other supplementary matter (individually or collectively, "Related Materials"), the Author shall furnish these to Publisher in reproducible form at a mutually agreeable time; if the Author does not do so, Publisher may supply them at the Author's expense **as set forth in Subparagraph 5(a)(v),** such expense to be with the **Author's prior approval, not to be unreasonably withheld or delayed.**

(iii) If permission from others is required for publication of any material contained in the Work, including ~~any visual material~~ **Related Materials, if any,** or for the exercise of any other right conferred by this Agreement (including the right to promote the Work, **such permission to promote the Work to be discussed in each instance and in advance by the Author and Publisher, including the determination of the reasonable expense to be incurred by the Author in each instance**), the Author shall be responsible for obtaining such permissions at the Author's own expense and shall submit them, in form satisfactory to Publisher, with**in thirty (30) days after submission of the complete manuscript of the** Work. Such permissions shall permit the exercise by Publisher and its licensees of all the rights granted to Publisher. **Upon the Author's request, Publisher will furnish the Author with a sample of the written authorization that Publisher deems satisfactory, but no such assistance shall relieve the Author of the Author's obligations under this Subparagraph 5(a)(iii).**

~~(iv) Subject to the mutual agreement of the Author and Publisher, Publisher shall have the right to commission the preparation of an index, reasonable to the size and scope of the Work, at Author's own reasonable expense, unless the Author provides an acceptable index at the time of delivery of the complete Work or within a mutually agreeable time period following Publisher's acceptance of the complete manuscript of the Work and in accordance with Publisher's production requirements.~~

(v) Any **reasonable, documented, out-of-pocket** sums that Publisher has paid on the Author's behalf by reason of Subparagraphs 5(a)(ii-iii) above may be deducted from any portion of the advance payable to the Author pursuant to Paragraph 4 of this Agreement; if the total advance has already been paid, however, any such sums will be billed to the Author directly or, at Publisher's discretion, charged to the Author's royalty account.

(b) Publisher will inform the Author in writing, within ~~ninety (90)~~ **forty-five (45)** days following Publisher's receipt of the complete **manuscript of the** Work ~~or Progress Materials~~ delivered pursuant to Subparagraph 5(a) above, whether or not the **complete manuscript of the** Work ~~or any Progress Materials~~ is acceptable. ~~Acceptance of Progress Materials shall in no event be deemed acceptance of the complete manuscript of the Work.~~

(i) If Publisher concludes that the **complete manuscript of the** Work ~~or the Progress Materials~~ delivered is unacceptable **for an editorial reason relating to the manuscript of the Work** ~~or the Progress Materials~~ but could be revised to Publisher's satisfaction, Publisher will provide written editorial comments to the Author with respect to the revisions required **within sixty (60) days of its receipt of the complete manuscript of the Work** ~~or the Progress Materials~~, and the Author shall have ~~thirty (30)~~ **no fewer than sixty (60)** days after receipt of such comments to make the revisions, **unless another period of time is otherwise mutually agreed.** Should Publisher, in its sole judgment, conclude that the **complete manuscript of the** Work ~~or the Progress Materials~~ as first submitted cannot be revised to its **editorial** satisfaction within a timely period, or should the Author fail to deliver a revision within the said ~~thirty (30)~~ **sixty (60)** days **(unless another time is otherwise mutually agreed)**, or should Publisher, after the ~~thirty (30) day~~ **sixty (60) day** revision

2

period, find that the revised **manuscript of the** Work ~~or the revised Progress Materials~~ is still unacceptable for any **editorial** reason **relating to the revised manuscript of the Work** ~~or the revised Progress Materials~~, Publisher may reject the Work by written notice to the Author **delivered within sixty (60) days after Publisher's receipt of the** revised **manuscript of the Work** ~~or the revised Progress Materials~~. Publisher agrees, however, that if the complete manuscript of the **Work** ~~or the Progress Materials~~ conforms to the book description in Paragraphs 1 and 2, then Publisher shall grant the Author the right to revise the complete manuscript of the Work ~~or the Progress Materials~~ within a reasonable period of time in order to attempt to make it editorially acceptable to Publisher.

(ii) If the Work is rejected this Agreement shall terminate **and all rights in the Work granted herein shall revert to the Author** upon the condition that the Author shall use **best commercially reasonable** efforts to resell the **rights granted hereunder in the** Work or any portion thereof elsewhere and shall repay any and all sums previously paid to the Author under this Agreement from all proceeds from any sales or license of **such publication** rights ~~of any nature~~ in the Work. Any such proceeds, up to the total amount of any and all sums paid to the Author under this Agreement shall be deemed "First Proceeds." In order to effectuate the foregoing, the Author hereby (1) assigns and transfers to Publisher the Author's right to receive First Proceeds **[less any agent's commission, not to exceed twenty percent (20%), which shall be paid by the other publisher directly to the Author's agent]** and (2) authorizes and directs any third party from whom the Author is entitled to receive First Proceeds to pay such sums directly to Publisher on Publisher's written demand therefor.

(c) If Publisher elects to have the Work reviewed by its counsel prior to publication, the Author shall cooperate in the vetting process ~~and shall make such changes in the Work as are requested by Publisher's counsel~~. **Any such legal review by Publisher's attorneys shall be conducted at Publisher's sole expense.** If the Author and Publisher's counsel are unable to agree upon the ~~requested~~ changes **in the Work as are requested in good faith by Publisher's counsel in counsel's good-faith reasonable opinion**, and Publisher determines, **in its good-faith reasonable opinion**, that it is unable to publish the Work due to the risks of liability, the Author may promptly return to Publisher any amounts advanced and, upon receipt of such repayment, this Agreement shall terminate, **and all rights granted in this Agreement shall revert to the Author for the Author's sole use and disposition.** If Publisher's counsel deems changes advisable after first publication, the Author shall cooperate with Publisher's counsel in determining the appropriate changes. Notwithstanding anything to the contrary contained herein, the Work will be deemed acceptable only when it is acceptable to Publisher's counsel and in no event will Publisher be obligated to publish or continue to publish the Work if, in the **good faith reasonable** judgment of its counsel, such publication may lead to legal liability. No changes or revisions made pursuant to this paragraph shall be deemed to alter or affect the warranties and indemnities contained in Paragraph 15 of this Agreement.

**6. Proofreading and Author's Corrections.** No changes, other than copyediting, shall be made in the Work by Publisher **and/or its licensees** without the consent of the Author. Following acceptance of the Work and in the course of preparing it for composition, Publisher shall be authorized to ~~exercise customary editorial privileges and to~~ make the manuscript conform to Publisher's standard style of punctuation, spelling, capitalization and usage. The Author shall cooperate in making any ~~required~~ **necessary** corrections, approving the copyedited Work **in writing**, and reading, correcting, and returning promptly all page and/or galley proofs. **For the avoidance of doubt, the Author shall have approval over the final, copyedited manuscript of the Work, such approval not to be unreasonably withheld or delayed.** The cost of the Author's alterations (other than correction of printer's and/or **Publisher's** errors) in excess of ten percent (10%) of the cost of composition shall be paid by the Author as described in Subparagraph 5(a)(v) above, and the Author shall be entitled to see the bill for such charges **as well as a copy of the corrected proofs for inspection.** ~~Upon Publisher's reasonable request, in order to keep the Work topical, the Author shall revise/update the Work from time to time following first publication.~~

**7. Publication.** (a) Except as otherwise set forth in this paragraph **and elsewhere in this Agreement,** Publisher will, within eighteen (18) months following acceptance of the complete Work and Related Materials, publish ~~or cause publication of~~ the Work, in such formats, editions, style, and manner, under such imprint, at such cover price, and with such jacket, cover or package, as Publisher determines; **however, Publisher shall** consult **with the Author regarding jacket and cover presentation and copy and, when appropriate, interior design. Publisher shall publish the Work initially in hardcover under an imprint of The Crown Publishing Group, unless otherwise mutually agreed upon between the parties.** Nothing herein shall require Publisher to

3

BARTZ000005292

publish each and every edition permitted to be published or licensed hereunder. Should Publisher fail to publish ~~or cause publication of~~ the **full-length** Work **in the English language in the United States** within such time period, the Author's sole remedy shall be ~~either of~~ the following ~~options: (i) upon written notice to Publisher, the Author may publish the Work or grant the rights to the Work to another publisher, subject to the Author's obligation to repay to Publisher, out of First Proceeds from such publication or such grant, all sums previously advanced for the Work under this Agreement; or (ii)~~ upon written notice to Publisher, the Author may demand publication of the Work and thereafter may terminate this Agreement if publication still has not occurred six (6) months following Publisher's receipt of such notice.  If the Author terminates this Agreement for non-publication pursuant to this Subparagraph 7(a)~~(ii)~~, all **rights granted in this Agreement shall revert to the Author for the Author's sole use and disposition, and** ~~damages recoverable by the Author shall be limited to the advance paid by Publisher up to the date of termination~~ **the Author shall be entitled, as the Author's sole remedy, to retain any advances paid to the Author pursuant to Paragraph 4 and shall be entitled to receive, and Publisher shall promptly pay to the Author, any advances set forth in Paragraph 4 that are as-yet unpaid**, and no ~~other~~ damages, actions or proceedings, either legal or equitable, shall be claimed, instituted or maintained by the Author against Publisher **in connection with Publisher's failure to publish the Work in accordance with this paragraph.**

(b) Publisher's failure to publish ~~or cause publication~~ **the** Work within the time period provided in Subparagraph 7(a) above will not be deemed to be a breach of this Agreement (and the Author shall not be entitled to ~~any of the remedies~~ **remedy** set forth above) if the failure (i) is ~~permitted by~~ **expressly excused in accordance with** any **applicable** provision of this Agreement; (ii) results from any business decision made by Publisher with the approval of the Author; or (iii) is attributable to strikes, wars, government restrictions, Acts of God, or any other cause beyond Publisher's reasonable control **in which case the length of the delay in publication shall be in a reasonable proportion to the severity of the occurrence which caused such delay but not greater than six (6) months.**

(c) ~~If Publisher has not commenced production of the Work in the Spanish language within two (2) years following its initial English-language publication, Publisher shall, upon written notice from the Author, revert Spanish-language rights in the Work.~~

**8.  Promotional Materials/Promotion by the Author.**  (a) The Author shall submit to Publisher, for use in connection with the publication, licensing and promotion of the Work, pre-approved biographical data and a pre-approved photograph of **Bartz**, of quality acceptable to Publisher.  **If the Author does not have a photograph of quality acceptable to Publisher, Publisher may arrange to have Bartz sit for a new Author-approved photograph at Publisher's expense.**

(b) **With the Author's approval, such approval not to be unreasonably withheld or delayed,** Publisher may use, or permit others to use, **Bartz's** name and the likeness of **Bartz** obtained pursuant to Subparagraph 8(a), **Bartz's pre-approved biographical material,** the title of the Work, and selections from **the verbatim text of the Work\*** in advertising, promotion and publicity related to the publication and/or licensing of the Work, including **non-dramatic, non-serialized** broadcast **[not to exceed two (2) minutes in length]**, without charge, by radio, television or cable, or distribution via any form of electronic transmission, including online or satellite-based data transmission.  Likewise, the Author may use the same portions of the text of the Work that Publisher makes available for promotional use, provided that such use carries the current copyright notice, **and the Author agrees to use good faith efforts to include** a credit line to Publisher, and, whenever possible, a link to Publisher's website, **provided that an inadvertent failure to do so shall not be deemed a breach of his Agreement.**  The Author's use of any additional ~~material~~ portions of the text from the Work for promotional purposes shall be subject to Publisher's approval, **which shall not unreasonably be withheld or delayed.**

\* **[each such selection not to exceed 7,500 words in length or ten percent (10%) of the Work, whichever is less; however, such limitation shall not apply to use of the Work in any search and discovery program (e.g., Google Book Search, Amazon's "Search Inside the Book," etc.)]**

(c) All details of the advertising and promotion of the Work shall be determined by Publisher.  If Publisher **reasonably** requests **Bartz's** ~~cooperation~~ **assistance** in promoting the Work, the Author **ensures that Bartz shall be reasonably available for such promotional activities, subject to Bartz's professional or personal commitments or obligations.**

4

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005293

9. <u>Author Copies.</u> Upon Publisher's publication, the Author shall be entitled to receive ~~ten (10)~~ **thirty (30) hardcover, twenty-four (24) paperback and twenty (20) copies of each such edition of the Work to the Author's agent. If applicable hereunder, the Author shall be entitled to receive twenty-four (24)** retail audio copies of its edition of the Work and two (2) copies of any audio edition published for the library market. The Author may purchase additional copies for personal use and not for re-sale at one-half (½) the cover price. The Author will be billed for these copies and payment shall be made ~~prior to shipping~~ **within thirty (30) days following the date of shipment** unless the Author's royalty account has sufficient excess royalties accrued over and above the advance payable to the Author so that these charges can be recouped from the Author's royalty account. **Upon the Author's request, Publisher shall use best efforts to supply the Author with two (2) copies of any licensed edition of the Work.** *Author copies will be shipped directly to the Author at an address to be provided. Copies for the Author's agent will be shipped directly to the agent at the address provided in Paragraph 23.*

10. <u>Copyright.</u> Notice of copyright in the Work shall appear in each copy of the Work published by Publisher and shall be in the following name:

Andrea Bartz

**Publisher shall register copyright in the Work in the name of and for the benefit of the Author in accordance with The United States Copyright Act. Publisher shall also require its licensees and permitted assigns to print such copyright notice in each copy of the Work published by such licensee or permitted assigns.**

If the copyright of the Work is infringed **with respect to the rights granted to Publisher herein**, and if the parties proceed jointly, the expenses and recoveries, if any, shall be shared equally. If they do not proceed jointly, ~~either party~~ **the Author** shall have the right to prosecute such action, **in the Author's sole and absolute discretion,** and ~~such party~~ **the Author** shall bear the expenses thereof, and any recoveries shall belong to ~~such party~~ **the Author**.

11. <u>Royalties.</u> Publisher shall pay to the Author, or credit to the Author's account, the following royalties on all copies of Publisher's editions of the Work sold, distributed or otherwise made accessible by any business means or model now known or later developed (for the purposes of this Agreement, the foregoing transactions shall be considered "sales" or copies that are "sold"), less actual returns and a reasonable reserve* for returnable copies. **Upon the Author's written request, Publisher will provide an explanation of any reserve and/or the release thereof.**

**\* [such reserve to be adjusted at least annually based upon the actual sales and returns history of the Work and such other factors as Publisher, in its good faith judgment, deems appropriate; after three (3) full accounting periods following the initial publication of any edition of the Work, the reserve then held for that edition of the Work shall be no greater than the actual returns of that edition during the previous accounting period]**

Royalties shall be based on either (i) the "Suggested Retail Price" which shall be defined as the price designated by Publisher for the applicable edition on book jackets and covers (as applicable) and/or in catalogs, order forms or promotional materials or (ii) the "Amount Received" which shall be defined as amounts actually received by the Publisher, after discounts, allowances, return credits and applicable taxes, and excluding postage and shipping costs. Royalties shall be credited at the following rates:

(a) <u>Hardcover.</u> On copies of a hardcover edition sold in the U.S., except as described in subparagraphs (i) through (m) and (s) below:

**On the first 5,000 copies: 10% of the U.S. Suggested Retail Price on copies sold at a discount at or below 55% and 20% of the Amount Received on copies sold at a discount greater than 55%;**

**On the next 5,000 copies: 12½% of the U.S. Suggested Retail Price on copies sold at a discount at or below 55% and 25% of the Amount Received on copies sold at a discount greater than 55%;**

**On all copies thereafter: 15% of the U.S. Suggested Retail Price on copies sold at a discount at or below 55% and 30% of the Amount Received on copies sold at a discount greater than 55%.**

5

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005294

(b) Trade Paperback. On copies of a trade paperback edition sold in the U.S., except as described in subparagraphs (i) through (m) and (s) below: 7½% of the U.S. Suggested Retail Price on copies sold at a discount at or below 55% and 15% of the Amount Received on copies sold at a discount greater than 55%.

(c) Mass-Market Paperback. On copies of a mass-market paperback edition sold in the U.S., except as described in subparagraphs (i) through (m) and (s) below:

On the first 150,000 copies: 8% of the U.S. Suggested Retail Price on copies sold at a discount at or below 55% and 16% of the Amount Received on copies sold at a discount greater than 55%;

On all copies thereafter: 10% of the U.S. Suggested Retail Price on copies sold at a discount at or below 55% and 20% of the Amount Received on copies sold at a discount greater than 55%.

Notwithstanding the foregoing terms in Paragraphs 11(a), (b) and (c), should Publisher's formula for determining the applicable royalty rate for copies sold at a discount greater than 55% in the Penguin Random House LLC contract boilerplate reflect a change to the Author's advantage during the term of this Agreement, Publisher shall amend this contract to reflect that new royalty with the understanding that such new royalty shall apply to all applicable  sales occurring within the then-current royalty period.

(d) ~~The royalties set forth in Subparagraphs 11(a), (b) and (c) for any Spanish-language edition shall be reduced by 1%.~~

(e) Large Print. On all copies of a large-print edition of the Work sold in the U.S., except as described in subparagraphs (i) through (m) and (s) below:  10% of the U.S. Suggested Retail Price for any hardcover edition and 7½% of the U.S. Suggested Retail Price for any paperback edition.

(f) Omnibus. On all copies of any omnibus volume containing the Work and other works by Bartz sold in the U.S. except as described in subparagraphs (i) through (m) and (s) below:  the pro-rata share of 10% of the Amount Received for the omnibus as a whole.  Publication of such volume being subject to the Author's approval, such approval not to be unreasonably withheld or delayed.

(g) Canadian Sales.  On all copies of any print edition sold in Canada, except as described in subparagraphs (i) through (m) and (s) below:  Two-thirds (2/3) of the prevailing U.S. rate for that edition based on the Canadian cover price or the Amount Received, as the case may be.

(h) Other Export Sales. (i) On all copies of any English-language print edition sold outside the U.S. and Canada:  10% of the Amount Received ~~for any hardcover edition; and 5% of the Amount Received for any paperback edition~~; and (ii) on royalty-inclusive copies provided to licensees outside the U.S.: ~~8%~~ 10% of the Amount Received.

(i) Promotional and Special Sales.  On all copies of any print edition sold outside of normal wholesale and retail trade channels at a discount of 60% or greater and on all copies of any print edition sold at a promotional discount of 65% or greater:  10% of the Amount Received.

(j) Premiums.  On all copies of any print edition sold of any premium edition (copies intended for free distribution and not for resale), subject to the Author's approval of the product or service involved, such approval not to be unreasonably withheld or delayed:  5% of the Amount Received.

(k) Educational Book Clubs and Book Fairs.  On all copies of any print edition sold by book clubs or book fairs supplying the educational market:  ~~6%~~ 8% of the Amount Received.

(l) Proprietary Editions and Mail Order Continuity Sales.  On all copies sold of any proprietary edition specifically produced for a retail outlet (subject to the Author's approval of the retail outlet involved, such approval not to be unreasonably withheld or delayed) or any print edition sold ~~as part of~~ through a direct marketing continuity program (subject to the Author's approval, such approval not to be unreasonably withheld or delayed):  5% of the Amount Received.

6

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005295

(m) Adult Book Clubs. On all copies sold by an adult book club on a royalty-inclusive basis: 10% of the Amount Received.

(n) Audio. (i) Except as provided in (ii) and (iii) below, on all copies sold of any **non-dramatic** audio recording developed from the Work (the "Audio Work") and made available by an audio publishing imprint of Publisher through regular wholesale, retail and library channels: 10% of the Amount Received.

(ii) On copies of the Audio Work sold through special markets such as mail order and premium **(such premium use subject to the Author's approval of the product or service involved, such approval not to be unreasonably withheld or delayed)** or on copies of the Audio Work sold at a discount of 60% or greater: 5% of the Amount Received.

(iii) On all copies of the Audio Work delivered by means of digital distribution: 25% of the Amount Received. **Notwithstanding the foregoing, if during the term of this Agreement, the Audio Work digital distribution royalty in the Penguin Random House LLC contract boilerplate reflects a change to the Author's advantage, Publisher will amend this Agreement to reflect that new royalty.**

(iv) For purposes of this Agreement, the Audio Work may constitute single and multiple audio cassettes, phonograph records, audio discs of any speed or size, magnetic recording tape, and any other medium for sound reproduction or transmission now known or later developed and may include verbatim selections from the Work, connecting **non-dramatic** narrative passages, **incidental** background music and **incidental** sounds supplied by Publisher. **The Audio Work may not use more than one reader without the Author's prior approval, such approval not be unreasonably withheld or delayed.**

(v) During the term of this Agreement, the Author shall not, without Publisher's prior written consent, create or authorize or participate in the creation of any other audio ~~program~~ **recording** based on the Work **in the Exclusive Territories, unless unabridged audio rights have reverted as specified below.** Notwithstanding the foregoing, in the event the Author has reserved performance rights in the Work, the Author shall have the right to convey to ~~the~~ **any** purchaser(s) or licensee(s) of **such** performance rights the right to produce an audio recording**(s)** derived from the soundtrack**(s)** of **any** motion picture, **television, radio, home video, video on demand, streaming video on demand and/or ~~play~~ live stage performance(s)** based on the Work.

(vi) If**, subject to the Author's approval, such approval not to be unreasonably withheld or delayed,** more than one work of **Bartz** is recorded on the Audio Work, the royalty payable to the Author under this Agreement shall be in proportion to the amount of the Work used on the Audio Works.

(vii) The Author shall ~~be given the opportunity~~ **have the right** to approve the script for any Audio Work based on an abridgment of the Work **in writing**, provided that such approval shall not be unreasonably withheld or delayed. If the Author has not approved or disapproved the script within ten (10) business days following the Author's receipt thereof, the script shall be deemed approved.

**In addition, the Author shall have approval over the graphic design of the audio package and copy of any audio edition if it differs from the Publisher's print edition of the Work. Publisher shall meaningfully consult with the Author in connection with the selection of the reader of the Audio Work.**

(viii) If unabridged audio rights in the Work are not exercised within twelve (12) months following the initial publication of the Work, the Author shall have the right to request that such unabridged audio rights revert to the Author if Publisher is unable to produce or license such unabridged audio rights within three (3) months of its request from the Author to do so. If Publisher fails to do so, the unabridged audio rights shall then revert to the Author for the Author's sole use and disposition.

(o) Digital. (i) On all copies of the Work sold as a "Book-Based Digital Edition" ~~or a "Transformative Digital Version"~~ (as defined below): 25% of the Amount Received. **Notwithstanding the foregoing, if during the term of this Agreement, the Book-Based Digital Edition royalty in the Penguin Random House LLC contract boilerplate reflects a change to the Author's advantage, Publisher will amend this Agreement to reflect that new royalty.**

7

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005296

(ii) "Book-Based Digital Edition" means the text of the Work and/or any illustrations, photographs or other material contained in the **initial print edition of the Work, without embellishments,** in whole or**,** subject to the **Author's approval, such approval not to be unreasonably withheld or delayed,** in part, whether complete, condensed, adapted or abridged, made accessible by any means of distribution or transmission, now known or later developed, including but not limited to electronic book readers, mobile operating systems or browser-based platforms, intended to make the text and any illustrations, photographs or other material contained in the **initial print edition of the Work, without embellishments,** available in visual **non-dramatic** form for reading other than in printed form. A Book-Based Digital Edition to which Publisher does not assign a Suggested Retail Price, including but not limited to instances in which Publisher's income is based on a share of advertising revenue, subscription revenue, or revenue derived from micro-transactions, is referred to herein as a "Non-SRP Edition."

(iii) If the Author objects to the inclusion of any Non-SRP Edition of the Work in any digital channel, the Author may send Publisher a written request to remove such Non-SRP Edition from such digital channel and Publisher shall comply within a reasonable period of time thereafter, **not to exceed thirty (30) days after Publisher's receipt of the Author's written request.**

(iv) The Author shall have approval over the following: (x) condensations and abridgments of any Book-Based Digital Edition; (y) any material or functionalities added by Publisher to any Book-Based Digital Edition (e.g, text, sounds, images, interactivity or graphics) that are more than incidental to the Work; and (z) other adaptations that alter the expression of the content of the Book-Based Digital Edition. In the event that Publisher controls audio recording rights, Publisher shall be permitted to integrate an audio recording of the Work into any Book-Based Digital Edition **of the Work,** and the royalty set forth in this Subparagraph 11(o) shall apply.

(v) Subject to the foregoing, the grant of rights to Publisher pursuant to this Subparagraph 11(o) is not intended by the parties to include a grant of **performance rights in the Work, including but not limited to, motion picture, television, home video, video on demand, streaming video on demand, and all other forms of audio-visual, radio, live stage, and any allied merchandising rights derived therefrom.**

(vi) "Transformative Digital Version" means digital or electronic products or services now known or later developed that are derived or adapted from the Work or from portions of the Work and that include no more than incidental substantial accompanying component(s) **of one or more of the following: video, audio, graphics and/or animation in addition to** portions of the text of the Work and/or any illustrations, photographs or other material contained in the Work. **Publisher acknowledges that Transformative Digital Version rights have been reserved by the Author. The Author will not authorize the publication of more than fifteen percent (15%) of the total Work in connection with the exploitation of Transformative Digital Version rights without Publisher's prior written consent, which consent shall not be unreasonably withheld or delayed.**

(p) Paper Products. On all copies sold of paper products based on the Work (including, without limitation, journals, note cards, note pads, postcards, calendars, coasters, organizers): 5% of the Amount Received.

(q) <u>Online Sales.</u>  For copies sold through online distributors, including Publisher's proprietary websites, the applicable royalty specified above **[excluding Subparagraphs 11(l) and 11(n)(ii)]**, based on the format, discount and territory that apply to the transaction.

(r) <u>Advertising.</u>  **Subject to Paragraph 17 below,** for all supplemental revenue earned from advertising placed in the Work or in relationship to the electronic display of pages from the Work, and in connection with the program currently known as "Google Book Search" and any similar search and discovery program that generates advertising revenue for Publisher, the Author will receive 50% of the Amount Received, less commissions paid by Publisher in connection with any such advertising.

(s) <u>No Royalty Copies.</u>  No royalties shall be paid on copies provided to any party at or below the cost of manufacture, or sold below manufacturing cost as remainders, or given away for review, advertising, sample, sales promotions, or like purposes **regarding the Work and/or the Author,** or on portions of the Work appearing as previews in other books published by Publisher **(such previews subject to the Author's approval, such approval not to be unreasonably withheld or delayed)** or on portions of the Work used or licensed for advertising or publicity without compensation. Publisher shall notify the Author before the Work is remaindered, which event shall not occur before one (1)

8

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005297

year following initial publication of the Work, and shall offer the Author the opportunity to purchase copies of the Work at the **manufacturing cost or the** remainder price, **whichever is less,** plus freight; however, any inadvertent failure by Publisher to so notify the Author shall not be deemed a breach of this Agreement. ~~Any purchase of copies of any print edition of the Work made at a discount of eighty percent (80%) or greater from the Suggested Retail Price shall be deemed a sale below the cost of manufacture.  Notwithstanding the foregoing, in~~ **In** the event that a remainder sale **of copies of any print edition of the Work** is made above the cost of manufacture, the royalty shall be 10% of the Amount Received above manufacturing cost.

12.  <u>Subsidiary Rights.</u>  (a) On any editions **(as specified below)** of the Work licensed to a third party who assumes the role and functions of a publisher in creating, producing, marketing and disseminating its own branded edition or excerpts of the Work (*i.e.*, not a distributor, selling agent or retailer of Publisher's editions or excerpts) (a "Third Party Publisher"), Publisher shall pay to the Author a share of the ~~net~~ **gross** proceeds of such licenses **(less any foreign agents' commissions [not to exceed 10%], non-recoupable foreign taxes and bank charges)**, which shall be divided as set forth below and paid or credited to the Author's account (less the amount of any advances then unearned) at the time of the next regular accounting following receipt.  **At the Author's written request at any time after publication of the Work but no more than once in any accounting period, the Author's share from licenses granted pursuant to this Paragraph 12, less any unearned advances, shall be paid to the Author within thirty (30) days after the receipt of such sum(s) by Publisher or within thirty (30) days after Publisher's receipt of the Author's written request, whichever is later, if the Author's share of such sum(s) is Five Hundred Dollars ($500) or more.**  Upon Author's written request, Publisher will provide the Author with copies of executed licenses in which the Author's share of the proceeds is Five Hundred Dollars ($500) or greater.  *(See also Paragraphs 6, 10 and 17.)*

|  | Publisher's Share | Author's Share |
|---|---|---|
| First Serial (use of serializations or excerpts, in newspapers, magazines or other periodicals before publication of the Work) **(Any such license will be subject to the Author's approval as to the "cut" and placement, such approval not to be unreasonably withheld or delayed.)** | 10% | 90% |
| Second Serial (use of serializations or excerpts, in newspapers, magazines or other periodicals after publication of the Work, and condensations, digests and anthologies) **(Publisher shall consult with the Author regarding such licenses.)** | 50% | 50% |
| Book Club **(Publisher shall consult with the Author regarding such licenses.)** | 50% | 50% |
| Permissions | 50% | 50% |
| Trade or Mass-Market Paperback **(Subject to the Author's approval, such approval not to be unreasonably withheld or delayed)** | 50% | 50% |
| Other Book Publication (including, but not limited to, hardcover **reprint**, large-type editions, mail order, premium **[subject to the Author's approval of the product or service involved, such approval not to be unreasonably withheld or delayed]** and other special editions and schoolbook and book fair editions licenses)  **(Publisher shall consult with the Author regarding such licenses.)** | 50% | 50% |
| British Commonwealth (which may include **the right of Publisher's licensee to further sublicense any of the rights granted elsewhere in this Agreement, including first serial) (Subject to the Author's approval, such approval not to be unreasonably withheld or delayed)** | 20% | 80% |

9

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005298

| | | |
|---|---|---|
| Translation (which may include **the right of Publisher's licensee to further sublicense any of the rights granted elsewhere in this Agreement, including first serial) (Publisher shall consult with the Author regarding such licenses.)** | 25% | 75% |
| Book-Based Digital Edition **(Subject to the Author's approval, such approval not to be unreasonably withheld or delayed)** | 40% | 60% |
| ~~Transformative Digital Version~~ **If the Author disposes of Transformative Digital Version rights, the Author will not authorize the publication of more than fifteen percent (15%) of the total Work in connection with the exploitation of any Transformative Digital Version rights without Publisher's prior written consent, which consent shall not to be unreasonably withheld or delayed.** | ~~50%~~ | ~~50%~~ |
| **Non-Dramatic** Audio Recording **(Subject to the Author's approval, such approval not to be unreasonably withheld or delayed)** | 50% | 50% |
| ~~Paper Products (such as journals, note cards and calendars)~~ | ~~50%~~ | ~~50%~~ |
| ~~Commercial and Merchandising (derivative products such as the use of a title or character for clothing, toys, board games or video games)~~ | ~~50%~~ | ~~50%~~ |
| ~~Performance (motion picture, television, home video, video on demand and all other forms of audio-visual, radio, live stage, soundtrack and music publishing, and all allied merchandising rights derived therefrom)~~ | ~~10%~~ | ~~90%~~ |

The Author retains the right of editorial approval over abridgments and condensations, such approval not to be unreasonably withheld or delayed.

(b)      Publisher shall have the right to grant transcription or publication rights in the Work in Braille or other non-book formats, without charge, specifically for use by the visually impaired or those otherwise disabled.

(c)      If Publisher exercises any of the rights specified in this Paragraph 12 itself in lieu of licensing them, the royalty rates, unless specified in Paragraph 11, shall be subject to agreement between the parties. For the avoidance of doubt, the parties hereby specifically acknowledge and agree that any license of rights set forth in this Paragraph 12 to an affiliate of Publisher shall be negotiated at arm's length and on traditional terms similar to those of Publisher's comparable agreements for similar licenses between Publisher and unaffiliated companies, **subject to the Author's approval or consultation rights as specified above in this Paragraph 12**.

(d)      ~~If the Author has retained audio recording rights in the Work, the Author shall give Publisher the right of first opportunity for the acquisition of these rights before licensing them elsewhere.  If Publisher does not acquire such rights, The Author will not authorize publication of an audio recording of the Work earlier than Publisher's first~~ **timely** ~~publication.~~

(e)      ~~If the Author has retained First Serial rights in the Work, the Author will not license such rights anywhere in the world without the approval of~~ **consult with** Publisher ~~with respect to the timing and excerpt of the Work so that Publisher may coordinate publication of the first serial and Publisher's~~ **initial** ~~edition of the Work.~~

(f)      If the Author ~~has retained and~~ disposes of performance rights **in the Work**, Publisher shall grant the purchaser of those rights ~~the privilege~~ **permission (free of charge)** to publish excerpts and summaries of the Work in the aggregate not to exceed 7,500 words [or ten percent (10%) of the total Work **(in the case of juvenile titles, gift books and the like)**, whichever is less], for advertising, publicizing, and promoting such rights and not for resale, provided, however, that the Author's grant shall require the purchaser to take all steps necessary, **if any,** to protect the copyright of the Work. The Author will use ~~best~~ **reasonable** efforts to **assist Publisher to** secure the agreement of the purchaser of performance rights to grant Publisher the right to use photographic stills and the title of

10

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005299

the performance in connection with any tie-in edition of the Work in any format **granted to Publisher in this Agreement**.

**13.** **Statements of Account.** Publisher shall prepare a statement of account semi-annually, in accordance with its regular accounting practices, as of the 31st day of March and the 30th day of September **for the period including the date of initial publication of the Work and thereafter** for all six-month periods during which copies of the Work are sold, and shall send these statements, together with payment of the amount due, if any, within four (4) months following the end of the period. The Author's share of amounts received from the disposition of licenses granted under this Agreement shall be computed after deduction of any **non-recoupable** foreign taxes withheld, bank charges and any of Publisher's **foreign** sub-agent commissions **(not to exceed 10%)**. State, federal and **non-recoupable** foreign taxes on the Author's earnings, when required by law to be withheld and paid by Publisher, shall be proper charges against the Author's earnings hereunder. If the Author has received any overpayment or is otherwise indebted to Publisher under this Agreement **(an unearned advance shall not constitute an indebtedness of the Author for the purposes of this Paragraph 13)**, Publisher may deduct the amount due from any sum due or to become due to the Author under this Agreement. **Nothing in the proceeding sentence shall be construed as limiting Publisher's rights to set-off or counterclaim provided by law.**

**Upon the Author's written request but no more than once per six (6) month period, Publisher shall furnish the Author with information regarding the number of copies printed, shipped, sold, returned and on hand, the current reserve for returns, a listing of subsidiary rights income and copies of licensees' royalty statements. It is understood and agreed that following initial publication of the Work and during the remainder of the term of this Agreement the Author shall be entitled to access current sales activity for the Work via the Penguin Random House Author Portal currently located at**

**https://authors.penguinrandomhouse.com.**

The Author **or the Author's duly authorized representative** shall have the right, upon reasonable written notice and at the Author's own expense, to examine **and make copies of the** ~~available~~ books and records of Publisher insofar as they relate to the Work, provided that the examination is conducted during usual business hours, is in accordance with customary accounting procedures, and occurs no more than once a year and not later than ~~two (2)~~ **three (3)** years from the Author's receipt of the statement in question. **If errors of accounting are found to the Author's disadvantage, any sums owing to the Author, together with interest at The JP Morgan Chase Bank prime interest rate, will be paid by Publisher within fourteen (14) days. If such errors amount to five percent (5%) or more to the Author's disadvantage, the reasonable cost of such examination (but not to exceed the amount of the error) shall be paid to the Author together with the sums owing.**

**14.** **Competitive Works.** During the term of this Agreement, the Author will not, without Publisher's prior written consent, (i) publish or authorize publication **in the Exclusive Territories granted to Publisher in this Agreement**, by anyone other than Publisher of any text-based edition, adaptation, abridgment or condensation of the Work, or of any text-based derivative work (including, but not limited to, any ~~dramatic play, screenplay, television script~~, novelization **or graphic novel** ~~or photonovel~~ but excluding any dramatic play, screenplay, television script and photonovel) in the English language, substantially based on the Work or bearing **a** ~~like~~ the same title **(Publisher shall not unreasonably withhold its consent to publication of a derivative work); nothing in this Agreement is intended to prevent the Author from disposing of any reserved rights including, but not limited to, performance rights, and nothing in this Agreement shall be deemed to require the Author to obtain Publisher's prior consent in connection with the disposition of such reserved rights;** or (ii) publish or authorize publication **in the Exclusive Territories granted to Publisher in this Agreement** of any work, whether print or digital, containing material **substantially** similar to the Work if, in Publisher's **good faith** judgment, such publication ~~is likely to~~ **would** directly injure the sale of the Work ~~or the merchandising of other rights granted herein~~. If the Work is a work of fiction, the Author will not, without Publisher's prior written consent, publish or authorize publication **in the Exclusive Territories granted to Publisher herein** of any other **previously unpublished** work of fiction by the Author, whether print or digital, within six (6) months of Publisher's first **timely** publication of the Work. **For the purposes hereof, Author-written prequels and sequels to the Work shall not be considered competitive works.**

11

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005300

**15. Warranties and Indemnities.** (a) The Author warrants ~~and represents~~ (i) that Bartz is the sole author of the Work; that the Author has the full power to enter into this Agreement; that the Author is the sole owner of all rights granted to Publisher in this Agreement; that if the Work is one of non-fiction, all statements asserted as facts are based on the Author's careful investigation and research for accuracy; that no material in the Work violates any contract of the Author express or implied; that the Author has not previously assigned, pledged or otherwise encumbered the rights granted herein; and that no material in the Work discloses any information given to the Author in confidence or on the understanding that it would not be disclosed or published; and (ii) that except for any previously published or unpublished materials created by others and Related Materials for which permissions are ~~required necessary~~, the Work is original, has not been published before, and is not in the public domain; that all information contained in the Work is **not un**lawful and has been lawfully obtained; that the Work does not contain any libelous matter, does not invade any right of privacy nor infringe upon any trademark, right of publicity, statutory or common law copyright, or any other personal or property right; and that any recipe, formula, or instruction contained in the Work is accurate and is not injurious to the user.

(b) In the event of any asserted claim or legal proceeding brought against Publisher **by a third party** ~~("Claims")~~ based on an alleged violation of any of ~~these~~ **the** warranties **set forth in Subparagraph 15(a) ("Claims")**, Publisher shall have the right to defend the Claims by counsel of its own choosing. The Author shall **[subject to the insurance provisions in Subparagraph 15(c) below which, if and to the extent applicable, shall supersede the Author's obligation under this Subparagraph 15(b), and subject to Subparagraph 15(d) below]** indemnify Publisher and any seller or licensee of rights in the Work against any damages or losses **actually** incurred including any amounts **actually** paid in settlement, as well as against the cost **actually paid** of defending any Claims **(including reasonable outside attorneys' fees) which, if sustained, would constitute a breach of the warranties set forth in Subparagraph 15(a)** (collectively "Losses"). **The Author shall have the right to retain separate counsel, at the Author's own expense, and to participate in the Author's own defense.**

(c) Publisher shall include the Author **and Bartz** as "insureds" in any publishing liability insurance that is in effect and that is applicable to the Work (the "Policy"). Publisher shall look to the proceeds of that insurance, subject to the terms and conditions of the Policy (which may or may not include defense costs) for payment of Losses that may become due from the Author by reason of third party covered Claims alleging violations of the warranties in Subparagraph 15(a)(ii) above. The parties agree that:

(i) the Author shall not be responsible for any premiums due under the Policy;

(ii) the Author shall be an insured only with respect to the Work that is the subject of this Agreement;

(iii) insurance coverage is for amounts in excess of the deductible but not greater than the Policy limits;

(iv) With respect to the Author's obligation to indemnify Publisher **and any seller or licensee of rights in the Work** for Losses, the Author shall be responsible for the deductible in an amount up to **but not greater than** twenty percent (20%) of the total advance payable under this Agreement, provided, however that if a Claim is successfully defended, the Author's responsibility for the deductible will be **no greater than** twenty percent (20%) of the total advance payable under this Agreement or fifty percent (50%) of the defense costs, whichever is less.

(v) In the event it is determined by ~~Publisher or~~ Publisher's insurer that a conflict of interest exists between the Author, **on the one hand,** and Publisher, **on the other,** in a Claim brought against both of them, **such that ~~and~~** the Author and Publisher cannot be represented together, **Publisher hereby represents and warrants that the Policy dictates that** a separate deductible **will must** apply to the Author's defense of the Claim and any resulting Losses, and the Author shall be solely responsible for such deductible; and

(vi) In the event a Claim is brought against the Author only, the Author shall be solely responsible for the deductible **unless and until Publisher joins or is joined in any such legal proceeding through impleader or otherwise at which time the provisions of Subparagraph 15(c)(iv) shall apply**.

12

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005301

(d) If any Claims are received by Publisher or the Author, the recipient shall promptly notify the other party. The Author and Publisher shall fully cooperate with each other in the defense of any Claims. Publisher may, in addition to any other remedies, withhold payments **(amounts withheld shall be reasonably related to the size of the Claims and anticipated costs of defense and, if insured, shall not include amounts covered by the Policy)** due the Author under this ~~or any other~~ Agreement ~~between the parties~~ to cover the Author's indemnity obligations under this Paragraph 15. **If no suit has been commenced within one (1) year following its initial assertion or if there is a final disposition or settlement of the Claims and the Author has fulfilled the Author's indemnity obligations pursuant to this Paragraph 15 with respect to the Claims, Publisher shall promptly release to the Author any amounts withheld and not utilized to satisfy the Author's indemnity obligations, with interest at the then-current prime rate. No settlement shall be made without the prior written consent of the Author, such consent not to be unreasonably withheld or delayed. If the Author wishes to continue defending Claims that Publisher wishes to settle, the Author shall post a bond (in an amount, form, and content satisfactory to Publisher, based on Publisher's reasonable assessment of the amount and nature of the Claims and the likely costs of defending the Claims) securing Publisher, its licensees and sellers of the Work and its insurers against any and all costs and expenses in excess of the amount which Publisher was willing to contribute toward the settlement of such Claims including, without limitation, any reasonable outside attorneys' fees, judgments and penalties; provided however, that the Author shall not settle any such Claims in a manner which harms the business or reputation of Publisher.** The Author's failure to cooperate with Publisher in the defense of any Claims shall be deemed a breach of this Agreement and could result in the loss of the **Author's** insurance coverage and shall entitle Publisher to terminate the liability limitations set forth in Subparagraph 15(c)(iv) above. The Author's warranties and indemnities shall survive the termination of this Agreement.

(e) **The Author's warranties and indemnities hereunder do not extend (i) to illustrations, photographs, designs or similar materials not supplied by the Author that may be added by Publisher to any edition of the Work, or (ii) to such materials in (i) above or to text not supplied by the Author and dissimilar in substance from the content of the Work that either may be added by Publisher to the cover of any edition of the Work or used by Publisher in connection with any advertising or promotion of the Work. With respect to such materials or text described above in this subparagraph, Publisher will indemnify the Author against such Claims. The foregoing indemnity from Publisher to Author shall survive termination of this Agreement.**

16. **Author's Property.** The Publisher shall not be responsible for loss or damage to any property of the Author **except in the case of Publisher's negligence.** In the absence of a written request from the Author made prior to publication, Publisher, after publication of the Work, may dispose of the original manuscript and proofs.

17. **Advertising.** (a) No advertising shall appear in Publisher's hardcover, paperback or audio editions of the Work except that Publisher or its licensees may publish a listing of **Bartz's** other titles **and Publisher shall use commercially reasonable efforts to obtain similar provisions in its agreements with sublicensees,** and with respect to any paperback or audio edition of the Work, Publisher or its licensees may publish their own "house ads", **subject to the Author's approval, such approval not to be unreasonably withheld or delayed.**

(b) Subject to Subparagraph 11(r) above, Publisher may place or authorize third parties to place advertising in relationship to the electronic display of pages or excerpts from the Work (including, without limitation, online search and discovery programs such as Google Book Search and Amazon's "Search Inside the Book") and other delivery of the Work in digital formats. **In no event shall any such advertising appear within any digital format of the Work nor shall the Work or the Author be used in any instance as an endorsement or endorser of any product or service.** Upon the Author's written request, Publisher will, to the extent possible, disable or disallow advertising otherwise authorized by this Subparagraph 17(b).

18. **Next Publication of Author's Work.** The Work will be Bartz's next published **book-length** work (whether under **Bartz's** own name or under a pseudonym, and whether alone or in collaboration with anyone else), and except with the prior written permission of Publisher, **not to be unreasonably withheld or delayed,** Bartz will not, prior to delivery of the complete manuscript of the Work, ~~write,~~

13

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005302

~~publish or contract with any other publisher to~~ write any other **book-length** work for publication that will interfere with delivery of the Work under this Agreement.

19. **Option.** The Author grants Publisher the exclusive option to acquire the ~~same rights as have been granted in this Agreement~~ to the next full-length work of **fiction** to be written by **Bartz.** Publisher shall be entitled to a period of ~~sixty (60)~~ **thirty (30)** days after submission of a **detailed proposal** for such next work in which to make an offer for that work, and the Author agrees not to solicit any third party offers, directly or indirectly, during that period. If Publisher **notifies the Author within such thirty (30) day period that it** wishes to acquire such next work, the Author and Publisher will attempt to reach an agreement as to terms during a reasonable period of exclusive negotiation, **not to exceed thirty (30) days.** If they cannot reach an agreement, the Author shall be free to submit **and sell the detailed proposal for** such next work elsewhere~~, but the Author may not accept an offer from any other publisher on terms equal to or less favorable than those offered by Publisher~~ **without any further obligations to Publisher.** Publisher shall not be required to consider **the detailed proposal** for such next work before ~~publication~~ **acceptance** of the Work that is the subject of this Agreement. ~~Publisher's option as set forth in this Paragraph 19 shall also apply to the next full-length work by each party to this Agreement included in the term "Author," whether such manuscript is written by such individual or entity alone or together with one or more other individuals or entities.~~

20. **Out-of-Print.** If, after the expiration of ~~three (3)~~ **two (2)** years from the date of Publisher's first publication of the Work, the Work is out of print, the Author may, by written notice to Publisher, request Publisher to reissue or license rights in the Work. Publisher shall notify the Author in writing within ~~ninety (90)~~ **sixty (60)** days after Publisher's receipt of a demand whether it intends to comply. If ~~the Work is out of print and~~ Publisher does not respond, or if, within six (6) months following its issuance of notice that it intends to comply, Publisher has not complied by reissuing **a full-length, English-language edition** of the Work **in the United States** or entering into a license **for publication of** ~~for a new~~ **such an** edition **within six (6) months,** then this Agreement shall terminate and all rights granted to Publisher hereunder shall revert to the Author, subject to Publisher's continued participation, to the extent provided, in any licenses **theretofore** granted by Publisher. Publisher may dispose of any or all of the copies of the Work remaining on hand as it deems best, subject to the payment of royalties as provided. For thirty (30) days following termination of this Agreement pursuant to this Paragraph 20, the Author shall have the right to purchase available production materials (if any) at ~~an amount~~ **a reasonable cost** to be determined by Publisher.

For the purposes of this paragraph, the Work shall be considered to be ~~in~~ **out-of**-print if it is **not** available for purchase in the U.S. in a full-length English-language edition **in the formats granted to Publisher under this Agreement that have generated sales of at least three hundred (300) units in the aggregate in the two (2) consecutive accounting periods immediately preceding the Author's request for reversion of rights and** ~~or~~ if there is **not** any executed or pending agreement between Publisher and a licensee of Publisher for publication of the Work within ~~eighteen (18)~~ **twelve (12) six (6)** months. **The existence of an audio, large print or book club edition of the Work shall not mean the Work is in print.**

21. **Governing Law.** Regardless of the place of its actual execution and performance, this Agreement shall be treated as though executed within the State of New York and shall be governed by New York laws. Any action or proceeding regarding this Agreement or the Work shall be brought solely in the New York courts (state or federal) in New York County.

22. **Assignment.** (a) This Agreement, including the provisions of Paragraph 23 below, is binding upon the parties and the assigns, heirs, executors, successors or administrators of the Author and the assigns and successors of Publisher, but no assignment shall be binding upon either of the parties (and any purported assignment will be null and void) without the written consent of the other. The foregoing notwithstanding, Publisher shall in all events have the right, **subject to the conditions and limitations set forth in this Agreement,** ~~to authorize or license publication or use of the Work, or~~ to assign this Agreement, ~~in whole or in part,~~ to any of its member or parent companies, to any subsidiary or affiliated company, or**, subject to such company assuming in writing all executory obligations for the express benefit of the Author,** as part of a merger or in connection with the sale of all or substantially all of Publisher's business ~~or the business of one of its divisions.~~ **However, the Author shall have the right, subject to the provisions of Paragraph 23 and upon written**

14

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005303

notice Publisher, to assign any monies payable to the Author under this Agreement to a third party.

(b) The Author shall have approval, such approval not to be unreasonably withheld or delayed, regarding any assignment to a member or parent company or any subsidiary or affiliate company of Publisher pursuant to which the Work would be published initially under a different imprint from the one referenced in Subparagraph 7(a) above.

23. **Agency.** The Author irrevocably appoints ICM Partners ("ICM") of 65 East 55th Street, New York, New York 10022 (Attn: Alexandra Machinist) as the Author's exclusive agent with respect to the Work (such appointment being coupled with an interest and irrevocable) and does hereby irrevocably authorize Publisher to pay, and Publisher agrees to pay, all monies due or to become due to the Author under this Agreement to and in the name of ICM. Receipt by ICM shall be deemed receipt by the Author. In return for services rendered and to be rendered by the agent in connection with this Agreement, the Author agrees to pay and irrevocably authorizes ICM to receive and retain as its commission fifteen percent (15%) of all gross monies payable to the Author under this Agreement.

24. **Notices.** Any notices required or permitted to be given shall be in writing and shall be delivered personally or sent by registered or certified mail, postage prepaid, return receipt requested, to Publisher (with a copy to Publisher's Legal Department) or the Author (or the Author's agent) at the address for such party given above, or at such other addresses as the parties may from time to time designate by written notice given in the manner provided herein.

25. **Severability.** If any provision of this Agreement is found by a court of competent jurisdiction to be invalid, unenforceable or void, such decision shall not have the effect of invalidating or voiding the remainder of this Agreement, and the part or parts of this Agreement held to be invalid, unenforceable or void shall be deemed to have been deleted from this Agreement, and the remainder of this Agreement shall have the same force and effect as if such part or parts had never been included.

26. **Effect of Headings.** Descriptive words and statements used as headings in this Agreement to summarize the contents of the paragraphs hereof are not to be deemed a part of this Agreement or an interpretation or representation as to the contents of such paragraphs.

27. **Joint Authors.** ~~If there is more than one individual or entity constituting the "Author" hereunder, such individuals' or entities' rights and duties shall be joint and several, and each is hereby designated as agent for the other for purposes of service of process in any action or proceeding brought by Publisher against either or both arising out of or in any way relating to this Agreement or its breach. In the event this Agreement is with more than one author and a dispute arises between the authors that threatens to involve Publisher in litigation, Publisher shall have the right to terminate this Agreement if such dispute is not settled or finally determined by court order within ninety (90) days; and, in that event, if the Work has not been published, any advances paid to or for the account of the authors shall be promptly repaid to Publisher.~~ If there is more than one party constituting "the Author," each party shall be jointly and severally liable for the Author's obligations under this Agreement.

28. **Reserved Rights.** All rights now known or hereafter devised not expressly granted to Publisher pursuant to this Agreement are reserved to the Author, subject to Paragraph 14, provided that the Author will use commercially reasonable efforts to not license or otherwise authorize the publication of any other English language edition of the Work in the Open Market earlier than the date of first timely publication of Publisher's edition of the Work in the same format (e.g, hardcover, trade paperback, mass-market paperback, ~~audio,~~ or Book-Based Digital Edition ~~or Transformative Digital Version~~). The Author's reserved rights include, but are not limited to, Transformative Digital Version rights, motion picture, television, home video, video on demand, streaming video on demand and all other forms of audio-visual, radio, live stage, soundtrack and music publishing, and all allied merchandising rights derived therefrom, commercial and merchandising (*i.e.,* derivative products such as the use of a title or character for clothing,

15

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005304

toys, board games or video games), photonovel, graphic novel (subject to Paragraph 14), and any rights shown to be deleted from Paragraph 12 above.

29.  Default.  If Publisher shall, during the existence of this Agreement, default in the delivery of semi-annual statements or in the making of such payments as provided in this Agreement (unless due to a good-faith dispute between the parties) and shall neglect or refuse to deliver such statements or make such payments within thirty (30) days after written notice to the General Counsel of Penguin Random House LLC of such default (such notice to be sent by certified or registered mail, return receipt requested), this Agreement shall terminate at the end of such thirty (30) days without prejudice to the Author's claim for any monies which may have accrued under this Agreement or to any other rights and remedies to which the Author may be entitled.  Upon such termination, all rights granted in this Agreement shall revert to the Author for the Author's sole use and disposition, subject to any outstanding licenses.

30.  Bankruptcy.  If Publisher shall commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect, or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property, or shall consent to any such relief or to the appointment of or taking possession by any official in an involuntary case or other proceeding commenced against it, or shall make a general assignment for the benefit of creditors, or shall fail generally to pay its debts as they become due, or shall take any corporate action to authorize any of the foregoing, or if an involuntary case or other proceeding shall be commenced against it seeking liquidation, reorganization or other relief with respect to it or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property, and such involuntary case or other proceeding shall remain undismissed and unstayed for a period of thirty (30) days, or an order for relief shall be entered against it under the federal bankruptcy laws as now or hereafter in effect, the Author may, to the extent permitted by applicable law, by notice in writing (sent via registered or certified mail, return receipt requested) to Penguin Random House LLC's General Counsel, terminate this Agreement, whereupon all rights granted in this Agreement to Publisher shall revert to the Author.  If termination pursuant to this Paragraph 30 is not valid under the law, then the Author may repurchase the rights granted in this Agreement at their then-fair market value.

31.  Termination.  (a) Upon the termination of this Agreement in accordance with Paragraph 20 above, the rights granted to Publisher under this Agreement shall automatically revert to the Author (subject to any outstanding sublicenses), and Publisher will be deemed to have assigned, transferred and conveyed to the Author any rights, equities, good will, titles or other rights in and to the Work that may have been obtained by Publisher or that may have vested in Publisher in pursuance of any endeavors covered by this Agreement (subject to any outstanding sublicenses).  Publisher agrees to execute any instruments requested by the Author to accomplish or confirm the foregoing.  Any such assignment, transfer or conveyance shall be without consideration other than the mutual covenants and considerations of this Agreement.

(b)  Upon the termination of this Agreement in accordance with any provision in this Agreement other than Paragraph 20, the rights granted to Publisher under this Agreement shall automatically revert to the Author, and Publisher will be deemed to have assigned, transferred and conveyed to the Author any rights, equities, good will, titles or other rights in and to the Work that may have been obtained by Publisher or that may have vested in Publisher in pursuance of any endeavors covered by this Agreement.  Publisher agrees to execute any instruments requested by the Author to accomplish or confirm the foregoing. Any such assignment, transfer or conveyance shall be without consideration other than the mutual covenants and considerations of this Agreement.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005305

**32. Full Agreement.** This Agreement constitutes the full understanding of the parties and supersedes all prior agreements, understandings and proposals, whether written or oral with respect to the Work. No modification of this Agreement shall be binding unless contained in a writing signed by all parties. Subject to applicable statutes of limitations, no waiver by either party of any breach or default hereunder shall be deemed a waiver of any repetition of such breach or default or shall in any other way affect any of the terms or conditions hereof.

**AUTHOR:**
**Andrea Bartz Inc.**

By _____

_____
Author's Citizenship

**THE CROWN PUBLISHING GROUP,**
a division of Penguin Random House LLC

By _____
Molly Stern
Senior Vice President and Publisher
Crown Publishers, Hogarth and Archetype

By _____
David Sanford
Senior Vice President/Executive Director
Contracts and Permissions

17

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005306

The Crown Publishing Group,
a division of Penguin Random House LLC
1745 Broadway
New York, NY 10019

Ladies and Gentlemen:

I refer to the proposed agreement dated _____October 23, 2017_____ ("Agreement"), a copy of which is attached hereto, between **Andrea Bartz Inc.**, described in the Agreement and herein as the "Author," and The Crown Publishing Group, a division of Penguin Random House LLC, described in the Agreement and herein as the "Publisher," for the publication of a certain work tentatively entitled **THE LOST NIGHT by Andrea Bartz**, described in the Agreement and herein as the "Work."

I have an interest in the Author and in having the Work published by the Publisher, and as an inducement to the Publisher to enter into the Agreement, I hereby unconditionally guarantee, promise and agree with the Publisher, its successors and assigns that the Author will, in all respects, faithfully perform and fulfill all obligations of the Agreement on its part to be performed and fulfilled at the time and in the manner therein provided. I also unconditionally guarantee that I am the owner of copyright in the Work and that the Author has full power and authority to enter into the Agreement, including without limitation, the exclusive right to grant the rights in the copyright in the Work that are set forth in the Agreement.

This Guaranty is and shall be construed to be an absolute, unlimited and continuing guaranty. The Publisher shall have the right from time to time in the sole discretion of the Publisher and without any notice to or consent of the undersigned and without affecting, impairing or discharging in whole or in part, the liability of the undersigned hereunder, but only with the agreement of the Author, to modify, change or supplement, in any respect whatever, the Agreement or any portion or provision thereof; to grant extensions of time and other indulgences of any kind; and to compromise, release, substitute, exercise, enforce, or fail or refuse to exercise or enforce any claims, rights or remedies of any kind which the Publisher may have against the Author.

This Guaranty is executed and delivered in the State of New York and shall be construed according to the laws thereof. This Guaranty cannot be changed or terminated except in writing, signed by the Publisher. The undersigned hereby waives notice of the acceptance of this Guaranty.

DATED:    10/14/17

_____
**Andrea Bartz**

18

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005307