# EXHIBIT 8

CONFIDENTIAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

---oOo---

ANDREA BARTZ, ANDREA BARTZ,   )
INC., CHARLES GRAEBER, KIRK   )
WALLACE JOHNSON, MJ + KJ,   )
INC., individually and on   )
behalf of others similarly   )
situated,   )
   )
            Plaintiffs,   )
   )
vs.   )        No. 3:24-cv-05417
   )
ANTHROPIC PBC,   )
   )
            Defendant.   )
_____)

TRANSCRIPT DESIGNATED "CONFIDENTIAL"

VIDEO-RECORDED DEPOSITION OF

ANDREA MARIE BARTZ,

Taken in her individual capacity and as

a 30(b)(6) WITNESS FOR ANDREA BARTZ, INC.

Volume I - Pages 1 through 258

_____

Friday, March 7, 2025

San Francisco, California

Reported By:  JANE GROSSMAN, CSR No. 5225

Job No. SF 7222289

Page 1

```
1                        I N D E X

2    VIDEO-RECORDED DEPOSITION OF ANDREA BARTZ, INDIVIDUALLY,

3    AND AS A 30(b)(6) WITNESS FOR ANDREA BARTZ, INC.

4    FRIDAY, MARCH 7, 2025

5    VOLUME I

6                                                   PAGE

7    MORNING SESSION                                 10

8    AFTERNOON SESSION                              111

9    EXAMINATION OF ANDREA BARTZ AS AN INDIVIDUAL

10         BY MR. FARRIS                             13

11         (Pages 1 through 231)

12   EXAMINATION OF ANDREA BARTZ AS A 30(b)(6)

13   WITNESS FOR ANDREA BARTZ, INC.

14         BY MR. FARRIS                            232

15         (Pages 232 through 252)

16                     ---oOo---

17                   E X H I B I T S

18     DEPOSITION EXHIBITS MARKED FOR IDENTIFICATION

19     [* Document designated "HIGHLY CONFIDENTIAL."]

20       [** Document designated "CONFIDENTIAL"]

21                     ---oOo---

22   EXHIBIT NO.  DESCRIPTION                       PAGE

23   Exhibit 47   Multipage excerpt from the         68

                  LinkedIn page for Andrea

24                Bartz (No Bates numbers)

25   / / / / /
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

| | | |
|---|---|---|
| 1 | Anne Shaver, Lieff Cabraser, Heimann & | 09:10:01 |
| 2 | Bernstein, representing Plaintiff and the proposed | 09:10:04 |
| 3 | class. | 09:10:06 |
| 4 | THE VIDEOGRAPHER: Thank you. | 09:10:08 |
| 5 | Counsel on the Zoom have been noted for | 09:10:08 |
| 6 | the record. | 09:10:11 |
| 7 | Will the court reporter please introduce | 09:10:11 |
| 8 | herself and administer the oath to the witness? | 09:10:12 |
| 9 | And then counsel may proceed. | 09:10:17 |
| 10 | THE REPORTER: Pursuant to the | 09:10:18 |
| 11 | requirements of AB 3252, I am stating on the record | 09:10:18 |
| 12 | that my name is Jane Grossman, and I am a California | 09:10:18 |
| 13 | Licensed Stenographic Reporter. My CSR number is | 09:10:18 |
| 14 | 5225. | 09:10:18 |
| 15 | I will now swear the witness in. | 09:10:18 |
| 16 | ---oOo--- | 09:10:18 |
| 17 | ANDREA MARIE BARTZ, | 09:10:18 |
| 18 | called as a witness herein, | 09:10:18 |
| 19 | having been first duly sworn by the Certified | 09:10:18 |
| 20 | Shorthand Reporter, was thereupon examined and | 09:10:18 |
| 21 | testified as hereinafter set forth. | 09:10:18 |
| 22 | ---oOo--- | 09:10:18 |
| 23 | THE REPORTER: Please begin. | 09:10:18 |
| 24 | ---oOo--- | 09:10:18 |
| 25 | / / / / / | 09:10:18 |

Page 12

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | [Note: The following is the deposition of | 09:10:18 |
| 2 | Andrea Marie Bartz as an individual.] | 09:10:18 |
| 3 | ---oOo--- | 09:10:18 |
| 4 | EXAMINATION BY MR. FARRIS | 09:10:19 |
| 5 | BY MR. FARRIS: | 09:10:42 |
| 6 | Q.   Good morning, Ms. Bartz. | 09:10:44 |
| 7 | A.   Good morning. | 09:10:45 |
| 8 | Q.   Could you start by stating and spelling | 09:10:46 |
| 9 | your full name, including any middle name? | 09:10:48 |
| 10 | A.   Yes. | 09:10:50 |
| 11 | My name is Andrea Marie Bartz.  That's | 09:10:51 |
| 12 | A-n-d-r-e-a M-a-r-i-e B-a-r-t-z. | 09:10:54 |
| 13 | Q.   Thank you. | 09:10:59 |
| 14 | Have you been deposed before, Ms. Bartz? | 09:11:00 |
| 15 | A.   No.  This is the first time. | 09:11:02 |
| 16 | Q.   Okay.  Do you understand that a few | 09:11:04 |
| 17 | moments ago you took an oath to tell the truth from | 09:11:05 |
| 18 | the court reporter? | 09:11:08 |
| 19 | A.   Yes. | 09:11:09 |
| 20 | Q.   And do you understand that's the same sort | 09:11:09 |
| 21 | of oath you would take if you were testifying in | 09:11:11 |
| 22 | front of a jury in a courtroom today? | 09:11:14 |
| 23 | A.   Yes. | 09:11:16 |
| 24 | Q.   Okay.  I'm just going to go over a few | 09:11:17 |
| 25 | basic ground rules you probably already heard from | 09:11:19 |

Page 13

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | was originally copyrighted. | 01:06:44 |
| 2 | BY MR. FARRIS: | 01:06:47 |
| 3 | Q. Okay. Do you specifically remember how | 01:06:47 |
| 4 | The Lost Night was originally copyrighted? | 01:06:49 |
| 5 | A. Yes. | 01:06:52 |
| 6 | Q. And you specifically remember that was in | 01:06:53 |
| 7 | the name Andrea Bartz? | 01:06:54 |
| 8 | A. Yes. | 01:06:57 |
| 9 | (Deposition Exhibit 55 was marked for | 01:06:58 |
| 10 | identification.) | 01:07:14 |
| 11 | THE WITNESS: Thank you. | 01:07:14 |
| 12 | MR. FARRIS: Okay. Marking Exhibit 54 -- | 01:07:16 |
| 13 | MS. GEMAN: I think this is 55. | 01:07:19 |
| 14 | MR. FARRIS: Sorry. Is it? | 01:07:22 |
| 15 | THE WITNESS: Yes. | 01:07:23 |
| 16 | MS. GEMAN: No. | 01:07:25 |
| 17 | MR. FARRIS: Am I out of order? | 01:07:26 |
| 18 | I am out of order. My fault. I put | 01:07:28 |
| 19 | those backwards. | 01:07:32 |
| 20 | Exhibit 55. Exhibit 55 is a document | 01:07:33 |
| 21 | with the Bates-stamp BARTZ-3412 to BARTZ-3415. | 01:07:41 |
| 22 | Q. It's an e-mail chain from the | 01:07:47 |
| 23 | andreambartz@gmail.com address. And the top e-mail | 01:07:51 |
| 24 | in the chain is dated September 28th, 2020. | 01:07:56 |
| 25 | Do you see that? | 01:08:00 |

Page 148

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A. Yes. | 01:08:01 |
| 2 | Q. Okay. I want to go back in the chain. | 01:08:02 |
| 3 | A. Sure. | 01:08:09 |
| 4 | MS. GEMAN: Just take the time you need | 01:08:10 |
| 5 | to -- | 01:08:10 |
| 6 | BY MR. FARRIS: | 01:08:11 |
| 7 | Q. Yeah, take as long as you need to -- to | 01:08:11 |
| 8 | review it. | 01:08:13 |
| 9 | A. Yeah. | 01:08:14 |
| 10 | Q. I'm going to -- I'm going to ask you about | 01:08:14 |
| 11 | a couple of the e-mails in the chain. So feel free | 01:08:16 |
| 12 | to take a minute. | 01:08:20 |
| 13 | A. Yeah, I'll take a minute to read them. | 01:08:22 |
| 14 | Thank you. | 01:08:24 |
| 15 | Okay. | 01:09:23 |
| 16 | Q. Okay. So this is an exchange from around | 01:09:24 |
| 17 | September 2020 -- well, from September 2020 about | 01:09:29 |
| 18 | your copyright registrations; correct? | 01:09:34 |
| 19 | A. Yes. | 01:09:37 |
| 20 | Q. Can you describe the nature of these | 01:09:39 |
| 21 | exchanges and what the -- what the communications | 01:09:43 |
| 22 | were about? | 01:09:47 |
| 23 | MS. GEMAN: Objection. | 01:09:48 |
| 24 | THE WITNESS: I was reviewing page proofs | 01:09:49 |
| 25 | for a version of The Herd, I guess the paperback | 01:09:53 |

Page 149

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | one.  And I said that the copyright page should be | 01:09:59 |
| 2 | for Andrea Bartz, not Andrea Bartz, Inc. | 01:10:03 |
| 3 | And my editor's assistant kind of pushed | 01:10:07 |
| 4 | back, indicating that she had been told it should be | 01:10:13 |
| 5 | for the corporation. | 01:10:18 |
| 6 | BY MR. FARRIS: | 01:10:21 |
| 7 | Q.   Okay.  And do you recall how this | 01:10:22 |
| 8 | resolved? | 01:10:32 |
| 9 | A.   Yes. | 01:10:34 |
| 10 | Q.   How did it resolve? | 01:10:34 |
| 11 | A.   I was wrong.  And the copyright already | 01:10:36 |
| 12 | correctly was Andrea Bartz, Inc. for The Herd. | 01:10:42 |
| 13 | Q.   Okay.  In the e-mail of September 17th, | 01:10:48 |
| 14 | 2020 at 12:03 p.m. -- it's the first page of the | 01:11:09 |
| 15 | exhibit -- | 01:11:12 |
| 16 | A.   Yes. | 01:11:18 |
| 17 | Q.   -- you say in the second sentence (as | 01:11:19 |
| 18 | read): | 01:11:21 |
| 19 | "Hmm, it's news to me...it was changed -- | 01:11:22 |
| 20 | way back in 2017, Alexandra asked me" -- | 01:11:25 |
| 21 | "asked about copyright and my lawyer | 01:11:29 |
| 22 | suggested I get paid by Andrea Bartz Inc | 01:11:31 |
| 23 | but keep the copyright in my name, not the | 01:11:33 |
| 24 | S-Corp's." | 01:11:35 |
| 25 | Do you see that? | 01:11:37 |

Page 150

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A.  Yes. | 01:11:38 |
| 2 | Q.  Did you have a lawyer at that time? | 01:11:39 |
| 3 | A.  I believe I spoke to the lawyer for my | 01:11:40 |
| 4 | accountant at my accountant's office. | 01:11:43 |
| 5 | Q.  Uh-huh. | 01:11:46 |
| 6 | A.  And so I sort of was saying "my lawyer" -- | 01:11:46 |
| 7 | Q.  Okay. | 01:11:50 |
| 8 | A.  -- without being specific. | 01:11:51 |
| 9 | Q.  Okay.  And there's a reference after that | 01:11:52 |
| 10 | to a 9/21/17 e-mail with Alexandra and | 01:12:01 |
| 11 | Christina Lin. | 01:12:06 |
| 12 | Is "Alexandra" Alexandra Machinist? | 01:12:07 |
| 13 | A.  Yes. | 01:12:12 |
| 14 | Q.  Who is Christina Lin? | 01:12:12 |
| 15 | A.  Her then assistant. | 01:12:14 |
| 16 | Q.  Okay.  Do you recall if you still have | 01:12:16 |
| 17 | this e-mail, the 9/21/17 e-mail? | 01:12:24 |
| 18 | A.  I don't have any reason to think I don't | 01:12:31 |
| 19 | have it anymore. | 01:12:33 |
| 20 | Q.  Okay.  There's a person on this thread | 01:12:34 |
| 21 | named Lindsey Sanderson. | 01:12:47 |
| 22 | Do you know who that is? | 01:12:50 |
| 23 | A.  She was Alexandra's assistant at the | 01:12:51 |
| 24 | time. | 01:12:56 |
| 25 | Q.  Okay.  And, then, on the very top e-mail, | 01:13:00 |

Page 151

| | | |
|---|---|---|
| 1 | the fourth paragraph down, you say (as read): | 01:13:05 |
| 2 | "Re:  The copyright, thanks again for | 01:13:10 |
| 3 | digging!  I'm...not sure how this | 01:13:12 |
| 4 | happened, but I can confirm that | 01:13:16 |
| 5 | everything should be copyrighted under"-- | 01:13:17 |
| 6 | "copyrighted under Andrea Bartz" -- | 01:13:20 |
| 7 | (Clarification requested by the reporter.) | 01:13:21 |
| 8 | MR. FARRIS:  I'll slow down.  I'm sorry. | 01:13:22 |
| 9 | Q.   "-- and this needs to be amended for | 01:13:22 |
| 10 | past books." | 01:13:24 |
| 11 | Do you see that? | 01:13:26 |
| 12 | A.   Yes. | 01:13:27 |
| 13 | Q.   Okay.  So -- | 01:13:28 |
| 14 | MS. GEMAN:  I'll just note you left out a | 01:13:29 |
| 15 | word, but it doesn't matter. | 01:13:31 |
| 16 | MR. FARRIS:  Okay.  Sorry.  I need to read | 01:13:32 |
| 17 | slower for everybody's sake. | 01:13:34 |
| 18 | Q.   Was there an amendment for past books that | 01:13:38 |
| 19 | came after this? | 01:13:41 |
| 20 | A.   I don't believe any amendments came after | 01:13:44 |
| 21 | this, because I was incorrect in asking them to | 01:13:46 |
| 22 | change it at that time. | 01:13:51 |
| 23 | MR. FARRIS:  Okay.  I'm going to mark | 01:14:16 |
| 24 | Exhibit 56. | 01:14:17 |
| 25 | / / / / / | |

Page 152

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | (Deposition Exhibit 56 was marked for | 01:14:18 |
| 2 | identification.) | 09:35:29 |
| 3 | MR. FARRIS:   Exhibit 56 is marked | 01:14:26 |
| 4 | BARTZ-3382 to -3385. | 01:14:28 |
| 5 | It's a October 22nd, 2020 Random House | 01:14:32 |
| 6 | agreement. | 01:14:42 |
| 7 | Q.   Do you see that? | 01:14:43 |
| 8 | A.   Yes. | 01:14:44 |
| 9 | Q.   And if you turn to the second page, there | 01:14:47 |
| 10 | is a signature for "ANDREA BARTZ INC." | 01:14:52 |
| 11 | Do you see that? | 01:14:55 |
| 12 | A.   Yes. | 01:14:56 |
| 13 | Q.   Do you have any reason to doubt that that | 01:14:57 |
| 14 | is your signature? | 01:14:59 |
| 15 | A.   No. | 01:15:00 |
| 16 | Q.   Okay.   And if you go back to the first | 01:15:05 |
| 17 | page, there's a -- there's a reference to three | 01:15:07 |
| 18 | agreements, one dated October 23rd, 2017, one dated | 01:15:12 |
| 19 | November 26th, 2018, and one dated November 12th, | 01:15:17 |
| 20 | 2019. | 01:15:22 |
| 21 | Do you see those references? | 01:15:23 |
| 22 | A.   Yes. | 01:15:25 |
| 23 | Q.   Are those your publishing agreements with | 01:15:26 |
| 24 | Random House? | 01:15:28 |
| 25 | A.   Yes, I believe so. | 01:15:29 |

Page 153

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Q.   Okay.   Do you recall why you entered an | 01:15:30 |
| 2 | amendment at this time concerning your publishing | 01:15:35 |
| 3 | agreements? | 01:15:38 |
| 4 | A.   I genuinely don't recall it being after | 01:15:42 |
| 5 | this e-mail exchange. | 01:15:45 |
| 6 | But I do recall that, after thinking | 01:15:47 |
| 7 | everything through and having my memory refreshed | 01:15:51 |
| 8 | and clarity, we concluded that the copyright owner | 01:15:54 |
| 9 | for all of my books I had already written and the | 01:15:59 |
| 10 | ones that were newly under contract, but hadn't come | 01:16:02 |
| 11 | out, should be Andrea Bartz, Inc. | 01:16:06 |
| 12 | Q.   Okay.   So was the purpose of this | 01:16:09 |
| 13 | agreement to -- to shift copyrights from | 01:16:16 |
| 14 | Andrea Bartz to Andrea Bartz, Inc.? | 01:16:21 |
| 15 | A.   I believe so. | 01:16:26 |
| 16 | MR. FARRIS:  Let's see.  We've been | 01:16:47 |
| 17 | going -- have we been going for another hour at | 01:16:48 |
| 18 | least? | 01:16:50 |
| 19 | MS. GEMAN:  Uh-huh. | 01:16:51 |
| 20 | MR. FARRIS:  Should we take another break? | 01:16:52 |
| 21 | MS. GEMAN:  Sure. | 01:16:55 |
| 22 | THE WITNESS:  So can we -- before we do, | 01:16:55 |
| 23 | there was one thing I thought of during lunch, which | 01:16:56 |
| 24 | I thought I should add -- | 01:16:59 |
| 25 | / / / / / | |

Page 154

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | (Discussion off the record.) | 01:38:16 |
| 2 | BY MR. FARRIS: | 01:38:21 |
| 3 | Q.    Okay.   Exhibit 59 is a one-page document | 01:38:21 |
| 4 | that is BARTZ-2334.   It's called "ASSIGNMENT," and | 01:38:25 |
| 5 | it reads in full (as read): | 01:38:33 |
| 6 | "Effective as of April 15th, 2021, | 01:38:37 |
| 7 | ANDREA BARTZ, for good and sufficient | 01:38:41 |
| 8 | consideration, hereby assigns to | 01:38:43 |
| 9 | ANDREA BARTZ INC., all of her right, | 01:38:45 |
| 10 | title, and interest in and to the | 01:38:48 |
| 11 | literary work entitled WE WERE NEVER | 01:38:50 |
| 12 | HERE (the 'Work'), which was authored by | 01:38:52 |
| 13 | ANDREA BARTZ, including all rights she | 01:38:55 |
| 14 | may have in the nature of copyright in | 01:38:57 |
| 15 | the Work for the remaining term of | 01:39:00 |
| 16 | copyright," end quote. | 01:39:03 |
| 17 | Did I read that approximately correctly? | 01:39:04 |
| 18 | A.    Yes. | 01:39:07 |
| 19 | Q.    Okay.   Are those your signatures on the | 01:39:07 |
| 20 | lines for "ANDREA BARTZ" and "ANDREA BARTZ INC."? | 01:39:11 |
| 21 | A.    Yes. | 01:39:13 |
| 22 | Q.    Okay.   Do you have any understanding of | 01:39:14 |
| 23 | whether this document assigned copyrights from | 01:39:19 |
| 24 | yourself to -- to your corporation? | 01:39:22 |
| 25 | A.    Somewhat, yes. | 01:39:27 |

Page 159

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Q.   What do you understand about the | 01:39:28 |
| 2 | assignment here? | 01:39:29 |
| 3 | A.   My understanding is that this assigns, as | 01:39:33 |
| 4 | it says, all the right, title, and interest for | 01:39:37 |
| 5 | We Were Never here to Andrea Bartz, Inc., the | 01:39:40 |
| 6 | book -- the book, We Were Never Here, the book that | 01:39:44 |
| 7 | was authored by myself, the individual, | 01:39:47 |
| 8 | Andrea Bartz. | 01:39:49 |
| 9 | Q.   Do you believe yourself, the individual, | 01:39:50 |
| 10 | Andrea Bartz, retained any right to her copyright | 01:39:53 |
| 11 | upon this assignment? | 01:39:59 |
| 12 | MS. GEMAN:  Objection. | 01:40:01 |
| 13 | THE WITNESS:  I believe those rights were | 01:40:01 |
| 14 | transferred to Andrea Bartz, Inc., an organization | 01:40:04 |
| 15 | of which I am the sole owner, CEO, president, | 01:40:06 |
| 16 | et cetera. | 01:40:11 |
| 17 | BY MR. FARRIS: | 01:40:11 |
| 18 | Q.   Okay.  Understanding that you may have | 01:40:12 |
| 19 | rights through your corporate interests, do you | 01:40:14 |
| 20 | believe that the rights were completely assigned to | 01:40:17 |
| 21 | the corporate interests here? | 01:40:19 |
| 22 | MS. GEMAN:  Objection. | 01:40:21 |
| 23 | THE WITNESS:  I'm not a lawyer, so I'm not | 01:40:24 |
| 24 | positive. | 01:40:26 |
| 25 | / / / / / | |

Page 160

```
1    BY MR. FARRIS:                                      01:40:27

2         Q.   Well, are you aware of any -- any        01:40:28

3    reservation of rights reflected anywhere else?     01:40:31

4              MS. GEMAN:   Objection.                   01:40:34

5              THE WITNESS:   Can you say that another   01:40:39

6    way, please?                                        01:40:40

7    BY MR. FARRIS:                                      01:40:41

8         Q.   Are you aware of any other document in   01:40:41

9    which you reserved rights to your copyright after  01:40:43

10   this date?                                          01:40:47

11             MS. GEMAN:   Objection.                   01:40:49

12             THE WITNESS:   In which I, the individual, 01:40:50

13   reserved rights --                                  01:40:52

14   BY MR. FARRIS:                                      01:40:53

15        Q.   To the copyright for We Were Never Here   01:40:54

16   after April 15th, 2021.                             01:40:55

17        A.   Again, I'm -- I'm not a lawyer, but my    01:41:01

18   understanding is this assigned all rights for       01:41:03

19   We Were Never Here to the S Corporation.            01:41:08

20        Q.   Okay.   Why did you execute this assignment 01:41:12

21   on April 15th, 2021?                                01:41:16

22        A.   My recollection is that we were ready to  01:41:20

23   sign an option with Netflix to option the work.     01:41:24

24             And Netflix, for their purposes, needed   01:41:30

25   in a way that my publisher was not as concerned --  01:41:35
```

Page 161

CONFIDENTIAL

```
 1    needed all the rights to belong to the organization      01:41:39

 2    that they were going to pay, which was Andrea Bartz,      01:41:41

 3    Inc.                                                      01:41:43

 4              So to clear out any possibility of              01:41:44

 5    confusion, I signed -- I signed an assignment.           01:41:47

 6        Q.   So -- so Netflix had -- do you know if          01:41:52

 7    Netflix had requested this assignment?                   01:41:55

 8        A.   I don't know.                                   01:41:58

 9        Q.   Did you communicate with Netflix directly       01:41:59

10    in that respect?                                         01:42:03

11        A.   No.                                             01:42:04

12        Q.   Who communicated with Netflix about that        01:42:04

13    assignment --                                            01:42:06

14        A.   My --                                           01:42:08

15        Q.   -- on your behalf?                              01:42:09

16        A.   My film agent.                                  01:42:10

17        Q.   Who is your film agent?                         01:42:12

18        A.   Her name is Josie Freeman.                      01:42:14

19        Q.   Is she at the same agency as your literary      01:42:17

20    agent?                                                   01:42:21

21        A.   Yes.                                            01:42:21

22        Q.   How many of your films -- how many of your      01:42:22

23    books have been optioned?                                01:42:24

24        A.   All of them.                                    01:42:25

25        Q.   Has Ms. Friedman --                             01:42:26
```

                                                    Page 162

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | option agreement you signed? | 01:43:26 |
| 2 | A.   For any of my novels? | 01:43:28 |
| 3 | Q.   Yes. | 01:43:30 |
| 4 | A.   No. | 01:43:30 |
| 5 | Q.   What was the first film option? | 01:43:31 |
| 6 | A.   It was for The Lost Night. | 01:43:35 |
| 7 | Q.   Was The Lost Night -- was the counter- | 01:43:37 |
| 8 | party Netflix? | 01:43:39 |
| 9 | A.   No. | 01:43:41 |
| 10 | Q.   So in that case, the counter-party did not | 01:43:47 |
| 11 | ask you to execute a similar assignment? | 01:43:52 |
| 12 | A.   Correct. | 01:43:55 |
| 13 | (Deposition Exhibit 60 was marked for | 01:43:56 |
| 14 | identification.) | 01:43:56 |
| 15 | THE WITNESS:  Thank you. | 01:44:07 |
| 16 | MR. FARRIS:  Exhibit 60? | 01:44:11 |
| 17 | THE REPORTER:  Yes. | 01:44:12 |
| 18 | BY MR. FARRIS: | 01:44:18 |
| 19 | Q.   Exhibit 60 is marked BARTZ-4686. | 01:44:19 |
| 20 | It's a one-page document.  And it's | 01:44:24 |
| 21 | assignment -- it's an assignment that is generally | 01:44:26 |
| 22 | similar-looking to the last one we looked at, but | 01:44:32 |
| 23 | it's dated February 28th, 2025. | 01:44:35 |
| 24 | Do you see that, Ms. Bartz? | 01:44:39 |
| 25 | A.   Yes. | 01:44:40 |

Page 164

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Q. Do you understand that you are assigning | 01:44:43 |
| 2 | rights in The Lost Night, The Herd, and The Spare | 01:44:45 |
| 3 | Room via this assignment? | 01:44:48 |
| 4 | A. Yes. | 01:44:50 |
| 5 | Q. And are you similarly assigning all your | 01:44:51 |
| 6 | rights from Andrea Bartz to Andrea Bartz, Inc. in | 01:44:53 |
| 7 | those works? | 01:44:55 |
| 8 | MS. GEMAN: Objection. | 01:44:56 |
| 9 | THE WITNESS: That is my understanding, | 01:45:00 |
| 10 | but I'm not a lawyer. | 01:45:01 |
| 11 | BY MR. FARRIS: | 01:45:02 |
| 12 | Q. Okay. Are you aware of any rights that | 01:45:03 |
| 13 | you have retained personally in these three works | 01:45:07 |
| 14 | after this assignment? | 01:45:11 |
| 15 | MS. GEMAN: Objection. | 01:45:13 |
| 16 | A. I am not aware of other rights. | 01:45:18 |
| 17 | Q. And there's a signature line for | 01:45:20 |
| 18 | "ANDREA BARTZ" and "ANDREA BARTZ INC." | 01:45:22 |
| 19 | Any reason to doubt that those are your | 01:45:24 |
| 20 | signatures? | 01:45:27 |
| 21 | A. No. | 01:45:27 |
| 22 | Q. This was executed, like, effectively last | 01:45:29 |
| 23 | week or less than -- around a week ago; right? | 01:45:33 |
| 24 | A. Uh-huh. Yes. | 01:45:37 |
| 25 | Q. What was the reason for the timing of | 01:45:40 |

Page 165

| | | |
|---|---|---|
| 1 | executing this last week or so? | 01:45:41 |
| 2 | A.   Because of counsel from -- advice from my | 01:45:47 |
| 3 | counsel. | 01:45:49 |
| 4 | Q.   Okay.  I won't ask you to reveal the | 01:45:50 |
| 5 | advice from your lawyer. | 01:45:52 |
| 6 | Was -- but I will ask, is this -- are you | 01:45:54 |
| 7 | negotiating a film option that this is related to? | 01:45:57 |
| 8 | MS. GEMAN:  Objection. | 01:46:01 |
| 9 | THE WITNESS:  No. | 01:46:02 |
| 10 | BY MR. FARRIS: | 01:46:15 |
| 11 | Q.   Okay.  So is there anything you can tell | 01:46:15 |
| 12 | me about the reason for the assignment other than | 01:46:16 |
| 13 | what your lawyer has advised you about it? | 01:46:19 |
| 14 | MS. GEMAN:  And I'm just going to say that | 01:46:21 |
| 15 | if -- if you can answer the question without | 01:46:22 |
| 16 | describing what a lawyer told you that -- one of | 01:46:24 |
| 17 | your lawyers told you, but if you can't, then you | 01:46:27 |
| 18 | shouldn't reveal privileged communication from any | 01:46:30 |
| 19 | lawyer. | 01:46:33 |
| 20 | THE WITNESS:  And can you repeat the | 01:46:36 |
| 21 | question? | 01:46:37 |
| 22 | BY MR. FARRIS: | 01:46:38 |
| 23 | Q.   Yeah. | 01:46:38 |
| 24 | Is there anything you can tell me about | 01:46:38 |
| 25 | the reason for this assignment other than what your | 01:46:40 |

Page 166

| | | |
|---|---|---|
| 1 | A.   But to walk you through it, I earned | 02:23:44 |
| 2 | out on the advance for We Were Never Here, meaning | 02:23:46 |
| 3 | my royalties against the advance exceeded $125,000. | 02:23:51 |
| 4 | So then I began getting royalties for We Were Never | 02:23:56 |
| 5 | Here. | 02:23:59 |
| 6 | Q.   Okay.  And were those -- are those | 02:23:59 |
| 7 | royalties -- have they always been paid to | 02:24:03 |
| 8 | Andrea Bartz, Inc.? | 02:24:06 |
| 9 | A.   Yes, I believe so. | 02:24:07 |
| 10 | Q.   Okay.  Were the advances for these books | 02:24:08 |
| 11 | paid to Andrea Bartz, Inc.? | 02:24:12 |
| 12 | A.   Yes, I believe so. | 02:24:14 |
| 13 | Q.   Were -- was the advance for The Herd paid | 02:24:17 |
| 14 | out to Andrea Bartz, Inc.? | 02:24:21 |
| 15 | A.   Yes, I believe so. | 02:24:23 |
| 16 | Q.   Has The Herd earned out? | 02:24:24 |
| 17 | A.   No. | 02:24:27 |
| 18 | Q.   Okay.  I don't have to go through all the | 02:24:31 |
| 19 | questions again. | 02:24:33 |
| 20 | (Deposition Exhibit 64 was marked for | 02:24:34 |
| 21 | identification.) | 02:24:34 |
| 22 | THE WITNESS:  Thank you. | 02:25:14 |
| 23 | MR. FARRIS:  Marking Exhibit 64, it's | 02:25:17 |
| 24 | BARTZ-4687 to BARTZ-4689. | 02:25:19 |
| 25 | Q.   Do you recognize what is depicted on | 02:25:29 |

Page 195

CONFIDENTIAL

```
 1   BY MR. FARRIS:                                      02:58:25

 2        Q.   Okay.  And for any of your four books, has  02:58:26

 3   there -- do you know if Penguin Random House has    02:58:29

 4   ever issued a Royalty Report to Andrea Bartz, the   02:58:31

 5   individual?                                         02:58:36

 6        A.   I don't believe they have, but I'm not    02:58:36

 7   positive.                                           02:58:38

 8        Q.   Okay.                                      02:58:39

 9             (Deposition Exhibit 67 was marked for     02:58:39

10              identification.)                         02:59:04

11        THE WITNESS:  Thank you.                        02:59:06

12        MR. FARRIS:  Exhibit 67, which I just          02:59:13

13   marked, is a one-page document, BARTZ-278.          02:59:16

14        Q.   Do you recognize what this is, ma'am?     02:59:25

15        A.   Yes.                                        02:59:28

16        Q.   What is it?                                02:59:28

17        A.   This is a payment confirmation from ICM   02:59:29

18   for, I believe, the publication of The Lost Night   02:59:34

19   or -- excuse me -- payment on paperback publication  02:59:38

20   of The Lost Night.  Is that right?  Yeah.           02:59:43

21        Q.   Do these -- so this reflects a transfer   02:59:46

22   of funds from your literary agent to your company,  02:59:51

23   Andrea Bing (phonetic) -- Andrea Bartz Inc.?        02:59:57

24        A.   Yes.                                        03:00:01

25        Q.   So is this a payment of royalties?        03:00:01
```

Page 213

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A.   No. | 03:00:05 |
| 2 | This is one-fourth of the advance at -- | 03:00:06 |
| 3 | on the payment schedule that was in the publishing | 03:00:11 |
| 4 | agreement we looked at. | 03:00:15 |
| 5 | Q.   Okay.  Got it. | 03:00:16 |
| 6 | So the payments that are -- that have been | 03:00:19 |
| 7 | made via advances on your publishing agreements, do | 03:00:21 |
| 8 | those always go to ICM first? | 03:00:24 |
| 9 | A.   Yes. | 03:00:26 |
| 10 | Q.   Okay.  These are really exciting | 03:00:28 |
| 11 | questions, I know. | 03:00:39 |
| 12 | (Deposition Exhibit 68 was marked for | 03:00:40 |
| 13 | identification.) | 03:00:40 |
| 14 | THE WITNESS:  Thank you. | 03:00:50 |
| 15 | MR. FARRIS:  Okay.  Very quickly, | 03:00:52 |
| 16 | Exhibit 68 is marked BARTZ-957.  It's one page. | 03:00:56 |
| 17 | Q.   It says: | 03:01:01 |
| 18 | "Penguin Random House Author Portal | 03:01:01 |
| 19 | "Units Shipped to Retailers." | 03:01:04 |
| 20 | Do you see that? | 03:01:07 |
| 21 | A.   Yes. | 03:01:07 |
| 22 | Q.   This is a type of report you can generate | 03:01:08 |
| 23 | at the Author Portal? | 03:01:11 |
| 24 | A.   Yes. | 03:01:13 |
| 25 | Q.   Okay.  So did you generate this yourself? | 03:01:15 |

Page 214

CONFIDENTIAL

```
 1              CERTIFICATE OF REPORTER
 2          I, the undersigned, a Certified Shorthand
 3   Reporter of the State of California, do hereby
 4   certify:
 5          That the foregoing proceedings were taken
 6   before me at the time and place herein set forth;
 7   that any witnesses in the foregoing proceedings,
 8   prior to testifying, were administered an oath; that
 9   a record of the proceedings was made by me using
10   machine shorthand which was thereafter transcribed
11   under my direction; and that the foregoing
12   transcript is a true record of the testimony given.
13          Further, that if the foregoing pertains to
14   the original transcript of a deposition in a Federal
15   Case, before completion of the proceedings, review
16   of the transcript [X] was [ ] was not requested.
17          I further certify I am neither financially
18   interested in the action nor a relative or employee
19   of any attorney or any party to this action.
20          IN WITNESS WHEREOF, I have this date
21   subscribed my name.
22                     Dated:  March 12, 2025
23
24

                       JANE GROSSMAN
25                     CSR No. 5225


                                    Page 255
```