# EXHIBIT 19

```
 1              UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                       ---oOo---
 4   ANDREA BARTZ, ANDREA BARTZ,   )
     INC., CHARLES GRAEBER, KIRK   )
 5   WALLACE JOHNSON, MJ + KJ,     )
     INC., individually and on     )
 6   behalf of others similarly    )
     situated,                     )
 7                                 )
              Plaintiffs,          )
 8                                 )
     vs.                           )   No. 3:24-cv-05417
 9                                 )
     ANTHROPIC PBC,                )
10                                 )
              Defendant.           )
11   _____)
12
13         TRANSCRIPT DESIGNATED "CONFIDENTIAL"
14
15         VIDEO-RECORDED DEPOSITION OF
16            CHARLES ANDREW GRAEBER
17                   Volume I
18            Pages 1 through 235
19   _____
20          Wednesday, March 5, 2025
21           San Francisco, California
22
23   Reported By:  JANE GROSSMAN, CSR No. 5225
24
25   Job No. SF 7222284
```

Page 1

```
 1                    I N D E X
 2    VIDEO-RECORDED DEPOSITION OF CHARLES ANDREW GRAEBER
 3    WEDNESDAY, MARCH 5, 2025
 4    VOLUME I
 5                                                     PAGE
 6    MORNING SESSION                                     9
 7    AFTERNOON SESSION                                 146
 8    EXAMINATION BY:    MR. FARRIS                      11
 9                      ---oOo---
10                    E X H I B I T S
11       DEPOSITION EXHIBITS MARKED FOR IDENTIFICATION
12         [* Document designated HIGHLY CONFIDENTIAL."]
13           [** Document designated "CONFIDENTIAL"]
14                      ---oOo---
15    EXHIBIT NO.    DESCRIPTION                        PAGE
16    Exhibit 1      Multipage excerpt from LinkedIn      60
                     Re:  Charles Graeber (No Bates
17                   numbers)
18    Exhibit 2      Multipage excerpt from LinkedIn      61
                     for Charles Graeber with the
19                   heading "Experience" (No Bates
                     numbers)
20
      Exhibit 3      Multipage document titled            75
21                   "PLAINTIFF CHARLES GRAEBER'S
                     FIRST SUPPLEMENTAL RESPONSES
22                   TO FIRST SET OF REQUESTS FOR
                     PRODUCTION OF DOCUMENTS
23                   (NOS. 1-83)" (No Bates numbers)
24    / / / / /
25    / / / / /

                                                   Page 2
```

```
 1                  UNITED STATES DISTRICT COURT
 2                 NORTHERN DISTRICT OF CALIFORNIA
 3                           ---oOo---
 4     ANDREA BARTZ, ANDREA BARTZ,   )
       INC., CHARLES GRAEBER, KIRK   )
 5     WALLACE JOHNSON, MJ + KJ,     )
       INC., individually and on     )
 6     behalf of others similarly    )
       situated,                     )
 7                                   )
                 Plaintiffs,         )
 8                                   )
       vs.                           )    No. 3:24-cv-05417
 9                                   )
       ANTHROPIC PBC,                )
10                                   )
                 Defendant.          )
11     _____)
12
13          BE IT REMEMBERED that, pursuant to Notice of
14     Taking Video-recorded Deposition, and on Wednesday,
15     March 5, 2025, commencing at the hour of 9:11 a.m., and
16     ending at the hour of 3:44 p.m., at the Law Offices of
17     ARNOLD & PORTER KAYE SCHOLER LLP, Three Embarcadero
18     Center, Tenth Floor, San Francisco, California
19     94111-4024, before me, JANE GROSSMAN, a Certified
20     Shorthand Reporter of the State of California,
21     personally appeared
22                  CHARLES ANDREW GRAEBER,
23     produced as a witness in said action, who, being first
24     duly sworn by the Certified Shorthand Reporter, was
25     thereupon examined as a witness in said cause.
```

Page 6

```
 1                A P P E A R A N C E S
 2
 3   FOR PLAINTIFFS ANDREA BARTZ, ANDREA BARTZ, INC.,
 4   CHARLES GRAEBER, KIRK WALLACE JOHNSON, MJ + KJ, INC.,
 5   individually and on behalf of others similarly
 6   situated:
 7              SUSMAN GODFREY L.L.P.
                1000 Louisiana Street, Suite 5100
 8              Houston, Texas  77002-5096
                713.651.9366
 9              By:  ALEJANDRA C. SALINAS, Attorney at Law
                     asalinas@susmangodfrey.com
10
                     COLLIN FREDRICKS, Attorney at Law
11                   cfredricks@susmangodfrey.com
12                   REETU SINHA, Attorney at Law
                     rsinha@susmangodfrey.com
13
14   FOR PLAINTIFFS ANDREA BARTZ, ANDREA BARTZ, INC.,
15   CHARLES GRAEBER, KIRK WALLACE JOHNSON, MJ + KJ, INC.,
16   individually and on behalf of others similarly
17   situated:
18              LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                250 Hudson Street, 8th Floor
19              New York, New York  10013-1413
                212.355.9500
20              By:  JACOB MILLER, Attorney at Law
                     (Present via Zoom)
21                   jmiller@lchb.com
22   / / / / /
23   / / / / /
24   / / / / /
25   / / / / /
```

```
 1                    A P P E A R A N C E S
 2                          (Continued)
 3     FOR DEFENDANT ANTHROPIC PBC:
 4                  ARNOLD & PORTER KAYE SCHOLER LLP
                    Three Embarcadero Center, Tenth Floor
 5                  San Francisco, California 94111-4024
                    415.471.3100
 6                  By:   JOSEPH FARRIS, Attorney at Law
                          Joseph.Farris@arnoldporter.com
 7
                          OSCAR RAMALLO, Attorney at Law
 8                        (Present via Zoom)
                          Oscar.Ramallo@arnoldporter.com
 9
                          JESSICA GILLOTTE, Attorney at Law
10                        Jessica.Gillotte@arnoldporter.com
                          (Present via Zoom)
11
                          ALLY MYERS, Attorney at Law
12                        Ally.Myers@arnoldporter.com
13
14     ALSO PRESENT:
15                        REILLY LEET, Videographer
16                              ---oOo---
17
18
19
20
21
22
23
24
25

                                                      Page 8
```

| | | |
|---|---|---|
| 1 | MORNING SESSION                                          9:11 A.M. | |
| 2 | WEDNESDAY, MARCH 5, 2025 | |
| 3 | SAN FRANCISCO, CALIFORNIA | |
| 4 | ---oOo--- | |
| 5 | P R O C E E D I N G S | |
| 6 | ---oOo--- | |
| 7 | THE VIDEOGRAPHER:  Good morning. | 09:11:54 |
| 8 | We are going on the record at 9:11 a.m. on | 09:11:55 |
| 9 | March 5th, 2025. | 09:12:01 |
| 10 | Please note that the microphones are | 09:12:04 |
| 11 | sensitive and may pick up whispering and private | 09:12:06 |
| 12 | conversations. | 09:12:10 |
| 13 | Please mute your phones at this time. | 09:12:11 |
| 14 | Audio- and video-recording will continue | 09:12:13 |
| 15 | to take place unless all parties agree to go off the | 09:12:15 |
| 16 | record. | 09:12:19 |
| 17 | This is Media Unit 1 of the video-recorded | 09:12:20 |
| 18 | deposition of Charles Graeber, taken by counsel for | 09:12:23 |
| 19 | defendant in the matter of Andrea Bartz, et al. | 09:12:29 |
| 20 | versus Anthropic PBC, filed in the United States | 09:12:31 |
| 21 | District Court, Northern District of California; | 09:12:39 |
| 22 | Case No. 3:24-cv-05417. | 09:12:43 |
| 23 | The location of the deposition is Three | 09:12:51 |
| 24 | Embarcadero Center, Tenth Floor, San Francisco, | 09:12:55 |
| 25 | California 94111. | 09:12:59 |

| | | |
|---|---|---|
| 1 | My name is Reilly Leet, representing | 09:13:03 |
| 2 | Veritext Legal Solutions, and I'm the videographer. | 09:13:06 |
| 3 | I'm not related to any party in this case, | 09:13:12 |
| 4 | nor am I financially interested in the outcome. | 09:13:15 |
| 5 | Counsel will now state their appearances | 09:13:17 |
| 6 | and affiliations for the record beginning with the | 09:13:20 |
| 7 | noticing attorney. | 09:13:22 |
| 8 | MR. FARRIS:  Good morning. | 09:13:23 |
| 9 | This is Joe Farris, with Arnold & Porter, | 09:13:24 |
| 10 | representing the defendant, Anthropic. | 09:13:28 |
| 11 | MS. SALINAS:  Alejandra Salinas, Susman | 09:13:30 |
| 12 | Godfrey, on behalf of the plaintiff. | 09:13:32 |
| 13 | THE VIDEOGRAPHER:  Thank you. | 09:13:35 |
| 14 | Counsel in the Zoom have been noted for | 09:13:35 |
| 15 | the record. | 09:13:37 |
| 16 | Will the court reporter please introduce | 09:13:38 |
| 17 | herself and administer the oath to the witness? | 09:13:41 |
| 18 | And then counsel may proceed. | 09:13:43 |
| 19 | THE REPORTER:  Pursuant to the | 09:13:44 |
| 20 | requirements of AB 3252, I am stating on the record | 09:13:44 |
| 21 | that my name is Jane Grossman, and I am a California | 09:13:44 |
| 22 | Licensed Stenographic Reporter.  My CSR number is | 09:13:44 |
| 23 | 5225. | 09:13:44 |
| 24 | I will now swear the witness in. | 09:13:44 |
| 25 | ---oOo--- | 09:13:44 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

| | | |
|---|---|---|
| 1 | CHARLES ANDREW GRAEBER, | 09:13:44 |
| 2 | called as a witness herein, | 09:13:44 |
| 3 | having been first duly sworn by the Certified | 09:13:44 |
| 4 | Shorthand Reporter, was thereupon examined and | 09:13:44 |
| 5 | testified as hereinafter set forth. | 09:13:44 |
| 6 | ---oOo--- | 09:13:44 |
| 7 | THE REPORTER: Please begin. | 09:13:44 |
| 8 | ---oOo--- | 09:13:45 |
| 9 | EXAMINATION BY MR. FARRIS | 09:13:44 |
| 10 | BY MR. FARRIS: | 09:14:09 |
| 11 | Q.   Good morning, Mr. Graeber. | 09:14:10 |
| 12 | A.   Good morning. | 09:14:11 |
| 13 | Q.   Can you start by stating and spelling your | 09:14:12 |
| 14 | full name, including any middle name? | 09:14:14 |
| 15 | A.   Yes. | 09:14:16 |
| 16 |      My name is Charles Andrew Graeber | 09:14:17 |
| 17 | C-h-a-r-l-e-s A-n-d-r-e-w G-r-a-e-b, as in boy, e-r. | 09:14:21 |
| 18 | Q.   Thank you. | 09:14:29 |
| 19 |      Have you been deposed before, sir? | 09:14:29 |
| 20 | A.   I have not. | 09:14:32 |
| 21 | Q.   Okay.  Do you understand that a few | 09:14:33 |
| 22 | moments ago you took an oath to tell the truth? | 09:14:34 |
| 23 | A.   I do. | 09:14:36 |
| 24 | Q.   Okay.  You understand you're now sworn to | 09:14:37 |
| 25 | tell the truth in the same manner that you would be | 09:14:39 |

Page 11

| | | |
|---|---|---|
| 1 | Q. Okay. Is that -- is that accurate, as far | 12:15:47 |
| 2 | as you know? | 12:15:50 |
| 3 | A. As far as I know, that appears accurate. | 12:15:51 |
| 4 | Q. Okay. In your view, who owns the | 12:16:03 |
| 5 | copyright to The Good Nurse? | 12:16:04 |
| 6 | A. I do. | 12:16:06 |
| 7 | Q. Okay. Did you -- have you always owned | 12:16:07 |
| 8 | it? | 12:16:10 |
| 9 | A. Yes. | 12:16:11 |
| 10 | Q. Does anyone else own part of the copyright | 12:16:14 |
| 11 | in The Good Nurse? | 12:16:16 |
| 12 | A. No. | 12:16:18 |
| 13 | Q. Did you apply for the copyright in | 12:16:24 |
| 14 | The Good Nurse personally? | 12:16:27 |
| 15 | A. No. | 12:16:31 |
| 16 | Q. Who did submit an application to register | 12:16:31 |
| 17 | the copyright? | 12:16:33 |
| 18 | A. I assume my publisher did. | 12:16:35 |
| 19 | Q. Did you have any communications with the | 12:16:41 |
| 20 | Copyright Office yourself? | 12:16:44 |
| 21 | A. No. | 12:16:46 |
| 22 | Q. Do you recall if your publisher sent you | 12:16:48 |
| 23 | communications about the copyright registration? | 12:16:50 |
| 24 | A. I don't recall. | 12:16:53 |
| 25 | Q. Have you looked to see? | 12:16:56 |

Page 125

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A. I would point to the first sentence and | 12:30:56 |
| 2 | the second sentence. | 12:31:06 |
| 3 | Q. Okay. But do you believe you assigned | 12:31:09 |
| 4 | your publisher the copyright in your works? | 12:31:13 |
| 5 | A. No. | 12:31:16 |
| 6 | Q. Okay. Did you grant Grand Central | 12:31:16 |
| 7 | Publishing the right to license The Good Nurse to | 12:31:26 |
| 8 | other -- to other parties? | 12:31:32 |
| 9 | A. No. | 12:31:33 |
| 10 | Q. Did you grant Grand Central Publishing the | 12:31:37 |
| 11 | right to license The Good Nurse as training data for | 12:31:41 |
| 12 | an LLM? | 12:31:45 |
| 13 | A. No. | 12:31:45 |
| 14 | Q. Who has the authority to license | 12:31:46 |
| 15 | The Good Nurse to train LLMs? | 12:31:49 |
| 16 | A. I do. | 12:31:51 |
| 17 | Q. Does anyone else need to be consulted | 12:31:53 |
| 18 | before you make the decision to grant a license to | 12:31:56 |
| 19 | an LLM for your -- your books? | 12:32:00 |
| 20 | A. I would consult experts in the field and | 12:32:03 |
| 21 | my -- my agent. | 12:32:09 |
| 22 | But the decision would be mine. | 12:32:10 |
| 23 | Q. Would you need to ask anyone else's | 12:32:12 |
| 24 | permission, in your mind? | 12:32:14 |
| 25 | A. I would not. | 12:32:15 |

Page 136

| | | |
|---|---|---|
| 1 | Q. Have you ever had a conversation about who | 12:32:20 |
| 2 | has the authority to license The Good Nurse to an | 12:32:23 |
| 3 | LLM with your publisher? | 12:32:26 |
| 4 | A. No. | 12:32:28 |
| 5 | Q. Have you ever told your publisher that you | 12:32:35 |
| 6 | believe that you have the exclusive right to license | 12:32:37 |
| 7 | The Good Nurse to an LLM? | 12:32:41 |
| 8 | A. No. | 12:32:43 |
| 9 | Q. Have you ever had any communications with | 12:32:44 |
| 10 | your publisher about who has the rights to license | 12:32:45 |
| 11 | The Good Nurse to an LLM? | 12:32:48 |
| 12 | A. No. | 12:32:50 |
| 13 | Q. Would your answer to those questions be | 12:32:59 |
| 14 | any different for The Breakthrough? | 12:33:01 |
| 15 | A. They would not. | 12:33:03 |
| 16 | Q. Apart from communications specifically | 12:33:19 |
| 17 | with you, are you aware of your publisher issuing | 12:33:20 |
| 18 | any general statements about their position on | 12:33:25 |
| 19 | licensing books to LLM makers? | 12:33:28 |
| 20 | A. I am not -- | 12:33:32 |
| 21 | MS. SALINAS: Objection. Form. | 12:33:34 |
| 22 | Go ahead. | 12:33:35 |
| 23 | THE WITNESS: I am not aware. | 12:33:36 |
| 24 | BY MR. FARRIS: | 12:33:38 |
| 25 | Q. Section 2 of this agreement refers to the | 12:33:38 |

Page 137

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Q. Okay. Was your publisher involved in | 01:33:05 |
| 2 | the -- in this deal in any way? | 01:33:09 |
| 3 | A. No. | 01:33:12 |
| 4 | Q. Was your literary agent involved? | 01:33:12 |
| 5 | A. No. | 01:33:14 |
| 6 | Q. Okay. | 01:33:31 |
| 7 | (Deposition Exhibit 12 was marked for | 01:33:31 |
| 8 | identification.) | 01:33:31 |
| 9 | THE WITNESS: Thank you. | 01:33:42 |
| 10 | MR. FARRIS: All right. Exhibit 12 was | 01:33:49 |
| 11 | produced yesterday, and it is BARTZ-4621 to | 01:33:55 |
| 12 | BARTZ-4672. | 01:34:04 |
| 13 | The cover page of this document is a | 01:34:10 |
| 14 | letter agreement dated December 16th, 2019, "Re: | 01:34:13 |
| 15 | 'The Good Nurse'/Literary Option/Purchase | 01:34:19 |
| 16 | Agreement." | 01:34:22 |
| 17 | Q. Do you see that, sir? | 01:34:23 |
| 18 | A. I do. | 01:34:24 |
| 19 | Q. Okay. Do you recognize what this document | 01:34:25 |
| 20 | is? | 01:34:30 |
| 21 | A. Yes. | 01:34:31 |
| 22 | Q. Can you describe what it is? | 01:34:31 |
| 23 | A. It is the option agreement for | 01:34:33 |
| 24 | The Good Nurse as optioned by Lionsgate. | 01:34:36 |
| 25 | Q. This is the option that relates to the | 01:34:52 |

Page 155

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Netflix series; correct? | 01:34:56 |
| 2 | A. Net- -- it was a film, yeah. It wasn't a | 01:34:58 |
| 3 | series. | 01:35:01 |
| 4 | Q. Okay. Sorry. | 01:35:02 |
| 5 | So you don't have an actual contract with | 01:35:06 |
| 6 | Netflix directly? It's with the production company? | 01:35:08 |
| 7 | A. That's correct. | 01:35:12 |
| 8 | Q. Okay. Who was involved in the negotiation | 01:35:13 |
| 9 | of this agreement? | 01:35:18 |
| 10 | A. My- -- myself and -- but primarily my | 01:35:22 |
| 11 | agent at CAA. That's Creative Artists Agency. | 01:35:28 |
| 12 | Q. What is the name of your CIA [sic] agent? | 01:35:35 |
| 13 | A. Matt -- Matthew Schneider. | 01:35:39 |
| 14 | Q. Okay. | 01:35:41 |
| 15 | A. I'll have to look that up. | 01:35:41 |
| 16 | It's S-c-h-n-e-i-d-e-r, I think. It may | 01:35:42 |
| 17 | be i-e. | 01:35:49 |
| 18 | Q. Okay. Has he always been your agent for | 01:35:53 |
| 19 | motion picture rights? | 01:35:55 |
| 20 | A. Yes. | 01:35:58 |
| 21 | Q. Was Ms. Golomb involved in the negotiation | 01:36:01 |
| 22 | of this option agreement? | 01:36:04 |
| 23 | A. I don't believe so. | 01:36:06 |
| 24 | Q. Was your publisher involved in the | 01:36:12 |
| 25 | negotiation of this option agreement? | 01:36:14 |

Page 156

| | | |
|---|---|---|
| 1 | Clarification requested by the reporter.) | 01:43:17 |
| 2 | MR. FARRIS: That it -- it looks like | 01:43:17 |
| 3 | it's Italian. La Nave, N-a-v-e, di, d-i, Teseo, | 01:43:17 |
| 4 | T-e-s-s-e-o [sic]. | 01:43:24 |
| 5 | Q. Do you recognize that company? | 01:43:27 |
| 6 | A. Not -- not as such. | 01:43:31 |
| 7 | But I -- I believe you're correct. I | 01:43:35 |
| 8 | believe it's an Italian publisher. | 01:43:38 |
| 9 | Q. Okay. Do you recognize the next line | 01:43:41 |
| 10 | down, the company, Atlantic Books? | 01:43:45 |
| 11 | A. Yes. | 01:43:48 |
| 12 | Q. What's Atlantic Books? | 01:43:48 |
| 13 | A. That is a UK publisher. | 01:43:50 |
| 14 | Q. Okay. And the next line is Gimm-Young | 01:43:52 |
| 15 | Publishers, Inc. | 01:43:57 |
| 16 | Do you recognize that publisher? | 01:43:58 |
| 17 | A. I don't by name, no -- | 01:44:00 |
| 18 | Q. Okay. | 01:44:02 |
| 19 | A. -- but I believe it's Korean. | 01:44:05 |
| 20 | Q. Okay. So it appears that in at least | 01:44:08 |
| 21 | some cases you -- royalties for The Good Nurse and | 01:44:11 |
| 22 | The Breakthrough are being paid from these | 01:44:18 |
| 23 | publishers directly to Having & Selling LLC. | 01:44:21 |
| 24 | Is that true? | 01:44:24 |
| 25 | A. They're paid to my agent, who then pays | 01:44:31 |

| | | |
|---|---|---|
| 1 | me. | 01:44:34 |
| 2 | Q. Is that the case with all royalties you | 01:44:41 |
| 3 | receive, that they're always paid first to your | 01:44:43 |
| 4 | agent? | 01:44:45 |
| 5 | A. Yes. | 01:44:46 |
| 6 | Q. And in -- in what cases do royalties then | 01:44:47 |
| 7 | go to Having & Selling LLC, versus going to you | 01:44:50 |
| 8 | personally? | 01:44:54 |
| 9 | A. There's no logic to it, I don't believe. | 01:44:57 |
| 10 | I think at a certain point I gave them | 01:45:02 |
| 11 | this -- this information. | 01:45:07 |
| 12 | It usually says both my name and -- and | 01:45:13 |
| 13 | the LLC. They both go to the same bank. | 01:45:16 |
| 14 | Q. So there are some times when your -- your | 01:45:27 |
| 15 | agent -- well, let's take it agent by agent. | 01:45:31 |
| 16 | For anything that Susan Golomb receives, | 01:45:34 |
| 17 | she will sometimes send royalties directly to | 01:45:39 |
| 18 | Having & Selling LLC and sometimes to you | 01:45:42 |
| 19 | personally? | 01:45:44 |
| 20 | A. Yes. I -- I -- I think that's accurate. | 01:45:50 |
| 21 | Q. But you're not sure why in some cases the | 01:45:53 |
| 22 | royalties go one place and in some cases they go the | 01:46:00 |
| 23 | other? | 01:46:03 |
| 24 | A. I believe it's because I -- I would have | 01:46:04 |
| 25 | signed the agreement with a foreign publisher and -- | 01:46:07 |

Page 163

| | | |
|---|---|---|
| 1 | and did so as the LLC and gave them that | 01:46:17 |
| 2 | information. | 01:46:19 |
| 3 | There wasn't any actual reason behind it. | 01:46:20 |
| 4 | I -- I -- so depending on when -- when I | 01:46:24 |
| 5 | signed agreements, I may have done that. | 01:46:27 |
| 6 | Q.  Have you ever heard the term "loan-out | 01:46:34 |
| 7 | corporation"? | 01:46:36 |
| 8 | A.  No. | 01:46:37 |
| 9 | Q.  Okay.  So if I asked you, is Having & | 01:46:38 |
| 10 | Selling something you'd consider a loan-out | 01:46:41 |
| 11 | corporation, would you say "yes" or "no"? | 01:46:45 |
| 12 | MS. SALINAS:  Objection.  Form. | 01:46:46 |
| 13 | THE WITNESS:  Well, I would -- I would say | 01:46:48 |
| 14 | I don't know what that means. | 01:46:50 |
| 15 | BY MR. FARRIS: | 01:46:51 |
| 16 | Q.  Okay.  What was your purpose in setting up | 01:46:51 |
| 17 | Having & Selling LLC? | 01:47:01 |
| 18 | A.  At one point I thought it was advisable | 01:47:02 |
| 19 | for -- for tax reasons, running my own business as a | 01:47:04 |
| 20 | consultancy and so forth.  And so I tried to utilize | 01:47:10 |
| 21 | it. | 01:47:14 |
| 22 | In the end, I don't believe it serves any | 01:47:15 |
| 23 | purpose at all.  But I still have it. | 01:47:18 |
| 24 | Q.  Do you know if there are any written | 01:47:24 |
| 25 | agreements between Having & Selling LLC and any | 01:47:25 |

Page 164

```
1    third party?                                              01:47:29
2         A.   I -- I -- like -- like what?                    01:47:34
3         Q.   For example, La Nave di Teseo.  Do              01:47:38
4    you know if there's an agreement between                  01:47:42
5    La Nave di Teseo with Having & Selling LLC,               01:47:44
6    where Having & Selling LLC is listed as a party?          01:47:47
7         A.   I don't know.                                   01:47:52
8         Q.   Okay.  Do you know if there's an agreement      01:47:52
9    between Having & Selling LLC and Susan Golomb or one      01:47:54
10   of her agencies?                                          01:48:00
11        A.   I -- I'm not sure.                              01:48:01
12        Q.   Okay.  Do you know if there's an                01:48:04
13   agreement between Having & Selling LLC and any --         01:48:10
14   and Lionsgate?                                            01:48:15
15        A.   No.                                             01:48:19
16        Q.   Okay.  Do you know if there's an agreement      01:48:20
17   between Having & Selling LLC and your -- your film        01:48:25
18   agent?                                                    01:48:27
19        A.   No.                                             01:48:28
20        Q.   Okay.  Do you know if royalties for your        01:48:31
21   film licensing are paid to Having & Selling LLC?          01:48:35
22        A.   I -- I don't -- I don't know.                   01:48:41
23        Q.   Okay.  Sorry.  I'm going to go back to          01:48:44
24   Exhibit 12 quickly, which is the film agreements.         01:49:05
25             So we talked about how the first agreement      01:49:19
```

Page 165

```
 1                  CERTIFICATE OF REPORTER
 2              I, the undersigned, a Certified Shorthand
 3      Reporter of the State of California, do hereby
 4      certify:
 5              That the foregoing proceedings were taken
 6      before me at the time and place herein set forth;
 7      that any witnesses in the foregoing proceedings,
 8      prior to testifying, were administered an oath; that
 9      a record of the proceedings was made by me using
10      machine shorthand which was thereafter transcribed
11      under my direction; and that the foregoing
12      transcript is a true record of the testimony given.
13              Further, that if the foregoing pertains to
14      the original transcript of a deposition in a Federal
15      Case, before completion of the proceedings, review
16      of the transcript [ ] was [x] was not requested.
17              I further certify I am neither financially
18      interested in the action nor a relative or employee
19      of any attorney or any party to this action.
20              IN WITNESS WHEREOF, I have this date
21      subscribed my name.
22                          Dated:  March 11, 2025
23
24
                            JANE GROSSMAN
25                          CSR No. 5225
```

Page 233