# EXHIBIT 20

DocuSign Envelope ID: 6D966EBA-3A47-4D89-8B84-9144769C65D9

[23.996]

# MEMORANDUM OF AGREEMENT

made this June 24th 2021

**BETWEEN**
Having & Selling LLC c/o WRITERS HOUSE LLC., 21 West 26 Street, New York, NY 10010, USA
(hereinafter called "the Proprietor") of the one part,

**AND**
La Nave di Teseo Editore Srl, Via Stefano Jacini, 6, 20121 Milano, Italy
(hereinafter called "the Publisher") of the other part,

WHEREAS the Proprietor warrants that he is the sole and exclusive owner of the rights which are the subject of this agreement and WHEREBY it is mutually agreed as follows regarding the work entitled

**THE GOOD NURSE by Charles Graeber**
(hereinafter called "the said work"):

1. The Proprietor hereby grants to the Publisher the exclusive license to publish and sell the said work in volume and electronic form in the Italian language throughout the world.

2. The Publisher shall pay to the Proprietor a non-returnable advance of EUR 23.000,00 (Euro twenty three thousand) payable as follows:
EUR 11.500,00 (Euro eleven thousand five hundred) on signature of this agreement
EUR 11.500,00 (Euro eleven thousand five hundred) on publication but not later than June 24, 2023, whichever date is the earlier

Such sum to be in advance and on account of all earnings and the following royalties payable on the full retail price, ex-VAT, of each and every copy sold by the Publisher:

Trade (Hardcover or Softcover) Edition
12% (twelve percent) on the first 10.000 copies
13% (thirteen percent) on the next copies up to 15.000
14% (fourteen percent) on each and every copy sold thereafter

Paperback (Pocket) Edition
5% (five percent) on the first 25.000 copies
6% (six percent) on each and every copy sold thereafter
*The Publisher shall be permitted to reissue the said work in their paperback line not earlier than 12 (twelve) months from publication in trade edition

E-Book
See Addendum #1


3. The Publisher shall make or cause to be made at his own expense the translation of the said work into the aforementioned language. The translation shall be made faithfully and accurately. No addition (including additional material such as a foreword, afterward, photographs, etc...), deletion, abridgement or alteration shall be made to the said work without the Proprietor's prior written approval.

CONFIDENTIAL - ATTORNEYS' EYES ONLY                                                                        BARTZ000005659

Case 3:24-cv-05417-AMO   Document 562-21   Filed 01/21/26   Page 3 of 9

[23.996]

4. The title of the said work in the original language shall appear beneath the Italian title or on the back of the title page of every copy printed. The name of the author shall appear in due prominence on the title page and on the binding and jacket, if any, of every copy printed and on all advertisements of the said work issued by the Publisher.

5. The Publisher shall promptly secure in the name of the Proprietor whatever copyright protection may be available in the said territory with respect to the said work. The entire copyright in the said work shall be and remain in the Proprietor, subject only to rights herein granted. Copyright notice shall be printed exactly as it appears in the original edition of the said work, accompanied by the following credit: "Published by arrangement with The Italian Literary Agency and Writers House". This provision is an integral part of this agreement and the permission to publish granted by the Proprietor is conditioned upon the printing of the correct copyright notice.

6. The Publisher shall publish his edition of the said work within 24 (twentyfour) months from the date of this agreement. If the Publisher fails to do so, this agreement shall terminate automatically and all the rights hereunder granted shall revert to the Proprietor without prejudice to any monies already paid or then due and to any claim which the Proprietor may have for damages and/or otherwise.

7. The Publisher shall, at the earliest possible date, send 2 (two) gratis copies of the first edition of the said work to The Italian Literary Agency, via De Amicis 53, 20123 Milano, Italy, and 6 (six) gratis copies to the Proprietor at the following address: WRITERS HOUSE LLC., 21 West 26 Street, New York, NY 10010 and 1 (one) additional gratis copy of each and every further edition or reprint of the said work issued by the Publisher to the same above mentioned consignees.

8. The Publisher shall render a detailed account of printings, sales and earnings of the said work once a year to the 31st December and shall deliver and settle said account within the following 120 (one hundred and twenty) days.

9. All statements and sums of money due under the terms of this agreement shall be remitted and paid to the Proprietor's agents, The Italian Literary Agency, via De Amicis 53, 20123 Milano, Italy, acting in conjunction with: WRITERS HOUSE LLC., 21 West 26 Street, New York, NY 10010 and the receipt of said agents shall be a good and valid discharge of the Publishers' obligations. All sums of money due under the terms of this agreement shall be paid provided that the Proprietor, or his duly authorized representatives, send a duly executed Tax Exemption Form or instructions to pay without the benefits of the reduced taxation.

10. This agreement shall expire and all rights licensed hereunder shall automatically and without further notice or procedure revert to the Proprietor at whichever of the following dates is the earlier: 10 (ten) years from the date of signature of this agreement, or 6 (six) months after the said work has been out of print or off the market. For the purposes of this agreement the said work shall be regarded as out of print or off the market if no royalty statement has been received within the due date or if statements show a sale of less than 100 (one hundred) copies in trade edition and/or 250 (two hundred fifty) copies in paperback/mass-market edition. Existing editions licensed under clause 12 of this agreement shall have no influence on the in print status of the said work.

11. The license herein granted is assigned to the Publisher solely and shall not be transferred by the Publisher without the Proprietor's written consent.

12. The Publisher shall have the exclusive handling of the following subsidiary rights in the said work in the said language during the validity of this agreement, and the proceeds from the disposal of such rights shall be shared as follows:

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005660

[23.996]

| | |
|---|---|
| a) First serial | (Proprietor 70% - Publisher 30%) |
| b) Second serial | (Proprietor 50% - Publisher 50%) |
| c) Anthology and quotation | (Proprietor 50% - Publisher 50%) |
| d) Audio book to another publisher | (Proprietor 60% - Publisher 40%) |
| e) Book Clubs | (Proprietor 50% - Publisher 50%) |
| f) Kiosk edition | (Proprietor 60% - Publisher 40%) |

If the Publisher owns or is a majority stockholder in the firm acquiring the sub-license, the share between the Proprietor and the Publisher shall be agreed upon in writing between the parties.

12a. The Publisher shall be permitted to apply the Proprietor's share from the disposal of the subsidiary rights mentioned under clause 12 against any then still unearned part of the advance mentioned under clause 2.

13. The Publisher undertakes to keep the Proprietor informed on the handling of the subsidiary rights granted under clause 12 hereabove and not to license any of the said rights without the Proprietor's previous consent in writing, such consent not to be unreasonably withheld. The Publisher shall upon request supply to the Proprietor one copy of each sub-license agreement, and shall pay any sums due to the Proprietor for the disposal of such rights at the earliest royalty statement, once the advance mentioned under clause 2 has been earned back.

14. On any copies sold as remainders the Publisher shall pay a royalty of 10% (ten percent) of the net cash received in lieu of royalties hereinbefore mentioned, but no remainder copies shall be sold before 2 (two) years from the date of first publication of the said work by the Publisher. The Publisher, upon remaindering his edition of the said work, shall give written notice to the Proprietor, and all the rights herein licensed shall revert to the Proprietor without further notice or procedure and without prejudice to any sums of money then due.
No royalties shall be due on sample copies given away for free for advertising or promoting the Publisher's edition of the said work, provided such copies do not exceed 5% (five percent) of the total of each printing of the Publisher's edition, and/or on copies sold at or below cost in accordance with the provisions of this clause.

15. All rights not specifically granted herein are reserved to the Proprietor.

16. In the event that the Proprietor and/or the Author disposes of the motion picture and/or other performance rights, the purchaser of said rights shall have the right to publish or cause to be published in the Italian language excerpts, synopses, scenarios and/or summaries of the said work up to a total of 7,500 (seven thousand five hundred) words in length and/or any photoplay based on the said work for the purpose of advertising and exploitation of the said rights.

17. If the equivalent of a petition in bankruptcy is filed by the Publisher; or a petition is filed against the Publisher and is finally sustained; or a petition for Arrangement or Reorganization is filed by or against the Publisher; or an order is entered directing the liquidation of the Publisher as in bankruptcy; or if the Publisher shall make an assignment for the benefit of creditors; or if the Publisher shall liquidate its business for any reason whatsoever; or should the Publisher fail to fulfil or comply with any of the clauses or conditions herein set forth other than clauses 6 or 10, which provide for the automatic termination of this agreement in case of violation, then the Proprietor shall have the option to terminate this agreement and thereupon all rights granted herein shall automatically revert to the Proprietor without prejudice to any monies already paid or then due to the Proprietor.

18. In the event of termination of this agreement, every contract made by the Publisher with third parties in accordance with clause 12 of this agreement, which has not expired at the time of said termination, is to be

[23.996]

transferred automatically to the Proprietor, who is held responsible for the fulfilment of the commitment(s) undertaken in said contract(s).

19. The Proprietor shall have the right to approve any title which is different from the Italian translation of the original title of the said work and the cover / jacket art, but such approval shall not to be unreasonably withheld or delayed.

20. No debit balance arising in the Publisher's favour under the terms of other agreements with the Proprietor for the said work or for other works owned by the Proprietor shall be off-set by the Publisher against any credit balance arising in the Proprietor's favour under the terms of this agreement.

21. Should the copyright in the said work be infringed within the territory of the grant, the Publisher shall take such steps as may be necessary to restrain such infringement.

22. Advertisements shall not be inserted or printed in any edition of the said work published by the Publisher or any sub-license permitted hereunder without the Proprietor's prior consent in writing except for advertising the Publisher's own titles.

23. The Publisher shall be granted the free use of up to 10% of the Work for promotional material, both on and off line.

24. The Proprietor shall promptly supply the Publisher with three finished copies of the work, on the signature of this agreement, if already published in the original language, on publication, if still to be published.

25. This agreement has been executed in the USA and shall be governed by and construed in accordance with the laws of the State of New York, regardless of the place of execution or performance. This agreement constitutes the complete understanding between the parties and no alteration, modification or waiver of any of the terms hereof will be binding unless in writing signed by both parties or by their duly authorized representatives.
The parties agree that this Agreement may be electronically signed. The parties agree that the electronic signatures appearing on this Agreement are the same as handwritten signatures for the purpose of validity, enforceability and admissibility.

AS WITNESS the hands of the parties or their duly authorized representatives the day and year first above written.

DocuSigned by:
*Charles Graeber*
559C7C7E61D44B5...

**The Proprietor**

DocuSigned by:
*Elisabetta Sgarbi*
3CE55436743646E...

**The Publisher**

CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    BARTZ000005662

[23.996]

81-2372413

**PROPRIETOR'S TAX ID. NUMBER:**_____

HAVING & SELLING LLC
**a) Full name (in capital letters or typewritten):**_____

4 Ash Street, Nantucket, MA 02554
**b) Address:**_____

**c) Place and date of birth:**
To be completed in the event that the Proprietor is an individual or an Estate (not necessary if it is a company):_____

CONFIDENTIAL - ATTORNEYS' EYES ONLY                                                                                                           BARTZ000005663

DocuSign Envelope ID: 6D966EBA-3A47-4D89-8B84-9144769C65D9

[23.996]

# Addendum #1

to the agreement dated **June 24th 2021** between **Having & Selling LLC c/o WRITERS HOUSE LLC., 21 West 26 Street, New York, NY 10010, USA** (the Proprietor) and **La Nave di Teseo Editore Srl, Via Stefano Jacini, 6, 20121 Milano, Italy** (the Publisher) for the Work(s) entitled **THE GOOD NURSE by Charles Graeber**

Whereby:

1. The Proprietor grants the Publisher in addition to the rights granted in the above mentioned Agreement the following exclusive electronic verbatim display and publishing rights:

(a) The right to import and to save the complete non-dramatic verbatim text of the Italian translation of the Work (i.e. word by word as published in printed book form without enhancements or multimedia functions such as electronic games, electronic versions of motion pictures and dramatic multimedia products) as visually displayed digital content on a form of data storage in which the Publisher retains control over the display as well as customized accessibility for the purpose of secure electronic transfer via networks to authorized reading devices that in exchange for a payment from end users, is made accessible to end users on a controlled basis as a discrete product (hereinafter referred to as "e-book"). No alteration of the words or their order is permitted.

(b) The right to display but not duplicate the e-book to users, for the sole purpose of publicising, promoting and directing the public to the availability of the published Work. Such promotional display of the e-book shall be limited to part of the Work only, the size of which part shall not be greater than 10% of the entire text (but in the case of collections not to exceed 5% of the entire text), such excerpting to be subject to the Proprietor's approval (except for the first 15 pages of the translated book, including title page etc, which can be displayed without the Proprietor's approval). It is understood that both the Proprietor and the Publisher share a common interest against abuse and undermining the sales of the Work.

(c) The Publisher's Electronic Work must be available for downloading no later than six (6) months from the date of publication of the Work. In the event of the Publisher's failure to do so, E-book rights will automatically revert to the Proprietor.

(d) The e-book edition shall not be available for sale before the publication of the printed paper edition.

(e) Every copy of the e-book shall bear the title, the author's name and the original copyright notice of the Work. Publisher's obligation to seek copyright protection for the Work set out in the Agreement also applies to the e-book.

(f) The Publisher shall not make the e-book edition available for distribution via subscription services without the prior written approval of the Proprietor. Further, for the avoidance of doubt, in no event shall the Publisher participate in any royalty pool for the sale and distribution of the e-book edition during the term of the Agreement.

2 For each Electronic Book sold, the Publisher shall pay to the Proprietor a royalty of **25% (twenty-five percent) of net receipts received by the Publisher on the first 2.000 downloads, 30% (thirty percent) of net receipts on the following downloads up to 5.000 and 35% (thirty-five percent) of net receipts on each and every download thereafter,** net receipts meaning the amounts paid to the Publisher by its customers/distributors partners according to the net invoices on actual sales less VAT and less discounts and allowances paid or granted to distribution partners, such discounts and allowances not to exceed 50% (fifty per cent) of the full published recommended retail price, less VAT. Notwithstanding the foregoing, the Publisher shall have the right to exceed such discounts and allowances not more than 7 days per year (i.e.: "daily deal" or any such similar promotion); additional exceptions to the above shall be approved in written form by the Proprietor.

(a) The Publisher acknowledges that the royalties agreed upon are the highest they pay for e-book rights, and agree to

[23.996]

automatically increase them to the highest level should the situation of the market change during the duration of this agreement.

(b)  E-book royalties shall be accounted for separately, and sales of the e-book shall have no influence on the in-print status of the Work.

(c)  At any time following three (3) years from the contract date, Author may serve written notice to Publisher of the Author's desire to renegotiate the Electronic Book royalty rate, in the light of trading practices current at that time. If the Author and Publisher fail to reach an agreement within a period of sixty (60) days thereafter, Publisher shall not sell that Work as an Electronic Book again unless and until the Author and Publisher agree in writing upon a new royalty rate.

(d)  The Publisher is free to set a retail price for the e-book that is different from the price(s) of their print edition(s) of the Work.

(e)  The Publisher shall make free copies available through its platform or distributor, on publication, for the Proprietor, the Author and his/her/their appointed literary agents.

3.  The Publisher shall be responsible for encryption of the e-book that meets or exceeds the current industry standards. The Publisher shall ensure that the e-book shall be technically protected against manipulation and uncontrolled file sharing. The Proprietor may at any time request the Publisher to have a security audit on the database platform. In the event that such security audit indicates serious security flaws, in that the displayed contents become easily accessed and copied and passed on to non-purchasing third parties on a commercial or non-commercial basis, the Proprietor shall, upon discovery of such a flaw, have the right to request the display to cease immediately but no later than three working days from first notification, until satisfactory safety is demonstrably installed. If the Publisher does not improve security within two (2) weeks of the date of request, or if it attempts to improve said security, but the conditions do not meet the Proprietor's approval, then electronic rights regarding the Work shall immediately revert to the Proprietor. While it is understood by both parties that there is no total security, illegal copying should be made very cumbersome and require exceptional technical skills. The Publisher shall use digital rights management systems to secure the downloads. The Publisher shall be under obligation to pursue any form of abuse and pirating of the Work emanating from the rights granted in this addendum within their legal means and possibilities.

4.  The Publisher shall indemnify the Proprietor and the author from any claims arising from their publication of the e-book in the Italian language.

5.  The Publisher shall, upon reversion of rights, make any verbatim display and any other use provided for in this addendum unavailable, and the rights granted herewith will revert to the Proprietor.

6.  For the purpose of the Agreement the Work shall not be deemed "in print" if it is only available to the public in e-book and or "print-on-demand" format.

7.  The rights herewith granted shall in no way be construed to include, to limit or to compete with any audio, audiovisual, interactive, multimedia, dramatic, merchandising, commercial, television, or motion picture or allied commercial rights.

8.  No advertisements shall be included in the e-book without the Proprietor's prior approval in writing, except for advertising the Publisher's own titles.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005665

[23.996]

9. Any rights not specifically granted in the Agreement and this addendum remain with the Proprietor. All other terms and conditions shall remain as laid down in the Agreement.

Accepted and Agreed:

Milan, **June 24th 2021**

By: *Charles Graeber* (DocuSigned, 559C7C7E61D44B5)
The Proprietor

By: *Elisabetta Sgarbi* (DocuSigned, 3CE55436743646E)
The Publisher

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005666