# EXHIBIT 21

# MEMORANDUM OF AGREEMENT
made this 3rd of March 2023

BETWEEN **Having & Selling LLC c/o WRITERS HOUSE LLC, 120 Broadway, 22nd Floor, New York, NY 10271, USA** in association with **Andrew Nurnberg Associates International Limited, 3-11 Eyre Street Hill, London EC1R 5ET, UK** and **Andrew Nurnberg Associates Prague s.r.o., Jugoslávských partyzánů 17, 160 00 Praha 6, Czech Republic** (hereinafter called the Proprietor) of the one part

AND **Nakladatelstvi Jota, s.r.o. , Škárova 16, 612 00 Brno, Czech Republic, VAT number CZ25326473** (hereinafter called the Publishers) of the other part

**WHEREBY,** it is mutually agreed as follows regarding the following work entitled:

### THE GOOD NURSE: A TRUE STORY OF MEDICINE, MADNESS, AND MURDER
### By Charles Graeber

(hereinafter referred to as the Work)

1.  The Proprietor hereby grants to the Publishers the sole and exclusive right for a period of **6 (six) years** from the date of this Agreement to **publish and sell** the Work in **trade hardcover and/or paperback and electronic book** forms in the **Czech** language in all countries where copyright subsists. At the end of said period of 5 (five) years, this Agreement will be considered automatically terminated unless a renewal of said Agreement has been negotiated between the Proprietor and the Publishers.

2.  The Publishers shall pay to the Proprietor:
a non-returnable advance of **USD 2,000 (two thousand US Dollars)** payable on signature of this Agreement on account of the following royalties: **8% (eight percent) of the retail price less VAT up to 3,000 copies sold and 9% (nine percent) thereafter.** No royalties shall be payable on review copies and on copies for purpose of publicity, provided such number shall not exceed five percent (5%) of the total print run. The Publishers agree to publish approximately **2,500 (two thousand five hundred)** copies of the Work. Accounts of the sales of the said Work shall be made on the 31st day of December in each calendar year and delivered and settled within two (2) months thereafter. A report of the sales shall be made and sent to the Proprietor so long as the Work shall remain in print. The Publishers may reprint on the condition that they inform the Proprietor in writing beforehand and state the intended printrun and retail price. The Publishers shall not reprint their edition of the Work within 6 (six) months before the expiry date of this Agreement without the Proprietor´s prior written approval.

3.  The Proprietor also grants to the Publishers the exclusive right to publish an **electronic book** ("Electronic Book") of the Work in the **Czech** language.

An Electronic Book is the unabridged verbatim text of the Work to be read sequentially (without the addition of any enhancements, multimedia functions, or outside material) where that text is visually reproduced and emulates print reproduction and which may or may not include a search facility and which is encrypted for downloads to hand held e-book readers or personal computers for single usage and not for resale.

The following terms and conditions shall apply in respect of the Electronic Book rights granted to the Publishers:-

(a)  The Publishers shall pay the following royalty to the Proprietor on all copies sold of the Electronic Book editions of the Work: **25% (twenty five percent) of net receipts on all sales of Electronic Books thereafter** (net only of the discount to the retailer, if any, and any legally required sales tax such as VAT) which shall be accounted against the advance specified in clause 2 of the Agreement and shall be payable in accordance with the provisions of clause 2 of the Agreement. The Publishers shall bear the risk of non-payment of invoices for copies of Electronic Books sold by the Publishers.

(b)  In exercising the Electronic Book rights, the Publishers shall make no material changes to the Work without the prior written consent of the Proprietor.

(c)  If the Publishers have not exercised Electronic Book rights in the Work **within twelve (12) months from initial print publication of the Work**, thereafter the said Electronic Book rights in the Work will revert to the Proprietor.

(d)  The Publishers may not license any Electronic Book rights in the Work to a third party.

(e)  The Publishers shall use their best endeavors to guarantee that the applicable downloading or uploading system is securely encrypted to prevent copyright infringement, and in the event that the security of any download or upload is breached, they shall cease using such system.

(f)  The Publishers will provide the Proprietor and the Agent with one free copy each of the Electronic Book edition of the Work.

(g)  The existence of an Electronic Book doesn't constitute the Work being in print. Upon reversion, the Publisher shall ensure that the Electronic Book is no longer available and withdrawn from online and any other form of distribution from all outlets.

(h)  For the avoidance of doubt, the Publishers may not enter into any E-Book subscription model or royalty pool for the sale and distribution of the Electronic Book during the term of this Agreement.

At any time following three (3) years from the Agreement date, Proprietor may serve written notice to Publisher of the Proprietor's desire to renegotiate the Electronic Book royalty rate. If the Proprietor and Publisher fail to reach an agreement within a period of sixty (60) days thereafter, Publisher shall not sell that Work as an Electronic Book again unless and until the Proprietor and Publisher agree in writing upon a new royalty rate.

4.     The rights herein granted are assigned to the above-mentioned Publishers solely and shall not be transferred by them nor shall the Work be issued under any imprint other than their own without the written consent of the Proprietor or his agent.

5.     All rights not specifically granted in this Agreement are reserved by the Proprietor.

6.     The Publishers undertake to publish their edition of the Work within **18 (eighteen) months** from the date of this Agreement, unless otherwise mutually agreed between the Proprietor and the Publishers, failing which this Agreement will automatically terminate and all rights granted hereunder shall forthwith revert to the Proprietor without prejudice to any claims which the Proprietor may have either for monies due and/or damages or otherwise.

7.     Notwithstanding any other rights which may have been granted to the Publishers in this Agreement, it is hereby understood that the Proprietor retains the right to publish or to allow third parties to publish in the **Czech** language extracts from or synopses of the Work not exceeding 10.000 (ten thousand) words in length for use in connection with the exploitation of the cinematograph or television films of the Work. For the avoidance of doubt, it is hereby confirmed that no cinematograph or television rights in the Work are granted to the Publishers.

8.     The Publishers warrant that the translation and title of the Work shall be made completely, faithfully and accurately. Abbreviations or alterations shall not be made in the Work's title or text except with the Proprietor's prior written consent. The Proprietor shall have the right to approve any title which is different from the translation of the original title of the Work, such approval not to be unreasonably withheld or delayed. No illustrations or other material shall be included in the Publishers' edition of the Work without the Proprietor's prior written consent.

9.     The Publishers shall print the original title on the back of the title page and the name of the Proprietor shall appear in its customary form on the title page and on the jacket/cover and/or binding of every copy and in all advertisements and other announcements of the Work issued by the Publishers or their agents. The Publishers shall not print advertisements of any kind or for any other book other than by the author in any edition of the Work or on the jacket/cover without the Proprietor's written approval. The Publishers shall have the right to use the author's name, likeness and biographical information as provided by the Proprietor or approved by the Proprietor on any editions of the Work published by the Publishers and in any advertising, publicity or promotion for the Work.

10.     The Publishers shall take all necessary steps to protect the copyright in the Work and undertake to print the copyright notice:
**Copyright © 2013 by Charles Graeber**
exactly as it appears in the original edition of the Work in addition to any copyright line that may be required to establish copyright in the actual translation.

11.     The Publishers shall bear all the expenses of translation, production, publication and advertisement.

12.     The licence granted to the Publishers in clause 1 hereof does not cover any illustrations included in the Work and the Publishers must make their own arrangements with the owners of such illustrations for the right to include the illustrations in their edition. Further, the Publishers shall at their expense obtain permission to use any text included in the Proprietor's edition for which the Proprietor obtained permission from a party other than the author of the Work.

13.     No debit balance arising in the Publishers' favour under the terms of other agreements with the Proprietor for the same Work or other work shall be offset by the Publishers against any credit balance arising in the Proprietor's favour under the terms of this Agreement.

14.     Upon publication, the Publishers shall send four presentation copies of their edition of the Work direct to the Proprietor c/o WRITERS HOUSE LLC, 120 Broadway, 22nd Floor, New York, NY 10271, USA and similarly, two to Andrew Nurnberg Associates Prague s.r.o., Jugoslávských partyzánů 17, 160 00 Praha 6, Czech Republic.

15.     The Publishers shall report to the Proprietor's representative, Andrew Nurnberg Associates Prague s.r.o. upon publication of their edition. The Publishers shall advise the Proprietor's representative of the exact number of copies printed, the date of publication and the selling price per copy. Exact accounts of the sales of the Work shall be made up to 31st December in each year and delivered and settled within two (2) months thereafter. Such accounts shall show the full retail price, the royalty percentage, the number of copies printed and the number of copies remaining in stock of all editions of the Work. Royalty statements shall be delivered in duplicate and royalty payments shall be remitted in the currency in which they are calculated. Upon request, Publisher shall furnish Proprietor with any information necessary to determine the accuracy of accountings rendered hereunder. The books of account of the Publishers, so far as they relate to any matter arising out of this Agreement, shall be open to inspection by the Proprietor or the Proprietor's duly authorised representative by appointment at any reasonable time. The Proprietor shall bear the costs of any examination unless such examination reveals errors against the Proprietor amounting to 2% (two per cent) or more, in which case the costs of the examination shall be borne by the Publishers, and any errors in payment remedied within 14 (fourteen) days of such examination.

16.     If the Publishers fail to fulfil or comply with any of the provisions of this Agreement within one month after written notification from the Proprietor or his agent of such failure or if they go into liquidation other than a voluntary liquidation for purposes of reconstruction only, then and in either of these events this Agreement shall automatically terminate without prejudice to any claim which the Proprietor may have either for monies due and/or damages and/or otherwise.

CONFIDENTIAL - ATTORNEYS' EYES ONLY                                                                                                                BARTZ000005677

17. The Proprietor hereby authorizes and empowers the firm of Andrew Nurnberg Associates International Ltd. acting in conjunction with WRITERS HOUSE LLC, 120 Broadway, 22nd Floor, New York, NY 10271, USA to collect and receive all sums of money due under the terms of this Agreement and declares that their receipt shall be a good and valid discharge of all persons paying such sums of money due to him. All payments due under the terms of this Agreement shall be made by the Publishers by bank transfer for the gross amount, **free of all bank charges** to Andrew Nurnberg Associates Int.- Prague client, Barclays Bank PLC, Muswell Hill Branch, N8 9RJ London, United Kingdom, Sort Code: 20-58-51, Account No. 63351733, IBAN: GB21 BUKB 2058 5163 3517 33. The Publishers shall simultaneously provide a copy of the bank transfer advice note to Andrew Nurnberg Associates Prague.

18. This Agreement shall not be considered valid until signed by both parties. In the event of payment not being received within six weeks of receipt of fully-executed Agreement by the Publishers, the Agreement shall be automatically rendered invalid without further notice and without prejudice to any monies that may be due.

19. The Proprietor reserves the right to charge interest on any amounts overdue under the terms of this Agreement at 4% (four per cent) of the total amount due per month.

20. The Publishers shall not sell or allow for sale copies of the Work at a price below the published / recommended retail price within 12 months of the date of first publication without the written consent of the Proprietor. On remainder copies the Publishers shall pay a royalty of ten percent (10%) of the net receipts of any such sale. The Publishers shall inform the Proprietor in advance of plans to remainder and upon remaindering the rights shall without further notice revert to the Proprietor without prejudice to the Proprietor's claim for damages or to any monies paid or still due.

21. This Agreement shall be considered null and void and all rights to the Work licensed to Publisher herein shall automatically revert to Proprietor if and when the Work is out-of-print for more than 6 (six) months.

22. All rights shall revert automatically 6 (six) years from the date of this Agreement. Upon termination of this Agreement howsoever occurring all rights granted to the Publishers shall revert to the Proprietor and the Publishers shall immediately cease all publication and sale of any print and e-book edition of the Work.

23. This Agreement shall be governed by the laws and procedures of the State of New York. In the case of a breach of contract by the Publishers, the Proprietor may however elect to proceed against the Publishers according to the laws of the defendant´s home courts.

24. In the event that any taxing authority imposes any sales, consumption, value-added or similar tax on or in respect of the rights granted herein or in respect of any services to be provided by the Proprietor to the Publishers hereunder including, without limitation, the so-called Goods and Services Tax, such tax shall be borne by the Publishers who shall be solely responsible for the payment of the same and no amount payable by the Publishers to the Proprietor pursuant to this Agreement shall be subject to reduction, withholding, offset or deduction in respect of any such tax.

25. In performing its obligations under this Agreement, the Publishers will comply with all applicable laws and regulations, including anti-bribery and other anti-corruption laws.

FOR AND ON BEHALF OF THE PROPRIETOR ..... *Charles Graeber* (DocuSigned by: 559C7C7E61D44B5...)

FOR AND ON BEHALF OF THE PUBLISHERS ..... *Maty Bregant* (DocuSigned by: 4E279CE6CB8940C3...)

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000005678