# EXHIBIT 30

# Publishing Agreement

## SIMON & SCHUSTER, INC.
1230 Avenue of the Americas
New York, New York 10020
(212) 698-7000

*Scribner*

AGREEMENT dated June 15, 2012 between **SIMON & SCHUSTER, INC.** (the "Publisher"), 1230 Avenue of the Americas, New York, New York 10020, and

**KIRK W. JOHNSON** (the "Author"), whose agent is The Kneerim & Williams Agency, LLC, 90 Canal Street, Boston, Massachusetts 02114, Attention: Katherine Flynn.

In consideration of the premises hereinafter set forth, Publisher and Author hereby agree with respect to a work tentatively entitled:

### FUGUE STATE [TO BE A FRIEND TO FATAH]

(the "Work").

## I. Rights Granted

### The Grant and the Territory

1.    Author grants to Publisher during the full term of copyright and any renewal or extensions thereof the exclusive right to publish the Work including the right to exercise or license the rights set forth in Paragraph 2 throughout the world in the English language and all other languages. **All rights not specifically granted to the Publisher herein are reserved to the Author.**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Subsidiary Rights**

2.      (a) The Publisher shall have the right, in the territories set forth in Paragraph 1, to exercise the following rights in the Work or to license such rights upon such terms as Publisher deems advisable: book club rights; anthology/permission rights; second serial rights (*i.e.* publication after first publication in book form); abridgment/condensation and digest rights; large print rights; reprint and special edition rights; electronic text rights as defined in Paragraph 34(a)(i); audio rights as defined in Paragraph 34(b); foreign language rights; British Commonwealth rights; and first serial rights (*i.e.*, publication before first publication in book form). **The Author shall have the right to approve the text of any abridged, condensed or digest version of the Work published or licensed by the Publisher and the right to approve Publisher's exercise or license of the right to publish a low-cost hardcover edition of the Work, which approvals will not be unreasonably withheld. All other rights, including but not limited to calendar rights are reserved to the Author, but Publisher will have the first opportunity to acquire calendar rights on mutually satisfactory terms. If the Author and Publisher are unable in good faith to agree on terms for Publisher's acquisition of such rights within 30 days after they commence negotiations with respect thereto, then Author shall be free thereafter to offer such rights to other publishers.**

**(i) If the Publisher exercises or licenses the audio rights, the Author shall have the first opportunity to perform as the featured reader of the audio recording of the Work and, if the Author performs such services, the Publisher (or its licensee) shall pay the Author a flat fee therefor in an amount which shall be mutually agreed in good faith. If the Author is unwilling or unable to perform such services, or if the Publisher (or its licensee) in its reasonable discretion determines that the Author is not suitable to perform such services, then the Author shall have the right to approve the alternate reader of the audio recording, which approval will not be unreasonably withheld or delayed. Failure by the Author to respond to the Publisher's request for such approval within ten days after receipt of the same shall be deemed approval.**

(b) Any grant of first or second serial rights shall specifically prohibit the licensee from reproducing all or a substantial portion of the Work.

(c) Publisher may license others free of charge to publish the Work in Braille or other forms for the handicapped.

(d) Publisher may authorize copyright and permissions clearance organizations to act in full or in part on its behalf and Publisher shall account to the Author for royalties received from such organizations designated as arising from reproduction of the Work.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004876

(e) The party who controls motion picture, dramatic and television rights is authorized to publish and to license others to publish, in any form, excerpts, summaries and serializations, none to exceed 7,500 words in length, of motion picture, television, stage and other dramatizations based upon the Work for use in advertising and promotion of any such dramatization, and not for resale. The party who authorizes such publication shall take all steps necessary to protect the copyright in the Work.

(f) The Publisher shall notify the Author promptly after each disposition of rights, but inadvertent failure to do so will not be deemed a breach of this Agreement. The Publisher shall provide the Author with copies of any license agreements relating to the Work on Author's request therefor.

(g) Publisher shall have the right to license the rights set forth in subparagraph (a) above to Publisher's parent, subsidiaries, affiliates and divisions, provided that the terms for such license are no less favorable to the Author than the terms which Publisher in its reasonable judgment would accept from an unrelated third party licensee for the same rights. **The Author shall have the right to approve proposed licenses under this subparagraph 2(g), such approval not to be unreasonably withheld or delayed.**

**<u>Option</u>**

3.       The Author grants the Publisher an exclusive option to acquire Author's next (*i.e.*, written after the Work) full-length work **of non-fiction** for publication on mutually satisfactory terms. **The Publisher shall have a period of 30 days after submission of a proposal for such next work within which to make an offer. The Author shall notify the Publisher, when the option book is submitted, that said 30-day period is in effect. The Author shall not submit such proposal until after delivery and acceptance of the complete manuscript for the Work. If the Publisher does not make an offer within said 30-day period, or if the Author and Publisher are unable in good faith to arrive at a mutually satisfactory agreement within 15 days after Publisher makes an offer, then the Author shall be free thereafter to submit such next work to other publishers.** During the period of this option, the Author shall not submit such next work to other publishers, nor seek offers from or negotiate with others with respect thereto.

-3-

CONFIDENTIAL - ATTORNEYS' EYES ONLY

## II. Manuscript Delivery

### Delivery of the Manuscript, Related Materials and Permissions

4.     (a) The Author shall deliver to the Publisher one copy of the complete, legible, typewritten manuscript of the Work in the English language (double-spaced, properly margined), satisfactory to the Publisher in length, content and form, on or before September 1, 2012. The Work shall be approximately 90,000 words in length and is described as follows: a work of non-fiction providing a harrowing account of four Iraqis formerly employed by the United States who found themselves threatened by kidnapping and death after the Americans left, and the Author's own story of working in Iraq, the PTSD-induced depression that followed, and the Author's inspiring re-emergence as founder of The List Project, which has to date helped over 1,500 Iraqis resettle in the United States. The Author shall also deliver diskettes or other electronic format specified by Publisher containing the Work.

        (b) As part of the complete manuscript, the Author shall, at Author's expense, furnish to Publisher all photographs, drawings, charts, maps, illustrations, appendix, bibliography and other related material (herein "related materials") necessary in Publisher's **and Author's mutual** opinion for publication of the Work, all in content and form satisfactory to Publisher. If the Publisher decides there is to be an index in the Work the Publisher will be responsible for preparation of the index and shall charge such cost **(but not more than $1,500 of such cost)** against the Author's royalty account.

        (c) If permission from others is required for publication of any material contained in the Work or for exercise of any of the rights conferred by this Agreement, Author shall obtain such permissions at Author's expense, in form acceptable to Publisher, and shall deliver such permissions to the Publisher as part of the complete manuscript of the Work. Permissions shall cover all territories, rights and editions covered by this Agreement.

        (d) If the Author fails to deliver the related materials or required permissions, Publisher shall have the right, but not the obligation, to obtain the same and in such event the **reasonable** cost of such preparation shall be borne by the Author as follows: (i) Author shall pay such costs upon receipt of an invoice from the Publisher; or (ii) at Publisher's option, Publisher may charge such cost to Author's royalty account.

-4-

CONFIDENTIAL - ATTORNEYS' EYES ONLY

### III.     Payments to the Author

**Advance**

5.     **(a)** Publisher shall pay Author, as an advance against all amounts accruing to Author under this Agreement, the sum of $███,000, payable as follows:

> $██,000 on signing of this Agreement;
>
> $██,000 on delivery and acceptance of the complete manuscript, as satisfactory to the Publisher;
>
> $██,000 on Publisher's initial publication of the hardcover edition of the Work or 12 months after acceptance of the complete manuscript, whichever is earlier; and
>
> $██,000 on Publisher's initial publication of the paperback edition of the Work or 12 months after Publisher's initial publication of the hardcover edition of the Work, whichever is earlier.

**Conditional Advance**

**(b) In the event the Author's earnings from sales and licenses of the Work (net of returns and a reasonable reserve for returns) equal or exceed $███,000 within one year after Publisher's first publication of the Work then the Publisher shall pay the Author an additional advance against sums accruing to the Author hereunder in an amount equal to one-half of the royalty earnings that will accrue to the Author, pursuant to the terms of this Agreement, from the first printing of the trade paperback edition of the Work. Such additional advance shall be payable upon Publisher's first publication of the trade paperback edition of the Work.**

**Royalties**

6.     The Publisher shall pay the Author royalties on all copies of the Work sold by the Publisher, less returns, as follows:

(a) if published as a hardcover edition, 10% of the catalog retail price on the first 5,000 copies sold, 12½% of the catalog retail price on the next 5,000 copies sold, and 15% of the catalog retail price on all copies sold thereafter, subject to the exceptions set forth below;

(b) if published as a trade paperback edition, 7½% of the catalog retail price on all copies sold, subject to the exceptions set forth below;

-5-

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004879

(c) if published as a mass-market paperback edition, 8% of the catalog retail price on the first 150,000 copies sold, and 10% of the catalog retail price on all copies sold thereafter, subject to the exceptions set forth below;

(d) if published as an electronic text (e-book) or electronic **non-dramatic** audio (e-audio) edition, 25% of the net amount actually received from such sales. However, should marketplace conditions change such that said royalty rate is below prevailing market rates, Publisher agrees to renegotiate the royalty rate at Author's request at any time following three years after first publication of the e-book edition;

(e) if published as an abridged or unabridged **non-dramatic** audio edition intended primarily for sale in the trade retail marketplace, 5% of the catalog retail price on the first 10,000 copies sold, 6% of the catalog retail price on the next 10,000 copies sold, and 7% of the catalog retail price on all copies sold thereafter, subject to the exceptions set forth below; if published as an unabridged audio edition intended primarily for sale in the library and school marketplace, 10% of the net amount actually received from such sales;

(f) if published as a large print edition, 10% of the **actual** amount received from such sales, subject to the exceptions set forth below;

(g) if published as a low-cost hardcover edition, 10% of the **actual** amount received from such sales, subject to the exceptions set forth below;

(h) on copies of the hardcover and trade paperback editions sold for export to third parties or outside the United States by Publisher or its affiliates, royalties shall be calculated on the **actual** amount received from such sales **pursuant to the royalty schedule set forth in subparagraphs (a) and (b) above.** On copies of the mass-market paperback, large print and low-cost hardcover editions sold for export to third parties or outside the United States by Publisher or its affiliates, the royalty shall be 5% of the **actual** amount received from such sales. On copies of the audio edition sold for export to third parties or outside the United States by Publisher or its affiliates, the royalty shall be one-half the prevailing rate in subparagraph (e) above, calculated on the **actual** amount received from such sales;

(i) on mail order sales and other direct response sales (excluding such sales made from the Publisher's own websites), the royalty shall be 5% of the **actual** amount received from such sales, except that on mail order sales and other direct response sales of the audio edition, the royalty shall be one-half the prevailing rate in subparagraph (e) above, calculated on the **actual** amount received from such sales;

(j) on special discount sales (as defined in Paragraph 34(d)), the royalty shall be 5% of the **actual** amount received from such sales, except that on special discount sales of the audio edition, the royalty shall be one-half the prevailing rate in subparagraph (e) above, calculated on the **actual** amount received from such sales;

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004880

(k) on copies sold to book clubs on a royalty-inclusive basis, the royalty shall be 5% of the **actual** amount received from such sales, except that on copies of the audio edition sold to book clubs on a royalty-inclusive basis, the royalty shall be one-half the prevailing rate in subparagraph (e) above, calculated on the **actual** amount received from such sales;

(l) on remainder-in-place sales (as defined in Paragraph 34(e)) and remainder sales, the royalty shall be **10%** of the **actual** amount received from such sales, except that on remainder-in-place sales and remainder sales of the audio edition, the royalty shall be one-half the prevailing rate in subparagraph (e) above, calculated on the **actual** amount received from such sales and, except that no royalty shall be payable on copies of the Work sold at a discount of 85% or more from the catalog retail price.

### Proceeds on License of Subsidiary Rights

7.    The Publisher shall pay the Author 50% of the proceeds received by Publisher from the sale or license of subsidiary rights, except as follows:

| Type of Right | Author's Share | Publisher's Share |
|---|---|---|
| first serial rights for all editions of the Work except the audio edition | 90% | 10% |
| British Commonwealth rights for all editions of the Work except the audio edition | 80% | 20% |
| foreign language rights for all editions of the Work except the audio edition | 75% | 25% |

In calculating the proceeds on disposition of the subsidiary rights, Publisher may deduct from the gross amount received any third party agent's commission which may be paid for services rendered in connection with such disposition, and any bank fees or other monetary transfer charges incurred by the Publisher in connection with or by reason of such sale or disposition.

### Special Royalty Provisions

8.    With respect to each edition of the Work published hereunder, the following shall be applicable:

(a) no royalty shall be payable on copies damaged or destroyed or on copies furnished gratis for review, publicity, promotion, sample or similar purposes;

-7-

CONFIDENTIAL - ATTORNEYS' EYES ONLY

(b) no royalty shall be payable on sales by Publisher to its parent, subsidiaries, affiliates, or related divisions for resale, but any resale thereby shall be deemed a sale by Publisher subject to the applicable royalty herein provided;

(c) in some instances Publisher prints on the jackets and/or covers of its books a suggested cover price that is higher than its catalog retail price. In such instances, where the royalty is based on the retail price, the catalog retail price, not the suggested cover price, shall be the basis for the computation. The difference between the two prices enables the retailer to recoup its freight costs;

(d) when the Publisher in its sole discretion determines that copies of the Work are not readily salable at regular prices within a reasonable time, the Publisher may remainder copies of the Work **(but not earlier than 12 months from the publication date unless it is a remainder-in-place, which may occur at any time)** or dispose of such copies as surplus at the best price obtainable. Publisher shall make no remainder sale (other than a remainder-in-place sale) without first offering copies to the Author at the estimated remainder price, provided, however, that inadvertent failure to offer such copies to the Author will not be deemed a material breach of this Agreement;

(e) any advance royalties or other sums paid to or on behalf of the Author under this Agreement or otherwise, and any amounts due from the Author to the Publisher **under this Agreement,** may be applied in reduction of any amounts payable to the Author under this Agreement;

(f) in the event of any overpayment by Publisher to Author, Publisher may, in addition to any other remedies available to it, recoup such overpayment from any sums due to Author under this Agreement;

(g) any amounts payable to the Author hereunder shall be subject to such reasonable reserve for returns of copies of the Work as the Publisher shall establish in its reasonable discretion. **Following the fourth full accounting period after publication, Publisher's reserve for returns shall not exceed 20% of the total copies theretofore shipped and not returned, except that (i) after each subsequent substantial printing, the reserve may be reasonably increased above 20% for four additional accounting periods, (ii) Publisher may maintain a reserve in excess of 20% which reserve is equal to the actual percentage of returns in the preceding period or consecutive periods, and (iii) Publisher may maintain a higher reserve for any period preceding or during which it is expected that the Work will be or is out of print or is remaindered. Reserves shall be maintained separately with respect to each edition (hardcover, paperback, etc.);**

(h) if the Publisher exercises rights for which royalties are not specifically set forth in this Agreement, then royalties shall be paid to the Author at rates to be negotiated in good faith by the Author and Publisher.

-8-

## Royalty Statements

9.    (a) Publisher shall render royalty statements and make accounting and royalty and other payments to the Author (i) in February for the preceding period April 1 to September 30, and (ii) in August for the preceding period October 1 to March 31. Publisher may from time to time change such accounting periods provided no longer than six months elapses between any two accountings to the Author. If for any royalty period the current period total activity in the Author's account for the Work is less than $100, Publisher may defer the rendering of payment until such royalty period as the cumulative activity since the last statement exceeds such amount.

(b) Royalty statements shall state the number of copies sold and returned during the period covered and the reserve for returns being held by the Publisher. If the Author so requests in writing, the Publisher shall, within 60 days after its receipt of such request, advise the Author in available detail of the number of copies printed, sold, and given away during the current period covered by the last royalty statement rendered to the Author, as well as the approximate number of salable copies on hand at the end of said period.

(c) Statements rendered hereunder shall be final and binding upon the Author unless objected to in writing, setting forth the specific objections thereto and the basis for such objections, within two years after the date the statement was rendered.

**(d) When the Publisher has disposed of any subsidiary rights in the Work, any proportionate share of the proceeds due to the Author in accordance with Paragraph 7, less any unearned advances and after the Publisher's allowances for reserve for returns, shall be paid at the time the next succeeding royalty statement is rendered; provided, however that with respect to any advances actually received by Publisher in connection with the disposition of such subsidiary rights where the Author's share is $1,000 or more, if the Author makes a written request for immediate payment after such a disposition, the Publisher shall pay the Author's share of such advance received by Publisher (after such deductions) within 30 days after receiving such written request.**

## Examination of Publisher's Books and Records

10.    The Author or the Author's representative may, upon written request not more than once each year, conduct a reasonable examination of the books and records of the Publisher insofar as they relate to the Work. Such examination shall be on Publisher's premises at a time convenient to Publisher, but no later than 90 days after Author's request therefor, and shall be at Author's expense **unless errors of accounting amounting to 5% or more of total sums accrued to the Author are found to the Author's disadvantage, in which case the reasonable cost of the examination shall be borne by the Publisher and Publisher shall promptly remit to the Author any sums due.**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004883

## IV.    Failure to Deliver the Manuscript; Acceptance of the Manuscript

### Failure to Deliver the Manuscript

11.    Timely delivery of the Work, satisfactory to the Publisher in length, content and form, is essential to the Publisher and is of the essence of this Agreement. If Author fails to deliver the complete manuscript of the Work, satisfactory to the Publisher in length, content and form, within **30 days after** the time specified, the Publisher shall have the option to give the Author a notice in writing terminating this Agreement, and in such event the Publisher may then recover and the Author shall repay **within a reasonable period of time** all amounts advanced to the Author.

### Extension of Time to Deliver

12.    **Subject to the provisions of Paragraph 4(a) above,** Publisher may in its discretion extend for such period as in its judgment is appropriate, or refuse to extend, Author's time to deliver the complete manuscript. Any extension of the delivery date must be in writing signed by the Publisher. In determining whether to grant such extension and/or the length thereof, Publisher may consider such factors as Publisher deems relevant, including without limitation, Author illness.

### Acceptance of Manuscript

13.    (a) The Publisher shall not be obligated to accept or publish the Work if in its sole judgment the Work is not acceptable to it. If the Author delivers a manuscript of the Work within the time specified, in what the Author represents to be its complete and final form, the Publisher shall, within 90 days after its receipt thereof, determine whether the Work is acceptable to it. **If the Publisher determines that the Work is not acceptable,** Publisher **shall** request in writing that Author make revisions, changes or supplements ("revisions") thereto. If Publisher requests one or more revisions in the manuscript as submitted or as thereafter revised, Publisher's time to determine the acceptability thereof shall be extended for a period of **45** days after resubmission by the Author, or **45** days after Publisher's receipt of written notice by Author that no further revisions will be made. Author will make revisions as promptly as possible after Publisher's request therefor **on a revision schedule to be mutually agreed by Author and Publisher**. No request for revisions shall be deemed to obligate Publisher to accept the final revision or to constitute a conditional acceptance thereof. If the Publisher in its sole discretion determines to submit the manuscript to a legal review, the Author shall cooperate with the Publisher or Publisher's counsel in such review and notwithstanding anything to the contrary in this Agreement the time for Publisher to accept or reject the Work shall be extended to 30 days after completion of the legal review.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004884

(b) Acceptance of the manuscript shall be made by written notice signed by an authorized signatory of the Publisher. Payment of an advance installment, payable by express provision hereof upon acceptance of the manuscript, shall constitute written notice of acceptance unless such payment is accompanied by a notice to the contrary.

(c) If the Publisher fails to accept the complete manuscript or revised complete manuscript within the time periods provided in subparagraph (a) above, the Author shall thereafter have the right to notify Publisher in writing that unless the manuscript is accepted or written request for revisions provided within **10** business days after the delivery of such notice, the manuscript will be deemed unacceptable and this Agreement shall terminate in accordance with the provisions of subparagraph (d) below. **However, in such event, the 18-month time period set forth in subparagraph (e) below shall not apply, such that the Author's repayment shall be limited entirely to repayment from the first (and all) proceeds of any contracts with others concerning the Work.**

(d) If the complete manuscript or revised complete manuscript delivered by the Author is not, in Publisher's sole judgment, acceptable to the Publisher, the Author shall repay**, in accordance with the provisions of subparagraph (e) below,** all sums advanced to the Author hereunder and upon such repayment this Agreement shall terminate.

(e) In the event of termination of this Agreement because the complete manuscript or revised complete manuscript is unacceptable to the Publisher, the Author or the Author's duly authorized representative shall make every effort to sell the Work elsewhere, and the Author shall be obligated to repay all sums advanced hereunder; but for a period of 18 months after termination of this Agreement such obligation shall be limited to repayment from the first (and all) proceeds of any contracts with others concerning the Work or any rights thereto, including, without limitation, rights listed in Paragraph 2 above. Author hereby transfers and assigns to Publisher, as security for the repayment of any advances which may become repayable pursuant to this paragraph, any and all monies which may hereafter become due or owing to Author from other persons or entities as a result of Author's rights with respect to the Work, and Author hereby authorizes Publisher to apply such monies as and when received in liquidation of Author's obligation to repay such advances, until such obligation shall have been fully paid. Author hereby authorizes such other person or entity to give full force and effect to this assignment, and hereby releases and discharges such other person or entity from any and all liability to Author for any and all payment or payments made to Publisher pursuant to this paragraph. At the end of the 18-month period any sums that have not been repaid or recovered from other sums due to the Author shall become immediately due and payable to the Publisher.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004885

## V. Production and Publication of the Work

### Correction of Proofs

14.    Publisher shall furnish Author with one set of galleys or other first proofs and, at its option, subsequent proofs, and the Author shall return each set of proofs with Author's corrections to the Publisher within 21 days of receipt thereof. The Publisher also shall proofread the proofs. If the Author shall fail to return the corrected proofs within the 21-day period herein specified, the Publisher may publish the Work without the Author's approval of the proofs - provided, however, that if, because of illness or any other factor beyond the Author's control, the Author informs the Publisher that Author is unable so to return the corrected proofs, Author's time for correcting such proofs shall be extended for another 21-day period, and after that period the Publisher may publish the Work without the Author's approval of the proofs.

### Cost of Author's Alterations

15.    If, in the correction of proofs, the Author requests changes from the text of the manuscript, the Author shall bear the cost of such changes over 15% of the original cost of composition, as follows: (a) Author shall pay such costs upon receipt of an invoice from the Publisher; (b) Publisher may withhold a portion of any advances payable to the Author under this Agreement and deduct such costs from said advances; or (c) at Publisher's option, Publisher may charge such cost to Author's royalty account, provided however that if the advance payable to the Author under this Agreement is unearned one year after publication of the Work, then the Author will reimburse Publisher for such costs upon receipt of an invoice from Publisher. At Author's request Publisher shall submit an itemized statement of such charges and shall make available corrected proofs for the Author's inspection at the Publisher's office.

### Publication

16.    (a) The Publisher shall publish the Work in book form, **initially under its *Scribner* imprint,** within 18 months after acceptance of the manuscript therefor. Publication shall be in any edition and **(except as provided in the preceding sentence)** under any imprint of Publisher or its affiliates that Publisher elects. **The Publisher currently intends to publish the Work initially in a hardcover edition. If the Publisher is considering first publishing the Work in an edition other than hardcover, the Publisher shall meaningfully consult with the Author, but final decision shall rest with the Publisher.**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004886

(b) Publisher shall have the right to use the name, pseudonym, **approved** portrait and **approved** picture of and **approved** biographical material concerning Author in and on the Work, in the advertising, publicity and promotion thereof, and in connection with any rights granted hereunder. Author shall furnish Publisher, free of charge, original photographs of Author which Publisher may use for such purposes without additional payment to or permission from any third party.

(c) The title of the Work as set forth on page 1 may be changed by mutual agreement of the Author and the Publisher.

(d) The format, imprint, style of printing and binding, and all matters relating to the manufacture, sale, distribution and promotion of the Work shall be determined at the sole discretion of the Publisher. **The Publisher will consult with the Author on the jacket design and copy of any edition of the Work published by the Publisher, but final decision in each case shall belong to the Publisher.**

(e) The Publisher may publish and authorize others to publish extracts of the Work containing not more than one chapter for promotion of the Work, without compensation therefor. If compensation is received it shall be shared equally by Author and Publisher.

(f) **No advertising shall be included in any edition of the Work, whether by Publisher or its licensees, without Author's written consent. Such consent may be withheld in Author's sole discretion and Author may require that a share of the advertising proceeds be paid to Author as a condition of Author's consent. Any license granted by Publisher to reprint the Work in book club or paperback editions, or in any medium except newspapers and periodicals, shall explicitly prohibit the licensee from inserting advertisements in its edition without the written consent of the Author.**

(g) **The Publisher shall, within a reasonable time following the first publication of the Work, return to the Author the manuscript and all materials delivered by the Author to the Publisher in connection with the Work.**

(h) **At Publisher's request, the Author shall use his best efforts to be available for and to travel on a promotional and publicity tour, including television appearances, radio and press interviews and personal appearances for the Work at the time of the first publication of the Work in the United States. Publisher shall be responsible for payment of the expenses of any such tour, including airfares and hotel expenses for travel outside the Author's area of residence (or then current location) and for all meal and transportation expenses in connection with the tour.**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004887

## Copyright

17.    (a) The Publisher shall identify the Author as the owner of the copyright in the Work and **shall** register such copyright in the United States in the name of the Author.

(b) The Publisher shall identify the Author as the owner of the © copyright in the audio edition of the Work. The Publisher shall be identified as the owner of the (P) copyright in the audio edition of the Work. Author hereby assigns, and Publisher shall own, all right, title and interest in and to the audio edition of the Work and all additions to, alterations of or revisions of the audio edition, and all drafts, notes, scripts, voice recordings and musical recordings related thereto.

(c) The Publisher shall print in each copy of each edition of the Work published by it any notice required to comply with the applicable copyright laws of the United States and the provisions of the Universal Copyright Convention and the Berne Copyright Convention.

(d) Any agreements made by the Author or by the Publisher to dispose of any rights in the Work shall require the licensee or grantee to take all necessary and appropriate steps to protect the copyright in the Work. Whichever party controls first serial rights in the Work will use best efforts to require any licensee of such rights to include an acknowledgement accompanying the published excerpt stating that the excerpt is from an upcoming work to be published by the Publisher and setting forth the title of the Work, Author and Publisher by name.

(e) The Publisher may take such steps as it deems appropriate to copyright the Work in countries other than the United States, but the Publisher shall be under no obligation to procure copyright in any such countries, and shall not be liable to the Author for any acts or omissions by it in connection therewith. The Author may copyright the Work in any foreign country if the Publisher fails to take steps to obtain such a copyright within 30 days after receiving a written request from the Author to do so.

(f) Author hereby appoints Publisher to be Author's attorney-in-fact to execute and to file any and all documents necessary to record in the Copyright Office the assignment of exclusive rights made to Publisher hereunder.

## No Obligation to Publish

18.    Notwithstanding anything contained herein to the contrary, the Publisher shall not be obligated to publish the Work **if, in the reasonable judgment of its own or outside counsel**, whether before or after acceptance thereof, the Work contains libelous or obscene material, or its publication would violate the right of privacy, common law or statutory copyright, or any other right of any person **and the Author has failed to make appropriate revisions requested by the Publisher in its counsel's reasonable judgment, or to provide substantiation to the reasonable satisfaction of the Publisher's counsel.** In such event, Publisher shall be entitled on demand to the

-14-

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004888

return of all monies advanced to the Author hereunder, and to terminate this agreement. Notwithstanding any request by Publisher for change or substantiation, nothing in this Agreement shall be deemed to impose upon the Publisher any duty of independent investigation or to relieve the Author of any of the obligations assumed by Author hereunder, including, without limitation, the ongoing validity of Author's warranties and representations which shall apply to all material in the Work, whether or not changed at the request of Publisher's legal counsel.

### Delays in Publication

19.     (a) The Publisher, in its sole and absolute discretion, shall have the right to reschedule publication of the Work beyond the time set forth in Paragraph 16(a) for a reasonable time **not to exceed four months**. If publication of the Work is delayed in the absence of excusable circumstances the Author's sole and exclusive remedy shall be to give the Publisher a notice in writing, stating that if the Publisher fails to publish the Work within 90 days after the date of such notice, then all of the Publisher's rights in and to the Work shall terminate at the end of such 90-day period; and if, in such event, the Publisher shall fail to publish the Work within such 90-day period, all of the Publisher's rights in and to the Work shall terminate and revert to the Author, and the Author shall be entitled, as liquidated damages and in lieu of all damages and remedies, legal or equitable, to retain all payments theretofore made to Author under this Agreement. **The Publisher shall return the manuscript and all materials related to the Work to the Author within 30 days of such termination.**

        (b) If publication is delayed beyond the time set forth in Paragraph 16(a) because of acts or conditions beyond the control of the Publisher or its suppliers or contractors, including (by way of illustration and not by way of limitation) war, shortages of material, strikes, riots, civil commotions, fire or flood, the publication date shall be extended to a date six months following removal of the cause of the delay.

### Out of Print Termination

20.     If, at any time after the expiration of two years from the publication date, the Publisher allows all of its editions of the Work to go out of print and such status continues in effect for six months after the Author has given Publisher written notice ("Reversion Notice") to put the Work back into print, and if there is no English language reprint edition authorized by Publisher available or contracted for within such six-month period, then the Author may by a notice in writing terminate this Agreement subject to any licenses previously granted by Publisher (and any renewals or extensions thereof) and Publisher's right to continue to share in the proceeds therefrom. **All other rights in the Work (*i.e.*, other than those subject to said prior licenses) shall revert to the Author.** In the event of such termination the Author shall have the right to purchase any available plates or film of the Work at cost, **excluding overhead,** and/or any remaining copies or sheets of the Work at cost. If the Author does not purchase such plates, film, copies or sheets, then the Publisher may dispose of them at any price and retain the proceeds of

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004889

such sale. The Publisher is under no obligation to retain any such plates, film, copies or sheets. The Work shall not be deemed out of print as long as it is available from the Publisher **in the United States through normal wholesale or retail channels** in any edition, including electronic text editions. If, however, six months after Author's Reversion Notice, the Work is only available from the Publisher in an electronic text edition or by means of print-on-demand technology, the Author may by notice in writing terminate this Agreement in the manner set forth above provided in the prior 12 months Publisher's revenue from its exercise or license of rights in the Work (excluding revenue derived from the license of book club rights, foreign language rights and British Commonwealth rights) was $1,000 or less.

## VI.    Other Rights, Undertakings and Obligations

### Author's Rights

21.    All rights not expressly granted by the Author to the Publisher are reserved to the Author. The Author shall not exercise or dispose of any reserved rights in such a way as substantially to destroy, detract from, impair or frustrate the value of any rights granted herein to the Publisher, nor shall the Author publish or permit to be published **for a period of two years after publication of the Work** any book **(other than a sequel to the Work which does not otherwise consist of any material contained in the Work) intended for the same audience and** based substantially on subject matter, material, characters or incidents in the Work without the written consent of the Publisher.

### Author's Agent

22.    **All statements and sums of money due and payable to the Author under this Agreement shall be rendered and paid to the Author's agency (the "Agent"), The Kneerim & Williams Agency, LLC, 90 Canal Street, Boston, Massachusetts 02114 (Attention: Katherine Flynn) which is hereby authorized to collect and receive such monies and the Author declares that the receipt thereof shall be a good and valid discharge in respect thereof and the said Agent is hereby empowered to act in the Author's behalf in all matters arising out of this Agreement. The designation of the Agency may be terminated only upon written notice to the Publisher signed jointly by the Author and the Agency.**

### Representation by Single Author

23.    When there is more than one author, any one may be designated in writing to act on behalf of all the authors jointly, and the Publisher may rely on the acts of the author so designated as representative of and binding upon all authors; and in the absence of such designation, the Publisher may deal with any one of the authors as the agent and representative of all, and may

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004890

rely on the acts of such author-representative as binding on all the authors. When there is more than one author, unless this Agreement specifies otherwise or until receipt by the Publisher of contrary instructions, the Publisher may assume that all authors share equally in proceeds payable hereunder and may issue separate checks in equal amounts to each author severally.

### Author's Warranties

24.    Author warrants and represents that:

(a) Author is the sole author and proprietor of the Work;

(b) Author has full power and authority to make this Agreement and to grant the rights granted herein, and Author has not previously assigned, transferred or otherwise encumbered the same; and Author has no prior agreement, commitment or other arrangement, oral or written, to write or participate in writing any other book-length work and will enter into no such agreement, commitment or other arrangement until after delivery and acceptance of the Work;

(c) the Work has not been previously published;

(d) the Work is not in the public domain;

(e) the Work does not infringe any statutory or common law copyright or any proprietary right of any third party;

(f) the Work does not invade the right of privacy of any third person, or contain any matter libelous or otherwise in contravention of the rights of any third person; and, if the Work is not a work of fiction, all statements in the Work asserted as facts are true or based upon reasonable research for accuracy;

(g) the Work is not obscene and contains no matter the publication or sale whereof otherwise violates any federal or state statute or regulation thereunder, nor is it in any other manner unlawful, and nothing contained in the Work shall be injurious to the health of the user;

(h) the Work will be Author's next **book-length** work (whether under Author's name or otherwise), and that Author will not publish or authorize publication of any other **book-length** work of which Author is an author or co-author until six months after publication of the Work.

Each of the foregoing warranties and representations shall survive the termination of this Agreement. **Warranties are confined to this Agreement only and do not extend to subsequent or previous agreements between Author and Publisher.**

-17-

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004891

Each of the foregoing warranties and representations is true on the date of the execution of this Agreement and shall be true on the date of publication of the Work, and at all intervening times. The Publisher may rely on the truth of said warranties and representations in dealings with any third party in connection with the exercise or disposition of any rights in the Work. The Publisher shall be under no obligation to make an independent investigation to determine whether the foregoing warranties and representations are true and correct; and any independent investigation by or for the Publisher, or its failure to investigate, shall not constitute a defense to the Author in any action based upon a breach of any of the foregoing warranties.

### Indemnity

25.    (a) The Author shall indemnify and hold the Publisher harmless against any loss, liability, damage, cost or expense (including reasonable **outside** attorneys' fees) arising out of **the breach or alleged breach of any of the Author's warranties set forth in Paragraph 24 of this Agreement. The Author may join in the defense of any such claim with counsel of Author's own selection at Author's own expense. The Publisher shall have the right, subject to the approval of the Author, such approval not unreasonably to be withheld, to settle such suit, proceeding, claim or demand on such terms as it deems advisable. If within such time as the situation may allow, the Publisher shall request the Author to consent to the proposed settlement and the Author shall neglect or decline to do so, the Author shall upon written notice by the Publisher immediately undertake to continue the defense at Author's sole expense and shall provide the Publisher with security in the form of a surety company bond in the amount as shall under all the circumstances be in the Publisher's opinion adequate. In the event the Author fails to so assume the defense, and to furnish such bond, the Publisher shall have the right to settle such matter upon terms Publisher thinks advisable or in its discretion to continue the defense thereof, and the Author's indemnity shall be applicable in either such event, provided, however, that nothing contained herein shall inhibit the Publisher from settling any such suit, proceeding, claim or demand against it at its own cost and expense.**

(b) Prompt notice of any suit, proceeding, claim or demand brought or made against the Publisher or Author shall be given to the Author or Publisher respectively.

(c) Whenever any suit, claim or demand as to which Author's indemnity applies is brought or made against the Publisher, the Publisher may withhold payments due to the Author under this Agreement, or any other agreement between the Author and the Publisher, and apply the payments so withheld to Author's indemnity obligations hereunder. **Any monies withheld hereunder shall be reasonably related to the size of the claim, the likelihood of success, the probable damage award and the anticipated expenses of the defense (including reasonable attorney's fees). In the event that Publisher shall have been notified of a claim or demand, if said claim or demand shall not result in a suit or proceeding within one year of notice to the Publisher, and Publisher shall have incurred no costs therefor, Publisher shall release the withheld funds, except that Publisher may in its sole discretion continue to withhold said**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004892

funds if (a) Publisher has a reasonable basis to believe that a suit or proceeding shall be commenced within a reasonable time thereafter or (b) a suit or proceeding is commenced after any release of withheld funds.

(d) Author shall be insured under any Publisher's liability policy which covers claims for libel and other forms of defamation, invasion of privacy or publicity and infringement of copyright or trademark arising from publication of the Work, to the extent such policy is valid and collectible. In connection with such coverage, with respect to all judgments, settlements and costs of defense, including **outside** attorneys' fees and other costs of claims covered by the policy, the Publisher and the Author shall share equally all costs not paid by the insurance company, provided however that Author's share of such costs will not exceed Author's total earnings with respect to the Work. For purposes of this Paragraph, "Author's total earnings" shall mean all advances paid or payable to the Author with respect to the Work plus all further sums earned by Author from Publisher's sales and licenses of the Work. Publisher shall retain counsel to represent Publisher and Author in any proceeding brought with respect to all such claims and shall control the defense of such claims, and Author shall cooperate fully with Publisher and said counsel in such defense. Notwithstanding the foregoing, Author shall be solely responsible for the cost of counsel separately retained by the Author for any reason and for judgments, settlements and costs of defense, including all **outside** attorneys' fees, attributable to a willful or reckless breach of this Agreement by Author, and for all costs not paid by the insurance company in any claim involving a finding of any copyright infringement or in the settlement of such a claim which Publisher in its good faith judgment determines is necessary to avoid such a finding. Nothing herein shall limit the Author's liability with respect to claims which are not covered by insurance or with respect to costs which exceed the limits of the insurance policy.

(e) If any suit, claim or demand is brought or made as to which Author's indemnity applies which is not covered by Publisher's liability policy, the Publisher may elect (i) to undertake the defense thereof, or (ii) to notify the Author to undertake the defense. If the Publisher does so notify the Author, the Author shall undertake such defense; and in such cases the Publisher may, at its option, join in the defense. In all the foregoing events the cost and expense of any defense shall be borne by the Author.

## Revised Editions

26.     **Deleted.**

## Tie-In Editions

27.     Author shall use best efforts to obtain for Publisher the right to publish tie-in editions in connection with any motion picture, television or other dramatic versions of the Work, and to use the title, artwork, photographs, and other material related to any such version and appropriate identification and credits therefrom in Publisher's editions of the Work.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004893

**Care of Property**

28.    Publisher shall not be responsible for loss or damage to any property of Author in Publisher's possession or that of its independent contractors or to anyone to whom delivery is made with Author's consent. Author shall retain copies of any such property and, in the case of photographs, the negative for each photograph furnished.

**Breach by Publisher**

29.    Except as otherwise specifically provided in this Agreement, if the Publisher shall commit a material breach of this Agreement and shall fail to remedy the breach within **30** days after receiving a written notice from the Author requesting the Publisher to remedy such breach, the Author may by a notice in writing (a) revoke the Publisher's right to publish the Work, if it has not been published at such time; (b) require the Publisher to cease further publication of the Work, if it has been published at such time, but in such event the Publisher shall be permitted to sell all copies of those editions of the Work which have already been printed or are in the process of being printed; and (c) revoke the grant to the Publisher of such of the subsidiary rights as the Publisher has not already exercised or disposed of. In such event the Author shall have the right to purchase any available plates or film of the Work at cost, and/or remaining copies or sheets of the Work already printed at the Publisher's manufacturing cost. If the Author does not purchase such plates, film, copies or sheets, the Publisher may dispose of them at any price and retain the proceeds of such sale. The Publisher is under no obligation to retain any such plates, film, copies or sheets. Any right of the Author pursuant to Paragraph 10 shall survive such termination. **In addition to the remedies set forth in this paragraph, the Author shall have the right to pursue other remedies at law and in equity for a breach of this Agreement.**

**Free Copies for Author, Purchases by Author**

30.    (a) The Publisher shall present the Author with **40** free copies, **and the Author's agent with 10 free copies,** of each edition of the Work published by the Publisher, upon publication, except as provided in (b) below. The Author shall have the right to purchase additional copies for Author's own use, and not for resale, at a 50% discount from the catalog retail price. If the Author wishes to purchase copies of the Work for resale, Author shall negotiate the terms of such purchase with Publisher's Special Sales Department, it being understood that any resale of the Work by Author shall be outside regular trade channels.

(b) The Publisher will at Author's request present the Author with two free copies of the Work produced by means of print-on-demand technology, and will at Author's request present the Author with one free copy of the e-book edition of the Work.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004894

**Publisher's Trademarks**

31.    Nothing in this Agreement (including but not limited to the rights of Author to purchase books and plates on termination) shall give Author any right in or to any trademark, trade name, logo, imprint or other identification now or hereafter used by Publisher, nor shall Author use any such identification during the term of this Agreement or thereafter, except that Author may dispose of copies of the Work purchased hereunder notwithstanding that such identification may appear thereon when purchased.

**Third Party Copyright Infringement**

32.    If during the existence of this Agreement the copyright, or any other right in respect to the Work, is infringed upon or violated, the Publisher may, at its own cost and expense, take such legal action, in the Author's name if necessary, as may be required to restrain such infringement and to seek damages therefor. The Publisher shall not be liable to the Author for the Publisher's failure to take such legal steps. If the Publisher does not bring such an action, the Author may do so in Author's own name and at Author's own cost and expense. **If the parties proceed jointly or if the Publisher proceeds alone in such action,** money damages recovered for an infringement shall be applied first toward the repayment of the expense of bringing and maintaining the action, and thereafter the balance shall be divided equally between the Author and Publisher. **If the Author proceeds alone in such action, money damages recovered shall belong solely to the Author, but the Author shall reimburse the Publisher, out of such recovery, for any direct costs and expenses the Publisher incurred in connection therewith.**

**Execution of Documents**

33.    Each party hereto shall, upon request of the other, execute such documents as may be reasonably necessary to confirm the rights of the other party in respect of the Work or to carry out the intention of this Agreement.

## VII.    Definitions

**Definitions**

34.    As used in this Agreement:

(a)    (i) "Electronic text rights" shall mean the exclusive right to publish, and to authorize others to publish, the text of the Work (including any photographs and illustrations in the Work) in whole or in part, in visual form for reading, by any electronic, electromagnetic or

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004895

other means of storage, retrieval, distribution or transmission now known or hereafter devised, but excluding any other text rights provided for herein (an "electronic edition"), **provided, however, that such electronic text rights shall not include performances by actors or animated characters taking the parts of characters in the Work**. In the exercise of the electronic text rights, the Publisher shall not add any textual, visual or other material to the Work, delete any material from or otherwise edit the Work, or couple any electronic edition of the Work with other works without the approval of the Author, such approval not unreasonably to be withheld or delayed. Any license of electronic text rights in the Work shall provide that any additions to, deletions from, or other editing of the text of the Work by the licensee, and the coupling of any electronic edition of the Work with other works, shall be subject to the approval of the Author, such approval not unreasonably to be withheld or delayed.

(ii) "Electronic adaptation rights" shall mean the exclusive right to adapt and publish, and to authorize others to adapt and publish, the Work or any portion thereof for one or more "electronic versions." As used herein, an "electronic version" shall mean an adaptation of the Work incorporating elements from sources other than the text of the Work including without limitation still photographs and illustrations, video footage, sound and other text, for publication by any electronic, electromagnetic or other means of storage, retrieval, distribution or transmission now known or hereafter devised, but excluding electronic text rights, audio rights, motion picture rights and television rights (provided that the exercise of any of the foregoing rights, if reserved by the Author or licensed to a third party, shall not preclude the exercise of the electronic adaptation rights). Electronic adaptation rights are reserved to the Author. The Publisher shall have the first opportunity to acquire electronic adaptation rights on mutually satisfactory terms. If the Author and Publisher are unable in good faith to agree on terms for Publisher's acquisition of such rights within 30 days after they commence negotiations with respect thereto, then the Author shall be free thereafter to offer all or some of such rights to other parties. If the Publisher does not acquire such rights, if the Author or a licensee of the Author wishes to use all or part of the text of the Work in an electronic version, the Publisher shall promptly authorize such use on reasonable terms and conditions, provided in the Publisher's reasonable judgment such text is not the predominant feature of such electronic version.

(b) "audio rights" shall mean the exclusive right to use or adapt, and to authorize others to use or adapt, the Work or any portion thereof as the basis for one or more non-dramatic audio recordings through any method of recording or transmission now known or hereafter devised, including, without limitation, copying or recording by phonographic, magnetic, laser, electronic or any other means and whether on phonograph records, audio cassettes, audio discs or any other human or machine-readable medium and the broadcast or transmission thereof, but excluding all uses encompassed in motion picture, dramatic, television, radio and allied rights;

(c) a "sale," "disposition" or "grant" of rights shall include an assignment, transfer or license of the rights referred to or of any interest or option relating to such rights.

(d) "special discount sales" shall mean sales made in the United States outside regular trade channels or direct-to-the-consumer through Publisher's own websites at a discount of more than 50% from the catalog retail price. With respect to special discount sales to organizations,

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004896

Publisher may imprint the trade name, trademark, logo, imprint and/or other identification of such organization on such copies in addition to or in lieu of Publisher's trade name, trademark, logo, imprint and/or other identification. **The Author shall have the right to approve any product or service in connection with a premium sale of the Work, such approval not unreasonably to be withheld or delayed;**

(e) "remainder-in-place sales" shall mean sales made in the United States in regular trade channels at regular trade discounts, for which a 50% credit to the bookseller is subsequently given by Publisher.

## VIII.  Miscellaneous Provisions

### Assignment

35.    This Agreement shall be binding upon and inure to the benefit of the executors, administrators and assigns of the Author, and upon and to the successors and assigns of the Publisher. The Author shall not assign this Agreement without the prior written consent of the Publisher, except that Author may assign sums due and payable to the Author hereunder, provided that such assignment shall not be binding upon Publisher unless and until Publisher shall have given written acknowledgement of its receipt thereof and such assignment shall not in any event affect Publisher's rights or Author's obligations hereunder. **Publisher may assign this agreement to any party accepting the obligations hereof and acquiring all or a substantial portion of the business of Publisher, or to any subsidiary, affiliate or parent of Publisher or in a reorganization. Any other assignment of this agreement by Publisher shall be subject to the Author's prior written approval, such approval not unreasonably to be withheld.** Any purported assignment in violation of this provision shall be void.

### Effectiveness

36.    This Agreement shall be binding upon the Publisher only when it has been signed by the Author and by an authorized officer of the Publisher.

### Jurisdiction

37.    Exclusive jurisdiction for the determination of any dispute solely between or among parties to this Agreement is hereby vested in the federal and state courts sitting in New York County, New York, to which each party irrevocably submits. In addition to service of process by any other means provided at the time by law, each party consents to service of process on him, her or it, as the case may be, by certified mail, first class postage prepaid, return receipt requested, or by overnight courier service provided a signed receipt is obtained, in each case

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004897

addressed (i) to the party to be served at the address to which notices may be given pursuant to Paragraph 38 of this Agreement or (ii) to that party's actual residence or place of business. The refusal to accept process so served, including the failure to claim certified mail in the custody of the Postal Service, shall not invalidate such service if a separate copy of the process is sent by first class mail, postage paid, to the same address.

## Notices

38.    All notices to be given hereunder by either party shall be in writing and shall be sent to the other party at the respective addresses as they are given on page 1 of this Agreement, unless said addresses are changed by either party by a notice in writing to the other party. All notices shall be sent by registered or certified mail or other form of receipted or acknowledged delivery including a fax transmission acknowledged as received by the party to which it is sent. Notices to the Publisher shall be sent to both the President and General Counsel of Publisher.

## Applicable Law

39.    THIS AGREEMENT AND ITS INTERPRETATION SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND ENTIRELY TO BE PERFORMED THEREIN.

## Waivers

40.    No waiver of any term or condition of this Agreement, or of any breach of this Agreement or of any part thereof, shall be deemed a waiver of any other term or condition of this Agreement or of any later breach of this Agreement or of any part thereof, nor shall publication or continued publication or payment by the Publisher following notice or claim of facts which, if true, would constitute a breach of warranty, representation or agreement of the Author, constitute or imply any waiver by the Publisher of any defenses, rights or remedies of the Publisher. No failure by either party to assert any right under this Agreement shall preclude any later assertion of such right.

## Validity and Enforceability

41.    The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions hereof, and any such invalid or unenforceable provision shall be deemed to be severable.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004898

**Singular Shall Include Plural**

42.     Wherever required by the context in this Agreement, the singular shall include the plural, and the term "Author" shall include the "Authors" if there are more than one.

**Entire Agreement**

43.     This Agreement constitutes the entire understanding of the parties concerning the subject matter hereof, and may not be modified except by an instrument in writing signed by the party to be charged.

**Captions**

44.     Captions are for convenience only, and are not to be deemed part of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first set forth above.

AUTHOR                              SIMON & SCHUSTER, INC.

_____           By_____
**Kirk W. Johnson**                      AUTHORIZED SIGNATURE

**NOTE: The attached United States Form W-9 must be completed, signed and returned by the Author with signed contracts.**

Editor: Whitlatch

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004899