# EXHIBIT 31

AGREEMENT made this 24th day of August, 2015

between MJ + KJ, Inc.
(name)

~~residing at~~ c/o Kneerim & Williams, Attn: Katherine Flynn, 90 Canal Street, First Floor
(address)

Boston, Massachusetts 02114
(city) (state, zip code, country)

~~and~~
~~(name)~~

~~residing at~~
~~(address)~~

~~(city)~~ ~~(state, zip code, country)~~

(individually or collectively the "Author")
and Viking, an imprint of Penguin Publishing Group, a division of Penguin Random House LLC, whose principal office is located at 375 Hudson Street, New York, New York 10014 (the "Publisher").

WHEREAS the Author is or will be the proprietor of the following described literary work (the "Work"):

*(The final title of the Work shall be subject to mutual agreement between the Author and the Publisher.)

Tentative Title*: **THE FEATHER UNDERGROUND by Kirk Johnson**

Subject Matter Description: **the astonishing true story of Edwin Rist, a young American flautist, who stole hundreds of exotic and extinct bird feathers from the British Museum of Natural History and then sold them to a cultish community of Victorian salmon fly-tiers**

(including the proprietor or authorized licensee of the *images specified in paragraph 43 and any* **mutually agreed** photographs, drawings, captions, maps, charts, tables, appendixes, notes, bibliography and index included in the Work and such other matter as set forth herein); and

WHEREAS the Author desires to have the Publisher publish, and the Publisher desires to publish, the Work on the terms and conditions and in consideration of the covenants set forth herein.

AUTHOR AND PUBLISHER AGREE:

Author's Grant

1. The Author hereby grants to the Publisher during the full term of copyright, and any renewals, continuations and extensions thereof, in each of the following countries and territories:

(a) The exclusive right to print, publish and sell the Work, in whole or in part, in the English language in the United States of America, its territories and possessions, the Philippine Republic and Puerto Rico (the "Exclusive Territory"), and to sell the same ~~non~~exclusively for export to the "Nonexclusive Territory," that is all countries other than those designated as exclusive in this subparagraph and in subparagraph 1(b) and in Schedule A, which is attached to and is part of this Agreement (the "Schedule A Countries");

(b) The exclusive right to print, publish and sell the Work and to license the Work, in whole or in part, for publication, in the English language in Canada (which shall be included in the designation "Exclusive Territory").

*^(c) See subparagraph 37(b)*

(c) The exclusive right to print, publish and sell the Work and to license the Work, in whole or in part for publication, in the English language in the Schedule A Countries^ and in the Nonexclusive Territory:

(d) ~~The exclusive right to print, publish and sell the Work, and to license the Work, in whole or in part, for publication throughout the world in all languages other than English.~~

CONFIDENTIAL - ATTORNEYS' EYES ONLY BARTZ000005520

*(e),(f),(g)(i): (such licensing is subject to the Author's approval, such approval not to be unreasonably withheld or delayed)*

(e) The exclusive right in the Exclusive Territory and the Schedule A Countries^, and ~~non~~exclusively in the Nonexclusive Territory, to license the Work, in whole or in part, for publication in the English language in the following editions: (i) mass market paperback*, (ii) trade paperback*, (iii) original hardcover **(i.e., a leatherbound or special limited edition prior to the Publisher's initial hardcover publication)*** and (iv) hardcover reprint.

(f) The exclusive right in the Exclusive Territory and the Schedule A Countries^, and ~~non~~exclusively in the Nonexclusive Territory, to license the Work, in whole or in part, for publication by book clubs and in magazine condensations#, newspaper syndications*#, serializations (before and after# first book publication), and as provided in paragraph 10.

*#Bulge (notwithstanding anything to the contrary contained in paragraph 1, abridgement, condensations and adaptations of the Work (but excluding normal second serial, excerpt permissions, and any Reader's Digest condensation), whether issued by the Publisher or its licensees, will be published only with the Author's approval as to the content of the text, which approval shall not be unreasonably withheld or delayed)*

(g) The exclusive right in the Exclusive Territory and the Schedule A Countries^, and ~~non~~exclusively in the Nonexclusive Territory, to print, publish and sell the Work, and to license the Work, in whole or in part, for publication in ~~[illegible]~~ large type editions, anthologies# ~~picture book editions, photonovels~~, premium (subject to the Author's approval as to placement, such approval not to be unreasonably withheld or delayed), direct mail, coupon advertising, non-dramatic audio recordings~~, and non-dramatic audiovisual recordings~~;

~~[illegible]~~

~~[illegible]~~

(j) The exclusive right in the Exclusive Territory and the Schedule A Countries^, and ~~non~~exclusively in the Nonexclusive Territory to display **the verbatim text of the Work in any manner designed to be visually read and to** license* the display of **the verbatim text of the Work in any manner designed to be visually read**, in whole or in part, by any means, method, device or process now known or later developed, and whether the images of the Work are shown sequentially or nonsequentially ("Display Rights"), including without limitation on-line or off-line electronic displays, mechanical visual recordings or reproductions (together with **incidental** accompanying sounds, if any, including **a user-generated mechanical reading of the Work**), microfilm, microfiche, data retrieval and storage systems, computer software systems, and all other forms of copying, recording, or the transmitting of the Author's words and/or illustrations in any manner designed to be visually read, which are not either granted to the Publisher elsewhere in this Agreement or reserved to the Author, provided however that such reservation of rights shall not preclude the exercise of Display Rights.+ The Author shall have the right to display up to **twenty percent (20%)** ~~ten percent (10%)~~ of the combined text and illustrations in the Work in connection with the exercise or licensing of any rights reserved to the Author in this Agreement. Such display by the Author of **more than twenty percent (20%)** ~~ten percent (10%)~~ of the combined text and illustrations in the Work shall be subject to the Publisher's approval, and to the payment to the Publisher of a customary royalty for that usage **to be negotiated at the time that such usage is requested. The rights reserved to the Author include, without limitation, textbook editions, picture book editions, photonovels, non-dramatic audiovisual recordings, commercial merchandising, dramatic, performance, motion picture, television, video, radio, and interactive multimedia. The Author reserves the right to display up to twenty percent (20%)** ~~ten percent (10%)~~ **of the text of the Work in a multimedia adaptation of the Work. The display of more than twenty percent (20%)** ~~ten percent (10%)~~ **of the text of the Work shall be subject to the Publisher's approval upon terms to be agreed.** ~~[illegible]~~

*+(j): Neither the Publisher nor its licensees shall abridge, condense, or add any additional material to the Work without the Author's prior written consent.*

*^(j): See subparagraph 3(b).*

## Author's Representations, Warranties and Indemnities

*a Whenever in this paragraph 2 provision is made for attorneys' fees, it shall mean reasonable attorneys' fees.*

2. @ The Author hereby represents and warrants to the Publisher, any seller or distributor of the Work, and to the Publisher's successors, licensees and assigns, and any officers, agents and employees of the foregoing: that **the Author** ~~he~~ is the sole Author of the Work **and that Kirk Johnson is the sole author of the Work**; that the Work is or will be **Kirk Johnson's** ~~the Author's~~ next book-length work written under his name or a pseudonym or in collaboration with any other person; that **the Author** ~~he~~ is the sole and exclusive owner of all rights granted to the Publisher in this Agreement and has not assigned, pledged or otherwise encumbered the same; that the Work is original, has not been published in book form, and is not in the public domain; that **the Author** ~~he~~ has full power to enter into this Agreement and to make the grants herein contained; that the Work does not, in whole or in part, infringe any copyright or violate any right of privacy or other personal or property right whatsoever, or contain any libelous matter or matter otherwise contrary to law; that no recipe, formula or instruction contained in the Work is injurious to the user; and that all statements asserted as facts are based on **Kirk Johnson's** ~~the Author's~~ careful investigation and research for accuracy.*

**The warranties and representations in this paragraph 2 do not extend to any material not submitted or approved by the Author. The Publisher shall bear no liability for changes made in the Work at the Author's direction.*

In the event of the assertion of any claim, action or proceeding inconsistent with any of the foregoing representations and warranties, (a) the Publisher shall have the right to defend the same through counsel **of its own choosing and, in addition, the Author may retain his own counsel at his own expense**, and (b) the Author shall fully cooperate in the Publisher's defense and * shall indemnify and hold harmless the Publisher, any seller or distributor of the Work, and the Publisher's successors, licensees and assigns, and any officers, agents and employees of the foregoing, from and against any and all liability, damage, loss, expense (including attorneys' fees to the extent provided below) and settlement costs, resulting from any such claim, action or proceeding, provided that no settlement covered by this indemnity shall be effected by the Publisher without the prior written consent of the Author, which consent shall not be unreasonably withheld.

**in the event the claim, action or proceeding is finally sustained in a court having jurisdiction, without any obligation on the part of the Publisher to appeal a judgment against the Publisher, or if the claim, action or proceeding is settled with the Author's consent, the Author*

Except where the claim, action or proceeding results from the Author's willful breach of any of his foregoing warranties or representations, the Publisher and the Author will share equally the Publisher's attorneys' fees and legal expenses and any settlement made by or final judgment or decree rendered against the Publisher (such fees, expenses, settlement and/or judgment or decree being, collectively, "Legal Costs"), provided that in no event shall the Author be required to contribute to Legal Costs more than either the total advance against royalties paid or payable to the Author under paragraph 5 of this Agreement, or the Author's share of the deductible under the Publisher's current media insurance policy (if applicable), whichever is less. Where, however, the claim, action or proceeding results from the Author's willful breach of any of his foregoing warranties or representations, the Author will be responsible for the entire amount of such Legal Costs. If at any time the Author desires to settle such claim, action or proceeding, but the Publisher desires to continue the defense thereof, the Author's liability under the foregoing indemnity shall be limited to the bona fide settlement amount accepted by the claimant (evidenced in writing) in respect to such claim, action or proceeding plus one-half (½) of the Publisher's attorneys' fees and legal expenses up to the time that the claimant and the Author agreed upon the amount.

If any such claim, action or proceeding is threatened or instituted, the Publisher shall promptly notify the Author and, in the Publisher's sole discretion, may withhold payments due **any payments withheld by the Publisher pursuant to this paragraph shall be released to the Author after a period of one (1) year in the case of any claim, action or proceeding that is threatened but not pursued, or within thirty (30) days of a legally binding discontinuance of any claim, action, or proceeding** the Author under this ~~or any other previously executed~~ agreement between the Publisher and the Author, subject to the Author's right to draw on such sums to defray expenses of the Publisher in defending such claim, action or proceeding (to the extent covered by this indemnity) and to satisfy and discharge any judgment or decree rendered. In the event that a judgment or decree shall be entered in any court based upon any such claim, action or proceeding and the Author shall desire to appeal, the Author shall indemnify and hold harmless the Publisher, any seller or distributor of the Work, and the Publisher's successors, licensees and assigns, and any officers, agents and employees of the foregoing, from and against any and all liability, damage, loss, and expense (including all attorneys' fees) of such appeal and shall furnish and file all bonds necessary to perfect said appeal and to stay execution of any such judgment or decree. If a final adverse judgment or decree is rendered in such action or proceeding and is not promptly paid, bonded, or stayed by the Author, or if costs and expenses (including attorneys' fees) covered by the foregoing indemnity are not promptly paid by the Author, the Publisher may apply the payments so withheld to the satisfaction and discharge of such judgment or decree and to the payment of such costs and expenses.

*&Any claim of plagiarism or copyright infringement so settled by the Publisher will be without admission of liability on the part of either the Author or the Publisher.*

Irrespective of the foregoing, the Publisher shall have the right at any time on its own behalf and expense to settle any such claim, action or proceeding without the Author's consent. **The Publisher will notify the Author of any such settlement but any inadvertent failure to do so will not be deemed a breach of this Agreement.** &

The representations, warranties and indemnities contained herein are continuing representations, warranties and indemnities and shall survive the termination of this Agreement.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Delivery of Manuscript and Corrections**

3. (a) The Author shall deliver to the Publisher on or before **June 1, 2016** one (1) disc and two (2) complete typewritten copies of the manuscript of the Work in its final form, in the English language, consisting of approximately **100,000** words, in style, content, length and form satisfactory to the Publisher. *See paragraph 43.*

(b) If the Author fails to deliver the manuscript by that date, the Publisher shall have the right to terminate this Agreement upon written notice to the Author, in which event the Author shall promptly repay to the Publisher any and all sums paid to the Author.

(c) If the Publisher should terminate this Agreement pursuant to subparagraph 3(b), the Author shall not, **for a period of twelve (12) months after the date of such termination,** publish or permit the publication of the Work or any other work of a substantially similar nature or subject matter by any other publisher without first offering the manuscript for any such Work or work (in the form delivered to such other publisher) to the Publisher upon the terms set forth in this Agreement.

(d) If the manuscript or any portion thereof, when delivered, is not satisfactory to the Publisher in style, content, length and form, the Publisher ~~in its sole discretion,~~ shall ~~have the option either to~~ notify the Author in writing **within** *forty-five (45)* ~~sixty (60)~~ days to what extent the manuscript (or relevant portion) is not satisfactory, in which event the Author shall have **sixty (60)** ~~thirty (30)~~ days following the receipt of such notice to submit a manuscript (or relevant portion) that is satisfactory as provided in subparagraph 3(a) above and as provided by such notice ~~or to terminate this Agreement upon written notice to the Author~~. **See rider to subparagraph 3(d).**

(e) If ~~the Publisher shall exercise the first option in subparagraph 3(d) above, and~~ the Author fails or refuses to comply with the notice, the Publisher, in its sole discretion, shall have the option either to terminate this Agreement upon written notice to the Author, or to have the necessary work done upon the manuscript, if need be employing outside editorial assistance, and to charge the cost thereof to the Author against the Work **provided that before the Publisher undertakes such work, the Author has approved (i) the changes to be made to the Work, and (ii) the cost (if any) thereof to be charged to the Author** ~~or past works of the Author~~.

(f) If the Publisher exercises its option to terminate this Agreement as provided in subparagraph ~~3(d) or~~ 3(e) above, the Author shall use his best efforts to sell the Work or any portion thereof elsewhere and shall repay any and all sums paid to him under this Agreement out of the first and subsequent payments due him when and if another publisher accepts the Work or any portion thereof for publication. (Such payments from another publisher, up to the total amount of any and all sums paid to the Author under this Agreement, being "First Proceeds.") The Author hereby (1) assigns and transfers to the Publisher the Author's right to receive First Proceeds and (2) authorizes and directs any other publisher from whom the Author is entitled to receive First Proceeds to pay such sums directly to the Publisher on Publisher's written demand therefor.

**@(g): If an index shall be included in the Work, the Publisher shall provide such index and charge the reasonable and customary cost thereof to the Author against amounts due to the Author under this Agreement.** *Publisher will consult the Author on any index cost in excess of One Thousand Dollars ($1,000.00) (not to be deemed a precedent).*

(g) Simultaneously with the delivery of the manuscript as provided in subparagraph 3(a) above, the Author shall deliver to the Publisher, at the Author's sole cost and expense, all ***images specified in paragraph 43 and any* mutually agreed** photographs, drawings, captions, maps, charts, tables, appendixes, notes, bibliography, and other matters required by this Agreement ~~and an index within 10 days after the Author's receipt of page proofs~~. @ If the Author fails to do so, the Publisher shall have the option, in its sole discretion, either to terminate this Agreement upon written notice to the Author and to recover any and all sums paid hereunder, or to supply such materials itself, if necessary employing outside editorial and artistic assistance, and to charge the cost thereof to the Author against the Work ~~or past works of the Author~~.

(h) If copyrighted material is included in the Work (other than that of which the Author is the lawful proprietor), the Author, at his sole expense, shall secure from the copyright proprietor and deliver to the Publisher written permission, in form satisfactory to the Publisher, to reproduce such materials in the Work and in all editions, adaptations and media and in the territory and during the entire term permitted in this Agreement.

(i) The Author shall promptly read, revise, correct and return to the Publisher all proofs of the Work submitted to him by the Publisher. The Author shall pay **from the Author's royalty account** for all alterations in the proof made at the Author's request (exclusive of the cost of correcting typesetter or **Publisher** errors or **making Publisher alterations**), to the extent that such alterations exceed ten percent (10%) of the cost of composition. The Author shall pay for all alterations (exclusive of the cost of correcting errors of the typesetter or **Publisher or making Publisher alterations**) that he requests after page proofs have been made or typesetting of the Work has been corrected in conformity with the Author's corrected galley proof.

**Publication**

***(a): The Author shall have approval of the final copyedited manuscript of the Work, such approval not to be unreasonably withheld or delayed. No substantive changes shall be made in the manuscript of the Work without the Author's prior written permission.**

4. (a) Except as provided in subparagraphs 4(b) and 4(c) below, the Publisher will, within **eighteen (18)** months after acceptance of the Work ~~as provided in paragraph 3 below,~~ publish or cause publication of the Work in such editions, imprints, style and manner and at such prices as it deems suitable. The Publisher shall be authorized to exercise the usual editorial privileges in the course of preparing the Work for composition and to make the manuscript conform to its standard style of punctuation, spelling, capitalization and usage. *

(b) The failure of the Publisher to publish or cause publication of the Work within the time period set forth in subparagraph 4(a) above shall not be deemed to be a violation of this Agreement if such failure to publish is caused by restrictions of governmental agencies, labor disputes, inability to have the book manufactured or to obtain the materials necessary for its manufacture, or by any delay occasioned by the assertion of any claim, action or proceeding covered by any of the representations and warranties contained in paragraph 2, or for any other cause beyond the control of the Publisher. In the event of a delay resulting from any cause referred to in this subparagraph the publication date may, at the Publisher's option, be postponed **for a period of time not to exceed the time of the original delay** ~~accordingly~~, provided, however, that if the delay is occasioned by the assertion of any claim, action or proceeding covered by any of the representations and warranties contained in paragraph 2 hereof and such claim, action or proceeding is not resolved by settlement or final judgment within **twelve (12)** ~~six (6)~~ months, the Publisher shall have the option to terminate this Agreement and the Author shall thereupon repay any advance paid to him.

(c) In the case of prepublication serialization, initial book publication may be delayed, **by mutual consent of the Author and the Publisher** ~~at the Publisher's option~~, for a period not to exceed six (6) months after completion of publication of such serialization.

(d) If the Publisher fails to publish the Work within the agreed time period, the Author may, at his option, by written notice to the Publisher demand that the Publisher publish the Work and in the event the Publisher has not published within **ninety (90) days** ~~six (6) months~~ of such notice the Author may terminate this Agreement. In such event the only damages recoverable by the Author shall be limited to **the entire advance payable under paragraph 5 herein** ~~advance paid by the Publisher up to the date of termination~~. No other damages, actions or proceedings, either legal or equitable, including (but not by way of limitation) specific performance, shall be claimed, instituted or maintained by the Author against the Publisher.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

(e) Nothing herein shall require the Publisher to publish or license each and every edition permitted to be published or licensed hereunder. Furthermore, the Publisher shall not be required to continue the publication of the Work if in the ~~its~~ opinion of the Publisher's legal counsel it violates the right of privacy or any property or personal right of any person, or contains any libelous or other unlawful matter, or presents a substantial risk of liability or injury to third persons or of governmental action against the Work. If in the good faith opinion of Publisher's legal counsel the Publisher is unable to publish the Work for the reasons set forth in this subparagraph and if the Publisher's legal counsel, in its sole discretion, determines that the manuscript may be revised so as to render it publishable, the Publisher shall discuss with the Author its reasons for such opinion, and insofar as possible, the Publisher shall provide guidance as to how such legal problems may be resolved. If the Author then fails to correct the problems in the Work within thirty (30) days following the Author's discussion with the Publisher, the Publisher shall have the right to terminate this Agreement, and the Author shall thereupon repay any advance paid to him.

(f) Publisher may elect to have the Work reviewed by its counsel prior to publication in which event the Author shall cooperate in the vetting process and shall make such changes in the Work as are reasonably requested by Publisher's counsel. Such vetting and changes made as a result of the vetting shall not diminish the Author's representations, warranties and indemnities under paragraph 3 of this Agreement.

Advance

5. The Publisher shall pay to the Author as an advance against all royalties and other sums accruing to the Author under this Agreement the sum of [REDACTED] Thousand Dollars ($[REDACTED]000.00) to be paid as follows:

[REDACTED] Thousand Dollars ($[REDACTED]000.00) upon the execution of this Agreement; and

[REDACTED] Thousand Dollars ($[REDACTED]000.00) upon the delivery and the Publisher's acceptance of the complete and finished manuscript of the Work; and

[REDACTED] Thousand Dollars ($[REDACTED]000.00) upon the Publisher's initial publication of the Work, but in any event not later than twelve (12) months after the delivery and the Publisher's acceptance of the complete and finished manuscript of the Work; and

[REDACTED] Thousand Dollars ($[REDACTED]000.00) twelve (12) months after the Publisher's initial publication of the Work.

Royalties for Trade Hardcover Edition

*such reserve shall be computed with respect to each of the first three (3) full accounting periods after initial publication and any reissue of the Work, and in each instance shall be distributed at the time of the next accounting)

6. The Publisher shall pay to the Author, or credit to the Author's account, the following royalties on copies sold of any trade hardcover edition of the Work published by the Publisher, less credited returns and less a reasonable reserve for estimated returns*

(a) Except as otherwise provided in this paragraph 6 or subparagraph 11(a) below, the following percentages of the Publisher's suggested retail price as defined in subparagraph 35(a) below ("Suggested Retail Price"), of each copy sold in the United States through normal channels:

Ten percent (10%) on the first 5,000 copies of the Work sold; and

Twelve and one-half percent (12½%) on the next 5,000 copies of the Work sold; and

Fifteen percent (15%) on all copies of the Work sold thereafter.

Copies covered by any other subparagraph of this paragraph 6, other than subparagraphs 6(b) and 6(h), and 6(i), shall not be included in the computation of total copies sold for purposes of this subparagraph 6(a);

(b) Where the discount to jobbers or to wholesale distributors or booksellers (except as provided for in subparagraph 6(d) below) on copies of any edition published by the Publisher is more than fifty-three percent (53%) ~~fifty percent (50%)~~, the Publisher shall pay to the Author the prevailing royalty rate under subparagraph 6(a) above less one-half (½) the difference between a forty-four percent (44%) discount and the discount granted (it being understood that in no event shall the amount paid to the Author be less than one-half (½) the prevailing royalty rate under subparagraph 6(a) above), but the regular rate of royalty, regardless of discount, shall be paid on books delivered to booksellers and bookdealers in payment for trade advertising;

*(c): Remaining stock will first be offered to the Author at the estimated remainder price plus freight; however, any inadvertent failure by the Publisher to do so shall not be deemed a breach of this Agreement.

(c) A royalty of ten percent (10%) of the amount received as defined in subparagraph 35(b) below ("Amount Received") by the Publisher on sales of overstock and damaged copies that the Publisher deems expedient to sell at a discount of sixty percent (60%) or more; provided that the royalty shall in no event exceed one half (½) of the excess of the Amount Received by the Publisher over the Publisher's manufacturing cost as defined in subparagraph 35(c) below ("Manufacturing Cost"). No sale of overstock shall take place within the first year after publication of the Work in book form except upon the written consent of the Author or the Author's agent pursuant to paragraph 27 below, which consent shall not be unreasonably withheld;

(d) For sales outside normal wholesale and retail trade channels, a royalty of ten percent (10%) of the Amount Received by the Publisher on sales at a discount between fifty percent (50%) and sixty percent (60%) of the Publisher's Suggested Retail Price and five percent (5%) of the Amount Received on sales at a discount of sixty percent (60%) or more, provided that the royalty shall in no event exceed one-half (½) of the excess of the Amount Received by the Publisher over the Publisher's Manufacturing Cost;

(e) A royalty of ten percent (10%) of the Amount Received by the Publisher for copies, bound or in sheets, sold for export (except as provided in subparagraph 6(f) below); provided that the royalty shall in no event exceed one-half of the excess of the Amount Received by the Publisher over the Publisher's Manufacturing Cost;

(f) A royalty of twelve and one-half percent (12½%) of the Amount Received by the Publisher on all sales in Canada of copies of any edition published by the Publisher;

*(g) (subject to the Author's approval as to placement, such approval not to be unreasonably withheld or delayed)

~~*(h)(i) (only one (1) such reprinting may be made per year at such reduced royalty)~~

(g) A royalty of five percent (5%) of the actual selling price on copies sold by the Publisher directly to commercial purchasers as a premium* or to the consumer through the medium of mail-order coupon advertising, direct by mail circularization or solicitation by radio or television;

~~(h) A royalty of ten percent (10%) of the Publisher's Suggested Retail Price or a royalty equal to the initial royalty rate under subparagraph 6(a) above, whichever is lower, on all copies sold from a reprinting of two thousand five hundred (2,500) copies or less made within the first two (2) years after publication;~~

~~(i) A royalty of one half (½) of the prevailing royalty rate under subparagraph 6(a) above on all copies sold from a reprinting of two thousand five hundred (2,500) copies or less made no earlier than two (2) years after first publication, provided that sales under subparagraphs 6(a) and 6(b) above in the six (6) month period immediately preceding such reprinting do not exceed five hundred (500) copies*;~~

(j) A royalty of five percent (5%) of the Publisher's Suggested Retail Price of each copy sold within the United States of any hardcover reprint edition issued by the Publisher at a Suggested Retail Price of not more than two-thirds (⅔) of the original Suggested Retail Price; and

(k) A pro-rata share of five percent (5%) of the Publisher's Suggested Retail Price of any omnibus edition in which the Work appears.

**Royalties for Mass Market Paperback Edition**

*(such reserve shall be computed with respect to each of the first four (4) full accounting periods after initial publication and any reissue of the Work, and in each instance shall be distributed at the time of the next accounting)

*(c) (subject to the Author's approval as to placement, such approval not to be unreasonably withheld or delayed)

7. The Publisher shall pay to the Author, or credit to the Author's account, the following royalties on copies sold of any mass market paperback edition of the Work published by the Publisher, less credited returns and less a reasonable reserve for estimated returns*:

(a) Except as otherwise provided in this paragraph 7 or subparagraph 11(a) below, the following percentages of the Publisher's Suggested Retail Price of each copy sold in the United States through normal channels:

**Eight percent (8%) on the first 150,000 copies of the Work sold; and**

**Ten percent (10%) on all copies of the Work sold thereafter.**

Copies covered by any other subparagraph of this paragraph 7 shall not be included in the computation of total copies sold for purposes of this subparagraph 7(a);

(b) A royalty of five percent (5%) of the Publisher's Suggested Retail Price on all copies sold for export, or outside the United States; and

(c) A royalty of five percent (5%) of the Amount Received by the Publisher on sales of overstock and damaged copies, and on all copies sold to a governmental agency, to a book club, through the medium of mail order, to commercial purchasers as a premium*, in bulk outside normal (wholesale and retail) channels, and for each copy sold at a discount of more than fifty-five percent (55%) from the Publisher's Suggested Retail Price of the mass market paperback edition of the Work; provided that the royalty shall in no event exceed one-half (½) of the excess of the Amount Received by the Publisher over the Publisher's Manufacturing Cost.

**Royalties for Trade Paperback Edition**

*(such reserve shall be computed with respect to each of the first four (4) full accounting periods after initial publication and any reissue of the Work, and in each instance shall be distributed at the time of the next accounting)

*(c) (subject to the Author's approval as to placement, such approval not to be unreasonably withheld or delayed)

8. The Publisher shall pay to the Author, or credit to the Author's account, the following royalties on copies sold of any trade paperback edition of the Work published by the Publisher, less credited returns and less a reasonable reserve for estimated returns*:

(a) Except as otherwise provided in this paragraph 8 or subparagraph 11(a) below, the following percentages of the Publisher's Suggested Retail Price of each copy sold in the United States through normal channels:

**Seven and one-half percent (7½%) on all copies of the Work sold.**

Copies covered by any other subparagraph of this paragraph 8 shall not be included in the computation of total copies sold for purposes of this subparagraph 8(a).

(b) A royalty of two thirds (⅔) of the prevailing royalty rate under subparagraph 8(a) above, based upon the Amount Received by the Publisher, on all copies sold for export, or outside the United States; and

(c) A royalty of five percent (5%) of the Amount Received by the Publisher on sales of overstock and damaged copies, and on all copies sold to a governmental agency, through the medium of mail order, to commercial purchasers as a premium*, in bulk to book clubs and outside normal (wholesale and retail) channels, and for each copy sold at a discount of more than fifty-two percent (52%) from the Publisher's Suggested Retail Price of the trade paperback edition of the Work, provided that the royalty shall in no event exceed one-half (½) of the excess of the Amount Received by the Publisher over the Publisher's Manufacturing Cost.

**Royalties for Other Editions**

*(a),(b)(i): (such reserve shall be computed with respect to each of the first four (4) full accounting periods after initial publication and any reissue of the Work, and in each instance shall be distributed at the time of the next accounting)

9. (a) The Publisher shall pay to the Author, or credit to the Author's account, the following royalties on copies sold, distributed or otherwise made accessible to consumers of any versions of the Publisher's edition(s) of the Work resulting from Publisher's exercise of non-dramatic audio recording rights, less credited returns and less a reasonable reserve for estimated returns*, and except as otherwise provided in subparagraph 11(a) below:

**(i) a royalty of ten percent (10%)** ~~eight percent (8%)~~ **of the Amount Received by the Publisher, except as otherwise provided in subparagraph 9(a)(ii) below; and**

**(ii) for downloadable audio recordings, the royalty shall be twenty-five percent (25%) of** ~~twice the royalty rate listed in subparagraph 9(a)(i) above, based on~~ **the Amount Received by the Publisher.**

Copies covered by each of the above subparagraphs shall only be included in the computation of total copies so sold, distributed or otherwise made accessible for purposes of the respective subparagraph. **See paragraph 44.**

(b) (i) The Publisher shall pay to the Author, or credit to the Author's account, the following royalties on copies sold, distributed or otherwise made accessible to consumers of any versions of the Publisher's edition(s) of the Work resulting from Publisher's exercise of Display Rights as defined in subparagraph 1(j) above, less any credited returns and a reasonable reserve for estimated returns* and except as provided in subparagraph 11(a) below: **a royalty of twenty-five percent (25%) of the Amount Received by the Publisher on all copies of the Publisher's edition(s) of the Work so sold, distributed or otherwise made accessible. See rider to subparagraph 9(b)(i).**

(ii) Notwithstanding anything to the contrary in subparagraph 9(b)(i) above and subparagraph 11(a) below, for digital sales of the Work, in whole or in part, by a third party or other digital access to the Work, in whole or in part, provided by a third party, where the Publisher does not establish a Suggested Retail Price, but instead receives income based on a share of advertising revenue or subscriptions or receives revenue from micro-transactions, the Publisher shall pay to the Author, or credit to the Author's account, **a royalty of thirty percent (30%) of the Amount Received by the Publisher with respect to the Work.**

Royalties from Licensing

10. (a) The Publisher shall pay to the Author, or credit to the Author's account, the specified percentage of the net proceeds received by the Publisher from the licensing of the following rights.

*(a): (subject to the Author's approval, such approval not to be unreasonably withheld or delayed)

#(a): (notwithstanding anything to the contrary contained in paragraph 1, abridgements, condensations and adaptations of the Work (but excluding normal second serial, excerpt permissions, and any Reader's Digest condensation), whether issued by the Publisher or its licensees, will be published only with the Author's approval as to the content of the text, which approval shall not be unreasonably withheld or delayed)

^(a): (subject to the Author's approval as to placement, such approval not to be unreasonably withheld or delayed)

^(a): See subparagraph 3(b).

| *Right* | *Percentage to be Paid to Author* |
|---|---|
| Mass Market Paperback* | 50% |
| Trade Paperback* | 50% |
| Hardcover Reprint | 50% |
| Book Club | 50% |
| Syndication*# | 50% |
| Second Periodical Rights (after first book publication): serialization, digest, abridgment#, condensation#, excerpt | 50% |
| Anthology and Other Selection Reprint, in whole or in part, in complete, condensed#, adapted# or abridged# versions | 50% |
| ~~Textbook Edition*~~ Large Type Edition, ~~Picture Book Edition~~, Photonovel | 50% |
| Premium^, Direct mail, Coupon Advertising | 50% |
| Hardcover Original* (i.e., a leatherbound or special limited edition prior to the Publisher's initial hardcover publication) | 50% |
| Publication in the English language in the Schedule A Countries^ | 80% |
| Publication in the English language in Canada | 50% |
| ~~Publication in other languages~~ | ~~[illegible]~~ |
| First Periodical Rights (prior to first book publication) | 90% |
| ~~Motion Picture, Television, Radio and Dramatic Rights~~ | ~~50%~~ |
| ~~Lyric Rights~~ | ~~50%~~ |
| ~~Commercial Adaptations and Tie-Ins~~ | ~~50%~~ |
| ~~Non-dramatic Audiovisual Rights~~ | ~~50%~~ |
| Non-dramatic Audio Recordings | 50% |
| Display Rights^ | 50% |

(b) ~~In the event the Author retains Canadian book club rights, the Publisher shall have the nonexclusive right to permit book club editions of the Work licensed by the Publisher to be sold in Canada and the Publisher shall remit to the Author all royalties received on such Canadian sales.~~

No Royalties

11. No royalty, fee or other charge shall be payable to the Author for the following, applicable to all editions of the Work published or caused to be published pursuant to this Agreement:

(a) Sales made at or below Manufacturing Cost, copies destroyed, copies furnished gratis to the Author, editorial review copies, or copies otherwise used to promote the sale of the Work;

(b) Licensing publication of the Work without fee, in Braille (or similar tactile symbols), or by audio recordings or visual recordings, solely for the blind and other physically handicapped persons; and

(c) Publishing or permitting others to publish or broadcast or transmit by radio, television or on-line selections from the Work, **not to exceed ten percent (10%) of the Work**, for publicity and promotion purposes only, in a manner which in the opinion of the Publisher would benefit its sale, provided such rights do not conflict with the rights acquired by the purchaser (if any) of the motion picture or other performance rights.

**Statements and Payments**

*(such periods ending January 31st and July 31st)

12. The Publisher shall render semiannual statements of account in accordance with its regular accounting practices, except that the first statement shall not be rendered until at least six (6) months after publication date. Such statements shall be submitted to the Author, together with payment for all amounts due for each period*, during the fourth month following the close of each period ~~so long as any payments are due~~. All payments made by the Publisher to or for the account of the Author pursuant to this Agreement shall be chargeable against and recoverable by the Publisher from any and all moneys accruing to the Author under this ~~or any other previous~~ agreement with the Publisher, and all sums owing by the Author to the Publisher under this ~~or any other~~ agreement may be deducted from payments accruing to the Author under this ~~or any other previous~~ agreement with the Publisher. **If, after termination for non delivery under subparagraph 3(b) herein, the Author fails to repay to the Publisher any and all sums paid to the Author under this Agreement, such payments shall be chargeable against and recoverable by the Publisher from any and all sums accruing to the Author** ***and/or Kirk Johnson*** **under any other agreement with the Publisher.** State, federal, and foreign taxes on the Author's earnings, when required by law to be withheld and paid by the Publisher, shall be proper charges against the Author's earnings hereunder. When the balance to the credit of the Author at the end of any statement period shall be less than twenty-five dollars ($25.00), no payment ~~statement~~ shall be rendered, and the amount due shall be carried forward; **however, all statements shall be rendered regardless of the amount shown therein to be due.** The Author or his duly authorized representatives shall have the right upon written request to examine the Publisher's records that relate to the Work, such examination shall be at the cost of the Author unless errors of accounting amounting to five percent (5%) or more of the total sum paid to the Author during the period covered by such request shall be found to his disadvantage, in which case the cost shall be borne by the Publisher **and the cost shall be promptly paid along with the undisputed amount owing to the Author.**

**Copyright**

*with respect to the registration of the copyright in the Work

13. (a) The Publisher shall print in each edition of the Work published by it a proper United States copyright notice in the name of the Author **(MJ + KJ, Inc.)**, sufficient to secure United States copyright and Universal Copyright Convention protection in the Work to such persons. The Author hereby appoints the Publisher as his attorney-in-fact*, and in such capacity the Publisher shall duly register a claim for United States copyright in the Work in such person's name, and for any renewals, extensions or continuations thereof if necessary, and shall deposit the required number of copies of the Work with the Library of Congress. **The Publisher shall use its best efforts to see that every license granted by it to publish, reproduce or otherwise use the Work, in whole or in part, shall contain a specific requirement that the licensee will print a proper copyright notice in each edition of the Work published by such licensee. The Publisher's failure to carry out the obligations in this subparagraph shall not be deemed to be a breach of this Agreement unless the Publisher shall not use its best efforts to cure such failure after notice from the Author.**

(b) The Author, his heirs, executors, administrators, successors and assigns shall render such cooperation and assistance as the Publisher may reasonably request to protect the rights granted hereunder, including (but not by way of limitation) delivering to the Publisher appropriate transfers of copyright and other documents, in legally recordable form, in respect to all or any portion of the Work or any edition thereof. In addition, the Author shall promptly notify the Publisher of any arrangement he makes for the publication of the Work, in whole or in part, by any person other than the Publisher, as to any rights reserved to the Author hereunder. **Any inadvertent failure of the Author to comply with this provision shall not be deemed a breach of this Agreement.**

(c) If the Work contains a substantial portion of material taken from documents prepared and published by the United States Government and therefore not subject to copyright, the Author shall notify the Publisher in writing of the existence and location of all such material in the Work.

**Copyright Infringement**

14. In the event that the copyright of the Work shall be infringed, and if no mutually satisfactory arrangement shall be arrived at for joint action in regard thereto, either the Author or the Publisher, jointly or seperately, shall have the right to bring an action to enjoin such infringement and to recover damages. If they shall proceed jointly, the expenses and recoveries, if any, shall be shared equally; if they cannot agree to proceed jointly, any party going forward with such action shall bear his or its own expenses, and any recoveries had therein shall belong to such party. If the party bringing action does not hold the record title of the copyright, the other party will transfer and permit the recordation of such copyright ownership as will permit the former to bring the action in his or its own name.

**Author's Property**

15. The Publisher shall not be responsible for loss or damage to any property of the Author. In the absence of a written request from the Author made prior to publication, the Publisher, after publication of the Work, may dispose of the original manuscript and proofs.

**Author's Copies**

16. The Author shall be entitled to receive on publication **forty (40)** ~~ten (10)~~ free copies, **and the Author's agent shall be entitled to receive on publication ten (10) free copies,** of each physical edition of the Work published by the Publisher, and **the Author** shall have the right to purchase further copies for personal use and not for re-sale at a discount of forty percent (40%) from the Publisher's Suggested Retail Price.

**Contracts With Others**

17. The Publisher shall notify the Author of the terms of any contracts or agreements entered into by the Publisher for any grant or license permitted under this Agreement where the Author's share of the proceeds or royalty is or is likely to amount to **two hundred fifty dollars ($250.00)** ~~five hundred dollars ($500.00)~~ or more and, upon the Author's request, shall furnish the Author with a copy of each such contract or agreement **and copies of statements of account rising from such contracts and agreements.**

**Use of Author's Name and Likeness**

18. The Publisher, in its sole discretion, may use and authorize the use of **Kirk Johnson's** ~~the Author's~~ name, **pre-approved** likeness, **pre-approved** photograph and **pre-approved** biographical data in connection with advertising, publicizing, licensing and promoting the Work ~~and any commercial adaptation thereof~~.

**Motion Picture and Television Tie-Ins**

19. In the event that motion picture or telecast rights in the Work are reserved to the Author and the Author is successful in selling or licensing such rights to a third party, the Author hereby consents and agrees **to use reasonable efforts to ensure** that any such sale or license shall contain a provision in favor of the Publisher, its licensees, successors and assigns, at no additional cost, permitting use of the title used in or suggested by the motion picture or telecast together with or as an alternative to the original title of the Work.

**No Competing Work**

20. The Author agrees that during the term of this Agreement **the Author and Kirk Johnson** he will not, without the written permission of the Publisher, publish or authorize to be published any work ~~based upon~~ **substantially similar to the Work** or which would ~~reasonably likely to~~ injure its sale or the merchandising of the other rights granted herein. ~~Author-written prequels and sequels are deemed excluded from the provisions of this paragraph 20.~~

**Out of Print Provisions**

21. If the Work shall be out of print and if, after written notification from the Author to this effect, the Publisher shall fail to place the Work in print or license publication of a reprint edition by another publisher as permitted herein, within a period of six (6) months after the date of such notice (subject, however, to the provisions of subparagraph 4(b) hereof in respect to delay from causes beyond the control of the Publisher), this Agreement shall thereupon terminate with such effect as provided in paragraph 24 below. The Work shall not be deemed to be out of print so long as it is under ~~option or~~ contract for publication **within six (6) months** or on sale **through normal wholesale or retail channels** in any **English-language** edition in the United States, whether under the imprint of the Publisher or a licensee. The existence of an individual print on demand edition or an electronic edition shall not constitute the Work being in print unless there are total sales of **five hundred (500)** ~~three hundred (300)~~ copies per year.

**Termination by Publisher**

22. If the Publisher shall determine that there is not sufficient sale of the Work to enable the Publisher to continue the Work's publication and sale, the Publisher may give written notice of the termination of this Agreement to the Author, with such effect as provided in paragraph 24 below.

**Bankruptcy and Liquidation**

23. If the Publisher is adjudicated a bankrupt or makes a general assignment for the benefit of creditors or liquidates its business, this Agreement, to the extent permitted by law, shall terminate upon notice from the Author to the Publisher with such effect as provided in paragraph 24 below.

**Rights on Termination**

24. (a) Upon the termination of this Agreement for any cause, all rights ~~(except as provided in subparagraph 24(b) below)~~ granted to the Publisher shall revert to the Author, subject to the Publisher's continued participation, to the extent provided, in any licenses granted by the Publisher. The Publisher may dispose of any or all of the copies of the Work remaining on hand as it deems best, subject to the payment of royalties as provided. **However, for a period of thirty (30) days after termination the Author shall have the right to purchase remaining stock at the estimated remainder price plus freight.**

(b) ~~If pursuant to the United States Copyright Act, Author (or, if deceased, the successors of Author) has the right to terminate the rights granted hereunder, and elects to exercise such rights as provided pursuant to such Act, after such termination, Author shall not exercise or dispose of such rights except in accordance with the following procedure: commencing with the date of such termination, Author and Publisher shall negotiate in good faith for a period of not less than thirty (30) sixty (60) days with respect to mutually agreeable terms and conditions. If the parties are unable in good faith to arrive at a mutually satisfactory agreement, Author shall be free to offer the terminated rights elsewhere, provided, however, that prior to entering into any agreement with any such third party, Author shall first give Publisher the opportunity to agree, within ten (10) business days, to match the terms offered by such third party which Author is willing to accept.~~

**Revision**

25. If the Publisher **and the Author mutually** ~~in its sole discretion~~ determines that a revision of the Work is desirable, **the Author and the Publisher shall negotiate in good faith for mutually agreeable terms for such revised edition of the Work** ~~shall have the thirty (30) days after receipt of a request from the Publisher to notify the Publisher that he will make the revision and to deliver within one (1) year. If the Author fails to deliver such notice, or having delivered such notice he shall fail to deliver a revision satisfactory to the Publisher in style, content, length and form within that period, the Publisher shall have the right, at its option, to make the revision, charging any outside editorial fee or other fee or royalty to the Author against the Work or past works of the Author. It is further agreed that for the purposes of royalty computation, the revised edition shall be considered a new work and the same scale of royalties shall apply to it as applied to the original edition hereunder.~~

**Option on Next Work**

26. The Author hereby grants to the Publisher the exclusive right and option to publish his next book-length work **of non-fiction by Kirk Johnson**, subject to the terms and conditions hereinafter set forth. The Author shall submit a **detailed proposal** ~~the completed manuscript~~ of such work to the Publisher before offering or submitting same to any other party. The Publisher shall have a period of thirty (30) days after submission of such work or **forty-five (45)** ~~ninety (90)~~ days after the Publisher's **acceptance** ~~first publication~~ of the Work hereunder, whichever is later, within which to notify the Author whether it desires to publish such work. If within such period the Publisher notifies the Author of its desire to publish such work, the parties shall negotiate in good faith **for a period of not more than** ***thirty (30)*** ~~forty-five (45)~~ days with respect to the terms of an agreement to publish such work. During this entire period the Author shall not submit or offer such work to any other party or negotiate with any other party with respect to such work. If the Author and Publisher are unable to reach an agreement, the Author may offer such work to other parties~~, provided, however, that he shall not enter into an agreement for the publication of such work with any other publisher upon terms equal to or less favorable than those offered by the Publisher. In the event that the Author is unable to reach an agreement with either the Publisher or any other party for the publication of such work, this option will continue to apply with the same force and effect to the succeeding book-length created by the Author until such an agreement is reached with either the Publisher or any other party~~.

**Agency Clause**

27. The Author hereby authorizes and appoints **Kneerim & Williams, Attn: Katherine Flynn, 90 Canal Street, First Floor, Boston, Massachusetts 02114**, to act as his agent and to collect and receive all sums of money payable to him under the terms of this Agreement, and the receipt by such **agency** ~~person~~ shall be a valid discharge in that respect. Such **agency** ~~person~~ is hereby fully empowered to act on behalf of the Author in all matters in any way arising out of this Agreement, and is hereby designated as the Author's agent upon whom notices regarding this Agreement may be delivered. The designation of such **agency** ~~person~~ as agent shall survive the incapacity (physical or mental) or death of the Author. **The designation of the agent may be changed as allowed by law and/or agreement between the Author and the agent.** The Author may not alter or terminate the agent's right to receive its commission hereunder without the agent's prior written consent. **The agent's Federal Tax Identification Number is: 27-1207844.**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Notices**

28. Any notices required or permitted to be given shall be in writing and shall be delivered personally or sent by registered or certified mail, postage prepaid, return receipt requested, to the Publisher or the Author (or his agent) at the respective addresses given above or at such other addresses as the parties may from time to time designate by written notice given in the manner provided herein.

**Reservation of Rights to Author**

29.(a) All rights in the Work not specifically granted to the Publisher are reserved to the Author and may be exercised or disposed of by him at any time during the term of this Agreement, subject to the provisions of paragraph 20 hereof.

(b) ~~In the event the Author retains such rights, he endeavors agrees not to license or otherwise permit the publication of any other English language hardcover or paperback edition of the Work in the Nonexclusive Territory earlier than the respective dates of the Publisher's publication of its hardcover and paperback editions (either the Publisher's own or sublicensed editions) in the Nonexclusive Territory, except that if no United States paperback edition is published within twelve (12) eighteen (18) months from the date of first hardcover publication the Author may permit release of an English-language paperback edition in the Nonexclusive Territory.~~

**Assignment of Publication Under Affiliated Imprint**

30. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, executors, administrators, successors and assigns. Notwithstanding anything to the contrary contained in this Agreement, the Publisher may assign this Agreement in whole or in part, to any parent, subsidiary or affiliated company or to an assignee expressly assuming all of the obligations of the Publisher who or which acquires all or a substantial portion of the business of the Publisher. Any other assignment, whether voluntary or by operation of law, shall be null and void unless the assigning party has obtained the prior written approval of the other party.

**Entire Agreement; Waiver or Modification**

31. This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements, understandings and proposals (whether written or oral) in respect to the matters specified. No waiver or modification of any of these provisions shall be valid unless in writing and signed by or on behalf of the party granting such waiver or modification. No waiver by either party of any breach or default hereunder shall be deemed a waiver of any repetition of such breach or default or in any way affect any of the other terms or conditions hereof.

**Severability**

32. If any provision of this Agreement is judicially declared to be invalid, unenforceable or void by a court of competent jurisdiction, such decision shall not have the effect of invalidating or voiding the remainder of this Agreement, and the part or parts of this Agreement so held to be invalid, unenforceable or void shall be deemed to have been deleted from this Agreement, and the remainder of this Agreement shall have the same force and effect as if such part or parts had never been included.

**Interpretation, Venue and Service of Process**

33. This Agreement shall be interpreted and construed in accordance with the laws of the State of New York, applicable to contracts made and to be entirely performed therein. The state courts of the State of New York in and for New York County and, if the jurisdictional prerequisites exist, the United States District Court for the Southern District of New York, and no other court or tribunal, shall have sole and exclusive jurisdiction to hear and determine any suit, action, proceeding, claim, controversy or dispute arising under or concerning this Agreement. The parties hereby consent to the jurisdiction of the said courts and to service of process upon them either personally or by certified or registered mail, postage prepaid, return receipt requested. Service of process made by certified or registered mail as herein provided shall be deemed complete three (3) days after the mailing thereof.

**Definition of "Author", Joint Authors**

34. The word "Author" shall include male, female, or a firm or corporation, and the plural. ~~In the case of more than one Author their rights and duties shall be joint and several, and each Author is hereby designated as agent for the other for purposes of service of process in any action or proceeding brought by the Publisher against either or both Authors arising out of or in any way relating to this Agreement or its breach. In the event this Agreement is with more than one Author and a dispute arises between the Authors that threatens to involve the Publisher in litigation, the Publisher shall have the right to cancel this Agreement if such dispute is not settled or finally determined by court order within ninety (90) days, and, in that event, any advances paid to or for the account of the Authors shall be repaid to the Publisher.~~

**Definition of Terms**

35. As used in this Agreement:

(a) "Suggested Retail Price" will mean the price on the jacket or cover of the applicable edition of the Work or, in the absence of a cover price, the retail list price for the edition suggested by the Publisher in its catalogs, order forms, or promotional material.

(b) "Amount Received" will mean amounts actually received by the Publisher, after allowances and return credits, and excluding postage and shipping costs or other similar charges, and sales, excise, or similar taxes, if any; and

(c) "Manufacturing Cost" will mean the per-unit cost of plant, paper, printing and binding of the applicable edition, but any copy sold at a discount of eighty-five percent (85%) or more from the Suggested Retail Price shall be deemed sold below Manufacturing Cost.

**Effect of Headings**

36. Descriptive words and statements used in the margins of this Agreement to summarize the contents of the paragraphs hereof are not to be deemed a part of this Agreement or an interpretation or representation as to the contents of such paragraphs.

Additional Provisions

37. *(a)* The Publisher agrees to consult with the Author regarding the jacket/cover copy and jacket/cover design for the Publisher's edition(s) of the Work; however, it is understood that this is a right of consultation, not approval, and that in the event of a dispute, the Publisher shall prevail.

*(b) The Publisher shall see that every license granted by it to publish the Work in the English language in the Schedule A Countries shall contain a specific requirement that the licensee will consult with the Author regarding the jacket/cover copy and jacket/cover design for such licensee's edition(s) of the Work; however, it is understood that this is a right of consultation, not approval, and that in the event of a dispute, the Licensee shall prevail.*

38. It is understood and agreed that any sale or license to a parent, affiliated division or subsidiary company of the Publisher shall be conducted on an arm's-length basis and shall be made in good faith.

39. Upon the Author's written request, but not more than twice per year, the Publisher agrees to use its best efforts to provide the following information subsequent to the semi-annual accounting: the total number of copies of the Work printed, the number of copies being held as a reserve against future returns, and an itemized list of subsidiary rights receipts. The Publisher agrees to use best efforts to see that its licensees provide the same.

40. (a) Advertisements may not be inserted or printed in any hardcover edition or electronic (i.e., ebook) edition of the Work, whether issued by the Publisher or its licensees, other than listings of other books by the Author that are published by the Publisher or its licensees, without the Author's prior written permission.

(b) Advertisements may not be inserted or printed in any paperback edition of the Work, whether issued by the Publisher or its licensees, other than a listing of books published by the Publisher, or by its licensees of their own publications, without the Author's prior written permission.

41. The Publisher shall, upon the Author's request, pay the Author's share of any income received from the license of subsidiary rights in the Work pursuant to the provisions of paragraph 10, less any outstanding debits and a reasonable reserve for estimated returns under paragraphs 6, 7, 8, and/or 9 in an amount which the Publisher feels is appropriate, within ninety (90) days of the Publisher's receipt of such monies.

42. If the Author licenses motion picture or television rights in the Work, the Publisher shall grant to the purchaser the right to publish excerpts and summaries of the Work, provided that they do not exceed 10,000 words in the aggregate, that they are used solely for the purpose of advertising, publicity and promotion, that use in photonovels is prohibited (to the extent that the Author controls such photonovels), and that their publication is in such form that it does not defeat the Author's claim to copyright.

43. Simultaneously with the delivery of the complete manuscript of the Work, the Author shall deliver to the Publisher twenty (20) to twenty-five (25) images (which will be mutually agreed upon by the Author and the Publisher) for inclusion in the Work, in accordance with Publisher's production specifications. Pursuant to subparagraph 3(h) above, the Author shall clear all necessary copyright permission requests for said images, at his sole cost and expense, for the full term and all territories, editions, adaptations, and media permitted under this Agreement. Simultaneously with the delivery of said images, the Author shall provide the Publisher with copies of all such copyright permission clearance agreements.

44. In the event the Publisher publishes an audio edition of the Work, the Author shall have approval over the choice of the reader and the script, such approval not to be unreasonably withheld or delayed. In addition, the Publisher shall first consider having Kirk Johnson ~~the Author~~ serve as the reader of such audio edition. However, it is understood and agreed that this is a right of first consideration, not a commitment between the Publisher and the Author; therefore, the Publisher may enter into an agreement with another reader of the Publisher's choice, and the use of any such alternate reader shall not be deemed a breach of this Agreement. If Kirk Johnson ~~the Author~~ does serve as the reader of any audio edition published by the Publisher, then the Publisher shall pay to the Author a separate one-time reader's fee of five thousand dollars ($5,000.00).

RIDER TO SUBPARAGRAPH 3(d):
If the Publisher does not so notify the Author within sixty (60) days, then upon the Author's written notice to the Publisher (such notice shall be delivered by registered or certified mail, postage prepaid, return receipt requested, to the Publisher's General Counsel with a copy to the editor of the Work) of the Publisher's failure to advise the Author, the Publisher shall have another fifteen (15) days to notify the Author of acceptance or nonacceptance by written notice.

RIDER TO SUBPARAGRAPH 9(b)(i):
In the event that the industry standard royalty rate for e-books has increased at any time up to five (5) years from the date of the Publisher's initial publication of the electronic edition of the Work, then upon the Author's request such royalty rate shall be subject to re-negotiation with the Publisher in accordance with such new industry standard. "Industry standard" as used herein shall mean the e-book royalty rate that is routinely paid by at least two (2) major publishers (such as HarperCollins, Grand Central Publishing/Little, Brown, and Simon & Schuster) to authors whose stature is similar to that of Kirk Johnson ~~the Author~~.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

IN WITNESS WHEREOF, the parties have duly executed this Agreement on the date first written above.

**Viking**
an imprint of Penguin Publishing Group,
a division of Penguin Random House LLC

By ______________________
Brian Tart
President and Publisher

By ______________________
John Schline
Senior Vice President, Corporate Director of Business Affairs

**MJ + KJ, Inc.**

By ______________________
Kirk Johnson Author

U.S.A
______________________
Country of Commercial Domicile

CONFIDENTIAL - ATTORNEYS' EYES ONLY

SCHEDULE A

Australia

British West Indies

Burma

Egypt

Fiji

Ghana

Iraq

Irish Republic

Jamaica

Jordan

Kenya

Namibia

New Zealand (including Ross)

Nigeria and the Cameroons

Sierra Leone

South African Republic

Trinidad and Tobago

United Kingdom (including Northern Ireland, the Isle of Man and Channel Islands)

Zambia

Zimbabwe

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Penguin
Random
House

August 24, 2015

MJ + KJ, Inc.
Attn: Kirk Johnson
c/o Kneerim & Williams
Attn: Katherine Flynn
90 Canal Street, First Floor
Boston, MA 02114

Dear Author:

We hereby agree that **MJ + KJ, Inc. and Kirk Johnson (together, "You")** ~~you~~ will be included as ~~an~~ additional insured under our media insurance policy in effect when the Agreement referred to below is fully executed (the "Policy"). The Policy provides for coverage as follows:

Your coverage will apply only to any Work published by us pursuant to our Agreement dated August 24, 2015 and will be subject to the terms of the Policy. The provisions of paragraph 2 of the Agreement will apply only to the extent that the Policy does not. The broad areas of coverage are libel, invasion of privacy, plagiarism, copyright infringement and certain forms of unfair competition, with coverage of no less than $5,000,000 per occurrence and $5,000,000 annual aggregate and the deductible in effect when and if a claim is made (currently $250,000 per claim), which we may share with **You** ~~you~~ as provided in the third paragraph of paragraph 2 of the Agreement.

Please indicate your agreement to the above by signing in the space below and returning this letter to us.

Viking,
an imprint of Penguin Publishing Group,
a division of Penguin Random House LLC

By ______________
Brian Tart
President and Publisher

By ______________
John Schline
Senior Vice President,
Corporate Director of Business Affairs

Agreed:

By ______________
MJ + KJ, Inc.
Author

375 Hudson Street, New York, NY 10014-3658
212 366 2000
global.penguinrandomhouse.com

Viking,
an imprint of Penguin Publishing Group,
a division of Penguin Random House LLC
375 Hudson Street
New York, NY 10014

Dear Sirs:

I refer to the proposed agreement dated August 24, 2015 ("Agreement"), a copy of which is attached hereto, between **MJ + KJ, Inc.**, described in the Agreement and herein as the "Author," and Viking, an imprint of Penguin Publishing Group, a division of Penguin Random House LLC, described in the Agreement and herein as the "Publisher," for the publication of a certain work tentatively entitled **THE FEATHER UNDERGROUND by Kirk Johnson**, described in the Agreement and herein as the "Work."

I have an interest in the Author and in having the Work published by the Publisher, and as an inducement to the Publisher to enter into the Agreement, I hereby unconditionally guarantee, promise and agree with the Publisher, its successors and assigns that the Author will, in all respects, faithfully perform and fulfill all obligations of the Agreement on its part to be performed and fulfilled at the time and in the manner therein provided. I also unconditionally guarantee that the Work is a work made for hire within the meaning of the United States Copyright Law and that the Author is the owner of copyright in the Work and has full power and authority to enter into the Agreement.

This Guaranty is and shall be construed to be an absolute, unlimited and continuing guaranty. The Publisher shall have the right from time to time in the sole discretion of the Publisher and without any notice to or consent of the undersigned and without affecting, impairing or discharging in whole or in part, the liability of the undersigned hereunder, but only with the agreement of the Author, to modify, change or supplement, in any respect whatever, the Agreement or any portion or provision thereof; to grant extensions of time and other indulgences of any kind; and to compromise, release, substitute, exercise, enforce, or fail or refuse to exercise or enforce any claims, rights or remedies of any kind which the Publisher may have against the Author.

This Guaranty is executed and delivered in the State of New York and shall be construed according to the laws thereof applicable to contracts made and to be entirely performed therein, without giving effect to New York's choice-of-law rules or to any rule of construction that allows or directs that ambiguities be construed against the drafter of a contract. This Guaranty cannot be changed or terminated except in writing, signed by the Publisher. The undersigned hereby waives notice of the acceptance of this Guaranty.

DATED:

Kirk Johnson