# EXHIBIT 32

Penguin
Random
House

AGREEMENT made this **8th** day of **July**_____, 2019, between MJ + KJ, Inc. (the "Author"). **c/o The Kneerim & Williams Agency LLC** whose address is **90 Canal Street, Boston, Massachusetts 02114 (Attn: Katherine Flynn)**, and **Viking**, an imprint of Penguin Publishing Group, a division of Penguin Random House LLC, with offices at 1745 Broadway, New York, New York 10019 ("Publisher").

The parties to this Agreement wish to publish and have published a certain work (the "Work") by **Kirk Wallace Johnson** provisionally entitled:

### THE FISHERMEN AND THE DRAGON
(final title to be mutually agreed)

In consideration of the mutual promises set forth in this Agreement, the parties agree as follows:

1. **The Work.** The Author shall deliver to Publisher a new and original manuscript of the Work, containing approximately **90,000** words and **20-25 maps**, photographs or illustrations integral to the Work.

2. **Description of the Work.** The Work shall **chronicle the 1981 clash between newly re-settled Vietnamese refugees and the Ku Klux Klan over fishing rights along the coast of Texas.**

3. **Grant of Rights; Territories.** The Author grants to Publisher, during the full term of copyright (including renewals and extensions thereof) applicable to the Work in each country covered by this Agreement, the right to publish, distribute, sell and otherwise make available, any and all editions and/or formats of the Work, in whole or in part, and to license said rights on such terms as Publisher deems advisable, as follows:

> Exclusively throughout the world (the "Exclusive Territories") in **the English** language.

4. **Advance Against Royalties.** (a) Publisher shall pay to the Author, as an advance against and on account of all royalties and other sums accruing to the Author under this Agreement, the sum of ▮▮▮▮▮▮▮ **Thousand Dollars ($**▮▮**000.00)**, payable as follows:

> $▮▮**000.00 on the execution of this Agreement;**
> $▮▮**000.00 on acceptance of the complete manuscript of the Work;**

l

CONFIDENTIAL - ATTORNEYS' EYES ONLY

$▮000.00 on Publisher's initial publication of the Work, but in any event not later than twelve (12) months after Publisher's acceptance of the complete manuscript of the Work; and

$▮000.00 one (1) year after Publisher's initial publication of the Work.

(b) If, as of twelve (12) months following Publisher's initial publication, the Actual Earnings of the Work equals or exceeds $▮000.00, Publisher shall pay the Author the sum of ▮Thousand Dollars ($▮000.00) as an additional advance against and on account of all monies accruing to the Author hereunder.

Such additional advance payment, if earned, shall be payable within thirty (30) days after the close of the royalty accounting period during which such Actual Earnings threshold is reached. As used herein, "Actual Earnings" shall mean (i) the Author's royalties from sales of the Work pursuant to Paragraph 11, less returns and a reasonable reserve for returns, and (ii) the Author's share of subsidiary rights income pursuant to Paragraph 12 actually received by Publisher.

5.  **Delivery and Acceptance of Manuscript.** (a) The Author shall deliver to Publisher on or before July 1, 2020, one copy of the complete Work (in an electronic format acceptable to Publisher), satisfactory to Publisher in style, content, length and form. ~~Prior to the delivery of the complete Work, the Author shall deliver "Progress Materials" which are defined as~~

    (i) If the Author fails to deliver the complete Work by the delivery date specified above, after a thirty (30) day grace period **from such due date or such other date as may be mutually agreed upon in writing**, Publisher may demand, in writing, that the Author return all sums theretofore paid to the Author by Publisher in connection with the Work. Upon receipt of these sums by Publisher, this Agreement shall terminate. The Author shall not, for a period of ~~three (3) years~~ **eighteen (18)** *twelve (12)* months after termination hereunder, self-publish the Work or submit any partial or complete manuscript or **revised** proposal for the Work, or any **substantially** similar work, to any publisher before offering it to Publisher under the same terms as are contained in this Agreement.

    (ii) If Publisher **and the Author mutually** determine that the published Work will require materials such as photographs, illustrations, an appendix, a bibliography, or other supplementary matter (individually or collectively, "Related Materials"), the Author shall furnish these to Publisher in reproducible form at a mutually agreeable time; if the Author does not do so, Publisher may supply them at the Author's **reasonable** expense.

    (iii) If permission from others is required for publication of any material contained in the Work, including any visual material, or for the exercise of any other right conferred by this Agreement (including the right to promote the Work), the Author shall be responsible for obtaining such permissions at the Author's own expense and shall submit them, in form satisfactory to Publisher, with the complete Work. Such permissions shall permit the exercise by Publisher and its licensees of all the rights granted to Publisher.

2

(iv) Publisher shall have the right to commission the preparation of an index, reasonable to the size and scope of the Work, at Author's own **reasonable** expense *(such expense not to exceed $1,500.00)*, unless the Author provides an acceptable index at the time of delivery of the complete Work or within a mutually agreeable time period in accordance with Publisher's production requirements.

(v) *Except for index fees, a*ny sums that Publisher has paid on the Author's behalf by reason of Subparagraphs 5(a)(ii-iv) above may be deducted from any portion of the advance payable to the Author pursuant to Paragraph 4 of this Agreement; if the total advance has already been paid, however, any such sums will be billed to the Author directly or, at Publisher's discretion, charged to the Author's royalty account. *It is understood and agreed that any sums that Publisher has paid on the Author's behalf with respect to the index shall be charged to the Author's royalty account.*

(b) Publisher will inform the Author in writing, within ~~ninety (90)~~ **sixty (60)** days following Publisher's receipt of the complete Work ~~or Progress Materials~~ delivered pursuant to Subparagraph 5(a) above, whether or not the Work ~~or any Progress Materials are~~ is acceptable. ~~Acceptance of Progress Materials shall in no event be deemed acceptance of the complete Work.~~

(i) If Publisher concludes that the Work ~~or the Progress Materials~~ delivered **is** unacceptable **for editorial reasons** but could be revised to Publisher's satisfaction, Publisher will provide written editorial comments to the Author with respect to the revisions required, and the Author shall have ~~thirty (30)~~ **sixty (60)** days **unless another period of time is otherwise mutually agreed**, after receipt of such comments to make the revisions. Should Publisher, in its sole judgment, conclude that the Work ~~or the Progress Materials~~ as first submitted cannot be revised to its satisfaction within a timely period, or should the Author fail to deliver a revision within the said ~~thirty (30)~~ **sixty (60)** days **(unless another period of time is otherwise mutually agreed)**, or should Publisher, after the ~~thirty~~ **sixty**-day revision period, find that the revised Work ~~or the revised Progress Materials are~~ **is** still unacceptable for any **editorial** reason, Publisher may reject the Work by written notice to the Author.

(ii) If the Work is rejected this Agreement shall terminate upon the condition that the Author shall use ~~best~~ **commercially reasonable** efforts to sell the Work or any portion thereof elsewhere and shall repay any and all sums previously paid to the Author under this Agreement from all proceeds from any sales or license of rights ~~of any nature~~ in the Work **granted to Publisher herein.** Any such proceeds, up to the total amount of any and all sums paid to the Author under this Agreement shall be deemed "First Proceeds." In order to effectuate the foregoing, the Author hereby (1) assigns and transfers to Publisher the Author's right to receive First Proceeds and (2) authorizes and directs any third party from whom the Author is entitled to receive First Proceeds to pay such sums directly to Publisher on Publisher's written demand therefor.

(c) If Publisher elects to have the Work reviewed by its counsel prior to publication, the Author shall cooperate in the vetting process and shall make such changes in the Work as are requested by Publisher's counsel. If the Author and Publisher's counsel are unable to agree upon the requested changes, and Publisher determines that it is unable to publish the Work due to the risks of liability, the Author shall promptly return to Publisher any amounts advanced and, upon

3

receipt of such repayment, this Agreement shall terminate. If Publisher's counsel deems changes advisable after first publication, the Author shall cooperate with Publisher's counsel in determining the appropriate changes. Notwithstanding anything to the contrary contained herein, the Work will be deemed acceptable only when it is acceptable to Publisher's counsel and in no event will Publisher be obligated to publish or continue to publish the Work if, in the judgment of its counsel, such publication may lead to legal liability. No changes or revisions made pursuant to this paragraph shall be deemed to alter or affect the warranties and indemnities contained in Paragraph 15 of this Agreement.

**6. Proofreading and Author's Corrections.** No changes, other than copyediting, shall be made in the Work by Publisher without the consent of the Author. Following acceptance of the Work and in the course of preparing it for composition, Publisher shall be authorized to exercise customary editorial privileges and to make the manuscript conform to Publisher's standard style of punctuation, spelling, capitalization and usage. The Author shall cooperate in making any required corrections, approving the copyedited Work, and reading, correcting, and returning promptly all page and/or galley proofs. **The final copyedited manuscript of the Work shall be submitted to the Author for review, and no further changes shall be made in the text of the Work without the Author's approval.** The cost of the Author's alterations (other than correction of printer's errors) in excess of ten percent (10%) of the cost of composition shall be paid by the Author as described in Subparagraph 5(a)(v) above, and the Author shall be entitled to see the bill for such charges. Upon Publisher's reasonable request **and with the mutual agreement of both parties**, in order to keep the Work topical, the Author shall revise/update the Work from time to time following first publication. **If revisions amount to more than ten percent (10%) of the most current edition of the Work, then the Author and Publisher shall mutually agree upon the amount of an additional advance to be paid to the Author.**

**7. Publication.** (a) Except as otherwise set forth in this paragraph, Publisher will, within eighteen (18) months following acceptance of the complete Work and Related Materials, publish or cause publication of the Work *(with reasonable efforts to do so within twelve [12] months following acceptance)*, in such formats, editions, style, and manner, under such imprint, at such cover price, and with such jacket, cover or package, as Publisher determines **(Publisher shall consult with the Author regarding jacket/cover design and jacket/cover copy *and interior design* for Publisher's editions(s) of the Work; however, it is understood that this is a right of consultation, not approval, and in the event of a dispute the Publisher shall prevail)**. Nothing herein shall require Publisher to publish each and every edition permitted to be published or licensed hereunder. Should Publisher fail to publish or cause publication of the Work within such time period, the Author's sole remedy shall be ~~either of~~ the following option: ~~(i) upon written notice to Publisher, the Author may publish the Work or grant the rights to the Work to another publisher, subject to the Author's obligation to repay to Publisher, out of First Proceeds from such publication or such grant, all sums previously advanced for the Work under this Agreement, or~~ (ii) upon written notice to Publisher, the Author may demand publication of the Work and thereafter may terminate this Agreement if publication still has not occurred ~~six (6)~~ **three (3)** months following Publisher's receipt of such notice. If the Author terminates this Agreement for non-publication pursuant to this Subparagraph 7(a)~~(ii)~~, damages recoverable by the Author shall be limited to the advance paid by Publisher up to the date of termination, and no other

4

CONFIDENTIAL - ATTORNEYS' EYES ONLY

damages, actions or proceedings, either legal or equitable, shall be claimed, instituted or maintained by the Author against Publisher.

(b) Publisher's failure to publish or cause publication within the time period provided in Subparagraph 7(a) above will not be deemed to be a breach of this Agreement (and the Author shall not be entitled to any of the remedies set forth above) if the failure (i) is permitted by any provision of this Agreement; (ii) results from any business decision made by Publisher with the approval of the Author; or (iii) is attributable to strikes, wars, government restrictions, Acts of God, or any other cause beyond Publisher's reasonable control.

(c) Publisher may **in the good faith, reasonable judgment of Publisher,** at any time prior to publication choose not to publish the Work if past or future **(meaning the period between signing hereof and initial publication)** conduct of *Kirk Wallace Johnson,* **materially** inconsistent with *Kirk Wallace Johnson's* reputation at the time this Agreement is executed, comes to light and results in sustained, widespread public condemnation of *Kirk Wallace Johnson* that materially diminishes the sales potential of the Work. Should Publisher elect not to publish the Work pursuant to this Subparagraph 7(c), Publisher shall give the Author timely written notice of such decision **with an explanation and reasonable evidence of such unmarketability, and will provide the Author with a reasonable opportunity to respond, considering the Author's response in good faith. If Publisher thereafter nevertheless elects not to publish the Work,** all rights in the Work shall revert to the Author, no further advances shall be payable, and the Author shall not be required to repay any sums paid to date.

(d) ~~If Publisher has not commenced production of the Work in the Spanish language within two (2)~~ **one (1)** ~~year following its initial English-language publication, Publisher shall, upon written notice from the Author, revert Spanish-language rights in the Work.~~

**8. Promotional Materials/Promotion by the Author.** (a) The Author shall submit to Publisher, for use in connection with the publication, licensing and promotion of the Work, pre-approved biographical data and a pre-approved photograph of *Kirk Wallace Johnson,* of quality acceptable to Publisher.

(b) Publisher may use, or permit others to use, *Kirk Wallace Johnson's* name and the **approved** likeness of *Kirk Wallace Johnson* obtained pursuant to Subparagraph 8(a), the title of the Work, and selections from the Work in advertising, promotion and publicity related to the publication and/or licensing of the Work, including broadcast, without charge, by radio, television or cable, or distribution via any form of electronic transmission, including online or satellite-based data transmission. Likewise, the Author may use the same portions of the text of the Work that Publisher makes available for promotional use, provided that such use carries the current copyright notice, a credit line to Publisher, and, whenever possible, a link to Publisher's website. The Author's use of any additional material from the Work for promotional purposes shall be subject to Publisher's **reasonable** approval.

(c) All details of the advertising and promotion of the Work shall be determined by Publisher *in meaningful consultation with the Author*. If Publisher requests *Kirk Wallace Johnson's* cooperation in promoting the Work, the Author shall *ensure that Kirk Wallace Johnson shall* be

5

reasonably available for such promotional activities. **Publisher shall pay *Kirk Wallace Johnson's* reasonable travel expenses (e.g. transportation, accommodations, and food) for any such promotional activities requested by Publisher.**

**9. Author Copies.** Upon Publisher's publication, the Author shall be entitled to receive ~~ten (10)~~ ~~twenty-four (24)~~ *forty (40)* hardcover, ~~twenty-four (24)~~ *forty (40)* paperback and retail audio copies of its edition of the Work and two (2) copies of any audio edition published for the library market, **and the Author's agent shall be entitled to receive ten (10) hardcover and twenty (20) paperback copies of the Work and one (1) retail audio copy of the Work.** The Author may purchase additional copies for personal use and not for re-sale at one-half (½) the cover price. The Author will be billed for these copies and payment shall be made prior to shipping unless the Author's royalty account has sufficient excess royalties accrued over and above the advance payable to the Author so that these charges can be recouped from the Author's royalty account.

**10. Copyright.** Notice of copyright in the Work shall appear in each copy of the Work published by Publisher and shall be in the following name:

**MJ + KJ, Inc.**

**Further, Publisher shall require each of its licensees to print the appropriate copyright notice in that licensee's edition of the Work. Publisher agrees, upon first publication of the Work, to register the copyright in the name of the Author in the United States in compliance with the Universal Copyright Convention.**

If the copyright of the Work is infringed, and if the parties proceed jointly, the expenses and recoveries, if any, shall be shared equally. If they do not proceed jointly, either party shall have the right to prosecute such action, and such party shall bear the expenses thereof, and any recoveries shall belong to such party.

**11. Royalties.** Publisher shall pay to the Author, or credit to the Author's account, the following royalties on all copies of Publisher's editions of the Work sold, distributed or otherwise made accessible by any business means or model now known or later developed (for the purposes of this Agreement, the foregoing transactions shall be considered "sales" or copies that are "sold"), less actual returns and a reasonable reserve* for returnable copies.
     ***(After the fourth full accounting period following publication of the Work, any reserve held will be based upon the actual returns of the Work in the previous accounting period.)**

Royalties shall be based on either (i) the "Suggested Retail Price" which shall be defined as the price designated by Publisher for the applicable edition on book jackets and covers (as applicable) and/or in catalogs, order forms or promotional materials or (ii) the "Amount Received" which shall be defined as amounts actually received by the Publisher, after discounts,

6

allowances, return credits and applicable taxes, and excluding postage and shipping costs. Royalties shall be credited at the following rates:

(a) <u>Hardcover.</u>  On copies of a hardcover edition sold in the U.S., except as described in subparagraphs (i) through (m) and (s) below:

**On the first 5,000 copies:  10% of the U.S.  Suggested Retail Price on copies sold at a discount at or below 55% and 20% of the Amount Received on copies sold at a discount greater than 55%;**

**On the next 5,000 copies:  12½% of the U.S.  Suggested Retail Price on copies sold at a discount at or below 55% and 25% of the Amount Received on copies sold at a discount greater than 55%;**

**On all copies thereafter: 15% of the U.S.  Suggested Retail Price on copies sold at a discount at or below 55% and 30% of the Amount Received on copies sold at a discount greater than 55%.**

(b) <u>Trade Paperback.</u>  On copies of a trade paperback edition sold in the U.S., except as described in subparagraphs (i) through (m) and (s) below:  **7½% of the U.S. Suggested Retail Price on copies sold at a discount at or below 55% and 15% of the Amount Received on copies sold at a discount greater than 55%.**

(c) <u>Mass-Market Paperback.</u>  On copies of a mass-market paperback edition sold in the U.S., except as described in subparagraphs (i) through (m) and (s) below:

**On the first 150,000 copies: 8% of the U.S. Suggested Retail Price on copies sold at a discount at or below 55% and 16% of the Amount Received on copies sold at a discount greater than 55%;**

**On all copies thereafter:  10% of the U.S. Suggested Retail Price on copies sold at a discount at or below 55% and 20% of the Amount Received on copies sold at a discount greater than 55%.**

(d) ~~The royalties set forth in Subparagraphs 11(a), (b) and (c) for any Spanish-language edition shall be reduced by 1%.~~

(e) <u>Large Print.</u>  On all copies of a large-print edition of the Work sold in the U.S., except as described in subparagraphs (i) through (m) and (s)  below:  10% of the U.S. Suggested Retail Price for any hardcover edition and 7½% of the U.S. Suggested Retail Price for any paperback edition.

(f) <u>Omnibus.</u>  On all copies of any omnibus volume containing the Work and other works by *Kirk Wallace Johnson* sold in the U.S. except as described in subparagraphs (i) through (m) and (s) below:  the pro-rata share of 10% of the Amount Received for the omnibus as a whole.  **The Author shall have approval of any omnibus volume containing the Work, such approval not to be unreasonably withheld or delayed.**

7

BARTZ000004847

(g) <u>Canadian Sales.</u> On all copies of any edition sold in Canada, except as described in subparagraphs (i) through (m) and (s) below: Two-thirds (2/3) of the prevailing U.S. rate for that edition.

(h) <u>Other Export Sales.</u> (i) On all copies of any edition sold outside the U.S. and Canada: 10% of the Amount Received for any hardcover edition; and 5% 7% of the Amount Received for any paperback edition; and (ii) On royalty-inclusive copies provided to licensees outside the U.S.: 8% of the Amount Received.

(i) <u>Promotional and Special Sales.</u> On all copies sold outside of normal trade channels at a discount of 60% or greater and on all copies sold at a promotional discount of 65% or greater: 10% of the Amount Received.

(j) <u>Premiums.</u> On all copies sold of any premium edition (copies intended for free distribution and not for resale) **(subject to the Author's approval as to the product or service involved, such approval not to be unreasonably withheld or delayed)**: 5% of the Amount Received.

(k) <u>Educational Book Clubs and Book Fairs.</u> On all copies sold by book clubs or book fairs supplying the educational market: 6% of the Amount Received.

(l) <u>Proprietary Editions and Mail Order Continuity Sales.</u> On all copies sold of any proprietary edition specifically produced for a retail outlet or any edition sold as part of a direct marketing continuity program: 5% of the Amount Received.

(m) <u>Adult Book Clubs.</u> On all copies sold by an adult book club on a royalty-inclusive basis: 10% of the Amount Received.

(n) **Non-dramatic** Audio. (i) Except as provided in (ii) and (iii) below, on all copies sold of any **non-dramatic** audio recording developed from the Work (the "Audio Work") and made available by an audio publishing imprint of Publisher through regular wholesale, retail and library channels: 10% of the Amount Received.

(ii) On copies of the Audio Work sold through special markets such as mail order and premium or on copies of the Audio Work sold at a discount of 60% or greater: 5% of the Amount Received.

(iii) On all copies of the Audio Work delivered by means of digital distribution: 25% of the Amount Received.

(iv) For purposes of this Agreement, the Audio Work may constitute single and multiple audio cassettes, phonograph records, audio discs of any speed or size, magnetic recording tape, and any other medium for sound reproduction or transmission now known or later developed and may include verbatim selections from the Work, connecting narrative passages **(in abridged versions only)**, background music **(i.e., for intro and fade-out usage only)** and sounds supplied by Publisher.

8

BARTZ000004848

(v) During the term of this Agreement, the Author shall not, without Publisher's prior written consent, create or authorize or participate in the creation of any other **non-dramatic** audio program based on the Work.  Notwithstanding the foregoing, in the event the Author has reserved performance rights in the Work, the Author shall have the right to convey to the licensee of performance rights the right to produce an audio recording derived from the soundtrack of a motion picture, television, *radio/podcast* broadcast or play based on the Work.

(vi) **Subject to the Author's approval (not to be unreasonably withheld or delayed),** if more than one work of *Kirk Wallace Johnson* is recorded on the Audio Work, the royalty paid to the Author under this Agreement shall be in proportion to the amount of the Work used on the Audio Works.

(vii) The Author shall be given the opportunity to approve the script for any Audio Work based on an abridgment of the Work, provided that such approval shall not be unreasonably withheld or delayed.  If the Author has not approved or disapproved the script within ten (10) business days following the Author's receipt thereof, the script shall be deemed approved.

*(viii) The Publisher shall consult with the Author regarding Publisher's choice of the reader of the Audio Work.*

*(ix) If Audio rights in the Work are not exercised within twelve (12) months following Publisher's initial publication of the Work, the Author may make written demand to Publisher to exercise such rights, either by means of publication or license.  Publisher shall notify the Author in writing within thirty (30) days after receipt of Author's demand whether it intends to comply.  If Publisher does not respond, or is unwilling or unable to produce or license Audio rights within six (6) months of Author's demand, Audio rights shall then immediately revert to the Author.*

(o) Digital.  (i) On all copies of the Work sold as a "Book-Based Digital Edition" ~~or a~~ ~~"Transformative Digital Version"~~ (as defined below): 25% of the Amount Received.  **Notwithstanding the foregoing, if, during the term of this Agreement, the Book-Based Digital Edition royalty in the Penguin Random House LLC boilerplate author contract reflects a change to the Author's advantage, Publisher will amend this Agreement to reflect that new royalty.**

(ii) "Book-Based Digital Edition" means the text of the Work and/or any illustrations, photographs or other material contained in the Work, in whole or in part, whether complete, condensed, adapted or abridged, made accessible by any means of distribution or transmission, now known or later developed, including but not limited to electronic book readers, mobile operating systems or browser-based platforms, intended to make the text and any illustrations, photographs or other material contained in the Work available in **non-dramatic** visual form for reading other than in printed form. A Book-Based Digital Edition to which Publisher does not assign a Suggested Retail Price, including but not limited to instances in which Publisher's income is based on a share of advertising revenue, subscription revenue, or revenue derived from micro-transactions, is referred to herein as a "Non-SRP Edition."

9

BARTZ000004849

(iii) If the Author objects to the inclusion of any Non-SRP Edition of the Work in any digital channel, the Author may send Publisher a written request to remove such Non-SRP Edition from such digital channel and Publisher shall comply within a reasonable period of time thereafter.

(iv) The Author shall have approval over the following: (x) condensations and abridgments of any Book-Based Digital Edition; (y) any material or functionalities added by Publisher to any Book-Based Digital Edition (*e.g.*, text, sounds, images, interactivity or graphics) that are more than incidental to the Work; and (z) other adaptations that alter the expression of the content of the Book-Based Digital Edition. In the event that Publisher controls audio recording rights, Publisher shall be permitted to integrate an audio recording of the Work into any Book-Based Digital Edition, and the royalty set forth in this Subparagraph 11(o) shall apply.

(v) Subject to the foregoing, the grant of rights to Publisher pursuant to this Paragraph 11(o) is not intended by the parties to include a grant of television, motion picture or allied rights.

(vi) "Transformative Digital Version" means digital or electronic products or services now known or later developed that are derived or adapted from the Work or from portions of the Work and that include no more than incidental portions of the text of the Work and/or any illustrations, photographs or other material contained in the Work. **Transformative Digital Version rights are reserved to the Author.**

(p) ~~Paper Products.  On all copies sold of paper products based on the Work (including, without limitation, journals, note cards, note pads, postcards, calendars, coasters, organizers):  5% of the Amount Received.~~

(p) Modern Library/Everyman's Library/Penguin Deluxe Classics.  On all copies sold of any Modern Library (regular or giant), Everyman's Library or Penguin Deluxe Classics **reprint** edition: 5% of the U.S. Suggested Retail Price except as described in subparagraphs (i) through (m) above and (s) below.

(q) Online Sales.  For copies sold through online distributors, including Publisher's proprietary websites, the applicable royalty specified above, based on the format, discount and territory that apply to the transaction.

(r) Advertising.  For all supplemental revenue earned from advertising placed in ~~the Work or in~~ relationship to the electronic display of pages from the Work, and in connection with the program currently known as "Google Book Search" and any similar search and discovery program that generates advertising revenue for Publisher, the Author will receive 50% of the Amount Received, less commissions paid by Publisher in connection with any such advertising.

(s) No Royalty Copies.  No royalties shall be paid on copies provided to any party at or below the cost of manufacture, or sold below manufacturing cost as remainders, or given away for review, advertising, sample, sales promotions, or like purposes, or on portions of the Work appearing as previews in other books published by Publisher or on portions of the Work used or licensed for advertising or publicity without compensation.  Publisher shall notify the Author

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004850

before the Work is remaindered, which event shall not occur before one (1) year following initial publication of the Work, and shall offer the Author the opportunity to purchase copies of the Work at the remainder price, plus freight; however, any inadvertent failure by Publisher to so notify the Author shall not be deemed a breach of this Agreement. Any purchases made at a discount of eighty percent (80%) or greater from the Suggested Retail Price shall be deemed a sale below the cost of manufacture. Notwithstanding the foregoing, in the event that a remainder sale is made above the cost of manufacture, the royalty shall be 10% of the Amount Received above manufacturing cost.

12. **Subsidiary Rights.** (a) On editions of the Work licensed to a third party who assumes the role and functions of a publisher in creating, producing, marketing and disseminating its own branded editions or excerpts of the Work (*i.e.*, not a distributor, selling agent or retailer of Publisher's editions or excerpts) (a "Third Party Publisher"), Publisher shall pay to the Author a share of the net proceeds of such licenses, which shall be divided as set forth below and paid or credited to the Author's account (less the amount of any advances then unearned) at the time of the next regular accounting following receipt. Upon Author's written request, Publisher will provide the Author with copies of executed licenses in which the Author's share of the proceeds is Five Hundred Dollars ($500) or greater. **Upon the Author's written request, which shall not occur more than once a royalty period and after Publisher shall have recouped all advances and any other sums due it hereunder, Publisher agrees to flow through the Author's share of One Thousand Dollars ($1,000) or more received by Publisher pursuant to this Paragraph 12; such monies shall be payable within thirty (30) days of either Publisher's receipt of the Author's written request or Publisher's receipt of the monies, whichever is later.**

| | Publisher's Share | Author's Share |
|---|---|---|
| First Serial (use of serializations or excerpts, in newspapers, magazines or other periodicals before publication of the Work) *(subject to the Author's approval as to placement and cut, not to be unreasonably withheld or delayed)* | 10% | 90% |
| Second Serial (use of serializations or excerpts, in newspapers, magazines or other periodicals after publication of the Work, and condensations, digests and anthologies) *(subject to the Author's approval, not to be unreasonably withheld or delayed)* | 50% | 50% |
| Book Club | 50% | 50% |
| Permissions | 50% | 50% |
| Trade or Mass-Market Paperback ~~(Publisher shall consult with the Author prior to licensing such rights)~~ *(subject to the Author's approval, not to be unreasonably withheld or delayed)* | 50% | 50% |

11

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004851

| | | |
|---|---|---|
| Other Book Publication (including, but not limited to, hardcover\*, large-type editions, mail order, premium\*\* and other special editions and schoolbook and book fair editions licenses) *\*(subject to the Author's approval, not to be unreasonably withheld or delayed)* ~~(subject to prior consultation with the Author)~~ **\*\*(subject to the Author's approval as to the product or service involved, such approval not to be unreasonably withheld or delayed)** | 50% | 50% |
| British Commonwealth (which may include any of the rights granted elsewhere in this Agreement, including First Serial and Audio Recording rights, even when such rights are not granted to the Publisher in the Exclusive Territories) | 20% | 80% |
| ~~Translation (which may include any of the rights granted elsewhere in this Agreement, including First Serial and Audio Recording rights, even when such rights are not granted to the Publisher in the English language)~~ | ~~25%~~ | ~~75%~~ |
| Book-Based Digital Edition | 50% | 50% |
| ~~Transformative Digital Version~~ | ~~50%~~ | ~~50%~~ |
| Audio Recording | 50% | 50% |
| ~~Paper Products (such as journals, note cards and calendars)~~ | ~~50%~~ | ~~50%~~ |
| ~~Commercial and Merchandising (derivative products such as the use of a title or character for clothing, toys, board games or video games)~~ | ~~50%~~ | ~~50%~~ |
| ~~Performance (motion picture, television, home video, video on demand and all other forms of audio-visual, radio, live stage, soundtrack and music publishing, and all allied merchandising rights derived therefrom)~~ | ~~10%~~ | ~~90%~~ |

**The Author retains the right of editorial approval over abridgments and condensations, such approval not to be unreasonably withheld or delayed.**

(b)  Publisher shall have the right to grant transcription or publication rights in the Work in Braille or other non-book formats, without charge, specifically for use by the visually impaired or those otherwise disabled.

(c)  If Publisher exercises any of the rights specified in this Paragraph 12 itself in lieu of licensing them, the royalty rates, unless specified in Paragraph 11, shall be subject to agreement between the parties. For the avoidance of doubt, the parties hereby specifically acknowledge and agree that any license of rights set forth in this Paragraph 12 to an affiliate of Publisher shall be negotiated at arm's length and on traditional terms similar to those of Publisher's comparable agreements for similar licenses between Publisher and unaffiliated companies.

~~(d)  If the Author has retained audio recording rights in the Work, the Author shall give Publisher the right of first opportunity for the acquisition of these rights before licensing them~~

12

  BARTZ000004852

~~elsewhere. If Publisher does not acquire such rights, the Author will not authorize publication of an audio recording of the Work earlier than Publisher's first publication.~~

~~(e)    If the Author has retained First Serial rights in the Work, the Author will not license such rights anywhere in the world without the approval of **first consulting with** Publisher with respect to the timing and excerpt of the Work so that Publisher may coordinate publication of the first serial and Publisher's edition of the Work.~~

(f)    If the Author has retained and disposes of performance rights, Publisher shall grant the purchaser of those rights the privilege to publish excerpts and summaries of the Work in the aggregate not to exceed 7,500 words [or ten percent (10%) of the total Work, whichever is less], for advertising, publicizing, and promoting such rights and not for resale, provided, however, that the Author's grant shall require the purchaser to take all steps necessary to protect the copyright of the Work. The Author will use ~~best~~ **reasonable** efforts to secure the agreement of the purchaser of performance rights to grant Publisher the right to use photographic stills and the title of the performance in connection with any tie-in edition of the Work in any format.

**13. Statements of Account.** Publisher shall prepare a statement of account semi-annually, in accordance with its regular accounting practices, as of the *31ˢᵗ day of January and the 31ˢᵗ day of July* for all six-month periods during which copies of the Work are sold, and shall send these statements, together with payment of the amount due, if any, within four (4) months following the end of the period. The Author's share of amounts received from the disposition of licenses granted under this Agreement shall be computed after deduction of any foreign taxes withheld, bank charges and any of Publisher's sub-agent commissions. **(Further, Publisher will, upon the Author's written request, provide the Author with a copy of any licensee's royalty statements in regard to the Work.)** State, federal and foreign taxes on the Author's earnings, when required by law to be withheld and paid by Publisher, shall be proper charges against the Author's earnings hereunder. If the Author has received any overpayment or is otherwise indebted to Publisher under this Agreement ~~or any other agreement~~ between the parties, Publisher may deduct the amount due from any sum due or to become due to the Author under this or any other agreement between the parties. **(An unearned advance shall be considered neither an overpayment to the Author nor an indebtedness of the Author to Publisher for the purposes of this Paragraph 13.)**

The Author shall have the right, upon reasonable written notice and at the Author's own expense, to examine the available books and records of Publisher insofar as they relate to the Work, provided that the examination is conducted during usual business hours, is in accordance with customary accounting procedures, and occurs no more than once a year and not later than ~~two (2)~~ **three (3)** years from the Author's receipt of the statement in question. **If any such examination reveals a discrepancy of five percent (5%) or more to the Author's disadvantage, then Publisher shall pay the reasonable cost of such examination, up to the amount of such discrepancy, together with the amount due.**

**Publisher may retain a reserve against returns (as set forth in Paragraph 11 herein) on any accounting statement. Any reserve held will be related to sales and returns of the Work during the accounting period for which the reserve is held and Publisher's reasonable**

CONFIDENTIAL - ATTORNEYS' EYES ONLY                BARTZ000004853

expectation of sales and returns at the time the accounting statement for such period is prepared. On the Author's written request, not more than once an accounting period and to the extent such information is not already provided on the accounting statement, Publisher shall provide information on the current reserve for returnable copies, and the number of copies of the Work printed, shipped and returned. *(See also Paragraph 11 above)*

If Publisher shall, during the existence of this Agreement, default in the delivery of semi-annual statements or in the making of such payments as provided herein and shall neglect or refuse to deliver such statements or make such payments within thirty (30) days after written notice of such default, except for a good-faith dispute as to the statement or monies owed, (such notice to be sent to the General Counsel of Penguin Random House LLC via registered mail, return receipt requested), this Agreement shall terminate at the end of such thirty (30) days without prejudice to the Author's claim for any monies which may have accrued under this Agreement or to any other rights and remedies to which the Author may be entitled.

**14. Competitive Works.** The Author will not, without Publisher's prior written consent, (i) publish or authorize publication by anyone other than Publisher of any text-based edition, adaptation, abridgment or condensation of the Work, or of any text-based derivative work (including, but not limited to, any ~~dramatic play, screenplay, television script,~~ novelization, graphic novel or photonovel) *in the English language* based on the Work or bearing a like title; or (ii) publish or authorize publication of any work, whether print or digital, containing material **substantially** similar to the Work if, in Publisher's **reasonable** judgment, such publication is likely to injure the sale of the Work or the merchandising of other rights granted herein. ~~If the Work is a work of fiction, the Author will not, without Publisher's prior written consent, publish or authorize publication of any other work of fiction by the Author, whether print or digital, within six (6) months of Publisher's first publication of the Work.~~

**15. Warranties and Indemnities.** (a) The Author warrants and represents: (i) that *Kirk Wallace Johnson* is the sole author of the Work; that the Author has the full power to enter into this Agreement; that the Author is the sole owner of all rights granted to Publisher in this Agreement; that if the Work is one of non-fiction, all statements asserted as facts are based on the Author's careful investigation and research for accuracy; that no material in the Work violates any contract of the Author express or implied; that the Author has not previously assigned, pledged or otherwise encumbered the rights granted herein; and that no material in the Work discloses any information given to the Author in confidence or on the understanding that it would not be disclosed or published; and (ii) that except for any previously published or unpublished materials created by others and Related Materials for which permissions are required, the Work is original, has not been published before, and is not in the public domain; that all information contained in the Work is lawful and has been lawfully obtained; that the Work does not contain any libelous matter, does not invade any right of privacy nor infringe upon any trademark, right of publicity, statutory or common law copyright, or any other personal or property right; and that any recipe, formula, or instruction contained in the Work is accurate and is not injurious to the user.

14

CONFIDENTIAL - ATTORNEYS' EYES ONLY

(b) In the event of any asserted claim or legal proceeding brought against Publisher ("Claims") based on an alleged violation of any of these warranties, Publisher shall have the right to defend the Claims by counsel of its own choosing. The Author shall indemnify Publisher and any seller or licensee of rights in the Work against any damages or losses incurred including any amounts paid in settlement, as well as against the cost of defending any Claims (collectively "Losses"). **No settlement shall be made without the prior written approval of the Author, such approval not to be unreasonably withheld or delayed. The Author may join in the defense of any such action with counsel of the Author's own selection at the Author's own expense.**

(c) Publisher shall include the Author as an "insured" in any publishing liability insurance that is in effect and that is applicable to the Work (the "Policy"). Publisher shall look to the proceeds of that insurance, subject to the terms and conditions of the Policy (which may or may not include defense costs) for payment of Losses that may become due from the Author by reason of third party covered Claims alleging violations of the warranties in Subparagraph 15(a)(ii) above. The parties agree that:

(i) the Author shall not be responsible for any premiums due under the Policy;

(ii) the Author shall be an insured only with respect to the Work that is the subject of this Agreement;

(iii) insurance coverage is for amounts in excess of the deductible but not greater than the Policy limits;

(iv) With respect to the Author's obligation to indemnify Publisher for Losses, the Author shall be responsible for the deductible in an amount up to twenty percent (20%) of the total advance payable under this Agreement, provided, however that if a Claim is successfully defended, the Author's responsibility for the deductible will be twenty percent (20%) of the total advance payable under this Agreement or fifty percent (50%) of the defense costs, whichever is less;

(v) In the event it is determined by Publisher or Publisher's insurer that a conflict of interest exists between the Author and Publisher in a Claim brought against both of them and the Author and Publisher cannot be represented together, a separate deductible will apply to the Author's defense of the Claim and any resulting Losses, and the Author shall be solely responsible for such deductible; and

(vi) In the event a Claim is brought against the Author only, the Author shall be solely responsible for the deductible.

(d) If any Claims are received by Publisher or the Author, the recipient shall promptly notify the other party. The Author and Publisher shall fully cooperate with each other in the defense of any Claims. Publisher may, in addition to any other remedies, withhold payments due the Author under this ~~or any other~~ Agreement ~~between the parties~~ to cover the Author's indemnity obligations under this Paragraph 15 **but not to exceed an amount reasonably related to the value of the Claim. [The deletions in the preceding sentence are made without prejudice to**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004855

any rights of set-off or counterclaim provided by law.] **If a Claim does not result in the commencement of litigation within twelve (12) months following its initial assertion, Publisher will release to the Author all amounts which it has been withholding for that Claim, subject to Publisher's right to withhold such amounts again if such Claim or a new Claim is activated.** The Author's failure to cooperate with Publisher in the defense of any Claims shall be deemed a breach of this Agreement and could result in the loss of the insurance coverage and shall entitle Publisher to terminate the liability limitations set forth in Subparagraph 15(c)(iv) above. The Author's warranties and indemnities shall survive the termination of this Agreement.

**16. Author's Property.** The Publisher shall not be responsible for loss or damage to any property of the Author. In the absence of a written request from the Author made prior to publication, Publisher, after publication of the Work, may dispose of the original manuscript and proofs.

**17. Advertising.** (a) No advertising shall appear in Publisher's hardcover, paperback or audio editions of the Work except that Publisher or its licensees may publish a listing of *Kirk Wallace Johnson's* other titles, and with respect to any paperback or audio edition of the Work, Publisher or its licensees may publish their own "house ads," **subject to the Author's approval, such approval not to be unreasonably withheld or delayed.**

(b) Subject to Paragraph 11(r) above, Publisher may place or authorize third parties to place advertising in relationship to the electronic display of pages or excerpts from the Work (including, without limitation, online search and discovery programs such as Google Book Search and Amazon's "Search Inside the Book") and other delivery of the Work in digital formats. Upon the Author's written request, Publisher will, to the extent possible, disable or disallow advertising otherwise authorized by this Subparagraph 17(b).

**18. Next Publication of Author's Work.** The Work will be *Kirk Wallace Johnson's* next published work (whether under *Kirk Wallace Johnson's* own name or under a pseudonym, and whether alone or in collaboration with anyone else), and except with the prior written permission of Publisher, **such permission not to be unreasonably withheld or delayed,** the Author will *ensure that Kirk Wallace Johnson will* not, prior to delivery of the complete manuscript of the Work, ~~write,~~ publish or contract with any other publisher to write any other work for publication **that would interfere with the timely delivery of the Work hereunder.**

**19. Option.** The Author grants Publisher the exclusive option to acquire the ~~same~~ rights ~~as have been granted in this Agreement~~ to the next full-length work to be written by *Kirk Wallace Johnson*. Publisher shall be entitled to a period of ~~sixty (60)~~ *thirty (30)* days after submission of a **detailed proposal** for such next work in which to make an offer for that work, and the Author agrees not to solicit any third party offers, directly or indirectly, during that period. If Publisher wishes to acquire such next work, the Author and Publisher will attempt to reach an agreement as to terms during a reasonable period of exclusive negotiation, **which shall not**

16

BARTZ000004856

exceed thirty (30) days. If they cannot reach an agreement, the Author shall be free to submit the detailed proposal for such next work elsewhere, ~~but the Author may not accept an offer from any other publisher on terms equal to or less favorable than those offered by Publisher~~. Publisher shall not be required to consider such next work before ~~publication~~ sixty (60) days after acceptance of the Work that is the subject of this Agreement. Publisher's option as set forth in this Paragraph 19 shall also apply to the next full-length work by each party to this Agreement included in the term "Author," whether such manuscript is written by such individual or entity alone or together with one or more other individuals or entities.

20. **Out-of-Print.** If, after the expiration of ~~three (3)~~ two (2) years from the date of Publisher's first publication of the Work, the Work is out of print, the Author may, by written notice to Publisher, request Publisher to reissue or license rights in the Work. Publisher shall notify the Author in writing within ninety (90) days after Publisher's receipt of a demand whether it intends to comply. If the Work is out of print and Publisher does not respond, or if, within six (6) months following its issuance of notice that it intends to comply, Publisher has not complied by reissuing the Work or entering into a license for a new edition, then this Agreement shall terminate and all rights granted to Publisher hereunder shall revert to the Author, subject to Publisher's continued participation, to the extent provided, in any licenses granted by Publisher. Publisher may dispose of any or all of the copies of the Work remaining on hand as it deems best, subject to the payment of royalties as provided. For thirty (30) days following termination of this Agreement pursuant to this Paragraph 20, the Author shall have the right to purchase available production materials (if any) at an amount to be **reasonably** determined by Publisher.

For the purposes of this paragraph, the Work shall be considered to be in print if it is available for purchase in the U.S. in a full-length English-language edition **through regular trade channels in any form(s) and such form(s) generate sales of at least three hundred (300) units in the aggregate over the two (2) consecutive accounting periods immediately preceding the Author's request for reversion of rights and the Work appears on Publisher's "reorder" form or such other listing of available titles,** or if there is any executed or pending agreement between Publisher and a licensee of Publisher for publication of the Work within ~~eighteen (18)~~ *twelve (12)* months.

21. **Governing Law.** Regardless of the place of its actual execution and performance, this Agreement shall be treated as though executed within the State of New York and shall be governed by New York laws. Any action or proceeding regarding this Agreement or the Work shall be brought solely in the New York courts (state or federal) in New York County.

22. **Assignment.** This Agreement, including the provisions of Paragraph 23 below, is binding upon the parties and the assigns, heirs, executors, successors or administrators of the Author and the assigns and successors of Publisher, but no assignment shall be binding upon either of the parties (and any purported assignment will be null and void) without the written consent of the other. The foregoing notwithstanding, Publisher shall in all events have the right to authorize or license publication or use of the Work, or to assign this Agreement, in whole or in part, to any of its member or parent companies, to any subsidiary or affiliated company, or as part of a merger

17

CONFIDENTIAL - ATTORNEYS' EYES ONLY

or in connection with the sale of all or substantially all of Publisher's business or the business of one of its divisions.

**23. Agency.** The Author hereby authorizes and appoints The Kneerim & Williams Agency LLC of 90 Canal Street, Boston, Massachusetts 02114 (Attn: Katherine Flynn) (the "Agent") to act as the Author's agent and to collect and receive all sums of money, royalty statements and notices due to the Author under this Agreement. Receipt by the Agent shall constitute receipt by the Author. The designation of the Agent as agent for the Author may be terminated only upon written notice to Publisher signed by the Author (or the Author's heirs, executors, administrators, successors or assigns). The Author may not alter or terminate the Agent's right to receive its commission hereunder without the Agent's prior written consent.

**24. Notices.** Any notices required or permitted to be given shall be in writing and shall be delivered personally or sent by registered or certified mail, postage prepaid, return receipt requested, to Publisher (with a copy to Publisher's Legal Department) or the Author (or the Author's agent) at the address for such party given above, or at such other addresses as the parties may from time to time designate by written notice given in the manner provided herein.

**25. Severability.** If any provision of this Agreement is found by a court of competent jurisdiction to be invalid, unenforceable or void, such decision shall not have the effect of invalidating or voiding the remainder of this Agreement, and the part or parts of this Agreement held to be invalid, unenforceable or void shall be deemed to have been deleted from this Agreement, and the remainder of this Agreement shall have the same force and effect as if such part or parts had never been included.

**26. Effect of Headings.** Descriptive words and statements used as headings in this Agreement to summarize the contents of the paragraphs hereof are not to be deemed a part of this Agreement or an interpretation or representation as to the contents of such paragraphs.

**27. Joint Authors.** ~~If there is more than one individual or entity constituting the "Author" hereunder, such individuals' or entities' rights and duties shall be joint and several, and each is hereby designated as agent for the other for purposes of service of process in any action or proceeding brought by Publisher against either or both arising out of or in any way relating to this Agreement or its breach. In the event this Agreement is with more than one author and a dispute arises between the authors that threatens to involve Publisher in litigation, Publisher shall have the right to terminate this Agreement if such dispute is not settled or finally determined by court order within ninety (90) days, and, in that event, if the Work has not been published, any advances paid to or for the account of the authors shall be promptly repaid to Publisher.~~

CONFIDENTIAL - ATTORNEYS' EYES ONLY

BARTZ000004858

**28. Reserved Rights.** All rights not expressly granted to Publisher pursuant to this Agreement are reserved to the Author, subject to Paragraph 14. ~~provided that the Author will not license or otherwise authorize the endeavor to require that any other English-language publisher of the Work shall coordinate publication of its editions of the Work with Publisher in order to avoid publication of any other English-language edition of the Work in the Open Market earlier than the date of first publication of Publisher's edition of the Work in the same format (e.g., hardcover, trade paperback, mass-market paperback, audio, or Book-Based Digital Edition or Transformative Digital Version), provided that Publisher publishes in accordance with Paragraph 7 above and provided that Publisher agrees to coordinate publication of its editions of the Work in each format with such other English-language publisher.~~

**29. Full Agreement.** This Agreement constitutes the full understanding of the parties and supersedes all prior agreements, understandings and proposals, whether written or oral with respect to the Work. No modification of this Agreement shall be binding unless contained in a writing signed by all parties. Subject to applicable statutes of limitations, no waiver by either party of any breach or default hereunder shall be deemed a waiver of any repetition of such breach or default or shall in any other way affect any of the terms or conditions hereof.

**AUTHOR**

**MJ + KJ, Inc.**

*Kirk Johnson*
By Kirk Johnson (Jul 2, 2019)

American

Author's Citizenship **(required)**

**Viking,**
an imprint of Penguin Publishing Group,
a division of Penguin Random House LLC

*Brian Tart*
By Brian Tart (Jul 8, 2019)

**Brian Tart**
President and Publisher

By David Sanford (Jul 8, 2019)

**David Sanford**
Senior Vice President,
Executive Director of Contracts and Permissions

19

BARTZ000004859

Viking,
an imprint of Penguin Publishing Group,
a division of Penguin Random House LLC
1745 Broadway
New York, New York 10019


Dear Sirs:

I refer to the proposed agreement dated **July 8, 2019** ("Agreement"), a copy of which is attached hereto, between **MJ + KJ, Inc.** described in the Agreement and herein as the "Author" and Viking, an imprint of Penguin Publishing Group, a division of Penguin Random House LLC, described in the Agreement and herein as "the Publisher", for the publication of a certain work entitled **THE FISHERMEN AND THE DRAGON by Kirk Wallace Johnson.**

I have an interest in the Author and in having the Work published by the Publisher, and as an inducement to the Publisher to enter into the Agreement, I hereby unconditionally guarantee, promise and agree with the Publisher, its successors and assigns that the Author will, in all respects, faithfully perform and fulfill all obligations of the Agreement on its part to be performed and fulfilled at the time and in the manner therein provided. I also unconditionally guarantee that the Work is a work made for hire within the meaning of the United States Copyright Law and that the Author is the owner of copyright in the Work and has full power and authority to enter into the Agreement.

This Guaranty is and shall be construed to be an absolute, unlimited and continuing guaranty. The Publisher shall have the right from time to time in the sole discretion of the Publisher and without any notice to or consent of the undersigned and without affecting, impairing or discharging in whole or in part, the liability of the undersigned hereunder, but only with the agreement of the Author, to modify, change or supplement, in any respect whatever, the Agreement or any portion or provision thereof; to grant extensions of time and other indulgences of any kind; and to compromise, release, substitute, exercise, enforce, or fail or refuse to exercise or enforce any claims, rights or remedies of any kind which the Publisher may have against the Author.

This Guaranty is executed and delivered in the State of New York and shall be construed according to the laws thereof applicable to contracts made and to be entirely performed therein, without giving effect to New York's choice-of-law rules or to any rule of construction that allows or directs that ambiguities be construed against the drafter of a contract. This Guaranty cannot be changed or terminated except in writing, signed by the Publisher. The undersigned hereby waives notice of the acceptance of this Guaranty.

DATED:


*Kirk Johnson*
Kirk Johnson (Jul 2, 2019)
**Kirk Wallace Johnson**

BARTZ000004860