DUNCAN FIRM, P.A.
James H. Bartolomei III (Bar No. 301678)
809 W. 3rd Street
Little Rock, AR 72201
Telephone: (501) 228-7600
Email: james@duncanfirm.com

*Attorneys for Objector Brenda Hampton*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Hon. Araceli Martinez-Olguin<br><br>Case No. 3:24-cv-05417-AMO<br><br>Hearing Date:    None Set<br><br>*[Declaration of Brenda Hampton concurrently filed as Exhibit A]* |

**OBJECTION BY BRENDA HAMPTON TO PROPOSED CLASS ACTION SETTLEMENT**

**I. INTRODUCTION: THE "GET NOTHING" FALLACY**

Class Member Brenda Hampton ("Hampton") is the copyright holder and author of at least 25 works that Anthropic pirated as confirmed on the settlement works list. *See* Declaration of Brenda Hampton ("Hampton Decl.") at ¶5. Hampton has standing, and her declaration is incorporated by reference here. Hampton does <u>not</u> intend to cause any delay for her fellow class members, but she does respectfully request that the Court correct the Notice as argued in her objection.

This Objection is filed pursuant to Federal Rule of Civil Procedure 23(e)(5) because the "Notice of $1.5 Billion Proposed Class Action Settlement Between Authors & Publishers and Anthropic PBC", (amended on or about January 8, 2026 per court order) (Dkt. 535) (the "Notice") is <u>not</u> a neutral disclosure of the rights of class members ("Class Members"). Hampton believes it is a tool of

suppression drafted in a non-neutral way that could steer and intimidate authors into a settlement by hiding and obscuring the potential value of their claims and failing to disclose what they are potentially releasing if they settle.

The Notice presents Class Members with a false and coercive choice: take a guaranteed estimated $3,000 or "get nothing." This framing is factually misleading and constitutionally defective. It obscures the reality that by "getting nothing" if they don't accept the settlement, an author retains a claim for willful copyright infringement worth up to $150,000 per book. Why did the parties leave this out? Only they know.

For Objector Brenda Hampton, class member, author and copyright holder of at least 25 works on the settlement list, the Notice obscures a critical mathematical reality:

- The Settlement Offer: Approximately **$75,000** (~$3,000 x 25 books).
- **The Potential Value (Opt-Out):** Up to **$3.75 Million** ($150,000 x 25 books) in statutory damages.

The Notice systematically fails to give adequate notice of this trade-off. It segregates the "risk" from the "reward" by burying the potentiality of statutory damages for each work on Page 6, while the "Options" table on Page 2 — the only page many authors will likely read — defines opting out as a "you get nothing" option. Specifically, an author like Hampton will "**give up the right to receive any payment**."

Additionally, page 16 of the Notice misleadingly reads, "**For example, if you are an author and choose to opt out your work, that means you will not receive any payment, your co-authors will not receive any payment, and your publisher will not receive payment. If you are a publisher and choose to opt out your book, that means that you will not receive any payment, and all authors of that book will not receive any payment**." Any class member, including Objector Hampton, who reads the Notice is left with the false impression that opting out means a copyright holder will receive nothing if they don't accept the settlement payment. Hampton Decl. at ¶6.

This creates a "blind" opt-out framing. Authors are being asked to release their rights for approximately **2% of each work's potential value**, based on a Notice that affirmatively warns them against exercising their right to sue individually. A decision made under such coercive misinformation

1  cannot be "voluntary, knowing, and intelligent."

2      This Court should not condone or allow counsel for the parties to rely on a Settlement Notice that fails to notify Class Members of the full range of options if one were to opt out. Objector Hampton asks this Court to reject the current Notice published on the Anthropic Settlement website and correct the Notice with full disclosure to explicitly inform authors that opting out is the *only* option to seek actual or statutory damages up to a maximum of $150,000 per infringed book.

3      Sixteen (16) of Hampton's books are still included in the proposed Settlement Class, including *No Justice, No Peace* (TX0006269765). Hampton Decl. at ¶3. Ms. Hampton respectfully objects to the proposed Settlement Agreement and Notice that she received in the mail and requests that the Court update the Notice for all Class Members. To be clear, she does **not** intend to cause any delay to her fellow authors from receiving the settlement funds or the challenge the settlement amount per book.

**II. BASIS FOR OBJECTION**

    Objector asserts that the Settlement is not fair, reasonable, or adequate under Fed. R. Civ. P. 23(e)(2), and that the notice procedure has failed to provide Class Members with sufficient information regarding their rights and whether to opt out.

    **1. The "Buried Truth" of Opting Out**

    The Notice engages in a game of hide the ball. It refers on Page 6 to the fact that statutory damages can reach up to $150,000 per work. Yet, when it discloses to Class Members "**Excluding Yourself from the Ongoing Lawsuit**" starting on Page 16, this amount – or the possibility of any alternative recovery greater than "nothing"— is not mentioned. This section of the Notice warns Class Members three separate times that opting out means "you will not receive any payment," but never once reminds them *here*—at the moment of decision—that they are retaining a claim that could receive more than the $3,000.

    **2. The "False Binary" Argument**

    The "Options" Table (Page 2) is structurally biased. It presents the choice as "Submit a Claim" (Get Paid) vs. "Exclude Yourself" (Give Up Payment). A neutral Notice would describe the Opt-Out option accurately: **"Exclude Yourself: Receive no settlement money, but retain the right to sue Anthropic individually for up to $150,000 per work."** By omitting the *benefit* of opting out, the

Notice steers the class toward the settlement and away from opting out. This is anything but neutral. The pertinent question here is whether the changes adversely affect all Class Members who may want to opt out and pursue their own cases. "When the modification makes the settlement less desirable, notice may be required because courts cannot be sure whether more class members would have chosen to object to the settlement or exclude themselves from the class." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 330 (N.D. Cal. 2018). Here, the deficient Notice lacks a full, transparent explanation of what the opt-out means and "make[s] the settlement less desirable" for class members who should have been provided with the range of options.

### 3. The Notice Is Constitutionally Defective

The coercive language in the Notice is defective and violates due process rights of the Class Members. The class representatives and class counsel are fiduciaries to the class and have the full duty of honesty, loyalty, good-faith and fair dealing to the Class Members. *See, e.g.*, *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 331 (1980) (stating that class representatives have a responsibility "to represent the collective interest of the putative class" in addition to their private interests).

Due process and Rule 23 require that Class Members have a meaningful opportunity to evaluate the fairness of a settlement before they release their claims and accept a settlement amount for a fraction of the full amount available under the law. A decision to remain in a class or to opt out cannot be "meaningful" if it is made based on a faulty and defective Notice.

In this case, critical judicial records—including the parties' Summary Judgment motions, Oppositions, evidence of Anthropic's willful piracy, expert reports, and Class Certification briefing—were sealed from public view until just two days ago, January 21, 2026. The deadline for class members to opt out or object is January 29, 2026. This leaves Objector Hampton, other class members and their counsel of choice a mere eight (8) days to review, analyze, and digest thousands of pages of complex legal arguments, evidentiary records and expert declarations that go to the very heart of the claims being settled. These documents are likely dispositive to a Class Member's analysis of the strength of the copyright holder's case on the merits, the risks of continued litigation and the possible universe of evidence produced in the case, and whether the settlement amount represents a fair compromise or a "pennies on the dollar" capitulation.

By unsealing these records only eight (8) days before the opt-out deadline, the parties have effectively ambushed the Class Members without time to analyze these unredacted records. It is practically impossible for a Class Member — especially those with significant portfolios, like Objector Hampton with 25 books — to review the newly available summary judgment and class certification record and make a fully informed strategic business and legal decision by January 29, even with counsel to assist her. If she does proceed with an individual case, the undersigned has agreed to represent her.

To force a decision on such a compressed timeline renders the opt-out right illusory and violates the "best notice that is practicable under the circumstances" standard of Rule 23(c)(2)(B) and Objector Hampton's due process rights.

Secondarily, the settlement works list contains numerous works that appear to not meet the class definition. For example, the effective registration date on many books occurred well *after this action was filed* and *after Anthropic pirated* the books, which calls into question the validity of the methodology used to compile the class definition and works list.  This suggests major flaws as to why those books belong in the settlement and why numerous books may have been excluded.  For example, a book with TX0009472821 copyright registration was registered on December 5, 2024, well after the complaint was filed, yet it is included in the settlement works list. This is one of hundreds or even thousands that were included in the settlement works list.

### III. CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Objector Hampton respectfully requests that the Court correct the Notice to provide Class Members a full, transparent disclosure of options available to Class Members. Objector Hampton respectfully requests a hearing on the approval of the settlement agreement and reserves all rights to engage in discovery, participate in the discovery, a hearing process and have a fair opportunity to be heard.  Objector Hampton's counsel intends to attend a hearing.

Dated: January 23, 2026                    Respectfully Submitted,

**DUNCAN FIRM, P.A.**

By: */s/James H. Bartolomei III*
James H. Bartolomei III (SBN: 301678)

*Attorneys for Objector Brenda Hampton*

**PROOF OF SERVICE**

I served and filed the following document via the Court's ECF filing system to all counsel of record and the Court:

**OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT & OPT OUT DEADLINE**

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on January 23, 2026 at Palm Springs, California.

*/s/James H. Bartolomei III*

James H. Bartolomei III
