UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREA BARTZ, et al.,

Plaintiffs,

v.

ANTHROPIC PBC,

Defendant.

No. C 24-05417 WHA

**JUDGE'S MEMORANDUM REGARDING PETITIONS FOR FEES AND COSTS, AND ORDER**

As stated for several months, the undersigned judge will be hanging up his robe and taking inactive status in a few days. This memorandum is meant to set the record straight concerning aspects of the pending fee and cost petition, which will be decided by the successor judge. An order also appears at the end.

**1.    ONLY TWO FIRMS HAVE EVER BEEN APPOINTED AS CLASS COUNSEL.**

Two and only two law firms were ever appointed as class counsel: Susman Godfrey LLP and Lieff Cabraser Heimann & Bernstein LLP. This was decided when the class was certified, before settlement (Dkt. No. 244 at 31). This was confirmed again, after settlement at preliminary approval (Dkt. No. 437 at 14). And, this was done despite class counsel seeking to insinuate other counsel into the case before, between, and even now. We have never blessed and indeed only learned of these firms' fee splitting scheme when reading the instant petition.

United States District Court
Northern District of California

At first, plaintiffs had sought to certify various classes including authors but not publishers regardless of the extent to which the authors had assigned their copyrights to the publishers in the publishing agreement. At the hearing on the motion for class certification, the district judge probed the problems that might result, especially in cases where the authors had assigned all such rights to the publisher. After argument, the district judge asked both sides to comment on a class definition rescoped to include all owners of the exclusive right to reproduce a given work (Dkt. No. 199). Plaintiffs' response proposed further refinements, explaining how this could all work (Dkt. No. 203). There was no inkling class counsel was unwilling or unable to take on the work. The district court then certified one class. This class embraced any copyright owner of the exclusive right to reproduce any work meeting various criteria, a scope including authors and publishers.

In their motion for class certification, class counsel had sought to insinuate a third firm, Cowan DeBaets Abrahams & Sheppard LLP, by way of a footnote and a final signature block, labeled "Additional Counsel for the Class" (Dkt. No. 125 at 25 n.7, 27). That bid was rebuffed and only the Lieff and Susman firms were appointed (Dkt. No. 244 at 31). Cowan DeBaets now purports to have been co-counsel from the start of the action as to named plaintiffs. But it never entered an appearance in this action on behalf of named plaintiffs or anyone until the day before our first hearing on preliminary approval. And, that firm was never vetted or approved to serve the class or any part of the class.

After certification but just before settlement, in a so-called notice of "association" as well as in a motion to approve the class notice (also pre-settlement), class counsel sought to insinuate a fourth firm and a fifth firm, Edelson PC and Oppenheim & Zebrak LLP. These were labeled "Publishers' Coordination Counsel" (Dkt. Nos. 298, 317; Dkt. No. 319-2 FAQ 10). Those firms are said now to have received a "mandate" to serve the class from this filed notice (*see* Dkt. No. 505 [506-1] at 5 & n.2). A law firm cannot appoint itself class counsel by showing up. Nor can class counsel appoint someone else to do its work. But before the motion on class notice was even heard, it was overtaken by a broader proposal.

United States District Court
Northern District of California

After a class settlement was announced, in the motion for preliminary approval of settlement and class notice, class counsel again tried to install the so-called "Publishers' Coordination Counsel" as well as to install so-called "Authors' Coordination Counsel," the latter comprising the earlier-rejected Cowan DeBaets and a sixth entrant, Fairmark Partners LLP (that is, also as "Authors' Coordination Counsel"). The Settlement Agreement proposed these law firms would gather contact information from industry stakeholders for the class list and, by way of a "Working Group," provide input on the draft claim form and the draft claims process that class counsel would propose to the Court later that month (Dkt. No. 363-3). The Settlement Agreement was signed by "Class Counsel" and — though this fact went unnoticed by the judge at the time — also by the so-called "Publishers' Coordination Counsel," Edelson and Oppenheim & Zebrak (*id.* at 37–38). The proposed long-form notice prepared to tell the class about a still broader role: *All six* of these law firms — Class Counsel, Publishers' Coordination Counsel, and Authors' Coordination Counsel — would be "*The Lawyers Representing You*" (Dkt. No. 363-13 Exh. B, FAQ 17).

We heard the motion. In light of the settlement proposal and notice insinuating a raft of other law firms into the case, the district judge was concerned there might have been a "settlement within a settlement," and indeed that there might be more side deals to come. So, just before the hearing, the judge ordered lawyers from these firms and other interlopers to appear in the courtroom (Dkt. No. 364). With those representatives present, the judge opened the hearing as follows:

> **THE COURT:** All right. Let's -- before I start pontificating -- and I have a few points I do want to make -- I'd like to hear what is going on behind the scenes. Maybe it's all for the good. But, you know, you are the class -- I have appointed two class [counsel] -- there will be not one penny paid to any lawyer except class counsel. So all these other lawyers that are out there hoping to get their fingers into the 1.5 -- not from me.
>
> You[, Susman,] are the class lawyer and Lieff Cabraser. And you have taken it upon yourself to draw in this army of allied people to help solve this problem. But don't -- they are not going to -- they get their money from somebody else, not from the [$]1.5 million -- billion. *So you have, again, exceeded your authority in hoping that they will be treated as class counsel.*

3

United States District Court
Northern District of California

**[ATTORNEY JUSTIN NELSON, FROM SUSMAN GODFREY, FOR THE CLASS]:** Well, thank you –

**THE COURT:** That's speech number one. But speech number two is I'm worried that you are working out, behind the scenes, between publishers some kind of a deal that you want to force down the throat of authors or -- mainly the authors -- and say you got to take X percent, even though their own agreements give them 100 percent. If they did. Maybe they don't. Maybe they're silent. Who knows?

I would like for you to explain what is going on between the guilds, the publishers. What kind of deal are you trying to do behind the scenes?

(Sept. 8, 2025 Tr. 14–15 (emphasis added)). As for speech number one, the Court and class counsel spoke about that point further. Their colloquy ended with this:

**MR. NELSON:** . . . We did think it was appropriate -- and I did hear what Your Honor just said with respect to fees. But we did think it was appropriate [to engage these other lawyers], once your Honor issued the class certification order, to make sure that *publishers*, *as well*, were in the tent. And I do hear you. And I know you'll probably jump down my throat by saying it. But I really would like the chance to revisit that at an appropriate point. *Because they have been beneficial to the entire class to make sure the entire class is represented.*

**THE COURT:** Right now, the answer is No. But in the future, I could -- I can't say no to reconsidering in the future. But every single one of these add-on lawyers and organizations is proceeding at their risk. And maybe they get paid by the author. *Maybe they get paid by the publisher.* But to ask that they're going to get paid through the [$]1.5 billion directly by a court approved -- no, not yet, and probably never. But I can't say "never"; I'll just say "probably never."

(*id.* at 17–18 (emphasis added)). Then, as for the second big subject raised by the judge, about the role of these lawyers and non-party organizations in designing claim forms and the claims process, that discussion ended with the following:

**MR. NELSON:** Well, because there are -- there are -- what we have tried to envision, going back to your first two points, is to try to facilitate the claims process by saying that, for example, there are norms in terms of -- and baselines -- in terms of how many contracts are structured. And can we get to a way so that we can say, here is how the claim is going to be structured, and, you know, here is what the publisher and authors will be.

4

I don't know the -- just to be clear, I don't know the results of that. I know that process has started in terms of having some of those discussions. *But what we are trying to do is trying to facilitate it so that both authors and publishers can get paid and can actually make claims.* We don't want to make something that is so difficult that no one is going to make a claim.

**THE COURT:** You're the class counsel and you represent both authors and publishers.

**MR. NELSON:** Yes, sir.

**THE COURT:** You're the one that would normally do this. . . .

(*id.* at 32–33 (emphasis added)). Preliminary approval was not yet granted; a second hearing was set.

Before the next hearing, the district court reiterated the concern that there had been or would be "a global settlement within a class settlement." The Court asked whether "anyone [was] compensating any law firm or lawyer involved for work in this action (other than for defense) or d[id] anyone expect to do so? Explain fully" (Dkt. No. 383 Q. 26). Class counsel answered: "No. Class Counsel has not received and is not receiving any compensation in this matter except as may be awarded by this Court through a fee petition at the appropriate time. The same applies to all lawyers who have appeared on the Plaintiffs' side, including the Publishers' and Authors' Coordination Counsel and Prof. Samuel Issacharoff. The PCC has *no direct or indirect compensation* from individual publishers, the Association of American Publishers, or anyone else *in connection with this matter*" (Dkt. No. 418 Q. 26 (emphasis added)). This explanation did not state that class counsel in this matter would increase its fee request from the class members' fund or direct any of its fee award to compensate unapproved counsel, that it would propose to do so on a percentage-split basis, nor that the amount to be diverted would mean that unapproved counsel would achieve from class members an even larger multiple against billables than would approved counsel. Also attested at this time, class counsel said that it had received input from "the Authors Guild, the American Association of Publishers ('AAP'), The Textbook and Academic Authors Association ('TAA'), *as well as counsel for each of these groups*," and that none of these groups "[had] received or w[ould] receive any compensation" (Dkt. No. 400 ¶ 4 (emphasis added); *see id.* ¶ 8).

5

*United States District Court*
*Northern District of California*

Further on this point, the district court asked counsel to "explain the exact and full role of the Authors Guild, the Association of American Publishers, and each of the new law firms" (Dkt. No. 383 Q. 25). Class counsel responded as follows:

> Class Counsel's goal was to create a fair, equitable, and efficient distribution of the settlement that respects contractual arrangements. Accordingly, Class Counsel convened a Working Group of key stakeholders, including the Authors Guild in conjunction with other authors groups (with Authors' Coordination Counsel) and Association of American Publishers (with Publishers' Coordination Counsel).
>
> [Two paragraphs then described this working group's efforts and its resulting proposal. Class counsel continued as follows:]
>
> The exact and full role of Publishers Coordination Counsel and the Association of American Publishers and Authors Coordination Counsel and the Authors Guild is addressed in Plaintiffs' brief filed yesterday. Dkt. 401 at 5-9 (addressing publishers' contributions); *id.* at 9-11 (addressing authors' role and contributions); *see also* Dkt. 395 (Declaration of Not-For-Profit Author Organizations); Dkt. 396 (Declaration of Maria A. Pallante of the AAP); Dkt. 397 (Declaration of Nancy E. Wolff); Dkt. 398 (Declaration of Publishers Coordination Counsel Jay Edelson and Matthew J. Oppenheim).

(Dkt. No. 418 Q. 25). The cited brief chronicled the role that the so-called coordinators "ha[d] played," which was couched as the near-complete process of gathering contact information and providing input from certain stakeholders to class counsel at the outset, not as an ongoing role broadcasting information to the class or even part of it with the Court's approval (*e.g.*, Dkt. No. 401 at i, 5–9, 9–11). The "exact and full role" cited *nothing* from class counsel's plan for communicating with the class (Dkt. No. 399). (The plan itself noted so-called coordinating counsel but only as to the near-complete task of ferrying contact information from some publishers.) It cited *nothing* from class counsel's proposed plan for distribution and allocation (Dkt. No. 401-1). It cited *nothing* from the proposed order to reappoint the two class counsel: Lieff Cabraser and Susman Godfrey (Dkt. No. 417).

Recall that the proposed long-form notice had included all six firms as "*The Lawyers Representing You*," broken out by Class Counsel, Authors' Coordination Counsel, and Publishers' Coordination Counsel (Dkt. No. 363-13 Exh. B, FAQ 17). This addition did not survive the judge's objections at the first hearing or the inquiry above into the "exact and full

6

role" of these law firms.  All lawyers but class counsel were struck in the next proposed notice (*e.g.*, Dkt. No. 406 FAQ 34).

Only class counsel, the settlement administrator, and the class representatives were ever court-approved to represent or to communicate with the class as a whole.  No one else was ever given the Court's imprimatur to represent or to communicate with even part of the class.  No court-approved notice to the class presented otherwise.  Instead, preliminary approval and the class notices confirmed that only two firms were approved to serve the class:  Lieff and Susman (Dkt. No. 437 at 14; *e.g.*, Dkt. No. 490 at 5–6).  Those firms never proposed a fee splitting scheme, and none was ever even preliminarily approved.

### 2.    THE INSTANT PETITIONS FOR FEES BY FIRMS OTHER THAN CLASS COUNSEL.

Now, *never* having brought a formal motion to serve as class counsel (it would have been rejected), and *repeatedly* having been rebuffed in attempts to serve as class counsel simply by asserting it as if it were an accomplished fact (it never was a fact that they were "*The Lawyers Representing You*"), three of these additional firms ask for a bonanza as if they had been class counsel all along.  (A fourth firm, Fairmark Partners, a so-called "Authors' Coordination Counsel," seeks no compensation disclosed in the petition for attorney's fees.)  Another of the so-called "associat[ing]" lawyers, New York University School of Law Professor Samuel Issacharoff, does seek payment for fees, but apparently no multiplier himself (despite class counsel using his billables for their own lodestar calculation).  The three other firms — Cowan DeBaets, Edelson, and Oppenheim & Zebrak — propose receiving huge multipliers.  At bottom, class counsel seeks as its fee award 15 percent of the $1.5 billion (so $225 million).  The interlopers seek a third of that again, or 5 percent of the $1.5 billion (so $75 million).

In the district court's view, most of the work now described as done by the three additional firms could have been done (and *should* have been done) by class counsel, if it was done at all (we were told that class counsel did not do it nor pay for it).  The same is true as well for the future work described.

The district judge did not vet these law firms for conflicts. The district judge tried to learn about the roles of these firms but received barebones answers even about past work. This inquiry did not pretend to get to the bottom of all past representations and payments, parallel representations and payments, or ongoing or potential conflicts. We did not inquire, for instance, into deals predating the settlement. Even now, it remains unclear on whose behalf, exactly, Edelson and Oppenheim & Zebrak signed the Settlement Agreement.

The district judge, moreover, did not have a chance to prevent duplication of effort by overlapping law firms. Nor did the judge have an opportunity to evaluate the extent to which these law firms would add value for the class beyond that added by class counsel. Compensating these additional firms will, in effect, lead to a sweeter deal for some class members than for the rest. For example, if certain publishers in the class are represented by one of the three firms, then those publishers themselves would normally pay for such work. Allowing additional compensation from the class fund will give those publishers a premium compared to all other class members.

Also, we do not yet know whether "Publishers' Coordination Counsel" will share any part of their bonanza with one or more publishers so as to give those publishers a premium to not opt out. This, too, would come at the expense of the whole class. The Court earlier warned against even "com[ing] close to that scenario," meaning paying extra to some class members to persuade them to stay in the class rather than opt out (and thereby avoid triggering Anthropic's right to abort the settlement if a certain percentage of exclusions is exceeded) (*see* Sept. 28, 2025 Tr. 8).

Another problem goes to notice. The class notice alerted class members to the lawyers appointed to represent them and to the fact that their appointed lawyers would seek large amounts from the settlement fund and that this would reduce the recovery by class members. The class notice, however, never alerted class members that still other lawyers would come out of the woodwork to seek a *third* again whatever their class counsel would seek for its work — that is, another $75 million for interlopers on top of the $225 million for class counsel — further reducing the class's recovery.

8

United States District Court
Northern District of California

Finally, the recent fees and costs petition describes how class counsel and the three additional firms have agreed to split all fees awarded in given percentages to each (*see* Dkt. No. 505 [506-1] at 7). The undersigned would not permit class counsel to inflate and/or to divert any part of its court-approved fee award to cover work done by lawyers not court-approved to represent the class. There is a high risk that class counsel has invented or *will* invent makework for the three firms to "justify" their bonanza. The judge sees a genuine danger that class counsel has promised these firms amounts far in excess of their billable rates in exchange for using their influence with publishers (in one case) and with authors (in another) to support the settlement rather than opt out (reducing the risk that Anthropic would exercise its right to abort the settlement if more than a certain percentage opts out), all at the expense of the class.

This memorandum should not be read as merely opposing a multiplier for these three firms. It should be read as opposing any award at all for these firms, including any award from any fees paid to class counsel. And, it should be read as questioning whether class counsel performed its work the right way (the $225 million part) if it let unapproved firms do so much.

Even assuming the best of class counsel, the $225 million (about 15%) would bust all belief in a gigafund action where "the increase in recovery is [overwhelming]ly a factor of the size of the class and has [vanishing] relationship to the efforts of counsel." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998)).

And, class counsel's petition inflames the doubts about it above. After defining "Class Counsel" correctly, it goes on to mix, match, and mislead. It requests a "20% fee to Class Counsel" at "a lodestar multiplier of 9.32[x] based on the current and future time expenditures of Class Counsel" (Dkt. No. 505 [506-1] at 9). Only by reading between the lines, diving into cited declarations, and doing the math do we discover that the top-line request masks that only a 15% fee is requested to *class counsel* at a multiplier of about 8x based on *class counsel*'s purported past and future billings, while a 5% fee is requested to others (not approved by the Court) at multipliers of about 11x, 14x, or 96x based only on theirs. Thus, the "20% fee to

9

Class Counsel" overlooks the chasm between class counsel and unapproved counsel including Edelson, Oppenheim & Zebrak, and Cowan DeBaets, whom the petition at least names.  But the petition does not even name all counsel who would thereby get paid.  *Even deeper in the declarations*, we discover also for the first time that "Class Counsel [now] intends to share $137,431.40 from any fee awarded" with Archstone Law Group and Slarskey LLC for their work done when "[t]he TAA had retained them" (Dkt. No. 505-3 ¶ 45; *see* Dkt. No. 400 ¶ 4).

The successor judge might consider directing Special Master for Discovery Harold McElhinny (or newly appointing another qualified lawyer independent of and not proposed by counsel) to investigate and report on all aspects of these fee petitions.

**ORDER**

**1.** All law firms who have filed fee or cost petitions in this action (or on whose behalf one has been filed) shall file a declaration setting forth the full extent to which such firm has (or has not) made any agreement(s) to share any portion(s) of any fee award in this class action or in any other class action(s) (putative or certified) involving any party (or class member) herein, and stating as to each such agreement its date, terms, the extent to which it is verbal and the extent to which it is in writing (or in an email or text or other message), and the parties and the names of all persons who made the agreement.

**2.** Likewise, all law firms who have filed fee petitions herein (or on whose behalf one has been filed) shall file a declaration setting forth the full extent to which such firm has made any proposal(s) to anyone — and the full extent to which anyone has made any proposal(s) to such firm — to share any portion(s) of any fee award in this class action or in any other class action(s) (putative or certified) involving any party (or class member) herein, and stating as to each such proposal its date, proposed terms (including as suggested or implied), the extent to which it was verbal and the extent to which it was in writing (or in an email or text or other message), and the parties and the names of all persons who made or received the proposal.

**3.** All law firms who have filed fee petitions herein (or on whose behalf one has been filed) also shall file a declaration setting forth the full extent to which any arrangement has

10

United States District Court
Northern District of California

been made or proposed by which any class member would receive a sweeter recovery than other class members.

**4.** All emails, messages, and written materials relating to any of the above shall be preserved for future potential discovery.

The declarations (in Paragraphs 1, 2, and 3) should be filed on the public docket, not under seal, for class members are entitled to know the full extent to which their counsel have engaged in fee sharing before class members have to decide whether to object and whether to opt out. They shall be filed **BY NOON ON DECEMBER 30, 2025**. This preservation order (Paragraph 4) is in addition to the prior one (Dkt. No. 488), and takes effect **IMMEDIATELY**.

\*          \*          \*

Additionally, the undersigned judge recommends to the successor judge that he or she extend the dates for objections and for opt-outs specifically for class members to be made aware of the problems identified in this memorandum (and any revealed by declarations and discovery) so that the class members can consider these issues in full before having to decide whether to object and whether to opt out.

**IT IS SO ORDERED.**

Dated:  December 23, 2025.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California

11