EDELSON PC
Jay Edelson (*pro hac vice*)
J. Eli Wade-Scott (*pro hac vice*)
350 North LaSalle, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Publishers' Coordination Counsel*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, AND MJ + KJ, INC., individually and on behalf of others similar situated,<br><br>Plaintiffs,<br>v.<br><br>ANTHROPIC PBC,<br><br>Defendants. | Case No. 3:24-cv-05417-WHA<br><br>Hon. William Alsup<br><br>**DECLARATION OF JAY EDELSON IN RESPONSE TO DOCKET NO. 515** |

1    Pursuant to 28 U.S.C. § 1746, I, Jay Edelson, declare and state as follows, except where
2 specified:
3    1.    I am the Founder of Edelson PC, one of the firms serving as Publishers'
4 Coordination Counsel ("PCC") in the above-captioned action. I have personal knowledge of the
5 facts set forth herein and if called upon to testify as a witness, I could and would competently
6 testify hereto.
7    2.    I respectfully disagree with the basis of the Court's Memorandum Regarding
8 Petitions for Fees and Costs, Dkt. No. 515, but also understand that we will be able to respond in
9 full in the normal course of the approval process. I answer the Court's questions below. In sum, I
10 state—as unequivocally and expansively as possible—that to the full extent of my knowledge
11 there are no "side deals," no "sweeter recovery," no basis at all for the Court's concern that any
12 class member is improperly doing better than any other. There is no wordsmithing in the below,
13 no conceivably at-issue agreement that has been left out, no potential agreements carefully un-
14 inked. There is nothing to hide here. The only deal is the Settlement and allocation process
15 before the Court.
16    3.    First, the Court ordered:

> All law firms who have filed fee or cost petitions in this action (or on whose behalf one has been filed) shall file a declaration setting forth the full extent to which such firm has (or has not) made any agreement(s) to share any portion(s) of any fee award in this class action or in any other class action(s) (putative or certified) involving any party (or class member) herein, and stating as to each such agreement its date, terms, the extent to which it is verbal and the extent to which it is in writing (or in an email or text or other message), and the parties and the names of all persons who made the agreement.

22 (*Id.,* Order ¶ 1.)
23    My firm has an August 11, 2025 agreement to share fees, the percentages of which were
24 disclosed to the Court with the fee petition. Susman Godfrey LLP ("SG"), Lieff Cabraser
25 Heimann and Bernstein LLP ("LCHB"), Cowan, DeBaets, Abrahams & Sheppard LLP
26 ("CDAS"), Oppenheim + Zebrak LLP ("O+Z") and my firm executed a written co-counsel
27

1  agreement for the sharing of work, expenses, and fees in the action. This agreement provided for
2  the allocation of fees awarded as follows: 37.5% SG, 37.5% LCHB, 5% CDAS, 7.5% Edelson,
3  and 12.5% O+Z. The agreement contemplated that the firms would do work in proportion of
4  these sharing percentages, and that the sharing percentages could be adjusted if a firm did not
5  contribute its share of work. The agreement also provided that, in the event the Court awarded
6  fees above $500 million, for any amount over $500 million, Edelson/O+Z's collective share of
7  any fee award would increase from 20% to 30%. Under the agreement, LCHB would manage the
8  joint expense fund, with Edelson advancing 20% of expenses going forward and 10% of
9  expenses related to class notice and SG/LCHB collectively advancing the remainder. The
10 agreement provided that the PCC's duties would include providing Class Counsel (and, as
11 necessary, the Court) with publishers' perspective on case strategy, discovery, briefing, oral
12 argument, pre-trial, and trial; participation at trial in coordination with Class Counsel; work with
13 Class Counsel with pending requests for interlocutory appeal and any further appeals with
14 respect to publishers' interests; assistance with compiling the works list and with class notice;
15 and participation in settlement discussions and allocation issues. This agreement was in writing
16 and executed by representatives of each of the five law firms on August 7, 2025, as well as the
17 three named plaintiffs on August 11, 2025.
18      That is the only fee sharing agreement we have in connection with this matter. We have
19 no agreement to share fees in this matter with anyone else, nor have we proposed any agreements
20 to pay anyone else (or had any proposed to us).
21      Neither my firm nor any person—whether a party to these agreements or not—to the full
22 extent of my knowledge has ever contemplated sharing, proposed sharing, or agreed to share fees
23 with any class member in this action. This includes suggested or implied terms, winks, nods, or
24 understandings of any kind. Nor, to the full extent of my knowledge, has anyone contemplated,
25 proposed, or agreed to share fees with any class member in any other case in order to induce any
26 action or inaction in this case, including but not limited to not opting out or objecting. Such
27 agreements would be improper and are squarely at odds with the foundational principles that

1  have guided this firm since its founding in 2007.

2      My firm has contemplated fee-sharing agreements with Oppenheim + Zebrak LLP for
3  other potential matters in which we would serve as co-counsel. No such contemplated agreement
4  involves (or was ever considered to involve) payments to any class member or anyone other than
5  our two firms.

6      My firm has no other pending class actions involving (1) the publishing industry
7  generally, or (2) representing authors qua authors or publishers qua publishers. We have a
8  broader class action practice with many unknown class members, in which a class member in
9  this case might be an actual or putative class member. However, we have no knowledge of any
10 specific class member here being part of these other classes (though it is quite likely they are).
11 We have no reason to believe that any publishers would be part of any putative class action. (To
12 be clear, we have not done an exhaustive search of class member information turned over in
13 discovery in other actions and cross-referenced that information with the class list here, nor
14 would we think that doing so would be proper or helpful.) In any event, we have made no
15 agreements to pay for any action or inaction in this case, as set forth above.

16     4.    Second, the Court ordered:

17-23
> Likewise, all law firms who have filed fee petitions herein (or on whose behalf one has been filed) shall file a declaration setting forth the full extent to which such firm has made any proposal(s) to anyone — and the full extent to which anyone has made any proposal(s) to such firm — to share any portion(s) of any fee award in this class action or in any other class action(s) (putative or certified) involving any party (or class member) herein, and stating as to each such proposal its date, proposed terms (including as suggested or implied), the extent to which it was verbal and the extent to which it was in writing (or in an email or text or other message), and the parties and the names of all persons who made or received the proposal.

24 (*Id.,* Order ¶ 2.)

25     As set forth above, my firm is party to one agreement as to fee-sharing in this action.
26 That was a written agreement. There were proposals and counterproposals that led up to that
27 agreement, but there were never other law firms or any other people or parties contemplated to

1  receive any fees or anything else of value in any proposal. I do not understand precisely what the

2  Court means by "made or received[.]" I assume this means the persons who negotiated the

3  agreement: for my firm, it was me, and I negotiated it with Justin Nelson from Susman Godfrey

4  LLP and Matthew Oppenheim from Oppenheim + Zebrak LLP.

5  We have never proposed or had proposed to us any other agreement to share fees from

6  this case with anyone else, including any class member or anyone else at all beyond the law

7  firms that are party to the August 11, 2025 agreement. The non-existence of such agreements I

8  am attesting to here includes, as it does above, any suggested or implied agreement, any

9  assurance, any understanding, or any other way in which my firm might agree to pay someone.

10  5.  Third, the Court ordered:

> All law firms who have filed fee petitions herein (or on whose behalf one has been filed) also shall file a declaration setting forth the full extent to which any arrangement has been made or proposed by which any class member would receive a sweeter recovery than other class members.

(*Id.,* Order ¶ 3.)

15  None. The allocation process sets forth the complete method for determining class

16  member recoveries. Taking any possible definition of the word "sweeter"—whether more

17  advantageous financially, procedurally, providing in-kind benefits or gifts—there are no actual,

18  contemplated, proposed, suggested, or implied agreements to do anything but follow the Court-

19  approved allocation process. The allocation process was determined with input from stakeholders

20  across the industry, and we believe it is a fair, equitable, and remarkably claimant-friendly

21  process that will drive historic participation in the settlement. We have not (and would not)

22  undermine a keystone of the Settlement or our contributions to it.

1 | I declare under penalty of perjury that the foregoing statements are true and correct.
2 | Executed on this 30th day of December, 2025 at Boca Raton, Florida.

*/s/ Jay Edelson*
Jay Edelson

DECLARATION OF JAY EDELSON IN RESPONSE TO DOCKET NO. 515    -6-    CASE NO.: 3:24-CV-05417-WHA