1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ and KIRK WALLACE JOHNSON, individually, and ANDREA BARTZ, INC., CHARLES GRAEBER, and MJ + KJ, INC., individually and as representatives of the class,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 3:24-cv-05417-AMO<br><br>**[AMENDED PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF SERVICE AWARDS** |

This matter is before the Court on Plaintiffs' motion for attorneys' fees, reimbursement of expenses, and plaintiff service awards. Having considered the moving papers and the record in this matter, the Court **GRANTS** the motion for attorneys' fees, reimbursement of expenses, and plaintiff service awards.

## I.  BACKGROUND

***Pleading and Case Schedule.*** Plaintiffs alleged Anthropic unlawfully downloaded copyrighted works from pirated datasets and then commercially exploited them by training its Large Language Models (LLMs). Dkt. 1. Plaintiffs filed their complaint on August 19, 2024. Dkt. 1. Anthropic answered on October 21, 2024, asserting 13 affirmative defenses, including fair use. Dkt. 57. The Court set an expeditious schedule, with March 6, 2025 as the deadline for Plaintiffs' class certification motion and August 29, 2025, as the fact discovery cutoff and deadline for Plaintiffs' expert reports. Dkt. 50 at 16–18.

***Intensive Fact Discovery Efforts.*** Class Counsel pursued intensive discovery, including:

- Reviewing more than 80,000 documents and two million pages of materials produced by Anthropic;
- Serving 186 requests for production, 29 interrogatories, and 65 requests for admission;
- Inspecting hundreds of gigabytes of training data, Slack exports, Notion wikis, and Google Vault data;
- Spending nearly one thousand hours inspecting source code, training data, and books data;
- Litigating 17 discovery motions, relating to topics such as the timing and scope of document productions, privilege challenges, and issues related to depositions and dataset inspections;
- Engaging in extensive third-party discovery, including subpoenas to major publishers, OpenAI, Google, Amazon, Shawn Presser (creator of a books dataset), and Anna's Archive (creator of PiLiMi);
- Taking and defending 20 depositions, with deposition transcripts spanning more than 4,300 pages;
- Preparing for six additional depositions set to occur in the final days of the fact-discovery period;

- Responding to 263 requests for production, 75 interrogatories, and 395 requests for admission;
- Revealing Anthropic's piracy via LibGen and PiLiMi, which Class Counsel then successfully incorporated into their class certification brief in just six days' time; and
- Assisting Plaintiffs with the production of more than 20,000 pages of documents, including manuscript drafts, publishing contracts, registration certificates, and sales statements.

Dkt. 363-2 at 6–8.

***Expert Discovery.*** Class Counsel worked closely with experts on a range of relevant topics in advance of the August 29, 2025 deadline for expert reports. Those topics included economics; market harm and piracy; large language models; the books in the relevant datasets; Anthropic's use of Class Works; torrenting, seeding, and leeching; and topics related to fair use. Dkt. 363-2 at 8. Those expert reports were in addition to the several expert reports that Plaintiffs submitted in connection with Anthropic's motion for summary judgment and Plaintiffs' motion for class certification. *See* Dkts. 125, 155, 156. In particular, Class Counsel worked intensely with experts to develop the Works List, which required thousands of hours of attorney and expert labor to parse Anthropic's data, much of it spent in a secure environment while performing numerous levels of analysis and quality checks. *See* Declaration of Justin A. Nelson (Nelson Decl.) ¶ 10.

***Motion Practice.*** In parallel with the fast-moving tasks described above, Class Counsel also litigated major motions, many of which addressed issues with little or no precedent.

*First*, Anthropic moved for summary judgment, arguing that its acquisition of copyrighted books for large language model training qualified as fair use. Dkt. 122. On April 3, 2025, the Court posed hypothetical written questions concerning fair use to both sides to be addressed in the Parties' briefing. Dkt. 135. Plaintiffs filed their opposition on April 25, 2025, and Anthropic replied on May 8, 2025. Dkts. 158, 181. The summary judgment record was extensive: 65 pages of briefs, 96 exhibits comprising hundreds of pages, multiple depositions, and five expert witnesses. Dkt. 363-2 at 9. The Court heard argument on the summary judgment motion on May 22, 2025, and the Parties submitted supplemental briefing on May 23, 2025. Dkts. 214–15. On June 23, 2025, the Court issued its Order on Fair Use, granting Anthropic's motion for summary judgment in part and

1  denying it in part. Dkt. 231. The Court denied summary judgment on Plaintiffs' copyright-
2  infringement claims related to the initial acquisition of works Anthropic obtained from pirated
3  sources like Library Genesis and Pirate Library Mirror. *Id.* at 19, 31.

4  *Second*, Plaintiffs moved for class certification on March 27, 2025, six days after they first
5  received access to the LibGen and PiLiMi datasets that formed the core of this case. Anthropic
6  opposed on April 17, and Plaintiffs replied on May 1. Dkts. 125, 146, 172. The record on class
7  certification included 65 pages of briefs, 96 exhibits amounting to hundreds of pages, and four
8  declarations. Dkt. 363-2 at 9. The Court held a hearing on May 15, 2025, and pursuant to the Court's
9  order at the hearing, the Parties submitted supplemental briefs the next day. Dkts. 199, 201, 202,
10 203. The Court certified a Rule 23(b)(3) "LibGen & PiLiMi Pirated Books Class." Dkt. 244 at 19,
11 31.

12 *Third*, Anthropic sought leave to appeal the Court's summary judgment and class
13 certification rulings, arguing that the Court's fair use order addressed "novel and consequential
14 legal questions about the proper fair-use standard in the context of copyright infringement
15 challenges to groundbreaking generative artificial intelligence . . . technology." Dkt. 241 at 1. The
16 parties litigated Anthropic's motion for leave to appeal pursuant to 28 U.S.C. § 1292(b) or, in the
17 alternative, for reconsideration pursuant to Civ. L.R. 7.9, Dkt. 241; Rule 23(f) petition with the
18 Ninth Circuit, seeking interlocutory appeal of the Court's class certification ruling, CA9, Dkt. 1;
19 motion for a stay of this Court's proceedings, Dkt. 272; and emergency motion in the Ninth Circuit
20 for a stay pending resolution of its Rule 23(f) petition. CA9, Dkt. 18.

21 **Additional Counsel.** On August 11, 2025, Class Counsel notified the Court that they
22 associated with additional counsel to assist in representing the Class. Dkt. 298. Edelson PC and
23 Oppenheim + Zebrak, LLP ("O+Z") have represented the interests of publishers as Publishers'
24 Coordination Counsel ("PCC"), and Cowan, DeBaets, Abrahams & Sheppard LLP ("CDAS") has
25 served as Authors Coordination Counsel ("ACC"). Declaration of Jay Edelson and Matthew
26 Oppenheim (PCC Decl.) ¶¶ 32–44; Declaration of Nancy Wolff (ACC Decl.) ¶¶9–18.

27 **Mediation.** Following the Court's order permitting the parties to discuss settlement, the
28 parties engaged in mediation. Dkt. 210. The parties executed a binding term sheet late on the night

-3-

[AMENDED PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR FEES, EXPENSES, AND
SERVICE AWARDS
CASE NO. 3:24-CV-05417-AMO

1   of August 25 and notified this Court and the Ninth Circuit the following morning. Dkt. 363-2 at 12.

2   ***Preliminary Approval.*** Class Counsel submitted a motion for preliminary approval on September 5, 2025, supported by six separate declarations and a dozen exhibits. Dkt. 363. The Court held an initial hearing on preliminary approval on September 8, 2025, and ordered additional briefing. Dkt. 372. Following the hearing, the Court submitted 34 questions for Class Counsel to answer in collaboration with Anthropic, regarding *inter alia* the claims, opt-out, and distribution processes. Dkts. 375, 383. Class Counsel timely responded to those questions, filing a 53-page submission. Dkt. 418. Class Counsel also submitted a 34-page supplemental brief in support of preliminary approval, Dkt. 401, with a detailed Plan of Allocation that flowed from contractual arrangements, Dkt. 401-1, and backed by sixteen declarations, Dkts. 385–400.

***Administering the Settlement.*** Since preliminary approval, Class Counsel, PCC, and ACC have maintained active coordination with the Settlement Administrator to monitor claim processing. Geman Decl. ¶ 6; PCC Decl. ¶¶ 42–44; ACC Decl. ¶ 18. The Settlement Administrator has received over 29,000 claims for 95,000 works, reflecting robust class participation at this early stage. In addition, Class Counsel have answered hundreds of Class Member inquiries via phone and email, and conducted targeted research to locate and validate contact information for Class Members. Geman Decl. ¶ 6. Class Counsel have also overseen the issuance of comprehensive claimant communications to promote accessibility and fairness across the Class, and conducted several town hall webinars for publishers, authors, and agents to inform Class Members about the Court-approved notice materials and website. Geman Decl. ¶ 6.

## II.     ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

### A.     Attorneys' Fees

Class Counsel's requested fee of 20% is reasonable under the percentage-of-fund method. The requested fee is significantly less than the presumptively reasonable 25% benchmark employed in this Circuit. The fee also reflects the non-monetary relief secured: a tailored, past-only release and the destruction of the pirated datasets. The 20% fee is well below the market rate for non-class contingency cases as well, to say nothing of this highly risky and significantly expensive case. Each of the factors that courts consider in the percentage-of-fund method strongly support the fee that

-4-

[AMENDED PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR FEES, EXPENSES, AND
SERVICE AWARDS
CASE NO. 3:24-CV-05417-AMO

1  Counsel request here.  Further, Class Counsel's request for reimbursement of expenses totaling
2  $1,969,421.75 plus $17,030,000 for future costs, and $50,000 in Service Awards to the three Class
3  Representatives is also reasonable.

### 1. Percentage-of-the-Common Fund Method

To calculate fees in common fund cases, "the majority of courts [apply] the percentage-of-recovery method." *Ward v. United Airlines, Inc.*, 2024 WL 269149, at *5 (N.D. Cal. Jan. 24, 2024) (Alsup, J.); *Roman v. Jan-Pro Franchising Int'l, Inc.*, 2024 WL 2412387, at *4 (N.D. Cal. May 23, 2024) (Alsup, J.) (same). "Under the percentage-of-recovery method, the attorneys' fees equal [a] percentage of the common settlement fund." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). "For more than two decades, the Ninth Circuit has set the 'benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund.'" *In re Wells Fargo & Co. Shareholder Derivative Litig.*, 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020) (quoting *Williams v. MGM Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)); *see also Roman*, 2024 WL 2412387, at *5 ("[A]wards tend to adhere to our court of appeals' benchmark."). To calculate the percentage-of-recovery award, "courts generally start with the 25 percent benchmark and adjust upward or downward depending on:

> The extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (*e.g.*, cost, duration, foregoing other work), and whether the case was handled on a contingency basis."

*In re Wells Fargo & Co. Shareholder Derivative Litig.*, 445 F. Supp. 3d at 519 (cleaned up) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015)). "Foremost among these considerations, however, is the benefit obtained for the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983); *McCown v. City of Fontana*, 565 F.3d 1097, 1101–02 (9th Cir. 2009) ("reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff").

**Results for the Class.** As the Court noted in its Opinion on Preliminary Approval, the Settlement is "the largest copyright class action settlement in history." Dkt. 437 at 6. The size of

the $1.5 billion non-reversionary settlement is extraordinary, both from an aggregate and per-work perspective, with the settlement fund equating to more than $3,000 per work. That per-work amount is "an order of magnitude more than the maximum proposed for books in the *Google Books* settlement that was rejected for releasing future claims." *Id.* at 5–6 (citing *Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666, 672 (S.D.N.Y. 2011)). It is also more than "four times the statutory minimum for ordinary infringement, which is also the most common award in copyright cases," and more than "fifteen times the statutory minimum for innocent infringement of $200." *Id.* at 5.

Class Counsel also secured valuable non-monetary relief. The Settlement requires Anthropic to "destroy all the original files of works torrented/downloaded from Library Genesis or Pirate Library Mirror, and any copies that originate from the torrented copies," subject to certain legal preservation obligations. Dkt. 363-3 ¶ 2.2. This destruction is a victory for Class Members, given Anthropic's intent to retain the pirated works "forever." Dkt. 244 at 3.

***Risk of Litigating this Action on Contingency.*** Before this litigation, no court had ever (a) found an AI company liable for copyright infringement, (b) held that piracy by an AI company constituted copyright infringement, or (c) certified a class in a copyright infringement action against an AI company or for owners of book copyrights. Class Counsel also litigated against experienced attorneys from five different, major law firms.

***Market Rates.*** Class Counsel's requested fee award of 20 percent is within the relevant market rate for contingency representations. "'Market rates' are a question of 'lawyers' reasonable expectations for recovery of contingent fees, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size.'" *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *5 (N.D. Cal. Sept. 21, 2018) (internal brackets omitted) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)). Both Class Counsel firms seek fees well below the market rate contingency fee charged to private clients, which is often 40%, twice the requested amount here. Nelson Decl. ¶ 7. The requested fee is reasonable relative to percentages awarded in other class actions, copyright class cases, and megafund cases. Courts routinely award up to 30% of the settlement fund in copyright class cases. *See Ferrick v. Spotify USA Inc.*, No. 16-CV-8412 (AJN), 2018 WL 2324076 (S.D.N.Y. May 22, 2018) (awarding 30% of

the $43.45 million cash fund); *In re Napster, Inc. Copyright Litig.*, No. 3:00-MD-00-1369, Dkt. 1324 (N.D. Cal. Feb. 14, 2008) (awarding 22.1% of the $130 million settlement); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-5693, 2017 WL 4685536 (C.D. Cal. May 8, 2017) (awarding 30% of the settlement fund of between $25.5 million and $73 million, depending on future royalty payments); *see also* Fitzpatrick, *An Empirical Study*, at 833 (finding that every federal class action settlement in 2006 and 2007 showed an average fee award of 25.4% and a median award of 25%). Compared to other "megafund" settlements ranging in value from $410 million to more than $2.5 billion, Class Counsel's request for 20% is right in line. *See In re: Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2022 WL 4587617 (N.D. Ala. Aug. 9, 2022) (awarding ~23.5% of the $2.67 billion settlement fund); *In re: College Athlete NIL Litig.*, No. 20-cv-3919 CW, Dkt. 1001 (N.D. Cal. July 11, 2025) (awarding 20% of the $1.976 billion NIL claims settlement fund plus 10% of the $600 million additional compensation settlement fund plus $20,000,000 upfront injunctive fee and 0.75% to 1.25% of future amounts); *Lawrence E Jaffe Pension Plan v. Household Int'l. Inc.*, No. 1:02-cv-05893, Dkts. 2222, 2265 (N.D. Ill. Nov. 10, 2016) (awarding ~24.7% of the $1.575 billion settlement fund); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094 (D. Kan. 2018), *aff'd* 61 F.4th 1126 (10th Cir. 2023) (awarding 33.3% of the $1.51 billion settlement fund); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) (awarding 28.6% of the $1.08 billion settlement fund); *Allapattah Servs. Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding ~31.3% of the $1.075 billion settlement fund).[1]

### B. Litigation Expenses

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Roman v. Jan-Pro Franchising Int'l, Inc.*, 2024 WL 2412387, at *5 (N.D. Cal. May 23, 2024) (Alsup, J.); *see also* Fed. R. Civ. P. 23(h).

---

[1] Where "the court achieves a reasonable result using the method it selects"—here, by awarding a below-market-rate contingency fee to class counsel—the lodestar "cross-check is not required." *Senne v. Kansas City Royals Baseball Corp.*, 2023 WL 2699972, at *18 (N.D. Cal. Mar. 29, 2023); *see In re Coll. Athlete NIL Litig.*, 2025 WL 3171376, at *1 (N.D. Cal. July 11, 2025) (approving, without conducting crosscheck analysis, attorneys' fees equivalent to 20% of the $1.976 billion NIL Claims Settlement Fund (or $395.2 million in fees)).

1    Class Counsel have incurred $1,969,421.75 in unreimbursed litigation expenses, including costs related to experts, discovery, mediation, legal research, filing fees, document hosting services, copying and mailing, and other customary litigation expenses. Geman Decl. ¶¶ 48–63 (detailing the litigation expenses that Class Counsel incurred by category). Class Counsel do not seek reimbursement of several costs—namely hotels, meals, and fees paid to experts Mr. Rubenstein and Mr. Fitzpatrick. *Id.* ¶ 57. Class Counsel further anticipate an additional $17,030,000 in expenses related to the administration and finalization of the settlement. Geman Decl. ¶ 58.

The expenses for which Class Counsel seek reimbursement are "typically [] billed to paying clients in non-contingency matters" and are recoverable. *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 4804974, at *5 (N.D. Cal. Nov. 15, 2024), *appeal dismissed*, 2025 WL 1703624 (9th Cir. Apr. 3, 2025); *see Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2017 WL 4685536, at *10 (C.D. Cal. May 8, 2017) (reimbursing in copyright class action expenses incurred in "conjunction with discovery, the services of experts and specialist appellate counsel, mediation, travel, technology support costs, a mock trial, and the cost of computer research and services."); *Hofstetter v. Chase Home Fin., LLC*, 2011 WL 5545912, at *1 (N.D. Cal. Nov. 14, 2011) (Alsup, J.) (approving same plus "costs associated with class notice and settlement mailings").

Class Counsel seeks reimbursement for litigation expenses that were reasonable and necessary to competently represent the Class. Therefore, the Court **GRANTS** the request for reimbursement of $1,969,421.75 in incurred expenses, and a cost reserve of $17,030,000 in anticipated expenses.

### C.    Service Awards for Class Representatives

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (emphasis omitted) (citing 4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed.2008)). While such "awards are discretionary," they are commonly issued because of the many benefits they provide: "compensat[ing] class representatives for work done on behalf of the class"; making "up for financial or reputational risk undertaken in bringing the action"; and recognizing class representatives' "willingness to act as a private attorney general." *Id.*

1    The requested service awards for the three Settlement Class Representatives—Andrea
2    Bartz, Inc., Charles Graeber, and MJ+KH, Inc.—are reasonable and appropriate in light of their
3    critical contributions to the case, the significant out-of-pocket expenditures each tendered as part
4    of their involvement, and the overwhelming monetary recovery provided to the class by the
5    settlement here. All three Class Representatives expended considerable time and effort to assist in
6    the investigation and litigation of this case. In particular, all three Class Representatives (i)
7    reviewed filings; (ii) responded to extensive discovery requests; (iii) prepared for and sat for
8    depositions; (iv) traveled to San Francisco for multiple hearings; (v) participated heavily in the
9    negotiation of the Settlement, including the plan of allocation; (vi) submitted detailed declarations
10   in support of preliminary approval; (vii) reviewed and contributed edits to the notice materials and
11   claim form; and (viii) worked to implement the Settlement by speaking to other authors and
12   stakeholders. *See* Dkts. 385–87. All three Class Representatives were committed to ensuring that
13   the Settlement was fair to class members, and that class members could understand it, and treated
14   their responsibilities to the Class as their jobs. *See id.*

15   Service awards to the Class Representatives are well warranted in these circumstances, and
16   Courts have repeatedly issued the requested awards. *See Van Vranken v. Atl. Richfield Co.*, 901 F.
17   Supp. 294, 300 (N.D. Cal. 1995) ($50,000 to one class representative); *Wright v. Stern*, 553 F.
18   Supp. 2d 337, 342 (S.D.N.Y. 2008) ($50,000 to each of eleven class representatives); *In re Dun &*
19   *Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) ($35,000-55,000
20   each to five class representatives); *Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 106
21   (D.D.C. 2013) ($50,000 award); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 479-80 (D.N.J.
22   2008) ($60,000 award); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001)
23   ($50,000 to lead plaintiff); *In re Revco Sec. Litig., Nos. 851, 89cv593*, 1992 WL 118800, *7 (N.D.
24   Ohio 1992) ($200,000 award); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137
25   F.R.D. 240, 250-51 (S.D. Ohio 1991) ($50,000 awards to each of six named plaintiffs); *Beaver v.*
26   *Tarsadia Hotels*, 2017 WL 4310707, at *8 (S.D. Cal. Sept. 28, 2017) ($50,000 award to four
27   representatives); *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *18 (N.D. Cal.
28   Sept. 2, 2015) (authorizing $80,000 and $120,000 awards in case with $415,000,000 settlement

1  fund); *In re Titanium Dioxide,* 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) ($125,000 award to lead class representative out of $163.5 million settlement).

Therefore, the Court concludes that the requested service awards are reasonable and **GRANTS** $50,000 to each of the three Class Representatives, for a total of $150,000.

## III. CONCLUSION

The Court **GRANTS** Plaintiffs' motion for: (1) attorneys' fees of 20% of the non-reversionary Settlement Fund, consisting of $1.5 billion plus interest paid by Anthropic or accrued in the Settlement Fund, (2) reimbursement of expenses totaling $1,969,421.75 and a cost reserve of $17,030,000 in anticipated expenses, and (3) service awards of $50,000 for each of the three Settlement Class Representatives (totaling $150,000).

**IT IS SO ORDERED.**

DATED: _____ \_\_\_\_\_, 2026

_____
ARACELI MARTÍNEZ-OLGUÍN
UNITED STATES DISTRICT JUDGE