Heidi S. Bond
9525 W. 53rd Pl.
Arvada, CO 80002


January 19, 2026


Judge Araceli Martinez-Olguin
c/o Class Action Clerk
United States District Court for the Northern District of California
450 Golden Gate Ave.
16th Floor
San Francisco, CA 94102.


Re: Bartz v. Anthropic PBC, No. 3:24-cv-05417-WHA (N.D. Cal.);


Dear Judge Araceli Martinez-Olguin,

My name is Heidi Bond; I write under the pen name of Courtney Milan, and have registered a claim for this settlement under my loanout company, Femtopress LLC. I believe I am a member of this class because I am an author and the exclusive rights holder in 22 works listed on the works list; *The Duke who Didn't*, TX0008905790, is an example of one such work. I am also an author and copyright holder in 4 additional works where I am not the exclusive rights holder.

The arguments I make in this letter are as follows:

(1) I ask the court to largely approve this settlement.
(2) To the extent that this court chooses to approve attorney compensation as a percentage of the settlement size, I ask that such percentage-based compensation be limited to the amount actually received from Anthropic.

## 1. This court should approve this settlement.

The primary objections I have seen from other authors fall in two broad classifications:

(1) The settlement should be denied because the settlement class is insufficiently broad. People who make this objection will generally point out that numerous works pirated by Anthropic will not be included in the settlement class largely because copyright was not filed on those works. (Some might point out that this settlement applies only to books, and Anthropic pirated a large amount of non-book material in addition to their book piracy.) The authors making this claim all wish they were able to take part in the settlement (or wish that they had *more* works subject to the settlement).

(2) The settlement should be denied because the settlement amount is not large enough to bankrupt Anthropic. People who make this objection will claim that because of Anthropic's piracy, it deserves to be punished to the point that it will no longer exist, and this settlement fails to do so.

I am entirely sympathetic to those making the first argument: it is awful to know your work was pirated, and yet not be able to get any sort of recompense for it. I understand, however, that the settlement class is determined by the dictates of copyright law and class actions, and that there is no way at this (or probably any) juncture for this court to create a class where the members are not similarly situated to one another.

The fact that people are making this argument is instructive in a different way than those making it intend. Many authors wish they were able to join the settlement class (or have more of their works subject to it). That suggests that the amount of the settlement is enough to induce them to give up their right to sue Anthropic. If nothing else, this is probably the marker of a fair settlement amount.

As to the second argument, I also understand the rage of knowing that a company has brazenly stolen your life's work and will face what is essentially a slap on the wrist for this unlawful conduct. But the risks of going to trial are substantially larger than usual in this case and must be weighed accordingly.

In most situations where class plaintiffs weigh settlement versus trial, the risk is a simpler cost-benefit analysis weighing "what greater amount could be obtained at trial" versus "how long will the trial take, and what is the likelihood of success."

In this case, however, both our current Administration and a large majority of Congress (on both sides of the aisle) look with extreme favor on generative artificial intelligence, and they do not care at all about us as individual creators.

p. 2

News of this settlement alone has prompted discussion of using the defense production act to nationalize our life's work to be fed into large language models without our consent.[1] Our President has already promulgated a ban on state regulation of artificial intelligence.[2] A substantially larger award, unwillingly wrested from Anthropic, would possibly set off a flurry of legislation that could permanently change our rights to our work and force us to grant compulsory licenses.

This would be a far worse outcome for us as authors than a mere loss at trial.

The amount achieved in this settlement is probably as high as it can be for authors to actually receive a somewhat meaningful payment without triggering legislation or administrative action that would meaningfully limit our rights.

There is an additional risk to delay: bankruptcy. Generative artificial intelligence is well into the most intense hype cycle that I have witnessed in my lifetime, or that I have read about in my time spent researching books set in the dawn of the industrial revolution. Promises have been made with stunning claims of world transformation that will occur no later than 2027. Anthropic CEO Dario Amodei wrote that by "late 2026 or early 2027," generative AI will have "[i]ntellectual capabilities matching or exceeding that of Nobel Prize winners across most disciplines—including biology, computer science, mathematics, and engineering."[3]

On the basis of these startlingly optimistic claims, Anthropic has raised over a hundred billion dollars. I would personally expect that before Anthropic matches the

---

[1] https://www.lawfaremedia.org/article/anthropic-s-settlement-shows-the-u.s.-can-t-afford-ai-copyright-lawsuits.

Please note that I thought about Bluebooking my citations, but I ended up Bartlebying on that one. Instead, I formatted this entire letter in Century Schoolbook, which is like Bluebooking in that it is wholly unnecessary for the document I am producing, and also like Bluebooking in that it is deployed in this letter entirely as a subtle shibboleth suggesting that I am aware that there is One Font to rule them all etc. etc. and in the darkness bind them.

[2] https://www.whitehouse.gov/presidential-actions/2025/12/eliminating-state-law-obstruction-of-national-artificial-intelligence-policy/

[3] https://www.anthropic.com/news/anthropic-s-recommendations-ostp-u-s-ai-action-plan

intellect of Nobel Prize winners, it might figure out how to cite a court case as well as a 1L.[4] Alas. This is why I am not in the AI business.

And therein lies the second risk. Anthropic has no other core business to fall back on; it lives or dies on AI hype and its ability to deliver promises that (to my mind) strike me as more fictional than the novels I write.

Perhaps my skepticism is unwarranted, in which case I will happily take the settlement money Anthropic offers and enjoy the glowingly rosy future that they usher in.

Nonetheless, the second risk posed in rejecting this settlement is that by the time a trial and all the relevant appeals wind to a conclusion, authors will own nothing but a claim in bankruptcy court. I certainly don't think we will get *more* money from Anthropic if we have to wait three to five years, no matter what award is granted at a hypothetical trial.

For these reasons, I ask the court to approve this settlement: it is probably the closest we can get to a just payment under the circumstances. Waiting longer, or pushing for more, may very well end up with the authors whose life work has been stolen receiving nothing.

## 2.  I ask the court to structure any attorney payments based on percentages to amounts actually received from Anthropic

Since I am speaking of bankruptcy risks, when I look at the schedule for Anthropic delivering payments to the settlement fund, I believe the risk of Anthropic insolvency needs to be taken into account. It seems likely that Anthropic will be able to make the first two payments totaling $600 million. I hope it will *probably* be able to make the $450 million payment due in November of 2026. The final payment of $450 million is due in November of 2027, and I have…let's call them doubts.

---

[4] To be completely fair to our current crop of LLMs, as previously established, I also can't be bothered to Bluebook this letter. But—and this is important—it is because I am lazy, not because I am unable. Also, I write historical romance novels. Despite these character flaws, my citations are to real things which actually make the claims I'm asserting. Where I have quoted, I have checked the quotation word-by-word against the original.

Once we cross the final timeframe for Anthropic's wildest promises, which is about a year from now, all bets are off. No matter how much money Anthropic has in the bank, I am not certain it will survive panicked investor fraud suits.

For that reason, I ask that class attorneys share equally in the risk of Anthropic insolvency. If compensation is approved as a percentage of the settlement, their payment should be structured so that it scales with the *actual* amount that is taken in. I'm not going to get too upset about attorneys taking their fair share, and trust that this court will apply standard principles on attorney compensation. But if this settlement only ever takes in $600 million, attorneys should not get $320 million of that amount.

I don't intend to appear at the final approval hearing. No attorneys represented, advised, or assisted me in the writing of this letter, and I do not know of any attorneys who would profit from this, except as members of the class.

Thank you for your time.

Sincerely,

Heidi S. Bond / Courtney Milan

H. Bonel
9525 W. 53rd Pl
Arvada, CO 80002

DENVER CO 802

20 JAN 2026 PM 4 L

LUNAR NEW YEAR
★ FOREVER USA ★

LUNAR NEW YEAR
★ FOREVER USA ★

Judge Araceli Martinez-Olguin
c/o Class Action Clerk
USDC for the N-D of California
450 Golden Gate Ave
16th Floor
San Francisco, CA 94102

94102-342616

