UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ and KIRK WALLACE JOHNSON, individually, and ANDREA BARTZ, INC., CHARLES GRAEBER, and MJ + KJ, INC., individually and as representatives of the class,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 3:24-cv-05417-AMO<br><br>**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF SERVICE AWARDS; JUDGMENT**<br><br>Re: Dkt Nos. 573, 619 |

Before the Court are Plaintiffs' Andrea Bartz, Inc., Charles Graeber, and MJ + KJ Inc. Motion for Final Approval of Class Action Settlement ("Mot. Final Approval") and Motion for Attorneys' Fees, Reimbursement of Expenses, and Plaintiff Service Awards ("Mot. Attorneys' Fees"). The motions were heard before this Court on April 23, 2026. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, and good cause appearing, the Court hereby GRANTS both Motions for the following reasons.

**I.    DISCUSSION**

**A.    Final Approval of Settlement**

**1.    Rule 23(e)(1)**

Before granting final approval, the Court must ensure that the notice was provided "in a reasonable manner to all class members who would be bound by the proposal" and "certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1).

The Notice Plan constituted the best notice that is practicable under the circumstances to all Class Members and was sufficiently implemented by the Settlement Administrator, effecting Class Notice that fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process. The Settlement Administrator compiled contact information from a wide range of sources including submissions by the Author's Guild, the Science Fiction Writers of America, the Author's Registry, more than 170 publishers, and through a variety of third-party sources, including Bowker ISBN Services, the U.S. Copyright Office, commercial data sources (such as Amazon.com), and targeted web searches. Declaration of Jennifer M. Keough of JND Legal Administration in Support of Final Approval ("JND Decl.") ¶ 20. Notice included direct mail and email to rightsholders sent to 594,945 potential Class Members associated with 99.98 percent of the Works on the Works List with notice not returned as undeliverable to Class Members associated with at least 99.5 percent of the Works on the Works List. *Id.* ¶¶ 28, 79. The Notice campaign also included distribution of press through journalists specializing in the education and publishing industries, publication in newsletters such as *Publishers Weekly, The Chronicle of Higher Education, Writer's Digest, Poets & Writers*, publication in newspapers and magazines such as *The Atlantic*, *The Toronto Star*, *The Globe and Mail*, and *La Presse*, and widespread social media campaigns. *Id.* ¶ 32.

The findings of the Preliminary Approval Order (Dkts. 427, 437) are confirmed and all requirements for maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a) and (b)(3) are satisfied. The certified Class is defined as follows:

> All beneficial or legal copyright owners of the exclusive right to reproduce copies of any book in the versions of LibGen or PiLiMi downloaded by Anthropic as contained on the Works List. "Book" refers to any work possessing an ISBN or ASIN which was registered with the United States Copyright Office within five years of the work's first publication and which was registered with the United States Copyright Office before being downloaded by Anthropic, or within three months of first publication. Excluded are the directors, officers and employees of Anthropic, personnel of federal agencies, and district court personnel. For avoidance of doubt, only works included on the Works List are in the Class.

The Court reaffirms the appointment of Andrea Bartz, Inc., Charles Graeber, and MJ + KJ Inc. as Class Representatives. *See Bartz v. Anthropic PBC*, No. C 24-05417 WHA, 2025 WL 2961371, at *8 (N.D. Cal. Oct. 17, 2025); *see also Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038,

1054 (N.D. Cal. 2025). These Class Representatives have fairly and adequately represented, and will continue to fairly and adequately represent, the interests of the Class. *See Bartz*, 2025 WL 2961371, at *8. No Objections challenged the Class Representative's appointment.

The Court reaffirms the appointment of Lieff Cabraser Heimann & Bernstein, LLP and Susman Godfrey L.L.P. as counsel representing the Class under Federal Rule of Civil Procedure 23(g). *See Bartz*, 2025 WL 2961371, at *8; *Bartz*, 791 F. Supp. 3d at 1054. Class Counsel have fairly and adequately represented, and will continue to fairly and adequately represent, the interest of the Class. The Objections suggesting that they have not adequately and vigorously represented the Class lack merit and are overruled. Dkts. 425 (Ruden), 543 (Chase).

The Court reaffirms the appointment of JND Legal Administration to serve as the Settlement Administrator, and finds that it has thus far fulfilled its duties under the Settlement. *See Bartz*, 2025 WL 2961371, at *8. The Settlement Administrator's estimated expenses are reasonable given the scope and complexity of this Settlement, and the Settlement Administrator shall be paid in accordance with the Settlement Agreement. *See* Mot. Attorneys' Fees at 16. The Settlement Administrator agreed to provide notice, administration, and distribution services for approximately $15 million. Dkt. 399 (Supp. Keough Decl. re Notice Plan) ¶ 117. No Objections challenge JND's appointment.

### 2. Rule 23(e)(2)

In order to approve a proposed class action settlement, a court must hold a hearing and find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, courts analyze whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Pursuant to Federal Rule of Civil Procedure 23(e)(2) and this District's Procedural Guidance for Class Action Settlements, the Settlement is fair, reasonable, adequate, and in the best interests of the Class Members. Class Counsel and the Class Representatives ably protected and furthered the best interests of the Class in this Action. *See* Mot. Final Approval at 10-11. There are no indicia of fraud or collusion underlying this non-reversionary Settlement, which was the result

of several informed arm's length mediation sessions and subsequent negotiations facilitated by two respected mediators. *See id.* at 10-11; Fed. R. Civ. P. 23(e)(2) advisory committee's note (2018); *see also Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *Aguilar Auto Repair, Inc. v. Wells Fargo Bank, N.A.*, No. 23-cv-06265-LJC, 2025 WL 1753509, at *4 (N.D. Cal. May 23, 2025). The non-reversionary Settlement Fund of over $1.5 billion provides meaningful relief to the Settlement Class given the range of Class Members' reasonable possible recoveries, especially since further litigation would likely be complex, expensive, lengthy, and risky. Mot. Final Approval at 11-13. The estimated per-work payment of approximately $3,000 is four times the minimum statutory damages amount for willful infringement. 17 U.S.C. § 504(c)(1). The Settlement's methods of processing claims and distributing funds to Class Members are fair and adequate. *See* JND Decl. ¶¶ 89–95; Dkt. 401-1 (Plan of Allocation and Distribution) ¶¶ 3, 5. As of March 19, 2026, 54 percent of the Works List had been claimed, for a total of 264,809 works, with more expected in the coming days. *Id.*

The Settlement's terms of a proposed award of attorneys' fees, including timing of payments, are reasonable. Attorneys' fees are to be paid based on the benefit received by the Class, and were agreed to be capped at 25 percent. *See* Dkt. 363-1 ("Settlement Agreement") ¶ 81. There is no clear sailing provision. Under the Settlement, the timing of fee payments will correlate with Anthropic's payments into the Settlement Fund. *Id.*

The Ninth Circuit's *Churchill* factors also provide a framework for evaluating the fairness of a class action settlement. While the "key [*Churchill*] factors are now baked into the text of Rule 23(e), . . . the remaining ones can still be considered for [fairness] analysis." *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025). The remaining *Churchill* factors relevant here include the strength of the plaintiffs' case, the risk of maintaining class action status throughout the trial, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, and the reaction of the class members to the proposed settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004).

The $1.5 billion Settlement provides substantial benefits to the Class in light of the novel claims asserted. Success at trial was not assured, and a loss would have left the Class with no

recourse. Mot. Final Approval at 11-13; Dkt. 363 at 22–23. Additionally, Anthropic's Rule 23(f) petition was fully briefed in the Ninth Circuit when the Settlement was reached. Mot. Final Approval at 11-13. The $1.5+ billion Settlement thus provides substantial benefits relative to these litigation risks. The Settlement is also informed by extensive discovery and expert analysis— including review of over 80,000 documents and two million pages of materials, 20 depositions spanning more than 4,300 pages, 17 discovery motions, and extensive third-party discovery. Mot. Final Approval at 3-5; Dkt. 363 at 9–11; Dkt. 363-2 at 6–8.

The Class is represented by "excellent counsel, and it is their judgment that the result reached is fair, adequate, and reasonable." *Bartz*, 2025 WL 2961371, at *3; *see also* Dkt. 363-3 at 18–25. The Class's response was overwhelmingly favorable: the claims rate has reached at least 54 percent of Works, while only 350 valid opt outs, spanning just 1,802 Works, and forty-one Objections or comments were filed. JND Decl. ¶¶ 102–3; *see* N.D. Cal. Procedural Guidance for Class Action Settlements, Final Approval ¶ 1 (Class Members' Response). One Class Member even wrote to the Court to express support for the Settlement. *See* Dkt. 589 (Bond).

After full consideration of the factors, the Court finds that the Settlement meets the necessary procedural considerations and substantive qualities under Rule 23(e)(2), and is fair, reasonable, and adequate.

**B.      Final Approval of the Plan of Distribution & Allocation and Claims Process**

The Court finds that the Settlement Administrator effectively administered the Claims program pursuant to the Settlement Agreement and the Memorandum Opinion on Preliminary Approval (Dkt. 437) and that the Claims process was fair, reasonable and adequate.

The Court adopts the Parties' proposal for allocating the Net Settlement Fund. *See* Plan of Allocation and Distribution. The Plan of Allocation and Distribution provides payments to be distributed to valid claimants, who will receive a *pro rata* per-work share, to be divided among copyright owners based on either elected default splits (for non-education works only) or a percentage split determined by contracts or publishing agreements. *Id.* ¶ 4. If any funds remain in the Settlement Fund after all Valid Claims are paid, the Parties anticipate a redistribution of the remaining funds to Settlement Class Members unless it is economically infeasible to do so. Subject

to Court approval, any final balance will be directed in *cy pres*.

Should any disputes arise among valid claimants for a given Work, the Special Master will make a reasonable determination based on the evidence before him, for any disputes submitted to the Special Master that cannot be resolved by mutual agreement with the assistance of the Settlement Administrator. *See Id.* ¶¶ 3(d), 4; Dkt. 501 (appointing Theodore K. Cheng as Special Master). All submissions made to the Special Master in connection with any dispute resolution process—including publishing agreements—shall remain confidential and under seal.

### C.   Releases

Upon the Effective Date, the Parties shall have, fully and irrevocably released and forever discharged one another from any and all Released Claims as to the Works on the Works List. Settlement Agreement ¶¶ 1.29, 3.1. Accordingly, the Settlement shall terminate the Action. *See id.* ¶ 6.2(f). The Release, however, shall not include any claims related to the enforcement of the Settlement or Protective Order (Dkt. 63). The Release does not implicate any Objections seeking to add Works to the Works List, which were overruled above. As the Court earlier found, "if a work is not on the Works List, then a copyright owner of the right to reproduce that work is not in the class (unless as an owner with respect to another work that is on the list)." *Bartz*, 2025 WL 2961371, at *2 (emphasis removed).

### D.   Objections to the Settlement

The Court overrules the Objections to the Settlement. *See* Dkts. 425, 438–39, 540–46, 549–52, 564–66, 571–72, 584/593, 585, 588, 589, 594–95, 596/606, 597–605, 607–12. The Court addresses the Objections by category below.

#### 1.   Notice

The Objections challenging the reach, content, and duration of the Notice Plan are overruled. *See* Dkts. 551 (Werner), 571 (Hampton), 572 (Chakanga), 599 (Story).

As to reach, at least 99.5 percent of potential Class Members were sent notice not returned as undeliverable—well-above the 70 percent notice rate that the Federal Judicial Center considers reasonable. JND Decl. ¶ 79; Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010). The Settlement Administrator sent direct

notice to 506,194 potential Class Members associated with 99.5 percent of Works on the Works List. JND Decl. ¶ 79. Within the 56-day notice period,[1] JND disseminated notice through direct mail, email, reminder postcards and emails, print and digital press releases, and a media campaign garnering over 105.4 million impressions via social media and paid search. *Id*. ¶¶ 52, 59, 70, 75.

As to content, the Court-approved Notice expressly stated that statutory damages could range from $200 to $150,000 per Work, and gave "equal dignity" to the options of filing a claim and opting out. *See* Class Notice at https://www.anthropiccopyrightsettlement.com/documents ; *Bartz*, 2025 WL 2961371, at *2; Dkt. 490 at 1–2; Dkt. 495 at 4. Further, no requirement exists that the Notice explain how to e-file with the Court, and many non-lawyers successfully lodged Objections.

As to duration, the two Objections argue that the Notice period was too short are overruled. *See* Dkts. 571 (Hampton), 572 (Chakanga). The 56-day Notice period exceeded the 35-day period specified in this District's Procedural Guidance for Class Action Settlements.

### 2.    Works List and Class Definition

The Objections and comments requesting that the Court expand the Class definition and Works List are overruled. *See* Dkts. 438 (Barrett), 540 (Paolinelli), 541 (Tombs), 542 (Leahy), 543 (Chase), 546 (Johnson), 550 (Grace), 551 (Werner), 552 (Miller), 565 (Glenn), 585 (Ryker), 588 (Schapiro), 602 (Bishop), 603 (Newton Compton Editorial), 604 (Tea Tascabili Degli Editori), 605 (Casa Editrice Nord SRL), 607 (Bollati Boringhieri Editore SRL), 608 (Adriano Salani Editore SRL), 609 (Smith), 610 (Longanesi & C. SRL), 611 (Antonio Vallardi Editore SRL), and 612 (Garzanti SRL).

First, individuals lack standing to object regarding works that are not on the Works List and are thus unaffected by the Settlement. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-05944-JST, 2020 WL 1873554, at *4 (N.D. Cal. Mar. 11, 2020) (quoting *S.F. NAACP v. S.F. Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999)); *In re Hydroxycut Mktg. & Sales Practices Litig.*, Nos. 09md2087, 09cv1088 BTM (KSC), 2013 WL 5275618, at *2 (S.D. Cal. Sept.

---

[1] Class Members originally had 45 days from the Notice End Date to the deadline to exclude themselves from or object to the Settlement. *See* Plan of Allocation and Distribution. However, the Court extended the opt-out and objection deadline by 11 days.  Dkt. 583.

17, 2013) (striking objection because objector had not "carried his burden of proving standing as a class member"); *In re Korean Air Lines Co. Antitrust Litig.*, MDL No. 1891, 2013 WL 7985367, at \*2 (C.D. Cal. Dec. 23, 2013) (similar); *Kent v. Hewlett–Packard Co.*, No. 5:09-cv-05341-JF (HRL), 2011 WL 4403717 (N.D. Cal. Sept. 20, 2011) (similar); *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009) (similar).

*Second*, even if considered on the merits, these Objections are not persuasive. The Class is limited to books possessing a copyright registration number (registered within a certain timeframe, as set out in the Class definition) because such works enjoy a presumption of validity as to copyright protection, *see* 17 U.S.C. § 410(c), and therefore, statutory damages. 17 U.S.C. §§ 412, 504(c)(1). *See Bartz*, 791 F. Supp. 3d at 1055–65; *Bartz*, 2025 WL 2961371, at \*1–2. The Class is further limited to works containing an ISBN or ASIN because these unique identifiers generally ensure that a work's copyright registration can be readily identified. *See Bartz*, 791 F. Supp. 3d at 1059. Linking works to copyright registration numbers by author name or title alone would be difficult, costly, and prone to error. *See id.* at 1059–60. In addition, any author or publisher can register their work, accordingly the Class definition does not exclude independent authors, small publishing houses, foreign publishers, or non-English authors. To the extent a dispute arises where claimants dispute ownership of a Work based on information in the Works List data, the Court-appointed Special Master can address them.

### 3. Adequacy of Relief, Claims Rate, and Remaining Objections

*Monetary relief*. Sixteen Objections contend that the $1.5+ billion monetary relief is too low given the range of potential statutory damages provided under the Copyright Act. Dkts. 439 (Reding), 544 (Hale), 546 (Johnston), 549 (Stewart), 551 (Werner), 564 (Sappington), 566 (Burke-Garcia), 571 (Hampton), 572 (Chakanga), 584 and 593 (Burton), 594 (Choi), 595 (DesJardins), 596 and 606 (Lee), 598 (Hyder), 601 (Larson), 609 (Smith).[2] These Objections do not, however, present "a realistic assessment of the overall risks and rewards of a trial." *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 626 (N.D. Cal. 2021), *aff'd,* No. 21-15553, 2022 WL 822923 (9th

---

[2] Class Counsel note they received a letter from Robert Jacobson that objects to the Settlement but has not been filed on the docket. The Objection is thus invalid and is overruled; it is also meritless for the reasons Class Counsel explain. Mot. for Final Approval at 20-25.

[PROPOSED] ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

Cir. Mar. 17, 2022). Even if successful at trial, there remained risk that post-trial proceedings would jeopardize the Class's recovery and cause major delays. *Id.* at 628 ("[A] multi-billion dollar verdict could create its own major risk for the class. A number of courts have commented on the potential for a due process problem when statutory damages are pursued by a large class, such as the one here."). These Objections are therefore overruled.[3]

*Claims Rate*. One Objection submitted in December 2025 stated that the claims rate did "not bode well for full participation" in the Settlement. Dkt. 599 at 6. Since then, the claims rate has since increased over three-fold, to over 54 percent as of March 19, 2026, which is higher than most class action cases. This Objection is overruled.

*Non-Monetary Relief*. Several Objections request additional non-monetary relief, including novel licensing schemes (Dkt. 599 at 3; Dkt. 566), source attribution in Anthropic's outputs (Dkt. 549), deletion of AI models (Dkt. 544), and abolishing use of scanned books for training (Dkt. 595). *See also* Dkts. 425, 584/593, 599–600, 603–5, 607–8, 610–12. These requests go beyond the scope of this Settlement and the remedies attainable thereunder, especially given the Court's fair use ruling regarding the training of large language models. *See Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007 (N.D. Cal. 2025). The Settlement already provides ample forward-looking protections, including the destruction of Class Members' pirated Works. Settlement Agreement ¶ 2.2. Anthropic attests it did not use Class Members' Works to train a commercial model, and the Settlement does not release claims for future harm or claims "based on the output of AI models". *Id.* ¶¶ 1.29, 3.1. These Objections are overruled.

*Request for Trial*. One Objection argues the Court should compel the Parties to go to trial. Dkt. 425 (Ruden). As discussed above, the Settlement accounts for the substantial risks of continued litigation, including the possibility of an adverse ruling, years of appeals, and changes in a defendant's financial position. Mot. Final Approval at 11-13. "That certain Class Members

---

[3] One Objection also argues that the release is "overly narrow in scope" because Anthropic "simply gets release from liability for past conduct." Dkt. 599 (Story) at 3. But a narrow release ***benefits*** the Class, and thus does not counsel against final approval. The tailored released also underscores the sufficiency of the monetary relief offered; Class Members give up less in exchange for their recovery, retaining their rights to sue for future misconduct. *See* Settlement Agreement ¶ 1.29. The past-only release does not apply to any output claims, narrowing it even further.

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT | CASE NO. 3:24-CV-05417-AMO

evaluate the risks differently, or would prefer to go to trial despite those risks, does not prevent the Court from granting final approval to the Settlement." *Perkins v. LinkedIn Corp*, No. 13-CV-04303-LHK, 2016 WL 613255, at *6 (N.D. Cal. Feb. 16, 2016); *see also Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

*Plan of Allocation*. Two Objections challenge the Plan of Allocation and Distribution. *See* Dkts. 425 (Ruden), 602 (Bishop). They argue that the dispute resolution process is inadequate for failing to include authors' agents and that the appointment of Mr. Cheng as Special Master will favor publishers. Finding no basis for either concern, these Objections are overruled.

Finally, many Objections were sealed by the Clerk despite filers not formally moving to seal them. Class Members should be able to review all Objections. Accordingly, the Clerk is hereby directed to **UNSEAL** all Objections within 14 days of this Order.

### E.    Opt-Outs

The Court has reviewed the lists of individuals who have timely and untimely opted out of the Settlement attached to the JND Declaration ¶102 & Ex. J. To date, none of the Class Members who submitted an untimely request for exclusion have demonstrated excusable neglect or sought court approval for acceptance of a late opt out.

### F.    Other Settlement Matters

The Action and all Released Claims asserted against the Parties are settled and dismissed with prejudice. Execution of the Settlement shall proceed as set forth in the Settlement Agreement.

The Parties shall file a post-distribution accounting in accordance with the Northern District's Procedural Guidance for Class Action Settlements within 21 days after the substantial completion of the Net Settlement Fund's distribution ("Post-Distribution Accounting"). In addition to the information contained in the Guidance, the Post-Distribution Accounting must discuss any significant or recurring concerns communicated by class members to the Settlement Administrator or counsel since final approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved. The Parties may request a continuance of the deadline for the Post-Distribution Accounting if the information required as part of the accounting is not yet available.

The Court reserves jurisdiction over the subject matter and each Party to the Settlement with respect to the interpretation and implementation of the Settlement for all purposes, including enforcement of any of the terms thereof at the insistence of any Party and resolution of any disputes that may arise relating to the implementation of the Settlement or this Order.

## II.    Attorneys' Fees Expenses and Service Awards

Plaintiffs move for (1) 12.5 percent of the $1.5+ billion Settlement Fund in attorneys' fees to Class Counsel; (2) reimbursement of $2,779,950.26 in litigation expenses incurred by Class Counsel; (3) a cost reserve of $18,220,000 for future expenses, including payment to the Settlement Administrator; and (4) service awards of $50,000 to each Class Representative. *See generally* Reply Brief in Support of Fee Application. The Court addresses each request in turn.

### A.    Attorneys' Fees

Class Counsel's requested fee of 12.5 percent to Class Counsel is reasonable under the percentage-of-fund method. The requested fee is significantly less than the presumptively reasonable 25 percent benchmark employed in this Circuit. *See Ward v. United Airlines, Inc.*, 2024 WL 269149, at *5 (N.D. Cal. Jan. 24, 2024). Each of the factors that courts consider in the percentage-of-fund method strongly support the fee that Counsel request here. *See id.*

### 1.    Percentage-of-the-Common Fund Method

To calculate fees in common fund cases, "the majority of courts [apply] the percentage-of-recovery method." *Ward v. United Airlines, Inc.*, No. C 15-02309 WHA, 2024 WL 269149, at *5 (N.D. Cal. Jan. 24, 2024) (Alsup, J.); *Roman v. Jan-Pro Franchising Int'l, Inc.*, No. 3:16-CV-05961-WHA, 2024 WL 2412387, at *4 (N.D. Cal. May 23, 2024) (Alsup, J.) (same). To calculate the percentage-of-recovery award:

> Courts generally start with the 25 percent benchmark and adjust upward or downward depending on the extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (*e.g.*, cost, duration, foregoing other work), and whether the case was handled on a contingency basis."

*In re Wells Fargo & Co. Shareholder Derivative Litig.,* 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020)

(cleaned up) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015)). "Foremost among these considerations, however, is the benefit obtained for the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983); *McCown v. City of Fontana*, 565 F.3d 1097, 1101–02 (9th Cir. 2009) (reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff").

**Results for the Class.** As the Court noted in its Opinion on Preliminary Approval, the Settlement is "the largest copyright class action settlement in history." *Bartz*, 2025 WL 2961371, at *3. The size of the $1.5 billion non-reversionary settlement is extraordinary, both from an aggregate and per-work perspective, with the settlement fund equating to more than $3,000 per work. *Id.* That per-work amount is "an order of magnitude more than the maximum proposed for books in the *Google Books* settlement that was rejected for releasing future claims." *Id.* (citing *Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666, 672 (S.D.N.Y. 2011)). It is also more than "four times the statutory minimum for ordinary infringement, which is also the most common award in copyright cases," and more than "fifteen times the statutory minimum for innocent infringement of $200." *Id.*

Class Counsel also secured valuable non-monetary relief. The Settlement requires Anthropic to "destroy all the original files of works torrented/downloaded from Library Genesis or Pirate Library Mirror, and any copies that originate from the torrented copies," subject to certain legal preservation obligations. Settlement Agreement ¶ 2.2. This destruction is a victory for Class Members, given Anthropic's intent to retain the pirated works "forever." *Bartz*, 791 F. Supp. 3d at 1047.

**Risk of Litigating this Action on Contingency.** Before this litigation, no court had ever (a) found an AI company liable for copyright infringement, (b) held that piracy by an AI company constituted copyright infringement, or (c) certified a class in a copyright infringement action against an AI company or for owners of book copyrights. Mot. Attorneys' Fees at 13. Class Counsel also litigated against experienced attorneys from five different, major law firms. *Id.* at 14.

**Market Rates.** Class Counsel's requested fee award of 12.5 percent is within the relevant

market rate for contingency representations. The requested fee is reasonable relative to percentages awarded in other class actions, copyright class cases, and megafund cases. *Id.* at 16-18. Compared to other "megafund" settlements ranging in value from $410 million to more than $2.5 billion, Class Counsel's request for 12.5 percent is right in line. *See In re: Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2022 WL 4587617 (N.D. Ala. Aug. 9, 2022) (awarding ~23.5 percent of the $2.67 billion settlement fund); *In re: College Athlete NIL Litig.*, No. 20-cv-3919 CW, Dkt. 1001 (N.D. Cal. July 11, 2025) (awarding 20 percent of the $1.976 billion NIL claims settlement fund plus 10 percent of the $600 million additional compensation settlement fund plus $20,000,000 upfront injunctive fee and 0.75 percent to 1.25 percent of future amounts); *Lawrence E Jaffe Pension Plan v. Household Int'l. Inc.*, No. 1:02-cv-05893, Dkts. 2222, 2265 (N.D. Ill. Nov. 10, 2016) (awarding ~24.7 percent of the $1.575 billion settlement fund); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094 (D. Kan. 2018), *aff'd* 61 F.4th 1126 (10th Cir. 2023) (awarding 33.3 percent of the $1.51 billion settlement fund); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) (awarding 28.6 percent of the $1.08 billion settlement fund); *Allapattah Servs. Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding ~31.3 percent of the $1.075 billion settlement fund).

### 2. Optional Lodestar Crosscheck

Given the circumstances of this litigation, the Court finds it unnecessary to perform a lodestar crosscheck to confirm the reasonableness of the requested fees. The Court has confirmed the reasonableness of its fee award based on the factors discussed above. And where "the court achieves a reasonable result using the method it selects," the lodestar "cross-check is not required." *Senne v. Kansas City Royals Baseball Corp.*, No. 14-cv-00608 JCS, 2023 WL 2699972, at *18 (N.D. Cal. Mar. 29, 2023); *see also Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (compiling cases affirming district court's discretion not to perform a crosscheck of the lodestar); *In re Coll. Athlete NIL Litig.*, No. 20-CV-03919 CW, 2025 WL 3171376, at *1 n.2 (N.D. Cal. July 11, 2025) (lodestar crosscheck unnecessary, particularly given the results class counsel achieved for the class and the risks and costs of continued litigation); *Andrews v. Plains All Am. Pipeline L.P.*, No. CV-154113 PSG (JEMx), 2022 WL 4453864, at *2

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT | CASE NO. 3:24-CV-05417-AMO

(C.D. Cal. Sept. 20, 2022) (lodestar crosscheck unnecessary "due [in part] to the exceptional circumstances of [the] case") (citation omitted).

If the Court conducted a lodestar crosscheck, it would similarly conclude that Class Counsel's fees were reasonable. Under the crosscheck method, the court calculates a "presumptively reasonable" fee by multiplying the hours expended by an hourly rate comparable to other similarly experienced attorneys. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019). Class Counsel's time expenditures were indeed reasonable given the extensive discovery in this case, and the substantially sized class, with whom Class Counsel have been in close contact for months. Mot. for Final Approval  Fees at 9. In addition, Class Counsel's rates are reasonable. As explained in the declarations of Class Counsel submitted on December 3, the charged rates fit within "the prevailing rates in this District, [and] the qualification and experience of counsel." Dkt. 506 at 20. Finally, the multiplier of 6.92, is within the supportable range and reflects the excellent result secured for the Class set against the eminent risks and challenges of the case. *See* Dkts. 505-8 (Rubenstein Decl.) at 15–24 (collecting cases); 505-7 (Fitzpatrick Decl.) ¶¶19–27 (collecting cases).

### 3.    Objections to Fees

Eight Objections were submitted to Class Counsel's fee request. *See* Dkts. 545, 551, 564, 599, 600, 602, 609. "The Objections lack appreciation for the jurisprudence that governs the economics of representative actions, which allow for the vindication of aggregated interests that would otherwise go unaddressed." *Katz-Lacabe v. Oracle Am., Inc.*, No. 3:22-CV-04792-RS, 2024 WL 4804974, at *5 (N.D. Cal. Nov. 15, 2024), *appeal dismissed*, No. 24-7650, 2025 WL 1703624 (9th Cir. Apr. 3, 2025). Nor do they appropriately account for the risk that Class Counsel assumed. *See* Mot. Attorneys' Fees at 11-13. The gravamen of these Objections is that Class Counsel could have a higher monetary award for the Class. However, aside from pointing to the wide range of statutory damages that are possible under the Copyright Act, the Objections do not explain why the present Settlement is insufficient. Moreover, as noted above, numerous copyright owners whose books are not in the Class have expressed a strong desire to participate in the Settlement, which indicates that the Class Counsel achieved significant results for Class Members.

Class Counsel's requested fee award is reasonable and therefore, Class Counsel is **GRANTED** 12.5 percent of the Settlement Fund in attorneys' fees.

### B.    Litigation Expenses

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Roman*, 2024 WL 2412387, at *5; *see also* Fed. R. Civ. P. 23(h).

Class Counsel have incurred $2,779,950.26 in unreimbursed litigation expenses, including costs related to experts, discovery, mediation, legal research, filing fees, document hosting services, copying and mailing, and other customary litigation expenses. Dkt. 505-3 ("Geman Decl.") ¶¶ 48–63 (detailing the litigation expenses that Class Counsel incurred by category). Class Counsel do not seek reimbursement of several costs—namely hotels and meals. *Id.* ¶ 54. Class Counsel also do not seek reimbursement for fees paid to experts Mr. Rubenstein and Mr. Fitzpatrick. *Id.* ¶ 57. Class Counsel further anticipate an additional $18,220,000 in expenses related to the administration and finalization of the settlement. *Id.* ¶ 58.

The expenses for which Class Counsel seek reimbursement are "typically [] billed to paying clients in non-contingency matters" and are recoverable. *Katz-Lacabe*, 2024 WL 4804974, at *5; *see Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. CV13-5693 PSG (GJSx), 2017 WL 4685536, at *10 (C.D. Cal. May 8, 2017) (reimbursing in copyright class action expenses incurred in "conjunction with discovery, the services of experts and specialist appellate counsel, mediation, travel, technology support costs, a mock trial, and the cost of computer research and services."); *Hofstetter v. Chase Home Fin., LLC*, No. C 10-01313 WHA, 2011 WL 5545912, at *1 (N.D. Cal. Nov. 14, 2011) (Alsup, J.) (approving same plus "costs associated with class notice and settlement mailings").

None of the three Objections to Class Counsel's expenses explains why any of Class Counsel's past or anticipated expenses are unreasonable or why Class Counsel would not be entitled to reimbursement of such expenses. Class Counsel's past costs and anticipated future expenses to the Settlement Administrator and Special Master are reasonable. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *8 (N.D. Cal. Aug. 17, 2018)

(granting final approval where administration reached $23 million, or 20 percent of the $115 million settlement).

The Court **GRANTS** the request for reimbursement of $2,779,950.26 in incurred expenses, and a cost reserve of $18,220,000 in anticipated expenses.

### C.     Service Awards for Class Representatives

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis omitted) (citing 4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed.2008)). While such "awards are discretionary," they are commonly issued because of the many benefits they provide: "compensat[ing] class representatives for work done on behalf of the class"; making "up for financial or reputational risk undertaken in bringing the action"; and recognizing class representatives' "willingness to act as a private attorney general." *Id.* at 958–59.

The requested service awards for the three Settlement Class Representatives—Andrea Bartz, Inc., Charles Graeber, and MJ+KJ, Inc.—are reasonable and appropriate. Consistent with the Court's Procedural Guidance for Class Action Settlements, the Class Representatives submitted evidence of the value provided by the proposed awardees, the risks they undertook in participating, the time they spent on the litigation, and any other justifications for the awards. *See* Declaration of Class Representatives In Support of Final Approval; *see also* Dkts. 385 (Bartz Decl.), 386 (Graeber Decl.), 387 (Johnson Decl.). That evidence confirms that all three Class Representatives expended considerable time and effort to assist in the investigation and litigation of this case. *See id.* In particular, all three Class Representatives (i) reviewed filings; (ii) responded to extensive discovery requests; (iii) prepared for and sat for depositions; (iv) traveled to San Francisco for multiple hearings; (v) participated heavily in the negotiation of the Settlement, including the plan of allocation; (vi) submitted detailed declarations in support of preliminary approval; (vii) reviewed and contributed edits to the notice materials and claim form; and (viii) worked to implement the Settlement by speaking to other authors and stakeholders. *See* Dkts. 385–87. All three Class Representatives were committed to ensuring that the Settlement was fair to class members, and that class members could understand it, and treated their responsibilities to the Class as their jobs. *See*

*id.* Service awards to the Class Representatives are well warranted in these circumstances. *See In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *18 (N.D. Cal. Sept. 2, 2015) (authorizing $80,000 and $120,000 awards in case with $415,000,000 settlement fund). Further, no Objections challenge the requested service awards.[4]

Therefore, the Court concludes that the requested service awards are reasonable and **GRANTS** $50,000 to each of the three Class Representatives, for a total of $150,000.

### III.    CONCLUSION

The Court concludes that final approval is warranted under the Rule 23(e) factors, Ninth Circuit precedent, and this District's Local Rules. The Court finds that under Rule 23(e)(2), (i) the Class Representatives and Class Counsel have adequately represented the Class; (ii) the proposed Settlement was negotiated at arm's length; (iii) the relief provided for the Class is adequate; and (iv) the proposed Settlement treats Class Members equitably relative to each other.

The Court further finds that all relevant *Churchill* factors are satisfied, including "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel . . . ; and [(7)] the reaction of the class members to the proposed settlement." *Churchill Vill.*, 361 F.3d at 575.

Finally, the Court has considered Class Members' response to the proposed Settlement, request for attorneys' fees, and request for service awards pursuant to the Northern District's Procedural Guidance for Class Action Settlements, and finds that final approval is warranted in light thereof.

Having considered the above, the Court finds that the proposed Settlement is fair, free of collusion, and consistent with Plaintiffs' fiduciary obligations to the Class. The Motion for Final Approval is hereby **GRANTED**. Upon the entry of this order and the Effective Date under the Settlement Agreement, all settling Parties and the Class shall be bound by the Settlement

---

[4] One Objection supports the requested service awards. *See* Dkt. 601 at 2 ("Lead plaintiffs should be entitled to $50,000.").

Agreement and this Order. The Settlement Administrator and Special Master shall have final authority to determine the share of the Net Settlement amount to be allocated to each Class Member pursuant to the plan of allocation and distribution approved by the Court.

The Clerk is directed to **UNSEAL** all Objections within 14 days of this order.

The Court **DENIES** the validity of any opt-out submitted past the February 9, 2026 deadline.

The Court **GRANTS** Plaintiffs' Motion for: (1) attorneys' fees to Class Counsel of 12.5 percent of the non-reversionary Settlement Fund, consisting of $1.5 billion plus interest paid by Anthropic or accrued in the Settlement Fund, (2) reimbursement of expenses totaling $2,779,950.26 and a cost reserve of $18,220,000 in anticipated expenses, and (3) service awards of $50,000 for each of the three Settlement Class Representatives (totaling $150,000). The Court will withhold 10 percent of Class Counsel's fee award until the Parties file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements.

Final judgment is hereby **ENTERED** in accordance with the terms of the Settlement Agreement and this Order. Without affecting the finality of this Order and Judgment, the Court reserves jurisdiction over the implementation of the Settlement, including enforcement and administration of the Settlement Agreement. This document constitutes a final judgment (and a separate document constituting the judgment) pursuant to Federal Rules of Civil Procedure 54 and 58.

The above-captioned Action is **DISMISSED** in its entirety with prejudice.

**IT IS SO ORDERED.**

Dated: _____, 2026.

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**