**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

ANDREA BARTZ, ANDREA BARTZ, INC.,
CHARLES GRAEBER, KIRK WALLACE
JOHNSON, AND MJ + KJ, INC., individually
and on behalf of others similarly situated,

               Plaintiffs,

      *v.*

ANTHROPIC PBC,

               Defendant.

Case No. 3:24-cv-05417-WHA

**DECLARATION OF MARIA A. PALLANTE IN SUPPORT OF**
**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

Pursuant to 28 U.S.C. § 1746, I, Maria Pallante, declare as follows:

1.     I am the President and Chief Executive Officer of the Association of American Publishers, Inc. ("AAP"), a role I have held since January 2017. I submit this declaration in support of Plaintiffs' Motion for Final Approval of Class Settlement based on my personal knowledge and information learned through my role at AAP. I have personal knowledge of the facts set forth herein and if called upon to testify as a witness, I could and would competently testify hereto.

**Background[1]**

2.     AAP is the national trade association and principal public policy advocate for publishing houses in the United States. Our membership includes some 120 large, small, nonprofit, and commercial houses in the education, scholarly, and consumer publishing sectors that together comprise most of the U.S. publishing market. Some of our members have served

---

[1] The substance of ¶¶ 2-10 was included in my prior declarations in this case, ECF Nos. 363-9 and 396, and it is included here again for the Court's convenience.

national and international markets since the 19th century, while others have entered the industry more recently to the particular benefit of local or regional communities.

3. AAP's members invest in, publish, and distribute a wide span of subject areas and genres, including acclaimed fiction, nonfiction, and children's books, as well as academic, educational, religious, scientific, and scholarly works. Their authors include Nobel Laureates, as well as winners of the Pulitzer Prize, National Book Award, Newbery Medal, Caldecott Medal, Man Booker Prize, and Grammy Awards for spoken works, among many other honors. Many of our members' works are implicated by piracy through LibGen and the Pirate Library Mirror.

4. AAP's function is apolitical. We do not seek to serve any political party or movement, but rather to advocate to all decision makers, regardless of ideology.

5. As global innovators, publishers are constantly developing new literary works and new business models to meet the demands of both retail and library channels. They also distribute older titles—some of them among the most iconic literature ever authored—delivering them to retail, library, and education customers in a wide variety of formats, including hardcover, paperback, ebooks, audiobooks (both physical and downloaded), and interactive platforms.

6. AAP is deeply focused on issues that affect the Copyright Act, for it is the sum and detail of this statute that provide the economic incentives and legal confidence by which publishers of all sizes seek to acquire and disseminate original works of authorship to the public. In turn, our members promote democratic discourse, human empowerment, scientific progress, and political accountability.

7. Today, more than two centuries after the Framers crafted and adopted the Constitution's Copyright Clause in 1787 and the first Congress enacted the first Copyright Act in 1790—for books, maps, and charts—American publishers are an essential part of a vast, vibrant, and valuable creative economy that facilitates rapid and, frequently, borderless transactions for the enjoyment of books, music, film, television, and software. To be sure, publishing is invaluable to society, but it is not a wealthy business, particularly in comparison to any one

technology or AI company today. In 2025, publishing houses doing business in the United States realized an *aggregate* total of $32B in revenue.

8.    As AAP's President and CEO, I lead the organization's public policy, education, and litigation efforts, including before regulatory agencies, legislatures, and the courts. My team and I work closely with AAP's membership to protect and advance a balanced legal framework that incentivizes the publication of creative expression and the dissemination of knowledge, including, especially, a viable twenty-first century Copyright Act that has meaningful exclusive rights, a reasonable fair use doctrine, and effective enforcement and remedies.

9.    I have practiced copyright law for over three decades, including more than five years as United States Register of Copyrights from 2011 to 2016. In this role, as the Nation's public copyright attorney, I directed the Copyright Office and the public administration of the Copyright Act, including the federal registration of copyright interests, the documentation of copyright transactions, and the validity and lawful chain of title for exclusive rights. My team and I were statutory advisors to both lawmakers and executive branch agencies during an unusually active period in which the House Judiciary Committee reviewed the entire Copyright Act through public hearings and stakeholder meetings. As Register, I delivered multi-year, public studies to both the House and Senate on gaps in the law and emerging legal issues; supported the Department of Justice on legal questions pertaining to copyright litigation; represented the United States on treaty and diplomatic delegations pertaining to intergovernmental copyright obligations; and promulgated regulations governing both legal and technical developments with input from authors, publishers, producers, libraries, technology companies, and other stakeholder groups.

10.    I serve on various national legal committees, including for the American Bar Association, and teach copyright law as an adjunct law professor.  I have delivered and published numerous lectures in the field, including the 2022 Brace Memorial Lecture for the Copyright Society ("The Art and Innovation of Exclusive Rights"); the 2018 Robert W. Kastenmeier Lecture at the University of Wisconsin, ("I am the Captain Now: Resisting Piracy and Contortion

in the Copyright Marketplace"); and the 2013 Horace S. Manges Lecture at Columbia University ("The Next Great Copyright Act"), which Congress used to commence a multi-year review of copyright law. From 2007 to 2011, I served as Deputy General Counsel of the Copyright Office, and then as its principal for Policy and International Affairs. Before this, I was in private practice, including eight years as in-house counsel for the nonprofit Guggenheim art museums in New York and two author organizations.

**AAP and Publisher Support of this Action and Settlement**

11.    Since the Court certified a class that includes publishers on July 17, 2025, AAP's staff, especially our legal team, has actively engaged with our members and consulted with Publishers' Coordination Counsel to ensure that any settlement addresses publishers' interests and concerns. The overwhelming majority of works submitted to the Court on September 15, 2025 implicate AAP members. To that end, AAP has helped the PCC reach American publishing houses and other smaller publishing associations that represent specific kinds of books, such as scholarly, independent, medical, and religious presses. My legal team and I have personally communicated with AAP's many members in writing or verbally regarding procedural aspects of the class action; explained criteria for copyrighted works to be included on the Works List based on the Court's class definition; helped to facilitate publishers' ability to provide input and feedback to the PCC regarding the litigation and/or settlement; provided information on author-publisher contractual norms and exceptions thereto; alerted the publishing sectors most affected by the piracy at issue; assisted with press requests relating to this action; and encouraged publishers to assist in ensuring a robust notice process, including as to their authors; and many related topics. In addition, AAP's members have worked tirelessly to identify and verify books that meet the eligibility requirements of the Court's Class definition; their efforts assisted the PCC in refining the process for identifying and expanding the works in the Works List.

12.    AAP and its members are strongly supportive of the settlement. This historic, $1.5 billion settlement not only provides significant compensation to class members, but sends a strong message to all Artificial Intelligence (AI) companies that copying books from shadow

libraries or other pirate sources to use as the building blocks for their businesses has serious consequences.

13.     Given the framework of the case and the process undertaken to get to this point, I believe that the proposed settlement is beneficial to all class members. I expect strong participation from AAP members, as well as authors and publishers across the industry, in this settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 19th day of March, 2026 at Washington, D.C.

_____

Maria A. Pallante

CASE NO.: 3:24-CV-05417-WHA