# Exhibit A

Justin A. Nelson*
Alejandra C. Salinas*
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
Michael Adamson (SBN 321754)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
rnath@susmangodfrey.com
madamson@susmangodfrey.com

Jordan W. Connors*
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101-2683
Telephone: (206) 516-3880
jconnors@susmangodfrey.com

J. Craig Smyser*
Samir Doshi*
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 51st Floor,
New York, NY 10001-8602
Telephone: (212) 336-8330
csmyser@susmangodfrey.com
sdoshi@susmangodfrey.com

*Co-Lead Class Counsel*
*(Pro Hac Vice)*

Rachel Geman*
Jacob S. Miller*
Danna Z. Elmasry*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
jmiller@lchb.com
delmasry@lchb.com

Elizabeth J. Cabraser (SBN 083151)
Daniel M. Hutchinson (SBN 239458)
Jallé Dafa (SBN 290637)
Amelia Haselkorn (SBN 339633)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
jdafa@lchb.com
ahaselkorn@lchb.com

Betsy A. Sugar*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 Second Ave., #1640
Nashville, TN 37201
Telephone: (615) 313-9000
bsugar@lchb.com

*Co-Lead Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No.: 3:24-cv-05417-AMO<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF SERVICE AWARDS** |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................... ii

II.   ADDITIONAL BACKGROUND .......................................................................................... 2

    A.    The Class Response to the Settlement Has Been Overwhelmingly Positive, Reflecting Class Counsel's Diligent Administration. ................................................................................ 2

    B.    The Fee Motion and Subsequent Proceedings. .................................................................. 4

III.  ARGUMENT .......................................................................................................................... 5

    A.    Class Counsel's Attorney's Fee Request is Reasonable. ................................................... 5

        1.    Class Counsel's request for 12.5% of the Settlement Fund is warranted under the *Vizcaino* factors. .................................................................................................... 5

        2.    A lodestar cross-check confirms the reasonableness of a 12.5% fee award. ............. 10

        3.    The paucity of objections supports the request. ........................................................ 11

        4.    Non-Class Counsel Law Firms Have Provided a Benefit to the Class ...................... 12

    B.    The Court Should Approve Class Counsel's Request for Reimbursement of Litigation Expenses and a Cost Reserve for Future Expenses. ............................................................. 14

    C.    The Requested $50,000 Service Awards to Each Settlement Class Representative Are Reasonable. ......................................................................................................................... 14

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Apple Inc. Device Performance Litig.*,
2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ........................................................................ 7, 8

*Arkin v. Pressman, Inc.*,
38 F.4th 1001 (11th Cir. 2022) ............................................................................................ 12

*Authors Guild v. Google, Inc. ("Google Books")*,
804 F.3d 202 (2d Cir. 2015)................................................................................................... 8

*In re: Blue Cross Blue Shield Antitrust Litig.*,
No. 2:13-CV-20000-RDP, 2022 WL 4587617 (N.D. Ala. Aug. 9, 2022).................................. 9

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. Aug. 19, 2011).............................................................................. 6, 10

*In re Coll. Athlete NIL Lit.*,
No. 20-cv-03919 CW, 2025 WL 3171376 (N.D. Cal. July 11, 2025)............................... *passim*

*In re Facebook*,
2023 WL 8445812 ...................................................................................................... 9, 10, 14

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
No. CV13-5693 PSG, 2017 WL 4685536 (C.D. Cal. May 8, 2017) ....................................... 14

*In re Glumetza Antitrust Litig.*,
2022 WL 327707 (N.D. Cal. Feb. 3, 2022) ........................................................................... 11

*Gutierrez v. Wells Fargo Bank, N.A.*,
No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015).............................. 10, 11

*In re High-Tech Employee Antitrust Litigation*,
2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ................................................................... 11, 15

*Kadrey v. Meta Platforms Inc.*,
No. 23-cv-03417-VC, 2025 WL 1752484 (N.D. Cal. June 25, 2025)....................................... 8

*Lawrence E Jaffe Pension Plan v. Household Int'l. Inc.*,
No. 1:02-cv-5893, Dkt. 2265 (N.D. Ill. Nov. 10, 2016) .......................................................... 9

*In re NCAA Grant-in-Aid Cap Antitrust Litig.*,
2017 WL 6040065 (N.D. Cal. Dec. 6, 2017)........................................................................... 8

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
2009 WL 2408560 (D. Mass. Aug. 3, 2009) ..................................................................... 1, 10

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re Optical Disk Drive Prods. Antitrust Litig.*,
959 F.3d 922 (9th Cir. 2020) ................................................................................. 6, 11

*In re Remeron Direct Purchaser Antitrust Litig.*,
2005 WL 3008808 (D.N.J. Nov. 9, 2005) .................................................................. 12

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp.2d 706 (E.D. Pa. 2001) ............................................................................ 10

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ....................................................................................... 15

*Roman v. Jan-Pro Franchising Int'l, Inc.*,
No. 3:16-cv-05961-WHA, 2024 WL 2412387 (N.D. Cal. May 23, 2024)................. 14

*Senne v. Kansas City Royals Baseball Corp*,
No. 14-cv-00608 JCS, 2023 WL 2699972 (N.D. Cal. Mar. 29, 2023)........................ 7

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
2005 WL 1213926 (E.D. Pa. May 19, 2005)............................................................... 10

*In re Syngenta AG MIR 162 Corn Litig.*,
357 F. Supp. 3d 1094 (D. Kan. 2018), *aff'd* 61 F.4th 1126 (10th Cir. 2023) .............. 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ................................................................ 9

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........................................................................ 5, 6, 9, 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
914 F.3d 623 (9th Cir. 2019) ....................................................................................... 12

*Ward v. United Airlines, Inc.*,
No. C 15-02309 WHA, 2024 WL 269149 (N.D. Cal. Jan. 24, 2024)........................... 7

*In re Zoom Securities Litigation*,
2025 WL 3078702 (N.D. Cal. Nov. 4, 2025) .............................................................. 11

**Treatises**

5 Newberg & Rubenstein on Class Actions § 15:80 (6th ed.) ......................................... 12

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

## I.      INTRODUCTION

The outcome here—if approved—will put well over a billion dollars into the hands of book authors and publishers, will signal that piracy has consequences even for the wealthy and powerful, and will create the first-of-its-kind framework for allocation and distribution in AI copyright cases pending across the country. As a threshold matter, Class Counsel makes a revised request of 12.5% of the common fund. That request is amply justified here in light of the extraordinary recovery for the class, the significant non-monetary relief plus a limited release, and the tremendous risk that Class Counsel has borne and continues to bear. As in many other successful cases, Class Counsel has devoted time and resources to take depositions, brief and argue critical motions, prepare for trial, and other standard high-stakes litigation fare, all without any guarantee of compensation. But several factors in this case distinguish Class Counsel's efforts—and their impact on the ultimate recovery—from other successful outcomes.

*First*, unlike many "megafund" settlements, Class Counsel's efforts have had a direct impact on the size of the Class and thus the size of the Settlement. The original complaint addressed a relatively small pirated dataset called Books3. The scale of Anthropic's infringement was unknown. It was only after Class Counsel's efforts in discovery (including three discovery motions) that the full scope of Anthropic's use of millions of files from two pirate libraries came to light. These efforts of Class Counsel—along with around-the-clock work to develop the Works List—led directly to this $1.5 billion settlement.

*Second*, Class Counsel took on enormous risk here. Success or failure hinged on cutting-edge issues related to class certification and infringement relating to new technology.  Class Counsel's path-breaking strategy of presenting Anthropic's acquisition of works from pirate sites as a separate, independent violation of the Copyright Act laid the groundwork for the first favorable fair use and class certification decision. Moreover, as the first AI copyright settlement, this case was the first to implement a settlement administration and claims process in this context. In part because the Settlement is so large, the cost of state-of-the-art notice and administration is substantial, and Class Counsel are assuming that risk.

*Third,* the Class has overwhelmingly endorsed the Settlement. With 11 days remaining in the claims period, there is already a high claims rate (54% and counting), a miniscule opt-out rate (less than 0.4%), and only a handful of comments (a total of 41—only 32 of which are from Class Members)—only 7 that relate to the fee request and only 5 that challenge the requested fee. This participation rate occurred even with a

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

long-form notice stating that the fee request could be as much as 25%, double what Class Counsel now requests; the original fee application of 20%; and additional time for Class Members to opt out to consider the new information in the Court's December 23, 2025 statement and the subsequent declarations.

The Class's reaction, always of paramount importance, is especially informative here. The Class includes scores of sophisticated parties—major universities, Nobel laureates, bestselling authors, economists, publishers large and small—who have independently evaluated the Settlement (often with the assistance of outside counsel) and chosen to file claims. Class Members have overwhelmingly chosen to participate in the Settlement even in the face of aggressive direct marketing campaigns from several other law firms aimed at convincing Class Members to opt out. *See* Dkt. 442 at 6–11; Dkt. 477 at 1–8. This is strong confirmation of the result that Class Counsel helped achieve…

To be sure, the Court has raised concerns about Class Counsel's fee request. *See generally* Dkt. 573-11. To allay concerns, Class Counsel reduces its request to 12.5% of the Settlement Fund, and includes in its lodestar calculations only the time by Class Counsel, which amounts to $27.08 million plus interest on a lodestar multiple of 6.92—this is within the permissible range, even in megafund cases, if the Court performs a lodestar cross-check. This requested award is half the 25% disclosed to the Class in the long-form notice and well below the original request of 20%. It is amply justified by the extraordinary result obtained and the significant risks borne in pioneering first-of-their-kind copyright claims against a well-funded technology giant. So too are the requests for litigation expenses and $50,000 service awards. The Court should approve Class Counsel's requested fee award and reimbursement of litigation expenses, establish the requested cost reserve, and grant the $50,000 requested service awards to each of the three Class Representatives.

## II.    ADDITIONAL BACKGROUND

### A.    The Class Response to the Settlement Has Been Overwhelmingly Positive, Reflecting Class Counsel's Diligent Administration.

The Settlement Administrator has received more than 99,000 claims representing 273,331 works—90,476 from authors, 2,379 from publishers, and the remainder from literary estates, trusts, and loan-out companies.[1] *See* Supplemental Declaration of Jennifer Keough Regarding Proposed Class Notice Plan

---

[1] The claims period runs until March 30, 2026. Class Counsel will update the Court with the final claims numbers following the deadline.

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

("Keough Decl.") ¶ 95. Collectively, these claims encompass 290,874 non-education works and 59,763 education works. *Id.* ¶ 102. By contrast, the Settlement Administrator received only 350 opt-outs for 1,802 Works. The opted out works comprise less than half of one percent of the total Works on the Works List. Thirty-four class members who opted out decided to re-include themselves in the Class. Only 41 comments were filed, only 32 of which were objections; one is in full support of the Settlement, and the majority (20) are from either non-Class Members are seeking to be included in the Settlement or from Class Members who wish to include works that are not part of the Settlement. *See* Keough Decl. ¶ 103; Declaration of Class Counsel ("Class Counsel Decl.") ¶ 4.

The strong participation in the Settlement reflects the extensive and diligent efforts undertaken by Class Counsel to administer the Settlement. Class Counsel dedicated teams of lawyers and staff to respond to Class Member inquiries by phone, e-mail, and Zoom. Over the course of 25 weeks, Class Counsel have responded to the hundreds upon hundreds of Class Members who have reached out, fielding more than 2,000 inquiries ranging from eligibility to participate in the Settlement to filling out and submitting the claim form. Class Counsel have also overseen the drafting of—and, with Court approval, updating of— FAQs and guidance materials to promote accessibility and fairness across the Class. Class Counsel have also conducted multiple webinars for Class Members to inform them about the Settlement and their rights to claim or opt-out. For Class Members who needed further assistance, Class Counsel answered questions and guided them through the claim process. For Class Members with multiple works on the Works List, Class Counsel coordinated with the Settlement Administrator, JND Legal, to allow for bulk claims. Further, Class Counsel have proactively monitored online activity—circulating daily updates among the team responding to Class inquiries—to detect efforts to mislead or confuse Class Members, and have promptly raised such issues with the Court. *See, e.g.*, Dkt. 442, 478.

In addition to these direct outreach and monitoring efforts, Class Counsel have devoted substantial resources to overseeing the broader settlement administration process. Class Counsel carefully prepared and edited the Class notice in accordance with the "rigorous notice process" the Court envisioned in its Class Certification Order. Dkt. 244 at 10. The notice included: (i) first-class mail and email to the rightsholder(s) listed on the copyright certificate for each work recorded; (ii) first-class mail and email to all trade and university publishers in the United States; and (iii) publication notice in a trade journals. Class Counsel also

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

coordinated with JND Legal on widespread social media campaigns and targeted outreach across high-traffic websites, reaching 99.5% of Class Works. Keough Decl. ¶ 79. Class Counsel continue to meet weekly with JND Legal to address questions and ensure inquiries are routed appropriately.

Class Counsel remain committed to working on behalf of Class Members through final approval and beyond. Class Counsel will continue to oversee settlement administration, respond to Class Member inquiries, and assist Class Members with submitting and reconciling claims, work that is expected to increase significantly as the claims deadline approaches and beyond. Further, should this Court grant final approval of the Settlement, Class Counsel will work with Class Members, the Settlement Administrator, and the Special Master to ensure that claims are processed fairly and paid as expeditiously as possible. To that end, Class Counsel and the Settlement Administrator will evaluate all of the claim submissions, including the 4,130 claims submitted with supporting documentary evidence. Class Counsel and the Settlement Administrator will also facilitate the resolution of discrepancies or conflicting information on claim forms, and coordinate dispute proceedings with the Special Master. Class Counsel have and will continue to "bird dog" the claims administration process, as the Court required, Dkt. 431 at 17, dedicating significant resources to this effort through its final stages. To underscore this commitment, Class Counsel will reserve 10% of any fee award, to be paid only after all submission of the Post-Distribution Accounting.

As set forth in the Declaration of Class Counsel, between December 1, 2025 and March 15, 2026, Class Counsel have collective incurred an additional 5,138.5 hours and $3,427,087 in lodestar. Class Counsel Decl. ¶ 57. These figures confirm that Class Counsel's previous estimates for their total time were, if anything, conservative. *Id.* Class Counsel therefore will meet or exceed the previously estimated total lodestar of $27,082,963. *Id.* ¶ 58.

### B. The Fee Motion and Subsequent Proceedings.

On December 4, 2025, Class Counsel filed their motion for attorneys' fees, reimbursement of expenses, and Plaintiff service awards. Dkt. 506-1. The request sought a total of $300 million: $225 million in attorney's fees to Class Counsel, with $75 million for the work in support of the Class of Cowan DeBaets Abrahams & Sheppard LLP (CDAS), Edelson P.C. ("Edelson)," and Oppenheim + Zebrak (O+Z). Anthropic filed a response to Plaintiffs' motion on December 17, 2025. Dkt. 511.

On December 23, 2025, the Court issued the Judge's Memorandum and Order addressing the fee

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

request. The Court ordered all firms seeking compensation to file declarations regarding their fee agreements and whether any arrangement would result in certain Class Members receiving a more favorable recovery than others. Dkt. 515. It also proposed extending the opt-out deadline so that Class Members could account for the Judge's Memorandum and any new information disclosed in the declarations. On December 30, 2026, all firms filed the ordered declarations. Each firm unambiguously confirmed that no agreements exist to share fees with any party or absent Class Member, and that the only agreements to share fees awarded in this action arose from work in this case and this case only. Dkts. 521–28. Class Counsel underscored that they have "at every point . . . understood that fees are up to the Court," as reflected in the Settlement Agreement's provision that "[t]he amount of the Fee Award shall be determined by the Court based on petition from Class Counsel." Dkts. 363-3, at ¶ 8.1; 521 at 2.  Class Counsel posted the Judge's Memorandum and their declarations to the Settlement Website for all Class Members to review.Class Counsel also promptly moved to extend the opt-out deadline. The Court ultimately granted an extension until February 9, 2026 to submit opt-out requests. As discussed in detail above, the reaction to the Settlement has been nearly universally positive. Class members—including sophisticated parties such as public companies and highly-engaged authors—chose to participate in the settlement.

## III.    ARGUMENT

### A.    Class Counsel's Attorney's Fee Request is Reasonable.

The Court should approve Class Counsel's revised request for a fee award amount to 12.5% of the common fund. Given the outstanding result, the skill and experience Class Counsel has brought to bear in this case, and the positive reaction from the Class, this fee award is amply warranted. *See, e.g., In re Coll. Athlete NIL Lit.*, No. 20-cv-03919 CW, 2025 WL 3171376, at *1 (N.D. Cal. July 11, 2025) (awarding 20% of the common fund—$395.2 million in fees). There have been two principal objections to the proposed award. First, the Court and 7 objectors have challenged Class Counsel's fee request as high in comparison to lodestar. Second, Class Counsel's fee request included time and contributions from other law firms that, in Class Counsel's view, made contributions to the benefit of the entire Class. Both objections are addressed.

#### 1.    Class Counsel's request for 12.5% of the Settlement Fund is warranted under the *Vizcaino* factors.

Ninth Circuit case law and the exceptional results achieved here support Class Counsel's attorneys'

fee request for 12.5% of the Settlement Fund. *In re Coll. Athlete*, 2025 WL 3171376, at \*1 (recognizing that the most important factor in evaluating reasonableness of attorney fee awards is the benefit obtained for the class and awarding class counsel 20% of fund—$395.2 million in fees).  In so-called "megafund" cases—generally defined as those involving common fund recoveries exceeding $100 million—courts often apply a lower percentage than the 25% benchmark. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. Aug. 19, 2011). But the Ninth Circuit has also rejected any rigid "increase-decrease rule" requiring that the percentage of an award must decrease as the size of the fund increases. *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 931 (9th Cir. 2020)(eschewing rule requiring lower percentage).

The percentage of recovery method is preferred over the lodestar method for good reason. Courts and commentators recognize that the percentage of recovery method aligns the incentives of Class Counsel and the Class, by ensuring that Class Counsel is rewarded for a better result. Dkt. 505-7 (Declaration of Prof. Brian Fitzpatrick) ¶¶ 10–12. In fact, this is precisely why courts in the Ninth Circuit have eschewed a brightline rule requiring a lower percentage in megafund cases. *See In re Optical Disk*, 959 F.3d at 931. For this reason, under *Vizcaino v. Microsoft Corp.*, courts evaluate a number of factors in determining the proper percentage of recovery, even in megafund actions. 290 F.3d 1043, 1047-50 (9th Cir. 2002).

Here, each of the *Vizcaino* factors easily support Class Counsel's requested 12.5% award:

**Factor 1: Exceptional Result**. As the Court already observed, the Settlement is "the largest copyright class action settlement in history," Dkt. 437 at 6, and "I don't see how you could get a better deal," Dkt. 503 at 139. The Court correctly noted that this result is "an order of magnitude more than the maximum proposed for books in the Google Books settlement," more than "four times the statutory minimum for ordinary infringement," and more than "fifteen times the statutory minimum for innocent infringement of $200." *Id*. at 5–6. Class Counsel also secured valuable non-monetary relief, including the destruction of the pirated LibGen and PiLiMi datasets, a certification that the pirated copies were not used in released models, and a tailored, past-only release that preserves the class's ability to assert claims for future infringement. Dkt. 363-3. The "most critical factor" in the fee analysis—the degree of success obtained—thus strongly supports the requested fee. *See In re Coll. Athlete*, 2025 WL 3171376, at \*1 (finding $395.2 million fee award "commensurate with the extraordinary results that Class Counsel achieved for settlement class members"); Fitzpatrick Decl. ¶¶ 28–29.

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

Anthropic argues that "[t]he number of works on the Works List drove the total recovery here," not Class Counsel's efforts. Dkt. 511 at 12. True, courts have recognized that applying a standard percentage for attorneys' fees can result in a windfall where "the size of the settlement is merely a factor of the size of the class and *has no direct relationship to the efforts of counsel*." *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *15 (N.D. Cal. Feb. 17, 2023) (emphasis added). But in this case, the number of works on the Works List—and thus the size of the Class—is a direct result of Class Counsel's efforts. In the initial complaint, Plaintiffs alleged copyright infringement from Anthropic's use of a far smaller dataset called "Books3." Anthropic had hidden from the public its use of the largescale datasets from Library Genesis and Pirate Library Mirror—the two datasets that ultimately formed the basis for the certified class. Specifically, during discovery, Anthropic initially tried to keep discovery limited to its "commercially-released models," effectively concealing its use of Library Genesis and Pirate Library Mirror. It was only after Class Counsel filed multiple motions to compel that Anthropic produced the millions of files it sourced from LibGen and PiLiMi. Dkts. 86, 102. Moreover, even after Class Counsel discovered the true extent of Anthropic's piracy, Class Counsel expended monumental efforts in discovery on the implications, contours, and context of the use of the datasets, and then in preparing the Works and Class Lists. In short, it was Class Counsel's efforts—in discovering the datasets, creating the record for how the datasets were used and by whom and why, and compiling the Works List—that drove results. Without Class Counsel's efforts to uncover the extent of infringement and then compile the Class and Works List, the recovery would have been far smaller or perhaps non-existent.

**Factor 2: Risks of Litigation**. This case carried far more risk than most. Here, the success or failure of Plaintiffs and the Class depended on Class Counsel succeeding on "[m]ultiple issues of first impression," including the first ever fair use and class certification decisions in any AI copyright case. *Ward v. United Airlines, Inc.*, No. C 15-02309 WHA, 2024 WL 269149, at *6 (N.D. Cal. Jan. 24, 2024); *Senne v. Kansas City Royals Baseball Corp*, No. 14-cv-00608 JCS, 2023 WL 2699972, at *19 (N.D. Cal. Mar. 29, 2023) (affirming 30% award due to risky substantive issues that "presented a multitude of novel questions that were critical to Plaintiffs' ultimate success in the case"). As this Court observed, while "Plaintiffs have a strong case on the downloading," "success is not assured were they to go to trial," and a loss "would result in no recourse" for the Class. Dkt. 437 at 4–5. The cases on which Anthropic principally relied in advancing

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

its fair use defense underscore these risks: in *Kadrey v. Meta Platforms Inc.,* No. 23-cv-03417-VC, 2025 WL 1752484 (N.D. Cal. June 25, 2025), the court granted summary judgment in favor of Meta on fair use in connection with piracy by an AI company that downloaded books related to AI training, and, in *Authors Guild v. Google, Inc. ("Google Books")*, the Second Circuit granted summary judgment against authors and publishers on fair use grounds. 804 F.3d 202 (2d Cir. 2015).

**Factor #3: Skill and Quality of Work**. The Court has praised the work of Class Counsel and the settlement. The result speak to the quality. Class Counsel diligently pursued discovery that dramatically expanded the Class; succeeded in obtaining the first-ever class certification decision in an AI copyright action; defeated summary judgment on claims arising out of Anthropic's mass downloading from pirate websites; fought off a host of Anthropic's efforts in the District Court and Ninth Circuit to delay or avoid trial; engaged in trial preparation; and proposed, developed, and are administering a complex Settlement.

On the other side, Class Counsel faced a well-resourced, well-funded defendant with seemingly unlimited firepower. *In re Apple*, 2023 WL 2090981, at *14 ("Courts also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citation omitted). In defending the case, Anthropic retained **four** of the world's largest law firms—Arnold & Porter, Morrison & Foerster, Cooley, and Latham & Watkins—along with Lex Lumina, a premier litigation boutique led by Stanford law professor Mark Lemley. This assemblage of counsel that the Court deemed "some of the best lawyers in America" underscores the high stakes of this case. Anthropic's opposition does not mention the total hours or amount that Anthropic's lawyers spent trying to ensure the Class recovered nothing.

**Factor #4: Contingent Nature of the Representation.** Class Counsel litigated this novel and complex case entirely on a contingency basis, devoting over 27,000 hours and investing millions of dollars in time, costs, and expenses with no assurance of compensation or reimbursement. Dkt. 505-3 ¶ 5; 505-1 ¶¶ 3, 17; Class Counsel Decl. ¶ 57. In advancing the cost of class notice and settlement administration alone, Class Counsel may have to advance up to $15 million of capital without any guarantee of reimbursement. Courts have long recognized that "the public interest is served by rewarding attorneys who assume representation on a contingent basis with an *enhanced fee* to compensate them for the risk that they might be paid nothing at all for their work." *In re NCAA Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *4 (N.D. Cal. Dec. 6, 2017) (emphasis in original) (citation omitted). The contingent nature of Class Counsel's

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

representation—as well as the large capital expenditures—supports the requested fee.

Anthropic's opposition to the fee brief serves as a stark contrast. Anthropic fought vigorously against this result and presumably paid its lawyers by the hour or without any success metric. Anthropic and its attorneys—who are defending other AI companies as well[2]—have every incentive to reduce the fee to lawyers representing the Class in order to discourage quality firms from bringing similar class actions against it in the future. Anthropic's interest in reducing the incentive for skilled counsel to sue them in future is especially acute here, as counsel has negotiated a narrow release that leaves Anthropic open to future class claims for, among other things, all model output and conduct that occurs post-August 25, 2025.

**Factor #5: Market Rates for Similar Cases.** For this factor, courts can consider both the market contingent rate charged for similar individual cases, where information is available, and fee awards in analogous class actions. *Vizcaino*, 290 F.3d at 1050. With respect to individual cases, the requested 12.5% falls far below the market for individual copyright cases against AI companies.

The adjusted 12.5% fee request is in line with fee awards in analogous megafund cases in this District. *See, e.g., In re Coll. Athlete*, 2025 WL 3171376, at *19 (awarding 20% of $1.976 billion fund); *In re Facebook*, 2023 WL 8445812 (awarding 25% of $725 million fund); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013) (awarding 28.6% of $1.08 billion fund); Dkt. 505-7 (Fitzpatrick Decl.) ¶ 36. In the many comparable cases involving settlement funds of approximately $1.5 billion outside this District, fee awards of 24.7% and 33% were approved. *Lawrence E Jaffe Pension Plan v. Household Int'l. Inc.*, No. 1:02-cv-5893, Dkt. 2265 (N.D. Ill. Nov. 10, 2016); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094 (D. Kan. 2018), *aff'd* 61 F.4th 1126 (10th Cir. 2023). Perhaps most analogous is *In re Coll. Athlete*, where Judge Claudia Wilken awarded 20% of a $1.96 billion fund in a complex antitrust case, "declin[ing] to conduct a lodestar cross-check" and confirming the fee requested was reasonable in light of "the results that Class Counsel achieved for settlement class members and the risks and costs of continued litigation."[3] 2025 WL 3171376, at *1. It is also lower than other recent megafund cases outside this district. *See In re: Blue Cross Blue Shield Antitrust Litig.*, No.

---

[2] Anthropic's counsel in this case (including its former counsel at Latham & Watkins) collectively represent or have represented, among others, OpenAI, Meta, and Perplexity in AI copyright infringement cases.
[3] In *In re Collegiate Athlete NIL Litigation*, the Court also awarded 10% of a separate $600 million fund and a fees on future earnings. *Id.*

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

2:13-CV-20000-RDP, 2022 WL 4587617 (N.D. Ala. Aug. 9, 2022) (awarding $667 million—25%—of $2.667 billion fund). Thus, Class Counsel's 12.5% request here is reasonable given the exceptional results and risks involved.  Fitzpatrick Decl. ¶ 18.

### 2.    A lodestar cross-check confirms the reasonableness of a 12.5% fee award.

A lodestar cross-check to evaluate the reasonableness of Class Counsel's fee request is not required, even if it is often performed. *See In re Coll. Athlete.*, 2025 WL 3171376, at *1 (declining to conduct a lodestar cross-check where class counsel requested 20% of the settlement fund); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011) (noting the lodestar cross-check is not required). Nevertheless, Class Counsel's requested 12.5% fee award is reasonable under any calculation.

Accounting for Class Counsel's time to date and projections for additional work through the claims process, the lodestar multiplier for a 12.5% fee award is 6.92.  *See In re Facebook*, 2023 WL 8445812, at *2 (accounting for future in in calculating lodestar multiplier). And although so far Class Counsel's projection of future work is greater than originally anticipated, Class Counsel have not made an upward adjustment to the original projection or used 2026 rates. Even with these conservative projections, the multiplier is 6.92.

Indeed, this multiplier is within the range of multipliers in megafund settlements approved by courts across the country. In *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, the court awarded fees of 20% of a $350 million common fund, representing "a multiplier of about 8.3 times lodestar," finding the award reasonable in light of the results achieved, including surmounting a "contentious battle over class certification." 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009). Similarly, in *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, the court awarded 20% of a $100 million antitrust class fund, with a multiplier of 15.6, in light of the dearth of objections from a class that, like this one, comprised "of sophisticated businesses." 2005 WL 1213926, at *10, 18 (E.D. Pa. May 19, 2005); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp.2d 706, 736, n. 44 (E.D. Pa. 2001) (approving lodestar multiplier as high as 8.5 in a $193 million common fund). In short, courts award multipliers well higher than here where counsel have achieved exceptional results, taken on significant contingency risk, and exhibited high-caliber advocacy—all hallmarks of this litigation.

Even *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015)—one of the cases on which Anthropic's opposition principally relies—confirms a significant

lodestar multiplier is warranted here. There, LCHB obtained a $203 million common fund and injunctive relief for the class. *Id.* at *1. Judge Alsup awarded the 5.5 multiplier to LCHB based primarily on the quality of the results obtained for the class, the risk of non-payment that counsel accepted, and the superior quality of their efforts. *Id.* at *8. The court noted that the multiplier was "certainly within the range of reasonable multipliers awarded in other megafund actions." *Id.* at *9.

In addition, several factors warrant a higher-than-typical multiplier. As Professor Rubenstein confirms, Class Counsel exhibited remarkable efficiency in prosecuting this case. Dkt. 505-8 (Rubenstein Decl.) ¶¶ 1, 16–24.[4] Second, as noted earlier, one of the principal factors for reducing lodestar multipliers in megafund settlements—that a large settlement is a product of the size of the class in a way that is unrelated to class counsel's skill or effort—is not present here.

Finally, Anthropic's cases are inapposite or distinguishable. The Ninth Circuit's decision in *In re Optical Disk* confirms that there is no "bright-line rule requiring the use of sliding-scale fee awards for class counsel in megafund cases." 959 F.3d at 933, 937–38. The circumstances in *In re Zoom Securities Litigation* (cited at Dkt. 511 at 6, 10, 11) are so different from this case that, if anything, it validates the reasonableness of Class Counsel's fee request. 2025 WL 3078702 (N.D. Cal. Nov. 4, 2025). There, the court rejected an 18.75% percentage-of-recovery award on a lodestar reflecting a total of only 3,527.30 hours in a case that settled promptly, involved no depositions, no class certification motion, no summary judgment motion, and no expert reports. *Id.* at *1–2. The court emphasized the "relatively easy path to settlement" and the "scant work in the way of motion practice, expert reports, depositions, and the like." *Id.* at *4.[5]

### 3. The paucity of objections supports the request.

That only seven Class Members objected to Class Counsel's fee—and fewer than 0.4% of works opted out—is significant, particularly because the Class consists of large corporations, universities, and

---

[4] Professor Rubenstein's declaration relates to the limited topic of Class Counsel's fees only. Professor Rubenstein concluded that "in my opinion, there is significant evidence in the record of this case to support the conclusion that Class Counsel have earned a significant multiplier." Dkt. 505-8 (Rubenstein Decl.) ¶ 41.
[5] None of Anthropic's other cited authorities move the needle. *In re High-Tech Employee Antitrust Litigation*, 2015 WL 5158730, at *1 (N.D. Cal. Sept. 2, 2015), was an antitrust case that followed a Justice Department investigation, where class counsel's fee was reduced in part to account for $5 million in fees paid out from prior settlements in the same action. *Glumetza* was a pharmaceutical antitrust reverse-payment case where the court found that certain factors inflating recovery—such as an 800% price hike—were "not entirely attributable to class counsel's skill," and class counsel's risk was spread across seven firms and mitigated by favorable post-*Actavis* law. *In re Glumetza Antitrust Litig.*, 2022 WL 327707, at *9, 11 (N.D. Cal. Feb. 3, 2022).

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

bestselling authors who have both the resources and a large financial stake sufficient to submit an objection, if they believed an objection was warranted. *See, e.g.*, *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *13, n. 1 (D.N.J. Nov. 9, 2005) ("When a class is comprised of sophisticated business entities that can be expected to oppose any request for attorney fees they find unreasonable, the lack of objections 'indicates the appropriateness of the [fee] request.'" (citation omitted)).

Of those who have objected to the fee request, two of them (Objectors Sappington and Sills) assume that Class Counsel has requested the maximum amount of attorneys' fees disclosed in the long-form notice, i.e., 25%, when it is half that. Objector Sappington further asserts that Class Counsel's fee should be reduced by "98.8%" because the "settlement is 98.8% below the maximum penalty" of "$250,000" in copyright infringement cases. This assertion fails to account for the substantial risks the Court has already identified—the risk of a loss at trial, a jury awarding a damages less than $3,100 per work, post-trial motions wiping out a verdict, a loss on appeal, and far more. Dkt. 437 (Prelim. Approval Order) at 5.

Objector Story argues that the fee is "disconnected from actual workload requirements" and that the implied hourly rates are too high. Dkt. 599 at 3. But the Ninth Circuit endorses the percentage-of-recovery method precisely because it aligns counsel's incentives with the class's interests. *Supra* at 5–6; Dkt. 506-1 at 18; Dkt. 505-7 (Fitzpatrick Decl.) ¶ 25; 5 Newberg & Rubenstein on Class Actions § 15:80 (6th ed.); *see Vizcaino*, 290 F.3d at 1047 (rejecting the increase-decrease rule as "a principle governing fee awards").[6]

### 4.    <u>Non-Class Counsel Law Firms Have Provided a Benefit to the Class</u>

Class Counsel understands that the Court has made clear that fees will not be awarded to attorneys who are not class counsel. Class Counsel have previously explained their position, Dkt. 505, and are not seeking reconsideration of that decision. However, to ensure that their position is preserved, this reply brief makes two points. First, it is appropriate and common for lawyers other than Class Counsel to work on a case at Class Counsel's request and be compensated for that work where, as here, the Class has benefitted. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 914 F.3d 623, 641 (9th Cir. 2019) ("Various courts, including our own, have determined that even non-class counsel can be entitled to attorneys' fees."); *see also Arkin v. Pressman, Inc.,* 38 F.4th 1001, 1008–09 (11th Cir. 2022)

---

[6] Heidi S. Bond, a former clerk to Justice Sandra Day O'Connor who supports the Settlement, raises concerns about the timing of payments to Class Counsel and related to Anthropic's financial prospects. Dkt. 589. This objection is addressed in the motion for final approval submitted concurrently (Dkt. 619).

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

("non-class counsel is generally entitled to a portion of a common fund recovered in a class action as attorneys' fees under Rule 23(h) if non-class counsel confers a substantial and independent benefit to the class that aids in the recovery or improvement of the common fund"). Here, Cowan DeBaets Abrahams & Sheppard (CDAS), a copyright boutique, has been on this case from the outset, performed work well before class certification and the settlement, and continued to serve as Authors Coordination Counsel after the settlement was reached.[7] With respect to Edelson and O+Z, Class Counsel and Publishers' Coordination Counsel took the further step of notifying the Court of exactly what work non-Class Counsel lawyers would undertake, Dkt. 298 (Notice of Association of Additional Counsel), and Publishers' Coordination Counsel submitted requests to the Court to appear *pro hac vice*, which were granted. Dkts. 306–09. Those lawyers then took on critical work for the benefit of the Class.

Second, as set forth in Class Counsel's opening brief, each of the additional law firms have made significant contributions that have been of material benefit to the Class. Dkt. 505 at 5–7. CDAS performed valuable work in defensive discovery, advising on copyright issues, developing the plan of allocation and the Works List, and working with authors through the claims process. *Id.* at 6–7. CDAS's contributions include important work before class certification—and before the appointment of Class Counsel—including advising on case-critical questions related to fair use (in connection with summary judgment briefing) and copyright ownership (in connection with Anthropic's arguments against class certification).

Publishers' Coordination Counsel are elite, significant law firms who did not seek out a role in this case. See Dkts. 398 ¶¶ 2–26, 28; 505-4 ¶¶ 2–30, 32. Class Counsel sought the publishing industry's involvement through the PCC. *See* Dkts. 398 ¶ 28; 505-4 ¶ 32. After joining the case, the PCC worked around the clock—taking on crucial roles including assisting with the preparation of the Works List, identifying and preparing publisher witnesses for trial, assisting with experts, and, particularly, helping secure this Settlement. The historic Settlement achieved in this case should be a banner achievement for the Class, as well as those who worked hard to achieve it—including these firms. Nevertheless, this reply brief makes a fee request based only on the work of Class Counsel.

---

[7] The Judge's Memorandum & Order incorrectly stated that CDAS did not "enter[] and appearance . . . until the day before our first hearing on preliminary approval" of the settlement. CDAS partner Scott Sholder filed a *pro hac vice* application, which was granted on September 16, 2024, less than a month after the complaint was filed. Dkt. 31, 35.

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

**B.    The Court Should Approve Class Counsel's Request for Reimbursement of Litigation Expenses and a Cost Reserve for Future Expenses.**

Attorneys who create a common fund for the benefit of the class are entitled to reimbursement of reasonable litigation expenses. *Roman v. Jan-Pro Franchising Int'l, Inc.*, No. 3:16-cv-05961-WHA, 2024 WL 2412387, at *5 (N.D. Cal. May 23, 2024). Class Counsel have incurred $2,975,197.746 in unreimbursed litigation expenses, for experts, discovery, mediation, legal research, and other customary litigation expenses—all reasonable, directly tied to advancing the litigation, and proportionate to the results achieved. Courts regularly find that expenses of this nature are recoverable. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. CV13-5693 PSG (GJSx), 2017 WL 4685536, at *10 (C.D. Cal. May 8, 2017) (reimbursing in copyright class action expenses incurred in "conjunction with discovery, the services of experts and specialist appellate counsel, mediation, travel, technology support costs, a mock trial, and the cost of computer research and services").

Class Counsel also request a cost reserve for future expenses, the vast majority of which—an estimated $15 million—will be paid to the Court-appointed Settlement Administrator, JND Legal, to complete the robust notice program. Class Counsel will advance these costs—and has been personally advancing these costs—bearing the risk of non-reimbursement if the Settlement is not finally approved. Courts have approved comparable costs in similar cases. *See*, *e.g.*, *In re: Coll. Athlete NIL Litig.*, No. 20-cv-3919 CW, Dkt. 1001 at *5 (N.D. Cal. July 11, 2025) ($9 million in costs); *In re Facebook*, 2023 WL 8445812, at *3.

Three objectors—Golomski, Werner, and Smith—challenge aspects of the reimbursement request. *See* Dkts. 545, 551, 609.  The expense reserve that Golomski challenges is driven overwhelmingly by the estimated $15 million budget for settlement administration from JND Legal. Werner's contention that Class Counsel "should be paid less fees than they are requesting" because the settlement paperwork lacked e-filing instructions does not bear on litigation expenses. And Smith's suggestion that Class Counsel should forfeit expenses if any errors exist in the Works List is legally unsupported. Dkt. 609 at 2.

**C.    The Requested $50,000 Service Awards to Each Settlement Class Representative Are Reasonable.**

Neither Anthropic nor any objector contests Class Counsel's request for $50,000 service awards for each of the three Settlement Class Representatives—Andrea Bartz, Charles Graeber, and Kirk W. Johnson.

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

One class member spoke in favor of the awards, "as their cases serve as examples for the class." *See* Dkt. 601 at 2. The requested awards are reasonable in light of the Class Representatives' leadership and dedication to the case. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). As required by the Northern District Guidelines, the Class Representatives submitted "evidence of the value provided by the proposed awardees, the risks they undertook in participating, the time they spent on the litigation, and any other justifications for the awards." Here, all three Class Representatives took their fiduciary duties exceptionally seriously. In addition to the standard sacrifices that Class Representatives make in serving, such as responding to discovery requests, attending hearings, and sitting for depositions, these Plaintiffs bore the weight of being the first ever plaintiffs to deliver largescale relief to copyright holders in the age of AI. They took this role seriously, and dedicated time to reviewing and providing feedback on the claim form to ensure it was readable and understandable for Class Members, vetting Class Counsel's methodology for assembling the Works List, and examining the plan of allocation and distribution to ensure it was fair and equitable. *See* Declaration of Class Representatives in support of Final Approval; Dkts. 385–87. Courts have approved service awards of $50,000 or more in comparable d cases. *See In re Coll. Athlete*, 2025 WL 3171376, at *3 ($125,000); *In re High-Tech*, 2015 WL 5158730, at *18 (service awards of $120,000 and $80,000 "in line" with other megafund cases).

Dated: March 19, 2026

By: */s/ Rachel Geman*
Rachel Geman *
Jacob S. Miller*
Danna Z. Elmasry*
**LIEFF CABRASER HEIMANN**
**& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
jmiller@lchb.com
delmasry@lchb.com

By: */s/ Justin A. Nelson*
Justin A. Nelson *
Alejandra C. Salinas *
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

Elizabeth J. Cabraser (SBN 083151)
Daniel M. Hutchinson (SBN 239458)
Jallé Dafa (SBN 290637)
Amelia Haselkorn (SBN 339633)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
jdafa@lchb.com
ahaselkorn@lchb.com

Betsy A. Sugar*
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
222 Second Ave., #1640
Nashville, TN 37201
Telephone: (615) 313-9000
bsugar@lchb.com

Rohit D. Nath (SBN 316062)
Michael Adamson*
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
rnath@susmangodfrey.com
madamson@susmangodfrey.com

Samir Doshi*
J. Craig Smyser *
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 51st Floor,
New York, NY 10019
Telephone: (212) 336-8330
csmyser@susmangodfrey.com
sdoshi@susmangodfrey.com

Jordan W. Connors *
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing

Dated: March 19, 2026

/s/ *Rachel Geman*

PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES
CASE NO. 3:24-CV-05417-AMO