Lea Bishop
3627 N. Pennsylvania St.
Indianapolis, IN 46205
(203) 535-2560
lea.bishop@gmail.com
*Pro Se*

RECEIVED

APR 03 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

not
signed

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED<br><br>PLAINTIFF,<br><br>VS.<br><br>ANTHROPIC, PBC<br><br>DEFENDANT. | CASE NO.: 3:24-CV-05417-AMO<br><br>**OBJECTION TO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE: APRIL 23, 2026 TIME: 2:00 PM<br><br>JUDGE: HON. ARACELI MARTÍNEZ-OLGUÍN |

This case was brought by authors against Anthropic for copying their books without permission. Anthropic agreed to pay $1.5 billion to compensate book authors. That money belongs to authors. Nonetheless, before this Court is a proposed Plan of allocation and distribution that would divert most of the Class Funds to publishers.

Before this Court grants final approval to that plan, the objector respectfully asks the Court to consider three things that the Motion for Final Approval did not mention: how Judge Alsup's views on the fairness of this settlement soured between August and December 2025, whether publishers have any legal right to share in authors' settlement proceeds, and whether authors' interests would benefit from independent representation.

## I.    SUMMARY OF ARGUMENT

Publishers did not file this case because these damages are not theirs to recover. After discovery, they inserted themselves and corrupted the settlement process by entering into an undisclosed fee-sharing arrangement with Class Counsel. From that position, publishers drafted a distribution plan that systematically disadvantages authors, without ever proving they belong in the Class.

Outgoing Judge Alsup smelled that the settlement was unfair to authors. When he uncovered the fee-sharing scheme in December 2025, he condemned it, ordered preservation of evidence, and recommended that his successor authorize an independent investigation before approving anything. Dkt. No. 515. Class Counsel's Motions for Final Approval and Fees significantly mislead incoming Judge Martínez-Olguín as to her predecessor's views by selectively quoting favorable early statements while concealing his recent findings. Dkt. Nos. 619-623

The undersigned does NOT ask the Court to reject the $1.5 billion settlement—only to ensure it reaches its rightful recipients. Authors should keep what is lawfully theirs. Toward that end, the objector respectfully requests:

1.  Class Counsel be temporarily suspended from representing authors, pending the outcome of the ethics investigation that Judge Alsup recommended in December 2025, and authors be provided with court-appointed, uncompromised counsel.

2.  Leave of the Court to brief two critical issues of copyright law: (1) whether foreign, unregistered, and/or pre-1970s authors have been unlawfully excluded, and (2) whether publishers are legally entitled to any portion of authors' recovery.

Resolving those two questions will ascertain Class Membership with the certainty that Rule 23 requires. In the meantime, the judge may withhold final approval. Ultimately, the properly identified Class Members—with assistance of uncompromised counsel—can stipulate with Anthropic to a revised distribution plan the Court can approve with confidence.

## II. THE MOTION MISREPRESENTS JUDGE ALSUP'S VIEWS

By December 2025, Judge Alsup's views on settlement fairness and the adequacy of Class Counsel had soured. The Court is respectfully directed to Dkt. 515, Judge Alsup's Order on Fees and Related Issues, entered December 23, 2025. That order is not cited or described anywhere in the Motion for Final Approval. It contains findings and recommendations that this Court should consider before making the adequacy of representation finding that Rule 23(e)(2) requires.

Among other things, Dkt. 515 records Judge Alsup's findings about an undisclosed fee-splitting arrangement between class counsel and publisher attorneys; his concern that the arrangement was concealed from the Court and from class members; his concern that the arrangement may have been used to induce settlement terms that disadvantaged authors; and his recommendation that his successor authorize an independent investigation before approving anything. A concise, targeted summary is provided in Dkt. No. 602.

Class Counsel's omission of this record from its January 2026 Status Update and March 2026 Motion to Approve is not an oversight. It is an affirmative misrepresentation of the record to mislead the incoming judge. Class Members also have not received notice—a context in which a relatively low number of fairness objections should not be taken as an indicator of fairness.

## III. THE PROPOSED PLAN LETS PUBLISHERS CASH THE AUTHORS' CHECKS

Judge Alsup put his finger on the central problem:

*"I'm worried that you are working out, behind the scenes, between publishers some kind of a deal that you want to force down the throat of authors [...] and say you got to take X percent, even though their own agreements give them 100 percent. I would like for you to explain what is going on between the guilds, the publishers. What kind of deal are you trying to do behind the scenes?"*

WHA Order on Fees, December 23, 2025, Dkt. No. 515 at 4.

-3-

Case No. 3:24-cv-05417-AMO   OBJECTION TO MOTION FOR FINAL APPROVAL

Judge Alsup was correct. Publishers, Class Counsel, and the Authors Guild (Class Counsel's client in related litigation) have worked out a deal behind the scenes to let publishers take 50% or more of $1.5 billion award, even though copyright law and book contracts entitle authors to 100%. The undersigned seeks leave to brief this specific issue—the ownership sleight of hand by publishers who are not in fact entitled to share in authors' awards—for the Court.

**IV. RELATED OBJECTIONS THE MOTION ASKS THIS COURT TO OVERRULE**

The Motion for Final Approval, Dkt. No. 619, requests the Court to specifically overrule several fairness objections: Dkts. 598, 599, 600, 601, and 602. These fairness objections were submitted as instructed by the Class Notice—simple letter format, posted by February 9, 2026. They remain sealed. The Motion asks the Court to overrule objections the public cannot view, and which the Motion does not fully characterize.

The objector's own objection is Dkt. 602. It was submitted by mail on February 9, 2026, as directed by the Class Notice, and sealed by the Clerk without her request, without a motion, and without a judicial order. The objector is contemporaneously filing a motion to unseal Dkt. No. 602 and the other sealed objections. The Motion for Final Approval mischaracterizes and thereby fails to refute the objections actually set forth in sealed Dkt. No. 602. These include:

1. **Objection based on inadequate representation.**

The Motion simply did not disclose to the Court that Dkt. No. 602 raised the issue, as established by Judge Alsup, of suspect "coordination" between publishers and Class Counsel, to the detriment of the authors Class Counsel was appointed to represent.

2. **A one-sided distribution plan and unnecessary hurdles.**

What reason is there not to simply mail checks to authors at the same addresses to which the Class Notice was sent? The answer: the claims-made process gives publishers an opening to

-4-

obtain author agreement to share the award although the law does not require it. A claims-made process may deter over 90% of authors from filing.

Even if 60% of works have been claimed, it may be the case that 55% were claimed by publishers and only 5% by authors. The court may wish to consider scrutinizing data on the percentage of authors that have submitted claims. It is particularly concerning that the distribution plan fails to dedicate unclaimed amounts to escheating or charity. Instead, amounts not claimed by authors can be collected by publishers. This creates a financial incentive for publishers to place burdens on author claims.

### 3. Objection based on subjection of authors to arbitration without assistance

The Motion says that "Two Objections challenge the Plan of Allocation and Distribution. See Dkts. 425 (Ruden), 602 (Bishop). They argue that the dispute resolution process is inadequate for failing to include authors' agents and that the appointment of Mr. Cheng as Special Master will favor publishers." This mischaracterizes the objection.

The objection is that the Plan improperly establishes a presumption that publishers are entitled to share in authors' recovery. To keep any more than half of the legally appropriate award for their book, the author must continue into a new round of post-settlement legal conflict, against their own publisher. In that arbitration, the authors will have none of the advantages of class-action litigation. Authors' claims against publishers will not be adjudicated by an Article III judge. Class Counsel will have washed their hands of the author as client—after requesting $187.5 million attorney fee. See Dkt. 620, 12.5% of $1.5 billion. The publisher will have an attorney but the author will not. The arbitration will also conceal from the AI industry that they need to negotiate not with publishers but only with authors.

### 4. Objection based on illegal exclusion of foreign authors

At least 17 parties registered the objection that the class as certified inappropriately imposes a U.S. registration requirement, unlawfully prejudicing foreign-published works. The

Motion for final approval identifies these, at page 19, footnote 10, to include: Dkts. 438 (Barrett), 540 (Paolinelli), 541 (Tombs), 546 (Johnston), 551 (Werner), 552 (Miller), 585 (Ryker), 565 (Glenn), 602 (Bishop), 603 (Newton), 604 (Tascabili), 605 (Editrice), 607 (Boringhieri), 608 (Salani Editore), 610 (Longanesi), 611 (Vallardi Editore), 612 (Garzanti). The number of fairness objections from foreign rightsholders is notable when you consider that excluded foreign authors never received any notice.

The Class Notice, FAQ 56 acknowledges the sweeping impact of the unnoticed exclusion of 2.5 million non-English works:

> **56. Why aren't all 7 million works that Anthropic downloaded from LibGen and PiLiMi on the Works List?** ...[W]orks not validly registered with the U.S. Copyright Office are not eligible to be in the Works List. Many of the works Anthropic downloaded were not registered. For example, non-English works have very low registration rates. Of the approximately 4 million unique works that Anthropic downloaded, around 2.5 million were written in languages other than English. Most of those 2.5 million non-English works were unregistered.

In light of the scale of the problem, Class Counsel engaged seriously with this objection—but unpersuasively.

Class Counsel first argues that because foreign authors were excluded from the class, they lack standing to object to their exclusion from the class. Pages 19-20. This is a circular argument. The judicial clerks' due diligence on the legal authority cited there may produce a more nuanced view. Rule 23 requires Courts to hear objections from Class Members—it does not compel them to ignore concerns raised by injured parties who were scoped out of recovery. If a class action settlement to compensate workers included Honduran employees but purported to exclude Nicaraguan employees, no court would say that the Nicaraguan subclass's objection to their exclusion could not be heard because only Hondurans were members of the class.

More fundamentally, Class Counsel fails to acknowledge that the proposed exclusion of foreign authors is not just unfair, it is contrary to statute. Congress did not provide Judge Alsup with the discretion to impose a U.S. registration requirement or not. The Copyright Act was

specifically modified in the 1970s to waive that barrier to foreign claims, in exchange for US authors receiving the same equitable treatment abroad. That point is made within the undersigned's sealed objection, Dkt. No. 602. Other objectors may also have noted it in still-unsealed objections.

## V. SUMMARY AND RELIEF REQUESTED

Stepping back to view the forest for the trees—authors deserve to benefit from Anthropic's record $1.5 Billion offer to settle infringement claims. The problem is the distribution plan. That distribution plan can be criticized as unfair to authors on any number of grounds. It is systematically unfair to authors—because the publishers designed it that way, and they did so with assistance from Class Counsel. Exclusion of most authors lets the biggest publishers take more. The claims-made requirement lets the biggest publishers take even more. The arbitration mechanism lets the biggest publishers take even more. So do the other fairness problems identified in Dkt. No. 602. This is not adequate representation.

The path to a fair settlement lies in removing the problematic actors from the situation. Authors deserve independent counsel. The Court can then resolve whether Publishers are actually Class Members or not. If the conflicts of interest are removed, Anthropic and the proper Class Members can stipulate to correct the distribution plan.

For the reasons stated above, the objector respectfully requests the relief set forth in the Summary of Argument and contemporaneously filed Motion to Unseal and Request to Be Heard.

The undersigned certifies that any content generated using AI software tools has been reviewed, edited, and approved by the undersigned, who takes full responsibility for this filing's contents.

DATED: April 2, 2026                                    SIGNATURE:

*Lea V. Bishop*

By: Lea Victoria Bishop, *pro se*

specifically modified in the 1970s to waive that barrier to foreign claims, in exchange for US authors receiving the same equitable treatment abroad. That point is made within the undersigned's sealed objection, Dkt. No. 602. Other objectors may also have noted it in still-unsealed objections.

## V. SUMMARY AND RELIEF REQUESTED

Stepping back to view the forest for the trees—authors deserve to benefit from Anthropic's record $1.5 Billion offer to settle infringement claims. The problem is the distribution plan. That distribution plan can be criticized as unfair to authors on any number of grounds. It is systematically unfair to authors—because the publishers designed it that way, and they did so with assistance from Class Counsel. Exclusion of most authors lets the biggest publishers take more. The claims-made requirement lets the biggest publishers take even more. The arbitration mechanism lets the biggest publishers take even more. So do the other fairness problems identified in Dkt. No. 602. This is not adequate representation.

The path to a fair settlement lies in removing the problematic actors from the situation. Authors deserve independent counsel. The Court can then resolve whether Publishers are actually Class Members or not. If the conflicts of interest are removed, Anthropic and the proper Class Members can stipulate to correct the distribution plan.

For the reasons stated above, the objector respectfully requests the relief set forth in the Summary of Argument and contemporaneously filed Motion to Unseal and Request to Be Heard.

The undersigned certifies that any content generated using AI software tools has been reviewed, edited, and approved by the undersigned, who takes full responsibility for this filing's contents.

DATED: April 2, 2026                                 SIGNATURE:

                                                    By Lea Victoria Bishop, pro se

-7-

**DECLARATION OF LEA VICTORIA BISHOP**

I, Lea Victoria Bishop, declare as follows:

I am the objector whose fairness objection is docketed at Dkt. 602. I submitted that objection by mail on February 9, 2026, as directed by the Class Notice. I am a tenured professor of copyright law, a graduate of Yale Law School, a licensed attorney, a member of the Supreme Court bar, a former United Nations Special Consultant on copyright and human rights, and the author of *Ending Book Hunger* (Yale University Press, 2020).

I am the author or editor of four books I believe were downloaded by Anthropic and improperly excluded from the Works List. My anticipated recovery from this settlement is between $0 and $12,000. My potential recovery is small in comparison to the value of my own time—which I have invested with the goal of protecting millions of other authors. I have not received and will not accept any payment in connection with this objection, and I will report any hint of such an offer to the Court immediately.

I did not seek a stipulation from class counsel because the relief sought is not a matter on which class counsel's agreement is required or appropriate. Civil L.R. 7-11(a).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: April 2, 2026

SIGNATURE:

*Lea V. Bishop*

By: Lea Victoria Bishop, *pro se*

Case No. 3:24-cv-05417-AMO  OBJECTION TO MOTION FOR FINAL APPROVAL

## DECLARATION OF LEA VICTORIA BISHOP

I, Lea Victoria Bishop, declare as follows:

I am the objector whose fairness objection is docketed at Dkt. 602. I submitted that objection by mail on February 9, 2026, as directed by the Class Notice. I am a tenured professor of copyright law, a graduate of Yale Law School, a licensed attorney, a member of the Supreme Court bar, a former United Nations Special Consultant on copyright and human rights, and the author of *Ending Book Hunger* (Yale University Press, 2020).

I am the author or editor of four books I believe were downloaded by Anthropic and improperly excluded from the Works List. My anticipated recovery from this settlement is between $0 and $12,000.My potential recovery is small in comparison to the value of my own time—which I have invested with the goal of protecting millions of other authors. I have not received and will not accept any payment in connection with this objection, and I will report any hint of such an offer to the Court immediately.

I did not seek a stipulation from class counsel because the relief sought is not a matter on which class counsel's agreement is required or appropriate. Civil L.R. 7-11(a).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: April 2, 2026

SIGNATURE:

By: Lea Victoria Bishop, *pro se*