**DUNCAN FIRM, P.A.**
James H. Bartolomei III (Bar No. 301678)
809 W. 3rd Street
Little Rock, AR 72201
Telephone: (501) 228-7600
Email: james@duncanfirm.com

*Attorneys for Objector Chinonto "Chino" Chakanga*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Hon. Araceli Martinez-Olguin<br><br>Case No. 3:24-cv-05417-AMO<br><br>Hearing Date:   May 14, 2026 at 2:00pm |

**REPLY IN SUPPORT OF OBJECTION FILED BY CHINONTO CHAKANGA [DKT. 572]**

**TO PROPOSED CLASS SETTLEMENT**

**I. INTRODUCTION**

Class Member Chinonto "Chino" Chakanga ("Chakanga") respectfully submits this reply to address two arguments that the Proposed Order (Dkt. 646-1) does not engage with and omits. First, the Proposed Order cites Dkts. 490 and 495 as authority for the proposition that the Settlement Notice gave "equal dignity" to the opt-out option — but those orders are remediation orders issued by Judge Alsup after he found the notice was systematically designed to steer class members away from opting out. They support Chakanga's position, not the Proposed Order's finding. Second, the Proposed Order overly emphasizes the formal length of the notice period while completely ignoring the distinct and unrebutted argument that thousands of pages of critical sealed judicial records were unavailable to class members

until eight (8) days before the opt-out deadline at the time, rendering that period illusory for purposes of informed decision-making.

## II. ARGUMENT

### A. The Proposed Order Misreads Dkts. 437, 490, and 495 — Those Orders Confirm the Notice Was Biased Toward Claims Filing

The Proposed Order asserts that the Court-approved Notice "expressly stated that statutory damages could range from $200 to $150,000 per Work, and gave "equal dignity" to the options of filing a claim and opting out," citing Dkt. 490 at 1–2 and Dkt. 495 at 4. Dkt. 646-1 at 7. Reading those orders reveals the opposite of what the Proposed Order attributes to them and must be examined for that those orders actual say.

**Dkt. 490**, the November 18, 2025 Further Order on Class Notice, opens with Judge Alsup's express finding that the notice failed the equal-dignity standard:

"[T]he district judge sees that it does not give equal dignity to the option of filing a claim versus the option of opting out, and in fact steers class members toward filing a claim even before mentioning there still is an opportunity to opt out."

**Dkt. 490** at 1–2. Judge Alsup then suspended the email notice and ordered sweeping remediation before any notice could be sent. That is a finding of deficiency, not a certification of adequacy.

**Dkt. 495**, the November 20, 2025 Third Order on Class Notice, is more direct still. Judge Alsup opened by identifying the steering problem as systemic:

"[T]he most important among them is that the entire process engineered by class counsel is steered toward submitting claims and steered away from opting out."

**Dkt. 495** at 1. He documented the specific mechanism: a prominent "File a Claim" button on the settlement homepage, with no opt-out button anywhere. *Id.* at 1–2. A class member directed to the claim form "might never realize they could opt out. Indeed, this is probable." *Id.* at 3. At page 4 — the page the Proposed Order now cites as authority for equal dignity — Judge Alsup did not find equal dignity had been achieved. He commanded it:

"The options to file a claim and to opt out must be equal in dignity. The following are specifically ordered requirements and also examples of the principle to heed: If there is a button to file a

claim, there must be a nearby button to opt out."

**Dkt. 495** at 4 (emphasis added). A command to achieve something is not a finding that it was achieved. The Proposed Order inverts the meaning of both documents.

**Dkt. 437**, the October 17, 2025 Preliminary Approval Opinion, tells the same story. Judge Alsup approved the notice framework only conditionally, requiring specific improvements before dissemination. Dkt. 437 at 10. He required that the notice not discourage class members from contacting the court, and directed counsel to ensure that changes made in one part of the notice were carried through to every relevant section. *Id.* The preliminary approval opinion does not certify the notice as-distributed was adequate — it describes a notice that required further remediation before it could be sent.

The sequence and theme across these three (3) orders is: conditional approval subject to corrections (Dkt. 437); finding that Class Counsel implemented a notice that steered members away from opting out and ordering an overhaul (Dkt. 490); finding the problem was systemic and commanding equal treatment going forward (Dkt. 495). Chakanga's objection — that the notice structurally suppressed the opt-out option at the moment of decision — is confirmed by Judge Alsup's own contemporaneous findings, not contradicted by them.

The Proposed Order does not explain or address how the $150,000 figure buried on page 6 of the Long Form Notice, in a background section describing the litigation, satisfies the adequacy standard when it appears nowhere in the opt-out decision section on pages 16-18. The opt-out section warns class members *three times* that opting out means they will "receive nothing," without once disclosing in that section the potential value of the claim they retain. As Chakanga argued, this creates a structurally biased false binary. The standard under *In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299, 330 (N.D. Cal. 2018), requires adequate disclosure *at the moment of decision*. There is in fact "an overriding reason to conclude that those Settlement Class Members who failed to opt out would now choose to do so" because the notice obscured what rights and remedies opting out actually preserved. *Id.* at 331. The Proposed Order neither addresses this standard nor distinguishes it.

The Court should also require the parties to amend the notice going forward with explicit disclosure language such as: "If you elect to opt out, you are giving up the right to receive settlement

funds. However, you may pursue an individual claim for damages that may range from $200 to $150,000 per work. Please consult independent legal counsel."

This is the type of neutral disclosure Judge Alsup's orders were working toward, that Chakanga's objection identified as missing, and the Court now has an opportunity to correct at the fairness hearing by ordering the parties to amend the notice, reissue it, reopen the opt-out period for at least 35 days, and provide actual "equal dignity" to opting out of the class settlement as an option as a meaningful choice.

**B. The Proposed Order Does Not Engage With the Unsealing Of Thousands of Pages of Critical Judicial Records**

Chakanga raised a distinct due process argument: critical summary judgment records, class certification briefs, and expert declarations — the very materials necessary to evaluate the merits of opting out and pursuing individual claims — were sealed and not publicly available until January 21, 2026. The opt-out deadline at that point was January 29, 2026. Class members had a mere eight (8) days to review thousands of pages of complex litigation materials before permanently deciding whether to release their individual infringement claims for approximately $3,000 per work. Even with the extended February 9, 2026 deadline, class members had 19 days from unsealing to opt out, not the full 56 days as the Proposed Order emphasizes.

The Proposed Order's entire response is: "the 56-day direct notice period exceeded the 35-day period specified in this District's Procedural Guidance for Class Action Settlements." Dkt. 646-1 at 7. This is non-responsive and misses the point. The 56-day period began well before the records were unsealed. A formal notice period measured from the start of dissemination does not cure the deprivation of access to the judicial record necessary to evaluate whether to release one's claims. The Proposed Order cites no case holding that an adequate formal notice period renders harmless the withholding of unsealed judicial records until eight (8) days before the opt-out deadline. No such case exists.

Due process requires that a class member's decision to release individual claims be voluntary, knowing, and intelligent. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). A decision made without access to judicial records bearing on the strength of the claims being released cannot satisfy this standard regardless of the formal length of the notice period.

**REPLY IN SUPPORT OF OBJECTION FILED BY CHINONTO CHAKANGA [DKT. 572]**

The Ninth Circuit has confirmed that the strong presumption of public access to judicial records applies fully to dispositive motions such ones for summary judgment and their attachments — precisely the category of judicial records that were withheld here until January 21, 2026. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). That presumption exists to serve the public interest in understanding the judicial process and to ensure that parties whose rights are adjudicated have access to the record bearing on those rights. *Id.* The summary judgment briefs, class certification materials, and expert declarations unsealed on January 21, 2026 are the records *Kamakana* identifies as carrying the strongest presumption of public access. Their constitutional purpose — allowing class members to evaluate the strength of the claims they were being asked to release — was not served when they became available only eight (8) days before the opt-out deadline.

The Ninth Circuit's recent January 28, 2026 decision (after Chakanga objection was filed) in *Avery v. TEKsystems, Inc.*, 165 F.4th 1219 (9th Cir. 2026), confirms that compressed timing during a holiday period is not merely a practical inconvenience but a possible substantive defect in the opt-out process and timing. In *Avery*, the court found that a 13-day rollout period was problematic because it "occurred during the holiday season when employees are less likely to be paying close attention to email, or able to obtain and/or consult with counsel regarding their options." *Id.* at 1232. The court held that Rule 23(d) gives district courts "the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation." *Id.* at 1228 (quoting *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *vacated on other grounds*, 565 U.S. 801 (2011)).

The parallel here is direct. The notice period in this case launched December 2025 and ran through the heart of the holiday season — precisely the period *Avery* identified as one when class members are least likely to engage with legal correspondence or obtain counsel. *Avery*, 165 F.4th at 1232. But this case presents an additional and independent defect that *Avery* did not involve: the critical judicial records bearing on the merits of the claims being settled — summary judgment briefs, expert declarations, and class certification materials — were sealed throughout the entire notice period, including the holiday period. They were not unsealed and made public until January 21, 2026. At that point, class members had only eight days before the original January 29 deadline, and 19 days before the

**REPLY IN SUPPORT OF OBJECTION FILED BY CHINONTO CHAKANGA [DKT. 572]**

extended February 9 deadline, to locate and review and analyze thousands of pages of dispositive litigation materials, retain competent counsel, and make a fully informed decision about whether to release copyright infringement claims worth up to $150,000 per work. The combination of a notice period running through the holidays and a sealed judicial record unsealed only days before the deadline compounds each defect. The Proposed Order addresses neither.

**C. Chakanga Preserves His Appellate Rights**

Chakanga files this reply to preserve his appellate record. He respectfully requests that the final order either address the structural notice arguments raised on their merits — including the specific findings in Dkts. 490 and 495 that confirm the notice was engineered to steer members away from opting out — or at minimum reflect that these arguments were considered and rejected on grounds consistent with the actual text of those orders.

**III. CONCLUSION**

For the foregoing reasons, Objector Chinonto Chakanga respectfully requests that the Court (1) correct the Proposed Order's reliance on Dkts. 490 and 495 as support for notice adequacy, as those orders are remediation commands confirming the notice failed the equal-dignity standard; (2) require amendment of the notice to include explicit neutral disclosure of the opt-out's retained claim value that includes at least a 35 day extension for opting out; (3) address the unsealing-timeline argument on its merits; and (4) enter findings consistent with the full record, including Judge Alsup's November 2025 findings.

Dated: May 4, 2026

Respectfully Submitted,

**DUNCAN FIRM, P.A.**

By: */s/James H. Bartolomei*
James H. Bartolomei (SBN: 301678)

*Attorneys for Objector Chinonto "Chino" Chakanga*

**REPLY IN SUPPORT OF OBJECTION FILED BY CHINONTO CHAKANGA [DKT. 572]**

**PROOF OF SERVICE**

I served and filed the following document via the Court's ECF filing system to all counsel of record and the Court:

**REPLY IN SUPPORT OF OBJECTION FILED BY CHINONTO CHAKANGA [DKT. 572]**

**TO PROPOSED CLASS SETTLEMENT**

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on May 4, 2026 in Little Rock, Arkansas.

<u>/s/James H. Bartolomei III</u>

James H. Bartolomei III

**REPLY IN SUPPORT OF OBJECTION FILED BY CHINONTO CHAKANGA [DKT. 572]**