Lea Victoria Bishop
1319 F St. NW
Suite 301, PMB 458
Washington, DC 20004
(203) 680-3693
lea.bishop@acumenauctorum.com
*Pro Se*

**FILED**

MAY 1 3 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No.: 3:24-cv-05417-AMO<br><br>**NOTICE OF INTENDED APPEARANCE AND REQUEST FOR LEAVE TO BE HEARD PENDING DECISIONS ON STANDING AND OTHER RELIEF**<br><br>**Hearing: May 14, 2026, 2:00 p.m.**<br>**Zoom Webinar ID: 160 332 9440**<br>**Password: 426303**<br><br>**Re: ECF Nos. 515, 602, 627, 629 630, 631, 632, 646-2** |

Lea Victoria Bishop ("Bishop"), a professor of copyright law and injured Author, submitted a timely objection and respectfully requests to be heard on May 14, 2026. Bishop has standing as the author of four books copied into the LibGen database at issue in this litigation.

**1. Background.** On February 9, 2026, Bishop submitted a letter to the Court raising fairness concerns regarding the proposed settlement ("Bishop Letter"). ECF No. 602. These included: (a) the class definition's exclusion of 2.5 million foreign-language works; (b) diversion of author funds to publishers without supporting contracts; and (c) the prior judicial officer's concerns the settlement was unfair to authors and his suggestion to formally investigate Class Counsel's "fee

-1-

splitting scheme" with publisher attorneys. Memorandum and Order on Fees, ECF No. 515 (Dec. 23, 2025) (Alsup, J.) at 1, 2, 4, 5, 7, 8, 9, 10, 11. The Revised Proposed Order on Final Approval ("RPO"), ECF No. 646-2, does not offer a reasoned response to Bishop's concerns. Indeed, the RPO does not acknowledge Judge Alsup's Memorandum and Order on Fees, ECF No. 515.

**2. Sealed Letters.** The Bishop Letter was withheld from Class Members for almost 90 days. It was finally published on May 7, 2026; 30 days after the Court ordered it unsealed and just one week before the final approval hearing. ECF No. 602. Similar issues affected at least 40 other objections. ECF No. 632.

**3. Request to Speak and Prior Order.** Bishop notices her intent to appear at the May 14, 2026 hearing and requests to be heard, however, Class Counsel objected to Bishop's previous request to speak for 15 minutes with demonstratives. ECF Nos. 629, 631. In a footnote, the Court agreed, accepting Counsel's word that Bishop disclaimed class membership. ECF No. 632 at 1 n.1. Now that the Bishop Letter is unsealed, its full text says differently. "I believe myself to be an improperly excluded class member" ECF No. 602 at 7. "My works are not listed at the Settlement Website. I believe them to be improperly excluded." *Id.* Three of my books "were excluded by the U.S. registration requirement, although British-published books are exempt from U.S. registration," while the fourth "is registered with the U.S. Copyright Office; it is not clear to me why it was excluded." *Id.* Bishop now requests only 45 seconds or, in the alternative, seeks leave to request reconsideration on four grounds:

1. It was improper for Class Counsel to object to disclosure of potential misconduct;

2. Class Counsel knew Bishop would contradict its December 30 sworn statements;

3. Class Counsel did not attach the document upon which it relied;

4. Class Counsel meaningfully mischaracterized the unavailable document;

5. Wrongly excluded authors must have standing to object to their exclusion;

**4. Standing of Wrongly Excluded Authors.** Bishop does not believe that the Court intended the footnote as a reasoned holding on Bishop's standing, but alerts the Court that the RPO would now extrapolate that footnote into a broad holding barring all foreign-language and otherwise excluded authors from disputing their own exclusion, even though they suffered identical injury from the identical act and their claims were asserted in the Complaint. ECF No. 646-2 at 7-9. "[A]ny putative Objection filed by a non-class member is stricken because non-class members 'lack[] standing to object to the settlement.' Dkt. 632 at 1 n.1." *Id.* (No motion to strike was filed.) Such a holding would contradict *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 835-837 (9th Cir. 1976), and unnecessarily create an appealable issue.

**5. Notice and Timeliness of Objections.** The RPO also proposes to dispose of many other authors' objections on technicalities. ECF No. 646-2 at 11. The Court should be aware: (1) The Class Notice instructed objectors to *postmark* their objections by February 9, 2026. (2) The Class has not yet received the notice contemplated by ECF No. 515. (3) Authors did not receive the early notice required by 17 U.S.C. § 501(b). (4) Excluded authors never received any notice.

**6. Forthcoming Submissions.** Bishop will submit a motion to appear pro hac vice on behalf of a client and/or to intervene as of right *pro se. See* 17 U.S.C. § 501(b) ("The court . . . shall permit the intervention of any person having or claiming an interest in the copyright."). A proposed order that would satisfy the Court's obligation to provide a "reasoned response" to all nonfrivolous fairness concerns, the fee petition, and other procedural issues will follow.

**7. Final Approval and Fees.** For avoidance of doubt, Bishop *opposes* final approval of the Settlement as currently structured. *Rather than officially reject* the Settlement at this time, Bishop respectfully suggests that the Court *delay ruling on Final Approval and Fees to* allow the parties an opportunity to remedy the flaws identified.

**8. Unsealing the Works Lists.** Several objectors seek an explanation for exclusion of their US-registered and otherwise eligible works from the public-facing Works List. They are

currently unable to access the five filed versions of the Works List to understand who was added or subtracted over time and why.[1] Bishop respectfully requests that the Court unseal those lists and order the Clerk to post the files to ECF prior to May 14, 2026, redacting contact details.

**9. Chambers Copies.** Now that an ECF-stamped copy of the Bishop Letter is available, Chambers copies are enclosed. Because unrepresented objectors will not be aware of this practice, I have taken the liberty of enclosing a sampling of my others' concerns.

**10. Notice of New Hearing.** Many of the objecting authors stated that they could not attend the April 23, 2026 hearing in San Francisco. The Court has made the effort to accommodate by moving to Zoom, but the objectors were not served. One solution to this problem would be to represent that the May 14, 2026 hearing will be the first, but not the last, opportunity to be heard.

**11. Correction of Docket Designations.** Bishop's ECF Nos. 602 and 630 are reflected on the docket as not timely filed. That designation is incorrect. ECF 602 was posted on the date required by the Long Form Class Notice. ECF 630 was filed over 30 days before the May 14 hearing. For the avoidance of doubt, a wet-signed true copy of ECF No. 630 is also attached.

Respectfully,

Professor Lea Victoria Bishop, Esq.

Appearing *pro se*

Dated    5-11-2026

---

[1] In addition to the public-facing versions of the Works List posted on October 6, 2025 and altered at least once in November, the five other versions filed under seal are now *See* (1) Original Works List, ECF No. 380-1 (Sept. 15, 2025); (2) Corrected Works List, ECF No. 404-1 (Sept. 23, 2025); (3) Amended Corrected Works List, ECF No. 422-1 (Sept. 24, 2025); (4) Simplified Works List, ECF No. 433-3 (Oct. 3, 2025); (5) Nov. 12 Works List, ECF No. 473-1 (Nov. 12, 2025). Objections identifying unexplained exclusions make their contents "more than tangentially related" to nonfrivolous fairness issues now before the Court. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

**FILING CERTIFICATIONS**

MEET AND CONFER

The relief requested herein concerns the Court's administration of the May 14, 2026 hearing and is not within the parties' authority to resolve by stipulation.

VERIFICATION OF ACCURACY

I have personally reviewed and verified the accuracy of all content within this filing, including any text generated using AI software tools.

Respectfully,

Professor Lea Victoria Bishop, Esq.

Appearing *pro se*

Dated   5-11-2026

*Exhibit 1 - Bishop Letter 602*

Class Action Clerk
United States District Court N. D. California
450 Golden Gate Ave., 16th Floor,
San Francisco, CA 94102

*Postmark 2-9-2026 receipt attached*

**FILED**

**FEB 13 2026**

**Judge Araceli Martínez-Olguín**
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**Re: *Bartz v. Anthropic, PBC*, No. 3:24-cv-05417-AOM (N.D. Cal.)**

INTRACLASS FAIRNESS OBJECTION submitted by Lea Bishop, Professor of Copyright Law

Anthropic will pay $1.5 billion to settle copyright claims—but to whom? Media coverage has reported a 50/50 between publishers and authors. The fine print of the allocation plan, however, ensures that major corporate publishers will keep the overwhelming majority of the award.

The plan is harsh for authors. Most authors are barred from any recovery, including millions of non-English-language writers. Authors whose books do appear on the "Works List" face a burdensome claims process. Non-filing authors forfeit their share to their publisher. Authors who do file must negotiate a split with their publisher, and are ultimately not guaranteed any recovery in exchange for agreeing to waive their claims.

**Before passing the baton, Judge Alsup expressed concerns about intraclass fairness due to undisclosed conflicts and questionable fee splitting "schemes." Order on Fees, December 23, 2025, Dkt. No. 515. at 1-10. His concerns were significant enough that the Order recommended appointment of an independent investigator. *Id.* at 10. This development was not squarely disclosed to incoming Judge Martínez-Olguín in Plaintiff's Status Report, January 5, 2026, Dkt. No. 533. Nor have class members yet been notified of these problems.**

I write the Court today as a graduate of Yale Law School, licensed attorney, member of the Supreme Court bar, and tenured professor specializing in copyright law from a social justice perspective. My current research focuses on copyright issues raised by generative AI technology. I am the author of a book about book publishing: *Ending Book Hunger*, Yale University Press 2020. When I served as a United Nations special consultant on copyright and human rights, I emphasized the need to protect authors from exploitation by pirates *and their own publishers*.

This Court has the tools at its disposal to meet that challenge. This limited intraclass fairness objection does not oppose the Settlement in principle; it aims to support the Court in guiding to final approval a distribution plan that will be fair to authors and comply with the Copyright Act in order to withstand appeal.

# I. JUDGE ALSUP'S CONCERNS WARRANT INVESTIGATION

*"I'm worried that you are working out, behind the scenes, between publishers some kind
of a deal that you want to force down the throat of authors [...] and say you got to take X*

1

*percent, even though their own agreements give them 100 percent. I would like for you to explain what is going on between the guilds, the publishers. What kind of deal are you trying to do behind the scenes?"*

These are the words of Hon. Judge William H. Alsup. Order on Fees, December 23, 2025, Dkt. No. 515 at 4. The class as originally proposed consisted of authors only. After discovery ended, dozens of corporate publishers and their lawyers emerged from the woodwork, identifying as absent class members, and "insinuating a raft of other law firms into the case." Alsup, Dkt. 515 at 3. Under the proposed distribution plan, a conflict of interests is "implied in the structure of the settlement—for each work, the publishers and authors must allocate the proceeds in a zero-sum exercise." Textbook Authors Association, Dkt. No. 513 at 10.

As early as September 2025, Judge William H. Alsup expressed concerns. Bloomberg Law reported Alsup complained he felt "misled" and said "I have an uneasy feeling about hangers on with all this money on the table." *See* Annelise Levy, *Anthropic Judge Blasts $1.5 Billion AI Copyright Settlement*, Bloomberg Law (Sept. 8, 2025). Hearing Tr. Dkt. No. 372 remains unavailable to the public.

Early-December fee requests inadvertently revealed Class Counsel's unauthorized coordination with outside attorneys retained "for the purpose of representing publishers." Dkt. 505-4 at ¶¶ 2–3. These firms billed $3,090,956 in legal services to advance corporate publishers' interests. Dkt. 505-4 at 20. These firms dramatically changed the Works List, defining which authors to include or exclude from recovery. Dkt. 505-4 at ¶¶ 38-39.

In his Order on Fees, December 23, 2025, Dkt. No. 515, Judge Alsup called this improper, expressing at least ten specific concerns:

1. Class counsel's fee request would bill class members far too much (*id.* at 9);
2. Class counsel failed to do work it was responsible for (*id.* at 7);
3. Publishers' attorneys improperly sought reimbursement as well (*id.* at 7);
4. The "firms' fee-splitting scheme" appears improper (*id.* at 1, 9),
5. The lawyers improperly concealed it from the Court (*id.* at 1, 5–6);
6. And from the class members they were appointed to represent (*id.* at 8);
7. Some firms may have been promised bonuses or windfalls (*id.* at 9);
8. To influence their clients to accept an unfair settlement (*id.* at 8–9);
9. While giving sweetheart deals to Class Members (*id.* at 8);
10. The Court did not get to vet these firms for conflicts of interest (*id.* at 8).

## II. HOW JUDGE ALSUP PREPARED THE INTRACLASS FAIRNESS ISSUE FOR HIS SUCCESSOR

One of Judge Alsup's final acts was to recommend his successor authorize an independent investigation into "these firms' fee-splitting schemes." Dkt. No. 515 at 1.

> *The successor judge might consider directing Special Master for Discovery Harold McElhinny (or newly appointing another qualified lawyer independent of and not proposed by counsel) to investigate and report on all aspects of these fee petitions. Dkt. No. 515 at 10.*

Although that Order did not recommend a specific time frame, it expressed the opinion that Class members would need notice of the identified problems and the investigation's results to make informed decisions, including objections:

> *Additionally, the undersigned judge recommends to the successor judge that he or she extend the dates for objections and for opt-outs specifically for class members to be made aware of the problems identified in this memorandum (and any revealed by declarations and discovery) so that the class members can consider these issues in full before having to decide whether to object and whether to opt out. Dkt. No. 515 at 11.*

Judge Alsup also ordered disclosures and preservation of evidence relevant to the suspicious coordination:

> *3. All law firms who have filed fee petitions herein (or on whose behalf one has been filed) also shall file a declaration setting forth the full extent to which any arrangement has been made or proposed by which any class member would receive a sweeter recovery than other class members (emphasis added.)*

> *4. All emails, messages, and written materials relating to any of the above shall be preserved for future potential discovery.*

On December 30, the top attorney at each firm filed a general denial. Dkt. Nos. 521-528. No useful information was conveyed in these disclosures, but their filing triggers an ongoing obligation to disclose:

> *"Counsel may not make arguments or statements to the judge or jury or opposing counsel that counsel realize are contradicted by unproduced material, whether requested or not, when such material might reasonably be credited by the judge or jury or opposing counsel. If counsel learns of such adverse material after having made a representation or argument, counsel must very promptly correct the statement or argument and explain the basis for the correction. The same is true for interrogatory answers and FRCP 30(b)(6) testimony. This is an exception to the normal rule that counsel need not volunteer adverse information." Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup   26 (rev. Aug. 27, 2024).*

While criticizing class counsel's requested 15% fee award as too high, Alsup left its resolution for adjudication by his successor, presumably in light of that investigation's results.

3

## III. FURTHER INTRACLASS FAIRNESS CONCERNS

Notwithstanding these denials, the distribution plan proposed greatly disadvantages authors in order to ensure publishers a sweeter recovery. The publishers retained counsel with the stated "goal of maximizing the per-work recovery." Dkt. No. 298 at 2.

### A. Exclusion of international and non-English authors

Nearly all international authors were excluded by defining the class to require US registration. No notice of this litigation was sent to the excluded class members. Counter to Judge Alsup's standing order on class actions, the Class Notice was never translated. The Class Notice acknowledges the disproportionate impact:

> *56. Why aren't all 7 million works that Anthropic downloaded from LibGen and PiLiMi on the Works List? ...[W]orks not validly registered with the U.S. Copyright Office are not eligible to be in the Works List. Many of the works Anthropic downloaded were not registered. For example, non-English works have very low registration rates. Of the approximately 4 million unique works that Anthropic downloaded, around 2.5 million were written in languages other than English. Most of those 2.5 million non-English works were unregistered.*

This limitation contradicts the Copyright Act. Congress required our courts to protect foreign-published works without discrimination and expressly exempted them from registration requirements. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019). Justice Ginsburg explained:

> *Noteworthy, too, in years following the 1976 revisions, Congress resisted efforts to eliminate §411(a) and the registration requirement embedded in it. In 1988, Congress removed foreign works from §411(a)'s dominion in order to comply with the Berne Convention for the Protection of Literary and Artistic Works' bar on copyright formalities for such works. See §9(b)(1), 102 Stat. 2859. Despite proposals to repeal §411(a)'s registration requirement entirely, however, see S. Rep. No. 100–352, p. 36 (1988), Congress maintained the requirement for domestic works, see §411(a).*

### B. Exclusion through the ISBN requirement

Books as far back as 1927 remain under copyright, with the authors' rights passing to heirs. The International Standard Book Number (ISBN) system was not widely in use prior to the 1970s. (Nor was Amazon's ASIN alternative). Making an ISBN or ASIN a requirement of recovery operated to exclude half a century of authors from the Class.

Attorneys involved in the fee-sharing arrangement understood this.

> *The PCC engaged in an all-out effort to assist Class Counsel in compiling the Works List, committing a team of lawyers with extensive knowledge, understanding and experience with clearing works for inclusion in copyright cases, Copyright Office registration issues, commercially available databases of registered works, nuances of the ISBN system, works with multiple editions, foreign works, litigation experience against shadow libraries, and many years working closely with publishers on all these issues. Dkt. 505-4 at 11.*

4

The anticipated exclusionary impact of the ISBN requirement was not disclosed to the Court, in the Class Notice, or to the excluded class members. It is further obscured by the omission of years from the published Works List and by the recent sealing of earlier versions.

## C. Negotiation and arbitration disadvantaging authors

The distribution plan suggests a 50/50 split for most books (excluding textbooks) but does not guarantee that. Class Counsel has not offered authors assistance or guidance in interpreting their book contracts. Authors are forced to "make the first offer" without knowing what their publisher seeks. Authors who cannot reach agreement with their publishers face a dispute resolution process where they will not benefit from the advice of class counsel. Class Notice at 13.

The Special Master selected by the fee-splitting firms to arbitrate these disputes is Theo Cheng. Cheng is the incoming President of the Copyright Society, an organization of institutional copyright holders and their counsel. Mr. Cheng's career — Paul Weiss, Proskauer, Loeb & Loeb — was built representing publishers. Publishers, but not authors, have the power to send future arbitration work in Mr. Cheng's direction. This creates a process that is not completely free from the appearance of partiality.

## D. Additional Fairness Concerns

Other intraclass fairness flags for the Court's consideration — but by no means an exhaustive list — include persistent problems with undisclosed conflicts, inadequate notice, and unfair allocation. This incomplete, chronological list sketches the story:

*Before Settlement*

1. **EARLY NOTICE.** The Copyright Act requires immediate notice to interested parties. 17 U.S.C. § 501(b). Only the named plaintiffs received it, not those similarly situated.
2. **UNREPRESENTATIVE.** The named plaintiffs have highly atypical contracts. Judge Alsup ultimately ruled that not all of them were actually class members.
3. **UNDISCLOSED PARTIES.** Authors Guild, AAP, and corporate publishers were involved at an early stage, but not named as interested parties in initial disclosures.
4. **UNDISCLOSED LITIGATION.** Class Counsel failed to disclose that it represents an interested party in related litigation. *Authors Guild v. OpenAI Inc.*, No. 1:23-cv-08292 (S.D.N.Y.).

*Class Notice*

5. **DELAYED CLASS NOTICE.** Four months passed before Class Notice issued in December. During that time, publishers negotiated allocation without author participation.
6. **INFERIOR NOTICE.** Specific promises made to the Court regarding notice were ultimately not honored. The Class Notice refers to "reasonable," not "best practicable" notice.

5

7. **MISREPRESENTATIONS.** The Class Notice materially misstated authors' rights and the Court's powers, discouraging the filing of objections.

## *Allocation Plan*

8. **INADEQUATE REPRESENTATION.** Authors' interests were not reasonably protected in the allocation plan, which includes a burdensome claims-made procedure.

9. **FORFEITURE.** The plan lets publishers take authors' unclaimed money. Despite that conflict of interest, publishers were asked to provide authors' contact information.

10. **OWNERSHIP.** Publishers have not proven they are entitled to recover, and no evidence or law supports the suggested 50/50 division.

11. **SPLIT & INTERFERENCE.** Authors must negotiate a publisher cut, with no guaranteed recovery; a publisher can bar their authors from recovery for any reason.

The Court has broad discretion under Rule 23(e) to address these concerns without disturbing the $1.5 billion settlement. I respectfully request that the Court scrutinize these issues before final approval and am prepared to brief them in detail at the Court's direction.
Respectfully submitted,


Lea Victoria Bishop

_Feb 9, 2026_

6

## COMPLIANCE WITH CLASS NOTICE OBJECTION REQUIREMENTS

This objection satisfies each requirement set forth in the Class Notice (FAQ 44):

(1) **Writing.** This objection is submitted in writing.

(2) **Case identification.** *Bartz v. Anthropic, PBC*, No. 3:24-cv-05417 (N.D. Cal.).

(3) **Name and address.** Lea Bishop, 3627 N. Pennsylvania St., Indianapolis IN, 46205

(4) **Class membership.** I believe myself to be an improperly excluded class member.

(5) **Work on the Works List.** My works are not listed at the Settlement Website. I believe them to have been improperly excluded. I published four books under my former name.

1. Lea Shaver (ed.), *Access to Knowledge in Brazil: New Research on Intellectual Property, Innovation and Development* (London: Bloomsbury Academic 2010). ISBN 978-1-84966-009-9.

2. Nagla Rizk & Lea Shaver (eds.), *Access to Knowledge in Egypt: New Research on Intellectual Property, Innovation and Development* (London: Bloomsbury Academic 2010). ISBN 978-1-84966-008-2.

3. Ramesh Subramanian & Lea Shaver (eds.), *Access to Knowledge in India: New Research on Intellectual Property, Innovation and Development* (London: Bloomsbury Academic 2011). ISBN 978-1-84966-526-1.

4. Lea Shaver, *Ending Book Hunger: Access to Print Across Barriers of Class and Culture* (New Haven: Yale University Press 2020). ISBN 978-0-300-22600-3. Copyright Reg. No. TX0009216694.

The Bloomsbury Academic titles (nos. 1–3) were excluded by the U.S. registration requirement, although British-published books are exempt from U.S. registration. *Ending Book Hunger* (no. 4) is registered with the U.S. Copyright Office; it is not clear to me why it was excluded.

(6) **Copyright interest.** I own or share ownership of all four copyrights.

(7) **Scope of objection.** This objection applies to all authors who were excluded or disadvantaged by the proposed allocation plan and/or to the Class as a whole.

(8) **Grounds and supporting documents.** The specific grounds are set forth above.

(9) **Attorneys.** This objection was prepared solely by the undersigned.

(10) **Appearance at final approval hearing.** I intend to appear at the final approval hearing.

(11) **Signature.** Signed February 9, 2026

(12) **Timeliness.** This objection was mailed on February 9, 2026 to:

Class Action Clerk
United States District Court for the Northern District of California
450 Golden Gate Ave., 16th Floor,
San Francisco, CA 94102

7

Exhibit 2



U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information visit our website at *www.usps.com®*.

San Francisco, CA  94102

| Certified Mail Fee | | |
|---|---|---|
| $ | $5.30 | 0022 09 |
| Extra Services & Fees *(check box, add fee as appropriate)* | | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | Here |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ $0.00 | |
| Postage | | |
| $ $11.95 | | |
| Total Postage and Fees | | 02/09/2024 |
| $ $17.25 | | |

Sent To Class Action Clerk US District
Street and Apt. No., or PO Box NDCal. 450 Golden Gate 16thFl
City, State, ZIP+4® San Francisco, CA 94102

PS Form 3800, January 2023  7530-02-000-9047  See Reverse for Instructions

---

Mail service provides ... portion of the Certified Mail ... identifier for your mailpiece.
Electronic verification of ... delivery.

A record of delivery (including the recipient's signature) that is retained by the Postal Service™ for a specified period.

**Important Reminders:**
You may purchase Certified Mail service with First-Class Mail®, First-Class Package Service®, or Priority Mail® service.
Certified Mail service is *not* available for international mail.
Insurance coverage is *not* available for purchase with Certified Mail service. However, the purchase of Certified Mail service does not change the insurance coverage automatically included with certain Priority Mail items.
For an additional fee, and with a proper endorsement on the mailpiece, you may request the following services:
- Return receipt service, which provides a record of delivery (including the recipient's signature). You can request a hardcopy return receipt or an electronic version. For a hardcopy return receipt, complete PS Form 3811, *Domestic Return Receipt*; attach PS Form 3811 to your mailpiece;

following benefits:
- a duplicate electronic return receipt, see a retail associate for assistance. To receive a duplicate USPS® receipt for an additional fee, present this retail postmarked Certified Mail receipt to the retail associate.
- Restricted delivery service, which provides delivery to the addressee specified by name, or to the addressee's authorized agent.
- Adult signature service, which requires the signee to be at least 21 years of age (not available at retail).
- Adult signature restricted delivery service, which requires the signee to be at least 21 years of age and provides delivery to the addressee specified by name, or to the addressee's authorized agent (not available at retail).

☑ To ensure that your Certified Mail receipt is accepted as legal proof of mailing, it should bear a USPS postmark. If you would like a postmark on this Certified Mail receipt, please present your Certified Mail item at a Post Office™ for postmarking. If you don't need a postmark on this Certified Mail receipt, detach the barcoded portion of this label, affix it to the mailpiece, apply appropriate postage, and deposit the mailpiece.

**IMPORTANT: Save this receipt for your records.**

PS Form 3800, January 2023 *(Reverse)* PSN 7530-02-000-9047

Lea Bishop
3627 N. Pennsylvania St.
Indianapolis, IN 46205
(203) 535-2560
lea.bishop@gmail.com
Pro Se

FILED

APR 02 2026

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED<br><br>PLAINTIFF,<br><br>VS.<br><br>ANTHROPIC, PBC<br><br>DEFENDANT. | CASE NO.: 3:24-CV-05417-AMO<br><br>ADMINISTRATIVE MOTION TO UNSEAL THE FAIRNESS OBJECTIONS OF MOVANT LEA VICTORIA BISHOP (DKT. NO. 602) AND OTHER OBJECTORS |

On January 15, 2026, the Court entered an order (Dkt. 547) directing that certain previously sealed materials be placed on the public docket, recognizing that judicial records in this proceeding should be accessible where no valid basis for sealing exists.

On February 13, 2026, the Clerk sealed the fairness objection of Professor Lea Victoria Bishop (Dkt. 602). No motion to seal appears on the docket. No judicial order authorizing sealing appears on the docket. Professor Bishop submitted her objection by mail on February 9, 2026, as directed by the Class Notice. Professor Bishop did not request sealing.

The Motion for Final Approval specifically asks the Court to overrule this objection and dispose of it after judgment. The Court—and the public— should have the opportunity to read it first.

-1-

Currently, the Proposed Order Granting Final Approval would note that "many objections were sealed" and that "Class Members should be able to review all Objections," but would delay that unsealing until two weeks after final approval. Dkt. 621, page 10, lines 9-11. That is too late.

Professor Bishop respectfully requests that the Court immediately unseal and restore to the public docket her objection, Dkt. 602, and other fairness objections sealed without motion or judicial order, so that the Court, absent Class Members, and the public may fully consider their points in advance of the fairness hearing rather than after final approval.

Pursuant to the Court's standing orders, undersigned counsel certifies that any content generated with AI software tools has been reviewed, edited, and approved by the undersigned, who takes full responsibility for the contents of this filing.

DATED: April 2, 2026

Signature:

By: Lea Victoria Bishop

*Pro se*

-2-

*Exhibit 2 - Alsup Memo on Fees*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREA BARTZ, et al.,

      Plaintiffs,

v.

ANTHROPIC PBC,

      Defendant.

No. C 24-05417 WHA

**JUDGE'S MEMORANDUM REGARDING PETITIONS FOR FEES AND COSTS, AND ORDER**

As stated for several months, the undersigned judge will be hanging up his robe and taking inactive status in a few days. This memorandum is meant to set the record straight concerning aspects of the pending fee and cost petition, which will be decided by the successor judge. An order also appears at the end.

### 1. ONLY TWO FIRMS HAVE EVER BEEN APPOINTED AS CLASS COUNSEL.

Two and only two law firms were ever appointed as class counsel: Susman Godfrey LLP and Lieff Cabraser Heimann & Bernstein LLP. This was decided when the class was certified, before settlement (Dkt. No. 244 at 31). This was confirmed again, after settlement at preliminary approval (Dkt. No. 437 at 14). And, this was done despite class counsel seeking to insinuate other counsel into the case before, between, and even now. We have never blessed and indeed only learned of these firms' fee splitting scheme when reading the instant petition.

At first, plaintiffs had sought to certify various classes including authors but not publishers regardless of the extent to which the authors had assigned their copyrights to the publishers in the publishing agreement. At the hearing on the motion for class certification, the district judge probed the problems that might result, especially in cases where the authors had assigned all such rights to the publisher. After argument, the district judge asked both sides to comment on a class definition rescoped to include all owners of the exclusive right to reproduce a given work (Dkt. No. 199). Plaintiffs' response proposed further refinements, explaining how this could all work (Dkt. No. 203). There was no inkling class counsel was unwilling or unable to take on the work. The district court then certified one class. This class embraced any copyright owner of the exclusive right to reproduce any work meeting various criteria, a scope including authors and publishers.

In their motion for class certification, class counsel had sought to insinuate a third firm, Cowan DeBaets Abrahams & Sheppard LLP, by way of a footnote and a final signature block, labeled "Additional Counsel for the Class" (Dkt. No. 125 at 25 n.7, 27). That bid was rebuffed and only the Lieff and Susman firms were appointed (Dkt. No. 244 at 31). Cowan DeBaets now purports to have been co-counsel from the start of the action as to named plaintiffs. But it never entered an appearance in this action on behalf of named plaintiffs or anyone until the day before our first hearing on preliminary approval. And, that firm was never vetted or approved to serve the class or any part of the class.

After certification but just before settlement, in a so-called notice of "association" as well as in a motion to approve the class notice (also pre-settlement), class counsel sought to insinuate a fourth firm and a fifth firm, Edelson PC and Oppenheim & Zebrak LLP. These were labeled "Publishers' Coordination Counsel" (Dkt. Nos. 298, 317; Dkt. No. 319-2 FAQ 10). Those firms are said now to have received a "mandate" to serve the class from this filed notice (see Dkt. No. 505 [506-1] at 5 & n.2). A law firm cannot appoint itself class counsel by showing up. Nor can class counsel appoint someone else to do its work. But before the motion on class notice was even heard, it was overtaken by a broader proposal.

2

After a class settlement was announced, in the motion for preliminary approval of settlement and class notice, class counsel again tried to install the so-called "Publishers' Coordination Counsel" as well as to install so-called "Authors' Coordination Counsel," the latter comprising the earlier-rejected Cowan DeBaets and a sixth entrant, Fairmark Partners LLP (that is, also as "Authors' Coordination Counsel"). The Settlement Agreement proposed these law firms would gather contact information from industry stakeholders for the class list and, by way of a "Working Group," provide input on the draft claim form and the draft claims process that class counsel would propose to the Court later that month (Dkt. No. 363-3). The Settlement Agreement was signed by "Class Counsel" and — though this fact went unnoticed by the judge at the time — also by the so-called "Publishers' Coordination Counsel," Edelson and Oppenheim & Zebrak (*id.* at 37–38). The proposed long-form notice prepared to tell the class about a still broader role: *All six* of these law firms — Class Counsel, Publishers' Coordination Counsel, and Authors' Coordination Counsel — would be "*The Lawyers Representing You*" (Dkt. No. 363-13 Exh. B, FAQ 17).

We heard the motion. In light of the settlement proposal and notice insinuating a raft of other law firms into the case, the district judge was concerned there might have been a "settlement within a settlement," and indeed that there might be more side deals to come. So, just before the hearing, the judge ordered lawyers from these firms and other interlopers to appear in the courtroom (Dkt. No. 364). With those representatives present, the judge opened the hearing as follows:

> **THE COURT:** All right. Let's -- before I start pontificating -- and I have a few points I do want to make -- I'd like to hear what is going on behind the scenes. Maybe it's all for the good. But, you know, you are the class -- I have appointed two class [counsel] -- there will be not one penny paid to any lawyer except class counsel. So all these other lawyers that are out there hoping to get their fingers into the 1.5 -- not from me.
>
> You[, Susman,] are the class lawyer and Lieff Cabraser. And you have taken it upon yourself to draw in this army of allied people to help solve this problem. But don't -- they are not going to -- they get their money from somebody else, not from the [$]1.5 million -- billion. *So you have, again, exceeded your authority in hoping that they will be treated as class counsel.*

3

**[ATTORNEY JUSTIN NELSON, FROM SUSMAN GODFREY, FOR THE CLASS]:** Well, thank you –

**THE COURT:** That's speech number one. But speech number two is I'm worried that you are working out, behind the scenes, between publishers some kind of a deal that you want to force down the throat of authors or -- mainly the authors -- and say you got to take X percent, even though their own agreements give them 100 percent. If they did. Maybe they don't. Maybe they're silent. Who knows?

I would like for you to explain what is going on between the guilds, the publishers. What kind of deal are you trying to do behind the scenes?

(Sept. 8, 2025 Tr. 14–15 (emphasis added)). As for speech number one, the Court and class counsel spoke about that point further. Their colloquy ended with this:

**MR. NELSON:** ... We did think it was appropriate -- and I did hear what Your Honor just said with respect to fees. But we did think it was appropriate [to engage these other lawyers], once your Honor issued the class certification order, to make sure that *publishers, as well*, were in the tent. And I do hear you. And I know you'll probably jump down my throat by saying it. But I really would like the chance to revisit that at an appropriate point. *Because they have been beneficial to the entire class to make sure the entire class is represented.*

**THE COURT:** Right now, the answer is No. But in the future, I could -- I can't say no to reconsidering in the future. But every single one of these add-on lawyers and organizations is proceeding at their risk. And maybe they get paid by the author. *Maybe they get paid by the publisher.* But to ask that they're going to get paid through the [$]1.5 billion directly by a court approved -- no, not yet, and probably never. But I can't say "never"; I'll just say "probably never."

(*id.* at 17–18 (emphasis added)). Then, as for the second big subject raised by the judge, about the role of these lawyers and non-party organizations in designing claim forms and the claims process, that discussion ended with the following:

**MR. NELSON:** Well, because there are -- there are -- what we have tried to envision, going back to your first two points, is to try to facilitate the claims process by saying that, for example, there are norms in terms of -- and baselines -- in terms of how many contracts are structured. And can we get to a way so that we can say, here is how the claim is going to be structured, and, you know, here is what the publisher and authors will be.

4

I don't know the -- just to be clear, I don't know the results of that. I know that process has started in terms of having some of those discussions. *But what we are trying to do is trying to facilitate it so that both authors and publishers can get paid and can actually make claims.* We don't want to make something that is so difficult that no one is going to make a claim.

THE COURT: You're the class counsel and you represent both authors and publishers.

MR. NELSON: Yes, sir.

THE COURT: You're the one that would normally do this. . . .

(*id.* at 32–33 (emphasis added)). Preliminary approval was not yet granted; a second hearing was set.

Before the next hearing, the district court reiterated the concern that there had been or would be "a global settlement within a class settlement." The Court asked whether "anyone [was] compensating any law firm or lawyer involved for work in this action (other than for defense) or d[id] anyone expect to do so? Explain fully" (Dkt. No. 383 Q. 26). Class counsel answered: "No. Class Counsel has not received and is not receiving any compensation in this matter except as may be awarded by this Court through a fee petition at the appropriate time. The same applies to all lawyers who have appeared on the Plaintiffs' side, including the Publishers' and Authors' Coordination Counsel and Prof. Samuel Issacharoff. The PCC has *no direct or indirect compensation* from individual publishers, the Association of American Publishers, or anyone else *in connection with this matter*" (Dkt. No. 418 Q. 26 (emphasis added)). This explanation did not state that class counsel in this matter would increase its fee request from the class members' fund or direct any of its fee award to compensate unapproved counsel, that it would propose to do so on a percentage-split basis, nor that the amount to be diverted would mean that unapproved counsel would achieve from class members an even larger multiple against billables than would approved counsel. Also attested at this time, class counsel said that it had received input from "the Authors Guild, the American Association of Publishers ('AAP'), The Textbook and Academic Authors Association ('TAA'), *as well as counsel for each of these groups*," and that none of these groups "[had] received or w[ould] receive any compensation" (Dkt. No. 400 ¶ 4 (emphasis added); *see id.* ¶ 8).

5

Further on this point, the district court asked counsel to "explain the exact and full role of the Authors Guild, the Association of American Publishers, and each of the new law firms" (Dkt. No. 383 Q. 25). Class counsel responded as follows:

> Class Counsel's goal was to create a fair, equitable, and efficient distribution of the settlement that respects contractual arrangements. Accordingly, Class Counsel convened a Working Group of key stakeholders, including the Authors Guild in conjunction with other authors groups (with Authors' Coordination Counsel) and Association of American Publishers (with Publishers' Coordination Counsel).
>
> [Two paragraphs then described this working group's efforts and its resulting proposal. Class counsel continued as follows:]
>
> The exact and full role of Publishers Coordination Counsel and the Association of American Publishers and Authors Coordination Counsel and the Authors Guild is addressed in Plaintiffs' brief filed yesterday. Dkt. 401 at 5-9 (addressing publishers' contributions); *id.* at 9-11 (addressing authors' role and contributions); *see also* Dkt. 395 (Declaration of Not-For-Profit Author Organizations); Dkt. 396 (Declaration of Maria A. Pallante of the AAP); Dkt. 397 (Declaration of Nancy E. Wolff); Dkt. 398 (Declaration of Publishers Coordination Counsel Jay Edelson and Matthew J. Oppenheim).

(Dkt. No. 418 Q. 25). The cited brief chronicled the role that the so-called coordinators "ha[d] played," which was couched as the near-complete process of gathering contact information and providing input from certain stakeholders to class counsel at the outset, not as an ongoing role broadcasting information to the class or even part of it with the Court's approval (*e.g.*, Dkt. No. 401 at i, 5–9, 9–11). The "exact and full role" cited *nothing* from class counsel's plan for communicating with the class (Dkt. No. 399). (The plan itself noted so-called coordinating counsel but only as to the near-complete task of ferrying contact information from some publishers.) It cited *nothing* from class counsel's proposed plan for distribution and allocation (Dkt. No. 401-1). It cited *nothing* from the proposed order to reappoint the two class counsel: Lieff Cabraser and Susman Godfrey (Dkt. No. 417).

Recall that the proposed long-form notice had included all six firms as *"The Lawyers Representing You,"* broken out by Class Counsel, Authors' Coordination Counsel, and Publishers' Coordination Counsel (Dkt. No. 363-13 Exh. B, FAQ 17). This addition did not survive the judge's objections at the first hearing or the inquiry above into the "exact and full

6

role" of these law firms.  All lawyers but class counsel were struck in the next proposed notice (*e.g.*, Dkt. No. 406 FAQ 34).

Only class counsel, the settlement administrator, and the class representatives were ever court-approved to represent or to communicate with the class as a whole.  No one else was ever given the Court's imprimatur to represent or to communicate with even part of the class.  No court-approved notice to the class presented otherwise.  Instead, preliminary approval and the class notices confirmed that only two firms were approved to serve the class:  Lieff and Susman (Dkt. No. 437 at 14; *e.g.*, Dkt. No. 490 at 5–6).  Those firms never proposed a fee splitting scheme, and none was ever even preliminarily approved.

### 2. THE INSTANT PETITIONS FOR FEES BY FIRMS OTHER THAN CLASS COUNSEL.

Now, *never* having brought a formal motion to serve as class counsel (it would have been rejected), and *repeatedly* having been rebuffed in attempts to serve as class counsel simply by asserting it as if it were an accomplished fact (it never was a fact that they were "*The Lawyers Representing You*"), three of these additional firms ask for a bonanza as if they had been class counsel all along.  (A fourth firm, Fairmark Partners, a so-called "Authors' Coordination Counsel," seeks no compensation disclosed in the petition for attorney's fees.)  Another of the so-called "associat[ing]" lawyers, New York University School of Law Professor Samuel Issacharoff, does seek payment for fees, but apparently no multiplier himself (despite class counsel using his billables for their own lodestar calculation).  The three other firms — Cowan DeBaets, Edelson, and Oppenheim & Zebrak — propose receiving huge multipliers.  At bottom, class counsel seeks as its fee award 15 percent of the $1.5 billion (so $225 million).  The interlopers seek a third of that again, or 5 percent of the $1.5 billion (so $75 million).

In the district court's view, most of the work now described as done by the three additional firms could have been done (and *should* have been done) by class counsel, if it was done at all (we were told that class counsel did not do it nor pay for it).  The same is true as well for the future work described.

United States District Court
Northern District of California

The district judge did not vet these law firms for conflicts. The district judge tried to learn about the roles of these firms but received barebones answers even about past work. This inquiry did not pretend to get to the bottom of all past representations and payments, parallel representations and payments, or ongoing or potential conflicts. We did not inquire, for instance, into deals predating the settlement. Even now, it remains unclear on whose behalf, exactly, Edelson and Oppenheim & Zebrak signed the Settlement Agreement.

The district judge, moreover, did not have a chance to prevent duplication of effort by overlapping law firms. Nor did the judge have an opportunity to evaluate the extent to which these law firms would add value for the class beyond that added by class counsel. Compensating these additional firms will, in effect, lead to a sweeter deal for some class members than for the rest. For example, if certain publishers in the class are represented by one of the three firms, then those publishers themselves would normally pay for such work. Allowing additional compensation from the class fund will give those publishers a premium compared to all other class members.

Also, we do not yet know whether "Publishers' Coordination Counsel" will share any part of their bonanza with one or more publishers so as to give those publishers a premium to not opt out. This, too, would come at the expense of the whole class. The Court earlier warned against even "com[ing] close to that scenario," meaning paying extra to some class members to persuade them to stay in the class rather than opt out (and thereby avoid triggering Anthropic's right to abort the settlement if a certain percentage of exclusions is exceeded) (*see* Sept. 28, 2025 Tr. 8).

Another problem goes to notice. The class notice alerted class members to the lawyers appointed to represent them and to the fact that their appointed lawyers would seek large amounts from the settlement fund and that this would reduce the recovery by class members. The class notice, however, never alerted class members that still other lawyers would come out of the woodwork to seek a *third* again whatever their class counsel would seek for its work — that is, another $75 million for interlopers on top of the $225 million for class counsel — further reducing the class's recovery.

8

Finally, the recent fees and costs petition describes how class counsel and the three additional firms have agreed to split all fees awarded in given percentages to each (*see* Dkt. No. 505 [506-1] at 7). The undersigned would not permit class counsel to inflate and/or to divert any part of its court-approved fee award to cover work done by lawyers not court-approved to represent the class. There is a high risk that class counsel has invented or *will* invent makework for the three firms to "justify" their bonanza. The judge sees a genuine danger that class counsel has promised these firms amounts far in excess of their billable rates in exchange for using their influence with publishers (in one case) and with authors (in another) to support the settlement rather than opt out (reducing the risk that Anthropic would exercise its right to abort the settlement if more than a certain percentage opts out), all at the expense of the class.

This memorandum should not be read as merely opposing a multiplier for these three firms. It should be read as opposing any award at all for these firms, including any award from any fees paid to class counsel. And, it should be read as questioning whether class counsel performed its work the right way (the $225 million part) if it let unapproved firms do so much.

Even assuming the best of class counsel, the $225 million (about 15%) would bust all belief in a gigafund action where "the increase in recovery is [overwhelming]ly a factor of the size of the class and has [vanishing] relationship to the efforts of counsel." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998)).

And, class counsel's petition inflames the doubts about it above. After defining "Class Counsel" correctly, it goes on to mix, match, and mislead. It requests a "20% fee to Class Counsel" at "a lodestar multiplier of 9.32[x] based on the current and future time expenditures of Class Counsel" (Dkt. No. 505 [506-1] at 9). Only by reading between the lines, diving into cited declarations, and doing the math do we discover that the top-line request masks that only a 15% fee is requested to *class counsel* at a multiplier of about 8x based on *class counsel*'s purported past and future billings, while a 5% fee is requested to others (not approved by the Court) at multipliers of about 11x, 14x, or 96x based only on theirs. Thus, the "20% fee to

9

Class Counsel" overlooks the chasm between class counsel and unapproved counsel including Edelson, Oppenheim & Zebrak, and Cowan DeBaets, whom the petition at least names. But the petition does not even name all counsel who would thereby get paid. *Even deeper in the declarations*, we discover also for the first time that "Class Counsel [now] intends to share $137,431.40 from any fee awarded" with Archstone Law Group and Slarskey LLC for their work done when "[t]he TAA had retained them" (Dkt. No. 505-3 ¶ 45; *see* Dkt. No. 400 ¶ 4).

The successor judge might consider directing Special Master for Discovery Harold McElhinny (or newly appointing another qualified lawyer independent of and not proposed by counsel) to investigate and report on all aspects of these fee petitions.

## ORDER

**1.** All law firms who have filed fee or cost petitions in this action (or on whose behalf one has been filed) shall file a declaration setting forth the full extent to which such firm has (or has not) made any agreement(s) to share any portion(s) of any fee award in this class action or in any other class action(s) (putative or certified) involving any party (or class member) herein, and stating as to each such agreement its date, terms, the extent to which it is verbal and the extent to which it is in writing (or in an email or text or other message), and the parties and the names of all persons who made the agreement.

**2.** Likewise, all law firms who have filed fee petitions herein (or on whose behalf one has been filed) shall file a declaration setting forth the full extent to which such firm has made any proposal(s) to anyone — and the full extent to which anyone has made any proposal(s) to such firm — to share any portion(s) of any fee award in this class action or in any other class action(s) (putative or certified) involving any party (or class member) herein, and stating as to each such proposal its date, proposed terms (including as suggested or implied), the extent to which it was verbal and the extent to which it was in writing (or in an email or text or other message), and the parties and the names of all persons who made or received the proposal.

**3.** All law firms who have filed fee petitions herein (or on whose behalf one has been filed) also shall file a declaration setting forth the full extent to which any arrangement has

been made or proposed by which any class member would receive a sweeter recovery than other class members.

**4.** All emails, messages, and written materials relating to any of the above shall be preserved for future potential discovery.

The declarations (in Paragraphs 1, 2, and 3) should be filed on the public docket, not under seal, for class members are entitled to know the full extent to which their counsel have engaged in fee sharing before class members have to decide whether to object and whether to opt out. They shall be filed **BY NOON ON DECEMBER 30, 2025**. This preservation order (Paragraph 4) is in addition to the prior one (Dkt. No. 488), and takes effect **IMMEDIATELY**.

\*          \*          \*

Additionally, the undersigned judge recommends to the successor judge that he or she extend the dates for objections and for opt-outs specifically for class members to be made aware of the problems identified in this memorandum (and any revealed by declarations and discovery) so that the class members can consider these issues in full before having to decide whether to object and whether to opt out.

**IT IS SO ORDERED.**

Dated: December 23, 2025.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

*Exhibit 3*
*Bishop Objection 630*

Lea Bishop
3627 N. Pennsylvania St.
Indianapolis, IN 46205
(203) 535-2560
lea.bishop@gmail.com
*Pro Se*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREA BARTZ, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED<br><br>PLAINTIFF,<br><br>VS.<br><br>ANTHROPIC, PBC<br><br>DEFENDANT. | CASE NO.: 3:24-CV-05417-AMO<br><br>**OBJECTION TO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE: APRIL 23, 2026 TIME: 2:00 PM<br><br>JUDGE: HON. ARACELI MARTÍNEZ-OLGUÍN |

This case was brought by authors against Anthropic for copying their books without permission. Anthropic agreed to pay $1.5 billion to compensate book authors. That money belongs to authors. Nonetheless, before this Court is a proposed Plan of allocation and distribution that would divert most of the Class Funds to publishers.

Before this Court grants final approval to that plan, the objector respectfully asks the Court to consider three things that the Motion for Final Approval did not mention: how Judge Alsup's views on the fairness of this settlement soured between August and December 2025, whether publishers have any legal right to share in authors' settlement proceeds, and whether authors' interests would benefit from independent representation.

## I.    SUMMARY OF ARGUMENT

Publishers did not file this case because these damages are not theirs to recover. After discovery, they inserted themselves and corrupted the settlement process by entering into an undisclosed fee-sharing arrangement with Class Counsel. From that position, publishers drafted a distribution plan that systematically disadvantages authors, without ever proving they belong in the Class.

Outgoing Judge Alsup smelled that the settlement was unfair to authors. When he uncovered the fee-sharing scheme in December 2025, he condemned it, ordered preservation of evidence, and recommended that his successor authorize an independent investigation before approving anything. Dkt. No. 515. Class Counsel's Motions for Final Approval and Fees significantly mislead incoming Judge Martínez-Olguín as to her predecessor's views by selectively quoting favorable early statements while concealing his recent findings. Dkt. Nos. 619-623

The undersigned does NOT ask the Court to reject the $1.5 billion settlement—only to ensure it reaches its rightful recipients. Authors should keep what is lawfully theirs. Toward that end, the objector respectfully requests:

1.  Class Counsel be temporarily suspended from representing authors, pending the outcome of the ethics investigation that Judge Alsup recommended in December 2025, and authors be provided with court-appointed, uncompromised counsel.

2.  Leave of the Court to brief two critical issues of copyright law: (1) whether foreign, unregistered, and/or pre-1970s authors have been unlawfully excluded, and (2) whether publishers are legally entitled to any portion of authors' recovery.

Resolving those two questions will ascertain Class Membership with the certainty that Rule 23 requires. In the meantime, the judge may withhold final approval. Ultimately, the properly identified Class Members—with assistance of uncompromised counsel—can stipulate with Anthropic to a revised distribution plan the Court can approve with confidence.

## II. THE MOTION MISREPRESENTS JUDGE ALSUP'S VIEWS

By December 2025, Judge Alsup's views on settlement fairness and the adequacy of Class Counsel had soured. The Court is respectfully directed to Dkt. 515, Judge Alsup's Order on Fees and Related Issues, entered December 23, 2025. That order is not cited or described anywhere in the Motion for Final Approval. It contains findings and recommendations that this Court should consider before making the adequacy of representation finding that Rule 23(e)(2) requires.

Among other things, Dkt. 515 records Judge Alsup's findings about an undisclosed fee-splitting arrangement between class counsel and publisher attorneys; his concern that the arrangement was concealed from the Court and from class members; his concern that the arrangement may have been used to induce settlement terms that disadvantaged authors; and his recommendation that his successor authorize an independent investigation before approving anything. A concise, targeted summary is provided in Dkt. No. 602.

Class Counsel's omission of this record from its January 2026 Status Update and March 2026 Motion to Approve is not an oversight. It is an affirmative misrepresentation of the record to mislead the incoming judge. Class Members also have not received notice—a context in which a relatively low number of fairness objections should not be taken as an indicator of fairness.

## III. THE PROPOSED PLAN LETS PUBLISHERS CASH THE AUTHORS' CHECKS

Judge Alsup put his finger on the central problem:

*"I'm worried that you are working out, behind the scenes, between publishers some kind of a deal that you want to force down the throat of authors [...] and say you got to take X percent, even though their own agreements give them 100 percent. I would like for you to explain what is going on between the guilds, the publishers. What kind of deal are you trying to do behind the scenes?"*

WHA Order on Fees, December 23, 2025, Dkt. No. 515 at 4.

Case No. 3:24-cv-05417-AMO  OBJECTION TO MOTION FOR FINAL APPROVAL

Judge Alsup was correct. Publishers, Class Counsel, and the Authors Guild (Class Counsel's client in related litigation) have worked out a deal behind the scenes to let publishers take 50% or more of $1.5 billion award, even though copyright law and book contracts entitle authors to 100%. The undersigned seeks leave to brief this specific issue—the ownership sleight of hand by publishers who are not in fact entitled to share in authors' awards—for the Court.

## IV. RELATED OBJECTIONS THE MOTION ASKS THIS COURT TO OVERRULE

The Motion for Final Approval, Dkt. No. 619, requests the Court to specifically overrule several fairness objections: Dkts. 598, 599, 600, 601, and 602. These fairness objections were submitted as instructed by the Class Notice—simple letter format, posted by February 9, 2026. They remain sealed. The Motion asks the Court to overrule objections the public cannot view, and which the Motion does not fully characterize.

The objector's own objection is Dkt. 602. It was submitted by mail on February 9, 2026, as directed by the Class Notice, and sealed by the Clerk without her request, without a motion, and without a judicial order. The objector is contemporaneously filing a motion to unseal Dkt. No. 602 and the other sealed objections. The Motion for Final Approval mischaracterizes and thereby fails to refute the objections actually set forth in sealed Dkt. No. 602. These include:

**1. Objection based on inadequate representation.**

The Motion simply did not disclose to the Court that Dkt. No. 602 raised the issue, as established by Judge Alsup, of suspect "coordination" between publishers and Class Counsel, to the detriment of the authors Class Counsel was appointed to represent.

**2. A one-sided distribution plan and unnecessary hurdles.**

What reason is there not to simply mail checks to authors at the same addresses to which the Class Notice was sent? The answer: the claims-made process gives publishers an opening to

obtain author agreement to share the award although the law does not require it. A claims-made process may deter over 90% of authors from filing.

Even if 60% of works have been claimed, it may be the case that 55% were claimed by publishers and only 5% by authors. The court may wish to consider scrutinizing data on the percentage of authors that have submitted claims. It is particularly concerning that the distribution plan fails to dedicate unclaimed amounts to escheating or charity. Instead, amounts not claimed by authors can be collected by publishers. This creates a financial incentive for publishers to place burdens on author claims.

**3. Objection based on subjection of authors to arbitration without assistance**

The Motion says that "Two Objections challenge the Plan of Allocation and Distribution. See Dkts. 425 (Ruden), 602 (Bishop). They argue that the dispute resolution process is inadequate for failing to include authors' agents and that the appointment of Mr. Cheng as Special Master will favor publishers." This mischaracterizes the objection.

The objection is that the Plan improperly establishes a presumption that publishers are entitled to share in authors' recovery. To keep any more than half of the legally appropriate award for their book, the author must continue into a new round of post-settlement legal conflict, against their own publisher. In that arbitration, the authors will have none of the advantages of class-action litigation. Authors' claims against publishers will not be adjudicated by an Article III judge. Class Counsel will have washed their hands of the author as client—after requesting $187.5 million attorney fee. See Dkt. 620, 12.5% of $1.5 billion. The publisher will have an attorney but the author will not. The arbitration will also conceal from the AI industry that they need to negotiate not with publishers but only with authors.

**4. Objection based on illegal exclusion of foreign authors**

At least 17 parties registered the objection that the class as certified inappropriately imposes a U.S. registration requirement, unlawfully prejudicing foreign-published works. The

Motion for final approval identifies these, at page 19, footnote 10, to include: Dkts. 438 (Barrett), 540 (Paolinelli), 541 (Tombs), 546 (Johnston), 551 (Werner), 552 (Miller), 585 (Ryker), 565 (Glenn), 602 (Bishop), 603 (Newton), 604 (Tascabili), 605 (Editrice), 607 (Boringhieri), 608 (Salani Editore), 610 (Longanesi), 611 (Vallardi Editore), 612 (Garzanti). The number of fairness objections from foreign rightsholders is notable when you consider that excluded foreign authors never received any notice.

The Class Notice, FAQ 56 acknowledges the sweeping impact of the unnoticed exclusion of 2.5 million non-English works:

> **56. Why aren't all 7 million works that Anthropic downloaded from LibGen and PiLiMi on the Works List?** ...[W]orks not validly registered with the U.S. Copyright Office are not eligible to be in the Works List. Many of the works Anthropic downloaded were not registered. For example, non-English works have very low registration rates. Of the approximately 4 million unique works that Anthropic downloaded, around 2.5 million were written in languages other than English. Most of those 2.5 million non-English works were unregistered.

In light of the scale of the problem, Class Counsel engaged seriously with this objection—but unpersuasively.

Class Counsel first argues that because foreign authors were excluded from the class, they lack standing to object to their exclusion from the class. Pages 19-20. This is a circular argument. The judicial clerks' due diligence on the legal authority cited there may produce a more nuanced view. Rule 23 requires Courts to hear objections from Class Members—it does not compel them to ignore concerns raised by injured parties who were scoped out of recovery. If a class action settlement to compensate workers included Honduran employees but purported to exclude Nicaraguan employees, no court would say that the Nicaraguan subclass's objection to their exclusion could not be heard because only Hondurans were members of the class.

More fundamentally, Class Counsel fails to acknowledge that the proposed exclusion of foreign authors is not just unfair, it is contrary to statute. Congress did not provide Judge Alsup with the discretion to impose a U.S. registration requirement or not. The Copyright Act was

-6-

specifically modified in the 1970s to waive that barrier to foreign claims, in exchange for US authors receiving the same equitable treatment abroad. That point is made within the undersigned's sealed objection, Dkt. No. 602. Other objectors may also have noted it in still-unsealed objections.

## V. SUMMARY AND RELIEF REQUESTED

Stepping back to view the forest for the trees—authors deserve to benefit from Anthropic's record $1.5 Billion offer to settle infringement claims. The problem is the distribution plan. That distribution plan can be criticized as unfair to authors on any number of grounds. It is systematically unfair to authors—because the publishers designed it that way, and they did so with assistance from Class Counsel. Exclusion of most authors lets the biggest publishers take more. The claims-made requirement lets the biggest publishers take even more. The arbitration mechanism lets the biggest publishers take even more. So do the other fairness problems identified in Dkt. No. 602. This is not adequate representation.

The path to a fair settlement lies in removing the problematic actors from the situation. Authors deserve independent counsel. The Court can then resolve whether Publishers are actually Class Members or not. If the conflicts of interest are removed, Anthropic and the proper Class Members can stipulate to correct the distribution plan.

For the reasons stated above, the objector respectfully requests the relief set forth in the Summary of Argument and contemporaneously filed Motion to Unseal and Request to Be Heard.

The undersigned certifies that any content generated using AI software tools has been reviewed, edited, and approved by the undersigned, who takes full responsibility for this filing's contents.

DATED: April 2, 2026                           SIGNATURE:

By: Lea Victoria Bishop, *pro se*

## DECLARATION OF LEA VICTORIA BISHOP

I, Lea Victoria Bishop, declare as follows:

I am the objector whose fairness objection is docketed at Dkt. 602. I submitted that objection by mail on February 9, 2026, as directed by the Class Notice. I am a tenured professor of copyright law, a graduate of Yale Law School, a licensed attorney, a member of the Supreme Court bar, a former United Nations Special Consultant on copyright and human rights, and the author of *Ending Book Hunger* (Yale University Press, 2020).

I am the author or editor of four books I believe were downloaded by Anthropic and improperly excluded from the Works List. My anticipated recovery from this settlement is between $0 and $12,000.My potential recovery is small in comparison to the value of my own time—which I have invested with the goal of protecting millions of other authors. I have not received and will not accept any payment in connection with this objection, and I will report any hint of such an offer to the Court immediately.

I did not seek a stipulation from class counsel because the relief sought is not a matter on which class counsel's agreement is required or appropriate. Civil L.R. 7-11(a).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: April 2, 2026

SIGNATURE:

By: Lea Victoria Bishop, *pro se*

*Exhibit 4. - The Footnote 632n.1*

RECEIVED

APR 0 3 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*not
signed*

Lea Bishop
3627 N. Pennsylvania St.
Indianapolis, IN 46205
(203) 535-2560
lea.bishop@gmail.com
*Pro Se*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

ANDREA BARTZ and KIRK WALLACE
JOHNSON, individually, and ANDREA
BARTZ, INC., CHARLES GRAEBER, and MJ
+ KJ, INC., individually and as
representatives of the class,

    Plaintiffs,

v.

ANTHROPIC PBC,

    Defendant.

CASE No.: 3:24-cv-05417-AMO

REQUEST TO BE HEARD AT
FAIRNESS HEARING AND FOR
LEAVE TO USE DEMONSTRATIVES
AND SUPPORTING DECLARATION
OF PROFESSOR LEA VICTORIA
BISHOP

Professor Lea Victoria Bishop respectfully requests:

**1. Leave to be heard at the April 23, 2026 fairness hearing.**

Professor Bishop filed a timely objection to the proposed class action settlement (Dkt. 602) and is contemporaneously filing a Response to the Motion for Final Approval. She intends to appear at the hearing at her own expense and requests fifteen (15) minutes of argument time to address the Court on the issues raised therein, including:

1. Judge Alsup's December 2025 condemnation of "coordination" between Class Counsel and publishers; his order to the attorneys to preserve evidence; and his recommendation that his successor judge consider authorizing an independent investigation;

-1-

2. Judge Alsup's expressed concerns that the allocation might be unfair to authors; including the possibility that publishers have no legal right to share in author proceeds; and a copyright expert's evaluation of the legal merits of those concerns;

3. Other incompatibilities with the Copyright Act that jeopardize the proposed Settlement's ability to withstand appellate scrutiny; and a clear path forward by which the Court can correct those deficiencies before final approval.

**2. Leave to use demonstratives at the April 23, 2026 fairness hearing.**

Pursuant to the Standing Order of Judge Araceli Martínez-Olguín, at least 14 days prior to the hearing, Professor Bishop hereby requests leave to utilize visual demonstratives to assist the Court in immediately understanding issues.

She will provide copies of the visual demonstratives to the Court and to all parties no later than April 16, 2026.

She respectfully requests that the Court confirm the availability of a projector in Courtroom 10 for the April 23 hearing, or advise her of the appropriate equipment to arrange independently.

Pursuant to the Court's standing orders, the undersigned certifies that any content generated with AI software tools has been reviewed, edited, and approved by the undersigned, who takes full responsibility for the contents of this filing.

DATED: April 2, 2026

Signature:

*Lea V. Bishop*

By: Lea Victoria Bishop, *pro se*

-2-

Case No. 3:24-cv-05417-AMO    REQUEST TO BE HEARD AND LEAVE TO USE DEMONSTRATIVES

## NOTICE OF NON-OPPOSITION TO ADMINISTRATIVE MOTION TO UNSEAL (DKT. 627) AND OPPOSITION TO REQUEST TO BE HEARD AT THE FINAL APPROVAL HEARING (DKT. 629)

Movant Victoria Lee Bishop is not a party to this Action. She is also not a member of the class. She requests two things: (1) that all objections to and comments on the Settlement be unsealed (Dkt. 627); and (2) an opportunity to present argument at the final fairness hearing (Dkt. 629). Class Counsel do not oppose Movant Bishop's first request but do oppose the second.

As to the first request, Class Counsel agree that comments to the Settlement, including objections, should be unsealed. That is contemplated in the proposed order regarding final approval. *See* Dkt. 621 (Proposed Order re Final Approval) at 10 (seeking unsealing). No objector or commenter has requested that their objection be or remain sealed. The following objections and comments remain under seal: Dkt. Nos. 425; 539; 541–542; 544–546; 566–568; 584; 596; 598–602, 604–611. Class Counsel do not object to the immediate unsealing of these filings.

As for Movant Bishop's second request, the Court should permit any ***class member*** who has submitted a timely objection to address the Court at the final fairness hearing, which presently is scheduled for April 23, 2026. Movant Bishop, however, is ***not*** a class member; by her own admission, she is neither a legal nor a beneficial owner of any class work. *See* Dkt. 602 at 7 ("My works are not listed at the Settlement Website."). Because she is not a member of the class, none of Movant Bishop's rights will be affected by the settlement. She therefore "ha[s] no standing to object to the settlement." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2020 WL 1873554, at *4 (N.D. Cal. Mar. 11, 2020) (quoting *San Francisco NAACP v. San Francisco Unified School Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999)). For this reason, Movant Bishop's request to present oral argument at the final fairness hearing should be denied.

Case No. 3:24-cv-05417                                  - 1 -

Justin A. Nelson (*pro hac vice*)
Alejandra C. Salinas (*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
Michael Adamson (SBN 321754)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
rnath@susmangodfrey.com
madamson@susmangodfrey.com

Samir Doshi (*pro hac vice*)
J. Craig Smyser (*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 51st Floor,
New York, NY 10001-8602
Telephone: (212) 336-8330
sdoshi@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101-2683
Telephone: (206) 516-3880
jconnors@susmangodfrey.com

*Co-Lead Class Counsel*

Rachel Geman (*pro hac vice*)
Jacob S. Miller (*pro hac vice*)
Danna Z. Elmasry (*pro hac vice*)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
jmiller@lchb.com
delmasry@lchb.com

Elizabeth J. Cabraser (SBN 083151)
Daniel M. Hutchinson (SBN 239458)
Jallé H. Dafa (SBN 290637)
Amelia Haselkorn (SBN 339633)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
jdafa@lchb.com
ahaselkorn@lchb.com

Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
222 Second Ave., #1640
Nashville, TN 37201-2375
Telephone: (615) 313-9000
bsugar@lchb.com

*Co-Lead Class Counsel*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case No.: 3:24-cv-05417-AMO <br><br> **CLASS COUNSEL'S NOTICE OF NON-OPPOSITION TO ADMINISTRATIVE MOTION TO UNSEAL (DKT. 627), AND OPPOSITION TO REQUEST TO BE HEARD AT FINAL APPROVAL HEARING (DKT. 629)** <br><br> Judge: Hon. Araceli Martínez-Olguín |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREA BARTZ, et al.,

Plaintiffs,

v.

ANTHROPIC PBC,

Defendant.

Case No. 24-cv-05417-AMO

**ORDER**

This order addresses certain pending motions, matters related to the upcoming final approval hearing, and one miscellaneous issue.

Objector Lea Victoria Bishop filed a motion to unseal her objection and those of other objectors on April 2, 2026.[1]  Dkt. No. 627.  Class Counsel does not object to the request.  Dkt. No. 631.  Accordingly, the motion to unseal is **GRANTED**.  The Clerk is directed to unseal the following correspondence from objectors:  Dkt. Nos. 425, 539-546, 549-552, 564-569, 584-585, 588-589, 593-612.

The Court has located additional objections that were received earlier this year but the docketing of which has been delayed.  Those objections are currently being processed for filing.  To allow time for that processing, the motion for final approval and motion for fees is hereby continued to May 14, 2026 at 2:00 p.m.[2]  Class members who have timely objected and wish to be

---

[1] Bishop also requests 15 minutes of argument time at the final approval hearing and requests to use demonstratives.  Dkt. No. 629.  These requests are **DENIED** because, as Class Counsel explains, Bishop is not a member of the class and therefore lacks standing to object to the settlement.  See Dkt. No. 631.

[2] Objector Stacy Lynn Werner filed a request to continue the final approval hearing on March 12, 2026.  Dkt. No. 618.  That request is now resolved given the new hearing date set forth above.

heard may join the hearing via Zoom using the following log-in information:

- Link: https://cand-uscourts.zoomgov.com/j/1603329440?pwd=OW1ZZWlZcklySHBMcStTVDZvZDJoUT09
- Webinar ID: 160 332 9440
- Password: 426303

Participants are advised to log-in early to avoid any capacity or connectivity issues.

To the extent Class Counsel have received objections that have not been docketed, Class Counsel **SHALL FILE** those objections on the public docket by no later than April 10, 2026. By no later than April 30, 2026, Class Counsel also **SHALL FILE** a revised proposed order addressing all additional objections, with a Word version emailed to amopo@cand.uscourts.gov. Class Counsel shall include a redline to its prior proposed order.

Finally, the Court notes that Anthropic filed a notice of intent to file an administrative motion to consider whether cases should be related. Dkt. No. 625. Anthropic is on notice that while it is free to file its motion, the Court is unlikely to relate the cases listed in its notice.

Class Counsel **SHALL** serve a copy of this order on Werner and Bishop and file a certificate of service by no later than April 10, 2026.

**IT IS SO ORDERED.**

Dated: April 8, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

2

Exhibit S
RPO

percentage split determined by contracts or publishing agreements. *Id.* ¶ 4. If any funds remain in the Settlement Fund after all Valid Claims are paid, the Parties anticipate a redistribution of the remaining funds to Settlement Class Members unless it is economically infeasible to do so. Subject to Court approval, any final balance will be directed in *cy pres*.

Should any disputes arise among valid claimants for a given Work, the Special Master will make a reasonable determination based on the evidence before him, for any disputes submitted to the Special Master that cannot be resolved by mutual agreement with the assistance of the Settlement Administrator. *See ~~Id~~id.* ¶¶ 3(d), 4; Dkt. 501 (appointing Theodore K. Cheng as Special Master). All submissions made to the Special Master in connection with any dispute resolution process—including publishing agreements—shall remain confidential and under seal.

## C.    Releases

Upon the Effective Date, the Parties shall have, fully and irrevocably released and forever discharged one another from any and all Released Claims as to the Works on the Works List. Settlement Agreement ¶¶ 1.29, 3.1, 6.2.g. Accordingly, the Settlement shall terminate the Action. *See id.* ¶ 6.2(f). The Release, however, shall not include any claims related to the enforcement of the Settlement or Protective Order (Dkt. 63). The Release does not implicate any Objections seeking to add Works to the Works List, which were overruled above. As the Court earlier found, "if a work is not on the Works List, then a copyright owner of the right to reproduce that work is not in the class (unless as an owner with respect to another work that is on the list)." *Bartz*, 2025 WL 2961371, at *2 (emphasis removed).

## D.    Objections to the Settlement

The Court overrules the Objections to the Settlement. *See* Dkts. 425, 438–39, 539/540, 541–46, 549/568, 550–52, 564–66, 571–72, 584/593, 585, 588, ~~589~~ 89, 594–95, 596/606, 597–~~605~~601, 602/630, 603–05, 607–12~~,~~, 630, 635–642, 645, 646-3. The Court addresses the Objections by category below~~,~~, and further holds that any putative Objection filed by a non-class member is stricken because non-class members "lack[] standing to object to the settlement." Dkt. 632 at 1 n.1; *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2020 WL 1873554, at *4 (N.D. Cal. Mar.

[PROPOSED] ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

11, 2020).[1]

### 1.    Notice

The Objections challenging the reach, content, and duration of the Notice Plan are overruled. *See* Dkts. 551 (Werner), 571 (Hampton), 572 (Chakanga), 599 (Story).

As to reach, at least 99.5 percent of potential Class Members were sent notice not returned as undeliverable—well-above the 70 percent notice rate that the Federal Judicial Center considers reasonable. JND Decl. ¶ 79; Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010). The Settlement Administrator sent direct notice to 506,194 potential Class Members associated with 99.5 percent of Works on the Works List. JND Decl. ¶ 79. Within the 56-day direct notice period,[2] JND disseminated notice through direct mail, email, reminder postcards and emails, print and digital press releases, and a media campaign garnering over 105.4 million impressions via social media and paid search. *Id.* ¶¶ 52, 59, 70, 75.

As to content, the Court-approved Notice expressly stated that statutory damages could range from $200 to $150,000 per Work, and gave "equal dignity" to the options of filing a claim and opting out. *See* Class Notice at https://www.anthropiccopyrightsettlement.com/documents ; *Bartz*, 2025 WL 2961371, at *2; Dkt. 490 at 1–2; Dkt. 495 at 4. Further, no requirement exists that the Notice explain how to e-file with the Court, and many non-lawyers successfully lodged Objections.

As to duration, the two Objections that argue that the Notice period was too short are overruled. *See* Dkts. 571 (Hampton), 572 (Chakanga). The 56-day ~~Notice~~ direct notice period exceeded the 35-day period specified in this District's Procedural Guidance for Class Action Settlements.

### 2.    Works List and Class Definition

The putative Objections and comments requesting that the Court expand the Class definition and Works List are overruled, and, in many cases, stricken. *See* Dkts. 438 (Barrett), 540 (Paolinelli),

---

[1] The Court refers to the list of Objections and comments filed by Class Counsel at Dkt. 646-4.

[2] Class Members originally had 45 days from the Notice End Date to the deadline to exclude themselves from or object to the Settlement. *See* Plan of Allocation and Distribution. However, the Court extended the opt-out and objection deadline by 11 days. -Dkt. 583.

541 (Tombs), 542 (Leahy), 543 (Chase), 546 (~~Johnson~~Johnston), 550 (Grace~~)~~,)[3], 551 (Werner), 552 (Miller), 565 (Glenn), 585 (Ryker), 588 (Schapiro), 602 (Bishop), 603 (Newton Compton ~~Editorial~~Editori), 604 (Tea Tascabili Degli Editori), 605 (Casa Editrice Nord SRL), 607 (Bollati Boringhieri Editore SRL), 608 (Adriano Salani Editore SRL), 609 (Smith), 610 (Longanesi & C. SRL), 611 (Antonio Vallardi Editore SRL), ~~and~~612 (Garzanti SRL), 639 (Ifeld), 640 (Johnson), and 641 (Pinder).

First, ~~individuals~~non-class members lack standing, including to ~~object~~make objections regarding works that are not on the Works List and are thus unaffected by the Settlement. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-05944-JST, 2020 WL 1873554, at *4 (N.D. Cal. Mar. 11, 2020) (quoting *S.F. NAACP v. S.F. Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999));~~-~~ *In re Hydroxycut Mktg. & Sales Practices Litig.*, Nos. 09md2087, 09cv1088 BTM (KSC), 2013 WL 5275618, at *2 (S.D. Cal. Sept. 17, 2013) (striking objection because objector had not "carried his burden of proving standing as a class member"); *In re Korean Air Lines Co. Antitrust Litig.*, MDL No. 1891, 2013 WL 7985367, at *2 (C.D. Cal. Dec. 23, 2013) (similar); *Kent v. Hewlett–Packard Co.*, No. 5:09-cv-05341-JF (HRL), 2011 WL 4403717 (N.D. Cal. Sept. 20, 2011) (similar); *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009) (similar).

*Second,* ~~even if considered on the merits,~~these Objections are not persuasive. The Class is limited to books possessing a copyright registration number (registered within a certain timeframe, as set out in the Class definition) because such works enjoy a presumption of validity as to copyright protection, *see* 17 U.S.C. § 410(c), and therefore, statutory damages. 17 U.S.C. §§ 412, 504(c)(1). *See Bartz*, 791 F. Supp. 3d at 1055–65; *Bartz*, 2025 WL 2961371, at *1–2. The Class is further limited to works containing an ISBN or ASIN because these unique identifiers generally ensure that a work's copyright registration can be readily identified. *See Bartz*, 791 F. Supp. 3d at 1059. Linking works to copyright registration numbers by author name or title alone would be difficult, costly, and prone to error. *See id.* at 1059–60. In addition, any author or publisher can register their

---

[3] Grace also submitted a letter (Dkt. 634), which is not an objection but instead a notice to the Court that Grace intends to appear at the final approval hearing and speak regarding her "previously filed objection."

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT | CASE NO. 3:24-CV-05417-AMO

work, on an individual basis (*contra* Dkt. 641 (Pinder)), accordingly the Class definition does not exclude independent authors, small publishing houses, foreign publishers, or non-English authors. To the extent a dispute arises where claimants dispute ownership of a Work based on information in the Works List data, the Court-appointed Special Master can address them.[4]

### 3. Adequacy of Relief, Claims Rate, and Remaining Objections

*Monetary relief.* ~~Sixteen~~The Objections ~~contend~~contending that the $1.5+ billion in monetary relief that the Settlement provides is too low ~~given,~~ including because of the range of potential statutory damages provided under the Copyright Act, are also overruled. Dkts. 439 (Reding), 544 (Hale), 546 (Johnston), 549 (Stewart), 551 (Werner), 564 (Sappington), 566 (Burke-Garcia), 571 (Hampton), 572 (Chakanga), 584 and 593 (Burton), 594 (Choi), 595 (DesJardins), 596 and 606 (Lee), 598 (Hyder), 601 (Larson), 609 (Smith), 640 (Johnson), 642 (Hootman), 646-3 (Jacobson).[5] These Objections do not, however, present "a realistic assessment of the overall risks and rewards of a trial." *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 626 (N.D. Cal. 2021), *aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022). Even if successful at trial, there remained risk that post-trial proceedings would jeopardize the Class's recovery and cause major delays. *Id.* at 628 ("[A] multi-billion dollar verdict could create its own major risk for the class. A number of courts have commented on the potential for a due process problem when statutory damages are pursued by a large class, such as the one here."). These Objections are therefore overruled.[6]

---

[4] One Class Member (Dkt. 645 (Houghton)), contends that the class definition and Works List are insufficiently clear because of the presence of multiple "Unique IDs"—a claim filing number generated by the Settlement Administrator solely for purposes of administering the settlement. That contention lacks merit, and Houghton's objection is overruled. The Works List employs a unique, non-duplicative identifier (the copyright registration number) leading to a definitive count of 482,460 Works. In any event, the Settlement Administrator confirmed that it received two timely claim submissions from Houghton and, in consultation with Houghton, withdrew the duplicate claim.

[5] Class Counsel ~~note~~noted they had received a letter from Robert Jacobson that objects to the Settlement but ~~has~~had not been filed on the docket. The Objection is thus invalid and is overruled; it is also meritless for the reasons Class Counsel explain. Mot. for Final Approval at 20-25.

[6] One Objection also argues that the release is "overly narrow in scope" because Anthropic "simply gets release from liability for past conduct." Dkt. 599 (Story) at 3. But a narrow release *benefits* the Class, and thus does not counsel against final approval. The tailored ~~released~~release also underscores the sufficiency of the monetary relief offered; Class Members give up less in exchange for their recovery, retaining their rights to sue for future misconduct. *See* Settlement Agreement ¶ 1.29. The past-only release does not apply to any output claims, narrowing it even further.

[PROPOSED] ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

*Claims Rate*. One Objection submitted in December 2025 stated that the claims rate did "not bode well for full participation" in the Settlement. Dkt. 599 at 6. ~~Since then, the~~ The claims rate has since increased ~~over three-fold,~~ to ~~over 54~~91.3 percent as of ~~March 19~~April 16, 2026, ~~which is higher than~~eclipsing most class action cases. *See* McLaughlin on Class Actions § 6:24 (8th ed.) ("Claims-made settlements typically have a participation rate in the 10-15 percent range."); *Sierra v. City of New York*, No. 20CV10291CMGWG, 2023 WL 7016348, at *2 (S.D.N.Y. Oct. 25, 2023) (86% claims rate "magnitudes above the average for class action cases") (emphasis added). This Objection is overruled.

*Non-Monetary Relief*. Several Objections request additional non-monetary relief, including novel licensing schemes (Dkt. 599 at 3; Dkt. 566), source attribution in Anthropic's outputs (Dkt. 549), deletion of AI models (Dkt. 544), and abolishing use of scanned books for training (Dkt. 595). *See also* Dkts. ~~425, 584/593, 599-600, 603-5, 607-8, 610-12.~~425 (Ruden), 584/593 (Burton), 599 (Story), 600 (Sills), 603 (N.C. Editori), 604 (T.T.D. Editori), 605 (Nord), 607 (Editor), 608 (A.S. Editore), 610 (Longanesi), 611 (A.V. Editore), 612 (Garzanti), 646-3 (Jacobson). These requests go beyond the scope of this Settlement and the remedies attainable thereunder, especially given the Court's fair use ruling regarding the training of large language models. *See Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007 (N.D. Cal. 2025). The Settlement already provides ample forward-looking protections, including the destruction of Class Members' pirated Works. Settlement Agreement ¶ 2.2. Anthropic attests it did not use Class Members' Works to train a commercial model, and the Settlement does not release claims for future harm or claims "based on the output of AI models". *Id.* ¶¶ 1.29, 3.1. These Objections are overruled.

*Request for Trial*. One Objection argues the Court should compel the Parties to go to trial. Dkt. 425 (Ruden). As discussed above, the Settlement accounts for the substantial risks of continued litigation, including the possibility of an adverse ruling, years of appeals, and changes in a defendant's financial position. Mot. Final Approval at 11-13. "That certain Class Members evaluate the risks differently, or would prefer to go to trial despite those risks, does not prevent the Court from granting final approval to the Settlement." *Perkins v. LinkedIn Corp*, No. 13-CV-04303-LHK, 2016 WL 613255, at *6 (N.D. Cal. Feb. 16, 2016); *see also Allen v. Bedolla*, 787 F.3d 1218,

[PROPOSED] ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

1223 (9th Cir. 2015).

*Plan of Allocation.* Two Objections challenge the Plan of Allocation and Distribution. *See* Dkts. 425 (Ruden), 602 (Bishop). They argue that the dispute resolution process is inadequate for failing to include authors' agents and that the appointment of Mr. Cheng as Special Master will favor publishers. Finding no basis for either concern, ~~these Objections are~~this Objection is overruled~~.~~ as to Ruden and stricken as to Bishop (who is not a Class member and lacks standing).

~~Finally, many Objections were sealed by the Clerk despite filers not formally moving to seal them. Class Members should be able to review all Objections. Accordingly, the Clerk is hereby directed to UNSEAL all Objections within 14 days of this Order.~~

*Procedurally Improper Objections.* The Court also overrules the following objections on the independent ground that each is procedurally deficient.

- The objections of Ifeld (Dkt. 639) and Johnson (Dkt. 640) fail to comply with the requirement, provided in the Long-Form Notice, that all objections must be sent "to the Court" or "must be filed with the Court."[7] Johnson sent her objection to the Settlement Administrator via email. *See* Dkt. 640. Ifeld likewise sent his objection to the Settlement Administrator via email and, it appears, also Anthropic. *See* Dkt. 639.

- The objection of Michelle Willingham Leonard (Dkt. 637) is invalid because it was submitted on April 1, 2026, past the February 9, 2026 deadline for submitting all objections. *See* Dkt. 583.

- The objection of Victoria Pinder (Dkt. 641) is invalid both because it was not sent to the Court and because it was submitted on April 9, 2026, past the objection deadline. *See* LFN at 18–19; Dkt. 583.

- The second objection of Victoria Lee Bishop is invalid because it too was submitted past the opt-out deadline and because, by her own admission, she is not a Class Member. *See* Dkt. 630 at 7 (dated April 2, 2026); *see also* Dkt. 632 at 1 n.1. Bishop's objection also stresses that it "does NOT ask the Court to reject the $1.5 billion

---

[7] Long-Form Notice ("LFN") at 18–19 (available at https://tinyurl.com/LongFormNotice).

[PROPOSED] ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

*Exhibit ... Copyright Act* (handwritten)

## §501 · Infringement of copyright[3]

(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

(b) The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it. The court may require such owner to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright.

(c) For any secondary transmission by a cable system that embodies a performance or a display of a work which is actionable as an act of infringement under subsection (c) of section 111, a television broadcast station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that television station.

(d) For any secondary transmission by a cable system that is actionable as an act of infringement pursuant to section 111(c)(3), the following shall also have standing to sue: (i) the primary transmitter whose transmission has been altered by the cable system; and (ii) any broadcast station within whose local service area the secondary transmission occurs.

(e) With respect to any secondary transmission that is made by a satellite carrier of a performance or display of a work embodied in a primary transmission and is actionable as an act of infringement under section 119(a)(3), a network station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that station.

(handwritten margin notes)

① "that particular right"
ie graphic novel, film adaptation, Italian translation, eBooks, datamining. Must define what right was infringed, then establish who owns it.

② The "early notice" provision — to bring rights disputes to light at the very start of litigation. Complaint ASAP