Kenneth D. Freundlich (SBN 119860)
Jonah A. Grossbardt (SBN 283584)
Hugh H. Rosenberg (SBN 360544)
**FREUNDLICH LAW, APC**
ken@freundlichlaw.com
jonah@freundlichlaw.com
Hugh@freundlichlaw.com
16133 Ventura Blvd., Suite 645
Encino, CA 91436
Telephone: 818-377-3790
Facsimile: 310-275-5351

Attorneys for Class Member and Movant Donald S. Passman

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| ANDREA BARTZ and KIRK WALLACE JOHNSON, individually, and ANDREA BARTZ, INC., CHARLES GRAEBER, and MJ + KJ, INC., individually and as representatives of the class,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 4:24-cv-05417-AMO<br><br>**APPLICATION OF CLASS MEMBER DONALD S. PASSMAN FOR LEAVE TO SUBMIT LATE REQUEST FOR EXCLUSION FROM CLASS ACTION SETTLEMENT; AND IN THE ALTERNATIVE, CONDITIONAL OBJECTION TO FINAL APPROVAL** |

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................7

II.   PROCEDURAL BACKGROUND ........................................................9

III.  ARGUMENT....................................................................................11

A.    The Applicable Standard Is Excusable Neglect Or Good Cause............................11

B.    Passman Never Received Actual Notice Of The Settlement Or Opt-Out Deadline. 12

1.    Passman Never Received the Original Class Notice. .......................................13

2.    The Only Communication Passman Received from the Settlement Administrator Was a Post-Deadline Claims Notice That Said Nothing About His Right to Opt Out. .....................................................................13

3.    Passman Was an Identifiable Class Member Who Received No Individual Notice.......................................................................................14

4.    The Settlement Administrator Erroneously Attributed a Third Party's Work to Passman, Confirming the Unreliability of Its Notice Processes.................................14

C.    Passman Satisfies The Good Cause Or Excusable Neglect Standard Under *Silber*. 15

D.    Passman's Application Is Consistent With Class Counsel's Own Proposed Order. 17

E.    No Party Will Be Prejudiced By Permitting Passman's Exclusion........................19

F.    Passman Has Substantial Individual Claims That The Settlement Does Not Adequately Address.......................................................................................19

G.    In The Alternative, Passman Conditionally Objects To The Settlement...............20

1    Passman Cannot Constitutionally Be Bound by a Settlement in a Case in Which He Received No Individual Notice.........................................................21

2.      Class Members Could Not Make Fully Informed Opt-Out Decisions Because the Critical Merits Ruling Was Withheld From the Settlement Website Throughout the Opt-Out Period......................................................................................21

3.      The Per-Work Settlement Payment Does Not Adequately Compensate Registered Authors With High-Value Works Under Rule 23(e)(2). ...........................23

IV.      CONCLUSION.................................................................................................23

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

## TABLE OF AUTHORITIES

### CASES

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)..........................passim

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)………..………………….......passim

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)..........................21

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 6276092 (N.D. Cal. Apr. 20, 2017)....................................................................................8, 9

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950)...............................passim

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)................8

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)…........................................21

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)...........................................................passim

### STATUTES

17 U.S.C. § 504(c)(2)...............................................................................................18, 22

### RULES

Fed. R. Civ. P. 23(c)(2)(B)................................................................................................12

Fed. R. Civ. P. 23(d)(1)......................................................................................................9

Fed. R. Civ. P. 23(e)(2)................................................................................................22, 23

Fed. R. Civ. P. 23(e)(4)......................................................................................................9

Fed. R. Civ. P. 23(e)(5)(A)................................................................................................20

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Donald S. Passman, a member of the certified class, hereby applies to the Court for leave to submit a late request for exclusion from the class action settlement. No final approval order has been entered. The Court retains full equitable authority to act before it does. The applicable standard changes the moment the proposed order is signed, from good cause or excusable neglect under *Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994), to the substantially more demanding standard of Rule 60(b). Passman respectfully requests that the Court consider this application before entering the proposed order.

This application is based upon this Notice, the Memorandum of Points and Authorities set forth herein, the Declaration of Donald S. Passman filed concurrently herewith ("Passman Decl."), the Declaration of Kenneth D. Freundlich filed concurrently herewith ("Freundlich Decl."), all exhibits thereto, the pleadings and records on file in this action, and such other matters as may be presented to the Court.

**WHY THIS APPLICATION SHOULD BE CONSIDERED BEFORE ENTRY OF THE PROPOSED ORDER**

The proposed final approval order could be entered at any time without prior notice. No final approval order has been entered. The last docket entry in this action is Docket No. 674, filed June 25, 2026, a notice of attorney withdrawal. Until the proposed order is signed, this Court retains full equitable and case management authority over the proceeding. The timing is decisive. Before entry of the final order, this application is evaluated under good cause or excusable neglect, the *Silber* standard this application satisfies. After entry, Mr. Passman must meet Rule 60(b)'s substantially more demanding requirements. The window to proceed under the correct standard is open now.

The distinction is not procedural formality. Good cause or excusable neglect under *Silber* ask whether the class member's delay was reasonable under the circumstances. Rule 60(b) requires mistake, newly discovered evidence, fraud, or

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

extraordinary circumstances. These are different inquiries with materially different odds. This application asks the Court to apply the right one.

Class Counsel is aware of this application. At the May 14, 2026 final approval hearing, Class Counsel initially objected to the late opt-out requests then before the Court, and then withdrew those objections in open court. Having taken that position before this Court, Class Counsel has nonetheless informed Passman that it intends to oppose this application. That position is difficult to reconcile with the hearing record. Passman's showing of excusable neglect is at least as strong as, and in key respects stronger than, the late opt-outs Class Counsel declined to contest. Unlike those movants, Passman is the sole author and sole copyright owner of his works, with no co-owner complications. The Court has already permitted late opt-out requests from other class members who demonstrated good cause. Passman applies on the same basis.

Granting this application causes no prejudice to any party. The fund is non-reversionary and fixed at $1.5 billion. Excluding Passman's four works does not reduce it, affect any other class member's recovery, or alter Class Counsel's fee award. The only consequence is that Passman may pursue his individual copyright claims, the precise remedy the proposed order itself identifies as appropriate for class members who believe the per-work payment is insufficient. Dkt. 672-1 at 25.

<div align="center">

**MEMORANDUM OF POINTS AND AUTHORITIES**

</div>

**I.      INTRODUCTION**

Donald S. Passman is a preeminent entertainment attorney, a partner at Gang, Tyre, Ramer, Brown & Passman, Inc. in Beverly Hills, California, and the author of *All You Need to Know About the Music Business* (Simon & Schuster), the definitive reference work on the music industry. (Passman Decl. ¶ 1.) The book has been continuously updated across multiple editions and has been in print for over three decades. (*Id*.) Four registered editions, bearing Copyright Office registration numbers TX0003315448, TX0006468255, TX0008224272, and TX0009144313, appear on the settlement's Works List. (*Id*. at ¶ 2.)

<div style="writing-mode: vertical">FREUNDLICH LAW, APC
ENCINO, CALIFORNIA</div>

Passman never received the Court-approved class notice. (Passman Decl. ¶ 4.) Whatever notice the settlement administrator may have mailed, no original class notice ever reached Passman before the February 9, 2026 opt-out deadline, or at any time thereafter. (*Id*. at ¶ 5.) The first written communication he received from anyone connected to this settlement was a letter dated April 29, 2026, received on May 13, 2026, ninety-three days after the February 9, 2026 opt-out deadline had closed. (*Id*. at ¶¶ 11-12.) That letter was not the original class notice. (*Id*. at ¶¶ 11-12.) It was a post-deadline claims notice stating that a claim had been filed for his books and inviting him to submit his own claim for payment. (*Id*. at ¶ 13.) It said nothing about his right to opt out and made no mention of the opt-out deadline that had already passed. (*Id*. at ¶ 13, Ex. B.) Passman did not miss the deadline because he was inattentive or chose not to act. (*Id*. at ¶ 6.) He missed it because he never received the notice that would have told him the deadline existed. (*Id*.) The causal link between the notice failure and the missed deadline is direct and undisputed. That is the paradigm case for excusable neglect.

This motion is brought on the same legal grounds that Class Counsel's own Second Supplemental Proposed Order accepts as sufficient to grant the late opt-out requests of Laura Esquivel (Dkt. 635) and Jordi Castells (Dkt. 636). The Second Supplemental Proposed Order, filed by Class Counsel on May 21, 2026 (Dkt. 672-1), grants those requests because the objectors "demonstrated good cause for their late opt-out requests." Dkt. 672-1 at 48. The grounds for that grant apply with equal or greater force to Passman: like Esquivel and Castells, he never received the original class notice through no fault of his own; unlike the co-ownership complications that initially arose in their cases, Passman is the sole author and sole copyright owner of his works, with no co-owner issue of any kind. (Passman Decl. ¶ 2.)

The Second Supplemental Proposed Order also notes that there are seven other individuals whose opt-out requests are late but would otherwise be valid, and explains that those seven are denied relief for one reason only: "none of these seven class

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

members have applied to the Court to request relief from the opt-out deadline." Dkt. 672-1 at 49–50. Passman is applying. He is doing exactly what those seven did not do.

The case for granting this motion is reinforced by Class Counsel's own representations at the May 14, 2026 final approval hearing. When this Court inquired about late opt-outs, Class Counsel's lead attorney Justin Nelson stated directly to the Court: "We will stand down on the objection if it's easier and so we will withdraw those objections with respect to any of the late opt-outs that have come in, Your Honor." Hr'g Tr. at 27:5–9 (May 14, 2026). That representation was made in open court and is part of the record. Passman's motion is brought pursuant to that statement. Any opposition to this motion would be difficult to reconcile with the position Class Counsel's own lead attorney took before this Court.

The letter Passman received also erroneously attributed to him a book entitled *The Algebraic Structure of Group Rings* (Reg. No. RE0000923970), a mathematics text written by a University of Wisconsin mathematician who shares Passman's name. The administrator's failure to distinguish two individuals with the same name further evidences that the notice program's class-identification processes were unreliable as applied to Passman.

No final approval order has been entered. The Court retains full equitable discretion to grant this motion. The equitable factors each favor relief: no original notice, good cause, no prejudice, and substantial individual claims. The Class Counsel's own proposed order confirms that the appropriate response for an author who believes the per-work settlement amount is insufficient is to opt out and file suit: the proposed order states that an objector who contends "the amount should be higher" "had the right to opt-out its works and file suit." Dkt. 672-1 at 24:17-19. That is precisely the relief Passman seeks.

## II.    PROCEDURAL BACKGROUND

On August 19, 2024, Plaintiffs filed this copyright infringement class action against Anthropic PBC.

On September 25, 2025, the Court (then before Judge Alsup) granted preliminary approval of the class settlement. (Dkt. 427.) The Court issued its written Memorandum Opinion on Preliminary Approval on October 17, 2025. (Dkt. 437.)

The original notice program was supplemented multiple times: a Further Order on class notice was entered November 18, 2025 (Dkt. 490), and a joint motion for supplemental class notice was granted December 30, 2025 (Dkt. 531). The need for repeated corrective and supplemental notice reflects that the original notice program failed to reach all class members.

On December 31, 2025, the case was reassigned to Judge Martínez-Olguín. (Dkt. 532.) On January 8, 2026, Judge Martínez-Olguín extended the opt-out deadline (Dkt. 535), and on January 27, 2026, she extended it again by eleven days. (Dkt. 583.) The final opt-out deadline was February 9, 2026.

On March 19, 2026, Class Counsel filed its Motion for Final Approval. (Dkt. 619.) The Court set the final approval hearing for May 14, 2026. (Dkt. 632.)

On April 9, 2026, Laura Esquivel (Dkt. 635) and Jordi Castells (Dkt. 636) filed papers requesting court approval of their late opt-out requests. Both movants represented that they never received the original class notice. Class Counsel's initial proposed order denied both without prejudice on co-owner consent grounds. (Dkt. 646-1 at 11:26–12:2.)

The final approval hearing was held on May 14, 2026. At the hearing, Class Counsel withdrew its opposition to Esquivel's and Castells's late opt-out requests after the co-owner consent issue was resolved.

Following the hearing, the Court issued a post-hearing order directing supplemental briefing by May 21, 2026 on whether unexcused late opt-outs should be honored. (Dkt. 664.) Anthropic filed a supplemental brief opposing all late opt-outs (Dkt. 671). Class Counsel filed the Second Supplemental Proposed Order (Dkt. 672-1), which grants Esquivel's and Castells's late opt-out requests on the ground that they "demonstrated good cause." Dkt. 672-1 at 48:21-28.

As of the date of this filing, no final approval order has been entered.

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

## III.    ARGUMENT

### A.    The Applicable Standard Is Excusable Neglect Or Good Cause.

A class member seeking to opt out after the applicable deadline must show that "excusable neglect or good cause excuses the delay." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 6276092, at *1 (N.D. Cal. Apr. 20, 2017) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1455 (9th Cir. 1994)). The Ninth Circuit's *Silber* factors guide this inquiry: (1) the degree of compliance with best practicable notice procedures; (2) when notice was actually received, and if not timely, why not; (3) what caused the delay and whose responsibility it was; (4) how quickly the belated opt-out was made once notice was received; (5) how many class members seek relief; and (6) whether granting relief would affect the settlement or finality of judgment. *See Silber*, 18 F.3d at 1455. The related *Pioneer* factors, prejudice to the opposing party, length of delay, reason for delay, and good faith, inform the same analysis. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Because no final approval order has been entered, the Court need not apply the more demanding standard of Rule 60(b). Before entry of a final judgment approving a class settlement, the Court retains broad equitable and case management authority to modify the proceedings, including by permitting a late opt-out request. The Court's inherent case-management authority, codified in part through Rule 23(d), authorizes the Court to issue orders protecting class members and ensuring the fair conduct of the action. The applicable standard comes from *Silber v. Mabon*, 18 F.3d 1449, 1455 (9th Cir. 1994); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 6276092, at *1 (N.D. Cal. Apr. 20, 2017). Rule 23(e)(4) further reflects Congress's recognition that courts retain authority, before approving a settlement of a previously certified Rule 23(b)(3) class, to afford class members a renewed opportunity to request exclusion where circumstances warrant. Fed. R. Civ. P. 23(e)(4); Fed. R. Civ. P. 23(d)(1). This discretion is at its broadest here: the case remains open, the

proposed order sits unsigned, and granting this motion requires only a finding of good cause or excusable neglect.

Class Counsel's Second Supplemental Proposed Order confirms the applicable standard and its application: Esquivel and Castells are granted relief because they "demonstrated good cause for their late opt-out requests." Dkt. 672-1 at 48. Passman applies the identical standard - good cause, and independently, excusable neglect - and presents facts at least as compelling.

### B. Passman Never Received Actual Notice Of The Settlement Or Opt-Out Deadline.

Rule 23(c)(2)(B) requires that identifiable class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The Rule further requires that the notice state "that the court will exclude from the class any member who requests exclusion" and "the time and manner for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v)–(vi). The notice defect therefore goes directly to the exclusion right Passman lost. The Supreme Court has long recognized that the constitutional minimum for binding absent class members requires notice reasonably calculated to apprise them of the proceedings and afford them an opportunity to opt out. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–76 (1974). Whatever the adequacy of the notice program as applied to the class generally, the question here is individual: did Passman receive actual notice in time to act? He did not. (Passman Decl. ¶ 5.) The original class notice never reached him before the February 9, 2026 opt-out deadline, or at any time thereafter. (*Id.*) The first communication he received from anyone connected to this settlement arrived ninety-three days after that deadline had passed and said nothing about any right to opt out. (*Id.* at ¶¶ 4–5.) That failure, a failure of the notice program, not of Passman, is independently sufficient to establish good cause or excusable neglect under *Silber* as to Passman specifically, for the reasons set forth in Section III.C below.

**1.     Passman Never Received the Original Class Notice.**

Passman received no communication, by email, postal mail, postcard, or any other means, from the settlement administrator, Class Counsel, Defendant Anthropic, or any other party regarding this case, the settlement, the opt-out deadline, or his rights as a class member, prior to May 13, 2026. (Passman Decl. ¶ 7.) He received no individual notice addressed to him by name before the February 9, 2026 deadline closed. (*Id*. at ¶¶ 4-5.)

On April 17, 2026, more than two months after the opt-out deadline had closed, Passman reached out on his own initiative to his editor at Simon & Schuster, Stephanie Frerich, to ask whether she knew anything about the Anthropic settlement. At the time, he had received nothing. His own words confirm the absence of any prior notice: "I wouldn't be surprised if my book was involved, but I haven't heard from anyone." (Passman Decl. ¶ 7; Ex. A.) On April 20, 2026, his editor responded that Simon & Schuster's legal team had advised that "the publishers could not register authors for inclusion in the settlement" and that authors "needed to do so independently." (*Id*. at ¶ 8.) Simon & Schuster neither forwarded the original class notice nor took any step to inform Passman of his rights as a class member. (*Id*.) That Passman was sufficiently engaged to make his own inquiry does not impute to him knowledge of the opt-out deadline, the existence of the claims process, or the right to seek court relief, none of which he had ever been told by Class Counsel or anyone else involved in this matter.

**2.     The Only Communication Passman Received from the Settlement Administrator Was a Post-Deadline Claims Notice That Said Nothing About His Right to Opt Out.**

On April 29, 2026, the settlement administrator, JND Legal Administration, mailed a letter to Passman at 132 S RODEO DR, BEVERLY HILLS, CA 90212-2415. (Passman Decl. ¶ 13; Ex. B.) The letter was received on May 13, 2026, ninety-three days after the February 9 opt-out deadline. The final approval hearing was held the very next day.

This letter was not the Court-approved class notice required by Rule 23(c)(2)(B). It did not advise Passman of his right to opt out. It did not reference the February 9, 2026

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

opt-out deadline, which had already passed before the letter was sent. It did not advise him of his right to seek court relief. Instead, the letter informed Passman that "claim(s)" had been filed for his books by a third party, and invited him to file his own claim for payment. Its sole operative deadline (70 days from April 29, 2026) was for filing a claims form for payment, not for opting out. (Passman Decl. ¶ 13; Ex. B.)

The letter further stated that Passman "**may have** already received the Court-approved Class Notice," (emphasis added) affirmatively representing that a separate original notice had been sent to him. (Passman Decl. ¶ 14.) Passman never received that notice. (*Id*.)

### 3.     Passman Was an Identifiable Class Member Who Received No Individual Notice.

Passman was an identifiable class member; his authorship of four registered editions of *All You Need to Know About the Music Business* is a matter of unambiguous public record: on every cover and title page, in every retail listing and library catalog, and in the Copyright Office records from which the Works List was compiled. The settlement administrator compiled the Works List from Copyright Office records and Anthropic's own metadata and specifically identified Passman's four registered editions. He was not a difficult person to find. Yet no original class notice ever reached him before the February 9, 2026 opt-out deadline. (Passman Decl. ¶ 5.) There is no delivery confirmation, no return receipt, and no record of actual receipt. Whether or not a notice was mailed, it never arrived. (*Id*.) The notice program's failures with respect to Passman, including its inability to distinguish between two individuals sharing the same name, demonstrate that notice was not reasonably calculated, under the particular circumstances applicable to him, to ensure he was apprised of the proceedings. *See Mullane*, 339 U.S. at 314; *see also Eisen*, 417 U.S. at 176. That is a failure of the notice program as applied to Passman, regardless of how adequate the program may have been for other class members.

### 4.     The Settlement Administrator Erroneously Attributed a Third Party's Work to Passman, Confirming the Unreliability of Its Notice Processes.

The April 29, 2026 claims letter included, alongside Passman's four registered editions, a fifth work: *The Algebraic Structure of Group Rings*, Copyright Registration No. RE0000923970. (Passman Decl. ¶ 15; Ex. B.) Passman is not the author of this book. (Passman Decl. ¶ 15.) *The Algebraic Structure of Group Rings* was written by a mathematics professor at the University of Wisconsin, a different person who shares Passman's name. The administrator conflated two different individuals because they share a name. An administrator that cannot reliably distinguish between two individuals is an administrator whose class identification and notice processes cannot be presumed accurate or complete. This error supports Passman's contention that the notice program failed to adequately reach him.

### C. Passman Satisfies The Good Cause Or Excusable Neglect Standard Under *Silber*.

Each of the *Silber* factors favors granting this motion.

**Best practicable notice compliance.** This factor favors Passman. Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency . . . of the action." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). For identifiable class members, individual notice is the constitutional floor; mailing to an address at which notice is not received does not satisfy it. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–76 (1974). The relevant question is not whether the administrator sent a notice but whether it reached Passman. It did not. No original class notice ever arrived before the February 9, 2026 opt-out deadline, or at any time thereafter. (Passman Decl. ¶ 4.) There is no delivery confirmation, no return receipt, and no record of actual receipt. Passman's sworn declaration that he never received the notice is uncontroverted. Even if Class Counsel can show a notice was sent and did not bounce back, non-delivery proof is not proof of actual receipt, and an uncontroverted declaration of non-receipt is sufficient to establish the notice program's failure as to this class member. *See Eisen*, 417 U.S. at 176. That failure satisfies the first *Silber* factor.

**When notice was actually received, and why not timely.** Passman received no communication from the settlement administrator before February 9, 2026. (Passman Decl. ¶ 4.) The first and only communication he received, the April 29, 2026 claims notice, received May 13, 2026, arrived ninety-three days after the opt-out deadline. It was not the original class notice, did not mention opt-out rights, and arrived after the final approval motion had been filed and the day before the final approval hearing. (*Id.*) The delay was entirely the product of the notice program's failure to reach Passman, a failure entirely outside his control.

**What caused the delay, and whose responsibility.** Passman did not cause the failure of the notice program to reach him. He did not fail to monitor a settlement website. The responsibility for the delay lies entirely with the notice program's failure to send him the original class notice.

**Upon receiving the April 29, 2026 claims notice on May 13, 2026, Passman did not understand that he retained the right to seek exclusion from the settlement.** The claims notice described a claims-filing process, said nothing about opt-out rights, and affirmatively represented that he "may have already received the Court-approved Class Notice," implying that a separate original notice had been sent to him. (Passman Decl. ¶ 14.) The letter set a single operative deadline, 70 days from April 29, for filing a claim for payment, not for opting out. (*Id.*) An entertainment attorney who does not practice federal class action litigation, receiving a post-deadline administrative letter that mentions a prior original notice and sets only a claims-filing deadline, would not reasonably understand that letter to be advising him that he retained the ability to seek court relief from an opt-out deadline he had never been told about. (Passman Decl. ¶¶ 16–17.) Recognizing that he needed specialized litigation counsel to advise him in a complex class action, Passman contacted Freundlich Law on May 28, 2026. (*Id.* at ¶ 17.) Freundlich Law conducted its intake, conflicts review, and assessment of the matter. The engagement was formally finalized on June 24, 2026. This motion is filed a few days later. The period between receipt of the claims notice and filing reflects the time

reasonably required for a non-litigating attorney to identify appropriate litigation counsel, for counsel to evaluate a novel and complex matter, and for the parties to complete their engagement. During that entire period, Passman had not been advised that he had opt-out rights to exercise, and the claims letter he received disclosed no such rights. Once counsel confirmed those rights existed and could still be sought from the Court, both Passman and Freundlich Law acted without delay. (*Id*. at ¶ 18.)

**How many class members seek relief.** One. Passman is the only class member filing a motion of this kind at this time. Granting his motion does not open a floodgate. As the Second Supplemental Proposed Order itself demonstrates, the court has considered late opt-outs on an individualized basis and is being asked to grant them where good cause is shown.

**Effect on settlement and finality.** None of any substance. The settlement fund is non-reversionary and fixed at $1.5 billion. Removing Passman's four works from the class does not alter the fund, the distribution plan, or any other class member's recovery in any material respect. The four works represent a negligible fraction of the 482,460 works on the Works List. (Dkt. 672-1 at 5.)

### D.    Passman's Application Is Consistent With Class Counsel's Own Proposed Order.

The Second Supplemental Proposed Order, filed by Class Counsel on May 21, 2026, grants the late opt-out requests of Esquivel and Castells because they "demonstrated good cause." Dkt. 672-1 at 48. The factual predicate for that grant is directly applicable to Passman. Esquivel did not timely receive the original class notice, as it arrived twenty-two days after the deadline. Castells never received the original class notice, as he learned of the settlement from his aunt, three days after the deadline, and filed his opt-out request seven days late. Both are granted on good cause grounds. Passman's case is structurally identical: he never received the original class notice, the only communication he received from the administrator came ninety-three days after the deadline and said nothing about opt-out rights, and he acted upon learning of his rights.

Passman's case is additionally stronger than Esquivel's and Castells's in one important respect: he is the sole author and sole copyright owner of his four registered editions. There is no co-owner issue of any kind. The only complication that initially prevented Esquivel's and Castells's opt-outs from being granted, co-owner consent, does not exist here. Class Counsel withdrew its opposition to Esquivel and Castells once that issue was resolved. Passman respectfully requests that Class Counsel extend the same treatment to his application.

The Second Supplemental Proposed Order further notes that there are seven other individuals with late but otherwise valid opt-out requests, and denies them solely because they "have [not] applied to the Court to request relief from the opt-out deadline." Dkt. 672-1 at 49–50. Passman is applying. He is doing precisely what those seven failed to do, and precisely what Esquivel and Castells did when they were granted relief.

Class Counsel's position at the May 14, 2026 final approval hearing is also relevant here. When this Court asked Mr. Nelson about the remaining late opt-outs, he stated: "We will stand down on the objection if it's easier and so we will withdraw those objections with respect to any of the late opt-outs that have come in, Your Honor." Hr'g Tr. at 27:5–9. At minimum, that representation reflects Class Counsel's willingness to withdraw opposition to late opt-outs as a category, and Passman files this motion in reliance on that representation. (*Id*.) The Court may appropriately consider that statement in evaluating whether any opposition to this motion is consistent with the position Class Counsel took before the Court.

Only Anthropic opposes the late opt-outs of Esquivel and Castells, and that opposition is being overruled in Class Counsel's own proposed order. Dkt. 671; Dkt. 672-1 at 48. Anthropic's arguments against late opt-outs in its supplemental brief (Dkt. 671), including that Esquivel and Castells waived any notice challenge by not contesting the adequacy of the overall notice program, do not apply to Passman. Passman *does* challenge the adequacy of notice as applied to him specifically. He received no original

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

class notice despite being an identifiable class member with a correct, known address. That is an independent due process argument. *See Mullane*, 339 U.S. at 314.

**E.    No Party Will Be Prejudiced By Permitting Passman's Exclusion.**

**The Class.** The $1.5 billion settlement fund is non-reversionary and fixed. Passman's four registered editions are four works out of the 482,460 on the Works List — well under one-thousandth of one percent of the class. (Dkt. 672-1 at 6.) Removing them does not reduce the fund or alter any other class member's recovery. To the contrary, because the fund is fixed and non-reversionary, any amount that would have been allocated to Passman's four works is redistributed among the remaining claimants, marginally increasing their recovery. Granting the exclusion thus takes nothing from the class; if anything, it leaves slightly more for everyone else.

**Class Counsel.** Class Counsel's fee award of 12.5 percent of the common fund is unaffected by whether Passman participates. Dkt. 672-1 at 51.

**Defendant Anthropic.** Any exposure Anthropic may face from Passman's individual claims is a consequence of its failure to adequately notify him through the settlement's notice program. The settlement itself acknowledges the propriety of individual litigation by those with high-value claims: the proposed order states that an objector who contends "the amount should be higher" "had the right to opt-out its works and file suit." Dkt. 672-1 at 24. Binding Passman to a settlement he never received notice of, in order to protect Anthropic from a claim Passman would have pursued had he timely received that notice, would be the very outcome due process is designed to prevent.

**F.    Passman Has Substantial Individual Claims That The Settlement Does Not Adequately Address.**

*All You Need to Know About the Music Business* is the preeminent reference work on the music industry. It has been continuously in print for over three decades and is relied upon by recording artists, entertainment lawyers, artist managers, record label executives, and music business students worldwide. Four registered editions are

separately identified on the Works List, each bearing an independent copyright registration.

The estimated per-work payment from the settlement is approximately $3,351.39 per claimed work at the current claims rate. (Dkt. 672-1 at 5.) For Passman's four registered editions, total estimated settlement recovery is approximately $13,400. Against this, Passman's potential statutory damages under 17 U.S.C. § 504(c)(2) for willful infringement are up to $150,000 per registered work, or up to $600,000 across four editions, approximately 44 times the estimated per-work settlement payment. His hypothetical license theory and lost sales theories present additional and potentially larger damages. This disparity is not a reason to challenge the settlement's fairness for other class members; it is a reason why Passman has a genuine, substantial, and good-faith interest in pursuing individual litigation.

Passman's book is also particularly valuable as AI training data because of its authoritative, comprehensive, and continuously updated treatment of complex music industry topics. A reference work of this stature, continuously in print for over three decades, relied upon by recording artists, entertainment lawyers, and music industry executives worldwide, presents substantial hypothetical license, lost sales, and statutory damages claims. The case for substantial individual damages is strong. Passman intends to pursue them.

### G.    In The Alternative, Passman Conditionally Objects To The Settlement.

Passman's request for exclusion is his primary relief, and he presses it unconditionally. Only in the event the Court denies leave to opt out, and thereby holds Passman a bound class member, does he object, in the alternative, to the proposed class action settlement pursuant to Federal Rule of Civil Procedure 23(e)(5)(A) on the grounds set forth below. This alternative objection is contingent on Passman remaining in the class: it is asserted solely in his capacity as a class member and only if, and to the extent, leave to opt out is denied. By asserting it, Passman does not waive, condition, or

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

withdraw his request for exclusion. If the Court grants exclusion, Passman is no longer a class member and this objection is moot; it has force only if he remains bound. Passman does not seek to delay or prevent the settlement's approval as to any other class member.

### 1    Passman Cannot Constitutionally Be Bound by a Settlement in a Case in Which He Received No Individual Notice.

Here, Passman's four registered editions appear by name on the Works List, reflecting his identity as the registered author in Copyright Office records. Yet no original class notice was ever received by him before the opt-out deadline, or at any time thereafter. (Passman Decl. ¶ 5.) The first and only communication he received from anyone connected to this settlement was a post-deadline claims letter, dated April 29, 2026, received ninety-three days after the February 9 opt-out deadline. (*Id*. at ¶ 12.) On these unrebutted facts, binding Passman to a settlement that extinguishes his individual copyright claims would raise serious due process concerns that apply to him individually, regardless of whether the notice program was adequate for any other class member.

### 2.    Class Members Could Not Make Fully Informed Opt-Out Decisions Because the Critical Merits Ruling Was Withheld From the Settlement Website Throughout the Opt-Out Period.

At the May 14, 2026 final approval hearing, counsel for objectors established on the record that this Court's summary judgment ruling on fair use, Dkt. 231, was entirely absent from the settlement website throughout the seven-and-a-half-month opt-out period. (Hr'g Tr. at 10–12 (May 14, 2026).) Class Counsel added it to the website only on the weekend immediately before the final approval hearing. (*Id*.) The FJC Class Action Notice Checklist, incorporated by reference in the proposed order, explicitly identifies the court's substantive rulings as "key documents" that "will be available on a neutral website." Dkt. 655-1 at 4.

The fair use ruling, Dkt. 231, is the most important document in this litigation: it granted Anthropic summary judgment that using the works to train its LLMs was a fair use, but held that Anthropic's downloading and retention of pirated copies to build a central library was not a fair use, denied Anthropic summary judgment as to those pirated

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

library copies, and set them for trial on infringement and damages, including statutory damages for willfulness. That ruling exposed Anthropic to substantial liability for the pirated copies and drove the $1.5 billion settlement. Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," and "when notice is a person's due, process which is a mere gesture is not due process." *Mullane*, 339 U.S. at 314-315. In the Ninth Circuit, notice must "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). This objection does not ask that the notice analyze the claims or estimate their value; the Ninth Circuit has held that Rule 23(e) requires neither. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009). It rests instead on two facts those cases do not reach. The notice program affirmatively represented, through the FJC Class Action Notice Checklist incorporated into the proposed order, that the Court's substantive rulings would be available on a neutral website, Dkt. 655-1 at 4 — and Dkt. 231 resolves liability, not merely the value of recovery. Failing to upload the single dispositive merits ruling for the entire seven-and-a-half-month opt-out period, then posting it only on the weekend before final approval, made the program's central promise "a mere gesture" precisely as to the information most essential to a knowing and intelligent decision: whether approximately $3,351 per work fairly resolves an infringement claim whose liability this Court had already sustained against Anthropic's fair use defense. *See Mullane*, 339 U.S. at 315. A class member cannot weigh that question, cannot "choose for himself whether to appear or default, acquiesce or contest" *Mullane*, 339 U.S. at 314, without access to the order establishing the claim. Passman, who received no individual notice (see Section III.B) and had no access to the settlement website, was doubly deprived of it.

### 3. The Per-Work Settlement Payment Does Not Adequately Compensate Registered Authors With High-Value Works Under Rule 23(e)(2).

Under Rule 23(e)(2)(C), the Court must consider whether the relief provided for the class is adequate, including "the costs, risks, and delay of trial and appeal," Rule 23(e)(2)(C)(i), and "the effectiveness of any proposed method of distributing relief to the class," Rule 23(e)(2)(C)(ii). The uniform per-work payment of approximately $3,351 represents roughly two percent of the $150,000 statutory damages ceiling for willful copyright infringement per registered work. 17 U.S.C. § 504(c)(2). For a class member like Passman, with four independently registered editions of a commercially significant work, a work that has been in continuous print for over three decades, and claims that survived summary judgment, the settlement allocation methodology does not comport with Rule 23(e)(2)'s adequacy standard as applied to him individually. The proposed order itself acknowledges that the appropriate response for class members who believe the per-work payment is insufficient is to opt out and file individual suit. (Dkt. 672-1 at 24.) In the alternative, this Court should not approve a settlement that binds Passman to a per-work payment two percent of his maximum statutory entitlement without having afforded him the notice that would have allowed him to make that election.

## IV. CONCLUSION

For the foregoing reasons, Donald S. Passman respectfully requests that the Court grant this motion and permit him to submit a late request for exclusion from the class action settlement. (Passman Decl. ¶ 20.) The applicable standard, good cause or excusable neglect under *Silber* and *Pioneer*, is satisfied on the same grounds that Class Counsel's own Second Supplemental Proposed Order accepts as sufficient for Esquivel and Castells. Passman's case is at least as compelling: he received no original class notice through no fault of his own; he is a sole author with no co-owner issue; he acted promptly upon understanding his rights; granting his exclusion causes no prejudice; and his individual claims are substantial.

DATED:  June 30, 2026

FREUNDLICH LAW, APC

*/s/ Kenneth D. Freundlich*
Kenneth D. Freundlich
Jonah A. Grossbardt
Hugh H. Rosenberg
Attorneys for Class Member and Movant
Donald S. Passman

**FREUNDLICH LAW, APC**
ENCINO, CALIFORNIA