Justin A. Nelson *(pro hac vice)*
Alejandra C. Salinas *(pro hac vice)*
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
Michael Adamson (SBN 321754)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
rnath@susmangodfrey.com
madamson@susmangodfrey.com

Jordan W. Connors*
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101-2683
Telephone: (206) 516-3880
jconnors@susmangodfrey.com

J. Craig Smyser*
Samir Doshi*
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 51st Floor
New York, NY 10001-8602
Telephone: (212) 336-8330
csmyser@susmangodfrey.com
sdoshi@susmangodfrey.com

*Co-Lead Counsel*

Rachel Geman *(pro hac vice)*
Jacob S. Miller *(pro hac vice)*
Danna Z. Elmasry *(pro hac vice)*
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
jmiller@lchb.com
delmasry@lchb.com

Daniel M. Hutchinson (SBN 239458)
Jallé H. Dafa (SBN 290637)
Amelia Haselkorn (SBN 339633)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
dhutchinson@lchb.com
jdafa@lchb.com
ahaselkorn@lchb.com

Betsy A. Sugar*
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
222 Second Ave., Suite 1640
Nashville, TN 37201-2375
Telephone: (615) 313-9000
bsugar@lchb.com

*Co-Lead Class Counsel*
*\*(Pro Hac Vice)*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| ANDREA BARTZ, CHARLES GRAEBER, and KIRK WALLACE JOHNSON, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br> ANTHROPIC PBC,<br><br>        Defendant. | Case No. 4:24-cv-05417-AMO<br><br><br>**OPPOSITION TO APPLICATION OF CLASS MEMBER DONALD S. PASSMAN FOR LEAVE TO SUBMIT LATE REQUEST FOR EXCLUSION FROM CLASS ACTION SETTLEMENT** |

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ....................................................................................................... 2

       A.     The Court Approved the Notice Plan as Best Practicable....................................... 2

       B.     The Settlement Administrator Successfully Implemented the Court-Approved Notice Plan. .................................................................................. 3

       C.     Notice Efforts Were a Resounding Success............................................................ 4

       D.     Mr. Passman Timely Received Direct Notice......................................................... 4

III.   LEGAL STANDARD................................................................................................ 5

IV.    ARGUMENT ............................................................................................................ 6

              1.    The Settlement Administrator Implemented the Best Practicable Notice (Factor 1). ....................................................................... 6

              2.    Mr. Passman Timely Received Actual Notice (Factors 2–3)...................... 7

              3.    Mr. Passman Did Not Quickly Submit His Opt-Out Request (Factor 4). ........................................................................................... 9

              4.    Allowing Mr. Passman to Opt Out Long After the Applicable Deadline Could Prompt Other Late Requests, Undermining Finality and Unfairly Delaying the Distribution of Settlement Funds (Factors 5–6). ....................................................................... 10

       B.     Mr. Passman's Objections are Untimely and Unsupported. .................................. 10

              1.    Even If Mr. Passman Had Not Timely Received Notice, the Court-Ordered Notice Plan Still Satisfied Due Process Requirements. ............... 11

              2.    That an Opinion Was Referenced and Explained on the Settlement Website, but Not Directly Linked There, Does Not Render Inadequate the Court-Ordered Notice Plan. ................................. 12

              3.    The Proposed Settlement Relief Is Adequate............................................ 13

V.     CONCLUSION ....................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Regents of Univ. of Cal.*,
2021 WL 5195639 (C.D. Cal. Oct. 3, 2021) ........................................................................... 6, 10

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) ..................................................................................................... 13

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
607 U.S. ---,146 S. Ct. 959 (2026) .............................................................................................. 14

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ...................................................................................................................... 11

*Hartranft v. Encore Cap. Grp., Inc.*,
543 F. Supp. 3d 893 (S.D. Cal. 2021) ........................................................................................... 9

*Huizar v. Carey*,
273 F.3d 1220 (9th Cir. 2001) ....................................................................................................... 9

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) ........................................................................................................ 11

*In re College Athlete NIL Litig.*,
803 F. Supp. 3d 959 (N.D. Cal. 2025) ........................................................................................... 6

*In re Facebook Biometric Info. Priv. Litig.*,
522 F. Supp. 3d 617 (N.D. Cal. 2021) *aff'd*, No. 21-15553, 2022 WL 822923
(9th Cir. Mar. 17, 2022) ............................................................................................................... 13

*In re Gypsum Antitrust Cases*,
565 F.2d 1123 (9th Cir. 1977) .................................................................................................. 5, 10

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ..................................................................................................... 2, 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018) ...................................................................................................... 6, 9

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ..................................................................................................... 2, 12

*Martinez v. Ferguson Enters., LLC*,
2023 WL 12294390 (C.D. Cal. Nov. 2, 2023) ............................................................................... 8

*McGrath v. Wyndham Resort Dev. Corp.*,
2018 WL 646495 (S.D. Cal. Jan. 31, 2018) ................................................................................... 9

ii

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015) ..................................................................................... 6

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
   292 F. Supp. 3d 1018 (S.D. Cal. 2017) ........................................................................... 6

*Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ........................................................................................ 13

*Payan v. Aramark Mgmt. Servs. Ltd. P'ship*,
   495 F.3d 1119 (9th Cir. 2007) ........................................................................................ 8

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993) ....................................................................................................... 6

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
   281 F. Supp. 3d 833 (N.D. Cal. 2017) ......................................................................... 12

*Roes, 1–2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ...................................................................................... 11

*Schikore v. BankAmerica Supp. Ret. Plan*,
   269 F.3d 956 (9th Cir. 2001) ................................................................................. 1, 7, 8

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) .................................................................................. 6, 11

*Taylor v. Google LLC*,
   2026 WL 628161 (N.D. Cal. Mar. 5, 2026) ................................................................ 11

**Statutes**

17 U.S.C. § 504(c) ................................................................................................................ 13

Cal. Bus. & Prof. Code § 6002.1 ........................................................................................... 7

Copyright Act .................................................................................................................. 12, 13

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... 11, 12, 14

**I.    INTRODUCTION**

Donald S. Passman is a prominent entertainment lawyer to whom the Settlement Administrator mailed multiple notices starting last December. He now seeks to opt out or object nearly five months after the deadline. Mr. Passman asserts that he did not receive the Court-approved Long-Form Notice and buck slip. But he cannot dispute that (a) they were mailed to his correct address in early December 2025 (followed by reminders), (b) he had access to other forms of notice, and (c) his email correspondence with his publisher confirms that he has been aware of the Settlement—and the likelihood that his book was included in it—for months.

Class Counsel submit evidence, including the Settlement Administrator's sworn statement, that Mr. Passman was mailed timely notice. In addition, the well-established "mailbox rule" applies here, providing that "the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time." *Schikore v. BankAmerica Supp. Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001). Mr. Passman does not provide any basis to rebut that presumption. *See id.* at 964 (explaining the evidence required to rebut the mailbox rule).

In any event, Mr. Passman's request for an untimely exclusion from the Settlement fails regardless of whether he received the Long-Form Notice before the opt-out deadline. The exhaustive, Court-approved notice program—which included multiple forms of direct notice, publication notice, and earned media—was constitutionally adequate. Mr. Passman is therefore deemed to have constructive notice. *See* 6 Newberg & Rubenstein on Class Actions § 18:43 (6th ed.) ("Even if a class member does not actually receive the notice, she will remain bound by the class action judgment so long as the notice was 'the best practicable' and 'reasonably calculated' to reach her."). The Settlement was also extensively publicized, including in the *New York Times, Wall Street Journal*, *The Hollywood Reporter*, and *Variety*. It is in fact highly unlikely that a Los Angeles entertainment lawyer like Mr. Passman could have avoided learning about the Settlement before the opt-out deadline. He does not dispute that he was aware of the Settlement before then. And his email correspondence (Dkt. 676-2) and declaration (Dkt. 676-1) confirm that he knew about the proposed Settlement, and the likely inclusion of his works in that Settlement, by no later than April

17, 2026. Mr. Passman then waited months to submit his opt-out request and objections and offers little to no justification for his delay.

In addition to being inexcusably late, Mr. Passman's objections are not valid. He first contends that his (counter-factual) lack of actual notice is a denial of due process. But he cites no support for that proposition, and none exists. Instead, case law holds that best practicable notice is required. *See* Dkt. 418 (Response to Questions re: Preliminary Approval) at 21–22 (citing authorities holding that "best practicable" notice binds class members, even those who did not "actually receive" notice). Mr. Passman then incorrectly argues that an opinion that was discussed in, but not at all times posted to, the Settlement website renders all other robust notice efforts moot and inadequate. That is wrong because the Court-ordered notice plan provided more than "sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012)). Finally, contrary to the Court's earlier statement that the Settlement relief is a "home run," Mr. Passman challenges the adequacy of that relief. Class Counsel have already thoroughly responded to that incorrect argument. *See, e.g.*, Dkt. 672-1 (Proposed Order re: Final Approval) at 37–38, 59–60 (explaining the adequacy of the Settlement relief).

On these facts, the Court should deny Mr. Passman's late opt-out request and ignore or overrule his late objections. Doing so is consistent with interests of finality, fairness, and timely distribution of Settlement proceeds to Class members—including those who share an interest in his works and timely filed claims.

## II.    BACKGROUND

### A.    The Court Approved the Notice Plan as Best Practicable.

The Court approved the notice plan as the best notice that is practicable under the circumstances. In its Opinion on Preliminary Approval of Class Action Settlement, the Court held that the "approved notice plan, of course, uses reasonable efforts to identify as many class members as possible for individual notice." Dkt. 437 at 8. The Court further held that the "plan then uses

multiple appropriate means to direct notice to those identified," and the approved notices "contain all information required." *Id.* at 9–10. The Court noted that "if a later short-form reminder notice is to be sent after a deadline has passed, content related to the passed deadline may be reduced or removed as the focus turns to the relevant next steps and deadlines." *Id*. at 10–11.

In addition to its holdings on direct notice, the Court also held that "the indirect notice plan looks reasonably like what one might do to reach an author, publisher, or other person who is a beneficial or legal owner of copyright interests in works at issue even if unidentified." *Id.* at 8. The Court therefore approved the notice plan as "best practicable and is what someone actually desirous of reaching another would do under all the circumstances." *Id.* at 13.

    B.    The Settlement Administrator Successfully Implemented the Court-Approved Notice Plan.

The Settlement Administrator fully executed the Court-approved notice plan. After exhaustive data collection and matching processes, the Settlement Administrator "sent direct notice to 594,945 potential Class Members" relating to "482,374 works on the Works List (99.98%)." Dkt. 619-3 (Keough Decl. re: Final Approval) ¶¶ 21–28. The Settlement Administrator sent direct notice by both First Class mail and email. *Id.* ¶¶ 32, 35–48. "The direct notice efforts resulted in notice being sent, and not returned as undeliverable, to 506,194 potential Class Members." *Id.* ¶ 79. "Those potential Class Members relate to 480,114 works on the Works List (99.5%)." *Id.*

The Settlement Administrator supplemented those formidable direct notice efforts with a robust indirect notice campaign, which included extensive paid and earned media. *Id.* ¶¶ 49–78. The paid media efforts resulted in hundreds of millions of digital impressions, millions more than predicted in the approved notice plan. *Id.* ¶¶ 52, 59, 70, 75. The "Tier 1 digital effort alone reached 95% or more of the copyright holder population and therefore likely Class Members." Supplemental Declaration of Jennifer M. Keough Regarding Passman Filing ("Keough Decl. re: Passman Filing") ¶ 3. Paid media also included placements in numerous news publications, including a press release that reached "a potential audience of 1.5 billion worldwide." Dkt. 619-3 (Keough Decl. re: Final Approval) ¶¶ 58–68. Earned media was similarly extensive, with more than 1,700 relevant articles

published as of March 18, 2026. *Id.* at 154–252. Those articles were published in a variety of outlets that would be relevant to a Los Angeles–based intellectual property attorney, including *Los Angeles Times*, *The New York Times*, *The Wall Street Journal*, *The Hollywood Reporter*, *Variety*, *Law360*, *Bloomberg Law*, *Daily Journal*, *Law.com*, *Digital Music News*, *Music Business Worldwide*, and *IPWatchdog.com*. *Id.*

C.    Notice Efforts Were a Resounding Success.

One indication that the implemented notice plan was a resounding success is the extremely high claims rate. As of May 14, 2026, claims were submitted for 447,576 works, which amounts to 92.8 percent of the works on the Works List. Dkt. 668 (May 14, 2026 Hearing Tr.) at 6. That claims rate is exceptionally high relative to relevant benchmarks. *See, e.g.*, Fed. Trade Comm'n, *Consumers & Class Actions: A Retrospective and Analysis of Settlement Campaigns* (Sept. 2019) at 1, *available at* https://tinyurl.com/Consumers-Class-Actions (noting an "overall claims rate" of "less than 10%" in a "sample of 149 consumer class action cases from large class action administrators"); Consumer Financial Protection Bureau, *Arbitration Study: Report to Congress* (Mar. 2015) at 17, *available at* https://tinyurl.com/Arbitration-Study-Report (noting an average claims rate of 21% and a median claims rate of 8% in a sample of 105 cases).

D.    Mr. Passman Timely Received Direct Notice.

The Settlement Administrator timely mailed multiple Court-approved notices to Mr. Passman's correct address. Pursuant to the Court-approved notice plan, the Settlement Administrator sent multiple rounds of direct notice to Mr. Passman. Keough Decl. re: Passman Filing ¶ 4. Specifically, the Settlement Administrator mailed the complete Court-ordered Long-Form Notice and buck slip to Mr. Passman on December 1, 2025. *Id.* The Settlement administrator then mailed a reminder postcard notice on March 9, 2026, and a non-filing claimant notice on April 29, 2026. *Id.* All three of those notices were mailed to 132 S. Rodeo Dr., Beverly Hills, CA 90212-2415 and not returned as undeliverable. *Id.* That address matches the one identified on Mr. Passman's attorney profile (https://apps.calbar.ca.gov/attorney/Licensee/Detail/48444) registered with the State Bar of California:

**Attorney Profile**

**Donald Shaw Passman #48444**

License Status: Active

Address: Gang Tyre Ramer Brown & Passman, 132 S Rodeo Dr, Beverly Hills, CA 90212

Mr. Passman does not dispute that this is his address and admits that he received a nonfiling claimant notice sent by the Settlement Administrator to that address. Dkt. 676-1 (Passman Decl.) ¶ 12. That notice—exactly as the plan contemplated—was sent to Mr. Passman to notify him that other claimants with rights to his works had timely submitted claims, allowing him another opportunity to submit a claim. Keough Decl. re: Passman Filing ¶¶ 4–5. Even before he received the nonfiling claimant notice, he was emailing with his publisher about the Anthropic settlement, noting "I wouldn't be surprised if my book was involved . . . ." Dkt. 676-2 (Passman Emails).

### III.    LEGAL STANDARD

"There is no question that in the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'" *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) (quoting Reports of the Conference for District Court Judges, 63 F.R.D. 231, 262 (1973)). "Because a central purpose of class actions is to achieve finality, the majority of courts addressing the issue have held that a class member's failure to meet the deadline results in being bound unless they can make a very compelling showing of good cause or excusable neglect." 1 McLaughlin on Class Actions § 5:79 (22nd ed.) (collecting cases).

In evaluating whether an applicant seeking to opt out past the cutoff date has made such a compelling showing, courts consider the following factors: (1) "the degree of compliance with the best practicable notice procedures"; (2) "when notice was actually received and if not timely received, why not"; (3) "what caused the delay, and whose responsibility was it"; (4) "how quickly the belated opt-out request was made once notice was received"; (5) "how many class members

5

want to opt out"; and (6) "whether allowing a belated opt out would affect either the settlement or finality of the judgment." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 618 (9th Cir. 2018) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1455 (9th Cir. 1994)).

These six factors are "congruent with the general factors set forth in" *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), which courts apply more generally to determine "whether neglect is excusable." *A.B. v. Regents of Univ. of Cal.*, 2021 WL 5195639, at *1 (C.D. Cal. Oct. 3, 2021). Those *Pioneer* factors include "the dangers of prejudice to the other party, the length of delay and its potential impact on judicial proceedings, the reason for delay, and whether this reason was within the reasonable control of the party, and whether the party acted in good faith." *Id.* (citing *Pioneer*, 507 U.S. at 394).

Courts are even more strict in their refusal to address untimely objections. *See, e.g.*, *In re College Athlete NIL Litig.*, 803 F. Supp. 3d 959, 994–95 (N.D. Cal. 2025) (declining to address untimely objections); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 611 (N.D. Cal. 2015) (rejecting as untimely objection submitted four days after the deadline); *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1041 (S.D. Cal. 2017) (rejecting as untimely objections submitted "nearly one month later than the . . . deadline").

## IV.   ARGUMENT

### A.   The Court Should Deny Mr. Passman's Late Opt-Out Request.

The relevant factors compel the rejection of Mr. Passman's late opt-out request on multiple grounds.

#### 1.   *The Settlement Administrator Implemented the Best Practicable Notice (Factor 1).*

This factor weighs heavily against a finding of excusable neglect. As explained above, the Settlement Administrator fully complied with—and exceeded—the Court-approved best practicable notice plan. As a result, virtually all Class members received notice by direct mail and email, through paid and earned media, or through multiple such channels. Those robust notice

procedures resulted in a claims rate, as of May 14, 2026, of nearly 93%, which, as explained above, is extremely high relative to relevant benchmarks. Dkt. 619-3 (Keough Decl. re: Final Approval) ¶ 3.

Mr. Passman's claim that the Settlement Administrator "failed to distinguish two individuals with the same name" does not somehow render notice inadequate. Indeed, "to maximize notice to potential rightsholders," the Settlement Administrator "included any works where the Class Member name matched a potential rightsholder." Keough Decl. re: Passman Filing ¶ 6. That sometimes resulted in **overinclusive** notice, not underinclusive. For example, "the Donald Passman who wrote *The Algebraic Structure of Group Rings* [timely] filed a claim for that work on May 19, 2026." *Id.*

### 2.    *Mr. Passman Timely Received Actual Notice (Factors 2–3).*

Mr. Passman timely received actual notice, and his carefully worded declaration does not prove otherwise. The Settlement Administrator timely mailed multiple forms of notice to Mr. Passman's correct address, including the Court-approved Long-Form Notice and buck slip, sent on December 1, 2025. Keough Decl. re: Passman Filing ¶ 4; *see Schikore*, 269 F.3d at 964 (9th Cir. 2001) ("[A] sworn statement is credible evidence of mailing for purposes of the mailbox rule."). The Long-Form Notice and buck slip included extensive details about how and when to opt out and how to stay apprised of any changes to relevant deadlines. Long-Form Notice ("LFN"), *available at* https://tinyurl.com/LongFormNotice); Dkt. 455-8 (Buck Slip). Each of the notices were mailed to 132 S. Rodeo Dr., Beverly Hills, CA 90212-2415. Keough Decl. ¶ 4. Mr. Passman admits that he received one of the notices mailed to that address. Dkt. 676-1 (Passman Decl.) ¶ 12. And he does not and cannot claim that such address was somehow incorrect or improper. Indeed, as shown above, that address is listed on his California bar profile, which Mr. Passman is required to keep updated. *See* Cal. Bus. & Prof. Code § 6002.1 (requiring California lawyers to maintain their current address information and notify of any changes within 30 days).

Mr. Passman's claim that he "did not receive the Court-approved class notice" before February 9, 2026 is vague and elides the key question of whether it arrived at his address. Dkt. 676-

1 (Passman Decl.) ¶ 5. He does not claim that the Long-Form Notice and buck slip somehow did not arrive at his address in December 2025. His declaration is thus consistent with the timely arrival of those documents, which he then apparently chose not to review carefully or otherwise disregarded. In addition, Mr. Passman's declaration notably does not state that he—a prominent entertainment attorney—never heard about the proposed Settlement or never read an article about it. As discussed above, the proposed Settlement was publicized extensively through both paid and earned media channels, including numerous publications to which Mr. Passman was likely regularly exposed. Those publications included the *Los Angeles Times*, *The New York Times*, *The Wall Street Journal*, *The Hollywood Reporter*, *Variety*, *Law360*, *Bloomberg Law*, *Daily Journal*, *Law.com*, *Digital Music News*, *Music Business Worldwide*, and *IPWatchdog.com*. Such widespread publication makes sense because the proposed Settlement represents the largest copyright recovery in history, all in a case involving new legal theories and cutting-edge technology. It is thus hard to believe that Mr. Passman did not hear about the proposed Settlement or lacked access to information about it. And his Declaration does not refute this point.

Regardless, even if Mr. Passman somehow did not hear about the largest copyright settlement ever in a case that generated mountains of headlines, Mr. Passman's declaration still does not rebut the evidence and presumption that he timely received notice. The Ninth Circuit generally applies a presumption that mail is received within three days of being sent. *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1125–26 (9th Cir. 2007). Mr. Passman has not offered any proper evidence to rebut that presumption. *See id.* at 1127 (finding that presumption was not rebutted without corroborating evidence of non-receipt); *Schikore*, 269 F.3d at 964 (rebutting "mailbox rule" presumption of receipt requires detailed description of "procedures for receiving, sorting, and distributing mail, to show that these procedures were properly followed at the time when the document in question might conceivably have been delivered by the postal service, to provide evidence that it has conducted a thorough search for the document at the addressee's physical facility, and to establish that had the document been received around the time the claimant asserted it was mailed, it would presently be at the location searched"); *Martinez v.*

*Ferguson Enters., LLC*, 2023 WL 12294390, at *2 (C.D. Cal. Nov. 2, 2023) ("Mere statements of denial are not sufficient to rebut the presumption of receipt under the mailbox rule."); *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 903 n.3 (S.D. Cal. 2021) ("[M]erely stating that the document isn't in the addressee's files or records . . . is insufficient to defeat the presumption of receipt." (quoting *Huizar v. Carey*, 273 F.3d 1220, 1223 n.3 (9th Cir. 2001)).

### 3.    *Mr. Passman Did Not Quickly Submit His Opt-Out Request (Factor 4).*

Mr. Passman's submission of an opt-out request was far from "quick." Mr. Passman admits that he knew about the proposed Settlement and the likely inclusion of his book in that Settlement by no later than April 17, 2026. Dkt. 676-1 (Passman Decl.) ¶ 7. He then waited more than two months to make his belated opt-out request, which is nearly five months after the applicable deadline and nearly seven months after he received the Long-Form Notice and buck slip. Had he acted with some level of reasonable urgency, the Court could have addressed his opt-out request at the final approval hearing on May 14, 2026, as it did with other late opt-outs. By any reasonable measure, Mr. Passman did not move "quickly" to submit an opt-out request. *See McGrath v. Wyndham Resort Dev. Corp.*, 2018 WL 646495, at *1–2 (S.D. Cal. Jan. 31, 2018) (denying opt-out request submitted 23 days after deadline passed); *In re Volkswagen*, 895 F.3d at 618–19 (affirming denial of opt-out request made "one month after the deadline had passed").

Mr. Passman incorrectly claims that his late opt-out request is "structurally identical" to requests submitted by Laura Esquivel and Jordi Castells. In fact, Mr. Passman's delay is far more extreme and unjustified. Ms. Esquivel submitted her late opt-out request within two months of the deadline. Dkt. 635-1 (Esquivel Decl.) ¶ 7. She did so despite (i) not speaking English, which inhibited her ability to communicate with her referred counsel, and (ii) suffering a stroke in the interim. *Id.* ¶¶ 6–8. Mr. Castells, according to his declaration, submitted his late opt-out request just seven days after the deadline and four days after first conferring with counsel. Dkt. 636-1 (Castells Decl.) ¶ 6. Moreover, both Class Counsel and Anthropic were able to address the late opt-out requests of Ms. Esquivel and Mr. Castells at the final approval hearing and in the proposed order and subsequent filings. Dkt. 668 (May 14, 2026 Hearing Tr.) at 7, 9, 25–26; Dkt. 672-1 (Proposed

Order re: Final Approval) at 48–49.

### 4.    *Allowing Mr. Passman to Opt Out Long After the Applicable Deadline Could Prompt Other Late Requests, Undermining Finality and Unfairly Delaying the Distribution of Settlement Funds (Factors 5–6).*

Allowing Mr. Passman to opt out after such a long and unjustified delay would invite others to try the same, undermining finality and risking undue delay in the distribution of Settlement funds. In a Class of hundreds of thousands, only a tiny fraction—approximately 400—have sought to opt out. Dkt. 619-3 (Keough Decl. re: Final Approval) ¶ 102. Still, if an opt-out request as inexcusably late as Mr. Passman's is allowed, it "could undermine the settlement by permitting other members to seek similar relief from the Court by simply claiming to not have carefully reviewed the notice before the deadline." *A.B.*, 2021 WL 5195639, at *3. The ongoing, iterative consideration of such requests would be contrary to the interests of finality and the timely distribution of Settlement funds. *In re Gypsum*, 565 F.2d at 1127.

The unfairness would be particularly acute in Mr. Passman's case and in the structure of this settlement, given that his late opt-out request would negate timely claims submitted by other rightsholders for his works. *See* Dkt. 401-1 (Plan of Allocation and Distribution) ¶ 2(f)(i) ("A valid opt-out request submitted for a work on the Works List will exclude that work from the settlement."). Allowing Mr. Passman's late opt out would thus severely prejudice those Class members who ***timely*** filed claims.

* * *

Because the relevant factors weigh heavily against a finding of good cause and excusable neglect, the Court should deny Mr. Passman's late opt-out request.

### B.    Mr. Passman's Objections are Untimely and Unsupported.

Because courts are even more strict with respect to objection deadlines, the Court should not entertain Mr. Passman's untimely objections, which were also due by February 9, 2026. If the Court does consider those objections, it should overrule them as meritless.

> ### 1. *Even If Mr. Passman Had Not Timely Received Notice, the Court-Ordered Notice Plan Still Satisfied Due Process Requirements.*

Even if Mr. Passman had not timely received notice—and the evidence indicates that he did—the robust and fully implemented Court-ordered notice plan still satisfied due process. "[T]he court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement] . . . ." Fed. R. Civ. P. 23(e)(1)(B). However, "neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 779 (9th Cir. 2022); *see also Taylor v. Google LLC*, 2026 WL 628161, at \*15 (N.D. Cal. Mar. 5, 2026) ("[T]he standard for class notice is 'best practicable' notice, not 'actually received' notice." (citing *Silber*, 18 F.3d at 1454)). Instead, Rule 23(c)(2)(B) calls for "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." And "[p]rocedural due process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Apple*, 50 F.4th at 779 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) & *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019)). *See also* Dkt. 418 (Response to Questions re: Preliminary Approval) at 21–22 (citing authorities holding that "best practicable" notice binds class members, even those who did not "actually receive" notice).

Those standards are readily met here. The Court already endorsed the notice plan as "best practicable" and held that it was "what someone actually desirous of reaching another would do under all the circumstances." Dkt. 437 (Preliminary Approval Order) at 13. As discussed above, the Settlement Administrator successfully implemented that Court-ordered notice plan. *See also* Dkt. 672-1 (Proposed Order re: Final Approval) at 10–15 (detailing reasons for the sufficiency of implemented notice plan).

### 2. That an Opinion Was Referenced and Explained on the Settlement Website, but Not Directly Linked There, Does Not Render Inadequate the Court-Ordered Notice Plan.

That the Court's summary judgment ruling on fair use (the "Fair Use Order") was referenced and explained on the Settlement website, but not directly linked there, does not render inadequate the highly successful Court-ordered notice plan. *See* Dkt. 672-1 (Proposed Order re: Final Approval) at 13–14 (responding to a similar objection). "Rule 23(e) requires notice that describes 'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *In re Online DVD-Rental*, 779 F.3d at 946 (quoting *Lane*, 696 F.3d at 826). "However, Rule 23(e) 'does not require detailed analysis of the statutes or cause of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims.'" *Id.* (quoting *Lane*, 696 F.3d at 826). Thus, courts do not deem notice efforts inadequate based on the omission of specific court orders or information about how to find them. *See, e.g.*, *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 849 (N.D. Cal. 2017) ("Although this district's guidelines indicate that reference to PACER should be included in class action settlement notices, the Court does not find this omission to render the class notice inadequate.").

That is especially true because the executed notice plan provided substantial information about the Fair Use Order. The Court-approved Long-Form Notice—which was sent to Class members and, at all relevant times, posted to the Settlement website—states that "[i]n June 2025, the district court ruled that using the books to train AI models was fair use and therefore not a violation of the Copyright Act but left for trial the question whether downloading and use of works from LibGen and PiLiMi was fair use." LFN at 6. The Long-Form Notice further explained that "Anthropic sought to appeal . . . the fair use ruling." *Id.* And it stated that "[i]f the case had gone to trial, it is possible the Class could have lost on the issue of fair use . . . ." *Id.* The Long-Form Notice also advised Class members on how to view Court orders—including the Fair Use Order—by directing them to "the Court's Public Access to Court Electronic Records (PACER) system at

12

https://ecf.cand.uscourts.gov/" and to "the office of the Clerk of the Court for the United States District Court for the Northern District of California." *Id.* at 24; *see also* Northern District of California Procedural Guidance for Class Action Settlements ¶ 3 ("The notice should include the following information . . . . Instructions on how to access the case docket via PACER.").

### 3. The Proposed Settlement Relief Is Adequate.

Mr. Passman is also wrong that the $1.5+ billion in monetary relief that the Settlement provides is too low. His simplistic comparison of the proposed Settlement to the maximum possible relief does not present "a realistic assessment of the overall risks and rewards of a trial." *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 626 (N.D. Cal. 2021) *aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022). Moreover, a settlement is "a highly negotiated compromise." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). And it is "well-settled law that" even "a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982).

That is especially true in the circumstances of this case, where significant risks lingered before, during, and after trial. The estimated per-work payment of over $3,000 is four times the minimum statutory damages amount and fifteen times the minimum statutory damages amount for innocent infringement. 17 U.S.C. § 504(c). It is also four times higher than the "most common award" issued in copyright cases, which is $750 per work. *See* Brady, Benjamin and Germano, Roy and Springman, Christopher Jon, Statutory Damages Under the Copyright Act: An Empirical Study, 41 (Sept. 23, 2023). Prior to trial, numerous dispositive motions risked defeating Plaintiffs' claims outright. As the Court acknowledged, "[f]or all we know at this stage, Anthropic will persuade the jury to find facts vindicating it completely." Dkt. 296 (Order Denying Stay) at 6. And "[a]ll the district court's rulings and verdict could get appealed" after trial. Dkt. 437 (Preliminary Approval Order) at 5. Indeed, just months ago, the Supreme Court vacated a jury award of "$1 billion in statutory damages" in a copyright infringement case. *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. ---,146 S. Ct. 959, 966 (2026). That vacatur occurred six years after the jury award was

13

rendered, *id.*, demonstrating both the monetary and timing-based risks of foregoing settlement. Also, at the time of settlement: (i) the Ninth Circuit could have granted Anthropic's emergency request for stay or Anthropic's Rule 23(f) petition; and (ii) this Court could have granted Anthropic's § 1292(b) motion, Anthropic's motion for reconsideration of the Fair Use Order, or any number of *Daubert* or pre-trial motions. The Court also could have decertified the Class at any point. Dkt. 431 (Sept. 25, 2025 Hearing Tr.) at 5, 15. Given these numerous, multi-tiered risks, the Court observed "there was only a narrow path" for Class Counsel to succeed. Dkt. 484 (Nov. 13, 2025 Hearing Tr.) at 54. This narrow path is perhaps what led the Court to call the Settlement a "home run," calling "baloney" on the notion of getting "more than $3,000." *Id.* at 54–55.

\*   \*   \*

Because Mr. Passman's objections are untimely and meritless, the Court should ignore or overrule them and approve the proposed Settlement.

## V.  CONCLUSION

For the foregoing reasons, the Court should deny Mr. Passman's late opt-out request and disregard or overrule his objections.

Dated: July 10, 2026

By: */s/ Justin A. Nelson*
Justin A. Nelson (*pro hac vice*)
Alejandra C. Salinas (*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
Michael Adamson (SBN 321754)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
rnath@susmangodfrey.com
madamson@susmangodfrey.com

J. Craig Smyser (*pro hac vice*)
Samir Doshi *(pro hac vice)*
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 51st Floor
New York, NY 10001-8602
Telephone: (212) 336-8330
csmyser@susmangodfrey.com
sdoshi@susmangodfrey.com

*Co-Lead Counsel*

By: */s/ Rachel Geman*
Rachel Geman (*pro hac vice*)
Jacob S. Miller (*pro hac vice*)
Danna Z. Elmasry (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
rgeman@lchb.com
jmiller@lchb.com
delmasry@lchb.com

Elizabeth J. Cabraser (SBN 83151)
Daniel M. Hutchinson (SBN 239458)
Jallé H. Dafa (290637)
Amelia Haselkorn (SBN 339633)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com
jdafa@lchb.com
ahaselkorn@lchb.com

Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 Second Ave., Suite 1640
Nashville, TN 37201-2375
Telephone: (615) 313-9000
bsugar@lchb.com

*Co-Lead Counsel*

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: July 10, 2026

/s/      *Justin A. Nelson*