UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA BARTZ and KIRK WALLACE JOHNSON, individually, and ANDREA BARTZ, INC., CHARLES GRAEBER, and MJ + KJ, INC., individually and as representatives of the class,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 3:24-cv-05417-AMO<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART MOTION FOR ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF SERVICE AWARDS; JUDGMENT**<br><br>Re: Dkt. Nos. 505, 619 |

Before the Court are Plaintiffs Andrea Bartz, Inc.'s, Charles Graeber's, and MJ + KJ Inc.'s Motion for Final Approval of Class Action Settlement and Motion for Attorney's Fees, Reimbursement of Expenses, and Plaintiff Service Awards. The motions were heard before this Court on May 14, 2026. Having read the papers filed by the parties and carefully considered the arguments therein and those made at the hearing, as well as the relevant legal authority and the submissions from fifty-four class members and putative class members filed with respect to the Settlement, and good cause appearing, the Court hereby **GRANTS** the motion for final approval, and **GRANTS IN PART** the motion for attorney's fees, for the reasons set forth below.

## I.    DISCUSSION

The Court first analyzes whether final approval of the Settlement is warranted under Rule 23, Ninth Circuit precedent, and the District's Procedural Guidance for Class Action Settlements. The Court then addresses the objections and late opt-outs received before turning to Class Counsel's requests for fees, costs, and service awards.

**A.    Final Approval of Settlement**

**1.    Rule 23(e)(1)**

Before granting final approval, the Court must ensure that notice was provided "in a reasonable manner to all class members who would be bound by the proposal" and "certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1).

The Notice Plan constituted the best notice that is practicable under the circumstances to all Class Members and was sufficiently implemented by the Settlement Administrator, effecting class notice that fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process. *See Bartz v. Anthropic PBC*, No. C 24-05417 WHA, 2025 WL 2961371, at *5 (N.D. Cal. Oct. 17, 2025) ("In sum, the plan provides all the notice due class members even if submissions about some works are never made, as it exhausts reasonable efforts to identify rightsholders while publishing notice broadly."). The Settlement Administrator compiled contact information from a wide range of sources including submissions by the Authors' Guild, the Science Fiction Writers of America, the Authors' Registry, more than 170 publishers, and through a variety of third-party sources, including Bowker ISBN Services, the U.S. Copyright Office, commercial data sources (such as Amazon.com), and targeted web searches. Dkt. No. 619-3 (Declaration of Jennifer M. Keough of JND Legal Administration in Support of Final Approval ("JND Decl.")) ¶ 20. Class notice included direct mail and email to rightsholders sent to 594,945 potential Class Members associated with 482,374 (99.98 percent) of the Works on the Works List with notice not returned as undeliverable to 506,194 potential Class Members associated with 480,114 (99.5 percent) of the Works on the Works List. *Id.* ¶¶ 28, 79. The Notice campaign also included distribution of press through journalists specializing in the education and publishing industries, publication in newsletters such as *Publishers Weekly*, *The Chronicle of Higher Education*, *Writer's Digest*, *Poets & Writers*, publication in newspapers and magazines such as *The Atlantic*, *The Toronto Star*, *The Globe and Mail*, and *La Presse*, and widespread social media campaigns. *Id.* ¶ 32.

The findings of the Preliminary Approval Order (Dkt. No. 437) are confirmed and all requirements for maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a)

and (b)(3) remain satisfied.  As set forth in the Preliminary Approval Order, the certified Class is defined as follows:

> All beneficial or legal copyright owners of the exclusive right to reproduce copies of any book in the versions of LibGen or PiLiMi downloaded by Anthropic <u>as contained on the Works List</u>.  "Book" refers to any work possessing an ISBN or ASIN which was registered with the United States Copyright Office within five years of the work's <u>first</u> publication and which was registered with the United States Copyright Office before being downloaded by Anthropic, or within three months of <u>first</u> publication.  Excluded are the directors, officers and employees of Anthropic, personnel of federal agencies, and district court personnel.  <u>For avoidance of doubt, only works included on the Works List are in the Class.</u>

*Bartz*, 2025 WL 2961371, at *1 (emphasis in original).

The Court reaffirms the appointment of Andrea Bartz, Inc., Charles Graeber, and MJ + KJ Inc. as Class Representatives.  *See id.* at 8; *Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1065 (N.D. Cal. 2025).  These Class Representatives have fairly and adequately represented, and will continue to fairly and adequately represent, the interests of the Class.  No Objections challenge the Class Representatives' appointment or adequacy.

The Court reaffirms the appointment of Lieff Cabraser Heimann & Bernstein, LLP and Susman Godfrey L.L.P. as counsel representing the Class under Federal Rule of Civil Procedure 23(g).  *See Bartz*, 2025 WL 2961371, at *8; *Bartz*, 791 F. Supp. 3d at 1065.  Class Counsel have fairly and adequately represented, and will continue to fairly and adequately represent, the interests of the Class.  The Objections and putative objections suggesting that Class Counsel have not adequately represented the Class, *e.g.*, Dkt. Nos. 425 (Ruden), 609 (Smith), 653 and 659 (Chase), 641, 648, and 661 (Pinder), lack merit and are overruled.  These objections are addressed in more detail in Section I.D. below.

The Court reaffirms the appointment of JND Legal Administration to serve as the Settlement Administrator, *see Bartz*, 2025 WL 2961371, at *8, and finds that JND has thus far fulfilled its duties under the Settlement.  The Settlement Administrator's estimated expenses, approximately $15 million, *see* Dkt. No. 399 (Supp. Keough Decl.) ¶ 117,  are reasonable given the scope and complexity of this Settlement, and the Settlement Administrator shall be paid in accordance with the Settlement Agreement.  No Objections challenge JND's appointment.

### 2.   Rule 23(e)(2)

In order to approve a proposed class action settlement, a court must hold a hearing and find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, courts analyze whether the settlement is fair, free of collusion, and consistent with plaintiff's obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

There are no indicia of fraud or collusion underlying this non-reversionary Settlement. *Bartz*, 2025 WL 2961371, at *3 ("The settlement agreement was negotiated at arm's length and will likely be found to lack collusion."). The non-reversionary Settlement Fund of $1.5 billion provides meaningful relief to the Settlement Class given the reasonable range of Class Members' possible recoveries, especially since further litigation would likely be complex, expensive, lengthy, and risky. The estimated per-work payment of approximately $3,000 is four times the minimum statutory damages amount for willful infringement. *Id.* (Class members "get a per-work award of about $3,000, less costs and fees. That is four times the statutory minimum for ordinary infringement, which is also the most common award in copyright cases, of $750.") (footnotes omitted). The Settlement's methods of processing claims and distributing funds to Class Members, JND Decl. ¶¶ 90-99; Dkt. 401-1 (Plan of Allocation and Distribution), are fair and adequate. *Bartz*, 2025 WL 2961371, at *4 (preliminarily approving distribution plan). As of April 16, 2026, 91.3 percent of the Works List had been claimed, for a total of 440,490 works of the 482,460 Works on the Works List. *See* Dkt. No. 643-1 (Supplemental Declaration of Jennifer M. Keough Regarding Claims Received) ¶ 3.

The Settlement's terms of a proposed award of attorney's fees, including timing of payments, are reasonable. Attorney's fees are to be paid based on the benefit received by the Class, and were agreed to be capped at 25 percent (before costs and expenses). Dkt. 363-1 ("Settlement Agreement") ¶ 8.1 ("Class Counsel has agreed, with no consideration from Defendant, to limit their request for attorneys' fees to no more than twenty-five percent (25%) of the Settlement Fund, plus unreimbursed costs and expenses."); *see Bartz*, 2025 WL 2961371, at *3 ("Class counsel will not get an unfair share. The agreement caps any request at 25 percent (before costs and expenses).").

There is no clear sailing provision. Settlement Agreement ¶ 8.1 ("Defendant may challenge the amounts requested."). Under the Settlement, the timing of fee payments will correlate with Anthropic's payments into the Settlement Fund. *Id.* ("Class Counsel shall be paid the Fee Award in equal installments proportionate to Anthropic's payments to the Settlement Fund, as described above, provided that no Fee Award payment shall be paid to Class Counsel from the Settlement Fund until after the Final Approval."); *see Bartz*, 2025 WL 2961371, at *4 ("[A]t our first hearing, plaintiffs' counsel committed to getting its award not in step with monies paid into the fund, but in step with monies paid out of it to class members.").

The Ninth Circuit's *Hanlon* factors also provide a framework for evaluating the fairness of a class action settlement. While the "key *Hanlon* factors are now baked into the text of Rule 23(e), . . . the remaining ones can still be considered for [fairness] analysis." *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025). The remaining factors relevant here include the strength of the plaintiffs' case, the risk of maintaining class action status throughout the trial, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, and the reaction of the class members to the proposed settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The $1.5 billion Settlement provides substantial benefits to the Class in light of the novel claims asserted. *Bartz*, 2025 WL 2961371, at *3. Success at trial was not assured, and a loss would have left the Class with no recourse. *Id.* at *2 ("Plaintiffs have a strong case on the downloading, but success is not assured were they to go to trial."). Additionally, Anthropic's Rule 23(f) petition was fully briefed in the Ninth Circuit when the Settlement was reached. Dkt. Nos. 241, 276, 284, 354. The $1.5 billion Settlement thus provides substantial benefits relative to these litigation risks. *Id.* at *4. The Settlement is also informed by extensive discovery. *Id.* at *2. "Each side was reasonably well informed of the true universe of facts when they signed the term sheet in August 2025." *Id.* at *2.

The Class is represented by "excellent counsel, and it is their judgment that the result reached is fair, adequate, and reasonable." *Bartz*, 2025 WL 2961371, at *3. The Class's response was overwhelmingly favorable: the claims rate has reached at least 91.3 percent of Works, *see*

ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

Supp. Keough Decl. ¶ 3, while only 350 valid opt outs, spanning just 1,802 Works, were timely submitted, *see* JND Decl. ¶¶ 102, and 54 objections or comments were filed.   Some Class Members wrote to the Court to express support for the Settlement.   *See* Dkt. Nos. 589 (Bond), 638 (Miles), 644 (Mahmud).

After full consideration of the factors, the Court finds that the Settlement meets the necessary procedural and substantive requirements under Rule 23(e)(2), and is fair, reasonable, and adequate.

**B.    Final Approval of the Plan of Distribution & Allocation and Claims Process**

The Court finds that the Settlement Administrator effectively administered the notice program pursuant to the Settlement Agreement and the Memorandum Opinion on Preliminary Approval (Dkt. No. 437) and that the Claims process set forth in the Settlement is fair, reasonable, and adequate.

The Court approves the Parties' proposal for allocating the Net Settlement Fund, Dkt. No. 401-1.   The Plan of Allocation and Distribution provides payments to be distributed to valid claimants, who will receive a *pro rata* per-work share, to be divided among copyright owners based on either elected default splits (for non-education works only) or a percentage split determined by contracts or publishing agreements.   *Id.*   If any funds remain in the Settlement Fund after all Valid Claims are paid, the Parties anticipate a redistribution of the remaining funds to Settlement Class Members unless it is economically infeasible to do so.   Subject to Court approval, any final balance will be directed in *cy pres*.   Settlement Agreement ¶¶ 1.34, 2.1(g).

The Settlement also provides a fair and reasonable process for the resolution of any disputes. Should any disputes arise among valid claimants for a given Work, the Special Master will proceed with all reasonable diligence and will endeavor to quickly resolve all disputes based on the law, for any disputes submitted to the Special Master that cannot be resolved by mutual agreement with the assistance of the Settlement Administrator.   Settlement Agreement ¶ 5.1(h); Plan of Allocation ¶ 3(d), 4; Dkt. 501 (appointing Theodore K. Cheng as Special Master).   All submissions made to the Special Master in connection with any dispute resolution process – including publishing

agreements – shall remain confidential and under seal.  Plan of Allocation ¶ 3(d).  All decisions by the Special Master shall be final and binding without a right of appeal.  Dkt. No. 501.

### C.   Releases

Upon the Effective Date, the Parties shall have fully and irrevocably released and forever discharged one another from any and all Released Claims as to the Works on the Works List.  Settlement Agreement ¶¶ 1.29, 3.1, 6.2.g.  Accordingly, the Settlement shall terminate the Action.  *See id.* ¶ 6.2(f).  The Release, however, shall not include any claims related to the enforcement of the Settlement or Protective Order (Dkt. No. 63).  The Release does not implicate any Objections seeking to add Works to the Works List, including those of federal employees, those who did not register their works, those who challenge the treatment of group registrations, or those who otherwise take issue with class criteria because "only works included on the Works List are in the Class."  *Bartz*, 2025 WL 2961371, at *1 (emphasis in original).  All such objections are therefore overruled.  Nor does the Release implicate any Objections taking issue with AI outputs or future conduct.  *Id.* at *3 ("Under the settlement, class members will give up all claims they could have brought against Anthropic broadly related to past AI inputs, namely pirating and copying their works in the past up to the point of any AI output.  But they do not give up claims about past AI outputs, nor claims of any kind about future conduct (on or after August 25, 2025).").  Such objections are also overruled.  The Court addresses additional objections below.

### D.   Objections to the Settlement

The Court overrules all Objections and putative Objections to the Settlement.  *See* Dkt. Nos. 425, 438-39, 539-546, 549-552, 564-69, 571-72, 584-585, 588-89, 594-612, 630, 635-642, 645, 646-3, 648-655, 676.[1]  The Court addresses the Objections by category below, and further holds that any putative Objection filed by a non-class member is stricken because non-class members lack standing to object to the settlement.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-

---

[1] Class Counsel contends that many objections were procedurally improper.  Due to delays in the docketing of certain objections and because Class Counsel was aware of other objections but elected not to file them on the record, the Court declines to overrule any of the objections, docketed as of May 14, 2026, due to procedural deficiencies noted by Class Counsel.  Accordingly, the objections challenging Class Counsel's assertions about procedural deficiencies, *see, e.g.*, Dkt. No. 661 (Pinder), 662 (Jacobson), are overruled as moot.

CV-05944-JST, 2020 WL 1873554, at *4 (N.D. Cal. Mar. 11, 2020) (striking objections of non-class members because "[u]nder Federal Rule of Civil Procedure 23(e), nonclass members have no standing to object to the settlement of a class action.") (internal quotations and citations omitted).

### 1.    Notice

The Objections challenging the reach, content, and duration of the Notice Plan are overruled. *See* Dkt. Nos. 551, 569, and 618 (Werner), 571 and 670 (Hampton), 572, 649, and 655 (Chakanga), 599 (Story).

As to reach, 506,194 potential Class Members (accounting for 99.5 percent of the works on the Works List) were sent notice not returned as undeliverable – within the 70-95 percent notice rate that the Federal Judicial Center considers reasonable. JND Decl. ¶ 79; Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) at 3. Within the direct notice period, JND disseminated notice through direct mail, email, reminder postcards and emails, print and digital press releases, and a media campaign serving 100 million impressions via social media and paid search. *Id.* ¶¶ 39, 48, 52, 59, 70, 75.

As to content, the Court-approved Notice expressly stated that statutory damages could range from $200 to $150,000 per Work, and gave the options of filing a claim and opting out. *See* Class Notice at https://www.anthropiccopyrightsettlement.com/documents; Preliminary Approval Order at 7-13; Dkt. No. 490 at 1-2; Dkt. No. 495 at 4. The Objections contending that the notice steered Class Members towards filing claims instead of opting out, and did not adequately disclose the value of Class Members' claims or the scope of the release are overruled, as the Court reviewed the notice in detail multiple times and gave Class Counsel precise directives to be followed. Dkt. Nos. 437 (Preliminary Approval Order), 490 (Further Order re Class Notice), 495 (Third Order re Class Notice), 496 (Order on Joint Motion to Extend Notice Deadline).

As to duration, the two Objections that argue that the Notice period was too short are overruled. *See* Dkt. Nos. 571 and 650 (Hampton), 572, 649, and 655 (Chakanga). The notice period exceeded the 35-day period specified in this District's Procedural Guidance for Class Action Settlements. That certain filings remained sealed until January 21, 2026 or that the summary judgment order was not available on the settlement website did not unreasonably shorten the notice

period as Hampton and Chakanga claim.  The Court's Class Certification Order, Order on Fair Use, and Preliminary Approval Order were available on the Court's website and provided ample factual basis for class members to make an informed decision about their rights, notwithstanding the fact that other filings were under seal or were unavailable on the settlement website.

### 2. Works List and Class Definition

The putative Objections and comments requesting that the Court expand the Class definition and Works List are overruled.  *See* Dkt. Nos. 438 (Barrett), 540 (Paolinelli), 541 (Tombs), 542 (Leahy), 543, 653, and 659 (Chase), 546 (Dames of Detection, Inc./Johnston), 550, 567, and 634 (Grace), 551, 569, and 618 (Werner), 552 (Miller), 565 (Glenn), 572, 649, and 655 (Chakanga), 571 and 650 (Hampton), 585 (Ryker), 588 (Schapiro), 602, 630, and 663 (Bishop), 603 (Newton Compton Editori SRL), 604 (Tea Tascabili Degli Editori ASS.SPA), 605 (Casa Editrice Nord SRL), 607 (Bollati Boringhieri Editore SRL), 608 (Adriano Salani Editore SRL), 609 (Smith), 610 (Longanesi & C. SRL), 611 (Antonio Vallardi Editore SRL), 612 (Garzanti SRL), 637 (Leonard), 639 (Watkins Media Ltd. & Collective Ink Ltd./Ifeld), 640 (Johnson), 645 (Houghton) and 641, 648 and 661 (Pinder).

First, non-class members lack standing, including to make objections regarding works that are not on the Works List and are thus unaffected by the Settlement.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2020 WL 1873554, at *4 (internal quotations and citations omitted).

Second, the Class is limited only to owners of works listed on the Works List.  *See* Dkt. No. 437 at 2.  In granting preliminary approval, the Court added this qualifier to the class definition: "For avoidance of doubt, only works included on the Works List are in the Class."  Dkt. No. 437 at 2. A number of objections or comments raise the concern that there may be works that otherwise meet the class criteria but are excluded from the Works List.  However, the Works List serves to avoid any ambiguity in what claims are or are not released by the Settlement, and ensures certainty and finality.  Dkt. No. 437 at 3.  Equally important, claims arising out of the use of works that are not on the Works List – even if they otherwise meet or appear to meet the other class criteria – are preserved and unaffected by the Settlement.  For this reason, objections that certain additional works should have been added to the Works List are overruled – the claims related to those works

ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

are preserved, as the Works List serves as a defining record of which works are covered by the Settlement and which works are not.

Third, a number of objections take issue with the requirement that any book listed on the Works List must possess a copyright registration number (registered within a certain timeframe, as set out in the Class definition) as well as an ISBN or ASIN for certainty regarding the eligible and included works. These Objections are overruled: "The class certification order recognized that the related limitations let all class works use registrations as evidence of certain facts and pursue statutory damages." *Bartz*, 2025 WL 2961371, at *1-2. "The class is limited to books for which an ISBN or ASIN exists. From the metadata[,] . . . as well as through commercial metadata associated with ISBNs or ASINs, copyright registrations associated with these works can be identified. For every certificate of registration presented by named plaintiffs, for example, there is an associated ISBN (e.g., Br. Exh. 30). And, because the classes are limited to works registered within five years of first publication, these certificates and the facts therein are presumed valid." *Bartz*, 791 F. Supp. 3d at 1059.[2]

### 3. Adequacy of Relief, Claims Rate, and Remaining Objections

*Monetary relief*. The Objections contending that the $1.5 billion in monetary relief that the Settlement provides is too low, including because of the range of potential statutory damages provided under the Copyright Act, are also overruled. *See* Dkt. Nos. 439 (Reding), 544 (Hale), 546 (Dames of Detection, Inc./Johnston), 549 (Stewart), 551, 569, 618 (Werner), 564 (Sappington), 566 (Burke-Garcia), 571 (Hampton), 572, 649, and 655 (Chakanga), 584 and 593 (Burton), 594 (Choi), 595 (DesJardins), 596 and 606 (Lee), 598 (Hyder), 601 (Larson), 609 (Smith), 640 (Johnson), 642 (Hootman), 646-3 and 662 (Jacobson), 654 (Srinivasan). These Objections are not grounded in "a realistic assessment of the overall risks and rewards of a trial." *In re Facebook Biometric Info.*

---

[2] One Class Member (Dkt. 645 (Houghton)), contends that the class definition and Works List are insufficiently clear because of the presence of multiple "Unique IDs" – a claim filing number generated by the Settlement Administrator solely for purposes of administering the settlement. Houghton's objection is overruled. Class Counsel explains that the Works List employs a unique, non-duplicative identifier (the copyright registration number) leading to a definitive count of 482,460 Works, and that the Settlement Administrator confirmed that it received two timely claim submissions from Houghton, each with a different Unique ID.

ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

*Priv. Litig.*, 522 F.Supp.3d 617, 626 (N.D. Cal. 2021), *aff'd,* No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022).  Even if successful at trial, there remained risk that post-trial proceedings would jeopardize the Class's recovery and cause major delays.  *Id.* at 628 ("[A] multi-billion dollar verdict could create its own major risk for the class.  A number of courts have commented on the potential for a due process problem when statutory damages are pursued by a large class, such as the one here.").  "The settlement thus provides value in prompt closure.  It avoids a prolonged, complex, and expensive trial – and all ensuing appeals."  Preliminary Approval Order at 5.  These Objections are therefore overruled.[3]

*Claims Rate*.  Objector Story contends the claims rate does "not bode well for full participation" in the Settlement.  Dkt. No. 599 at 6.  The claims rate had reached 91.3 percent as of April 16, 2026.  Supp. Keough Decl. ¶ 3.  This Objection is therefore overruled.  *Sierra v. City of New York*, No. 20CV10291CMGWG, 2023 WL 7016348, at *2 (S.D.N.Y. Oct. 25, 2023) (86% claims rate "magnitudes above the average for class action cases") (emphasis added).

*Non-Monetary Relief*.  Several Objectors request additional non-monetary relief, including novel licensing schemes (Dkt. No. 599 (Story), Dkt. No. 566 (Burke-Garcia)), source attribution in Anthropic's outputs (Dkt. No. 549 (Story)), deletion of AI models (Dkt. No. 544 (Hale)), and abolishing use of scanned books for training (Dkt. No. 595 (DesJardins)); *see also* Dkt. Nos. 425 (Ruden), 584 and 593 (Burton), 599 (Story), 600 (Sills), 603 (N.C. Editori), 604 (T.T.D. Editori), 605 (Nord), 607 (Editore), 608 (A.S. Editore), 610 (Longanesi), 611 (A.V. Editore), 612 (Garzanti), 646-3 and 662 (Jacobson).  These requests go beyond the scope of this Settlement and the remedies attainable thereunder.  The Settlement provides forward-looking protections, including the destruction of Class Members' pirated Works.  Settlement Agreement ¶ 2.2.  "Anthropic represents that neither the LibGen or PiLiMi datasets, nor any portions of those datasets, were in the training corpus of any of its commercially released large language models[,]" and the Settlement does not

---

[3] One Objection also argues that the release is "overly narrow in scope" because Anthropic "simply gets release from liability for past conduct."  Dkt. No. 599 (Story) at 3.  But a narrow release **benefits** the Class, and thus does not counsel against final approval.  Class Members retain their rights to sue for future misconduct.  *See* Settlement Agreement ¶ 1.29.  The past-only release does not apply to any output claims, *see Bartz*, 2025 WL 2961371, at *3, narrowing it even further.

ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

release claims for future harm or claims "based on the output of AI models." *Id.* ¶¶ 1.29, 3.1. These Objections are thus overruled.

*Request for Trial*. One Objection argues the Court should compel the Parties to go to trial. Dkt. No. 425 (Ruden). The Settlement accounts for the substantial risks of continued litigation, including the possibility of an adverse ruling, years of appeals, and changes in a defendant's financial position. "That certain Class Members evaluate the risks differently, or would prefer to go to trial despite those risks, does not prevent the Court from granting final approval to the Settlement." *Perkins v. LinkedIn Corp*, No. 13-CV-04303-LHK, 2016 WL 613255, at *6 (N.D. Cal. Feb. 16, 2016); *see also Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). That Objection is overruled.

*Plan of Allocation*. Two Objections challenge the Plan of Allocation and Distribution. *See* Dkt. Nos. 425 (Ruden), 602 (Bishop). Specifically, they argue that the dispute resolution process is inadequate for failing to include authors' agents and that the appointment of Mr. Cheng as Special Master will favor publishers. The Court carefully reviewed Special Master Cheng's credentials and his certification of no conflicts prior to this appointment. Dkt. No. 501. The Objections to his appointment are thus overruled.

### E.     Opt-Outs

The Court has reviewed the list of Class Members who have timely opted out of the Settlement as set forth in the JND Declaration ¶ 102 and Ex. J. The Court also acknowledges that there were multiple opt-out requests submitted after the deadline. *See* Dkt. Nos. 635, 636, 676. As of March 19, 2026, there were five opt-out requests submitted after the deadline.[4] *See* JND Decl. ¶ 102. Donald S. Passman, an entertainment lawyer based in Beverly Hills, filed an additional late opt-out request on June 30, 2026. Dkt. No. 676.

---

[4] In a second supplemental proposed order, Dkt. No. 672, Class Counsel represents that since March 19, an additional four opt-out requests were submitted, bringing the total to nine.

ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

As to three of the five opt-out requests noted in JND's declaration, and the four submitted after the date of that declaration,[5] there has been no showing of excusable neglect as to why these untimely opt-out requests should be honored, and they are therefore disallowed. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 618 (9th Cir. 2018) ("A court may, in cases of 'excusable neglect,' extend the time in which a class member may opt out of a settlement.").

As to Passman's recently filed opt-out request, the Court does not find excusable neglect because the settlement administrator declares that she mailed Passman a long form notice and buck slip on December 1, 2025, a reminder postcard notice on March 9, 2026, and a non-filing claimant notice on April 29, 2026, to Passman's known address.[6] Dkt. No. 678-1 ¶ 4. None of these mailings were returned as undeliverable. *Id.* Given that the settlement administrator implemented the best practicable notice, Passman received at least one notice from the settlement administrator, dated April 29, 2026, and stamped "received" on May 13, 2026, Dkt. No. 676-3, and had reached out to his publisher asking about the settlement on April 17, 2026, Dkt. No. 676-2, and because permitting an opt-out request submitted months after the opt-out deadline will undermine the finality of the settlement, the Court does not find that Passman has shown excusable neglect for waiting until June 30, 2026, to file an opt-out request. It is therefore disallowed.

Class Members Esquivel and Castells, however, have shown excusable neglect. Castells declares that he never received the class notice, that he first learned about the class action from his aunt and co-author, Esquivel, spoke to counsel on February 12, 2026, and submitted his opt-out notice to the claims administrator on February 16, 2026. Dkt. No. 636. Given that the deadline to opt-out expired on February 9, 2026, Dkt. No. 583, the delay of a few days under the circumstances of this case do not warrant disallowing Castells' late opt-out request.

---

[5] In the alternative, Passman conditionally objects to the settlement. Dkt. No. 676. His objection is overruled as untimely. The deadline to object was February 9, 2026, Dkt. No. 535, and as discussed above, Passman has not demonstrated grounds justifying his failure to act by that deadline. *See* Dkt. No. 676.

[6] The address matches the one on Passman's California State Bar profile. *See* Dkt. No. 678 at 8-9.

Esquivel has likewise demonstrated excusable neglect. She learned about the settlement from a friend on February 10, 2026. Dkt. No. 635. She, and her nephew, Castells, spoke with a lawyer on February 12, 2026, and due to suffering a stroke, Esquivel was not able to submit her opt-out notice until March 30, 2026. *Id.* Additionally, she lives in Mexico, speaks Spanish, was not able to understand the class notice, and asserts no Spanish translation was provided. *Id.*

Accordingly, the untimely opt-out requests are disallowed, except for those of Esquivel and Castells.

### F.    Other Settlement Matters

The Action and all Released Claims asserted against the Parties are settled and dismissed with prejudice. Execution of the Settlement shall proceed as set forth in the Settlement Agreement.

The Parties shall file a post-distribution accounting in accordance with the Northern District's Procedural Guidance for Class Action Settlements within 21 days after the substantial completion of the Net Settlement Fund's distribution ("Post-Distribution Accounting"). In addition to the information contained in the Guidance, the Post-Distribution Accounting must discuss any significant or recurring concerns communicated by class members to the Settlement Administrator or counsel since final approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved. The Parties may request a continuance of the deadline for the Post-Distribution Accounting upon a showing of good cause.

The Court reserves jurisdiction over this action and each Party to the Settlement with respect to the interpretation and implementation of the Settlement for all purposes, including enforcement of any of the terms thereof at the insistence of any Party and resolution of any disputes that may arise relating to the implementation of the Settlement or this Order.

### II.    Attorney's Fees, Expenses, and Service Awards

Plaintiffs move for (1) 12.5 percent – $187,500,000 – of the $1.5 billion Settlement Fund in attorney's fees to Class Counsel;[7] (2) reimbursement of $2,975,197.46 in litigation expenses; (3) a cost reserve of $18,220,000 for future expenses, including payment to the Settlement

---

[7] This is reduced from the original request in Class Counsel's opening brief of 20% – $300,000,000 – of the Settlement Fund. *Compare* Dkt. No. 505 *with* Dkt. No. 620.

ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

Administrator; and (4) service awards of $50,000 to each Class Representative. *See* Dkt. No. 620 (Reply Brief in Support of Fee Application). The Court addresses each request in turn.

## A.    Attorney's Fees

"District courts have discretion to choose which method they use to calculate fees, but their discretion must be exercised to reach a reasonable result." *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 929 (9th Cir. 2020) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)). To guard against an unreasonable result, the Ninth Circuit encourages district courts to "cross-check their calculations against a second method." *Id.* at 944-45 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 n.40 (3d Cir. 1995)).

Where the percentage-of-recovery method is employed, it is well established that 25% of a common fund is a presumptively reasonable amount of attorney's fees. *See In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). The Ninth Circuit, however, has said that "a twenty-five percent benchmark may be 'of little assistance' in megafund cases[.]" *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d at 931 (quoting *Vizcaino*, 290 F.3d at 1048). "[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *In re Bluetooth*, 654 F.3d at 942 (citations omitted). "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

The requested fee award of 12.5% – $187,500,000 – of the Settlement Fund would impute a multiplier of 6.92 on Class Counsel's estimated lodestar of $27,082,963, (Dkt. No. 619-1 ¶¶ 35, 58), far outside the range of multipliers found to be reasonable in mega fund cases within this Circuit. *See, e.g., In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-md-02843-VC, 2023 WL 8445812, at *2 (N.D. Cal. Oct. 10, 2023) (awarding 25% of the $750 million settlement fund, which yielded a 1.99 multiplier); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *11 (N.D. Cal. Sept. 2, 2015) (granting Class Counsel 2.5

multiplier on their lodestar, for a total fee award equal to about 9.8% of the $415 million settlement). Because applying the percentage-of-recovery method would result in a windfall for Class Counsel in light of the hours spent on this case and the size of the fund,[8] the Court elects to apply the lodestar method to determine the appropriate amount of fees. *See In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *7 (applying lodestar method where the total multiplier plaintiff's counsel requested was 4.8, which "in the Court's judgment, [was] simply too high for a settlement of this size and would result in windfall profits for class counsel in light of the hours spent on the case") (internal quotations and citations omitted).

"Under the lodestar method, the district court must calculate the lodestar figure based on the number of hours reasonably expended on the litigation." *In re Bluetooth*, 654 F.3d at 944. Class Counsel's actual time expenditures, 22,490.6 hours, *see* Dkt. Nos. 620 at 8 (citing Dkt. Nos. 505-1 ¶ 3, 17 & n.1 (reporting SG's total hours as 9,341.6 from inception to December 1, 2025 and projected hours as 5,356 through February 2027), 505-3 ¶ 18 (reporting LCHB's total hours as 13,149.10 as of December 1, 2025 and projected hours as 6,535 through February 2027), when combined with projected time expenditures of 11,891 hours, for a total of 34,381.60 hours in actual and projected time, are reasonable. Class Counsel's hourly rates, ranging from $2,250 to $550, Dkt. Nos. 505-1 ¶¶ 25-26, 505-3 ¶ 24, are also reasonable. The charged rates fit within the prevailing rates in this District, and the qualification and experience of counsel. Accordingly, the claimed total lodestar of $27,082,963, Dkt. No. 619-1 ¶ 58, is presumptively reasonable.[9]

---

[8] That Class Counsel managed their time efficiently or increased the size of the Class by engaging in discovery that uncovered the full scope of the misconduct alleged in this case, as is expected of any adequate class counsel, would not make a fee award based on the percentage of recovery method any less of a windfall given the size of the settlement. Under the circumstances of this case, the lodestar method is more suited to determine a fair and reasonable fee award, as "[a] positive multiplier rewards . . . Class Counsel for its efforts in achieving a swift settlement, while recognizing that counsel's efficiency actually reduced its lodestar." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1352859, at *6 (N.D. Cal. Apr. 12, 2017).

[9] Though the Court finds Class Counsel's total lodestar reasonable, the Court will take an additional step to protect the interests of the Class. The Court notes that Class Counsel have agreed that 10% of the fee amount will be withheld until the Parties file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements. To the extent that Class Counsel's actual time incurred (using 2025 rates) is less than the amount

The Court may "adjust" the lodestar figures "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.' " *In re Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). "Foremost among these considerations, however, is the benefit obtained for the class." *Id.* at 942.

***Quality of the Representation.*** Class Counsel "are experienced in class actions, including copyright." *Bartz*, 791 F. Supp. 3d at 1054. These attorneys "represent related parties in co-pending litigation against other AI companies[,]" and "do not hesitate to go to trial[.]" *Id.* The Class received quality representation from experienced attorneys.

***Benefit Obtained for the Class.*** As the Court noted in its Opinion on Preliminary Approval, the Settlement is "the largest copyright class action settlement in history." *Bartz*, 2025 WL 2961371, at *3. The size of the $1.5 billion non-reversionary settlement gives class members "a per-work award of about $3,000, less costs and fees." *Id.* That per-work amount is "an order of magnitude more than the maximum proposed for books in the *Google Books* settlement that was rejected for releasing future claims." *Id.* (citing *Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666, 672 (S.D.N.Y. 2011)). It is also more than "four times the statutory minimum for ordinary infringement, which is also the most common award in copyright cases, of $750" and more than "fifteen times the statutory minimum for innocent infringement of $200." *Id.* (footnote and citation omitted).

Class Counsel also secured non-monetary relief. The Settlement requires Anthropic to "destroy all the original files of works torrented/downloaded from Library Genesis or Pirate Library Mirror, and any copies that originate from the torrented copies," subject to certain legal preservation obligations. Settlement Agreement ¶ 2.2. This destruction is a benefit for Class Members.

***Complexity and Novelty of the Issues Presented; Risk of Non-Payment.*** Class Counsel litigated complex, novel issues in an uncertain area of the law, where they faced a real risk of

used to calculate the lodestar ($27,082,963), the Court hereby orders Class Counsel to report that in the post-distribution accounting. If it is less than that amount, the Court may reduce Class Counsel's fee award by some or all of the holdback amount, at the Court's discretion.

adverse rulings and zero recovery in this first of its kind litigation. Class Counsel also litigated against experienced attorneys from major law firms.

In light of the above factors, the Court finds that a multiplier of 3.75, for a total fee award of $101,561,111 is reasonable. *See Kang v. Wells Fargo Bank, N.A.*, 2021 WL 5826230, at *17 (N.D. Cal. Dec. 8, 2021) (citing *Vizcaino*, 290 F.3d at 1051 n.6) (observing that the "Ninth Circuit has recognized that multipliers generally range from 1 to 4"); *cf. Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) (awarding 5.5 multiplier where, among other things, class counsel tried the case and defended against two class appeals). This amounts to nearly 6.8% of the settlement fund, which is a reasonable percentage given a fund of this size and confirms the appropriateness of the lodestar awarded.[10] *See, e.g.*, *Vizcaino*, 290 F.3d at 1052 (listing attorney fee awards in common fund cases ranging fees between 2.8 to forty percent of the common fund).[11]

### 1.    Objections to Fees

In light of the reduced award of fees, the Objections related to Class Counsel's fee request are overruled. *See* Dkt. Nos. 545 (Golomski), 551, 569, and 618 (Werner), 564 (Sappington), 589 (Bond), 599 (Story), 600 (Sills), 609 (Smith), 638 (Miles). Moreover, "[t]he Objections lack appreciation for the jurisprudence that governs the economics of representative actions, which allow for the vindication of aggregated interests that would otherwise go unaddressed." *Katz-Lacabe v. Oracle Am., Inc.*, No. 3:22-CV-04792-RS, 2024 WL 4804974, at *5 (N.D. Cal. Nov. 15, 2024), *appeal dismissed*, No. 24-7650, 2025 WL 1703624 (9th Cir. Apr. 3, 2025). Nor do they appropriately account for the risk that Class Counsel assumed. The gravamen of these Objections is that Class Counsel could have a obtained higher monetary award for the Class. However, aside

---

[10] The Court does not award any fees to non-appointed attorneys who claim to have performed work for the benefit of the Class for the reasons previously explained by the Court. Dkt. No. 515 (Judge's Memo. and Order Re Petitions for Fees and Costs). Any objections challenging an award to those lawyers are thus overruled as moot.

[11] In *In re Coll. Athlete NIL Litig.*, No. 20-CV-03919 CW, 2025 WL 3171376, at *1 (N.D. Cal. July 11, 2025), the district court awarded class counsel 20% of the $1.976 billion settlement fund and exercised its discretion not to conduct a lodestar cross-check. At the final approval hearing, Class Counsel represented that the multiplier in that case was 3.3 or 3.4, in line with the multiplier awarded in this case.

from pointing to the wide range of statutory damages that are possible under the Copyright Act, the Objections do not convincingly explain why the present Settlement is insufficient given the risks attendant to continued litigation: "[A] loss would result in no recourse, if there was no copying or only fair use. All the district court's rulings and verdict could get appealed." Preliminary Approval Order at 5.

### B.      Litigation Expenses

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Roman v. Jan-Pro Franchising Int'l, Inc.*, No. 3:16-cv-05961-WHA, 2024 WL 2412387, at *5 (N.D. Cal. May 23, 2024).

Class Counsel have incurred $2,635,197.46 in unreimbursed litigation expenses,[12] including costs related to experts, discovery, mediation, legal research, filing fees, document hosting services, copying and mailing, and other customary litigation expenses. Dkt. No. 619-1 ¶¶ 64-75 (describing the cost fund and detailing the litigation expenses that Class Counsel incurred by category). Class Counsel further anticipate an additional $18,220,000 in expenses related to the administration and finalization of the settlement. *Id.* ¶ 78.

With the exception of $340,000 contributed by non-appointed counsel, the expenses for which Class Counsel seek reimbursement are "typically [] billed to paying clients in non-contingency matters" and are recoverable. *See Katz-Lacabe*, 2024 WL 4804974, at *5 (internal quotations and citation omitted). The request for reimbursement is granted in the amount of $2,635,197.46.

The Objections to Class Counsel's expenses, Dkt. Nos. 20 (Golomski), 46 (Smith), do not explain why any of Class Counsel's past or anticipated expenses are unreasonable or why Class Counsel would not be entitled to reimbursement of such expenses. Class Counsel's past costs and anticipated future expenses to the Settlement Administrator and Special Master are reasonable. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *8 (N.D.

---

[12] Class Counsel seek to recover a total of $2,975,197.46 in unreimbursed litigation expenses, which includes a $340,000 contribution to the litigation fund by non-appointed counsel. Dkt. No. 619-1 ¶¶ 59-76. This amount is disallowed.

ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

Cal. Aug. 17, 2018) (granting final approval where administration reached $23 million, or 20 percent of the $115 million settlement).  The Objections to expenses are therefore overruled.

### C.    Service Awards for Class Representatives

Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis omitted) (citing 4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed. 2008)).  While such "awards are discretionary," they are commonly issued because of the many benefits they provide: "compensat[ing] class representatives for work done on behalf of the class"; making "up for financial or reputational risk undertaken in bringing the action"; and recognizing class representatives' "willingness to act as a private attorney general." *Id.* at 958-59.

The requested service awards of $50,000 for the three Settlement Class Representatives – Andrea Bartz, Inc., Charles Graeber, and MJ+KJ, Inc. – are unreasonable.  While the Court recognizes that a high service award may be warranted in cases where class members face risk of retaliation, *see, e.g.*, *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *18 (N.D. Cal. Sept. 2, 2015) (authorizing $80,000 and $120,000 awards in case with $415,000,000 settlement fund where "each of the class representatives risked significant workplace retaliation by serving as a named plaintiff in this high-profile lawsuit"), no such showing has been made here.

However, consistent with the Court's Procedural Guidance for Class Action Settlements, the Class Representatives submitted evidence of the value provided by the proposed awardees, the time they spent on the litigation, and other justifications for a reduced service award.  *See* Dkt. No. 619-2 (Declaration of Class Representatives In Support of Final Approval); *see also* Dkt. Nos. 385 (Bartz Decl.), 386 (Graeber Decl.), 387 (Johnson Decl.).  This evidence confirms that all three Class Representatives expended considerable time and effort to assist in the investigation and litigation of this case. *See id.*  In particular, all three Class Representatives (i) reviewed filings; (ii) responded to extensive discovery requests; (iii) prepared for and sat for depositions; (iv) traveled to San Francisco for multiple hearings; (v) participated heavily in the negotiation of the Settlement, including the plan of allocation; (vi) submitted declarations in support of preliminary approval;

(vii) reviewed and contributed edits to the notice materials and claim form; and (viii) worked to implement the Settlement by speaking to other authors and stakeholders. *See* Dkt. Nos. 385-87. All three Class Representatives were committed to ensuring that the Settlement was fair to class members, and that class members could understand it, and treated their responsibilities to the Class as their jobs. *See id.* Service awards to the Class Representatives, in a reduced amount of $15,000 are well warranted in these circumstances. Further, no Objections challenge the requested service awards.[13]

Therefore, the Court grants $15,000 to each of the three Class Representatives, for a total of $45,000.

## III.    CONCLUSION

The Court concludes that final approval is warranted under the Rule 23(e) factors, Ninth Circuit precedent, and this District's Procedural Guidance for Class Action Settlements. The Court finds that under Rule 23(e)(2), (i) the Class Representatives and Class Counsel have adequately represented the Class; (ii) the proposed Settlement was negotiated at arm's length; (iii) the relief provided for the Class is adequate; and (iv) the proposed Settlement treats Class Members equitably relative to each other.

The Court further finds that all relevant factors are satisfied, including "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel . . . ; and [(7)] the reaction of the class members to the proposed settlement." *Churchill Vill.*, 361 F.3d at 575.

Finally, the Court has considered Class Members' response to the proposed Settlement, Class Counsel's request for attorney's fees, costs, and service awards pursuant to the Northern District's Procedural Guidance for Class Action Settlements, and finds that final approval is warranted in light thereof.

---

[13] One Objection supports the requested service awards in part. *See* Dkt. No. 601 (Larson) at 2 ("Lead plaintiffs should be entitled to $50,000.00, as their cases serve as examples for the class, however the class members only receive the $3,000.00, not the additional $50,000.00[.]").

ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

Having considered the above, the Court finds that the proposed Settlement is fair, free of collusion, and consistent with Plaintiffs' fiduciary obligations to the Class. The Motion for Final Approval is hereby **GRANTED**. Upon the entry of this order and the Effective Date under the Settlement Agreement, all settling Parties and the Class shall be bound by the Settlement Agreement and this Order. The Settlement Administrator and Special Master shall have final authority to determine the share of the Net Settlement amount to be allocated to each Class Member pursuant to the plan of allocation and distribution approved by the Court.

The Court **DISALLOWS** the opt-outs submitted after the February 9, 2026 deadline, with the exception of Esquivel's and Castells's untimely opt-out requests, which are **ALLOWED** based on their showings of excusable neglect.

The Court **GRANTS** Plaintiffs' Motion for: (1) attorney's fees to Class Counsel in the amount of $101,561,111, nearly 6.8% percent of the non-reversionary Settlement Fund, consisting of $1.5 billion plus interest paid by Anthropic or accrued in the Settlement Fund, (2) reimbursement of expenses totaling $2,635,197.46 and a cost reserve of $18,220,000 in anticipated expenses, and (3) service awards of $15,000 for each of the three Settlement Class Representatives (totaling $45,000). The Court will withhold 10 percent of Class Counsel's fee award until the Parties file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements. To the extent the final lodestar is less than Class Counsel's present projection of the final lodestar, the Court retains discretion to reduce Class Counsel's fee award from that holdback to account for the impact of any difference between the projected and actual final lodestar. No expenses shall be paid from the cost reserve without prior Court approval. Any request for Court approval must include: (i) a detailed breakdown of the costs that have been incurred for which Class Counsel seek reimbursement from the cost reserve; (ii) the reason and purpose the costs were incurred; and (iii) an attestation that states costs were reasonable in the context of settlement and claims administration, with case citations or declarations providing appropriate comparators.

///

///

///

ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO

Final judgment is hereby **ENTERED** in accordance with the terms of the Settlement Agreement and this Order.  Without affecting the finality of this Order and Judgment, the Court reserves jurisdiction over the implementation of the Settlement, including enforcement and administration of the Settlement Agreement.  This document constitutes a final judgment (and a separate document constituting the judgment) pursuant to Federal Rules of Civil Procedure 54 and 58.

The above-captioned Action is **DISMISSED** in its entirety with prejudice.  The Clerk shall close the file in this matter.

**IT IS SO ORDERED.**

Dated:  July 20, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
| CASE NO. 3:24-CV-05417-AMO