UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED
AUG 31 2026
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

ANDREA BARTZ, ANDREA BARTZ, INC.
CHARLES GRAEBER, KIRK WALLACE
JOHNSON, and MJ + KJ Inc.,

Plaintiffs,

v.

ANTHROPIC PBC,

Defendant.

No. 3:24-cv-05417-AMO

Hon. Araceli Martinez-Olguin

**OBJECTOR'S REQUEST TO APPEAL/INTERVENE IN APPEAL**

1. I am a member of the Class due to three of my books appearing on the List of Works.

2. Anthropic pirated seven of my books, four of which do not appear on the List of Works due to my (now defunct) publisher's breach of contractual duty to copyright them.

3. I timely filed an Objection in order to have all seven of my stolen novels included in the Settlement (inclusive of the four novels my publisher failed to copyright, despite their contractual duty to do so). Further, I testified at the District Court's Settlement Hearing.

4. At the Final Settlement Hearing, Objectors were given two minutes to speak (timed). Despite my respectfully requesting additional time to speak, the Court denied my request. There was, however, adequate time to allow more arguments from Objectors, due to the Hearing ending well before 5:00PM, and approximately six other Objectors opting to speak (amounting to less than twenty minutes total time for all Objectors.)

5. During the Final Settlement Hearing, the Court did not address any of the issues raised by me, or any other Objector. Nor did the Court ask any questions of me, or any Objector.

6. Indeed, the primary focus of the Court during the Final Settlement Hearing appeared to be the issue of attorneys' fees, which may give the public (including the injured Authors) the impression that the Court had already decided the issue of "what books should be included in the List of Works" before the Hearing even began. (See article by the Authors Alliance, attached as Exhibit 1.)

7. The District Court appeared to not carefully consider any of the Objector's arguments, despite the well-established legal principle that Courts should give adequate weight to objectors (see Fordham Law Review 2020 Vol, 89:475, 477, which states: "Good objectors are critical to the [class action] process because… the judge reviewing the settlement does not have the benefit of the usual adversarial settling.")

8. Hundreds of Authors, like myself, were harmed by publishers' failure to copyright and should be included in the Settlement as a matter of equity. (See August 20, 2026, article by the Authors' Guild, presenting their survey study showing hundreds of authors were denied settlement payments due to publishers' breach, attached as Exhibit 2.)

9. It is reasonable to assume that the Author's Guild had not fully understood the depths to which publishers had failed to register copyrights for Authors, despite being contractually obligated to do so, when the Guild declared their supported the Settlement.

10. At the Final Settlement Hearing, Plaintiffs' counsel had stressed to the Court that the Settlement was fair due to the high number of opt-ins. At the Hearing, it was my intent to present a Law Review Article (Vanderbilt Law Review, 2004, Vol. 57:5:1529, 1566, which states: "Our study finds… that opt-out… rates in class actions are generally trivially small percentages of the class. Dissent rates decrease as the number of class members increase." Thus, given the large magnitude of Members in the Class, Plaintiffs' argument: 'Settlement must be fair because the large number of opt-ins,' is baseless, as well as self-serving. Further, Plaintiffs' counsel artificially decreased the inclusion pool by arguing that copyright registration must be mandatory for inclusion.

11. If the Court allows the Settlement to prevail, the outcome will especially egregious given that:
    - (a) The proposed settlement would leave me (and other Authors similarly situated) negatively impacted by allowing Anthropic to profit despite Anthropic's bad intent and illegal actions.
    - (b) Authors who were already injured by their publishers will be further injured by the Settlement with Anthropic.
    - (c) Indeed, under the Settlement, plaintiff's counsel, Anthropic, and the contract-breaching publishers would have made a profit for themselves off of Authors' work, while the Authors are left with almost no monetary restitution for the Work they themselves created.
    - (d) Allowing Anthropic, and Plaintiff's Counsel, to violate the long-standing common law theory of Authorship and Copyright protection by insisting on actual U.S. Registration (regardless of a Copyright Notice page, which myself and many authors had, along with ISBN's and AISN's) will undoubtedly result in *de-facto* encouragement of further theft and piracy by AI companies due to a low-stakes "gamble." This outcome clearly goes against public policy.

12. As a result of Anthropic's piracy, and publishers like mine no longer being in business, hundreds of Authors are unable to claim restitution due to no fault of their own.

13. The District Court could have, and should have, ordered punitive damages against Anthropic for each and every theft of work that bore U.S. Copyright Notice, regardless of actual U.S. Copyright registration, in order to make all Authors of pirated works whole.

14. This settlement figure of approximately $3,000.00 per Work is especially disproportionate considering the billions of dollars received in recent cash infusions to Anthropic. (See attached article from the LA Times, where Anthropic's valuation was estimated at roughly $965 billion, as of last week., attached as Exhibit 3.)

15. Class Counsel should be paid less attorney fees than what was awarded by the Court because the settlement paperwork distributed to all claimants failed to include adequate instruction and information as to how to e-file with the Court. This omission failed to provide a free, quick, and easy filing methodology for all Class claimants, most of whom have no legal background/knowledge, and some with limited disposable income to pay for copies and U.S. postage. This created hardship for all Authors trying to learn about the proposed Settlement, and likely lowered the number of Objectors.

16. Should the Appeals Court grant an Appeal in the filing by the Publishers' Coordination Counsel, I am requesting to intervene in that action for the sake of judicial efficiency.

17. In addition to being the Writer of the above stated Works, I am an attorney, actively practicing law in Connecticut. In this matter, however, I am acting in my capacity as a Class Member.

Stacy Lynn Werner, Esq. (licensed in CT)
200 Lake Ave.,
Trumbull, CT 06611
(203) 556-5596
stacywerner200@gmail.com

Respectfully Submitted,

/s/ [signature]

Stacy Lynn Werner, Esq.
Objector/Appealer/Intervenor

ALLIANCE

EXHIBIT 1

# Bartz v. Anthropic Fairness Hearing: Observations and Takeaways

By Authors Alliance / May 14, 2026

| Name | Class Member? | Postmark Date | Date Filed | Dkt. | Category of Objection or Comment | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Settlement Amount | Fee Request | Expansion of Class | Miscellaneous |
| Sarah Ruden | Yes | | 09/25/25 | 425 | | | | X |
| Judith A. Barrett | No | 10/20/25 | 10/20/25 | 438 | | | X | |
| Jaclyn Reding | Yes | 10/14/25 | 10/22/25 | 439 | X | | | |
| Richard Paolinelli Tuscany Bay Books (Richard Paolinelli) | No | | 01/14/25 | 539<br>540 | | | X | |
| George Tombs | No | | 01/14/26 | 541 | | | X | |
| Stephen M. Leahy | No | | 01/14/26 | 542 | | | X | X |
| Matthew Chase | Yes | | 01/14/26 | 543 | | | | X |
| Shannon Hale | Yes | 12/16/25 | 01/14/26 | 544 | X | | | X |
| Casey Golomski | Yes | 12/10/25 | 01/14/26 | 545 | X | X | | |
| Dames of Detection, Inc. (Matthew S. Johnston, attorney) | No | 10/27/25 | 01/14/26 | 546 | X | | X | |
| David Wayne Stewart | Yes | 12/15/25<br>- | 01/15/26<br>- | 549<br>568 | | | | X |
| Natasha Grace | Yes | 12/12/25 | 01/15/26 | 550<br>567 | | | X | X |
| Stacy Lynn Werner | Yes | 12/11/25 | 01/16/26 | 551<br>569 | X | X | X | X |
| Teresa K. Miller | No | 01/05/26 | 01/08/26 | 552 | | | X | |
| Robert Sappington | Yes | 01/08/26 | 01/13/26 | 564 | X | X | | X |
| Russell W. Glenn | Yes | | 01/21/26 | 565 | | | X | |
| Amelia Burke-Garcia | Yes | 01/15/26 | 01/20/26 | 566 | X | | | X |
| Brenda Hampton | Yes | | 01/23/26 | 571 | X | | | X |
| Chinonto Chakanga | Yes | | 01/23/26 | 572 | X | | | X |
| George Burton | Yes | 01/23/26<br>- | 01/12/26<br>02/04/26 | 584<br>593 | X | | | X |
| Jada Ryker | No | | 01/21/26 | 585 | | | X | |
| Amy Schapiro | No | 01/22/26 | 01/19/26 | 588 | | | | X |
| Heidi S. Bond | Yes | 01/20/26 | 01/19/26 | 589 | | X | | |
| Mary H.K. Choi | Yes | 01/27/26 | 01/30/26 | 594 | X | | | |
| Terry DesJardins | Yes | 01/29/26 | 02/02/26 | 595 | X | | | X |

An overview of some of the objections filed in *Bartz v. Anthropic*

The fairness hearing in *Bartz v. Anthropic* took place this afternoon, Thursday, May 14, 2026, before Judge Araceli Martínez-Olguín in the Northern District of California. The hearing addressed approval of the $1.5 billion class action settlement, Class Counsel's fee request, and the objections and replies filed by class members and others.

The Court did not rule from the bench. Judge Martínez-Olguín indicated she would take the matter under submission and expects to issue short orders as soon as tomorrow. What follows are our preliminary observations.

## Observations from the Hearing

**The claims rate has continued to climb.** Class Counsel reported that the claims rate, which stood at 91.3% as of the April 30 update, is now 92.77%. Counsel also stated that opt-outs remain modest: 350 valid opt-outs covering 1,802 works, with a handful of late opt-outs received after the deadline. Counsel has asked the Court to require those late filers to show a good reason for missing the deadline before their opt-outs are accepted.

**Class Counsel framed the volume of "wrong class" objections as evidence of the settlement's strength.** A recurring theme in counsel's presentation was that many objectors are not class members at all: they are authors and publishers who want their works *included* and are unhappy that their works were left off the works list for one reason or another. Counsel argued that this reflects how desirable inclusion in the settlement has become.

**Objectors were given only two minutes each.** That allocation noticeably constrained the presentations. The objectors who appeared raised, in compressed form, several of the arguments already developed in their written filings:

- *Stacy Werner* (attorney and author of seven books) argued that the settlement structure gives insufficient attention to independent authors and publishers, and raised the publisher's failure to register copyright as a distinct issue.
- *Victoria Pinder* renewed her group-registration objection: four of her works appear on the Works List under a single group registration (TX0008716839), and she will receive a single share for what she describes as separately authored and separately used books.
- *Matthew Chase* focused on pseudonymous works, arguing that the Works List methodology fails authors who followed Copyright Office practice on pseudonyms and disadvantages self-published authors whose names do not cleanly match the list.
- *Natasha Grace* raised a similar group-registration issue and asked the Court to consider a remedial process by which authors who believe they have been wrongly excluded could submit their titles for inclusion.

- *Robert Jacobson* argued that $3,000 is a small fraction of the $150,000 statutory ceiling and that the absence of information about how individual works were used in training makes proportional analysis impossible.
- *Ramsey Hootman* asked why a one-time payment is an appropriate resolution if Anthropic continues to profit from the works on an ongoing basis.

James Bartolomei, counsel appearing for objectors, made the argument that the notices about the settlement were insufficient because they didn't include all relevant information. In particular, he argued that Judge Alsup's fair use order was never made available to the class through the settlement website, and that the underlying summary judgment briefing was likewise absent. The fair use order is central to understanding the residual liability Anthropic faced — and therefore central to a class member's decision whether to opt out or accept $3,000. Bartolomei requested a 35-day extension of time on that basis.

**Judge Martínez-Olguín's questioning focused heavily on the fee request and on expense accounting.** Most of the bench's questions concerned attorneys' fees and the structure of the cost reserve, not the merits of the objections.

- On the **service awards** ($50,000 to each of the three named plaintiffs), Class Counsel justified them by pointing to the visibility of the case, the work undertaken by the named plaintiffs, and the absence of objections to the awards.
- On the **cost reserve** (a pool of settlement money set aside up front to cover ongoing costs of administering the settlement), the Judge pressed counsel on why expenses were being handled through a reserve rather than reimbursement, and signaled skepticism about money being administered outside the court's view. Counsel pointed to Dkt. 619-1 for the cost detail, described a $15 million cap with the lion's share going to ongoing administration, and represented that unspent funds would return to the class.
- On the actual **attorneys' fees and their fee multiplier**, the Judge asked counsel to identify the three best Ninth Circuit cases supporting the size of the requested fee. Some background may help here: in large class actions, courts often cross-check a percentage-of-the-fund fee request (here, 12.5%) against the lawyers' actual hours worked multiplied by reasonable hourly rates (the "lodestar"). The ratio between the requested fee and that hours-based figure is the "multiplier." Class Counsel reported a current hours-based figure of approximately $22 million, with $27 million total

and that Class Counsel's work in developing the Works List, uncovering the piracy issues, and litigating in an untested area of law warrants the requested fee.

## What Happens Next

Judge Martínez-Olguín took the matter under submission. She indicated that short orders may follow as early as tomorrow. We will continue to track this case and post updates as it develops. The full docket is available on CourtListener.

---

### Discover more from Authors Alliance

Subscribe to get the latest posts sent to your email.

Type your email...

Subscribe

## Related Posts

### Announcing Our Fall Workshop Series for New Academic Authors

August 18, 2026

Authors Alliance and UC Berkeley Library's Office of Scholarly Communication and Information Policy are pleased to collaborate on this fall [...]

Read Post »

### What Happens When OMB is Sued Over its New Proposed Grant Rules?

July 28, 2026

INDUSTRY & ADVOCACY NEWS

# Survey Results Detail Publishers' Failure to Register Authors' Copyrights

August 20, 2026

Share




The Authors Guild recently conducted a survey of authors to gather information about a troubling issue that came to light in the wake of the $1.5 billion Anthropic copyright class action settlement. After the settlement was announced, the Guild heard from many authors who told us that they had discovered that their publisher failed to register one or more of their books with the U.S. Copyright Office, in many cases despite clear obligations in their publishing agreements requiring the publisher to do so, making the books ineligible for the settlement.

2021 and 2022, 2) had ISBN or ASIN numbers, and 3) were registered with the Copyright Office within 3 months of publication or prior to the initial infringement were qualified to be covered by the class. Many authors and agents informed us that they believe their books were left off the "Works List" because of the publisher's failure to register them.

# Survey and Results

To help determine the scope of this problem, we posed a series of questions to authors about their experiences in this area. We asked authors to tell us whether their publishing contract required the publisher to register the copyright in the book, and if so, whether the publisher was required to do so within a specific time period. If there was a specific time requirement, we asked whether it was within three months of publication—the period provided under the copyright law to ensure eligibility for statutory damages and attorneys' fees—or another deadline. Finally, we asked whether the publisher complied with that requirement. Authors were invited to list the specific titles and publishers to which their answers applied and could provide responses for multiple titles.

We received responses from over 500 authors, who listed more than 1,400 books and nearly 400 imprints, with publication dates ranging back over 40 years.

- For a majority of the books (54 percent), authors confirmed that their contracts ***did*** require the publisher to register the copyright; for another 17 percent, the author said they didn't know if there was such a requirement.
- As to whether the publisher complied, we received responses regarding 864 books. For the overwhelming majority of those—804, or approximately 93 percent—authors reported that the publisher failed to comply with the registration requirement. (To be clear, we believe that very high failure rate reflects self-selection in who responded to the survey and not the actual noncompliance rate.)
- As to the specific deadline provided in the contract, we received 470 responses, of which 258 (54.9 percent) said that the deadline was three months from publication.

Of course, these results by themselves do not prove that a breach of contract has occurred in any individual case. As with all contracts, that determination would require an examination of the specific contractual terms. And we would need more information to determine how many of these books would have been eligible for the Anthropic settlement but for the publisher's failure to register (e.g., were they actually downloaded by Anthropic in 2021 or 2022 from LibGen or PiLiMi, respectively). But these responses do signal that the problem of publishers failing to register copyrights is not limited to a few isolated cases. Hundreds of authors have reported that, at least in their view, their publisher failed to comply with its contractual registration obligation.

registration requirement, 321 were published between 2019 and 2025. This is consistent with anecdotal evidence we have received about publishers falling behind in their registration processes during the pandemic.

# How to Protect Yourself

Ultimately, these results reinforce the critical need for authors and agents to insist that specific, enforceable registration requirements be included in their publishing contracts.

- If your publisher does not have these in its standard contract, you should insist that it add them. We have **provided information here** about what these terms should look like as well as how you can register your manuscripts yourself if your publisher fails to do so.
- In addition, we have proposed a **new model contract provision for registration**, which would establish a process that would make it more likely the title does get registered.

While it is unfortunately too late to be included in the Anthropic settlement if your book wasn't registered within the required time period, registration is essential to ensure that your work is fully protected going forward, including in future AI litigation awards. The Anthropic settlement is a reminder to authors and publishers alike that copyrights are meaningless if they cannot be enforced, and that timely copyright registration is essential to enforcement.

Member Login    Sitebuilder Login

**MEMBERSHIP & SERVICES**

Join the Guild

About Membership

Legal Services

Web Services

Renew Membership

EXHIBIT 3

BUSINESS

# Anthropic's $65-billion revenue surge turbocharges IPO race with OpenAI




Fueled by soaring demand for its Claude and Fable AI tools, Anthropic is now valued at $965 billion, surpassing archrival OpenAI. (Bloomberg)

**By Natasha Mascarenhas, Rebecca Torrence and Shirin Ghaffary**

Aug. 18, 2026 9:42 AM PT

Anthropic PBC is on track to generate annualized revenue of more than $65 billion based on its current performance, according to people familiar with the matter, up more than sevenfold from its pace at the end of last year.

The company's run rate, a metric that projects full-year revenue from a shorter period, hit $65 billion by the end of July, said the people, who spoke on condition of

regular update with investors, one person said.

The dramatic acceleration in revenue bolsters Anthropic's plans for a public listing. Anthropic and OpenAI have filed confidential paperwork to go public, with Anthropic expected to make its Wall Street debut as soon as this fall, ahead of OpenAI.

Anthropic, the developer of artificial intelligence tools Claude and Fable, was valued at $965 billion after a funding round in May, making it one of the world's largest private companies and eclipsing arch-rival OpenAI's valuation for the first time.

Anthropic declined to comment.

Once viewed as the underdog, Anthropic has gained traction with AI tools that streamline complex tasks, including coding. Anthropic's revenue run rate topped $9 billion in late 2025 and crossed $47 billion in May. OpenAI's revenue run rate recently exceeded $40 billion, Bloomberg News has reported, though the two firms may not measure it the same way.

Anthropic reported a preliminary revenue figure of more than $11.5 billion in its latest completed quarter, compared with $787 million in the corresponding period in 2025, according to documents seen by Bloomberg News. It also reported positive adjusted operating income for the quarter, the documents show.

ADVERTISEMENT

people [illegible] listing and is working with Morgan Stanley, Goldman Sachs Group Inc., and JPMorgan Chase & Co. on the IPO, Bloomberg News has reported.

Anthropic is seeking to tap the public market's ample funding capacity to maintain its lead over OpenAI and others, as AI companies spend hundreds of billions of dollars to develop the most cutting-edge models.

An IPO this fall would see Anthropic debut not only before OpenAI but also before DeepSeek, the Chinese AI firm that has been grabbing an increasing share of the market for the technology. DeepSeek is preparing for an IPO and could file as soon as this year, people familiar with the matter have said.

*Mascarenhas, Torrence and Ghaffary write for Bloomberg.*


## More to Read

**Fed up with high prices, California weighs penalties against hospitals, other entities**

Aug. 24, 2026



**Former Stone Brewing employees in Escondido laid off as new owner moves production**

Aug. 22, 2026



**The obscure financial maneuver at issue in Dodgers owner probe explained**

Aug. 5, 2026



**Inside the business of entertainment**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

AUG 31 2026

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

ANDREA BARTZ, ANDREA BARTZ, INC. CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ Inc.,

Plaintiffs,

v.

ANTHROPIC PBC,

Defendant.

No. 3:24-cv-05417-AMO

Hon. Araceli Martinez-Olguin

**REQUEST FOR WAIVER OF APPELLATE FILING FEE**

1. I am a Member of the Class, and an Objector who timely filed my appearance in District Court. I argued at the Final Settlement Hearing. I am filing my Motion to Appeal/Motion to Intervene in good faith.

2. In addition to being a Class Member I am an attorney with approximately thirty years' experience practicing law. I focus on transactional work, including contracts. Due to my skill set, I am uniquely qualified as an Author/Class member to understand a Publisher's contractual duty to register copyright (including my own publisher, now defunct), and their failure, which unfairly led to the exclusion of some of my books from the List of Works.

3. As a member of the Connecticut Bar, I understand, and am bound to follow, the ethical duties established for all practitioners.

4. I am requesting this waiver because it is unjust to impose a filing fee on myself, or on any Author who wishes to appeal in good faith, considering the gross injury bestowed on Members of the Class, and the limited funds that many Authors may be experiencing.

5. If the Court denies this Request, Anthropic and Class Counsel will unfairly benefit at the expenses of hundreds of injured Authors whose publishers breached their contractual duty to copyright register.

6. As an attorney, I have already invested value in filing my Objection (including Appellate filings) by spending approximately one-hundred hours research and drafting.

Respectfully Submitted,
/s/ [signature]
Stacy Lynn Werner, Esq.
Objector/Appealer/Intervenor

Werner
200 Lake Ave
Trumbull, CT 06611

Retail

UNITED STATES POSTAL SERVICE

94102

RDC 99

U.S. POSTAGE PAID
FCM LG ENV
TRUMBULL, CT 06611
AUG 25, 2026

$2.27

S2324K505507-3

Class Action Clerk
U.S. Dist. Court for the Northern
District of California
450 Golden Gate Ave
16th floor
SAN Francisco, CA 94102

RECEIVED

AUG 31 2026

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA