Textbook & Academic Authors Association

1710 Dondee Road, Madison, WI 53716
(507) 459-1363 | Kim.Pawlak@TAAonline.net

Hon. Araceli Martinez-Olguín
United States District Court
Northern District of California
1301 Clay Street
Oakland, CA 94612

October 27, 2026

Dear Judge Martinez-Olguín,

I am the Executive Director of the Textbook and Academic Authors Association (TAA), a non-profit organization representing the interests of approximately 4,000 textbook and academic authors, many of whom are members of the settlement class in the above-referenced action. TAA has no direct economic interest in the outcome of this litigation. However, in keeping with its nonprofit mission, it has tried to assist its members in understanding this case, advocate on behalf of the interests of textbook and academic authors and help textbook and academic authors who are claimants in the lawsuits to navigate the settlement process.

I am writing in light of the Stipulation and Proposed Order filed by the Parties on October 23, 2026 (Dkt 694), and in the spirit of the Court's directive that "[a]ny material snafu in implementing the [allocation] plan must be brought promptly to the attention of the district judge." (Dkt. 437 at 14:23-24.) While TAA is aware that Class Counsel and counsel for Anthropic are asking to make updates to the settlement website, including supplementation of the already voluminous information and instructions in the "FAQ" provided to claimants, we feel obligated to inform the Court that the process has already become incredibly burdensome and disproportionately prejudices authors. I have directly spoken with authors who have told me that the complexity and opacity of the process is causing them to consider abandoning, or to abandon, their claims all together.

In early September, the Settlement Administrator sent out emails to claimants indicating that they were required to complete certain additional steps to properly file and preserve their claim. A copy of that email is attached as **Exhibit A**, together with a follow up email that went out in early October, attached as **Exhibit B**. Since the first email went out, close to three dozen author claimants—consisting of TAA members and non-members—have reached out to TAA for guidance in navigating this stage in the settlement process.

The notice to claimants has been problematic from the start:

- Many authors did not receive the first email notice sent out by the Settlement Administrator on either September 2 or 4.
- Many authors did not know the settlement had entered a new "meet and confer" stage until a second email went out on October 3.
- The first email that went out stated that claimants had 30 days to comply. Class Counsel assured TAA (when we inquired) that this was an error, and that claimants in fact had at least *60 days* to comply. However, this extended deadline was not clearly conveyed to the authors, who were then scrambling to try to complete the process.
- It is not clear from the notice what steps an author MUST take to preserve their claims, vs what they *may* take, but are not obligated to do, to try and resolve any disputed claims.

The majority of claimants' contacting TAA have been textbook (educational) authors, whose works do not benefit from the 50-50 default split afforded by the settlement to trade and academic works. Some have been outraged to learn of the percentage allocations being claimed by their publishers, which in many cases range from 85% to 95% of the settlement proceeds for the work. Most authors have indicated to me that they claimed 50% in cases where it was not clear that the author should receive 100% of the proceeds, *e.g.*, for out-of-print works in which rights had reverted to them.

Authors with disputed claims have been informed that they must "meet and confer" with their publisher(s) to resolve their claim disputes. The ones I have been in touch with are unsure what they are supposed to do in the "meet and confer" process. It seems to consist of them having to develop arguments supported by their contracts (if they have them) and then trying to connect with their publisher to attempt to advocate for a different split of the settlement amount than the publisher has requested. This is a daunting prospect for educational authors for several reasons: many textbook authors do not have contact information for their publisher, or copies of their contracts (many of which are decades old). When they have asked the settlement administrator for contact information for their publishers, some have been told that the Settlement Administrator cannot share these details with them.

More centrally, authors have no idea how to develop arguments to advocate for a split, even if they do have copies of their contracts. They are not lawyers, and these contracts are often 20+ pages long, were written by the publishers in the first place, and make no mention of AI training or class settlements or anything else clearly on point. The vast majority of authors do not have the funds to hire an attorney to assist them in making arguments in support of their claims, and even if they did, the amount at stake for each claim would not make financial sense—a lawyer could cost more than they author is likely to get even if they prevail on their claim. Therefore, these authors have reached out to TAA for guidance. We are doing our best to help them, despite the fact that we have no stake in or financial support from the settlement proceeds. TAA created a dedicated web page providing information on how claimants can navigate the claims process, which has been regularly updated (and shared with Class Counsel for approval and input). We have offered webinars so that authors could learn critical information and ask questions. However, we are a small 501c3 with no attorneys on staff—it is basically me taking these phone calls one by one.

The settlement process has also been riddled with technical problems in the claims portal that authors have been instructed to access to upload their claims:

- There is no way to save changes made in the portal so that claimants can work on their claim over time. This is an especially important feature for authors who may have dozens of works in the settlement.
- When trying to upload supporting documents, authors receive error messages. When trying to submit their changes in the portal, authors receive error messages. This is often after spending hours trying to work on their claims.
- The portal does not always reflect their most recent changes, and there is no log where they can check back on their activity.
- A claimant cannot see whether other claimants have logged in to adjust their claims for the same works.

While the Settlement Administrator has been helpful at times in assisting authors with these technical errors, it seems to be very hit or miss. Additionally, the Settlement Administrator does not seem concerned with acknowledging, much less trying to fix or improve, the portal's functionality problems. Please see attached as **Exhibit C** emails from several authors sent to me detailing their frustrations, which I am sharing with their permission.

There continue to be many questions and a lot of confusion about what is required in this process—and with the 60-day deadline looming in early November, time is of the essence in making sure authors' claims are preserved and treated fairly. Here are some specific issues of immediate concern:

- Neither the email communications from the Settlement Administrator, nor the settlement portal, make clear that claimants are **required** to contact fellow claimants to resolve disputed claims (even though for the most part they don't even have contact information). At different times, even I have been told conflicting things from Class Counsel as to whether it is required that authors contact their publishers and affirmatively participate in a "meet and confer" process to preserve their claims.
- The Settlement Administrator did not make clear that if authors want their claim to go to the Special Master, they **must explicitly ask for that**. Again, even today I am unsure what an author claimant *must* do to *assure* that their claim goes to the Special Master for resolution.
- Almost every author I communicated with believed that even if their claim was disputed, if they didn't have any changes to what they submitted during the claims process, they didn't have to do anything further. In speaking with Class Counsel, that doesn't appear to be true; Claimants **must** attempt to resolve disputes and **must** explicitly ask that their claims go to the Special Master—or their stated percentage allocations could be at risk or even completely disregarded in the final decision.

The new "FAQ" supplementation just adds *another* level of confusion for authors, as there is now another post-meet-and-confer process they must participate in—now with the Settlement Administrator directly involved. It is still unclear what, specifically, a class member *must do* to

get their claim resolved by the Special Master, or what participation is *required* by class members to obtain a decision on their claim. The process is creating loops of disinformation and repeated obstacles for authors to resolve before they can get a claim decided, with an infrastructure that often does not work, or certainly does not work smoothly. No process has yet been defined as to how the Special Master will resolve disputes, so authors do not even know what the alternative is to accepting their publisher's claim.

Meanwhile, publishers are far fewer in number, and each has a far greater aggregate interest to justify coordinated counsel to execute an informed and consistent strategy in this zero-sum allocation game. It is not fair, and it is getting *more unfair* by piling up procedure after procedure—on the fly—and with increased hurdles for authors to surmount.

Since becoming involved in settlement efforts, TAA (and I) have advocated for textbook and academic authors to obtain a fair and equitable share of the settlement proceeds. With this letter, I am appealing to the Court to ensure *minimally* that authors (i) are not defaulted as a consequence of technical non-compliance with a procedure that has been designed and re-designed, and has *yet to be designed*; and (ii) are provided clear notice for how they can direct their already-submitted claim to be resolved by the Special Master, and what that process will entail. We also ask that the Court consider and acknowledge the inherent burden on authors, who are large in number but whose individual claims are small, and who lack coordinated legal representation, against publishers who are small in number but whose individual claims are large, and who have the resources and financial incentive to engage legal representation in this process.

I would be willing to testify to these issues if the Court is interested in hearing more. Class Counsel (and Anthropic's counsel) are, understandably, carrying a heavy burden in attempting to get this settlement across the finish line, but it should not come at the cost of fairness to educational authors—roughly 25% of the class—who have been at a disadvantage from the beginning of this process.

Sincerely,

Kim Pawlak

Kim Pawlak
Executive Director
Textbook & Academic Authors Association (TAA)